

**COHEN & GRESSER LLP**

800 Third Avenue
New York, NY 10022
+1 212 957 7600 phone
www.cohengresser.com

Mark S. Cohen
+1 (212) 957-7600
mcohen@cohengresser.com

Christian R. Everdell
+1 (212) 957-7600
ceverdell@cohengresser.com

July 29, 2020

**VIA ECF**

The Honorable Alison J. Nathan
United States District Court
Southern District of New York
United States Courthouse
40 Foley Square
New York, New York 10007

>  Re:  *United States v. Ghislaine Maxwell*, 20 Cr. 330 (AJN)

Dear Judge Nathan:

On behalf of our client, Ghislaine Maxwell, we respectfully submit this letter to reply to the government's response letter and submission regarding the proposed protective order in the above-captioned case, dated July 28, 2020 ("Government's Response" or "Gov't Resp.") (Dkt. 33).

The parties have met and conferred, resolving nearly all the issues relating to the proposed protective order. The parties agree that there are two areas of dispute as to which we require guidance from the Court. As noted in our opening letter and below, we respectfully submit that the arguments made by the government are unavailing, and that the defense's proposed protective order, attached as Exhibit A to our initial submission (Dkt. 29), should be entered by the Court.

1. Referencing Individuals Who Have Publicly Identified Themselves

The starting point for evaluating the scope of a proposed protective order is whether there are valid privacy interests at issue. It is the government's burden to establish "good cause" that disclosure will cause "a clearly defined and serious injury." *United States v. Wecht*, 484 F.3d 194, 211 (3d Cir. 2007) (citation omitted). The Court should also ensure that the proposed restriction is "no broader than is necessary" to protect that interest, and must consider the impact that the restriction may have "on a defendant's due process right to prepare and present a full defense at trial." *United States v. Lindh*, 198 F. Supp. 2d 739, 742 (E.D. Va. 2002). Throughout its letter, the government inverts this standard, claiming that the burden is on the defense (which,

The Honorable Alison J. Nathan
July 29, 2020
Page 2

of course, has not had access to the discovery materials) to anticipate and respond to government hypotheticals regarding what the discovery might contain, and how language might address such hypotheticals. But that is not the standard.

The defense submits that when the relevant privacy interests are appropriately considered, it should not be restricted from publicly referencing individuals who have chosen to publicly identify themselves. Accordingly, the defense has proposed that the protective order include the following language: "Nor does this Order prohibit Defense Counsel from publicly referencing individuals who have spoken on the public record to the media or in public fora, or in litigation – criminal or otherwise – relating to Jeffrey Epstein or Ghislaine Maxwell." (Dkt. 29, Ex. A ¶ 6).

In the present context, many of the alleged victims have chosen to identify themselves by name in numerous public fora, including: self-identifying and speaking on the record in criminal proceedings in the Jeffrey Epstein case and this case; as named plaintiffs in civil suits against Ms. Maxwell and others; in on-the-record interviews with media and tabloid publications and newspaper articles; publishing memoirs; appearing on air in Netflix documentaries and other television and film productions; appearing in YouTube videos; and making, in their own name, all manner of social media posts. Indeed, a Google search will reveal any number of videos and articles in which alleged victims not only identify themselves, but make specific allegations against Ms. Maxwell. As a matter of common sense, and under the law, such persons do not have any privacy interest that needs to be addressed by the proposed order. *See Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 494-95 (1975) (noting, in a case where the identity of a minor rape victim was disclosed in publicly filed indictments, that "the interests in privacy fade when the information involved already appears on the public record.").

Yet, the government asserts that such persons nevertheless have "significant privacy interests" (Gov't Resp. at 1), and proposes the much more limited formulation: "This Order does not prohibit Defense Counsel from publicly referencing individuals who have spoken by name on the public record *in this case*" – *i.e.*, in United States v. Ghislaine Maxwell, 20 Cr. 330 (AJN). (Dkt. 33, Ex. A ¶ 5 (emphasis added)). As a practical matter, the government's proposed language would permit the defense to publicly reference a total of *one* person – the individual who spoke under her own name at Ms. Maxwell's bail hearing. (*See* Tr. at 40). It would not include the 11 alleged victims who spoke or submitted letters under their own names at the August 27, 2019 hearing in *United States v. Jeffrey Epstein*, 19-CR-00490-RMB, even though five of those individuals made allegations against Ms. Maxwell. (*See* Dkt. 53 at 43-44, 55, 56, 57, 58). It would not include the four individuals who have civilly sued Ms. Maxwell under their own names alleging conduct similar to that alleged in the indictment. Nor would it include numerous other individuals, described above, who have spoken out publicly to the press or on social media and made accusations against Ms. Maxwell. Indeed, the government's proposed language is even more restrictive than what they previously agreed to in the Epstein case, which allowed Epstein's counsel to publicly reference individuals who had identified themselves in

both the criminal case and in civil suits against him. *United States v. Epstein*, 19-CR-00490-RMB (Dkt. 38 ¶ 4).[1]

The government's position would unfairly limit the defense, and goes further than is required to protect valid privacy interests. More to the point, it does not meet the government's burden under the law. As this Court recently recognized in *Hernandez v. Kirby Forensic Psychiatric Hosp.*, No. 14-CV-5910 (AJN), 2019 WL 4640054 (S.D.N.Y. Sept. 24, 2019), an individual's privacy interest in sensitive information is relinquished by knowing and intentional public disclosure. In that case, the plaintiff alleged that hospital staff violated his privacy rights by disclosing his HIV status to patients and other staff. Nevertheless, because the plaintiff had, himself, disclosed his HIV status to the entire hospital ward, he "forfeited any reasonable expectation that this information would remain confidential[.]" *Id.* at *5; *see also In re Avaya, Inc.*, No. 17-10089 (SMB), 2019 WL 1750908, at *7 (Bankr. S.D.N.Y. Mar. 28, 2019) ("[A] person waives his right to privacy when he puts the private information at issue in a lawsuit."); *Smith v. NBC Universal*, 524 F. Supp. 2d 315, 328-29 (S.D.N.Y. 2007) (holding that facts disclosed in video broadcast on national television with plaintiff's express permission "cannot be considered private"); *id.* at n. 84 ("There is no liability when the defendant merely gives further publicity to information about the plaintiff that is already public.") (quoting Restatement (Second) of Torts § 652D cmt. b (1977)). The cases that the government cites in its letter are inapposite, as none addressed the privacy rights of victims and witnesses who had voluntarily disclosed their identities to the public. (Gov. Resp. at 2.).[2]

Moreover, the language proposed by the defense will permit it to conduct a full and meaningful investigation, upon receiving the discovery, which is required for the effective assistance of counsel. Our client, of course, is presumed innocent, and intends to fight the charges against her. The defense believes that there are individuals who have exculpatory evidence concerning Ms. Maxwell, and information bearing on the credibility of the alleged victims and witnesses. Although the government's proposed protective order would allow for some investigation in this regard, permitting defense counsel and defense investigators to

---

[1] The government indicates that there may be alleged victims and witnesses who have chosen to remain anonymous. (Gov't Resp. at 4). As reflected in our proposed order, the defense has agreed not to mention publicly the identities of any such individuals. Instead, to satisfy its burden, the government posits a series of "hypothetical examples" relating to individuals and the type of interactions they may have had with various public fora. (*Id*.). Hypothetical examples are not a showing of "good cause." Moreover, the defense cannot address these scenarios without knowing if they relate to actual persons, and if so, the nature of such interactions.

[2] *See United States v. Corley*, No. 13-CR-48 (AJN), 2016 WL 9022508, at *3-*4 (S.D.N.Y. Jan. 15, 2016) (this Court denied the defendant's request for the disclosure of the full names of victims whose surnames had previously been concealed from the public record); *United States v. Paris*, No. CR. 3:06-CR-64 (CFD), 2007 WL 1484974, at *2 (D. Conn. May 18, 2007) (permitting several victim witnesses to testify at trial without disclosing their full names where they had not previously been publicly identified as sex workers); *United States v. Kelly*, No. 07-CR-374 (SJ), 2008 WL 5068820, at *2 (E.D.N.Y. July 10, 2008) (prohibiting public disclosure of identities of government witnesses where there was no indication that the names previously appeared in the public record).

The Honorable Alison J. Nathan
July 29, 2020
Page 4

reference the identities of the alleged victims in conversations with prospective witnesses (Gov't Resp. at 2), the defense will be limited in our ability to *locate* these witnesses without the broader language proposed in our protective order.  It is therefore important to the defense investigation and Ms. Maxwell's right to a fair trial that the protective order not restrict the defense's ability to publicly reference the names of Ms. Maxwell's accusers who have already chosen to publicly identify themselves.[3]

Finally, the government's claim that the discovery will include the identities of individuals "whom the Government does not expect to call as witnesses, and whose accounts—much less identities—will have no bearing on this case" is beside the point. (Gov't Resp. at 4).  If the government were prepared to represent that it will base its case solely on the three individuals referenced in the indictment, the analysis might be different.  But that is unlikely.  And it goes without saying that since the defense does not have a single page of discovery yet, much less the government's witness list, we cannot know which of the individuals referenced in the discovery the government plans to use as a witness at trial, or whether such witnesses may be relevant to a potential defense presentation.  Accordingly, the defense needs the ability to conduct an appropriate investigation and the protective order should not curtail that ability when there is no countervailing privacy interest to protect.

2. Preventing the Improper Use of Discovery Materials by Potential Government Witnesses and Their Counsel

The defendant's proposed protective order subjects potential government witnesses and their counsel to the same restrictions as the defense concerning appropriate use of the discovery materials—namely, if these individuals are given access to discovery materials during trial preparation in this case, they may not use those materials for any purpose other than preparing for trial in the criminal case and may not post those materials on the Internet. (*See* Dkt. 29 at 2; Ex. A ¶¶ 3, 5).

The government construes the defense's proposal as one that "impose[s] restrictions upon the *Government*" itself. (Gov. Resp. at 5 (emphasis added)).  It then provides a list of other statutes and regulations that might impose restrictions on the government that may be in conflict with the protective order, arguing that this possibility for conflict warrants rejection of the defense's proposed language.[4]

---

[3] It is not, as the government gratuitously asserts, so that the defense can engage in witness intimidation. (Gov't Resp. at 3 n.2).

[4] The government does not explain why, in the event of such conflict, it could not apply to the Court for resolution of potentially competing obligations.

The Honorable Alison J. Nathan
July 29, 2020
Page 5

But this argument misses the point. The defense does not seek to impose any restrictions on the government's ability to share discovery materials with prospective witnesses and their counsel in whatever manner it deems necessary and appropriate. Instead, the defense is seeking a restriction, not on the government, but on what the prospective witnesses and their counsel can do with those materials in the interest of fairness to the defendant.

The government argues that the defense's proposal should be rejected because there does not appear to be a similar precedent. (*Id.* at 6). But the defense's proposal is necessary given the uncommon circumstances of this case. Here, there are numerous women who may be witnesses in the government's case who have simultaneously sued Ms. Maxwell, alleging the same conduct as that alleged in the indictment. Indeed, the criminal case and the civil cases are already intertwined because significant portions of the indictment appear to be based on a 2019 civil complaint filed against Ms. Maxwell by one of her accusers. Many of the accusers have also repeatedly made public allegations against Ms. Maxwell in the press and on social media. The defense has a legitimate concern that these individuals and their counsel will impermissibly use any discovery materials that are shared with them in this case to bolster their civil cases or to run to the press. As such, it is appropriate for the Court to require that the government's witnesses and their counsel, like the defendant and defense counsel, must use the discovery materials only for the purpose of preparing the criminal case.

\*   \*   \*

For the reasons set forth above, and in our opening letter, we respectfully submit that the Court should enter the defendant's proposed protective order.

Respectfully submitted,

  /s/ Christian R. Everdell
Mark S. Cohen
Christian R. Everdell
**COHEN & GRESSER LLP**
800 Third Avenue, 21st Floor
New York, New York  10022
(212) 957-7600

cc:   All counsel of record (via ECF)