

**COHEN & GRESSER LLP**

800 Third Avenue
New York, NY 10022
+1 212 957 7600 phone
www.cohengresser.com

Mark S. Cohen
+1 (212) 957-7600
mcohen@cohengresser.com

Christian R. Everdell
+1 (212) 957-7600
ceverdell@cohengresser.com

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/11/20
```

August 10, 2020

**VIA ECF**

The Honorable Alison J. Nathan
United States District Court
Southern District of New York
United States Courthouse
40 Foley Square
New York, New York 10007

SO ORDERED. 8/11/20

*Alison J. Nathan, U.S.D.J.*

> The Government is hereby ORDERED to respond to the Defendant's letter motion by Thursday, August 13, 2020. The Defendant's reply, if any, is due on or before Monday, August 17, 2020.
>
> SO ORDERED.

Re:  *United States v. Ghislaine Maxwell*, 20 Cr. 330 (AJN)

Dear Judge Nathan:

On behalf of our client, Ghislaine Maxwell, we respectfully submit this letter motion seeking the Court's assistance with two critical issues that greatly impact Ms. Maxwell's ability to receive a fair trial on the schedule set by the Court.  First, we request that the Court enter an order directing the government to disclose to defense counsel the identities of the three alleged victims referenced in the indictment ("Victims 1-3"), subject to the restrictions of the protective order entered by the Court, so that Ms. Maxwell and defense counsel can meaningfully investigate the alleged conduct, which is now over 25 years old.  Second, we request that the Court enter an order directing the Bureau of Prisons ("BOP") to release Ms. Maxwell into the general population and provide Ms. Maxwell with increased access to the discovery materials while she is detained so that she can meaningfully participate in the preparation of her defense.

    **1.**    **Disclosure of Victim Identities**

The Court should order the government to disclose the identities of Victims 1-3 to defense counsel, subject to the restrictions of the protective order, because Ms. Maxwell cannot prepare for or receive a fair trial without this information.  Moreover, the requested disclosure is authorized under the law in this Circuit, and is narrowly-tailored and reasonable under the circumstances of this case.

Here, it is clear from the face of the indictment that the government's case is based on the accounts of Victims 1-3, the three individuals specifically referenced in the indictment.  It is therefore critical for the defense to know the names of these individuals as soon as possible, so

that we can mount an effective defense investigation and adequately prepare for trial. This is especially true in this case where the alleged misconduct took place on unspecified dates roughly 25 years ago in multiple locations—namely, New York, Florida, New Mexico, and the United Kingdom—and where the central figure, Jeffrey Epstein, is alleged to have engaged in misconduct with dozens, if not hundreds, of alleged victims. The defense should not have to speculate which of these individuals are Victims 1-3 referenced in the indictment.

It is now almost six weeks since Ms. Maxwell's arrest, and the government is just now beginning to produce Rule 16 discovery, despite confirming to the Court that discovery would begin as soon as the Court entered a protective order. Moreover, the government still has not confirmed to the defense the identities of Victims 1-3. Ms. Maxwell was arrested on July 2, 2020. On July 14, 2020, during her arraignment and bail hearing, the government indicated that it had "begun preparing an initial production" and would be "prepared to produce a first batch of discovery as soon as a protective order [was] entered by the Court."[1] The Court entered the protective order on July 30, 2020. (Dkt. 36). The following day, July 31, 2020, defense counsel contacted the government and requested disclosure of the identities of Victims 1-3. The government refused to do so, stating that it would only disclose the identities of alleged victims through its production of Rule 16 discovery, or as part of its production of Jencks Act material closer to trial. That same day, per the government's request, the defense provided a hard drive to load the Rule 16 discovery. However, the government did not make its first production until after 2:00 p.m. on Wednesday, August 5, 2020.

The government's initial production was a subset of non-electronic discovery materials, totaling nearly 13,000 pages, which the defense expeditiously reviewed for high-level content. Upon initial review, the materials contain certain records related to one specific individual. However, nothing in the production specifically identifies this individual as Victim 1, 2, or 3. The defense should not be required to speculate whether this individual is one of the three alleged Victims, and if so, which one. Moreover, the initial production does not appear to contain any materials identifying the other two alleged Victims. Although the government has indicated that it will provide additional discovery on a rolling basis, if the initial production is any guide, it seems unlikely that later productions will sufficiently identify the remaining alleged Victims. Furthermore, the defense should not be forced to wait almost two additional weeks until August 21, 2020 (the deadline for the production of initial non-electronic discovery) or potentially months until November 9, 2020 (deadline for the completion of all discovery) before learning information that is vital to the defense. Ms. Maxwell's right to a fair trial depends on the defense's ability to adequately investigate the charges against her, and that investigation will be significantly impaired until we know for certain the names of Victims 1-3.

---

[1] July 14, 2020 Tr. at 12:14-17; *see also id.* at 12:25-13:3 ("Following the entry of [the] protective order . . . the government is prepared to make a substantial production of discovery.").

The Honorable Alison J. Nathan
August 10, 2020
Page 3

      District courts have the inherent authority to compel pretrial disclosure of the identities of government witnesses. *See United States v. Cannone*, 528 F.2d 296, 301 (2d Cir. 1975). Such disclosure is warranted when there is a specific showing that the disclosure is material to the preparation of the defense and reasonable in light of the circumstances surrounding the case. *See id.* at 302; *United States v. Rueb*, No. 00 CR. 91 (RWS), 2001 WL 96177, at *9 (S.D.N.Y. Feb. 5, 2001) (ordering disclosure of government witness list where defendant "ha[d] met his burden to show a particularized need that outweighs the possible dangers of disclosure").[2] This principle has been applied in sex crimes cases, where the right of the defendant to prepare a defense can outweigh the privacy interests of alleged victims referenced in the indictment and warrant the disclosure of their identities. *See United States v. Warme*, No. 09CR19A, 2009 WL 427111, at *2 (W.D.N.Y. Feb. 20, 2009) (ordering government to disclose identity of sex crime victim where "defendant's ability to adequately prepare a defense against this charge is significantly compromised without being advised of the identity of the alleged victim"); *see also id.* ("Absent knowing the identity of Victim 1, the defendant is precluded from investigating the facts surrounding the crime charged.").

      The defense's narrowly-tailored request, which only seeks the disclosure of the identity of Victims 1-3, and not the government's entire witness list, is also reasonable in light of the circumstances of this case. And because the protective order prohibits Ms. Maxwell, defense counsel, and others on the defense team from disclosing or disseminating the identity of any alleged victim or potential witness referenced in the discovery materials (Dkt. 36 ¶ 5), the disclosure will have no impact on the privacy interests of Victims 1-3. Nor is there any basis for the government to claim that there is a risk that witnesses will face intimidation or refuse to testify.[3] To the contrary, many alleged victims have already chosen to speak on the record in criminal proceedings in the Epstein case and in this case; to file civil suits against Mr. Epstein, Ms. Maxwell and others, and to provide deposition testimony and discovery in those suits; and to give interviews to the press and other television and film productions. Moreover, Victims 1-3 are no longer minors, but are now adults in their late 30s or early 40s, which provides additional assurance that they will be willing to appear for trial. Disclosure is therefore warranted here.

---

[2] In determining whether to order pretrial disclosure of the identity of witnesses, some district courts have considered the following factors: (1) Did the offense alleged in the indictment involve a crime of violence? (2) Have the defendants been arrested or convicted for crimes involving violence? (3) Will the evidence in the case largely consist of testimony relating to documents (which by their nature are not easily altered)? (4) Is there a realistic possibility that supplying the witnesses' names prior to trial will increase the likelihood that the prosecution's witnesses will not appear at trial, or will be unwilling to testify at trial? (5) Does the indictment allege offenses occurring over an extended period of time, making preparation of the defendants' defense complex and difficult? (6) Do the defendants have limited funds with which to investigate and prepare their defense? *Rueb*, 2001 WL 96177, at *7-8 (citation omitted). The Second Circuit, however, has not adopted these factors, nor do they constitute an exhaustive list of factors that the Court may consider in determining whether to disclose the identities of alleged victims.

[3] Notably, the government did not argue at the bail hearing that Ms. Maxwell posed a danger to the community. (*See* 7/14/2020 Tr. at 37:15-21).

The Honorable Alison J. Nathan
August 10, 2020
Page 4

*See Warme*, 2009 WL 427111, at *2 (ordering government to disclose identity of sex crime victim where "the government has not demonstrated that disclosing the identity to the defendant would subject the victim to a significant risk, or to increase the likelihood that victim will refuse to appear or testify").

With each day that passes without knowing the identities of Victims 1-3, the defense is losing crucial time to conduct a meaningful investigation and prepare its defense so that Ms. Maxwell can receive a fair trial on the schedule set by the Court. For these reasons, we respectfully request the Court to order the government to disclose the identities of Victims 1-3 to defense counsel, consistent with the provisions of the protective order.

2. **Ms. Maxwell's Conditions of Confinement and Access to Discovery**

We also seek the Court's assistance to improve Ms. Maxwell's conditions of confinement at the Metropolitan Detention Center ("MDC"), and her access to the discovery in this case, so that she can meaningfully participate in her defense. As discussed below, Ms. Maxwell has been treated less favorably than a typical pretrial detainee, and this has impacted her ability to assist in her defense.

It has become apparent that the BOP's treatment of Ms. Maxwell is a reaction to the circumstances surrounding the pretrial detention and death of Mr. Epstein. On July 6, 2019, Mr. Epstein was arrested and detained at the Metropolitan Correctional Center ("MCC") on sex trafficking charges, and was subsequently assigned to the MCC's Special Housing Unit ("SHU") due to risk factors for suicide and safety concerns. After an apparent suicide attempt on July 23, 2019, Mr. Epstein was transferred to suicide watch and then psychological observation. On August 10, 2019, Mr. Epstein's body was discovered in his cell. Thereafter, the government indicted the two correctional officers who were assigned to the SHU at the time of Mr. Epstein's death.

As a result of what occurred with Mr. Epstein, Ms. Maxwell is being treated worse than other similarly situated pretrial detainees, which significantly impacts her ability to prepare a defense and be ready for trial on the schedule set by the Court. Since arriving at the MDC over a month ago, on July 6, 2020, Ms. Maxwell has been held under uniquely onerous conditions. Ms. Maxwell has been confined alone in an area outside of the general population for the entire 36-day period (40 days if we include her confinement in New Hampshire), which is over three weeks longer than the 14-day quarantine period required for all new arrivals to the MDC under current COVID-19 protocols, and there is no indication that this will change. She continues to be surveilled 24 hours a day by security cameras and by multiple prison guards, many of whom do not appear to be regular MDC personnel. These prison guards constantly observe Ms. Maxwell and take notes on her every activity, including her phone conversations with defense counsel. Until recently, Ms. Maxwell was subjected to suicide watch protocols, including being woken up every few hours during the night and being forced to wear special clothing, despite the

The Honorable Alison J. Nathan
August 10, 2020
Page 5

fact that she, unlike Mr. Epstein, has never been suicidal and was never diagnosed as exhibiting risk factors for suicide. Her cell is searched multiple times a day and she has been forced to undergo numerous body scans. In addition, Ms. Maxwell's access to the standard prison resources available to other pretrial detainees in the general population has been extensively curtailed or eliminated altogether.

This treatment threatens Ms. Maxwell's Sixth Amendment right to participate in her defense. This case will require time-consuming review of voluminous discovery materials. Ms. Maxwell must therefore have adequate time to review the materials, to confidentially take notes on them, and to discuss them with her attorneys. But there currently is no such structure in place. Indeed, although the government agreed that Ms. Maxwell would have access to a hard drive containing the discovery in the MDC, it is our understanding that the hard drive containing the first production has not yet been made available to Ms. Maxwell.

Defense counsel understands that the BOP has proposed (but not yet implemented) a procedure that would permit Ms. Maxwell to use a computer on her floor to review discovery materials during the three-hour period each day that she is not confined to her cell. But there are two significant flaws in this proposal:

- The three-hour period is specifically designated to be used by Ms. Maxwell for recreation, exercise, and personal hygiene, including showers. The BOP should not be permitted to force Ms. Maxwell to choose between maintenance of her physical and mental health and participating in her own defense.

- Even if Ms. Maxwell were to forgo personal maintenance altogether, three hours a day is on its face an insufficient amount of time for reviewing documents in a complex case with voluminous document discovery, such as this one. As an illustration, the government's first set of production materials consists of nearly 13,000 pages of documents. Assuming it takes Ms. Maxwell an average of one minute to review each page of those materials, based on the BOP's proposed cap of three hours per day of review, Ms. Maxwell would conceivably finish reviewing this first set of documents at the earliest by mid-November 2020. This is entirely unworkable under the schedule set by the Court.

Ms. Maxwell does not seek special treatment at the MDC; but she does ask that she not be specially disfavored in her treatment in detention, especially when it comes to preparing her defense to conduct that allegedly took place over 25 years ago. In light of the voluminous discovery that we expect to receive, Ms. Maxwell would normally be spending 40 hours a week or more reviewing the discovery. Ms. Maxwell should be granted a comparable amount of time

The Honorable Alison J. Nathan
August 10, 2020
Page 6

to review the discovery in the MDC so that she can engage in her defense full-time. We therefore request that Ms. Maxwell:

- Be released to the general population and be granted the privileges given to other pretrial detainees.

- Be given significantly increased access to a computer terminal in order to review the discovery in this case.

*   *   *

For the reasons set forth above, we respectfully submit that the Court should grant Ms. Maxwell's motion.

Respectfully submitted,

  /s/ Christian R. Everdell
Mark S. Cohen
Christian R. Everdell
**COHEN & GRESSER LLP**
800 Third Avenue, 21st Floor
New York, New York  10022
(212) 957-7600

cc: All counsel of record (via ECF)