

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

August 13, 2020

**VIA ECF**

The Honorable Alison J. Nathan
United States District Court
Southern District of New York
United States Courthouse
40 Foley Square
New York, New York 10007

> Re:   *United States v. Ghislaine Maxwell*, 20 Cr. 330 (AJN)

Dear Judge Nathan:

The Government respectfully submits this letter in opposition to the defendant's letter of August 10, 2020 (the "Defense Letter" or "Def. Ltr."), requesting that the Court order the Government to disclose the names of certain Government witnesses 11 months prior to trial, and requesting that the Court intervene in the protocols and individualized inmate determinations of the Bureau of Prisons.  Both applications should be denied.

> A.   The Defendant's Demand That the Government Name Certain Trial Witnesses

For the third time in as many weeks, the defendant and her counsel have applied to the Court for relief that is premature, meritless, or both.  *See* Order dated July 23, 2020 (Dkt. 28) (denying the defendant's request that the Court enter an order prohibiting the Government and attorneys for non-parties from making extrajudicial statements "concerning this case"); Order dated July 30, 2020 (Dkt. 37) (denying the defendant's application for a protective order that would allow the defense to publicly name and identify victims).  In the defendant's most recent application, she asks the Court to order that the Government disclose a partial witness list, in the form of identifying certain victims referenced in the Superseding Indictment (the "Indictment"), fully 11 months prior to trial.  This request is at best premature given that the production of discovery, on the schedule agreed to by the defendant, has just begun.  Moreover, the parties have had no discussions about—let alone asked the Court to set—a schedule for pretrial disclosures, including for witness lists and 3500 material.

In the first instance, the defendant complains about the status of discovery production, arguing that "almost six weeks since" the arrest of the defendant, the Government is "just now beginning to produce Rule 16 discovery, despite confirming to the Court that discovery would begin as soon as the Court entered a protective order."  Def. Ltr. at 2.  The suggestion that the Government somehow delayed that initial production is nonsense.  As the Court is aware, the

Honorable Alison J. Nathan
August 13, 2020
Page 2

protective order was docketed on Friday, July 31, 2020[1]—the timing of which was principally the result of the defendant's own refusal to agree to the terms of the proposed protective order. The Government then promptly produced an initial discovery production totaling more than 12,000 pages the following Wednesday, August 5, 2020. Additionally, the Government continues to produce discovery and earlier today made a second production, as the Government advised defense counsel last week it intended to do, totaling more than 150,000 pages, principally consisting of financial records.[2] Although the Government expects to continue to produce a large amount of electronic discovery, the two productions already made constitute the vast majority of initial discovery, including search warrant applications and subpoena returns, which the Government has now produced more than a week in advance of its deadline of August 21, 2020, and approximately 11 months prior to trial.

In sum, the Government has acted expeditiously in meeting its initial discovery obligations, providing more than 165,000 pages of discovery materials in less than two weeks following the entry of the protective order—all of which was accompanied by detailed indices describing the general topics and sources of the materials.

Against this backdrop, the Defense Letter claims that over the course of just five days, defense counsel determined, having "expeditiously reviewed [the discovery] for high level content," Def. Ltr. at 2, that they cannot possibly investigate the charges against their client based on the materials provided thus far, and asking the Court to order the Government to provide the defendant with a partial witness list. That request should be denied.

Tellingly, the defendant cites no authority that requires the relief requested at this stage in the litigation—*i.e.*, prior to the completion of discovery and approximately 11 months before trial—nor is the Government aware of any. For example, in the lead case cited by defense counsel, *United States v. Cannone*, 528 F.2d 296, 301 (2d Cir. 1975), although the opinion acknowledged the ability of district courts to compel disclosure of the identity of government witnesses, the Second Circuit *reversed for abuse of discretion* the district court's decision to do so in that case because the defendant there, as here, had made "only an abstract, conclusory claim that such disclosure was necessary to its proper preparation for trial." *Id.* at 301-02. In *United States v. Rueb*, 00 Cr. 091 (RWS), 2001 WL 96177, at *8 (S.D.N.Y. Feb. 5, 2001), while the Court ordered the Government to provide the defendant with its witness list, it did so *one month before trial*, following the completion of discovery production and in the context of pretrial motions. Those circumstances plainly are not present here. Finally, in *United States v. Warme*, a Western District of New York opinion from 2009 that has never been cited by another court, although the Court

---

[1] The Defense Letter states that the protective order was "entered" by the Court on July 30, 2020. While that is the date the protective order was signed by the Court, it was posted to the docket on July 31, 2020.

[2] The Government's most recent discovery transmittal letter also included the months and years of birth of the three victims identified in the Indictment, to enable the defendant to evaluate whether she will make any motions or legal arguments—more than four months in advance of the deadline for any such motion—relating to the ages of the victims.

Honorable Alison J. Nathan
August 13, 2020
Page 3

ordered disclosure of a certain victim identity shortly after the indictment, the Court noted that the Government had already confirmed to the defendant the identities of three of the four relevant victims, and that a fourth victim, whose identity was at issue, was the subject of a charge that failed to identify the date of her alleged rape or any prior encounters between the victim and the defendant. 2009 WL 427111, at *2. None of those facts are present here—by contrast, here, the Indictment particularly describes relevant time periods and events, including referring to the defendant's conversations with victims, interactions with victims, and specific relevant locations.[3]

To the extent the defendant is arguing that she cannot identify the nature of the charges against her, the proper vehicle for such an argument is a motion for a bill of particulars. Any such motion can be made in December with all other motions and following the completion of discovery. While the Government anticipates opposing such a motion as baseless on the facts of this case, the Government respectfully submits that in any event such a motion could not be meaningfully evaluated at this stage, prior to the completion of discovery. *See United States v. Mahabub*, 13 Cr. 908 (AJN), 2014 WL 4243657, at *2 (S.D.N.Y. Aug. 26, 2014) (denying a motion for a bill of particulars that sought, among other things, the "alleged victim and noting that "[a] bill of particulars is not required unless the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused. The government can also discharge its obligation to disclose this information by other means, *such as by presenting evidence in discovery. . . . A bill of particulars is not meant to provide the details of the government's evidence, or to be used as an investigative tool.*") (emphasis added, quotations and citations omitted); *see also United States v. Thompson*, 13 Cr. 378 (AJN), 2013 WL 6246489, at *7 (S.D.N.Y. Dec. 3, 2013) (denying a motion for a bill of particulars and noting that such motions are not "a general investigative tool, a discovery device or a means to compel the government to disclose evidence *or witnesses to be offered prior to trial*") (emphasis added) (quotations and citation omitted); *cf. United States v. Sindone*, 01 Cr. 517 (MBM), 2002 WL 48604, at *2 (S.D.N.Y. Jan. 14, 2002) (denying a motion for a bill of particulars to identify "the unnamed alleged victim(s)" but instructing the government to disclose the name of any victim it did *not* intend to call as a witness at trial by 14 days prior to the start of trial).

Alternatively, to the extent defense counsel is unable to assess or comprehend the discovery produced by the Government, the Government is more than willing to discuss with the defense

---

[3] Defense counsel's invocation of the protective order in support of its argument, Def. Ltr. at 1, 3, should be of little comfort. The Government is deeply concerned by the recent actions of the defendant's counsel who represent her in both this criminal matter as well as in certain civil matters, and who in a recent public filing in a civil case referred to their receipt of sealed materials in discovery in this case. In particular, the defendant's counsel publicly claimed in a civil filing that they purportedly had received "critical new information" from the criminal case that it could not disclose "because it is subject to a protective order in the Criminal Action," and further noting publicly a desire to seek modification of the protective order in this case to use such materials in the civil case, which the protective order expressly precludes. *See Giuffre v. Ghislaine Maxwell*, No. 15 Civ. 7433 (LAP) (Dkt. 1100). Moreover, even assuming the defendant intends to scrupulously adhere to the terms of the protective order, that would not change the relevant legal standards, which weigh heavily against granting the requested relief.

Honorable Alison J. Nathan
August 13, 2020
Page 4

any such issues as the discovery process continues.  To date, the defendant has yet to ask the Government a single substantive question about the discovery.  The Government is also prepared to engage in good faith discussions with the defense about an appropriate schedule for disclosure of 3500 material, exhibit lists, and witness lists, all of which the Government expects to produce reasonably in advance of the trial date in July 2021 to permit the defense to investigate witnesses. But particularly given the nature of the charges, the Government's strong desire to protect the privacy of the alleged victims, and the lack of any legal precedent for the defendant's request, the Government respectfully submits that at the present time—eleven months prior to trial, nearly three months prior to the discovery deadline, and more than four months prior to the pretrial motions deadline—there is no basis for the defendant to demand the Government disclose the identity of its witnesses.

    B.   <u>The Defendant's Request that the Court Dictate the Conditions of Her Confinement</u>

The defendant's requests with respect to the conditions of her confinement at the Metropolitan Detention Center ("MDC") are similarly premature and unavailing, and her request that the Court dictate the terms of her confinement to the Bureau of Prisons ("BOP") should also be denied.[4]

As an initial matter, the defendant's argument that she is being treated "worse" than other inmates is incorrect.  There is no merit to her complaints about being monitored by staff, as it is entirely appropriate for BOP to carefully monitor any inmate, particularly a new inmate who has never before been incarcerated and who faces the strong likelihood of serving many years in prison. Additionally, like all inmates, the defendant may be subject to observation or searches of her person or space as appropriate.[5]  It is otherwise entirely unclear what specific "privileges given to other pretrial detainees" the defendant believes she is being denied.

More generally, the defendant, like all pretrial inmates, is subject to an individualized assessment by the BOP with respect to his or her placement in a facility.  Here, for reasons including safety, security, and the orderly functioning of the facility, BOP has made the determination that, at present, the defendant should not be fully integrated into the dorm-style accommodations of the general population.  The Government understands from BOP that it will

---

[4] Once again, defense counsel has rushed to seek Court intervention on issues they have made little or no meaningful effort to address with the Government or, in this case, the BOP.  The Government learned of the defendant's specific objections to her conditions of incarceration for the first time from the Defense Letter, and has since conferred with BOP to understand and to address the issues as appropriate.  Moreover, as noted below, the defendant filed the instant challenge to the BOP's plan to permit her time to review discovery before the BOP had a chance to implement (and ultimately modify) that plan.

[5] Defense counsel claims that prison staff "constantly observe" the defendant "including her phone conversations with defense counsel."  This is misleading.  As with all inmates, the defendant is able to speak to her counsel behind a closed door, in an area that is visible—but not audible—to MDC staff.  Among other reasons, this is so MDC staff can ensure that inmates do not complete calls with their counsel and then call other individuals on a non-recorded line.

Honorable Alison J. Nathan
August 13, 2020
Page 5

continue to evaluate where the defendant should be housed within the facility and that the defendant will be placed into the general population if and when BOP is assured that such placement would not pose a threat to the orderly operation of the institution. The defendant identifies no basis for the Court to disturb that determination by the BOP, particularly given that, as detailed below, her housing assignment will not negatively affect her ability to review discovery in this case.

Regarding the defendant's request in connection with access to discovery, the Government understands from BOP that the defendant had not even yet received her copy of the Government's first discovery production at the time the Defense Letter was filed—she received the materials on Tuesday, August 11. While it is correct that BOP's initial plan was to provide three hours per day of access to the discovery—the same access that is granted to every other pretrial inmate, including those with trial dates scheduled for far earlier than July 2021—as of earlier this week, and given the volume of expected discovery, BOP informed the defendant that she will have the opportunity to access to her discovery from 7:00 a.m. to 8:00 p.m. every day of the week. Although this arrangement will be subject to continued evaluation on an ongoing and individualized basis, and is subject to ordinary considerations of prison operations, BOP intends to provide that access on an ongoing basis to the extent it remains reasonably practicable to do so. Accordingly, this application should be denied as moot.

C. Conclusion

For the reasons set forth above, the defendants' requests, as set forth in the Defense Letter, should be denied.

Respectfully submitted,

AUDREY STRAUSS
Acting United States Attorney

By: _____
Alex Rossmiller / Alison Moe / Maurene Comey
Assistant United States Attorneys
Southern District of New York
Tel: (212) 637-2415

Cc:     *All counsel of record*, via ECF