

**COHEN & GRESSER LLP**

800 Third Avenue
New York, NY 10022
+1 212 957 7600 phone
www.cohengresser.com

Mark S. Cohen
+1 (212) 957-7600
mcohen@cohengresser.com

Christian R. Everdell
+1 (212) 957-7600
ceverdell@cohengresser.com

August 17, 2020

**VIA ECF**

The Honorable Alison J. Nathan
United States District Court
Southern District of New York
United States Courthouse
40 Foley Square
New York, New York 10007

      Re:  *United States v. Ghislaine Maxwell*, 20 Cr. 330 (AJN)

Dear Judge Nathan:

      On behalf of our client, Ghislaine Maxwell, we respectfully submit this letter to reply to the government's letter, dated August 13, 2020, responding to Ms. Maxwell's request that the Court (i) direct the government to disclose the identities of the three alleged victims referenced in the indictment, subject to the restrictions of the protective order in this case; and (ii) order the Bureau of Prisons ("BOP") to provide Ms. Maxwell with increased access to the discovery materials ("Government's Response" or "Gov't Resp.") (Dkt. 41).

      With regard to the issue of alleged victims' identities, the government concedes, as it must, that this Court has the authority and discretion to order the relief sought, but claims that Ms. Maxwell's application should be denied as untimely and without merit. (Gov't Resp. at 2-4).  Instead, the government asserts that the appropriate and timely way for Ms. Maxwell to seek confirmation of their identities is through a request for a bill of particulars, which should be filed in December 2020.  (*Id*. at 3).  The government then notes that it would oppose such a motion, which it claims should also be denied.  (*Id.*).  The government concludes that it will finally provide confirmation of their identities in the 3500 material and a witness list to be provided shortly before trial.  (*Id*. at 4).

      The upshot of this is clear: in the government's view, Ms. Maxwell should not know the identity of the three witnesses referenced in the indictment until at best just before trial, and should have to spend the next eleven months (or longer) trying to conduct a defense investigation, in a case in which she is presumed innocent, without having this information. This information is critical to conducting a meaningful defense investigation, given that the

The Honorable Alison J. Nathan
August 17, 2020
Page 2

indictment alleges 25-year-old conduct that supposedly occurred on unspecified dates in multiple locations on different continents, and involves numerous alleged victims of Jeffrey Epstein. Moreover, the government's position is based on the claimed privacy rights of the alleged victims, now all adults, who may well have sued Mr. Epstein and/or Ms. Maxwell in public civil actions or otherwise identified themselves by name in public fora. As discussed below and in our opening letter, under the relevant legal standards, the relief sought can and should be ordered here.

With regard to Ms. Maxwell's conditions of confinement, the government asserts, in essence, that such matters should be left not to this Court, but to the discretion of the BOP. We do not agree. Under the BOP's original plan, Ms. Maxwell would have been forced to choose between reviewing the voluminous discovery in this case, on the one hand, or taking a shower, eating a meal or exercising, on the other. That would not be consistent with her right to meaningfully review materials and prepare for trial. Indeed, the very filing of the present motion apparently prompted the BOP to make certain of the changes the defense had requested. We respectfully ask the Court to confirm these changes in an order, along with the other relief requested.

### 1. Disclosure of Alleged Victim Identities

The government concedes that this Court has the authority to order it to disclose to defense counsel the identities of the three individuals referenced in the indictment. (Gov't Resp. at 2). As we understand it, these three individuals are the core of the government's case against Ms. Maxwell. Yet, according to the government, the defense must make assumptions about their identities until they are finally revealed a few weeks prior to trial. If that occurs, it is very possible that the defense will waste the next several months investigating someone whose name appears in the discovery, but who is not one of the three alleged victims, and whom the government does not even intend to call as a witness at trial.

Indeed, the defense has again conducted a high-level review of the second discovery production and, at first glance, there does not appear to be any information that specifically identifies these three witnesses. According to the government, the two productions they have made "constitute the vast majority of initial discovery." (*Id*. at 2). But the defense still does not know for certain who these individuals are and will likely not know until the eve of trial, if the government has their way. That is fundamentally inconsistent with the notion of a fair trial, especially when it is inherently difficult to investigate instances of abuse that allegedly occurred 25 years ago (even when the identity of the alleged victim is known), and when the alleged victims do not have a strong countervailing privacy interest to protect, as discussed below.[1]

---

[1] The government's attempt at a compromise solution—providing the birth months and years of the alleged victims—is insufficient. (Gov't Resp. at 2 n.2). Such partial information only helps confirm the identity of

The Honorable Alison J. Nathan
August 17, 2020
Page 3

      The government relies on two grounds to justify its position: (i) the need "to protect the privacy of the alleged victims," and (ii) the "lack of any legal precedent" granting such a request. (Gov't Resp. at 4). Both of these reasons are unpersuasive.

      As to the privacy interest, the government glosses over the facts and circumstances of this case, which significantly diminish any privacy interest that may exist. As we stated in our initial letter motion, many of Mr. Epstein's alleged victims are actively litigating civil suits against Ms. Maxwell and have made public statements identifying themselves by name in court proceedings, to the press, and in other public fora. Although we cannot say for certain whether the three individuals referenced in the indictment have done this—because at this point we can only guess who they are—it seems likely that they, too, fall into this category. Furthermore, although these individuals claim to have been minors when the conduct alleged in the indictment occurred roughly 25 years ago, they are no longer minors; they are now adults in their early 40s. Nor has the government argued that these alleged victims would be subject to any risk of intimidation or that they would likely refuse to appear for trial if their identities were disclosed. Hence, any privacy interest that may exist is diminished and should not supersede Ms. Maxwell's right to prepare her defense to ensure a fair trial. *See United States v. Warme*, No. 09CR19A, 2009 WL 427111, at *2 (W.D.N.Y. Feb. 20, 2009) (ordering government to disclose identity of alleged rape victim and stating, "Inasmuch as the government has not demonstrated that disclosing the identity to the defendant would subject the victim to a significant risk, or to increase the likelihood that victim will refuse to appear or testify, the interest of the defendant in being able to prepare a defense outweighs the government's interest in keeping the name of [the alleged victim] undisclosed.").

      The government's assertion that there is no legal precedent for Ms. Maxwell's request is incorrect. (Gov't Resp. at 4). The case law in this Circuit is unambiguous that the Court has the power to grant the requested relief. As we stated in our initial letter, the Second Circuit formally recognized that district courts have the authority to order the disclosure of the identities of government witnesses in *United States v. Cannone*, 598 F.2d 296, 301 (2d Cir. 1975). Although *Cannone*, itself, found that the district court abused its discretion in ordering the disclosure of witness identities under the facts of that case, the government *acknowledges* that this Court has the authority under *Cannone* to issue such an order in this case. (Gov't Resp. at 2).

      The defense also cited in its initial letter *United States v. Warme*, a directly analogous precedent in which a district court in this Circuit relied on *Cannone* and its progeny to order the government to disclose the identity of a rape victim to the defendant roughly one month after indictment—the exact same relief that Ms. Maxwell requests here. (Dkt. 38 at 3-4). In *Warme*, the defendant asked the district court to order the government to disclose the identity of a victim who was allegedly raped by the defendant a little over two years before the indictment was filed,

---

someone if you already know who that person is. Moreover, it raises the question of why the government is unwilling to go the extra step and simply provide the defense with the actual birthdays of the alleged victims.

The Honorable Alison J. Nathan
August 17, 2020
Page 4

in stark contrast to the 25-year-old conduct alleged in this case. *Warme*, 2009 WL 427111, at *1-2. The district court recognized "the sensitive nature of the charges and the difficulties facing rape victims," but found that "the defendant's ability to adequately prepare a defense against this charge [would be] significantly compromised without being advised of the identity of the alleged victim." *Id.* at *2. The district court found that disclosure was appropriate because, as in this case (i) the defendant was seeking disclosure of the identity of an alleged victim who was the basis for a specific crime charged in the indictment, and not just a government witness; (ii) the indictment did not state "the exact dates" of the alleged abuse or the prior encounters between the defendant and the alleged victim; and (iii) the government did not articulate any basis to conclude that the alleged victim would be subject to intimidation or would refuse to appear at trial as a result of the disclosure. *Id*. For the same reasons articulated in *Warme*, this Court should order the government to disclose immediately the identities of three alleged victims referenced in the indictment, subject to the terms of the protective order.[2]

## 2. Ms. Maxwell's Conditions of Confinement and Access to Discovery

The government asserts that Ms. Maxwell's conditions of confinement should be left to the discretion of the BOP. (Gov't Resp. at 4). But the BOP cannot be the sole arbiter on these issues if the conditions of Ms. Maxwell's confinement impact her right to a fair trial and to meaningfully prepare her defense. Indeed, under the BOP's original plan, Ms. Maxwell would have been forced to choose between taking a shower and reviewing the voluminous discovery in this case. It is only because the defense filed its motion that the BOP modified its original plan and gave Ms. Maxwell increased access to the discovery two days later. We now understand, and the government has confirmed, that Ms. Maxwell can review discovery from 7:00 a.m. to 8:00 p.m. every day of the week. (*Id*. at 5). We respectfully ask the Court to confirm these changes in an order to the BOP.

However, the defense continues to believe that Ms. Maxwell is being subjected to uniquely onerous conditions of confinement because of the death of Mr. Epstein in BOP custody. For example, Ms. Maxwell continues to be surveilled 24 hours a day by security cameras and is

---

[2] The government attempts to distinguish *Warme* by asserting that, unlike *Warme*, the indictment in this case "describes relevant time periods and events, including referring to the defendant's conversations with victims, interactions with victims, and specific relevant locations." (Gov't Resp. at 3). That is incorrect. In fact, the indictment in *Warme* was far more specific as to the dates of the relevant events, alleging that the rape took place "sometime in and around October of 2006." *Warme*, 2009 WL 427111, at *2. By contrast, the indictment in this case alleges vague instances of "grooming" that supposedly took place over the course of a year (in the case of Victim 2), two years (in the case of Victim 3), or even four years (in the case of Victim 1). Those are hardly "exact dates." The criminal complaint in *Warme* also alleged specific interactions between the defendant and the alleged victim; namely, that they "had met and exchanged phone numbers perhaps as long as 10 months prior to the alleged rape." *Id*. Nevertheless, the district court held that the defendant's right to prepare his defense required disclosure of the identity of the alleged victim and outweighed any privacy interest that the victim might have. *Id*.

The Honorable Alison J. Nathan
August 17, 2020
Page 5

under constant observation by multiple prison guards.³  She is also still being awakened several times in the middle of the night.  Even on more routine matters, Ms. Maxwell's treatment has been worse than other pretrial detainees.  For example, Ms. Maxwell has no access to email and has been given 30 minutes per month for personal phone calls, far fewer than the 500 minutes granted to other pretrial detainees since the COVID-19 crisis.  Unlike defendants in the general population, she does not have a desk or a writing surface where she can take notes when reviewing the discovery.  And until recently, Ms. Maxwell was denied access to the prison commissary for no apparent reason.

We respect that the BOP needs to ensure the orderly operation of the MDC.  But Ms. Maxwell's conditions of confinement are unique to her and seem punitive rather than anything necessary to ensure that the MDC as a whole is running smoothly.  Accordingly, we respectfully request that, going forward, Ms. Maxwell be monitored in the same manner as other pretrial detainees and that the Court order the BOP to grant Ms. Maxwell the same privileges given to other detainees.⁴

\*      \*      \*

For the reasons set forth above, we respectfully submit that the Court should grant Ms. Maxwell's motion.

Respectfully submitted,

  /s/ Christian R. Everdell
Mark S. Cohen
Christian R. Everdell
**COHEN & GRESSER LLP**
800 Third Avenue, 21st Floor
New York, New York  10022
(212) 957-7600

cc:   All counsel of record (via ECF)

---

³ The defense recently learned that some of these prison guards were, in fact, BOP psychologists who were observing Ms. Maxwell and evaluating her for hours each day without her knowledge.  We are aware of no other pretrial detainee receiving such treatment.

⁴ In our original letter, the defense asked the Court to order the BOP to release Ms. Maxwell into the general population because we had been informed that Ms. Maxwell would not receive certain privileges, like access to a desk and the prison commissary, unless she were housed there.  As long as Ms. Maxwell is monitored in the same manner, and receives the same privileges as other pretrial detainees, it is not necessary to move her to the general population.