

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 7, 2020

**VIA ECF**

The Honorable Alison J. Nathan
United States District Court
Southern District of New York
United States Courthouse
40 Foley Square
New York, New York 10007

  Re: *United States v. Ghislaine Maxwell*, 20 Cr. 330 (AJN)

Dear Judge Nathan:

  The Government respectfully submits this letter to provide additional information in response to the Court's prior inquiry regarding the Government's plan to obtain and review other investigative files, created and maintained by other offices, which are related to the above-referenced case. In particular, at the initial conference in this matter on July 14, 2020, the Court asked the Government about its plan to ensure timely review the files of other agencies for potential disclosures in this case and highlighted the Court's expectation that the Government would be thoughtful and probing in its assessment of such a review. Consistent with the Government's commitment to take a thorough and transparent approach to its disclosure obligations, this letter outlines the relevant investigative files of which the Government is currently aware and describes the Government's approach as to each.

  **I.** **Background Regarding the Government's Rule 16 Discovery Productions**

  The charges in this case arise out of an investigation conducted by the United States Attorney's Office for the Southern District of New York ("USAO-SDNY"), the Federal Bureau of Investigation ("FBI") New York Office, and the New York Police Department (the "NYPD") (collectively, the "Prosecution Team"). That investigation was opened in 2018 and remains ongoing. The Government has copies of the full investigative files for this case from the USAO-SDNY, the FBI New York Office, and the NYPD (the "Prosecution Team Files"). The bulk of the productions to date have come from the Prosecution Team Files. The Government is continuing to review the Prosecution Team Files for any additional materials that warrant disclosure.

  Specifically, to date, the Government has produced approximately 328,863 pages of discovery to the defense in this case. Those materials include, among other things, photographs, documents seized during searches, search warrants, search warrant applications, financial records, travel records, property records, phone records, law enforcement reports, and other subpoena

returns. The Government is continuing the process of reviewing and preparing productions of electronic discovery materials, which include extractions of data from numerous electronic devices. The Government expects that it will meet the November 9, 2020 deadline for the completion of electronic discovery productions. Additionally, the Government recognizes that its disclosure obligations are ongoing, and the Government will continue to review the Prosecution Team Files for any additional discoverable or exculpatory materials. In particular, the Government is aware of its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, and will promptly produce any exculpatory material of which it becomes aware.

The Government's Rule 16 discovery productions do not include witness statements or material under *Giglio v. United States*, 405 U.S. 150 (1972) and its progeny, consistent with the common practice and law within this Circuit. As indicated in a prior letter, the Government intends to produce all such materials to the defense well in advance of trial.[1] Specifically, although the parties have not yet conferred regarding a schedule for disclosure of witness statements, the Government is prepared to produce all statements and impeachment material for witnesses it expects to call at trial as early as four weeks prior to trial. Additionally, the Government is prepared to produce any statements by witnesses who it does not expect to call at trial as early as eight weeks prior to trial, subject to restrictions to protect those individuals' privacy to be negotiated by the parties.

## II.     Applicable Law Governing Disclosure of Other Investigative Files

The disclosure obligations set forth in Federal Rule of Criminal Procedure 16, *Brady*, and *Giglio* apply to materials in the Government's "possession." As a general matter, though "[a]n individual prosecutor is presumed . . . to have knowledge of all information gathered in connection with his office's investigation of the case[,] . . . knowledge on the part of persons employed by a different office of the government does not in all instances warrant the imputation of knowledge to the prosecutor . . . ." *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998) (citations omitted); *see also United States v. Locascio*, 6 F.3d 924, 948-49 (2d Cir. 1993) (declining to "infer the prosecutors' knowledge simply because some other government agents knew about" additional evidence where federal prosecutors were unaware of documents in possession of FBI agents who were "uninvolved in the investigation or trial of the defendants"); *United States v. Quinn*, 445 F.2d 940, 944 (2d Cir. 1971) (declining to impute knowledge of prosecutor in Florida to prosecutor in New York and noting that the "Department of Justice alone has thousands of employees"). The imposition of such "an unlimited duty on a prosecutor to inquire of other offices not working with the prosecutor's office on the case in question would inappropriately require [courts] to adopt 'a monolithic view of government' that would 'condemn the prosecution of criminal cases to a state of paralysis.'" *Avellino*, 136 F.3d at 255 (quoting *United States v. Gambino*, 835 F. Supp. 74, 95 (E.D.N.Y. 1993)). Thus, discovery and disclosure obligations only extend to "information known

---

[1] The Government recognizes that its *Brady* obligations include the disclosure of witness statements containing exculpatory information. To date, the Government is not aware of any exculpatory material contained in any witness statements, but it will continued to review its files, including witness statements, for such material. If the Government becomes aware of any *Brady* material from any source, it will promptly disclose such material to the defense.

Honorable Alison J. Nathan
October 7, 2020
Page 3

to persons who are a part of the 'prosecution team' . . . who perform investigative duties or make strategic decisions about the prosecution of the case," including "police officers and federal agents who submit to the direction of the prosecutor and participate in the investigation." *United States v. Barcelo*, 628 F. App'x 36, 38 (2d Cir. 2015) (quoting *United States v. Stewart*, 433 F.3d 273, 298 (2d Cir. 2006)).

In considering whether Rule 16 and *Brady* apply to records in the possession of another government agency, a prosecutor's duty extends to reviewing such evidence only where the Government conducts a "joint investigation" with that agency or branch of government. *See United States v. Middendorf*, No. 18 Cr. 36 (JPO), 2018 WL 3956494, at *4-5 (S.D.N.Y. Aug. 17, 2018) (no joint investigation between Government, Public Company Accounting Oversight Board ("PCAOB") and Securities and Exchange Commission ("SEC") where PCAOB was not involved in witness interviews or developing prosecutorial strategy, and SEC was not involved in the grand jury presentation, reviewing the fruits of the Government's investigation, or developing prosecutorial strategy); *United States v. Collins*, 409 F. Supp. 3d 228, 241-43 (S.D.N.Y. 2019) (no joint investigation between U.S. Attorney's Office and SEC where the two entities conducted a small number of joint interviews and engaged in limited sharing of information with each other); *United States v. Finnerty*, 411 F. Supp. 2d 428, 433 (S.D.N.Y. 2006) (no joint investigation between Government and New York Stock Exchange ("NYSE") where documents sought were "the product of an investigation that was undertaken by the NYSE of its own practices, and there [wa]s no suggestion that the Government participated in that investigation").

Moreover, the involvement of agents from one component of an agency in an investigation does not render the entirety of that agency part of the prosecution team. *See, e.g.*, *United States v. Stein*, 424 F. Supp. 2d 720, 723 (S.D.N.Y. 2006) ("While the prosecution's disclosure obligation in some circumstances may extend to materials beyond the knowledge of the individual prosecutors assigned to a case, it does not extend to the collective knowledge of the entire United States government or even to the entire government agency concerned."); *see also Locascio*, 6 F.3d at 949 (refusing to impute to AUSAs knowledge of reports prepared by FBI agents who were "uninvolved in the investigation or trial of the defendants"); *cf. United States v. Ghailani*, 687 F. Supp. 2d 365, 372 (S.D.N.Y. 2010) (holding that, in the context of a speedy trial motion, other members of the Department of Justice who were involved in making decisions about timing and progress of the case were part of the "government" for Rule 16 purposes).

As the foregoing precedents recognize, the factors relevant in determining whether an agency or a component of an agency are part of the prosecution team, and therefore their records are in the "possession" of the Government include whether the agency or component: "(1) participated in the prosecution's witness interviews, (2) was involved in presenting the case to the grand jury, (3) reviewed documents gathered by or shared documents with the prosecution, (4) played a role in the development of prosecutorial strategy, or (5) accompanied the prosecution to court proceedings." *Middendorf*, 2018 WL 3956494, at *4.

### III. The Government's Plan to Review Certain Files from the Florida Investigation

#### A. Relevant Background Regarding the Florida Investigation (2005-2010)

Between approximately 2005 and 2010, and as detailed further below, members of the Palm Beach Police Department, the Palm Beach State's Attorney's Office, the U.S Attorney's Office for the Southern District of Florida ("USAO-SDFL"), and the FBI's Palm Beach Resident Agency (the "FBI Florida Office") conducted a separate investigation and prosecution of Jeffrey Epstein for his sexual abuse of minors in Florida (the "Florida Investigative Team" and the "Florida Investigation," respectively). The Prosecution Team in this case had no involvement in the Florida Investigation, which predated the instant investigation by approximately eight years.[2] Similarly, the Florida Prosecution Team and the agencies involved in the Florida Investigation have had no involvement in the investigative, charging, or prosecutorial strategy decisions of the Prosecution Team in this case. Accordingly, under the governing law of this Circuit as discussed above, there is no basis for deeming the Florida Prosecution Team a part of the current Prosecution Team, and the Government does not believe it has any legal obligation to obtain or review the investigative files of those agencies. As discussed below, however, the Government is nevertheless prepared to go significantly above and beyond its disclosure obligations by requesting files from the Florida Investigation that have at least some potential to contain materials that could be relevant to the instant case, and by reviewing and producing those materials as appropriate in this case.[3]

---

[2] As detailed herein, during the course of its investigation, the Prosecution Team has gathered some documents related to the Florida Investigation, principally consisting of the FBI Florida Office's case file for the Florida Investigation. Those materials are being treated as a part of the Prosecution Team's files and will be produced, to the extent covered by Rule 16 or any other disclosure obligation, to the defendant in this case.

[3] In addition to the Florida Investigation, the Government is aware, through public reporting among other means, of a number of other investigations into matters relating to Jeffrey Epstein. For example, it has been publicly reported that local agencies in the U.S. Virgin Islands, Paris, and London have conducted and may still be conducting investigations into Epstein, which may include investigation into his sexual abuse of minors. There has also been public reporting regarding investigations into Epstein's finances, including an investigation by the U.S. Attorney's Office in the U.S. Virgin Islands, and into the conditions of Epstein's confinement while serving his sentence following the Florida Investigation. Additionally, the USAO-SDNY conducted an investigation into Epstein's suicide and is currently prosecuting two corrections officers as a result of that investigation. *See United States v. Noel and Thomas*, 19 Cr. 830 (AT). Separately, the FBI Florida Office investigated and ultimately prosecuted an employee of Epstein's named Alfredo Rodriguez for obstruction of justice, *see United States v. Alfredo Rodriguez*, 10 Cr. 80015 (KAM), and the Prosecution Team has received some files from that case. The Government does not intend to further seek out or review the investigative files of any such cases, which are completely unrelated to the subject matter of the instant prosecution and/or have been conducted by entities that are not part of this Prosecution Team and, in some instances, the Department of Justice.

Honorable Alison J. Nathan
October 7, 2020
Page 5

      B.  <u>The Government's Plan for Obtaining and Reviewing Certain Files from the Florida Investigation</u>

As an initial matter, beginning during the course of its investigation, the Government has obtained the entirety of the FBI Florida Office's case file from the Florida Investigation. The Government has already made productions from that file, is continuing to review that file, and intends to produce at the appropriate point any additional material in that file warranting disclosure in this case. That file includes, among other things, any FBI-302 of any relevant witness interview; any relevant materials obtained pursuant to federal grand jury subpoena as part of that investigation; and any relevant material seized during a search of Epstein's Palm Beach residence conducted as part of that investigation. The Government believes the FBI file contains substantially all of the prior witness statements made during the Florida Investigation, including, if applicable, any prior statements made by witnesses the Government intends to call at trial in this case.

In total, the Government has identified six potential sources of material related to the Florida Investigation, and has been requesting and reviewing materials from those sources as follows:

*First*, the Palm Beach Police Department ("PBPD") opened its investigation into Jeffrey Epstein in or about 2005. During the course of that investigation, the PBPD, among other things, conducted numerous witness interviews, issued multiple subpoenas for documents,[4] and executed a search warrant at Epstein's Palm Beach Residence. In or about 2006, the PBPD referred its investigation to the FBI Florida Office. It is the Government's understanding that the PBPD provided its entire investigative file to the FBI Florida Office. As discussed above, the Prosecution Team already has a copy of the full FBI Florida Office file and, as such, has been reviewing and will continue to review the PBPD file for any material that warrants disclosure in this case. Additionally, the Government has contacted the Records Specialist at the PBPD, who informed the Government that the PBPD has no additional investigative files beyond what it already provided to the FBI Florida Office. Out of an abundance of caution, however, the Government asked the Records Specialist to provide the Prosecution Team with a copy of the files still in PBPD's possession related to the Florida Investigation. In response, the PBPD Records Specialist provided the Government with 60 pages of documents, which the Prosecution Team reviewed for any material that is non-duplicative and warrants disclosure in this case. The Prosecution Team has identified five of those pages as non-duplicative and intends to produce those five pages as part of its next discovery production to the defense.

*Second*, the Palm Beach State's Attorney's Office (the "PBSA"), working with the PBPD, among other agencies, handled the Florida state investigation and prosecution of Jeffrey Epstein between approximately 2005 and 2010 (when Epstein completed his sentence). As a result of that investigation and prosecution, Epstein pled guilty to procuring an underage girl for prostitution and soliciting a prostitute. Prior to September 14, 2020, the Prosecution Team had never received any documents directly from the PBSA and did not have the PBSA's full investigative file.

---

[4] As detailed below, these subpoenas were issued by the Palm Beach State's Attorney's Office.

Honorable Alison J. Nathan
October 7, 2020
Page 6

Although the PBSA is not part of the Prosecution Team, the Government has nevertheless communicated with the PBSA and requested that the PBSA provide the Prosecution Team with its entire investigative file, to the extent it still exists. In response, on September 14, 2020, the PBSA provided the Prosecution Team with an electronic copy of its entire case file regarding the Florida Investigation, which consists of 4,421 pages of documents, 43 audio files, and 6 video files. The Government is reviewing that file for any material that is non-duplicative of other material previously obtained and that warrants disclosure in this case.

*Third*, the FBI Florida Office conducted a prior federal investigation into Jeffrey Epstein between approximately 2006 and 2010. As noted above, the electronic files from the FBI Florida Office are accessible by the FBI New York Office, which has provided the Government with a complete set of FBI electronic files from both its Florida Office and its New York Office for this case. The Government has reviewed those files for discoverable materials. The physical files from the FBI Florida Office, which are contained in approximately 24 boxes, have all been transferred to the FBI New York Office and are in the possession of the Prosecution Team. Those files have been scanned and put into an electronic review platform. The Government has previously reviewed those files and is continuing to do so for discoverable materials. In addition, and as noted above, some items from the FBI Florida Office file have already been produced as part of prior discovery productions in this case.

*Fourth*, the USAO-SDFL participated in the federal investigation of Jeffrey Epstein between approximately 2006 and 2010. Before today, the Prosecution Team had never received any documents from the USAO-SDFL and did not have the USAO-SDFL's investigative file. Indeed, aside from notifying the SDFL at an executive level that the SDNY was opening its own Epstein investigation in 2018, the Prosecution Team had no substantive communications with the USAO-SDFL about the Prosecution Team's investigation or prosecution until after indicting this case. However, after the initiation of this prosecution, the Government communicated with the USAO-SDFL and requested that the USAO-SDFL provide the Prosecution Team with a copy of its entire investigative file, so that the Prosecution Team could review the files for material that warrants disclosure in this case. The USAO-SDFL agreed to provide its entire file, which is contained in approximately 28 boxes, to the Prosecution Team. Accordingly, the Government hired a vendor to copy the entire USAO-SDFL file and load that file into an electronic review platform. The Government received the electronic copy of the USAO-SDFL file from the vendor today and intends to review that file for materials that warrant disclosure in this case.

*Fifth*, internal Department of Justice emails relating to the prior Florida Investigation have been gathered by the Department of Justice's Office of Professional Responsibility ("OPR"), as part of its unrelated investigation into the resolution of the prior Florida Investigation.[5] In particular, during the course of its investigation, OPR gathered a significant volume of emails, to the extent they had been preserved and remained accessible, from a number of USAO-SDFL attorneys, including a number of supervisors in that office and the primary line Assistant U.S. Attorney who worked on the Florida Investigation ("Attorney-1").

---

[5] This OPR investigation has been publicly acknowledged by the Department of Justice.

Honorable Alison J. Nathan
October 7, 2020
Page 7

Although the Government does not believe it has any obligation to gather or review emails sent or received by attorneys at the USAO-SDFL as part of their separate, prior investigation, the Government nonetheless intends to gather and review the emails sent to or from Attorney-1 to the extent those emails were preserved and gathered by OPR. As noted, Attorney-1 was the primary line assistant on that investigation, and Attorney-1's emails are thus the most likely to contain communications with or regarding potential witnesses. The Government has already obtained Attorney-1's emails from OPR, and given the volume, the Government intends to load those emails into an electronic review platform and then conduct targeted searches of those emails for terms relevant to this case, including the defendant's name and the names of victims and witnesses. Based on our understanding of the USAO-SDFL investigation, we do not believe that there are a substantial number of overlapping victims or witnesses between that investigation and this prosecution. But to the extent searches of Attorney-1's emails reveal non-duplicative *Giglio* or 3500 material for any such victims or witnesses, the Government will produce any such identified material consistent with any schedule for pre-trial disclosures set by the Court. The Government does not intend to request or review emails for any other USAO-SDFL or Department of Justice attorney or otherwise perform a comprehensive review of the internal e-mails of that prosecutor's office from its wholly separate investigation, including by asking for any other material gathered by OPR as part of its investigation.

*Sixth*, beginning in or about 2019, attorneys with the United States Attorney's Office for the Southern District of Georgia ("USAO-SDGA") were designated to participate in the representation of the United States in civil litigation brought by Epstein victims for violations of the Crime Victim Rights Act ("CVRA") by the USAO-SDFL in connection with the Florida Investigation after the USAO-SDFL was recused from that civil litigation. The Government intends to contact the USAO-SDGA and ask whether it (a) had any substantive communications with witnesses relevant to this prosecution during its participation in the CVRA civil litigation, or (b) gathered any information regarding the defendant, Ghislaine Maxwell. If so, the Government will request any and all records regarding those topics and will review those records for materials that warrant disclosure in this case. Otherwise, the Government does not intend to request or review any materials from the USAO-SDGA.

\*      \*      \*

As noted above, none of these other offices or agencies has played any role in the investigation or prosecution of this case. In particular, none of these offices and agencies has participated in witness interviews or taken any other investigative steps with the Prosecution Team. Nor did any representative of these other offices or agencies play any role in developing strategy, making charging decisions, or presenting this case to the grand jury. Accordingly, although the Government maintains that none of these agencies is part of the Prosecution Team in this case, given the similarity of the nature of the conduct investigated in this case and the conduct investigated by those other offices and agencies, the Government is prepared to undertake the extensive efforts described above to obtain and review additional material. The Government will continue to produce any portion of those materials that warrants disclosure in this case, including in connection with its production of *Giglio* and 3500 material.

Honorable Alison J. Nathan
October 7, 2020
Page 8

### IV.     Conclusion

       Consistent with its representations to the Court at the initial conference in this matter, the Government is committed to maintaining a thorough, careful, and comprehensive approach to its disclosure obligations.  The Government is prepared to address any questions the Court may have or to provide any additional information upon request.

       Respectfully submitted,

       AUDREY STRAUSS
       Acting United States Attorney

By: _____
       Maurene Comey / Alison Moe / Lara Pomerantz
       Assistant United States Attorneys
       Southern District of New York
       Tel: (212) 637-2324

Cc:     *All counsel of record*, via ECF