

**COHEN & GRESSER LLP**

800 Third Avenue
New York, NY 10022
+1 212 957 7600 phone
www.cohengresser.com

Christian R. Everdell
+1 (212) 957-7600
ceverdell@cohengresser.com

October 14, 2020

**BY ECF**

The Honorable Alison J. Nathan
United States District Court
Southern District of New York
United States Courthouse
40 Foley Square
New York, NY 10007

    Re:  *United States v. Ghislaine Maxwell*, 20 Cr. 330 (AJN)

Dear Judge Nathan:

    We write on behalf of our client, Ghislaine Maxwell, in opposition to the government's October 6, 2020 letter requesting the Court's permission to delay the disclosure of photographs and documents relating to certain alleged victims of sexual abuse by Jeffrey Epstein (the "Materials"), pursuant to Rule 16(d)(1) of the Federal Rules of Criminal Procedure.  (Dkt. 60).  The government's request should be denied for two reasons.

    *First*, it is clear from the government's letter that the Materials pertain to individuals who claim to have been "sexually abused by [Jeffrey] Epstein" (*id*. at 2), but who have <u>not</u> accused Ms. Maxwell of participating in or facilitating that conduct in any way.  Accordingly, the Materials identifying these witnesses and their prior statements are exculpatory evidence, which must be disclosed pursuant to the government's obligations under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny.[1]

    *Second*, the Court should order the government to disclose the Materials under Rule 16 because the Materials are "material to preparing the defense" and the government has not shown good cause to delay production of the Materials under Rule 16(d)(1).

---

[1] We note that yesterday we sent the government a letter making specific *Brady* requests, including "[a]ny statements or written communications made by any witness who has alleged that she was sexually abused or assaulted by Mr. Epstein, but has not alleged that Ms. Maxwell participated in, was involved in, or facilitated the alleged sexual abuse."

The Honorable Alison J. Nathan
October 14, 2020
Page 2

**A. Applicable Law**

1. *Brady*

"Under *Brady* and its progeny, 'the Government has a constitutional duty to disclose favorable evidence to the accused where such evidence is 'material' either to guilt or to punishment.'" *United States v. Certified Envtl. Servs., Inc.*, 753 F.3d 72, 91 (2d Cir. 2014) (quoting *United States v. Coppa*, 267 F.3d 132, 139 (2d Cir. 2001)). "Favorable evidence" that must be disclosed for purposes of *Brady* "includes not only evidence that tends to exculpate the accused, but also evidence that is useful to impeach the credibility of a government witness," *id.*, also known as "*Giglio* material," as well as any statements of witnesses "which are contradictory or inconsistent with the government's theory of the case." *United States v. Harris*, No. 00 Cr. 105 (RPP), 2000 WL 1273720, at *2 (S.D.N.Y. Sept. 7, 2000) (citing *Kyles v. Whitley*, 514 U.S. 419 (1995).

2. *Rule 16*

Rule 16 provides, in pertinent part:

> Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and . . . the item is material to preparing the defense[.]

Fed. R. Crim. P. 16(a)(1)(E). Evidence is material under Rule 16 if it "could be used to counter the government's case or to bolster a defense." *United States v. Stevens*, 985 F.2d 1175, 1180 (2d Cir. 1993). "The materiality standard [of Rule 16] normally is not a heavy burden; rather, evidence is material as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *United States v. Stein*, 488 F. Supp. 2d 350, 356-57 (S.D.N.Y. 2007) (quoting *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir.1993) (internal quotation marks omitted)).

Rule 16(d)(1) provides that a party may seek a protective order from the court to "deny, restrict, or defer discovery" upon a showing of "good cause." Fed. R. Crim. P. 16(d)(1). To establish good cause, the party must show "that disclosure will result in a clearly defined, specific and serious injury." *United States v. Smith*, 985 F. Supp. 2d 506, 523 (S.D.N.Y. 2013) (citations omitted). A finding of harm "must be based on a particular factual demonstration of potential harm, not on conclusory statements." *Id*. (citations omitted).

The Honorable Alison J. Nathan
October 14, 2020
Page 3

**B. Discussion**

    1. <u>The Materials Are Subject to Disclosure Under *Brady* Because They Refute the Government's Theory of the Charged Crimes</u>

The government states that, as part of its "broader investigation into Epstein's sexual abuse of minors," it interviewed "dozens" of alleged victims of Epstein's sexual abuse and obtained sensitive documents and photographs from certain alleged victims who claim they were assaulted after 1997 – *i.e.*, after the end of the time period charged in Counts One through Four of the superseding indictment (the "Indictment"). (Dkt. 60 at 2). Stated differently, the government has interviewed and collected evidence from numerous witnesses who have never asserted that Ms. Maxwell participated in Epstein's alleged sexual abuse, or "groomed" them for Epstein, or had anything whatsoever to do with any episode of sexual abuse they may have experienced. Although the government represents that these women were sexually abused by Epstein after the time period charged in Counts One through Four of the Indictment, this evidence is still fundamentally inconsistent with the government's theory that Ms. Maxwell was Epstein's "madam" and the principal facilitator of his sexual abuse scheme.

Furthermore, this evidence directly contradicts the government's theory of the perjury counts. The government insists that the Materials are irrelevant to the charges in the Indictment because they relate to instances of sexual abuse that took place after 1997, and therefore "post-date the time period charged in the Indictment." (Dkt. 60 at 2). That is incorrect. The government forgets that it chose to put at issue Epstein's sexual abuse that occurred after 1997 when it included the perjury counts in the Indictment.

The perjury counts stem from a defamation suit brought against Ms. Maxwell in 2015 by one of Epstein's alleged victims ("Accuser-1"). In December 2014, Accuser-1 filed a motion to join a lawsuit challenging the validity of Epstein's Non-Prosecution Agreement executed in 2007. Accuser-1's motion "described Maxwell's role as one of the main women who Epstein used to procure under-aged girls for sexual activities and a primary co-conspirator and participant in his sexual abuse and sex trafficking scheme." (*[Accuser-1] v. Maxwell*, 15-CV-07433 (RWS) (S.D.N.Y.), Dkt. 1 at ¶ 27). Ms. Maxwell publicly denied Accuser-1's allegations, claiming that they were untrue. Accuser-1, in turn, claimed that these statements were defamatory and sued Ms. Maxwell.

Counts Five and Six allege that Ms. Maxwell lied at two different depositions in this case. The scope of these depositions was not limited to the 1994-1997 timeframe. On the contrary, Ms. Maxwell was asked questions about, among other things, her knowledge of Epstein's sexual activities in general. Whether Ms. Maxwell knew about Epstein's sexual abuse after 1997 is therefore directly relevant to whether she lied at these depositions.

The Honorable Alison J. Nathan
October 14, 2020
Page 4

>  For example, Count Five alleges that Ms. Maxwell lied in the following exchange:
>
> Q: Did Jeffrey Epstein have a scheme to recruit underage girls for sexual massages? If you know.
>
> A: <u>I don't know what you're talking about</u>.

Similarly, Count Six alleges that Ms. Maxwell lied in the following exchange:

> Q: Other than yourself . . . with whom did Mr. Epstein have sexual activities?
>
> A: <u>I wasn't aware that he was having sexual activities with anyone when I was with him other than myself</u>.
>
> Q: I want to make sure that I'm clear. Is it your testimony that in the 1990s and 2000s, you were not aware that Ms. Epstein was having sexual activities with anyone other than yourself . . . ?
>
> A: <u>That is my testimony, that is correct</u>.

The government has spoken to numerous individuals who claim to have been assaulted by Epstein after 1997, but do not implicate Ms. Maxwell in the assault or claim that she knew about it in any way. That bolsters Ms. Maxwell's defense that she was not aware of either Epstein's scheme to recruit and sexually abuse underage girls, or that Epstein was engaging in sexual activities with others, and therefore did not perjure herself in response to those questions.

Accordingly, the Materials and the prior statements of the witnesses to whom they pertain are exculpatory evidence inconsistent with the government's theory of the charges in the Indictment and must be disclosed pursuant to the government's *Brady* obligations.

> 2. <u>The Government Has Not Shown Good Cause that Disclosure of the Materials Will Interfere with an Ongoing Investigation</u>

Even if the Court does not find this evidence to be exculpatory, the Materials are "material to preparing the defense" and therefore should be disclosed under Rule 16(a)(1)(E). The government agrees that the Materials should be produced, but asserts that there is good cause to delay the production of the Materials until eight weeks before trial, pursuant to Rule 16(d). (Dkt. 60 at 2-3). The government's justification for the delay, however, is entirely inadequate to establish good cause.

The government asserts that disclosing the Materials will prematurely reveal to the defense the identities of certain victims of Epstein who are not referenced in the Indictment, as well as

The Honorable Alison J. Nathan
October 14, 2020
Page 5

sensitive information about them. (*Id*.). The government further asserts that such disclosure will "jeopardize the government's ongoing investigation" because it will reveal to the defendant the scope of the government's investigation and may deter other alleged victims from coming forward to provide evidence. (*Id*. at 1, 3). Essentially, the government is arguing that disclosure of the Materials should be delayed because it would rather not let Ms. Maxwell know, at this stage of the proceedings, who the government spoke to, and because it is concerned that other people might not come forward to provide additional evidence against Ms. Maxwell.

These are not the sorts of concerns that courts have found may jeopardize an ongoing investigation and establish good cause for delaying disclosure. Courts typically allow delayed disclosure on these grounds when immediate disclosure may alert <u>other</u> potential targets of the investigation that they are being investigated or may identify individuals who are proactively cooperating with the government to gather evidence against <u>other</u> potential targets. The cases cited in the government's own letter make this clear. *See Smith*, 985 F. Supp. 2d at 531-32 (disclosure of certain discovery materials might "alert the targets of the investigation and could lead to efforts by them to frustrate the ongoing investigations"); *United States v. Mennino*, 480 F. Supp. 1182, 1188 (S.D.N.Y. 1979) (government's ongoing investigation into other potential defendants could be disrupted by disclosure of certain discovery materials). Similarly, courts often grant protective orders in this context when the government has made a sufficient showing that disclosure may lead to witness intimidation or threats to their safety. *See United States v. Urena*, 989 F. Supp. 2d 253, 262-63 (S.D.N.Y. 2013) (collecting cases).

The government has done neither here. The government has not made any showing that disclosure would thwart an ongoing investigation into other potential targets, or would jeopardize the safety of any potential witnesses. Instead, the government asserts a speculative and self-serving concern that disclosure of the Materials it might make it more difficult to recruit additional witnesses for its existing case against Ms. Maxwell. That is not the type of "clearly defined, specific and serious injury" that establishes good cause to delay disclosure under Rule 16(d)(1).

For the foregoing reasons, the Court should deny the government's requested relief under Rule 16(d)(1) and instead order the government to immediately produce the Materials and the prior statements of these witnesses to the defense.

Sincerely,

/s/ Christian Everdell
Christian R. Everdell
**COHEN & GRESSER LLP**
800 Third Avenue, 21st Floor
New York, New York 10022
(212) 957-7600

The Honorable Alison J. Nathan
October 14, 2020
Page 6

cc: Mark S. Cohen, Esq.
Jeff Pagliuca, Esq.
Laura Menninger, Esq.
Bobbi C. Sternheim, Esq.