

**Haddon, Morgan and Foreman, P.C**
**Jeffrey Pagliuca**

150 East 10th Avenue
Denver, Colorado  80203
PH  303.831.7364  FX  303.832.2628
www.hmflaw.com
jpagliuca@hmflaw.com

October 23, 2020

**VIA ECF**

The Honorable Alison J. Nathan
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

>   Re:   Response to the Government's October 7, 2020 letter,
>         *United States v. Ghislaine Maxwell*, 20 Cr. 330 (AJN)

Dear Judge Nathan,

    At the initial conference in this case, the Government promised Ms. Maxwell and the Court that it would review and produce "prior investigative files from another investigation in the Southern District of Florida,"[1] which it characterized as part of "the core of the case" against Ms. Maxwell,[2] after a "careful and exhaustive and through review of all of the materials," with the "bulk" of the discovery produced by "the end of this summer [2020]."[3]  Summer is gone, Winter is coming, and the Government has failed to make good on its promises.

    Although it casts the October 7, 2020 letter to the Court as a "response to the Court's prior inquiry regarding" its plan to produce discovery, the Government is, in fact, abandoning the deadlines to which it already agreed and reneging on (or redefining) its assurances to the Court that it would engage in "thoughtful and critical pushing and pressing of questions and issues with respect to actively retrieving any appropriate files."[4]  In fact, the promised "substantial" production of discovery is "substantial" in size, not substance. Approximately one fourth of the production relates to materials gathered in civil litigation to which Ms. Maxwell was a party. The remainder of the discovery contains documents from the 2000s that relate largely to Jeffrey Epstein and therefore have nothing to do with the time period of the conspiracy charged in the

---

[1] July14, 2020 Tr. p. 12:20-13.

[2] *Id.*, 12:11.

[3] *Id.*, 13:8-14.

[4] *Id.*, 15:13-18.

The Honorable Alison J. Nathan
October 23, 2020
Page 2

Indictment. Although the Government represented to this Court during the detention hearing that "the strength of the Government's evidence" provided a strong incentive for Ms. Maxwell to flee, it has failed to produce any of the corroborating documentation that they claimed to have at the initial hearing in this case. And, to the contrary, the dearth of evidence reinforces why Ms. Maxwell has never intended to flee. She steadfastly maintains her innocence and vehemently denies the charges against her, as she has in prior civil lawsuits since the allegations against her first surfaced.

Furthermore, the Government's production of discovery to Ms. Maxwell in the MDC has been deficient and inadequate. For example, Ms. Maxwell only received the Government's October 2, 2020 production yesterday afternoon, almost three weeks after the production date, and she still cannot read all of the documents in the government's prior productions. Defense counsel have discussed these issues at length with the Government, and despite the Government's assurances that it has spoken to the BOP and that the problems have been or will be corrected, the problems persist. The defense has done what it can to alert the Government to these issues so that they can be remedied, including three letters, three conference calls, numerous emails, and countless hours of time and effort that should have been spent on preparing the defense. It should not be Ms. Maxwell's responsibility to intercede with the Government and the BOP to ensure that the discovery is produced on time and in a readable format. The Government created these problems by insisting that Ms. Maxwell be detained before trial, and it is up to the Government to properly discharge its discovery obligations, which they have not done.

The Government's failure to produce relevant discovery in a timely manner, and in a format that Ms. Maxwell can effectively review, is prejudicing her ability to investigate, prepare substantive motions, and defend against these charges. Given that these allegations are decades old and were investigated over many years by the Government prior to indictment, it should not have been difficult for the Government to produce the relevant discovery by the appropriate deadlines. Its October 7, 2020 letter is simply the harbinger of future delay, obfuscation, and impairment of Ms. Maxwell's ability to defend herself.

**Background Regarding the Lack of Substantive Disclosure by the Government Regarding Counts One Through Four[5]**

The "speaking" indictment in this case is remarkable because it fails to identify an accuser, a specific date that Ms. Maxwell is alleged to have committed a crime, or when anything in furtherance of any alleged conspiracy occurred. The only dates contained in the indictment are the years 1994-1997. Fed.R.Crim.P. 7 provides that "[t]he indictment ... shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." Fed.R.Crim.P. 7(c)(1). A criminal defendant is entitled to an indictment that alleges the essential elements of the charge against him. *See Jones v. United States,* 526 U.S. 227, 232

---

[5] Similar discovery problems exist regarding Counts Five and Six. Evidence of Ms. Maxwell's non-involvement with other Epstein accusers after 1997 would, in fact, undercut the Government's perjury theory because the materiality of any statements must be evaluated in the context of the allegations made in the civil proceeding, *i.e.*, post1997.

The Honorable Alison J. Nathan
October 23, 2020
Page 3

(1999); *Hamling v. United States*, 418 U.S. 87, 117 (1974) ("[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense."); Fed.R.Crim.P.7(c). An indictment that fails to allege the essential elements of the crime charged offends both the Fifth and Sixth Amendments. *See Russell v. United States*, 369 U.S. 749, 760–61 (1962).

Ms. Maxwell recognizes that in most cases the bar for sufficiency of an indictment is very low. It is also true that courts find, in certain cases, that the discovery provided in connection with the matter may cure various pleading deficiencies. *See, e.g., United States v. Jain*, No. 19-CR-59 (PKC), 2019 WL 6888635, at *2 (S.D.N.Y. Dec. 18, 2019) (When supplemented by discovery material, no additional information is necessary for trial preparation or to prevent surprise, so a bill of particulars is unwarranted…".); *United States v. Rodriguez*, No. 99 CR. 367 (DLC), 1999 WL 820558, at *2 (S.D.N.Y. Oct. 13, 1999) ("[T]he indictment, particularly when coupled with the discovery already provided to the defendant, allows [him] both to prepare his defense and to avoid prejudicial surprise at trial. It also gives him sufficient protection from a prosecution that would violate his rights under the Double Jeopardy Clause.").

This, however, is not those cases. Neither the indictment nor the discovery inform Ms. Maxwell about critical information necessary to prepare her defense. For example, the discovery provides no information about exactly when and where the alleged instances of sexual abuse took place. Because there are no dates provided, other than a three-year period beginning 26 years in the past, Ms. Maxwell cannot properly investigate where she and other witnesses were when the alleged crime supposedly occurred. And because the crimes alleged in Counts One through Four are based largely on vaguely stated, non-criminal acts of so-called "grooming" (talking to or being nice to someone, or taking them to a movie), it is impossible to know what act or acts she needs to defend against at trial.

**The Discovery Provided to Date Contains No Corroborating Information and Omits Exculpatory Evidence**

At this point, roughly two months after the Government promised to produce the "core" of their evidence against Ms. Maxwell, their case appears to rest almost exclusively on claims of three unidentified accusers, as to which they have not provided any detail about the dates or exact locations of the alleged encounters, or the specific acts taken by Ms. Maxwell.  Nor has this information been provided in the discovery.  There is no identified witness who claims Ms. Maxwell did any of the things alleged in the indictment. Apart from the bare allegations in the indictment, there are no statements from any witness claiming Ms. Maxwell did anything and there has been almost nothing in the discovery for Ms. Maxwell to investigate.

Importantly, the Government has not produced any of the potentially exculpatory information necessary to conduct an adequate defense investigation. We know, for example that dozens of women accused Jeffrey Epstein of misconduct and that the Government interviewed these women in connection with the Florida proceedings. None of these women implicated Ms. Maxwell in any wrongdoing, nor was Ms. Maxwell accused or involved in the Florida

The Honorable Alison J. Nathan
October 23, 2020
Page 4

investigation. The substance of this information is critical to the defense because it negates the entire theory of prosecution.

The Government has not provided any information about the genesis of the Non-Prosecution Agreement ("NPA") that the Government entered into with Jeffrey Epstein in 2007. This is information will form the basis of substantial defense motions and argument.

According to recent press reports, lawyers for the accusers met with the Government in 2016 during the pendency of ongoing civil litigation against Ms. Maxwell in an effort to convince the Government to open an investigation of Ms. Maxwell – an effort which did not ultimately succeed. Neither the fact of these meetings nor the content has been disclosed. This is significant exculpatory information that is needed to investigate, prepare motions, and defend at trial.[6]

We assume that many of the potential Government trial witnesses either participated or benefited from Epstein's NPA because the plea agreement provided for a mechanism where the claimants were paid money by Epstein, who could not challenge liability, only the amount. The Government presumably has this information which is unquestionably favorable evidence which "includes not only evidence that tends to exculpate the accused, but also evidence that is useful to impeach the credibility of a government witness…." *United States v. Teman*, No. 19-CR-696 (PAE), 2020 WL 3034034, at *43 (S.D.N.Y. June 5, 2020) (citations omitted)*; see also, Bagley v. Lumpkin*, 798 F.2d 1297, 1301 (9th Cir. 1986); *United States v. Librach*, 520 F.2d 550, 554 (8th Cir. 1975).

**The Government is the Team**

In an attempt to minimize what it promised, the Government redefines who it believes is on the Team. The Government claims no responsibility for investigations into these allegations by either the Federal Bureau of Investigation or the Office of the United States Attorney unless part of the Southern District of New York. This stands in stark contrast to the on-the-record assurances that it gave the Court on July 14, 2020:

> "…the materials with respect to the core of the case also include prior investigative files from another investigation in the Southern District of Florida…." Tr. p. 12:10-13

> "The physical files [from the Florida investigation] were shipped to New York and are at the New York F.B.I. office. They have been imaged and scanned and photographed to make sure that a comprehensive review can be conducted, and they are physically in New York so that we can have access to those files." *Id*., 14:10-14

Now, the Government seeks to distance itself from its own files, which are in New York, not Florida, by arguing that they are excused from reviewing or producing information because it

---

[6] Pursuant to this Court's practice standards regarding discovery, Ms. Maxwell, on October 13, 2020, sent a detailed letter requesting the production of discovery materials under Rule 16 of the Federal Rules of Criminal Procedure, *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972). The Government has yet to respond.

The Honorable Alison J. Nathan
October 23, 2020
Page 5

came from another state, agents, or lawyers. In addition, the Government has disclosed the existence, for example, of additional files and investigations including 28 boxes of material from the United States Attorney's Florida office, the Department of Justice, and the United States Attorney's Georgia office.

It is unclear precisely what the Government will do with this material. On the one hand the Government suggests it "intends' to review the files for "materials that warrant disclosure in this case." On the other hand, the Government's letter includes a lengthy disclaimer about why the Government believes it has no obligation to locate, obtain, or produce the discovery. The authority cited by the Government in support of its disclaimer is easily distinguishable. This case does not involve material gathered independently by the SEC, the Public Company Accounting Oversight Board, or the New York Stock Exchange. *See United States v. Collins,* 409 F. Supp. 3d 228, 241-43 (S.D.N.Y. 2019) ("SEC"); *United States v. Middendorf*, No. 18 Cr. 36 (JPO), 2018 WL 3956494, at *4-5 (S.D.N.Y. Aug. 17, 2018) ("PCAOB"); *United States v. Finnerty*, 411 F. Supp. 2d 428, 433 (S.D.N.Y. 2006) ("NYSE").

The Government does not ask the Court to rule on its view of itself and clearly this argument will be held on another day. It is troubling, however, that instead of simply providing the information to Ms. Maxwell the Government goes to great effort to preview why it may not. Ms. Maxwell submits that all this material is discoverable for the reasons already discussed.

**The Method and Timing of the Government's Revised Discovery Plan is Inadequate and Prejudicial to Ms. Maxwell**.

Ms. Maxwell agreed, in advance of her detention hearing, to a trial more than one year from her detention. She agreed to this plan on the representation that she would be provided with full discovery no later than November 9, 2020. *See* ECF #25, "Completion of Discovery to include electronic materials is due by Monday, November 9, 2020." This representation now seems incorrect. The Government, in its letter to the Court, is simply fronting the reasons why the completion of discovery will likely not occur by November 9, 2020.

Ms. Maxwell, when agreeing to a trial in July 2021, outside the time limits established by 18 U.S.C. § 3161, thought that she would be provided with meaningful discovery with sufficient time to prepare. This assumption also seems incorrect. In its letter to the Court the Government proposes that witness statements be provided a mere four weeks prior to trial, for the important witnesses, and eight weeks for the unimportant witnesses.  This is a case with 26-year-old claims, allegedly occurring in multiple states and countries. It is a certainty that material witnesses live in other countries, and that these witnesses cannot be compelled to appear in New York. Securing out-of-country testimony is difficult even where a defendant has been provided with the names of her accusers and details about the allegations. The parties have not yet met and conferred about the timing of disclosure of witness statements, so it is premature to discuss these issues with the Court.  We note, however, that under the Government's proposed timetable, it will be impossible for Ms. Maxwell to adequately prepare for trial.

The Government's suggested timeline also impairs Ms. Maxwell's ability to effectively address significant legal issues including motions to suppress evidence, motions to dismiss the

The Honorable Alison J. Nathan
October 23, 2020
Page 6

indictment, severance of counts, disclosure of expert testimony, disclosure of materials to potential experts, F.R.E. 702 challenges to experts, and various motions *in limine*. Without substantive discovery Ms. Maxwell cannot be prepared to advance or meet any of these matters.

**The Government Has Not Complied with Its Discovery Obligations to Ms. Maxwell in the MDC**.

Setting aside what the Government has not produced, the discovery that it has produced to Ms. Maxwell in the MDC thus far has been incomplete and portions are still unreadable. On August 27, 2020, after the Government had completed its first three discovery productions, the defense alerted the Government that there were a substantial number of documents in all three productions that Ms. Maxwell was unable to access on the hard drives that had been sent to the MDC, and even proposed possible technological solutions that we thought might alleviate the problem. Later that same day, the defense sent the Government a follow-up letter listing the unreadable documents and requesting that the Government immediately reproduce to Ms. Maxwell a new set of all of the discovery materials produced to date in a format that she could access on her computer at the MDC, and shipped a new hard drive to load the replacement production.

The new hard drive was not made available to Ms. Maxwell at the MDC until the late afternoon of September 9, 2020, almost two weeks later. While some of the previously unreadable documents were fixed, Ms. Maxwell still could not access a substantial portion of the discovery materials. The defense sent another letter to the Government on September 21, 2020, listing the unreadable documents and demanding that the problems be addressed. On conference calls on September 22, 2020 and September 29, 2020, the Government advised that it was working on resolving the issues, but that the defense could, in the meantime, create its own laptop computer with a copy of the production that it could bring to the MDC to review the discovery with Ms. Maxwell. The defense responded that, while it would create the laptop, it was the Government's responsibility to ensure that Ms. Maxwell had a complete set of readable discovery which she could access at the MDC herself, without defense counsel present.

It was not until October 2, 2020 that the Government created a replacement set of the unreadable discovery, which it said it would include on the same hard drive as the next production of discovery materials. That production was only made available to Ms. Maxwell in the MDC yesterday afternoon, almost three weeks since the production date. The Government also advised that it had asked MDC legal counsel to send an IT staff member to examine the computer and load any necessary software to view the files on the existing hard drives. But the IT staff member did not look at the computer until October 7, and did not fix the problem. Instead, the IT staff member collected Ms. Maxwell's computer and hard drives and kept them for two days. When Ms. Maxwell inquired about them, the IT staff member said he had been too busy to look at them. And when they were finally returned to Ms. Maxwell in the afternoon on October 9, several files were still unreadable. As of the date of this letter, Ms. Maxwell still does not have a complete, readable set of the discovery produced to date, which severely impairs her ability to prepare her defense. Accordingly, we ask the Court to order the Government to address this problem immediately.

The Honorable Alison J. Nathan
October 23, 2020
Page 7

The BOP, for their part, has only exacerbated these problems. For example, on a legal visit today to review images on a laptop computer provided by the Government, we were told that we could not sit on the same side of the table as Ms. Maxwell to review the images simultaneously. Instead, we were directed by MDC prison guards to sit across from Ms. Maxwell, such that we could not see what she was reviewing or meaningfully discuss the materials.

To compound the problem, we were told by the team leader that defense counsel would not be permitted to pass Ms. Maxwell papers for her to review or sign. This required a break in the meeting so that defense counsel could call the prosecutors to intervene. The prosecutors agreed to call the MDC to ensure that defense counsel could pass legal papers to Ms. Maxwell. But that message was clearly not received by the MDC. After returning to the MDC, we were told that we could pass Ms. Maxwell only documents that required her signature, but not documents that needed her review. It is impossible for Ms. Maxwell to participate in her defense and adequately prepare for trial if she cannot review documents prepared by her attorneys. Accordingly, we ask the Court to order the BOP to allow defense counsel to pass legal papers to Ms. Maxwell for her review during prison visits.

The Government cannot discharge its discovery obligations by partially completing them. The Government must fully complete them and do so on the deadlines they agreed to with the Court. And it goes without saying that the Government cannot discharge its discovery obligations by producing the discovery to defense counsel. Ms. Maxwell has a right to review all the discovery to participate in her own defense. As such, she must have a complete set of readable discovery in the MDC, which she does not have. The Government has created these problems by insisting on detention prior to trial. It is their burden to fix them.

The Government has not requested any relief in its letter of October 7, 2020. Ms. Maxwell anticipates that once the Government responds to her discovery requests and after further conferrals the parties will be in a better position to seek relief from the Court. It may be appropriate for the Court to schedule a status conference after November 9 to consider these issues.

Respectfully Submitted,

Jeffrey S. Pagliuca

CC: Counsel of Record (via ECF)