

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 30, 2020

**BY ECF**
The Honorable Alison J. Nathan
United States District Court
Southern District of New York
United States Courthouse
40 Foley Square
New York, New York 10007

    Re:    *United States v. Ghislaine Maxwell*, 20 Cr. 330 (AJN)

Dear Judge Nathan:

    The Government respectfully submits this letter in response to the defense letter dated October 23, 2020 in the above-referenced case (the "Defense Letter"). For all of its innuendo and accusations, the Defense Letter is at base an effort to preview again motions that the Court has already found to be premature, and to cast the Government's efforts to be transparent with the Court and the defense in a nefarious and deeply misleading light. The Government writes to correct the inaccuracies in the Defense Letter, to update the Court regarding the status of the Government's ongoing discovery productions, and to address the defense complaints regarding the Metropolitan Detention Center ("MDC").

    **1. The Government Has and Will Continue to Satisfy Its Discovery Obligations**

    The Defense Letter raises numerous accusations, including that the Government has "abandon[ed]" the discovery deadlines in this case. (Def. Ltr. 1). The Government strongly disagrees, and notes that it has produced considerable Rule 16 discovery to the defense, which, to date, consists of more than 350,000 pages. Contrary to the defense's assertions, that discovery *does* include both "[c]orroborating [i]nformation" regarding the conduct charged in this case as well as potentially "[e]xculpatory [e]vidence," (Def. Ltr. 3), and the Government remains available to discuss that material with defense counsel. Moreover, in anticipation of the November 9, 2020 discovery deadline, the Government is preparing to make additional productions, including a production of electronic discovery, which will consist of over 1.2 million documents from devices seized from Jeffrey Epstein's residences.[1] In that regard, the Government is currently waiting on

---

[1] Despite the defense's insinuations to the contrary, this is entirely consistent with the schedule ordered by the Court. Specifically, the Court ordered the Government to produce "[i]nitial non-electronic discovery, generally to include search warrant applications and subpoena returns" by August 21, 2020, and the Government made three productions containing those materials, and more, by August 21, 2020. (Order dated July 15, 2020, Dkt. No. 25). It is the Government's expectation that its upcoming productions will substantially complete its production of Rule 16 discovery. As is not uncommon in a case of this magnitude, however, it is possible that the

its outside vendor to image, stamp, and download that electronic discovery, which the Government finished preparing for production last week, from an electronic database. The volume of that production is large and takes significant time for the vendor to prepare. It is therefore possible that the vendor may need a limited amount of additional time to complete that process. That said, the Government has repeatedly informed the vendor of the November 9, 2020 deadline, and the vendor is making every effort to meet it. The Government expects an update from the vendor early next week and will promptly alert the Court and the defense if it appears the vendor will need additional time beyond November 9 to finalize this production. But contrary to the defense's suggestion, the Government has made numerous productions consistent with the discovery schedule in this case and is working diligently to continue to meet the discovery deadlines in this case.

With respect to the defense's other claims and accusations, the Government is prepared to respond in detail at the appropriate stage. But in short, many of the defense's accusations about the Government's allegedly deficient productions are not only factually or legally incorrect, but also include complaints that the Court has already directed the defense to renew only if unable to reach agreement with the Government "[f]ollowing the close of discovery," which has not yet occurred. (Order dated Aug. 25, 2020, Dkt. 49, at 2). Others turn on the defense's baseless attempts to redefine classic *Giglio* or Jencks Act material as Rule 16 discovery, or on a faulty definition of exculpatory material that has no basis in law. (*See* Gov. Ltr. dated Aug. 13, 2020, Dtk. No. 41, at 2-3 (noting law supporting delay of production of witness list until shortly before trial); Gov. Ltr. dated Oct. 7, 2020, Dkt. No. 63, at 2 (noting that Rule 16 does not require production of witness statements or *Giglio*); Gov. Ltr. dated Oct. 20, 2020, Dkt. No. 65, at 1-2 (noting well-established law in this Circuit precluding defense from offering evidence that a defendant did not participate in criminal conduct on a different occasion than that charged by the Government)).[2]

With respect to the Government's October 7 letter regarding other agency files, the defense's claims that the Government has "minimize[d]" what it promised and "redefine[d] who it believes is part of the Prosecution Team" are deeply misleading.[3] (Def. Ltr. 4). To be clear, the Government has always viewed FBI files from both the prior Florida investigation and the more

---

Government may identify additional discoverable materials after the deadline. Should that happen, the Government will promptly produce such materials to the defense.

[2] In addition to repeating previously made arguments, the defense now contends that evidence about the "genesis" of the non-prosecution agreement between the United States Attorney's Office for the Southern District of Florida and Jeffrey Epstein, is exculpatory. (Def. Ltr. 4). The defense makes this assertion despite the fact that neither this Office nor the defendant were party to that agreement, the agreement covered conduct spanning a different period of time than that charged in this case, and the agreement does not mention the defendant by name. To the extent the defense nevertheless believes it is entitled to those materials, the appropriate forum to raise those arguments is on the pretrial motion schedule established by the Court.

[3] It bears mention that at no point did the defense seek to confer with the Government regarding any concerns about the Government's October 7 letter or the Government's planned productions prior to filing the Defense Letter with the Court.

recent New York investigation as part of the Prosecution Team's files, and stated as much at the initial pretrial conference and in its October 7, 2020 letter.[4] Because the Palm Beach Police Department files were incorporated into the Florida FBI files and were so at the time of charging, they are also part of the Prosecution Team's files. Thus, far from trying to "distance itself from its own files" (Def. Ltr. 5), the Government has thoroughly reviewed those files for Rule 16 material and potential *Brady* material, has made discovery productions from those files beginning in August through this month, and is continuing to make productions from those files.

By contrast, and as explained more fully in the Government's October 7 letter, this Prosecution Team—which played no role in the Florida Investigation—had not, prior to August 2020, received the materials identified in that letter from other prosecutor's offices. The Government has now obtained those materials *not* because they constitute Rule 16 discovery, but rather because the Government is prepared to go above and beyond its obligations in an effort to identify any arguable 3500 or *Giglio* material for Government witnesses in this case, or any *Brady* material held in the files of those other offices. The Government is in the process of reviewing those materials, as set forth in its October 7 letter, and to the extent the Government identifies material within those files that constitutes *Giglio* or Jencks Act material, it will produce any such material in advance of trial consistent with any agreed upon or ordered schedule for pretrial disclosures. If the Government identifies potential *Brady* material within those files, the Government will promptly produce it to the defense.

In sum, through its October 7 letter, the Government sought to be transparent about the files it has been collecting and reviewing from other offices for disclosures in this case. The Government fully intends to discharge its obligations carefully, thoughtfully, and thoroughly, and will continue to make itself available to confer with defense counsel regarding discovery.

## 2. The Government Has Made Considerable Efforts to Address Concerns and Complaints Raised by Defense Counsel Regarding the MDC

The Defense Letter raises two complaints that the Government has gone to significant lengths to address over the past several weeks. First, the defense complains about technical issues the defendant has experienced in reviewing discovery at the MDC. (Def. Ltr. 6-7). The Government has worked expeditiously and continuously to provide the defendant with discovery that is reviewable at MDC. In that vein, the Government has repeatedly spoken with MDC legal counsel regarding these issues, and is continuing to work with MDC legal counsel and its own IT staff to ensure that the defendant is able to review all of her discovery, including the subset of files

---

[4] The suggestion to the contrary in the first sentence of the Defense Letter is similarly misleading. (Def. Ltr. 1). At the initial conference, the Government explained that discovery in this case would come, in part, from "prior investigative files from another investigation in the Southern District of Florida," (July 14, 2020 Tr. at 12), and Government counsel clarified, "the files in particular that I am referring to are the files in the possession of the F.B.I. in Florida in connection with the previous investigation of Jeffrey Epstein." (*Id.* at 14). Consistent with that representation, the Government's October 7, 2020 letter noted that the Prosecution Team has reviewed and made discovery productions from those same Florida FBI files. (Dkt. 63 at 5, 6).

that the defendant has had difficulty opening on the MDC computer system.[5]  Because those efforts are already underway and remain ongoing, there is no need for an order directing them.

Second, the Defense Letter complains about issues within the MDC that are not in the Government's control, but that the Government has nevertheless spent significant time addressing at the defense's behest. (Def. Ltr. 6-7). MDC legal counsel has informed the Government that MDC staff has been instructed to allow defense counsel to pass papers to their client for her to review during visits. Accordingly, there is no need for an order to address this issue. MDC legal counsel also noted that the table in the attorney visiting room is equipped with a Plexiglas barrier down the middle to prevent the spread of COVID-19. Attorneys and clients are required to sit on opposite sides of that barrier for their health and safety, but they can position any laptop they may be reviewing in such a way that both the client and attorneys can view it while remaining on opposite sides of the table. Finally, the Government understands from MDC legal counsel that the defendant has access to her discovery for approximately 13 hours per day and therefore receives more time to review her discovery than any other inmate in the MDC.

\* \* \*

The Government is working expeditiously to meet its obligations and discovery deadlines, which it takes very seriously. The Government's primary objective, of course, is to finalize the production of discovery as quickly as possible, while also ensuring that its productions are complete. At any point, should the defense have questions or concerns about the discovery, the Government has been and remains available to discuss any such issues directly with counsel.

Respectfully submitted,

AUDREY STRAUSS
Acting United States Attorney

By: _____
Maurene Comey / Alison Moe / Lara Pomerantz
Assistant United States Attorneys
Southern District of New York
Tel: (212) 637-2324

Cc: All Counsel of Record (By ECF)

---

[5] It is not clear to the Government what documents the defendant is unable to view at this point, but to be clear, the technical issues have, at their worst, impacted the defendant's ability to view only a subset of the hundreds of thousands of pages produced to her. The defense has previously provided the Government with lists of documents that the defendant could not open. In response, the Government has sent the defendant replacement productions with reformatted versions of each identified document after consulting with MDC staff to ensure that the files would be viewable on the MDC computer system. Yesterday, defense counsel informed the Government that the defendant still cannot view certain files, but the defense has not identified all of the specific unreviewable documents. In any event, the Government will continue to work with the defense and the MDC to ensure that the defendant can review all discovery.