# LAW OFFICES OF BOBBI C. STERNHEIM

212-243-1100 • Main
917-306-6666 • Cell
888-587-4737 • Fax

33 West 19th Street - 4th Floor
New York, New York 10011
bc@sternheimlaw.com

December 7, 2020

**BY ECF**

Honorable Alison J. Nathan
United States District Judge
United States Courthouse
40 Foley Square
New York, NY 10007

Re: *United States v. Ghislaine Maxwell*
20 Cr. 330 (AJN)

Dear Judge Nathan:

As counsel for Ghislaine Maxwell, we write in response to the letter from Sophia Papapetru and John Wallace, MDC staff attorneys. (*See* Dkt. 88.) The letter fails to address a number of concerns raised in our October 29th letter to Warden Heriberto Tellez and raised with the Court. The MDC's letter also contains inaccuracies and omissions and raises more questions than it attempts to answer. Rather than paraphrase our letter, we are providing it for the Court's consideration. (*See* Exhibit A.) We renew our request that Warden Tellez respond directly to the Court and counsel and explain why Ms. Maxwell must be detained under such harsh and restrictive conditions.

Using the term "[i]n her current assignment," the letter attempts to present a picture of compliance with total disregard of the deficiencies of Ms. Maxwell's treatment up to this point. While her meals may currently be in accordance with BOP policy, until September they were not. While her weight may currently be fairly consistent, she had lost over 15 pounds, and she is sustaining hair loss. It took approximately six weeks following arrival to the MDC for Ms. Maxwell to be permitted personal calls on par with other inmates; previously she was given two calls per month unless authorized by the warden. While generally permitted to be out of her isolation cell and confined to the day room from 7:00 am to 8:00 pm with one hour of recreation time, general population inmates are permitted to be out of their cells until 9:30 pm and given more extensive recreation time. While flashlight checks may be performed during regular rounds, Ms. Maxwell is subject to such checks every 15 minutes. Further, because Ms. Maxwell is kept in isolation, she in not permitted to participate in activities accorded inmates in general population, such as programming (educational, leisure and wellness), movies, religious services, job assignment.

Touting that Ms. Maxwell is not in contact with "a number of inmates who have tested positive for COVID-19," the MDC's letter totally ignores that she was in contact with a member of her revolving security team who tested positive, necessitating that Ms. Maxwell be quarantined for 14 days. This further diminished her ability to prepare her defense and resulted in cancelled legal visits. While the letter accurately states that one video teleconference (VTC) was

scheduled for August 17th, it fails to report that the VTC was unsuccessful because the audio connection failed; and, despite constant ongoing requests, no subsequent VTCs have been scheduled.

The letter ignores the fact that there is an outbreak of COVID in the MDC, with some 80 inmates testing positive, far in excess of the number of positive cases reported from March to December. *See* https://www.bop.gov/coronavirus/BOP (reported 12/7/20). While Ms. Maxwell is isolated from general population inmates, the crew of security guards who monitor her 24/7 are not subject to mandatory testing, with some guards assigned to her detail rotating in from BOP facilities where inmates and staff have tested positive. And while Ms. Maxwell may not be exposed to other inmates, she is exposed to individuals while escorted to a common area for body scanning, further risking her exposure to COVID.

While reciting BOP policy, the letter fails to address:

- why as an isolated inmate, Ms. Maxwell is subject to repeated searching;

- why Ms. Maxwell is under 24/7 surveillance by a cadre of officers who are required to report her status every 15 minutes;

- why Ms. Maxwell is constantly surveilled by a hand-held camera, even during attorney-client conferences;

- why all of Ms. Maxwell's legal emails were erased from the CorrLinks system;

- why immediately after receiving two nasal swab COVID tests, Ms. Maxwell was required to remove her mask for an in-mouth inspection, heightening her exposure to COVID as she was placed in quarantine;

- why Ms. Maxwell's legal papers are repeatedly inspected.

Warden Tellez has failed to respond to our assertion that the MDC has imposed extraordinarily onerous conditions of constraint on Ms. Maxwell to avoid the catastrophic consequences of negligence occurring at the MCC that resulted in the death of Jeffrey Epstein. The Attorney General of the United States has said as much. Beyond the decision to not place Ms. Maxwell in general population, to which we have no objection, the letter virtually concedes that other restrictions imposed on Ms. Maxwell are not in response to any concern specific to her and tacitly suggests the heightened restrictions are in response to the high-profile nature of the case and the acknowledged failure by the BOP to keep Epstein – an actual threat to himself – alive. As ABC News reported:

> Attorney General William Barr told ABC News on Wednesday that he is keeping a close watch to make sure that Maxwell makes it to trial after Epstein died by suicide in a Manhattan jail while awaiting trial last year. Barr said he was "*livid* " Epstein died while in custody last August. The investigation into Epstein has continued even after his death. I believe very strongly in that case," Barr told ABC News on Wednesday. . . . "And as

you will recall, after he committed suicide, I said that I was confident that we would continue to pursue this case vigorously and pursue anyone who's complicit in it. *And so I'm very happy that we were able to get Ms. Maxwell.*"

*A source said the BOP is taking extra preventative measures to regain the public's trust and confidence as well as preserving the integrity of the Justice Department.*[1]

It is obvious that Ms. Maxwell is bearing the brunt of BOP incompetence. Being "livid" over the death of Epstein, the Department of Justice is seeking to repair the BOP's tarnished reputation by placing Ms. Maxwell under extraordinarily harsh conditions, not in any response to Ms. Maxwell's requirements, but rather in response to the failed handling of a completely different inmate.

Ms. Maxwell has been an exemplary detainee. The psychological and physiological impact of solitary isolation is well documented. Ms. Maxwell has not, by her conduct or by virtue of the charges, brought this type of overly restrictive confinement upon herself. The conditions under which she is detained are punitive, unwarranted, deleteriously impacting her ability to prepare her defense, and interfering with counsel's ability to provide the legal representation to which she, and any other detainee, deserves.

The MDC's letter is insufficient. The warden of the institution bears responsibility for the conditions under which Ms. Maxwell is confined. Warden Tellez should be directed to respond to the numerous concerns that have been brought to his attention.

Very truly yours,

*Bobbi C. Sternheim*
BOBBI C. STERNHEIM

Enc.
cc: All Counsel
    Ms. Sophia Papapetru
    Mr. John Wallace

---

[1] https://abcnews.go.com/US/ghislaine-maxwell-paper-clothes-correctional-center-avoid-suicide/story?id=71699000 (emphasis added).

**EXHIBIT A**

# LAW OFFICES OF BOBBI C. STERNHEIM

212-243-1100 • Main
917-306-6666 • Cell
888-587-4737 • Fax

33 West 19th Street - 4th Floor
New York, New York 10011
bc@sternheimlaw.com

October 29, 2020

<u>Via Email/Regular Mail</u>

Warden Heriberto Tellez
Metropolitan Detention Center
Office of the Warden
80 29th Street
Brooklyn, New York 11232

                              **Re: Ghislaine Maxwell**
                                     **02879-509**

Dear Warden Tellez:

      As counsel for Ghislaine Maxwell, we again seek your urgent attention concerning issues related to conditions of her detention at the MDC.[1] Our immediate goal is to rectify these problems and improve the extraordinarily restrictive conditions under which Ms. Maxwell is presently confined within your facility.

      On July 14, 2020, the Honorable Alison J. Nathan entered an order of detention remanding Ghislaine Maxwell to the custody of the Bureau of Prisons. She has been detained since her arrest on July 2, 2020 and has been incarcerated at MDC under conditions that rival those at USP Florence ADMAX. An exemplary inmate who poses no threat to her personal safety or danger to anyone, she has spent the entirety of her detention in de facto solitary confinement, tantamount to imprisonment as a defendant convicted of capital murder and incarcerated on death row. The conditions of her detention are utterly inappropriate, especially so for a non-violent defendant with no prior criminal history facing non-violent charges a quarter-century old.

      Without a doubt, the BOP has imposed extraordinarily onerous conditions of constraint on Ms. Maxwell to avoid the catastrophic consequences of negligence occurring at the Metropolitan Correctional Center (MCC- Manhattan) which resulted in the death of Jeffrey Epstein. The Attorney General of the United States has said as much.  The BOP has admitted that the sanctions are not in response to a specific threat that Ms. Maxwell has shown; rather they are in response to the high-profile nature of the case and the acknowledged failure by the BOP to keep Epstein – an actual threat to himself – alive.  Ms. Maxwell is bearing the brunt of incompetence on MCC's watch.  As ABC News reported:

---

[1] Previous letters were sent to you on August 28, 2020 and September 9, 2020.

Attorney General William Barr told ABC News on Wednesday that he is keeping a close watch to make sure that Maxwell makes it to trial after Epstein died by suicide in a Manhattan jail while awaiting trial last year. Barr said he was "*livid*" Epstein died while in custody last August. The investigation into Epstein has continued even after his death. "I believe very strongly in that case," Barr told ABC News on Wednesday. "And I was very proud of the work done by the department, the Southern District [of New York], on that case. And as you will recall, after he committed suicide, I said that I was confident that we would continue to pursue this case vigorously and pursue anyone who's complicit in it. And so I'm very happy that we were able to get Ms. Maxwell." *A source said the BOP is taking extra preventative measures to regain the public's trust and confidence as well as preserving the integrity of the Justice Department.*"[2]

What is clear is that the Government is "livid" over the death of Epstein and is seeking to repair its reputation by placing Ms. Maxwell under extraordinarily harsh conditions; not in any response to Ms. Maxwell's requirements, but rather in response to the failed handling of a completely different defendant.

Ms. Maxwell has been an exemplary detainee who has never received a disciplinary demerit. The purpose of this letter is not simply to express complaint due to the institutional violations and denial of rights suffered by Ms. Maxwell in relation to her pretrial incarceration. Rather, it seeks to bring an unwarranted situation to your attention - conditions that are unduly cruel and punitive and circumstances that are deleteriously impacting our client's ability to prepare her defense which, in turn, interferes with our ability to provide the legal representation to which she, and any other detainee, deserves.

We continue our ongoing attempt to resolve these matters without court intervention. We have voiced complaint through the MDC Legal Department, your office, the AUSAs in charge of this case, and the Federal Defenders of New York.[3] Ms. Maxwell has attempted to resolve these matters by following the internal prison procedures, filing written complaints to her unit counselor (BP8), to the warden (BP9), and to the regional office (BP10), to seek remediation as set forth in the BOP manuals and inmate handbook. All to no avail.

**Draconian Conditions of Pretrial Detention**

Ms. Maxwell's conditions of confinement are extraordinarily onerous - and unlike those of any other inmate at the MDC (or in BOP custody, to our knowledge). In fact, in the time that Ms. Maxwell has been at the MDC, she has met with five separate wardens and interim wardens, many who have remarked that they have never seen in their collective years of experience

---

[2] See, "Ghislaine Maxwell given paper clothes at correctional center to avoid suicide attempt: Sources *Jeffrey Epstein, her associate, died by suicide in jail last August."* https://abcnews.go.com/US/ghislaine-maxwell-paper-clothes-correctional-center-avoid-suicide/story?id=71699000 (emphasis added).

[3] The Federal Defenders of New York has been tasked with scheduling of attorney-client communication in connection with ongoing litigation against the MDC based on conditions of confinement during COVID pending in the Eastern District of New York before the Honorable Margo K. Brodie. *See Federal Defenders of New York v. Federal Bureau of Prisons, et al.,* 19-CV-660 (MKB).

2

anything like her current regime.[4] The following conditions and circumstances of her detention, individually and collectively, compromise her opportunity to confer with counsel and prepare her defense for trial and are detrimental to her physical health and psychological well-being:

**De Facto Solitary Confinement:** Ms. Maxwell is the sole inmate in a housing unit. By this Court's order she is permitted out of her approximately 9-by-7-foot isolation cell from 7:00 am to 8:00 pm, however, she is frequently picked up late and returned to her cell promptly. When out of her cell, she is the sole inmate in a fenced off area of an unoccupied dormitory unit, where she eats, showers, and reviews legal work while continually guarded by three officers.

Despite being housed on an entire floor by herself, Ms. Maxwell is forced back into a tiny corner of the floor. She is needlessly kept in a 63-square-foot space. She gets very little sleep, as she is frequently woken up by flashlights every 15 minutes, loud discussions among the guards, and adjustments of the supplemental camera. Ms. Maxwell is effectively being kept in solitary confinement (she has now been housed alone for well over 100 days) and treated as if she were on suicide watch even though she is not and has never been suicidal.

The psychological and physiological impact of solitary confinement is well documented. Ms. Maxwell has not, by her conduct or by virtue of the charges, brought this type of confinement upon herself. This must be considered punishment.

Further, she has been required to stand for an hour waiting for the lieutenant to move her and during "the count" of inmates she is restricted to her bunk despite being housed in a one-inmate unit. She has at times been forced to do a standup count after midnight. Now she is required to remain on a bed for the duration of the count.

**Excessive Scanning and Strip Searching:** Ms. Maxwell is searched more frequently and extensively than any other pretrial detainee of which we are aware. All security scans to which Ms. Maxwell have been subjected have returned negative results. Each time Ms. Maxwell is moved from the isolation cell, she is searched and her cell is searched, and the dormitory is searched prior to when she arrives at the dormitory area. Her cell and possessions including her legal papers are searched after she has been moved to the dormitory. The process is repeated when Ms. Maxwell is brought back to the isolation cell. Recently, Ms. Maxwell was searched at least five separate times and strip-searched twice during one day.

Ms. Maxwell is subjected to a body scans each week, and until recently, she received approximately three per week. We assume these are to see if Ms. Maxwell has secreted anything inside her body. We do not understand why it is necessary for the BOP to administer body scans on such a regular and frequent basis – and thereby repeatedly expose Ms. Maxwell to radiation –

---

[4] Undersigned counsel has represented clients charged with terrorism-related offenses confined to the most restrictive unit in the Metropolitan Correctional Center, Unit 10 South, aka "the terrorist SHU". In addition, counsel is *Curcio* counsel for a client authorized for the death penalty who is in general population at the MCC. Having visited BOP facilities during the past 35 years and representing clients charged with the most heinous and violent crimes of murder, counsel had never had a client subjected to such punitive conditions of pretrial (or post-conviction) incarceration as in the present case.

especially when she is already under constant surveillance and the scans have all come up negative.

In addition, Ms. Maxwell is required to remove her PPE mask during physical searches, subjecting her to higher risk of exposure to COVID. The impact of such unwarranted and disparate treatment is dehumanizing and demoralizing. On October 24th, she was subjected to a wanded, full pat down search yielding negative results. Within 10 minutes, she was subjected to a strip search. The guard performing these searches remarked that never in 28 years of employment as a correctional officer has she heard or witnessed such a thing. During these searches, guards are within inches of Ms. Maxwell. Prevented from wearing a protective mask, she is forced to open her mouth, stick out and move her tongue left and right. She is continuously and unnecessarily exposed to contracting COVID, causing increased stress and vulnerability.

**Deprivation of Food:** Ms. Maxwell's meals have been a persistent problem. She has requested a vegetarian diet, been given non-vegetarian meals, and has been denied food on the prison menu. For example, she often receives meals with no protein and has been given only bread and butter for several meals with no additional food. It was not until Ms. Maxwell was given access to the menu for the first time on September 1st, after she complained that she had been given a non-vegetarian meal, that she realized that she had not been receiving full meals with all of the nutritional components since arriving at MDC.

Moreover, she has often been given spoiled food and has not been fed at all for long stretches of time. For example, a recent weekend she was not fed anything for a period of more than 20 hours from Saturday late afternoon until Sunday at midday. As a result of this inadequate nutrition, she has lost upwards of 15 to 20 pounds since arriving at MDC. For the same reason, she is losing hair as well. Her prison medical records reflect that she is suffering from *telogen effluvium* (hair loss due to stress and poor diet). The lack of food also severely affects her ability to concentrate and review discovery to prepare her defense. Further, she has been denied use of a toothbrush, heightening her risk for tooth decay and gun disease.

In addition, at various times and for various reasons, Ms. Maxwell has been denied access to commissary, the only opportunity to purchase food to supplement her diet. Although the MDC nominally approved Ms. Maxwell's request for permission to purchase from the full prison commissary list in August 2020, in fact, her access to the commissary was extremely limited and requested items were denied to her. None of these restrictions are a result of any misconduct or refusal on her part and deprive her of her only chance to remedy the BOP's failure to provide adequate nutrition. Hunger and poor nutrition inhibit her ability to focus and concentrate and negatively impact her overall health and wellbeing.

**Deprivation of Sleep:** Ms. Maxwell is held in a housing unit in which she is the sole inmate. On various evenings during sleep periods, she is awakened every 15 minutes by flashlights shined into her eyes. The unit is excessively noisy. The noise and constant flashlight checks deprive her of uninterrupted, restful sleep. Repeated disruption of restorative sleep negatively impacts her concentration and ability to focus on document review and defense preparation.

**Deprivation of Communication with Family and Friends:** The impact of Ms. Maxwell's solitary confinement is aggravated by the deprivation of communication with friends and family. She was limited in the number of familial and social calls to a degree far less than any other detainee of which we are aware; and far less than even those who have been convicted of crimes and held in the same facility.

**Compromised Communication with Legal Counsel:** As a consequence of COVID-19, restrictions have been placed on exercise of attorney-client relationship for all inmates but seemingly more so for Ms. Maxwell. Scheduled calls have been mishandled by the institution, resulting in missed legal calls. Despite numerous requests, only one video conference has been scheduled for Ms. Maxwell during the entirety of her detention. Recently, legal calls have been repeatedly denied even when confirmed by the Federal Defenders.

All of Ms. Maxwell's CorrLinks emails – all legal correspondence between Ms. Maxwell and counsel - have been deleted, well before the 180-day period in which they may be purged. During in-person legal conferences, Ms. Maxwell has not been permitted to physically handle and review legal documents provided by counsel. Rather, counsel must hold each page against the plastic partition requiring Ms. Maxwell to read these documents, at times from a distance of approximately four feet through a cloudy plastic shield. This method of discovery review in a case involving hundreds of thousands of documents consumes the majority of a time-limited legal conference. It is painstakingly slow and, often, impossible.

Additionally, Ms. Maxwell is denied water or food and the use of toilet facilities during legal visits. She has been told that if she uses the toilet, the conference will be suspended while she is searched, returned to her unit, and then brought back to the visiting room. This process is time-consuming and limits the duration of the legal conference.

In advance of each meeting, officers review her legal materials, slowly and deliberately, and appear to be reading content and breaching confidentiality of privileged information rather than conducting a routine security check. In addition to experiencing difficulty reviewing electronic discovery because files do not open, the officer delivering a hard drive last week appeared to intentionally let it fall to the ground, damaging to the device.

While meeting with counsel, guards set up a tripod with a camera focused on Ms. Maxwell during the entirety of the legal conference. When counsel inquired why the conference was being recorded, the officer claimed the camera was not recording. When counsel inquired why the camera was being focused on the legal conference, the officer responded that Ms. Maxwell must be watched at all times.

## Conclusion

These arbitrary and onerous restrictions imposed on Ms. Maxwell are contrary to prison rules and protocols, are not imposed on other inmates, and are utterly disproportionate to her detention. At no time has Ms. Maxwell been deemed a threat to herself or others or posed any disciplinary issues. Ironically, she has achieved two of the highest certifications offered at the MDC: suicide counselor and teacher/instructor.

     We request that these onerous conditions be eliminated immediately. Otherwise, please explain why Ms. Maxwell must be detained under such harsh and restrictive conditions.  We request that you address our concerns as quickly as possible.

                                     Very truly yours,

                                     *Bobbi C. Sternheim*
                                     Bobbi C. Sternheim, Esq.

cc: <u>via email</u>
    Mark S. Cohen, Esq.
    Christian R. Everdell, Esq.
    Jeff Pagliuca, Esq.
    Laura Menninger, Esq.