# Exhibit V

William JULIÉ
avocat à la cour – attorney at law

# Ghislaine Maxwell

# Opinion on French Extradition Law

## OVERVIEW

- This report was written pursuant to a request from Olivier Laude, a partner at the French firm Laude Esquier Champey acting on behalf of Cohen & Gresser LLP as counsel for Ms Ghislaine Maxwell, in the context of ongoing bail proceedings involving the latter in the United States of America (hereafter "USA"), where Ms Ghislaine Maxwell is being detained pre-trial on charges relating to her alleged role in sexual activities between Jeffrey Epstein and certain minor girls, from 1994 to 1997.

- Olivier Laude has instructed me to draft an opinion regarding the French extradition procedure and the possibility for Ms Ghislaine Maxwell to be extradited from France to the USA if she were to flee to France after being released on bail in the USA.

- As requested, I have attached a resume. (*See* Exhibit A).

## EXECUTIVE SUMMARY

- The principle against the extradition of French nationals does not constitute a binding rule of international law and is not considered a constitutional principle under French law.

- The extradition of French nationals can be prohibited under the terms of an international treaty. However, the existing Extradition Treaty between France and the USA of 23 April 1996 does not contain such prohibition. As a result, the extradition of a French national to the USA is legally permissible under French law.

- In order to assure the US authorities that she will not attempt to contest her extradition as a French citizen or otherwise, we are informed that Ms Maxwell is about to execute an irrevocable waiver of her right to seek the protection of the French Courts to fight

William JULIÉ

avocat à la cour – attorney at law

any extradition request from the US Government to the competent French Authorities ("The Waiver").  (*See* Exhibit B).

- All extradition requests from the USA to France must be examined by the Investigating Chamber of the competent Court of appeal, which has jurisdiction over the legality of extradition requests in France.

- Under the circumstances of this case, where Ms Maxwell would have fled from the USA to France prior to her trial in violation of her bail conditions, it is highly likely that Ms Maxwell would be placed in custody in France from the earliest stages of the extradition proceedings.

- As the principle against the extradition of nationals is not part of the Extradition Treaty between the USA and France, the Investigating Chamber of the Court of appeal would not oppose the extradition of Ms Ghislaine Maxwell on the ground that she is a French citizen.

- The final decision to extradite and its execution would ultimately be a matter for the executive.

- In the recent past, I am not aware that the French authorities would have had to address the situation in which the United States sought extradition of a French citizen who was also a United States citizen.  Thus, there is no precedent to draw from in that regard.  However, it is our view that under the specific and unique facts of this case, it is highly unlikely that the French government would refuse to issue and execute an extradition decree against Ms Maxwell because of several critical factors, namely: her United States citizenship; the fact that she has signed an irrevocable Waiver in the USA; the fact that in the present situation, the only way the issue would be raised in France is if Ms. Maxwell would have already fled to France in violation of very strict  bail conditions, and the fact that a failure by French authorities to grant extradition would result in an obligation to try Ms. Maxwell before French courts for the conduct described in the Indictment. Finally, France would be inclined to preserving the interests of the USA for obvious diplomatic reasons.

- With regard to timing, if the requested person has consented to extradition, the Investigating Chamber must deliver its ruling no later than 14 working days after the

51, rue Ampère - 75017 paris - tél. 01 88 33 51 80 – fax. 01 88 33 51 81      wj@wjavocats.com -
www.wjavocats.com - palais C1652

2

William JULIÉ

avocat à la cour – attorney at law

person has first appeared before the Public Prosecutor[1]. If the legal conditions of extradition are satisfied, the Investigating Chamber must issue a positive opinion to extradition, which is not subject to appeal.  Following the Investigating Chamber's ruling, there is no specified time frame within which the government must issue an extradition decree. However, if the requesting State emphasizes the urgent nature of the request, the extradition decree is generally issued in only a few weeks. Therefore, the overall procedure is likely to be disposed of expediently under these circumstances.

---

[1] The 14 days period is divided as follows: the requested person must appear before the Public Prosecutor within 2 days of arrest, he or she must be heard by the Investigating Chamber no later than 5 working days after appearing before the Public Prosecutor, and the Investigating Chamber must then deliver its final opinion on the legality of the extradition request within 7 days. This procedure will be explained in more details in Part I of this opinion.

William JULIÉ
avocat à la cour – attorney at law

# Table of Contents

*Background*

    Part I – The French Extradition Procedure
        A. Request for temporary arrest
        B. Application for extradition (Ministerial phase)
        C. Arrest and presentation before the Prosecutor General (beginning of the judicial phase)
        D. Decision of the Investigating Chamber of the competent Court of appeal
        E. Decision of the French government (Extradition Decree)
        F. Possible application before the European Court of Human Rights

    Part II – The likely outcome of an extradition request from the United States of America to France in the case of Ms Ghislaine Maxwell
        A. General bars to extradition
        B. The protection of nationals from extradition under French law and the Extradition Treaty between the USA and France: Lack of an absolute protection

*Conclusion*

51, rue Ampère - 75017 paris - tél. 01 88 33 51 80 – fax. 01 88 33 51 81    wj@wjavocats.com -
www.wjavocats.com - palais C1652

4

William JULIÉ
avocat à la cour – attorney at law

### *Background*

1. At the bail hearing of Ms Ghislaine Maxwell on 14 July 2020, the US Government made the following point in support of its motion to detain the defendant:

   *"The government has spoken with the Department of Justice attachés in the United Kingdom and France. **With respect to France, we have been informed that France will not extradite a French citizen to the United States as a matter of law, even if the defendant is a dual citizen of the United States**."*[2].

2. The international ties of Ms Ghislaine Maxwell and her French nationality appear as one of the grounds for which bail was denied by the Court, which found that:

   *"Ms Maxwell's history and characteristics support the position of her posing a risk of flight. Ms Maxwell has substantial international ties and could facilitate living abroad if she were to flee the United States. She holds multiple foreign citizenships, has familial and personal connections abroad, and owns at least one foreign property of significant value. In particular, **she is a citizen of France, a nation that does not appear to extradite its citizens**"*.

3. The present report intends to evaluate whether the contention that France is a nation that does not extradite its citizens is correct as a matter of law.

4. It will first set out the various steps of the French extradition procedure **(Part I)**, and then outline the grounds on which extradition requests are analyzed under French law, and especially the status of the rule against extradition of nationals, in order to assess the application of these principles to an extradition request made by the USA, in particular where, as in this case, the requested person has executed an irrevocable waiver of his/her right to contest extradition and is present in France only because she fled the United States in violation of her bail conditions. **(Part II)**.

---

[2] At p. 27 of the transcript.

William JULIÉ
avocat à la cour – attorney at law


## Part I – The French Extradition Procedure

5. Extradition requests between the United States and France are governed by the Extradition Treaty between the USA and France signed in Paris on 23 April 1996[3], the Agreement on Extradition between the United States of America and the European Union signed in Washington on 25 June 2003[4], and the Instrument Amending the Treaty of 23 April 1996 between the United States of America and France signed in the Hague on 30 September 2004[5].

6. For matters not covered in these agreements, extradition requests made by the USA are governed by provisions of the French Code of Criminal Procedure (Articles 696 et seq.).


### A. First stage: Request for temporary arrest

7. Under Article 13.1 of the Extradition Treaty between the USA and France, in case of urgency, the requesting State may seek the provisional arrest of the person sought pending the presentation of the request for extradition[6].

8. This procedure can be summarized as follows:

- Based on a request for provisional arrest, the Prosecutor General may order the arrest of the requested person.
- Upon arrest, the requested person must appear within 48 hours before the Prosecutor General, who informs him/her of the existence and contents of the request for temporary arrest and of his/her rights.
- The Prosecutor may decide to release the requested person, based on the relevant flight risks.
- If the Prosecutor considers that the requested person should be detained, the requested person appears before the 1st President of the Court of appeal, who can decide to order either his/her release (without any control, or under judicial

---

[3] The Extradition Treaty between the USA and France entered into force in France on February 1, 2002 (by Decree n° 2002–117 of 29 January 2002).

[4] The object of this agreement is "*to provide for enhancements to cooperation in the context of applicable extradition relations between the Member States and the United States of America governing extradition of offenders*" (Article 1).

[5] The Instrument Amending the Treaty of April 23, 1996 between the USA and France entered into force in France on February 1, 2010 (by Decree n° 2010-490 of 12 May 2010).

[6] A request for provisional arrest may be transmitted directly between the United States Department of Justice (hereafter, "DOJ") and the Ministry of Justice of the French Republic, through INTERPOL or the diplomatic channel.

William JULIÉ
avocat à la cour – attorney at law

supervision, or under house arrest with electronic surveillance) or incarceration at the remand prison of the Court of appeal in which jurisdiction he/she has been apprehended.

- The decision of the 1st President of the Court of Appeal can be challenged before the Investigating Chamber of the Court of Appeal.

- In case of incarceration, the requested person can file an application for release before the Investigating Chamber of the Court of appeal at any time during the extradition procedure.

9. Under Article 13.4 of the Extradition Treaty between the USA and France, if, within 60 days of arrest, the government of the requested State has not received from the requesting State the formal extradition request as well as supporting documents required by the Treaty[7], the requested person is discharged from custody. If the government has received the relevant documents, the normal extradition procedure may begin.

10. If the person has been discharged from custody pursuant to Article 13.4 of the Treaty, such release does not preclude a subsequent re-arrest if an extradition request and supporting documents are delivered at a later date (Article 13.5).

**B. Second stage: Application for extradition (Ministerial phase)**

11. Article 10.1 of the Extradition Treaty between the USA and France provides that "*all requests for extradition shall be submitted through the diplomatic channel*".

12. The Extradition Treaty between the USA and France does not specify which internal procedures must be followed in each contracting State following the transmission of the extradition request through the diplomatic channel pursuant to Article 10. We must therefore refer to provisions of the French Code of Criminal Procedure to outline the procedure followed by French institutions upon receipt of an extradition request made by the USA.

13. Under Article 696-9 of the French Code of Criminal Procedure, the procedure followed in France is as follows:

---

[7] Article 10 of the Extradition Treaty between the USA and France

William JULIÉ
avocat à la cour – attorney at law

- The Minister of Foreign Affairs first verifies that the file is properly constituted in accordance with the requirements of the Extradition Treaty. The Minister of Foreign Affairs only verifies that the request contains all the required documents.
- The file is then transmitted to the Minister of Justice, which verifies the regularity of the request. At this stage, the French nationality of the requested person does not influence the control of the Minister of Justice.
- The Minister of Justice must then forward the file to the Prosecutor General. This obligation to transmit the file to the Prosecutor General is binding, as Article 696-9 uses imperative language requiring the Minister of Justice to do so.

**C. Third stage: Arrest and presentation before the Prosecutor General (beginning of the judicial phase)**

14. Any person arrested pursuant to an extradition application must be transferred to the territorially competent Prosecutor General within 48 hours after the arrest[8].

15. The Prosecutor General informs the requested person, in a language he or she understands, of:
   - the existence and the content of the extradition application;
   - the right to be assisted by an advocate and to have an interview with this advocate immediately;
   - the right to consent to or to oppose his or her extradition, and the legal consequences of consenting to extradition;
   - the right to waive the principle of specialty (according to which the person who is extradited can be prosecuted only for the crimes specified in the extradition request), and the legal consequences of such renunciation.

16. The Prosecutor General hears the statements of the person and his or her counsel, and in particular, the consent or opposition to extradition, which shall be officially recorded.

17. The Prosecutor General decides whether to release the requested person or not. If he considers that the requested person should remain in detention, the requested person then appears before the 1st President of the Court of appeal, who may order the person's release (without any control, or with judicial supervision, or under house arrest with electronic surveillance) or his/her incarceration. The 1st President's decision may be

---

[8] Article 696-10 of the French Code of Criminal Procedure.

William JULIÉ
avocat à la cour – attorney at law

appealed before the Investigating Chamber of the Court of appeal, by the Prosecutor General or the requested person.

**D.  Fourth stage: Decision of the Investigating Chamber of the competent Court of appeal**

18. Once the requested person has declared to the Prosecutor General whether he consents or not to extradition, the Investigating Chamber is immediately seized of the case. This phase varies depending on whether the requested person consents to extradition.

19. If the requested person has declared to the Prosecutor General that he or she consents to extradition, Article 696-13 of the French Code of Criminal Procedure provides that he or she must appear before the Investigating Chamber within 5 working days from the date of presentation before the Prosecutor General. The same provision states that the requested person may also decide to waive the rule of specialty before the Prosecutor General.

20. If, at this appearance, the requested person confirms his or her consent to be extradited and the legal conditions for extradition are fulfilled, the Investigating Chamber informs the person of the legal consequences of such consent and formally acknowledges this consent within 7 days from the date of appearance, unless additional investigations have been ordered[9].

21. The rules of this simplified extradition procedure must be read in light of Article 11 of the Agreement on Extradition between the European Union and the USA of 25 June 2003 ("Simplified extradition procedures"), which states that "*if the person sought consents to be surrendered to the requesting State, the requested State may, in accordance with the principles and procedures provided for under its legal system, surrender the person as expeditiously as possible without further proceedings. The consent of the person sought may include agreement to waiver of protection of the rule of specialty*"[10]. This provision, together with Article 696-13 of the French Code of Criminal Procedure, demonstrates that extradition law is considerate of the requested

---

[9] Article 696-14 of the French Code of Criminal Procedure.
[10] Such Article 11 of the Agreement on Extradition between the European Union and the USA of 25 June 2003 has been directly incorporated in the Extradition Treaty between the USA and France signed in Paris on 23 April 1996 by the Instrument Amending the Treaty of 23 April 1996 between the United States of America and France signed in the Hague on 30 September 2004.

William JULIÉ
avocat à la cour – attorney at law

person's intentions and recognizes that the person may legally waive some of the rights that attach to extradition proceedings.

22. Where the requested person has consented to extradition, the Investigating Chamber's ruling is not subject to appeal or any other legal challenge[11].

23. If the requested person has declared to the Prosecutor General that he or she does not consent to extradition, he or she must appear before the Investigating Chamber within a period of 10 working days from the date of presentation before the Prosecutor[12].

24. If the requested person reiterates to the Investigating Chamber that he or she does not consent to extradition, the Court delivers a reasoned opinion on the extradition request. Unless additional investigations have been ordered, the Court delivers its opinion within one month from the requested person's appearance before it[13].

25. The Investigating Chamber may authorize the requesting State to participate in the hearing. This possibility is expressly provided for in the Agreed Minute on Representation annexed to the Extradition Treaty between the USA and France.

26. The Investigating Chamber issues a positive opinion if it considers that the legal requirements of extradition are satisfied.

### E.  Fifth stage: Decision of the French government

27. Extradition is authorized by a decree of the French Prime Minister upon the advice of the Minister of Justice.

28. The decree may impose conditions to authorize extradition, such as guarantees not to seek or impose the death penalty against the requested person.

29. The decree of extradition can only intervene after the end of the judicial phase.

---

[11] Id.
[12] Article 696-15 of the French Code of Criminal Procedure.
[13] Id.

William JULIÉ
avocat à la cour – attorney at law

30. The requested person has to be handed over by the agents of the requested State within one month after the extradition decree has been notified to the requesting State[14].

---

[14] Article 15.4 of the Extradition Treaty between the USA and France of 23 April 1996.

William JULIÉ
avocat à la cour – attorney at law

**F.  Sixth stage: Possible application before the European Court of Human Rights**

31. Once all domestic remedies have been exhausted, it is possible to file a written application against France before the European Court of Human Rights, within six months from the date of the final decision at the domestic level, alleging the violation of human rights protected by the European Convention of Human Rights, such as the rights to life, to a fair trial, not to be tortured, *etc.*

32. An application before the European Court of Human Rights may be accompanied by a written request for interim measures, pursuant to Rule 39 of the Rules of Court, such as a request to suspend the extradition of the applicant pending the outcome of the proceedings.

William JULIÉ
avocat à la cour – attorney at law

## Part II – The likely outcome of an extradition request from the United States of America to France in the case of Ms Ghislaine Maxwell

33. In this case, if an extradition request were to be transmitted by the USA against Ms Ghislaine Maxwell, the French judicial authorities would most certainly decide that she has to remain in custody given her flight from the USA and the violation of her bail terms and conditions in this requesting State.

34. Having outlined the different stages of the French extradition procedure, the second part of this opinion will examine the likely outcome of an extradition request against the person of Ms Ghislaine Maxwell, if she were to be released on bail and decided to flee from the USA to France. It will first outline the general bars to extradition (**A**), and then analyze the status of the protection of nationals from extradition in the French legal system and in the Extradition Treaty between the USA and France (**B**). It will conclude that Ms Ghislaine Maxwell's extradition from France to the USA would not be legally barred by her French citizenship, and that it is highly unlikely, under the specific and unique circumstances of this case, that French authorities will refuse to enforce an extradition decree.

### A. General bars to extradition

35. Several bars to extradition may classically be invoked before French courts, namely (i) a claim that the requested person would be at risk of human rights violations in the requesting State (with regards to the right to a fair trial and the right to be free from torture, inhumane or degrading treatment); (ii) the dual criminality rule; and (iii) a claim that the extradition request is politically motivated.

### (i)    *Human rights bars*

36. Under the case law of the French *Cour de cassation*, the Investigating Chamber of the Court of appeal must consider allegations of human rights violations pertaining to the conditions of trial and detention in the requesting State[15]. These claims center on the right to a fair trial (Article 6 ECHR)[16] and the right to be free from torture, inhumane

---

[15] Cass. Crim., 26 March 2019, nNo. 19-81731.
[16] *Einhorn v. France*, 16/10/2001, Application No. 71555/01.

William JULIÉ
avocat à la cour – attorney at law

and degrading treatments in custody (Article 3 ECHR)[17]. If the Investigating Chamber finds that the requested person would face a risk of being subject to violations of their Article 3 rights, or that there is a risk of a "*flagrant denial of justice*" in the requesting State, it must deliver a negative opinion to the extradition request.

37. In the recent years, human rights bars to an extradition request made by the United States of America are only the subject to in-depth scrutiny by French courts when the requested person faces the imposition of the death penalty[18] or the imposition of a life imprisonment sentence without the possibility of parole in the USA. We understand that this is not the case here. It can be underlined that, when needed, the USA can commit not to impose such a sentence and that such a commitment suffices to allow extradition.

38. As long as the French government receives necessary assurances related to human rights when requested, such an argument would be very likely to be rejected in this case.

### (ii)   *Dual criminality*

39. A further possible bar to extradition is the dual criminality rule, which requires the conduct in respect of which extradition is sought to constitute a criminal offense in the law of both requested and requesting States.

40. Article 2.1 of the Extradition Treaty between the USA and France expressly states that "*[a]cts shall be extraditable if they are punished under the laws in both States by deprivation of liberty for a maximum of at least one year or by a more severe penalty. If extradition is requested for purposes of enforcing a judgment, the time remaining to be served must be at least six months*."

41. There is no doubt that the conduct referred to in the Grand Jury charges against Ms Ghislaine Maxwell, contained in the Superseding Indictment S1 20 Cr. 330 (AJN), filed on July 8th, 2020, also constitutes criminal conduct under French law, as the crime of "*proxénétisme*".

42. Article 225-5 of the French Criminal Code defines the crime of "*proxénétisme*" as "*the fact, by anyone, in any manner whatsoever: 1° To aid, assist or protect the prostitution*

---

[17] *Soering v United Kingdom,* 07/07/1989, Application No. 14038/88; Cass. Crim., 26 March 2019, No. 19-81731.
[18] In this regard, see Article 7 of the Extradition treaty between France and the USA.

William JULIÉ

avocat à la cour – attorney at law

*of others; 2° To profit from the prostitution of others, to share the proceeds of prostitution or to receive subsidies from a person habitually engaged in prostitution; 3° To hire, entice or divert a person to engage in prostitution or to exert pressure on him or her to engage or continue to engage in prostitution.[19]*" Article 225-6 of the French Criminal Code provides that the crime is also established by "*the fact, by whoever, in any way whatsoever: 1° To act as an intermediary between two persons, one of whom engages in prostitution and the other exploits or remunerates the prostitution of others[20]*".

43. In French law, the conduct charged in all four counts[21] would qualify as the crime of "*proxénétisme*" under Articles 225-5 and 225-6 of the French Criminal Code.

44. When committed against a minor, Article 225-7 of the French Criminal Code provides that the crime is punished by an enhanced sentence, namely a statutory maximum of 10 years imprisonment (as opposed to 7 years, when committed against an adult)[22].

45. Thus, dual criminality would not constitute an obstacle to Ms Ghislaine Maxwell's extradition from France to the USA.

### *(iii)   Political offense and manifest inconsistency*

46. Finally, the requested person may argue that the extradition request is politically motivated, or that the charges contained in the extradition request are manifestly inconsistent with the conduct thereunder.

---

[19] In French, « *Le proxénétisme est le fait, par quiconque, de quelque manière que ce soit :1° D'aider, d'assister ou de protéger la prostitution d'autrui ; 2° De tirer profit de la prostitution d'autrui, d'en partager les produits ou de recevoir des subsides d'une personne se livrant habituellement à la prostitution ; 3° D'embaucher, d'entraîner ou de détourner une personne en vue de la prostitution ou d'exercer sur elle une pression pour qu'elle se prostitue ou continue à le faire* ».

[20] In French, « *Est assimilé au proxénétisme et puni des peines prévues par l'article 225-5 le fait, par quiconque, de quelque manière que ce soit : 1° De faire office d'intermédiaire entre deux personnes dont l'une se livre à la prostitution et l'autre exploite ou rémunère la prostitution d'autrui [...]* ».

[21] Conspiracy to Entice Minors to Travel to Engage in Illegal Sex Acts; Enticement of a Minor to Travel to Engage in Illegal Sex Acts; Conspiracy to Transport Minors with Intent to Engage in Criminal Sexual Activity; Transportation of a Minor with Intent to Engage in Criminal Sexual Activity.

[22] "*Proxénétisme is punishable by ten years imprisonment and a fine of 1,500,000 euros when committed: 1° With regard to a minor [...]*". In French « *Le proxénétisme est puni de dix ans d'emprisonnement et de 1 500 000 euros d'amende lorsqu'il est commis : 1° A l'égard d'un mineur* ».

William JULIÉ
avocat à la cour – attorney at law

47. Article 4 of the Extradition Treaty between the USA and France provides that *"[e]xtradition shall not be granted by France when the offense for which extradition is requested is considered by France as a political offense or as an offense connected with a political offense or as an offense inspired by political motives".*

48. A political motivation claim requires the Investigating Chamber to examine, to some extent, the merits of the case. The Court is also required to look into the merits of the case where the requested person argues that there is a manifest inconsistency between the conduct and the legal offenses in respect of which the extradition is sought[23].

49. The conduct described in the indictment does not appear to be manifestly inconsistent with the offenses charged therein.

50. As to political motivation, French courts have never opposed extradition requests from the USA on this ground[24]. In fact, in the past ten years, only one published decision of the *Cour de cassation* has denied an American extradition request, on the ground that the Investigating Chamber had not verified that the criminal conduct described in the request constituted a crime in France at the time of commission[25]. All other published decisions which have ruled on a request from the USA have granted extradition[26].

51. In light of the elements contained in the Superseding Indictment, Ms Ghislaine Maxwell could not oppose her extradition to the USA on the basis of a political motivation claim, that would have no serious ground, and therefore the Investigating Chamber would not look into the merits of the case against her.

**B.  The protection of nationals from extradition under French law and the Extradition Treaty between the USA and France: Lack of an absolute protection**

---

[23] Cass. Crim., 21 November 2007, No. 07-87540.

[24] See by contrast, a 2016 recent decision of the *Conseil d'Etat* to deny extradition to Russia of a prominent figure of the Kazakh opposition, Moukhtar Abliazov, on the ground that the request was politically motivated (available at: https://www.legifrance.gouv.fr/ceta/id/CETATEXT000033581187/).

**[25] Cass. Crim., 14 October 2015, No. 15-84426.**

**[26] Cass. Crim., 11 March 2020, No. 19-84023 ; Cass. Crim., 21 February 2017, No. 16-87102 ; Cass. Crim., 23 February 2010, No. 09-88021 ; Conseil d'Etat - 2ème et 7ème SSR, 15 April 2016, No. 390860 ; Conseil d'État – 2ème et 7ème SSR, 19 October 2018, No. 421762 ; Cass. Crim., 4 June 2019, No. 18-84398 ; Cass. Crim., 26 November 2019, No. 19-80274 ; Conseil d'État – 2ème et 7ème SSR, 1 June 2011, No. 342419 ; Cass. Crim., 21 June 2016, No. 16-81981 ; Cass. Crim., 4 October 2016, No. 16-84450 ; Cass. Crim., 11 May 2011, No. 11-80942, No. 11-80943 ; Cass. Crim.,  10 May 201, No. 11-80989 ; Conseil d'Etat, - 2ème et 7ème SSR, 7 May 2012, No. 352573 ; Cass. Crim, 13 February 2008, No. 07-88009 ; Cass. Crim., 3 March 2015, No. 14-88308 ; Cass. Crim., 11 June 2013, No. 13-81979.**

William JULIÉ
avocat à la cour – attorney at law

52. Chapter V of the French Code of Criminal Procedure (Articles 696 to 696-47-1) sets out legislative provisions pertaining to extradition.

53. The rule against the extradition of nationals is set out under Article 696-4, which states that extradition shall not be granted when the requested person is a French national, and that nationality shall be assessed at the time of the facts in respect of which extradition is sought (« *Extradition is not granted: 1° When the person sought has the French nationality, the latter being assessed at the time of the offence for which extradition is requested.* »[27]).

54. **The rule under Article 696-4 only applies "***in the absence of an international convention stipulating otherwise***"[28]. Therefore, we must determine whether the rule against the extradition of nationals contained in the French Code of Criminal Procedure applies in respect of an extradition request made by the USA.**

55. Extradition requests between the United States and France are governed by the Extradition Treaty between the USA and France 1996[29], which supersedes French law as mentioned explicitly in Article 696 of the French Code of Criminal Procedure.

56. Article 3(1) of the Extradition Treaty between France and the United States provides:

> "***There is no obligation upon the Requested State to grant the extradition of a person who is a national of the Requested State***, but the executive authority of the United States shall have the power to surrender a national of the United States if, in its discretion, it deems it proper to do so. The nationality of the person sought shall be the nationality of that person at the time the offense was committed*".

---

[27] In French : « *L'extradition n'est pas accordée : 1° Lorsque la personne réclamée a la nationalité française, cette dernière étant appréciée à l'époque de l'infraction pour laquelle l'extradition est requise* ».

[28] Article 696 of the French Code of Criminal Procedure: "*In the absence of an international convention stipulating otherwise, the conditions, procedure and effects of extradition shall be determined by the provisions of this chapter. These provisions shall also apply to matters which would not have been regulated by international conventions*".  (In French, « *En l'absence de convention internationale en stipulant autrement, les conditions, la procédure et les effets de l'extradition sont déterminés par les dispositions du présent chapitre. Ces dispositions s'appliquent également aux points qui n'auraient pas été réglementés par les conventions internationales* »).

[29] The Extradition treaty between the USA and France was signed in Paris on April 23, 1996 and entered into force on February 1, 2002 (by Decree No. 2002-117 of 29 January 2002).

William JULIÉ
avocat à la cour – attorney at law

57. If extradition is refused solely on the basis of the nationality of the person sought, Article 3(2) requires the requested State to submit the case to its authorities for prosecution, if so requested by the requesting State.

58. **Consequently, the Extradition Treaty between France and the USA does not contain any prohibition on the extradition of nationals.** Instead, it merely states that there is no obligation upon the requested State to grant the extradition of a person who is one of its nationals.

59. The Extradition Treaty between France and the USA must therefore be distinguished from several international agreements on extradition ratified by France, which, by contrast, contain a clear rule against the extradition of French citizens[30].

60. For example, France has made the following declaration pursuant to Article 6 of the European Convention on Extradition 1957, which gives Contracting States "*the right to refuse extradition of nationals*":

 "*Extradition shall be refused when the person sought had French nationality at the time of the alleged offence*"[31].

61. Therefore, France does not surrender French citizens under the European Convention on Extradition[32].

62. The Extradition Treaty between France and the USA is similar to other international agreements signed by France which also do not contain a prohibition against the extradition of nationals. These are generally treaties signed with Common law jurisdictions, which do not oppose the extradition of their nationals[33].

---

[30] See, for example, the Extradition treaty between France and Morocco, or the Extradition treaty between France and China.

[31] See France's instrument of ratification of the European Convention on Extradition, deposited on 10 February 1986.

[32] The European Convention on Extradition 1957 is an instrument of the Council of Europe which was signed in Paris on December 13th, 1957 and came into force on April 18th, 1960. The European Convention on Extradition is open to signature by non-Council of Europe States, as such it was ratified by South Africa, Israel, and the Republic of Korea. It was ratified by France on February 10th, 1986.

[33] For example, the Extradition Treaty between France and Canada, signed in Ottawa on 17 November 1988, contains a similar provision to the United States Treaty: "The requested State shall not be bound to extradite its own nationals. Nationality shall be determined as of the date of the offence for which extradition is requested" (Article 3).

William JULIÉ
avocat à la cour – attorney at law

63. The wording of these international agreements, which do not contain a prohibition on the extradition of nationals, raises some important questions. In particular, could France decide to extradite its nationals on the basis of these international agreements without violating applicable international law, European law, or French constitutional law?

64. In order to determine whether the French government may grant an extradition request relating to a French citizen under the Extradition Treaty between France and the USA, it is thus necessary to evaluate the strength and status of the prohibition of the extradition of nationals under (i) applicable international law, (ii) European law, and (iii) French constitutional law.

### (i)   International law

65. As outlined, international treaties pertaining to extradition generally leave Contracting States a right not to extradite their nationals, and State practice largely varies in this regard. Some States are strongly committed to the rule against the extradition of nationals and have conferred the principle constitutional status (Germany, Poland, Greece, Portugal, Estonia, Austria). Others have codified the principle in their national legislation (France, Lebanon, Chili, Qatar, Slovenia). By contrast, many States - in particular, Common law jurisdictions, including the United Kingdom, Australia, and the USA, extradite their own citizens.

66. Thus, there is no uniform rule regarding the extradition of nationals under international law.

### (ii)   European law

67. European law does not prohibit the extradition of nationals either. As mentioned, Article 6 of the European Convention on Extradition 1957 provides States with a discretionary right on whether or not to extradite their own citizens.

68. More interestingly, the European Arrest Warrant Framework Decision of 13 June 2002 (hereafter, "EAW FD"), which governs extradition matters between Member States of the European Union, does not allow Member States the possibility to refuse the surrender of their nationals when the EAW is issued for the purpose of conducting a criminal prosecution. In fact, the surrender of a national who is the subject of criminal proceedings in another Member State of the European Union is at the cornerstone of the EAW FD.

William JULIÉ

avocat à la cour – attorney at law

69. Articles 3 and 4 of the EAW FD set out a number of grounds for refusing the enforcement of a EAW, that are respectively mandatory and optional. Article 4(6) on optional grounds provides that a Member State may refuse the execution of a EAW « *issued for the purposes of execution of a custodial sentence or detention order, where the requested person is staying in, or is a national or a resident of the executing Member State and that State undertakes to execute the sentence or detention order in accordance with its domestic law* ». This article is the only provision in the EAW FD that allows Member States to consider nationality in the execution of a EAW. As such, nationality can only act as a bar to the execution of a EAW issued for the purpose of executing a custodial sentence, not conducting a criminal prosecution.

70. It follows that European Union law does not prohibit the extradition of nationals.

### (iii)     *French constitutional law*

71. As regards the status of the protection of nationals from extradition under French law, the fact that France did not have to change its Constitution or domestic laws regarding the extradition of nationals to incorporate the EAW FD effectively means that the prohibition against the surrender of a French citizen to foreign authorities does not constitute an absolute prohibition per se under French law[34].

72. The *Conseil Constitutionnel* (French constitutional Court) has long considered that France could not ratify an international amendment which went against the Constitution, thereby necessitating a modification of the text of the Constitution prior to the ratification of the purported international treaty[35]. For example, the Constitution had to be amended prior to the ratification of the Rome Statute, to create an exception to the rule that the President of the Republic cannot be found criminally liable in respect of acts committed during his mandate. By contrast, the provisions of the Rome Statute which require Contracting Parties to surrender their nationals when the jurisdiction of the International Criminal Court is established did not trigger an amendment to the French Constitution. Like the EAW FD, the example of the Rome Statute must be taken as evidence that there is no constitutional principle against the extradition of nationals in France.

---

[34] By contrast, several Member States of the EU such as Germany, Poland or Cyprus, had to amend their national constitutions prior to incorporating the EAW FD, following constitutional courts' rulings.
[35] Décision No. 98-408 DC, 22 Janvier 2009.

William JULIÉ
avocat à la cour – attorney at law

73. The Conseil d'Etat was once asked by the French government to deliver an opinion precisely on this point. It stated that the government's practice of refusing the extradition of nationals "*finds no basis in a principle of constitutional value. None of the rights and liberties of the citizen, as proclaimed by the Declaration of the Rights of Men and Citizens of 1789 and by the preamble of the Constitution of 1946, implies that nationals cannot be extradited […] No doubt the laws adopted and the international conventions signed by France attest to the authority of the rule that nationals are not extradited. But, in support of this rule, there are no grounds for considering it as a fundamental principle recognized by the laws of the Republic, having constitutional value by virtue of the Preamble to the Constitution of 1946.* »[36].

74. Therefore, the French Constitution does not prevent the executive from extraditing French citizens.

75. It follows from this opinion and the above that the decision to apply the principle against the extradition of nationals is a matter for the executive, which could choose not to enforce it and thus choose to extradite a national without violating French constitutional law, European law or international law, taking into account the provisions of the Extradition Treaty between the USA and France of 23 April 1996 which supersede French law and do not prohibit the extradition of French nationals.

***Conclusion***

76. In the event that Ms Ghislaine Maxwell were to flee to France and become the subject of an extradition request, and where she has already executed an irrevocable waiver of her right to contest extradition, the Investigating Chamber would have to rule on the legality of the extradition request in accordance with the procedure described in Part I. Because the extradition of French nationals is not prohibited by the Constitution or the Extradition Treaty between the USA and France, the Investigating Chamber would not be legally bound to oppose to the extradition request. It would then become a matter for the French government to decide on whether or not to issue an extradition decree against Ms Ghislaine Maxwell.

77. In the recent past, I am not aware that the French authorities have had to address the situation in which the United States sought extradition of a French citizen who was also

---

[36] « *Avis Consultatif, Conseil d'Etat*, 24 November 1994, No. 356-641 », available at https://www.conseil-etat.fr/jadefile/avisadm/356641.pdf

William JULIÉ
avocat à la cour – attorney at law

a United States citizen.  Thus, there is no precedent to draw from in that regard.  However, it is our view that under the specific and unique facts of this case, it is highly unlikely that the French government would refuse to issue and execute an extradition decree against Ms Maxwell because of several critical factors.

78. First, under the applicable Extradition Treaty between the USA and France, a State party may refuse extradition on the basis of nationality, however if it does so, it is obliged to prosecute the requested person itself, on the basis of the conduct and the allegations contained in the request. In the case of Ms Ghislaine Maxwell, it is highly unlikely that the French government would be inclined to conducting such prosecution, considering that all the relevant facts were committed in the USA, a long time ago, and that witnesses are also located in the USA.

79. Secondly, France is mindful to preserve its good extradition relations with the United States, as evidenced by a number of recent cases we reviewed or conducted in which French competent authorities proved highly cooperative with US authorities. If Ms Ghislaine Maxwell were to flee to France, and the USA decided to issue an extradition request, it would be difficult for French authorities – from a diplomatic point of view – to deny such an extradition request, considering that no legal bar applies.[37]

80. Thirdly, the fact that Ms Ghislaine Maxwell also holds American nationality, and has substantial ties to the USA, would, in all likelihood, be taken into account by the French government as one more element weighing in favor of extradition.

81. Similarly, and fourthly, the fact that Ms Ghislaine Maxwell signed a legally binding Waiver under US law, and would have subsequently fled to France in violation of her bail conditions, could equally be taken into account by the French government as an incentive not to grant Ms Ghislaine Maxwell the benefit of her French nationality as a ban to extradition.

William Julié



---

[37] Of the 36 reported Supreme Court decisions involving extradition requests from the United States in the last 20 years, the French authorities granted extradition in 34 of these cases.  Lower court decisions granting extradition were quashed only twice for procedural deficiencies not at issue in this case.

# **Exhibit A**

**WILLIAM JULIÉ**
**AVOCAT**
**51, rue Ampère, 75017 Paris**

Date of birth: 16.07.1973                                                        **0033678374713**
French English and German national                                    **wj@wjavocats.com**
Set up my own practice in 2002                                          **www.wjavocats.com**
Marathon Runner (Paris, 2013, 2h57)

## EMPLOYMENT

Since 2002                 Founding partner of William Julié Avocats

## INTERNSHIPS & LAW STUDIES

2000-2002               Internships specialized in human rights and criminal law:
- Henri Leclerc (President of the French *Ligue des Droits de l'Homme*)
- Eric Plouvier (Human Rights barrister)

2000                       Admitted to the Paris Bar

1999                       Postgraduate Specialization Diploma: Criminal Law and Criminal Justice Policy in Europe

Thesis Supervisor Mme Delmas Marty, University of Paris Sorbonne

1999                       Certificate of criminal sciences, University of Paris Assas

## EXTRADITION LAW

- Extradition cases in and outside the EU, including USA, Saudi Arabia, China, Russia, South Korea, Japan, Irak, Iran, Lebanon, India

- Regularly appears as French judicial expert before Common law courts on extradition issues and prison detention conditions (UK, Hong Kong, USA)

- Mutual legal assistance: cooperation with various investigation authorities on international cases (DEA, FBI, SFO, OCTRIS), cross-border penitentiary law (repatriation)

- Obtained in 2017 a major change in French extradition law (right to challenge European arrests warrants issued against foreigners - Michael Ofsowitz case)

## CRIMINAL LAW

- Testified before the Parliamentary Enquiry into miscarriages of justice during the Outreau trial

- Fraud cases, including Emmanuel Henning 40 million pounds mobile phone VAT fraud in the UK, and Marseilles 385 Million carbon gas fraud

- Business criminal law (money laundering, bribery and corruption, misappropriation of public funds, misuse of company assets, offenses related to public tenders, stock exchange law)

- Important drug cases involving international issues and organized crimes (Morocco, Lebanon, Holland, Germany, GB), including 4 tons cocaine Tobago clipper case

**LEGAL ADVICE**

- Presidential party members and officials in Dakar, Senegal
- Former Tunisian Ambassador in Paris and prominent Tunisian diplomats
- Members of the Royal family of Saudi Arabia
- Members of leading Lebanese political party
- Opposition leaders in Irak and Lybia
- Italian State

**MEMBERSHIPS**

- International criminal law Officer of the IBA (International Bar Association)
- Member of DELF (Defense extradition Lawyers Forum, UK)
- Co-Chair of the criminal committee of the corporate firms lawyers association (France)
- Member of the ECBA (European Criminal Bar association)
- Member of the Franco British Lawyers Society

# **Exhibit B**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | Docket No. 20-CR-330 (AJN) |
| - against - | |
| GHISLAINE MAXWELL, | **AFFIDAVIT AND WAIVER OF EXTRADITION** |
| Defendant. | |

Ghislaine Maxwell, being duly sworn, deposes and says:

1.      I am the named defendant in the above-captioned case.  I am a citizen of the United States, the United Kingdom, and France.  I have resided in the United States since approximately 1991.  I am currently incarcerated at the Metropolitan Detention Center in Brooklyn, New York.

2.      I have reviewed with my counsel, Mark S. Cohen and Christian R. Everdell of Cohen & Gresser, LLP, the charges contained in the superseding indictment in the above-captioned case (the "Indictment").  In addition, I have been informed by United States and French counsel, with whom I am satisfied, of my rights under French law on extradition, under the Extradition Treaty between the United States of America and France signed 23 April 1996 (the "Treaty") , under the Agreement on Extradition between the United States of America and the European Union signed 25 June 2003 (the "USA/EU Agreement on Extradition"), under the Instrument Amending the Treaty of April 23, 1996 between the United States of America and France signed 30 September 2004 (the "Instrument Amending the Treaty"), and under the provisions of the French Code of Criminal Procedure.  I understand that, in proceedings in France under the aforementioned provisions in respect of an extradition request by the United States

under the Treaty as amended by the Instrument Amending the Treaty and/or under the USA/EU

Agreement on Extradition in connection with the Indictment, I would be entitled to argue that I

should not be extradited to the United States on the ground of my French citizenship.  I

understand that in the absence of my consent to extradition, I cannot be surrendered to the United

States authorities unless and until a court in France issues a ruling finding that there are no bars to

my extradition, followed by an extradition decree issued by the French government.

      3.      If I am released on bail in connection with the Indictment, I hereby voluntarily and

irrevocably waive any rights to contest any extradition request by the United States under the

Treaty as amended by the Instrument Amending the Treaty as well as under the USA/EU

Agreement on Extradition with respect to the offenses charged in the Indictment.  Specifically, I

consent to extradition in accordance with Article 11 of the USA/EU Agreement on Extradition as

incorporated in the Treaty by the Instrument Amending the Treaty, in connection with the

offenses charged in the Indictment.  In addition, to the extent that it might be relevant, I waive

any rights to assert that any bars to extradition apply, and I confirm that no such bars apply.

      4.      In the event that I violate my bail conditions after being released, I understand that

the purpose of this affidavit is for the government to offer it to the authorities in France when my

extradition is sought by the United States government in relation to the charges in the Indictment.

I understand that France authorities may use this affidavit to assist in determining my

extraditability.

      5.      I make this waiver freely and voluntarily, after having consulted with counsel.

Dated this ___ day of December 2020.

_____
Ghislaine Maxwell

I hereby certify that on this ___ day of December 2020, Ghislaine Maxwell personally appeared

before me and made her oath in due form of law that the statements herein are true.


                                                              _____

                                                              The Honorable Alison J. Nathan
                                                              United States District Judge
                                                              Southern District of New York