

**MINISTÈRE DE LA JUSTICE**
*Liberté*
*Égalité*
*Fraternité*

**Direction des affaires criminelles et des grâces**

Sous-direction de la justice pénale spécialisée
Bureau de l'entraide pénale internationale

Paris, le 11 décembre 2020

Monsieur le garde des Sceaux, ministre de la Justice

à

Department of Justice (D.O.J)

*Par l'intermédiaire d'Andrew FINKELMAN, magistrat de liaison*
*Ambassade des Etats-Unis d'Amérique à Paris*

J'ai l'honneur de vous informer de ce que l'article 696-2 du code de procédure pénale français prévoit que la France peut extrader « *toute personne n'ayant pas la nationalité française* », étant précisé que la nationalité s'apprécie au jour de la commission des faits pour lesquels l'extradition est demandée (article 696-4 1°).

Le code de procédure pénale français proscrit donc de manière absolue l'extradition l'extradition d'une personne qui avait la nationalité française au moment de la commission des faits pour lesquels l'extradition est demandée.

La loi pénale étant d'interprétation stricte, il n'y a pas lieu de discriminer entre les nationaux et les binationaux. A partir du moment où elle était française au moment des faits, la personne réclamée est inextradable, peu importe qu'elle soit titulaire d'une ou de plusieurs autres nationalités.

Lorsque le refus d'extrader est fondé sur la nationalité de la personne réclamée, la France applique le principe « aut tradere, aut judicare » selon lequel l'Etat qui refuse la remise doit juger la personne. Ainsi, l'article 113-6 du code pénal donne compétence aux juridictions françaises pour juger des faits commis à l'étranger par un auteur de nationalité française.

Certains Etats, en général de droit anglo-saxon, acceptent d'extrader leurs nationaux et n'ont en revanche pas compétence pour juger les faits commis par leurs ressortissants sur un territoire étranger. C'est notamment le cas des Etats-Unis d'Amérique.

13, place Vendôme - 75042 Paris Cedex 01
Téléphone : 01 44 77 60 60
www.justice.gouv.fr

L'article 3 du Traité bilatéral d'extradition signé le 23 avril 1996 entre les Etats-Unis d'Amérique et la France stipule que « *l'Etat requis n'est pas tenu d'accorder l'extradition de l'un de ses ressortissants, mais le Pouvoir exécutif des Etats-Unis a la faculté de le faire, discrétionnairement, s'il le juge approprié* ».

En application de ce Traité et du principe général de non-extradition des nationaux en droit français, la France refuse systématiquement d'accorder l'extradition de ressortissants français aux autorités judiciaires américaines tandis que les autorités américaines acceptent régulièrement d'extrader leurs ressortissants vers la France.

Il convient de faire observer que le principe de non-extradition des nationaux vaut non seulement à l'égard des Etats-Unis mais également de tous les autres Etats à l'exception des Etats-membres de l'Union européenne, aux termes de la loi du 9 mars 2004 transposant la décision-cadre du 13 juin 2002 sur le mandat d'arrêt européen qui prévoit que la remise de la personne réclamée ne pourra pas être refusée au seul motif de sa nationalité française.

Ce tempérament au principe de non-extradition des nationaux s'inscrit dans le contexte particulier de la construction de l'espace judiciaire européen qui s'inscrit lui-même dans un processus d'intégration politique très spécifique entre les Etats-membres de l'Union européenne. Ce haut niveau d'intégration politique existant entre les Etats membres de l'Union européenne va de pair avec une certaine homogénéité, au sein de ces Etats, en matière d'échelle des peines ainsi qu'en ce qui concerne les modalités d'aménagement de peine, les Etats membres étant liés par les mêmes obligations internationales (notamment les obligations découlant de la convention européenne de sauvegarde des droits de l'homme et des libertés fondamentales et de la jurisprudence de la Cour européenne des droits de l'homme).

En tout état de cause, le principe de non-extradition des nationaux est un principe du droit de l'extradition auquel la France n'a jamais dérogé en dehors du cadre de l'Union européenne.

Le Chef du Bureau de l'Entraide Pénale Intenationale

Philippe JAEGLÉ

**[logo]**
**MINISTRY**
**OF JUSTICE**
*Liberty*
*Equality*
*Fraternity*

**Directorate of Criminal Affairs and Pardons**

Specialized Criminal Justice Sub-Directorate
Office for the International Mutual Assistance in Criminal Matters

Paris, December 11, 2020

Mr. Keeper of the Seals, Minister of Justice

to

Department of Justice (DOJ)

*Through Andrew FINKELMAN, Liaison Magistrate*
*Embassy of the United States of America in Paris*

I have the honor to inform you that Article 696-2 of the French Code of Criminal Procedure provides that France can extradite "any person not having French nationality," it being specified that nationality is assessed on the day of the commission of the acts for which extradition is requested (Article 696-4 1°).

The French Code of Criminal Procedure therefore absolutely prohibits the extradition of a person who had French nationality at the time of the commission of the acts for which extradition is requested.

The penal law being of strict interpretation, there is no reason to discriminate between nationals and binationals. From the moment they were French at the time of the facts, the person claimed is inextradible, regardless of whether they hold one or more nationalities.

When the refusal to extradite is based on the nationality of the requested person, France applies the principle "*aut tradere, aut judicar*" according to which the State which refuses the surrender must judge the person. Thus, Article 113-6 of the Penal Code gives competence to the French courts to judge acts committed abroad by a person of French nationality.

Some countries, generally under Anglo-Saxon law, agree to extradite their nationals and, at the same time, have no jurisdiction to judge acts committed by their nationals on foreign territory. This is particularly the case of the United States of America.

13, place Vendôme - 75042 Paris Cedex 01
Telephone: 01 44 77 60 60
www.justice-gouv.fr

Article 3 of the Bilateral Extradition Treaty signed on April 23, 1996 between the United States of America and France stipulates that "The requested State is not bound to grant the extradition of any of its nationals, but the Executive Power of the United States has the right to do so at its discretion if it deems it appropriate."

In application of this Treaty and of the general principle of non-extradition of nationals under French law, France systematically refuses to grant the extradition of French nationals to the American judicial authorities, while the American authorities regularly agree to extradite their nationals to France.

It should be noted that the principle of non-extradition of nationals applies not only to the United States but also to all other States except the Member States of the European Union under the terms of the Law of March 9, 2004 transposing the framework decision of June 13, 2002 on the European arrest warrant, which provides that the surrender of the requested person may not be refused on the sole ground of his French nationality.

This principle of non-extradition of nationals fits into the context of the construction of the European judicial area which itself is part of a very specific process of political integration between the Member States of the European Union. This high level of political integration existing between the Member States of the European Union goes hand in hand with a certain homogeneity within these States in terms of the scale of penalties as well as in terms of adjustment of penalty methods; the member states being bound by the same international obligations (in particular the obligations arising from the European Convention for the Protection of Human Rights and Fundamental Freedoms and from the case law of the European Court of Human Rights).

In any event, the principle of non-extradition of nationals is a principle of extradition law from which France has never deviated outside the framework of the European Union.

Office for the International Mutual Assistance in Criminal Matters

Philippe JAEGLÉ
[signature]