UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
              :
UNITED STATES OF AMERICA,      :
              :   20 Cr. 330 (AJN)
     v.                  :
              :
GHISLAINE MAXWELL,            :
              :
        Defendant.           :
              :
------------------------------------------------------------x

# REPLY MEMORANDUM OF GHISLAINE MAXWELL
# IN SUPPORT OF HER RENEWED MOTION FOR BAIL

Mark S. Cohen
Christian R. Everdell
COHEN & GRESSER LLP
800 Third Avenue
New York, NY 10022
Phone: 212-957-7600

Jeffrey S. Pagliuca
Laura A. Menninger
HADDON, MORGAN & FOREMAN P.C.
150 East 10th Avenue
Denver, CO 80203
Phone: 303-831-7364

Bobbi C. Sternheim
Law Offices of Bobbi C. Sternheim
33 West 19th Street - 4th Floor
New York, NY 10011
Phone: 212-243-1100

*Attorneys for Ghislaine Maxwell*

**TABLE OF CONTENTS**

                                                        **Page**

PRELIMINARY STATEMENT .................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

I.      The Government Concedes that Its Case Relies Almost Exclusively on the Testimony of Three Witnesses ........................................................................................... 2

II.     The Government Has Not Carried Its Burden ................................................................... 4

          A.      The Government Asks the Court to Ignore Ms. Maxwell's Substantial Ties to the United States, Including Her Spouse ■■■■■ ................. 4

          B.      Ms. Maxwell Has Thoroughly Disclosed Her Finances and Pledged All of Her and Her Spouse's Assets in Support of Her Bond .................................. 5

          C.      The Government's Assertion that Ms. Maxwell Is "Adept" at Hiding and Therefore a Flight Risk Is Specious ................................................................... 7

          D.      Refusal of Extradition from France or the United Kingdom Is Highly Unlikely ............................................................................................................. 8

          E.      The Recent COVID Surge at MDC Further Justifies Bail ............................... 10

CONCLUSION ............................................................................................................................. 10

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*United States v. Chen,*
  820 F. Supp. 1205 (N.D. Cal. 1992) ................................................................................... 10

*United States v. Orta,*
  760 F.2d 887 (8th Cir. 1985) ................................................................................................ 1

## **TABLE OF EXHIBITS**

Exhibit A.    Julié Addendum Opinion (France)

Exhibit B.    Perry Addendum Opinion (U.K.)

**PRELIMINARY STATEMENT**

The only issue before the Court is whether conditions exist that can reasonably assure Ms. Maxwell's appearance during this case. On this renewed application, Ms. Maxwell has put before the Court a significant bail package, supported by detailed submissions, which warrant her release on strict conditions. She and her spouse have committed to signing a bond in the full amount of their net worth, regardless of the ownership of the underlying assets. She has proffered seven additional sureties, consisting of her family and close friends, many of whom are U.S. citizens and long-time residents, who have come forward at great personal risk and have pledged meaningful assets. The government does not challenge the good faith and bona fides of these proposed sureties. She has provided a detailed report from a respected accounting firm, which was further reviewed by a former IRS special agent, setting forth a statement of her financial condition, supported by voluminous documentation. The government does not challenge the report's findings, nor its underlying documentation. She has agreed, in writing, to give up any right she has or could have to contest extradition and submit to all other standard travel restrictions. And she has noted that a key representation made by the government at the initial bail hearing as to the strength of its evidence is simply not accurate – [REDACTED] and there is no "significant contemporaneous documentary evidence" that corroborates its case.

With regard to any other defendant, this record would readily support release on strict bail conditions, perhaps even on consent. But this is Ghislaine Maxwell, the apparent substitute for Jeffrey Epstein. So, instead, in its response the government urges the Court to disregard the significant additional evidence proffered to the Court and further argues that a defendant cannot be eligible for bail (apparently on any conditions), unless she can provide an absolute guarantee against all risks. But this is not the legal standard. *United States v. Orta*, 760 F.2d 887, 888 n.4,

892-93 (8th Cir. 1985) ("The legal standard required by the [Bail Reform] Act is one of reasonable assurances, not absolute guarantees."). Under, the Bail Reform Act, a defendant must be released unless there are "no conditions" that would reasonably assure her presence. Here, the proposed package satisfies the actual governing standard, and the Court should grant bail.

## ARGUMENT

I. **The Government Concedes that Its Case Relies Almost Exclusively on the Testimony of Three Witnesses**

In evaluating the strength of the government's case in its prior ruling, the Court relied on the government's proffer that the testimony of the three accusers would be corroborated by "*significant* contemporaneous documentary evidence." (Tr. 82 (emphasis added)). The government now expressly retreats from this position. It is abundantly clear from the government's response that it has no "significant contemporaneous documentary evidence"—in fact, it has virtually no documentary corroboration at all—and that its case against Ms. Maxwell is based almost exclusively on the recollections of the three accusers, who remain unidentified, concerning events that took place over 25 years ago. Moreover, the government offers no specificity about when within the four-year period of the charged conspiracy the alleged incidents of abuse took place. This, alone, is grounds for the Court to reconsider its prior ruling.

The few examples of documentary corroboration referenced by the government—which are the same examples that the government touted at the initial bail hearing—pertain to Epstein, not Ms. Maxwell. The government concedes that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Gov. Mem. at 11 (emphasis added)). The government further states that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.* (emphasis added)). The strength of the government's case against Jeffrey Epstein is not at issue

2

here. Whether or not the accusers' recollections as to Epstein are corroborated is irrelevant to the strength of the evidence against Ms. Maxwell.

The only purported corroboration that pertains in any way to Ms. Maxwell is of marginal value. The government references ████████████████████████████████ ████ (*Id*. at 11). But even the government concedes that, at best, ████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████[1]

It is clear that the only evidence that Ms. Maxwell allegedly "groomed" the accusers or knowingly facilitated or participated in Epstein's sexual abuse of minors will come solely from the testimony of the three accusers. The government's case against Ms. Maxwell therefore rests entirely on the credibility and reliability of these three witnesses.[2] Moreover, the substantive counts (Counts Two and Four) are based on the testimony of only *one* witness, Minor Victim-1. It is also telling that the government does not even attempt to rebut the defense's assertion that it did not begin issuing subpoenas for documents related to Ms. Maxwell until just after the death of Jeffrey Epstein. This confirms that the case against Ms. Maxwell was assembled after the fact

---

[1] The government also proffers that they will have "additional witnesses." (Gov. Mem. at 11). But these are not "outcry" witnesses who will corroborate a contemporaneous account of abuse from one or more of the accusers. Instead, they will testify only that "both [Ms. Maxwell] and Epstein knew and interacted with certain minor victims when those victims were minors." (*Id*.). Again, the fact that Ms. Maxwell may have "met and interacted with" someone when they were a minor proves absolutely nothing.

[2] One of the witnesses has submitted a letter to the Court. While the CVRA permits the right to be heard, the letter should be given no legal weight in the Court's bail analysis. *See United States v. Turner*, 367 F. Supp. 2d 319, 331-32 (E.D.N.Y. 2005)

as a substitute for its prosecution of Epstein.[3] The government's case is not what it represented to the Court at the initial bail hearing, which should weigh heavily in favor of granting bail.[4]

## II. The Government Has Not Carried Its Burden

### A. The Government Asks the Court to Ignore Ms. Maxwell's Substantial Ties to the United States, Including Her Spouse ███████

The government incorrectly argues that the renewed bail application offers no new information and that the Court was "already aware of" the defendant's friends and family in the United States. (Gov. Mem. at 13). The government ignores that, since the initial bail hearing, Ms. Maxwell's spouse has come forward as a co-signor and has submitted a detailed letter describing his committed relationship with Ms. Maxwell for over four years and the important role she has played, and continues to play, ███████ ███████ It also ignores that several of Ms. Maxwell's closest friends and family, many of whom are U.S. citizens and residents, have also come forward, at considerable personal risk, to support her bond with pledges of assets or letters of support. This information, which was not available to the Court at the time of the initial hearing, demonstrates Ms. Maxwell's strong ties to this country and weighs heavily in favor of bail.

Rather than address the merits, the government attempts to dismiss the significance of Ms. Maxwell's relationship with her spouse, noting that Ms. Maxwell told Pretrial Services that she was in the process of getting a divorce and that her spouse did not step forward as a co-signer at the initial bail hearing. (*Id.* at 13-14). The government is entirely

---

[3] Moreover, the government failure to request ███████ regardless of whether it was legally obligated to do so, shows that the government has accepted the accusers' accounts without serious scrutiny. Given the government's ongoing *Brady* obligations, it is unsettling that the government would simply accept ███████ ███████

[4] Contrary to the government's assertion, the defense has not abandoned our legal challenges to the indictment. (Gov. Mem. at 10 n.1). We believe we have strong arguments that have only gotten stronger with the production of discovery. We will be making those arguments to the Court in our pretrial motions to be filed next month.

4

mistaken. Prior to her arrest, Ms. Maxwell and her spouse had discussed the idea of getting a divorce as an additional way to create distance between Ms. Maxwell and her spouse to protect him ▮▮▮ from the terrible consequences of being associated with her. Nevertheless, in the weeks following the initial bail hearing, ▮▮▮

▮▮▮ She and her spouse therefore had no reason to continue discussing divorce, which neither of them wanted in the first place. Nor was there any reason for her spouse to refrain from stepping forward as a co-signer. In sum, the government has offered nothing but unsupported innuendo to suggest that Ms. Maxwell's relationship with her spouse ▮▮▮ is not a powerful tie to this country.

The government's assertion that Ms. Maxwell must not have a close relationship with ▮▮▮ is particularly callous and belied by the facts. (Gov. Mem. at 14). As her spouse explains, ▮▮▮ (Ex. A ¶ 12). ▮▮▮

### B. Ms. Maxwell Has Thoroughly Disclosed Her Finances and Pledged All of Her and Her Spouse's Assets in Support of Her Bond

The government's attempts to rebut the financial condition report are unavailing. Significantly, the government does not contest the accuracy of the report, nor the voluminous supporting documentation. In fact, the government has proffered nothing that calls into question the report's detailed account of Ms. Maxwell and her spouse's assets for the last five years, which addresses one of the Court's principal reasons for denying bail.

Rather than question the report itself, the government attempts to argue that Ms. Maxwell deceived the Court and Pretrial Services about her assets. (Gov. Mem. at 22-23).

5

The report shows nothing of the sort. Ms. Maxwell, who was sitting in a jail cell at the time, was asked by Pretrial Services to estimate her assets. Accordingly, she gave her best estimate of the assets she held in her own name, which the government concedes she did with remarkable accuracy considering that she had not reviewed her financial statements.[5]

The government's arguments further confirm that it has lost all objectivity and will view at any fact involving Ms. Maxwell in the worst possible light. For example, the government asserts that Ms. Maxwell has demonstrated "sophistication in hiding her assets" and characterizes her transfers to a trust as "funneling" assets to her spouse to "hide her true wealth." (*Id.* at 24). There is nothing unusual, let alone nefarious or even particularly sophisticated about transferring assets into a trust or a spouse. Indeed, Ms. Maxwell fully disclosed these transactions on her joint tax returns. More importantly, all of the assets disclosed in the financial report, whether they are owned by Ms. Maxwell or her spouse, are included in the bond amount and are subject to forfeiture if she flees.

The government further argues that the financial condition report shows that Ms. Maxwell has access to millions of dollars of "unrestrained funds" that she could use to flee the country and reimburse any of her sureties for the loss of their security. (*Id.* at 23). That characterization is simply untrue. First, as disclosed in the financial report, Ms. Maxwell has procured significant loans on the basis of a negative pledge over her London property. Second, the $4 million controlled by her spouse ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ could only be liquidated with considerable difficulty.

The government also faults Ms. Maxwell for not including a valuation of future contingent assets and income that may never materialize. (*Id.* at 23-24). For example, ▮

---

[5] Moreover, for the reasons discussed in our initial memorandum, Ms. Maxwell was reluctant to discuss anything about her spouse and clearly expressed her reluctance to Pretrial Services early on in the interview.

6

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████ Similarly, the financial report does not include a future income stream for Ms. Maxwell or her spouse because it presents only historical and current assets. Even so, Ms. Maxwell has no certain future income stream. Her spouse ████████████████████████████████████████ ████ and has had to liquidate his existing investments to help Ms. Maxwell. Finally, the reference to ████████ is gratuitous. Ms. Maxwell had no knowledge of ████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████

But the larger point is this: Ms. Maxwell has proposed a substantial bail package with multiple co-signers and significant security. She and her spouse have pledged all of their assets in support of the bond. Ms. Maxwell's wealth is not a reason to deny her bail. It is a reason to set appropriately strict conditions that will result in significant financial consequences to Ms. Maxwell and her friends and family if she leaves the country. The proposed bail package does exactly that.[6]

### C. The Government's Assertion that Ms. Maxwell Is "Adept" at Hiding and Therefore a Flight Risk Is Specious

The government continues to assert the sinister narrative that Ms. Maxwell had "an expertise at remaining hidden," and that it would therefore be easy for her to become a fugitive.

---

[6] The government's argument that her spouse's moral suasion is diminished because Ms. Maxwell brought the majority of assets to the relationship is nonsensical. (*Id*. at 24-25). Regardless of whose money it was to begin with, all of the assets of Ms. Maxwell and her spouse will be forfeited if she flees and her spouse ████████████ will be left with nothing. Furthermore, the government's assertion that they could not verify the spouse's financial information because Ms. Maxwell did not provide his current banking information is false. (*Id*. at 24 n.9). The defense provided the spouse's current banking records and only redacted the name of the bank.

(Gov. Mem. at 20). The government suggests that purchasing a home using a trust and providing a pseudonym to a real estate broker are indicative of her willingness and ability to live in hiding and somehow forecast Ms. Maxwell's intention to flee. (*Id.*). These arguments are just further evidence that the government will frame every fact about Ms. Maxwell in the worst possible light. As the defense has already argued extensively in its initial brief, these steps were borne out of necessity to protect Ms. Maxwell and her family from harassment and physical threats. Moreover, they are not predictive of flight. There is simply no basis to conclude, based on the measures that Ms. Maxwell was forced to take to protect herself and her family, that she would then willingly abandon that family to become a fugitive from justice. To the contrary, she remained in the country precisely to remain close to them and to defend her case.

        **D.**      **Refusal of Extradition from France or the United Kingdom Is Highly Unlikely**

The government dismisses Ms. Maxwell's willingness to waive her extradition rights as to France and the United Kingdom as "meaningless" because Ms. Maxwell cannot guarantee with absolute certainty that either country will enforce the waiver. (Gov. Mem. at 14). The government misses the point: Ms. Maxwell's willingness to do everything she can to eliminate her ability to refuse extradition to the fullest extent possible demonstrates her firm commitment to remain in this country to face the charges against her and, as Ms. Maxwell's French and U.K. experts confirm, there is every reason to believe that both authorities would consider the waiver as part of any extradition request.

In an attempt to counter William Julié's expert report stating it is "highly unlikely" that the French government would refuse to extradite Ms. Maxwell (Def. Mem., Ex. V at 2), the government attaches a letter from the French Ministry of Justice ("MOJ") that references neither Mr. Julié's report nor Ms. Maxwell, but states generally that the French Code of Criminal Procedure "absolutely prohibits" the extradition of a French national. (Gov. Mem., Ex. B). But

8

as Mr. Julié's accompanying rebuttal report explains (*see* Ex. A), the MOJ letter ignores that the extradition provisions in French Code of Criminal Procedure apply *only in the absence of an international agreement providing otherwise*. (*Id*. at 1). This rule is necessitated by the French Constitution, which requires that international agreements prevail over national legislation. (*Id*.). Thus, extradition of a French national to the United States is legally permissible if the extradition treaty between the United States and France provides for it—which it does. (*Id*. at 3).

The government's reliance on a 2006 case—in which France refused to extradite a French national who was also a U.S. citizen—provides no precedent as to how a French court would rule on an extradition request regarding Ms. Maxwell because, as Mr. Julié notes, the United States did not challenge the refusal in the French courts. (*Id*. at 2-3). Nor does it undermine Mr. Julié's opinion that, in the unusual circumstance where a citizen of both countries has executed an extradition waiver and then fled to France in violation of bail conditions set by a U.S. court, it is "highly unlikely" that an extradition decree would not be issued. (*Id*. at 3).

The government offers no rebuttal to the opinion of Ms. Maxwell's U.K. extradition expert, David Perry. Nor does it dispute Mr. Perry's opinion that Ms. Maxwell would be "highly unlikely" to successfully resist extradition from the United Kingdom, that her waiver would be admissible in any extradition proceeding, and that—contrary to the government's representation at the initial bail hearing (Tr. 27)—bail would be "extremely unlikely." (*See* Def. Mem. Ex. U at ¶ 39). Mr. Perry's addendum opinion (attached as Ex. B) reiterates these points, opining that the waiver would be "a highly relevant factor" in the U.K. proceeding, both to the likelihood of extradition and to the likelihood of bail while the proceeding is pending. (*Id*. ¶ 3).[7]

---

[7] Nor, as the government suggests, does the Secretary of State have general "discretion to deny extradition" after a court has entered a final extradition order. (*See* Gov. Mem. at 19). That discretion is limited to a handful of exceptional circumstances that would likely be inapplicable to Ms. Maxwell's case. (*Id*. ¶¶ 4-5).

Finally, the government's argument that Ms. Maxwell could always flee to some country *other* than the United Kingdom and France holds her—and any defendant—to an impossible standard, which is not the standard under the Bail Reform Act. (*See* Gov. Mem. at 19). By the government's reasoning, *no* defendant with financial means to travel could be granted bail, because there would always be a possibility that they could flee to another country (even if they had no ties there), and there could never be an assurance that any extradition waiver would be enforced. However, "Section 3142 does not seek ironclad guarantees." *United States v. Chen*, 820 F. Supp. 1205, 1208 (N.D. Cal. 1992). To the extent that Ms. Maxwell's ties to France and the United Kingdom—where she has not lived for nearly 30 years—create a flight risk, her extradition waivers along with the substantial bail package proposed reasonably cure it.[8]

### E. The Recent COVID Surge at MDC Further Justifies Bail

The government suggests that the Court ignore COVID concerns because Ms. Maxwell, though quarantined because of contact with an officer who tested positive, did not become infected. This ignores the daily (sometimes multiple) inspections of Ms. Maxwell's mouth, which heightens her risk of contracting the deadly virus, which has now surged to 113 positive cases in the MDC. Further, Deputy Captain B. Houtz recently issued a memo stating that "[i]t has not been determined whether legal calls and legal visits will continue." As the Court is well aware, legal visits with Ms. Maxwell already have been suspended. Should legal calls also be discontinued, her constitutional right to effective assistance of counsel will be further eroded.

### CONCLUSION

For the foregoing reasons, Ms. Maxwell respectfully requests that the Court order her release on bail pursuant to the strict conditions she has proposed.

---

[8] Any incentive Ms. Maxwell might have to flee to France has been greatly diminished by the recent arrest in France of Jean-Luc Brunel, who reportedly is under investigation for alleged sexual assaults by Jeffrey Epstein. *See, e.g., France Details Modeling Agent in Jeffrey Epstein Inquiry*, https://www.theguardian.com/world/2020/dec/17/france-detains-modelling-agent-jean-luc-brunel-in-jeffrey-epstein-inquiry.

Dated:  December 18, 2020

        Respectfully submitted,

        */s/ Mark S. Cohen*

        Mark S. Cohen
        Christian R. Everdell
        COHEN & GRESSER LLP
        800 Third Avenue
        New York, NY 10022
        Phone: 212-957-7600

        Jeffrey S. Pagliuca
        Laura A. Menninger
        HADDON, MORGAN & FOREMAN P.C.
        150 East 10th Avenue
        Denver, CO 80203
        Phone: 303-831-7364

        Bobbi C. Sternheim
        Law Offices of Bobbi C. Sternheim
        33 West 19th Street - 4th Floor
        New York, NY 10011
        Phone: 212-243-1100

        *Attorneys for Ghislaine Maxwell*