# Exhibit A

WILLIAM JULIÉ
AVOCAT À LA COUR

December 18, 2020, Paris.

**Response to the government's memorandum in opposition to the defendant's renewed motion for release.**

I was asked to review the United States government's memorandum and notably pages 15 to 17 alongside the French Minister of Justice's letter dated 11 December 2020 produced as Exhibit B to this memorandum.

**1      The French Minister of Justice's letter (Exhibit B)**

The letter of the French Minister of Justice, on which the US government relies to argue that the French government does not extradite its citizens outside the European Union and thus to the United States, quotes Article 696-2 of the French Code of Criminal Procedure, which provides that France can extradite "*any person not having French nationality*".

It remains unclear whether the author of such letter had actually access to my opinion which is not even quoted, and more generally it seems the letter responds to a question which unexpectedly was not disclosed.

The letter fails to mention, however, that Article 696 of the same Code provides that provisions of the French Code of Criminal Procedure on the conditions of extradition **apply in the absence of an international agreement providing otherwise** (Article 696 of the French Code of Criminal Procedure: "*In the absence of an international agreement stipulating otherwise, the conditions, procedure and effects of extradition shall be determined by the provisions of this chapter[1]. These provisions shall also apply to matters which would not have been regulated by international conventions*"). The provisions of Article 696 of the French Code of Criminal Procedure are a reminder that under Article 55 of the French Constitution, international agreements prevail over national legislation (Article 55 of the French Constitution: "*Treaties or agreements that have been duly ratified or approved have, upon their publication, an authority superior to that of laws, subject, for each agreement or treaty, to its application by the other party*"). It follows from these provisions that the key question is whether France may extradite a French national under the Extradition Treaty between the USA and France and/or under the Extradition Treaty between the European Union and the USA, not whether France extradites its citizens under French legislation.

In accordance with this French constitutional rule, the administrative circular of 11 March 2004, published by the French Ministry of Justice, which aims at specifying how the then recently amended legal provisions regarding extradition should apply and be understood, states the following: "*Article 696 of the Code of Criminal Procedure reaffirms this principle of*

---

[1] The relevant chapter includes Articles 696-1 to Article 696-47-1 of the French Code of Criminal Procedure, and thus includes Article 696-2.

*subsidiarity of domestic law in relation to international instruments as stated by the aforementioned law of 10 March 1927: the legislative provisions on extradition are applicable only in the silence or in the absence of international conventions.*"[2]

It follows from the provisions of Article 696 of the French Code of Criminal Procedure that the key question is whether France may extradite a French national under the Extradition Treaty between the USA and France and/or under the Extradition Treaty between the European Union and the USA, not whether France may extradite its citizens under French legislation.

As previously outlined, the Extradition Treaty between the USA and France does not preclude the French government from extraditing a French national and must therefore be distinguished from a number of other international agreements signed by France which contain a clear prohibition to that extent. The Treaty between the USA and France gives the French government discretion as to whether or not to extradite its own citizens to the USA.

It is noted that the letter of the French Minister does not provide any answer on this issue.

## 2        The DOJ Memorandum and the Peterson Case

In support of its argument that the French government would not extradite Ms Ghislaine Maxwell to the USA, the government relies on the case of Mr Hans Peterson, a dual French American citizen whose extradition to the US was denied by France in 2007.

The Peterson precedent should only be cited with great caution. First, I am not aware that this case has given rise to a published judicial decision, therefore it should not be interpreted as the support of any legal rule or principle. In addition, in regards to the documents that the DOJ has referred to in its memorandum, I doubt that a judicial decision has ever occurred in this case: as mentioned by the 2007 letter of US Senators Richard J. Durbin and Barack Obama to the French Minister of Foreign Affairs, the French Minister of Justice communicated its decision refusing extradition on August 22nd 2007, only a few days after the suspect was arrested (at the beginning of August 2007). This decision is not a Court decision but a discretionary decision from the French Ministry of Justice. It actually seems very unlikely that a court decision could have been rendered in this timeframe. This indicates that the case must not have been handed on to the court by the Ministry of Justice in the earliest stage of the extradition process.

A refusal to extradite may possibly be challenged by the requesting government before the French *Conseil d'Etat*, which is the French Supreme Court for administrative matters, as for example the United Kingdom and Hong Kong successfully challenged a decision from the French authorities not to extradite an individual whose extradition they had requested (*Conseil d'Etat, 15 October1993, no. 142578*). In the Peterson case, the American government did not

---

[2] Circulaire Mandat d'arrêt européen et Extradition n° CRIM-04-2/CAB-11.03.2004 du 11 mars 2004

WILLIAM JULIÉ
AVOCAT À LA COUR

challenge the refusal before French courts, while such challenge could have led to a judicial review of the request, in accordance with the ordinary extradition procedure.

Secondly, in the absence of a published judicial decision, it is impossible to determine what the outcome of this case would have been if it had come before the courts.

Third, as was rightly pointed out by US Senators Richard J. Durbin and Barack Obama in their aforementioned letter to the French Minister of Foreign Affairs, which the government cites in its memorandum:

> *"Article 3 of the Extradition Treaty between the United States and France provides in pertinent part that "There is no obligation upon the Requested State to grant the extradition of a person who is a national of the Requested State". While this Article does not require the extradition of a national to a requesting state, it also does not appear to preclude extradition.* **To the extent there is discretion available in such extradition decisions, we urge the French government to exercise that discretion in favor of extradition**".

I am satisfied that this is the right interpretation of Article 3, as this is exactly the conclusion I came to in my first report. To the extent that there is a discretion, there can be no absolute rule against the extradition of nationals under French law. A discretionary power is not a legal rule. Indeed, there is no constitutional principle against the extradition of nationals. For these reasons, the Peterson case does not alter my view that under the specific and unique facts of this case, it is highly unlikely that the French government would refuse to issue and execute an extradition decree against Ms. Maxwell, particularly if Ms. Maxwell has signed an irrevocable waiver in the USA.

Finally, if an extradition request were to be issued against a French citizen today, the obligations of the French government under the Extradition Treaty between the USA and France would also need to be read in light of the Agreement on extradition between the European Union and the United States of America, which came into force on February 1st, 2010, several years after the Peterson case. Article 1 of this Agreement, which enhances cooperation between Contracting Parties, provides that: *"The Contracting Parties undertake, in accordance with the provisions of this Agreement, to provide for enhancements to cooperation in the context of applicable extradition relations between the Member States and the United States of America governing extradition of offenders"*. The existence of this Agreement would need to be taken into account by the French government in the exercise of its discretion as to whether or not to grant the extradition of a French national to the USA.

William JULIE



51, RUE AMPÈRE - 75017 PARIS - TÉL. 01 88 33 51 80 – FAX. 01 88 33 51 81
wj@wjavocats.com - www.wjavocats.com - PALAIS C1652