# Exhibit B

# IN THE MATTER OF AN OPINION
# ON THE EXTRADITION LAW OF ENGLAND AND WALES

## RE GHISLAINE MAXWELL

## ADDENDUM OPINION

1. This Addendum Opinion is provided in response to the Government's Memorandum in Opposition to the Defendant's Renewed Motion to Release dated 16 December 2020, insofar as it pertains to matters of English extradition law and practice.

2. The primary conclusions of the Opinion dated 8 October 2020 ('the Opinion') remain unchanged, namely: (a) in the majority of cases, proceedings in England and Wales in relation to US extradition requests are concluded in under two years; (b) it is virtually certain that bail would be refused in an extradition case in circumstances where the requested person had absconded from criminal proceedings in the United States prior to trial and in breach of bail; and (c) on the basis of the information currently known, it is highly unlikely[1] that Ghislaine Maxwell would be able successfully to resist extradition to the United States in relation to the charges in the superseding indictment dated 7 July 2020. In addition to those conclusions, the following three points may be made.

3. **First**, as noted in the Opinion[2], Ms Maxwell's waiver of extradition would be admissible in any extradition proceedings in England and Wales. While such a document cannot compel a requested person to consent to their extradition once in the United Kingdom, the document would be a highly relevant factor in any contested extradition proceedings. In particular:

    (a) If Ms Maxwell were to rely on such a waiver to secure bail in the United States and then, having absconded, renege on the undertakings in that

---

[1] The Government observes, at p.16 of the Motion, that this leaves open a *"possibility"* that extradition could be resisted. Absolute certainty in any legal context is rare but the practical effect of the conclusion in the Opinion is that, at this stage and on the basis of the information currently known, it is difficult to conceive of circumstances in which Ms Maxwell could successfully resist extradition, and her extradition would be a virtual foregone conclusion.

[2] Opinion, para. 39.

        document to seek to resist her extradition, bail would almost certainly be refused for the duration of the extradition proceedings.

    (b) The majority of the bars that might be relied upon by Ms Maxwell[3] require the extradition judge to make a finding that extradition would be oppressive. Quite apart from the other factors rendering those bars unavailable to Ms Maxwell, as set out in the Opinion, it is difficult to conceive of circumstances in which a finding of oppression could be made in relation to the serious charges faced by Ms Maxwell in circumstances where she had absconded from the United States and was contesting her extradition in breach of good faith undertakings relied upon to secure her bail. Similar considerations apply to the balancing exercise required in assessing whether extradition would breach the right to family life under Article 8 of the ECHR. The remaining bars to extradition and human rights bars are unlikely to be available to Ms Maxwell for the reasons given in the Opinion[4].

    (c) A breach of the undertakings in the waiver of extradition would be highly likely to be viewed as a sign of bad faith and cause the extradition judge to treat any evidence given by Ms Maxwell with scepticism.

4.  **Second**, it is not correct that section 93 of the Extradition Act 2003 ('the 2003 Act') confers a general discretion on the Secretary of State to refuse extradition if a case is sent to her by the extradition judge[5]. The ambit of the power in section 93 is described at paragraph 8 of the Opinion. The Secretary of State may only refuse extradition on the grounds provided for in that section, namely: (a) if an applicable bar to extradition[6] is found to exist; (b) the Secretary of State is informed that the request has been withdrawn[7]; (c) there is a competing claim for extradition from

---

[3] Opinion, para. 26. Those bars are passage of time; forum; and mental and physical condition.

[4] Opinion, paras. 27-29 and 36-37.

[5] As appears to be submitted by the Government at p.19 of the Memorandum.

[6] The bars to extradition that the Secretary of State must consider are: (a) the death penalty (s. 94); (b) speciality (s. 95); (c) earlier extradition to the United Kingdom from another territory (s. 96); and (d) earlier transfer to the United Kingdom from the International Criminal Court (s. 96A).

[7] Extradition Act 2003, s. 93(4)(a).

another state[8]; (d) the person has been granted asylum or humanitarian protection in the United Kingdom[9]; or (e) extradition would be against the interests of UK national security[10]. On the information currently known, none of these bars or exceptions would arise in the case of Ms Maxwell.

5. The exceptional nature of the Secretary of State's power is illustrated by the fact that it has been exercised in the favour of a requested person on only one occasion since the enactment of the 2003 Act, and that that single exercise of the power was based on grounds on which reliance may not now be placed.[11]

6. **Third**, as to the timescales of extradition proceedings arising from requests for extradition made by the Government of the United States, it is to be noted that the purpose of the 2003 Act to streamline extradition procedures[12] and, in practice, the legislation works to facilitate extradition. As noted in the Opinion[13] the majority of extradition cases conclude within two years, or three months in cases where consent to extradition is given.

David Perry QC<br>
6KBW College Hill

**17 December 2020**

---

[8] Extradition Act 2003, ss. 93(4)(b), 126(2) and 179(2).
[9] Extradition Act 2003, s. 93(4)(c) and (6A).

[10] Extradition Act 2003, s. 208.

[11] *viz.* in the case of Gary McKinnon, whose extradition was refused by the Secretary of State in 2012 on the basis that he was seriously mentally ill and that there was a high risk of suicide were he to be extradited; since that decision, the Secretary of State has been barred from refusing extradition on the basis of human rights grounds: Extradition Act 2003, s. 70(11) (as inserted by the Crime and Courts Act 2013 with effect from 29 July 2013).

[12] *Welsh v United States* [2007] 1 WLR 156 (Admin) para. 26.

[13] Opinion, para. 13.