USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/28/20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| United States of America,<br><br>           —v—<br><br>Ghislaine Maxwell,<br><br>                      Defendant. | 20-CR-330 (AJN)<br><br>OPINION AND ORDER |

ALISON J. NATHAN, District Judge:

Defendant Ghislaine Maxwell has been indicted by a grand jury on charges of conspiracy to entice minors to travel to engage in illegal sex acts, in violation of 18 U.S.C. § 371; enticing a minor to travel to engage in illegal sex acts, in violation of 18 U.S.C. §§ 2422 and 2; conspiracy to transport minors to participate in illegal sex acts, in violation of 18 U.S.C. § 371; transporting minors to participate in illegal sex acts, in violation of 18 U.S.C. §§ 2423 and 2; and two charges of perjury, in violation of 18 U.S.C. § 1623.  The Court held a lengthy bail hearing on July 14, 2020.  After extensive briefing and argument at the hearing, the Court concluded that the Defendant was a clear risk of flight and that no conditions or combination of conditions would ensure her appearance.  Bail was therefore denied.

The Defendant has now filed a renewed motion for release on bail pending trial, which the Government opposes.  In her renewed motion, the Defendant attempts to respond to the reasons that the Court provided in denying bail and proposes a substantially larger bail package. But by and large, the arguments presented either were made at the initial bail hearing or could have been made then.  In any event, the new information provided in the renewed application only solidifies the Court's view that the Defendant plainly poses a risk of flight and that no

combination of conditions can ensure her appearance.  This is so because: the charges, which carry a presumption of detention, are serious and carry lengthy terms of imprisonment if convicted; the evidence proffered by the Government, including multiple corroborating and corroborated witnesses, is strong; the Defendant has substantial resources and foreign ties (including citizenship in a country that does not extradite its citizens); and the Defendant, who lived in hiding and apart from the family to whom she now asserts important ties, has not been fully candid about her financial situation.  Thus, for substantially the same reasons that the Court denied the Defendant's first motion for release on July 14, 2020, the Court DENIES the Defendant's renewed motion for release on bail.[1]

## I.    Background

On June 29, 2020, a grand jury in the Southern District of New York returned a six-count Indictment against the Defendant, charging her with facilitating Jeffrey Epstein's sexual abuse of multiple minor victims between approximately 1994 and 1997.  *See* Dkt. No. 1.  On July 2, 2020, the Indictment was unsealed, and that same day, the Defendant was arrested in New Hampshire.  On July 8, 2020, the Government filed a Superseding Indictment, which contained only small ministerial corrections.  Dkt. No. 17.

On July 14, 2020, this Court held a hearing regarding the Defendant's request for bail.  After a thorough consideration of all of the Defendant's arguments and of the factors set forth in 18 U.S.C. § 3142(g), the Court concluded that no conditions or combination of conditions could reasonably assure the Defendant's appearance, determining as a result that the Defendant was a flight risk and that detention without bail was warranted under 18 U.S.C. § 3142(e)(1).  The

---

[1] This Opinion & Order will be temporarily sealed in order to allow the parties to propose redactions to sensitive or confidential information.

Defendant did not appeal the Court's determination that detention was required, and she has been incarcerated at the Metropolitan Detention Center since that time.

## II.     Legal Standard

Pretrial detainees have a right to bail under the Eighth Amendment to the United States Constitution, which prohibits the imposition of "[e]xcessive bail," and under the Bail Reform Act, 18 U.S.C. § 3141, *et seq.*  The Bail Reform Act requires the Court to release a defendant "subject to the least restrictive further condition, or combination of conditions, that [it] determines will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(c)(1)(B).  Only if, after considering the factors set forth in 18 U.S.C. § 3142(g), the Court concludes that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," may the Court order that the defendant be held without bail.  18 U.S.C. § 3142(e)(1).

If there is probable cause to find that the defendant committed an offense specifically enumerated in § 3142(e)(3), a rebuttable presumption arises "that no condition or combination of conditions will reasonably assure" the defendant's appearance or the safety of the community or others.  18 U.S.C. § 3142(e)(3).  In such circumstances, "the defendant 'bears a limited burden of production . . . to rebut that presumption by coming forward with evidence that he does not pose a danger to the community or a risk of flight.'"  *United States v. English*, 629 F.3d 311, 319 (2d Cir. 2011) (quoting *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)); *see also United States v. Rodriguez*, 950 F.2d 85, 88 (2d Cir. 1991) ("[A] defendant must introduce some evidence contrary to the presumed fact in order to rebut the presumption.").  Nonetheless, "'the government retains the ultimate burden of persuasion by clear and convincing evidence that the

defendant presents a danger to the community,' and 'by the lesser standard of a preponderance of the evidence that the defendant presents a risk of flight.'" *English*, 629 F.3d at 319 (quoting *Mercedes*, 254 F.3d at 436); *see also United States v. Martir*, 782 F.2d 1141, 1144 (2d Cir. 1986) ("The government retains the burden of persuasion [in a presumption case]."). Even when "a defendant has met his burden of production," however, "the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court." *United States v. Mattis*, 963 F.3d 285, 290–91 (2d Cir. 2020).

After a court has made an initial determination that no conditions of release can reasonably assure the appearance of the Defendant as required, the Court may reopen the bail hearing if "information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue" of whether pretrial detention is warranted. 18 U.S.C. § 3142(f). But the Court is not required to reopen the hearing or to conduct another hearing if it determines that any new information would not have a material bearing on the issue. *See United States v. Raniere*, No. 18-CR-2041 (NGG) (VMS), 2018 WL 6344202, at *2 n.7 (E.D.N.Y. Dec. 5, 2018) (noting that "[a]s the court has already held one detention hearing, it need not hold another" the standards set forth in 18 U.S.C. § 3142(f)(2) are met); *United States v. Havens*, 487 F. Supp. 2d 335, 339 (W.D.N.Y. 2007) (electing not to reopen a detention hearing because the new information would not have changed the court's decision to detain the defendant until trial).

## III.    Discussion

The Defendant bases her renewed motion for bail on both 18 U.S.C. § 3142(f) and the Court's inherent powers to review its own bail decisions. *See* Def. Mot. at 7–9. As already noted, § 3142(f) provides that a bail hearing "may be reopened . . . at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the

hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community."  A court may also revisit its own decision pursuant to its inherent authority, even where the circumstances do not match § 3142(f)'s statutory text.  *See, e.g.*, *United States v. Rowe,* No. 02-CR-756 (LMM), 2003 WL 21196846, at *1 (S.D.N.Y. May 21, 2003) (noting that "a release order may be reconsidered even where the evidence proffered on reconsideration was known to the movant at the time of the original hearing."); *United States v. Petrov,* No. 15-CR-66 (LTS), 2015 WL 11022886, at *3 (S.D.N.Y. Mar. 26, 2015) (noting the "Court's inherent authority for reconsideration of the Court's previous bail decision").

In line with this, the Defendant's new motion aims to address the reasons that the Court provided when it originally determined that no conditions could reasonably assure her appearance and that pretrial detention was warranted.  First, the Defendant proposes a more expansive set of bail conditions that she claims addresses any concerns regarding risk of flight. The newly proposed conditions include a $28.5 million bail package, which consists of a $22.5 million personal recognizance bond co-signed by the Defendant and her spouse and secured by approximately $8 million in property and $500,000 in cash, along with six additional bonds— five co-signed by the Defendant's friends and family members and the sixth posted by the security company that would provide security services to the Defendant if she were granted bail and transferred to home confinement.  *See* Def. Mot. at 2.  The proposed conditions also provide that the Defendant would be released to the custody of a family member, who would serve as her third-party custodian under 18 U.S.C. § 3142(c)(1)(B)(i); that she would be placed in home confinement with GPS monitoring and that her travel would be restricted to the Southern and Eastern Districts of New York and would be limited to appearances in Court, meetings with

counsel, medical visits, and upon approval by the Court or Pretrial Services.  *Id.* at 2–3.
Furthermore, the Defendant would have on-premises security guards that she would pay for who
would prevent her from leaving the residence at any time without prior approval by the Court or
Pretrial Services and who would escort her when she is authorized to leave.  *Id.* at 3.

The motion also presents new information that, according to the Defendant, addresses the
concerns that the Court articulated when it determined that detention was warranted.  This newly
presented information, most of which was available to the Defendant at the time of the initial bail
hearing, includes evidence of the Defendant's family ties in the United States, *see* Def. Mot. at
10–14; a detailed financial report that provides a more comprehensive outlook on the
Defendant's financial conditions and assets, *see id.* at 15–18; evidence that according to her
rebuts the Government's original contention that she attempted to evade law enforcement prior
to her arrest, *see id.* at 18–25; waivers of her right to contest extradition from the United
Kingdom and France, along with expert opinions claiming that the Defendant would not be able
to resist extradition if she were to execute the waivers, *see id.* at 25–29; and evidence that she
argues lays bare the weakness of the Government's case against her, *see id.* at 30–34.

Finally, the Defendant argues that the conditions of her confinement, including as a result
of the COVID-19 pandemic, present an additional factor favoring release.  She claims that the
conditions imposed are punitive and that those conditions interfere with her ability to participate
in her defense, and she asserts that these factors further militate in favor of release.  *See id.* at 34–
38.

Having carefully considered all of the Defendant's arguments, the Court again concludes
that no conditions or combination of conditions could reasonably assure her appearance and that

detention without bail is warranted under 18 U.S.C. § 3142(e)(1).  The Court accordingly denies Defendant's request to reopen the original bail hearing and denies her renewed motion for bail.

### A.  The presumption in favor of detention applies

The Court is required to presume that no condition or combination of conditions of pretrial release will reasonably assure the Defendant's appearance.  The Bail Reform Act provides that if a defendant is charged with committing an offense involving a minor victim under 18 U.S.C. §§ 2422 or 2423, "it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed."  18 U.S.C. § 3142(e)(3)(E).  The Defendant's indictment by a grand jury suffices to establish that there is probable cause to believe that she committed the offenses charged in the indictment.  *See, e.g.*, *United States v. Contreras*, 776 F.2d 51, 53–54 (2d Cir. 1985) (noting that that an indictment returned by a properly constituted grand jury "conclusively determines the existence of probable cause" and that "the return of an indictment eliminates the need for a preliminary examination at which a probable cause finding is made by a judicial officer pursuant to Rule 5(c) of the Federal Rules of Criminal Procedure." (citations omitted)).  In light of the crimes charged in the indictment,  the Court begins with the presumption that no condition or combination of conditions of pretrial release will reasonably assure the Defendant's appearance.

When the presumption applies, the Defendant bears a limited burden of production "tending to counter the § 3142(e) presumption of flight," *Contreras*, 776 F.2d at 53 n.1.  The Defendant's burden of production only requires that she "introduce a certain amount of evidence contrary to the presumed fact."  *United States v. Jessup*, 757 F.2d 378, 380 (1st Cir. 1985),

*abrogated on other grounds by United States v. O'Brien*, 895 F.2d 810 (1st Cir. 1990). That

burden is "limited." *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001). The

Defendant's proffer of evidence and information—including information relating to her financial

conditions and her family ties to the United States, among other things—satisfies this limited

burden. As the Court discussed at the July 14, 2020 hearing, these factors bear on the question

of whether the Defendant poses a flight risk. And the evidence she advances in her renewed

motion for bail reasonably disputes the presumption that she poses a flight risk. In that sense,

this evidence is relevant to the ultimate determination and satisfies the relatively low threshold

imposed by the burden of production.

The presumption of flight does not disappear entirely, however, and it "remains a factor

to be considered among those weighed by the district court." *United States v. Mercedes*, 254

F.3d 433, 436 (2d Cir. 2001) (quoting *Martir,* 782 F.2d at 1144). As a result, "[a] judicial officer

conducting a detention hearing should, even after a defendant has come forward with rebuttal

evidence, continue to give the presumption of flight some weight by keeping in mind that

Congress has found that these offenders pose special risks of flight, and that 'a strong probability

arises' that no form of conditional release will be adequate to secure their appearance." *Martir*,

782 F.2d at 1144 (citation omitted).

### B. The new information does not alter the Court's initial determination

When determining whether there are conditions of release that will reasonably assure the

appearance of the person as required, courts are required to consider the factors outlined in 18

U.S.C. § 3142(g). Thus, the Court considers (1) the nature and circumstances of the offense

charged, including whether the offense involves a minor victim, (2) the weight of the evidence,

(3) the defendant's history and characteristics, and (4) the nature and seriousness of the danger to

any person or the community posed by pre-trial release.  *See Mercedes*, 254 F.3d at 436; *see also* 18 U.S.C. § 3142(g).

At the July 14, 2020 bail hearing, the Court considered these factors before concluding that no conditions of release could reasonably assure the appearance of the person as required. And the first and fourth factors remain unchanged.  As already noted, the Defendant is charged with offenses involving minor victims, and it is undisputed that the nature and circumstances of the offenses charged in the Superseding Indictment weighs in favor of continued detention.  On the other hand, the Government has not advanced any evidence that the Defendant poses a danger to any person or to the community, a factor that weighs against detention.  The Defendant's arguments therefore focus on the second and third factors.

As explained below, neither the arguments put forth in the Defendant's renewed motion for bail nor the evidence she submitted in conjunction with her motion rebut the Court's conclusions, and the Court continues to find, after again applying these factors, that no conditions of release will reasonably assure the Defendant's appearance at future proceedings.

### 1.  The Weight of the Evidence

The Court will address the strength of the Government's case first.  The Defendant argues that the Government lacks any meaningful documentary corroboration of the witness testimony and that the discovery produced to date has included only a "small number of documents from the time period of the conspiracy."  Def. Mot. at 5.  And she claims, as a result, that the Government overstated the strength of its case in advance of the July 14, 2020 bail hearing.  *See id.* at 30–33.  So she argues that the second § 3142(g) factor supports release.

The Court disagrees.  Arguing that the case against her "is based almost exclusively on the recollections of the three accusers, who remain unidentified," the Defendant contends that the

weight of the evidence is weak.  Def. Reply at 2.   But she too easily discredits the witness

testimony.  According to the Government, and as reflected in the indictment, it is anticipated that

the three witnesses will provide detailed and corroborating accounts of the Defendant's alleged

role in enticing minors to engage in sex acts. *See* Gov't Opp'n at 10; *see also* Dkt. No. 17, S1

Superseding Indictment, ¶¶ 7, 11, 13, 17.  Moreover, the Government proffers that additional

evidence, including flight records and other witnesses' corroborating testimony, will further

support the main witnesses' testimony and link the Defendant to Epstein's conduct.  Gov't

Opp'n at 10–11.  And while the Defendant contends that much of this evidence focuses on

Epstein, not the Defendant, the nature of the conspiracy charge (along with the evidence linking

the Defendant to Epstein) renders this evidence relevant to the Government's charges against

her.  As the Court stated in the July 14, 2020 hearing, although the Court does not prejudge the

merits of the Government's case or of the Defendant's defenses, for purposes of the bail

determination stage, the Government's proffered case against the Defendant remains strong.  *See*

Dkt. No. 93 ("Tr.") at 83:4–83:10.  The Court again concludes that the Defendant's awareness of

the potential strength of the government's case against her creates a risk of flight, and none of the

Defendant's new arguments meaningfully alter that conclusion.  As a result, the second factor

supports detention.

### 2.  The Defendant's History and Characteristics

At the July 14, 2020 bail hearing, the Court determined that the Defendant was a flight

risk in part because of her substantial international ties, including multiple foreign citizenships

and familial and personal connections abroad and her ownership of at least one foreign property

of significant value.  *See* Tr. at 83:13–83:18.  And the Court further noted that the Defendant's

extraordinary financial resources could provide her the means to flee the country even despite

COVID-19 related travel restrictions.  *Id.* at 83:21–83:25.  The Court also observed that the

Defendant had family and personal connections to the United States but concluded that the

absence of any dependents, significant family ties, or employment in the United States also

supported the conclusion that flight would not pose an insurmountable burden for her.  *Id*. at

84:4–84:9.  While the Defendant's renewed motion for bail addresses some of these factors, it

does not alter the Court's conclusion.

The first few considerations remain relatively unchanged.  The Defendant continues to

have substantial international ties and multiple foreign citizenships, and she continues to have

familial and personal connections abroad.  None of the evidence presented in support of the

present motion fundamentally alters those conclusions.  To address the Court's concern that the

Defendant's French citizenship presented the opportunity that she could flee to France and that

she would be able to resist extradition on that basis, *see* Tr. at 83:18–83:20, the Defendant now

offers to waive her right to extradition from both the United Kingdom and France, along with

expert opinions reports claiming that such waivers would likely make it possible to resist an

extradition request from the United States to either country.  *See* Def. Mot., Exs. T, U, V.  As the

Government points out in its brief, however, the legal weight of the waivers is, at best, contested.

The French Ministry of Justice, for instance, indicated in a letter submitted in conjunction to the

Government's opposition that the French Code of Criminal Procedure "absolutely prohibits" the

extradition of a French national.  *See* Gov't Opp'n, Ex. B.  And while the Defendant's own

expert attempts to rebut the Ministry of Justice's letter, *see* Def. Reply, Ex. A, even the

Defendant's own experts use probabilistic, rather than absolute, language, leaving open the

possibility that extradition would be blocked.  *See, e.g.*, Def. Mot., Ex. U at 2 ("On the basis of

the information currently known, it is highly unlikely that Ghislaine Maxwell would be able

successfully to resist extradition to the United States in relation to the charges in the superseding indictment dated 7 July 2020."); Def. Mot., Ex. V ¶ 76 ("It would . . . become a matter for the French government to decide on whether or not to issue an extradition decree against Ms. Ghislaine Maxwell."); *id.* ¶ 77 ("[I]t is highly unlikely that the French government would refuse to issue and execute an extradition decree against Ms Maxwell. . . .").  Nor has the Defendant presented any cases where courts addressed the question of whether an anticipatory waiver of extradition is enforceable; while she cites cases where defendants offered to waive extradition, the reasoning in those cases turned on other factors and the courts did not dwell on the enforceability of such waivers.  *See, e.g.*, *United States v. Cirillo,* No. 99-1514, 1999 WL 1456536, at *2 (3d Cir. July 13, 1999); *United States v. Salvagno,* 314 F. Supp. 2d 115, 119 (N.D.N.Y. 2004); *United States v. Karni,* 298 F. Supp. 2d 129, 132–33 (D.D.C. 2004); *United States v. Chen,* 820 F. Supp. 1205, 1212 (N.D. Cal. 1992).  In those cases, the courts included such waivers as one among several conditions of release, but they did not make any express determination that such waivers are enforceable.  On the other hand, some courts have expressly opined that such waivers are *un*enforceable.  *See, e.g.*, *United States v. Epstein*, 425 F. Supp. 3d 306, 325 (S.D.N.Y. 2019) (describing the "Defense proposal to give advance consent to extradition and waiver of extradition rights" as "an empty gesture."); *United States v. Morrison*, No. 16-MR-118, 2016 WL 7421924, at *4 (W.D.N.Y. Dec. 23, 2016) ("Although the defendants have signed a waiver of extradition, such a waiver may not become valid until an extradition request is pending in Canada and may be subject to withdrawal."); *United States v. Stroh*, No. 396-CR-139 (AHN), 2000 WL 1832956, at *5 (D. Conn. Nov. 3, 2000) ("[I]t appears that there is a substantial legal question as to whether any country to which he fled would enforce any waiver of extradition signed under the circumstances presented in this case. At any event,

extradition from Israel (or any other country) would be, at best, a difficult and lengthy process and, at worst, impossible.").

Having carefully reviewed the experts' reports and the cases cited by the Defendant,[2] the Court's analysis of the relationship between the Defendant's French citizenship and the risk of flight remains fundamentally unchanged.  Its reasoning is guided in part by the substantial legal questions regarding the legal weight of anticipatory extradition waivers and the likelihood that any extradition would be a difficult and lengthy process (including, for instance, the likelihood that the Defendant would contest the validity of those waivers and the duration it would take to resolve those legal disputes).  The likelihood that the Defendant would be able to *frustrate* any extradition requests—even if she were correct that she would be unable to stop extradition entirely—weighs strongly in favor of detention.

In addition, the Defendant's extraordinary financial resources also continue to provide her the means to flee the country and to do so undetected.  To be sure, this factor alone does not by itself justify continued detention.  But as the Court noted at the initial bail hearing, the Defendant's financial resources, in combination with her substantial international ties and foreign connections and her experience avoiding detection (whether from the government, the press, or otherwise), do bear significantly on the flight risk analysis.  *See* Tr. at 88:6–88:23 (distinguishing this case from *United States v. Esposito*, 309 F. Supp. 3d 24 (S.D.N.Y. 2018),

---

[2] The Defendant also argues that "a defendant's waiver of the right to appeal an extradition order has been recognized as an indication of the defendant's intent not to flee."  Def. Mot. at 27 (citing *United States v. Khashoggi,* 717 F. Supp. 1048, 1052 (S.D.N.Y. 1989)).  The Court places little weight on this argument.  Under the Defendant's theory, a defendant could strategically offer to waive the right to extradition while intending to resist any subsequent extradition that might result.  The Court is unpersuaded.

*United States v. Dreier*, 596 F. Supp. 2d 831 (S.D.N.Y. 2009), and *United States v. Madoff,* 586 F. Supp. 2d 240 (S.D.N.Y. 2009)).

The Court's concerns regarding the absence of any dependents, significant family ties, or employment in the United States, meanwhile, apply with somewhat less force in light of the evidence submitted in support of this motion.  *See id.* at 84:4–84:9.  The Defendant has submitted a litany of letters of support written by friends and family members.  *See* Def. Mot., Exs. A–N, W–X.  These letters, according to the Defendant, support her claim that she has significant ties to the United States and attest to the Defendant's character.  The Defendant places particular emphasis on the letter written by her spouse, whose identity and connection to the Defendant was withheld from the Court at the initial bail hearing.  *See* Def. Mot. at 11–13. In that letter, her spouse expounds on the lives they led before her arrest, noting in particular that the Government's characterization of the Defendant's "transient" lifestyle, Dkt. No. 4 at 9, was belied by the "quiet family life" that they had enjoyed.  Def. Mot. at 11; *see also* Def. Mot, Ex. A ¶¶ 4–5.  Other letters similarly highlight that the Defendant's family and affective ties in the United States are stronger than was originally presented to the Court in the initial bail hearing.

These letters substantiate the Defendant's claim that she has important ties to people in the United States, but they leave unaltered the Court's conclusion that flight would not pose an insurmountable burden for the Defendant.  Among other things, the Defendant now argues that her newly revealed relationship with her spouse signals her deep affective ties in the country, but at the time she was arrested, she was not living with him and claimed to be getting divorced.  *See* Pretrial Services Report at 3.  Indeed, she does not propose to live with him were she to be released on bail, undercutting her argument that that relationship would create an insurmountable burden to her fleeing.  Furthermore, the fact that she has friends and family in the United States

does not mean that those people would be unable to visit her were she to flee to another country. In addition, the Defendant continues to lack any employment ties to the United States—another factor weighing in favor of detention. Furthermore, it is apparent from the letters that the Defendant has significant ties to family and friends abroad. In light of this, nothing in the renewed motion for bail alters the Court's fundamental conclusion that flight would not pose an insurmountable burden to the Defendant.

Other factors that similarly speak to the Defendant's history and characteristics weigh in favor of detention. Most notably, the Defendant's pattern of providing incomplete or erroneous information to the Court or to Pretrial Services bears significantly on the Court's application of the third factor to the present case. Among other things, in July 2020 the Defendant represented to Pretrial Services that she possessed around $3.5 million worth of assets (while leaving out her spouse's assets and assets that had been transferred to trust accounts) and the representation that the New Hampshire property was owned by a corporation and that she was "just able to stay there." *See* Pretrial Services Report at 2. The Defendant now claims that she "was detained at the time and had no access to her financial records and was trying to piece together these numbers from memory. According to the Macalvins report, [the financial figures] are a close approximation of the value of the assets that Ms. Maxwell held in her own name at the time of her arrest. . . . For the reasons already discussed, Ms. Maxwell was reluctant to discuss anything about her [spouse] and expressed that to Pretrial Services." Def. Mot. at 16 n.5. Even if the Defendant was unable to provide an exact number, however, the difference between the number she originally reported to Pretrial Services and the number now presented to the Court in the Macalvins report, a report on the Defendant's finances prepared by a prominent accounting firm for purposes of this motion, *see* Def. Mot., Ex. O, makes it unlikely that the misrepresentation

was the result of the Defendant's misestimation rather than misdirection.  And while the Defendant's concerns regarding her spouse's privacy are not insignificant, she fails to furnish any explanation as to why those concerns led her to misrepresent key facts to Pretrial Services and, by extension, the Court.  In sum, the evidence of a lack of candor is, if anything, stronger now than in July 2020, as it is clear to the Court that the Defendant's representations to Pretrial Services were woefully incomplete.  That lack of candor raises significant concerns as to whether the Court has now been provided a full and accurate picture of her finances and as to the Defendant's willingness to abide by any set of conditions of release.

For the reasons stated above, the Court concludes that the third factor continues to weigh in favor of detention.

### C.  Pretrial detention continues to be warranted

In light of the reasons stated above, the Government has again met its burden of persuasion by "a preponderance of the evidence that the defendant presents a risk of flight." *English*, 629 F.3d at 319 (quoting *Mercedes*, 254 F.3d at 436).  Taking the § 3142(g) factors into account, the Court concludes that the presumption in favor of detention, the nature and characteristics of the charged offenses, the weight of the evidence, and the history and characteristics of the Defendant all weigh in favor of detention.  Along similar lines, the Government has also shown, and the Court concludes for the reasons outlined below, that the Defendant's proposed bail package cannot reasonably assure her appearance.  Thus, the Court's original conclusion that the Defendant poses a flight risk and that no set of conditions can reasonably assure her future appearance remains unaltered.

As already noted, the Defendant now proposes a $28.5 million bail package, which includes a $22.5 million personal recognizance bond co-signed by the Defendant and her spouse

and secured by approximately $8 million in property and $500,000 in cash, along with six

additional bonds—five co-signed by the Defendant's friends and family members and the sixth

posted by the security company that would provide security services to the Defendant if she were

granted bail and transferred to home confinement. *See* Def. Mot. at 2. At the initial hearing, the

Court noted that the opaqueness of the Defendant's finances rendered it difficult to set financial

bail conditions that could reasonably assure her appearance in court. The financial information

that the Defendant presented to the Court at the initial bail hearing was undisputedly incomplete,

and as the Court noted, the Court lacked "a clear picture of Ms. Maxwell's finances and the

resources available to her." Tr. at 86–87.

The Defendant has now presented to the Court what is perhaps a more thorough report on

her finances prepared by Macalvins, an accounting firm in the United Kingdom. Macalvins

analyzed the Defendant's assets and finances for the past five years, basing its analysis on,

among other things, bank statements, tax returns, and FBAR filings, providing a summary of

the assets held by the Defendant and her spouse as well as the assets held in trust for the

benefit of the Defendant for the period stemming from 2015 to 2020. *See* Def. Mot., Ex. O.

In addition, the Defendant retained a Certified Fraud Examiner and a former IRS Special

Agent, who reviewed the Macalvins report and the underlying documents and determined that

report accurately represents the assets held by the Defendant and her spouse. *See* Def. Mot., Ex.

P. The Defendant's new bail proposal is based on the numbers derived from the Macalvins

report.

But even assuming that the financial report provides an accurate analysis of the

Defendant's finances, the Court is unpersuaded by her argument that the bail package reasonably

assures her appearance. As the Government argues, the bail package would leave unrestrained

millions of dollars and other assets that she could sell in order to support herself. *See* Gov't Opp'n at 23. Furthermore, the proposed bond is only partially secured. Taking into account the vast amounts of wealth left relatively unrestrained by the bail package, that amount, standing alone, cannot reasonably assure that she would appear before the Court. Nor is the Court's conclusion altered by the fact that a number of third parties have pledged to support her bond; the amount of wealth that she would retain were she to flee, in addition to contingent assets and future income streams that are not accounted for in the bail package, would plausibly enable her to compensate them, in part or in full, for their losses. And while the Defendant argues that she has procured "significant loans on the basis of a negative pledge" over a property and that $4 million is invested in an "illiquid hedge fund that could only be liquidated with considerable difficulty," *see* Def. Reply at 6, these arguments do not alter the Court's ultimate conclusion that the financial package does not meaningfully mitigate the possibility of flight.

The proposed conditions also provide that the Defendant would be released to the custody of a family member, who would serve as the Defendant's third-party custodian under 18 U.S.C. § 3142(c)(1)(B)(i); that the Defendant would be placed in home confinement with GPS monitoring and that her travel would be restricted to the Southern and Eastern Districts of New York and would be limited to appearances in Court, meetings with counsel, medical visits, and upon approval by the Court or Pretrial Services; that she would be under the strict supervision of Pretrial Services; and that she would surrender all travel documents. *Id.* at 2–3. Furthermore, the Defendant would have on-premises security guards who would prevent her from leaving the residence at any time without prior approval by the Court or Pretrial Services and who would escort her when she is authorized to leave. *Id.* at 3.

None of these conditions would reasonably assure the Defendant's appearance.  Here, too, the Court's original determination applies with equal force.  As the Court noted at the original hearing, the Defendant has demonstrated an extraordinary capacity to evade detection, "[e]ven in the face of what the Defense has acknowledged to be extreme and unusual efforts to locate her."  Tr. at 87:4–87:19.  Indeed, regardless of whether the Defendant sought to evade the press, rather than law enforcement, in the months leading up to her arrest, her sophistication in evading detection reveals the futility of relying on any conditions, including GPS monitoring, restrictive home confinement, and private security guards, to secure her appearance.  *See* Tr. at 87:4–88:2.  As other courts have observed, "home detention with electronic monitoring does not prevent flight; at best, it limits a fleeing defendant's head start."  *United States v. Zarger*, No. 00-CR-773-S-1 (JG), 2000 WL 1134364, at *1 (E.D.N.Y. Aug. 4, 2000).  Furthermore, while the Defendant now represents that she would be released to the custody of a family member, who would serve as the Defendant's third-party custodian under 18 U.S.C. § 3142(c)(1)(B)(i), and that she secured a residence in the Eastern District of New York, *see* Def. Mot. at 3, that does not outweigh the other significant factors weighing in favor of detention.  And finally, the Defendant's argument that private security guards could ensure her appearance at future proceedings runs afoul of the Bail Reform Act, which the Second Circuit has held "does not permit a two-tiered bail system in which defendants of lesser means are detained pending trial while wealthy defendants are released to self-funded private jails."  *United States v. Boustani*, 932 F.3d 79, 82 (2d Cir. 2019).  As in *Boustani*, the Defendant in the present case would be detained regardless of her wealth, and "if a similarly situated defendant of lesser means would be detained, a wealthy defendant cannot avoid detention by relying on his personal funds to pay for private detention."  *Id.*

19

In light of the above, the Court again concludes that the Government has shown by a preponderance of the evidence that the defendant presents a risk of flight and that the Defendant's proposed conditions are insufficient to reasonably assure her appearance. The presumption in favor of detention, the weight of the evidence, and the history and characteristics of the Defendant all support that conclusion, and none of Defendant's new arguments change the Court's original determination.

### D.  The Defendant's conditions of confinement do not justify release

Lastly, the Court is unpersuaded by the Defendant's argument that the conditions of her confinement are uniquely onerous, interfere with her ability to participate in her defense, and thus justify release. *See* Def. Mot. at 35–38. Indeed, the Defendant does not meaningfully dispute that she has received "more time than any other inmate at the MDC to review her discovery and as much, if not more, time to communicate with her attorneys." Gov't Opp'n at 29. To the extent that the Defendant has concerns regarding some of the measures taken by BOP, including a recent lockdown due to COVID-19 that curtailed in-person legal visitations, the Defendant provides no authority to conclude that this, standing alone, violates her constitutional right to participate in her defense. And while the Court acknowledges the Defendant's concerns regarding the conditions of her confinement, the Defendant has failed to provide any basis to conclude that release is warranted on those grounds—even after the Court has determined that she continues to pose a flight risk.[3]

---

[3] The Court will continue to ensure that the Defendant has the ability to speak and meet regularly with her attorneys and to review all necessary discovery materials to prepare for her defense. Defense counsel shall confer with the Government on any specific requests. To the extent they are not reasonably accommodated, an application may be made to the Court.

Finally, as the Court expressed at the initial bail hearing, it has deep concerns about the spread of COVID-19 at BOP facilities, including at the MDC.  Indeed, in recent weeks, the incidence of COVID-19 among the inmate population where the Defendant is housed is truly alarming.  *See COVID-19: Coronavirus*, Fed. Bureau of Prisons, https://www.bop.gov/ coronavirus/ (last visited Dec. 28, 2020) (noting that the MDC currently has 99 inmates and 11 staff members who have tested positive for COVID-19).  It could be argued that in the face of this, only those defendants who pose a danger to the community ought to be detained pending trial. If that were the law and in light of the increasing positivity rate, the Court would not hesitate to reopen the detention hearing and release the Defendant on bail since the Government rests none of its arguments on dangerousness.  But that is not the law.  Moreover, as the Court found at the initial bail hearing, the Defendant has no underlying health conditions that put her at heightened risk of health impacts were she to contract COVID.  The pandemic, including increasing positivity numbers in the MDC, is not a basis for release in this case where the Court finds that the Defendant poses a substantial and actual risk of flight and that no combination of conditions could reasonably assure her appearance.

### E.  A hearing is unnecessary

Having carefully reviewed the parties' arguments, the Court determines that a hearing is unnecessary and that it can resolve the motion on the papers.  The briefing from both sides comprehensively lays out the parties' respective arguments  For the reasons stated above, none of the new information has a material bearing on the Court's determination that the Defendant poses a flight risk.  Indeed, many of the reasons that the Court provided at the July 14, 2020 hearing continue to apply with equal, if not greater, force.  The Court need not hold another

hearing to evaluate Maxwell's motion, and it declines to do so.  *See United States v. Raniere*, No. 18-CR-2041 (NGG) (VMS), 2018 WL 6344202, at *2 n.7 (E.D.N.Y. Dec. 5, 2018).

## IV.    Conclusion

Defendant Ghislaine Maxwell's renewed motion for release on bail, Dkt. No. 97, is DENIED.

SO ORDERED.

Dated: December 28, 2020
New York, New York

_____
ALISON J. NATHAN
United States District Judge