UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x
                                                        :
UNITED STATES OF AMERICA,                               :
                                                        :
        v.                                    :    20 Cr. 330 (AJN)
                                                        :
GHISLAINE MAXWELL,                                      :
                                                        :
           Defendant.                       :
                                                        :
                                                        :
------------------------------------------------------- x


### MEMORANDUM OF LAW IN SUPPORT OF MS. MAXWELL'S MOTION TO DISMISS COUNTS FIVE AND SIX OF THE SUPERSEDING INDICTMENT BECAUSE THE ALLEGED MISSTATEMENTS ARE NOT <u>PERJURIOUS AS A MATTER OF LAW</u>

Jeffrey S. Pagliuca
Laura A. Menninger
HADDON, MORGAN & FOREMAN P.C.
150 East 10th Avenue
Denver, CO 80203
Phone: 303-831-7364

Mark S. Cohen
Christian R. Everdell
COHEN & GRESSER LLP
800 Third Avenue New
York, NY 10022
Phone: 212-957-7600

Bobbi C. Sternheim
Law Offices of Bobbi C. Sternheim
33 West 19th Street - 4th Floor
New York, NY 10011
Phone: 212-243-1100


*Attorneys for Ghislaine Maxwell*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................................... ii

TABLE OF EXHIBITS ................................................................................................................. iv

INTRODUCTION ......................................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND .................................................................... 1

I.      The Underlying Civil Defamation Action ........................................................................ 1

     A. Plaintiff's Claims ...................................................................................................... 1

     B. Ms. Maxwell's Depositions ....................................................................................... 3

II.     The Indictment ................................................................................................................. 6

III.    Post-Indictment Proceedings in the Civil Case ................................................................ 7

ARGUMENT ................................................................................................................................. 8

I.      Poorly Worded Questions and Literally Truthful Responses Cannot Support a Perjury Prosecution ..................................................................................................................... 8

     A. Legal Authority ........................................................................................................ 8

     B. Count Five ................................................................................................................ 9

        1. First question:  *"Did Jeffrey Epstein have a scheme to recruit underage girls for sexual massages?  If you know."* ................................................................. 9

        2. The Second Question: *"List all of the people under the age of 18 that you interacted with at any of Jeffrey's properties?"* ....................................................... 11

     C. Count Six ................................................................................................................ 13

        1. Questions About ████████████ ............................................................ 13

        2. Questions About ██████████████ ........................................................ 15

        3. Questions About ████████ ..................................................................... 17

     D. Counts 5 and 6 Should Be Dismissed ...................................................................... 18

II.     None of the Questions or Answers Were Material ......................................................... 19

     A. Materiality .............................................................................................................. 19

     B. Counts 5 and 6 Should Be Dismissed ...................................................................... 20

CONCLUSION ........................................................................................................................... 21

Certificate of Service ................................................................................................................. 22

# TABLE OF AUTHORITIES

**Cases**

*Bronston v. United States*, 409 U.S. 352 (1973) ........................................................................ 8, 9

*Deep S. Oil Co of Tex v. Metro. Life Ins Co*., 25 F.R.D. 81 (S.D.N.Y. 1959) ............................. 13

*Giuffre v. Dershowitz*, No. 19-cv-3377 (S.D.N.Y) ..................................................................... 2,

*Giuffre v. Maxwell*, No. 15-cv-7433 (S.D.N.Y) ................................................................. 1, 7, 20

*United States v. Corbin*, 734 F.2d 643 (11th Cir. 1984) ................................................................ 8

*United States v. Forde*, 740 F. Supp. 2d 406 (S.D.N.Y. 2010) .................................................... 19

*United States v. Gaudin*, 515 U.S. 506 (1995) ...................................................................... 18, 19

*United States v. Kross*, 14 F.3d 751 (2d Cir. 1994) .................................................................... 19

*United States v. Lighte*, 782 F.2d 367 (2d Cir. 1986) ............................................................. 8, 17

*United States v. Nitschke*, 843 F. Supp. 2d. 4 (D.D.C. 2011) ..................................................... 19

*United States v. Sainz*, 772 F.2d 559 (9th Cir. 1985) ................................................................... 8

*United States v. Stern*, No. 03 Cr. 81, 2003 WL 22743897 (S.D.N.Y. Nov. 20, 2003) ............... 19

*United States v. Tonelli*, 577 F.2d 194 (3d Cir. 1978) ................................................................. 8

*United States v. Wolfson,* 437 F.2d 862 (2d Cir. 1970) .......................................................... 8, 17

*United States v. Zagari*, 111 F.3d 307 (2d Cir. 1997) ................................................................ 18

**Statutes**

18 U.S.C. § 1623 .................................................................................................................... 1, 19

**Rules**

Fed. R. Civ. P. 26 ..................................................................................................................... 12

Fed. R. Civ. P. 30(a)(1) ............................................................................................................ 10

Fed. R. Civ. P. 33 ..................................................................................................................... 12

Fed. R. Civ. P. 34 ..................................................................................................................... 12

Fed. R. Crim. P. 12(b) .............................................................................................................. 19

Fed. R. Evid. 106 ................................................................................................................. 20

Fed. R. Evid. 602 ................................................................................................................... 9

**Other**

Thefreedictionary.com .......................................................................................................... 16

## TABLE OF EXHIBITS

EXHIBIT A: ███████████████████████████████████
███████

EXHIBIT B: ████████████████████████████████

EXHIBIT C: █████████████████████████████████████)

EXHIBIT D: █████████████████████████████████████)

EXHIBIT E: ████████████████████████████████████
████████████████████

EXHIBIT F: █████████████████

EXHIBIT G: Virginia Giuffre Proposed Protective Order (15-cv-7433-LAP)

EXHIBIT H: ██████████████████████████)

EXHIBIT I: January 19, 2021 Hearing Transcript (15-cv-7433 (S.D.N.Y))

EXHIBIT J: ██████████████████████████████
██████

EXHIBIT K: ██████████████████████████████
██████

# INTRODUCTION

Counts Five and Six of the Superseding Indictment ("Indictment") allege that Ghislaine Maxwell committed perjury by testifying falsely in violation of 18 U.S.C. § 1623. According to the prosecution, these false statements were made in a civil defamation lawsuit against Ms. Maxwell when she responded to questions in her depositions on April 22, 2016 (Count Five) and was compelled by court order, with the promise of confidentiality by the Court and plaintiff's counsel, to respond to additional, immaterial questions in a second deposition on July 22, 2016 (Count Six).  These counts fail, as a matter of law, because the questions posed were ambiguous, the answers given were true, and both the questions and answers were immaterial to the defamation action. Accordingly, the Court should dismiss Counts Five and Six.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.  The Underlying Civil Defamation Action

### A.  Plaintiff's Claims

In 2015, Virginia Roberts Giuffre filed an action in this District alleging that Ghislaine Maxwell had defamed her. The alleged defamation centered on a statement from Ms. Maxwell's attorney denying as "untrue" and "obvious lies" Ms. Giuffre's demonstrably false claims about her relationship with Jeffrey Epstein and others, including that she had been sexually trafficked to foreign presidents and award-winning scientists.  The complaint alleged generally that Epstein "sexually abused" Giuffre between 1999 and 2002 and that Epstein abused more than 30 girls between 2001 and 2007.[1]

Over the course of discovery in the defamation action, it became obvious that Giuffre (and her lawyers) had lied or misstated critical facts including, *inter alia,* her age, the various

---

[1] *See Giuffre v. Maxwell*, No. 15-cv-7433 (S.D.N.Y), Doc. # 001 at ¶ 9.

men with whom she claimed to have had sex with and those with whom she had consorted.  For example:



Ms. Giuffre apparently ascribed to the "too big to fail" theory of falsehoods and there are too many other examples of Ms. Giuffre's patently false lies to document here.  Notably, Ms. Giuffre stands alone among the many accusers of Mr. Epstein to have claimed that she was

---

[2] Sharon Churcher, "Teenage girl recruited by paedophile Jeffrey Epstein reveals how she twice met Bill Clinton," Daily Mail Online (Mar. 5, 2011) (https://www.dailymail.co.uk/news/article-1363452/Bill-Clinton-15-year-old-masseuse-I-met-twice-claims-Epsteins-girl.html)

"trafficked" to third party dignitaries, politicians and academics.[3]  Suffice it to say, had the defamation matter proceeded to trial, Ms. Maxwell would have had no difficulty demonstrating that Ms. Giuffre had publicly made allegations that were "untrue" and "obvious lies," defeating any civil liability.

Because Giuffre could not prove the truth of her own statements, she and her lawyers attempted to convert what should have been a relatively straightforward factual question—the truth of Ms. Maxwell's denial of Giuffre's fantastical allegations—into a claim that Giuffre was "sexually trafficked" by Epstein to other men.  This attempt, however, involved inadmissible and improper evidence, which was the subject of approximately 50 motions that remained undecided at the time that the defamation action was dismissed.

### B.  Ms. Maxwell's Depositions

It is in this context—a weak defamation claim—that Ms. Maxwell was deposed twice. Before her first deposition, however, the Court granted at Ms. Maxwell's request a protective order to shield any "confidential" information from what was sure to be a high-publicity, media circus.  Case No. 15-cv-7433, Doc. # 38.  Plaintiff opposed Ms. Maxwell's proposed protective order, instead urging the Court to permit disclosure of "confidential" information in relation to "investigations by law enforcement."  *Id.*, Doc. # 40 at 3-4.  Ms. Maxwell opposed this provision, and ultimately, the Protective Order was entered without Giuffre's proposed law enforcement exception.  Ex. G.

---

[3] At present in a neighboring courtroom, Ms. Giuffre is embroiled in another defamation suit, this time against Professor Alan Dershowitz.  *See Giuffre v. Dewrshowitz*, Case No. 19-cv-3377-LAP.  But Professor Dershowitz has counterclaimed against her for defamation and related torts.  *Id.* Doc. # 90 & 127.  In that matter, Professor Dershowitz recently filed an affidavit and transcript which document the reporter to whom Ms. Giuffre sold her story about Epstein and Maxwell revealing that she believes Ms. Giuffre and her lawyers fabricated evidence including her story about Professor Dershowitz.  *Id.* at Doc. # 210-1, 210-2.

During the first deposition on April 22, 2016, the subject of Count 5 of the Indictment, Ms. Maxwell was peppered with ambiguous questions about decades-old events in unidentified locations at unspecified times.  The questions contained argumentative, loaded words and phrases that Giuffre's lawyers refused to define or clarify and asked Ms. Maxwell to speculate about Epstein's intent and state of mind.  The vast majority of the questions had nothing to do with the actual truth or falsity of the claims of Giuffre that Ms. Maxwell pointed out as "obvious lies." Counsel for Ms. Maxwell was required to object to hundreds of questions that suffered from a myriad of form and/or foundational infirmities.  Ms. Maxwell, when sitting for these depositions, knew she had done nothing wrong and was unaware that Giuffre's lawyers were encouraging the Government to initiate a criminal investigation.[4] And had, no motive to lie in response, particularly given that Epstein had long ago served a prison sentence in Florida arising out of the same conduct that was the subject of the defamation action.

Although a few lines of that first deposition testimony are quoted in the Indictment, the Government improperly redacted objections to the questions and omitted important preceding and following pages of testimony.  The omitted portions of the transcript include numerous objections and requests for clarification regarding terms that the Government selectively quotes in the Indictment, such as "scheme," "recruit," and "sexual massage."  The two answers that the Government claims were knowingly and materially false statements were "I don't know what

---

[4] Stephen Rex Brown, "Manhattan federal prosecutors declined to pursue Jeffrey Epstein and Ghislaine Maxwell case in 2016:  sources," New York Daily News (Oct. 13, 2020) (https://www.nydailynews.com/new-york/ny-jeffrey-epstein-maxwell-case-20201013-jmzhl7zdrzdgrbbs7yc6bfnszu-story.html) (detailing David Boies' purported efforts to urge the SDNY US Attorney's Office to prosecute Ms. Maxwell in February 2016, shortly before her first deposition, and again after her second deposition, arguing in apparent violation of the protective order that she had committed perjury during her "confidential" depositions).

you're talking about" and an inability to "list" (sixteen years after the fact) "all of the people under the age of 18" that she interacted with at "any of Jeffrey [Epstein's] property."

Because Ms. Maxwell had refused, on advice of counsel, to answer irrelevant questions at that April 2016 deposition that concerned her consensual adult sexual activity with others including Mr. Epstein, Ms. Giuffre's counsel sought a second deposition a short time later.  Ms. Maxwell opposed the second deposition and argued that her private adult consensual sexual activity had no relation to the defamation lawsuit.  Ultimately, ███████████████████

███████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████

██████████████████████

Ms. Maxwell sat for this second deposition on July 22, 2016.  The testimony was marked "Confidential."  Again, plaintiff vastly exceeded the bounds of the permitted topics, including in the questions that are quoted in Count 6 of the Indictment. The excerpts reproduced in the Indictment, as with Count 5, similarly ignore the questions, answers, and objections that occurred over the course of the deposition, as well as other objections in the case concerning the relevant time frame for discovery purposes.

In mid-2016 after this second deposition, according to media reports, Giuffre's lawyers urged the Government to charge Ms. Maxwell with perjury based on her testimony. [5]  It is unclear how the attorneys could have done so without violating the protective order, which forbade them from sharing the contents of these "confidential" depositions with law enforcement.

## II.   The Indictment

Count Five of the Indictment alleges that Ms. Maxwell made two false statements during the first deposition in April 2016.  Count 5 alleges that the following italicized testimony by Ms. Maxwell was both material and false:

> Q.  Did Jeffrey Epstein have a scheme to recruit underage girls for sexual massages?  If you know.
>
> A.  *I don't know what you're talking about.*
>
> Q.  List all the people under the age of 18 that you interacted with at any of Jeffrey's properties?
>
> A.  *I'm not aware of anybody that I interacted with, other than obviously [the plaintiff] who was 17 at this point.*

Indictment ¶ 21.

Count Six alleges that Ms. Maxwell gave false testimony during a subsequent deposition in the same action in July 2016.  Count Six alleges that the following italicized testimony from that deposition was both material and false:

> Q.  Were you aware of the presence of sex toys or devices used in sexual activities in Mr. Epstein's Palm Beach house?
>
> A.  *No, not that I recall. . . .*
>
> Q.  Do you know whether Mr. Epstein possessed sex toys or devices used in sexual activities?

---

[5] *Brown, supra* n.4.

A. *No.*

Q. Other than yourself and the blond and brunette that you have identified as having been involved in three-way sexual activities, with whom did Mr. Epstein have sexual activities?

A. *I wasn't aware that he was having sexual activities with anyone when I was with him other than myself.*

Q. I want to be sure that I'm clear. Is it your testimony that in the 1990s and 2000s, you were not aware that Mr. Epstein was having sexual activities with anyone other than yourself and the blond and brunette on those few occasions when they were involved with you?

A. *That is my testimony, that is correct. . . .*

Q. Is it your testimony that you've never given anybody a massage?

A. *I have not given anyone a massage.*

Q. You never gave Mr. Epstein a massage, is that your testimony?

A. *That is my testimony.*

Q. You never gave [Minor Victim-2] a massage is your testimony?

A. *I never gave [Minor Victim-2] a massage.*

*Id.* ¶ 23.

## III. Post-Indictment Proceedings in the Civil Case

As the Court is already well-aware based on prior litigation, Judge Preska currently is overseeing both the remand unsealing proceedings in the *Giuffre v. Maxwell* case as well as the *Giuffre v. Dershowitz* matter. Last week, Judge Preska issued a ruling in connection with the request from Ms. Giuffre and the *Miami Herald* to unseal the second Maxwell deposition from July 2016. As is pertinent here, Judge Preska ruled:

> "During this deposition, Ms. Maxwell was asked repeatedly about her own sexual activity with consenting adults. Unlike in her prior deposition, at her July 2016 deposition, she provided testimony in response to those questions. . . . **This testimony is, in any case, *far afield from the sex trafficking and sexual abuse allegations that were central to the dispute in Giuffre v. Maxwell.*"**

Ex. I, Case No.15-cv-7433, Tr. of Jan. 19, 2021 Hearing at 6-7 (emphasis supplied).  After

finding that the questions were "far afield" from the allegations in the case, Judge Preska kept

sealed or redacted the entire testimony that forms the basis of Count 6.

## ARGUMENT

### I. Poorly Worded Questions and Literally Truthful Responses Cannot Support a Perjury Prosecution

#### A.  Legal Authority

In the Second Circuit, "a perjury conviction which might have been based on questions

that were ambiguous or on responses that were literally truthful may not be sustained." *United

States v. Lighte*, 782 F.2d 367, 369 (2d Cir. 1986).  The *Lighte* panel reversed a perjury

conviction, holding that some of the questions giving rise to the allegedly perjurious testimony

were "fundamentally ambiguous" and should never have been submitted to the jury." *Id.* at 375-

77.  "When a line of questioning is so vague as to be 'fundamentally ambiguous,' the answers

associated with the questions posed may be insufficient as a matter of law to support the perjury

conviction."  *Id.* at 375 (*quoting United States v. Wolfson,* 437 F.2d 862, 878 (2d Cir. 1970)).

Where ambiguity exists on the questioner's part, the test is whether the question, as the

declarant objectively understood it, is falsely answered. Perjury does not exist by implication.

> A jury should not be permitted to engage in conjecture of whether any unresponsive
> answer, true and complete on its face, was intended to mislead or divert the
> examiner; the state of mind of the witness is relevant only to the extent that it bears
> on whether he does not believe his answer to be true.

*Bronston v. United States*, 409 U.S. 352, 358-60 (1973); *see also United States v. Sainz*, 772 F.2d

559, 564 (9th Cir. 1985) (declarant's testimony cannot be perjurious when declarant made to

guess at question's meaning); *United States v. Corbin*, 734 F.2d 643, 654 (11th Cir. 1984)

(questioning cannot be vague or ill-defined); *United States v. Tonelli*, 577 F.2d 194, 199-200 (3d

Cir. 1978) (deciding prosecutor's question whether accused "handled" checks too ambiguous; accused could justifiably infer "handled" meant "touched").

Moreover, "a perjury conviction must rest on the utterance by the accused of a false statement; it may not stand on a particular interpretation that a questioner places upon an answer." *Id.* at 374 (*citing Bronston,* 409 U.S. at 360). "[A]ny special problems arising from the literally true but unresponsive answer are to be remedied through the 'questioner's acuity' and not by a federal perjury prosecution." *Bronston*, 409 U.S. at 362. "The burden is on the questioner to pin the witness down to the specific object of the questioner's inquiry." *Id.* at 360.

### B.   Count Five

#### 1.   First question:   *"Did Jeffrey Epstein have a scheme to recruit underage girls for sexual massages?  If you know."*

This was an improper question for many reasons and was, accordingly, the subject of well-founded objections. The question asked for Ms. Maxwell to understand and comment on Epstein's state of mind; any answer would either have been made without personal knowledge under Fed. R. Evid. 602 or have been hearsay.

Ms. Maxwell's answer—"I don't know what you are talking about" — was completely understandable, particularly given the context.  At the time of the deposition, Epstein had pled guilty to a state indictment in Florida, and the facts and circumstances surrounding the Palm Beach Police department investigation were widely known and discussed in the deposition.  Ms. Maxwell's answer, "I don't know what you are talking about," was simply a true statement that the question lacked clarity.

The Government has selectively, and misleadingly, omitted testimony and objections to questions that place Ms. Maxwell's statement in context.  The complete exchange:



Ex. J at 252-254.

Thus, after repeated objections, Ms. Maxwell asked the examiner to repeat and then rephrase the question; the rephrased question was met with an identical objection; and *after* the objection the examiner, in an attempt to cure the foundation problem, added, "If you know?" Ms. Maxwell's response to that question—"I don't know what you are talking about"—was entirely appropriate, and could not have been perjurious.

**2.   The Second Question:** *"List all of the people under the age of 18 that you interacted with at any of Jeffrey's properties?"*

The second "question" was equally improper.  First, this is not a question. Rather, it is a demand to do something, make a list. Fed. R. Civ. P. 30(a)(1) limits a deposition to "oral questions."  The question was grossly ambiguous:  who was "Jeffrey"; what were "Jeffrey's properties;" to what time frame did the question apply; what was the basis for Ms. Maxwell to determine who may or may not have been "under the age of 18"; and what did "interact with" mean?

Again, the Government selectively omits objections, context, and relevant colloquy. This series of questions begins at page 382 of the April 2016 deposition:



Ex. J at 382-384.

Again, this series of questions was improper. The examiner asked Ms. Maxwell to "list" "all the girls" "that you have met and brought" "to Jeffrey Epstein's house" "that were under the age of 18." This question lacked foundation as to time and place, was compound, requested speculation as to the age of a theoretical person, and asked for the witness' then-current ability to make a list from events that had happened nearly two decades previously. After an appropriate objection to this question, Ms. Maxwell admitted that she could not make a list.

     In response to the next, similar question, Ms. Maxwell and her lawyer objected to the word "find," leading to the next request: ███████████████████ This question is

different from the first question because it included the phrase █████████████

███████████  Again, the question was objected to.  After much back and forth, the examiner

asked the question giving rise to the second alleged instance of perjury:  "List all the people

under the age of 18 that you interacted with at any of Jeffrey's properties?"

 This question was almost the same as the first demand for a "list," but instead of ████

███████████ the examiner substituted the amorphous, ambiguous phrase "interacted with."  Ms.

Maxwell had already answered that she could not "make a list."  The question was improper for

the additional reason that "the taking of an oral deposition pursuant to Fed. R. Civ. P. Rule 26,

should not be converted in effect into an interrogatory procedure (Rule 33) or an inspection

procedure (Rule 34)…."  *Deep S. Oil Co of Tex v. Metro. Life Ins Co*., 25 F.R.D. 81, 82

(S.D.N.Y. 1959).

### C.  Count Six

 The alleged perjury in Count Six can be broken down into three topics separated by

dozens of pages of objections, argument, and colloquy (including the examiner's refusal to allow

Ms. Maxwell to take a bathroom break).  The topics involved ████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████  As in Count Five, the Government has selectively omitted

context and objections.  Exact quotes, in context, are set forth below, followed by analysis of the

infirmities in each line of questioning:

### 1.  Questions About ████████████

████████████████████████████████████████████████████████████████

████████████████████

████████████████████████████████████

█████████████████.



Ex. K at 88-89.

Ms. Maxwell was asked if she "was aware of the presence" of "sex toys" or "devices" used "in sexual activities" in Epstein's Palm Beach house. The question was objected to for many reasons:  it was compound and vague, contained numerous undefined terms, and lacked foundation.  It is entirely unclear how someone may "be aware of the presence" of these, apparently, spectral objects.  What exactly is a "device" used in "sexual activities?"  Would bath oil, a tub, or a table qualify?  What did the examiner mean by "sexual activities"?  Kissing? Holding hands?  The combination of toys, devices, and activities may be endless.  The examiner did not limit the question to any time period and apparently charged Ms. Maxwell with discerning her level of "awareness" to the past, present and future.  The true and predictable response to such a question was "No, not that I recall."

14

Ms. Maxwell also was asked if she knew whether Epstein possessed "sex toys or devices" used "in sexual activities."  Again, the question was objected to because it was compound, vague, contained several undefined terms, and lacked foundation, and was unbounded by time and place. Notably, the questioner did not ask whether Ms. Maxwell saw or heard Epstein use any particular "device."

### 2.   Questions About ▮▮▮▮▮▮▮▮▮▮





Ex. K at 90-92.

Here, Ms. Maxwell was asked questions about consensual sexual activity involving another woman and Mr. Epstein—questions that were wholly irrelevant to Giuffre's defamation action against Ms. Maxwell.  In the context of these questions, Ms. Maxwell was asked "with whom did Mr. Epstein have sexual activities." Again, this imprecise, boundless, ambiguous, and untethered question drew an objection.  The answer, charged as perjury, was that "when I was with him," *i.e.*, having sex with Epstein, Ms. Maxwell "wasn't aware that he was having sexual activities with anyone" other than herself.  Logical, and not perjury.

The examiner then clarified: ████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████ Not surprisingly, the answer was

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████

According to Wiktionary, we are still in the 2000s: "**2000s** *(Noun)* The millennium that began on January 1, 2000 and ends on December 31, 2999." Also as defined in: **Dictionary**:

**2000s** may refer to:

- 2000s (decade), the period from 2000 to 2009
- The period from 2000 to 2099, almost synonymous with the **21st century** (2001–2100)
- The period from 2000 to 2999, almost synonymous with the **3rd millennium** (2001–3000)

(Accessed December 18, 2020). The question posed, with the ambiguous date range was inclusive, meaning the answer would cover the entire period, not a part of that period. The answer, that Ms. Maxwell was unaware of "sexual activities" spanning more than a millennium was accurate and truthful.

### 3. Questions About ████████



Ex. K at 113.

These questions and answers were completely immaterial to the defamation action, were inadmissible in the action, and could not have influenced any fact finder. They were also ambiguous. Prior to the quoted testimony there were discussions about sexual and professional massages. Here, the questioner fails to clarify what type of "massage" he is referring to.

### D.   Counts 5 and 6 Should Be Dismissed

The Second Circuit in *Lighte* reversed a perjury conviction on a finding that "fundamentally ambiguous" questions that gave rise to allegedly perjurious answers and should never have been submitted to the jury." *Lighte*, 782 F.2d 367, 375-77.  "When a line of questioning is so vague as to be 'fundamentally ambiguous,' the answers associated with the questions posed may be insufficient as a matter of law to support the perjury conviction." *Id*. at 375 (*quoting United States v. Wolfson*, 437 F.2d 862, 878 (2d Cir. 1970)).

Here, the questions that elicited both of the allegedly perjurious statements in Count Five—"Did Jeffrey Epstein have a scheme to recruit underage girls for sexual massages?  If you know." and "List all the people under the age of 18 that you interacted with at any of Jeffrey's properties?"—were fundamentally ambiguous.  So were the following questions in Count Six, which preceded each of the allegedly perjurious statements regarding sex toys and three-way sexual encounters:

- Were you aware of the presence of sex toys or devices used in sexual activities in Mr. Epstein's Palm Beach house?

- Do you know whether Mr. Epstein possessed sex toys or devices used in sexual activities?

- Other than yourself and the blond and brunette that you have identified as having been involved in three-way sexual activities, with whom did Mr. Epstein have sexual activities?

- Is it your testimony that in the 1990s and 2000s, you were not aware that Mr. Epstein was having sexual activities with anyone other than yourself and the blond and brunette on those few occasions when they were involved with you?

- Two questions about an undefined type of "massage."

This Court can and should dismiss Count 5 and Count 6  as a matter of law.

18

## II.  None of the Questions or Answers Were Material

### A.  Materiality

Section 1623(a) of Title 18 of the U.S. Code states, in relevant part, that "[w]hoever under oath … in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false *material* declaration" shall be subject to criminal penalty (emphasis added).  Thus, to violate § 1623(a), a perjurious statement must be "material to the proceeding in which it is given." *United States v. Zagari*, 111 F.3d 307, 329 (2d Cir. 1997) (emphasis omitted).

To be "material," a statement must have "a natural tendency to influence, or [be] capable of influencing, the decision of the decision making body to which it is addressed."  *United States v. Gaudin*, 515 U.S. 506, 509 (1995) (quotation marks omitted).  When made during a civil deposition, statements are material only if "a truthful answer might reasonably be calculated to lead to the discovery of evidence admissible at the trial of the underlying suit."  *United States v. Kross*, 14 F.3d 751, 754 (2d Cir. 1994).  In proving materiality, it "is necessary . . . that the government show that the statement, if believed, could have influenced the decision" of the decision-making body.  *United States v. Stern*, No. 03 Cr. 81, 2003 WL 22743897, at *2 (S.D.N.Y. Nov. 20, 2003).

Although issues of materiality are generally mixed questions of law and fact normally left to a jury, *see Gaudin*, 515 U.S. at 522-23, under certain circumstances, like those presented in this case, a court can decide this issue under Fed. R. Crim. P. 12(b).  *See United States v. Forde*, 740 F. Supp. 2d 406, 412 (S.D.N.Y. 2010).  Here, the deposition transcripts and Judge Preska's ruling provide the Court with the relevant undisputed facts to decide this motion. Thus a trial will not assist in determining whether the Government can prove to a reasonable juror that Ms. Maxwell's conduct violated 18 U.S.C. § 1623(a). *United States v. Nitschke*, 843 F. Supp. 2d. 4, 9

(D.D.C. 2011) (granting pretrial motion to dismiss indictment based on insufficient evidence where the only relevant evidence was internet chat transcript).

### B.   Counts 5 and 6 Should Be Dismissed

None of the questions that elicited the allegedly perjurious testimony were material to the proceeding in which the testimony was given.  As Judge Preska ruled, the questions were "far afield from the sex trafficking and sexual abuse allegations that were central to the dispute in *Giuffre v. Maxwell*."  Ex. I at 7.  Ms. Maxwell was a civil defendant in a defamation action premised upon a statement issued by her lawyer in the United Kingdom that Giuffre's claims were "obvious lies"—a statement that was, as shown above, true.  Whether Ms. Maxwell was able to make a list of "girls" who were at Mr. Epstein's properties, knew who Epstein was having sex with (apparently when Ms. Maxwell was having sex with Epstein), was aware of the "presence of toys or devices," or gave a massage to Epstein or Accuser-2 was completely irrelevant to the defamation litigation.

Ms. Maxwell's testimony could not have influenced any fact finder in the civil case, nor could the questions—no matter how they were answered—have reasonably led to any admissible evidence in the defamation action, which required Giuffre to prove that her statements about her age, her being trafficked to unspecified "foreign presidents" and Professor Dershowitz, or whether President Clinton flew on a helicopter piloted by Ghislaine Maxwell, as well as other demonstrably false statements, were true.[6]

---

[6] In the event that Counts Five and Six are not dismissed, Ms. Maxwell would request that additional excerpts be read those to the jury beyond those set forth in the Indictment, including but not limited to those set forth in this motion, for purposes of completeness.  *See* Fed. R. Evid. 106.

## CONCLUSION

For the reasons set forth herein, Ms. Maxwell respectfully requests that the Court grant her motion to dismiss Counts Five and Six.

Dated: January 25, 2021

Respectfully submitted,

*s/ Jeffrey S. Pagliuca*
Jeffrey S. Pagliuca
Laura A. Menninger
HADDON, MORGAN & FOREMAN P.C.
150 East 10th Avenue
Denver, CO 80203
Phone: 303-831-7364

Mark S. Cohen
Christian R. Everdell
COHEN & GRESSER LLP
800 Third Avenue
New York, NY 10022
Phone: 212-957-7600

Bobbi C. Sternheim
Law Offices of Bobbi C. Sternheim
33 West 19th Street - 4th Floor
New York, NY 10011
Phone: 212-243-1100

*Attorneys for Ghislaine Maxwell*

**Certificate of Service**

I hereby certify that on January 25, 2021, I served by email, pursuant Rule 2(B) of the Court's individual practices in criminal cases, the *Memorandum of Law in Support of Ms. Maxwell's Motion to Dismiss Counts Five and Six of the Superseding Indictment Because the Alleged Misstatements are not Perjurious as a Matter of Law* upon the following:

Alison Moe
Maurene Comey
Andrew Rohrbach
Lara Pomerantz
U.S. Attorney's Office, SDNY
One Saint Andrew's Plaza
New York, NY 10007
Alison.moe@usdoj.gov
Maurene.comey@usdoj.gov
Andrew.Rohrbach@usdoj.gov
Lara.Pomerantz@usdoj.gov

*s/ Christian R. Everdell*