# LAW OFFICES OF BOBBI C. STERNHEIM

212-243-1100 • Main
917-306-6666 • Cell
888-587-4737 • Fax

33 West 19th Street - 4th Floor
New York, New York 10011
bc@sternheimlaw.com

February 16, 2021

Honorable Alison J. Nathan
United States District Court
United States Courthouse
40 Foley Square
New York, NY 10007

Re: *United States v. Ghislaine Maxwell*
20 Cr. 330 (AJN)

Dear Judge Nathan:

The government's recent letter regarding MDC conditions (Dkt.158) essentially repeats the same points it made in defense of the MDC's request that the Court vacate its order directing the MDC to permit Ms. Maxwell to use a laptop on weekends and holidays. We appreciate the Court's concern regarding Ms. Maxwell's opportunity to review discovery and the extent to which she is required to undergo searches. The government's letter, however, does not include the concerns defense counsel has reported to MDC Legal during the past couple of months. In addition, the letter incorrectly states that legal calls are available on Saturdays. Such requests by counsel have been denied.

By ignoring the myriad other issues reported by counsel, the government's letter misrepresents Ms. Maxwell's conditions of confinement. Ms. Maxwell does not have access to daily discovery review for the entirety of the 13 hours. The vagaries and delays of moving her the 50 feet or so from the isolation cell to the day room are a large part of the challenge.

The number of searches is also not correct. Ms. Maxwell is searched on every move, including to the empty concrete space, adjacent to the day room, used for recreation. Currently, she is subject to a minimum of four pat down searches a day if she goes to rec, and five pat down searches on the day of her weekly body scan. Since July 6th, Ms. Maxwell has been physically searched approximately 1400 times, including pat down searches, metal wand searches, mouth, hair and ear searches (posing additional health risks during COVID), and upwards of 60 body scans. In addition, there have been hundreds of physical searches of her isolation cell, locker, legal papers, and personal effects. No contraband has ever been found.

We take issue with MDC's assessment that "the searches are all necessary for the safety of the institution and the defendant." Ms. Maxwell is under 24-hour surveillance by two to six guards and approximately 18 cameras, not including the hand-held camera, focused on her throughout the areas in which she is moved and confined. Ms. Maxwell poses no danger to anyone. Her restrictive conditions, searches, and constant surveillance correlate directly to BOP negligence resulting in the death of Jeffrey Epstein.

As the government states, a flashlight is pointed at the ceiling of her isolation cell every 15 minutes, from approximately 9:30 pm to 6:30 am. It is hard to verbally convey the power of a light that bounces off a concrete ceiling in a six-by-nine-foot concrete box into Ms. Maxwell's eyes, disrupting her sleep and ability to have any restful night. The attenuating effects of sleep deprivation are well documented.

Ms. Maxwell continues to be at the mercy of a revolving group of security officers who are used to guarding hundreds of inmates but now focus their undivided attention exclusively on one respectful, middle-aged female pretrial detainee. Recently, out of view of the security camera, Ms. Maxwell was placed in her isolation cell and physically abused during a pat down search. When she asked that the camera be used to capture the occurrence, a guard replied "no." When Ms. Maxwell recoiled in pain and when she said she would report the mistreatment, she was threatened with disciplinary action. Within a week and while the same team was in charge, Ms. Maxwell was the subject of further retaliation for reporting the abuse: a guard ordered Ms. Maxwell into a shower to clean, sanitize, and scrub the walls with a broom. Ms. Maxwell's request to have the camera record the guard alone with her in the confined space was again denied.

Ms. Maxwell spends an increasing amount of time in her isolation cell because her daily removal is delayed. Her movement within that cell is restricted. Despite claims by MDC Legal to the contrary, guards forbid Ms. Maxwell from standing in certain areas of her six-by-nine-foot cell: she is not allowed to stand to the left or right of the toilet, in either corner of the isolation cell, and within two feet from the door. This directive encroaches on an already restricted and confined area and limits her movement and use to the little space that remains.

Ms. Maxwell continues to have serious problems with the food provided to her. She has repeatedly not been provided some or all parts of a meal. For the duration of her detention, she has never received a properly heated meal. Her food, contained in plastic specifically contra-indicated for use in a microwave, is designed to be heated in a thermal oven. The old microwave oven used for Ms. Maxwell's food either does not defrost the food or disintegrates it and melts the plastic container, rendering the food inedible. While guards finally acknowledged serious problems with the food, they continued to microwave Ms. Maxwell's food, rendering the food inedible and dangerous for consumption and leaving Ms. Maxwell with no meal and no replacement. Late last week, guards informed Ms. Maxwell that going forward her food will be heated in a thermal oven, like that of all other inmates. While this may be an improvement, it does little to correct seven months of deprivation impacting her nutrition and detrimental to her health.

Recently there have been problems with odorous and non-palatable tap water. The water in the isolation cell was clouded with heavy particulates; the water in the day room was brown. Requests by Ms. Maxwell and counsel to provide her bottled water or permit her to purchase water were denied. In addition, her legal mail does not arrive in a timely manner, daily newspapers arrive up to six weeks late, her emails have been prematurely deleted from the BOP system, and she has arrived late for VTC calls.

LAW OFFICES OF BOBBI C. STERNHEIM

It is impossible to overstate the deleterious effect of the conditions under which Ms. Maxwell is detained. Upon arrival at the MDC seven months ago, she was placed on suicide watch though no competent medical professional deemed her in any manner suicidal, nor has any psychologist or medical staffer ever found her to be suicidal at any time during her detention. For weeks she was deprived of legal material, the ability to use a telephone to make personal calls, and the opportunity to exercise and shower. Clearly, this was an effort to avoid a recurrence of the BOP's negligence regarding Jeffrey Epstein's death. Contrary to the way she is hyper-monitored, Ms. Maxwell is classified with the standard CC1-Mh designation: inmate with no significant mental health care.

The overall conditions of detention have had a detrimental impact on Ms. Maxwell's health and overall well-being; and she is withering to a shell of her former self – losing weight, losing hair, and losing her ability to concentrate. In addition to the many difficulties impacting her review of electronic discovery materials, the over-management and stress are impacting her stamina and effectiveness in preparing her defense and conferring with counsel.

Having been incarcerated in de facto solitary confinement for 225 days and monitored by two to six guards 24 hours a day with a handheld camera dedicated to capturing her every move, except when it would record improper conduct on the part of the guards, it is not surprising that Ms. Maxwell feels she is detained under the control of the Bureau of *"Pretrial Punishment."*

Very truly yours,

*Bobbi C. Sternheim*
BOBBI C. STERNHEIM

cc: All counsel