UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
                                                                                                   :

UNITED STATES OF AMERICA,          :

                                           :      20 Cr. 330 (AJN)

          v.                                     :

GHISLAINE MAXWELL,                  :

                Defendant.                :

-------------------------------------------------------- x

## MEMORANDUM IN SUPPORT OF GHISLAINE MAXWELL'S
## THIRD MOTION FOR RELEASE ON BAIL

Bobbi C. Sternheim
Law Offices of Bobbi C. Sternheim
33 West 19th Street - 4th Floor
New York, NY 10011
Phone: 212-243-1100

Christian R. Everdell
COHEN & GRESSER LLP
800 Third Avenue
New York, NY 10022
Phone: 212-957-7600

Jeffrey S. Pagliuca
Laura A. Menninger
HADDON, MORGAN & FOREMAN P.C.
150 East 10th Avenue
Denver, Colorado 80203
Phone: 303-831-7364

*Attorneys for Ghislaine Maxwell*

**INTRODUCTION**

Ghislaine Maxwell respectfully submits this Memorandum in Support of her Third Motion for Release on Bail.

As Ms. Maxwell has stated on numerous occasions and reaffirms here: she has no intention or desire to leave this country. She is an American citizen, has lived in United States for 30 years, has strong family ties and the support of friends and family residing in this country. She wants nothing more than to remain in the United States under whatever conditions the Court deems necessary so that she can effectively prepare for trial and vigorously defend against the 25-year-old charges in the Indictment. Ms. Maxwell has already proposed an expansive and, to our knowledge, unprecedented set of bail conditions that would reasonably assure her appearance. (*See* Dkt. 97.) In light of the Court's denial of that application (*see* Dkt. 106), Ms. Maxwell now proposes two additional bail conditions to supplement the extraordinarily restrictive bail package she has already offered.

- First, Ms. Maxwell will renounce her French and British citizenship to eliminate any opportunity for her to seek refuge in those countries, if the Court so requires.

- Second, Ms. Maxwell will have her and her spouse's assets—excluding funds earmarked for living expenses, for legal fees and other expenses necessary to defend her against the criminal charges in this case and related civil lawsuits and for taxes—placed in a new account that will be monitored by a retired federal District Court judge and former United States Attorney who will function as asset monitor and will have co-signing authority over the account.

The former condition goes well beyond the extradition waivers that the Court deemed insufficient and should satisfy any concerns the Court may have that Ms. Maxwell may try to seek a safe haven in France or the United Kingdom. (*See id.* at 11-13). As a non-citizen, Ms. Maxwell will not be able to avail herself of any protections against extradition that may apply to

citizens of those countries. The latter condition will restrain Ms. Maxwell's assets so they cannot be used for flight or harboring her outside of the jurisdiction of this Court. This should satisfy the Court's concern that the proposed bond was not fully secured and left assets unrestrained that could be used for such purposes. (*See id.* at 17-18).

In addition, since the last bail application, Ms. Maxwell has submitted twelve pretrial motions that raise substantial legal and factual issues that may result in the dismissal of some or all of the charges against her. Ms. Maxwell referenced some of these motions in her initial bail application (*see* Dkt. 18 at 19) but was not in a position to fully articulate them until she had the chance to review the discovery and research the legal issues in advance of the motion deadline of January 25. These motions significantly call into question the strength of the government's case against Ms. Maxwell and the underlying justification for continued detention.

Ms. Maxwell has already been denied a fair chance in the court of public opinion. She has been maligned by the media, which has perpetuated a false narrative about her that has poisoned any open-mindedness and impartiality of a potential jury. She has been relentlessly attacked with vicious slurs, persistent lies, and blatant inaccuracies by spokespeople who have neither met nor spoken to her. She has been depicted as a cartoon-character villain in an attempt to turn her into a substitute replacement for Jeffrey Epstein. Yet, Ms. Maxwell is determined – and welcomes the opportunity – to face her accusers at trial and clear her name. The additional proposed bail conditions should quell any concerns that she would try to flee. The Court should therefore grant bail under the proposed conditions so that Ms. Maxwell can adequately prepare for trial.

**I.      The Proposed Additional Bail Conditions Will Reasonably Assure Ms. Maxwell's Appearance in Court**

As set forth above, Ms. Maxwell now proposes two additional restrictions that eliminate any means or opportunity that she may have to leave the country. The Court should therefore reconsider its earlier ruling and grant bail under the proposed conditions. *See United States v. Rowe*, No. 02 CR. 756 LMM, 2003 WL 21196846, at *1 (S.D.N.Y. May 21, 2003) ("[A] release order may be reconsidered even where the evidence proffered on reconsideration was known to the movant at the time of the original hearing."); *see also United States v. Petrov*, No. 15-CR-66-LTS, 2015 WL 11022886, at *3 (S.D.N.Y. Mar. 26, 2015) (noting "Court's inherent authority for reconsideration of the Court's previous bail decision").

**A.      Renunciation of Foreign Citizenship**

To demonstrate her commitment to abide by her conditions of release and to provide further assurance to the Court that she will not attempt to leave the country, Ms. Maxwell is willing to formally renounce her foreign citizenships in France and the United Kingdom. Should the Court feel this drastic condition is necessary, the required documents will be submitted to the appropriate authorities. Moreover, as a standard condition of bail, all of Ms. Maxwell's passports will be surrendered to the government and no further application will be made.

If the Court deems it a necessary condition of release, Ms. Maxwell will formally commence the procedure to renounce her foreign citizenship. The requisite paperwork is in the process of being completed. Renunciation of UK citizenship can be accomplished immediately upon granting of bail. The process of renouncing her French citizenship, while not immediate, may be expedited.

Citizenship is a precious and priceless asset. Ms. Maxwell's decision to give up citizenship from the county of her birth and the country of her upbringing demonstrates her

earnestness to abide by the conditions of her release and underscores that she has no intention to flee and reflects her deep need to communicate freely with counsel to prepare for her defense. Her renunciation of foreign citizenship obviates the Court's concerns about the validity of waivers of extradition. (*See* Dkt. 106 at 13). Ms. Maxwell will have no ability to contest extradition from France or the United Kingdom on the basis of citizenship, which removes any incentive the Court and government believe she may have to seek refuge in those countries.

### B. Restraint and Monitoring of Assets

In denying bail, the Court noted that the bond was not fully secured, and that Ms. Maxwell and her spouse would still have several million dollars in unrestrained assets that could be used to facilitate her flight from the country. (*See id.* at 17-18). To assuage any concerns that those assets would be available to finance flight to and shelter in a foreign country, Ms. Maxwell has taken steps to create a monitorship that will place meaningful restraints on the assets that are not used to secure the bond, while still allowing Ms. Maxwell to pay for her legal defense, for her spouse to pay for daily living expenditures and for payment of taxes.

#### 1. New Account

All assets of Ms. Maxwell and her spouse, with the exception of money currently held in escrow for legal fees and related defense expenses and the funds contained in the bank account in the name of Ms. Maxwell's spouse ("the Personal Account")[1], will be deposited in a newly created account ("the New Account") to be overseen by an asset monitor appointed pursuant to order of the Court. The New Account will contain all of Ms. Maxwell's and her spouse's remaining cash and other liquid assets, including any proceeds that result from the pending sale

---

[1] The Personal Account is identified as Account I on page 9 of the Financial Report annexed to Ms. Maxwell's Renewed Bail Application. (*See* Dkt. 97, Exhibit O.)

of Ms. Maxwell's London house and any other assets, excluding salary, hereinafter acquired. The asset manager will approve the financial institution at which the New Account is created and must approve and co-sign any expenditure from the New Account, with the exception of disbursements for Ms. Maxwell's legal fees in connection with the ongoing criminal and civil litigation and for payment of taxes, which will not require authorization. No illiquid assets may be sold, conveyed or transferred without approval of the asset monitor.

2. **Other Assets**

The only funds that will not be included in the New Account are (1) the money currently held in escrow by Ms. Maxwell's attorneys, which will be used exclusively for her defense; and (2) the roughly $450,000 in the Personal Account which her spouse will use only for living expenses. The asset monitor shall regularly receive information regarding activity of the Personal Account, including the account balance, on a weekly basis. The asset monitor must also receive five-day advance notice of any check, on-line payment, or transfer of funds in any amount exceeding $5,000, and the reason for such payment. Ms. Maxwell's spouse agrees to be bound by these restrictions and reporting requirements.

The asset monitor shall report to Pretrial Services any possible non-compliance or disbursement in violation of the terms and conditions specified above.

3. **Selected Asset Monitor**

The Honorable William S. Duffey, Jr., a retired federal District Court judge and the former United States Attorney for the Northern District of Georgia, has agreed to undertake the position of asset monitor. (Judge Duffey's bio is attached as Exhibit A.) Judge Duffey has extensive experience evaluating and monitoring funds held in and disbursed from financial

accounts and will be entrusted with the authority to oversee the assets of Ms. Maxwell and her spouse, as described above.

Restraining Ms. Maxwell's assets that are not used to secure the bond and placing them under the supervision of a former federal District Court judge eliminates any concern that such funds could be used to violate the terms of release.

**II.     Ms. Maxwell's Pretrial Motions Raise Substantial Legal and Factual Issues That Could Result in Dismissal of Some or All of the Charges Against Her**

In addition to the new conditions proposed above, the numerous substantive pretrial motions now before the Court amply challenge the purported strength of the government's case. Ms. Maxwell's pretrial motions raise serious legal issues that could result in dismissal of charges, if not the entire indictment. Among the dozen submissions are motions to dismiss the superseding indictment for breach of the non-prosecution agreement, for pre-indictment delay, and for being based on improperly obtained evidence in violation of Ms. Maxwell's constitutional rights under the Fifth and Sixth the Amendments. Other motions seek dismissal of the Mann Act charges as being time-barred and the perjury charges as based on non-perjurious statements. These motions are substantial with a likelihood of success on the merits. These motions cast substantial doubt on the alleged strength of the government's case and warrant granting bail on the conditions proposed.

**III.    The Court Should Grant Bail**

Under the Bail Reform Act of 1984, a defendant must be released on personal recognizance or unsecured personal bond unless the judicial officer determines "that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). The enhanced bail package proposed by Ms. Maxwell contains financial burdens and a combination of restrictions that reasonably

7

assure her appearance as required.  Before preventive detention may be ordered under § 3142(e), the Court is obliged to determine both whether the defendant *is likely to flee* the jurisdiction if released, and whether *any* conditions of release *will be reasonably certain* to guard against this propensity to flee. The Court expressed concerns and denied bail without indicating what conditions *would* be reasonably certain to assure Ms. Maxwell's appearance. Ms. Maxwell is no danger to the community and not alleged to have been involved in ongoing criminal activity.  To say that there are absolutely no conditions flies in the face of cases where non-United States citizens with no ties to the district, let alone the country, were released on lesser conditions for alleged criminality ongoing up to or within hours of the time of arrest, in contrast to 26-year-old claims alleged against Ms. Maxwell.[2]

The additional conditions set forth above, which supplement the exceptional bail package previously proposed, are sufficient to address the hypothetical risk of flight and secure Ms. Maxwell's presence at trial.  The financial magnitude of the proposed bonds, the collateral pledged to secure the bonds, the stringent requirements of home detention, the renunciation of foreign citizenship and monitoring of assets contained in a special account from which no funds can be withdrawn without the approval and signature of a retired federal District Court judge and former United States Attorney are conditions that amply satisfy the concerns expressed by the government and the Court.  These cnditions are unique and unprecedented.  They profoundly

---

[2] *See* Dkt. 97 at 34 (case-comparison chart in the Renewed Motion for Bail); *cf. People v. Dominique Strauss-Kahn,* 02526/2011(S.Ct. N.Y. County). Strauss-Kahn, a French citizen with no ties to the United States, was arrested on a Paris-bound flight at JFK minutes before takeoff and later charged with several counts of sexual assault, including felony charges punishable up to 25 years imprisonment, for sexual assault and attempted rape of a Manhattan hotel housekeeper on the day of his arrest. The accusations were corroborated by semen containing Strauss-Kahn's DNA on the accuser's uniform. The New York State Supreme Court granted bail in the amount of $1 million cash, 24-hour home detention electronic monitoring ankle bracelet, and private 24/7 security guards.  After surrendering his French passport and posting an additional $5 million bail bond, Strauss-Kahn was placed under house arrest in a residence in Manhattan.  *See* https://www.theguardian.com/world/2011/may/20/dominique-strauss-kahn-new-york-apartment.

affirm Ms. Maxwell's earnestness in seeking bail to properly prepare her defense, not to flee. The Court should grant bail to Ghislaine Maxwell.

## CONCLUSION

The proposed additional conditions of release—renunciation of foreign citizenship and restraint and monitoring of assets by a retired District Court judge—enhance the already extraordinarily restrictive bail conditions proposed in Ms. Maxwell's Renewed Motion for Bail. In combination, these conditions satisfy the Bail Reform Act and reasonably assure Ms. Maxwell's appearance at trial. To deny Ms. Maxwell bail when such extraordinary and restrictive conditions are available would be a miscarriage of justice.

Dated: February 23, 2021

Respectfully submitted,

*Bobbi C. Sternheim*
Bobbi C. Sternheim
Law Offices of Bobbi C. Sternheim
33 West 19th Street - 4th Floor
New York, NY 10011
Phone: 212-243-1100

Christian R. Everdell
COHEN & GRESSER LLP
800 Third Avenue
New York, NY 10022
Phone: 212-957-7600

Jeffrey S. Pagliuca
Laura A. Menninger
HADDON, MORGAN & FOREMAN P.C.
150 East 10th Avenue
Denver, Colorado 80203
Phone: 303-831-7364