UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/22/21
```

United States of America,

—v—

Ghislaine Maxwell,

Defendant.

20-CR-330 (AJN)

ORDER

ALISON J. NATHAN, District Judge:

Defendant Ghislaine Maxwell has been indicted by a grand jury on charges of conspiracy to entice minors to travel to engage in illegal sex acts, in violation of 18 U.S.C. § 371; enticing a minor to travel to engage in illegal sex acts, in violation of 18 U.S.C. §§ 2422 and 2; conspiracy to transport minors to participate in illegal sex acts, in violation of 18 U.S.C. § 371; transporting minors to participate in illegal sex acts, in violation of 18 U.S.C. §§ 2423 and 2; and two charges of perjury, in violation of 18 U.S.C. § 1623.

On July 14, 2020, the Court held a lengthy bail hearing and concluded that the Defendant was a clear risk of flight and that no conditions or combination of conditions would ensure her appearance. It therefore denied bail. On December 8, 2020, the Defendant filed a renewed motion for release on bail pending trial, which was entered into the public docket on December 14, 2020. Dkt. No. 96. On December 28, 2020, the Court denied that motion, concluding that the Defendant posed a risk of flight and that no combination of conditions could ensure her appearance. Dkt. Nos. 104, 106.

The Defendant then filed a third motion for release on bail on February 23, 2021. Dkt. No. 160. In this motion, the Defendant attempts to respond to the reasons that the Court

provided in denying bail, proposing two additional conditions to the ones she proposed in her second motion for bail.  Specifically, she offers to renounce her French and British citizenship, and she also proposes to have her and her spouse's assets placed in a new account that will be monitored by a retired federal judge.  *See* Dkt. No. 160 at 2.

As set forth below, the Court concludes that none of the Defendant's new arguments and proposals disturb its conclusion that the Defendant poses a risk of flight and that there are no combination of conditions that can reasonably assure her appearance.  Thus, for substantially the same reasons that the Court denied the Defendant's first and second motions for release, the Court DENIES the Defendant's third motion for release on bail.

## I.     Background

On July 14, 2020, this Court held a hearing regarding the Defendant's request for bail. After a thorough consideration of all of the Defendant's arguments and of the factors set forth in 18 U.S.C. § 3142(g), the Court concluded that no conditions or combination of conditions could reasonably assure the Defendant's appearance, determining as a result that the Defendant was a flight risk and that detention without bail was warranted under 18 U.S.C. § 3142(e)(1).  The Defendant has been incarcerated at the Metropolitan Detention Center since that time.

The Defendant renewed her motion for release on bail on December 8, 2020.  The Court again denied the Defendant's motion.  In doing so, the Court explained that none of the Defendant's new arguments materially impacted its conclusion that the Defendant posed a risk of flight.  It noted that the charges, which carry a presumption of detention, are serious and carry lengthy terms of imprisonment if convicted; the evidence proffered by the Government, including multiple corroborating and corroborated witnesses, remained strong; the Defendant's substantial resources and foreign ties created considerable uncertainty and opportunities for

escape; and that the Defendant's lack of candor regarding her family ties and financial situations raised serious doubts as to her willingness to comply with any conditions imposed by the Court. *See* Dkt. No. 106.

On February 23, 2021, the Defendant filed a third motion for release on bail.  Dkt. No. 160 ("Def. Mot.").  The Government opposed the Defendant's motion on March 9, 2021.  Dkt. No. 165 ("Gov't Opp'n").  The Defendant filed her reply under temporary seal on March 16, 2021.

## II.      Legal Standard

The parties dispute whether the divestiture of jurisdiction rule precludes this Court from granting the Defendant's third bail motion while Defendant's bail appeal is pending.  *See* Gov't Opp'n at 2–3; Reply at 2–3; *see also United States v. Rodgers*, 101 F.3d 247, 251 (2d Cir. 1996) ("As a general matter, 'the filing of a notice of appeal is an event of jurisdictional significance— it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.'") (citation omitted).  Under Rule 37(a) of the Federal Rules of Criminal Procedure, however, the Court unquestionably has authority to defer considering the motion, deny the motion, or state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue.  Fed. R. Crim. P. 37(a).  Because the Court denies the Defendant's motion, it does not resolve the question of whether it would have jurisdiction to grant it.

Pretrial detainees have a right to bail under the Eighth Amendment to the United States Constitution and under the Bail Reform Act, 18 U.S.C. § 3141, *et seq.*  The Bail Reform Act requires that a court release a defendant "subject to the least restrictive further condition, or combination of conditions, that [it] determines will reasonably assure the appearance of the

person as required and the safety of any other person and the community."  18 U.S.C. §
3142(c)(1)(B).  The Court may order that the defendant be held without bail only if, after
considering the factors set forth in 18 U.S.C. § 3142(g), the Court concludes that "no condition
or combination of conditions will reasonably assure the appearance of the person as required and
the safety of any other person and the community."  18 U.S.C. § 3142(e)(1).

After a court has made an initial determination that no conditions of release can
reasonably assure the appearance of the Defendant as required, the Bail Reform Act allows the
Court to reopen the bail hearing if "information exists that was not known to the movant at the
time of the hearing and that has a material bearing on the issue" of whether pretrial detention is
warranted.  18 U.S.C. § 3142(f).  The Court is not required to do so if it determines that any new
information would not have a material bearing on the issue.  *See United States v. Raniere*, No.
18-CR-2041 (NGG) (VMS), 2018 WL 6344202, at *2 n.7 (E.D.N.Y. Dec. 5, 2018) (noting that
"[a]s the court has already held one detention hearing, it need not hold another"); *United States v.
Havens*, 487 F. Supp. 2d 335, 339 (W.D.N.Y. 2007) (electing not to reopen a detention hearing
because the new information would not have changed the court's decision to detain the defendant
until trial).  In addition, the Court may also revisit its own decision pursuant to its inherent
authority, even when the circumstances do not match § 3142(f)'s statutory text.  *See, e.g.*, *United
States v. Rowe,* No. 02-CR-756 (LMM), 2003 WL 21196846, at *1 (S.D.N.Y. May 21, 2003)
(noting that "a release order may be reconsidered even where the evidence proffered on
reconsideration was known to the movant at the time of the original hearing."); *United States v.
Petrov,* No. 15-CR-66 (LTS), 2015 WL 11022886, at *3 (S.D.N.Y. Mar. 26, 2015) (noting the
"Court's inherent authority for reconsideration of the Court's previous bail decision").

If, as here, there is probable cause to find that the defendant committed an offense specifically enumerated in § 3142(e)(3), a rebuttable presumption arises "that no condition or combination of conditions will reasonably assure" the defendant's appearance or the safety of the community or others.  18 U.S.C. § 3142(e)(3).  In such circumstances, "the defendant 'bears a limited burden of production . . . to rebut that presumption by coming forward with evidence that he does not pose a danger to the community or a risk of flight.'"  *United States v. English*, 629 F.3d 311, 319 (2d Cir. 2011) (quoting *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)); *see also United States v. Rodriguez*, 950 F.2d 85, 88 (2d Cir. 1991) ("[A] defendant must introduce some evidence contrary to the presumed fact in order to rebut the presumption.").  Nonetheless, "'the government retains the ultimate burden of persuasion by clear and convincing evidence that the defendant presents a danger to the community,' and 'by the lesser standard of a preponderance of the evidence that the defendant presents a risk of flight.'"  *English*, 629 F.3d at 319 (quoting *Mercedes*, 254 F.3d at 436); *see also United States v. Martir*, 782 F.2d 1141, 1144 (2d Cir. 1986) ("The government retains the burden of persuasion [in a presumption case].").  Even when "a defendant has met his burden of production," however, "the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court."  *United States v. Mattis*, 963 F.3d 285, 290–91 (2d Cir. 2020).

## III.   Discussion

The Defendant bases her third motion for bail on the Court's inherent powers to review its own bail decisions, arguing that the new conditions she proposes warrant reconsideration of the Court's earlier rulings.  *See* Def. Mot. at 4.  She also argues that the strength of the Government's case is diminished in light of the arguments she advances in her pre-trial motions, which are currently pending before the Court.  *Id.* at 7.  Having considered those arguments, the

Court's view has not changed.  The Court again concludes that the Government has shown by a preponderance of the evidence that the Defendant presents a risk of flight and that there are no set of conditions, including the Defendant's third set of proposed conditions, that are sufficient to reasonably assure her appearance.  The presumption in favor of detention, the weight of the evidence, and the history and characteristics of the Defendant all continue to support that conclusion.  The Defendant's proposed conditions do not alter the Court's determination.

### A.  The Court's assessment of the 18 U.S.C. § 3142(g) factors has not changed

To begin with, the presumption in favor of detention continues to apply with equal force. *See* Dkt. No. 106 ("Dec. Op.") at 7–8.  And though the Court again concludes that the Defendant has met her burden of production, the presumption "remains a factor to be considered among those weighed by the district court."  *Mercedes*, 254 F.3d at 436 (quoting *Martir*, 782 F.2d at 1144).  The Court is mindful "that Congress has found that these offenders pose special risks of flight, and that 'a strong probability arises' that no form of conditional release will be adequate to secure their appearance."  *Martir*, 782 F.2d at 1144 (citation omitted).

The Court's analysis of the 18 U.S.C. § 3142(g) factors also remains unchanged. Because the nature and circumstances of the offenses charged include crimes involving a minor victim, the first 18 U.S.C. § 3142(g) factor continues to weigh strongly in favor of detention. And the Court remains of the opinion that the Defendant does not pose a danger to any person or to the community.  The fourth § 3142(g) factor thus weighs against detention.

With respect to the second § 3142(g) factor, none of the Defendant's new arguments alter the Court's conclusion as to the weight of the evidence.  The Defendant argues that the pre-trial motions "raise serious legal issues that could result in dismissal of charges, if not the entire indictment," and she contends that "[t]hese motions cast substantial doubt on the alleged strength

6

of the government's case and warrant granting bail on the conditions proposed." Def. Mot. at 7.
Those motions became fully briefed one week ago and are now pending before this Court.  The
Government strenuously contests each of the motions and the Court has not yet adjudicated
them.  Without prejudging the merits of any of those pending motions and mindful of the
presumption of innocence, the Court remains of the view that in light of the proffered strength
and nature of the Government's case, the weight of the evidence supports detention.  *See* Dec.
Op. at 9–10.

     The Court's assessment of the Defendant's history and characteristics has not changed.
*See* Dec. Op. at 10–16.  The Defendant continues to have substantial international ties, familial
and personal connections abroad, substantial financial resources, and experience evading
detection.  *Id.* at 10–11.  And the Court's concerns regarding the Defendant's lack of candor
regarding her assets when she was first arrested have also stayed the same.  As the Court
emphasized in its denial of the second motion for release on bail, the discrepancies between the
information presented to the Court and to Pretrial Services in July 2020 and the information
presented to the Court in December 2020 raised significant concerns about candor.  *See* Dec. Op.
at 16.  There remains considerable doubt as to the Defendant's willingness to abide by any set of
conditions of release.  *Id.*  While there continue to be certain mitigating circumstances cutting in
the opposite direction, including the Defendant's family ties in the United States, these do not
overcome the weight of the considerations that lean in favor of continued detention.

     As a result, none of the evidence or arguments presented in this third motion for bail alter
the Court's assessment of the 18 U.S.C. § 3142(g) factors.  While the fourth factor continues to
favor release, the first three factors and the presumption of detention all support the conclusion

that the Defendant poses a significant risk of flight.  Thus, the Court again concludes that there are no conditions of release that will reasonably assure her appearance in future proceedings.

**B.  Pretrial detention continues to be warranted**

The thrust of the Defendant's argument in her third motion for bail is that the two new proposed conditions vitiate the Court's concerns regarding the risk of flight.  The Defendant first offers to renounce her French and British citizenship.  Def. Mot. at 2.  And she also proposes to have most of her and her spouse's assets placed in a new account that will be monitored by a retired federal judge, who would function as an asset monitor and will have co-signing authority over the account.  *Id.*  Those conditions are offered in addition to the bail package she proposed in December.  *See* Dec. Op. at 16–17; *see also* Def. Mot. at 2.  The new bail package does not disturb the Court's conclusion that the Government has carried its burden of showing that these conditions are insufficient to mitigate the flight risks, and the Court again determines that no set of conditions—including the two new ones—can reasonably assure her future appearance.

The Court begins with the Defendant's offer to renounce her French and United Kingdom citizenship.  She notes that she can renounce her UK citizenship "immediately upon granting of bail," and she informs the Court that "[t]he process of renouncing her French citizenship, while not immediate, may be expedited."  Def. Mot. at 4.  As the Government notes, the offer is of unclear validity, and the relevance and practical impact of the renunciations is, at best, unclear. *See* Gov't Opp'n at 5.  With respect to her offer to renounce her French citizenship, the Court is again confronted with dueling opinions on the correct interpretation of French law.  The Government relies on the position of the head of the International Criminal Assistance Bureau of the French Ministry of Justice, who argues that "the fact that the wanted individual is a French national constitutes an insuperable obstacle to his/her removal," and that "[a]s long as said

8

nationality is assessed at the time the offense was committed, any loss of nationality subsequent to said offense has no bearing upon the removal proceedings and shall not supersede said assessment of nationality."[1]  Gov't Opp'n, Ex. A at 2.  The Defendant, meanwhile, relies on the opinion of a French legal expert who argues that nationality is assessed at the time of the extradition request.  *See* Reply, Ex. A ¶ 11.  The Defendant's expert concedes that there is no case law addressing this precise issue.  *Id.* ¶ 21.

Exacerbating the uncertainty is the fact that the relevant legal materials also lend themselves to multiple interpretations.  For instance, Article 3(1) the Extradition Treaty between the United States and France of April 23, 1996 provides that "[t]here is no obligation upon the Requested State to grant the extradition of a person *who is a national of the Requested State*, but the executive authority of the United States shall have the power to surrender a national of the United States if, in its discretion, it deems it proper to do so.  *The nationality of the person sought shall be the nationality of that person at the time the offense was committed.*"  *See* Reply, Ex. A ¶ 9 (emphasis added)).  Article 694-4 of the French Code of Criminal Procedure similarly provides that "Extradition shall not be granted . . . [w]hen the person claimed has French nationality, the latter being assessed at the time of the offense for which extradition is requested."[2]  *Id.* ¶ 10; *see also* Gov't Opp'n, Ex. A at 2.  Thus, there is considerable uncertainty as to the relevance of the Defendant's offer of renunciation of her French citizenship to her ability to frustrate, if not entirely bar, extradition.  The Court's assessment of the risks largely

---

[1] The Court cites the translated version of the letter, though the original letter is in French.
[2] Here, there are minor discrepancies between the two sides' respective translations.  The translated letter from the Ministry of Justice cites Article 694-4 as reading, "When the individual claimed to have French citizenship, said citizenship having been assessed at the time of the offense on the basis of which removal is being requested."  Gov't Opp'n, Ex. A at 2.

parallel those that the Court articulated when the Defendant proposed signing an extradition waiver. *See* Dec. Op. at 12–13.

Similar doubts exist as to the Defendant's offer to renounce her UK citizenship. The Court is persuaded by the Government's arguments that even if the Defendant were to renounce her UK citizenship, she would still likely be able to delay or resist extradition from the UK. *See* Gov't Opp'n at 6–7. And for largely similar reasons, the Court again concludes that the proposed conditions do not meaningfully diminish the Court's concerns regarding the Defendant's ability to flee and to frustrate or impair any subsequent extradition attempts. The possibility that the Defendant could successfully resist or forestall extradition heightens the Defendant's incentive to flee.

To summarize, the Defendant's willingness to renounce her French and UK citizenship does not sufficiently assuage the Court's concerns regarding the risk of flight that the Defendant poses. Considerable uncertainty regarding the enforceability and practical impact of the renunciations cloud whatever relevance they might otherwise have to the Court's assessment of whether the Defendant poses a risk of flight. *See United States v. Cohen*, No. C 10-00547 (SI), 2010 WL 5387757, at *9 n.11 (N.D. Cal. Dec. 20, 2010). And that same uncertainty—and the possibility that she will be able to successfully resist, or at least delay, extradition—incentivizes flight, particularly because of the Defendant's substantial international ties.

Nor does the second proposed condition materially alter the Court's determination that no condition or combination of conditions can reasonably assure the Defendant's appearance. The Defendant proposes to have a retired federal judge provide oversight authority over her financial affairs, and, if granted, he would have the authority to restrain, monitor, and approve disbursement of assets requiring his signature. *See* Reply at 5. The Court continues to have

concerns about whether the full extent of the Defendant's assets have been disclosed in light of the lack of transparency when she was first arrested. But the Court assumes, for purposes of resolving this motion, that the financial report that it reviewed in December is accurate and that it accounts for all of the Defendant's and her spouse's assets. *See* Dec. Op. at 16–17.

The monitorship condition does not reasonably assure the Defendant's future appearance, even when viewed in combination with the rest of the Defendant's bail package. The Defendant would continue to have access to substantial assets—certainly enough to enable her flight and to evade prosecution. These include the $450,000 that the Defendant would retain for living expenses and any future salaries for her or her spouse, along with other assets, including jewelry and other chattels, that are potentially worth hundreds of thousands of dollars. *See* Def. Mot. at 5–6; *see also* Dkt. 97, Ex. O at 9. While those amounts may be a small percentage of the Defendant's total assets, they represent a still-substantial amount that could easily facilitate flight. When combined with the Court's weighing of the § 3142(g) factors and the presumption of detention, the Court concludes that the proposed restraints are insufficient to alter its conclusion that no combination of conditions can reasonably assure her appearance.

If the Court could conclude that any set of conditions could reasonably assure the Defendant's future appearance, it would order her release. Yet while her proposed bail package is substantial, it cannot provide such reasonable assurances. As a result, the Court again determines that "no condition or combination of conditions will reasonably assure the appearance of" the Defendant, and it denies her motion for bail on this basis. 18 U.S.C. § 3142(e)(1).

**IV.     Conclusion**

Defendant Ghislaine Maxwell's third motion for release on bail, Dkt. No. 160, is

DENIED.  The parties are ORDERED to meet and confer and propose and justify any redactions

to the Defendant's reply brief by March 24, 2021.  If they conclude that redactions are

unnecessary, the Defendant is ORDERED to docket the unredacted version of the brief by March

24, 2021.

SO ORDERED.

Dated: March 22, 2021
       New York, New York                    _____
                                                      ALISON J. NATHAN
                                                  United States District Judge

12