

Sigrid S. McCawley<br>
Telephone: (954) 377-4223<br>
Email: smccawley@bsfllp.com

March 22, 2021

**VIA EMAIL (FILED UNDER SEAL)**

The Honorable Alison J. Nathan
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    *United States v. Ghislaine Maxwell*, 20 Cr. 330 (AJN)
              Rule 17 Subpoena to Boies Schiller Flexner LLP

Dear Judge Nathan:

      I write on behalf of Boies Schiller Flexner LLP ("BSF") with respect to Defendant Ghislaine Maxwell's motion for an order authorizing a subpoena on BSF pursuant to Rule 17(c)(3) of the Federal Rules of Criminal Procedure (the "Subpoena") and the Court's March 12, 2021, Sealed and *Ex Parte* Order requiring BSF to file a letter indicating (1) whether service on BSF can be deemed adequate notice on victims whose personal or confidential information the Subpoena is aimed at obtaining and (2) whether the victims object to or seek modification of the Subpoena.

      First, BSF does not object to service on BSF constituting adequate notice on any victims it represents. The Order and Subpoena, however, do not indicate which victims are to be provided with notice. The Order states that the Defendant identified five individuals who require notice, but the Subpoena appears to seek personal and confidential information about all of the Epstein victims that BSF represents, which is more than five individuals. Thus, in an abundance of caution, BSF will notify each of the Epstein victims it represents, unless otherwise directed by the court. Second, BSF, both on its own behalf and behalf of the women that it represents, objects to the Subpoena in its entirety for the following reasons.

**BACKGROUND**

      The Government in this case has charged the Defendant with enticing (and conspiracy to entice) minors to travel to engage in illegal sex acts and transportation of (and conspiracy to transport) minors with intent to engage in criminal sexual activity from 1994 to 1997. The facts underlying those charges involve three minor victims: Minor Victim-1, Minor Victim-2, and Minor Victim-3. The Government has also charged the Defendant with two counts of perjury for lying under oath during a civil deposition in a defamation action brought by Virginia Giuffre when asked if she was aware of Jeffrey Epstein's sex trafficking scheme and whether she had ever given Minor Victim-2 a massage. BSF represents Minor Victim-2 (Annie Farmer) and Virginia Giuffre, but does not represent and has never represented Minor Victim-1 or Minor Victim-3.

      Defendant has made clear since the time of her arrest that she seeks to impugn the credibility of her accusers by constructing a false narrative that BSF's cooperation with the

BOIES SCHILLER FLEXNER LLP

401 East Las Olas Boulevard, Suite 1200, Fort Lauderdale, FL 33301 | (t) 954 356 0011 | (f) 954 356 0022 | www.bsfllp.com

Government prior to the arrest was somehow improper and that her accusers, several of whom BSF represents, are lying in order to obtain settlements. *See* Letter from L. Menninger to Hon. Debra C. Freeman at 2–3, *Annie Farmer v. Darren K. Indyke, et al.*, 19-cv-10475 (LGS-DCF) (S.D.N.Y. Dec. 30, 2020), ECF No. 108 (accusing Ms. Farmer of "working during the pendency of this lawsuit with the Southern District of New York's U.S. Attorney's Office to try to circumvent Ms. Maxwell's Fifth Amendment rights in advance of the June 29, 2020 indictment"); *id.* at 3 ("The fact that [Ms. Farmer] seeks, money from the Estate and from Ms. Maxwell, in the *millions* of dollars, *at the same time* she is a government witness in an upcoming criminal trial on the same topic is reason enough to suspect that her newly asserted memories of abuse—without corroboration—are not based on the truth or a desire for 'justice' so much as her desire for cash." (emphases in original)); Maxwell's Motion to Stay Pending Appeal at 4, 8–10, *Giuffre v. Maxwell*, No. 20-2413 (2d Cir. July 30, 2020), ECF No. 10-1 (explaining the Defendant's "concerns that [Ms. Giuffre] and [BSF] were acting as either express or de facto agents of the government" and falsely accusing BSF of leaking a confidential deposition transcript to the Government). The Subpoena, which seeks, for example, communications between BSF and the Government and BSF's submissions on behalf of its clients to an independent claims program administered by Jeffrey Epstein's Estate, is a transparent attempt to further this false narrative and to fish for potential impeachment material. But a fishing expedition for potential impeachment material goes well beyond the scope of a permissible Rule 17(c) subpoena. The Defendant's motion to authorize service of the Subpoena on BSF should be denied.[1]

## THE REQUIREMENTS OF RULE 17(C)

Rule 17(c) of the Federal Rules of Criminal Procedure Rule governs nonparty subpoenas in criminal proceedings. Rule 17(c) "was not intended to provide a means of discovery for criminal cases." *United States v. Nixon*, 418 U.S. 683, 698 (1974); *see also, e.g.*, *United States v. Barnes*, 560 F. App'x 36, 39 (2d Cir. 2014) ("Rule 17 subpoenas are properly used to obtain admissible evidence, not as a substitute for discovery."); *United States v. Cherry*, 876 F. Supp. 547, 553 (S.D.N.Y. 1995) (explaining that although the civil rules permit subpoenas "to seek production of documents or other materials which, although not themselves admissible, could lead to admissible evidence," criminal "Rule 17(c) cannot be used to obtain leads as to the existence of additional documentary evidence or to seek information relating to the defendant's case" (internal quotation marks omitted)). Accordingly, a party seeking a Rule 17(c) subpoena must demonstrate:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the

---

[1] A motion to quash the Subpoena is not yet ripe because, without having the benefit of the Defendant's sealed briefing on her motion and any other orders pertaining to it, it appears that the Court has not granted Defendant's motion for an order authorizing service of the Subpoena on BSF. The Court, however, should exercise its discretion and deny the Defendant's motion. *See United States v. Weissman*, No. 01 Cr. 529 (BSJ), 2002 WL 1467845, at *1 (S.D.N.Y. July 8, 2002) ("Rule 17(c) expressly commits the decision whether to require pre-trial production of documents to the sound discretion of the court."). Should the Court wish to hear further from BSF prior to deciding the Motion, BSF is prepared to appear before the Court and/or move to intervene and to quash the Subpoena.

> party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

*Nixon*, 418 U.S. at 699–700. In other words, the proponent of a Rule 17(c) subpoena "must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." *Id.* at 700. Finally, "Rule 17(c) subpoenas may not issue prior to trial to obtain materials usable only to impeach." *United States v. Pena*, No. 15 Cr. 551 (AJN), 2016 WL 8735699, at *2 (S.D.N.Y. Feb. 12, 2016) (Nathan, J.) (granting motion to quash Rule 17(c) subpoena for all records relating to cooperating witnesses); *see also Nixon*, 418 U.S. at 701 ("Generally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial."); *Cherry*, 876 F. Supp. at 553 ("[D]ocuments are not evidentiary for Rule 17(c) purposes if their use is limited to impeachment.").

### THE SUBPOENA FAILS TO MEET THE REQUIREMENTS OF RULE 17(C)

The Defendant cannot demonstrate that the Subpoena meets Rule 17(c)'s requirements for four, independent reasons. *First*, the Subpoena is overbroad and non-specific, and a clear fishing expedition to "see what may turn up." *See United States v. Avenatti*, No. (S1) 19 CR. 373 (PGG), 2020 WL 86768, at *4 (S.D.N.Y. Jan. 6, 2020) (denying motion for issuance of Rule 17(c) subpoena). "Subpoenas seeking 'any and all' materials, without mention of 'specific admissible evidence,' justify the inference that the defense is engaging in the type of 'fishing expedition' prohibited by *Nixon*." *United States v. Mendinueta-Ibarro*, 956 F. Supp. 2d 511, 512–513 (S.D.N.Y. 2013) (internal quotation marks omitted) (granting motion to quash Rule 17(c) subpoena).

Here, the Subpoena plainly fails *Nixon*'s specificity requirement. Requests 1 through 5 all seek "communications" between "You" and a designated individual or entity, including the U.S. Attorney and BSF's co-counsel, about a certain subject. The Subpoena defines "communications" as "***all*** forms of correspondence, including regular mail, email, text message, memorandum, or other written communication of information of any kind," and defines "You" as "***any*** owner, shareholder, partner or employee of Boies, Schiller, Flexner, LLP, including but not limited to David Boies, Sigrid McCawley, Peter Skinner and ***any*** former owner, shareholder, partner or employee, or independent contractor of the firm." Such broad Requests are plainly overbroad and non-specific, and do not meet the strict requirements of Rule 17(c). *See, e.g.*, *Mendinueta-Ibarro*, 956 F. Supp. 2d at 512–513 (quashing subpoena that requested "'any and all writings and records' related to the [police department's] contact with a particular confidential witness"); *Pena*, 2016 WL 8735699, at *3 (Nathan, J.) (holding that defendant's subpoena "for 'any and all' records associated with the Government's cooperating witnesses for an indefinite length of time takes an impermissible shotgun approach to Rule 17(c)"); *United States v. Barnes*, No. 04 Cr. 186 (SCR), 2008 WL 9359654, at *4 (S.D.N.Y. Apr. 2, 2008) (quashing motion that "blindly seeks 'all' documents and records that fall into several categories for an approximate 23-month period rather than identifiable pieces of evidence" because "[s]uch a blanket request implicates all of the problems associated with a classic 'fishing expedition'"); *United States v. Chen De Yian*, No. 94 CR. 719 (DLC), 1995 WL 614563, at *2 (S.D.N.Y. Oct. 19, 1995) (denying motion for Rule 17(c) subpoena seeking "all records . . . pertaining to any and all investigations" into charged murders,

The Honorable Alison J. Nathan
March 22, 2021
Page **4** of **7**

because "the subpoena was not crafted to call for admissible evidence. Rather, it called for the production of the entire investigative file and is accurately described as a fishing expedition.").

Similarly, Request 12 asks for "EVCP Material," which is defined as "*any* submission to the Epstein Victim's Compensation Program made by You, including *any* claims on behalf of persons who have accused Jeffrey Epstein or Ghislaine Maxwell of any misconduct, *any* releases signed by You or Your Clients, and *any* compensation received by You or Your Clients." This Request does not satisfy the *Nixon* standard—the Defendant is not a party or otherwise privy to what information BSF has submitted to the confidential Epstein Victim's Compensation Program or on behalf of which clients BSF has submitted such information. The Defendant cannot merely request every piece of confidential information that BSF submitted to the Program in the hopes that something relevant and admissible turns up. This Request thus cannot pass muster under Rule 17(c).

*Second*, although BSF does not know what arguments the Defendant made in her *ex parte* motion, the documents and items requested in the Subpoena bear no apparent relevance to the Defendant's guilt or innocence of the charges in this matter. And to the extent they would be relevant solely for impeachment purposes, or relevant but inadmissible, the Defendant cannot obtain them in advance of trial pursuant to Rule 17(c). *Nixon*, 418 U.S. 683, 699–700, 701.

Request 1 seeks communications between BSF and the U.S. Attorney about the Defendant from 2015 through the present, and Requests 3 through 5 seek communications between BSF and BSF's co-counsel from 2015 through the present regarding any meetings with the U.S. Attorney's office about the Defendant. But such communications are not relevant to the Government's allegations that the Defendant enticed minors to travel, and transported minors, to engage in sex acts between 1994 to 1997, nearly 20 years prior to any such communications. Nor do such communications bear any apparent relevance to whether the Defendant perjured herself in a civil deposition. If such communications are relevant, they are only relevant to the Defendant's false narrative that BSF somehow colluded with the Government—an allegation that could serve no other purpose than impeachment of the Government's potential witnesses. Request 8—seeking any grand jury subpoena ▉▉▉▉▉▉▉ for documents related to litigation concerning the Defendant—is similarly aimed at developing some ill-informed narrative of collusion between BSF and the Government, as the Defendant has on numerous occasions accused BSF of improperly providing the Government with confidential documents governed by a protective order in a separate civil matter. *See, e.g.*, ECF No. 134 (Defendant's motion to suppress evidence obtained by subpoena to what appears ▉▉▉▉▉).[2] Even if these documents were relevant to anything other

---

[2] Requests 3 through 5 also seek protected work product. Those Requests seek communications between BSF and its co-counsel in several matters relating to Jeffrey Epstein and Ghislaine Maxwell. Such communications were prepared in anticipation of litigation or for trial. Where a criminal defendant seeks to subpoena work product, the defendant can only overcome the privilege by demonstrating a "substantial need" for the requested items and that he "cannot, without undue hardship, obtain their substantial equivalent by other means." *United States v. Weisberg*, No. 08-CR-347 NGG RML, 2011 WL 1327689, at *5 (E.D.N.Y. Apr. 5, 2011). Given the marginal potential evidentiary value of the communications, the Defendant will be unable to demonstrate a substantial need for protected communications between BSF and its co-counsel.

The Honorable Alison J. Nathan
March 22, 2021
Page **5** of **7**

than impeachment, many of them are procurable from the Government and are thus improper subjects of a Rule 17(c) subpoena, as explained below.

Requests 2 through 5 also seek communications from 2015 through the present between BSF, its co-counsel, and the U.S. Attorney about Jean Luc Brunel, who is presently incarcerated in France on charges of sex crimes and is one of Jeffrey Epstein and the Defendant's co-conspirators. But Brunel does not appear to be relevant to any of the Government's charges in the indictment in this case, and, again, communications from 2015 are not relevant to conduct that occurred between 1994 and 1997. The Defendant thus seeks these communications, too, so that she can fish for impeachment materials.

Requests 6 and 7 seek contingency fee agreements or engagement letters between BSF and Annie Farmer and her sister, Maria Farmer. Such documents are irrelevant. The fact that the Farmers are represented, and the terms of their representation, is not relevant to whether the Defendant committed the crimes of which she is accused. Even the impeachment value of such documents is speculative. Maria Farmer is not one of the minor victims described in the indictment, and thus may not be called to testify in this case. And in seeking to determine whether BSF has contingency fee arrangements with the Farmers, the Defendant appears to seek to establish some motive of BSF to drum up contingency fees by convincing women to falsely accuse the Defendant of criminal conduct. But *BSF's* motive for representing the Farmers would not be relevant to *the Farmers'* motives for testifying for the prosecution (if they testify).

Request 9 seeks the original, complete copy of Annie Farmer's journal from when she was a teenager for inspection and copying. But all potentially relevant pages were produced from this journal to the Defendant in civil discovery in another matter, as demonstrated by the Defendant's ability to attach those pages as Exhibit A to the Subpoena. The remainder of the journal has nothing to do with the Defendant or Jeffrey Epstein. And the Defendant cannot inspect it for the purpose of fishing for something that could be potentially relevant—it is her burden to identify relevant and admissible evidence under *Nixon*. The Defendant also clearly seeks to use the journal for impeachment purposes, as she highlighted in a prior filing in a recently dismissed civil action Ms. Farmer filed against the Defendant. *See* Letter from L. Menninger to Hon. Debra C. Freeman at 2, *Annie Farmer v. Darren K. Indyke, et al.*, 19-cv-10475 (LGS-DCF) (S.D.N.Y. Dec. 30, 2020), ECF No. 108 ("[P]laintiff produced certain pages from a diary dated in early 1996 which detailed, only, that Jeffrey Epstein had held her hand in a movie theater in late 1995 which made her feel uncomfortable. This same diary contained exactly *zero* references to Ghislaine Maxwell, contrary to the assertions in her Complaint . . . ." (emphasis in original)).

Request 12 for "EVCP Material" is not relevant to the Defendant's defense. BSF submitted claims and supporting evidence to the Epstein Victim's Compensation Program on behalf of several Epstein survivors who have not made separate claims against Maxwell. The Defendant must demonstrate the relevance of *all* the evidence she seeks by means of a Rule 17(c) subpoena, not merely that she could turn up something that is relevant and admissible. *See Pena,* 2016 WL 8735699, at *2 (Nathan, J.) ("Pena has failed to make the requisite showing regarding the admissibility of 'any and all' other records regarding the cooperators that might exist at the MDC, MCC, or DOC."); *United States v. Aguilar*, No. CR 07-00030 SBA, 2008 WL 3182029, at *6 (N.D. Cal. Aug. 4, 2008) ("Thus, while the Aguilars have sought some relevant evidence here,

The Honorable Alison J. Nathan
March 22, 2021
Page **6** of **7**

they have not demonstrated the relevance of all of the evidence they seek."). The Defendant simply cannot demonstrate that *all* of the information submitted on behalf of *all* of BSF's clients would be relevant and admissible in this matter.[3]

Further, the Defendant has made it clear that she seeks to use the "EVCP Material" for impeachment purposes. She has requested not only BSF's submissions to the Program, but also any releases signed by BSF's clients and any compensation received by BSF's clients. The Defendant already attempted to obtain information about Annie Farmer's compensation by the Program in Ms. Farmer's recently dismissed civil action against the Defendant. In the Defendant's submissions in that matter, she explicitly stated that she sought the information in order to impeach Ms. Farmer if she were to testify at her criminal trial:

> By contrast, there is substantial evidence that [Ms. Farmer] and [BSF] filed this case with a serious ulterior motive to fabricate a story against Ms. Maxwell some 24 years after the fact. The motives include, but are not limited to, increasing the cash consideration that she might receive from the Epstein Victims Compensation Program ("EVCP"). . . . Just as [Ms. Farmer] has a public right to make her false allegations in a lawsuit and in the news, so Ms. Maxwell should have the right to make public the simple fact that plaintiff did not have a desire for "justice," she had a desire for money. . .
>
> Second, as previously explained, Ms. Farmer has publicly self-identified as one of the accusers mentioned in the indictment in the criminal case, 20-cr-330 (AJN). She will no doubt be one of the prosecution's key witnesses. The inability to obtain an unredacted copy of the release, including the consideration received by Ms. Farmer, creates legal prejudice to Ms. Maxwell's ability to confront Ms. Farmer during her criminal trial on general issues of bias and motive for fabrication, as is her right under the Confrontation Clause of the United States Constitution.

Letter from L. Menninger to Hon. Lorna G. Schofield at 2–3, *Annie Farmer v. Darren K. Indyke, et al.*, 19-cv-10475 (LGS-DCF) (S.D.N.Y. Jan. 21, 2021), ECF No. 114; *see also* Letter from L. Menninger to Hon. Debra C. Freeman at 3, *Annie Farmer v. Darren K. Indyke, et al.*, 19-cv-10475 (LGS-DCF) (S.D.N.Y. Dec. 30, 2020), ECF No. 108 ("Certainly, the amount of money that [Ms. Farmer] has been offered by the [EVCP] in exchange for her un-tested story will be an issue in the upcoming criminal trial when plaintiff takes the stand, for the first time, and faces cross-examination. . . . The motive for fabrication could not be clearer.").[4] Thus, the "EVCP

---

[3] Further, a Rule 17 subpoena may not be used to seek the prior statements of an anticipated trial witness. Rule 17 expressly prohibits a party from serving a subpoena for this purpose. *See* Fed. R. Crim. P. 17(h) ("No party may subpoena a statement of a witness or of a prospective witness under this rule."). The claims submitted as part of the "EVCP Material" include statements made by potential witnesses.

[4] Again, however, even the impeachment value of Annie Farmer's EVCP compensation determination is dubious. Ms. Farmer may have received compensation after submitting a claim to the Program, but that does not show a potential motive for *testifying for the prosecution* in this separate criminal action.

The Honorable Alison J. Nathan
March 22, 2021
Page **7** of **7**

Material," which is clearly sought for impeachment purposes, is not a proper subject of a Rule 17(c) subpoena.

*Third*, certain of the documents that the Defendant seeks to obtain from BSF are "otherwise procurable" from the Government. *Nixon*, 418 U.S. at 699 (documents requested pursuant to Rule 17(c) must not be "otherwise procurable" from another source). Requests 1 and 2 both seek communications between BSF and the U.S. Attorney, which the Defendant can procure from the Government. Similarly, Request 8 seeks a Grand Jury Subpoena that ▬▬▬▬▬ by the Government itself, and that the Defendant can therefore procure from the Government. Thus, a Rule 17(c) subpoena to BSF for those documents is improper. *See, e.g.*, *United States v. Bergstein*, No. 16 Cr. 746 (PKC), 2017 WL 6887596, at *5 (S.D.N.Y. Dec. 28, 2017) ("When 'many' of the subpoenaed materials are obtainable through the discovery process, a subpoena contravenes *Nixon*'s requirement that subpoenaed materials must not be otherwise procurable in advance of trial by the exercise of due diligence."); *United States v. Boyle*, No. 08 Cr. 523 (CM), 2009 WL 484436, at *3 (S.D.N.Y. Feb. 24, 2009) (quashing a 17(c) subpoena where it was "likely that many of the documents that defendant seeks in his subpoena are obtainable from another source—the United States Attorney's Office—with little or no diligence required").

*Finally*, Requests 10 and 11 seek items that can be produced at trial if they are shown to be relevant and admissible. Request 10 seeks a pair of cowboy boots that the Defendant and Jeffrey Epstein purchased for Annie Farmer for inspection and copying. Request 11 seeks the original copies of various photographs of Annie Farmer when she was a teenager, of Maria Farmer on Leslie Wexner's property, of Virginia Giuffre on various of Jeffrey Epstein and the Defendant's properties, and of Virginia Giuffre, Prince Andrew, and the Defendant in the Defendant's London townhome. Although the relevance of these items is minimal—the photographs, for example, do not appear to depict any conduct or event described in the indictment—the Defendant cannot show that she "cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial," which is an independent requirement under *Nixon*. 418 U.S. at 699. There is simply no reason why, if the Farmers and Ms. Giuffre ultimately testify and if these items prove to be relevant and admissible, these items cannot be produced for inspection at trial.

For all of the foregoing reasons, the Defendant's motion to authorize service of the Subpoena on BSF should be denied

Respectfully submitted,

/s/ Sigrid S. McCawley
Sigrid S. McCawley