*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 5, 2021

**BY ECF**

The Honorable Alison J. Nathan
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    *United States v. Ghislaine Maxwell*, S2 20 Cr. 330 (AJN)

Dear Judge Nathan:

The Government respectfully submits this letter in connection with the Court's Order of March 24, 2021, regarding the defendant's application for an order authorizing a subpoena pursuant to Rule 17(c) of the Federal Rules of Criminal Procedure for records from Boies Schiller Flexner LLP ("BSF"). For the reasons set forth herein, the Government respectfully requests that the Court (1) direct the defendant to provide the Government with a copy of the proposed subpoena to BSF and notice of all existing and future applications for subpoenas under Rule 17(c) returnable in advance of trial, and (2) direct that any productions made in response to Rule 17(c) subpoenas be produced to the opposing party and marked confidential under the protective order.

      **I.**    **Background**

As the Court is aware, the Government has produced to the defendant more than 2.7 million pages of discovery pursuant to the Government's various discovery obligations, including Rule 16. The parties are also in discussions about the timing of further productions by the Government, including material provided pursuant to 18 U.S.C. § 3500 and *Giglio* material.

Those obligations, and not Rule 17 subpoenas, provide the avenue through which defendants in criminal cases obtain discovery. As the Supreme Court has explained, "[i]t was not intended by Rule 16 to give a limited right of discovery, and then by Rule 17 to give a right of discovery in the broadest terms." *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951); *see also United States v. Purin*, 486 F.2d 1363, 1368 (2d Cir. 1973) ("A subpoena duces tecum in a criminal case is not intended as a means of discovery."). Unlike the rules of civil procedure—permitting the issuance of subpoenas to seek production of documents or materials which, although themselves not admissible, may lead to admissible evidence—the criminal rules do not authorize the issuance of such broad pretrial subpoenas under Rule 17. *See United States v. Cherry*, 876 F. Supp. 547, 552 (S.D.N.Y. 1995); *United States v. Gross*, 24 F.R.D. 138, 141 (S.D.N.Y. 1959) (Rule 17(c) cannot be used "to obtain leads as to the existence of additional documentary evidence or to seek information relating to the defendant's case. This type of discovery, permissible under the Federal Rules of Civil Procedure, has not been authorized for criminal trials.").

The purpose of Rule 17(c) is to "expedite the trial by providing a time and place before trial for the inspection of" specific materials that the parties intend to offer into evidence. *See United States v. Tagliaferro*, No. 19 Cr. 472 (PAC), 2021 WL 980004, at *2 (S.D.N.Y. Mar. 16, 2021) (citing *Bowman Dairy Co.*, 341 U.S. at 220 (1951)); *see also United States v. Ulbricht*, 858 F.3d 71, 109 (2d Cir. 2017) (explaining that the rule "allows parties to subpoena documents and objects to be introduced at criminal trials"), *abrogated on other grounds as recognized by United States v. Chambers*, 751 F. App'x 44, 46 & n.1 (2d Cir. 2018) (summary order). Accordingly, the Supreme Court has explained that, to require production of materials pursuant to Rule 17(c), the party seeking production must show that:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise

> of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

*United States v. Nixon*, 418 U.S. 683, 699-700 (1974) (footnote omitted); *see United States v. Skelos*, 988 F.3d 645, 661 (2d Cir. 2021) (affirming a decision to quash subpoenas through application of *Nixon*); *United States v. Pena*, No. 15 Cr. 551 (AJN), 2016 WL 8735699, at *1-*2 (S.D.N.Y. Feb. 12, 2016) (applying *Nixon*, rather than the "more liberal standard" of *United States v. Tucker*, 249 F.R.D. 58 (S.D.N.Y. 2008), to the propriety of a Rule 17(c) subpoena).

The *Nixon* test is demanding. The defendant must establish that the defense's "application is made in good faith and is not intended as a general 'fishing expedition.'" *Nixon*, 418 U.S. at 700; *United States v. Yian*, No. 94 Cr. 719 (DLC), 1995 WL 614563, at *2 (S.D.N.Y. Oct. 19, 1995) (quashing subpoena that "call[s] for the production of the entire investigative file and is accurately described as a fishing expedition"); *United States v. Cuthbertson*, 630 F.2d 139, 144 (3d Cir. 1980) ("[T]est for enforcement is whether the subpoena constitutes a good faith effort to obtain *identified evidence* rather than a general 'fishing expedition' that attempts to use the rule as a discovery device." (emphasis added)). Indeed, because the Rule poses such a risk of abuse and misuse, courts are stringent in holding those seeking to obtain documents to Rule 17(c) to their burden of demonstrating that the documents sought are (1) relevant, (2) admissible, (3) specifically identified, and (4) not otherwise procurable, and it is "insufficient" for a party to show only that the subpoenaed documents "are *potentially* relevant or *may* be admissible," *United States v. RW Prof'l Leasing Servs. Corp.*, 228 F.R.D. 158, 162 (E.D.N.Y 2005) (emphasis added). "[A] mere hope that the documents, if produced, may contain evidence favorable to the defendant's case will not suffice. Rule 17(c) requires a showing that the materials sought are *currently admissible* in

evidence; it cannot be used as a device to gain understanding or explanation." *United States v. Rich*, No. 83 Cr. 579 (SWK), 1984 WL 845, at *3 (S.D.N.Y. Sept. 7, 1984) (internal quotation marks omitted) (emphasis added). Accordingly, subpoenas that call for "any" and "all" records "do not evince specificity" and "read[] like a discovery request, which is not permitted under Rule 17(c)." *Tagliaferro*, 2021 WL 980004 at *3; *see Pena*, 2016 WL 8735699, at *3. And "[g]enerally the need for evidence to impeach witnesses is insufficient to require its production in advance of trial." *Nixon*, 418 U.S. at 701 (citations omitted); *see* Fed. R. Crim. P. 17(h) ("No party may subpoena a statement of a witness or of a prospective witness under this rule.").

If a subpoena calls for "personal or confidential information about a victim," the subpoena may be served "only by court order" following "notice to the victim so that the victim can move to quash or modify the subpoena or otherwise object." Fed. R. Crim. P. 17(c)(3). After a subpoena issues, "[t]he court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence." Fed. R. Crim. P. 17(c)(1). "When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them." *Id.*

## II. The Court Should Direct the Defendant to Provide Notice of Prior and Future Applications Under Rule 17(c) to the Government

The Government has legitimate and cognizable interests in Rule 17(c) subpoenas issued by the defense. In particular, courts have routinely found that the Government has standing to move to quash Rule 17(c) subpoenas that target information about anticipated Government witnesses "based on the Government's 'interest in preventing any undue lengthening of the trial, any undue harassment of the witness and his family, and any prejudicial over-emphasis on the witness's credibility.'" *United States v. Ray*, -- F.R.D. --, No. 20 Cr. 110 (LJL), 2020 WL 6939677, at *7 (S.D.N.Y. Nov. 25, 2020) (alterations omitted) (quoting *United States v. Giampa*, No. 92 Cr. 437 (PKL), 1992 WL 296440, at *1 (S.D.N.Y. Oct. 7, 1992)); *see United States v. Bergstein*, No. 16

Cr. 746 (PKC), 2017 WL 6887596, at *2-*3 (S.D.N.Y. Dec. 28, 2017) ("Preventing the undue harassment of a cooperating witness is a legitimate governmental interest giving rise to standing in this context."); *cf. United States v. Nachamie*, 91 F. Supp. 2d 552, 558-60 (S.D.N.Y. 2000) (concluding that the Government failed to establish a legitimate interest where, among other things, none of the subpoenaed entities had been "publicly identified by the Government as trial witnesses, or as particularly vulnerable witnesses"). That is particularly true where the subpoena at issue seeks material that the defendants would be entitled to, if at all, as *Giglio* or 3500 material given that the Government has a cognizable interest in "controlling the timing of disclosures as to" witnesses who are expected to testify at trial, and for whom the Government has various disclosure obligations. *United States v. Cole*, No. 19 Cr. 869 (ER), 2021 WL 912425, at *2 (S.D.N.Y. Mar. 10, 2021); *see Bergstein*, 2017 WL 6887596, at *3. Finally, the Government has standing to challenge subpoenas that call for its own communications. *See United States v. Carton*, 17 Cr. 680 (CM), 2018 WL 5818107, at *3 (S.D.N.Y. Oct. 19, 2018) (quashing a subpoena for communications with the Government).[1]

The only way for the Government to vindicate those interests is with notice so that the Government may, as appropriate, have an opportunity to quash the subpoenas. There is no avenue, after a subpoena is issued and fulfilled, for the Government to protect its interests in the timing of disclosures about victims or the disclosure of the Government's own communications. That is particularly important given that a subpoena recipient may lack sufficient knowledge about the

---

[1] The Government also has standing to challenge a Rule 17(c) subpoena at the request of a victim, witness or third-party impacted by the subpoena. *See Ray*, 2020 WL 6939677, at *7 ("Courts have acknowledged that the Government has standing to challenge Rule 17(c) subpoenas directed to a non-party when the non-party authorizes the Government to assert his or her right by request or by indicating its joinder in a motion to quash." (internal quotation marks and alteration omitted)).

case or motivation to move to quash an otherwise improper subpoena.[2] Accordingly, the Government respectfully requests notice of all subpoenas with pretrial return dates issued or sought to be issued under Rule 17(c).[3]

While, as the Court noted in its Order, Rule 17(c) subpoenas are frequently issued *ex parte* in this district, the issue is rarely litigated. *See, e.g.*, *United States v. States v. Wey*, 252 F. Supp. 3d 237, 243 (S.D.N.Y. 2017) (noting, without extended discussion, that subpoena had issued upon *ex parte* application); *United States v. Earls*, No. 03 Cr.0364 (NRB), 2004 WL 350725, at *6 (S.D.N.Y. Feb. 25, 2004) (noting that the defendant may seek subpoenas *ex parte*). When courts have considered the issue, however, many have directed that the parties should give each other notice of Rule 17(c) subpoenas unless a party can justify proceeding *ex parte*. *See United States v. Skelos*, No. 15 Cr. 317 (KMW), 2018 WL 2254538, at *8 (S.D.N.Y. May 17, 2018) (explaining that courts have permitted *ex parte* requests "where a reason existed for doing so," and requiring notice "[t]o further reduce the risk that trial will be delayed, unless a party has a compelling reason for proceeding *ex parte* with a subpoena request"), *aff'd*, 988 F.3d 645 (2d Cir. 2021); *United States v. St. Lawrence*, 16 Cr. 259 (CS), Dkt. No. 66 at 6 (S.D.N.Y. Dec. 22, 2016) (requiring motions for Rule 17(c) subpoenas and permitting *ex parte* applications "if the movant can articulate a reason why it should be"); *United States v. Boyle*, No. 08 Cr. 523 (CM), 2009 WL 484436, at *3 (S.D.N.Y. Feb. 24, 2009) (requiring noticed motions for Rule 17(c) subpoenas to "assur[e] that such subpoenas are not abused or used for impermissible discovery," and permitting *ex parte* applications "where a

---

[2] For example, a financial institution may lack sufficient knowledge about the case or motivation to expend the resources to move to quash what appears to be a routine subpoena that broadly seeks financial records for a Government cooperator or lay witness to be used for impeachment purposes, notwithstanding the fact that such a subpoena may run afoul of the *Nixon* standard.

[3] The Government is not seeking notice of subpoenas returnable at trial.

Case 1:20-cr-00330-AJN Document 195 Filed 04/05/21 Page 7 of 11

Page 7

party can demonstrate" a basis (emphasis omitted)); *United States v. Weisman*, 01 Cr. 529 (BSJ), 2002 WL 1467845, at *1 (S.D.N.Y. July 8, 2002) (similar); *see also United States v. Fox*, 275 F. Supp. 2d 1006, 1012 & n.7 (D. Neb. 2003) (surveying the caselaw and adopting the "majority view" that Rule 17(c) "does not ordinarily permit the use of ex parte applications by the government or the defense for subpoenas seeking pretrial production of documents unless the sole purpose of seeking the documents is for use at trial," and even then, only if "there is a good trial-related reason" and generally requiring production in the presence of the opposing party); 2 Wright & Miller, Fed. Prac. & Procedure § 275 (4th ed.) ("It has been held, however, that *in limited circumstances*, both the government and a defendant may make an ex parte application for a pre-trial subpoena duces tecum" (emphasis added)). *But see Ray*, 2020 WL 6939677 at *8 ("Courts in this District have long followed the practice of permitting both the defense and the Government to submit ex parte applications for Rule 17(c) subpoenas."); *United States v. Reyes*, 162 F.R.D. 468, 470 (S.D.N.Y. 1995) (permitting *ex parte* applications because a party must "detail its trial strategy or witness list in order to convince a court that the subpoena satisfies the *Nixon* standards"). Notice of Rule 17(c) subpoenas is similarly appropriate in this case to prevent abuse and address objections expediently. And such a requirement is consistent with the plain language of Rule 17: while Rule 17(b) expressly provides for an *ex parte* procedure for indigent defendants seeking to subpoena a *witness* for trial, it makes no such provision for an application for the production of documents and objects pursuant to Rule 17(c).[4]

---

[4] In *Ray*, the Court concluded that Rule 17(c) is simply an extension of Rules 17(a) and (b)'s provisions of subpoenas to witnesses, which may issue without notice. *See* 2020 WL 6939677, at *8 (quoting *United States v. Florack*, 838 F. Supp. 77, 79 (W.D.N.Y. 1993)). However, Rule 17(c) subpoenas for records are quite unlike subpoenas for trial testimony: they can be made returnable before trial, and Rule 17(c)'s text provides that materials obtained pursuant to such a subpoena may be returnable to *the Court*, which may in turn "permit *the parties* and their attorneys to inspect all or part of them," and subjects the subpoenas to motions to quash. Fed. R. Crim. P. 17(c)(1)-(2)

Moreover, as the information currently available to the Government about the BSF subpoena makes plain, the Government's concerns are well founded. Indeed, the defendant has already sought issuance of a subpoena that appears to directly implicate the Government's interests by expressly and improperly seeking broad categories of victim information and communications with the Government. While the Government has not seen the subpoena to BSF, it also appears that the subpoena constitutes a fishing expedition for potential impeachment material, which plainly runs afoul of the *Nixon* test. (Letter from BSF to the Court at 2, Dkt. No. 191).[5] Insofar as the defendant is attempting to engage in such an improper expedition in this case—or even if the defendant is merely pushing the limits of a Rule 17 subpoena—the Government respectfully submits that it should be afforded the opportunity to bring its concerns to the Court's attention.

The Government recognizes that some information, such as portions of a defendant's explanation for why a particular request in a particular subpoena meets the *Nixon* standard, may reveal critical defense strategy meriting *ex parte* consideration by the Court. But the Government respectfully submits that interest can be served through specific defense requests tailored to the particular redaction or application at issue, rather than a default whereby the defendant is permitted to proceed entirely *ex parte* in seeking documents and materials pursuant to Rule 17(c).

---

(emphasis added); *see United States v. Reyes*, 162 F.R.D. 468, 470 (S.D.N.Y. 1995) ("Rules 17(a) and 17(b), which govern the issuance of subpoenas returnable *at trial*, also do not provide guidance as to the proper procedure for obtaining a pretrial subpoena duces tecum."). These procedures are, at a bare minimum, in tension with proceeding *ex parte* or under the rules that govern subpoenas for trial testimony.

[5] The Government has also not seen any response filing by the defendant, which per the Court's March 24, 2021 Order was to be filed on or before April 2, 2021. To the extent the defendant did file such a response, it was neither docketed nor provided to the Government, and as such, the Government is unable to address herein any arguments made by the defendant about the BSF subpoena.

### III. Any Records Obtained Pursuant to a Rule 17(c) Subpoena Should Be Marked Confidential Under the Protective Order and Produced to the Opposing Party

Additionally, and to the extent the defendant has issued or will issue other subpoenas *ex parte* pursuant to Rule 17(c), the responsive records should be produced to the Government and marked confidential pursuant to the protective order. *See* Fed. R. Crim. P. 17(c)(1).

First, materials gathered pursuant to a Rule 17(c) subpoena by either party should be promptly made available to their adversary. As noted above, the text of Rule 17(c) plainly provides that materials obtained pursuant to a subpoena may be returned *to the Court* which "may permit the parties and their attorneys to inspect all or part of them." Fed. R. Crim. P. 17(c)(1). Nowhere does the Rule provide for one party's ability to use a subpoena to secretively gather material in advance of trial, nor does it include a categorical exception due to concerns about defense or trial strategy. Indeed, because the purpose of Rule 17 is to obtain evidence for use *at trial*, and not to investigate for evidence or obtain impeachment material, disclosure of the fruits of a Rule 17(c) subpoena fits neatly with Rule 16's reciprocal obligations for disclosure of evidence that the defendant intends to introduce in her case-in-chief. *See* Fed. R. Crim. P. 16(b)(1)(A); *United States v. St. Lawrence*, 16 Cr. 259 (CS), Dkt. No. 66 at 6 (S.D.N.Y. Dec. 22, 2016) ("It seems to the Court that because Rule 17(c) subpoenas are intended to obtain specific materials that the party expects to offer into evidence, Rule 16 would oblige the party to make the materials available to the other side anyway.").[6]

By contrast, to the extent the defendant has improperly obtained information through a Rule 17(c) subpoena, the Government should have the opportunity to move to preclude its use at trial. In order to permit such a motion to be made in a timely manner—and so as to avoid the

---

[6] To the extent the Government makes use of Rule 17(c) subpoenas, it similarly will promptly produce all material received to the defendant.

unnecessary delay and disruption that will occur if the Government only learns of the existence of such material during trial—the Government seeks disclosure of any records obtained in response to such a subpoena. At a minimum, the Court should order production of subpoena returns directly to the Court, so it may screen out irrelevant or improper information and determine whether any materials should be made available to the Government as well as the defendant.

Second, the Court should direct that any material obtained pursuant to a Rule 17 subpoena be marked confidential and subject to the protective order. As noted above, the BSF subpoena appears to call for a substantial amount of sensitive personal information about victims. For instance, according to the letter from BSF, the subpoena to BSF requests the "original, complete copy" of a victim's diary. (Letter from BSF to the Court at 5, Dkt. No. 191). To the extent the defendant has obtained or will obtain sensitive information about victims or witnesses, it should be treated as "confidential" under the protective order much like other such information in this case.

### IV.  Conclusion

The Government respectfully requests that the Court order the defendant to provide notice to the Government of pending and future applications for Rule 17(c) subpoenas returnable in advance of trial, and for the Court to order that any records obtained in response to Rule 17(c) subpoenas be treated as confidential under the protective order and disclosed to the Government.

Respectfully submitted,

AUDREY STRAUSS
United States Attorney

by: ___/s/_____
Maurene Comey
Alison Moe
Lara Pomerantz
Andrew Rohrbach
Assistant United States Attorneys
(212) 637-2324

cc:   Counsel of Record (by ECF)