

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

<i>The Silvio J. Mollo Building<br>
One Saint Andrew's Plaza<br>
New York, New York 10007</i>

April 6, 2021

**BY ECF**

The Honorable Alison J. Nathan
United States District Court
Southern District of New York
United States Courthouse
40 Foley Square
New York, New York 10007

  Re: *United States v. Ghislaine Maxwell*, 20 Cr. 330 (AJN)

Dear Judge Nathan:

  The Government respectfully submits this letter to provide an update regarding the defendant's conditions of confinement at the Metropolitan Detention Center ("MDC") pursuant to the Court's Order dated December 8, 2020. (Dkt. No. 92). This update is based on information provided to the Government by MDC legal counsel regarding the conditions of the defendant's confinement over the last two months.

  The defendant continues to receive more time to review discovery than any other inmate at the MDC. Specifically, the defendant is permitted to review her discovery thirteen hours per day, seven days per week. During the entirety of that time, the defendant has access to both a desktop computer provided by the MDC and a laptop computer provided by the Government on which to review discovery. Also during those thirteen hours per day, the defendant may use the MDC desktop computer to send and receive emails with her attorneys.[1] This discovery review

---

[1] Per BOP policy, all inmate emails are routinely purged every six months. In response to complaints from the defendant and defense counsel regarding prematurely deleted emails, MDC staff examined the defendant's inmate email account. That examination revealed that the defendant had herself deleted some of her emails and had archived others. That examination revealed no evidence to suggest that MDC staff deleted any of the defendant's emails.

takes place in a day room that is separate from the defendant's isolation cell. Accordingly, the defendant is permitted out of her cell from 7am to 8pm every day. While in the day room, the defendant has exclusive access to the MDC desktop computer, the laptop, a television, a phone on which to place social or attorney calls, and a shower. The defendant is also permitted outdoor recreation every day, although she has the option of declining such recreation time if she wishes.

The defendant also has as much, if not more, time as any other MDC inmate to communicate with her attorneys. Currently, the defendant receives five hours of video-teleconference ("VTC") calls with her counsel every weekday, for a total of 25 hours of attorney VTC calls per week. At times, unexpected incidents, such as institution-wide lockdowns or short staffing, delay the defendant's arrival to her VTC call with counsel by up to 30 minutes. When such delay occurs, however, the MDC permits the defendant to make up for any missed time either by extending that day's VTC call or by permitting the defendant extra time on the next day's VTC call. All of these VTC calls take place in a room where the defendant is alone and where no MDC staff can hear her communications with counsel. During these VTC calls, MDC staff place a camera approximately 30 feet away from the door to the room where the defendant conducts the VTC calls. The camera has a full view of the door to the VTC room, but the camera cannot view either the defendant or her attorneys while the door is closed during VTC calls. The camera does not capture any sound from the defendant's VTC calls with her attorneys. In other words, the camera records who enters and exits the VTC room, but it does not record activity inside the VTC room. The defendant is also permitted to use the phone in the day room to place phone calls to her attorneys as needed.

In addition, defense counsel now have the option of meeting with the defendant in person at the MDC. On or about February 16, 2021, the MDC resumed in-person visitation. As a result,

in-person attorney visits are now available seven days per week. The MDC has placed HEPA air filters in its attorney visiting rooms to improve air quality during visits. Additionally, the defendant has received the COVID-19 vaccine and is now fully vaccinated. The Government understands that defense counsel have thus far declined to meet with the defendant in person and instead rely on VTC calls, email, and supplemental phone calls to communicate with their client. The option of in-person visits remains available seven days per week should defense counsel wish to meet with the defendant in person.

The defendant's legal mail is processed in the same manner as mail for all other inmates at the MDC. All inmate mail is sent to the MDC's mail room, where every piece of mail is processed before being provided to the inmate recipient. Due to the large number of MDC inmates and the volume of mail received at the MDC, this process can take multiple days. As noted above, however, the defendant is able to send and receive emails with defense counsel every day and has regular communication with counsel via VTC, which can be supplemented by phone calls.

Like any other inmate, the defendant is patted down by MDC staff whenever she is moved to a different part of the facility. Typically, these searches include at least two pat-down searches of the defendant per day: once when she is moved from her isolation cell to the day room each morning, and once when returns from the day room to her isolation cell each night. In addition, when the defendant elects to attend outdoor recreation, she is searched two additional times: once when she is moved to the recreation area, and once when she returns to the day room from the recreation area. MDC staff also conduct a body scan, which is a non-invasive machine scan, on the defendant once per week to check for any secreted contraband. Because those scans take place in a different part of the facility than the day room, the defendant is patted down two additional times when these weekly scans occur: once when she is moved to the scan area, and once when

she returns to the day room from the scan area. As part of every pat-down search, the defendant is required to remove her mask and open her mouth briefly so that MDC staff, who remain masked during the searches, can confirm she has not hidden contraband in her mouth.[2] These pat-down and mouth searches are consistent with MDC's policy that all inmates be searched whenever they move to a different location within the jail facility. In the absence of in-person visitation, the defendant has not been strip searched. If the defendant receives in-person visits, then she, like all other inmates, will be strip searched after any in-person visit.

In addition, MDC staff search the defendant's cell for contraband once per day. At night, MDC staff are required to confirm every fifteen minutes that the defendant is not in distress. To do so, every fifteen minutes, staff point a flashlight to the concrete ceiling of the defendant's cell to illuminate the cell sufficiently to confirm that the defendant is breathing. At night, MDC staff have observed that the defendant wears an eye mask when she sleeps, limiting the disturbance caused by the flashlight. Additionally, MDC staff have observed that the defendant regularly sleeps through these nighttime wellness checks. The MDC continues to be of the view that all of these searches are necessary for the safety of the institution and the defendant.

The Government also inquired regarding certain complaints defense counsel raised in February 2021 regarding the defendant's food, water, and physical wellbeing. In response, MDC

---

[2] Following defense counsel's complaint in its February 16, 2021 letter of an inappropriately conducted pat-down search, the MDC conducted an investigation and found that, contrary to the defendant's claim, the search in question was in fact recorded in full by a handheld camera. After reviewing the camera footage, the MDC concluded that the search was conducted appropriately and the defendant's complaint about that incident was unfounded. MDC legal counsel further confirmed that all pat-down searches of the defendant are video recorded. Following this incident, MDC staff directed the defendant to clean her cell because it had become very dirty. Among other things, MDC staff noted that the defendant frequently did not flush her toilet after using it, which caused the cell to smell. In addition, the defendant had not cleaned her cell in some time, causing the cell to become increasingly dirty. MDC staff directed the defendant to clean her cell in response to the smell and the dirtiness, not as retaliation for complaining about a particular search.

legal counsel informed the Government that the defendant's meals arrive in containers that are both microwavable and oven safe. Currently, the defendant's meals are heated in a thermal oven. The tap water available in the MDC is provided by New York City. As a result, on occasions when the City has conducted maintenance near the MDC, the water has been temporarily shut off. During those periods, MDC staff have provided all inmates, including the defendant, with bottled water. After the water is turned back on, the water is sometimes cloudy or brown and needs to run for several seconds before becoming clear. MDC staff have not observed any instance in which the water in the defendant's cell did not clear after being run for several seconds. MDC legal counsel emphasized that MDC staff, including the legal staff, drink the same tap water from the same water system as the defendant while in the institution.

      MDC medical staff monitor the defendant daily and weigh the defendant at least once per week. During her time at the MDC, the defendant's weight has fluctuated between the 130s and the 140s. The defendant's lowest observed weight was 133 pounds in July of 2021. Since then, her weight has fluctuated but has never been lower than 134 pounds. Most recently, when the defendant was weighed last week, her weight was 137.5 pounds. The defendant is 5' 7", meaning that even her lowest weight of 133 pounds resulted in a BMI of 20.8, which is considered a normal weight for a person of the defendant's height. MDC staff have not observed the defendant experience any noticeable hair loss. As noted above, the defendant has received a COVID-19 vaccine and is now fully vaccinated. In short, MDC medical staff assess that the defendant is physically healthy.

Should the Court have any questions or require any additional details regarding this topic, the Government will promptly provide additional information.

                              Respectfully submitted,

                              AUDREY STRAUSS
                              United States Attorney

By: _____
      Maurene Comey / Alison Moe / Lara Pomerantz
      Assistant United States Attorneys
      Southern District of New York
      Tel: (212) 637-2324

Cc: All Counsel of Record (By ECF)