# LAW OFFICES OF BOBBI C. STERNHEIM

212-243-1100 • Main
917-306-6666 • Cell
888-587-4737 • Fax

33 West 19th Street - 4th Floor
New York, New York 10011
bc@sternheimlaw.com

April 7, 2021

Honorable Alison J. Nathan
United States District Judge
United States Courthouse
40 Foley Square
New York, NY 10007

Re: *United States v. Ghislaine Maxwell*
S2 20 Cr. 330 (AJN)

Dear Judge Nathan:

The government's letter of April 6th is yet another regurgitation of its previous letters regarding Ms. Maxwell's conditions of confinement. No matter how often the government tries to present Ms. Maxwell's detention as superior to other inmates, it continues to miss the mark. We stand by our previous responses and reiterate that Ms. Maxwell's detention is unwarranted and overly restrictive. It is tantamount to "pay-it-forward" punishment served pretrial.

The government's letter provides the opportunity to flush out the persistent unsanitary conditions at the MDC, which long predate Ms. Maxwell's detention. This past weekend there was a pervasive stench of sewage in Ms. Maxwell's unit necessitating guards to flush pipes by pouring water down open drains in an effort to trap and disperse gaseous emissions. As guards explained to Ms. Maxwell, there are three drains in the day area, and when the plumbing system goes unused, gases escape from the drains and cause the stench. At times the stench in Ms. Maxwell's isolation cell has been overwhelming due to overflowing of toilets in the cellblock above. Due to lack of privacy, Ms. Maxwell refrains from using the toilet in the isolation cell and, as directed by the guards, she flushes frequently to avoid plumbing problems. At times, the stench is apparent upon entering the visiting area. Of the many defense counsel who visit

regularly, I challenge the government to identify anyone that would risk their health by drinking the tap water. Even the guards resort to drinking bottled water.

Blaming Ms. Maxwell for the filth of her severely restricted environment is utterly misplaced. To suggest she willingly lives in squalor is absurd. In an effort to wield power, the guards use cleaning as a punishment. The MDC - especially the East Building where Ms. Maxwell is held– is permeated with mold and vermin. Cockroaches and rodents are plentiful and glue tracks have been placed in Ms. Maxwell's day area to help remediate the problem.

While HEPA filters may improve the safety of the legal visiting rooms – characterized by an HVAC inspector as "a death trap" – in-person visiting with Ms. Maxwell is uncomfortable and unproductive. Relegated to a small "fishbowl" where chairs abut glass walls and a table, with no room in between, Ms. Maxwell and counsel are forced to wedge their bodies into chairs. There is no opportunity to view electronic discovery or exchange documents; and speaking while wearing a face mask while crammed on either side of a plexiglass divider under surveillance of three guards and a handheld camera places a chill on any free exchange of confidential information. While video conferencing has facilitated on-going communication between Ms. Maxwell and counsel, her request for a legal call to confer with counsel regarding pretrial motions was denied.

Ms. Maxwell's health is deteriorating.  She has not experienced sunshine and fresh air for the past eight months.  Referring to an interior gated pen where Ms. Maxwell can exercise (and be subjected to even more searches) as the "outside" is a misnomer. Barely a breeze permeates that area.

Medical staff monitor Ms. Maxwell's health by recording her weight in her medical chart.  Guards declined Ms. Maxwell's request to know her weight, claiming they cannot look it

up because it is part of her medical record, which is protected by the American Health Insurance Portability and Accountability Act Health Information Policy (HIPAA). She is weighed while clothed on scales that are erratic and not set to zero; on at least one occasion, the scale was set above five pounds. Her eyesight is failing, and her hair is thinning. The guards are far from qualified to assess Ms. Maxwell's physical condition.

Releasing any inmate's medical information (i.e., weight, vaccinations, etc.) without inmate consent is a HIPAA violation. By releasing such information regarding Ms. Maxwell, the MDC has violated HIPAA, a privacy breach compounded by the government's letter. Requesting medical attention puts Ms. Maxwell's privacy and HIPAA rights at risk. We request that the Court order the MDC to cease releasing Ms. Maxwell's health information. Breach aside, such information falls within the "caution" category identified in Your Honor's Individual Practice in Criminal Cases (*see* 8D (Redactions)). The government, ever protective of sensitive items of discovery that relate to the alleged victims, should exhibit the same concern for Ms. Maxwell's right to privacy.

The incident of physical abuse which occurred when Ms. Maxwell was shoved into her isolation cell to be searched was previously reported to MDC Legal and the Court and investigated within the facility. The guard responsible for the abuse is a member of a rotating team that has been the subject of complaint, yet some members were reassigned to Ms. Maxwell for the past two weeks. The incident at issue occurred when Ms. Maxwell was facing forward in front of an officer whose back was in front of the handheld camera. On information and belief, the camera was not recording at that time. The government disputes Ms. Maxwell's claim by citing a video. We request that the Court direct the government to provide defense counsel with that video. In response to any misconduct of guards, the standard reply is that "the matter will be

taken seriously," and just like the majority of complaints filed by inmates, the facility refuses to provide results of this and other inquiries.

The mail and food issues persist. Even a Federal Express envelope from the government was not given to Ms. Maxwell until two weeks after it was sent, containing a discovery disc that was unreadable. In mid-March, she received a copy of the New York Times issued in October. Any claim that Ms. Maxwell deletes CorrLinks emails, which is disputed, does little to erase the fact that the MDC violated its own policy by prematurely deleting Ms. Maxwell's legal emails. That her food is not heated in a thermal oven does little to explain why she was given a salad containing mold earlier this week.

Ms. Maxwell does not have an eye mask; she's not even provided a suitable face mask. She covers her eyes with a towel to shield them from glaring overhead lighting that she cannot turn off and from flashlights pointed into her cell every 15 minutes during the night. That Ms. Maxwell chooses not to respond to guards during the nighttime is no indication that she is engaged in restful sleep; rather, it's a respite from having to engage with them.

No amount of gloss put on Ms. Maxwell's conditions of confinement can erase the fact that she remains in de facto solitary confinement, over-managed by multiple guards, and surveilled by multiple cameras 24 hours per day. The computer equipment provided remains inadequate to review the millions of pages of discovery under circumstances that are not conducive to preparing for trial. It is unreasonable to believe that not being able to search, mark, save, and print is sufficient to prepare this document-laden case for trial. The Court need only imagine how the government would respond if this was a 25-year-old document-driven fraud case.

The Court's request for updates concerning Ms. Maxwell's conditions of confinement does little to improve her situation. Quite the contrary. The government's update letters are anything but helpful: They fuel media attention which resounds to Ms. Maxwell's detriment. The government's attempt to publicly embarrass and humiliate Ms. Maxwell in the hostile court of public opinion further erodes the likelihood that her case will be tried by a fair and impartial jury. The government's review of the MDC may be Yelp-worthy, but it does not justify Ms. Maxwell's inappropriate detention. If the government wants to compare Ms. Maxwell to other defendants, it should do the right thing and consent to bail.

It is debatable whether the public has a "right to know" about Ms. Maxwell's conditions of confinement, but clearly, it does not extend to personal and medical information. The government safeguards personal information regarding its witnesses and is reluctant to release any unless mandated by statute or court order. Yet the government fails to accord Ms. Maxwell the same treatment.

Should the Court request further updates from the government, we request that they be limited to changed circumstances and filed under seal or subject to appropriate redaction.

Very truly yours,

*Bobbi C. Sternheim*
BOBBI C. STERNHEIM

cc: All counsel