


U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

February 28, 2019

**TO BE FILED UNDER SEAL**

**VIA EMAIL**

The Honorable Sarah Netburn
United States District Court
Southern District of New York
United States Courthouse
New York, New York  10007

    Re:   *In re Application to Unseal Civil Discovery Materials*, USAO No. 2018R01618

Dear Judge Netburn:

    The Government writes respectfully in connection with its sealed application and proposed order pursuant to the All Writs Act, Title 28, United States Code, Section 1651, for a limited order to unseal discovery materials in the possession of Boies Schiller & Flexner LLP (the "Application"), in connection with the matter *Jane Doe 43 v. Epstein, et al.* ("*Jane Doe*"), 17 Civ. 616 (JGK) (SN) (the "Litigation"), a copy of which is attached hereto as Exhibit A.

## Background

    As described in the Application, the Government has served a grand jury subpoena (the "Subpoena") upon Boies Schiller & Flexner ("Boies Schiller") requiring the production of copies of discovery and related materials related to the Litigation.  The Subpoena was validly issued pursuant to an ongoing investigation into Jeffrey Epstein and others, for possible violations of Title 18, United States Code, Sections 1591 and 1594(c) (unlawfully trafficking minors) and Section 2422(b) (unlawfully enticing minors) (the "Investigation").  The production of materials pursuant to the Subpoena is solely for the purposes of the Investigation, and is subject to the protections and restrictions of Fed. R. Crim. P. 6(e).

    The Government has been advised that Boies Schiller, which is counsel for plaintiffs in the Litigation, does not intend to contest the Subpoena.  However, the Government is advised that although Boies Schiller would not otherwise contest compliance with the Subpoena, it believes that a protective order entered in the Litigation (the "Protective Order") may preclude compliance.

    Accordingly, the Government respectfully requested that the Court issue an order permitting Boies Schiller to comply with the validly-issued Subpoena.

CONFIDENTIAL

### Discussion

Where, as here, a grand jury subpoena has validly issued, and the recipient of the subpoena is not contesting compliance—but rather seeking authorization to comply with the subpoena—a court should grant such permission through limited modification of an applicable protective order, absent countervailing interests not present in this case. As described below, a court can and should modify a protective order, or permit limited relief from it, to allow the recipient of a grand jury subpoena to comply with such a subpoena under the circumstances presented here.

The Court is best guided by the decision in *Chemical Bank v. Affiliated FM Ins. Co.*, 154 F.R.D. 91 (S.D.N.Y. 1994), which rejected an application for a party in civil litigation to be held in contempt for complying with a grand jury subpoena despite the existence of a protective order, without first obtaining authorization from the court, because the court would have granted such authorization had it been sought. *Chemical Bank*, 154 F.R.D. at 93. As that court explained:

> The role of the federal courts in law enforcement, exemplified by the Federal Criminal Code (Title 18, USC) and in enforcing Grand Jury subpoenas argues in favor of making significant information available to enforcement authorities absent a countervailing showing that the need for the information for such purposes is outweighed by the need for protecting expectations of confidentiality under Fed. R. Civ. P. 26(c).

*Id.* at 94 (citing *United States v. Davis*, 702 F.2d 418, 421-22 (2d Cir. 1983) (finding that the "conflict between protection of private material used in a civil proceeding and public need in a criminal prosecution" posed in that case was "easily resolved" and explaining that "[a]bsent applicable grounds for exception, such as a previously asserted Fifth Amendment privilege, no shiled protects the civil evidence" in that case "from compellable production before the grand jury which subpoenaed it"). The court in *Chemical Bank* chastised the relevant party for responding to the grand jury subpoena without authorization specifically because such disregard was "entirely unnecessary and inappropriate" due to the readily available remedy of a modification of the applicable protective order. *Chemical Bank*, 154 F.R.D. at 93. The court also explicitly noted that such formal judicial approval could be obtained *ex parte* if sufficient reason for doing so was shown. *Id*.

*Chemical Bank* further described the types of interests that otherwise might be implicated in connection with a Rule 26(c) protective order, none of which are implicated here. *Id.* at 94 ("There is no indication that any difficult balancing under Fed.R.Civ.P. 26(c) would have been necessary of interests of law enforcement against protection of technological trade secrets, currently sensitive customer lists, or contemporarily sensitive competitive information which could benefit rivals, since no such information has been claimed to have been contained in any of the discovery materials in this case.") (citations omitted).[1]

---

[1] Notably, here, and in contrast to other cases further described below, the Government's specific knowledge of the subject matter of discovery materials is relatively limited, due to the confidential nature of the Litigation; however, the Protective Order itself indicates that discovery materials

CONFIDENTIAL

SDNY_GM_00000920

Indeed, the *Chemical Bank* opinion specifically rejected judicial protection for the type of information the Protective Order appears to cover in the Litigation:

> Avoiding embarrassment may be a reason for a party to seek confidentiality. It is not by itself a valid reason for courts to uphold confidentiality as against a legitimate law enforcement need for the information. Courts must honor restrictions laid down by the Fourt or Fifth Amendment or applicable statutes. But aside from those restrictions, *hiding possible criminal violations from law enforcement authorities is hardly a ground for judicial protection of confidentiality*.

*Chemical Bank*, 154 F.R.D. at 94 (emphasis added). Although parties may rely on confidentiality agreements and protective orders generally, such classification "is not binding on the court" and the "risk of disclosure is well known to the Bar, in part because disclosure may be required where such information is needed for judicial decisions, to the basis for which the public should have access. *Id.* (collecting cases).

Under some circumstances, courts in this Circuit have applied a balancing test to evaluate the government's ability to obtain access to materials covered by a protective order. Specifically, in *Martindell v. International Tel. and Tel. Corp.*, 594 F.2d 291 (2d Cir. 1979), the government informally—and without use of a grand jury subpoena—sought access to discovery materials from a civil litigation. The Court held that the Government was not entitled to the materials unless it could show either that the protective order was improvidently granted or some extraordinary circumstance or compelling need for the material; *see also In re Grand Jury Subpoena Duces Tecum Dated Apr. 19, 1991* ("*Subpoena Duces Tecum*"), 945 F.2d 1221, 1224 (2d Cir. 1991) (in connection with bankruptcy proceeding, and citing *Martindell*, vacating denial of a motion to quash a grand jury subpoena seeking production of documents subject to protective order and remanding for determination of showing that the order was improvidently granted or of extraordinary circumstance or compelling need).

As an initial matter, the Court need not employ the *Martindell* balancing test here. This is so for two reasons. First, *Martindell* and cases employing its balancing test generally relate to motions to quash or other challenges to a grand jury subpoena, or else instances where the Government sought protected information *without* such grand jury process. *See Martindell*, 594 F.2d 291 (in which the government informally, and without use of a grand jury subpoena, sought access to discovery materials); *Subpoena Duces Tecum*, 945 F.2d at 1224 (vacating denial of a motion to quash a grand jury subpoena). Here, there is no such deficiency in the form of request nor a challenge by the recipient of the subpoena. Indeed, in *Chemical Bank*, which cited *Martindell*, the district court opined that had the Government obtained judicial relief to issue an

---

such as documents and depositions are not likely to include the kind of confidential business information that *Chemical Bank* describes as having the potential to give rise to "difficult balancing." *See id.*; *see also Jane Doe*, Protective Order ("Prot. Order") (Dkt. 177) (defining "confidential" information as, in sum and substance, medical and psychological information, personal identifying information, and information relating to sexual activity or sexual contact).

CONFIDENTIAL

SDNY_GM_00000921

uncontested subpoena for documents—precisely the scenario here—such relief would be appropriate. *Chemical Bank*, 154 F.R.D. at 94.

Second, any presumption against modification of a protective order is unreasonable where, as here, the protective order is on its face temporary or limited. Such protective orders "that are on their face temporary or limited may not justify reliance by the parties [and] in such circumstances reliance may be unreasonable." *S.E.C. v. TheStreet.com*, 273 F.3d 222, 230-31 (2d Cir. 2001). "Where a litigant or deponent could not reasonably have relied on the continuation of a protective order"—for example, where such an order was limited to the pretrial stages of litigation—"a court may properly permit modification of the order." *Id.* (citing *In re "Agent Orange" Prod. Liab. Litig.*, 821 F.2d 139, 147 (2d Cir. 1987)); *see also Allen v. City of New York*, 420 F.Supp.2d 295, 301 (S.D.N.Y. 2006) (Mag. J. Gorenstein) (analyzing the differently-situated interests of civil litigants but where, as here, the relevant protective order specified that a party could object to the designation of a document as confidential, and was also temporary or limited on its face). In such a case, "'[w]hether to lift or modify a protective order is a decision committed to the sound discretion of the trial court.'" *TheStreet.com*, 273 F.3d at 231 (modification in original) (citing *In re Agent Orange*, 821 F.3d at 147) (additional citations omitted). Here, the parties in the Litigation explicitly contemplated the public disclosure of such information at trial by the very terms of the Protective Order, thereby establishing precisely the kind of temporal limit described above. *See* Prot. Order at 6 ("This Protective Order shall have no force and effect on the use of any CONFIDENTIAL INFORMATION at trial in this matter."). The parties could not have—as, for example, they might in a bankruptcy proceeding such as in *Subpoena Duces Tecum*—relied upon the Protective Order to indefinitely keep the relevant materials hidden.

In this case, where the Protective Order is limited by its terms to only the pretrial stages of the civil litigation, no confidential business information appears to be at issue, and counsel for the victims of the suspected crimes being investigated have indicated a willingness to voluntarily comply with the Subpoena, the "sound discretion of [this] court," *TheStreet.com*, 273 F.3d at 231, militates overwhelmingly toward limited, narrow modification of the Protective Order to permit compliance with the Subpoena.[2] This is consistent with the grand jury's "wide ranging authority to inquire into suspected violations of the criminal law; and to effectuate such investigations it may compel the production of documentary evidence or the testimony of witnesses, as it deems necessary." *Id.* at 421-22; *see Branzburg v. Hayes*, 408 U.S. 665, 688 (1972) ("Although the powers of the grand jury are not unlimited and are subject to the supervision of a judge, the longstanding principle that 'the public . . . has a right to every man's evidence,' except for those

---

[2] The Government notes that any materials produced pursuant to a grand jury subpoena fall under the protections and restrictions set forth in Fed. R. Crim. P. 6(e), and further notes and emphasizes that the proposed order accompanying the Application provides no additional exception or modification to the Protective Order as to the recipient of the subpoena other than the narrow, limited ability to comply with grand jury process. The Protective Order will remain otherwise intact and fully enforceable.

CONFIDENTIAL

SDNY_GM_00000922

persons protected by a constitutional, common-law, or statutory privilege is particularly applicable to grand jury proceedings.") (citations omitted).[3]

Finally, even were the Court to apply the *Martindell* test here,[4] despite the significant distinguishing factors described above, this Investigation is a paradigmatic example of extraordinary circumstances. In the first instance, unlike in *Subpoena Duces Tecum*, the posture of the Application does not involve a motion to quash. Of course, should this Court permit Boies Schiller to respond, Boies Schiller would have the right to move to quash—including, for example, if a grand jury subpoena made any improper requests, such as for materials subject to privilege. But it is not anticipated that Boies Schiller will do so.

Additionally, as set forth in the Application, the existence and scope of the Investigation in this district is not publicly known. While counsel for certain victims are aware of the Investigation, neither Epstein nor other subjects of the investigation are believed to be similarly aware. Accordingly, the ordinary exercise of grand jury power to "subpoena witnesses to testify, regardless of whether they have already testified or furnished documentary evidence in civil litigation," *Martindell*, 594 at 296, would implicate and invite the very risk of disclosure—and the possibility of alerting potential criminal targets that they are under investigation, causing them to destroy evidence, flee from prosecution, or otherwise seriously jeopardize the Investigation—that caused the Government to proceed via subpoena and its related Application. *Cf. Subpoena Duces Tecum*, 945 F.2d at 1224 (in which the party that moved to quash the relevant subpoena argued that the government could not meet its burden of showing need for deposition testimony until it had at least called the witness before the grand jury).

The subject matter of the Litigation also demonstrates the extraordinary circumstances of the Government's Investigation and Application, insofar as the materials at issue here appear not to be of the sort that ordinarily would provide protection against Government investigation. *See*

---

[3] To read *Martindell* more broadly would not only be contrary to the opinion itself, as described above, but would risk rendering that opinion in even further conflict with the well-reasoned decisions of numerous other Circuits. In particular, the Fourth, Ninth, and Eleventh Circuits have each adopted a *per se* rule favoring enforcement of a grand jury subpoena even where a protective order exists. *See In re Grand Jury Subpoena,* 836 F.2d 1468, 1477 (4th Cir.), cert. denied, 487 U.S. 1240 (1988); *In re Grand Jury Subpoena Served on Meserve, Mumper & Hughes,* 62 F.3d 1222, 1226-1227 (9th Cir. 1995); *In re Grand Jury Proceedings (Williams)*, 995 F.2d 1013, 1020 (11th Cir. 1993) (expressly criticizing the *Martindell* test and stating that it "is administratively unworkable," "defies construction," and "places prosecutors in untenable positions"). In the First and Third Circuits, a grand jury subpoena overrides a protective order unless the party seeking to quash the subpoena shows "exceptional circumstances that clearly favor subordinating the subpoena to the protective order." *In re Grand Jury Subpoena (Roach),* 138 F.3d 442, 445 (1st Cir.), cert. denied, 524 U.S. 939 (1998); *In re: Grand Jury,* 286 F.3d 153, 157-158 (3d Cir. 2002). The Government is aware of no case in those circuits where the presumption was rebutted and the grand jury subpoena was not enforced.

[4] An application of the *Martindell* test would not in any event preclude the provision of a list of witnesses deposed, *see* 594 F.2d at 293, and of pre-existing documents collected or produced in the course of discovery, *see id.* at 297 n.8.

CONFIDENTIAL

*Chemical Bank*, 154 F.R.D. at 94 (describing such materials a "technological trade secrets, currently sensitive customer lists, or contemporarily sensitive competitive information which could benefit rivals"). Rather, the Government seeks materials that relate to among the gravest criminal offenses it investigates—the sexual exploitation of minors—which materials, if revealed, would tend to inculpate and/or embarrass some parties to the Protective Order. Indeed, by the very terms of the Protective Order, the confidential materials appear to be of the category for which "[a]voiding embarrassment . . . is not by itself a valid reason for courts to uphold confidentiality as against a legitimate law enforcement need for the information." *Id.*; *see also* Prot. Order at 2 (designating as "confidential" information "whose public release would violate common law and statutory privacy interests"). "Aside from those restrictions [laid down by the Fourth or Fifth Amendment or applicable statutes], hiding possible criminal violations from law enforcement authorities is hardly a ground for judicial protection of confidentiality." *Chemical Bank*, 15 F.R.D. at 94.

Finally, this is unlike a case in which the contours of the civil litigation are publicly apparent. *Cf. Subpoena Duces Tecum*, 945 F.2d at 1223 (noting that a "lengthy report" of the bankruptcy examination in that case "was made available to the public"). In *Subpoena Duces Tecum*, for example, not only was the government apparently unconcerned with the confidentiality of the grand jury investigation, but the government knew from a lengthy public report precisely what it might replicate through a grand jury investigation. *Id.* Not so with respect to the Litigation, which resulted in no such report, no trial, and limited public filings.

For all of these reasons, and for the reasons set forth in the Application, the Government respectfully requests that the Court grant the Application.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By: _____
Alex Rossmiller
Assistant United States Attorney
Tel.: (212) 637-2415

Enclosure

CONFIDENTIAL

SDNY_GM_00000924