UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
                                                                 :
UNITED STATES OF AMERICA,                                        :
                                                                 :   20 Cr. 330 (AJN)
            v.                                                   :
                                                                 :
GHISLAINE MAXWELL,                                               :
                                                                 :
            Defendant.                                           :
                                                                 :
-----------------------------------------------------------------x


**REPLY MEMORANDUM OF GHISLAINE MAXWELL
IN SUPPORT OF HER MOTION TO DISMISS THE SUPERSEDING INDICTMENT
AS IT WAS OBTAINED IN VIOLATION OF THE SIXTH AMENDMENT**

Christian R. Everdell
COHEN & GRESSER LLP
800 Third Avenue New
York, NY 10022
Phone: 212-957-7600


Jeffrey S. Pagliuca
Laura A. Menninger
HADDON, MORGAN & FOREMAN P.C.
150 East 10th Avenue
Denver, CO 80203
Phone: 303-831-7364


Bobbi C. Sternheim
Law Offices of Bobbi C. Sternheim
33 West 19th Street - 4th Floor
New York, NY 10011
Phone: 212-243-1100


*Attorneys for Ghislaine Maxwell*

**TABLE OF CONTENTS**

                                                                                                                 **Page**

I.     The Relevant "Community" for Comparison Purposes Is the Manhattan Counties or, in the Alternative, the Southern District of New York. .................................................. 2

II.    The Underrepresentation Resulted from Systematic Exclusion. ........................................ 4

CONCLUSION ................................................................................................................................ 6

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Duren v. Missouri,*
    439 U.S. 357 (1979)............................................................................................... 1, 2, 4, 6

*Taylor v. Louisiana,*
    419 U.S. 522 (1975)............................................................................................................ 4

*United States v. Bahna,*
    68 F.3d 19 (2d Cir. 1995).................................................................................................. 3

*United States v. Barlow,*
    732 F. Supp. 2d 1 (E.D.N.Y. 2010), *aff'd,* 479 F. App'x 372 (2d Cir. 2012)......................... 5, 6

*United States v. Jackman,*
    46 F.3d 1240 (2d Cir. 1995).................................................................................... 1, 5, 6

*United States v. Johnson,*
    21 F. Supp. 2d 329 (S.D.N.Y. 1998)................................................................................. 2

*United States v. Kenny,*
    883 F. Supp. 869 (E.D.N.Y. 1995) .................................................................................... 2

*United States v. Rioux,*
    97 F.3d 648 (2d Cir. 1996)................................................................................................ 5

**Statutes**

28 U.S.C. § 1861.................................................................................................................... 2, 3

Ghislaine Maxwell respectfully submits this Reply Memorandum in Support of her Motion to Dismiss the Superseding Indictment as It Was Obtained in Violation of the Sixth Amendment ("Motion").

In its opposition ("Opp.") to the Motion, the government does not dispute that if the White Plains jury pool is compared to the eligible juror population of either the Southern District of New York or the more racially-diverse counties from which jurors are drawn for the Manhattan courthouse (the "Manhattan Counties"[1])—the jurors who will also be weighing the evidence at her trial—Black and Hispanic jurors are significantly underrepresented. According to the government's own expert: "The Manhattan and the Southern District communities are significantly more African American and Hispanic than the White Plains community. Thus, [] the White Plains master jury wheel . . . will not be representative of the Manhattan or the Southern District community with respect to the percent African American and Hispanic." Opp. Ex. 12 (Report of Bernard R. Siskin) ¶ 11.

Moreover, the government concedes that Black and Hispanic jurors constitute "distinctive" groups for purposes of the three-part analysis prescribed in *Duren v. Missouri,* 439 U.S. 357, 364 (1979), and that Ms. Maxwell has thus satisfied the first of the three *Duren* prongs necessary to establish a *prima facie* violation of her Sixth Amendment right to a grand jury drawn from a fair cross-section of the community. Opp. 205. And the government does not assert that attainment of a fair cross-section would have been incompatible with a significant state interest, as is necessary to overcome a *prima facie* showing of a violation. *Duren,* 439 U.S. at 368.

---

[1] The government takes issue with Ms. Maxwell's use of the terms "Manhattan Division" and "White Plains Division" in her opening brief, on the ground that the Southern District is not divided into "divisions" by statute. Although the Second Circuit has used the term "division" in a similar context, *see, e.g., United States v. Jackman,* 46 F.3d 1240, 1241 (2d Cir. 1995) (referring to "Hartford Division"), Ms. Maxwell will use the terms "Manhattan Counties" and "White Plains Counties" here.

The government thus raises only two points of dispute.  First, it claims that even though the offenses in the Superseding Indictment ("Indictment") are alleged to have occurred in Manhattan (to the extent they occurred in the Southern District at all), and even though the case has been assigned to and will be tried in this Court, the appropriate comparison population for purposes of the second *Duren* prong is the eligible juror population of the White Plains Counties, rather than that of either the Manhattan Counties or the Southern District as a whole.  Second, the government argues that Ms. Maxwell has not satisfied the third *Duren* prong because any underrepresentation was not the result of systematic exclusion, even though the underrepresentation is attributable solely to the government's decision to indict Ms. Maxwell using a White Plains grand jury.  Both arguments fail.

**I.    The Relevant "Community" for Comparison Purposes Is the Manhattan Counties or, in the Alternative, the Southern District of New York.**

The second prong of *Duren* asks whether a group's representation in the source from which juries are selected is "fair and reasonable in relation to the number of such persons in the community."  *Duren*, 439 U.S. at 364.  "Although the *Duren* court did not clearly define the term 'community,' it is generally accepted that the term refers to the district or division where the trial is to be held."  *United States v. Johnson*, 21 F. Supp. 2d 329, 334-35 (S.D.N.Y. 1998); *see also United States v. Kenny,* 883 F. Supp. 869, 874 (E.D.N.Y. 1995) ("the term refers to the district—or division, when a district has been so divided—where the trial is to be held")

While the government argues that those cases are inapposite because the grand jury and petit jury sat in the same courthouse, it cites no case that holds otherwise where the grand jury and petit jury sit in different courthouses—or any other case that holds that the relevant "community" for a grand jury is a community that *excludes* jurors from the county in which the trial is to be held (and in which the offense allegedly occurred).  Moreover, 28 U.S.C. § 1861,

which effectuates the Sixth Amendment right to a fair cross-section, notes that the relevant "community" is "the community in the district or division wherein the court convenes." 28 U.S.C. § 1861. Here, that is either the Manhattan Counties or the Southern District, as this Court is not "convening" in White Plains.

Even *United States v. Bahna,* 68 F.3d 19 (2d Cir. 1995), on which the government heavily relies, recognizes this: "Each [court] selects *grand and petit juries* pursuant to a plan . . . and, as a general rule, selections are made from the area surrounding the courthouse *where the case is to be tried.*" *Id.* at 23 (emphases added). The government points to the Second Circuit's statement that "[w]here a jury venire is drawn from a properly designated division, we look to *that division* to see whether there has been any unlawful or unconstitutional treatment of minorities." Opp. 201 (quoting *Bahna,* 68 F.3d at 24) (emphasis added by government). But the defendant in *Bahna* was tried on Long Island before a jury "from the 'Long Island Division' jury wheel." 68 F.3d at 23. He initially sought to have a jury "culled only from Kings, Queens and Richmond Counties"—i.e., from somewhere *other than* the place of trial. *Id.* at 26. Ms. Maxwell seeks precisely the opposite.

The government thus quotes the Second Circuit's statement in *Bahna* out of context, because *Bahna* was based on the very premise lacking here: a jury "drawn from a properly designated division." *Id.* at 24. Unlike the Long Island Division in *Bahna,* White Plains was not "properly designated" to indict Ms. Maxwell.

While the government claims that "it is common for cases to be indicted by grand juries sitting in the White Plains courthouse and tried in the Manhattan courthouse"—an assertion that has no bearing on the lawfulness of such a practice, particularly if not objected to—it cites just six such cases in the last 17 years. Opp. 195. The far more typical practice of using a grand jury

3

sitting in the same community where the case will be tried avoids a situation where one community charges the defendant but a different community tries her—a situation that is particularly fraught with fair cross-section concerns in an area such as New York City, where the demographic composition of communities can vary dramatically. *See also* Declaration of Jeffrey Martin in Support of Motion to Dismiss, *U.S. v. Balde,* No. 1:20-cr-00281-KPF, Dkt. No. 61-1 (filed Nov. 9, 2020), Exhibit A ("Martin Decl."), at ¶ 7 ("In my experience of over 50 federal jury challenges [] since 1997," and "[u]ntil this case, I have not been involved in any jury challenge where the Grand Jury came from one division and the trial jury came from a different division.").

As noted above, courts have held consistently that the appropriate comparison "community" in a fair cross-section claim is the community where the case will be tried. Here, that is either the Manhattan Counties or the Southern District. Since the government does not dispute that when a comparison to either community is used, Black and Hispanic jurors are significantly underrepresented in the White Plains jury pool, the second *Duren* prong is met.[2]

## II.      The Underrepresentation Resulted from Systematic Exclusion.

Contrary to the government's contention, its decision to seek an indictment from a White Plains grand jury constitutes the "systematic exclusion . . . in the jury-selection process" required to satisfy the third *Duren* prong. *See Duren*, 439 U.S. at 364. "There is systematic exclusion

---

[2] The government's contention that the relevant jury pool to be measured against the comparison community is the White Plains *master* wheel rather than the White Plains *qualified* wheel, even if accepted, does not change the outcome. The government's expert concedes that "the White Plains *master jury wheel and hence its qualified jury wheel* will be significantly demographically different" from the juror populations of the Manhattan Counties and the Southern District. Opp. Ex. 12 ¶ 40 (emphasis added). *See also* Martin Decl. ¶¶ 19-21 (showing substantial underrepresentations in eligible juror populations of White Plains vis-à-vis Manhattan Counties and Southern District, including 13.94% underrepresentation of Hispanics when compared to Manhattan Counties and 9.29% underrepresentation for Hispanics when compared to Southern District). In any event, the White Plains qualified wheel is the appropriate jury pool, as fair-cross-section motions concern the actual "venires from which juries are selected." *Duren*, 439 U.S. at 364; *see also Taylor v. Louisiana*, 419 U.S. 522, 538 (1975) ("[T]he jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups in the community.").

4

when the underrepresentation is due to the system of jury selection itself, rather than external forces." *United States v. Rioux,* 97 F.3d 648, 658 (2d Cir. 1996). Here, Ms. Maxwell was not denied a fair cross-section by "external forces," but by the government's deliberate and gratuitous conduct. As the government's expert admits, the White Plains jury pool is "not [] representative of the Manhattan or the Southern District community with respect to the percent African American and Hispanic," Opp. Ex. 12 ¶ 11, yet the government needlessly used a White Plains grand jury anyway. That the government acknowledges having done so repeatedly during the COVID-19 pandemic only underscores the systematic nature of its conduct. Opp. 199 n.68; *see also Jackman*, 46 F.3d at 1241 (finding violation even in a discarded "process that had inadvertently, but systematically, excluded from petit jury venires all residents of Hartford and New Britain, communities with large minority populations").

The government's reliance on *United States v. Barlow,* 732 F. Supp. 2d 1 (E.D.N.Y. 2010), *aff'd,* 479 F.App'x 372 (2d Cir. 2012), is misplaced. In *Barlow,* the defendant argued that the court's facially neutral practices with respect to the disqualification of jurors charged with or convicted of felonies led to the erroneous exclusion of jurors, and that the erroneous exclusions disproportionately affected Black males. The court found that no significant underrepresentation occurred but also concluded that any such underrepresentation would not have amounted to systematic exclusion, noting that "systematic exclusion does not occur simply because a facially neutral disqualification criterion disproportionately impacts a particular group." *Barlow,* 732 F. Supp. 2d at 40. Notably, the court distinguished *Jackman* on factors directly relevant here, observing that the case before it was not "a case like *Jackman* where the underrepresentation occurred because the jury clerk relied on a jury wheel knowing that the wheel omitted large segments of the division's minority population." *Id.* at 42. This case, however, is "like

*Jackman*" (and unlike *Barlow*): The underrepresentation occurred because the government used a White Plains grand jury knowing that doing so would significantly reduce the diversity of the pool of jurors.

Thus, the government's assertion that its decision to use a White Plains grand jury "has nothing to do with the process by which the grand jury is selected" (Opp. 211) is simply incorrect. By choosing to seek an indictment in White Plains, the government chose a grand jury selection process guaranteed to draw from a pool that would underrepresent Black and Hispanic jurors via-a-vis the Manhattan Counties and the Southern District. That choice constitutes "systematic exclusion," and the third *Duren* prong is met.

## CONCLUSION

For the reasons set forth herein, Ms. Maxwell respectfully requests that the Indictment be dismissed.

Dated: March 15, 2021
New York, New York

Respectfully submitted,

*/s/ Christian R. Everdell*
Christian R. Everdell
COHEN & GRESSER LLP
800 Third Avenue
New York, NY 10022
Phone: 212-957-7600

Jeffrey S. Pagliuca
Laura A. Menninger
HADDON, MORGAN & FOREMAN P.C.
150 East 10th Avenue
Denver, Colorado 80203
Phone: 303-831-7364

Bobbi C. Sternheim
Law Offices of Bobbi C. Sternheim

6

33 West 19th Street - 4th Floor
New York, NY 10011
Phone: 212-243-1100

*Attorneys for Ghislaine Maxwell*

**CERTIFICATE OF SERVICE**

      I hereby certify that on March 15, 2021, I served by email, pursuant Rule 2(B) of the Court's individual practices in criminal cases, the within memorandum and any accompanying exhibits upon the following:

Maurene Comey
Alison Moe
Lara Pomerantz
Andrew Rohrbach
U.S. Attorney's Office, SDNY
One Saint Andrew's Plaza
New York, NY 10007
Maurene.comey@usdoj.gov
Alison.moe@usdoj.gov
Lara.Pomerantz@usdoj.gov
Andrew.Rohrbach@usdoj.gov

                                                 */s/ Christian Everdell*