UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------ x
                                                   :

UNITED STATES OF AMERICA,          :

                       v.                 :       20 Cr. 330 (AJN)

                                       :

GHISLAINE MAXWELL,             :

           Defendant.           :

                                                   :
------------------------------------------------------ x

**REPLY MEMORANDUM OF GHISLAINE MAXWELL
IN SUPPORT OF HER MOTION UNDER THE FOURTH AMENDMENT,
*MARTINDELL*, AND THE FIFTH AMENDMENT TO SUPPRESS ALL EVIDENCE
OBTAINED FROM THE GOVERNMENT'S SUBPOENA TO BOIES SCHILLER AND
<u>TO DISMISS COUNTS FIVE AND SIX</u>**

Jeffrey S. Pagliuca
Laura A. Menninger
HADDON, MORGAN & FOREMAN P.C.
150 East 10th Avenue
Denver, CO  80203
Phone: 303-831-7364

Christian R. Everdell
COHEN & GRESSER LLP
800 Third Avenue New
York, NY  10022
Phone: 212-957-7600

Bobbi C. Sternheim
Law Offices of Bobbi C. Sternheim
33 West 19th Street - 4th Floor
New York, NY  10011
Phone: 212-243-1100


*Attorneys for Ghislaine Maxwell*

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................ii

TABLE OF AUTHORITIES ..........................................................................................iii

TABLE OF EXHIBITS ................................................................................................. v

Factual Background .................................................................................................... 1

Argument .................................................................................................................... 1

I.      The Government's violation of the Fourth Amendment requires suppression.................... 1

   A.   Maxwell has standing. ....................................................................................... 1

   B.   There is no good faith. ...................................................................................... 5

   C.   The government's inevitable discovery doctrine fails................................................ 5

II.     The Government's violation of *Martindell* requires suppression. ......................................... 7

III.    The Government's violation of the Fifth Amendment requires suppression...................... 10

IV.    The Court should hold an evidentiary hearing.................................................................. 13

CONCLUSION............................................................................................................. 13

Certificate of Service .................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

*Appeal of Hughes*, 633 F.2d 282 (3d Cir. 1980) ............................................................ 2

*Carpenter v. United States*, 138 S. Ct. 2206 (2018). ............................................... 2, 3

*Doe v. Indyke*, Case No., 20-cv-00484 (S.D.N.Y.) .................................................... 6

*Giuffre v. Maxwell*, 325 F. Supp. 3d 428 (S.D.N.Y. 2018) ...................................... 6

*Matter of Grand Jury Subpoena Duces Tecum Dated Feb. 18, 1988*, 685 F. Supp. 49

    (S.D.N.Y. 1988) ........................................................................................................ 1

*Raheem v. Kelly*, 257 F.3d 122 (2d Cir. 2001) ......................................................... 9

*Refco Grp. Ltd., LLC v. Cantor Fitzgerald, L.P.*, No. 13 CIV. 1654 RA HBP, 2014 WL 5420225

    (S.D.N.Y. Oct. 24, 2014) ......................................................................................... 2

*United States v. Cortina*, 630 F.2d 1207 (7th Cir. 1980) ........................................ 5

*United States v. Heath*, 455 F.3d 52 (2d Cir. 2006) ................................................ 7

*United States v. Lavender*, 583 F.2d 630 (2d Cir. 1978) ...................................... 2, 4

*United States v. Leon*, 468 U.S. 897 (1984) ............................................................ 5

*United States v. Oshatz*, 700 F. Supp. 696 (S.D.N.Y. 1988) ................................. 12

*United States v. Stein*, 541 F.3d 130 (2d Cir. 2008) ............................................. 10

*United States v. Stokes*, 733 F.3d 438 (2d Cir. 2013) ....................................... 5, 6, 7

*United States v. Taylor*, 745 F.3d 15 (2d Cir. 2014) ............................................. 12

*US Bank Nat. Ass'n v. PHL Variable Ins. Co.*, No. 12 CIV. 6811 CM JCF, 2012 WL 5395249

    (S.D.N.Y. Nov. 5, 2012) ........................................................................................... 2

**Other Authorities**

Stephen Rex Brown, *Manhattan federal prosecutors declined to pursue Jeffrey Epstein and*

   *Ghislaine Maxwell case in 2016*, New York Daily News (Oct. 13, 2020) ............................ 11

**Rules**

Fed. R. Civ. P. 24(b) ................................................................................................................ 4

Fed. R. Civ. P. 26(c) .............................................................................................................. 13

Fed. R. Crim. P. 17(c) .............................................................................................................. 4

**Constitutional Provisions**

U.S. CONST. amend. IV .............................................................................................................. 1

U.S. CONST. amend. V ........................................................................................................... 1, 9

# TABLE OF EXHIBITS

EXHIBIT A: Motion to Compel Plaintiff to Disclose Alleged "On-going Criminal Investigations by Law Enforcement" or, In the Alternative, to Stay Proceedings. *Giuffre v. Maxwell*, No. 15-cv-07433-RWS, Apr. 18, 2016

EXHIBIT B: *Giuffre v. Maxwell*, No. 15-cv-07433-RWS, Transcript, Apr. 21, 2016

Ghislaine Maxwell moves under the Fourth Amendment, *Martindell v. Int'l Tel. & Tel. Corp.,* 594 F.2d 291 (2d Cir. 1979), and the Fifth Amendment, to suppress all evidence the government obtained from a grand jury subpoena it issued to Boies Schiller Flexner LLP and to dismiss Counts Five and Six, which are the fruits of that unlawful subpoena.

## Factual Background

The facts relevant to this Motion are described in Maxwell's Pretrial Motion No. 3 and the Reply in Support Thereof.

## Argument

## I.   The Government's violation of the Fourth Amendment requires suppression.

The government does not defend the overbreadth of its subpoena, or even respond to Maxwell's argument. Resp. at 82–95. The government also does not deny that the subpoena effected both a search and a seizure under the Fourth Amendment. *Id.*

Instead, the government argues that (1) Maxwell has no standing to challenge the subpoena; (2) the government acted in good faith; and (3) the government inevitably would have come to possess the 90,000-sum pages of material it obtained from Boies Schiller.

The facts and law belie the government's claims.

## A.   Maxwell has standing.

The government's standing argument boils down to this: Maxwell cannot challenge the search because the material was in the possession of a third party and Maxwell lacked a reasonable expectation of privacy. Resp. at 84–86. This argument fails.

Abundant authority holds that when confidential material is in the possession of a third-party, a defendant has standing to challenge a grand jury subpoena of that material. *Matter of Grand Jury Subpoena Duces Tecum Dated Feb. 18, 1988*, 685 F. Supp. 49, 51 (S.D.N.Y. 1988) (law firm could intervene and join motion to quash grand jury subpoena issued to private

investigation firm). "The governing rule in these circumstances is that the possessor of the claimed privilege or right may intervene to assert it." *Id.* (quoting *Appeal of Hughes*, 633 F.2d 282, 288 (3d Cir. 1980)). *See also US Bank Nat. Ass'n v. PHL Variable Ins. Co.*, No. 12 CIV. 6811 CM JCF, 2012 WL 5395249, at *2 (S.D.N.Y. Nov. 5, 2012) ("A party [has] standing to challenge . . . a subpoena served on a non-party . . . [when] the moving party assert[s] some right or privilege personal to it, such as an interest in proprietary, confidential information that would be disclosed or an interest in maintaining a privilege that would be breached by disclosure." (citing cases)). In turn, in determining whether there is standing, "[c]ourts should consider whether the information itself is private, confidential, privileged, or highly sensitive, and not the form the records take." *Refco Grp. Ltd., LLC v. Cantor Fitzgerald, L.P.*, No. 13 CIV. 1654 RA HBP, 2014 WL 5420225, at *4 (S.D.N.Y. Oct. 24, 2014).

In *United States v. Lavender*, the Second Circuit held that while a defendant could not file an interlocutory appeal of the district court's denial of his motion to quash a third-party subpoena, he was "free to raise his Fourth Amendment claims via motions to suppress. . . ." 583 F.2d 630, 632 (2d Cir. 1978). Since Maxwell never had notice of the subpoena to Boies Schiller, she is doing here exactly what *Lavender* allows: filing a motion to suppress.

To be sure, if the government were right—that the mere fact of a third-party's possession of property eliminates a defendant's standing—then *Carpenter v. United States* would have come out differently, since the defendant's historical cell-site location information was in the possession of MetroPCS and Sprint. 138 S. Ct. 2206, 2212 (2018). But the United States Supreme Court rejected application of the third-party doctrine for two reasons, as this Court should here.

2

First, the Court recognized that

> [t]here is a world of difference between the limited types of personal information addressed in *Smith* and *Miller* and the exhaustive chronicle of location information casually collected by wireless carriers today. The Government thus is not asking for a straightforward application of the third-party doctrine, but instead a significant extension of it to a distinct category of information.

*Id.* at 2219. Second, the Court concluded that in "in no meaningful sense" did Carpenter

voluntarily "assume the risk" of "turning over a comprehensive dossier of his physical

movements." *Id.* at 2220.

The same logic applies here. There is "world of difference between the limited types of

personal information addressed in *Smith* and *Miller* and the exhaustive" and personal details

about Maxwell that are contained in Boies Schiller's 90,000 pages of confidential material.

These details include, for example, information about Maxwell's sexual partners, sexual habits,

finances, and much, much more.

Moreover, "in no meaningful sense" did Maxwell voluntarily share this information with

Boies Schiller. Giuffre sued Maxwell, not the other way around. And the defamation claim (the

only claim Giuffre ever asserted against Maxwell, who *did not* file a counterclaim) had nothing

to do with much of the confidential information Maxwell was forced, over objection, to provide.

Maxwell's motion to dismiss the perjury counts for lack of materiality and her motion for

severance, and the replies in support thereof, explain this in more detail. Maxwell Pre-Trial Mot.

Nos. 4 & 5.

But the point is this:  The defamation case should have been extremely narrow, but Boies

Schiller transformed it into something much broader—a proxy prosecution of Epstein and

Maxwell for allegedly trafficking and abusing Giuffre, which then compelled Maxwell, over

objection, to answer irrelevant and highly prejudicial personal questions. None of it was

voluntary.

In addition to the inapplicability of the third-party doctrine, the government's response fails to account for two other, dispositive facts proving that Maxwell has a reasonable expectation of privacy. First, the Protective Order by its terms affords Maxwell a reasonable expectation of privacy. Mot. 3, Ex. A, ¶ 3 (defining "CONFIDENTIAL" information as that which "implicates common law and statutory *privacy* interests of . . . Ghislaine Maxwell" (emphasis added)). What would it say to civil litigants if they could not rely on a court's promise of confidentiality, at least absent notice and an opportunity to object to any breach of that promise (which, of course, Maxwell was denied here). *See* Mot. 3, Ex. A, ¶ 14 (precluding modification of the Protective Order absent "good cause shown following notice to all parties and an opportunity for them to be heard").

Second, *Martindell* affords Maxwell a reasonable expectation of privacy. *Martindell*, 594 F.2d at 294. In *Martindell*, the Second Circuit held that "the proper procedure" to obtain confidential material under a Protective Order, "*as the Government should know*, was either to subpoena the deposition transcripts for use in a pending proceeding such as a grand jury investigation or trial, in which the issue could be raised by motion to quash or modify the subpoena, [Fed. R. Crim. P. 17(c)] or to seek permissive intervention in the private action pursuant to [Fed. R. Civ. P. 24(b)], for the purpose of obtaining vacation or modification of the protective order." *Id.* (emphasis added)). By affording Maxwell a right to notice and an opportunity to be heard, *Martindell* makes clear that, having been denied those rights when the subpoena was first issued, Maxwell has standing to challenge the government's conduct now. *Id.*; *see Lavender*, 583 F.2d at 632.

## B.  There is no good faith.

The rebuttal to government's good faith claim is simple:  There can be no good faith

when the government willfully and intentionally misleads the court into authorizing its search.

As the United States Supreme Court held in *United States v. Leon*,

> Suppression . . . remains an appropriate remedy if the magistrate or judge in issuing
> a warrant was misled by information in an affidavit that the affiant knew was false
> or would have known was false except for his reckless disregard of the truth.

468 U.S. 897, 923 (1984).

Here, as explained in Maxwell's due process motion to suppress and the reply in support

thereof, the government misled Chief Judge McMahon to modify the *Giuffre* Protective Order

and authorize the subpoena to Boies Schiller. The good faith doctrine does not apply when the

government acts in objective bad faith.

## C.  The government's inevitable discovery doctrine fails.

There are several reasons the government's inevitable discovery argument fails.

First, the inevitable discovery doctrine is an exception to the Fourth Amendment's

exclusionary rule. *United States v. Stokes*, 733 F.3d 438, 442–43 (2d Cir. 2013) (reversing

district court's denial of motion to suppress, which was based on "the inevitable discovery

doctrine, an exception to the Fourth Amendment's exclusionary rule"). The doctrine has no

applicability when a court exercises its inherent or supervisory authority to suppress evidence

obtained through deliberate government misconduct. The exercise of *that* authority is meant to

vindicate the dignity of the Court and to deter improper governmental conduct. *See United States*

*v. Cortina*, 630 F.2d 1207, 1216 (7th Cir. 1980) ("The need for deterrence of illegal conduct is,

in one sense, greater here than [elsewhere], for [the government's] offense was committed within

the sanctity of the court itself.").

Second, the government's inevitable discovery doctrine is far too speculative. The "typical application" of the inevitable discovery doctrine is when "the government seeks to invoke the doctrine on the basis of standardized, established procedures such as those requiring inventory searches." *Stokes*, 733 F.3d at 447. The government's "inevitability analysis in this case," however, "is predicated on an assessment of the actions that might have been taken by third parties," such as Judge Preska and the Miami Herald, who are "not acting at the behest of the police." *Id.* "Such an analysis is inherently speculative." *Id.*

In fact, unlike every other civil case in the Southern District of New York against Maxwell or Epstein's estate, the government deliberately chose not to intervene in the on-going unsealing process in *Giuffre v. Maxwell*. In the only other active SDNY case against Epstein, *Doe v. Indyke*, No. 20-cv-484-JLK, the government intervened and moved to stay discovery, saying that continued discovery could threaten its case against Maxwell.

By contrast, the government opted not to intervene and stay the unsealing in *Giuffre v. Maxwell*. The reason is obvious. Legitimately concerned about the propriety of its conduct in misleading Chief Judge McMahon and issuing an unconstitutionally overbroad subpoena to Boies Schiller, the government hoped to hedge its bets by allowing the unsealing process to unfold so it could make the inevitable discovery argument it now makes. This Court should not condone such gamesmanship.[1]

Third, the government's inevitable discovery argument is far too broad. Even the government admits that the vast majority of material it obtained from Boies Schiller is not on the *Giuffre v. Maxwell* docket and has not been unsealed by Judge Preska. Resp. at 94. In fact, the government's response appears to concede that its inevitable discovery argument is limited to

---

[1] As the government recognizes, Judge Preska recognized this possibility, but deferred to this Court on the question since it is presiding over the criminal case. Resp. at 94 n.41.

Maxwell's two deposition transcripts, Resp. at 94 & n.41. And as to Count 6 in particular (alleging perjury in the July 2016 deposition), the government concedes, as it must, that Judge Preska has refused to unseal all of the testimony charged in the indictment, except one question and one answer. Resp. at 94 n.41. The government offers no explanation for how it inevitably would have obtained all 90,000 pages of material from Boies Schiller when the two deposition transcripts don't even total 1,000 pages.

Fourth, the government misunderstands the burden of proof. The government tries to fault Maxwell for seeking "suppression of *all* evidence [it] obtained pursuant to the subpoena," calling this a "windfall." Resp. at 95. But it's the government's burden to prove the applicability of the inevitable discovery exception. *Stokes*, 733 F.3d at 444 (inevitable discovery doctrine applies only "if the government can prove that the evidence would have been obtained inevitably without the constitutional violation") (rejecting government's inevitable discovery claim). The government must explain why Maxwell *isn't* entitled to this remedy, not the other way around. The government has fallen far, far short of meeting its burden, if only because it offers no argument—on the facts or the law—for how it might have inevitably discovered more than 89,000 pages of material that hasn't been and won't be unsealed by Judge Preska. This Court should have no confidence, much less a "high level of confidence, that each of the contingencies necessary to the legal discovery of the contested evidence would be resolved in the government's favor." *United States v. Heath*, 455 F.3d 52, 55 (2d Cir. 2006) (articulating inevitable discovery standard).

The inevitable discovery doctrine does not apply.

## II. The Government's violation of *Martindell* requires suppression.

The government ignores the primary argument Maxwell made in her Motion: The government circumvented *Martindell*, and deprived Maxwell of due process, by securing a

modification of the Protective Order in an *ex parte* hearing (chock full of misrepresentations) without first providing Maxwell notice and an opportunity to be heard. Mot. No. 11, at 11–15. The government offers *no* response to this fundamental point—*Martindell* demands notice and an opportunity to be heard; Maxwell received neither. Resp. at 76–81.

Now, in an audacious request, the government argues this Court cannot evaluate the propriety of Chief Judge McMahon's analysis of *Martindell*, because Judge McMahon is a co-equal judge who exercised her sound discretion. Resp. at 81 & n.37. Were the government's unsupported argument correct, though, it would mean that Maxwell will *never* have an opportunity to challenge the subpoena under *Martindell*, as that case and due process require. The government is not right.

This Court does not owe deference to Judge McMahon's decision, for at least three reasons. First, Maxwell never was given the chance to oppose the government's request, so due process demands that she be given that chance now. Second, Chief Judge McMahon did not possess all the relevant facts because the government improperly concealed them from her. To the contrary, the government misled Judge McMahon about its contacts with Boies Schiller and the origins of its investigation, facts that were central to Judge McMahon's decision to modify the Protective Order and authorize the subpoena. Mot. No. 3 & Reply in Support Thereof. Third, this Court is not tasked with deciding whether the Protective Order should be modified or even questioning the correctness of Judge McMahon's modification. This Court is deciding a different question entirely—whether the government's violation of *Martindell* requires suppression.

As to remedy, the government says that no case addresses whether suppression is proper for a *Martindell* violation. Fair enough. Resp. at 81.

But that's doubtless because that law has been clear for forty-two years that the government can modify a civil Protective Order and then subpoena confidential material *only* after notice to the real party in interest and an opportunity to respond. *Martindell*, 594 F.2d at 294 (*Martindell* decided in 1979). The proper procedure for modifying a civil Protective Order at the government's request, in other words, is the one that affords due process. U.S. CONST. amend. V.

That no case has addressed the remedy for a *Martindell* violation is evidence only of (1) the government's prior compliance with *Martindell* (which should, of course, be expected), or (2) a criminal defendant having not raised the issue before. In this case, however, (1) the government violated *Martindell*, and (2) Maxwell seeks suppression as a sanction.

Suppression is the proper remedy for at least two reasons. First, at its heart, *Martindell* is grounded in due process principles, and the government's conduct here violated Maxwell's right to due process. *See* U.S. CONST. amend. V. The essence of due process is notice and an opportunity to be heard. *Martindell* guaranteed Maxwell notice and an opportunity to be heard, 594 F.2d at 294, as did the Protective Order, Mot. 3, Ex. A, ¶ 14. But Maxwell had no idea that the *Giuffre* Protective Order had been modified behind her back until she was indicted and the government disclosed the 90,000 pages of material it obtained from Boies Schiller.[2] The government's due process violation warrants suppression. *E.g.*, *Raheem v. Kelly*, 257 F.3d 122, 135 (2d Cir. 2001) (suppression for due process violation).

Second, because the government violated *Martindell* not only by denying Maxwell notice and an opportunity to be heard, but also by affirmatively misleading Chief Judge McMahon,

---

[2] To this day, Judge Preska—who is presiding over the *Giuffre* action since Judge Sweet's passing and is addressing the Protective Order on a daily basis as the parties brief what material should be unsealed—apparently does not know the Protective Order was modified.

suppression is proper under this Court's inherent and supervisory authority. Mot. No. 3 & Reply in Support Thereof.

### III.   The Government's violation of the Fifth Amendment requires suppression.

The government offers three responses to Maxwell's Fifth Amendment argument. None is persuasive.

The government's first response is to deny any state action. Resp. at 99–100. But as even the government admits, a private party, like Boies Schiller, is deemed to be an agent of the state when the government "has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." Resp. at 99 (quoting *United States v. Stein*, 541 F.3d 130, 146 (2d Cir. 2008)). Here, based on the record of the government's contacts with Boies Schiller in the months before and after Maxwell's depositions, there is at least a genuine question of fact as to the government's role in encouraging Boies Schiller.

We know that the government contemplated a perjury prosecution of Maxwell, as seen in the government's newly-disclosed notes from the meeting. Reply ISO Mot. to Suppress, Ex. K, p 5. And if the government is to be believed, there was only one meeting with Boies Schiller, two months before Maxwell's first deposition. If the government was contemplating a perjury prosecution before Maxwell even testified, it stands to reason that Boies Schiller and the government discussed at the February 29 meeting a plan to set a perjury trap for Maxwell.

Indeed, the contemporaneous notes of the February 29 meeting show that Boies Schiller promised to send the government "depositions," Reply ISO Mot. to Suppress, Ex. J, p 8, and David Boies later complained about his frustration that the government had not yet charged

Maxwell with perjury.[3] There are compelling reasons, therefore, to think the government and

Boies Schiller collaborated and that Boies Schiller's conduct was in part at the government's

behest.

The record in the *Giuffre* case preceding the first deposition supports this conclusion as

well. Based on Giuffre's claim of an ongoing investigation, Maxwell requested, prior to her

deposition, that Giuffre disclose any alleged "on-going criminal investigation by law

enforcement" or alternatively to stay the action pending completion of any such investigation.

Ex. A. In part, Maxwell needed information concerning any such investigation to assess "the

impact on any 5th Amendment privilege." Ex. A, p 3. The district court declined to afford Ms.

Maxwell the requested relief. Ex. B.

The day before Maxwell's April 2016 deposition, however, Judge Sweet ordered that

"[a]ny materials that [Giuffre] has with respect to any criminal investigations will be turned over

[by Giuffre] except for any statements made by [Giuffre] to law enforcement authority." Ex. B, p

21. Maxwell had in fact served a discovery request on Boies Schiller for any such documents, yet

Giuffre produced no such materials, and the deposition proceeded as scheduled the next day.

In reliance on the Protective Order, which included no exception for any law enforcement

need or subpoena and based on Giuffre's failure to disclose any "ongoing criminal

investigation," Maxwell did not assert her Fifth Amendment privilege against self-incrimination

during that deposition and testified truthfully.

As explained in Maxwell's Pretrial Motion No. 3 and the Reply in Support Thereof, the

government has now disclosed several documents "with respect to any criminal investigations"

---

[3] Stephen Rex Brown, *Manhattan federal prosecutors declined to pursue Jeffrey Epstein and Ghislaine Maxwell case in 2016*, New York Daily News (Oct. 13, 2020), https://www.nydailynews.com/new-york/ny-jeffrey-epstein-maxwell-case-20201013-jmzhl7zdrzdgrbbs7yc6bfnszu-story.html.

that Giuffre possessed in February and March 2016. Under Judge Sweet's pre-deposition order, Giuffre should have turned these documents over to Maxwell before the April 2016 deposition. Giuffre's failure to turn the documents over, despite Judge Sweet's order, is compelling evidence that Boies Schiller was acting as an agent of the state for Fifth Amendment purposes when deposing Maxwell. At the very least, the possibility cannot be dismissed out of hand, and an evidentiary hearing is appropriate.

The government's second argument is that Maxwell waived her Fifth Amendment right. Resp. at 100. Not so. A waiver is valid only if it is knowingly made. *United States v. Taylor*, 745 F.3d 15, 23 (2d Cir. 2014). And "'knowing' means with full awareness of the nature of the right being abandoned and the consequences of abandoning it." *Id.*

Here, Maxwell did not knowingly waive her Fifth Amendment right. She declined to invoke it based on the protections afforded to her by the Protective Order, and on the understanding that the government *was not* actively investigating her. That understanding, as it turned out, was incorrect, but it was a misunderstanding deliberately encouraged by Boies Schiller with cooperation from the government. If Boies Schiller had disclosed that material Judge Sweet ordered them to disclose, Maxwell would have invoked her Fifth Amendment right and avoided the perjury trap the government and Boies Schiller set for her.

It is for this reason that the government fails in its attempt to distinguish *United States v. Oshatz*, 700 F. Supp. 696 (S.D.N.Y. 1988). Resp. at 102. The government says that the logic of *Oshatz* does not apply because the defendant there had already been indicted whereas here, Maxwell was deposed "over two years before the Government opened its investigation." Resp. at 100; *id.* at 102 (noting that the defendant in *Oshatz* "had already been indicted at the time of his deposition in a civil case for almost seven months"). Of course, this argument depends on the

government's claim that its investigation of Maxwell did not start until 2018. But based on the discovery provided to Maxwell in response to her Pretrial Motion No. 3, we know the investigation actually began as early as 2016, when two months *before* Maxwell's first deposition, Boies Schiller met with the government and pressed an investigation for, among other things, *perjury*. This Court should adhere to *Oshatz* and, as the court there granted the motion to quash, here it should grant the motion to suppress.

The government's final argument is a red herring. Resp. at 103. Maxwell's argument is not, and has never been, that a Protective Order cannot be modified. Maxwell agrees that, under *Martindell*, and after notice to the real party in interest and an opportunity to be heard, modification of a Protective Order is appropriate if the government can show "improvidence in the grant of a Rule 26(c) protective order or some extraordinary circumstance or compelling need." 594 F.2d at 296. Here, Maxwell was *never* given notice and an opportunity to be heard, and Chief Judge McMahon's finding of "extraordinary circumstances" was fatally tainted by the government's misrepresentations to her about the origins of its investigation.

## IV. The Court should hold an evidentiary hearing.

Because there are genuine disputes of material fact, and for the reasons given in Maxwell's Pretrial Motion No. 3 and the Reply in Support Thereof, this Court should hold an evidentiary hearing.

## CONCLUSION

For these reasons, as well as those given in the Motion, this Court should: (1) suppress all evidence the Government obtained from Boies Schiller and any other evidence derived therefrom; or (2) suppress the April and July 2016 depositions and all evidence derived therefrom; and (3) dismiss Counts Five and Six. Maxwell requests an evidentiary hearing on this Motion.

Dated: March 15, 2021

Respectfully submitted,

*s/ Jeffrey S. Pagliuca*

Jeffrey S. Pagliuca
Laura A. Menninger
HADDON, MORGAN & FOREMAN P.C.
150 East 10th Avenue
Denver, CO 80203
Phone: 303-831-7364

Christian R. Everdell
COHEN & GRESSER LLP
800 Third Avenue New York, NY 10022 Phone:
212-957-7600

Bobbi C. Sternheim
Law Offices of Bobbi C. Sternheim
33 West 19th Street - 4th Floor
New York, NY 10011
Phone: 212-243-1100

*Attorneys for Ghislaine Maxwell*

14

## Certificate of Service

I hereby certify that on March 15, 2021, I served by email, pursuant Rule 2(B) of the Court's individual practices in criminal cases, the *Reply Memorandum of Ghislaine Maxwell in Support of Her Motion Under the Fourth Amendment, Martindell, and the Fifth Amendment to Suppress All Evidence Obtained from the government's Subpoena to Boies Schiller and to Dismiss Counts Five and Six* upon the following:

Alison Moe
Maurene Comey
Andrew Rohrbach
Lara Pomerantz
U.S. Attorney's Office, SDNY
One Saint Andrew's Plaza
New York, NY 10007
Alison.moe@usdoj.gov
Maurene.comey@usdoj.gov
Andrew.Rohrbach@usdoj.gov
Lara.Pomerantz@usdoj.gov

*s/ Christian R. Everdell*