

**Haddon, Morgan and Foreman, P.C**
**Jeffrey S. Pagliuca**

150 East 10th Avenue
Denver, Colorado  80203
PH  303.831.7364  FX  303.832.2628
www.hmflaw.com
jpagliuca@hmflaw.com

April 15, 2021

The Hon. Alison J. Nathan
United States District Court Judge
Southern District of New York
40 Foley Square
New York, NY 10007

Re:  Response to Government's April 5, 2021 Letter re. Ms. Maxwell's Rule 17 Subpoena
     *United States v. Ghislaine Maxwell*, 20 Cr. 330 (AJN)

Dear Judge Nathan:

The government's superficial analysis of a Fed. R. Crim. P. 17 subpoena is neither accurate nor informative. The collection of various cliché phrases about Rule 17 subpoenas, selectively gathered from cases inapplicable here, is unpersuasive, and the Court should deny the requested relief because: (1) the government lacks standing to interfere with subpoenas issued to the third party respondents; and (2) this intrusion is yet another attempt to infringe on Ms. Maxwell's constitutional rights to effective assistance of counsel, a fair trial, and due process, all in violation of the 5th and 6th Amendments to the United States Constitution.

## I.     Background

In February 2016 (and likely at least one other time in the weeks and months that followed), lawyers representing numerous civil litigants, including then-Plaintiff Virginia Giuffre, met with the government to foment an indictment of Ms. Maxwell. These lawyers and their clients sought a tactical advantage in their civil litigations, worth millions of dollars. This first meeting was followed up by additional communications from these lawyers to the government. Subsequently, and unknown to Ms. Maxwell, the government brokered a deal

The Hon. Alison J. Nathan
April 15, 2021
Page 2

with Ms. Giuffre's lawyers to obtain information subject to strict protective orders in the civil

cases. To carry out this plan, the government sought *ex parte* subpoenas from two judicial

officers—Chief Judge McMahon and Magistrate Judge Netburn—for Boies Schiller Flexner's

files in the civil cases.

Magistrate Judge Netburn rejected the scheme.

Judge McMahon proceeded with caution, concerned about possible collusion between

the government and the civil attorneys. She haled an Assisted United States Attorney into

court and asked him a simple and direct question:  What contacts had there been between the

government and the plaintiffs' lawyers? The honest answer to the question would have

disclosed at least one lengthy meeting and numerous follow up communications between the

government and the lawyers, a disclosure that would have led Judge McMahon to deny the *ex*

*parte* subpoena request. But the government did not give an honest answer. The government

instead denied any contacts or communication between the U.S. Attorney's Office and the

plaintiffs' lawyers. Reassured by the misrepresentation that there was no coordination

between the government and counsel, Judge McMahon authorized the *ex parte* subpoena,

which resulted in the illegal circumvention of a valid protective order. Ms. Maxwell's due

process motion to suppress and the reply in support thereof set forth the relevant factual

background. An evidentiary hearing on the motion will shed even further light, given the

incredible nature of the government's denials.

Indeed, in response to Ms. Maxwell's motions to exclude evidence obtained in

violation of the protective order, the government made minimal inquiries about the scope of

its misrepresentations to Judge McMahon. The government endeavored to minimize the

damage, not find out the truth. Professed lack of memory was not probed, global email

The Hon. Alison J. Nathan
April 15, 2021
Page 3

searches did not occur, witnesses were not interviewed. The government's modus operandi

can be summed up in two words: "willful blindness."

Consistent with its "willful blindness" policy, the government has intentionally and

methodically avoided obtaining substantial exculpatory evidence in the possession of third

parties. By way of example, Alleged Victim 2 kept what she claimed was a contemporary

journal of the events surrounding her meetings with Epstein. The "journal" does not mention

Ms. Maxwell and contains no reference to any alleged sexual misconduct. The absence of any

contemporaneous recording about Ms. Maxwell is powerful evidence of innocence.

Importantly, it is the whole journal that is significant—that there are references to other

contemporaneous events supplies context and detail about the paucity (or more accurately,

absence) of Ms. Maxwell's involvement. When asked to produce the journal, the

government's response was "we don't have it." The same is true about other physical

evidence, including boots, photographs, and documents.

Although all the alleged victims in this matter have monetized their claims against

Epstein and others, including Ms. Maxwell, the government has failed to investigate those

financial gains or the lawyers fomenting them and their own self-interest in monetary

outcomes. Again, this is powerful evidence of innocence.

The government, singularly focused on obtaining a conviction at any cost, has

abandoned fair play and the pursuit of justice. Accordingly, it is Ms. Maxwell who must use

the subpoena process to secure specific, necessary, relevant, and exculpatory evidence for a

fair hearing on her motions and in presentation of her defense at trial. Ms. Maxwell's Rule 17

subpoena is necessary to vindicate her constitutional right to present a defense. *See Crane v.*

*Kentucky*, 476 U.S. 683, 690 (1986) ("Whether rooted directly in the Due Process Clause of

The Hon. Alison J. Nathan
April 15, 2021
Page 4

the Fourteenth Amendment or in the Compulsory Process or Confrontation clauses of the

Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity

to present a complete defense.").

## II.    The Government Lacks Standing

A party lacks standing to challenge a subpoena issued to a third party absent a claim of

privilege or a proprietary interest in the subpoenaed matter. *Langford v. Chrysler Motor*

*Corp.*, 513 F.2d 1121 (2d Cir. 1975). *Accord United States v. Ray*, No. 20-CR-110 (LJL),

2020 WL 6939677, at *7 (S.D.N.Y. Nov. 25, 2020) ("[C]ourts in this District have generally

come to the conclusion that the Government can move to quash subpoenas issued for the

records of non-parties only on the basis of the Government's own legitimate interests."). *See*

*also United States v. Cole*, No. 19 CR. 869 (ER), 2021 WL 912425, at *2 (S.D.N.Y. Mar. 10,

2021) (noting "the majority rule in this District" that the government has standing to quash

a subpoena of a non-party only if the alleged victim has asked it to, or if the government can

assert legitimate interests of its own in quashing the subpoenas).

The government has failed to articulate any of its own "legitimate interest" here. First,

the government speculates, without knowing, that the defense subpoenas implicate the

government's "interest in preventing any undue lengthening of the trial, any undue harassment

of the witness and his family, and any prejudicial over-emphasis on the witness's credibility."

Letter, p. 4. In support of this speculation, the government cites *United States v. Ray*, *supra*.

The government does not acknowledge, however, that in *Ray* the court denied it standing to

move to quash the subpoena.

In turn, other than quoting the cliché, the government has failed to articulate how the

defense subpoenas would implicate this interest. Moreover, the defendant has no reason to

The Hon. Alison J. Nathan
April 15, 2021
Page 5

believe that the information sought is in the possession of the government. Accordingly, it is

not, as theorized by the government, "*Giglio* or 3500" material. Letter, p. 5. Thus, there is no

"cognizable interest" in "controlling the timing of disclosures," *id*., because under the

government's "willful blindness" policy there would be nothing to disclose.

The final "interest" advanced by the government is in "its own communications." For

support, the government cites *United States v. Carton*, No. 17 CR 680 (CM), 2018 WL

5818107, at *3 (S.D.N.Y. Oct. 19, 2018). Letter, p. 5. However, the communications at issue

in *Carton* were "Carton's *own communications* with the Sports and Entertainment Company,"

not government communications. *Id.* The government does not explain how third-party

subpoenas would implicate "its own communications," which it fails to define. None of Ms.

Maxwell's subpoenas seek government work product or internal communications between

government employees, and the government has no legitimate interest in suppressing third-

party communications.[1]

But even if the government's own communications were at issue, the government has

waived any privilege it may have otherwise asserted. In response to Ms. Maxwell's motions to

suppress, the government voluntarily disclosed and attached several internal emails between

its attorneys. This disclosure (partial though it may be)[2] is a waiver of any privilege. *See*

*United States v. Gangi*, 1 F. Supp. 2d 256, 263 (S.D.N.Y. 1998) (holding that "privileged

---

[1] The government notes, in footnote 1 that it might have standing if asked by a witness or third party. That has not happened.  Indeed, the witnesses at issue, unlike most, have the full force of Boies Schiller Flexner LLP standing behind them.

[2] It is not at all clear (and the government has not asserted) that the emails it attached to its response are all the relevant emails on the issues raised by Ms. Maxwell's motions. Because the government's communications are at issue, and because the government voluntarily produced some of those communications, Ms. Maxwell has a due process right to all the relevant communications.

The Hon. Alison J. Nathan
April 15, 2021
Page 6

documents . . . are not protected if a party voluntarily discloses them" and determining that

government waived the work-product privilege even though its disclosure was inadvertent).

### III.    The Government Has No "Need" to Know.

The government claims, without support, that "[t]he only way for the [g]overnment to

vindicate" its ill-defined interests "is with notice" so that it can move to quash the subpoenas.

The government ignores the role of this Court in this process. All the subpoenas requested by

Ms. Maxwell are under the strict procedures authorized by the Rule. The Court is keenly

aware of the standards necessary for the issuance of a Rule 17 subpoena and needs no

assistance from the government in performing this gatekeeping function. Ms. Maxwell's

counsel understand the scope and limitations of Rule 17 and have not requested anything that

would run afoul of the Rule. The subpoena recipients are third parties who are well qualified

to assert any objection to the subpoena requests.

A similar request was made, and rejected in *Ray*, *supra,* at *7:

the Government is not entitled to be informed of the complete universe of
subpoenas requested by the defense that may relate to other victims, now or
going forward. In its letters and at argument, the Government urged that it had
an independent obligation to protect the rights of victims and that it was best
situated to inform the Court of the relevance or lack of relevance of any
subpoena related to victim records. That obligation to protect the rights of
victims, however, also is shared by the Court, and the Court is fully capable of
directing the Government be informed of a subpoena and requesting the
appropriate information in an appropriate case and regardless whether the
victim objects.

### IV.    The Government is Not Entitled to Advance Notice of Material Produced

The government offers no authority for its request that it receive contemporaneous

copies of any material produced pursuant to a Rule 17 subpoena. This request is remarkable

given that the government has steadfastly refused to identify the names of the alleged

accusers, the details about the alleged offense, or the statements made by the accusers. The

The Hon. Alison J. Nathan
April 15, 2021
Page 7

material being sought is easily obtained by the government, though the government, of course,

has chosen not to obtain it. Ms. Maxwell should not be required to expend considerable time

and resources obtaining relevant exculpatory evidence that could have been seized or

subpoenaed by the government. Premature disclosure of the evidence would impinge on Ms.

Maxwell's rights to effective assistance of counsel and reveal defense strategy and work

product.

Rule 16, not Rule 17, governs the timing of any reciprocal discovery request, and it

provides that if a defendant requests disclosure from the government under Rule 16(a)(1)(E),

then upon compliance with a similar request by the government, the defendant is required to

permit the government to inspect and copy or photograph documents and tangible objects

which are within the possession, custody or control of the defendant and which the defendant

intends to introduce at trial. Fed. R. Crim. P. 16(b)(1)(A); *United States v. Smith*, 985 F. Supp.

2d 506, 522 (S.D.N.Y. 2013).

**V.      Any Protective Order Regarding the Rule 17 Material Should Be Separate from the Protective Order Entered at the Insistence of the Government and Over Ms. Maxwell's Objection**

The government has repeatedly objected to any modification of the Protective Order

entered in this case.[3] When Ms. Maxwell asked to be allowed to disclose judicial documents

to judicial officers in this judicial district, the government objected. Much of the information

---

[3] Counsel for Ms. Maxwell attempted to negotiate reciprocal protective order protections in July 2020, but the government steadfastly then insisted that a separate negotiation would occur at an undefined later time to any materials to be produced by defense counsel.  Defense counsel is prepared to confer with the government at the appropriate time regarding necessary protections for any documents that she will disclose pursuant to her reciprocity obligations under Rule 16.

The Hon. Alison J. Nathan
April 15, 2021
Page 8

sought by the subpoenas is not confidential. The government argues, based on the Boies

Schiller response, that the "diary" would be considered confidential. The government's

hyperbole about the alleged confidential nature of the diary is inaccurate, and in any event,

Boies Schiller is capable or raising confidentiality and requesting a protective order where

applicable. Of course, to the extent any of the information is legitimately confidential, Ms.

Maxwell will not object to an appropriate protective order negotiated between the third party

and Ms. Maxwell and approved by the Court.

## VI.     Conclusion

The government could easily address the issues raised in its April 5, 2021 letter by

simply obtaining the relevant exculpatory evidence. But it refuses to fairly investigate this

case, and it should not be permitted to interfere with the defense function. Accordingly, the

various requests made in its letter motion should be denied.

Respectfully submitted,

Jeffrey S. Pagliuca

CC: Counsel of Record