UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- x
                                                         :
UNITED STATES OF AMERICA,                                :
                                                         :
                 v.                                      :     20 Cr. 330 (AJN)
                                                         :
GHISLAINE MAXWELL,                                       :
                                                         :
                     Defendant.                          :
                                                         :
------------------------------------------------------- x

**REPLY MEMORANDUM OF GHISLAINE MAXWELL**
**IN SUPPORT OF HER MOTION FOR A SEVERANCE OF AND SEPARATE TRIAL**
**ON COUNTS FIVE AND SIX OF THE SUPERSEDING INDICTMENT**

Jeffrey S. Pagliuca
Laura A. Menninger
HADDON, MORGAN & FOREMAN P.C.
150 East 10th Avenue
Denver, CO 80203
Phone: 303-831-7364

Christian R. Everdell
COHEN & GRESSER LLP
800 Third Avenue New
York, NY 10022
Phone: 212-957-7600

Bobbi C. Sternheim
Law Offices of Bobbi C. Sternheim
33 West 19th Street - 4th Floor
New York, NY 10011
Phone: 212-243-1100

*Attorneys for Ghislaine Maxwell*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ....................................................................................................... ii

ARGUMENT ............................................................................................................................... 1

I.     The Counts Are Improperly Joined ..................................................................................... 1

     A.     The Counts are Dissimilar and Illogically and Artificially Connected. .......................... 2

     B.     The Perjury Charges Do Not "Concern" the Mann Act Offenses ................................... 3

     C.     Some Overlapping Proof, By Itself, Does Not Make Joinder Proper ............................. 5

II.     The Perjury Counts Must Be Severed to Prevent the Introduction of Improper, Highly Prejudicial, and Inadmissible Evidence ........................................................................... 6

CONCLUSION ......................................................................................................................... 11

Certificate of Service ............................................................................................................... 13

# TABLE OF AUTHORITIES

## Cases

*Giuffre v. Maxwell*, 325 F. Supp. 3d 428 (S.D.N.Y. 2018) ............................................................. 7

*United States v. Blakney,* 941 F.2d 114 (2d Cir.1991) ................................................................. 1

*United States v. Broccolo*, 797 F. Supp. 1185 (S.D.N.Y. 1992) ................................................... 3

*United States v. Burke*, 789 F. Supp. 2d 395 (S.D.N.Y. 2011) .................................................... 5

*United States v. Cohn*, 230 F. Supp. 587 (S.D.N.Y. 1964) .......................................................... 4

*United States v. Cunningham*, 672 F.2d 1064 (2d Cir. 1982) .................................................... 10

*United States v. Gotti*, 771 F. Supp. 552 (E.D.N.Y. 1991) ........................................................ 10

*United States v. Halper*, 590 F.2d 422 (2d Cir. 1978) ................................................................ 6

*United States v. Harris*, 805 F. Supp. 166 (S.D.N.Y. 1992) ....................................................... 4

*United States v. Littlefield*, 840 F.2d 143 (1st Cir. 1988) .......................................................... 6

*United States v. Potamitis*, 739 F.2d 784 (2d Cir. 1984) ............................................................ 3

*United States v. Randazzo*, 80 F.3d 623 (1st Cir. 1996) ............................................................. 2

*United States v. Ruiz,* 894 F.2d 501 (2d Cir.1990) .................................................................. 1, 3

*United States v. Sweig*, 441 F.2d 114 (2d Cir. 1971) .................................................................. 3

*United States v. Werner*, 620 F.2d 922 (2d Cir. 1980) ............................................................... 3

*Williams v. Dist. Ct., El Paso Cty.*, 700 P.2d 549 (Colo. 1985) ................................................. 10

## Other Authorities

Erick G. Luna, *Avoiding A "Carnival Atmosphere": Trial Court Discretion and the Advocate–Witness Rule*, 18 Whittier L.Rev. 447, 451 (1997 ................................................................... 9

Jeffrey A. Van Detta, *Lawyers as Investigators: How Ellerth and Faragher Reveal a Crisis of Ethics and Professionalism Through Trial Counsel Disqualification and Waivers of Privilege in Workplace Harassment Cases*, 24 J. Legal Prof. 261 (2000) ............................................... 9

**Rules**

ABA Annotated Model Rules of Prof'l Conduct, R. 3.7 cmt. 1...................................................... 10

NYRPC 3.7 ......................................................................................................................................... 9

Fed. R. Crim. P. 14(a) ...................................................................................................................... 6

Fed. R. Crim. P. 8(a). ...................................................................................................................... 1

Fed. R. Evid. 8(a) ............................................................................................................................ 3

Fed. R. Evid. 401, 402, 403, and 404(b) ....................................................................................... 7

Counts 5 and 6, "the Perjury Counts," are improperly joined with Counts 1-4, the "Mann Act Counts." For the reasons stated in Ms. Maxwell's original Motion and this Reply, the Court should sever the Perjury Counts and grant a separate trial on these charges.

## ARGUMENT

### I.  The Counts Are Improperly Joined.

Rule 8(a) of the Federal Rules of Criminal Procedure permits joinder of offenses only when they "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). "Joinder is proper where the same evidence may be used to prove each count," *United States v. Blakney,* 941 F.2d 114, 116 (2d Cir.1991), or if the counts have a "sufficient logical connection," *United States v. Ruiz,* 894 F.2d 501, 505 (2d Cir.1990).

The government's justifications for this ill-conceived superseding indictment (Indictment) demonstrate either fundamental misunderstandings or deliberate misrepresentations about the law and facts related to these allegations. The Perjury Counts allegedly occurred 22 years after the Mann Act Counts, during a defamation action concerning not whether Accuser-1 had sex with Jeffrey Epstein or Accusers-2 or 3 got a "massage," but whether the fantastical statements made by Virginia Giuffre *in 2015* were "obvious lies."  Those wild, now known to be false, claims included her assertion that she had been sexually trafficked to Alan Dershowitz among other famous celebrities and politicians, and her age at the time of the claimed trafficking. The counts, collectively, are thus illogically and artificially connected and do not depend on the "same evidence" but rather would allow the introduction of improper, irrelevant, and prejudicial evidence not otherwise admissible.

1

## A.   The Counts are Dissimilar and Illogically and Artificially Connected.

The government claims that the Perjury Counts are properly joined because they are "logically connected" to the Mann Act Counts and part of the same "common plan or scheme." Resp. at 138, 141, 143.  No logic can be gleaned from the government's response. Offenses are or "connected" or part of a "common scheme or plan" if the counts "grow out of related transactions." *United States v. Randazzo*, 80 F.3d 623, 627 (1st Cir. 1996).

Here, the Perjury Counts did not "grow out of" the conduct underlying the Mann Act Counts.  Ms. Maxwell's depositions occurred in 2016, twenty years after the conduct alleged in the Mann Act Counts purportedly occurred from 1994-1997.  Furthermore, the allegations underlying the two sets of counts are unrelated.  The "scheme" alleged in the Indictment is the alleged enticement of three females to travel for the purpose of engaging in illegal sex acts between 1994 and 1997. The depositions at the heart of the Perjury Counts concerned the truth or falsity of Virginia Giuffre's "obvious lies" about being sexually trafficked to famous people and her purported four years as a sex slave.  None of the Accusers in the Indictment claim to have been sexually trafficked by Epstein or Ms. Maxwell to anyone, let alone any famous people. And the defamation case had nothing to do with any allegations by Ms. Giuffre of being enticed to travel to engage in illegal sex acts.  How Ms. Maxwell's answers to questions in 2016 about the falsity of Ms. Giuffre's sex trafficking claims (years after the allegations in the Indictment) are related to the conspiracies alleged in the Indictment is therefore a mystery.[1]

---

[1] There is also no evidence that Ms. Maxwell and Epstein conspired or agreed to lie in the defamation case. After Ms. Maxwell compelled Epstein to sit for a deposition in the defamation action, he asserted his right against self-incrimination and declined to answer any questions. Ms. Maxwell, having committed no crime and not being a part of any conspiracy with Epstein, chose to answer questions truthfully. No charges were pending against either Epstein or Ms. Maxwell at the time of the depositions and there was no relationship between the two individuals.

The government also asserts, without explanation, that the Perjury Counts are of "similar character" to the Mann Act Counts. Resp. 141. "Similar character," for purposes of F.R.E. 8(a) "means nearly corresponding, resembling in many respects or having a general likeness." *United States v. Werner*, 620 F.2d 922 (2d Cir. 1980). The alleged perjury in an unrelated defamation case more than 20 years after the fact bears no likeness to allegedly enticing someone to travel for an illegal sexual purpose.

### B.   The Perjury Charges Do Not "Concern" the Mann Act Offenses.

Nor do the Perjury Counts "concern" the Mann Act Counts as claimed by the government.  Resp. 143.  The government cites the supposedly "settled law in this Circuit that joinder of 'underlying substantive crimes with perjury counts' is appropriate 'where . . . the false declarations concern the substantive offenses.'"  *Id.* (citing *United States v. Potamitis*, 739 F.2d 784, 791 (2d Cir. 1984)).  But it is wrong on both the facts and the law.

The cases cited by the government involve a distinct fact pattern:  the defendant allegedly made a materially false statement that relates directly to the underlying crime and the crime is temporally related to the false statement.  The *Potamitis* case that the government relies upon primarily for this proposition is a good example. In that case, the defendant was charged with making false statements to FBI agents, committing perjury before the grand jury, and obstruction of justice because he lied to the FBI agents and the Grand Jury about the underlying crimes for which he was being investigated and questioned. *Potamitis*, 739 F.2d at 786-87; *see also United States v. Ruiz*, 894 F.2d 501 (2d Cir. 1992) (common plan or scheme between lying on a non-profit's loan application and perjury during grand jury investigation the subsequent year into that same non-profit); *United States v. Broccolo*, 797 F. Supp. 1185 at 1190-91 (S.D.N.Y. 1992) (fraud in businesses joined with false swearing to bankruptcy court about operating that same business); *United States v. Sweig*, 441 F.2d 114 (2d Cir. 1971) (perjury in grand jury

investigating the underlying charged conspiracy); *United States v. Cohn*, 230 F. Supp. 587 (S.D.N.Y. 1964) (perjury during grand jury proceedings into the same transaction as substantive count); *United States v. Harris*, 805 F. Supp. 166 (S.D.N.Y. 1992) (severing false statement regarding a personal loan from substantive counts of inducing a consortium of banks to provide credit to companies controlled by defendant).

The facts of this case do not fit the supposed well-settled Second Circuit rule, because the Perjury Counts do not involve any allegedly materially false testimonial statements to law enforcement authorities, a grand jury, a petit jury, or a court considering the purportedly criminal acts in question. Nor did the allegedly false statements concern the Mann Act Counts, which are based on allegations of enticing women to travel in interstate commerce for an illegal sexual purpose between 1994 and 1997. Ms. Maxwell's responses to questions about, for example, whether she could give a list of people under the age of 18 who came to Epstein's house or whether she could identify sex toys—which she made in the context of a 2016 defamation claim brought by an unrelated person—do not "concern" the Mann Act Counts.

The government contends that the fact that Ms. Maxwell made these statements in the context of a civil deposition, as opposed to a criminal investigation, "is of little moment" because she was supposedly "concerned about the prospect of a criminal investigation at the time of her depositions." Resp. at 145. That is simply wrong. What Ms. Maxwell, and her lawyers were "concerned about" was the abuse of her deposition testimony by unscrupulous lawyers. As it turns out, her concern was entirely justified.[2]

---

[2] *See, e.g.*, https://www.npr.org/2020/03/12/804949055/the-new-york-times-the-unreliable-source-and-the-expos-that-missed-the-mark; https://www.theatlantic.com/politics/archive/2017/11/weinstein-boies-545273/.

### C.  Some Overlapping Proof, By Itself, Does Not Make Joinder Proper

The government contends that joinder is appropriate because it will seek to prove the

Perjury Counts with some of the same witness testimony that it will use to prove the Mann Act

Counts.  Resp. 141-42.  That argument is unavailing.  *First*, the government admits that only "in

one instance" does a charged deposition question relate to a "specific victim" in the Indictment.

Resp. at 144.  *Second*, as Ms. Maxwell set forth in her opening memorandum, even if the

government uses some minimal amount of overlapping evidence, including witness testimony, to

prove both the Perjury Counts and the Mann Act Counts, that is not sufficient reason, by itself, to

try the two groups of counts together. *See United States v. Burke*, 789 F. Supp. 2d 395, 398

(S.D.N.Y. 2011) (severing witness tampering charges from RICO conspiracy charges in the

interests of judicial economy, despite fact that government would have to present "some

overlapping proof" and "five limited overlapping witnesses" to prove both charges).

Incredibly, the government also contends that *answering poorly phrased questions*

instead of asserting the privilege against self-incrimination is somehow admissible in the trial of

the Mann Act Counts as consciousness of guilt. Resp. at 141-42.  For example, the government

repeatedly claims that Ms. Maxwell "den[ied] a "scheme to recruit underage girls." *Id*. The

actual question posed to Ms. Maxwell at her deposition was "Did Jeffrey Epstein have a scheme

to recruit underage girls for sexual massages?  If you know . . ." and her answer was "I don't

know what you're talking about."  Apparently, the government intends to prove this answer not

by demonstrating that Ms. Maxwell did know what the examiner was talking about, but instead

that a third party – Epstein – "had a scheme to recruit underage girls for sexual massages."  And

the answer of not understanding the questioner shows "consciousness of guilt."  This is a circular

argument:  anyone who denies being a witch must be a witch.  For an allegedly false exculpatory

statement to be of any value "it either must involve a matter collateral to the facts establishing

guilt or should be so incredible that its very implausibility suggests that it was created to conceal guilt." *United States v. Littlefield*, 840 F.2d 143, 149 (1st Cir. 1988) (internal citations and quotations omitted). That is not the case here. Moreover, the government cites no case where a purportedly false response in an unrelated civil deposition was admissible as a false exculpatory statement in a criminal case.  Accordingly, the Perjury Counts should be severed and tried separately.[3]

## II.   The Perjury Counts Must Be Severed to Prevent the Introduction of Improper, Highly Prejudicial, and Inadmissible Evidence.

Federal Rule of Criminal Procedure 14(a), captioned "Relief from Prejudicial Joinder," confers upon a trial court the discretion to sever even properly joined counts if "justice requires." The rule provides, in pertinent part:  "If the joinder of offenses . . . in an indictment . . . appears to prejudice a defendant or the government, the court may order separate trials of counts . . . or provide any other relief that justice requires."  Fed. R. Crim. P. 14(a).

There can be little doubt that if the Perjury Counts are not severed, Ms. Maxwell will suffer substantial prejudice.  The government's proof of the Mann Act Counts will come almost exclusively from the testimony of the three accusers, with little or no independent documentary corroboration.  Adding the Perjury Counts, which involve allegations of sexual abuse by another alleged victim that are unrelated to the charged crimes, will create a significant risk that the jury will impermissibly use the evidence introduced in connection with the Perjury Counts "to infer a criminal disposition" on the part of Ms. Maxwell to commit the Mann Act violations, or might

---

[3] It is highly unlikely that two trials would occur in this matter. Should the case proceed to trial on Counts 1-4, only, a conviction would expose Ms. Maxwell to a significant term of imprisonment. Under the sentencing guidelines, the Court would be permitted to consider any severed perjury counts under a number of theories including [grouping] or 21 U.S.C. § 3553(a). No second trial would be necessary. If Ms. Maxwell were acquitted, issue-preclusion would bar any second trial. *See Yeager v. United States*, 557 U.S. 110, 121–122 (2009).

"cumulate evidence" of all of the crimes charged to find her guilty on particular counts, without considering them separately. *United States v. Halper*, 590 F.2d 422, 440 (2d Cir. 1978).

Furthermore, the government ignores the proverbial elephant in the room, materiality, which inevitably involves complicated discussions, and evidence, about civil litigation, defamation law, and the *Giuffre v. Maxwell* defamation litigation, all of which are inadmissible as to the Mann Act Counts, under F.R.E. 401, 402, 403, and 404(b). Any prosecution of the Perjury Counts exposes the jury to evidence about:

- The genesis of the defamation action including:

  - What Ms. Giuffre said in a pleading in 2015 filed in ongoing litigation under the Crime Victims' Rights Act (CVRA) initiated by her lawyers in Florida.

  - The nature of the CVRA litigation, including claims by alleged Epstein victims that the government had violated their rights in negotiating a secret sweetheart deal with Epstein in which Ms. Maxwell and others were given immunity from prosecution.

  - That these statements, ultimately stricken by United States District Court Marra, were widely publicized.

  - Ms. Maxwell, through her lawyer in London, issued a response that Giuffre's claims in the CVRA pleading were "obvious lies."

  - The reasons why Giuffre's false statements were "obvious lies," which would include testimony from prominent academics, political figures, business leaders, and celebrities who all, like Ms. Maxwell, said Giuffre lied.

- Civil litigation discovery practices, generally, including:

  - How discovery is obtained.

  - Permissible questions and objections in depositions.

- Defamation litigation generally, including:

  - The elements of a defamation claim;

  - Defenses to defamation claims, including truth (and a plethora of other defenses).

7

- The *Giuffre v. Maxwell* litigation specifically, including:

    - The circumstances surrounding the deposition.

    - The nature and character of the Giuffre's lawyers including their unethical behavior.

    - The discovery abuses by Giuffre's lawyers.

    - Why, in the context of this defamation case, the questions being posed, now the subject of the Perjury Counts, were not material including:

        - Approximately 50 unresolved motions relating to the admissibility of evidence.

        - The testimony of ten to fifteen other witnesses including fact and expert witnesses.

        - The testimony of Ms. Maxwell's lawyers.

In sum, if the Perjury Counts are not severed, this criminal trial will be subsumed by evidence not relevant to the main charges, the Mann Act Counts, completely unrelated to the defamation case.[4]

The government suggests that these evidentiary problems can be cured by "stipulations" but does not propose any. It is hard to imagine the legal gymnastics necessary to accomplish any stipulations that would fix these problems. Alternatively, or perhaps with the unknown stipulations, the government suggests prejudice could be avoided by jury instructions. It is

---

[4] The Second Circuit has adopted an inclusionary approach to other act evidence under Rule 404(b), which allows such evidence to be admitted for any proper purpose other than to demonstrate criminal propensity. *United States v. LaFlam,* 369 F.3d 153, 156 (2d Cir.2004). The rule, however, is not "a carte blanche to admit prejudicial extrinsic act evidence…." *United States v. Scott,* 677 F.3d 72, 79 (2d Cir. 2012). In evaluating  F.R.E. 404(b) evidence, the Court must consider whether:  (1) it is offered for a proper purpose; (2) it is relevant to a material issue in dispute; and (3) its probative value is substantially outweighed by its prejudicial effect…." *LaFlam,* 369 F.3d at 156. There is no proper purpose for the admission of any of the alleged perjury which occurred decades after the charges in Counts 1-4. Certainly, the government has articulated none. Ms. Maxwell's answers to the vague and objectionable questions selectively plucked from hundreds of pages of transcripts have no relevance to any material issue related to the Mann Act Counts. And, significantly, any arguable probative value is substantially outweighed by its prejudicial effect.

improbable that instructions would eliminate the obvious and substantial prejudice to Ms.

Maxwell.  Any reasonable, intelligent, jury cannot be instructed to ignore the following:

- Ms. Maxwell was sued for defamation by an alleged victim because she called the alleged victim a liar.

- The government necessarily believes that Ms. Maxwell, not the alleged victims in this case, is a liar, which is why the government charged her with perjury.

- By implication, Ms. Maxwell's lawyers here, arguing that she is innocent, should not be believed because they were complicit in the perjury.

- In considering whether the jury should convict Ms. Maxwell of enticing girls to travel to perform illegal sex acts the jury should ignore all of the underlying facts related to the defamation action including, for example, the 30 alleged victims, Epstein's settlement, the CVRA litigation, Epstein's, and Ms. Maxwell's non-prosecution agreement.

In addition, the government glosses over, *via* a footnote, enormous prejudice attendant to

the perjury charges: Ms. Maxwell's counsel of choice for five years also represented her in the

defamation action. The deposition transcript and the perjury charges place the credibility of Ms.

Maxwell's lawyers at issue. The government obfuscates how it intends to establish materiality of

the statements, but it is probable that the government will attempt to do so through the testimony

of the civil lawyers who prosecuted the defamation action. Any rational jury would want, as a

counter, testimony from the defending lawyers on the same topic. The government suggests that

this is no problem, at least for the prosecutors, under NY RPC 3.7. We beg to differ.

The question of disqualification arising from counsel's status as attorney and witness in

the same proceeding is premised on the so-called advocate-witness rule.[5] The rule, generally, is

that counsel cannot maintain dual roles as advocate and witness in the same matter before the

---

[5] For a discussion of the advocate-witness rule's origin and history, *see* Jeffrey A. Van Detta, *Lawyers as Investigators: How Ellerth and Faragher Reveal a Crisis of Ethics and Professionalism Through Trial Counsel Disqualification and Waivers of Privilege in Workplace Harassment Cases,* 24 J. Legal Prof. 261 (2000).

same tribunal. *See* Erick G. Luna, *Avoiding A "Carnival Atmosphere": Trial Court Discretion and the Advocate–Witness Rule,* 18 Whittier L.Rev. 447, 451 (1997). Among the multitude of rationales for the rule, rarely, if ever, will a lawyer be able to effectively serve as an advocate and give testimony:

> A lawyer who intermingles the functions of advocate and witness diminishes his effectiveness in both roles. The client's case is subject to the criticism that it is being presented through the testimony of an obviously interested witness who on that account is subject to impeachment, and, of equal importance, the lawyer is placed in the unseemly position of arguing his own credibility to the jury.

*Williams v. Dist. Ct., El Paso Cty.*, 700 P.2d 549, 553 (Colo. 1985).[6]

Counsel for Ms. Maxwell ("Colorado Counsel") have direct, relevant, testimony applicable to the facts and circumstances surrounding the allegations in Counts Five and Six, the questions, the objections, and the lack of materiality of these questions. Testimony from Colorado Counsel would likely include their knowledge about the many false statements made by Giuffre and the actions of her lawyers including discovery abuses. But operating in a dual capacity, lawyer and witness, would create confusion, subject Ms. Maxwell's lawyers to cross-examination, and potentially constitute ineffective assistance of counsel. Moreover, courts in this Circuit do not allow attorneys to function in this dual role, even if the defendant is willing. *See United States v. Cunningham*, 672 F.2d 1064, 1074 (2d Cir. 1982) (disqualification of trial counsel "required" as a result of "their participation in the events underlying" one of the charges); *United States v. Gotti*, 771 F. Supp. 552, 565 (E.D.N.Y. 1991) (disqualifying trial counsel and noting that "[i]t is difficult to comprehend how [the lawyers] could present a defense against this charge without becoming unsworn witnesses"). Here, the government suggests that

---

[6] Drafters of the ABA Model Rules recommend similar rationales for the rule; but the drafters also mention the opposing party's interest, noting that combining the roles of advocate and witness can prejudice the opposing party as well as involve a conflict of interest between the lawyer and client. *See* Annotated Model Rules of Prof'l Conduct, R. 3.7 cmt. 1.

one or more of Ms. Maxwell's lawyers should become actual witnesses, a circumstance that would create a circus, not a fair trial.

The truth of the matter is simple:  the government included the Perjury Counts because it wants to call Ms. Maxwell a liar in front of the jury and because it wanted a way to introduce unrelated, but extremely prejudicial evidence of alleged sexual abuse through the back door.  The simple, non-prejudicial, solution is to sever the Perjury Counts.[7]

## CONCLUSION

The Perjury Counts are improperly joined with the Mann Act Counts. A joint trial of these charges would deny Ms. Maxwell her right to a fair trial and her counsel. Accordingly, the Court should grant the request for a separate trial on the Perjury Counts.

Dated: March 15, 2021

Respectfully submitted,

s/ Jeffrey S. Pagliuca

---

[7] Ms. Maxwell's Colorado Counsel would not participate as advocates in any trial of those charges but would testify as witnesses.

Jeffrey S. Pagliuca
Laura A. Menninger
HADDON, MORGAN & FOREMAN P.C.
150 East 10th Avenue
Denver, CO 80203
Phone: 303-831-7364

Christian R. Everdell
COHEN & GRESSER LLP
800 Third Avenue
New York, NY 10022
Phone: 212-957-7600

Bobbi C. Sternheim
Law Offices of Bobbi C. Sternheim
33 West 19th Street - 4th Floor
New York, NY 10011
Phone: 212-243-1100

*Attorneys for Ghislaine Maxwell*

## Certificate of Service

I hereby certify that on March 15, 2021, I served by email, pursuant Rule 2(B) of the Court's individual practices in criminal cases, the *Reply Memorandum of Ghislaine Maxwell in Support of Her Motion for a Severance of and Separate Trial on Counts Five and Six of the Superseding Indictment* upon the following:

Alison Moe
Maurene Comey
Andrew Rohrbach
Lara Pomerantz
U.S. Attorney's Office, SDNY
One Saint Andrew's Plaza
New York, NY 10007
Alison.moe@usdoj.gov
Maurene.comey@usdoj.gov
Andrew.Rohrbach@usdoj.gov
Lara.Pomerantz@usdoj.gov

*s/ Christian R. Everdell*