

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 22, 2021

**BY ECF**

The Honorable Alison J. Nathan
United States District Court
Southern District of New York
United States Courthouse
40 Foley Square
New York, New York 10007

     Re:    *United States v. Ghislaine Maxwell*, 20 Cr. 330 (AJN)

Dear Judge Nathan:

     The Government respectfully submits this letter in response to the Court's Order dated April 20, 2021, which permitted the Government an opportunity to submit a response to the defense request for an adjournment of trial in the above-referenced case. (Dkt. No. 221). As previewed in its April 9, 2021 letter (Dkt. No. 199), the Government strenuously opposes any adjournment of the July 12, 2021 trial date in this case. Given both the recently granted severance and the Government's intention to present a streamlined case focused primarily on the experiences of four victims, trial on the non-perjury counts in indictment S2 20 Cr. 330 (AJN) (the "S2 Indictment") will not be materially lengthened by the addition of new charges. As previously noted, the Government has made and will continue to make significant efforts to ensure that the defense is able to prepare for trial as scheduled. Moreover, delay of the trial would prejudice the victims in this case, multiple of whom oppose any adjournment. Should the Court nevertheless grant the defense's request for an adjournment, however, the Government respectfully requests that trial be scheduled for March 2022 to ensure continuity of Government counsel at trial.

*First*, the Court's recent decision to sever the perjury counts will both shorten the upcoming trial and free up time for the defense to prepare for a trial that includes the new allegations and charges in the S2 Indictment. Although the defense has expressed concerns that trial on the S2 Indictment would be excessively long, and that the defense would need additional time to prepare for trial, balanced against the two counts added by the S2 Indictment are the two perjury counts severed by the Court's April 16, 2021 opinion and order. (Dkt. No. 207). In other words, the defense has long maintained that the perjury counts would substantially expand the scope of the trial, but those counts will no longer be at issue during trial in July.

As the Court may recall, in the defense's view, the Mann Act and perjury counts involved at most "some minimal amount of overlapping evidence," which was "far outweighed b[y] the much larger inefficiency of substantially lengthening and complicating the trial." (Dkt. No. 120 at 12). According to the defense, a trial including the perjury counts would have "necessarily involve[d] litigating a complicated defamation action within a criminal trial," and possibly require resolution of "[a]pproximately 50 substantive motions" and "evidentiary challenges to thousands of deposition questions and answers contained in dozens of bankers boxes." (*Id.* at 9-10, 12). The defense also identified more than a dozen areas of evidence that it claimed would be part of the perjury trial, including "how discovery is obtained" in civil litigation, "[t]he testimony of ten to fifteen other witnesses including fact and expert witnesses" on materiality, and "[t]he testimony of Ms. Maxwell's lawyers." (Dkt No. 224 at 7-8). As a result, in the defense's view, if the perjury counts were tried together with the Mann Act counts, "this criminal trial will be subsumed by evidence not relevant to the main charges, the Mann Act Counts." (*Id.* at 8).

The Government has never understood the perjury counts to require the resolution of dozens of motions from the civil case or the trial testimony of dozens of witnesses above and

Case 1:20-cr-00330-AJN   Document 235   Filed 04/22/21   Page 3 of 10

Page 3

beyond the Mann Act counts. But the defense did. And notwithstanding that understanding, the defense at no point suggested that it would seek to adjourn the trial date if the Court denied its severance motion. Given the defense's expansive view of the amount of evidence and time that would be required to complete a trial of the perjury counts, their removal from the equation should largely make up for the additional trial time required to address the new charges and allegations regarding Minor Victim-4 in the S2 Indictment. Similarly, now that the defense no longer has to prepare immediately for what it predicted would be a "collateral trial on whether Virginia Roberts Giuffre's statements about an alleged conspiracy from 1999-2002 were in fact lies" (Dkt. No. 120 at 9-10), defense counsel can prepare for a trial that includes the allegations regarding Minor Victim-4.

Moreover, as noted in its April 9, 2021 letter, the Government fully intends to focus its presentation of evidence at trial primarily on the experiences of the four victims referenced in the S2 Indictment. As the Government has previewed in its conferrals with defense counsel, the Government anticipates introducing evidence regarding a small number of additional victims either as direct evidence of the charged conspiracies or pursuant to Federal Rule of Evidence 404(b). The Government does not expect that this additional evidence will significantly lengthen the trial, particularly because much of this evidence will come from witnesses and exhibits that will already be introduced in connection with the four victims referenced in the S2 Indictment. This streamlined approach will ensure both that the length of trial is not significantly expanded and that the defense will be able to focus its trial preparation on addressing the allegations

regarding the four victims in the S2 Indictment. As a result, the Government expects that trial on the non-perjury counts can be completed within approximately three to four weeks.[1]

Because the S2 Indictment was returned more than three months in advance of the July 12, 2021 trial date, the defense's reliance on *United States v. Guzman*, 754 F.2d 482, 486 (2d Cir. 1985) to support its request for an adjournment is entirely misplaced. In *Guzman*, the district court ordered the defendant to stand trial *one day* after the return of a superseding indictment that expanded the scope of the charged conspiracy by an additional two years. That is plainly not the case here, because the S2 Indictment was returned on March 29, 2021, more than three months before trial. Indeed, it is telling that the defense cites no case in which the Second Circuit has held that a district court lacks the discretion to conduct a trial three months after a superseding indictment has been filed. Any such decision would be surprising, given that the Speedy Trial Act expressly contemplates trial commencing "within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. §3161(c)(1). In other words, the defense has more than sufficient time to prepare for trial between the return of the S2 Indictment and July 12, 2021.

---

[1] The defense misleadingly suggested in its April 15, 2021 letter and again in its most recent letter that the Government has doubled its trial estimate from two to four weeks. (*See* Dkt. No. 202 at 7). As noted in its April 9, 2021 letter, however, the Government initially estimated that its case-in-chief would last approximately two weeks and suggested that the Court reserve three weeks in total for the trial, to include jury selection and the defense case. (*See* Dkt. No. 199 at 4). The Government has now added only one week to that prediction, estimating that its case-in-chief may last up to three weeks and proposing that the Court reserve four weeks in total for trial. Although this prediction includes an estimate of any anticipated cross-examination and defense case, the Government, of course, cannot be certain how long such defense presentations will take during trial. Moreover, given that the parties have consented to the use of jury questionnaires, the Government's hope is that their use will expedite jury selection in order to preserve as many days as possible for the trial beginning on July 12, 2021.

*Second*, the Government will continue to take steps to ensure that the defense is able to prepare for trial as scheduled. As noted in its April 9, 2021 letter, the Government has already included Rule 16 discovery relating to the S2 Indictment in its prior productions to the defense, and the Government has provided the defense with a list of pages within those discovery productions that are particularly pertinent to the new allegations contained in the S2 Indictment.[2] Contrary to the defense's suggestion in its most recent letter, the largest discovery production in this case came from electronic devices seized from Jeffrey Epstein. That production, dated November 18, 2020, included approximately 1.2 million documents (totaling approximately 2.2 million pages), all of which are text searchable and were produced in a format conducive to loading that production into a document review platform.[3] Moreover, the defense's suggestion that it will need to re-review every single page of discovery produced to date is, at best, hyperbolic. The defense has already reviewed the discovery and presumably knows which portions relate in

---

[2] To the extent the defense complains of recent difficulties reviewing certain Highly Confidential images or other items that must be reviewed in the presence of federal agents, it bears noting that the Government repeatedly informed defense counsel beginning in the fall of 2020 that those materials would be made available for review upon request. The defense did not request to review those materials until March 2021, after which the Government coordinated with defense counsel, the Federal Bureau of Investigation, and the U.S. Marshals to arrange for multiple days in April 2021 during which all of the materials were made available for review. The Government is of course willing to make similar arrangements should defense counsel believe additional review of those materials is necessary.

[3] Only yesterday did defense counsel provide the Government with a list of documents that the defendant has been unable to review from the prior discovery productions. As it has done in the past when such issues have been raised, the Government will work with its staff and staff at the Metropolitan Detention Center ("MDC") to address these issues as expeditiously as possible. The Government notes, however, that had defense counsel raised these specific issues earlier, the Government could have addressed them much sooner.

Similarly, the defense only raised concerns about metadata on certain photographs this month, even though those photographs were produced to the defense in November 2020. The Government is working with its staff and the Federal Bureau of Investigation to look into and, where possible, address the defense's concerns as quickly as possible.

particular to the time period covered by the S2 Indictment, especially with the guidance provided by the Government regarding key documents relevant to Minor Victim-4. Given that the largest portion of the discovery in this case is text searchable, the defense will also be able to tailor any re-review of those materials through relevant search terms. The combination of having already possessed the relevant discovery for months and receiving a list of key documents should meaningfully assist the defense in preparing for trial as scheduled.

The Government has also committed to providing further disclosures well in advance of trial and far earlier than such productions would ordinarily be made in this District. The Government has already begun producing materials relating to witnesses whom it does not intend to call at trial to the defense, more than three months in advance of trial. The bulk of those materials were produced on April 13, 2021, and the Government intends to make additional productions on a rolling basis as it continues to review its files for such materials. In this vein, the Government has produced materials, including prior witness statements, for approximately 225 individuals relevant to the Government's investigation into Jeffrey Epstein, the defendant, and others. While the Government made this production with an expansive eye toward its pretrial disclosures, as it has adopted throughout the pendency of this matter, it bears noting that a significant majority of those individuals never mentioned or knew the defendant. Indeed, the number of non-testifying witnesses who mentioned the defendant makes up a small portion of the overall production. That is unsurprising, given that the Government conducted a broad investigation into Jeffrey Epstein's crimes, including crimes that did not involve this defendant. Accordingly, to the extent the defense claims it now needs to investigate or interview all, or even the majority of these witnesses, it is unclear how that testimony would be relevant or admissible

at trial. Simply put, the defense does not need to investigate crimes with which the defendant is not charged.

Moreover, the defense's most recent letter refers to these materials as somehow constituting *Brady* material without any explanation of what information within the most recent production is supposedly exculpatory. But given that, as noted above, a significant majority of the non-testifying witness materials do not reference the defendant, to the extent the defense is suggesting that the existence of victims who were abused by Jeffrey Epstein without assistance from the defendant constitutes *Brady* material, the Government has repeatedly noted that such evidence is *not* exculpatory. (*See, e.g.*, Dkt. No. 65 at 1-2; Dkt. No. 204 at 47-48 (citing, *inter alia*, *United States v. Scarpa*, 897 F.2d 63, 70 (2d Cir. 1990) ("A defendant may not seek to establish h[er] innocence . . . through proof of the absence of criminal acts on specific occasions."))). Regardless, the defense has ample time to review these materials in advance of trial, and the Government intended to produce all of these materials to the defense with or without a superseding indictment.[4] Thus, the defense would have needed to review and investigate these materials even if the Government never obtained the S2 Indictment. Although the defense claims

---

[4] The Government understands from defense counsel that the CD containing a copy of this production, which the Government sent to the MDC via FedEx overnight shipping last week, has not been provided to the defendant. The Government has repeatedly asked MDC legal counsel to locate this CD and provide it to the defendant, and today MDC legal counsel confirmed that the CD would be delivered to the defendant this afternoon.

As the Court is aware, the Government has gone to significant lengths to address the technical issues defense counsel have raised with respect to the discovery, and to ensure that the defendant expeditiously receives copies of each production. Indeed, in November 2020, the undersigned hand delivered a laptop and discovery production to the MDC for the defendant, and the Government understands the defendant received those items that same day. Although it is not feasible for the Government to hand deliver every production to the MDC, the Government has informed defense counsel that the undersigned will hand deliver the Government's first production of *Giglio* and Jencks Act material to the MDC to minimize any delay in the defendant's ability to access that material when it is produced.

that its investigation of the witnesses referenced in these materials will take months, it fails to explain in any detail what specific steps it needs to take, why those steps are material to preparing a defense, or how those steps would be particularly expected to lead to admissible evidence at trial.

Additionally, the Government has agreed to provide the defense with expert notice by April 23, 2021 and the names of the victims referenced in the S2 Indictment by May 17, 2021. The Government has also agreed to provide notice pursuant to Federal Rule of Evidence 404(b), a proposed witness list, Jencks Act material, and *Giglio* material 45 days in advance of trial. As a result, the defense will receive many of these disclosures weeks in advance of when is typical for criminal defendants in this District, thereby further ensuring ample time to prepare for trial. To the extent the defense claims that it will need to retain additional experts to review electronic evidence, it appears that would be true regardless of the S2 Indictment because the electronic discovery materials referenced in the defense's most recent letter were already part of the discovery in this case before the S2 Indictment was returned. In any event, the defense will receive the Government's expert disclosure tomorrow, thereby providing more than two months for the defense to consider whether it wishes to offer any responsive expert(s). Further, the defense's suggestion that it has insufficient time to file additional motions is undercut by the proposed schedule agreed upon by the parties, which allows the defense to file its supplemental pretrial motions more than five weeks after the return of the S2 Indictment and its motions *in limine* more than eight weeks from today and eleven weeks from the return of the S2 Indictment.

Although the defense claims that its trial preparation will be hampered by the COVID-19 pandemic, the availability of vaccines to all adults in the United States should enable the defense team to conduct any necessary investigation far more expeditiously than was possible a few months ago. Further, the defense's concerns that jury selection will be lengthy or cumbersome in

this case would have been present whether or not the Government sought a superseding indictment, yet the defense never previously raised this issue as necessitating an adjournment. But more importantly, there is no reason to think that the S2 Indictment will increase the length of time required for jury selection in this case, and as noted above, the parties have agreed to the use of a jury questionnaire to expedite the selection process. Similarly, the defense's complaint that it is difficult to estimate the length of a defense case before disclosure of Jencks Act material and Government exhibits would be true regardless of new charges.

The defendant has five retained lawyers appearing on her behalf on the docket in this case, all of whom are experienced and skilled trial attorneys. Throughout the pendency of this case, the defense team has demonstrated its ability to litigate multiple complex issues on overlapping schedules while also carefully reviewing discovery and preparing for trial. In addition, the defendant has the benefit of even more attorneys who have appeared on her behalf to brief and argue appeals in this case before the Second Circuit, as well as staff such as paralegals and investigators assisting her attorneys. Given their skills and the resources at their disposal, there is every reason to believe that defense counsel will provide the defendant with exceptional representation at trial as scheduled.

*Third*, the victims in this case would suffer additional harm were trial to be delayed. The longer this case remains pending, the longer the victims suffer the anxiety of anticipating their trial testimony and the uncertainty of awaiting a resolution. As a result, multiple victims oppose any adjournment of the trial date. In particular, Minor Victim-3 expressed feeling significant stress during the pendency of this case and a strong desire to have the case brought to a close through trial as soon as possible. Similarly, Minor Victim-2 also indicated that she has experienced an enormous amount of stress while this case has been pending, wishes to see the case brought to trial

Page 10

as scheduled, and has already planned to be available to testify at trial as scheduled this summer, despite her personal and professional obligations. These views further weigh against an adjournment of the July 12, 2021 trial date.

*Finally*, although the Government maintains that an adjournment is not warranted here, if the Court nevertheless adjourns trial, the Government respectfully requests that the new trial date be scheduled for March 2022. Were the trial to be scheduled for any date between September 2021 and February 2022, one or more of the undersigned prosecutors, including prosecutors who have been on this case for multiple years, would be unable to participate in the trial given pre-existing trial commitments,[5] among other reasons. Given the complexities in this case, including a large volume of discovery, litigation history involving numerous legal and factual issues, years of investigation, and relationships with the victims, continuity of Government counsel at trial is a particularly compelling interest here. Accordingly, the Government respectfully requests that, should an adjournment be granted, any new trial date be set for March 2022.

                              Respectfully submitted,

                              AUDREY STRAUSS
                              United States Attorney

By: _____
       Maurene Comey / Alison Moe
       Lara Pomerantz / Andrew Rohrbach
       Assistant United States Attorneys
       Southern District of New York
       212-637-2324

Cc: All Counsel of Record (By ECF)

---

[5] In particular, AUSA Pomerantz has a trial scheduled to begin on October 4, 2021, which is expected to last approximately eight weeks, and a trial scheduled to begin on January 5, 2022, which is expected to last approximately six weeks. Additionally, AUSA Moe has a trial scheduled to take place in the fourth quarter of 2021, pursuant to this District's COVID-19 scheduling protocols, which is expected to last at least two weeks.