

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 23, 2021

**BY ECF**

The Honorable Alison J. Nathan
United States District Court
Southern District of New York
United States Courthouse
40 Foley Square
New York, New York 10007

     Re:   *United States v. Ghislaine Maxwell*, 20 Cr. 330 (AJN)

Dear Judge Nathan:

     The Government respectfully submits this letter in response to the Court's Order dated April 16, 2021, which directed the Government to confirm that it has complied with its discovery obligations with respect to the non-prosecution agreement ("NPA") between Jeffrey Epstein and the U.S. Attorney's Office for the Southern District of Florida ("SDFL").  (Dkt. No. 207).

**A.  Overview**

     The Government takes its discovery and disclosure obligations seriously, and it has endeavored to take an expansive approach with respect to those obligations throughout the pendency of this case.  In particular, the Government carefully formulated its discovery and disclosure plan in this case to ensure that it not only satisfies its Rule 16, *Brady*, *Giglio*, and Jencks Act obligations with respect to the materials already in the possession of the prosecution team, but that it also makes reasonable efforts to identify other potentially disclosable material within the files of other investigative agencies who are not part of this prosecution team.  This approach was formulated in close consultation with multiple layers of supervisors within the U.S. Attorney's Office for the Southern District of New York.  The Government set forth its intentions with respect

Page 2

to those other agency files in an October 7, 2020 letter, (Dkt. 63), and restates certain information here in order to provide context for what, and how the Government has reviewed files for material related to the NPA.

In sum, the Government has not identified any materials within its possession that would constitute potential *Brady* material with respect to the NPA, that is, "exculpatory evidence" as to which "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Youngblood v. West Virginia*, 547 U.S. 867, 870 (2006). With this definition in mind, the Government would view any evidence that the NPA was intended to (i) bind other U.S. Attorneys in other districts; or (ii) cover Maxwell specifically, as "evidence supporting Maxwell's interpretation of the NPA" that it would be required to disclose. (*See* April 16, 2021 Opinion, Dkt. No. 207, at 8, 3-7 (discussing the bases for Maxwell's motion under the NPA)). As set forth in more detail below, the Government has not identified any such evidence in its possession.

The Government does not, however, view any other materials that are simply *related* to the NPA as materials it is required to disclose in this case, either under Rule 16 or *Brady*. Nevertheless, and as the Court recognized, the defendant already has access to a large swath of information that the Department of Justice's Office of Professional Responsibility ("OPR") compiled as a result of their thorough investigation into the circumstances surrounding the negotiation of the NPA, and the Government has not sought to, nor would it be obligated to, redo OPR's work. (Dkt. No. 207, at 8 (noting the "extensive OPR report" and that "No record evidence suggests that prosecutors promised Epstein anything beyond what was spelled out in writing.")). In the interest of clarity, the Government sets forth below a description of the materials it has compiled and reviewed, and will continue to review, for potential *Brady* material in this case, while

also noting what the Government has not done and does not believe it is obligated to do with respect to materials that are potentially related to the NPA.

### B. The Prosecution Team's Files

As the Court is aware, the charges in this case arose from an investigation opened in 2018 and conducted by the United States Attorney's Office for the Southern District of New York ("SDNY"), the Federal Bureau of Investigation ("FBI") New York Office, and the New York Police Department ("NYPD"; collectively, the "Prosecution Team").  (Dkt. No. 63 at 1).  The Government has obtained the full investigative file from the FBI's Palm Beach Resident Agency (the "FBI Florida Office"), which conducted a separate investigation and prosecution of Jeffrey Epstein between 2005 and 2010 (the "FBI Florida File"), and whose file also contained the investigative file for the Palm Beach Police Department ("PBPD") related to that same investigation (the "Florida Investigation").  The Government has reviewed and produced all Rule 16 materials, including potential *Brady* material, contained within the Prosecution Team's Files, including the FBI Florida File and the PBPD file.  The Government has not identified anything within the files of the Prosecution Team, the FBI Florida File, or the PBPD file that constitutes *Brady* material with respect to the NPA.

### C. The Government's Collection and Review of Other Agencies' Files

On October 7, 2020, the Government submitted a letter to the Court setting forth its plan for collecting and reviewing certain files from other agencies with potential relevance to this case. (Dkt. No. 63).  Although Second Circuit law did not require the Government to do so because those other agencies were not part of the Prosecution Team, the Government endeavored to collect and review certain of those materials as part of its commitment to go above and beyond its disclosure obligations.  (*Id.* at 4).  In particular, the Government noted its intention to collect: (i)

the FBI Florida File and the PBPD file, from which the Government has made Rule 16 productions, and which the Government is continuing to review for *Giglio* and Jencks Act material, (ii) the Palm Beach State Attorney's office file, from which the Government has made Rule 16 productions, and which the Government is continuing to review for *Giglio* and Jencks Act material; (iii) the file from the SDFL, discussed further below; (iv) the inbox for the primary line Assistant U.S. Attorney at SDFL responsible for that office's investigation of Jeffrey Epstein between 2005 and 2010 ("Attorney-1") that was previously gathered by OPR, discussed further below; and (v) certain potentially relevant materials, to the extent they existed, from a United States Attorney's Office in Georgia, which consist of a small amount of witness statements.

With respect to the SDFL file, based on an initial review,[1] the Government has not identified any materials that would be subject to disclosure under Rule 16.  This is unsurprising because discoverable materials such as subpoena returns and search warrant materials appear to have been maintained in the FBI Florida Office's file.  Although the Government did identify materials that are broadly related to the NPA, the Government has not identified any items that would constitute *Brady* material.  The Government is continuing to review the SDFL file for *Giglio* and Jencks Act material.  And of course, to the extent the Government identifies potential *Brady* material or material discoverable under Rule 16 that is not duplicative of prior productions, it will promptly produce it.

---

[1] In the fall of 2020, SDFL agreed to provide SDNY with a copy of all of its files relating to Jeffrey Epstein so that SDNY could review those files for disclosures.  Those files consist of 28 boxes, which contain material relating both to the investigation of Epstein and a civil lawsuit filed by victims challenging the NPA under the Crime Victims' Rights Act.  The Government hired a vendor to scan the files in these boxes, but technical difficulties with that vendor prevented those scans from being loaded into a document review platform until several weeks ago.  Before those scans were loaded into the document review platform, the Government conducted an initial review of the scans in their native form.

With respect to Attorney-1's inbox, the Government previewed in its October 7, 2020 letter that it planned to review the inbox—which is voluminous[2]—using search terms to identify witness statements and *Giglio* material.  Those search terms did not include search terms relevant to the NPA, and the Government has not searched Attorney-1's inbox for communications relating to the NPA.  Instead, because the Government obtained these materials with an eye towards identifying any additional witness statements or *Giglio* material that might not otherwise be contained in the FBI Florida File, the Government ran search terms specific to this case, focusing on the names of victims, Government witnesses, and Ghislaine Maxwell.  The Government's review of the emails responsive to its search terms remains ongoing, and the Government will produce any non-duplicative documents that warrant disclosure.  The Government expects this to be a limited set of documents that will be produced along with other Jencks Act and *Giglio* material.  Of course, should the Government identify any exculpatory material during this review, including with respect to the NPA, it will promptly produce such material.

As the foregoing illustrates, the Government has taken an expansive approach to discovery and is close to completing its review of files from other agencies for Jencks Act and *Giglio* material.  Thus far, the Government has not identified potential *Brady* material with respect to the NPA during its review.  To the extent the Government identifies potential *Brady* material with respect to the NPA, that is, material that supports Maxwell's reading of the NPA as discussed above, or any other exculpatory material, the Government will promptly produce it.  However,

---

[2] More specifically, it appears that OPR obtained an entire snapshot of Attorney-1's inbox, spanning several years, and encompassing all of Attorney-1's emails during that time period.  In other words, the inbox is not specific to the Epstein investigation, and it contains a high volume of communications relating to other cases and other internal SDFL matters.  The snapshot provided by OPR contains emails and their attachments, both inbound and outbound, totaling more than 300,000 documents.

based on the Government's review to date and the OPR report, the Government has no reason to believe that a document supporting the above-described defenses under the NPA in this case exists. Indeed, as the Court noted in its April 16, 2021 Opinion, OPR thoroughly investigated the circumstances of the negotiation of the NPA and issued extensive findings from its investigation. Nothing in the OPR report supports the defendant's assertion that the NPA bars this prosecution. (April 16, 2021 Opinion, Dkt. No. 207 at 5-6 ("Maxwell has already received access to an unusually large amount of information about the NPA's negotiation history in the form of the OPR report and yet identifies no evidence that the Department of Justice made any promises not contained in the NPA."); at 8 ("No record evidence suggests that prosecutors promised anything beyond what was spelled out in writing.")).  The Government does not intend to seek any additional materials from other offices or agencies relating to the NPA, and the Court has already denied the defense's request for discovery relating to the NPA.

Respectfully submitted,

AUDREY STRAUSS
United States Attorney

By: ____/s_____
Alison Moe / Maurene Comey
Lara Pomerantz / Andrew Rohrbach
Assistant United States Attorneys
Southern District of New York

Cc: All Counsel of Record (By ECF)