

**Haddon, Morgan and Foreman,** P.C
**Laura A. Menninger**

150 East 10th Avenue
Denver, Colorado  80203
PH  303.831.7364  FX  303.832.2628
www.hmflaw.com
LMenninger@hmflaw.com

April 22, 2021

The Hon. Alison J. Nathan
United States District Court Judge
Southern District of New York
40 Foley Square
New York, NY 10007

Re:   *United States v. Ghislaine Maxwell,* 20 Cr. 330 (AJN)
      <u>Request for Adjournment of 120 or 180 Days for Trial on the Non-Perjury Counts</u>

Dear Judge Nathan:

Pursuant to the Court's Order of April 20, 2012, counsel for Ghislaine Maxwell move for a continuance of the trial of the non-perjury counts for the reasons set forth below.  The S2 indictment tripled the scope of the time frame at issue and expanded both the scope and type of conduct on trial, necessitating a re-review of millions of pages of discovery (most of which is not OCR or search capable), multiplying the type of experts needed for trial, and altering the COVID-challenging worldwide investigation to a new set of hundreds of witnesses.  Layered onto this complexity, Ms. Maxwell still has not been provided an opportunity to review the entire set of discovery provided last November because the government-provided laptop and hard-drives are missing critical data and software; even her counsel is unable to access significant portions of the "old" discovery.  Nor has Ms. Maxwell been afforded any opportunity to review the "new" 20,000-plus pages of, essentially, *Brady* material produced last week by the government related to 225 non-testifying witnesses. A continuance under these circumstances is a necessity for a fair trial on charges amounting to a potential life sentence.

The Hon. Alison J. Nathan
April 22, 2021
Page 2

Due to trial commitments that follow the July 12th trial date, counsel for Ms. Maxwell propose January 10, 2022 as the earliest firm trial date. However, we would be prepared, and would prefer, to begin trial on November 8, 2021, if the trial of ███████████████, scheduled to begin on October 4, 2021 before the Honorable Jesse M. Furman, were postponed.[1] We respectfully request that Your Honor confer with Judge Furman to determine whether such an accommodation is possible.

I. Particularized facts supporting a continuance.

A. Conflicting Trial Schedules

The government originally estimated that a trial of the S1 indictment would last two weeks. Ms. Maxwell reluctantly agreed to set the trial out for a full year – despite the Court's order of detention -- to ensure that she and her counsel would have sufficient time to analyze the government's case and prepare for a defense. The case was scheduled to begin July 12, 2021 and continue for two weeks.

Following the return of the S2 indictment, the government now estimates that "its case-in-chief will take up to three weeks," and thus "propose[s] reserving four weeks for trial in this matter." Dkt. 199 at 4. The government did not, apparently, take into account (a) the amount of time that will be required to empanel a jury in this high-publicity case, nor (b) account for the defense to have ample time to put on its own case. Simply put, defense counsel believe that a three-week government case means a total trial length of 5-6 weeks, allowing Ms. Maxwell

---

[1] Both Bobbi C. Sternheim, Esq. and AUSA Lara Pomerantz are counsel in ███████, a three-defendant case. The government estimates the trial will last 8 weeks. The defense believes it may take longer because all defendants and many witnesses do not speak English. Like the present case, the ███████ case is subject to COVID protocols which could affect the trial date.

The Hon. Alison J. Nathan
April 22, 2021
Page 3

ample opportunity to put on a defense case and any rebuttal. The July 12 date (even assuming that is actually the date that the COVID-protocol allows for a start) no longer works.

Defense counsel Jeffrey Pagliuca has a jury trial scheduled to begin on August 17, 2021. It was scheduled to accommodate the 2-week July 12 trial of Ms. Maxwell. ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ is an alleged felony theft from the elderly scheduled to begin on August 17, 2021. This is a matter that has been continued a number of times for various reasons related to prior defense counsel of record. Mr. Pagliuca is ▆▆▆▆▆▆▆ only trial counsel. It is likely that should Ms. Maxwell's July 12 trial be delayed for a week or last longer than the original two weeks predicted by the government, counsel would be unavailable for ▆▆▆▆▆▆▆ trial.

Further, Mr. Pagliuca together with defense counsel Laura Menninger, who have served as counsel for Ms. Maxwell since 2015, have two scheduled trials that preclude a request for less than a 120-day adjournment here. These trials also were scheduled specifically to accommodate the July 12 Maxwell trial schedule.

- ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ is a 42 U.S.C. § 1983 action against a Denver Police Department sergeant and the City and County of Denver. The events in question occurred in 2013, counsel has represented ▆▆▆▆▆▆▆▆▆▆▆▆▆▆, the case has been twice appealed to the 10th Circuit by defendants, and the trial has been re-scheduled twice due to COVID protocols in the U.S. District Court for the District of Colorado. See Dkt. Nos. 218, 231. The trial is scheduled to commence on September 13, 2021 and last until September 29, 2021. The Final Pretrial Conference is scheduled for August 25, 2021.

- ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ is a homicide trial that was filed in 2018. The defendant is charged with first degree murder after deliberation which, under Colorado law, carries one penalty, life imprisonment without possibility of parole. This case also has been the subject of a Colorado Supreme Court interlocutory appeal and has twice been re-scheduled due to COVID protocols and the unavailability of a material witness due to COVID. ▆▆▆▆▆▆▆▆ trial was

3

The Hon. Alison J. Nathan
April 22, 2021
Page 4

last continued February 4, 2021 because of COVID trial issues. The Court offered July 12, 2021 as a potential trial date.  Counsel resisted this date because of Ms. Maxwell's scheduled trial. ▓▓▓▓▓▓▓▓ trial is scheduled to begin October 1, 2021 and continue until October 22, 2021.

Based on comments made by the Courts in the ▓▓▓▓▓▓▓▓ cases, and given the protracted nature of the litigations, it is highly unlikely that either case will resolve, nor that they will be continued to a later date.  ▓▓▓▓▓▓▓▓ has been pending trial for over three years.  ▓▓▓▓▓▓▓▓ case has been pending for more than six years.

Defense counsel Bobbi Sternheim and AUSA Lara Pomerantz are scheduled to begin the trial of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ on October 4, 2021.  The trial involves three defendants, two of whom are currently serving federal sentence, six charged and two dozen uncharged murders.  The government has estimated 6-8 weeks of trial, but because the trial is subject to special protocols for jury selection during COVID, and the defendants and most of the witnesses are Spanish speakers and require the assistance of interpreters, counsel believes that the trial may extend beyond eight (8) weeks and, if not moved, could extend until January 2022. All defense counsel but one in ▓▓▓▓▓ are amenable to a postponement; the remaining co-counsel cannot commit due to a late January trial date also before Judge Furman, which may resolve pre-trial.  If Judge Furman is amenable to pushing the October 4 trial to follow this trial, Ms. Maxwell's trial could begin November 8, 2021.

### B. Comparison of the S1 and S2 Indictments

With the S2 indictment, the government significantly expanded the scope of this prosecution. The original indictment, and the first superseding indictment, charged a four-year conspiracy with two alleged co-conspirators. The second superseding indictment adds *seven years* to the scope of the alleged conspiracy.  This is a material change that, standing alone,

4

The Hon. Alison J. Nathan
April 22, 2021
Page 5

would mandate a continuance. Ms. Maxwell must now: search various records (to the extent they are available) and track down numerous witnesses to determine her locations and activities during this expanded period. She must also identify employees who worked for Mr. Epstein during this time period to determine the scope of their knowledge about the allegations. These are time consuming and difficult tasks and Ms. Maxwell respectfully submits that denial of a continuance under these circumstances would constitute an abuse of discretion.

In *United States v. Guzman*, 754 F.2d 482, 486 (2d Cir. 1985), the Second Circuit reversed the defendant's conspiracy conviction, noting that:

> [W]e cannot agree with the government's contentions that the changes in Guzman's superseding indictment were insubstantial and that Guzman was therefore not prejudiced because forced to proceed immediately to trial on the conspiracy count. Even though the same evidence may have been presented to prove the existence of a two-year conspiracy as would have been used on the indictment charging a conspiracy of only two days, it cannot be disputed that in the proper preparation of a defense to the charge of a two-year conspiracy, counsel was required to review a far longer period of activity with his client.
>
> By focusing on the prosecution's case and the fact that the evidence introduced at trial on the superseding indictment was the same as that which the government had expected to use at the first trial, the district court neglected to take into account the impact that the second indictment might have had on defense theories of the case, and the resultant need for a more extended preparation. Guzman's counsel had specifically indicated to Judge Platt that he needed more time to obtain proof that Guzman was not in the country until after the enlarged conspiracy period began. Regardless of the government's representation that it would offer no new evidence at the second trial, Guzman was entitled to the opportunity to pursue this new line of defense, which would not have been available to him under the original indictment. The district court abused its discretion in not granting defendant Guzman a reasonable continuance to prepare his defense to the charge of participation in a two-year conspiracy. Guzman's conviction on the conspiracy count is, accordingly, reversed.

*Id.* In the *Guzman* case, the conspiracy was expanded from two days to two years, and the Second Circuit found that the refusal to grant a continuance was an abuse of discretion. By contrast, the denial of a continuance may be upheld in cases where the changes to the indictment

5

The Hon. Alison J. Nathan
April 22, 2021
Page 6

are minimal. *See United States v. Rojas-Contreras,* 474 U.S. 231, 234 (1985) (no prejudice to superseding indictment which changed the date of offense by ten days); *United States v. Stringer,* 730 F.3d 120, 128 (2d Cir. 2013) (not an abuse of discretion to deny continuance for a superseding indictment that extended the conspiracy range by one month).

In this case, the changes to the indictment were anything but minimal. The conspiracy was expanded from four years (without any specific actual dates within that range) to eleven years (again, without any specificity), an additional *seven years*, and two new counts were added. These were significant and substantial changes that require a continuance. The need to research Ms. Maxwell's whereabouts during a full eleven year period, not to mention comb the millions of pages of discovery including travel records, phone records, bank records, photographs, diaries, message pads, credit card records, and countless other records for the eleven-year versus four year period, will take hundreds, if not thousands, of attorney and staff hours.

**C. The new, and old, discovery require review (and re-review) and analysis.**

The government, on April 13, 2021, produced more than 20,000 pages of "new" discovery. Although the government represented that this production is related to "non-testifying witnesses," it is more accurately described as exculpatory *Brady* material. Notably, the government has possessed most of this information for years (in some cases, more than a decade) and has resisted disclosure until after the filing of the second superseding indictment and on the eve of trial.[2] Many of the reports recently produced stem from the years 2006-2008.

---

[2] Consistent with the updated Fed. R. Crim. P. 5(f) and the Due Process Protections Act, Pub. L. No 116-182, 134 Stat. 894 (Oct. 21, 2020), this Court on November 5, 2020, ordered that "The Government shall disclose [*Brady*] information to the defense *promptly after its existence becomes known to the Government* so that the defense may make effective use of the information in the preparation of its case. *See* Dkt. 68 (emphasis supplied). The Government has not explained why key witnesses statements, made to the government in 2019 and 2020, that Ms.

6

The Hon. Alison J. Nathan
April 22, 2021
Page 7

Counsel for Ms. Maxwell, immediately upon receipt, began reviewing the material which consists of various statements, transcripts, interviews, and background information related to 225 individuals who live in different parts of the United States and the world. Generally, the witnesses fall into several categories: alleged Epstein victims, former Epstein employees, potential targets of the Epstein investigation, or percipient witnesses. There are two good reasons that these witnesses will not be government trial witnesses: **they say things that help Ms. Maxwell or are patently unbelievable**.

This review is just begun, ongoing, and not nearly finished. Although the government "produced" the materials to defense counsel on April 13, 2021, as of today's date, Ms. Maxwell still has not yet received this discovery and has not been able to review it personally and with her counsel. The government has represented that it sent a CD with the materials to the MDC the same it was produced to defense counsel. Defense counsel also delivered a hard drive to the government on April 13, 2021 to load the materials so that Ms. Maxwell could review the materials on the laptop, which does not have a CD drive. Ms. Maxwell has received neither. The government claimed that the hard-drive took several days to load, and that it currently is somewhere in the mailroom at MDC. With less than 90 days before trial, the inability for Ms. Maxwell to review more than 20,000 pages of largely exculpatory material presents a significant impediment to her trial preparation.

Defense counsel anticipate that simply reading the material and discussing it with Ms. Maxwell (who still does not have the information) will take will take weeks. Ms. Maxwell's lack of access to the information (actual and logistical) combined with the age of the allegations and

---

Maxwell lacked knowledge of Epstein's sex trafficking scheme, were only produced to her counsel (and not her) on April 13, 2021. As the *Brady* order specifies, continuance is a remedy.

The Hon. Alison J. Nathan
April 22, 2021
Page 8

the dispersed locations of the witnesses are formidable challenges, even without the difficulties imposed on travel by COVID.

Defense counsel are reviewing the 20,000 pages of information relating to 225 potential witnesses and, simultaneously, attempting to locate the various potential witnesses to conduct defense interviews. Defense interviews are necessary because of the government's continued refusal to affirmatively investigate exculpatory evidence. Of the 302s reviewed by defense counsel a pervasive tactic has emerged: as soon as the witness begins to provide information helpful to the defense the interview is terminated by the government.  Had the government asked logical follow-up questions defense interviews might not be necessary.

The government has had years to investigate these allegations (dating decades ago, from 1994-2004) using the enormous resources at its disposal, including multiple grand juries, scores of agents, and teams of prosecutors.  It is unreasonable to expect that Ms. Maxwell's lawyers can conduct a COVID-burdened review of 20,000 pages of interviews with 225 potential witnesses while preparing for a trial less than 90 days away.

**D.   The new charges require additional defense investigation and preparation.**

Dozens of the statements produced support Ms. Maxwell's defense and will require further defense investigation.  Defense investigation is a key component to providing effective assistance of counsel and the duty of counsel to diligently carry out this task is well established. "Defense counsel [have] a duty to investigate in all cases, and to determine whether there is a sufficient factual basis for criminal charges." ABA CRIMINAL JUSTICE STANDARDS FOR THE DEFENSE FUNCTION STANDARD 4-4.1, Duty to Investigate and Engage Investigators (4th Ed. 2017).  In carrying out this important defense function:

> Defense counsel's investigative efforts should commence promptly and should explore appropriate avenues that reasonably might lead to information relevant to the merits of the matter, consequences of the criminal proceedings, and potential dispositions and penalties. Although investigation will vary depending on the circumstances, it should always be shaped by what is in the client's best interests, after consultation with the client. Defense counsel's investigation of the merits of the criminal charges should include efforts to secure relevant information in the possession of the prosecution, law enforcement authorities, and others, as well as independent investigation. Counsel's investigation should also include evaluation of the prosecution's evidence (including possible re-testing or re-evaluation of physical, forensic, and expert evidence) and consideration of inconsistencies, potential avenues of impeachment of prosecution witnesses, and other possible suspects and alternative theories that the evidence may raise.

*Id.* at (c).

Most significantly, because the government expressly represented in their prior communications to the Court and to counsel that they would not be seeking to introduce evidence from the 2000s (apart from the perjury counts), counsel for Ms. Maxwell has already undertaken a review of the discovery focused on the 1990s and the allegations in the S1 indictment. Now that the government has completely abandoned that position and extended the conspiracy to include a time frame up to 2004, Ms. Maxwell and her counsel must re-review the discovery she has already painstakingly reviewed to comb for evidence related to the new time period.

### E. Continuing problems with the government's evidence production require additional time

In addition to the "new" 20,000 pages of exculpatory evidence not yet provided to Ms. Maxwell, defense counsel and Ms. Maxwell have encountered significant obstacles in the review of the discovery produced prior to April 13th. The production made to Ms. Maxwell at the MDC contains hundreds or thousands of missing Bates-numbers. Moreover, because the time period of the 2000s is now relevant to the trial, Ms. Maxwell and her counsel must now carefully review

9

The Hon. Alison J. Nathan
April 22, 2021
Page 10

voluminous photographs from this time period that are in the discovery. The metadata associated with thousands of these photographs that were produced to counsel (but missing from Ms. Maxwell's production) were stripped and included in Excel spreadsheets. One of the Excel spreadsheets is not functioning, and the government has been asked to provide a replacement. The two functioning Excel spreadsheets contain the file names, not the Bates-stamps, of the associated photographs, so there is no way to match the photographs with its metadata. The Excel spreadsheets contains both photographs that were produced to counsel and also photographs that were not produced, without identifying which is which. Moreover, the government did not indicate on the file names or the spreadsheets which photographs it considered "Highly Confidential" under the case's protective order.

Beginning on April 13, 2021, Ms. Maxwell and one or more of her lawyers undertook an evidence review in the courthouse in conjunction with the prosecution and FBI. Under the terms of the protective order, defense counsel are not allowed to possess "highly confidential material." The 4 days set aside to review this material was insufficient. The government placed approximately 5,000 images it contends are Highly Confidential on two hard drives. When defense counsel first attempted to view the images, the one laptop designated for the task by the government was insufficient either because of the laptop or the software on the laptop. On Thursday, April 15, a functioning computer was provided to defense counsel. A review of the images revealed no good reason why the hard drives, which do not appear to contain prohibited visual depictions restricted by 18 U.S. § 2256, cannot be copied and provided to defense counsel. The sheer number of images make it impossible for any effective review to take place in a government office with various proctors. Should defense counsel need to analyze the metadata,

The Hon. Alison J. Nathan
April 22, 2021
Page 11

to evaluate the photographs for admissibility purposes, or even to decide which photographs she will want to introduce in her own defense, she will otherwise need to make an appointment to view these materials at a government office.

Further, after the government discloses its testifying witness list, counsel will have to comb through the thousands of photos once again to determine which photographs she needs to use for impeachment purposes or for affirmative defense evidence. And, again, the images contain metadata that defense counsel must forensically analyze. Because defense counsel do not even have all of the images, this investigation cannot be accomplished in advance of the July 12, 2021 trial.

**F.  The new charges and discovery require the assistance of defense experts**

In addition to locating, investigating, and perhaps interviewing a significant number of potential witnesses, counsel also anticipate that the defense may require the specialized knowledge of expert witnesses to analyze evidence that is now potentially relevant due to the expanded time frame of the allegations. Ms. Maxwell anticipates that the "highly confidential hard drives" will need to be forensically examined by a computer specialist to determine actual file creation dates, any alterations, and the original location of the data. Although the government has not identified any trial exhibits, it seems probable that the services of various forensic examiners may be necessary to analyze the exhibits.

Ms. Maxwell will also need to receive and review the 20,000 pages of "new" material to provide that information to potential defense experts for consideration. None of this can happen in time to make appropriate disclosures in advance of trial. *See United States v. Santos*, No. S 91 CR. 724 (CSH), 1991 WL 248784 at *2 (S.D.N.Y. Nov. 25, 1991) (granting a continuance for

The Hon. Alison J. Nathan
April 22, 2021
Page 12

the defendant to consult with a contrary expert regarding the newly added count regarding a gun silencer which added a new "draconian punishment").

### G. Motions

Ms. Maxwell anticipates that the Court will need to resolve various discovery disputes relating to the problems identified *supra*. In addition, Ms. Maxwell needs additional time to supplement her previously filed motions and file additional F. R. Crim. P 12 motions relating to the second superseding indictment. After reviewing the "new" discovery, Ms. Maxwell anticipates that she will file motions *in limine* related to the government's alleged FRE 404(b) evidence and the government's proposed exhibits, FRE 702 challenges to purported expert testimony, and motions concerning jury selection and change of venue. In addition, expert disclosure may necessitate a *Daubert* hearing.

Because Ms. Maxwell has not yet had sufficient time to review and investigate the "new" discovery and has had insufficient access to existing discovery she is unable to predict precisely what additional evidentiary motions will be required. The late-filed superseding indictment along with the late disclosure of *Brady* material and failure to provide the discovery to Ms. Maxwell have delayed defense trial preparation and will continue to interfere with various tasks that would normally be in process at this stage of the proceedings. Simply stated, Ms. Maxwell's counsel cannot perform all of the necessary tasks in the time remaining before July 12, 2021.

## II. Requested Relief

*In United States v. Rojas-Contreras*, 474 U.S. 231 (1985), Justice Blackmun, in a concurring opinion joined by Justice Brennan, recognized the need for a continuance when a superseding indictment adds significant changes.

The Hon. Alison J. Nathan
April 22, 2021
Page 13

> Like the Court, I fully recognize that a superseding indictment may add to a defendant's burden in preparing for trial. In the event of additional charges, or of material changes, a defendant well may need additional preparation time. Under the Act, a defendant then may seek an "ends of justice" continuance, to be granted in the discretion of the trial court. *See* 18 U.S.C. 3161(h)(8)(A). This continuance is available whether the need for additional time is occasioned by a superseding indictment or otherwise.
>
> Indeed, the 1979 amendments to the Speedy Trial Act not only mandated the 30-day defense-preparation period, but also provided that one basis for granting a continuance is if "the failure to grant such a continuance . . . would deny counsel for the defendant . . . the reasonable time necessary for effective preparation." 18 U.S.C. 3161(h)(8)(B)(iv). The constitutional right to assistance of counsel is rendered meaningless if a defendant is forced to trial in the absence of adequate time to prepare. To avoid prejudicing a defendant, a continuance should be granted where there is a meaningful possibility that a superseding indictment will require an alteration or adjustment in the planned defense. Trial courts should bear in mind that counsel may require time fully to analyze the impact of the superseding indictment, and to explore any options it presents or precludes.

*Id. at* 240-41.

Based on the foregoing and consistent with the holding in *United States v. Guzman,* Ms. Maxwell hereby specifically requests a 120-day continuance of her trial to November 8, 2021, contingent upon the re-scheduling of the trial before Judge Furman. In the alternative, she requests a 180-day continuance to January 10, 2022.

                                        Respectfully submitted,

                                        Laura A. Menninger

CC: Counsel of Record