

Sigrid S. McCawley<br>
Telephone: (954) 377-4223<br>
Email: smccawley@bsfllp.com

April 5, 2021

**<u>VIA EMAIL (FILED UNDER TEMPORARY SEAL)</u>**

The Honorable Alison J. Nathan
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

   Re: *United States v. Ghislaine Maxwell*, 20 Cr. 330 (AJN)
      Rule 17 Subpoena to Boies Schiller Flexner LLP

Dear Judge Nathan:

  I write on behalf of Boies Schiller Flexner LLP ("BSF") in further support of its objections to Defendant Ghislaine Maxwell's motion for an order authorizing a subpoena to BSF pursuant to Rule 17(c) of the Federal Rules of Criminal Procedure (the "Subpoena").[1] As the Defendant's response makes clear, she seeks to serve a Rule 17 subpoena on BSF because she is dissatisfied with the Government's discovery efforts thus far. Thus, she is using Rule 17 to attempt to obtain discovery that she has been unable to obtain from the Government under Rule 16 and *Brady*, including discovery that is subject to a pending motion before the Court. This is an improper use of a Rule 17 subpoena. If the Defendant believes that the Government has not fulfilled its discovery obligations under Rule 16, *Brady*, or *Giglio*, she must address that issue with the Government and the Court rather than serving overbroad and burdensome subpoenas on third parties. And if the Defendant is not entitled to the discovery she seeks from the Government, then

---

[1]  The Defendant refers to BSF's objections as a "motion to quash," but the Court has not yet granted Defendant's motion to authorize the Subpoena to BSF. BSF thus requests that the Defendant's motion to authorize the Subpoena be denied.

The Honorable Alison J. Nathan
April 5, 2021
Page **2** of **17**

she may not use Rule 17 to circumvent Rule 16. For this reason and the additional reasons explained below, the Court should deny the Defendant's motion to authorize the Subpoena to BSF.

    **I.**    **Requests 1–5: Communications About the Defendant and** ▮

        A.    <u>The Requests Are Not Specific.</u>

The Defendant has failed to meet her burden of demonstrating that Requests 1 through 5—for a broad range of communications between BSF and others about the Defendant and ▮ ▮—clear *Nixon*'s hurdles of relevancy, admissibility, and specificity. *See United States v. Nixon,* 418 U.S. 683, 700 (1974). As to specificity, Maxwell first argues that Requests 1 through 5 are sufficiently specific because they "are specific as to date and limited by the identified individuals and subject matter." Resp. Ltr. at 2. But the specificity hurdle requires more. "In order to avoid speculation that the moving party is using Rule 17(c) to circumvent normal discovery requirements, the party's Rule 17(c) subpoena must be able to reasonably specify the information contained or believed to be contained in the documents sought rather than merely hope that something useful will turn up." *United States v. Mendinueta-Ibarro*, 956 F. Supp. 2d 511, 513 (S.D.N.Y. 2013) (internal quotation marks omitted). Accordingly, "[r]equests for any and all communications, even if tied to specific documents and topics, are potentially 'fishing expeditions' for unspecified materials and insufficiently specific under *United States v. Nixon*." *United States v. Bergstein*, No. 16-CR-746 (PKC), 2018 WL 9539775, at *1 (S.D.N.Y. Feb. 1, 2018).

The Defendant's broad requests for all of BSF's communications with certain individuals and entities about general topics over a years-long time period do not meet the specificity requirement, just like numerous of the defendant's requests in *Avenatti* failed the specificity requirement. For example, Judge Gardephe held that Mr. Avenatti's "request for all audio recordings (and transcripts thereof) (1) involving [eight designated individuals]; (2) that contain a

The Honorable Alison J. Nathan
April 5, 2021
Page **3** of **17**

discussion of corruption in amateur basketball; and (3) that took place within a thirty-nine month period" failed the specificity requirement, even though the request was limited by time, subject matter, and identified individuals. *United States v. Avenatti*, No. (S1) 19 CR. 373 (PGG), 2020 WL 86768, at *6 (S.D.N.Y. Jan. 6, 2020) (holding that request "reads like a request under the Federal Rules of Civil Procedure" and that "[b]lanket requests of this sort violate the specificity requirement set forth in *Nixon*"). Judge Gardephe similarly held that Mr. Avenatti's request for "email and text message communications between Franklin and Auerbach that (1) mention Avenatti, and (2) were transmitted after Avenatti's March 25, 2019 arrest" failed *Nixon*'s specificity requirement, even though that request was also limited by time, subject matter, and identified individuals. *United States v. Avenatti*, No. (S1) 19 CR. 373 (PGG), 2020 WL 508682, at *5 (S.D.N.Y. Jan. 31, 2020). Thus, there mere fact that the Defendant's requests here are tethered to a broad time period of five years and broad subject matters (the Defendant and ▇▇▇ ▇▇▇▇▇▇▇, for example) cannot save her Requests.[2]

The Defendant attempts to distinguish these Requests from those that courts have characterized as improper "any and all" requests by pointing to the fact that the Requests do not literally contain the words "any" or "all." Resp. Ltr. at 3. But this does not change the fact that

---

[2] *See also, e.g.*, *Bergstein*, 2018 WL 9539775, at *1 (finding that requests seeking "all communications between Parmar and Bergstein, Albert Hallac, Jeffrey Hallac, or Keith Wellner related to the negotiations of, documentation of, and performance or non-performance under three agreements governing the acquisition of the medical billing business described in the indictment" and "all communications between Parmar and any of the same four individuals related to payments, reimbursement, advances, or loans for Parmar's direct or indirect benefit in connection with the same agreements" failed *Nixon*'s specificity requirement); *United States v. Seabrook*, No. 16-CR-467, 2017 WL 4838311, at *3 (S.D.N.Y. Oct. 23, 2017) ("Cooley Request 2 is quashed on specificity and admissibility grounds. Cooley Request 2 seeks documents concerning or comprising communications between Cooley and the Government relating to any of the allegations in the Indictment.").

The Honorable Alison J. Nathan
April 5, 2021
Page **4** of **17**

the Requests themselves ask for "communications" between BSF and a designated party about a general topic over a five-year period, and then define communications as "all forms of correspondence." Request 2, for example, is for "Communications between You and the United States Attorney between 2015 and the date of this subpoena about ▮▮▮▮▮▮▮▮▮," defining "communications" as "all forms of correspondence"; defining "BSF" as "any owner, shareholder, partner or employee of" BSF; and defining "the United States Attorney" as "any employee of the office of the United States Attorney for the Southern District of New York." This Request cannot be read as anything but "*all* communications in any form between anyone who has ever worked at BSF in any capacity and anyone who has ever worked at the S.D.N.Y. United States Attorney's office in any capacity between 2015 and the date of this subpoena about ▮▮▮▮▮▮▮▮▮." Thus, due to their expansive definitions, the Defendant's requests are *even broader* than those that Judge Gardephe rejected in *Avenatti*, which were limited to identified individuals.[3] Requests 1 through 5 of the subpoena thus fail *Nixon*'s specificity requirement.

---

[3] The Defendant contends that Requests 1 through 5 are similar to those approved by the court in *United States v. Wey*, 252 F. Supp. 3d 237 (S.D.N.Y. 2017). Resp. Ltr. at 6. But in *Wey*, the court originally denied the defendant's motion for the issuance of a Rule 17 subpoena because it requested: "All emails and records related to the listing applications and approvals for [SmartHeat], [Deer], and [CleanTech], including in particular, any communications regarding, or interpretation or application of, the 300 round-lot shareholder requirement." *Id.* at 243. The court found that the defendant "had not identified the documents sought with the requisite specificity and had failed to make the necessary showing that all requested documents would be admissible at trial," but granted the defendant leave to renew is motion and show that Rule 17's requirements were met. *Id.* The defendant then submitted a new set of requests that, unlike the Requests at issue here, limited the request to communications between a certain, specified set of individuals and narrow time periods of approximately a year or less. *Id.* The defendant's renewed motion also, unlike the Defendant's response here, "set forth anticipated bases for admission of the documents at trial through several specific exceptions to the hearsay rule." *Id.* Thus, the court granted the renewed motion. *Id.*

The Honorable Alison J. Nathan
April 5, 2021
Page **5** of **17**

The Defendant argues that Requests 1 through 5 are not a fishing expedition merely because the government has admitted "that there were, in fact meetings and communications between these individuals and the USAO-SDNY about Ms. Maxwell and ▮▮▮▮▮▮▮▮" and because Virginia Giuffre logged a number of communications on a privilege log in 2016. Resp. Ltr. at 2, 3. This does not get the Requests over *Nixon*'s hurdles—the Defendant is still attempting to fish through BSF's communications in the hopes that something relevant and admissible turns up, without setting forth the relevance and admissibility as to each document she seeks. Further the privilege log does not, as the Defendant insinuates, reference communications between BSF and the U.S. Attorney as defined in the Subpoena, as the log references only an unspecified "law enforcement agency." *Id.* at 4.

      B.    <u>The Defendant Has Not Demonstrated Relevance and Admissibility.</u>

The Court's analysis does not stop at specificity—Requests 1 through 5 independently fail because the Defendant has not demonstrated that all of the communications she seeks are relevant and admissible. The Defendant's sole basis for contending that the wide array of communications she seeks are all relevant to her defense is that the communications are relevant to "two motions to suppress based on misrepresentations made by the government to Chief Judge McMahon and a motion to dismiss the indictment for prejudicial delay" because they "would establish the substance and frequency of the communications between BSF and the government prior to the government's end run around *Martindell*." Resp. Ltr. at 6–7. But the Defendant has not met her burden of demonstrating relevance and admissibility.

*First*, because Rule 17's "purpose is trial-focused," a Rule 17(c) subpoena "may be used only to obtain materials admissible as evidence *at trial*." *United States v. Louis*, No. 04 Cr. 203 (LTS), 2005 WL 180885, at *3 (S.D.N.Y. Jan. 27, 2005) (emphasis added); *see also United States*

The Honorable Alison J. Nathan
April 5, 2021
Page **6** of **17**

*v. Rajaratnam*, 753 F. Supp. 2d 317, 320 (S.D.N.Y. 2011) (Rule 17(c) "was not intended to provide a means of discovery for criminal cases"; rather, "its chief innovation was *to expedite the trial* by providing a time and place before trial for the inspection of subpoenaed materials" (emphasis added)). The Defendant has failed to explain how the communications sought in Requests 1 through 5 will be relevant and admissible at trial, and only points to three pending pre-trial motions.

*Second*, although BSF cannot fully respond to the Defendant's relevance arguments as to the Defendant's two motions to suppress because it has not been provided unredacted versions of those motions and because it has not been provided a copy of the Defendant's *ex parte* motion,[4] one thing is clear—it is not conceivable that every communication the Defendant requests in Requests 1 through 5 would be relevant and admissible at an evidentiary hearing on her motions. A defendant must demonstrate that all of the evidence it seeks pursuant to a Rule 17 subpoena would be relevant and admissible, not just that the defendant is likely to find something relevant and admissible in the nonparty's production. *See, e.g.*, *United States v. Pena*, No. 15 Cr. 551 (AJN), 2016 WL 8735699, at *2 (S.D.N.Y. Feb. 12, 2016) ("Pena has failed to make the requisite showing regarding the admissibility of 'any and all' other records regarding the cooperators that might exist at the MDC, MCC, or DOC.").

For example, it is entirely unclear how communications regarding ▓▓▓▓▓▓▓▓ would be relevant to any of the Defendant's pretrial motions; her two motions to suppress relate to evidence obtained by the Government by means of a grand jury subpoena to what appears to be

---

[4] If the Court is inclined to grant the Defendants' motion as to Requests 1 through 5, BSF requests that it first be provided with an opportunity to fully respond to the Defendant's relevance arguments after being provided with unredacted versions of the two pretrial motions that the Defendant cites in her response and a copy of her *ex parte* motion, in which she presumably attempts to explain the relevance of her Requests in a more fulsome way than her barebones response letter.

The Honorable Alison J. Nathan
April 5, 2021
Page **7** of **17**

BSF, and her motion to dismiss for pre-indictment delay is based on the time that has passed between the time at which the Government first learned of the allegations against the Defendant and the Defendant's indictment. ECF No. 134, 138, 140. The public versions of those filings do not mention ▉ at all. Even the relevance of *all* communications between BSF and the Government relating to the Defendant herself is dubious as it relates to these three motions. At base, it is not BSF's burden to "to cull the good from the bad" among its communications about the Defendant and to determine what would relevant at trial or at an evidentiary hearing. *See Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951).

*Third*, the Defendant has not even attempted to demonstrate that all of the evidence she seeks would be admissible. Although the lack of specificity in Requests 1 through 5 makes it impossible to meaningfully debate the admissibility of each piece of evidence she seeks, certainly many of the communications requested will constitute inadmissible hearsay. This is precisely the purpose of *Nixon*'s specificity requirement—to ensure that Rule 17 subpoenas are narrowly tailored to obtain *only* relevant and admissible evidence, not to obtain discovery in the hopes that something relevant and admissible might turn up, and to allow the recipient to lodge relevance and admissibility objections as to the precise documents being requested. *See Avenatti*, 2020 WL 508682, at *4 ("While the specificity requirement is intended to provide the subpoenaed party or other party having standing with enough knowledge about what documents are being requested so as to lodge any objections on relevancy or admissibility, this requirement also ensures that a Rule 17(c) subpoena will not be used as a fishing expedition to see what may turn up." (internal quotation marks omitted)).

The Defendant's criticism of BSF for not meeting its "burden of justifying the application of the work product doctrine" is also due only to the Defendant's overbroad and nonspecific

Requests themselves.  Resp. Ltr. at 7.  In Requests 3 through 5, the Defendant seeks *all* communications between BSF and its co-counsel in a civil litigation against Maxwell (*Giuffre v. Maxwell*, 15-cv-07433-LAP) "between 2015 and the date of this subpoena about any meeting with the United States Attorney concerning Ghislaine Maxwell or ▮▮▮▮▮▮▮▮▮▮."  Certainly, some of these communications, if they exist, may fall under the work product umbrella if they were internal discussions with co-counsel.  Moreover, BSF and its co-counsel have a common interest protection in their communications.  The Defendant's overbroad Requests make it impossible for BSF to determine how many responsive communications would be protected and why.  Again, it is the Defendant's burden to demonstrate that all of the communications she seeks would be relevant and admissible, and it is not BSF's burden to review broad swaths of material to determine what the Defendant is entitled to under Rule 17.

      C.      <u>Communications Between BSF and the Government Are Procurable from the Government.</u>

Even if Requests 1 through 5 could overcome *Nixon*'s three hurdles, however, Requests 1 and 2 would still fail to the extent that they ask for communications with the Government, which the Defendant can procure from the Government.  The Defendant *admits* that the Government has the communications she is seeking, but complains that the Government "has failed to produce, or even look for these communications and Ms. Maxwell has no other means to obtain them."  Resp. Ltr. at 8.  In fact, this dispute is currently pending before the Court—the Defendant filed a Motion for a Bill of Particulars and Pretrial Disclosures in which she seeks an order compelling the Government to disclose the very communications with BSF she seeks in the Subpoena and to immediately disclose all *Brady* and *Giglio* materials.  ECF Nos. 148, 148-5 (motion requesting documents relating to the Defendant's two motions to suppress evidence obtained from what

appears to be BSF, including all communications between the Government and BSF attorneys David Boies, Sigrid McCawley, and Peter Skinner, and requesting immediate disclosure of *Brady* and *Giglio* materials).

The Defendant cannot use Rule 17 to circumvent resolution of an outstanding discovery dispute with the Government, especially when that dispute is currently pending before the Court. If the Defendant is entitled to the communications with the Government she requests in Requests 1 and 2 pursuant to Rule 16, then presumably the Court will order the Government to produce them and she may not use Rule 17 to obtain them from a nonparty instead. *See, e.g.*, *Nixon*, 418 U.S. at 699 (documents requested pursuant to Rule 17(c) must not be "otherwise procurable" from another source); *United States v. Cole*, No. 19 CR. 869 (ER), 2021 WL 912425, at *6 (S.D.N.Y. Mar. 10, 2021) (explaining that "Rule 17(c) is not the proper method for obtaining" materials that the Government has an obligation to disclose under the Jencks Act, *Brady*, and *Giglio*). If the Defendant is *not* entitled to obtain the communications she seeks from the Government under Rule 16, then they are not discoverable under Rule 17 from a nonparty. *See United States v. Boyle*, No. 08 Cr. 523 (CM), 2009 WL 484436, at *2 (S.D.N.Y. Feb. 24, 2009) ("Defendants may not seek material under Rule 17 that they are prohibited from obtaining under Rule 16."); *United States v. Barnes*, No. S9 04 CR 186 SCR, 2008 WL 9359654, at *2 (S.D.N.Y. Apr. 2, 2008) ("[I]f the item is not discoverable under Rule 16, a party cannot make it discoverable simply by subpoenaing it under Rule 17."); *United States v. Cherry*, 876 F. Supp. 547, 552 (S.D.N.Y. 1995) ("Courts must be careful that Rule 17(c) is not turned into a broad discovery device, thereby undercutting the strict limitation of discovery in criminal cases found in Fed. R. Crim. P. 16."). Either way, if the Government has the communications that the Defendant seeks and if she is legally entitled to them, she must get them from the Government.

The Honorable Alison J. Nathan
April 5, 2021
Page **10** of **17**

## II.     Requests 6 and 7: Engagement Letters

The Defendant provides no explanation at all as to how engagement agreements between BSF and Annie and Maria Farmer would be relevant and admissible at trial, and thus cannot clear the *Nixon* hurdles.  She states in a conclusory manner that "[t]he scope and dates of these engagements are relevant to Ms. Maxwell's pending motions" and that "these agreements are exculpatory evidence." Resp. Ltr. at 8.  But it is entirely unclear how the fact that the Farmers are represented by BSF and the dates of the engagement letter could possibly be exculpatory, and the Defendant does not attempt to explain that proposition.

Nor are the engagement letters relevant to any of the Defendant's pretrial motions.  The Defendant's motions to suppress appear to be based on a theory that the Government improperly obtained evidence from BSF while it was representing Virginia Giuffre (not the Farmers) in *Giuffre v. Maxwell*.  ECF Nos. 134, 140.  The only relevance of Annie Farmer to the Defendant's motion for dismissal based on pre-indictment delay appears to be based on Maxwell's statement that Ms. Farmer was interviewed by the FBI in 2006.  ECF No. 138 at 2.  But the Defendant has not explained how an engagement letter between Annie Farmer and BSF is of any consequence to her theory.  The Defendant also points out in her motion for dismissal based on pre-indictment delay that Annie Farmer may have cooperated with the Government in the criminal investigation of her abuser—an unremarkable proposition.  *Id.* at 18.  Not only is it unclear how this theory supports the Defendant's arguments about pre-indictment delay, but the Defendant again has not explained how an engagement letter with BSF is relevant to this theory.

As to Maria Farmer, she is only relevant to the motion for dismissal based on pre-indictment delay insofar as the Defendant argues that the Government knew about the allegations against the Defendant when Maria Farmer reported them to the NYPD years ago.  ECF

The Honorable Alison J. Nathan
April 5, 2021
Page **11** of **17**

No. 138 at 2 n.2. Again, however, the Defendant does not explain why Maria Farmer's engagement letter with BSF is relevant to support this proposition or is otherwise relevant to the motion. The Defendant's conclusory arguments that the engagement letters between BSF and the Farmers are relevant to something other impeachment are unpersuasive and demonstrate that she cannot clear *Nixon*'s relevance hurdle as to Requests 6 and 7.

### III. Request 8: Grand Jury Subpoena to BSF

Request 8 fails for the same reason that Requests 1 and 2 fail. If the Defendant is entitled to this information, then she must obtain it from the Government. And if she is not entitled to this information, she cannot use Rule 17 to circumvent Rule 16's limitations. *See supra* Part I.C.

### IV. Request 9: Annie Farmer's Journal[5]

As to the Defendant's request for an original copy of Annie Farmer's entire journal from when she was a teenager, the Defendant contends that the journal is exculpatory because the relevant passages do not mention the Defendant—but this is information that she already has, and she does not explain why she needs the entire journal prior to trial if she already has the allegedly exculpatory information in the journal. The Defendant already has copies of all of the relevant pages of the journal. She does not explain why she needs to inspect the entire journal "to establish whether the journal is authentic and complete and whether or not spoliation has occurred." Resp. Ltr. at 9. This purported need to inspect the journal for authenticity would carry more weight if the journal was inculpatory, and thus she sought to examine the authenticity of the pages containing allegations against her, but she contends it is instead exculpatory. If the Defendant seriously contends that the journal is relevant because it is exculpatory, and that it is exculpatory because

---

[5] BSF also points the Court to the objections that Ms. Farmer has herself posed in response to the Defendant's proposed Rule 17 subpoena to her, in which the Defendant requests the same journal from Ms. Farmer.

The Honorable Alison J. Nathan
April 5, 2021
Page **12** of **17**

the relevant pages do not mention her, she needs no more than the relevant pages that she already has.

It is thus clear that the Defendant's purported need for the entire, original journal is not based on the allegedly exculpatory information that it contains (because she already has that information). Rather, the Defendant seeks the entire journal so that she can fish for other passages that she can use to attempt to impeach Ms. Farmer's credibility. Such a fishing expedition for potential impeachment material goes beyond the permissible bounds of a Rule 17 subpoena. *See Nixon*, 418 U.S. at 701 ("Generally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial."). And if the Defendant does not seek the remainder of the journal passages for impeachment, she does not explain how they would otherwise be relevant and admissible at trial. The Court should not require production of the entire journal—which contains personal, private information about Ms. Farmer when she was a minor—if Defendant is unable to demonstrate that the overbroad Request meets the relevance and admissibility requirements and if it will yield no material evidence.[6]

---

[6] Even in civil cases, where much broader discovery is permitted under the Federal Rules of Civil Procedure than under Rule 17(c), courts have refused to order disclosure of an entire diary or journal when the journal contains personal or sensitive entries and the party seeking disclosure cannot demonstrate that anything relevant has been withheld. *See, e.g.*, *Dubay v. King*, No. 3:17-CV-348-J-20MCR, 2018 WL 3619636, at *1 (M.D. Fla. July 13, 2018) ("Plaintiff failed to show how the production of Mr. King's private journal entries–containing information about Mr. King's private life and daily musings–relate to the subject matter of the claims in this lawsuit."); *Combe v. Cinemark USA, Inc.*, No. 1:08-CV-00142-TS-DN, 2009 WL 2578853, at *2 (D. Utah Aug. 19, 2009) ("Without any limit on relevancy, the entire journal is not discoverable. A plaintiff does not expose her entire private life to adverse scrutiny by filing suit."); *Quiroz v. Hartgrove Hosp.*, No. 97 C 6515, 1998 WL 341812, at *1-2 (N.D. Ill. June 12, 1998) (plaintiff in a sexual harassment suit was only required to turn over portions of her diary that pertained to her claim); *Ayala v. Tapia*, CIV. A. 90–1345(RCL), 1991 WL 241873, at *2 (D.D.C. Nov. 1, 1991) (denying motion to compel all personal diary entries because "most of the material demanded will be irrelevant to this case, but of intimate importance to the plaintiff"); *Carolan v. New York Telephone Co.*, No. 83

V. **Requests 10 and 11: Boots and Photographs**

As to Requests 10 and 11, for boots that Epstein and the Defendant purchased for Annie Farmer and various photographs, the Defendant complains that "the government has scrupulously avoided actually obtaining" this evidence. Resp. Ltr. at 11. But, as explained above, Rule 17 is not a tool that can be used to circumvent discovery disputes with the Government. BSF is a private entity with no *Brady* or other constitutional obligations to the Defendant, and a subpoena to BSF cannot be used to replace discovery appropriately aimed at the Government under Rule 16 or to avoid resolving discovery disputes with the Government.

In any event, the photographs are not "admittedly relevant" and the Defendant has not explained how they would be relevant and admissible as trial. Resp. Ltr. at 11. The photographs do not portray any event described in the indictment. Instead, the photographs depicted in Exhibit C to the Subpoena that the Defendant seeks are as follows:

| | |
|---|---|
| AFARMER00010470; AFARMER00011691; AFARMER00011692 | Photographs of Annie Farmer prior to a high school dance, produced in *Farmer v. Indyke et al.*, 19-cv-10475 (LGS-DCF). |
| AFARMER00011339 | Photograph of Annie Farmer, Maria Farmer, and their younger sister, produced in *Farmer v. Indyke et al.*, 19-cv-10475 (LGS-DCF). |
| AFARMER00011688; AFARMER00011690 | Photographs of Annie Farmer in Thailand, produced in *Farmer v. Indyke et al.*, 19-cv-10475 (LGS-DCF). |
| AFARMER00011689; AFARMER00011693; AFARMER00011694 | Photographs of Annie Farmer and a friend in high school, produced in *Farmer v. Indyke et al.*, 19-cv-10475 (LGS-DCF). |
| AFARMER00012106; AFARMER00012107 | Photographs of Maria Farmer on Leslie Wexner's property in Ohio, produced in *Farmer v. Indyke et al.*, 19-cv-10475 (LGS-DCF). |
| GIUFFRE007164– GIUFFRE007182 | Photographs that Virginia Giuffre provided to the FBI of Jeffery Epstein's various properties, of herself at those properties, and of herself, the Defendant, and Prince Andrew in London, produced in *Giuffre v. Maxwell*, 15-cv-07433-LAP and *Farmer v. Indyke et al.*, 19-cv-10475 (LGS-DCF). |

Civ. 8308, 1984 WL 368, at *5 (S.D.N.Y. May 17, 1984) (requiring the plaintiff to turn over the portions of her diary that pertained to her claims, but to withhold portions she deemed irrelevant).

The Defendant has not explained how *any* of the photographs are relevant to her defense and would "help in establishing her innocence" or why "the dates of creation" or "other specifics" about these photographs are relevant to her defense.  Resp. Ltr. at 11.

### VI.     Request 12: EVCP Material

   A. <u>The Request is Not Specific.</u>

The Defendant does not even address the lack of specificity of her Request for "any submission to the Epstein Victim's Compensation Program made by You, including any claims on behalf of persons who have accused Jeffrey Epstein or Ghislaine Maxwell of any misconduct, any releases signed by You or Your Clients, and any compensation received by You or Your Clients."  This Request on its face includes *all* claims that BSF has submitted on behalf of *all of its clients*, including all of the supporting documents (including sensitive medical and therapy records) that each client submitted with those claims.  As BSF explained in its objections, the Defendant cannot merely request every piece of highly confidential information that BSF's clients submitted to the Program in the hopes that something relevant and admissible turns up.  The Defendant offered to narrow this Request to EVCP Material submitted on behalf of victims who ultimately testify in this action.  This "narrowing" does not change the improper nature of Request 12—even the narrower request would call for broad swaths of material that are both irrelevant to the charges against the Defendant and that are highly sensitive in nature.

   B.     <u>The Defendant Has Not Demonstrated Relevance, Other Than Potential Impeachment.</u>

Request 12 independently fails because the Defendant seeks the EVCP Material only for impeach purposes.  The Defendant argues that the EVCP Material is not "mere impeachment material" because it is also "*Brady* material."  Resp. Ltr. at 13.  This argument does not make this Request proper under Rule 17.  First, the Defendant does not explain how the EVCP Material is

The Honorable Alison J. Nathan
April 5, 2021
Page **15** of **17**

exculpatory. Although BSF does not have the benefit of the *ex parte* submission that the Defendant cites, she appears to contend that the EVCP Material will contradict the Government's theory as to the Defendant's motive for committing the crimes of which she has been indicted: procuring underage girls for Epstein. Resp. Ltr. at 13. But the Defendant does not explain how the EVCP Material—consisting of claims submitted by victims to an independent claims administration program, materials supporting those claims (such as medical and therapy records), and compensation determinations for those claims—could possibly contradict the Government's theory that she committed crimes with the motive of procuring young girls for Epstein.[7]

Second, deeming the EVCP Material "*Brady* materials" does not render the Request appropriate under Rule 17, even if such a characterization were correct. Although the Government has a constitutional duty to produce *Brady* materials, BSF has no such obligation. Thus, even if the Requests in the Subpoena, including the Request for EVCP Material, *might* encompass some *Brady* materials, the Subpoena must still satisfy the *Nixon* requirements. *See, e.g.*, *Mendinueta-Ibarro*, 956 F. Supp. 2d at 513 (rejecting the defendant's argument that under Rule 17 "the stringent requirements of *Nixon* do not apply when a defendant needs the requested information for a fair trial, especially if that material is required to be turned over under *Brady* or *Giglio*"); *United States v. Jackson*, No. 02 CR. 756 (LMM), 2006 WL 1993251, at *2 (S.D.N.Y. July 14, 2006) (explaining "that the materials may contain *Giglio* material does not mean that they can be subpoenaed under Rule 17" and quashing subpoena for failing *Nixon*'s admissibility requirement); *United States v. Scaduto*, No. 94 CR. 311 (WK), 1995 WL 130511, at *2 (S.D.N.Y. Mar. 27, 1995)

---

[7]     Again, if the Court is inclined to grant the Defendant's motion as to Request 12, BSF requests access to the Defendant's *ex parte* submission so it can more fully and fairly respond to the Defendant's theory of relevance.

("A general assertion that certain material 'might contain exculpatory information' is insufficient to prevail against a motion to quash under Rule 17(c)."). BSF has no duty to cull through broad sets of documents to determine whether any *Brady* materials might exist and whether those materials would be relevant and admissible when the Defendant has failed to meet her burden of satisfying *Nixon*'s requirements.

Similarly, the Defendant, likely realizing that she has no viable argument as to the relevance of all of the EVC Material, argues that even if the EVCP Material was relevant only to impeachment, impeachment evidence is discoverable in advance of trial. Resp. Ltr. at 13. This is a mischaracterization of the law. Each of the cases the Defendant cites relates to the *Government's* obligations under *Brady* and *Giglio*. *See Poventud v. City of New York*, No. 07 CIV. 3998 DAB, 2015 WL 1062186, at *8 (S.D.N.Y. Mar. 9, 2015) (civil § 1983 case in which criminal defendant contended that government violated *Brady* obligations); *United States v. Petrillo*, 821 F.2d 85, 90 (2d Cir. 1987) (affirming denial of a motion for a new trial based on government's failure to produce *Brady* and Jencks Act materials); *Grant v. Alldredge*, 498 F.2d 376, 383 (2d Cir. 1974) (vacating judgment of conviction based on *Brady* violation by government); *U.S. ex rel. Meers v. Wilkins*, 326 F.2d 135, 136 (2d Cir. 1964) (affirming grant of habeas corpus petition based on *Brady* violation by government). Not one of the cases that the Defendant cites concerns a Rule 17 subpoena to a nonparty because it is well-settled law that a criminal defendant may not use a Rule 17 subpoena to obtain potential impeachment evidence from a nonparty. *Pena*, 2016 WL 8735699, at *2 (Nathan, J.) ("Rule 17(c) subpoenas may not issue prior to trial to obtain materials usable only to impeach.").

For all of the foregoing reasons, the Defendant's motion to authorize service of the Subpoena on BSF should be denied.

The Honorable Alison J. Nathan
April 5, 2021
Page **17** of **17**

                                              Respectfully submitted,

                                              /s/ Sigrid S. McCawley
                                              Sigrid S. McCawley