USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/27/21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

United States of America,

–v–

Ghislaine Maxwell,

Defendant.

20-CR-330 (AJN)

ORDER

ALISON J. NATHAN, District Judge:

Defendant Ghislaine Maxwell seeks an order authorizing a subpoena pursuant to Rule 17(c)(3) of the Federal Rules of Criminal Procedure. As detailed in the subpoena and Maxwell's moving papers, she seeks authorization to serve a subpoena to the law firm of Boies, Schiller and Flexner LLP. BSF has filed a letter in opposition to the subpoena request. Additionally, the Government submitted a letter requesting that it be given notice of all pending and future subpoenas applications, an opportunity to challenge them, and copies of any documents produced. For the reasons that follow, the Court denies Maxwell's motion as to Requests 1 through 8 and Request 12 and reserves judgment on Requests 9 through 11. The Court also denies the Government's requests, though it will direct the Government to notify the Court of its views as to Requests 9 through 11.

**I.      Legal Standard**

Rule 17(c) permits subpoenas ordering the production of "books, papers, documents, data, or other objects." Fed. R. Crim. P. 17(c)(1). When the subpoena seeks the production of personal or confidential information about a victim, it may be served on a third party only by court order. Fed. R. Crim. P. 17(c)(3).

1

The purpose of Rule 17(c) is to facilitate the trial by designating a time and place prior to trial to obtain and inspect evidentiary material. *See United States v. Nixon,* 418 U.S. 683, 698–99 (1974) (citing *Bowman Dairy Co. v. United States,* 341 U.S. 214, 220 (1951)). It is not intended to provide an additional means of discovery or to serve as a general "fishing expedition." *Id.* at 698-700. As a result, courts must be mindful not to allow the Rule 17(c) process to become a "broad discovery device" that would undermine the discovery procedures set forth in Rule 16. *United States v. Cherry,* 876 F. Supp. 547, 552 (S.D.N.Y. 1995). Thus, if an item is not discoverable under Rule 16, a party cannot make it discoverable simply by subpoenaing it under Rule 17. *United States v. Barnes*, No. S9 04-CR-186 (SCR), 2008 WL 9359654, at *2 (S.D.N.Y. Apr. 2, 2008).

To determine whether issuance of the subpoena is appropriate, the Court considers the factors articulated in *United States v. Nixon*, 418 U.S. at 699–700. In *Nixon*, the Supreme Court explained that in order to require production prior to trial, the moving party must show: (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'" *Id.* at 698–700. To clear that hurdle, the Court considers (1) relevancy, (2) admissibility, and (3) specificity. *Id.* at 700.

## II.    Discussion

### A. The BSF Subpoena

The proposed subpoena makes twelve requests. Some of the requests relate to documents that Maxwell believes will be relevant at trial. For others, the proffered relevance relates to

Maxwell's pending motions to suppress evidence. While ordinarily Rule 17(c) is "trial-focused" and "may be used only to obtain materials admissible as evidence at trial," at least some courts have held that Rule 17(c) can be used to compel the production of documents in connection with a suppression hearing. *United States v. Louis*, No. 04-CR-203 (LTS), 2005 WL 180885, at *3 (S.D.N.Y. Jan. 27, 2005). Even then, the requests fail for the reasons stated below.

Requests 1 through 5 all fail on the basis that they do not comply with *Nixon*'s specificity requirement. Requests 1 through 5 all target communications between "any" owner, shareholder, partner or employee of BSF and government officials or co-counsel in civil litigation, from 2015 to the date of the subpoena. While the requests focus on a certain subject, the requests are so overbroad that issuance of the Rule 17(c) subpoena would be improper. As set forth in the subpoena, the term "communications" encompasses "all forms of correspondence, including regular mail, email, text message, memorandum, or other written communication of information of any kind." The use of the terms "all" and "any" "do not evince specificity." *United States v. Tagliaferro*, No. 19-CR-472 (PAC), 2021 WL 980004, at *3 (S.D.N.Y. Mar. 16, 2021). Here, the requests do not identify specific lawyers or employees of BSF whose communications are relevant. *See United States v. Wey*, 252 F. Supp. 3d 237, 243 (S.D.N.Y. 2017) (discussing that while an originally requested subpoena was insufficiently specific, a new requested subpoena satisfied the specificity requirement because it identified a specified set of individuals whose records were sought). The requests also encompass "all" forms of correspondence without limitation. And while the requested subpoenas are limited to the period between 2015 and 2021, the timeframe is still overly broad. These requests are precisely the kind of "fishing expedition" that the specificity requirement is designed to prevent. *See Bowman Dairy Co.,* 341 U.S. at 221. Indeed, the requests are akin to discovery requests in civil litigation.

*See United States v. Avenatti*, No. (S1) 19-CR-373 (PGG), 2020 WL 86768, at *6 (S.D.N.Y. Jan. 6, 2020). But Rule 17(c) subpoenas are not tools of discovery. *Nixon*, 418 U.S. at 698; Wey, 252 F. Supp. 3d at 253. On the specificity prong alone, Requests 1 through 5 fail to satisfy the *Nixon* standard.

Requests 1 and 2 fail for the separate reason that, if Maxwell is entitled to the materials sought at all, they should come from the Government. Requests 1, 2, and 8 all seek documents that are procurable from the Government. As noted above, Requests 1 and 2 seek communications between BSF and government officials regarding a certain subject, from 2015 to the date of the subpoena. Request 8, meanwhile, refers to a specific grand jury subpoena that the Government issued to BSF. As to all of these requests, Maxwell asserts that the Rule 17(c) subpoena is necessary to fix what she deems to be the Government's failure to comply with its discovery obligations. Among the principles set forth in *Nixon* is that the materials must not be otherwise procurable reasonably in advance of trial by exercise of due diligence. *Nixon*, 418 U.S. at 699. These three requests target information that reasonably can be expected to be in the hands of the Government. To the extent that Maxwell has a basis to argue that the Government has not met its discovery obligations, the Rule 17(c) subpoena process is not the proper mechanism for pursuing that. Rather, with notice to the Government so that the issue is properly joined, Maxwell must make some showing of that failure and seek specific and appropriate relief from this Court.

Requests 6 and 7 seek contingency fee agreements or engagement letters between BSF and two of its clients who are alleged victims. Maxwell has failed to make the required showing under *Nixon* that these records would be relevant or admissible for purposes of her Rule 17(c) application. The only plausible theory of relevance set forth in Maxwell's papers is that these

4

documents are necessary for purposes of impeachment. But as a general matter, the need to impeach witnesses generally "is insufficient to require [materials'] production in advance of trial." *Nixon,* 418 U.S. at 701. Many courts have held that impeachment material does not become relevant until after the witness testifies. *United States v. Skelos*, No. 15-CR-317 (KMW), 2018 WL 2254538, at *2 (S.D.N.Y. May 17, 2018), ), *aff'd*, 988 F.3d 645 (2d Cir. 2021) (collecting cases); *United States v. Scaduto*, No. 94-CR-311 (WK), 1995 WL 130511, at *1 (S.D.N.Y. Mar. 27, 1995) ("Potentially impeaching statements 'ripen into evidentiary material . . . only if and when the witness testifies at trial . . . .'" (citation omitted)). *See also Avenatti*, 2020 WL 86768, at *6 (rejecting the argument that the defendant needed the recordings in question prior to trial in order "to demonstrate witnesses' bias or self-interest."). The arguments as to relevance are otherwise specious, and the Court cannot discern what relevance the materials responsive to Requests 6 and 7 may have. In any event, there is little risk that review of these materials, if they become relevant and admissible, will lead to a delay at trial, given their limited volume. *United States v. Seabrook*, No. 16-CR-467, 2017 WL 4838311, at *2 (S.D.N.Y. Oct. 23, 2017). For documents that may ripen into relevance if and when the BSF clients testify, Maxwell presumably could request that the Court issue a subpoena to require production of the engagement letters to the Court so that the information can be made available to Maxwell, if appropriate, at the conclusion of each witness's direct testimony. *See United States v. Giampa*, No. S 92-CR-437 (PKL), 1992 WL 296440, at *3-*4 (S.D.N.Y. Oct. 7, 1992); *United States v. Ferguson*, No. 3:06-CR-137 (CFD), 2007 WL 4577303, at *3 (D. Conn. Dec. 26, 2007).

Maxwell also argues that compulsion of the materials' production under Rule 17(c) is justified because the materials appear not to have been produced by BSF in response to the grand

jury subpoena at issue in Request 8; she thus contends that the absence of the documents in that production suggests coordination between the Government and BSF. Other than through conclusory speculation, she fails to explain how the contents of those letters may be relevant to her theory of preexisting coordination between the Government and BSF. Furthermore, to the extent Maxwell argues that the Government may have the documents and has refused to produce them in contravention of *Brady* or *Giglio*, the argument is little more than an attempt to circumvent the discovery processes that are in place. The production of *Giglio* material has not yet happened, and so any claim that the Government has failed to produce these documents consistent with its *Giglio* obligations is premature. Furthermore, as set forth in the Opinion & Order resolving some of Maxwell's pre-trial motions, the Government has represented in good faith that it is cognizant of its *Brady* obligations and that it has complied and will continue to comply with them. This Court knows well that the Government has not always lived up to those obligations in every case. But nothing has transpired that provides any reason to doubt the good faith representations that have been made to the Court by the AUSAs appearing here. In sum, none of Maxwell's theories justify production of these documents under the Rule 17(c) process.

Request 12, which seeks "any" submission to the Epstein Victims' Compensation Program made by BSF, fails under the relevance prong of the *Nixon* standard. The request seeks "any" submission made by BSF to the EVCP. In its reply brief, BSF represents that Maxwell offered to narrow this request to just those materials submitted on behalf of victims who ultimately testify in this action.

The request's failure to satisfy the *Nixon* standard is in part due to its relative lack of specificity, for even if Maxwell had established the relevance of *some* evidence captured by this request, she plainly has not demonstrated the relevance of all materials submitted to the EVCP.

*See United States v. Aguilar*, No. CR 07-00030 (SBA), 2008 WL 3182029, at *6 (N.D. Cal. Aug. 4, 2008). Maxwell argues that the materials are relevant because they may reveal monetary incentives to testify in a particular way. That argument demonstrates that the documents are being sought for impeachment. As stated above, the mere fact that certain documents might be impeachment evidence does not render them "relevant" for purposes of Rule 17(c); if at all, those documents would become relevant only after a witness testifies. *See Skelos*, 2018 WL 2254538, at *2. Maxwell's argument that the documents are relevant because their impeachment value is exculpatory does not get around this general bar. These materials only become relevant if or when those witnesses testify. She presents no other nonconclusory basis as to why they are exculpatory. Indeed, Maxwell concedes that the primary purpose of these documents will be for purposes of cross-examination, leaving little doubt as to the purported claim of relevance. And to the extent Maxwell posits that statements made as part of the EVCP process may be exculpatory in themselves, the argument is speculative because she provides no basis for why that expectation might be reasonable. The "mere hope" that the documents may contain some exculpatory evidence is insufficient to justify enforcement of a Rule 17(c) subpoena (or, as here, issuance of such a subpoena in the face of objections). *See United States v. Rich*, No. S 83-CR-579 (SWK), 1984 WL 845, at *3 (S.D.N.Y. Sept. 7, 1984). Maxwell's reliance on cases involving the Government's obligations under *Brady* and *Giglio* to produce impeachment evidence prior to trial are thus inapposite to the current context. *Pena*, 2016 WL 8735699, at *2-3. Maxwell thus fails to establish Request 12's compliance with the *Nixon* standards. Maxwell may renew her request for these documents once she identifies specific individuals whose submissions she seeks and spells out with specificity the relevance of all requested materials. At that time, the Court will determine whether it is proper to require production of these materials to

the Court so that the information may be made available to Maxwell, if appropriate, at the conclusion of each witness's direct testimony. *See Giampa,* 1992 WL 296440, at *3; *Ferguson,* 2007 WL 4577303, at *3.

The Court will reserve on Requests 9 through 11 in order to allow the Government to weigh in on the propriety of the requests. The Court assumes that the Government has enough information, based on the public filings, to provide its views. If the Government seeks the specific subpoena requests, it shall confer with defense counsel and raise any dispute with the Court. The Government shall file its response within one week of this Order.

In sum, for Request 1 through 8 and 12, the Court will not authorize service of the proposed subpoena on the basis that Maxwell has failed to establish that the requests are sufficiently specific and that the materials sought are relevant or admissible. Maxwell may renew more tailored requests in compliance with this Order. The Court sees no basis for doing so on an *ex parte* basis. For Requests 9 through 11, the Court will reserve its decision until it hears from the Government.

### B. The Government's Subpoena-Related Request

The Government seeks a preemptive, blanket ruling that it be entitled notice of all future subpoenas, an opportunity to challenge them, and production of any information obtained therefrom. This request is denied. Assuming Maxwell seeks the issuance of a future subpoena for which there is no basis to proceed *ex parte,* the Government will be provided notice and the Court would likely consider the Government's briefing regardless of standing as part of its duty to ensure that the subpoena meets the requirements of *Nixon. See United States v. Bergstein,* No. 16-CR-746 (PKC), 2017 WL 6887596, at *3 (S.D.N.Y. Dec. 28, 2017). But *ex parte* Rule 17(c) subpoenas are possible in some circumstances if justified. *See Skelos*, 2018 WL 2254538, at *8

(collecting cases). As a result, the blanket ruling sought by the Government is improper and denied.

### III. Conclusion

The Defendant's motion for an order authorizing the subpoena pursuant to Rule 17(c)(3) is DENIED. The Government is ORDERED to respond to Requests 9 through 11 of the proposed subpoena within one week of this Order.

SO ORDERED.

Dated: April 27, 2021
      New York, New York

                                      ALISON J. NATHAN
                                  United States District Judge