**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

May 4, 2021

**BY ECF**

The Honorable Alison J. Nathan
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

   Re: *United States v. Ghislaine Maxwell*, S2 20 Cr. 330 (AJN)

Dear Judge Nathan:

   The Government respectfully submits this letter in connection with the Court's Order of April 27, 2021, regarding the defendant's request for an order authorizing a subpoena pursuant to Rule 17(c)(3) of the Federal Rules of Criminal Procedure for records from Boies Schiller Flexner LLP ("BSF").  In the Order, the Court directed the Government to notify the Court of its views as to Requests 9 through 11.  For the reasons set forth below, the Government respectfully submits that Requests 9 and 11 should be denied, and the Court should reserve decision with respect to Request 10, which the Government expects may be rendered moot.

   **I.**  **Applicable Law**

   As the Court explained in its Order, a defendant seeking material pursuant to a Rule 17(c) subpoena bears the burden of satisfying the standard in *United States v. Nixon*, 418 U.S. 683 (1974).  Pursuant to that standard, a Rule 17(c) subpoena "should not issue unless it meets three criteria: '(1) relevancy, (2) admissibility, (3) specificity.'"  *United States v. Binday*, 908 F. Supp. 2d 485, 491 (S.D.N.Y. 2012) (quoting *Nixon*, 418 U.S. at 700).

The *Nixon* test is enforced strictly. "The party requesting the subpoena must also show that the information sought is 'not otherwise procurable reasonably in advance of trial by exercise of due diligence,' that 'the party cannot properly prepare for trial without such production,' and that 'the application is made in good faith and is not intended as a general "fishing expedition."'" *United States v. Ulbricht*, 858 F.3d 71, 109 (2d Cir. 2017) (quoting *Nixon*, 418 U.S. at 699-700), *abrogated on other grounds as recognized by United States v. Chambers*, 751 F. App'x 44, 46 & n.1 (2d Cir. 2018) (summary order). It is not sufficient for a party to show only that the subpoenaed documents "are potentially relevant or admissible." *United States v. Wey*, 252 F. Supp. 3d 237, 254 (S.D.N.Y. 2017) (internal quotation marks omitted). Moreover, as the Court has explained, impeachment material is not "relevant" within the meaning of *Nixon* "until after the witness testifies." (Order at 5). *See Nixon*, 418 U.S. at 701 ("[g]enerally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial" (citations omitted)). Finally, Rule 17 by its terms prohibits subpoenas aimed at statements "of a witness or a prospective witness." *See* Fed. R. Crim. P. 17(h).

## II.     Discussion

Although the Government has not seen the proposed subpoena, the Government understands that Request 9 seeks the complete diary of Minor Victim-2, Request 10 seeks a pair of boots given to Minor Victim-2, and Request 11 seeks a series of photographs. Requests 9 and 11 should be denied. The Government is working to moot Request 10, so the Court should reserve decision on that request until it can be denied as moot.

### A.  Request 9

The Government understands that Request 9 calls for Minor Victim-2's entire diary from her teenage years. This request is improper under Rule 17 in three respects.

*First,* the defendant has not adequately identified why the diary is relevant beyond the portions of the diary the defense has already received.  *See Ulbricht*, 858 F.3d at 109 (explaining that Rule 17(c) is not appropriate for evidence that is "otherwise procurable" (internal quotation marks omitted)).  BSF represents that "all potentially relevant pages were produced from this journal to the Defendant in civil discovery in another matter."  (3/22/21 Letter from BSF, Dkt. No. 191 at 5).  The Government also obtained and produced seven pages of the diary to the defendant in discovery.  (Mot. for a Bill of Particulars and Pretrial Disclosures, Dkt. No. 148 at 10).

The defendant argues that the entire diary is exculpatory because it contains no reference to her.  (4/2/21 Letter from Def., Dkt. No. 244 at 9).  But the Government and Minor Victim-2 have acknowledged the absence of references to the defendant from the start, and Minor Victim-2 is expected to testify to that fact at trial.  (*See* Gov't Omnibus Response, Dkt. No. 204 at 187 (citing Mem. in Opp. to Def.'s Renewed Motion for Release, Dkt. No. 100 at 11 n.2.); 3/22/21 Letter from BSF, Dkt. No. 191 at 5).  The defendant earlier moved to compel the Government to obtain and produce the diary to her, a motion the Court has denied.  (Opinion & Order, Dkt. No. 207 at 29).  As the Government explained in its opposition to that motion, the Government understands that Minor Victim-2 stopped writing in her diary shortly after meeting Jeffrey Epstein, so there are no entries regarding her later trip with Epstein, during which she met the defendant.  (*See* Gov't Omnibus Response, Dkt. No. 204 at 187).  The victim provided the Government with her entries relating to Epstein, which the Government in turn produced to the defense.  (*Id.*).  The remainder of the diary consists of Minor Victim-2's unrelated personal diary entries, and the defendant has not explained and cannot explain why she needs to review those entries to establish a fact that the

Government has acknowledged.  In other words, there will be no dispute at trial that Minor Victim-2 did not write about the defendant in her diary.[1]

The cases the defendant cites are inapposite.  For instance, in *United States v. Cheung Kin Ping*, 555 F.2d 1069 (2d Cir. 1977), the parties learned that a cooperating witness kept a diary, which was largely written in Chinese, while the witness was still on cross-examination.  *Id.* at 1078.  The witness turned over his diary, but after observing that the "defense was examining his diary, . . . he requested that this not be done."  *Id.*  While the parties were discussing how to review the diary, including for *Brady* material, the diary was returned to the witness.  It was only given to the defense for examination after "roughly five days" in the witness's possession.  *Id.* at 1079.  Accordingly, in that case, a diary that had never been evaluated for *Brady* material—or any other material—was taken from a witness in the middle of the witness's cross-examination, then returned to him for five days.  The Second Circuit found that those events "created a serious risk that significant material would be destroyed or tampered with."  *Id.*  Here, in contrast, the diary contains no relevant material—in fact, that is the defendant's very thesis.  *See also White v. McKinley*, 519 F.3d 806, 814 (8th Cir. 2008) (explaining, in a § 1983 case, that the plaintiff had alleged bad faith by stating that a law enforcement officer in a child molestation case "deliberately steer[ed] the investigation to benefit his love interest," in part by "fail[ing] to preserve the alleged victim's diary which did not corroborate the molestation allegations," which in turn "deprived [the defendant] of his right to a fair trial, in part, because he could not testify about the diary without waiving his right not to testify"); *United States v. Rios*, No. 88 Cr. 186, 1989 WL 9289, at *2

---

[1] For similar reasons, the entire diary, full of Minor Vicitm-2's personal and unrelated information, would not be admissible at trial.  *See Nixon*, 418 U.S. 700 (requiring that a Rule 17(c) subpoena target "admissib[le]" evidence).

(N.D.N.Y. Feb. 6, 1989) (reaching the unremarkable result that an "undercover agent's diary" is "not discoverable in and of itself" except "to the extent that this diary contains" *Brady* material).

Alternatively, the defendant states that she needs to inspect the "entire journal" to "establish whether the journal is authentic and complete and whether or not spoilation has occurred." (4/2/21 Letter from Def., Dkt. No. 244 at 9). "This examination," she continues, "requires the services of a qualified forensic document examiner." (*Id.*) This argument lacks merit. The defendant's bare assertion that authenticity might somehow be in doubt is hardly a sufficiently detailed explanation of relevance and admissibility to justify a subpoena for a minor victim's personal journal. The defendant does not identify any basis for doubting the authenticity of the documents, which the Government expects that Minor Victim-2 will be able to properly authenticate at trial. Nor does the defendant identify what kind of examiner she intends to use, what kind of examination will occur, or how that examination might bear on the journal's authenticity. *See Wey*, 252 F. Supp. 3d at 253 (explaining that the "items sought cannot merely be potentially relevant or admissible. Rather, they must be shown to be relevant and admissible at the time the subpoena is sought." (internal quotation marks omitted)); *see also United States v. Skelos*, No. 15-CR-317 (KMW), 2018 WL 2254538, at *2 (S.D.N.Y. May 17, 2018), *aff'd*, 988 F.3d 645 (2d Cir. 2021) ("[A] criminal subpoena should not be used as 'a discovery device,' but instead should be used only as 'a mechanism for obtaining specific admissible evidence.'" (quoting *United States v. Barnes*, No. 04 Cr. 186 (SCR), 2008 WL 9359654, at *4 (S.D.N.Y. Apr. 2, 2008)). "Conclusory statements," like the defendant's here, are "insufficient to satisfy the *Nixon* requirements." *Barnes*, 2008 WL 9359654, at *3.[2]

---

[2] In addition to the explicit bases identified in her letter on the subpoena and described above, elsewhere the defendant has made clear that she seeks the diary for impeachment purposes. (*See* Mot. for a Bill of Particulars and Pretrial Disclosures, Dkt. No. 148 at 10; 3/22/21 Letter from

*Second*, the request in insufficiently specific.  To satisfy the specificity prong, a Rule 17(c) subpoena must be able to "reasonably specify the information contained or believed to be contained in the documents sought rather than merely hop[e] that something useful will turn up." *Barnes*, 2008 WL 9359654, at *4 (alteration and internal quotation marks omitted); *see, e.g.*, *United States v. Avenatti*, No. 19 Cr. 373 (PGG), 2020 WL 508682, at *4 (S.D.N.Y. Jan. 31, 2020). The defendant's request for the entire diary is likely to sweep in a significant period of Minor Victim-2's life before Minor Victim-2 met Epstein or the defendant—all of which is irrelevant.

To justify this overbreadth, the defendant identifies two reasons she needs to review the diary in full: to demonstrate the absence of references to the defendant, and to establish the diary's authenticity.  (4/2/21 Letter from Def., Dkt. No. 244 at 9).  As to the former, there is no probative value in showing that diary entries before the defendant had ever met Epstein or the defendant contain no references to Epstein or the defendant, and in any event, the Government has conceded the point.  As to the latter, the defendant offers only the conclusory statement that review of the entire diary is necessary.  That is insufficient, as explained above.

*Third*, the request is barred by Rule 17(h).  That section prohibits the use of Rule 17 to "subpoena a statement of a witness or of a prospective witness," Fed. R. Crim. P. 17(h), explaining that such issues are governed by Rule 26.2.  The diary is a set of recorded statements by Minor Victim-2.  To the extent it should be produced, that production is governed by Rule 16, Rule 26.2, *Brady*, and *Giglio*, but not Rule 17.  *See, e.g.*, *United States v. Carton*, 17 Cr. 680 (CM), 2018 WL 5818107, at *4 (S.D.N.Y. Oct. 19, 2018) (rejecting a request for a personnel file because the

---

BSF, Dkt. No. 191 at 5 ("The Defendant also clearly seeks to use the journal for impeachment purposes, as highlighted in a prior filing in a recently dismissed civil action Ms. Farmer filed against the Defendant.")).  But as the Court has recently explained, Rule 17 is not a tool to obtain impeachment material in advance of trial.  (Order at 5).

individual "is a prospective witness in this case; the Government will provide Carton with his 3500, Jencks and Giglio material by the deadline set by the Court"); *United States v. Yudong Zhu*, No. 13 Cr. 761 (VM), 2014 WL 5366107, at *3 & n.3 (S.D.N.Y. Oct. 14, 2014) (rejecting a subpoena request under Rule 17(h) even though the records were not in the Government's possession). Here, the Government has discharged its obligations already by providing the defendant with the relevant pages from the diary, and Rule 17(h) bars a search for additional statements.

The defendant's theories miss the mark because Request 9, at its core, is precisely the sort of "fishing expedition" that *Nixon* prohibits. 418 U.S. at 700. Accordingly, Request 9 should be denied.

### B.  Request 10

The Government understands Request 10 to seek a pair of boots purchased by the defendant and Jeffrey Epstein for Minor Victim-2. The defendant states that she would like to examine the boots in order to "identify the make and provenance of the boots." (4/2/21 Letter from Def., Dkt. No. 244 at 11). This appears to be an attempt to use the boots to impeach Minor Victim-2's testimony, shrouded again in a conclusory claim about the need for authentication. For substantially the reasons set forth above with respect to the diary, the Government respectfully submits such a claim is meritless under *Nixon*.

However, and although the Government is not obligated to do so, the Government has requested that BSF provide the boots to the Federal Bureau of Investigation ("FBI"). BSF has indicated that Minor Victim-2 will likely agree to do so. When the boots are in the FBI's custody, the Government intends to make them available promptly to the defense for examination and use at trial, and will so notify the Court, which should moot Request 10. The Government submits,

thus, that the Court need not resolve Request 10 at this time, as the Court will likely be able to deny it as moot in the near term.

### C. Request 11

Request 11 appears to seek a series of photographs.  The Government's understanding is that the defendant already has copies of those photographs.  (*See* 4/2/21 Letter from Def., Dkt. No. 244 at 11 ("[C]opies were produced by BSF in civil litigation.")).  It also appears that the Government also produced copies of some of these photographs in Rule 16 discovery.  In any event, and again although the Government is not obligated to do so, the Government requested that BSF provide it with copies of the complete set of requested photographs, which it has obtained and produced to the defendant.

Remaining at issue, then, are only the original versions of the photographs.  The Government understands from BSF that the photographs were all taken on film and are not digital photographs.  Accordingly, the originals are physical photographs, not digital files.  The defense subpoena for these original photographs should be denied, at least unless and until the defendant provides further justification for the need for and entitlement to the originals.  Because the defendant already has copies of the photographs, the defendant must explain how her request for the originals can satisfy the *Nixon* test without being "otherwise procurable."  418 U.S. at 699.

The defendant suggests that she needs the originals to identify the "dates of creation or any other specifics."  (4/2/21 Letter from Def., Dkt. No. 244 at 11).  It is entirely unclear what "other specifics" refers to, but as noted above, the Government understands that these photographs were taken on film, such that the originals would generally not contain metadata regarding the date or other information regarding when they were taken.  And in any event, the defendant has not explained the relevance or admissibility of this information—and specifically, whether it would

be used for impeachment, authentication, or another purpose.  Accordingly, Request 11 should be denied.

**III.     Conclusion**

For the foregoing reasons, the Court should deny Requests 9 and 11.  The Court should reserve decision with respect to Request 10 until the Government obtains the boots and makes them available for inspection by the defendant, at which time Request 10 will be moot.


Respectfully submitted,

AUDREY STRAUSS
United States Attorney

by: _____/s/_____
Maurene Comey
Alison Moe
Lara Pomerantz
Andrew Rohrbach
Assistant United States Attorneys
(212) 637-2324


cc:      Counsel of Record (by ECF)