# LAW OFFICES OF BOBBI C. STERNHEIM

212-243-1100 • Main
917-306-6666 • Cell
888-587-4737 • Fax

33 West 19th Street - 4th Floor
New York, New York 10011
bc@sternheimlaw.com

May 7, 2020

Honorable Alison J. Nathan
United States District Court
United States Courthouse
40 Foley Square
New York, NY 10007

Re: *United States v. Ghislaine Maxwell*
S2 20 Cr. 330 (AJN)

Dear Judge Nathan:

  Once again, the government reports second- and third-hand information from the MDC, the reliability of which becomes increasingly questionable. In its May 5th letter regarding the MDC's flashlight security checks of Ms. Maxwell (Dkt. 270), the government contradicts a previous report that Ms. Maxwell "has an eye mask." This allegation, immediately refuted by her counsel, was a focus of the Second Circuit's questioning during oral argument of Ms. Maxwell's bail appeal. Now, the government reports that the MDC cannot provide an eye mask to Ms. Maxwell and that an eye mask is considered contraband. This alone is a basis for the Court to question the veracity of representations made by the MDC.

  To justify the 15-minute flashlight surveillance that is causing Ms. Maxwell's disruptive sleep and sleep deprivation, the MDC claims that Ms. Maxwell is on "an enhanced security schedule." The reasons given to support the need for "heightened safety and security concerns" with respect to Ms. Maxwell are spurious. They single out Ms. Maxwell to the detriment of other pretrial detainees who face even more serious charges and potential stress (*i.e.,* defendants charged with murder and terrorism offenses subjected to life sentences without possibility of release and the death penalty) and who are incarcerated in cells by themselves. The MDC attempts to shift the focus of its conduct by claiming that it is responsive to Ms. Maxwell's "expressed concern for her safety if she were housed in general population."

  The MDC should fact check its records before making bold assertions. The Intake Screening Form completed by Ms. Maxwell upon entry to the MDC on July 6, 2020 posed the following question: "Do you know of any reason why you should not be placed in general population?" Ms. Maxwell responded "No." It is the MDC, not the inmate, who makes the determination regarding general population or degree of segregation. The Intake Screening

Form listed "psych alerts," which are baseless, and "broad publicity," which is accurate and concerns risk of harm to Ms. Maxwell via violence, extortion, and feed information to the press by other inmates. Ironically, it is the MDC staff who leaked to the press that Ms. Maxwell had been vaccinated.

Further, in her desire to interact and be helpful with other inmates, Ms. Maxwell completed two programs to assist other inmates- (1) to qualify as a teacher aide and offered to help update MDC learning curriculum and (2) to qualify as companion for suicide watch. Her de facto solitary confinement prevents her from utilizing that training to assist others.

Ms. Maxwell's segregation and surveillance go way beyond the concerns posited by the MDC. It is not only other inmates who may harm Ms. Maxwell, but also the very guards tasked to her security detail who have already done harm to her: failing to provide adequate food or feed her at all in a 20-hour period, damaging her discovery hard drive, seizing her confidential legal documents, erasing her CorrLinks emails, physically abusing her. The list goes on and on. In an effort to advocate in compliance with BOP procedure, she has filed hundreds of BP-8s, BP-9s and BP-10s only to receive a response that is less than helpful, or in the absence of any response was told the form was either lost or never filed,  Each and every day of her detention, she is guarded by at least three officers who watch and record, by writing and via a handheld camera, her every move: when she eats, showers, cleans her clothes, brushes her teeth, etc. As the guards feverishly write while observing Ms. Maxwell during videoconferencing with counsel, it appears that they go beyond their routine continual 15-minute reporting.

Further, her non-legal phone calls are monitored in real time.  It was the staff who confronted Ms. Maxwell about the death of someone whom she was close to within hours on her learning about it, information derived from her phone calls. Ms. Maxwell does not discuss personal matters with MDC guards and did not provide information concerning the passing of someone quite dear to her. It was psychological services who confronted her regarding that information, which could only have been obtained through telephone surveillance.  We invite the Court and government to review the calls which contradict the unsupported allegation that Ms. Maxwell is a flight risk and support her family strong ties. Her monitored communication with family and friends evidences her strong ties in the United States, her strong desire to return to her family in the United States, and her intention to establish her innocence at her trial in the United States.

In the face of the Epstein's death on the BOP's watch, the MDC would not risk a repeat of the debacle that occurred in the MCC. There can be no doubt that the MDC was following directives from Attorney General William Barr and the Director of the BOP in determining that Ms. Maxwell should not be placed in general population, not Ms. Maxwell. Regardless, the MDC would never risk security to Ms. Maxwell or the institution by placing her in general population, knowing the difficulties it would face in protecting Ms. Maxwell from assault and extortion by other inmates given that they do not protect her from physical abuse by guards. But that decision does not justify the degree to which the MDC overmanages Ms. Maxwell's detention and its detrimental effect on her health, well-being, and ability to prepare for trial.

We have repeatedly expressed our concern for Ms. Maxwell's health and the impact her conditions of confinement are having on her health and well-being, her ability to prepare for trial, and the overall impact the severe conditions will have on her stamina to withstand trial, which we moved to the fall. With each passing day, it becomes increasingly more obvious that Ms. Maxwell's extreme conditions of detention will not be improved and health deteriorate commensurate with the unprecedented conditions of confinement unparalleled in the MDC.

Very truly yours,

*Bobbi C. Sternheim*
BOBBI C. STERNHEIM

cc: Counsel for all parties