UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
      :
UNITED STATES OF AMERICA,      :
      :    20 Cr. 330 (AJN)
    v.      :
      :
GHISLAINE MAXWELL,      :
      :
    Defendant.      :
      :
------------------------------------------------------------x


# REPLY MEMORANDUM OF GHISLAINE MAXWELL
# IN SUPPORT OF HER MOTION FOR A BILL OF PARTICULARS
# AND PRETRIAL DISCLOSURES

                Christian R. Everdell
                COHEN & GRESSER LLP
                800 Third Avenue New
                York, NY 10022
                Phone: 212-957-7600

                Jeffrey S. Pagliuca
                Laura A. Menninger
                HADDON, MORGAN & FOREMAN P.C.
                150 East 10th Avenue
                Denver, CO 80203
                Phone: 303-831-7364

                Bobbi C. Sternheim
                Law Offices of Bobbi C. Sternheim
                33 West 19th Street - 4th Floor
                New York, NY 10011
                Phone: 212-243-1100

                *Attorneys for Ghislaine Maxwell*

## **TABLE OF CONTENTS**

                                                                                                                                        **Page**

I.     The Court Should Grant a Bill of Particulars. ................................................................... 3

II.    The Court Should Grant Ms. Maxwell's Request for Accelerated Disclosure of the Government's Witness List, Jencks Act Material, *Brady*/*Giglio* Material, Rule 404(b) Material, and Co-Conspirator Statements. ............................................................. 6

III.   The Court Should Grant Ms. Maxwell's Request for Production and Inspection of Documents. ....................................................................................................................... 9

CONCLUSION ............................................................................................................................ 12

i

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*United States v. Bortnovsky,*
  820 F.2d 572 (2d Cir. 1987) ............................................................................................. 3, 5, 6

*United States v. Cannone*,
  528 F.2d 296 (2d Cir. 1975) ............................................................................................. 4, 7, 8

*United States v. Hsia,*
  24 F. Supp. 2d 14 (D.D.C. 1998) ............................................................................................ 6

*United States v. Luna,*
  No. 3:05-CR-58 (SRU), 2006 WL 1668006 (D. Conn. May 17, 2006) .................................. 5

*United States v. Rueb,*
  No. 00-CR-91 (RWS), 2001 WL 96177 (S.D.N.Y. Feb. 5, 2001) ....................................... 7, 8

*United States v. Savin*,
  No. 00-CR-45 (RWS), 2001 WL 243533 (S.D.N.Y. Mar. 7, 2001) ........................................ 7

**Rules**

Fed. R. Crim. P. 15 ..................................................................................................................... 2, 7

Fed. R. Crim. P. 16 ......................................................................................................................... 9

Fed. R. Evid. 404(b) ............................................................................................................. 1, 2, 6, 8

Ghislaine Maxwell respectfully submits this Reply Memorandum in Support of her Motion for a Bill of Particulars and Pretrial Disclosures ("Motion").

Ms. Maxwell's opening brief sets forth compelling reasons justifying the need for a bill of particulars, and for accelerated disclosure of the identities of the government's witnesses, Jencks Act material, *Brady/Giglio* material, Rule 404(b) evidence, and any co-conspirator statements that the government will seek to introduce at trial. The government's opposition ("Opp.") does not address these justifications, or attempts to deflect them, and does nothing to undercut Ms. Maxwell's arguments in support of the requested relief.

Indeed, the new revelations in the government's opposition highlight the need for the relief she seeks. In response to Ms. Maxwell's Motion to Strike Surplusage from the Indictment, the government's opposition discloses for the first time that Accuser-3[1] will testify that she allegedly ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ These allegations, which meaningfully expand the scope of the charges against Ms. Maxwell, are not mentioned anywhere in the Superseding Indictment ("Indictment"), nor are they alluded to in the over 2.7 million pages of discovery. Ms. Maxwell cannot possibly investigate the allegations to prepare her defense if she does not know fundamental information about when and where the alleged incidents of sexual abuse took place. Nor can she make appropriate motions to preclude the government's use of this evidence, as it falls outside of the scope of the charged conspiracies. Moreover, the government continues to refuse to provide Ms. Maxwell the most basic piece of information she needs to prepare for trial – the names of the three individuals who have accused

---

[1] Accuser-3 is identified in the Superseding Indictment as "Minor Victim-3." Similarly, the individuals identified in the Superseding Indictment as "Minor Victim-1" and "Minor Victim-2" are referred to herein as Accuser-1 and Accuser-2, respectively.

her of the crimes charged in the Indictment. A bill of particulars is therefore necessary to prevent unfair surprise at trial and to allow Ms. Maxwell to adequately prepare her defense.

It is also critical that Ms. Maxwell receive accelerated disclosure of the government's witness list, Jencks Act material, *Brady*/*Giglio* material, Rule 404(b) evidence, and any co-conspirator statements. The government predictably argues that there is nothing unusual about the circumstances of Ms. Maxwell's case that would justify a deviation from customary production deadlines for the materials she requests. But Ms. Maxwell's case is not a typical case and presents unique circumstances that warrant the relief she seeks. The Indictment alleges vague conduct that is over 25 years old and involves conduct that allegedly took place over a four-year period in multiple locations across the country and in at least one foreign jurisdiction. Any relevant documents that may still exist will take time to retrieve. The investigation of witness statements and any Rule 404(b) evidence will similarly take significant time and potentially also involve foreign travel and depositions under Rule 15 of the Federal Rules of Criminal Procedure. For these reasons, and the others set forth below, the Court should order the production of these materials by March 22, 2021.[2]

Ms. Maxwell has also provided specific reasons supporting her requests for the production and inspection of certain FBI reports and other documents, such as a complete copy of the handwritten diary, which are not included in the discovery. There is ample evidence to conclude that these documents contain material inconsistencies in the prior statements of key government witnesses, as well as other exculpatory information for Ms. Maxwell. The Court should therefore order the government to produce them.

---

[2] Ms. Maxwell originally requested that the government produce the requested witness materials by March 12, 2021 (Dkt. 148 at 15, 17), the same deadline as the Court imposed on the government to produce documents related to certain non-testifying witnesses. (Dkt. 73). Because the Court granted Ms. Maxwell's request to extend the filing deadline for the reply motions by 10 days from March 5, 2021 to March 15, 2021, we have moved forward our requested deadline for the production of witness materials by 10 days to March 22, 2021.

2

**I.    The Court Should Grant a Bill of Particulars.**

A bill of particulars is appropriate if the indictment does not disclose to the defendant with sufficient particularity "the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky,* 820 F.2d 572, 574 (2d Cir. 1987).  Here, the revelation of new allegations from Accuser-3 disclosed for the first time in the government's opposition, as well as the government's continuing refusal to identify the names of the three accusers, justify the need for a bill of particulars to prevent unfair surprise at trial and to allow Ms. Maxwell to adequately prepare her defense.

*First*, as it has done since the beginning of this case, the government continues to deny Ms. Maxwell the most basic piece of information she needs to investigate the allegations against her and prepare for trial – the names of the three individuals who have accused her of the crimes charged in the Indictment.  Rather than attempt to justify withholding this information out of concern for the accusers' safety or privacy—an untenable argument, given that two of the three accusers, if we are correct about their identities, have already publicly identified themselves—the government instead argues that because it has provided enough information for Ms. Maxwell to *guess* who they are, there is no need to disclose their names at this point.  (Opp. 181-82).  Ms. Maxwell should not have to rely on guesswork to prepare for trial, especially when the testimony of these three accusers will comprise the core of the government's proof.  With trial only four months away, Ms. Maxwell's need to have sufficient time to investigate the allegations against her vastly outweighs any countervailing interest the accusers may have in remaining anonymous. If the government is unwilling to provide the names of the accusers, the Court should order the government to do so either as part of a bill of particulars or pursuant to its inherent authority to

3

compel pretrial disclosure of the identities of government witnesses. *See United States v. Cannone*, 528 F.2d 296, 301 (2d Cir. 1975).

*Second*, as discussed in Ms. Maxwell's opening memorandum, the allegations in the Indictment and the extremely limited information contained in the discovery are insufficient to advise Ms. Maxwell of the nature and scope of the charges against her. The government's opposition provides a perfect illustration of Ms. Maxwell's point: it discloses entirely new allegations of ▮▮▮▮▮ involving Accuser-3, which it will seek to introduce at trial, but which are not contained in the Indictment and are not alluded to, or corroborated, anywhere in the over 2.7 million pages of discovery.

As a result of Ms. Maxwell's Motion to Strike Surplusage ("Surplusage Motion"), the government has apparently recognized that the allegations in the Indictment concerning Accuser-3 do not constitute direct evidence of the charged conspiracies because: (i) Accuser-3 was above the age of consent in the United Kingdom when the alleged episodes of sexual activity with Epstein took place, and were therefore not illegal, and (ii) there is no allegation that Accuser-3 ever traveled. In an attempt to cure these deficiencies, the government now discloses for the first time in its opposition that Accuser-3 will testify that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Opp. 159). Accuser-3 will also testify that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.*).[3]

---

[3] As discussed more fully in Ms. Maxwell's Reply Memorandum in Support of Her Motion to Strike Surplusage from the Indictment ("Surplusage Reply"), these new allegations are also not direct evidence of the charged conspiracies and should not be offered as such at trial.

4

These new allegations—which expand the nature and scope of the charged conspiracies—are exactly the type of "surprise" revelations that a bill of particulars is designed to protect against. The Indictment makes no mention of these allegations, nor is there any information in the discovery indicating that they would be part of the government's case. The government therefore cannot argue, as it does in its opposition, that the information provided in the Indictment and the discovery produced to date are sufficient for Ms. Maxwell to understand the nature of the charges against her, especially when only a small fraction of the discovery pertains to the time period charged in the Indictment. (Opp. 179-81). "The Government [does] not fulfill its obligation merely by providing mountains of documents to defense counsel" if the discovery does not identify the alleged criminal conduct." *Bortnovsky,* 820 F.2d at 575; *see also United States v. Luna*, No. 3:05-CR-58 (SRU), 2006 WL 1668006, at *2 (D. Conn. May 17, 2006) ("[W]hen faced with 'mountains' of discovery or 'massive disclosures,' a defendant may still be unable to prepare for trial and prevent surprise.").

Nor can the government take shelter in the fact that it has now disclosed these allegations. The government only made this disclosure because of Ms. Maxwell's Surplusage Motion. Had she not made that motion, Ms. Maxwell would not have known about these allegations until she received Jencks Act disclosures a few weeks before trial, which would not have given her sufficient time to investigate 25-year-old allegations of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ It also raises the question of whether Accuser-1 and Accuser-2 have alleged ▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓ that are not included in the Indictment, but which the government plans to introduce at trial. Without a bill of particulars specifying the approximate dates, locations, and people involved in the alleged incidents of sexual abuse that the government plans to prove at trial, Ms.

5

Maxwell cannot effectively prepare her defense and will be at risk of further "surprise" allegations on the eve of trial. *See Bortnovsky,* 820 F.2d at 575 (bill of particulars necessary to prevent the government from proceeding "furtively").

Moreover, as discussed more fully in the Surplusage Reply, these new allegations represent an impermissible attempt by the government to broaden the scope of the alleged conspiracies and bolster its thin case with testimony that is irrelevant to the charged crimes. Accordingly, a bill of particulars is not only necessary so that Ms. Maxwell can adequately prepare her defense, but also so that the government cannot use evidence that is outside the scope of the charged conspiracies to prove its case. *See United States v. Hsia,* 24 F. Supp. 2d 14, 33 (D.D.C. 1998) (ordering a bill of particulars "as to the scope of the alleged conspiratorial agreement" and whether and how certain allegations "were within the scope of the conspiracy charged").[4]

## II. The Court Should Grant Ms. Maxwell's Request for Accelerated Disclosure of the Government's Witness List, Jencks Act Material, *Brady*/*Giglio* Material, Rule 404(b) Material, and Co-Conspirator Statements.

As set forth in Ms. Maxwell's opening brief, her case presents special circumstances and unique investigative challenges that justify accelerated disclosure of the identities of the government's witnesses, their prior statements and impeachment material, any expected Rule 404(b) evidence, and any potential co-conspirator statements. (Dkt. 148 at 14-15). In response, the government does not attempt to rebut Ms. Maxwell's justifications for accelerated disclosure of these materials. Instead, it offers a formulaic argument that Ms. Maxwell's case is no different than other recent high-profile trials in this District, that she has not made a sufficient

---

[4] It is telling that these new allegations are surfacing for the first time in the government's opposition. Either the government just learned this information from Accuser-3 or it was already aware of this information, but decided not to present it to the grand jury – perhaps because there is *nothing* whatsoever in the discovery that corroborates these statements.

6

showing of need, and that comparable and customary disclosure deadlines for these materials are appropriate. (Opp. 184-85, 188-93). But Ms. Maxwell's case is different—emphatically so—and the deadlines the government proposes are not sufficient to allow Ms. Maxwell, who is incarcerated, to adequately prepare her defense.

Ms. Maxwell has made a specific showing that early disclosure of the identities of the government's witnesses is "both material to the preparation of [her] defense and reasonable in light of the circumstances surrounding [her] case." *Cannone*, 528 F.2d at 300-01. *First*, the allegations are over 25 years old and any documentary records that witnesses may direct us to, if they still exist, will be hard to retrieve and take time to collect. *Second*, the conduct relevant to the charged crimes allegedly took place in three different locations across the country (New York, Florida, and New Mexico) and in at least one foreign jurisdiction (London, England) over a four-year period. Hence, it will take time to investigate any witness statements pertaining to the alleged conduct, as well as to identify and interview other witnesses who may contradict the government's witnesses. *See United States v. Rueb*, No. 00-CR-91 (RWS), 2001 WL 96177, at *8-*9 (S.D.N.Y. Feb. 5, 2001) (disclosure ordered where evidence located in multiple locations and offenses spanned three-year "extended period of time"). In particular, international travel may be necessary to investigate statements by witnesses located in England or other foreign jurisdictions, as will depositions pursuant to Rule 15 of the Federal Rules of Criminal Procedure. *See United States v. Savin*, No. 00-CR-45 (RWS), 2001 WL 243533, *7-*9 (S.D.N.Y. Mar. 7, 2001) (disclosure ordered where offenses spanned "extended" six-year period and involved potential depositions of foreign witnesses). *Third*, for each witness identified, the defense will need to search through the over 2.7 million pages of discovery to identify any relevant documents for cross-examination. The task is extraordinarily difficult and time-consuming, as

the vast majority of the discovery was produced as a "dump" of data from Epstein's various electronic devices, which includes hundreds of thousands of photographs, videos, and other files that are not text searchable. *See Rueb*, 2001 WL 96177, at *8 (disclosure ordered where defendant needed to review voluminous documentary evidence to prepare cross-examination). *Fourth*, investigation of witness statements will face challenges and delays in light of the continuing travel restrictions imposed by the COVID-19 pandemic and the reluctance of witnesses to meet in person.

By contrast, the "possible dangers accompanying disclosure (i.e. subornation of perjury, witness intimidation, and injury to witnesses)" are non-existent in this case. *Cannone*, 528 F.2d at 302. Indeed, the government does not even attempt to argue that Ms. Maxwell, who is currently incarcerated, will attempt to threaten or intimidate witnesses if she is given their names. Accordingly, early disclosure of the identities of the government's witnesses is warranted.

For these same reasons, the Court should order the government to provide early disclosure of any and all evidence of "other acts" that it intends to introduce under Rule 404(b). The allegations in the Indictment already include conduct that purportedly took place in locations all over the United States and in England. Moreover, the government just disclosed in its opposition that it intends to have Accuser-3 testify about ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮ that are not alleged in the Indictment and that ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮ (Opp. 159). The government may seek to introduce evidence of "other acts" that took place in new locations and possibly other foreign countries. Ms. Maxwell will not have sufficient time to investigate these allegations if she is not given adequate notice and therefore must be given accelerated disclosure of all Rule 404(b) evidence.

8

Finally, the government's offer to provide Jencks Act and *Giglio* information for its testifying witnesses "as much as four weeks" before trial is insufficient. (Opp. 184). Certain of the Accusers and (we suspect) many of the government's anticipated witnesses have made numerous statements about the events in question, either in the context of civil litigation, or to the media, or in other public fora. The defense will have to carefully analyze and compare any prior statements or impeachment material that the government discloses against the witness's numerous public statements. This process will be time-consuming, but essential to Ms. Maxwell's preparation for trial.[5]

The Court has already acknowledged that the defense will need substantial time to evaluate and investigate materials related to potential witnesses in this case, and has ordered the government, over its objection, to produce certain Rule 16 materials related to non-testifying witnesses by March 12, 2021—four months in advance of trial—"to ensure that the defense can adequately prepare for trial." (Dkt. 73). For the reasons set forth above, the Court should order the production of all of the requested materials by March 22, 2021.

### III. The Court Should Grant Ms. Maxwell's Request for Production and Inspection of Documents.

Ms. Maxwell's opening brief identified several redacted or incomplete documents that were produced in discovery, and documents that were omitted from discovery, that are subject to disclosure pursuant to the government's *Brady* obligations. (Dkt. 148 at 7-10). The government represents that it has reviewed the documents and they do not contain any *Brady* material apart from one statement that the government now discloses in its opposition, or that it is under no

---

[5] The government has offered to provide any co-conspirator statements it intends to introduce at trial at the same time that it provides its Jencks Act disclosures. (Opp. 192). The defense requests that these statements be provided on the same accelerated timeline set forth above to provide sufficient time in the event that a pretrial hearing is necessary to determine their admissibility.

9

obligation to obtain the documents because they are in the custody of a third party.  (Opp. 185-88).  The government's arguments are unavailing.  These documents contain exculpatory or materially inconsistent statements and therefore should be disclosed to Ms. Maxwell.

*First*, Ms. Maxwell has requested copies of any reports or notes memorializing ▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ which was summarized in ▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (Dkt. 148, Ex. B).  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (Indictment ¶ 7b). ▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇ The government does not reckon ▇▇▇▇▇▇▇▇ and simply states that ▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ inculpates Ms. Maxwell, but does not confirm that ▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (Opp. 185-86).  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (Dkt. 148, Ex. B ▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇ ).  The underlying reports and notes ▇▇▇▇▇▇▇▇ should therefore be disclosed immediately.

*Second*, the government should produce the unredacted report of the FBI's ▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (Dkt. 148, Ex. D).  The interview appears to contain ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

10

██████████████████████████████████████

Again, the government states that the report inculpates Ms. Maxwell. (Opp. 186-87). But even the unredacted portions of the report reveal material inconsistencies ████████████ ██████████████████████████████████████ To cite just one example, ███████████████████████████████████████ ██████████████████████████████████████ ██████████████████████████████ (Dkt. 148, Ex. D). ████████ ██████████████████████████████████████ ████████████████████████████ (*See* Exhibit A at 85). We believe the unredacted version of the report will reveal numerous additional inconsistencies and demonstrably false statements that directly undermine ██████████ credibility and the veracity of her allegations against Ms. Maxwell. Accordingly, the unredacted report should be disclosed.[7]

*Third*, Ms. Maxwell must have access to and be able to inspect the original, complete copy of the diary, rather than ████████████████ that were produced in discovery. The government has repeatedly referenced the diary, ██████████████████████████ as one of the most significant pieces of corroborating evidence in its case. Yet the government has blindly accepted the author's assurances that █████████████████████████████████ ██████████████████████████████████████ ████████ And as expected, the government disavows any responsibility for producing it to the

---

[6] Although the name of the person who spoke to Ms. Giuffre's father is redacted in the report, Ms. Giuffre alleged in her 2009 civil complaint against Epstein that Ms. Maxwell spoke to her father. *See Jane Doe 102 v. Jeffrey Epstein*, 09-cv-80656-KAM (SDFL 2009), Dkt. 1 ¶ 17.

[7] Ms. Maxwell confirms that the government produced an unredacted version of the other FBI report she requested at Bates range SDNY_GM_00380550 through SDNY_GM_000380554. (Opp. 186).

defense because it is in the possession of a third party. (Opp. 187-88). Ms. Maxwell anticipates that the rest of the diary will contain exculpatory information and inconsistent statements. It is therefore critical that Ms. Maxwell be able to review the original diary and to test it to ensure it is authentic and written contemporaneously with the events it describes. If the government will not obtain the diary, the Court should order the government to disclose the author's identity so that Ms. Maxwell can seek an appropriate subpoena.[8]

## CONCLUSION

For the reasons set forth above, we respectfully request that the Court grant the motions presented in their entirety.

Dated: March 15, 2021
New York, New York

Respectfully submitted,

*/s/ Christian R. Everdell*
Christian R. Everdell
COHEN & GRESSER LLP
800 Third Avenue
New York, NY 10022
Phone: 212-957-7600

Jeffrey S. Pagliuca
Laura A. Menninger
HADDON, MORGAN & FOREMAN P.C.
150 East 10th Avenue
Denver, Colorado 80203
Phone: 303-831-7364

Bobbi C. Sternheim
Law Offices of Bobbi C. Sternheim
33 West 19th Street - 4th Floor
New York, NY 10011
Phone: 212-243-1100

*Attorneys for Ghislaine Maxwell*

---

[8] The other documents that Ms. Maxwell has requested are relevant for her motions related to the Epstein Non-Prosecution Agreement and her suppression motions. (Dkt. 148 at 11). The Court should order the production of those documents for the reasons set forth in those motions.

## CERTIFICATE OF SERVICE

      I hereby certify that on March 15, 2021, I served by email, pursuant Rule 2(B) of the Court's individual practices in criminal cases, the within memorandum and any accompanying exhibits upon the following:

Maurene Comey
Alison Moe
Lara Pomerantz
Andrew Rohrbach
U.S. Attorney's Office, SDNY
One Saint Andrew's Plaza
New York, NY 10007
Maurene.comey@usdoj.gov
Alison.moe@usdoj.gov
Lara.Pomerantz@usdoj.gov
Andrew.Rohrbach@usdoj.gov

                                                */s/ Christian Everdell*