UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                        :

UNITED STATES OF AMERICA,        :

           v.                    :

GHISLAINE MAXWELL,          :

              Defendant.     :

                                          :

------------------------------------------------------------x

S2 20 Cr. 330 (AJN)

**OMNIBUS MEMORANDUM OF GHISLAINE MAXWELL
IN SUPPORT OF HER SUPPLEMENTAL PRETRIAL MOTIONS
<u>RELATING TO THE S2 SUPERSEDING INDICTMENT</u>**

Christian R. Everdell
COHEN & GRESSER LLP
800 Third Avenue
New York, NY 10022
Phone: 212-957-7600

Jeffrey S. Pagliuca
Laura A. Menninger
HADDON, MORGAN & FOREMAN P.C.
150 East 10th Avenue
Denver, Colorado 80203
Phone: 303-831-7364

Bobbi C. Sternheim
Law Offices of Bobbi C. Sternheim
33 West 19th Street - 4th Floor
New York, NY 10011
Phone: 212-243-1100

*Attorneys for Ghislaine Maxwell*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................ 1

SUMMARY OF NEW ALLEGATIONS IN THE S2 INDICTMENT ......................................... 4

ARGUMENT ...................................................................................................... 5

I.     The NPA Bars Ms. Maxwell's Prosecution on Counts One, Three, Five, and Six. ........... 5

     A.     Counts Five and Six Allege the Same Offenses that Were Part of the Florida Investigation and Are Covered by the Plain Terms of the NPA. ........................... 6

     B.     The NPA Binds the Southern District of New York as to Counts Five and Six. ........................................................................................................ 11

     C.     Counts One and Three Must Also Be Dismissed ................................................. 17

II.    Prosecuting Ms. Maxwell on Counts Five and Six Would Violate Her Rights Under the Double Jeopardy Clause ........................................................................ 18

III.   Counts Five and Six Are Time-Barred. ............................................................. 20

IV.   The Court Should Dismiss Count Five and Either Count One or Count Three as Multiplicitous. ......................................................................................... 21

V.    The Court Should Dismiss the S2 Indictment for Pre-Indictment Delay. ...................... 22

VI.   The Court Should Order a Bill of Particulars as to Counts Five and Six. ...................... 22

VII.  The Court Should Order the Government to Produce Accuser-4's Prior Statements as *Brady* Material. ..................................................................................... 24

VIII. Ms. Maxwell Incorporates All of the Arguments Raised in Her Initial Pretrial Motions and Reasserts Them as to the S2 Indictment. ............................................ 26

CONCLUSION ................................................................................................ 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Clemmons v. Delo*,
    124 F.3d 944 (8th Cir. 1997) ................................................................25

*Jones v. Jago*,
    575 F.2d 1164 (6th Cir. 1978) ..............................................................25

*Ex Parte Lange*,
    85 U.S. (18 Wall.) 163 (1873) ..............................................................18

*North Carolina v. Pearce*,
    395 U.S. 711 (1969) ............................................................................18

*United States v. Annabi*,
    771 F.2d 670 (2d Cir. 1985)........................................................ *passim*

*United States v. Bortnovsky*,
    820 F.2d 572 (2d Cir. 1987)..........................................................22, 23

*United States v. Brown*,
    No. 99-1230(L), 2002 WL 34244994 (2d Cir. Apr. 26, 2002) .............16

*United States v. Cambindo Valencia*,
    609 F.2d 603 (2d Cir. 1979)...............................................................20

*United States v. Carter*,
    454 F.2d 426 (4th Cir. 1972) ..............................................................17

*United States v. Garcia-Gonzalez*,
    714 F.3d 306 (5th Cir. 2013) ..............................................................21

*United States v. Gebbie*,
    294 F.3d 540 (3rd Cir. 2002) ..........................................14, 15, 16, 17

*United States v. Gonzalez*,
    93 F. App'x 268 (2d Cir. 2004) .....................................................14, 16

*United States v. Harvey*,
    791 F.2d 294 (4th Cir. 1986) ..............................................................15

*United States v. Korfant*,
    771 F.2d 660 (2d Cir.1985).................................................................19

*United States v. Lopez*,
   356 F.3d 463 (2d Cir. 2004) ................................................................18, 19, 20

*United States v. Rooney*,
   37 F.3d 847 (2d Cir. 1994) ........................................................................17, 18

*United States v. Salameh*,
   152 F.3d 88 (2d Cir. 1998) .........................................................................14, 16

*United States v. Torres*,
   719 F.2d 549 (2d Cir. 1983) ..............................................................................25

*United States v. Van Thournout*,
   100 F.3d 590 (8th Cir. 1996) .............................................................................15

*White v. Helling*,
   194 F.3d 937 (8th Cir. 1999) .............................................................................25

**Statutes**

18 U.S.C. § 371 .......................................................................................................21

18 U.S.C. § 1591 ..........................................................................................*passim*

18 U.S.C. § 2422 ......................................................................................................*4*

18 U.S.C. § 2423(a) .................................................................................................*4*

18 U.S.C. § 3282 .....................................................................................................20

18 U.S.C. § 3283 ...............................................................................................20, 21

**Other Authorities**

Fed. R. Crim. P. 7(f) .............................................................................................22

U.S. Const., Amend. V ..........................................................................................18

## PRELIMINARY STATEMENT

Ghislaine Maxwell respectfully submits this Omnibus Memorandum in Support of her Supplemental Pretrial Motions Related to the S2 Superseding Indictment ("Motion").  For the reasons set forth below, Ms. Maxwell moves the Court to:

1. Dismiss Counts One, Three, Five and Six for breach of the Non-Prosecution Agreement;

2. Dismiss Counts Five and Six for violation of the Double Jeopardy Clause;

3. Dismiss Counts Five and Six as time-barred under the statute of limitations;

4. Dismiss Count Five and Either Count One or Count Three as multiplicitous;

5. Dismiss the S2 Indictment for pre-indictment delay;

6. Order a Bill of Particulars as to Counts Five and Six;

7. Order the government to produce Accuser-4's prior statements as *Brady* material.

The S2 Superseding Indictment ("S2 Indictment") demonstrates just how far the government is willing to go to "get" Ms. Maxwell and disingenuously blame her for the crimes of Jeffrey Epstein.  No longer content to charge a 25-year-old case based on purported conduct in the 1990s, the government now sweeps in the 2000s through the allegations of one person—Accuser-4.[1]  But Accuser-4 is not a new witness; she first levied her accusations more than a decade ago.  The Palm Beach FBI and the United States Attorney's Office for the Southern District of Florida ("USAO-SDFL") interviewed Accuser-4 in or around 2007 during their three-year investigation of Epstein's alleged sexual abuse (the "Florida Investigation").  And remarkably, although interviewed just a few years after she claims any misconduct occurred, Accuser-4 *never implicated* Ms. Maxwell.  Instead, she reported ███████████████████████

---

[1] Accuser-4 is identified in the S2 Indictment as Minor Victim-4.

████████████████, facilitated her sexual abuse, and it was ████ or Epstein himself—not Ms. Maxwell—who purportedly called her to schedule massage appointments, sent her gifts, and encouraged her to recruit other young females to provide massages to Epstein.  Indeed, even after interviewing Accuser-4, the USAO-SDFL never found "any specific evidence against" Ms. Maxwell related to the subject of their investigation and thus determined she was not a target of the Florida Investigation.[2]

Epstein, himself, was never charged with federal crimes in connection with the Florida Investigation; ██████████.  Instead, Epstein entered into a Non-Prosecution Agreement ("NPA") in order to "resolve globally" his own criminal exposure and to immunize ████ and any other "potential co-conspirators."[3]  As part of the NPA, Epstein agreed to plead guilty to state prostitution offenses and register as a federal sex offender.  He also agreed, in a novel arrangement, to pay for attorneys to represent his victims in civil lawsuits against him and to waive his right to contest damages up to an agreed-upon settlement amount.  Accuser-4 took full advantage of the NPA; she received both the benefit of experienced counsel and ████████to resolve her claims against Epstein and his "potential co-conspirators."

Now, over 13 years later, Accuser-4 has surfaced again, except this time with apparently brand-new allegations against Ms. Maxwell.  Seemingly unconcerned with the gaping inconsistency in Accuser-4's prior (and near contemporaneous) recollections, the government has added two new counts charging Ms. Maxwell with sex trafficking offenses under 18 U.S.C. § 1591 (Counts Five and Six) and has dramatically expanded the timeframe of the Mann Act

---

[2] Ex. A (Dep't of Justice, Office of Professional Responsibility, Investigation into the U.S. Attorney's Office for the Southern District of Florida's Resolution of its 2006-2008 Federal Criminal Investigation of Jeffrey Epstein and Its Interactions with Victims during the Investigation, November 2020) ("OPR Report") at 167 (internal quotations omitted).

[3] A copy of the NPA is attached hereto as Exhibit B.

conspiracies (Counts One and Three) to 2004 based entirely on Accuser-4's allegations.  But these offenses are the *exact same* offenses that were the subject of the Florida Investigation and resolved by the NPA, which covers "any potential co-conspirators of Epstein," including Ms. Maxwell.

The Court ruled unequivocally that the NPA covers "any involvement of [Ms.] Maxwell in offenses committed by Epstein from 2001 to 2007, other offenses that were the subject of the FBI and U.S. Attorney's Office investigation, and any offenses that arose from the related grand jury investigation."  (Dkt. 207 at 7).  Yet Counts Five and Six fall squarely within all three categories of offenses for which the NPA immunizes Ms. Maxwell:

- The allegations of Accuser-4 fall within the 2001-2007 timeframe and the new counts charge violations of 18 U.S.C. § 1591, a statute specifically enumerated in the NPA.

- The Palm Beach FBI and the USAO-SDFL thoroughly investigated Accuser-4's allegations as part of the Florida Investigation.

- Accuser-4's allegations were presented to the grand jury in that District and formed the basis for a conspiracy charge and a sex trafficking charge in a proposed 60-count federal indictment of Epstein that was dropped pursuant to the terms of the NPA.

Because Counts Five and Six are based on the *exact same* evidence investigated and presented to the SDFL grand jury in 2008, and are the *exact same* crimes included in the proposed SDFL indictment against Epstein later abandoned pursuant to the NPA, the government cannot now charge Ms. Maxwell with these offenses.

Further, the NPA binds the United States Attorney's Office for the Southern District of New York ("USAO-SDNY") as to the newly-indicted counts.  We understand that the Court previously ruled that under *United States v. Annabi*, 771 F.2d 670 (2d Cir. 1985) and its progeny, the language and drafting history of the NPA does not "affirmatively appear" to bind this District

as to the S1 Indictment counts.  However, *Annabi*, by its own terms, is inapposite to the circumstances of this case, where one federal district has agreed that "the United States" will abandon certain offenses as part of a negotiated agreement and then a second federal district later seeks to charge those *very same offenses* based on the *exact same conduct*.  Counts Five and Six of the S2 Indictment are therefore barred by the NPA.  The Court must dismiss these counts, as well as the expanded Mann Act conspiracies charged in Counts One and Three, which incorporate the same conduct charged in Counts Five and Six for which Ms. Maxwell has immunity.

In addition, because the USAO-SDNY is seeking duplicative punishment for the same offenses that were resolved by the NPA, prosecuting Ms. Maxwell on Counts Five and Six violates her rights under the Double Jeopardy Clause.  The Court should also grant the other relief Ms. Maxwell seeks for the reasons set forth below.

## SUMMARY OF NEW ALLEGATIONS IN THE S2 INDICTMENT

Like the S1 Indictment, Counts One and Three of the S2 Indictment allege that Ms. Maxwell conspired to violate two separate provisions of the Mann Act, 18 U.S.C. §§ 2422, 2423(a).  Count One alleges that Ms. Maxwell conspired to entice "one and more individuals" to travel in interstate and foreign commerce to engage in "sexual activity for which a person can be charged with a criminal offense" in violation of 18 U.S.C. § 2422.  (S2 Indictment ¶¶ 11-13).  Count Three alleges that Ms. Maxwell conspired to transport "an individual" in interstate and foreign commerce to engage in "sexual activity for which a person can be charged with a criminal offense" in violation of 18 U.S.C. § 2423(a).  (*Id*. ¶¶ 16-19).  In the S1 Indictment, these counts were based on conduct that occurred at unspecified times between 1994 and 1997.  The S2 Indictment expands the date range of these conspiracies into the 2000s based on the

allegations of Accuser-4, alleging conduct that occurred "[f]rom at least in or about 1994, up to and including in or about 2004."  (*Id*. ¶¶ 11, 17).

The S2 Indictment also adds two new counts—Counts Five and Six—alleging that Ms. Maxwell violated and conspired to violate the federal sex trafficking statute, 18 U.S.C. § 1591. Count Five alleges that Ms. Maxwell conspired with Epstein and others to recruit "a person" knowing that the person "had not attained the age of 18 years and would be caused to engage in a commercial sex act" in violation of 18 U.S.C. § 1591(a).  (*Id*. ¶¶ 23-24).  Count Six charges Ms. Maxwell with a substantive violation of § 1591(a), claiming she "did recruit, entice, harbor, transport, provide, and obtain by any means" individuals who were under the age of 18, including Accuser-4, "who were then caused to engage in at least one commercial sex act with Jeffrey Epstein."  (*Id*. ¶ 27).  Both counts are based on the allegations of Accuser-4 and allege conduct that purportedly occurred "[f]rom at least in or about 2001, up to and including in or about 2004."  (*Id*. ¶¶ 23, 27).

## ARGUMENT

### I.    The NPA Bars Ms. Maxwell's Prosecution on Counts One, Three, Five, and Six.

The NPA bars any prosecution of Ms. Maxwell for the offenses charged in Counts One, Three, Five, and Six of the S2 Indictment.  The Court has already concluded that the NPA bars prosecution for "three specific categories of offenses" deriving from the Florida Investigation:

   (1)   'the offenses set out on pages 1 and 2' of the NPA; namely, 'any offenses that may have been committed by Epstein against the United States from in or around 2001 through in or around September 2007' including five enumerated offenses;

   (2)   'any other offenses that have been the subject of the joint investigation by the Federal Bureau of Investigation and the United States Attorney's Office'; and

   (3)   'any offenses that arose from the Federal Grand Jury investigation.'

5

(Dkt. 207 at 6 (quoting NPA)).  The Court has further concluded that the NPA's co-conspirator provision covers "any involvement of [Ms.] Maxwell" in any of these same three categories of offenses.  (*Id*. at 7).  There can be no serious dispute that the sex trafficking offenses charged in Counts Five and Six were investigated as part of the Florida Investigation and fall squarely within the three categories of immunized offenses that are covered by the NPA.  Moreover, because Counts Five and Six are based on the *exact same* allegations from the *very same* accuser that were previously investigated and presented to the grand jury as part of the Florida Investigation, *Annabi* and its progeny do not apply and the NPA is binding on the USAO-SDNY as to these offenses.  Accordingly, Counts Five and Six must be dismissed.  Moreover, because Counts One and Three incorporate the same conduct from Counts Five and Six for which Ms. Maxwell cannot be prosecuted under the NPA, they must also be dismissed.

### A.  Counts Five and Six Allege the Same Offenses that Were Part of the Florida Investigation and Are Covered by the Plain Terms of the NPA.

The plain terms of the NPA preclude Ms. Maxwell's prosecution on Counts Five and Six because they allege conduct that falls within the date range specified in the NPA and charge specifically enumerated offenses that were part of the Florida Investigation.  Count Five alleges that "[f]rom at least in or about 2001 up to and including in or about 2004," Ms. Maxwell conspired with Epstein to violate 18 U.S.C. § 1591(a), the law prohibiting sex trafficking of minors.  (S2 Indictment ¶¶ 22-25).  Count Six alleges that during the same time period, Ms. Maxwell committed a substantive violation of the same statute.  (*Id*. ¶¶ 26-27).  The NPA bars prosecution for Ms. Maxwell's involvement in "any offenses that may have been committed by Epstein against the United States from in or around 2001 through in or around September 2007 including five enumerated offenses."  (Dkt. 207 at 6 (internal quotations omitted); *see also id.* at 7 (NPA covers, among other things, "any involvement of Maxwell in offenses committed by

Epstein from 2001 to 2007")).  Thus, the time period alleged in both Counts Five and Six falls

squarely within the date range covered by the NPA for which Ms. Maxwell is immunized.

Moreover, 18 U.S.C. § 1591(a) is one of the five enumerated offenses in the NPA.  (Ex. B at 2 of

7).  As such, Counts Five and Six are clearly offenses covered by the NPA.

Ms. Maxwell also cannot be prosecuted on Counts Five and Six because they are based

on the *exact same* allegations that were already thoroughly investigated by the Palm Beach FBI

and USAO-SDFL and were presented to a grand jury in the Southern District of Florida in

connection with the Florida Investigation.  The allegations underlying Counts Five and Six (and

the expanded date range for Counts One and Three) come from a single accuser—Accuser-4—

who alleges that Epstein sexually abused her from approximately 2001-2004 and that Ms.

Maxwell allegedly facilitated that abuse.  (S2 Indictment ¶¶ 9d, 22-27).  Based on our review of

the prior statements of non-testifying witnesses, which the government only recently produced to

the defense on April 13, 2021, we know that FBI Special Agent ████████████████

interviewed the person we believe to be Accuser-4 in connection with the Florida Investigation.

(Ex. C at 22:1-17).[4]  We also know that Special Agent ████████ presented her allegations—

the very same allegations that form the basis for Counts Five and Six—to the grand jury in the

Southern District of Florida in support of a proposed 60-count federal indictment of Jeffrey

Epstein ████████████.  (*Id*. at 22:17-31:6).  The indictment included a conspiracy count and a

substantive count alleging a sex trafficking offense involving Accuser-4.  (*Id*. at 28:3-15

(Accuser-4's allegations formed the basis for "Overt Acts One through 18" and Count Two of

the proposed indictment charging Epstein ████████████ with "procur[ing] [Accuser-4] to

---

[4] Exhibit C is a transcript of the March 18, 2008 grand jury testimony of Special Agent ████████ the lead case agent in charge of the Florida Investigation, in which she summarizes her interview of Accuser-4 and other related evidence.

engage in commercial sex acts knowing that [Accuser-4 was under 18"]).[5]  Pursuant to the

terms of the NPA, the proposed indictment was never returned, and the USAO-SDFL did not

pursue it further, once Epstein pled guilty on June 30, 2008 to Florida state law charges of

solicitation of prostitution and procurement of minors to engage in prostitution.  (Ex. A, OPR

Report at i-ii).

    The similarity of the allegations presented to the SDFL grand jury and those alleged in

Counts Five and Six of the S2 Indictment is striking and self-evident.  The same overt acts,

including the allegations that form the basis for jurisdiction in SDNY over the crimes charged in

Counts Five and Six, were presented to both grand juries.  Furthermore, the proof offered to

corroborate Accuser-4's allegations—*e.g.*, cell phone records, FedEx records, message pad

notes, etc.—was identical.  (*See* Ex. C at 56:21-57:10).  The chart below highlights these

similarities:

| **S2 Indictment** | **SDFL Grand Jury Testimony** |
|---|---|
| Sexual Massages | Sexual Massages |
| "On multiple occasions between approximately 2001-2004, [Accuser-4] provided nude massages to Epstein at the Palm Beach Residence, during which Epstein engaged in multiple sex acts with [Accuser-4]." (S2 Indictment ¶ 9d; *see also id.* at ¶ 25a). | "[F]rom 2001 to 2004, [Accuser-4] provided Mr. Epstein with … over 100 massages and all but three of the massages were sexual[] in nature."  (Ex. C at 23:19-22).<br><br>The massages took place in Epstein's Palm Beach residence and Accuser-4 was either nude or partially nude.  (Ex. C at 22:20-24:6). |
| Payment | Payment |
| "Epstein or one of his employees … paid [Accuser-4] hundreds of dollars in cash" for each massage.  (S2 Indictment ¶ 9d; *see also id.* | "[Accuser-4] was paid between $200 and $400" for each massage. (Ex. C at 23:25-24:10). |

---

[5] The government previously denied Ms. Maxwell's request that it produce copies of the proposed 60-count SDFL indictment and the related 82-page prosecution memo to the defense.  To resolve any ambiguity about the charges in the proposed SDFL indictment and the evidence underlying the counts related to Accuser-4, Ms. Maxwell requests the Court to order the government to produce both of these documents to the defense.

| | |
|---|---|
| at ¶ 25a). | |
| Recruiting Others <br>"Epstein … encouraged [Accuser-4] to recruit other young females to provide sexualized massages[.]"  (S2 Indictment ¶ 9d; *see also id.* at ¶ 25b). | Recruiting Others <br>"Mr. Epstein asked [Accuser-4] if she had any friends that would be interested in performing these massages … that she could bring to him[.]"  (Ex. C at 26:12-16). |
| Gifts to Accuser-4 <br>"On multiple occasions between approximately 2001 and 2004, Epstein's employees … sent [Accuser-4] gifts, including lingerie, from an address in Manhattan, New York to [Accuser-4's] residence in Florida."  (S2 Indictment ¶ 9d; *see also id.* at ¶ 25c). | Gifts to Accuser-4 <br>"Mr. Epstein provided [gifts] to [Accuser-4].… Epstein would provide her with lingerie.… He would also send her [gifts] via FedEx packages to her residence." (Ex. C at 28:20-29:10) (describing subpoenaed FedEx records). |
| Scheduling Massage Appointments <br>"Epstein's employees … called [Accuser-4], including from New York, to schedule appointments for [Accuser-4] to massage Epstein."  (S2 Indictment ¶ 9d; *see also id.* at ¶ 25d).<br><br>"For example, in or about April of 2004 and May of 2004 another employee of Epstein's called [Accuser-4] to schedule appointments."  (S2 Indictment ¶ 25d). | Scheduling Massage Appointments <br>"[S]ometimes ██████ would be … in New York and scheduled [Accuser-4] to come and work, but ██████ primary role was to schedule … [Accuser-4] to come and perform the massages."  (Ex. C at 25:2-6).<br><br>"[O]n or about April 23rd, 2004, ██████ placed a telephone call to a telephone used by [Accuser-4]."  (Ex. C at 17:18-19:4; *see also id.* at 56:24-25 (subpoenaed cell phone records "indicate telephonic contact with ██████")). |

The one critical difference between the allegations in the S2 Indictment and the allegations presented to the SDFL grand jury is this: Accuser-4 *never implicated* Ms. Maxwell in the Florida Investigation.  Ms. Maxwell is not mentioned even *once* in the grand jury testimony concerning Accuser-4.  Instead, the grand jury testimony reflects that Accuser-4 implicated Epstein himself and ████████████████████████████████████████ ████████████████████████████████.  According to Accuser-4, it was ██████ not Ms.

9

Maxwell, who called Accuser-4 from New York to schedule massage appointments.  (Ex. C at

17:18-22, 25:1-6).  It was Epstein, not Ms. Maxwell, who encouraged Accuser-2 to recruit her

friends to give him massages.  (*Id.* at 25:25-26:18).  And it was Epstein, not Ms. Maxwell, who

provided lingerie and other gifts to Accuser-4 and sent FedEx packages to her residence.  (*Id.* at

28:19-29:10).  Furthermore, Accuser-4 alleged that ███ led Accuser-4 upstairs to Epstein's

bedroom the first time she gave him a massage by herself (*id.* at 25:7-15) and that ███ paid

Accuser-4 $500 to take nude photographs of her at the Palm Beach residence at Epstein's request

(*id.* at 27:1-10).

Ultimately, the proposed SDFL indictment sought to charge Epstein ███ not Ms.

Maxwell, with a sex trafficking offense involving Accuser-4.  (*Id.* at 28:11-14 (the evidence

relating to Accuser-4 formed "the basis for the allegation [in Count Two of the proposed SDFL

indictment] that Jeffrey Epstein ███ procured [Accuser-4] to engage in commercial

sex acts knowing that she was under 18")).  This is entirely consistent with the language of the

NPA, ███, and not Ms. Maxwell, as one of the four named "potential co-

conspirators."  (Ex. B at 5 of 7).  In fact, the USAO-SDFL conceded that it never found "any

specific evidence against" Ms. Maxwell related to the subject of their investigation.  (*See* Ex. A,

OPR Report at 167 (internal quotations omitted)).

Hence, it would not only be impermissible under the NPA to prosecute Ms. Maxwell for

the offenses charged in Counts Five and Six of the S2 Indictment because they were "the subject

of" the Florida Investigation and "the related grand jury investigation."  (Dkt. 207 at 7).  It would

also be entirely unjust to base a prosecution in this District on the *same* offenses related to the

*same* accuser who never mentioned Ms. Maxwell—and instead implicated ███—when

she first reported the allegations that form the basis of Counts Five and Six over thirteen years

ago when the events were still recent.[6]  Accordingly, because the USAO-SDNY is bound by the

terms of the NPA as to the offenses charged in Counts Five and Six for the reasons discussed

below, Ms. Maxwell cannot be prosecuted for those counts.

### B.    The NPA Binds the Southern District of New York as to Counts Five and Six.

Although the Court ruled that the NPA does not bind the USAO-SDNY as to the charges

in the S1 Indictment (Dkt. 207 at 4-6), the NPA *does* bind the USAO-SDNY as to the sex

trafficking offenses charged in Counts Five and Six that were added to the S2 Indictment.

*United States v. Annabi*, 771 F.2d 670 (1985) and its progeny, which the Court relied upon in its

earlier ruling, do not mandate a different result.  In its prior ruling, the Court noted that *Annabi*

established "something akin to a clear statement rule" that a plea agreement binds only the U.S.

Attorney's Office for the district in which the plea is entered "unless it affirmatively appears that

the agreement contemplates a broader restriction." (Dkt. 207 at 4 (quoting *Annabi*, 771 F.2d at

672).  That interpretive rule, however, only applies in situations where the district bringing the

second prosecution charges offenses *different* from the offenses resolved by the plea agreement

in the first prosecution.  *Annabi* itself specifically noted that it was not addressing a situation

where the charges in the follow-on prosecution are "identical to the dismissed charges." *Annabi*,

771 F.2d at 672.  Accordingly, the Court is not bound by the rule in *Annabi* because Counts Five

and Six are identical to the charges presented to the SDFL grand jury that were resolved by the

NPA.  When examined without the overlay of *Annabi*, the terms and the drafting history of the

NPA indicate that the agreement should be read to preclude other districts, including the USAO-

---

[6] Accuser-4's statements to the FBI, and any other prior statements in which she did not mention Ms. Maxwell, are exculpatory *Brady* material that the government should immediately produce to the defense.  (*See* Section VII *infra*).

SDNY, from prosecuting Epstein's "potential co-conspirators" for the offenses covered by the NPA.[7]

In *Annabi*, the defendants were arrested at Kennedy Airport on November 23, 1982, in possession of four kilograms of heroin and were charged in a three-count indictment in the Eastern District of New York with (1) conspiracy to import heroin into the United States, (2) a substantive offense of importing heroin, and (3) possession of heroin with intent to distribute. *Id.* at 671. All three charges arose out of the defendants' arrest and the charged conduct was limited to November 23, 1982. *Id.* The defendants agreed to plead guilty to the substantive importation charge (Count Two) to resolve the case. *Id.* At the time of the plea, the prosecutor stated on the record that "the only agreement that exists between the defendants and the Government is that at the time of the imposition of sentence on Count Two, the Government would move to dismiss the two open remaining counts as to each defendant." *Id.* Counts One and Three were dismissed at sentencing. *Id.*

Approximately two-and-a-half years later, the defendants were charged in the Southern District of New York in a multi-count indictment that included one count of conspiracy to distribute heroin (Count One) and one count of engaging in a continuing criminal enterprise (Count Three). *Id.* Both counts alleged a broader period of criminal conduct occurring from October 1982 until March 15, 1985. *Id.* The defendants argued that their plea agreement with the Eastern District of New York barred their prosecution on Counts One and Three of the

---

[7] As argued in our initial motion, Ms. Maxwell maintains that, even if the Court applies *Annabi*, the NPA precludes the USAO-SDNY from prosecuting Ms. Maxwell for any offense she allegedly committed with Epstein. (*See* Dkt. 142 at 18-25; Dkt. 223 at 7-13). We preserve that argument and reassert it with respect to Counts One through Six of the S2 Indictment. However, in light of the Court's prior ruling that the NPA does not bind the USAO-SDNY as to the charges in the S1 Indictment, we argue here that the Court need not, and should not, apply *Annabi* to determine whether the NPA bars the USAO-SDNY from charging the offenses in Counts Five and Six of the S2 Indictment.

Southern District of New York indictment because they arose out of "the same conspiratorial agreement that underlay the charges dismissed in the Eastern District." *Id*. at 672.

The Second Circuit rejected this argument finding that, as a general rule, a plea agreement only binds the prosecutor's office that entered into the agreement, unless it "affirmatively appears that the agreement contemplates a broader restriction." *Id*. However, the Court highlighted the apparent anomaly of this rule, noting that an agreement with "the Government" to dismiss counts of an indictment "might be thought to bar the United States from reprosecuting the dismissed charges in any judicial district unless the agreement expressly limits the scope of the agreement to the district in which the dismissed charges are initially brought." *Id*. The Court further explained that application of the "affirmative appearance" rule was nevertheless appropriate because it had not been presented with a situation where the counts in the second prosecution were identical to the dismissed counts. *Id*. Although the defendants had argued that the charges in Counts One and Three of the SDNY indictment "result[ed] from the same conspiratorial agreement" as the dismissed counts in the EDNY indictment, the Court found that the SDNY charges covered conduct "extending more than two years beyond the date of the period covered by the dismissed charges," are were therefore "not the same as the charges that were dismissed." *Id*. As a result, the Court found that the default rule could be applied in that case. *Id*. ("[T]he new charges are sufficiently distinct at least to warrant application of the … rule concerning construction of plea agreements.").

*Annabi,* therefore, did not hold that the "affirmative appearance" rule of construction applies in cases, like this one, where one federal district has agreed that "the United States" will abandon certain offenses as part of a negotiated agreement, and then a second federal district later seeks to charge those very same offenses based on the exact same conduct. By its own

reasoning, *Annabi* does not apply in these circumstances, nor do subsequent Second Circuit cases that applied the *Annabi* rule.  *See, e.g.*, *United States v. Salameh*, 152 F.3d 88, 118-20 (2d Cir. 1998) (defendant pled guilty in EDNY to using the passport of another person to enter the United States and later charged in SDNY with related, but distinct terrorism offenses); *United States v. Gonzalez*, 93 F. App'x 268, 269-70 (2d Cir. 2004) (defendant pled guilty in the District of New Mexico to drug conspiracy and later charged in the Western District of New York with related, but distinct weapons possession offense).  The Court should not apply them here.

Instead, the Court should follow the Third Circuit's approach in *United States v. Gebbie*, 294 F.3d 540 (3rd Cir. 2002), which involved a situation like this one where the charges in the second prosecution were identical to the dismissed charges.   In *Gebbie*, the defendants were charged in a multi-count indictment in the Southern District of Ohio charging them with various offenses related to a scheme to make false statements to the U.S. Postal Service.  294 F.3d at 542.  As part of their plea agreement, the defendants pled guilty to misprision of a felony in exchange for dismissal of the counts in the indictment.  *Id*. at 543.  The plea agreement further provided that the agreement did not protect the defendants from prosecution for "other crimes or offenses" which "the United States" discovers by independent investigation.  *Id*. at 545-46.  A few months after entering their plea, the defendants were charged in the Western District of Pennsylvania with "the *same* crimes and offenses that were at issue" in the Ohio prosecution.  *Id*. at 546 (emphasis in original).  Because the plea agreement barred "the United States" from prosecuting the defendants for the same crimes covered by the agreement, the question for the Court was: "*who* is bound when a plea agreement refers to 'the United States' or 'the Government'?"  *Id*.  In other words, did the use of the term "the United States" in the Ohio plea

agreement bind the Western District of Pennsylvania and bar it from charging the same offenses

in a subsequent prosecution?  The Court held that it did:

> We hold, therefore, that when a United States Attorney negotiates
> and contracts on behalf of "the United States" or "the
> Government" in a plea agreement for specific crimes, that attorney
> speaks for and binds all of his or her fellow United States
> Attorneys *with respect to those same crimes and those same*
> *defendants*.

*Id*. at 550 (emphasis added); *see also United States v. Van Thournout*, 100 F.3d 590, 594 (8th

Cir. 1996) ("Absent an express limitation, any promises made by an Assistant United States

Attorney in one district will bind an Assistant United States Attorney in another district.");

*United States v. Harvey*, 791 F.2d 294, 303 (4th Cir. 1986) ("It is the Government at large—not

just specific United States Attorneys or United States 'Districts'—that is bound by plea

agreements negotiated by agents of Government.").

This case presents the exact set of circumstances carved out by *Annabi* and directly

addressed in *Gebbie*.  Here, the co-conspirator provision of the NPA provides that if Epstein

abides by the terms of the agreement, "the United States" will not institute any criminal charges

"against any potential co-conspirators of Epstein," which immunizes Ms. Maxwell for the

offenses covered by the NPA.  (Ex. B at 5 of 7; *see also* Dkt. 207 at 7).  As set forth above,

Counts Five and Six of the S2 Indictment are based on the same alleged conduct involving

Accuser-4 from 2001-2004 that was presented to the SDFL grand jury and formed the basis for

several overt acts of a conspiracy charge and a substantive sex trafficking offense against Epstein

in the proposed SDFL indictment.  The prosecution of those offenses was abandoned as part of

the bargain struck in the NPA, which Epstein fully performed and from which Accuser-4

benefitted.  In sum, the USAO-SDNY is trying to prosecute Ms. Maxwell in Counts Five and Six

for the identical charges that were resolved by the NPA.  In these circumstances, *Annabi* and its

progeny do not control.[8]  The Court should instead follow *Gebbie* and find that NPA precludes the USAO-SDNY from charging Counts Five and Six.

This result is consistent with the terms and the drafting history of the NPA.  As noted in our previous motion, the use of the phrase "the United States" in the co-conspirator immunity provision of the NPA stands in stark contrast to Epstein's immunity provision, which is expressly limited to the SDFL.  (Dkt. 223 at 9-10).  The broad language of the co-conspirator provision reflects Epstein's desire, which his attorneys communicated to the USAO-SDFL, that he would be "the only one who takes the blame for what happened" (Ex. A, OPR Report at 167 (internal quotations omitted)).  Furthermore, it is consistent with Epstein's goal "to resolve globally his state and federal criminal liability," which is set forth in the factual recitals of the NPA.  (Ex. B at 2 of 7; *see also* Ex. D ¶ 5 (declaration of AUSA A. Marie Villafaña noting that Epstein "sought a global resolution of the matter").  Epstein and his counsel were clearly aware that the investigation had extended beyond the SDFL and involved New York-based witnesses. Indeed, we now know from discovery recently produced by the government that the government interviewed at least three New York-based witnesses in connection with the Florida Investigation, two of whom implicated other potential co-conspirators of Epstein.  (Exs. E-G). Hence, these provisions of the NPA reflect Epstein's desire to ensure that he would not become embroiled in subsequent prosecutions of his "potential co-conspirators" in any other districts. (Dkt. 223 at 11).

Moreover, this result is consistent with fundamental fairness.  Allowing a federal district to prosecute a defendant for an offense that is identical to one that was already resolved as part of

---

[8] For the same reasons, the Court is not bound by subsequent Second Circuit decisions interpreting *Annabi*, which have found that the use of phrases like "the United States" or "the government" in a plea agreement does not create an "affirmative appearance" to bind other districts.  *See Salameh*, 152 F.3d at 120; *Gonzalez*, 93 F. App'x at 270; *United States v. Brown*, No. 99-1230(L), 2002 WL 34244994, at *2 (2d Cir. Apr. 26, 2002).

a non-prosecution agreement with another district would be a miscarriage of justice. *See United States v. Carter*, 454 F.2d 426, 427-28 (4th Cir. 1972) (federally prosecuting defendant a second time for the same charges previously resolved by a plea agreement with a different federal district puts at stake "the honor of the government[,] public confidence in the fair administration of justice, and the efficient administration of justice in a federal scheme of government"); *Gebbie*, 294 F.3d at 550 ("United States Attorneys should not be viewed as sovereigns of autonomous fiefdoms. They represent the United States, and their promises on behalf of the Government must bind each other absent express contractual limitations or disavowals to the contrary.").   For these reasons, the NPA bars the USAO-SDNY from prosecuting Ms. Maxwell for the offenses charged in Counts Five and Six of the S2 Indictment.  They must therefore be dismissed.

### C.   Counts One and Three Must Also Be Dismissed.

Because Counts Five and Six must be dismissed, the expanded Mann Act conspiracies charged in Counts One and Three must also be dismissed.  In the S1 Indictment, the conspiracies charged in Counts One and Three were confined to a four-year period from 1994-1997, which the Court found was not covered by the NPA.  (Dkt. 207 at 6-7).  In the S2 Indictment, by contrast, the conspiracies charged in Counts One and Three cover a much broader timeframe from 1994-2004 because they incorporate the same conduct from 2001-2004 involving Accuser-4 charged in Counts Five and Six.  As previously discussed, the NPA bars the government from prosecuting Ms. Maxwell for these offenses.  Hence, as currently charged, the government could offer inadmissible evidence excluded by the NPA as proof of Counts One and Three.  It would be impermissible for the jury to consider such evidence in connection with Counts One and Three and any guilty verdict based on proof related to Accuser-4, or any other conduct covered by the NPA, might require reversal.  *See United States v. Rooney*, 37 F.3d 847, 855-56 (2d Cir.

1994) (reversal of conviction may be required due to "prejudicial spillover" in cases in which the jury relies on inadmissible evidence related to an invalidated count to convict on the remaining counts).  Accordingly, the Court must dismiss Counts One and Three as well.

## II.     Prosecuting Ms. Maxwell on Counts Five and Six Would Violate Her Rights Under the Double Jeopardy Clause.

Prosecuting Ms. Maxwell on Counts Five and Six would also violate her rights under the Double Jeopardy Clause.  The Double Jeopardy Clause provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb."  U.S. Const., Amend. V.  The Clause protects criminal defendants against "a second prosecution for the same offense after acquittal," "a second prosecution for the same offense after conviction," and "multiple punishments for the same offense."  *United States v. Lopez*, 356 F.3d 463, 467 (2d Cir. 2004) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969) *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794 (1989)).  The Supreme Court first established the principle that the Double Jeopardy Clause protects against multiple punishments for the same offense almost 150 years ago in *Ex Parte Lange*, 85 U.S. (18 Wall.) 163 (1873), and it is equally important as the protection against a successive prosecution for the same offense.

> If there is anything settled in the jurisprudence of England and America, it is that no man can be twice lawfully punished for the same offence. And … there has never been any doubt of (this rule's) entire and complete protection of the party when a second punishment is proposed in the same court, *on the same facts, for the same statutory offense*.
>
> … (T)he Constitution was designed *as much to prevent the criminal from being twice punished for the same offense* as from being twice tried for it.

*Pearce*, 395 U.S. at 717-18 (quoting *Lange*, 85 U.S. (18 Wall.) at 168) (emphasis added).

Here, it is beyond dispute that Epstein was already punished for the offenses covered by the NPA.  The NPA states that, in return for an agreement not to prosecute him for the offenses

specified in the NPA, Epstein had to fulfill a series of terms and conditions.  These included: (1) pleading guilty in Florida state court to one count of solicitation of prostitution and one count of solicitation of minors to engage in prostitution, (2) registering as a federal sex offender, (3) paying for an attorney to represent his victims to sue him for personal injuries, and (4) waiving his right to contest any damages awarded in those lawsuits up to an agreed-upon amount.  (Ex. B at 2-5 of 7).  One of the government's "key objectives" in the NPA was "to preserve a federal remedy" for Epstein's alleged victims.  (Ex. D ¶ 5).  Epstein fully performed these conditions and paid over $12.5 million in settlements to multiple alleged victims.  (Ex. H).  Indeed, Epstein paid ██████ to the person we believe to be Accuser-4 and her attorneys.  (*Id*.; Ex. I).

The USAO-SDNY cannot now seek additional punishment for the same offenses that were resolved by the NPA.  Courts employ different tests to determine whether two offenses are the same for Double Jeopardy purposes.  To determine whether a successive conspiracy prosecution is distinct from a previous conspiracy prosecution charged under the same statute, courts evaluate the so-called *Korfant* factors; namely:

> (1) the criminal offenses charged in successive indictments;
> (2) the overlap of participants;
> (3) the overlap of time;
> (4) similarity of operation;
> (5) the existence of common overt acts;
> (6) the geographic scope of the alleged conspiracies or location where overt acts occurred;
> (7) common objectives; and
> (8) the degree of interdependence between alleged distinct conspiracies.

*Lopez*, 356 F.3d at 468 (quoting *United States v. Korfant*, 771 F.2d 660, 662 (2d Cir.1985) (per curiam)).  "[I]f a defendant makes a non-frivolous showing that two indictments in fact charge only one conspiracy, the burden shifts to the prosecution to show, by a preponderance of the

evidence, that there are in fact two distinct conspiracies and that the defendant is not being placed in jeopardy twice for the same crime." *Id*. at 467 (citations omitted).

As previously discussed, it is clear from the grand jury testimony that Counts Five and Six of the S2 Indictment charge the same offenses based on the same allegations of Accuser-4 that were presented to the SDFL grand jury and formed the basis for a conspiracy count and a substantive sex trafficking count in the proposed SDFL indictment. (*See* Section I *supra*). The government cannot make a contrary showing. Accordingly, prosecuting Epstein for Counts Five and Six would violate the Double Jeopardy Clause. And because Epstein negotiated immunity for Ms. Maxwell and any other "potential co-conspirators" as part of the terms of the NPA, Ms. Maxwell cannot be prosecuted for those crimes either. *See United States v. Cambindo Valencia*, 609 F.2d 603, 637 (2d Cir. 1979) ("If [the defendant's] earlier plea is found to bar prosecution of him because of double jeopardy, since concededly the plea included an agreement to drop the charges against [his wife], the instant prosecution of [his wife] will also be barred."). Counts Five and Six of the S2 Indictment must therefore be dismissed.

## III.    Counts Five and Six Are Time-Barred.

Counts Five and Six should also be dismissed because they are time-barred by the applicable five-year statute of limitations under 18 U.S.C. § 3282. In its previous motions related to the S1 Indictment, the government asserted that the Mann Act counts (Counts One through Four) are timely because they are governed by 18 U.S.C. § 3283, which was amended in 2003 to extend the limitations period for "offense[s] involving the sexual or physical abuse … of a child under the age of 18 years" to "during the life of the child." (Dkt. 204 at 24-26, 36-41). Ms. Maxwell argued that 18 U.S.C. § 3283 did not apply to the Mann Act offenses because they do not "necessarily entail" the sexual abuse of a minor and therefore are not "offense[s] involving" such conduct. (Dkt. 144 at 12-17; Dkt. 206 at 10-15). The Court ruled in favor of the

government.  (Dkt. 207 at 9-13).  Ms. Maxwell nevertheless preserves her argument and reasserts it with respect to Counts Five and Six of the S2 Indictment.

As it existed in 2004, the federal sex trafficking statute, 18 U.S.C. § 1591, charged in Counts Five and Six of the S2 Indictment provided that "[w]hoever knowingly … recruits, entices, harbors, transports, provides, or obtains by any means a person … knowing that … the person has not attained the age of 18 years and will be caused to engage in a commercial sex act" is guilty of a crime."  18 U.S.C. § 1591(a) (2004).  Because the statute uses the phrase "will be caused" before the phrase "to engage in a commercial sex act," it is not necessary for the commercial sex act to take place for the crime to be complete.  *See United States v. Garcia-Gonzalez*, 714 F.3d 306, 312 (5th Cir. 2013) ("The future verb tense of the phrase 'will be caused'—which precedes 'to engage in a commercial sex act'"—indicates that a sex act does not have to occur to satisfy the elements of the child-sex-trafficking offense.").  For the reasons already set forth in Ms. Maxwell's previous motion, the statute of limitations in 18 U.S.C. § 3283 does not govern 18 U.S.C. § 1591 because the offense does not "necessarily entail" the sexual abuse of a minor and therefore is not an "offense involving" such conduct.  Counts Five and Six must therefore be dismissed.

## IV.  The Court Should Dismiss Count Five and Either Count One or Count Three as Multiplicitous.

Count Five must also be dismissed along with either Count One or Count Three as multiplicitous.  In her previous motions, Ms. Maxwell argued that the Court should dismiss either Count One or Count Three of the S1 Indictment as multiplicitous because they charged the same conspiracy under 18 U.S.C. § 371.  (Dkt. 122, 210).  Count Five of the S2 Indictment charges Ms. Maxwell with yet another § 371 conspiracy from 2001-2004 based on the allegations of Accuser-4.  (S2 Indictment ¶¶ 22-25).  These same allegations are fully

incorporated into the broader Mann Act conspiracies charged in Counts One and Three.  (*Id*. ¶¶
1-9, 11-13, 16-19).  For the same reasons discussed in her prior motion, the Court should dismiss
Count Five and either Count One or Count Three as multiplicitous.

**V.      The Court Should Dismiss the S2 Indictment for Pre-Indictment Delay.**

The Court should also dismiss the S2 indictment due to the government's excessive and
prejudicial delay in bringing this prosecution against Ms. Maxwell in violation of her due
process rights.  In her previous motions, Ms. Maxwell argued that the Court should dismiss the
S1 Indictment due to the excessive pre-indictment delay in charging her with those offenses.
(Dkt. 138, 209).  The S2 Indictment only compounds these issues by charging additional
offenses based on alleged conduct that the government has known about since in or about 2007,
which it added for tactical reasons to shore up its case against Ms. Maxwell.  For the same
reasons discussed in her prior motion, the Court should dismiss the S2 Indictment.  The Court
denied Ms. Maxwell's initial motion on these grounds, but preserved Ms. Maxwell's ability to
renew her motion after trial.  (Dkt. 207 at 18).  Accordingly, we request that the Court defer
consideration of this motion until trial.

**VI.     The Court Should Order a Bill of Particulars as to Counts Five and Six.**

The Court should also order the government to file a Bill of Particulars pursuant to Rule
7(f) of the Federal Rules of Criminal Procedure because Counts Five and Six of the S2
Indictment do not sufficiently inform her of the nature of the charges against her.  Rule 7(f)
permits a defendant to seek a bill of particulars "in order to identify with sufficient particularity
the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to
prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second
time for the same offense."  *United States v. Bortnovsky,* 820 F.2d 572, 574 (2d Cir. 1987).
Counts Five and Six allege conduct that purportedly occurred over the course of a broad four-

time period from 2001-2004.  The counts do not specify, however, the dates that any of this alleged conduct occurred.  For example, the S2 Indictment does not specify when Ms. Maxwell "interacted" with Accuser-4 or allegedly "recruited" her "to engage in sex acts with Epstein" or "enticed" her "to recruit other girls to engage in paid sex acts with Epstein."  (S2 Indictment ¶¶ 9d, 25a, 25b).  Nor does the S2 Indictment specify when Ms. Maxwell allegedly paid Accuser-4 or sent her gifts or called her to schedule massage appointments.  (Id. ¶¶ 9d, 25c, 25d).  A Bill of Particulars for Counts Five and Six is therefore necessary and appropriate.  *See Bortnovsky*, 820 F.2d at 575 (Bill of Particulars warranted where "[t]he relevance of key events was shrouded in mystery at the commencement of and throughout the trial").  *Id.* at 575.

Furthermore, as discussed above, Ms. Maxwell has already credibly asserted that her prosecution on Counts Five and Six is barred by the Double Jeopardy Clause.  (*See* Section II *supra*).  In order "to interpose [her] plea of double jeopardy," Ms. Maxwell must confirm what is apparent from the grand jury testimony of Special Agent ███████ – that the offenses charged in Counts Five and Six are the same offenses that were presented to the SDFL grand jury.

Accordingly, for these reasons and the reasons already discussed in our previous motion for a Bill of Particulars, the Court should order the government to file a Bill of Particulars identifying the following information related to Counts Five and Six of the S2 Indictment:

    (1)    The dates when Ms. Maxwell allegedly met and/or interacted with Accuser-4.  (S2 Indictment ¶ 9d).

    (2)    The dates when Ms. Maxwell allegedly "groomed" or "recruited" Accuser-4 "to engage in sex acts with Epstein."  (*Id.* ¶¶ 9d, 25a).

    (3)    The dates when Accuser-4 allegedly provided "nude massages" to Epstein, during which Epstein "engaged in multiple sex acts" with Accuser-4. (*Id.* ¶ 9d).

    (4)    The dates when Ms. Maxwell allegedly was "present" when [Accuser-4] "was nude in the massage room of the Palm Beach Residence." (*Id.* ¶ 9d).

(5)     The dates when, and locations where, Ms. Maxwell allegedly paid Accuser-4 "hundreds of dollars in cash." (*Id.* ¶¶ 9d, 25a).

(6)     The dates when, and locations where, Ms. Maxwell allegedly "encouraged [Accuser-4] to recruit other young females to provide sexualized massages to Epstein." (*Id.* ¶¶ 9d, 25b).

(7)     The dates when, and locations where, Ms. Maxwell allegedly "invited [Accuser-4] to travel with Epstein" and "offered to assist [Accuser-4] with obtaining a passport for purposes of such travel." (*Id.* ¶ 9d).

(8)     The dates when, and locations where, Ms. Maxwell allegedly "sent [Accuser-4] gifts." (*Id.* ¶¶ 9d, 25c).

(9)     The dates when, and locations where, Ms. Maxwell allegedly called Accuser-4 "to schedule appointment for [Accuser-4] to massage Epstein." (*Id.* ¶¶ 9d, 25d).

(10)    The dates when the conspiracy charged in Count Five began and ended. (*Id.* ¶ 23).

(11)    The identities of the "others" who allegedly participated in the conspiracy charged in Count Five with Epstein and Ms. Maxwell. (*Id.* ¶¶ 23-24).

(12)    The identities of any individuals who were enticed to travel, or were transported, in interstate or foreign commerce to engage in illegal sexual activity with Epstein during the time period of the charged Mann Act conspiracies (1994-2004), apart from Minor Victims-1-4. (*Id.* ¶¶ 13, 19).

## VII.   The Court Should Order the Government to Produce Accuser-4's Prior Statements as *Brady* Material.

As explained above, it is apparent from the non-testifying witness material, which the government produced just a few weeks ago on April 13, 2021, that Accuser-4 has only recently included Ms. Maxwell in her allegations of sexual abuse. In her summary of Accuser-4's allegations that she gave to the SDFL grand jury on March 18, 2008, Special Agent ███████ made no mention of Ms. Maxwell, indicating that Accuser-4 never discussed Ms. Maxwell when the FBI interviewed her in connection with the Florida Investigation. Indeed, it is clear from the grand jury testimony that Accuser-4 implicated ████████, not Ms. Maxwell. Only now, 13 years after she first reported these events to the Palm Beach FBI and several months after Ms.

Maxwell had been indicted and publicly vilified in the press as Epstein's primary accomplice, did Accuser-4 suddenly allege for the very first time that Ms. Maxwell was involved in Epstein's sexual abuse.  Accuser-4 now claims that Ms. Maxwell, among other things, "groomed" her to engage in sexualized massages with Epstein, encouraged her to recruit others to do the same, and was present when Accuser-4 was nude in the massage room of the Palm Beach Residence.  (S2 Indictment ¶ 9d).  Had Ms. Maxwell, in fact, done the things that Accuser-4 now accuses her of doing, Accuser-4 certainly would have mentioned it to the FBI and those allegations would have been part of the SDFL grand jury presentation.  Ms. Maxwell surely would have been named as a co-conspirator in the proposed 60-count indictment like ███  That never happened.  (*See* Ex. A, OPR Report at 167 (internal quotations omitted)) (USAO-SDFL never found "any specific evidence against" Ms. Maxwell related to the subject of the investigation).

An informed witness who fails to mention the defendant when making a report to law enforcement is exculpatory under *Brady.  United States v. Torres*, 719 F.2d 549, 555-56 (2d Cir. 1983); *Jones v. Jago*, 575 F.2d 1164, 1168 (6th Cir. 1978); *Clemmons v. Delo*, 124 F.3d 944, 952 (8th Cir. 1997); *White v. Helling*, 194 F.3d 937, 944 (8th Cir. 1999).  Accordingly, Accuser-4's prior statements to the FBI, and any other prior statements in which she did not mention Ms. Maxwell, are exculpatory *Brady* material that the government must immediately produce to the defense.  As the Court ruled:

> The Government must disclose to the defense all information 'favorable to an accused' that is 'material either to guilt or to punishment' and that is known to the Government. . . . The Government shall disclose such information to the defense *promptly after its existence becomes known to the Government* so that the defense may make effective use of the information in the preparation of its case.

(Dkt. 68 at 1) (emphasis added).

**VIII.** **Ms. Maxwell Incorporates All of the Arguments Raised in Her Initial Pretrial Motions and Reasserts Them as to the S2 Indictment.**

To the extent she has not already done so, Ms. Maxwell incorporates by reference all of the arguments she raised in her pretrial motions related to the S1 Indictment and reasserts them here with respect to the S2 Indictment.[9]  For the reasons set forth in those motions, the Court should grant the requested relief as to the S2 Indictment.

**CONCLUSION**

For the foregoing reasons, Ms. Maxwell respectfully requests that the Court (1) dismiss Counts One, Three, Five, and Six of the S2 Indictment for breach of the NPA, (2) dismiss Counts Five and Six of the S2 Indictment for violation of Ms. Maxwell's rights under the Double Jeopardy Clause, and (3) grant her other requested relief.

Dated:  May 7, 2021
      New York, New York

      Respectfully submitted,

      */s/ Christian R. Everdell*
      Christian R. Everdell
      COHEN & GRESSER LLP
      800 Third Avenue
      New York, NY 10022
      Phone: 212-957-7600

      Jeffrey S. Pagliuca
      Laura A. Menninger
      HADDON, MORGAN & FOREMAN P.C.
      150 East 10th Avenue
      Denver, Colorado 80203
      Phone: 303-831-7364

---

[9] We exclude the arguments raised in the Motion to Dismiss the Superseding Indictment as It Was Obtained in Violation of the Sixth Amendment (Dkt. 126, 211), as Ms. Maxwell has conceded that the S2 Indictment renders these claims moot.  (Dkt. 225).

Bobbi C. Sternheim
Law Offices of Bobbi C. Sternheim
33 West 19th Street - 4th Floor
New York, NY 10011
Phone: 212-243-1100

*Attorneys for Ghislaine Maxwell*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 7, 2021, I served by email, pursuant Rule 2(B) of the Court's individual practices in criminal cases, the within memorandum and accompanying exhibits upon the following:

Maurene Comey, Esq.
Maurene.Comey@usdoj.gov

Alison Moe, Esq.
Alison.Moe@usdoj.gov

Lara Pomerantz, Esq.
Lara.Pomerantz@usdoj.gov

Andrew Rohrbach, Esq.
Andrew.Rohrbach@usdoj.gov

*/s/ Christian R. Everdell*
Christian R. Everdell