UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

UNITED STATES OF AMERICA                    :

   -v.-                                            :          S2 20 Cr. 330 (AJN)

GHISLAINE MAXWELL,                          :

                    Defendant.           :

-------------------------------------------------------------x

## THE GOVERNMENT'S MEMORANDUM IN OPPOSITION
## TO THE DEFENDANT'S SUPPLEMENTAL PRE-TRIAL MOTIONS

AUDREY STRAUSS
United States Attorney
Southern District of New York
Attorney for the United States of America

Maurene Comey
Alison Moe
Lara Pomerantz
Andrew Rohrbach
Assistant United States Attorneys
- Of Counsel -

1

**TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ............................................................................................ **1**

**ARGUMENT** ....................................................................................................................... **2**

**I.   Jeffrey Epstein's Non-Prosecution Agreement Does Not Bar the Superseding Indictment** ............................................................................................................ **2**

**II.   Counts Five and Six Are Not Barred by the Double Jeopardy Clause** ............................. **7**

**III.  Counts Five and Six Are Timely** .............................................................................. **11**

**IV.  The Defendant's Motion to Dismiss the S2 Indictment Based on Alleged Improper PreTrial Delay Should Be Denied** ........................................................................ **13**

**V.   The Defendant's Motion to Dismiss Count Five and Either Count One or Count Three as Multiplicitous Is Premature** ......................................................................... **16**

**VI.  A Bill of Particulars Is Not Warranted** ..................................................................... **17**

**VII. Minor Victim-4's Prior Statements Constitute *Giglio* and Jencks Act Material, Which Do Not Warrant Immediate Disclosure** ............................................................... **20**

**CONCLUSION** ................................................................................................................. **22**

# TABLE OF AUTHORITIES

<u>Cases</u>

*Evans v. Michigan*, 568 U.S. 313 (2013).........................................................................................9

*Gamble v. United States*, 139 S. Ct. 1960 (2019) ...........................................................................8

*Landgraf v. USI Film Products*, 511 U.S. 244 (1994)............................................................. 12, 13

*Morris v. Reynolds*, 264 F.3d 38 (2d Cir. 2001) ............................................................................9

*Serfass v. United States*, 420 U.S. 377 (1975)...............................................................................8

*United States v. Abbamonte*, 759 F.2d 1065 (2d Cir. 1985) ..........................................................3

*United States v. Alessi*, 544 F.2d 1139 (2d Cir. 1976)...................................................................3

*United States v. Annabi*, 771 F.2d 670 (2d Cir. 1985) (per curiam).................................. 2, 3, 4, 9

*United States v. Bonventre*, 646 F. App'x 73 (2d Cir. 2016)........................................................21

*United States v. Cambindo Valencia*, 609 F.2d 603 (2d Cir. 1979) ...................................... 11, 12

*United States v. Campo Flores*, No. 15 Cr. 765 (PAC), 2016 WL 5946472 (S.D.N.Y. Oct. 12, 2016)........................................................................................................................................23

*United States v. Chen*, 378 F.3d 151 (2d Cir. 2004) .....................................................................21

*United States v. Coppa*, 267 F.3d 132 (2d Cir. 2001)..................................................................23

*United States v. Cornielle*, 171 F.3d 748 (2d Cir. 1999) .............................................................15

*United States v. Dionisio*, 503 F.3d 78 (2d Cir. 2007)...................................................... 8, 9, 10, 11

*United States v. Drago*, No. 18 Cr. 0394 (SJF) (AYS), 2019 WL 3072288 (E.D.N.Y. July 15, 2019)........................................................................................................................................17

*United States v. Gebbie*, 294 F.3d 540 (3rd Cir. 2002) .................................................................7

*United States v. Gonzalez*, 93 F. App'x 268 (2d Cir. 2004) ..........................................................6

*United States v. Hernandez*, No. 09 Cr. 625 (HB), 2009 WL 3169226 (S.D.N.Y. Oct. 1, 2009) .. 9

*United States v. Herrera*, No. 02 Cr. 477 (LAK), 2002 WL 31133029 (S.D.N.Y. Sept. 23, 2002) ....................................................................................................................................................10

*United States v. Josephberg*, 459 F.3d 350 (2d Cir. 2006) (per curiam) .....................................18

*United States v. Laskow*, 688 F. Supp. 851, 853-56 (E.D.N.Y. 1988)...........................................6

*United States v. Losada*, 674 F.2d 167 (2d Cir. 1982).................................................................12

*United States v. Mahabub*, No. 13 Cr. 908 (AJN), 2014 WL 4243657 (S.D.N.Y. Aug. 26, 2014) ....................................................................................................................................................19

*United States v. Marcus*, 628 F.3d 36 (2d Cir. 2010) ..................................................................19

*United States v. Muric*, No. 10 Cr. 112 (LTS), 2010 WL 2891178 (S.D.N.Y. July 13, 2010) .... 17

*United States v. Nixon*, 418 U.S. 683 (1974) ...............................................................................23

*United States v. Olmeda*, 461 F.3d 271 (2d Cir. 2006).................................................................10

*United States v. Pierre-Louis*, No. 16 Cr. 541 (CM), 2018 WL 4043140 (S.D.N.Y. Aug. 9, 2018) ....................................................................................................................................................15

*United States v. Podde*, 105 F.3d 813 (2d Cir. 1997) ................................................................8, 9

*United States v. Prisco*, 391 F. App'x 920 (2d Cir. 2010)............................................................6

*United States v. Rivera*, 844 F.2d 916 (2d Cir. 1988)..................................................................6

*United States v. Salameh*, 152 F.3d 88 (2d Cir. 1998)..................................................................6

*United States v. Torres*, 901 F.2d 205 (2d Cir. 1990)............................................................ 19, 21

*United States v. Vanhoesen*, 366 F. App'x 264 (2d Cir. 2010)......................................................8

*United States v. Walsh*, 194 F.3d 37 (2d Cir. 1999) ....................................................................19

*United States v. Wedd*, No. 15 Cr. 616 (KBF), 2016 WL 1055737 (S.D.N.Y. Mar. 10, 2016) ... 21

*Van Stuyvesant v. Conway*, No. 03 Civ. 3856 (LAK), 2007 WL 2584775 (S.D.N.Y. Sept. 7, 2007) ...................................................................................................................................... 15

Statutes

18 U.S.C. § 1591 ...................................................................................................................... 13, 18

18 U.S.C. § 2422 ............................................................................................................................ 18

18 U.S.C. § 2423(a) ....................................................................................................................... 18

18 U.S.C. § 3283 ................................................................................................................... 1, 12, 14

18 U.S.C. § 3299 ...................................................................................................................... 13, 14

Federal Rule of Criminal Procedure 7(f) ...................................................................................... 19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

UNITED STATES OF AMERICA                  :

   -v.-                                                    :        S2 20 Cr. 330 (AJN)

GHISLAINE MAXWELL,                         :

                  Defendant.       :

-------------------------------------------------------------x

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum in opposition to the defendant's supplemental pre-trial motions, dated May 7, 2021 (the "Defense Motions"). For the reasons that follow, and for the reasons set forth in the Government's memorandum in opposition to the defendant's twelve pre-trial motions, dated February 26, 2021, and the Court's Opinion and Order, dated April 16, 2021 (Dkt. No. 207, the "April Opinion" or "Apr. Op."), the Defense Motions should be denied in their entirety.

*First*, the non-prosecution agreement between Jeffrey Epstein and the U.S. Attorney's Office for the Southern District of Florida does not apply to this District and does not bar the prosecution of the defendant. *Second*, the Double Jeopardy Clause does not prohibit the prosecution of the defendant, who has never previously risked conviction for the sex trafficking offenses contained in Counts Five and Six of Indictment S2 20 Cr. 330 (the "S2 Indictment"). *Third*, Counts Five and Six of the S2 Indictment, which plainly involve the sexual abuse of minors, are timely under 18 U.S.C. § 3283, which provides an extended statute of limitations for such crimes. *Fourth*, the defendant's claim that the Government delayed in bringing the S2 Indictment fails as a matter of law and fact. *Fifth*, the defendant's motion to dismiss certain conspiracy counts

1

as multiplicitous remains premature.  *Sixth*, a bill of particulars is not warranted, especially when both the speaking indictment and discovery in this case provide ample details regarding the charged offenses.  *Seventh*, the defendant's request for immediate disclosure of impeachment material regarding one of the Government's witnesses should be denied consistent with this Court's prior conclusion that such material may be provided closer to trial.

## ARGUMENT

### I.   Jeffrey Epstein's Non-Prosecution Agreement Does Not Bar the Superseding Indictment

In an Opinion and Order dated April 16, 2021, the Court denied the defendant's previous motion to dismiss the Indictment based on a 2007 non-prosecution agreement ("NPA") between Jeffrey Epstein and the U.S. Attorney's Office for the Southern District of Florida (the "USAO-SDFL").  The Court concluded, among other things, that "under controlling Second Circuit precedent, the NPA does not bind the U.S. Attorney for the Southern District of New York."  (Apr. Op. at 3).  In reaching this conclusion, the Court followed *United States v. Annabi*, 771 F.2d 670, 672 (2d Cir. 1985) (per curiam), which held that "[a] plea agreement binds only the office of the United States Attorney for the district in which the plea is entered unless it affirmatively appears that the agreement contemplates a broader restriction."  (Apr. Op. at 4).  The defendant now moves to dismiss again based on the NPA.  The bulk of the defendant's motion discusses the similarity between the additional charges in the S2 Indictment and the crimes enumerated in the immunity provisions of the NPA.  But it does not matter what—or whom—the NPA purports to immunize, since the Court has already concluded that, under *Annabi*, the NPA does not bind this District.

The defendant cannot clear the initial hurdle of establishing that the NPA applies in this District and, accordingly, the motion should be denied.  In an effort to relitigate the Court's April Opinion, the defendant now claims that the rule of *Annabi* "only applies in situations where the

district bringing the second prosecution charges offenses *different* from the offenses resolved by the plea agreement in the first prosecution."  (Def. Mot. at 11) (emphasis in original).  The defendant is wrong.  *Annabi* contains no such exception, and the Government is not aware of any court in this Circuit to apply such a rule.

In *Annabi*, the Second Circuit articulated a universal principle for interpreting whether a plea agreement is binding outside the district where it was executed.  *Annabi* explained that, although it "might be thought" that a U.S. Attorney's Office's agreement which provided that "'the Government' will dismiss counts of an indictment" would bind the United States in every judicial district, "the law has evolved to the contrary."  771 F.2d at 672.  Relying on several of its precedents, the Court explained that the default rule in this Circuit is that plea agreements bind only the district involved, absent an affirmative appearance to the contrary.  *Id.*  In particular, the Second Circuit relied on its opinions in *United States v. Abbamonte*, 759 F.2d 1065, 1072 (2d Cir. 1985), and *United States v. Alessi*, 544 F.2d 1139, 1154 (2d Cir.), *cert. denied*, 429 U.S. 960 (1976).  Nothing about the reasoning of *Annabi* turned on whether the new case charged the same offenses that were at issue in the original plea agreement or other offenses that might still be covered by the plea agreement.  The holding of *Annabi* is clear and straightforward, and this Court has already concluded that, under *Annabi*, there is no affirmative appearance that the NPA binds entities aside from the USAO-SDFL.

The defendant now claims that when the Government brings charges that are similar to those contained in a plea agreement, *Annabi* is silent, and that the Court is therefore free to apply the opposite presumption, namely, that the plea agreement is universally binding on the Government.  The defendant's argument rests exclusively on the phrase "identical to the dismissed charges," which appears in a paragraph in *Annabi*.  (Def. Mot. at 11).  The defendant's reliance on

this phrase is entirely misplaced.  That phrase appears in a specific portion of the Second Circuit's opinion, in which the panel rejected the defendants' attempt to distinguish *Abbamonte* and *Alessi* by saying that they were only seeking the same protection afforded by the Double Jeopardy Clause, while *Abbamonte* and *Alessi* involved protections greater than the Double Jeopardy Clause. *Annabi*, 771 F.2d at 672.  In rejecting that argument, the Court explained:

> The argument fails for two reasons. First, since appellants were never in jeopardy on the charges dismissed in the Eastern District, the protection they now seek under the plea agreement is necessarily broader than that accorded by the Double Jeopardy Clause. Second, to the extent that the appellants rely on a claim that the Clause, if applicable, would protect them from prosecution on charges identical to those dismissed, the short answer is that the pending charges, covering conduct extending more than two years beyond the date of the period covered by the dismissed charges, are not the same as the charges that were dismissed. Even if, as appellants contend, the Southern District charges result from the same conspiratorial agreement that underlay the charges dismissed in the Eastern District, the allegation that the conspiracy extended for an additional two years suffices to show that the new charges are not identical to the dismissed charges.

*Id.*  As the foregoing makes clear, the Second Circuit did not in any way qualify the plain-statement rule set forth in its opinion.  Rather, the Second Circuit addressed the defendant's efforts to distinguish precedent based on the Double Jeopardy Clause and explained why the Clause did not preclude a prosecution in that case.  In other words, this language in *Annabi* was cabined to an analysis under the Double Jeopardy Clause.  As discussed in greater detail below, the Double Jeopardy Clause does not preclude a prosecution in this case because Maxwell has not previously been prosecuted for the offenses in the S2 Indictment.

Ignoring the Double Jeopardy language in *Annabi*, the defendant argues that the phrase "identical to the dismissed charges" somehow creates a different rule of interpretation for plea agreements, under which the Court must first analyze the similarity between the NPA and the S2

4

Indictment before determining whether the plain-statement rule of *Annabi* applies.  *Annabi*, the defendant suggests, creates a three-part schema for analyzing the relationship between newly charged offenses and earlier plea agreements: if the offense is not covered by the plea agreement, the agreement is irrelevant; if the offense is covered by the agreement but different[1] from a count "resolved" when that agreement was entered, the *Annabi* rule applies; and if the offense is identical to a "resolved" count, *Annabi* is silent.  (Def. Mot. at 13-14).  Nothing in *Annabi* comes close to articulating this unusual and confusing rule.  Instead, the language the defendant points to in *Annabi* simply addressed—and rejected—the defendants' effort to distinguish precedent.  Indeed, nothing about the reasoning of *Annabi* turned on whether the new case charged the same offenses that were at issue in the original plea agreement or other offenses that might still be covered by the plea agreement.

Moreover, the cases in which the Second Circuit has applied *Annabi* provide no support to the defendant's theory.  Like *Annabi* itself, those cases evaluate the text and history of plea agreements to determine the scope of the immunity provided by those agreements, including by application of the affirmative appearance rule.  *See, e.g.*, *United States v. Prisco*, 391 F. App'x 920, 921 (2d Cir. 2010) (summary order) ("In the absence of any language in the New Jersey plea agreement to suggest otherwise, and with no compelling reason to infer any intent to the contrary, we decline to extend the New Jersey plea agreement beyond its clearly stated terms." (citation omitted)); *United States v. Gonzalez*, 93 F. App'x 268, 270 (2d Cir. 2004) ("Thus, we conclude

---

[1] The defense motion uses the phrase "exact same" when asserting that this rule exists, but it is unclear what precisely that means because it is not a legal term of art, and there are of course complicated considerations when examining the similarity or differences between charges, as Double Jeopardy Clause jurisprudence illustrates.  The defendant's motion does not offer a mode of analysis for this nuanced issue, but in any event the Court need not resolve the question of whether the charges in the NPA are indeed the "exact same," because the NPA does not apply at all in this District.

that Gonzalez could not have reasonably understood the plea agreement to restrict the Western District of New York."); *United States v. Salameh*, 152 F.3d 88, 120 (2d Cir. 1998) ("Here, Ajaj presents no evidence that the parties to the Eastern District plea agreement contemplated that it would bar the prosecution of Ajaj in any district other than the Eastern District."). But they contain no analysis of overlap between immunized offenses and the offense charged—a question that can be analytically complicated—when evaluating whether the affirmative appearance rule applies at all. *See, e.g.*, *Prisco*, 391 F. App'x at 931; *United States v. Laskow*, 688 F. Supp. 851, 853-56 (E.D.N.Y. 1988) (analyzing whether the Eastern District of New York was bound by a California plea agreement and then discussing the "unnecessary" question whether the new charges fell within the scope of the plea agreement), *aff'd*, 867 F.2d 1425 (2d Cir.) (tbl.); *cf., e.g.*, *United States v. Rivera*, 844 F.2d 916, 922-24 (2d Cir. 1988) (analyzing whether a narcotics conspiracy count, dismissed pursuant to a plea agreement with USAO-SDNY, was the same narcotics conspiracy later charged by USAO-SDNY).[2]

As the foregoing cases illustrate, the Second Circuit has repeatedly cited *Annabi* for a clear rule of interpretation: a plea agreement does not bind another district unless it affirmatively appears otherwise. Under this clear rule, this Court has already held that the NPA does not bind this District. To be sure, if the NPA applied in this District—and if Maxwell could invoke it—the

---

[2] In her motion, the defendant urges the Court to apply caselaw from the Third Circuit. This Court is, of course, bound by *Annabi* and not by the decisions of a circuit that expressly deviates from *Annabi*'s rule. *See United States v. Gebbie*, 294 F.3d 540, 546-50 (3rd Cir. 2002) (criticizing *Annabi* and holding that "that when a United States Attorney negotiates and contracts on behalf of 'the United States' or 'the Government' in a plea agreement for specific crimes, that attorney speaks for and binds all of his or her fellow United States Attorneys with respect to those same crimes and those same defendants").

crimes listed in the NPA overlap with some (but not all)[3] of the offenses in the S2 Indictment.  But at this stage of the litigation, in which the Court has already concluded that the NPA has no force in this District, it makes no difference what the precise terms of the NPA were.  The NPA has no bearing on this case.

The balance of the defendant's motion seeks to relitigate the Court's rulings in this case, asserting that the history of the negotiations of the NPA indicate that the parties intended broader coverage.  (Def. Mot. at 16).  This Court has firmly rejected that argument and has concluded that "[n]o evidence suggests anyone promised Epstein that the NPA would bar the prosecution of his coconspirators in other districts."  (Apr. Op. at 6).  The motion should be denied for precisely this reason.

## II.    Counts Five and Six Are Not Barred by the Double Jeopardy Clause

It is axiomatic that "an accused must suffer jeopardy before he can suffer double jeopardy." *Serfass v. United States*, 420 U.S. 377, 393 (1975).  Here, the S2 Indictment is the first time the defendant has been charged with sex trafficking and sex trafficking conspiracy, and the Double Jeopardy Clause therefore does not prohibit prosecution of those offenses.  The defendant's argument to the contrary fundamentally misunderstands that Clause's protections.

"[A]t its core," the Double Jeopardy Clause "means that those acquitted or convicted of a particular 'offence' cannot be tried a second time for the same 'offence.'" *Gamble v. United States*, 139 S. Ct. 1960, 1963 (2019).  Accordingly, "[a] defendant may only raise a Double Jeopardy claim if he has been put in jeopardy (*i.e.* jeopardy has 'attached') sometime before the alleged 'second' prosecution." *United States v. Podde*, 105 F.3d 813, 816 (2d Cir. 1997).  As the Second

---

[3] At most, the scope of the NPA's coverage would appear to encompass Counts Five and Six.  The remaining counts encompass conduct that both postdates and predates the temporal limitations in the NPA, which was expressly limited to offenses between 2001 and 2007.  (Apr. Op. at 6-7).

Circuit has explained, the "key issue" for jeopardy attachment is "whether the disposition of an individual's indictment entailed findings of facts on the merits such that the defendant was placed in genuine jeopardy by the making of such findings." *United States v. Dionisio*, 503 F.3d 78, 83 (2d Cir. 2007), *cert. denied*, 129 S. Ct. 158 (2008); *see United States v. Vanhoesen*, 366 F. App'x 264, 266-67 (2d Cir. 2010) (summary order) ("Jeopardy attaches when 'there has been a fact-based resolution of elements of the offense charged as a result of a process in which the defendant risked conviction.'" (quoting *Dionisio*, 503 F.3d at 85)).  Traditionally, jeopardy attaches "to the entire indictment as soon as a jury is empaneled." *Podde*, 105 F.3d at 816.

In the context of pretrial dispositions, it is "essential" for jeopardy attachment that the resolution involve "adjudication of some facts that go to the *merits* of a charge against a defendant." *Dionisio*, 503 F.3d at 84 (emphasis in original).  For a guilty plea, jeopardy attaches to the offense of conviction.  *See Morris v. Reynolds*, 264 F.3d 38, 49 (2d Cir. 2001) ("Given that a guilty plea is a conviction, and that the Double Jeopardy Clause protects against a second prosecution for the same offense after conviction, the Clause prohibits a second prosecution for the same offense following a guilty plea." (citations and internal quotation marks omitted)).  But it generally does not attach to counts that are dismissed simply pursuant to "an agreement *between the parties*," involving no "process that put [the defendant] at any risk of conviction." *Dionisio*, 503 F.3d at 89; *see Annabi*, 771 F.2d at 672 ("[S]ince appellants were never in jeopardy on the charges dismissed in the Eastern District, the protection they now seek under the plea agreement is necessarily broader than that accorded by the Double Jeopardy Clause."); *United States v. Hernandez*, No. 09 Cr. 625 (HB), 2009 WL 3169226, at *4 (S.D.N.Y. Oct. 1, 2009) (explaining, under *Dionisio*, that where "Judge Hellerstein merely granted the Government's motion to dismiss Count One pursuant to the plea agreement," jeopardy did not attach to Count One); *cf. Evans v.*

*Michigan*, 568 U.S. 313, 319 (2013) (distinguishing between a "merits-related ruling" during trial that "concludes proceedings absolutely" under the Double Jeopardy Clause and "termination of the proceedings . . . on a basis unrelated to factual guilt or innocence of the offense" (internal quotation marks omitted)).  In order for jeopardy to attach to counts dismissed pursuant to a plea agreement, the dismissal must involve some adjudication of facts that go to the merits.  For instance, "a plea agreement in which the court was directly involved in a defendant's decision to plead guilty to two counts, in exchange for an agreement to drop with prejudice a third count, all on the basis of findings of certain facts which support that agreement, might perhaps constitute a pretrial fact-finding that implicated jeopardy in its proper sense of risk of exposure."  *Dionisio*, 503 F.3d at 84 (footnote omitted).

Here, the defendant was never placed in jeopardy in the United States District Court for the Southern District of Florida.  She was never indicted, acquitted, convicted, or punished for the offenses in Counts Five and Six.  *See United States v. Olmeda*, 461 F.3d 271, 279 (2d Cir. 2006) (explaining that "[i]n essence, the Double Jeopardy Clause protects criminal defendants against" second prosecutions after acquittal or conviction, or "multiple punishments for the same offense" (quotation marks omitted)).  At no point did the defendant even risk conviction.

That analysis is unaffected by the NPA.  Again, neither the defendant nor Epstein was ever indicted by a grand jury sitting in the Southern District of Florida nor found guilty of any federal offense.  NPA or no NPA, jeopardy never attached for the offenses in the proposed USAO-SDFL indictment, which was of course never filed.  *See United States v. Herrera*, No. 02 Cr. 477 (LAK), 2002 WL 31133029, at *1 (S.D.N.Y. Sept. 23, 2002) ("The analysis of the *Korfant* factors in which defendant would have the Court engage will become necessary if, and only if, jeopardy attaches on one of the indictments . . . .").  And the NPA would not have provided protection to the

defendant under the Double Jeopardy Clause.  Whatever Epstein's rights and obligations were under the NPA, including his obligation to plead guilty to two state solicitation offenses, the NPA is simply an agreement between Epstein and the USAO-SDFL.  The USAO-SDFL's agreement to decline to prosecute other offenses is not an adjudication of any facts that goes to the merits of those offenses.  Nor could it be: neither Epstein nor the defendant was charged with those offenses, and the NPA was never put before a judge who could engage in fact-finding or even so-order the agreement.  There is no sense in which the defendant risked conviction or was ever in genuine jeopardy.  *See Dionisio*, 503 F.3d at 84.

This point is only underscored by *United States v. Cambindo Valencia*, 609 F.2d 603 (2d Cir. 1979), on which the defendant relies.  In that case, two defendants, Jesus and Rosalinda Losada, were prosecuted for a 1974 conspiracy to distribute cocaine, resulting in a guilty plea for Jesus and, "as part of his plea bargaining agreement, the dismissal of charges against" Rosalinda. *Id.* at 637.  The two were later charged as part of another cocaine conspiracy.  *Id.* at 607.  The defendants argued that the new prosecution violated the Double Jeopardy Clause as to both of them, and the plea agreement as to Rosalinda.  *Id.* at 637.  The Second Circuit remanded for the district court to reconsider its decision in light of its other holdings narrowing the charged conspiracy.  It added that "[i]f Jesus's earlier plea is found to bar prosecution of him because of double jeopardy, since concededly the plea included an agreement to drop the charges against Rosalinda, the instant prosecution of Rosalinda will also be barred." *Id.* at 638.  That is, if double jeopardy barred re-prosecution of Jesus, the prosecution of Rosalinda was barred *because of the plea agreement*.  Accordingly, when the district court later dismissed the count against Jesus on double jeopardy grounds, it dismissed the count against Rosalinda "because of the government's

failure to honor a plea agreement." *United States v. Losada*, 674 F.2d 167, 169 (2d Cir. 1982).[4] There, as here, any barrier to prosecution of the defendant arose from the agreement with the prosecution, not the Double Jeopardy Clause.  And, as described above, the NPA presents no barrier.  Accordingly, the defendant's motion to dismiss Counts Five and Six should be denied.

## III.    Counts Five and Six Are Timely

Counts Five and Six are timely charged because the applicable limitations period, 18 U.S.C. § 3283 (2003), permits prosecution for offenses "involving the sexual or physical abuse . . . of a child" at any time "during the life of the child," and the victim identified in Counts Five and Six of the S2 Indictment remains alive.  The crimes alleged in Counts Five and Six plainly involved the sexual abuse of minors, meaning the § 3283 limitations period applies to both charges.  *See* S2 Indictment ¶ 9(d) (discussing the sexual abuse of Minor Victim-4).

In her motion, the defendant argues that § 3283 only applies if the elements of the crime of sex trafficking "necessarily entail" the sexual abuse of minors.[5]  (Def. Mot. at 20-21).  In other words, the defendant claims that the "categorical approach" or "essential ingredients" test applies here.  The Court has already considered and rejected this argument.  (Apr. Op. at 9-13).  As this Court has held, "[t]o the extent that the categorical approach is ever appropriate in other contexts, it is inappropriate here."  (Apr. Op. at 11).  Instead, with respect to the statute of limitations, the

---

[4] Although the opinions do not say whether the prosecuting office that signed the plea agreement was the same office that later prosecuted the Losadas, the prosecution also does not appear to have resisted the plea agreement on that basis.  *See Cambindo-Valencia*, 609 F.2d at 638.

[5] In her previous motions, the defendant argued that Counts One through Four were untimely, claiming that § 3283 cannot be applied retroactively.  The Court rejected this argument.  (Apr. Op. at 13-16 (analyzing the applicability of § 3283 to pre-2003 conduct under *Landgraf v. USI Film Products*, 511 U.S. 244, 280 (1994))).  In her current motion, the defendant does not appear to assert retroactivity arguments with respect to Counts Five and Six.  Nor could she.  Because Counts Five and Six involve conduct up to and including 2004, application of the 2003 amendment to § 3283 does not require the Court to engage in a retroactivity analysis.

question is simply "whether the charged offenses involved the sexual abuse of a minor on the facts alleged in this case." (Apr. Op. at 13). As was the case for Counts One through Four, there is no question that Counts Five and Six involved the sexual abuse of a minor on the facts alleged in this case. Accordingly, the motion should be denied.

Counts Five and Six are also timely under 18 U.S.C. § 3299, which eliminated the statute of limitation for certain sex crimes, including violations of 18 U.S.C. § 1591. Enacted in July 2006, § 3299 provides that:

> Notwithstanding any other law, an indictment may be found or an information instituted at any time without limitation for any offense under section 1201 involving a minor victim, and for any felony under chapter 109A, 110 (except for section 2257 and 2257A), or 117, or section 1591.

Because Count Five alleges a conspiracy to violate § 1591 and Count Six alleges a substantive violation of § 1591, there is no statute of limitation for these counts, pursuant to § 3299.

Applying § 3299, which was passed in 2006, to charges arising from conduct between 2001 and 2004 is appropriate under *Landgraf v. USI Film Products*, 511 U.S. 244, 280 (1994). At step one of the *Landgraf* analysis, the statute unambiguously applies to offenses notwithstanding any other statute of limitations, as the plain text of § 3299 applies "[n]otwithstanding any other law." And at step two, because the statute of limitations for Counts Five and Six had not run in 2006 when § 3299 was passed, its application here has no impermissible retroactive effect. Indeed, in many respects the analysis of § 3299 under *Landgraf* mirrors the analysis of § 3283, which the Court has held applies to pre-enactment conduct. (*See* Apr. Op. at 16 (analyzing the retroactive application of § 3283 and concluding that the statute applies to pre-enactment conduct)).

Accordingly, for the reasons set forth in the Government's previous briefing (Dkt. No. 204 at 23-36), and for the reasons set forth in the Court's April Opinion (Apr. Op. at 9-16), the prosecution of Counts Five and Six is timely.

**IV.    The Defendant's Motion to Dismiss the S2 Indictment Based on Alleged Improper Pre-Trial Delay Should Be Denied**

The defendant contends that the Court should dismiss the S2 Indictment because the Government's delay in bringing the charges violates her due process rights.  (Def. Mot. at 22). In making this motion, the defendant asks the Court to provide such relief for the "same reasons discussed in her prior motion" (Def. Mot. at 22)—reasons this Court already considered and rejected.  This Court evaluated the defendant's speculative and baseless arguments and concluded that the defendant could not meet the "stringent standard" necessary to prevail on a claim that any alleged pre-indictment delay violates her due process rights.  (Apr. Op. at 17).  "To prevail on a claim that pre-indictment delay violates due process, a defendant must show both that the Government intentionally delayed bringing charges for an improper purpose and that the delay seriously damaged the defendant's ability defend against the charges."  (Apr. Op. at 17 (citing *United States v. Cornielle*, 171 F.3d 748, 751 (2d Cir. 1999))).[6]

As to the element of actual and substantial prejudice, the Court found that the defendant did "not make the strong showing of prejudice required to support" her claim.  (Apr. Op. at 17). The Court concluded that the defendant "failed to establish actual prejudice from the Government's delay in bringing charges," rejecting the defendant's "highly speculative" arguments that the death of certain potential witnesses, failing memories, or lost records prejudiced

---

[6] Moreover, "[w]here an indictment is brought within the statute of limitations, there is a presumption that the [defendant] was not prejudiced." *Van Stuyvesant v. Conway*, No. 03 Civ. 3856 (LAK), 2007 WL 2584775, at *42 (S.D.N.Y. Sept. 7, 2007) (citation and internal quotation marks omitted); *see also* Apr. Op. at 17.  As this Court previously found, and as detailed above, the "applicable statute of limitations" does not "bar[] the charges here."  (Apr. Op. at 18).

her interests or would have made a "substantial difference" in her case. (*Id.* at 17).  In her current motion, the defendant offers no additional factual claims in support of her argument that the passage of time has prejudiced her defense.  She instead refers the Court back to her prior hypothetical, vague, and conclusory claims of prejudice that do not withstand scrutiny.  The defendant has not remotely carried her "heavy burden" of proof.  *Corniele*, 171 F.3d at 752.  Her renewed complaints are insufficient to warrant dismissal of charges based upon pre-indictment delay, and accordingly, the motion should be denied.

Because the defendant has failed to establish prejudice, the Court need not address the defendant's specious arguments that the Government's purpose in any alleged pre-indictment delay was improper or designed to gain any sort of tactical advantage. *See United States v. Pierre-Louis*, No. 16 Cr. 541 (CM), 2018 WL 4043140, at *5 (S.D.N.Y. Aug. 9, 2018).  In any event, in denying the defendant's pre-trial motions filed in January, the Court noted the absence of "evidence that the Government's delay in bringing these charges was designed to thwart Maxwell's ability to prepare a defense." (Apr. Op. at 17).  That remains true.

The defendant argues that the "S2 Indictment only compounds [the excessive pre-indictment delay] issues by charging additional offenses based on alleged conduct that the government has known about since in or about 2007, which it added for tactical reasons to shore up its case against Ms. Maxwell." (Def. Mot. at 22).  The defendant's argument that the Government acted in bad faith—to the extent she is making such an argument—is based on no evidence whatsoever, and for good reason: it is not true.

As the Government has previously explained (*see* Dkt. No. 199), the Government obtained the S2 Indictment—which added counts relating to the defendant's abuse of an additional minor victim, Minor Victim-4—based on new evidence that was not available to the Government at the

time the defendant was indicted in July 2020 or at the time Jeffrey Epstein was indicted in 2019.

Specifically, although Minor Victim-4 had previously been interviewed once in or about 2007 in

connection with a prior investigation conducted by the USAO-SDFL, Minor Victim-4 did not

agree to be interviewed by the prosecution team handling this case until July 2020.   The

Government then conducted two preliminary interviews with Minor Victim-4 by video

teleconference in the summer of 2020.   Because of the difficult nature of the interview topics,

however, the Government was not able to fully debrief Minor Victim-4 over video.   Due to travel

constraints and safety concerns arising from the COVID-19 pandemic, the Government was unable

to travel to meet with Minor Victim-4 until late January 2021, at which time the Government

conducted multiple in-person interviews with Minor Victim-4.   The Government then took

additional investigative steps and sought the S2 Indictment in late March 2021, approximately two

months after concluding its debriefing of Minor Victim-4.

Simply put, the S2 Indictment was brought in a timely manner upon the Government's

collection of evidence to support the additional charges.   Any suggestion that the Government

intentionally delayed obtaining the S2 Indictment to gain some strategic advantage has no basis in

fact.   The defendant has not established—and cannot establish—an undue delay, much less an

intentional and deliberate delay caused by the Government for an improper purpose.

Finally, the defendant again asks the Court to "defer consideration of this motion until

trial."  (Def. Mot. at 22).  The Court should again reject the defendant's invitation to defer ruling

on this motion.  *See* Apr. Op. at 18 (denying motion but allowing renewal of motion if the "factual

record at trial shows otherwise"); *see also United States v. Muric*, No. 10 Cr. 112 (LTS), 2010 WL

2891178, at *1 (S.D.N.Y. July 13, 2010) ("The motion to dismiss the Indictment as the result of

pre-indictment delay is therefore denied, without prejudice to appropriately supported later motion

practice."); *United States v. Drago*, No. 18 Cr. 0394 (SJF) (AYS), 2019 WL 3072288, at *2 (E.D.N.Y. July 15, 2019) (denying motion to dismiss on the ground of pre-indictment delay without prejudice to renewal).

Because the defendant cannot meet her "heavy burden" of establishing either element of unconstitutional delay, let alone both, her motion to dismiss the S2 Indictment for pre-indictment delay is meritless and should be denied.

## V.      The Defendant's Motion to Dismiss Count Five and Either Count One or Count Three as Multiplicitous Is Premature

The defendant moves to dismiss Counts One, Three, or Five on the ground that they are multiplicitous.  Consistent with this Court's prior ruling on a nearly identical issue, this motion should be denied as premature.  (*See* Apr. Op. at 27-28).  Each of these three counts charges the defendant with conspiring to commit distinct and separate crimes.  In particular, Count One alleges that the defendant agreed to entice minors to travel, in violation of 18 U.S.C. § 2422, Count Three alleges that she agreed to transport minors, in violation of 18 U.S.C. § 2423(a), and Count Five alleges that she agreed to engage in the sex trafficking of minors, in violation of 18 U.S.C. § 1591. *See* S2 Indictment ¶¶ 11-13, 17-19, 23-25.  Given the different objects of each conspiracy count, a jury could possibly find that the defendant committed some but not all of these charged offenses, and the Court will be best positioned to complete any multiplicity analysis after a full factual record is developed at trial.  Accordingly, and consistent with the Second Circuit's prior finding that district courts should defer ruling on a multiplicity challenge until after trial, this motion should be denied as premature.  *United States v. Josephberg*, 459 F.3d 350, 355 (2d Cir. 2006) (per curiam).

**VI.     A Bill of Particulars Is Not Warranted**

The defendant again seeks a bill of particulars, this time related to Counts Five and Six of the S2 Indictment.  Because the Government has provided the defendant with more than sufficient information—through both the S2 Indictment and discovery—to understand the charges against her, to prepare a defense, and to protect against double jeopardy, this motion should be denied. The instant motion seeks essentially the same type of details that the defendant sought with regards to Counts One through Four in her prior motions.  For the same reasons that the Court denied that prior motion, this motion should also be denied.  (*See* Apr. Op. at 19).

The proper purpose of a bill of particulars under Federal Rule of Criminal Procedure 7(f) is "to provide defendant with information about the details of the charge against him if this is *necessary* to the preparation of his defense, and to avoid prejudicial surprise at trial." *United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990), *abrogated on other grounds by United States v. Marcus*, 628 F.3d 36, 41 (2d Cir. 2010) (emphasis added) (internal quotation marks omitted). Accordingly, "[a] bill of particulars is required 'only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused.'" *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999) (quoting *Torres*, 901 F.2d at 234); *see United States v. Mahabub*, No. 13 Cr. 908 (AJN), 2014 WL 4243657, at *2 (S.D.N.Y. Aug. 26, 2014).

As was the case with the charges contained in the prior indictment, the charges contained in Counts Five and Six of the S2 Indictment are clear from the face of the charging instrument, which provides significant detail.  As is apparent from the 23-page speaking S2 Indictment, Counts Five and Six concern the defendant's participation in a conspiracy to commit sex trafficking of minors with Epstein and her participation in, and aiding and abetting of, the sex trafficking of a particular minor identified as Minor Victim-4 with Epstein from approximately 2001 through 2004.

The S2 Indictment identifies Minor Victim-4 as a victim of the conspiracy charged in Count Five and the trafficking offense contained in Count Six. *See, e.g.*, S2 Indictment ¶¶ 9(d), 25, 27. Further, the S2 Indictment provides extensive detail regarding how the sex trafficking scheme operated. *See, e.g.*, *id.* ¶¶ 6-7. In particular, the S2 Indictment explains that the defendant or another of Epstein's employees would: call a minor victim to schedule an appointment to massage Epstein; greet the minor victim at Epstein's Palm Beach residence and escort her into a massage room, where Epstein would then engage in sex acts with the victim; and pay the minor victim hundreds of dollars in cash after the massage. *See id.* ¶ 7. The S2 Indictment specifies the types of sex acts involved in this conduct, *see id.* ¶ 7(b), and further identifies the particular role that the defendant played in facilitating the trafficking of Minor Victim-4, *see id.* ¶ 9(d). Among other things, the S2 Indictment describes conversations the defendant had with Minor Victim-4 and further explains that the defendant called Minor Victim-4 to schedule massage appointments, paid Minor Victim-4 after completing massages, sent Minor Victim-4 gifts from New York to Florida, and encouraged Minor Victim-4 to bring other young females to massage Epstein. *See id.*

Given all of these details, the S2 Indictment alone provides a sufficient basis to deny the defendant's motion in its entirety. *See, e.g.*, *United States v. Bonventre*, 646 F. App'x 73, 79 (2d Cir. 2016) ("'[E]videntiary detail is not the function of the bill of particulars.' Particulars are necessary only where indictment charges are 'so general that they do not advise the defendant of the specific acts of which he is accused.'" (internal citation omitted) (quoting *Torres*, 901 F.2d at 234; *United States v. Chen*, 378 F.3d 151, 163 (2d Cir. 2004))); *United States v. Wedd*, No. 15 Cr. 616 (KBF), 2016 WL 1055737, at *3 (S.D.N.Y. Mar. 10, 2016) (denying motion for bill of particulars where "the Indictment is a 'speaking' Indictment that provides a significant amount of

detail as to the Government's theory of the case and the nature of the proof that will underlie the charges at trial").

Moreover, the discovery in this case has provided the defense with even more information regarding the charges contained in Counts Five and Six, thus providing another basis on which to deny this motion. To assist the defense in reviewing this discovery, the same day that the S2 Indictment was returned, the Government provided the defense with a list of particular Bates ranges that relate specifically to Minor Victim-4 and the charges contained in Counts Five and Six. As a result, the Government has identified particularly relevant pieces of evidence regarding these charges for the defense. (*See* Dkt. No. 188 at 3-4). This evidence includes, among other things, portions of message pads seized from Epstein's Palm Beach residence referencing messages left by Minor Victim-4 during the period charged in Counts Five and Six; phone records reflecting calls made by another Epstein employee to Minor Victim-4; Federal Express records reflecting a shipment from Epstein's address in New York to Minor Victim-4; and contemporary photographs of Minor Victim-4. The Government has also provided the defense with Minor Victim-4's birth month and year. Additionally, the defense has flight records for Epstein's private plane, reflecting when Epstein, the defendant, and other employees traveled to and from Palm Beach on the plane during the period charged in Counts Five and Six. In other words, the discovery provides the defendant with more than sufficient information about Minor Victim-4 to permit her to prepare for trial.

Similar to the other three minor victims referenced in the S2 Indictment, any remaining detail regarding the specifics of abuse and particular interactions will come from witness testimony. As is to be expected when describing events more than a decade in the past, that testimony will provide approximate time periods when events occurred, rather than specific dates.

Given the information the defendant already has from the Indictment and discovery, any additional detail would essentially serve as early Jencks Act production. The discovery gives the defense ample information to assist in its investigation, and given the defense's apparent ability to understand who Minor Victim-4 is from the productions, (*see, e.g.*, Def. Mot. at 3, 7-9, 24-25), there is no real concern that the defense will waste efforts conducting any such investigation before receiving Jencks Act material.[7] Accordingly, and consistent with the Court's prior ruling on a similar issue in this case, the motion for a bill of particulars should be denied.

## VII.   Minor Victim-4's Prior Statements Constitute *Giglio* and Jencks Act Material, Which Do Not Warrant Immediate Disclosure

The defendant moves for the immediate disclosure of any prior inconsistent statement made by Minor Victim-4. In other words, the defense seeks immediate production of impeachment material for this particular witness under *Giglio*. As the Government has already noted in prior briefing, it is aware of its disclosure obligations and intends to produce *Giglio* material for all of its witnesses, including Minor Victim-4, at least six weeks in advance of trial. Consistent with the practice in this District, the Court has previously concluded that such time is sufficient for the defense to prepare for trial and make use of any impeachment material. (*See* Apr. Op. at 30).

The Government agrees that any prior statement in which Minor Victim-4 discussed her interactions with Epstein, but omitted mention of the defendant, must be disclosed to the defense in advance of trial. Contrary to the defense's assertion, however, such prior statements are classic impeachment material that need only be produced sufficiently in advance of trial to permit the defense adequate time to make use of them. *See United States v. Coppa*, 267 F.3d 132, 144, 146

---

[7] Although Minor Victim-4's identity is clear from the discovery, and the defendant's motion makes clear that she strongly suspects Minor Victim-4's identity, there is no basis at this time to require the Government to turn over the names of its witnesses, including its victim-witnesses in advance of its Jencks Act production, which is customary in this District.

(2d Cir. 2001) (prosecution must produce *Giglio* material "in time for its effective use at trial"). Impeachment material simply does not warrant immediate disclosure. *See, e.g.*, *United States v. Nixon*, 418 U.S. 683, 701 (1974) ("Generally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial."); *United States v. Campo Flores*, No. 15 Cr. 765 (PAC), 2016 WL 5946472, at \*11 (S.D.N.Y. Oct. 12, 2016) ("The Government has represented that it will make impeachment material relating to its anticipated witnesses available . . . ten days before trial.  There is no need to depart from the customary rule in this district of disclosure shortly before trial.").

Although not essential to the timing analysis here, the Government notes that the defense motion overstates the significance of the particular statements Minor Victim-4 made during the USAO-SDFL's investigation.  The Government understands from its more recent interviews with Minor Victim-4, the notes of which the Government will produce to the defense as part of Minor Victim-4's *Giglio* and Jencks Act material, that she was not asked any questions about the defendant during her only interview in connection with the USAO-SDFL's investigation, which focused instead on Epstein and another of Epstein's employees.  Notably, though, when Minor Victim-4 was deposed in connection with a civil lawsuit after she was interviewed during the USAO-SDFL's investigation but more than a decade before the defendant was indicted in this case, Minor Victim-4 affirmatively stated that the defendant was one of the individuals who scheduled her massage appointments with Epstein.  Minor Victim-4 was not asked any follow-up questions about the defendant during that deposition, but her prior consistent statement regarding the defendant's involvement in scheduling her massages severely undercuts the defense's suggestion that Minor Victim-4 entirely fabricated the defendant's role in Epstein's scheme after the defendant was indicted in 2020.  The Government fully intends to provide the defense with all

prior statements of Minor Victim-4 in its possession, including the transcript of this civil deposition and reports of more recent interviews, at least six weeks in advance of trial. Accordingly, the defense motion for immediate disclosure of impeachment material should be denied.

## CONCLUSION

For the foregoing reasons, the Court should deny all of the defendant's supplemental pre-trial motions.

Dated: New York, New York
      May 21, 2021

              Respectfully submitted,

              AUDREY STRAUSS
              United States Attorney

By:    s/_____
       Maurene Comey
       Alison Moe
       Lara Pomerantz
       Andrew Rohrbach
       Assistant United States Attorneys