```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/4/21
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

United States of America,

–v–

Ghislaine Maxwell,

    Defendant.

20-CR-330 (AJN)

ORDER

ALISON J. NATHAN, District Judge:

On April 27, 2021, the Court denied Defendant Ghislaine Maxwell's request for authorization to serve a subpoena to Boies Schiller Flexner LLP. Dkt. No. 252. The Court requested the Government's views as to three of those requests: Request 9, which sought production of Minor Victim-2's entire diary from her teenage years; Request 10, which targeted a pair of boots that Minor Victim-2 allegedly received as a gift from Jeffrey Epstein and Maxwell; and Request 11, which sought original versions of certain photographs. *Id.* The Government submitted its views on May 4, 2021. Dkt. No. 269. It supplemented its letter on May 6, 2021. Dkt. No. 271. The Defendant filed a response on May 12, 2021. Having considered the parties' views, the Defendant's request is denied in full.

As noted, Request 9 seeks the original copy of a journal from an alleged victim from when she was a teenager. Maxwell received copies of some of the pages in the journal from the Government pursuant to Rule 16, but the Government represents that it does not have access to the entire journal. In those pages, Minor Victim-2 describes a trip to New York in which she spent time with Epstein and, among other things, visited his residence. Minor Victim-2 also describes her impression of Epstein at the time. There is no indication that Maxwell is mentioned there or anywhere else in the journal.

Maxwell appears to proffer two theories of relevance as to the entire journal. While she studiously avoids using the word, one such theory relates to impeachment. As this Court has noted, the potential impeachment of a witness does not provide grounds for issuance or enforcement of a Rule 17(c) subpoena because such materials would only become relevant *after* a witness has testified. *United States v. Skelos*, No. 15-CR-317 (KMW), 2018 WL 2254538, at *2 (S.D.N.Y. May 17, 2018), *aff'd*, 988 F.3d 645 (2d Cir. 2021) (collecting cases).

The other theory of relevance that Maxwell proffers is that if the rest of the journal does not mention her, the journal as a whole may serve as exculpatory evidence. At best, the theory amounts to little more than a "fishing expedition," which is not the proper use of Rule 17(c). *See United States v. Nixon,* 418 U.S. 683, 698–70 (1974). In any event, the argument is too speculative to meet the standard set forth in *Nixon*. To begin with, the request appears to be overbroad; under Rule 17(c), the moving party must show that all of the requested material is relevant. *Cf. United States v. Pena*, No. 15-CR-551 (AJN), 2016 WL 8735699, at *2 (S.D.N.Y. Feb. 12, 2016). It appears from the briefing that the diary includes entries from before Minor Victim-2's first time meeting Epstein or Maxwell. Maxwell does not explain why the absence of references to her in those entries would be relevant, and she provides no other basis as to the relevance of any portions of the diary that precede her meeting Epstein or Maxwell. And here, too, the theory that the rest of the journal contradicts Minor Victim-2's anticipated testimony as to specific incidents is, in its nature, targeted at impeaching the alleged victim's anticipated testimony.

In addition, Maxwell does not plausibly establish the relevance of the rest of the diary other than the pages she has already received. BSF has represented that the rest of the journal does not discuss Maxwell *or Jeffrey Epstein*. Dkt. No. 191 at 5. The Government has similarly

represented that it understands that Minor Victim-2 stopped writing in the diary shortly after meeting Jeffrey Epstein and that the diary, as a result, has no entries relating to any later trips she took with Epstein. Dkt. No. 204 at 187. Maxwell does not provide any nonconclusory basis to doubt these representations. So while it is undisputed that Maxwell is not referenced in the diary—BSF, the Government, and Maxwell all agree on this point—the absence of references alone, without regard to whether the diary contains entries relevant to the incidents about which Minor Victim-2 is expected to testify at trial, does not establish any relevance except as to potential impeachment.

Nor do any of Maxwell's additional arguments establish the relevance of the rest of the journal. She points to the fairness doctrine and Rules 106 and Rule 612 of the Federal Rules of Evidence as providing additional bases for the propriety of the request under Rule 17(c). She cites cases regarding the fairness doctrine in the context of attorney-client privilege that have no application to the issue presently before the Court. Furthermore, to the extent she makes an argument under Rule 106 or Rule 612, the argument is premature. Even assuming that Rule 106 and Rule 612 *could* provide grounds for admissibility and relevance at trial, that would only ripen at trial if portions of the journal are introduced and admitted. Her Rule 612 argument is further strained by the fact that, even if that rule applied, it would not entitle the Defendant to production of the entire journal. The Rule provides that "[i]f the producing party claims that the writing includes unrelated matter, the court must examine the writing in camera, delete any unrelated portion, and order that the rest be delivered to the adverse party." Fed. R. Evid. 612(b). Here, both the Government and BSF, on behalf of Minor Victim-2, have asserted that the rest of the journal is unrelated. In any event, none of these principles establish the relevance of the journal beyond impeachment, and all of the arguments presented to the contrary are

3

meritless. Lastly, Maxwell's theory that a forensic analysis could reveal the date that the journal was written and whether it had been altered is for impeachment of anticipated authentication testimony. Moreover, it is entirely speculative and unsubstantiated. Maxwell provides no actual reason to doubt the journal's authenticity. In her May 12, 2021 letter, Maxwell claims that two copies of one of the pages are "obviously, and noticeably, different." The difference, which is not explained in the letter, is neither obvious nor noticeable to this Court. Indeed, the writing and handwriting in the two exhibits certainly look identical. At most, one version appears to be a photograph of the page in the journal (Exhibit A), while the other appears to be a photocopy of the same page (Exhibit B). Maxwell fails to identify any actual differences. Separately, here again Maxwell's arguments sound in impeachment of anticipated authentication testimony. For all of the reasons stated above, the Court concludes that a Rule 17(c) subpoena is not the proper vehicle for Request 9.

Request 10 seeks production of a pair of black boots that Maxwell and Jeffrey Epstein allegedly gave to an alleged victim. The Government has indicated that it has requested that BSF produce the boots to the FBI and that, when the boots are in the FBI's possession, the Government will promptly make them available to the defense for examination and use at trial. Maxwell contends that the Court should nonetheless order the boots' production to the defense. The argument is meritless. Rule 17(c) is not the proper mechanism for discovery from third parties where the sought-after item is "otherwise procurable reasonably in advance of trial." *Nixon*, 418 U.S. at 698–700. That is the case here: The Government has represented that the defense will be able to inspect the boots before trial. The Defendant's request is therefore denied as moot. If the Government fails to make the boots available for inspection within a reasonable

timeframe, the Defendant may make an application to the Court to compel the Government to adhere to its representation.

Request 11 seeks production of the original versions of certain photographs of the alleged victim. Maxwell seeks these materials to inspect them prior to trial in order to investigate their authenticity. In its May 6 letter, the Government indicated that the original versions of a subset of the photographs are in the FBI's possession, and the Government will make those photographs available to the defense for inspection upon request. The Court agrees with the Government that the request is moot as to those photographs. Again, to the extent that the Government fails to comply with its representation that it will make those photographs available to the defense upon request, the defense may make an application to the Court.

As to the remaining photographs, the request is denied on the basis that the defense has failed to establish the relevance of the original versions of the photographs. The defense already has photocopies or scanned versions of the photographs in question. But the defense proffers that it seeks the original versions of these photographs in order to determine whether they are genuine. The only discernible theory of relevance as to this request is impeachment. Maxwell does not set forth any other nonconclusory basis for their relevance. And again, because impeachment evidence falls outside the scope of Rule 17(c), the request fails to meet *Nixon*'s relevance requirement. But even assuming that impeachment could permissibly establish relevance, the argument fails because Maxwell does not yet know the scope of the victim's testimony or whether it will implicate the photographs.

## I.     Conclusion

The Defendant's motion for an order authorizing the subpoena pursuant to Rule 17(c)(3) is DENIED.

SO ORDERED.

Dated: June 4, 2021
      New York, New York

_____
ALISON J. NATHAN
United States District Judge