```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  6/25/2021
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

United States of America,

—v—

Ghislaine Maxwell,

Defendant.

---

20-cr-330 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

Maxwell moves to suppress evidence obtained through a grand jury subpoena to a law firm involved in earlier civil litigation against her. She contends that because the documents sought by the subpoena were previously subject to a protective order, the Government obtained them in violation of her rights against compelled self-incrimination, against unreasonable searches and seizures, and to due process of law. For the reasons that follow, the Court concludes that the evidence should not be suppressed and that Maxwell is not entitled to an evidentiary hearing.

## I.   Background

In late 2015, Virginia Giuffre sued Maxwell for defamation. *See Giuffre v. Maxwell*, No. 15-cv-7433 (S.D.N.Y.). Giuffre alleged that Maxwell defamed her by accusing her of lying about Maxwell and Jeffrey Epstein sexually abusing her. The law firm Boies Schiller Flexner LLP (BSF) represented Giuffre in the dispute. The parties litigated the case for about two years before signing a confidential settlement agreement.

Early in the civil litigation, one of the attorneys representing Giuffre approached an Assistant United States Attorney (AUSA) in the Southern District of New York and requested a

meeting to provide the Government information on possible criminal conduct. The AUSA met with three attorneys who represented Giuffre on February 29, 2016. The AUSA's notes from the meeting reflect that it focused primarily on Epstein. However, the notes also identify Maxwell as Epstein's "head recruiter" of underage girls. The attorneys sent a few follow-up emails to the AUSA in the following weeks. The United States Attorney's Office did not pursue a criminal investigation at that time.

Maxwell claims based on a *New York Daily News* article published in October 2020 that a second meeting took place between federal prosecutors and a principal of BSF in the summer of 2016. The Government has represented to the Court that the AUSA who participated in the February 29, 2016 meeting did not participate in a second meeting with BSF attorneys and that the Government has "uncovered no evidence that such a meeting ever occurred." Dkt. No. 204, at 92. However, for purposes of deciding this motion, the Court assumes that it occurred.

About two weeks after the February 29, 2016 meeting, the judge presiding over the civil case entered a protective order that allowed the parties in that case to designate documents produced in discovery as confidential. *See* Dkt. No. 134-1. That order prohibited the parties from disclosing confidential documents to anyone other than people involved in the case. Although BSF initially proposed language that would allow disclosure of documents to law enforcement without a court order, the final version of the protective order included no such exception. The protective order did not require the parties to obtain the court's approval to mark a document as confidential. It allowed the court to modify the order at any time for good cause after notice to the parties. It also allowed the parties to use any confidential information at trial, at which point that information would become public. It required the parties to return or destroy confidential records after the case ended.

Following entry of the protective order, Maxwell testified in two depositions in the civil case.  The parties designated the depositions as confidential under the protective order.  Counts five and six of the S1 superseding indictment in this case (and counts seven and eight of the S2 superseding indictment) charge that Maxwell made false statements under oath in each of the depositions.

The Government represents that the Office of the U.S. Attorney for the Southern District of New York formally opened its investigation into Epstein on November 30, 2018, following a series of articles in the *Miami Herald* about Epstein's conduct and the lenient plea deal he received in the Southern District of Florida.  The same day, the AUSA who attended the February 2016 meeting forwarded the emails she received from attorneys in the civil case to the prosecutors working on the fledgling investigation.  There is no indication that she was involved in the decision to begin the investigation into Epstein in 2018.

About two months later, the Government served a grand jury subpoena on BSF seeking to obtain documents for its investigation of Epstein.  BSF informed the Government that many of the requested documents fell under the protective order.  The Government then applied for an ex parte order modifying the protective order to allow BSF to comply with the subpoena.  The Government made a second, similar application in connection with a protective order in a different case.

The judge who presided over the civil case passed away in March 2019, and so then-Chief Judge McMahon heard the Government's ex parte application.  In a hearing on March 26, 2019, Judge McMahon explained that she believed the Second Circuit's decision in *Martindell v. International Telephone & Telegraph Corp.*, 594 F.2d 291 (2d Cir. 1979), governed the Government's application.  *Martindell* held that a party should not provide documents subject to

a protective order to the Government absent a formal motion or subpoena.  It further held that a court should modify a protective order that a party reasonably relied on only if the order had been improvidently granted or upon a showing of extraordinary circumstances or compelling need.

Judge McMahon held a second ex parte hearing on April 9, 2019.  At that hearing, citing a district court case called *Chemical Bank* for the proposition that civil litigants ought not foment criminal investigations against their opponents to gain strategic advantage, she asked the Government about contacts between the U.S. Attorney's Office and BSF on the subject of the Government's investigation.  The Government explained that BSF had informed the Government that some of the documents the Government sought were covered by a protective order.  The Government did not mention any of the communications with BSF attorneys in 2016.

Judge McMahon issued a sealed order granting the Government's application followed by a sealed opinion dated April 9, 2019.  In the opinion, she explained that *Martindell* governed the Government's application, but that two of the *Martindell* factors supported modification of the protective order.  First, Maxwell did not reasonably rely on the protective order because it was subject to modification.  Second, the Government had shown extraordinary circumstances supporting modification of the protective order because it could not otherwise obtain information about the high-profile targets of its investigation without tipping them off.  Magistrate Judge Netburn denied the Government's similar application in another case, applying the same standard but concluding that the Government had not shown extraordinary circumstances or compelling need.

Following Judge McMahon's order, BSF turned over its records from the civil litigation to the Government.  Those documents included transcripts of Maxwell's depositions.  The

Second Circuit later held that the court in the civil case withheld far too many documents from public view and ordered that many of them be made publicly available. *Brown v. Maxwell*, 929 F.3d 41, 53 (2d Cir. 2019). Much of what the Government obtained through its subpoena, including the bulk of the deposition transcripts Maxwell now seeks to suppress, have since been unsealed by court order in the civil case. *See Giuffre*, No. 15-cv-7433, Dkt. Nos. 1137, 1212.

## II.     Discussion

Maxwell objects both to the Government obtaining documents covered by the protective order and to the Government's conduct in doing so. She contends that she agreed to testify in the civil case only because of the protective order, and thus that the Government's use of her deposition testimony against her would violate her right against compelled self-incrimination. She contends that she had a reasonable expectation of privacy in the documents covered by the protective order, and thus that the Government should not have been able to obtain them without a warrant. And she contends that the Government circumvented the requirements of *Martindell* and violated her due process rights by misleading Judge McMahon about the Government's prior communications with BSF.

The Court finds that none of these arguments support suppression of evidence or justify an evidentiary hearing. The Court begins with Maxwell's claim that the Government violated her right against compelled self-incrimination by obtaining her deposition testimony from the civil case. It next turns to her claim that the Government violated her right against unreasonable searches and seizures. Finally, it addresses Maxwell's claim that the Government misled Judge McMahon in seeking modification of the protective order in the earlier civil case.

### A. The Government did not violate Maxwell's right against self-incrimination

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. "The [Supreme] Court has held repeatedly that the Fifth Amendment is limited to prohibiting the use of 'physical or moral compulsion' exerted on the person asserting the privilege." *Fisher v. United States*, 425 U.S. 391, 397 (1976) (quoting *Perlman v. United States*, 247 U.S. 7, 15 (1918)). It does not prohibit the Government from using a defendant's voluntary statements in a subsequent criminal prosecution.

To establish a violation of the right against compelled self-incrimination, Maxwell must "demonstrate the existence of three elements: 1) compulsion, 2) a testimonial communication, and 3) the incriminating nature of that communication." *In re Grand Jury Subpoena*, 826 F.2d 1166, 1168 (2d Cir. 1987). Maxwell contends that the Government violated her right against compelled self-incrimination by obtaining copies of her deposition transcripts from her earlier civil case. She acknowledges that she could have, but did not, invoke her Fifth Amendment rights to avoid providing incriminating testimony. *See, e.g.*, *Pillsbury Co. v. Conboy*, 459 U.S. 248, 263–24 & n.24 (1983). However, she contends that she testified only because she believed the protective order in that case would prevent the Government from obtaining her testimony and using it in a subsequent criminal case against her.

Second Circuit precedent expressly forecloses Maxwell's argument. "A Rule 26(c) protective order, no matter how broad its reach, provides no guarantee that compelled testimony will not somehow find its way into the government's hands for use in a subsequent criminal prosecution." *Andover Data Servs. v. Stat. Tabulating Corp.*, 876 F.2d 1080, 1083 (2d Cir. 1989). As the Second Circuit has explained, a civil protective order may (as here) be overturned

6

or modified by another court in another proceeding.  *Id.*  A civil protective order may (as here) be limited by its terms to pretrial proceedings, in which case the parties must expect that confidential documents will come to light as the case progresses.  *See In re Agent Orange Prod. Liab. Litig.*, 821 F.2d 139, 147 (2d Cir. 1987); Dkt. No. 134-1 ¶ 13.  A court may (as here) unseal documents covered by a civil protective order in the public interest.  *See Brown*, 929 F.3d at 47; *Giuffre v. Maxwell*, 827 F. App'x 144, 145 (2d Cir. 2020); *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 126 (2d Cir. 2006).  Civil litigants have neither a reasonable basis nor legal entitlement to rely on a civil protective order against the use of their testimony in a subsequent criminal proceeding.

Maxwell thus has failed to establish the first and most fundamental element of a violation of her right against compelled self-incrimination: compulsion.  Because the protection typically afforded by a civil protective order is both porous and ephemeral, the Second Circuit has held that "a non-consenting witness may not be forced to answer potentially incriminating questions in reliance upon such an order."  *Andover*, 876 F.2d at 1084.  Maxwell was free to assert her Fifth Amendment rights in her civil case and refuse to offer incriminating testimony. Longstanding precedent made clear that if she did not do so, the Government could use any such testimony that it learned of against her in a later criminal case.  Because the Government did not compel Maxwell to offer incriminating testimony, it did not violate her right against compelled self-incrimination.

Maxwell's alternative argument that BSF's act of turning over her deposition transcripts was itself compelled testimony is likewise without merit.  The Supreme Court has held that the act of producing documents in response to a subpoena implicates the Fifth Amendment only in narrow circumstances—when the existence of responsive documents, rather than their content, is

inculpatory. *Fisher*, 425 U.S. at 410–11. This is no such case. The existence of deposition transcripts in Maxwell's civil case is not inculpatory. It is the content of those transcripts that is at issue.

In the face of these straightforward precedents, Maxwell relies primarily on a single district court case decided the year before the Second Circuit's decision in *Andover* that quashed a subpoena for deposition testimony covered by a civil protective order. *See* Dkt. No. 140, at 16–17 (citing *United States v. Oshatz*, 700 F. Supp. 696 (S.D.N.Y. 1988)); Dkt. No. 212, at 12–13 (same). *Oshatz* does not suggest that the use of civil deposition testimony in a subsequent criminal trial would violate a defendant's right against compelled self-incrimination—and if it did, that view would be plainly inconsistent with the Second Circuit's later, precedential opinions. Instead, the case simply describes the standard for whether a court should modify a protective order to allow a government subpoena. Maxwell cites no case in which a court has suppressed evidence because another court erred in modifying a protective order. Even if Maxwell were right that the protective order should not have been modified, it would not transform her earlier deposition testimony into the product of coercion.

The Government would also be entitled to use Maxwell's deposition testimony against her in her perjury trial notwithstanding any violation of her right against compelled self-incrimination. The Supreme Court has held that a defendant may be prosecuted for false statements in unlawfully compelled testimony. *See United States v. Wong*, 431 U.S. 174, 179 (1977); *United States v. Knox*, 396 U.S. 77, 82 (1969). As in *Knox*, Maxwell seeks to suppress her deposition transcripts not because they are inculpatory "for a prior or subsequent criminal act" but because her statements in those depositions were themselves allegedly criminal. *Knox*,

396 U.S. at 82.  In these circumstances, the Fifth Amendment does not bar the Government's use

of her testimony in a prosecution for perjury.

The Court thus concludes that Maxwell is not entitled to suppress her deposition

transcripts based on her right against compelled self-incrimination.

### B.  Maxwell had no reasonable expectation of privacy in documents produced in civil litigation

"The Fourth Amendment protects '[t]he right of the people to be secure in their persons,

houses, papers, and effects, against unreasonable searches and seizures.'"  *Carpenter v. United*

*States*, 138 S. Ct. 2206, 2213 (2018) (alteration in original) (quoting U.S. Const. amend. IV).

Government activity qualifies as a search under the Fourth Amendment only if it involves a

physical intrusion into a constitutionally protected space or the violation of a person's

"reasonable expectation of privacy."  *United States v. Jones*, 565 U.S. 400, 406–07 (2012)

(quoting *Katz v. United States*, 389 U.S. 347, 360 (1967) (Harlan, J., concurring)).  Thus,

government agents need a warrant to rummage through someone's home, listen in on their phone

calls, or search through their phones seized incident to arrest.  The Fourth Amendment imposes

no limitation on their ability to gather evidence of public activity or review public records.

A person has a reasonable expectation of privacy only if they seek to keep something

private and have an objectively reasonable expectation that it will remain private.  *Smith v.*

*Maryland*, 442 U.S. 735, 740 (1979).  The Supreme Court has held that people generally lack a

reasonable expectation of privacy in information they voluntarily disclose to others.  *See id.* at

743–44; *United States v. Miller*, 425 U.S. 435, 440 (1976).  This is true even if they expect that

information to be safeguarded and used only for specific purposes.  Thus, the Supreme Court has

held that police may obtain bank records or a list of phone numbers a person has dialed without a

warrant.  *Smith*, 442 U.S. at 742; *Miller*, 425 U.S. at 440.  In a lone exception to this rule, the

Supreme Court has held that people have a reasonable expectation of privacy in geographical information obtained from their cell phones, because that information provides a comprehensive account of a person's movements akin to invasive physical surveillance. *See Carpenter*, 138 S. Ct. at 2219–20.

Under this standard, Maxwell had no reasonable expectation of privacy in the documents produced during the civil litigation. Those documents may not have been public, but they were hardly private. The protective order allowed them to be shared freely with each of the following categories of people:

- The parties to the case.
- Attorneys involved in the case.
- People employed by or associated with attorneys involved in the case.
- Expert witnesses.
- Fact witnesses.
- Potential witnesses.
- Court personnel and stenographers.

It also allowed any documents to be publicly used at trial. This is not a case like *Carpenter* where new technology has allowed police to access heretofore "unknowable" information about a person's private life. *Id.* at 2218. This is a case where Maxwell shared information with third parties through the routine process of civil litigation and now objects that they shared it with the Government, too.

Second Circuit precedent makes clear that Maxwell had no reasonable expectation that documents covered by the protective order would remain shielded from view of the public or prosecutors. The Second Circuit has cautioned civil litigants that a civil protective order is no guarantee against the use of evidence in a subsequent criminal prosecution. *See Andover*, 876 F.2d at 1083. Second Circuit precedent allows a court in a subsequent proceeding to modify a

protective order.  *Id.*  And if confidential materials turn out to be relevant to a court's ruling, Second Circuit precedent creates a strong presumption that they will be made public notwithstanding any protective order.  *See Lugosch*, 435 F.3d at 126.  These are not remote or theoretical possibilities.  Each of them predictably came to pass in this case.  *See Brown*, 929 F.3d at 48 & n.22; *Giuffre*, 827 F. App'x at 145.  It is "unrealistic" to believe that deposition testimony central to a civil case of high public interest will remain effectively sealed indefinitely. *Andover*, 876 F.2d at 1083.

Maxwell claims that she did not expect the Government to be able to obtain her deposition testimony, and that if she knew it would, she never would have testified.  If Maxwell subjectively harbored this belief, it was nonetheless unreasonable.  *See Smith*, 442 U.S. at 743. The Court further notes that Maxwell was ably represented by a number of attorneys during the civil litigation, who the Court is confident were familiar with the precedents governing protective orders and public access to judicial documents.

Because Maxwell had no reasonable expectation of privacy in documents shared with third parties during the civil case, the Government did not engage in a search when it obtained those documents from a third party by subpoena.  Maxwell also makes a half-hearted argument that obtaining those documents was a seizure of her personal property.  Copies of documents held by a law firm that represented Maxwell's adversary in a civil case were not Maxwell's personal property.  Thus, the Government engaged in neither a search nor a seizure, and so it did not violate Maxwell's Fourth Amendment right against unreasonable searches and seizures.

The Government also contends that even if it improperly obtained documents pursuant to the grand jury subpoena, the Court should not suppress those documents because the Government acted in good faith and would have obtained the documents anyway.  *See Nix v.*

11

*Williams*, 467 U.S. 431, 446 (1984); *United States v. Leon*, 468 U.S. 897, 922 (1984).  The Court agrees that, at the very least, the exception to the exclusionary rule for inevitable discovery applies to the documents that have since been unsealed and made public in the civil case.  But because the Court finds no violation of the Fourth Amendment, it concludes that none of the documents should be suppressed.

### C.  Maxwell is not entitled to suppression under due process or the Court's inherent authority

Maxwell next argues that the materials must be suppressed because the Government violated her due process rights in obtaining them.  The gravamen of this claim is that the Government misrepresented its prior contacts with BSF to Judge McMahon.  Maxwell contends that this misrepresentation violated her due process rights, or alternatively that the Court should exercise its inherent authority to suppress the evidence obtained through the subpoena as a sanction for governmental misconduct.  She contends that even an inadvertent misstatement to a court requires suppression of evidence obtained as a result.  She further seeks an evidentiary hearing to explore whether any misrepresentation by the Government in that hearing was intentional.

The Supreme Court has recognized that federal courts have a limited inherent authority to suppress evidence obtained in "willful disobedience of law."  *United States v. Payner*, 447 U.S. 727, 735 n.7 (1980) (quoting *McNabb v. United States*, 318 U.S. 332, 345 (1943)).  But it has also cautioned that courts must exercise this power with restraint.  *Id.*  Thus, "the court should not exercise its inherent or supervisory power 'as a substitute for Fourth Amendment jurisprudence.'"  *United States v. Lambus*, 897 F.3d 368, 401 (2d Cir. 2018) (quoting *United States v. Ming He*, 94 F.3d 782, 792 (2d Cir. 1996)).  In situations where the Fourth Amendment

or another substantive constitutional provision supplies a standard for the suppression of evidence, courts must follow that standard, not invent their own. *See Payner*, 447 U.S. at 735.

Maxwell has not established a violation of due process or justified the exercise of the Court's inherent supervisory authority. Not every misstep by the Government during a criminal investigation justifies suppressing relevant evidence. The Supreme Court has repeatedly explained that the exclusionary rule weighs the interest in deterring investigatory misconduct against the truth-seeking function of the judicial process. That balance "do[es] not change because a court has elected to analyze the question under the supervisory power instead of" some other constitutional provision. *Id.* at 736. Due process provides an independent basis to suppress evidence only when the Government engages in conduct that is "fundamentally unfair or shocking to our traditional sense of justice" or is "so outrageous that common notions of fairness and decency would be offended were judicial processes invoked to obtain a conviction against the accused." *United States v. Schmidt*, 105 F.3d 82, 91 (2d Cir. 1997) (internal quotation marks omitted). "Ordinarily such official misconduct must involve either coercion or violation of the defendant's person." *Id.* (citations omitted). This case involves neither. Omitting information about communications with BSF years earlier falls well short of the sort of extreme misconduct supporting suppression as a matter of due process.

To the extent Maxwell asks the Court to engage in a freewheeling exercise of its inherent supervisory power instead, the Court declines to do so. To begin with, suppression under a court's supervisory authority is only appropriate, if at all, when the Government has engaged in "*willful* disobedience of law." *Payner*, 447 U.S. at 735 n.7 (emphasis added). Maxwell all but concedes that the present record does not show willful misconduct, contending instead that it "doesn't matter" whether the prosecutor knew his statements to Judge McMahon were

misleading.  Dkt. No. 134, at 14.  In any event, the Court is not without guidance on when a prosecutor's misrepresentation requires a court to suppress evidence.  Precedent requires courts to adhere to the standards governing analogous Fourth Amendment claims when asked to suppress evidence under their inherent authority.  *See Lambus*, 897 F.3d at 401–02.

The Supreme Court has set out a clear standard governing when a misrepresentation to a magistrate in a warrant affidavit justifies suppression of evidence obtained as a result.  *See Franks v. Delaware*, 438 U.S. 154 (1978).  That standard requires more than an inadvertent misstatement.  "To suppress evidence obtained pursuant to an affidavit containing erroneous information, the defendant must show that: (1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the issuing judge's probable cause finding."  *United States v. Canfield*, 212 F.3d 713, 717–18 (2d Cir. 2000) (cleaned up).  The Supreme Court's decision in *Franks* forecloses the argument that all misstatements to a court—even all intentional misstatements—necessarily require suppression.  A defendant cannot circumvent this standard by couching the same arguments in due process or the court's inherent authority instead.  *See Payner*, 447 U.S. at 736.

*Franks* also defines the standard governing when a defendant is entitled to an evidentiary hearing on a motion to suppress based on the Government's misrepresentation to a court.  To justify an evidentiary hearing, a defendant must make a "substantial preliminary showing" of a deliberately or recklessly false statement and that the alleged false statement was necessary to the court's decision.  *Franks*, 438 U.S. at 155.  "Allegations of negligence or innocent mistake are insufficient."  *Id.* at 171.

14

Although Maxwell relied on *Franks* in her opening brief, she argues in reply that she need not satisfy that standard. *See* Dkt. No. 134, at 16; Dkt. No. 285, at 23. However, she provides no explanation for why *Franks* should not apply. To the extent she offers any alternative framework in her reply, it is that an evidentiary hearing is required whenever any factual issue related to a motion to suppress is in dispute. That formulation is far too broad.

The Court agrees with the Government (and the suggestion in Maxwell's opening brief) that *Franks* provides the appropriate standard for whether Maxwell is entitled to an evidentiary hearing on her motion. To be sure, these cases are not identical. *Franks* dealt with an alleged false statement in a warrant affidavit. This case involves an alleged false statement in a hearing to modify a protective order to allow a grand jury subpoena. *Franks* involved a claim under the Fourth Amendment, while Maxwell couches hers in the Fifth. But while not identical, these settings are closely analogous. Each involves alleged misstatements to a court that allowed the Government to obtain evidence. Each presents a risk of a defense fishing expedition where no wrongdoing appears on the face of the Government's application. Each requires balancing similar interests—deterrence of deliberate misconduct on the one hand, and suppression of evidence inevitably discovered or obtained through innocent error on the other. The Second Circuit has already extended *Franks* past its precise factual context to a motion to suppress based on alleged misrepresentations in a wiretap application. *See United States v. Rajaratnam*, 719 F.3d 139, 151 (2d Cir. 2013). The Court concludes that Maxwell must at least meet this standard for a similar claim invoking the Court's inherent authority.

Maxwell must thus make a substantial preliminary showing on each of *Franks*' requirements to justify an evidentiary hearing. *United States v. Salameh*, 152 F.3d 88, 113 (2d Cir. 1998). That is, she must first make a substantial preliminary showing that the Government

15

deliberately or recklessly misrepresented facts to Judge McMahon.  Second, she must make a substantial preliminary showing that Judge McMahon would have denied the Government's application absent any such misrepresentation.  The Court finds that Maxwell has not made a substantial preliminary showing on either prong.

Maxwell's argument here centers on the Government's statements to Judge McMahon during the second proceeding on April 9, 2019, concerning its application to modify the protective order.  At that proceeding, Judge McMahon explained that she wanted to make sure the Government's request did not present a similar situation to that in *Chemical Bank v. Affiliated FM Ins. Co.*, 154 F.R.D. 91 (S.D.N.Y. 1994), where a party in civil litigation urged prosecutors to instigate a criminal investigation and then provided confidential documents in violation of a protective order.  To that end, she asked the Government to explain "contacts between the United States Attorney's Office and the Boies Schiller firm prior to the issuance of the subpoena on the subject of your investigation."  The prosecutor at that hearing informed Judge McMahon about all communications between the U.S. Attorney's Office and BSF after the current investigation began—namely, that the Government told the firm that it intended to make a document request and that the firm told the Government that some of the materials were subject to a protective order.  Although the prosecutor was included on an email several months earlier from the AUSA who met with Giuffre's attorneys in 2016, he did not inform Judge McMahon about any communications with BSF before the current investigation began.

Maxwell has not made a substantial preliminary showing that the Government's statement was a deliberate or reckless misrepresentation.  The AUSA could reasonably have understood Judge McMahon's question to concern only communications about the Government's current investigation.  Maxwell contends that the question asked for any

communications between BSF and the Government related to Epstein or Maxwell.  But an
equally plausible understanding of the phrase "on the subject of your investigation" is "related to
the investigation itself."  That interpretation is all the more reasonable in context, because
*Chemical Bank* involved communications between a party subject to a protective order and
prosecutors during a pending criminal investigation.  *See Chemical Bank*, 154 F.R.D. at 93.  It
was not unreasonable for the prosecutor to assume that Judge McMahon was concerned with
those sorts of communications, not communications years earlier that did not lead to a criminal
investigation.  The Government has represented that its present investigation into Epstein (and
later Maxwell) began only following publication of the *Miami Herald* exposé in 2018.  Maxwell
has made no substantial preliminary showing to the contrary.

The Court also concludes that Maxwell has made no substantial preliminary showing that
Judge McMahon would have denied the Government's application to modify the protective order
if she knew about the 2016 communications.  Materiality under *Franks* requires more than that a
fact be important.  It allows suppression only if "the allegedly false statement is *necessary*" to
the court's finding.  *Franks*, 438 U.S. at 156 (emphasis added).  If Judge McMahon would still
have ruled that the Government was entitled to ex parte modification of the protective order even
after setting aside the Government's alleged misrepresentation, then Maxwell is not entitled to
suppression.  Judge McMahon's opinion reflects that she would have.

Judge McMahon's ruling rested on two independent grounds.  Analyzing the
Government's application under *Martindell*, she first held that Maxwell could not have
reasonably relied on the protective order to keep the Government from obtaining documents
produced during the civil litigation.  Judge McMahon reasoned that a civil litigant ordinarily may
not rely on a protective order subject to modification to keep evidence out of the hands of

prosecutors.  As the Court has explained above, this is consistent with the Second Circuit's statement that a protective order "provides no guarantee that [evidence] will not somehow find its way into the government's hands for use in a subsequent criminal prosecution."  *Andover*, 876 F.2d at 1083.  Judge McMahon further reasoned that Maxwell could only have reasonably relied on the protective order insofar as it prohibited BSF from fomenting an investigation against her with confidential documents.  If Judge McMahon had known of the 2016 meeting, it is arguable—albeit far from certain—that she might have instead concluded that BSF breached Maxwell's reasonable reliance interests.

But Judge McMahon also held that the Government had shown extraordinary circumstances justifying ex parte modification of the protective order.  She observed that modification of the protective order would serve a "significant public interest" and that the Government had demonstrated good cause to obtain the sought materials through a grand jury subpoena without alerting potential targets of its criminal investigation.  Extraordinary circumstances or compelling need provide a sufficient, independent basis to modify a protective order under *Martindell* notwithstanding the parties' reasonable reliance on that order.  *See Minpeco S.A. v. Conticommodity Servs., Inc.*, 832 F.2d 739, 742 (2d Cir. 1987) (citing *Martindell*, 594 F.2d at 296).  Thus, even assuming that the Government should have told Judge McMahon about communications with BSF in 2016, and even assuming that information was material to her analysis of Maxwell's reasonable reliance on the protective order, Judge McMahon would still have granted the Government's application.  Because the Government's alleged misrepresentation was not necessary to Judge McMahon's ruling, it cannot support suppression under *Franks*.

The Court thus finds that Maxwell has not made a substantial preliminary showing under either prong of *Franks*, and thus that she is not entitled to an evidentiary hearing.  For the same reasons, and because the present record does not establish a violation of due process, the Court declines to suppress the evidence obtained by the Government's grand jury subpoena.

### D.  *Martindell* provides no independent basis for suppression

The Court turns finally to Maxwell's argument that *Martindell* provides an independent basis for suppression.  Maxwell cites no authority in her opening brief for the proposition that a court may suppress evidence because it disagrees with another court's decision to modify a protective order under *Martindell*.  Indeed, there is no such authority.  No court has ever granted a motion to suppress on this ground.  The Court declines to review Judge McMahon's decision, because *Martindell* provides no basis to suppress evidence even if this Court were to disagree with it.

Even if Maxwell were right that this Court should review Judge McMahon's decision on the merits, that decision—like a magistrate's probable cause determination—would be entitled to "great deference."  *Leon*, 468 U.S. at 914.  Courts will uphold another judge's decision to allow the Government to obtain evidence on a motion to suppress so long as there is a "substantial basis" for the decision.  *Salameh*, 152 F.3d at 113 (quoting *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983)).  Judge McMahon found that the Government had established exceptional circumstances to modify the protective order based on the factual record before her.  Judge McMahon concluded that modification was necessary under the circumstances to allow the Government to investigate a high-profile matter in secrecy and so not to tip off the target of the investigation.  Although reasonable minds may differ—indeed, Judge Netburn reached the opposite conclusion—there was a substantial basis for Judge McMahon's decision and it is thus

entitled to deference.  As discussed, the Court is aware of no authority suggesting review of Judge McMahon's modification order is necessary or appropriate in these circumstances.  If necessary, the Court would afford it deference and would not disturb Judge McMahon's reasoned and supported decision.

Maxwell's reply brief recasts her claim for suppression under *Martindell* as simply another argument for suppression under due process or the Court's inherent authority.  Because, in her view, the Government did not satisfy the requirements of *Martindell*, its attempt to modify the protective order violated her due process rights.  And because, she alleges, the Government misrepresented facts to Judge McMahon, this Court should exercise its inherent authority to suppress evidence as a sanction for governmental misconduct.

The Court is not persuaded.  For the reasons set forth above, the Government's application for modification of the protective order did not violate Maxwell's due process rights.  Due process does not categorically bar an ex parte modification to a protective order, and Judge McMahon found that the Government had shown extraordinary circumstances to do so.  To the extent Maxwell seeks suppression based on an alleged misrepresentation to Judge McMahon, for the reasons set forth above, she has not met the high bar for a due process violation or made the required showing under *Franks* that would entitle her to an evidentiary hearing.  Whether Maxwell advances these arguments under *Martindell* or directly under due process, they do not support suppression.

## Conclusion

For the foregoing reasons, the Court finds that the Government did not violate Maxwell's constitutional rights when it obtained evidence covered by a protective order in her earlier civil case.  It further finds that Maxwell is not entitled to suppression of any evidence or to an

evidentiary hearing.  The Court thus DENIES Maxwell's motions to suppress (Dkt. Nos. 133, 139).

      SO ORDERED.

Dated: June 25, 2021
      New York, New York

_____
      ALISON J. NATHAN
      United States District Judge