# EXHIBIT D

1

Xj3q1gra                         SEALED

 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   In re:  Grand Jury Proceedings

 4                                      *Ex Parte* Conference

 5   ------------------------------x

 6                                      New York, N.Y.
                                        March 26, 2019
 7                                      4:04 p.m.

 8
     Before:
 9
                       HON. COLLEEN McMAHON,
10
                                        District Judge
11

12                        APPEARANCES

13   GEOFFREY S. BERMAN
          United States Attorney for the
14        Southern District of New York
     BY:  ALEX ROSSMILLER
15        Assistant United States Attorney

16

17

18

19

20

21

22

23

24

25

Xj3q1gra                    SEALED

1           (In the robing room)

2           THE COURT:  The following proceeding is being

3      conducted *ex parte* and under seal.

4           The problem is, it's not being conducted in a matter,

5      and that is one of my first questions to Mr. Rossmiller:  Why

6      was this not filed on the Court's docket with a miscellaneous

7      number?  We don't file things under U.S. Attorney numbers.

8      This should have been brought as a miscellaneous matter.

9           MR. ROSSMILLER:  So, your Honor, it was originally

10     submitted with Judge Sweet --

11          THE COURT:  I understand what he did, but I will tell

12     you that in the opinion that will never issue, because Judge

13     Sweet died, but he had written, and now I'm stuck with this,

14     Judge Sweet questioned why you had not made this an "In re: The

15     Matter of Application of the Grand Jury" or something or other,

16     with a proper miscellaneous docket number.  The fact that it

17     would have gone to Judge Sweet doesn't mean anything.  I have

18     no way to docket USAO No. 2018R01618.  That's your reference

19     number, not ours.

20          MR. ROSSMILLER:  I understand, your Honor.  I think we

21     had understood that the submission should be made to the court

22     that had entered the protective order and that --

23          THE COURT:  That's true, but that doesn't mean it

24     doesn't get a miscellaneous docket number.

25          The first thing that's going to happen, this is going

Xj3q1gra                    SEALED

1    to be re-legended and it's going to get a miscellaneous docket

2    number.

3            MR. ROSSMILLER:  Understood, your Honor.  I apologize

4    for that oversight.

5            THE COURT:  It's okay.

6            All right.  Now my second question, which is a

7    procedural question, the government here has moved for relief

8    on behalf of a third party to whom a grand jury subpoena has

9    issued, and that third party would like to be relieved of its

10   obligations under the protective order, and that third party is

11   a law firm full of brilliant lawyers that are fully capable of

12   making a motion bringing a proceeding to be relieved from the

13   provisions of the protective order.  Why are you doing this for

14   them?

15           Why doesn't Boies Schiller make an application for

16   permission to be relieved from the protective order?  Because

17   it thought it was going to violate some duty that it had to its

18   client in the underlying actions?  Did they give you a reason

19   why they weren't willing to come to court and --

20           MR. ROSSMILLER:  No, your Honor.  So I can't speak to

21   why Boies Schiller in particular didn't make their own

22   application.

23           THE COURT:  Because I understand that you don't think

24   that *Martindell* is applicable here, but I do, and now I'm the

25   judge.  I wish I weren't.  You know that the Second Circuit has

Xj3q1gra                         SEALED

1   very clearly said that, and Judge Broderick said in *Chemical*

2   *Bank* the proper procedure is for somebody to make a motion to

3   be relieved from the terms of the protective order.  And it

4   ain't you; it's somebody who's subject to the protective order.

5

6           MR. ROSSMILLER:  I think a little bit of context may

7   help explain how the procedure developed, your Honor.

8           Originally we had submitted an All Writs Act

9   application to Judge Sweet, which we believe was appropriate

10  given the sort of catch-all function of that --

11          THE COURT:  Yes, I understand that, but it still has

12  to have a docket number in order to be a proceeding in this

13  court.

14          MR. ROSSMILLER:  Totally understand, your Honor.  But

15  just with respect to our supplemental submission, Judge Sweet

16  had reached out to us and asked us to submit an argument in

17  connection with our application, and so I think whether that

18  was sort of past experience or his preference, that is why we

19  proceeded --

20          THE COURT:  So here's why I'm being so persnickety.

21  Forgive me.  Not only do I have to like come up to speed pretty

22  quickly, but you know -- I assume you know, but I certainly

23  know, and everybody who follows civil litigation knows -- that

24  Judge Sweet is about to get reversed in connection with this

25  protective order in the Second Circuit.  I mean, I don't have

Xj3q1gra                    SEALED

1   that on any authority other than my reading of the tea leaves

2   after the extensive press reporting and the fact that the

3   Second Circuit has already issued an order giving the parties

4   until last week to say why the summary judgment papers and all

5   the supporting papers should not be unsealed by the Second

6   Circuit and indicating that there would be a further order with

7   respect to all the rest of the, I don't know, 150 or so sealed

8   documents in connection with the underlying litigation, but you

9   can hear it in the questioning, you can read it in the press

10  reports, you can intuit it from the order.  I don't know if

11  you've seen the Second Circuit's order that issued last week,

12  but --

13            MR. ROSSMILLER:  I have, your Honor.

14            THE COURT:  Okay.  You can intuit that something kind

15  of unfavorable to Judge Sweet is happening, it's in the process

16  of happening, it seems to me it's about to be happening, in

17  connection with this protective order and its enforceability.

18  Doesn't seem that way to you, Mr. Rossmiller?

19            MR. ROSSMILLER:  Your Honor, I've read the same

20  articles and --

21            THE COURT:  I mean, really, Mr. Rossmiller?

22            MR. ROSSMILLER:  So I would say, your Honor, that I

23  would expect that any order to disclose materials that were

24  filed in connection with, for example, the summary judgment

25  papers, if in fact they are released or if in fact the

Xj3q1gra              SEALED

1   protective order is overturned in some way, that those would be

2   redacted as to individuals' names, personally identifying

3   information --

4          THE COURT:  Probably.

5          MR. ROSSMILLER:  -- which I would expect, your Honor.

6   I don't believe that any indication is that the underlying

7   discovery materials are likely to be unsealed, and I'm not sure

8   whether that's at issue, but in any event --

9          THE COURT:  I don't think it is.  I think the only

10  thing that's at issue in the case that the Second Circuit has

11  heard is the publicly -- only here, not publicly -- filed

12  litigation documents, which is essentially a lawsuit, a libel

13  action that has been filed and litigated under seal.  It was

14  settled by terms that would have expired because the protective

15  order doesn't extend until it goes on to a trial, but there

16  wasn't a trial.

17         And I'm struggling with this for two reasons.

18         First of all, it's like how much deference to give to

19  this protective order that was issued by some judge, not

20  myself, on the basis of I don't know what, except that from the

21  questions that the Second Circuit asked about the litigation

22  documents, it seemed like they were being critical of Judge

23  Sweet for not having a particularized inquiry into each

24  document that was sought to be filed in accordance with the

25  protective order as to why this contained confidential

1  information and what was confidential about this, and just

2  reading the tea leaves, I'm thinking to myself, what am I

3  supposed to do with this protective order that looks like it

4  stands on precarious footing to begin with?  Is this the

5  so-called improvidently granted protective order?  How could I

6  know that?  I'm trying to go back in the files to see what

7  Judge Sweet relied on in granting the protective order.  I have

8  no idea if there was an opinion.  I have no idea if there

9  was -- I mean, he recited the magic words at the beginning of

10  the protective order.  But, you know, he was doing this for

11  five years, and he's dead, and I can't ask him.  And his law

12  clerks weren't around when he did it, although they're trying

13  to help me find stuff in the files.  So I'm just trying to

14  figure out if there's something that's going to happen in the

15  Second Circuit that would help you out here or that would

16  further your investigation in a way that would make it not

17  necessary to deal with it.

18        MR. ROSSMILLER:  Your Honor, I'm very sympathetic to

19  that consideration.  I think that even were the Second Circuit

20  to unseal the entirety of what I believe is at issue, which is,

21  as the Court noted, as the Court just noted --

22        THE COURT:  150 litigation documents, and I don't

23  think the Second Circuit is going to take the time that would

24  be required to make the inquiry.  I'm going to guess that, you

25  know, some poor schlub in the district court is going to have

Xj3q1gra                    SEALED

1    to do that.  And I hope it's not me.  But --

2                MR. ROSSMILLER:  And I believe it will apply to the

3    docketed filings in the case and not, for example, the

4    underlying discovery materials, deposition materials,

5    investigation materials.

6                THE COURT:  Okay.

7                MR. ROSSMILLER:  And so I think that, unfortunately,

8    for the circumstances, for perhaps all of us, that even were

9    the Second Circuit to grant sort of the most expansive

10   invalidation of the protective order or sort of release of

11   these materials, that our application would still be relevant

12   and pending and active.

13               THE COURT:  Would still be relevant and pending and

14   active.  Okay.

15               And you can't explain to me why Boies Schiller didn't

16   make a motion.  Because there's no question in my mind that

17   were this to be disclosed to the parties -- and I appreciate

18   that we're not going to do that, but were this to be disclosed

19   to the parties, Maxwell would protest, and the first thing that

20   Maxwell would do would be to say the government lacks standing,

21   it's not a party of the protective order, the issue can be

22   litigated, if Boies Schiller chooses to make a motion to seek

23   to be relieved from the protective order, or to quash the

24   subpoena or to do something, but the government has no

25   standing.  It hasn't moved to intervene in the civil action.

SDNY_GM_00000860

Xj3q1gra                    SEALED

1    It hasn't done any of those things.  So under *Martindell*, the

2    government lacks standing, because remember, in *Martindell*, the

3    government only had standing because all the parties were

4    familiar with the government's application.  It wasn't a

5    secret.  I don't know why it wasn't a secret, but it wasn't a

6    secret.  And nobody objected.  And so they said, ah, okay,

7    objection to standing waived.

8              So, you know, once again, Judge Sweet, I can tell you,

9    was somewhat troubled by the procedural posture of the case

10   even though, as I understand it, he was perhaps partly to blame

11   for the procedural posture of the case, but it's not like Boies

12   Schiller came in here and asked for relief from the protective

13   order.  And I am curious about why Boies Schiller didn't do

14   that.

15             MR. ROSSMILLER:  Your Honor, what I can tell you about

16   that is we, the government, thought that we were in a position

17   to make the application via the All Writs Act submission that

18   we originally made, that that would be an appropriate vehicle

19   for the relief that we, as the government, were seeking in

20   connection with the protective order.  So I'm not sure --

21             THE COURT:  You're seeking to have a third party, to

22   have Boies Schiller, who were counsel for the plaintiffs in the

23   Maxwell action, be relieved from the protective order, but if

24   there's anybody on this planet who is capable of asking,

25   "Please relieve us from the strictures of this protective

Xj3q1gra                    SEALED

1     order," it is David Boies and his partners.  I mean, really.

2              MR. ROSSMILLER:  I'm sure you're right, your Honor,

3     and --

4              THE COURT:  They don't need the government's

5     protection.

6              MR. ROSSMILLER:  Not that I don't begrudge the dozens

7     of hours that I have spent on it in lieu of Boies Schiller, but

8     I think -- and with apologies of perhaps being persnickety

9     myself, but the relief that we are seeking is not precisely to

10    allow Boies Schiller to do something but rather for the

11    modification of the protective order that would then allow

12    that, but we did think that we were able to make the

13    application via the All Writs Act, and I think it was our

14    general understanding from Judge Sweet's response asking us for

15    support for our submission, rather than, for example, denying

16    it based on lack of standing at the outset or simply asking us

17    to have Boies Schiller make the application.  I don't know

18    what, if any, difference there would be in terms of the legal

19    analysis from Boies Schiller, but I can say that I think the

20    current posture does allow the government to explain why the

21    investigation is extraordinary in the sense of how other

22    decisions and courts have described it and where we, the

23    government, are better able to explain --

24              THE COURT:  But what do you mean by what you just

25    said?  I mean, you have an investigation into an allegation of

Xj3q1gra                    SEALED

1   human trafficking.  I have no idea if you're up against a

2   statute of limitations so that I could take the time that

3   really is needed to kind of grapple with the procedural issues,

4   because you haven't told me that you're up against a statute of

5   limitations.

6         MR. ROSSMILLER:  I can tell your Honor -- I'm sorry.

7   I didn't mean to interrupt.  But I can tell you that, as most

8   of our investigations do, this is moving sort of as fast as

9   possible.  This was a significant application that we

10  thoroughly considered before making and made originally nearly

11  two months ago, so we are hopeful to get an answer soon.

12  Nevertheless, let me say that --

13        THE COURT:  Unfortunately, but for the dead judge

14  opinion and the Supreme Court last month, you would have gotten

15  an answer, but --

16        MR. ROSSMILLER:  That said, I would not describe this

17  as an emergency application.  There's not a particular day by

18  which we are requesting a response.  We had hoped to hear back

19  from Judge Sweet --

20        THE COURT:  Before.

21        MR. ROSSMILLER:  Before.  Yes, your Honor.

22        THE COURT:  Would that that had happened.

23        MR. ROSSMILLER:  And if I may, just very briefly.  I

24  think with respect to the postural question, particularly

25  regarding Boies Schiller, Boies Schiller simply isn't in a

SDNY_GM_00000863

Xj3q1gra                    SEALED

1   position to be able to describe the investigation in the way

2   that we have in our submission.

3        THE COURT:  Well, that's clear.  That's clear.  I

4   mean, were I Boies Schiller, I would have -- never mind.  We

5   won't say what I would have done.

6        So I'm looking at the protective order itself, and of

7   course not having been privy to any of the materials in the

8   case -- and they're all under seal, so, I mean, I can dissolve

9   the seal and get them, but there are 150 documents there that

10  are under seal for filings, there are multiple documents that

11  are under seal.

12       MR. ROSSMILLER:  Not to mention all the underlying

13  materials, of course.

14       THE COURT:  Not to mention all the underlying

15  materials.

16       So you argue there isn't any truly confidential

17  material in this, this isn't a trade secrets case, and

18  obviously it's not a trade secrets case.  It's a libel case.

19  It would seem that the most scurrilous of accusations would

20  have already floated across the face of the complaint.  But

21  since Maxwell can't object, how can I know that all this is

22  about is information that would be, you know, embarrassing?

23       MR. ROSSMILLER:  I would point the Court in the first

24  instance to the definition of "confidential materials" in the

25  protective order itself, which describes "confidential

1    materials" as "information that is confidential and implicates

2    common law and statutory privacy interests of plaintiff

3    Virginia Roberts."

4             THE COURT:  I have absolutely no idea what that means,

5    and you don't either, and none of us does.

6             MR. ROSSMILLER:  I don't, your Honor, but I think we

7    argued in our submission that it, at least on its face, does

8    not implicate the type of materials that are confidential

9    business materials, trade secrets --

10            THE COURT:  Ordinarily the subject of --

11            MR. ROSSMILLER:  -- ordinarily the subject of the

12   considerations developed in some of the cases that we cited.

13            THE COURT:  Okay.

14            MR. ROSSMILLER:  And I should also say that in

15   responding to the subpoena, Boies Schiller has the ability to

16   say that they will not produce certain materials because they

17   are privileged, because they believe that there is some larger

18   overarching confidentiality issue, at which point we would be

19   in a different posture.  I am not aware that they have

20   identified any materials as confidential that they would

21   withhold, but I do note that we would not ask for and would not

22   expect to receive privileged materials.

23            THE COURT:  Okay.  Did you provide Judge Sweet with a

24   proposed order?

25            MR. ROSSMILLER:  We did, yes, your Honor.

Xj3q1gra                    SEALED

 1         THE COURT:  Could I see what you provided Judge Sweet.

 2         MR. ROSSMILLER:  Yes, of course.

 3         And your Honor, just for the record, I'm handing over

 4    what was our initial sealed affirmation and application to the

 5    Court for an order under the All Writs Act, and that includes

 6    an affirmation and application that I signed with an exhibit

 7    attached of the original protective order, followed by which is

 8    a proposed order for entry by Judge Sweet, which we of course

 9    would be happy to submit to the Court in Word form or in

10    revised form, subject to the Court's views.

11         THE COURT:  Right.  I just wanted to see if it had a

12    certain provision.

13         MR. ROSSMILLER:  If there is a provision that the

14    Court thinks would address some of these issues, we would of

15    course be happy to hear it.

16         THE COURT:  Of course I'm not Judge Sweet, so I don't

17    know exactly what was going on in his head.

18         I assume it would be the government's position that

19    reliance on the nondisclosure of confidential materials to law

20    enforcement in connection with a grand jury subpoena that has

21    been duly authorized would be unreasonable.  It wouldn't be

22    reasonable reliance to assume that the protective order could

23    never be modified to allow -- I mean, the parties to this

24    negotiated the protective order, and the protective order does

25    not contain the provision that is in every protective order I

1    sign, which is, you can disclose it without the permission of

2    the Court if, you know, law enforcement puts a gun to your head

3    and says produce it.  That's not in here.

4            MR. ROSSMILLER:  That's right, your Honor.

5            THE COURT:  I don't know.  It's my understanding that

6    it may have been negotiated out.

7            MR. ROSSMILLER:  It may have been.  I will only say

8    that I believe that -- I'm on less firm ground than in the

9    cases that we discussed specifically, but I believe that the

10   converse would be void for public policy; in other words, you

11   would not be able to put in --

12           THE COURT:  That was my question.

13           MR. ROSSMILLER:  -- you may not disclose this to law

14   enforcement even given a duly authorized grand jury subpoena.

15           THE COURT:  Thank you for saying the words "void for

16   public policy," because I was going there.  I take it it would

17   be the government's position that because it would be void as

18   against public policy to absolutely prohibit the disclosure of

19   information to law enforcement, that if a party were to say,

20   "But I relied on this, that it would not be disclosed to law

21   enforcement," that that would not, in your view, be reasonable

22   reliance.

23           MR. ROSSMILLER:  Yes, your Honor, I think that's

24   correct, and I think that that is borne out by the opinion in

25   *Chemical Bank*, which essentially says:  You should have asked,

Xj3q1gra                      SEALED

1    but of course this is fine for you to disclose this information

2    to the government based on the validly issued grand jury

3    subpoena, I think for the same type of reasons that the Court

4    is describing.

5         THE COURT:  Okay.  So let me see what other million

6    questions that I have.

7         It's a general subpoena.  Did you take them for all

8    discovery materials?  I mean, everything that's in Boies

9    Schiller's files, other than privileged documents, which of

10   course you don't exclude from your subpoena but presumably they

11   will exclude from their production.  But it's literally

12   everything.  So remember, I know very little about the Maxwell

13   case, both because it wasn't my case and, to the shock of

14   nearly everyone that I talk to, we're all too busy to worry

15   about some litigation that's being handled by somebody else;

16   and second, it seems to have been litigated entirely under seal

17   so how could I have found out anything about it.  Everything I

18   know about this case I learned from reading about the Second

19   Circuit argument.  Literally, everything.

20        So what assurance do I have that so broad a grand jury

21   subpoena -- given that I have these competing interests between

22   the terms of the protective order and the government's interest

23   in conducting an investigation, what assurance do I have that

24   you need all that stuff, that that's all somehow going to be

25   relevant to your investigation?  That is a concern from me

Xj3q1gra                    SEALED

 1    because I don't know anything about the case.

 2                MR. ROSSMILLER:  Okay, your Honor, and I think the

 3    answer to that is in a couple parts.  The first is, I would

 4    point the Court towards some of the opinions that have talked

 5    about the government's investigative ability and authority

 6    being broad, and it is the case that sometimes we issue grand

 7    jury subpoenas --

 8                THE COURT:  But that was true in *Martindell* too.

 9                MR. ROSSMILLER:  Yes, of course, your Honor, but I

10    just need to say that it is entirely possible that, in any

11    grand jury subpoena, that materials will come back that are not

12    helpful to our investigation, are not relevant, for whatever

13    reason, that it was, however unintentionally, overbroad or

14    included unnecessary aspects.  Here, we are essentially unable

15    to significantly narrow the request for information in part for

16    exactly the reasons that you describe.  We have either little

17    or no additional information than the Court does in terms of

18    what materials there are, who was deposed, and that is in

19    marked contrast to some of the other cases.

20                THE COURT:  Every other case in the whole world.

21                MR. ROSSMILLER:  Of course, your Honor.  Exactly.  For

22    exactly the reasons we described.

23                So what I can say in terms of assurance is, we are not

24    sort of an ordinary third-party intervenor.  All of these

25    materials will be subject to the extraordinary protections of

1    Rule 60.  We will be extremely restricted in our use of them.

2    To the extent that we receive materials that otherwise wouldn't

3    have been narrowly connected with our investigation, they will

4    not go anywhere that they shouldn't; they will not be treated

5    in any way they should not be.

6          THE COURT:  Let me ask a question that you may not

7    wish to answer, and I'll appreciate it if you don't.

8          I know who the target of your investigation is, at

9    least the one that you've identified.  Is there any expectation

10   that these materials would be used to commence criminal

11   proceedings against either of the parties to the libel case?

12         MR. ROSSMILLER:  I can say that just as a general

13   matter, that any materials that we gather in any part of any

14   investigation that appear to give rise to criminal liability

15   for individuals implicated in those materials could cause us to

16   proceed with an investigation of any such individual.  That's a

17   little broad, your Honor, obviously, but --

18         THE COURT:  Oh, no.  I understand what you're saying.

19   And I think Judge Sweet had some concerns about that.

20         MR. ROSSMILLER:  But I don't think that there's any

21   additional protection for the parties of the lawsuit as opposed

22   to nonparties' information.

23         THE COURT:  They're the ones who relied on the

24   protective order.  Of course you say it's not reasonable to

25   rely, but they're the ones who relied on the protective order

19

Xj3q1gra                    SEALED

1    in order to give whatever in discovery they gave, whether it

2    was deposition testimony they gave or -- then again, I can't

3    fathom why anybody who has any criminal exposure would not have

4    taken the Fifth Amendment in response to questions in a civil

5    deposition, but I don't know.

6           MR. ROSSMILLER:  So just taking that very briefly in

7    order, your Honor, I do not know, but I think it is entirely

8    possible that what we are seeking is page after page of people

9    taking the Fifth.  That is entirely possible.  But to the

10   extent that it is not or there are other materials -- and this

11   may be bad for our argument, but in all transparency and

12   candor, I think there may be other individuals who also relied

13   on the protective order.  In other words, anyone other than the

14   parties who were deposed may have, in theory, and perhaps

15   unreasonably, relied on it.

16          THE COURT:  For example, the target of your

17   investigation.

18          MR. ROSSMILLER:  For example, the target of our

19   investigation.  But I don't think that the parties would be

20   differently situated in terms of their rights, and there are

21   certainly many cases that talk about how the government has the

22   ability to grant immunity in a criminal investigation, but not,

23   of course, through restricting materials --

24          THE COURT:  But that's the whole point of the

25   government needing to follow the procedure, the proper

Xj3q1gra                    SEALED

1    procedure of either having the target of the subpoena make a

2    motion to quash or a motion for relief or the government moving

3    for relief to intervene, instead of engaging in self-help.

4    There isn't an application like this in any case except the

5    *Chemical Bank* case, and in the *Chemical Bank* case, it all was

6    ex post facto and it all happened.

7           MR. ROSSMILLER:  Right.  And I'll just note, without

8    wanting to be defensive at all about the posture -- I

9    understand the Court's questions about that -- I cannot recall

10   whether it was *Martindell* or one of the other cases, but one of

11   the original cases in this line, one of the issues was that the

12   court had gotten on the phone with the judge and requested it,

13   you know, sort of informally, right?

14          THE COURT:  Yes.

15          MR. ROSSMILLER:  Despite our errors in the precise

16   procedure, we did want to have a formal application with

17   reasons and then subsequently, at the request of Judge Sweet,

18   supporting law.  And so I do apologize for the precise posture.

19   We took the approach that we did in the hopes that we could

20   avoid the types of problems that had been engendered by other

21   types of applications which I think were made by the government

22   in other cases, and so that's what we did here as well.

23          THE COURT:  Okay.  All right.  Well, I'll tell you one

24   thing that I am going to do.  I am going to ask the clerk of

25   the court to assign a miscellaneous number to this case and

Xj3q1gra                    SEALED

1   everything will be filed under seal, and it will be "In Re

2   Grand Jury," you know, the usual, and it will have the

3   treatment that "In Re Grand Jury" materials get, and everything

4   will be filed under seal.  But that way I at least have a place

5   to put this, okay?

6          MR. ROSSMILLER:  I appreciate that, your Honor.  I

7   think we had expected that had the order been either granted or

8   denied, that consistent with our usual All Writs application,

9   that it would have then been identified with a number, but

10  frankly, I'm not in the clerk's office, so --

11         THE COURT:  Okay.  But it has to have one, and I'm

12  particularly acutely desirous of making sure that this is filed

13  under a docket number with this court because I am concerned

14  about the way everything has happened to date, given the Second

15  Circuit's kind of, it seems to me, obvious displeasure with the

16  fact that this whole thing has been litigated under seal.  So

17  grand jury material, absolutely.  But let's be sure that there

18  is a docket, you know, that we don't have something that's off

19  the radar screen.

20         MR. ROSSMILLER:  Totally understood, your Honor, and I

21  appreciate that, and we're grateful to the Court for that.

22         THE COURT:  Great.  Okay.  And you'll get your answer

23  by early next week.  I have to go to the annual meeting of the

24  chief district judges.

25         MR. ROSSMILLER:  I don't envy the Court that.

SDNY_GM_00000873

Xj3q1gra                    SEALED

 1            THE COURT:  It would be fine, but my biggest problem,

 2    frankly, is I don't know when Judge Sweet's funeral is and I'm

 3    trying to figure out when I need to be here for Judge Sweet's

 4    funeral.

 5            MR. ROSSMILLER:  We're very grateful --

 6            THE COURT:  This goes to the top of the pile.  I

 7    appreciate that this should have been dealt with sooner, and

 8    I'm sorry that it wasn't dealt with a week sooner or you would

 9    have had an answer.

10            MR. ROSSMILLER:  We're grateful for the Court's

11    attention and certainly appreciate the opportunity to explain

12    how we ended up here.

13            THE COURT:  Okay.  Thank you.

14            MR. ROSSMILLER:  Thank you, your Honor.

15            THE COURT:  I appreciate it, Mr. Rossmiller.

16                            o0o

17

18

19

20

21

22

23

24

25