UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



United States of America,

        –v–

Ghislaine Maxwell,

                Defendant.

20-CR-330 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

Defendant Ghislaine Maxwell seeks an order authorizing four subpoenas pursuant to Rule 17(c)(3) of the Federal Rules of Criminal Procedure. Specifically, she seeks authorization to serve subpoenas on four individuals. For the reasons that follow, the Court DENIES Maxwell's motion without prejudice.

## I.      Legal Standard

Rule 17(c) permits subpoenas ordering the production of "books, papers, documents, data, or other objects." Fed. R. Crim. P. 17(c)(1). When the subpoena seeks the production of personal or confidential information about a victim, it may be served on a third party only by court order. Fed. R. Crim. P. 17(c)(3).

The purpose of Rule 17(c) is to facilitate the trial by designating a time and place prior to trial to obtain and inspect evidentiary material. *See United States v. Nixon*, 418 U.S. 683, 698– 99 (1974) (citing *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951)). It is not intended to provide an additional means of discovery or to serve as a general "fishing expedition." *Id.* at 698–700. As a result, courts must be mindful not to allow the Rule 17(c) process to become a "broad discovery device" that would undermine the discovery procedures set forth in Rule 16. *United States v. Cherry*, 876 F. Supp. 547, 552 (S.D.N.Y. 1995). Thus, if

an item is not discoverable under Rule 16, a party cannot make it discoverable simply by

subpoenaing it under Rule 17. *United States v. Barnes*, No. S9 04-CR-186 (SCR), 2008 WL

9359654, at *2 (S.D.N.Y. Apr. 2, 2008).

To determine whether issuance of the subpoena is appropriate, the Court considers the

factors articulated in *United States v. Nixon*, 418 U.S. at 699–700.  In *Nixon*, the Supreme Court

explained that in order to require production prior to trial, the moving party must show: (1) that

the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably

in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for

trial without such production and inspection in advance of trial and that the failure to obtain such

inspection may tend unreasonably to delay the trial; and (4) that the application is made in good

faith and is not intended as a general 'fishing expedition.'" *Id.* at 698–700.  To clear that hurdle,

the Court considers (1) relevancy, (2) admissibility, and (3) specificity.  *Id.* at 700.

## II.    Discussion

On April 27, 2021 and June 2, 2021, the Court denied Maxwell's request for an order

authorizing issuance of a Rule 17(c) subpoena to Boies, Schiller, Flexner LLP.  *See* Dkt. Nos.

252, 298.  In doing so, the Court noted that the requests contained in that proposed subpoena all

failed the *Nixon* test.  The proposed subpoenas to these four individuals seek similar materials,

and the subpoenas fail for similar reasons.

### A.  Subpoena Recipient-1

The Court begins with the proposed subpoenas to Subpoena Recipient-1.  The proposed

subpoena to her makes five requests which overlap entirely with requests contained in the

proposed subpoena to BSF.  Specifically, Maxwell requests (1) any contingent fee and

engagement agreements between Subpoena Recipient-1and any attorneys; (2) Subpoena

Recipient-1's original journal for inspection and copying; (3) a pair of black boots that Maxwell

and Jeffrey Epstein allegedly gave to Subpoena Recipient-1; (4) production of the original copies

of certain photographs of Subpoena Recipient-1; and (5) materials related to the Epstein Victim

Compensation Fund.  As the Court previously noted, all of these requests fail the *Nixon* test.

The request for any contingent or engagement agreements fails because Maxwell has not

made the required showing that such records would be relevant or admissible.  The only

plausible theory of relevance set forth in Maxwell's papers is that these documents are necessary

for purposes of impeachment.  *See* Dkt. No. 252, April 27, 2021 Op., at 4–5.  The need to

impeach witnesses generally "is insufficient to require [materials'] production in advance of

trial."  *Nixon*, 418 U.S. at 701.  As a result, many courts have held that mere impeachment

material does not become relevant until after the witness testifies.  *United States v. Skelos*, No.

15-CR-317 (KMW), 2018 WL 2254538, at *2 (S.D.N.Y. May 17, 2018)), *aff'd*, 988 F.3d 645

(2d Cir. 2021) (collecting cases).  Here, there is no other plausible theory of relevance to these

materials—and Maxwell does not advance any explanation, other than impeachment, as to why

these materials might be relevant under the *Nixon* test.  Lacking any relevance or admissibility,

the request is improper for purposes of Rule 17(c).  In any event, there is little risk that review of

these materials, if they become relevant and admissible, will lead to a delay at trial, given their

limited volume.  *United States v. Seabrook*, No. 16-CR-467 (ALC), 2017 WL 4838311, at *2

(S.D.N.Y. Oct. 23, 2017).  If the materials become relevant at trial, Maxwell will be able to

procure them at that time.

Maxwell's request for production of Subpoena Recipient-1's journal also fails the *Nixon*

test.  As the Court noted in its June 2, 2021 opinion, the original and complete journal is not the

proper subject of a Rule 17(c) subpoena.  As already noted, mere impeachment purposes do not

warrant the issuance of a Rule 17(c) subpoena. *See* Dkt. No. 298, June 2, 2021 Order, at 1–2.

Maxwell's other theories of relevance similarly fail; as the Court previously observed, there is no

merit to Maxwell's contention that the contents of the journal, other than the pages to which she

already has access, are exculpatory. *See id.* And more generally, the request for production of

the entire original journal is speculative and overbroad, amounting to little more than a "fishing

expedition," which is not the proper use of Rule 17(c). *See Nixon*, 418 U.S. at 698–70.

The request for the original pair of black boots is moot. *See* Dkt. No. 298, June 2, 2021

Order, at 4–5. The Government has indicated that it has requested that BSF produce the boots to

the FBI and that, when the boots are in the FBI's possession, the Government will promptly

make them available to the defense for examination and use at trial. Rule 17(c) is not the proper

mechanism for discovery from third parties where the sought-after item is "otherwise procurable

reasonably in advance of trial." *Nixon*, 418 U.S. at 698–700. That is the case here: The

Government has represented that the defense will be able to inspect the boots before trial. *See*

Dkt. No. 298, June 2, 2021 Order, at 4–5.

The request for original copies of certain photographs similarly fails. As the Court

previously noted, the defense has access to photocopies of those photographs; the request is

therefore for the originals. The Government has indicated that a subset of those photographs are

in the FBI's possession and that it will make them available to the defense for inspection; the

request is moot as to those photographs. *See* Dkt. No. 298, June 2, 2021 Order, at 4–5. And as

to the remaining photographs, the request is again denied on the basis that the defense has failed

to establish the relevance of the original versions of the photographs. The defense already has

photocopies or scanned versions of the photographs in question. The only discernible theory of

relevance as to the original versions of these photographs is impeachment. Once again, it is

improper to issue a Rule 17(c) subpoena where the sole relevance of the requested materials is impeachment. There is no plausible claim that inspection of the original photographs is warranted, and to the extent that Maxwell seeks the photographs in order to disprove their authenticity (and challenge any potential testimony that might be advanced at trial), the request is entirely speculative. Even assuming that impeachment could permissibly establish relevance, the argument fails because Maxwell does not yet know the scope of the victim's testimony or whether it will implicate the photographs.

Finally, the request for materials related to the Epstein Victim Compensation Fund is denied for substantially the same reasons the Court articulated in its April 27, 2021 Opinion. *See* Dkt. No. 252, April 27, 2021 Op., at 6–8. Here, too, Maxwell has failed to establish the materials' relevance. The briefing makes clear that Maxwell seeks these documents for mere impeachment purposes, which again does not warrant issuance or enforcement of a Rule 17(c) subpoena. Furthermore, to the extent that Maxwell hinges her theory of relevance on the possibility that these documents may contain some exculpatory evidence, the request is entirely speculative. The "mere hope" that documents might produce some degree of exculpatory evidence is also insufficient. *See United States v. Rich*, No. S 83-CR-579 (SWK), 1984 WL 845, at *3 (S.D.N.Y. Sept. 7, 1984). Maxwell has proffered no plausible basis why these materials might be exculpatory beyond her theory that they will help her undermine the potential witness's credibility.

In sum, for the reasons stated by the Court in its April 27, 2021 and June 2, 2021 orders, the request for authorization of a Rule 17(c) subpoena to Subpoena Recipient-1 is DENIED.

### B. Subpoena Recipient-2

The proposed subpoena to Subpoena Recipient-2 contains four requests.  The first seeks any contingent fee and engagement agreements between Subpoena Recipient-2 and any attorneys; the second seeks an envelope that allegedly has Epstein's and Maxwell's "touch DNA"; the third seeks certain physical evidence, including photographs, old diaries, and telephone books; and the fourth seeks EVCP materials.  The first and fourth requests fail for the same reasons as discussed above; their only plausible theory of relevance is impeachment, which places them outside the proper scope of Rule 17(c).

The second and third requests are plainly sought for impeachment purposes.  Indeed, Maxwell's briefing makes clear that she seeks production of the envelope in order to "disprove" claims that Subpoena Recipient-2 might make at trial if called to testify.  Beyond a conclusory assertion regarding Subpoena Recipient-2, however, Maxwell does not make any effort to identify which claims she seeks to disprove.  Nor does she explain why the envelope, or any information derived from its inspection, is relevant to the criminal charges she is facing.  At most, that is, she seeks the envelope in order to impeach any testimony that Subpoena Recipient-2 might have if called to testify.  The request is speculative and clearly beyond the proper scope of Rule 17(c).

The third request, for vast amounts of physical evidence that Subpoena Recipient-2 showed or produced to Subpoena Recipient-3, fails for two reasons.  The first is relevance; as above, Maxwell's briefing makes clear that she seeks to examine the evidence in order to prepare to rebut any testimony that Subpoena Recipient-2 might make at trial (or any evidence introduced through Subpoena Recipient-2).  Here, too, the request seeks to impeach Subpoena Recipient-2's potential testimony.  That is insufficient.  Other than that, Maxwell makes no effort

to justify the relevance of that evidence; she does not claim, for instance, that that evidence is exculpatory or that the evidence is otherwise relevant to her defense.  Furthermore, Maxwell does not attempt to justify the relevance of *all* of the requested materials.  The very nature of the request evinces that it seeks considerable amounts of physical evidence, and the only thing tying the evidence together is that Subpoena Recipient-2 may have shown that evidence to certain attorneys at some point.  To prevail under *Nixon*, however, a movant must show why *all* of the requested evidence is relevant.  *United States v. Pena*, No. 15-CR-551 (AJN), 2016 WL 8735699, at *2 (S.D.N.Y. Feb. 12, 2016).  That is not the case here.

The request thus fails because Maxwell has not established the relevance of all of these materials.  The most she can muster is that some of it *may* be relevant for impeachment purposes, *if* Subpoena Recipient-2 is called to testify.  On that basis alone, the request fails.  In addition, the third request separately fails because it amounts to nothing more than a fishing expedition. *See Nixon*, 418 U.S. at 698–700.

As a result, the request for authorization of a Rule 17(c) subpoena to Subpoena Recipient-2 is DENIED.

### C. Subpoena Recipient-3 and Subpoena Recipient-4

The final two requests for authorization of Rule 17(c) subpoenas—one relating to Subpoena Recipient-3, the other to Subpoena Recipient-4—are the same.  The first five requests in both of these proposed subpoenas concern communications regarding meetings with the United States Attorney's Office for the Southern District of New York.  These requests parallel those that Maxwell made in the proposed subpoena to BSF.  *See* Dkt. No. 252, April 27, 2021 Op., at 3–4.  As set forth in the subpoenas, the term "communications" encompasses "all forms of correspondence, including regular mail, email, text message, memorandum, or other written

communication of information of any kind."  As a general matter, the use of the terms "all" and "any" "do not evince specificity."  *United States v. Tagliaferro*, No. 19-CR-472 (PAC), 2021 WL 980004, at *3 (S.D.N.Y. Mar. 16, 2021).  And while the requested subpoenas are limited to the period between 2015 and 2021, the timeframe is still overly broad.  Here, too, the requests are precisely the kind of "fishing expedition" that the specificity requirement is designed to prevent.  *See* Dkt. No. 252, April 27, 2021 Op., at 3–4; *Bowman Dairy Co.*, 341 U.S. at 221. Indeed, the requests are akin to discovery requests in civil litigation.  *See United States v. Avenatti*, No. (S1) 19-CR-373 (PGG), 2020 WL 86768, at *6 (S.D.N.Y. Jan. 6, 2020).  But Rule 17(c) subpoenas are not tools of discovery.  *Nixon*, 418 U.S. at 698; *United States v. Wey*, 252 F. Supp. 3d 237, 253 (S.D.N.Y. 2017).  On the specificity prong alone, Requests 1 through 5 fail to satisfy the *Nixon* standard.  They also fail because there is no plausible theory of relevance to these requests, and the briefing papers advance no discernible explanation for why these documents may be relevant at trial.  The papers suggest that part of the impetus for the requests relate to impeachment, but that is insufficient to warrant issuance of a Rule 17(c) subpoena.

Requests 6 and 7 seek "any" notes, reports, records or summaries reflecting any meetings or communications between Subpoena Recipient-3 and Subpoena Recipient-4 and certain victims or their counsel.  These requests are plainly a "fishing expedition," and they fail on that basis.  *Nixon*, 418 U.S. at 698.  In any event, and more generally, the requests do not satisfy *Nixon*'s relevance requirement.  Once again, the requests are sought for mere impeachment purposes, and to the extent that the materials may become relevant, they would only do so *after* the witness(es) are called to testify.  A pre-trial Rule 17(c) subpoena is not the proper mechanism for procuring such impeachment materials.  *Skelos*, 2018 WL 2254538, at *2.  Maxwell presents

no other theory of relevance (including that the materials are exculpatory or otherwise relate to the criminal charges at issue), and on this independent basis, the requests fail.

Request 8 seeks "all" photographs, diaries, journals, or other documentary evidence obtained from "any" person who has accused Maxwell.  The request, another fishing expedition, is plainly unjustified under the *Nixon* test.  The first problem relates to specificity.  As above, the words "all" and "any" do not "evince specificity."  *United States v. Tagliaferro*, No. 19-CR-472 (PAC), 2021 WL 980004, at *3 (S.D.N.Y. Mar. 16, 2021).  Here, Maxwell does not attempt to narrow the request and instead seeks *all* materials obtained from *any* person who has accused Maxwell—at any point, without any limitations.  *Nixon* requires greater specificity.  *See Nixon*, 418 U.S. at 698–70.  In addition, the requests fail because Maxwell has not established the relevance of all of those materials.  Under Rule 17(c), the moving party must show that all of the requested material is relevant.  *Cf. United States v. Pena*, No. 15-CR-551 (AJN), 2016 WL 8735699, at *2 (S.D.N.Y. Feb. 12, 2016).  Clearly, the request seeks materials related to people who are not referenced in the Indictment.  Maxwell has not made any kind of showing why those materials are relevant to the criminal charges she faces in this case.  Thus, the request is improper.

Request 9 seeks the same evidence as the third request in the proposed subpoena to Subpoena Recipient-2.  For the reasons discussed above, that request fails.

Finally, Request 10 seeks EVCP materials.  As discussed above, the only plausible theory of relevance for those materials is impeachment, and as such Maxwell has not established the relevance of those materials for purposes of the *Nixon* analysis.

In sum, none of the requests contained in these two subpoenas satisfy the *Nixon* factors.  As a result, the requests are DENIED in full.

**III.    Conclusion**

For the reasons set forth above, Maxwell's motion is, at this time, DENIED without

prejudice.  She may renew any Rule 17(c) applications upon a proper showing that each of the

requested materials satisfies the *Nixon* test, as described above and in the Court's April 27, 2021

and June 2, 2021 Orders.  The Court will file this Opinion & Order under temporary seal to allow

consideration of any sealing or redaction requests.

SO ORDERED.


Dated: August 13, 2021
      New York, New York                    _____
                                                      ALISON J. NATHAN
                                                  United States District Judge