UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------ x
                                 :

UNITED STATES OF AMERICA,       :
                                 :

           v.                 :     20 Cr. 330 (AJN)
                                 :

GHISLAINE MAXWELL,          :
                                 :

             Defendant.       :
                                 :

------------------------------------------------------ x


**MS. MAXWELL'S SECOND *EX PARTE* AND *IN CAMERA* MOTION FOR AN ORDER AUTHORIZING A SUBPOENA PURSUANT TO <u>FED. R. CRIM. P 17(c)(3)</u>**

Jeffrey S. Pagliuca
Laura A. Menninger
HADDON, MORGAN & FOREMAN P.C.
150 East 10th Avenue
Denver, CO 80203
Phone: 303-831-7364

Christian R. Everdell
COHEN & GRESSER LLP
800 Third Avenue New
York, NY 10022
Phone: 212-957-7600

Bobbi C. Sternheim
Law Offices of Bobbi C. Sternheim
33 West 19th Street - 4th Floor
New York, NY 10011
Phone: 212-243-1100


*Attorneys for Ghislaine Maxwell*

Defendant Ghislaine Maxwell makes this second *ex parte* and *in camera* motion for the Court to enter an Order authorizing her counsel to issue additional subpoenas under Federal Rule of Criminal Procedure 17(c).  The legal and factual grounds for this second motion are largely identical to those set forth in Ms. Maxwell's first *ex parte* and *in camera* motion ("First Motion") for issuance of a subpoena to the law firm Boies, Schiller and Flexner LLP ("BSF"), filed with the Court on February 21, 2021, and Ms. Maxwell expressly incorporates that First Motion by reference.  Because additional subpoenas are necessary for (a) her pending pre-trial motions, and (b) in order to examine certain physical pieces of evidence in advance of trial in order to adequately prepare for trial, she hereby sets forth additional facts and argument pursuant to *United States v. Nixon*, 418 U.S. 683, 699-700 (1974), to justify these additional subpoenas.

As with her First Motion, she makes this motion *ex parte* for the "strong policy reasons in favor of an *ex parte*" process and because she is providing detail regarding her investigative and trial strategy to demonstrate compliance with the  specificity, relevance, and admissibility requirements of a Fed. R. Crim. P. 17 subpoena. *United States v. Reyes*, 162 F.R.D. 468, 470 (S.D.N.Y. 1995).

## I.   The Additional Subpoenas

Ms. Maxwell seeks to serve Rule 17 subpoenas on the following law firms and individuals.  The subpoenas seek specific items each identified in their respective Attachment A:

1.   Annie Farmer (Ex. 1)

2.   Maria Farmer (Ex. 2)

3.   Brad Edwards, Esq. of Edwards Pottinger (Ex. 3)

4.   Stanley Pottinger, Esq. of Edwards Pottinger (Ex. 4)

## II.  Annie and Maria Farmer

*Items 1-5*

As previously detailed, Annie Farmer is believed to be the alleged victim referred to in the superseding indictment as "Minor Victim 2."  She is represented by BSF.  *See, e.g., Annie Farmer v. Indyke, et al.,* No. 19 Civ. 10475 (LGS).  The proposed BSF Subpoena calls for production of particular physical items that belong to Annie Farmer, specifically a journal, black boots, and certain photographs.  BSF produced photos of those items (and PDF replications of the photographs) to Ms. Maxwell in the *Annie Farmer* action.  It is unknown whether the items are currently in the possession of BSF or Ms. Annie Farmer.  Ms. Maxwell proposes to serve a subpoena, attached as Exhibit 1, on Ms. Annie Farmer for the physical items; counsel also proposes that service be effected through BSF if they are willing to accept service.[1]  Inspection of each of these items in advance of trial is necessary for the reasons set forth in the Ms. Maxwell's First Motion.

Ms. Maxwell seeks also to serve a subpoena on Ms. Annie Farmer in the event that BSF claims the physical items are not in their custody or control, but rather belong to (and are in the possession of) their client.  The proposed subpoena seeks no new or additional information beyond that which is sought by the BSF Subpoena.

Similarly, Ms. Maxwell seeks also to serve a subpoena on Annie Farmer's older sister, Maria Farmer.  *See* Exhibit 2.  Like Annie, Maria Farmer is represented by BSF.  *See Maria Farmer v. Indyke et al.,* 19 Civ. 10474 (NRB).  Ms. Maxwell seeks to serve the proposed subpoena on Maria Farmer through BSF if they are willing to accept service.

Defense counsel does not believe that Maria Farmer is mentioned in the Indictment, however, counsel believes the government will offer her as a witness at this criminal trial either

---

[1] Fed. R. Crim. P. 17(c)(3) requires notice to an alleged victim where "personal or confidential information about a victim" is being sought. These subpoenas are addressed directly to the alleged victims so notice should be provided upon issuance.

under Rule 404(b) or as *res gestae* evidence in conjunction with her sister's allegations.  *See* First Motion at 11, 15-16.  Maria Farmer is the individual who purportedly introduced her younger sister to Jeffrey Epstein.  In her civil lawsuit and in numerous public statements, Ms. Maria Farmer has asserted that she has certain physical items that substantiate her allegations against Jeffrey Epstein and Ms. Maxwell.  She described in various publications certain "envelopes" that she "still has" with the touch DNA and fingerprints of Jeffrey Epstein and Ghislaine Maxwell.[2]  Ms. Maxwell seeks to examine those envelopes and to test them in advance of trial to disprove Maria Farmer's claims.

Maria Farmer also reportedly met with attorneys Brad Edwards and Stanley Pottinger at her home in Paducah, KY in or about June 2016.  To counsel's knowledge, those attorneys have never represented Maria Farmer.  Brad Edwards describes in his self-published memoir, *Relentless Pursuit*, that Maria Farmer during that meeting showed him substantial physical evidence corroborating her claims against Jeffrey Epstein and Ghislaine Maxwell, including photographs, diaries, telephone books, Rolodexes and mementos collected from her "time with Epstein and Maxwell."  *See* Ex. 2(A).  Ms. Maxwell also seeks to examine these items of physical evidence in advance of trial so that her experts and investigation team may rebut any such evidence and effectively confront this accuser.  The requests for her attorneys' fee agreements and her EVCP Materials are identical to those in the BSF subpoena, but are being requested directly from her in the event her attorneys claim they do not have constructive possession or control over those items.

---

[2] In a podcast with journalist Whitney Webb which aired on May 26, 2020, Maria Farmer claimed to possess "envelopes" that "still have the touch DNA and fingerprints on them" of "Jeffrey and Ghislaine" and that she offered them to the FBI but the FBI said "we don't need it." https://soundcloud.com/user-414392239/271-epstein-victim-maria-farmer-speaks-part-2-the-last-american-vagabond-whitney-webb

*Nixon Factors:*

Each of the items specified in the Annie and Maria Farmer proposed subpoenas is relevant, specific and admissible.  These two alleged victims have publicly identified the materials and publicly proclaimed they corroborate and support their allegations.  There are no evidentiary impediments to admissibility. The documents, photographs, footwear, envelope and mementos presumably can be authenticated by Annie or Maria Farmer at trial. To the extent that the items turn out to have been altered or do not exist the absence of this evidence is also relevant and admissible at trial as exculpatory evidence.

## III.  Brad Edwards and Stan Pottinger

*Items 1-5:  Communications Concerning Meetings with the U.S. Attorney's Office*

As detailed in the First Motion, Brad Edwards and Stan Pottinger[3] represented Virginia Giuffre (along with BSF) beginning in or about 2015.  It was in connection with that representation that both attorneys apparently met with AUSA Amanda Kramer on or about February 29, 2016 in order to press a criminal prosecution of Ghislaine Maxwell.  *See* First Motion at 4-9.  Based on the discovery recently produced, Mr. Pottinger is known to have emailed with Ms. Kramer in or about May 2016.  According to a "source," the NY Daily News reported that "Boies and Pottinger re-approached Kramer [after Ms. Maxwell's July 2016 deposition] and asked if the Southern District would consider charging Maxwell with perjury."  AUSA Kramer has claimed that she does not "remember" a second meeting.  Mr. Edwards wrote about his first meeting with the U.S. Attorney's Office in his memoir, *Relentless Pursuit.*

---

[3] In 2015-17, Mr. Pottinger and Mr. Edwards worked at different law firms. At some unknown later time, they joined efforts and formed their current firm, Edwards Pottinger.  It is unclear who the current custodian of their records might be, so Ms. Maxwell proposes serving subpoenas on both of them individually.

Likewise, based on the Pottinger-Kramer emails and *Relentless Pursuit* details, it appears that Mr. Pottinger and Mr. Edwards were attempting to present ███████████ as a cooperator against Ms. Maxwell.

Because the government's account of its interactions differs from the accounts of Mr. Edwards in his book and Mr. Pottinger in his emails, Ms. Maxwell seeks documents from these two attorneys concerning their interactions with the U.S. Attorney's Office, which we believe will directly rebut the government's claims made in their response to Ms. Maxwell's pre-trial motions. Likewise, Ms. Maxwell believes that Mr. Pottinger or Mr. Edwards is the "source" quoted in the NY Daily News concerning these meetings with the government, so she seeks their communications with the press concerning only Ghislaine Maxwell[4] or any meetings with the US Attorney's Office.

*Items 6-9: Physical Evidence Concerning the Alleged Victims*

Mr. Edwards has identified himself as the attorney representing ███████████, ███████████████████████████████████████████.[5] At the February 29, 2016, meeting with Ms. Kramer, it appears that Mr. Edwards discussed both ███████████, as well as ███████████████████. According to AUSA Kramer's notes of that meeting, Mr. Edwards referenced ███████████ by name and gave an account of ███████████ allegations that made no mention of Ms. Maxwell and was substantially different from the account contained in the Indictment. For example, the summary of ███████████ account is that she was ███████████

---

[4] Mr. Edwards also shared all of his "notes" with Julie Brown of the *Miami Herald*.

[5] ███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████

████████████████████ Now ██████████ claims she was abused by Epstein *and Maxwell*, and ████████████████████████████████ *See* Indictment ¶ 7(a); ████████████ ████████████████████████ ████████████████████████████ ██████████████████████████████████████. Ms. Maxwell seeks any notes of Mr. Edwards or Mr. Pottinger's communications with ██████████ or her counsel[6] because of their obvious exculpatory value and in order to authenticate them prior to trial.

As described above, Mr. Edwards and Mr. Pottinger both met with Maria Farmer, sister of alleged victim-2 Annie Farmer, in or about June 2016, and purportedly were provided access to physical evidence documenting the Farmers' claims. Ms. Maxwell seeks to inspect any such physical evidence in advance of trial, as well as their notes of those meetings, in order to test the authenticity of the materials and to rebut it.

With regard to their clients, ████████████ and Ms. Giuffre, the proposed subpoena seeks any physical evidence in Mr. Edwards and Mr. Pottinger's possession and any non-privileged notes of their interactions. █████████████████████████████████ █████████████████████████.

Finally, Mr. Edwards and Mr. Pottinger have publicly identified themselves as having participated in the crafting of the Epstein Victims Compensation Program and representing some women in submissions to that program, including ████████████.

*Nixon Factors*

As to Items 1-5, we know that these lawyers communicated with SDNY Assistant U.S. Attorneys; the time frame is definite, 2015 to present, and the requests are limited to a discrete

---

[6] In the notes of the meeting with Ms. Kramer, it appears that ████████ was then represented by attorney ████████.

topic, communications about Ms. Maxwell, ███████████ and ███████████.[7]  The

communications are relevant, authentic, and an appropriate evidentiary foundation can be

established under many rules of evidence including F.R.E. 803(6). Ms. Maxwell seeks to

introduce this evidence in connection with the pending motions. However, the information may

also be admissible at any trial.  Ms. Maxwell was the target of these lawyers who sought to profit

by suing her and Epstein. Having Ms. Maxwell indicted during the pendency of the defamation

action would have been very helpful to their cause. The lawyers also represent two of the

accusers and many of the potential witnesses. The lawyers, and their clients, have traded

information for years which has either, intentionally or unintentionally, allowed the witnesses to

conform their testimony. Establishing the relationships between the witnesses, their lawyers, and

the government will be a significant aspect of Ms. Maxwell's defense.  Additionally, there is

reason to believe the government will attempt to call one or more of the lawyers to testify at trial

to attempt to establish the materiality of Ms. Maxwell's deposition testimony to the *Giuffre* civil

action.

  With respect to the physical evidence (Items 6-9), each of the items specified is relevant,

specific and admissible.  Brad Edwards has described his and Mr. Pottinger's meeting with

Maria Farmer. ███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████

███████████ There are no evidentiary impediments to admissibility. The documents and

photographs presumably can be authenticated by Annie or Maria Farmer at trial. To the extent

---

   [7]The government's recent disclosures concerning Ms. Kramer's communications with
Mr. Pottinger in May 2016 included an email from ███████████ that contained a screenshot of a
new witness, ███████████

that the items turn out to have been altered or do not exist the absence of this evidence is also relevant and admissible at trial as exculpatory evidence.

## IV. Request

Ms. Maxwell filed various pretrial motions which are currently pending before the Court. Ms. Maxwell anticipates that one or more of her pending motions will require the presentation of evidence, that certain evidence central to the accusations in this matter will need to be examined in advance of trial as part of the investigation of her defense, and that the requested evidence is admissible at trial. Accordingly, Ms. Maxwell seeks production of these materials in advance of trial. She makes this motion *ex parte* for the "strong policy reasons in favor of an *ex parte*" process and because she is providing detail regarding her investigative and trial strategy to demonstrate compliance with the specificity, relevance, and admissibility requirements of a Rule 17(c) subpoena. *United States v. Reyes*, 162 F.R.D. 468, 470 (S.D.N.Y. 1995).

It is well-established that the Court may order that the materials should be produced to counsel's office, rather than to the courtroom itself. *See, e.g., United States v. DNRB, Inc.*, No. 4:15-cr-0362, 2017 WL 2806251, at *3 (W.D. Mo. June 27, 2017) (directing production to requesting party); *United States v. Jewell*, Crim. No. 4:07-cr-00103, 2008 WL 3871736, at *3 (E.D. Ark. Aug. 15, 2008) (directing third-party to produce nonprivileged responsive material to defendant's counsel). Once delivered to counsel's office, the materials are not automatically required to be shared with the government. Whether they are required to be shared is determined by other applicable rules, *e.g.*, Federal Rule of Criminal Procedure 16(b).

As with her First Motion, she makes this motion *ex parte* for the "strong policy reasons in favor of an *ex parte*" process and because she is providing detail regarding her investigative and trial strategy to demonstrate compliance with the  specificity, relevance, and admissibility

requirements of a Fed. R. Crim. P. 17 subpoena. *United States v. Reyes*, 162 F.R.D. 468, 470 (S.D.N.Y. 1995).

WHEREFORE, Ms. Maxwell respectfully requests an *ex parte* and *under seal* Order from this Court authorizing service of the attached subpoenas on the individuals described for the documents and items detailed in each of the subpoenas' respective Attachment As.

Dated: March 19, 2021

Respectfully submitted,

*s/ Laura A. Menninger*
Jeffrey S. Pagliuca
Laura A. Menninger
HADDON, MORGAN & FOREMAN P.C.
150 East 10th Avenue
Denver, CO 80203
Phone: 303-831-7364

Christian R. Everdell
COHEN & GRESSER LLP
800 Third Avenue
New York, NY 10022
Phone: 212-957-7600

Bobbi C. Sternheim
Law Offices of Bobbi C. Sternheim
33 West 19th Street - 4th Floor
New York, NY 10011
Phone: 212-243-1100

*Attorneys for Ghislaine Maxwell*