UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------ x
                                        :

UNITED STATES OF AMERICA     :
                                        :

          v.                      :           S2 20 Cr. 330 (AJN)
                                        :

GHISLAINE MAXWELL,        :
                                        :

                 Defendant.      :
                                        :

------------------------------------------------------ x

# MEMORANDUM OF LAW IN SUPPORT OF GHISLAINE MAXWELL'S MOTION FOR INDIVIDUAL SEQUESTERED JUROR VOIR DIRE AND LIMITED COUNSEL-CONDUCTED VOIR DIRE

Christian R. Everdell
COHEN & GRESSER LLP
800 Third Avenue New York, NY 10022
212-957-7600

Jeffrey S. Pagliuca
Laura A. Menninger
HADDON, MORGAN & FOREMAN P.C.
150 East 10th Avenue
Denver, CO 80203
303-831-7364

Bobbi C. Sternheim
Law Offices of Bobbi C. Sternheim
225 Broadway -Suite 715
New York, NY 10007
212-243-1100

*Attorneys for Ghislaine Maxwell*

## INTRODUCTION

Defendant Ghislaine Maxwell submits this memorandum of law in support of her motion for individual sequestered voir dire of prospective jurors and limited attorney-conducted voir dire.

## PRELIMINARY STATEMENT

The Court has already determined that a juror questionnaire is appropriate in this case. Pursuant to the Court's order, the parties recently submitted, under seal, a joint proposed jury questionnaire.  The Court has scheduled three days for prospective jurors to complete the final Court-approved questionnaire, and four days to conduct examination of prospective jurors.

But a questionnaire by itself is not sufficient in this case to root out potential juror bias and to permit the attorneys to exercise intelligent peremptory challenges.  Supplementing a robust questionnaire with individual sequestered voir dire and limited examination of jurors by counsel is necessary in this case because of the sensitive subject matter of the charges and two types of unfairly prejudicial media attention: (i) the pretrial publicity that this case has received and will continue to receive throughout the duration of the trial and (ii) the extensive prior negative publicity concerning Ghislaine Maxwell and Jeffrey Epstein.

The intense negative media coverage of Ms. Maxwell and Epstein, most profoundly in the aftermath of his death in August 2019 and the arrest of Ms. Maxwell in July 2020, has significantly increased the likelihood that prospective jurors will report to jury selection with preconceptions, impressions, and opinions about the conduct at issue in the trial and those accused of the charges in the indictment: Ms. Maxwell and Epstein  An unprecedented amount of media coverage has focused on this case, Ms. Maxwell and Epstein.  The publicity includes extensive coverage in the press, including newspapers, magazines, and on-line sites; in broadcast media, including regular and cable television stations, radio, and streaming platforms, such as

Netflix, Peacock, and Amazon; in podcasts and YouTube recordings; in social media sites, such as Facebook, Instagram, Twitter; in online sites, chat rooms and blogs.  The publicity has covered a wide range of topics including and beyond those that will be presented at trial.

Prospective jurors may also have a strong reaction to the sensitive nature of the charges and some of the evidence that to be adduced at trial. Epstein's arrests and prior conviction for sexual misconduct, allegations of his sexual misconduct of minors over the course of two decades, and his untimely death awaiting his federal trial will be front and center during Ms. Maxwell's upcoming trial.

The standard voir dire typically conducted by the Court is insufficient for this case and will be redundant to questions posed in the proposed jury questionnaire. A written questionnaire coupled with sequestered voir dire of individual prospective jurors and limited open-ended questioning by counsel will assist the Court and parties in determining whether prospective jurors have developed prejudicial preconceptions regarding this case, Ms. Maxwell, and Epstein due to this intense media coverage and pretrial publications and broadcasts.

## ARGUMENT

### I.  THE APPLICABLE LAW

A prospective juror may be excused for cause based on many forms of bias or partiality.

As the Second Circuit has explained, juror partiality can be actual, implied, or inferred:

> Actual bias is "bias in fact," generally evidenced by "express proof," such as a juror's admission to "a state of mind prejudicial to a party's interest." Implied bias is "bias conclusively presumed as a matter of law" from circumstances in which an average person in the position of the prospective juror would be prejudiced. Inferred bias exists "when a juror discloses a fact that bespeaks a risk of partiality sufficiently significant to warrant granting the trial judge discretion to excuse the juror for cause, but not so great as to make mandatory a presumption of bias."

*United States v. Quinones*, 511 F.3d 289, 301 (2d Cir. 2007) (quoting *United States v. Haynes*, 398 F.2d 980, 984 (2d Cir. 1968) and *United States v. Torres*, 128 F.3d 38, 45 (2d Cir. 1997)). All types of bias can properly form the basis to excuse a juror for cause. *See id*. Thus, the jury selection process should screen for each type.  *See id*.

Voir dire plays an important role in ensuring that juries are fair and impartial by allowing the Court and parties to uncover unfair actual, implied, or inferred bias. It serves to protect the Constitutional right of a fair trial "by exposing possible biases, both known and unknown, on the part of potential jurors." *United States v. Stewart*, 433 F.3d 273, 303 (2d Cir. 2006). For these reasons, district courts routinely use their broad discretion to issue written jury questionnaires in conducting voir dire, particularly in cases involving extensive pretrial publicity or hot-button issues. *See, e.g.*, *Skilling v. United States*, 130 S. Ct. 2896, 2919 (2010) (approving district court's use of questionnaire in trial of former Enron executive, Jeffrey Skilling); *United States v. Robert Sylvester Kelly*, 19 Cr. 286 (AMD) (EDNY) ("R. Kelly case"); *United States v. Elizabeth Holmes*, 18 Cr. 258 (EJD) (NDCA) ("Theranos case"); *United States v. Keith Rainier*, 18 Cr. 204 (NGG) (EDNY) ("Nexium case").

Individual voir dire is appropriate and within the court's discretion in cases like this where the potential jury pool has been exposed to extensive pretrial publicity and may harbor prejudice against the defendant, and where the allegations touch on issues that are potentially inflammatory. *See Stewart*, 433 F.3d at 303; *see also United States v. Rahman*, 189 F.3d 88, 122 (2d Cir. 1999). Using individual voir dire, in addition to a juror questionnaire, is necessary in this case (i) to expose potential biases by maximizing the likelihood that members of the venire will respond honestly to questions, and (ii) to avoid contaminating unbiased members of the venire when other members disclose prior knowledge of prejudicial information or blurt out a prejudicial remark. As the Supreme Court has stated:

> It may sometimes be necessary to question on voir dire prospective jurors individually or in small groups, both to maximize the likelihood that members of the venire will respond honestly to questions concerning bias, and to avoid contaminating unbiased members of the venire when other members disclose prior knowledge of prejudicial information.

*Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 602 (1976).

## II. THE JURY POOL HAS BEEN AND WILL CONTINUE TO BE EXPOSED TO SUBSTANTIAL PRETRIAL PUBLICITY ABOUT GHISLAINE MAXWELL, JEFFREY EPSTEIN, AND THIS CASE

### A. A Tsunami of Pretrial Publicity About this Case

Countless articles, books, podcasts, television shows, and docuseries from various sources have been published and broadcast concerning this case since it was filed in July 2020. This followed closely on the heels of an avalanche of media reports preceding and following Epstein's arrest in July 2019 and following his death in August 2019. A tsunami of reporting in every conceivable form – newspapers, magazines, books, television, radio, video streaming services, podcasts, social media platforms – has broadcast this case locally, nationally, and globally. Without a doubt, and without any credible evidentiary basis, Ms. Maxwell has been

4

tried, convicted, and condemned in the court of public opinion. Based on widespread coverage of her extraordinary and miserable conditions of pretrial detention, unsworn "jurors" likely believe sentence has already been imposed.  The pretrial publicity and publications are far too extensive to list. As of this writing, a simple Internet search by Google yields the following:

- Ghislaine Maxwell: "about 4,590,000 results (0.77 seconds)"

- Jeffrey Epstein: "about 25,800,000 results (0.87 seconds)"

Neither Ms. Maxwell nor her undersigned defense team has ever spoken to the media and have not contributed to the polluting effect of this unprecedented coverage.

In addition, there have been numerous books, podcasts, and documentaries published and broadcast about Ms. Maxwell, Epstein, and the allegations in this case.  The following is just a small sample of recent publications concerning Ms. Maxwell:

Documentaries

- *Jeffrey Epstein: Filthy Rich* (Netflix)
- *Notorious: Ghislaine Maxwell* (ABC 20/20)
- *Epstein's Shadow: Ghislaine Maxwell* (Peacock)

Podcasts:

- *Chasing Ghislaine:  The Untold Story of the Woman in Epstein's Shadow* (Vicky Ward)
- *Hunting Ghislaine* (John Sweeney)
- *The Ghislaine Maxwell Spiral* (Audible)

Books:

- *Ghislaine Maxwell* (Steve H. Dwight)
- *Relentless Pursuit: My Fight for the Victims of Jeffrey Epstein and Ghislaine Maxwell* (Bradley Edwards)
- *Trash: Encounters with Ghislaine Maxwell* (Christina Oxenberg)
- *Perversion of Justice* (Julie K. Brown)

- *Ghislaine Maxwell: The Rise and Fall of Manhattan's Most Famous Socialite* (Nigel Cawthorne)
- *The Spider: Insider the Criminal Web of Jeffrey Epstein and Ghislaine Maxwell* (Barry Levin)
- *Jeffrey Epstein's Other Women: Behind Ghislaine Maxwell* (Lisa Tait)
- *The Jeffrey Epstein Case: What We Do and Don't Know About Jeffrey Epstein and Ghislaine Maxwell* (Stephen Wright)

Much of the pretrial reporting, publications, and broadcasts refer to Epstein's 2008 case in Florida and the public outrage over his charges, plea deal, the leniency he received. The aftermath of this coverage resulted in the resignation of Labor Secretary Alex Acosta, former U.S. Attorney of the Southern District of Florida, whose office was the subject of an inquiry conducted by the Department of Justice's Office of Professional Responsibility ("OPR") concerning the federal criminal investigation of Epstein and its interactions with victims. OPR released a report of its investigation in November 2020, which again led to a series of media articles about Epstein's conduct and the appropriateness of the deal he received.  The effect of such recurring reporting regarding Epstein has had an incalculable spillover effect that has indelibly stained Ms. Maxwell and significantly impacted her ability to receive a fair trial by an impartial jury.

### B.  Allegations of Sex Abuse Abound in New York

Ms. Maxwell approaches trial under the cloud of massive negative publicity focused on one of the most sensational, hot-button social issues in recent years – sexual harassment and abuse of females of all ages, including inappropriate sexual contact with minors.  High-profile investigations, prosecutions, and trials involving politicians, moguls and celebrities are daily occurrences. New York has been the venue for some of the most notorious events, including but hardly limited to the recent investigation and resignation of Governor Andrew Cuomo and trials and convictions of Harvey Weinstein and R. Kelly.  These are not rare occurrences. Consider the

downfall of other prominent New Yorkers due to sex scandals: former Governors David Paterson and Andrew Spitzer, former New York Attorney General Eric Schneiderman, former U.S. Congressman Andrew Wiener, not to mention the many New York-based television celebrities against whom serious allegations of sexual abuse have been alleged: Matt Lauer, Roger Ailes, Bill O'Reilly.

The fact that a woman now stands trial for charges almost exclusively alleged against men heightens the interest and intrigue of this case. There are literally hundreds if not thousands of negative articles about Ms. Maxwell and Epstein in the very newspapers, television stations, and streaming platforms to which the jury pool in this case are regularly exposed (*New York Daily News, New York Post, New York Times, Wall Street Journal, NY 1, ABC, NBC, CBS, Fox, Netflix, Peacock*).

The jury pool from which the jury in this case will be selected has been exposed to more than its fair share of media coverage fomenting public outrage at individuals accused of sex crimes, like Ms. Maxwell. The negative publicity has been so pervasive, vitriolic, and extreme that Ms. Maxwell has been demonized in the press. While the Court has no power to protect Ms. Maxwell from such public contempt, it can exercise its supervisory powers and discretion and implement protocols designed to obtain an open-minded jury sworn to return a verdict based solely on evidence presented at trial.

## III.  A ROBUST JURY QUESTIONNAIRE AND INDIVIDUAL VOIR DIRE ARE NECESSARY FOR THIS CASE

### A.  A Questionnaire Alone Is Insufficient to Uncover Potential Juror Bias

In cases like this—where there has been pervasive media exposure that inflames passions about the underlying events and demonizes a party—prospective jurors can form biases long before they appear for jury service. Once a pretrial judgment is made, the concepts of "belief

persistence" and "confirmation bias" are at work. Belief persistence occurs when an opinion formed is resistant to change even when proven wrong. Confirmation bias occurs when an individual forms an opinion early in the decision-making process and then evaluates new information in a way that supports the earlier decision.[1] The jury questionnaire is the first opportunity jurors have to tell the lawyers and the Court what they are thinking and, more importantly, what influenced them to think that way.

Given the likelihood intense media scrutiny of this trial, it is critical to use both a robust written jury questionnaire and individual sequestered voir dire to inquire about the extent to which each potential juror has been exposed to pretrial publicity and to what extent each juror has formed an opinion of Ms. Maxwell and Epstein

Because there is always the fear that a discussion of pretrial publicity in front of the entire jury pool will contaminate those few jurors who have not been subjected to the publicity, a jury questionnaire and individual voir dire in a case such as this is particularly warranted. If the Court were to engage in public questioning of the venire panel en masse, answers could infect the entire panel. Alternatively, concerns about a panel member's unanticipated answer may render the questions too carefully worded to uncover the problem. Further, questions asked pose privacy concerns that would require constant side bars. A questionnaire can solve some, but not all, of these issues.

Individual sequestered voir dire would encourage jurors to answer questions more completely and more honestly because the jurors would not be influenced by (or influence) the answers given by fellow jurors or fear embarrassment in giving an honest response. Jurors avoid the pressure to give "right" or socially acceptable answers in front of a large group or to parrot

---

[1] *See Hope*, Memon & McGeorge, *Understanding Pretrial Publicity: Predecisional Distortion of Evidence by Mock Jurors*, 10 J. Experimental Psych. Applied, 111-119 (2004).

answers that seem acceptable to the Court and counsel. For example, in this case it is necessary to ask jurors if they or a family member have ever been a victim of sexual abuse—a question that most jurors will not be inclined to answer in public. In a case that has received media attention or involves a well-known defendant, a larger jury panel is often assembled in an attempt to increase the odds of obtaining a fair jury. The paradox is that a larger panel can mean that jurors are even less inclined to speak up in front of a large group.  Accordingly, in a high-publicity case such as this, q questionnaire alone is insufficient.

### B.   Individual Sequestered Voir Dire is Necessary Due to the Sensitive Nature of the Charges

The nature of the charges in this case poses special problems for jury selection rarely encountered in the average federal jury trial.  The crimes charged (concerning sexual abuse of minors) are particularly inflammatory and of great concern to communities from which jurors are drawn. The charges tap into strongly held moral, ethical, and religious beliefs concerning appropriate, inappropriate, and immoral behavior and conduct, and can produce visceral and emotional reactions leading to more severe judgments based on preconceived viewpoints rather than on admissible evidence presented at trial  As such, prospective jurors' opinion and beliefs regarding the nature of the crimes charged will need to be addressed through procedures that maximize juror openness, honesty, and candor.

It is only through in-depth questioning and exploration of jurors' views on these issues that both the defense and prosecution can uncover what is needed to pursue challenges for cause and to intelligently exercise peremptory challenges.  The experiences and backgrounds of jurors could have significant bearing on the potential biases that they have.  A variety of potential experiences, both general (*e.g.*, being a victim of a crime or closely related to a victim) and specific (*e.g.*, harassment, molestation, unwanted sexual contact, sexual assault, rape, domestic

violence, etc.) are relevant to the subject matter of this case.  Such experiences are of a highly personal nature, the revelation of which in a public courtroom could lead to embarrassment and emotional distress.  As a result, issues relevant to this case need to be addressed in a sensitive and private setting.

The jury selection procedures normally used by this Court – i.e., group voir dire with questioning exclusively by the judge – pose heightened problems to an effective and informative voir dire in a case involving topics that are difficult to discuss, let alone in a large public forum. It is typically anxiety producing and discomforting for jurors to make public disclosures.  This case amplifies the likelihood that jurors will be more apprehensive and constrained to respond openly and honestly in open court within earshot of other jurors, members of the public, and the media.

## IV.   ATTORNEY-CONDUCTED VOIR DIRE PERMITS A MORE INFORMED EXERCISE OF FOR CAUSE AND PEREMPTORY CHALLENGES

Rule 24(a) of the Federal Rules of Criminal Procedure grants the Court broad discretion in conducting the voir dire examination.  The Court has the right to control who conducts the voir dire and has the discretion to allow attorneys to conduct some, or all, of the voir dire. Fed. R. Civ. P. 24(a)(1) and (2) ("The court may examine prospective jurors or may permit the attorneys for the parties to do so.").

The Court should grant a limited period of attorney-conducted voir dire after the Court's general voir dire because it will yield more complete information about the potential jurors for the proper exercise of peremptory challenges. For a peremptory challenge to serve its purposes, it must be *intelligently* exercised. This requires that the parties obtain sufficient information from the potential jurors upon which to base their challenges. *United States v. Ledee*, 549 F.2d 990, 993 (5th Cir.), *cert. denied*, 434 U.S. 902 (1977) ("Peremptory challenges are worthless if trial

counsel is not afforded an opportunity to gain the necessary information upon which to base such strikes.").  Without the opportunity for counsel to effectively probe for hidden prejudices, it would be difficult to accomplish the goal of exercising sensitive and intelligent peremptory challenges.

## A.   The Attorneys Have More In-Depth Knowledge of the Case

It is counsel, not the Court, who is in the best position to obtain the information necessary to exercise intelligent peremptory challenges through attorney-conducted voir dire.  The attorneys have more in-depth knowledge of the case than the Court. *See, e.g.*, *United States v. Cleveland*, 1997 WL 2554 at *3 (E.D. LA. Jan. 2, 1997). Important follow-up questions are more likely to occur to an advocate than a judge for several reasons, including the fact that a judge "does not have the advocate's awareness that soon [s]he will be making peremptory challenges based on inferences from what prospective jurors have said" and the fact that "the judge does not know the case of either party in detail, so that [s]he cannot realize when responses have opened areas for further inquiry."[2] As the Fifth Circuit has recognized:

> A judge cannot have the same grasp of the facts, the complexities and nuances as the trial attorneys entrusted with the preparation of the case. The court does not know the strength and weaknesses of each litigant's case.  Justice requires that each lawyer be given an opportunity to ferret out possible bias and prejudice of which the juror himself may be unaware until certain facts are revealed.

*Ledee*, 549 F.2d at 993 (citing Frates and Greer, *Jury Voir Dire: The Lawyer's Perspective*, 2 A.B.A. Litigation No. 2 (1976)).  Indeed, the Fifth Circuit later amplified this concept, stating that "voir dire may have little meaning if it is not conducted at least in part by counsel."

> While Federal Rules [sic] of Criminal Procedure 24(a) gives wide discretion to the trial Court, voir dire may have little meaning if it is not conducted at least in part by counsel. The "federal" practice of almost exclusive voir dire examination by the Court does not take

---

[2] Babcock, *Voir Dire: Preserving "Its Wonderful Power"*, 27 Stan. L. Rev. 545, 549 (1975).

> into account the fact that it is the parties, rather than the Court, who
> have a full grasp of the nuances and the strength and weaknesses of
> the case… Experience indicates that in the majority of situations
> questioning by counsel would be more likely to fulfill this need [for
> information upon which to base the intelligent exercise of
> peremptory challenges] than an exclusive examination in general
> terms by the trial Court.

*United States v. Ible*, 630 F.2d 389, 395 (5th Cir. 1980).

In this case, voir dire conducted *solely* by the Court will interfere with the intelligent exercise of peremptory challenges. Attorneys have been working on this case well over a year. They are most likely to know the areas of questioning that must be explored to further uncover the prejudices that are most pertinent to the evidence that will be presented at trial. They also act with an awareness that they will have to base peremptory challenges on the juror's answers. Permitting attorney-conducted voir dire in addition to Court voir dire will therefore maximize the information obtained in voir dire.

### B.   The Extensive Pretrial Publicity Related to This Case Necessitates Attorney-Conducted Voir Dire

The possibility of prejudice in this case due to the extensive pretrial publicity is so great that specific voir dire questions by counsel are necessary. In *United States v. Davis*, the Fifth Circuit held that the district court erred in not undertaking a more thorough examination of panel members exposed to publicity ("[W]here the nature of the publicity as a whole raised a significant possibility of prejudice, the cursory questioning by the court was not enough.").  A district court is required, under *Davis*, to determine what each juror may have heard or read and how it may have affected his attitude toward the trial, and whether any juror's impartiality had been destroyed. *Id*; *see also Silverthorne v. United States*, 400 F.2d 627, 638 (9th Cir. 1968) ("[I]n the absence of an examination designed to elicit answers which provide an objective basis

for the court's evaluation, 'merely going through the form of obtaining jurors' assurances of impartiality is insufficient [to test that impartiality]") (citation omitted).

Because it is extremely likely that prospective jurors have been exposed to potentially prejudicial pretrial publicity, specific, individual voir dire is required. *Davis*, 583 F.2d at 196–97. To increase the likelihood that any hidden prejudices of the jurors will be uncovered, to accomplish the goal of exercising sensitive and intelligent peremptory challenges, and to ensure that a fair and impartial jury is empaneled in this case, counsel should be given an opportunity to individually examine prospective jurors.

Individual sequestered voir dire conducted jointly by counsel and the Court has a variety of benefits. It invites a conversation rather than posing an interrogation. It eliminates the pressure on jurors to provide socially desirable or acceptable answers in a group setting, reduces conformity pressures that can diminish candor, and removes the risk of other jurors being influenced by statements made during group voir dire that enable them to either stay on the jury or be removed for cause. It increases juror comfort, minimizes the anxiety of public speaking, encourages candor, and promotes honesty.

Furthermore, questioning conducted exclusively by the Court further hampers the ability to uncover important information about jurors because it places jurors in a subordinate position heightening their reluctance to be candid. Attorney-conducted questioning bridges the status gap between the humble layperson and the honorable judicial officer exalted high above the venire. Research indicates that expansive voir dire yields greater revelations of juror bias;[3] and in-depth attorney-conducted voir dire combined with individual sequestered voir dire elicits greater

---

[3] *See, e.g.,* Moran, Cutler & Loftus. *Jury Selection in Major Controlled Substance Trials: The Need for Extended Voir Dire*, 3 Forensics Reports 331(1990).

admissions of bias on the part of jurors.[4]  In-depth voir dire including limited open-ended questions posed by counsel also helps to attack the minimization effect, whereby jurors often seek to decrease the extremity of their opinions in addition to their exposure to and the impact of pretrial publicity.[5]

### C.   The Court Can Reasonably Limit the Scope of Attorney-Conducted Voir Dire

The Court can also fairly and reasonably limit the time and scope of the attorney-conducted voir dire and prevent any abuse of the process. For example, the Court can direct demand that the attorneys restrict themselves to new or proscribed areas of examination or relevant follow-up examination to ferret out bias and prejudice.  In addition, the Court can legitimately place a specific time limit on attorney-conducted voir dire. Permitting each party one minute per juror (expanded to three minutes if there is basis to pursue a cause challenge) is eminently justifiable after basic voir dire has been conducted by the Court.  An attorney who is given mere minutes for additional voir dire examination is unlikely to waste that precious time. Permitting each party a mere minute of attorney-conducted voir dire will increase the possibility of rooting out prejudice and bias in this unique case.

### D.   The Uniqueness of This Case Warrants Limited Attorney-Conducted Voir Dire

The conventional voir dire procedures utilized in this district are inadequate to screen venire members for bias and prejudice due to the nature of the charges and the extensive pretrial publicity and exposure. This case presents unique issues that require an expansion of traditional voir dire protocols.

---

[4] Johnson & Haney, *Felony Voir Dire: An exploratory Study of its Contents and Effect*, 18 Law and Human Behavior 309 (1994).

[5] Vidmar, *Case Studies of Pre- and Midtrial Prejudice in Criminal and Civil Litigation*, 26 Law and Human Behavior 73 (2002).

This application is not seeking to conduct unduly invasive questioning, to "pre-try" the case to the venire, to create impressions or sympathies which will help either party during the trial, or to unreasonably extend the time for jury selection. The Court can restrict attorneys to posing open-ended questions to identify bias, prejudice and preconceptions, subject to reasonable time limits.

Long ago, the Supreme Court observed:

> Impartiality is not a technical conception. It is a state of mind.  For the ascertainment of this mental attitude of appropriate indifference, the Constitution lays down no tests and procedure is not chained to any ancient and artificial formula.

*United States v. Wood*, 299 U.S. 123, 145–146 (1936).  Like impartiality, bias, prejudice, and preconceptions are mental states, making them all the more difficult to identify and assess when a prospective juror is not forthcoming in revealing these mental attitudes.  Limited attorney-conducted voir dire will help uncover any potential bias in the jury pool.

## CONCLUSION

Voir dire is a mutual search between lawyers and the Court to determine whether a particular individual can ensure integrity of the trial process in each case. In the words of a federal appeals judge:

> We would, as judges, have to ignore what we know as men to assume that only the law and the naked facts carry the burden of persuasion. Psychology governs human affairs even in the courtroom... Our system of justice is deprived of its fullest potential when the lawyer is denied the right to examine veniremen in an adversary setting.

Honorable Donald P. Lay (8th Cir.) *"In a Fair Adversary System, the Lawyer Should Conduct the Voir Dire of the Jury."*

Considering the sensitive nature of the charges and the pervasive pretrial publicity and exposure of this case, the Court should grant the request for individual sequestered voir dire and limited questioning by counsel.

Dated: October 13, 2021

<div style="margin-left:40%">

Respectfully submitted,

*/s/*
_____
Bobbi C. Sternheim
Law Offices of Bobbi C. Sternheim

Christian R. Everdell
COHEN & GRESSER LLP

Jeffrey S. Pagliuca
Laura A. Menninger
HADDON, MORGAN & FOREMAN P.C.

*Attorneys for Ghislaine Maxwell*

</div>