UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
                                  :

UNITED STATES OF AMERICA         :

                v.                       :            S2 20 Cr. 330 (AJN)

                                    :

GHISLAINE MAXWELL,            :

           Defendant.             :

                                    :

------------------------------------------------------------ x

# GHISLAINE MAXWELL'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF ALLEGED FLIGHT

Christian R. Everdell
COHEN & GRESSER LLP
800 Third Avenue
New York, NY 10022
Phone: 212-957-7600


Jeffrey S. Pagliuca
Laura A. Menninger
HADDON, MORGAN & FOREMAN P.C.
150 East 10th Avenue
Denver, CO 80203
Phone: 303-831-7364


Bobbi C. Sternheim
Law Offices of Bobbi C. Sternheim
225 Broadway, Suite 715
New York, NY 10007
Phone: 212-243-1100


*Attorneys for Ghislaine Maxwell*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUD ................................................................................................................... 2

ARGUMENT ..................................................................................................................... 5

I.      Applicable Law .................................................................................................... 5

II.     The Government Should Not Be Permitted to Introduce Evidence of Alleged
        "Flight" or Argue that Ms. Maxwell's Conduct After Epstein's Death Is Proof of
        Consciousness of Guilt ........................................................................................ 6

CONCLUSION ................................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*United States v. Al-Sadawi*,
 432 F.3d 419 (2d Cir. 2005)............................................................................... *passim*

*United States v. Amuso*,
 21 F.3d 1251 (2d Cir. 1994)..........................................................................................5

*United States v. Glenn*,
 312 F.3d 58 (2d Cir. 2002)........................................................................................8, 9

*United States v. Green*,
 No. 12-Cr-83S, 2017 WL 4803957 (W.D.N.Y. Oct. 25, 2017).............................8, 9

*United States v. Myers*,
 550 F.2d 1036 (5th Cir. 1977) ..................................................................................5, 6

*United States v. Robinson*,
 475 F.2d 376 (D.C. Cir. 1973) .....................................................................................5

*United States v. Salameh*,
 152 F.3d 88 (2d Cir. 1998) (per curiam).....................................................................7, 8

*United States v. Sanchez*,
 790 F.2d 245 (2d Cir. 1986).................................................................................6, 8, 9

**Other Authorities**

Federal Rule of Evidence 403...............................................................................1, 2, 9

Ghislaine Maxwell respectfully moves *in limine*, pursuant to *United States v. Al-Sadawi*, 432 F.3d 419 (2d Cir. 2005) and Federal Rule of Evidence 403, to exclude evidence of Ms. Maxwell's supposed "flight" following the arrest of Jeffrey Epstein and to preclude the government from arguing to the jury that Ms. Maxwell was hiding from or evading law enforcement authorities prior to, or at the time of, her arrest, or that her conduct during this time period is proof of consciousness of guilt.

## PRELIMINARY STATEMENT

As Ms. Maxwell explained in her bail applications, her decision to remove herself from public view after Epstein's arrest was emphatically *not* for the purpose of evading detection by law enforcement, but instead was an effort to protect herself and her family members from an onslaught of intrusive media attention and threats of physical violence. Ms. Maxwell's position was extensively supported by letters from her spouse and other family members, who personally attested to relentless harassment from the media, as well as an affidavit submitted by Ms. Maxwell's security guard who explained the circumstances of her arrest. Furthermore, Ms. Maxwell remained in the United States continuously after Epstein's arrest, was in regular contact with the prosecutors through her attorneys, and never once demonstrated an intent to flee the country. The government has not established, and will not be able to establish at trial, a sufficient factual predicate of flight from which the jury can infer consciousness of guilt under controlling precedent. *See Al-Sadawi*, 432 F.3d at 424-25. Allowing the government to introduce evidence of Ms. Maxwell's actions prior to, and at the time of, her arrest to prove consciousness of guilt would mislead the jury and would invite them to draw speculative and unsupported inferences in the face of contrary factual evidence. Such evidence and argument would be unfairly prejudicial to Ms. Maxwell and would lead to a mini trial on the issue of flight

that would confuse the issues in the case and cause undue delay.  It should therefore be precluded

under Rule 403.

## BACKGROUD

The government repeatedly and erroneously argued in the context of Ms. Maxwell's bail

applications that Ms. Maxwell went into "hiding" following the arrest of Jeffrey Epstein to avoid

detection by law enforcement.  *See* 7/2/2020 Gov't Mem. in Supp. of Detention (Dkt. 004) at 8

("[Ms. Maxwell] made intentional efforts to avoid detection"); 7/13/2020 Gov't Reply Mem. in

Supp. of Detention (Dkt. 022) at 8 (measures that Ms. Maxwell took "to conceal herself" after

Epstein's indictment "are at least equally consistent with the notion that the defendant also

sought to evade detection by law enforcement"); 12/18/2020 Gov't Mem. in Opp. to Def's

Renewed Mot. for Release (Dkt. 100) at 21 ("[T]here is still reason to believe that the defendant

was hiding not just from the press, but also from law enforcement.").  The government also

repeatedly and erroneously argued that Ms. Maxwell's conduct at the time of her arrest

evidenced an intent to evade law enforcement.  *See* 7/13/2020 Gov't Reply Mem. in Supp. of

Detention (Dkt. 022) at 7-8; 7/14/2020 Tr. of Bail Hrg. at 31:20-34:5; 12/18/2020 Gov't Mem. in

Opp. to Def's Renewed Mot. for Release (Dkt. 100) at 21-22.

The government's assertion rests on groundless speculation concerning actions which

Ms. Maxwell was forced to take in the days after Epstein's arrest to protect herself and her

family and friends from unrelenting harassment by the media and the very real danger of

physical threats against them.  In particular, the government has noted the following in its prior

submissions:

- Ms. Maxwell moved residences and switched her primary phone number (which she registered under the name "G Max") and email address.[1]

- At the time of her arrest, Ms. Maxwell allegedly ignored the direction of FBI agents to open the front door of her residence and instead moved into an interior room of the house.[2]

- During a security sweep of the house, FBI agents found a cell phone wrapped in tin foil on top of a desk.[3]

Ms. Maxwell thoroughly rebutted each of these points in her second bail motion.  *See* 12/14/2020 Def.'s Mem. in Supp. of Renewed Mot. for Bail (Dkt. 97) at 18-25.  Ms. Maxwell offered not just argument in response, but independent factual corroboration of her position that stands in direct opposition to the government's incorrect and improper inferences.  For example, Ms. Maxwell provided a letter from her spouse, who confirmed that Ms. Maxwell's decision to leave her family, move residences, and eventually settle in New Hampshire—where she remained continuously for over seven months until her arrest—was a difficult choice that was motivated by the pressing need to protect herself and her family from media intrusion and potential violent threats, not by a desire to evade law enforcement.  *See id.*, Ex. A ¶¶ 8-12; *see also id.*, Ex. B at 2-4.  Letters provided by other friends and family members attested to the relentless media harassment they themselves received and the severe consequences they endured simply for being associated with Ms. Maxwell.  *See, e.g., id.*, Exs. B at 3 & D at 2.

Ms. Maxwell also provided an affidavit from the head of the security company providing security to Ms. Maxwell, who explained the circumstances surrounding her actions on the

---

[1] 7/2/2020 Gov't Mem. in Supp. of Detention (Dkt. 004) at 8; 12/18/2020 Gov't Mem. in Opp. to Def's Renewed Mot. for Release (Dkt. 100) at 20.

[2] 7/13/2020 Gov't Reply Mem. in Supp. of Detention (Dkt. 022) at 7; 7/14/2020 Tr. of Bail Hrg. at 33:22-25; 12/18/2020 Gov't Mem. in Opp. to Def's Renewed Mot. for Release (Dkt. 100) at 21-22.

[3] 7/13/2020 Gov't Reply Mem. in Supp. of Detention (Dkt. 022) at 7; 7/14/2020 Tr. of Bail Hrg. at 34:1-5; 12/18/2020 Gov't Mem. in Opp. to Def's Renewed Mot. for Release (Dkt. 100) at 22.

morning of her arrest, which had nothing to do with evading capture by law enforcement. *See id.*, Ex. S ¶¶ 4-13. This individual stated that he had spoken to the security guard who was on duty with Ms. Maxwell that morning. *Id.* ¶ 7. The security guard reported that he had seen a helicopter flying above the property in the early morning hours and assumed it was the press. *Id.* Believing that the press had discovered the property, the head of the security company instructed the security guard to prepare Ms. Maxwell to move to a safe room in the event that the perimeter of the property were breached. *Id.* Roughly two hours later, the security guard saw vehicles approaching the residence and again assumed they were members of the press, not FBI agents. *Id.* ¶¶ 8-9. He radioed Ms. Maxwell to alert her that members of the press were on the grounds and approaching the house. *Id.* ¶ 9. Ms. Maxwell then followed a pre-established safety protocol that she had been instructed to follow in the event that her security was threatened while she was inside the residence. *Id.* ¶¶ 10-11. Pursuant to the protocol, Ms. Maxwell moved away from the windows and into a safe room inside the house. *Id.* Ms. Maxwell was not trying to avoid arrest; she was simply following the established security protocols to protect herself from what she had been informed was an ambush by the press.

Regarding the cellphone wrapped in tin foil, we explained at the initial bail hearing and in Ms. Maxwell's second bail application that Ms. Maxwell took this step to prevent the press from accessing her phone after the Second Circuit inadvertently unsealed certain court records with the phone number unredacted. *See* 12/14/2020 Def.'s Mem. in Supp. of Renewed Mot. for Bail (Dkt. 97) at 24. Moreover, the cell phone was subscribed in the name of Ms. Maxwell's charity and was therefore easily traceable to Ms. Maxwell. *See id.* at 24-25.

In sum, the government cannot establish a sufficient factual predicate to argue that Ms. Maxwell's actions were evidence of flight, much less evidence of consciousness of guilt. Ms.

Maxwell did not leave the country, or make plans to leave the country, at any point in the year that elapsed between Epstein's arrest and her own arrest.  Moreover, the government can offer no proof to counter the evidence proffered by Ms. Maxwell in her bail submission and instead relies on its vague and unsubstantiated "belief" that these actions reveal Ms. Maxwell's intent to evade law enforcement.  *See* 12/18/2020 Gov't Mem. in Opp. to Def's Renewed Mot. for Release (Dkt. 100) at 21 ("[T]here is still reason to believe that the defendant was hiding not just from the press, but also from law enforcement.").  Any evidence or argument regarding Ms. Maxwell's purported "flight" or consciousness of guilt lacks any factual foundation and would be highly prejudicial.  It should therefore be excluded.[4]

## ARGUMENT

### I.      Applicable Law

"[I]t is widely acknowledged that evidence of flight or related conduct is 'only marginally probative as to the ultimate issue of guilt or innocence.'"  *United States v. Myers*, 550 F.2d 1036, 1049 (5th Cir. 1977) (quoting *United States v. Robinson*, 475 F.2d 376, 384 (D.C. Cir. 1973)).  While flight can, in some circumstances, evidence consciousness of guilt, "a satisfactory factual predicate must exist from which the jury can infer consciousness of guilt from flight" before such evidence may properly be admitted.  *Al-Sadawi*, 432 F.3d at 424 (citations omitted). "Since flight evidence can be powerful, the requirement of a sufficient factual predicate 'ensures that the evidence is probative in a legal sense and protects the defendant against the possibility of the jury drawing unsupported inferences from otherwise innocuous behavior.'"  *Id*. (quoting *United States v. Amuso*, 21 F.3d 1251, 1260 (2d Cir. 1994)).

---

[4] In its Opinion and Order denying Ms. Maxwell's second bail application, the Court did not resolve whether Ms. Maxwell's conduct after the arrest of Jeffrey Epstein was designed to protect herself from the press or evade law enforcement.  *See* 12/28/2020 Op. and Order (Dkt. 106) at 19.  We submit that it was clearly the former.  At the very least, there is no foundation for the government to assert the latter.

Flight is, at most, circumstantial evidence of guilt and its probative value "depends upon the degree of confidence with which four inferences can be drawn: (1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged." *Al-Sadawi*, 432 F.3d at 424 (quoting *Myers*, 550 F.2d at 1049). "Because of the inherent unreliability of evidence of flight, and the danger of prejudice its use may entail, a flight instruction is improper unless the evidence is sufficient to furnish reasonable support for all four of the necessary inferences." *Myers*, 550 F.2d at 1050 (internal citations omitted). An adequate evidentiary predicate "must include *some* evidence surrounding the failure to appear … and must thereby provide the jury with more than an opportunity for mere conjecture and speculation." *United States v. Sanchez*, 790 F.2d 245, 252 (2d Cir. 1986) (internal quotations and citations omitted) (emphasis in original).

## II.     The Government Should Not Be Permitted to Introduce Evidence of Alleged "Flight" or Argue that Ms. Maxwell's Conduct After Epstein's Death Is Proof of Consciousness of Guilt

The government cannot establish a satisfactory factual predicate for the jury to infer that Ms. Maxwell was, in fact, fleeing or evading law enforcement authorities after the arrest of Jeffrey Epstein, or that her conduct is proof of consciousness of guilt. The reason is simple – those inferences are entirely speculative and demonstrably false. Ms. Maxwell *never once* left the country after Epstein's arrest, nor has the government produced any evidence that she was planning to flee, despite having received a grand jury subpoena and knowing that she was considered a subject of the ongoing FBI investigation. Instead, she found a permanent residence close to New York where she stayed continuously for seven months before her arrest and remained in regular contact with the prosecutors through her attorneys. As previously discussed, Ms. Maxwell also addressed and rebutted each point that the government referenced in its bail

6

submissions as evidence of flight.  Ms. Maxwell supported her position with letters from her

spouse and other friends and family members, as well as an affidavit from a witness to the

circumstances of her arrest, all of which corroborated Ms. Maxwell's explanation that she took

these measures to protect herself and her family from the press and others who would seek to

harm them.  These facts categorically do not support an inference that Ms. Maxwell intended to

flee.

The Second Circuit's analysis in *Al-Sadawi* is instructive.  In *Al-Sadawi*, the defendant's

wife attempted to obtain expedited U.S. passports for herself and the defendant and purchased

airline tickets for the two of them (but not their four children) to fly to Egypt two-and-a-half

months after the defendant's co-conspirator was arrested.  432 F.3d at 423.  The trial court

allowed the government to introduce this evidence to show the defendant's intent to flee and to

argue that it was proof of consciousness of guilt.  *Id*. at 424.  The Second Circuit disagreed and

highlighted several flaws in the government's theory.  First, Al-Sadawi had a valid Egyptian

passport and could have traveled at any point up to the time of his arrest.  *Id*.  Second, "he had

known for at least six months" that he was under government surveillance and that he had been

directly implicated in the subject of the government's investigation, but "did nothing consistent

with an intention to flee." *Id*. at 424-25.  Third, when Al-Sadawi was arrested an hour before the

flight was scheduled to depart, there was no evidence that he intended to board the flight – he

had not packed his bags, he did not have the tickets in his possession, and he had not left for the

airport. *Id*. at 425.  The circuit court noted that the facts "differ[ed] sharply" from those of

*United States v. Salameh*, 152 F.3d 88 (2d Cir. 1998) (per curiam), where the court found the

jury could properly infer consciousness of guilt from evidence that the defendant fled the country

one day after the crime was committed. *Al-Sadawi*, 432 F.3d at 425 (citing *Salameh*, 152 F.3d at

157).  By contrast, the Second Circuit found that the government's evidence in *Al-Sadawi* was

"too attenuated" to establish that the defendant intended to flee to avoid prosecution or

apprehension and the government should not have been permitted to argue consciousness of guilt

on the basis of that evidence.  *Id*.

Here, the purported "flight" evidence is even more attenuated than in *Al-Sadawi*.  Like

*Al-Sadawi*, Ms. Maxwell knew she was a subject of the government's investigation after the

arrest of Jeffery Epstein and could have left the country at any point in the one-year period

leading up to her arrest (nine-and-a-half months longer than Al-Sadawi).  But she did not.

Unlike *Al-Sadawi*, there is no evidence whatsoever that Ms. Maxwell was preparing to flee.

Neither Ms. Maxwell nor her spouse had purchased a plane ticket, nor was Ms. Maxwell

planning to move locations.  On the contrary, Ms. Maxwell had been living in the same residence

in New Hampshire for seven months – a location she chose because it was close to her family

and close to the prosecutors in New York in case she needed to meet with them.  Moreover,

when Ms. Maxwell was arrested, the arresting agents found nothing suggesting that she planned

to abscond.  Finally, unlike *Al-Sadawi*, Ms. Maxwell proffered independent evidence supporting

an alternative explanation for her actions that rebuts any inference that she intended to flee.

Hence, if it was improper for the trial court to allow the introduction of flight evidence in

*Al-Sadawi*, it would be even more improper for the Court to do so here.  *See id*.; *see also*

*Sanchez*, 790 F.2d at 252-53 (precluding evidence that defendant failed to appear at the initial

date and a continuance date scheduled for his own trial); *United States v. Green*, No. 12-Cr-83S,

2017 WL 4803957, at *4-*5 (W.D.N.Y. Oct. 25, 2017) (precluding evidence that defendant

jumped from a third-floor window after being arrested and interviewed by the police); *United*

*States v. Glenn*, 312 F.3d 58, 67-68 (2d Cir. 2002) (evidence that defendant flagged down a car

8

and requested a ride away from the murder scene shortly after the crime took place did not

support an inference of guilt).

The government therefore cannot establish, with any degree of confidence, sufficient

facts to satisfy even the first of the *Sadawi* inferences.  *Al-Sadawi*, 432 F.3d at 424 (probative

value of flight evidence as proof of consciousness of guilt "depends upon the degree of

confidence with which four inferences can be drawn: (1) from the defendant's behavior to

flight….").  Allowing the government to present this evidence to the jury as evidence of "flight"

would invite the jury to infer consciousness of guilt based on nothing more than unfounded

speculation.  That is patently improper and must be precluded.  *Id*. (citing *Sanchez*, 790 F.2d at

252 (flight evidence "must ... provide the jury with more than an opportunity for mere conjecture

and speculation." (internal quotation marks and citation omitted))).

Furthermore, admitting evidence of flight would be misleading to the jury and unfairly

prejudicial to Ms. Maxwell.  It would also require the defense to call witnesses to counter the

government's evidence and lead to a distracting mini trial on the issue of flight.  The prejudice,

confusion, and delay caused by admitting this evidence would substantially outweigh any limited

probative value it may have.  It must therefore be excluded under Rule 403.  *See* Fed. R. Evid.

403; *see also Green*, 2017 WL 4803957, at *4-*5 (precluding flight evidence pursuant to *Al-*

*Sadawi* and Rule 403).

9

**CONCLUSION**

For the foregoing reasons, the Court should exclude evidence of Ms. Maxwell's supposed

"flight" following the arrest of Jeffrey Epstein and preclude the government from arguing that

Ms. Maxwell was hiding from or evading law enforcement authorities prior to, or at the time of,

her arrest, or that her conduct during this time period is proof of consciousness of guilt.


Dated: October 18, 2021
        New York, New York


                                        Respectfully submitted,


                                        /s/ Christian R. Everdell
                                        Christian R. Everdell
                                        COHEN & GRESSER LLP
                                        800 Third Avenue
                                        New York, NY 10022
                                        Phone: 212-957-7600

                                        Jeffrey S. Pagliuca
                                        Laura A. Menninger
                                        HADDON, MORGAN & FOREMAN P.C.
                                        150 East 10th Avenue
                                        Denver, CO 80203
                                        Phone: 303-831-7364

                                        Bobbi C. Sternheim
                                        Law Offices of Bobbi C. Sternheim
                                        225 Broadway, Suite 715
                                        New York, NY 10007
                                        Phone: 212-243-1100

                                        *Attorneys for Ghislaine Maxwell*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 18, 2021, I served by email, pursuant to Rule 2(B) of the Court's individual practices in criminal cases, the within memorandum and any accompanying exhibits upon the following:

Maurene Comey
Alison Moe
Lara Pomerantz
Andrew Rohrbach
U.S. Attorney's Office, SDNY
One Saint Andrew's Plaza
New York, NY 10007
Maurene.comey@usdoj.gov
Alison.moe@usdoj.gov
Lara.Pomerantz@usdoj.gov
Andrew.Rohrbach@usdoj.gov

*/s/ Christian R. Everdell*