# Exhibit B


*Review Manuscript*

# Facilitators and Barriers to Child Sexual Abuse (CSA) Disclosures: A Research Update (2000–2016)

TRAUMA, VIOLENCE, & ABUSE
2019, Vol. 20(2) 260-283
© The Author(s) 2017

Article reuse guidelines:
sagepub.com/journals-permissions
DOI: 10.1177/1524838017697312
journals.sagepub.com/home/tva



**Ramona Alaggia[1], Delphine Collin-Vézina[2], and Rusan Lateef[1]**

## Abstract

Identifying and understanding factors that promote or inhibit child sexual abuse (CSA) disclosures has the potential to facilitate earlier disclosures, assist survivors to receive services without delay, and prevent further sexual victimization. Timely access to therapeutic services can mitigate risk to the mental health of survivors of all ages. This review of the research focuses on CSA disclosures with children, youth, and adults across the life course. Using Kiteley and Stogdon's literature review framework, 33 studies since 2000 were identified and analyzed to extrapolate the most convincing findings to be considered for practice and future research. The centering question asked: What is the state of CSA disclosure research and what can be learned to apply to practice and future research? Using Braun and Clarke's guidelines for thematic analysis, five themes emerged: (1) Disclosure is an iterative, interactive process rather than a discrete event best done within a relational context; (2) contemporary disclosure models reflect a social–ecological, person-in-environment orientation for understanding the complex interplay of individual, familial, contextual, and cultural factors involved in CSA disclosure; (3) age and gender significantly influence disclosure; (4) there is a lack of a life-course perspective; and (5) barriers to disclosure continue to outweigh facilitators. Although solid strides have been made in understanding CSA disclosures, the current state of knowledge does not fully capture a cohesive picture of disclosure processes and pathways over the life course. More research is needed on environmental, contextual, and cultural factors. Barriers continue to be identified more frequently than facilitators, although dialogical forums are emerging as important facilitators of CSA disclosure. Implications for practice in facilitating CSA disclosures are discussed with recommendations for future research.

## Keywords

sexual abuse, child abuse, cultural contexts

## Introduction

Timely access to supportive and therapeutic resources for child sexual abuse (CSA) survivors can mitigate risk to the health and mental health well-being of children, youth, and adults. Identifying and understanding factors that promote or inhibit CSA disclosures have the potential to facilitate earlier disclosures, assist survivors to receive services without delay, and potentially prevent further sexual victimization. Increased knowledge on both the factors and the processes involved in CSA disclosures is timely when research continues to show high rates of delayed disclosures (Collin-Vézina, Sablonni, Palmer, & Milne, 2015; Crisma, Bascelli, Paci, & Romito, 2004; Easton, 2013; Goodman-Brown, Edelstein, Goodman, Jones, & Gordon, 2003; Hershkowitz, Lanes, & Lamb; 2007; Jonzon & Lindblad, 2004; McElvaney, 2015; Smith et al., 2000).

Incidence studies in the United States and Canada report decreasing CSA rates (Fallon et al., 2015; Finkelhor, Shattuck, Turner, & Hamby, 2014; Trocmé et al., 2005, 2008), while at the same time global trends from systematic reviews and meta-analyses have found concerning rates of CSA, with averages of 18–20% for females and of 8–10% for males (Pereda, Guilera, Forns, & Gómez-Benito, 2009). The highest rates found for girls is in Australia (21.5%) and for boys in Africa (19.3%), with the lowest rates for both girls (11.3%) and boys (4.1%) reported in Asia (Stoltenborgh, van IJzendoorn, Euser, & Bakermans-Kranenburg, 2011). These findings point to the incongruence between the low number of official reports of

[1] Factor-Inwentash Faculty of Social Work, University of Toronto, Toronto, Ontario, Canada
[2] Centre for Research on Children and Families, School of Social Work, McGill University, Montreal, Qubec, Canada

**Corresponding Author:**
Ramona Alaggia, Factor-Inwentash Chair in Children's Mental Health, Factor-Inwentash Faculty of Social Work, University of Toronto, 246 Bloor St. West, Toronto, Ontario, Canada M4K1W1.
Email: ramona.alaggia@utoronto.ca

CSA to authorities and the high rates reported in prevalence studies. For example, a meta-analysis conducted by Stoltenborgh, van IJzendoorn, Euser, and Bakermans-Kranenburg (2011) combining estimations of CSA in 217 studies published between 1980 and 2008 revealed rates of CSA to be more than 30 times greater in studies relying on self-reports (127 in 1,000) than in official report inquiries, such as those based on data from child protection services and the police (4 in 1,000) (Jillian, Cotter, & Perreault, 2014; Statistics Canada 2013). In other words, while 1 out of 8 people retrospectively report having experienced CSA, official incidence estimates indicate only 1 per 250 children. In a survey of Swiss child services, Maier, Mohler-Kuo, Landholt, Schnyder, and Jud (2013) further found 2.68 cases per 1,000 of CSA disclosures, while in a recent comprehensive review McElvaney (2015) details the high prevalence of delayed, partial, and nondisclosures in childhood indicating a persistent trend toward withholding CSA disclosure.

It is our view that incidence statistics are likely an underestimation of CSA disclosures, and this drives the rationale for the current review. Given the persistence of delayed disclosures with research showing a large number of survivors only disclosing in adulthood (Collin-Vézina et al., 2015; Easton, 2013; Hunter, 2011; McElvaney, 2015; Smith et al., 2000), these issues should be a concern for practitioners, policy makers, and the general public (McElvaney, 2015). The longer disclosures are delayed, the longer individuals potentially live with serious negative effects and mental health problems such as depression, anxiety, trauma disorders, and addictions, without receiving necessary treatment. This also increases the likelihood of more victims falling prey to undetected offenders. Learning more about CSA disclosure factors and processes to help advance our knowledge base may help professionals to facilitate earlier disclosures.

Previous literature reviews examining factors influencing CSA disclosure have served the field well but are no longer current. Important contributions on CSA disclosures include Paine and Hansen's (2002) original review covering the literature largely from the premillennium era, followed by London, Bruck, Ceci, and Shuman's (2005) subsequent review, which may not have captured publications affected by "lag to print" delays so common in peer-reviewed journals. These reviews are now dated and therefore do not take into account the plethora of research that has been accumulated over the past 15 years. Other recent reviews exist but with distinct contributions on the *dialogical relational processes* of disclosure (Reitsema & Grietens, 2015), CSA disclosures in *adulthood* (Tener & Murphy, 2015), and delayed disclosures in *childhood* (McElvaney, 2015). This literature review differs by focusing on CSA disclosures in children, youth, and adults from childhood and into adulthood—over the life course.

## Method

Kiteley and Stogdon's (2014) systematic review framework was utilized to establish what has been investigated in CSA disclosure research, through various mixed methods, to highlight the most convincing findings that should be considered for future research, practice, and program planning. This review centered on the question: *What is the state of CSA disclosure research and what can be learned to apply to future research and practice*? By way of clarification, the term systematic refers to a methodologically sound strategy for searching literature on studies for *knowledge construction*, in this case the CSA disclosure literature, rather than *intervention* studies. The years spanned for searching the literature were 2000–2016, building on previous reviews without a great deal of overlap. Retrieval of relevant research was done by searching international electronic databases: PsycINFO, PsycARTICLES, Educational Resources Information Center, Canadian Research Index, International Bibliography of the Social Sciences, Published International Literature on Traumatic Stress, Sociological Abstracts, Social Service Abstracts, and Applied Social Science Index and Abstracts. This review searched peer-reviewed studies. A search of the gray literature (unpublished literature such as internal agency documents, government reports, etc.) was beyond the scope of this review because unpublished studies are not subjected to a peer-review process. Keyword search terms used were child sexual abuse, childhood sexual abuse, disclosure, and telling.

A search of the 9 databases produced 322 peer-reviewed articles. Selected search terms yielded 200 English publications, 1 French study, and 1 Portuguese review. The search was further refined by excluding studies focusing on forensic investigations, as these studies constitute a specialized legal focus on interview approaches and techniques. As well, papers that focused exclusively on rates and responses to CSA disclosure were excluded, as these are substantial areas unto themselves, exceeding the aims of the review question. Review articles were also excluded. Once the exclusion criteria were applied, the search results yielded 33 articles. These studies were subjected to a thematic analysis as described by Braun and Clarke (2006). This entailed (1) multiple readings by the three authors; (2) identifying patterns across studies by coding and charting specific features; (3) examining disclosure definitions used, sample characteristics, and measures utilized; and (4) major findings were extrapolated. Reading of the articles was initially conducted by the authors to identify general trends in a first level of analyses and then subsequently to identify themes through a deeper second-level analyses. A table of studies was generated and was continuously revised as the selection of studies was refined (see Table 1).

## Key Findings

First-level analysis of the studies identified key study characteristics. Trends emerged around definitions of CSA disclosure, study designs, and sampling issues. First, in regard to definitions, the term "telling" is most frequently used in place of the term disclosure. In the absence of standardized questionnaires or disclosure instruments, telling emerges as a practical term more readily understood by study participants. Several

**Table I.** Child Sexual Abuse (CSA) Disclosure Studies: 2000–2016.

| Study | Purpose | Design | Sample | Findings | Summary |
|---|---|---|---|---|---|
| Gagnier and Collin-Vézina (2016) | To explore disclosure processes for male victims of CSA | Phenomenological methodology used to interview male CSA survivors. The Long Interview (LIM) guided data collection and analyses. | 17 men ranged in age from 19 to 67—average age 47. Purposive sampling strategy was used | The majority of the men in the study waited until adulthood to disclose their abuse, with negative stereotypes contributing to their delayed disclosures. Negative stereotypes contributed to delayed disclosure with trying to forget. Breaking social action was cited as a motivator to disclose along with the aid of various forms of media on disclosure. Important contextual issues such as negative stereotyping of males, sexuality, and victims were noted. Social media was seen as a facilitator of disclosures | A participants had disclosed and received services before participating in the study. Member checking could not be done with the participants to check themes. Small but sufficient size for a qualitative inquiry. Otherwise, high level of rigor in establishing trustworthiness of the data and analysis. Retrospective study could imply recall issues |
| Brazelton (2015) | To explore the meaning African American women make of their traumatic experiences with CSA and how they disclosed across the lifecourse | Collective case study design with using narrative (storyboard) for data collection and analysis. Qualitative interviewing | 17 African American women in mid-life between 40 and 63 who experienced intrafamilial CSA. Purposive, snowballing strategy | CSA onset varied largely between the ages 5 and 9. No one ever talked to them about sex, so they didn't have a language to discuss sex. Barriers: fear of family breakdown and removal, not wanting to tarnish the family's name, and fear of retribution by family members if they disclosed. Pattern of stifled and dismissed disclosures identified over the lifecourse. A 17 participants disclosed over the lifecourse. Spirituality as a primary source of strength throughout the lifecourse | One of few studies to focus exclusively on African American women. Small but sufficient size for a qualitative inquiry. Important current and contextual issues were brought forward. Retrospective study that may have been affected by recall issues. Use of a lifecourse perspective as a theoretical lens for understanding CSA in the middle to later years of life that should be considered in further investigations |
| Collin-Vézina, Sabourin, Palmer, and Milne (2015) | To provide a mapping of factors that prevent CSA disclosures through an ecological lens from a sample of CSA adult survivors. | Qualitative design using LIM. | 67 male and female CSA adult survivors (76% identified as female and 24% as male). Age ranges from 19 to 49 years (M = 44.9). Purposive sampling strategy | Three broad categories were identified as barriers to CSA disclosure: Barriers from within—internalized victim blaming, mechanisms to protect oneself, and immature development at time of abuse; barriers in relation to others—violence and dysfunction in the family, power dynamics, awareness of the impact of telling, and fragile social network; barriers in relation to the social world—ack of services available, taboo of sexuality, ack of services available, and culture or time abuse period. | Half of the participants had not disclosed their CSA experiences before the age of 19. Retrospective aspect of the study could imply recall issues. A participants had disclosed and received counseling at some before participating in the study. High level of rigor in establishing trustworthiness of the data and analysis |
| Leclerc and Wortley (2015) | Study objectives investigated the factors that facilitate CSA disclosures | Adult male child sexual offenders were interviewed to examine predictors of | 369 adult males who had been convicted of a sexual offense against a child aged between 1 | Disclosure increased with the age of the victim. If penetration had occurred, if the victim was related to the offender, if the victim was not living with the offender at | Offender generated data through self-reports could be subject to cognitive distortions—minimization or exaggerations. |

*(continued)*

**Table 1.** (continued)

| Study | Purpose | Design | Sample | Findings | Summary |
|---|---|---|---|---|---|
| | | victim disclosure. Semi structured interviews based on the QID questionnaire. | and 17 years old. Majority were White, uneducated, almost half unemployed before their arrest. | the time of the abuse, or if the victim restarted during the offense. Male victims in relation and victims from dysfunctional backgrounds were less likely to disclose | Perspectives of offenders on vulnerability of victims in relation to disclosure could be important information to inform intervention |
| McElvaney and Culhane (2015) | To investigate the feasibility of using child assessments as data sources of informal CSA disclosure. To assess if these reports provide substantive data on disclosures | File reports of children seen for assessment in a child sexual abuse unit in a children's hospital were reviewed | Content analysis was completed on 39 files (32 female and 7 male) based on a coding framework. Parents were asked to consent to have their child's file reviewed for the study. Victims assessed were 12–18 years of age | Majority of children told their mothers (43%) and peers (33%) first. Three major themes were identified as influencing the disclosure process: (1) feeling distressed, (2) opportunity to tell, and (3) fears for self. Additional themes of being believed, shame/self-blame, and peer influence were also identified | The sample size is small but we contribute to a large multisite study in Ireland. Serves as an important exploratory pilot bringing forward disclosure themes for consideration |
| Dumont, Messerschmitt, Villa, Bohu, and Rey-Salmon (2014) | This study aimed to explore how the relationship between the perpetrator and the victim, especially whether these relations are intrafamilial or extrafamilial, impact CSA disclosure | File reports of children seen for assessment in a child sexual abuse unit in a children's hospital were reviewed | 220 minor victims— 78.2% female victims, 41.8% prevalent age range 14 and 18 (most prevalent age range), and 48.2% were abused by a family member | Disclosure processes were more complex when it concerned sexual abuse committed by intrafamilial perpetrator: 60% of the victims revealed the facts several years after, and most often to individuals outside the family (78.6% of the disclosures done at school); on the contrary, extrafamilial disclosures take place more spontaneously and quickly: 80% of the victims reveal the facts a few days after, most often to the mother or peers | The relationship with the perpetrator has a significant impact on both timing and recipient of disclosure, with intrafamilial abuses less likely to be disclosed promptly and within the family system |
| Easton, Saltzman, and Willis (2014) | Study focus was on identification of barriers to CSA disclosure with male survivors | Using qualitative content analysis, researchers conducted a secondary analysis of one of the survey data, the 2010 Health and Well-Being Survey, that included men with the self-reported CSA histories with an open-ended item on disclosure barriers | 460 men with CSA histories comprised an anonymous, Internet-based survey. Recruited from survivors' organizations. Age range of 18–84 years. Two thirds of respondents reported clergy-related abuse. Majority of respondents were White | Vast majority of participants (94.6%) were sexually abused by another male. Duration of sexual abuse broke down into: 30.2% less than 6 months, 32.3% 6 months to 3 years, and 34.3% more than 3 years. Ten years old was average age of CSA onset. Ten categories of barriers were classified into three domains: (1) sociopolitical: masculinity, internalized homophobia, fear of being labeled "gay," safety and protection issues, past responses; and (3) personal: internal emotions, seeing the experience as sexual abuse, and sexual orientation. | At time of the study, this was the largest qualitative data set to have been analyzed with an explicit focus on adult male survivors' perceptions of barriers to CSA disclosure. Because the sample was limited in terms of the low percentage of race minorities (9.3%), disclosure differences based on race or ethnicity were not discerned. The majority of abuse reported was by clergy which might present a unique set of barriers to disclosure |

*(continued)*

**Table 1.** (cont nued)

| Study | Purpose | Des gn | Samp e | F nd ngs | Summary |
|---|---|---|---|---|---|
| Easton (2013) | Study purpose was to descr be ma e CSA d sc osure processes us ng a fe span d fferences exam n ng age. A so, to exp ore re at onsh ps between d sc osure attr butes and men's menta hea th | Cross-sect ona survey des gn. E g b e part c pants were screened and comp eted an anonymous, Internet-based survey dur ng 2010. Measures used: Genera Menta Hea th D stress Sca e and Genera Assessment of Ind v dua Needs. Quest ons re ated to CSA d sc osure and supports were nc uded | Purpos ve samp ng of 487 men from three nat ona organ zat ons devoted to ra s ng awareness of CSA among men. Age range: 19–84 years. Mean age for onset of CSA was 10.3 years | O der age and be ng abused by a fam y member were both re ated to de ays n d sc osure. Most part c pants who to d someone dur ng ch dhood d d not rece ve emot ona y support ve or protect ve responses and the p fu ness of responses across the fe span was m xed. De ays n te ng were s gn f cant (over 20 years). Approx mate y one ha f of the part c pants f rst to d about the sexua abuse to a spouse/partner (27%) or a menta hea th profess ona (20%); 42% of part c pants reported that the most he pfu d scuss on was w th a menta hea th profess ona. However, unhe pfu responses caused most menta d stress. C n ca recommendat ons nc uded more of a fe-course perspect ve be adopted, understand ng mpact of unhe pfu responses and the mportance of expand ng networks for ma e surv vors | Purpos ve samp ng of men from awareness ra s ng organ zat ons may have attracted part c u ar part c pants who had a ready d sc osed and rece ved he p. Part c pants needed to have access to Internet wh ch wou d have m nated men n ower SES groups and requ red prof c ency n Eng sh wh ch wou d e m nate certa n cu tura groups. However, the samp ng strategy ga ned access to a predom nant y h dden popu at on. Important c n ca recommendat ons are made w th an emphas s on a fe-course focus |
| McE vaney, Greene, and Hogan (2012) | Qua tat ve study asked the centra research quest on: "How do ch dren te ?" Object ve was to deve op theory of how ch dren te of the r CSA d sc osure exper ences. Parents were nterv ewed. | Grounded theory method study. Interv ews were conducted. L ne-by- ne open and ax a cod ng was conducted on verbat m transcr pts | Samp e of 22 young peop e: 16 g r s and 6 boys; age range: 8–18 years; 22 nterv ewed n tota between the ages of 8 and 18. M xed samp e of some endur ng ntrafam a CSA, some extrafam a CSA, and two endured both forms | A theoret ca mode was deve oped that conceptua zes the process of CSA d sc osure as one of conta n ng the secret: (1) the act ve w thho d ng of the secret on the part of the ch d; (2) the exper ence of a "pressure cooker effect" ref ect ng a conf ct between the w sh to te and the w sh to keep the secret; and (3) the conf d ng tse f wh ch often occurs n the context of a trusted re at onsh p. These were der ved from even categor es that were deve oped through open and ax a cod ng | Modest but suff c ent samp e for an exp oratory qua tat ve nqu ry. H gh eve of trustworth ness r gor. A subsamp e of random y se ected transcr pts was ndependent y coded. Very young ch dren and young adu ts were not captured n th s samp e. Transferab ty of f nd ngs can on y be made to the age range samp ed n the context of re and |
| Schonbucher, Ma er, Moh er-Kuo, Schnyder, and Lando t (2012) | To nvest gate the process of CSA d sc osure w th ado escents from the genera popu at on who had exper enced CSA. How many d sc osed, who d d | Data co ect on was through face-to-face qua tat ve nterv ews. Standard zed quest ons and measures were adm n stered on fam y s tuat on, soc odemograph c | Conven ence samp e of 26 sexua y v ct m zed ado escents. 23 g r s and 3 boys. Age range: 15–18 years. On ne advert sements and f yers were used to recru t youth from | Less than one th rd of part c pants mmed ate y d sc osed CSA to another person. In most cases, rec p ents of both mmed ate and de ayed d sc osure were to peers. More than one th rd of part c pants had never d sc osed the abuse to a parent. Part c pants reported re uctance to d sc ose to parents so as | Two th rds of the samp e d d not d sc ose r ght away. Strengthen ng parent–ch d re at onsh ps may be one of the most mportant ways to ncrease d sc osure to parents. D sc osure to peers has been found a common trend n other |

(continued)

**Table 1.** (continued)

(continued)

| Study | Purpose | Design | Sample | Findings | Summary |
|---|---|---|---|---|---|
| | they disclose to, and what were their motives for disclosing | data, sexual victimization, general, and mental health. Sexual Assault Module of the Juvenile Victimization Questionnaire was used | community and counseling services | not to burden them. Earlier disclosures were related to extrafamilial CSA, single occurrence CSA, age of victim at abuse onset, and parents who were living together. Higher levels of reported guilt and shame were related to delayed disclosures. Peers were viewed by this sample as more reliable confidants | research and bears more examination |
| Hunter (2011) | Aim of this study was to develop a fuller understanding of CSA disclosures | Narrative inquiry methodology. Face-to-face in-depth interviews were conducted with participants. Data were analyzed using Rosentha and Fischer-Rosenthal's (2004) method. | Purposive sampling was employed. Sample consisted of 22 participants aged 25–70 years; 13 women and 9 men. Participants were sexually abused at 15 years or under with someone over the age of 18. | Only 5 out of 22 participants told anyone about their early sexual experiences as children. Fear, shame, and self-blame were the main inhibitors to disclosure. These factors are further developed through subthemes. Telng as a child and as an adult was further expanded upon using Aagga's (2004) framework verifying behaviora nd next attempts to te and purposeful disclosure as categories. Thematic analysis supported that CSA disclosure should be conceptualized and viewed as a complex and felong process | Delayed disclosure was common in this qualitative sample. Most participants did not make a selective disclosure until adulthood. These findings support Aagga's (2004) mode of disclosure but also highlights the importance of felstage. Modest but sufficient sample size for a qualitative inquiry. Well-designed study with detailed analysis for transferability of findings |
| Schaeffer, Leventha, and Asnes (2011) | This study aimed to: (1) add direct inquiry about the process of a child's CSA disclosure; (2) determine if children wit disclosure process that led them to te; and (3) describe the factors that children identify that caused them to delay CSA disclosure | Study sought to find out if process issues of disclosure could be identified in the context of forensic interviews. Forensic interviewers were asked to incorporate questions about "teng" into an existing forensic interview protocol. Interview content related to the children's reasons for telng or waiting was extracted, transcribed, and analyzed using grounded theory method of analysis | 191 interviews of CSA victims aged 3–18 over a 1-year period were used for the study. Inclusion criteria: included children who made a statement about CSA prior to referral, reasons for telng or waiting to te, and those who spoke English. Participants were children who were interviewed at a child sexual abuse clinic. 74% were female and 51% were Caucasian | Reasons the children identified for teng were classified into three domains: (1) disclosure as a result of internal stimu (e.g., the child had nightmares); (2) disclosure facilitated by outside influences (e.g., the child was questioned); and (3) disclosure due to direct evidence of abuse (e.g., the child's abuse was witnessed). The barriers to disclosure identified fell into five groups: (1) threats made by the perpetrator (e.g., the child was told she or he would get in trouble f she or he told), (2) fears (e.g., the child was afraid something bad would happen f she or he told), (3) lack of opportunity (e.g., the child felt the opportunity to disclose never presented), (4) lack of understanding (e.g., the child faled to recognize abusive behavior as unacceptable), and (5) relationship with the perpetrator (e.g., the child thought the perpetrator was a friend) | An innovative study to try to assess f formal investigative interviews can facilitate disclosures of CSA. Data were based on a large number of interviews. Detailed analysis produced detailed findings supported by other study findings on CSA disclosure |

**Table 1.** (continued)

| Study | Purpose | Design | Sample | Findings | Summary |
|---|---|---|---|---|---|
| Aagga (2010) | The study aimed to identify factors that impede or promote CSA disclosures. Overarching research question: What individual, interpersonal, environmental, and contextual influences impede or promote CSA disclosures. | A qualitative phenomenological design. LIHM, was used to interview adult CSA survivors about their disclosure experiences to provide retrospective accounts of CSA disclosure and meaning-making of these experiences. Thematic analysis was done through a socio-ecological lens. | Purposive sampling was employed. Snowball sampling was also used to recruit more male survivors. 40 adult survivors of CSA were interviewed: 36% men and 64% women. Age range of 18-65 with a mean age of 40.1 years. Average age of abuse onset was 5.3 years old. 36% of the sample was non-White. Diverse socioeconomic backgrounds. | Themes fit into four domains: (1) individual and developmental factors, developmental factors as to whether they comprehended what was happening, personality traits also had some bearing on their ability to tell, and anticipating not being believed; (2) disclosure inhibited by family characteristics such as rigidly fixed gender roles with dominant fathers, chaos and aggression, other forms of child abuse, domestic violence, dysfunctional communication, and social sanction; (3) neighborhood and community context, such as, of interest from neighbors and teachers not pursuing troubling behavior; and (4) cultural and societal attitudes, media messages and societal attitudes, feeling unheard as kids, gender socialization for men as, and cultural attitudes influencing parent's reactions. Purposeful disclosure is higher than reported in other studies because of the sampling attempts to purposefully locate disclosers | The study presents a comprehensive socio-ecological analysis to CSA disclosure highlighting the multifaceted influences. Of note, 42% had disclosed the abuse during childhood; 26% had not disclosed because they had repressed the memory, or the abuse had occurred in preschool years and they had difficulty with recall. The remainder had attempted some form of disclosure in indirect ways during childhood. A retrospective approach that could be affected by recall issues |
| Fontes and Plummer (2010) | This examination of CSA disclosure explored the ways culture affects processes of CSA disclosure and reporting, both in the United States and internationally | Using published literature which included data, this article conducted an analysis to provide a cultural competent framework for CSA disclosure questioning | Data consisted of published literature on disclosure and culture that was triangulated with clinical case material | Cultural and structural factors affecting CSA disclosure are identified in in-depth detail. Recommendations made include (1) disclosure interviewing should be tailored to the child's cultural context, (2) questioning should also take into consideration age and gender factors, and (3) culture stands as an important factor in cases in which children are considering disclosing or being asked to disclose, and not solely in cases in which children are from not easily memorable groups. Presents a comprehensive interview framework integrating cultural considerations | One of the few works that adds knowledge to cultural interviewing. Unique combination of feature findings with clinical material. Anecdotal accounts may preclude transferability of findings. Overall adds to an empoverished area of CSA disclosure information |
| Ungar, Barter, McConnell, Tutty, and Fairholm (2009a) | This study explored disclosure strategies with a national sample of youth focused on | Forms were completed by youth following participation in abuse prevention | Examination of results from a national sample of 1,621 evaluation forms where youth | Youth who have been abused or witnesses to abuse employ five disclosure strategies: using self-harming behaviors to signal the abuse to others; not talking | This study highlights that disclosure is an interactive ongoing process. Findings lend support to studies that have identified a mary |

*(continued)*

**Table I.** (continued)

| Study | Purpose | Design | Sample | Findings | Summary |
|---|---|---|---|---|---|
| | (1) What are the hidden experiences of abuse among Canadian youth? (2) What impact does participation n programs have on youth to express their abuse experiences? (3) What disclosure barriers do youth face? (4) What are young people's disclosure patterns? and (5) Who do they tell? | programming by the Canadian Red Cross (RespectED). A series of focus groups and observations of the workshops were used to help contextualize the findings. Evaluation forms were analyzed from two violence prevention programs: (1) It's not your fault and (2) What's over got to do with It? | anonymous y disclosed abuse experiences. Respondent's ages: 13 and under (27%), 14–15 (37%), 16–17 (25%), 18 and older (4%), and unknown (7%) | at a about the abuse to prevent intrusive intervention by others; seeking help from peers; seeking help from informal adult supports; and seeking help from mandated service providers (social workers and police). Results suggest disclosure is an interactive process, with expectations regarding consequences to disclosure. Patterns of incremental y sharing abuse experiences are shaped by young people's interaction with peers, educators, and caregivers. About three-quarters of females previously disclosed; significant y ess ma es d sc osed | nteractive modes of disclosure such as those described by Aragga (2004) and Staler and Nelson-Garde (2005). This mixed sample of youth who experienced different forms of abuse and violence exposure were participants—not mited to CSA survivors |
| Ungar, Tutty, McConnell, Barter, and Fairholm (2009b) | This study explored abuse disclosure strategies with a national sample of Canadian youth who participated n violence prevention programming. One of the goals of the study was to document most previously identified abuse experiences and youth attitudes toward disclosure of abuse experiences | Exploratory design with a nonrepresentative sample. Qualitative analysis of 1,099 evaluation forms completed for Young Red Cross RespectED violence prevention programming delivered between 2000 and 2003. Forms of anonymous abuse disclosures by youth participants of neglect, emotional, physical, and sexual abuse. Twenty-seven interviews and focus groups were also done to understand contextual issues and engage youth and program facilitators n the interpretation of findings. A coding structure was developed for analysis to synthesize themes across data sources | Purposeful sample of 1,099 evaluation forms completed for Young Red Cross RespectED violence prevention programming delivered between 2000 and 2003 | Findings suggest high rates of hidden abuse, with less than one quarter of youth reporting a disclosure. 244 of the 1,099 youth who disclosed abuse on their evaluation forms identified specific ndividua s they to d about the r abuse. D sc osure patterns vary with boys, youth aged 14–15, victims of physical abuse, and those abused by a fam y member being most key to disclose to professiona s or the po ce. One th rd of disclosures were directed toward professiona s and the east, 5 percent each, were directed toward fr ends, parents, and others. Participants were most key to disclose sexua abuse to parents/family, professiona s, and the po ce/courts, with fewer choosing fr ends.<br><br>Out of a 1,099 participants, 225 ma es and 779 fema es nd cated that they had been abused. Out of those, 43 ma es and 180 fema es nd cated that they had disclosed the abuse. Of those who had disclosed, on y a port on of ma es and fema es specified who they had disclosed the abuse to ("Wh e 1,099 eva uat ons with disclosure statements were analyzed, on y 22% made ment on of peop e to | Innovative design of this study provides insight nto young people's perceptions of disclosure experiences. High level of rigor with trustworthiness of the data analysis ensured through use of youth focus groups, interviews, and observationa data. The study results are somewhat imited n the th ckness of the descriptions t can offer because most of the data are survey based. Regiona differences may not have been picked up. Scope of the study's broad and approach screative |

(continued)

267

**Table 1.** (continued)

| Study | Purpose | Design | Sample | Findings | Summary |
|---|---|---|---|---|---|
| Priebe and Svedin (2008) | This study aimed to investigate disclosure rates and disclosure patterns and examine predictors of nondisclosure in a sample of male and female adolescents with self-reported experiences of sexual abuse | Participants completed 65-item questionnaire that included questions about background, consensual sex, sexual abuse experiences (noncontact, contact or penetrating abuse, including peer abuse), disclosure of CSA, own sexual abusive behavior, sexual attitudes, and experiences with pornography and sexual exploitation. The questionnaire included 6 modified items from the SCL-90 and 9 of 25 items from the Parental Bonding Instrument. The data for girls and boys were analyzed separately | The sample consisted of 4,339 high school students in Sweden (2,324 girls and 2,015 boys). The mean age of the participants was 18.15 years. This study used a subsample of 1,962 participants who reported CSA and who answered disclosure questions | whom disclosures occurred.") More females specified who they disclosed to compare to males. The data show perceptions among youth of negative consequences for owning disclosure. Of the sample, 1,505 girls (65%) and 457 boys (23%) reported CSA. The disclosure rate was 81% (girls) and 69% (boys). Girls and boys disclosed most often to a friend of their own age. Few had disclosed to professionals, and even fewer had reported to the authorities. There were higher rates of disclosure to a professional with more severe abuse (contact abuse with or without penetration) for girls, but lower rates for boys The more severe the sexual abuse was, the less likely both girls and boys had talked to their mother, father, or a sibling. Girls were less likely to disclose if they had experienced contact sexual abuse with or without penetration, less frequent abuse, abuse by a family member, or if they had perceived their parents as less caring and less overprotective. Boys were less likely to disclose if a family member abused them, they were studying a vocational program (vs. an academic program), viewed their parents as less caring and not overprotective. Adolescents who reported CSA perceived their mental health as poorer compared to adolescents without CSA. Nondisclosers reported more symptoms on the Mental Health Scale than those who had disclosed | This study highlighted that sexual abuse is a grey hidden from adult society, especially from professionals and the legal system. However, time lapsed to disclosure was not reported. Since friends appeared to be the main recipients of sexual abuse disclosures, practice may caution of this could be to find ways to give young people a better information and guidance about how to support a sexually abused peer. A qualitative component to the study would have provided a broader understanding of disclosure processes. Study limitations include a significant amount of boys who did not complete the questions regarding disclosure on; the timing of disclosures (whether they were delayed or not) was not measured; possibly the study of recall bias with retrospective studies based on self-reports; and youth participants may not have understood all the questions |
| Sorsoli, Kia-Keating, and Grossman (2008) | Study focused on disclosure challenges for male survivors of CSA to understand three issues: (1) To | Male survivors of CSA were interviewed about their disclosure experiences. Analytic techniques included | The sample consisted of 16 male survivors of childhood sexual abuse; 11 Caucasian, 2 African American, 1 | Barriers to disclosure were found to be operant in three interrelated domains: (1) personal (e.g., lack of cognitive awareness, intentional avoidance, emotional readiness, and shame); (2) | Since the vast majority of men in the sample had not disclosed in childhood, they may have been predisposed to identify barriers to disclosure more |

(continued)

268

**Table I.** (cont nued)

| Study | Purpose | Des gn | Samp e | F nd ngs | Summary |
|---|---|---|---|---|---|
| | whom and n what contexts have they d sc osed these exper ences? (2) What do they have to say about the r d sc osure exper ences? and (3) What are the r percept ons of pos t ve and negat ve aspects of the r d sc osure, nc ud ng ncent ves and barr ers? | grounded theory method of ana ys s for cod ng and deve opment of conceptua y c ustered matr ces. Part c pants comp eted two n-depth, sem -structured nterv ews, ast ng between 2 and 3 hr each tak ng p ace approx mate y a week apart | Puerto R can, 1 part Nat ve Amer can, 1 Afr can Cuban; age range of 24–61 years; 9 dent f ed themse ves as heterosexua, 5 as homosexua, and 2 as b sexua | re at ona (e.g., fears about negat ve repercuss ons, so at on); and (3) soc occ tura (e.g., ack of acceptance for men to exper ence or acknow edge v ct m at on). On y 1 of the 16 men n th s samp e d sc osed the fu extent of h s sexua abuse exper ences wh e he was st a ch d. The other men reported that they had not d sc osed, a though some reported attempts to te that were nd rect or ncomp ete. Severa other men d sc osed certa n exper ences or e ements of the r abuse, but concea ed others. By the t me of the study, many of these men had d sc osed the r past exper ences n a var ety of re at onsh ps, nc ud ng those w th fam y members, partners, therap sts, and nfrequent y fr ends. Severa had on y m ted d scuss ons of the r sexua abuse | read y. Retrospect ve accounts are subject to reca ssues. Invest gators made s gn f cant efforts to gather a d verse samp e. H gh eve of r gor was executed n the dependab ty of the data and terat ve process of the nterpret at on of f nd ngs was conducted |
| Hershkow tz, Lanes, and Lamb (2007) | The goa of the present study was to exam ne how ch d v ct ms of extrafam a sexua abuse d sc osed the abuse exper ence | A eged v ct ms of sexua abuse and the r parents were nterv ewed. Ch dren were nterv ewed us ng the NICHD Invest gat ve Interv ew Protoco by exper enced youth nvest gators. Informat on on d sc osure processes was obta ned n the f rst forma nterv ew, before any po ce nvest gat on or ch d we fare ntervent on | Th rty a eged v ct ms of CSA: 18 boys and 12 g r s. Ch d samp e was 7- to 12-year-o ds w th an average age of 9.2 years. Twenty mothers and 10 fathers were a so nterv ewed for a tota of 30 parent nterv ews. A content ana ys s was conducted on ch d and parent nterv ews | D sc osure categor es were dent f ed as fo ows: (1) de ayed 53% of the ch dren de ayed d sc osure for between 1 week and 2 years; (2) rec p ent of d sc osure: 47% of ch dren f rst d sc osed to s b ngs or fr ends, 43% f rst d sc osed to the r parents, and 10% f rst d sc osed to another adu t. 57% of the ch dren spontaneous y d sc osed abuse, but 43% d sc osed on y after they were prompted. 50% of the ch dren reported fee ng afra d or ashamed of the r parents' responses. Parents' react ons: support ve (37%) and unsupport ve (63%). There was a strong corre at on between pred cted and actua parenta react ons suggest ng ch dren ant c pated the r parents' ke y react ons accurate y. D sc osure processes var ed depend ng on the ch dren's ages (e.g., younger ch dren d sc osed to parents), sever ty and frequency of abuse, parents' expected react ons, suspects' dent t es, and strateg es used to foster secrecy | Innovat ve des gn to gather d sc osure data from young ch dren. Focus s on extrafam a CSA wh ch may d ffer than d sc osure patterns of ntrafam a CSA. Two th rds of the parents reg stered unsupport ve responses wh ch s h gh |

(continued)

269

**Table 1.** (contnued)

| Study | Purpose | Desgn | Sampe | Fndngs | Summary |
|---|---|---|---|---|---|
| Aggaa and Krshenbaum (2005) | The objectves of the current study were to dentfy a broad range of factors, ncludng famly dynamcs that contrbute to or hnder a chld's ablty to dsclose CSA. | A qualtatve phenomenologca desgn—LIM—was used to eect dsclosure experences; factators and barrers; and relevant crcumstances. Intervews were transcrbed verbatm. Lne-by-ne open codng was conducted to capture famly-eve factors. Axa and seectve codng factated dentfcaton of themes | Purposve samplng was employed to recrut 20 adult survvors between the ages of 18 and 65 who were sexualy abused by a famly member. Average age of partcpants was 40.1 years; 60% of partcpants were femae and 40% mae. Average age of onset of abuse was 6.7 years. Mxed racal and nonracal sampe. The majorty had receved treatment for CSA at some pont n ther ves | Four major themes emerged suggestng that CSA dsclosure can be sgnfcantly compromsed when certan famly condtons exst: (1) rgdy fxed, gender roes based on a patrarchy-based famly structure; (2) presence of famly voence; (3) cosed, ndrect famly communcaton patterns; and (4) soca soaton of the famly as a whoe, or specfc members, payed a part n CSA vctms feelng they had no one safe to te. Famly systems formulatons through a femnst ens are mportant n understandng chldren and famles at rsk of dsclosure barrers | Over haf the partcpants had not dsclosed the abuse durng chldhood. Of the nond sclosng partcpants, sx dd not dsclose because they had repressed or forgotten the memory. Amost one thrd wthheld dsclosure ntentonaly. More data are needed on earl y dsclosures to garner more nformaton on factators of dsclosure. Retrospectve approach mposes recal ssues. Hgh eve of trustworthness of the data and nterpretatons were acheved through credbty, dependabty, and confrmabty through drect quotes |
| Aggaa (2005) | The study purpose was to qualtatvely expore or promote dsclosure by examnng a range of factors ncludng gender as a dynamc—how dsclosures of femaes and maes are smar and dfferent, and n what ways gender affects dsclosure | Survvors of CSA were ntervewed about ther dsclosure experences usng LIM. Analyss of 30 partcpant narratves was used for theme development regardng mpact of gender on dsclosure. Intervews were transcrbed verbatm for open, axa, and seectve codng. Categores and subcategores were coapsed and refnng nto theme areas | Purposve samplng of women and men, aong wth those who dsclosed durng the abuse and those who dd not. 19 femaes and 11 maes; 18–65 (mean 40.1) years wth sexualy abused by a famly member or a trusted adut. Average age of abuse onset was 5.3 years, 36% were nonwhte, and 58% had not dsclosed durng chldhood | Three themes emerged for men that nhbted or precptated dsclosure for reasons reated to gender: (1) fear of beng vewed as homosexua; (2) profound feelngs of stgmatzaton or soaton because of the beef that boys are rarely vctmzed; and (3) fear of becomng an abuser, whch acted as a precptant for dsclosure. Two predomnant themes wth femae partcpants reated to dffcutes dsclosng: (1) they fet more confcted about who was responsbe for the abuse and (2) they more strongly antcpated beng bamed and/or not beeved | One n a dearth of studes that conduct gender analyss. Comparatve analyss draws out mportant practce mpcatons. Retrospectve desgn of the study whch mposes possbe recall ssues. Hgh eve of trustworthness of the data and nterpretatons were acheved through credbty, dependabty, and confrmabty through drect quotes |
| Coings, Grffths, and Kumao (2005). | Study examned patterns of dsclosure n a arge representatve sampe of South Afrcan CSA vctms. Two study objectves to: (1) examne how and | Fe revews of a soca work and medca case fes for CSA vctms seen at the crss center where a cases of CSA reported to the North Durban | 1,737 cases of CSA reported n the North Durban area of KwaZu u-Nata, South Afrca, durng January 2001 to December 2003. 1,614 grls and | Content analyss dentfed two broad dmensons of dsclosure: (1) agency: chdn t ated dsclosure versus detecton by a thrd party and (2) tempora duraton: an event versus a process. These dsclosure dmensons were defned four dscrete categores of | These resuts ft nto Aggaa's (2004) dsclosure framework. Through data analyss two raters coded dsclosure categores usng author's dsclosure framework, whch proved to be both exhaustve and mutualy excusve ve |

(continued)

**Table 1.** (continued)

| Study | Purpose | Design | Sample | Findings | Summary |
|---|---|---|---|---|---|
| | when CSA victims disclose their abuse and (2) Identify factors associated with different patterns of disclosure | policing area were referred during the period of January 2001 to December 2003 | 123 boys; average age of victimized children was 9.9 years. 47% reports were made within 72 hr of the abuse, 31% from 72 hr to 1 month, and 22% more than a month after the abuse | disclosure: (1) purposeful disclosure (30% of cases), (2) indirect disclosure (9% of cases), (3) eyewitness detection (18% of cases), and (4) accidental detection (43% of cases). Disclosure independently predicted by victim's age, nature of the victim–perpetrator relationship, offender's age, frequency of abuse, and reporting latency. Mean age of purposeful disclosures (10.67) was higher than the mean age of indirect disclosures (5.84). Except for forms of disclosure were easy when the offender was a family member. Shorter reporting latency was more likely with repeated abuse | with the percentage of interrater agreement at 98%. Generalizability of this study seemed to child clients receiving a cross assessment referred through a police report |
| Hershkowitz, Horowitz, and Lamb (2005). | This study aimed to identify characteristics of suspected child abuse victims that are associated with disclosure and nondisclosure during forma investigations | Large database of suspected cases of physical and sexual abuse investigated in Israel between 1998 and 2002 was analyzed. Interviews were also conducted using standardized NICHD Investigative Interview Protocol. Archival data were analyzed | The sample was comprised of 26,446 of 3- to 14-year-old alleged victims of sexual and physical abuse interviewed in Israel in the 5-year period of from 1998 to 2002. 140 experienced trained youth investigators conducted interviews | Overall, 65% of the 26,446 children made allegations when interviewed. Rates of disclosure were greater for sexual abuse (71%) over physical abuse (61%). Children of all ages were less likely to disclose/allege abuse when a parent was the suspected perpetrator. Disclosure rates increased as children grew older: 50% with 3- to 6-year-olds, 67% of the 7- to 10-year-olds, and 74% of the 11- to 14-year-olds disclosed abuse when questioned | Overall findings indicated that rates of disclosure varied systematically depending on the nature of the alleged offences, the relationship between a child victim and suspected perpetrators, and the age of the suspected victims. Analyses of only involved cases that had come to the attention of official agencies, making it difficult to determine how many of abuse take place without ever triggering any kind of official investigation on Evidence for delayed disclosures. |
| Jensen, Gulbrandsen, Mossge, Reichelt, and Tjersland (2005) | This study investigated the context in which children were able to report their child sexual abuse experiences; their views as to what made it difficult to talk about abuse; what helped them in the disclosing process; and their parent's perceptions of their disclosure processes | Qualitative approach to data collection and analysis was used. Therapeutic interviews of the children and mostly their mothers were analyzed through a qualitative approach. Follow-up interviews were held 1 year later | 20 families with a total of 22 children participated. A child then had to do about experiences that created concerns for caregivers about CSA. Children's ages ranged between 3 and 16 years (average age 7.5 years); 15 girls and 7 boys. Sexual abuse by someone in the family or a close person to the family | None of the children told of abuse immediately after it occurred. Children exposed to repeat the abuse kept this as a secret for up to several years; 17 told their mothers first, 3 first to a friend, 1 told the father, and 1 their uncle. Majority of remarks that led to the suspicion of CSA were made in situations where someone engaged the child in a dialogue about what was bothering them, resulting in a referral. The children felt it was difficult to find situations containing enough privacy and prompts that they could share their experiences. When the children did | The results indicate that disclosure is a fundamental developmental process that becomes less difficult for children to perceive that there is an opportunity to talk, a purpose for speaking and a connection has been established to whom they are talking about. Strengthening parent–child relationships is an important practice implication |

(continued)

**Table 1.** (cont nued)

| Study | Purpose | Des gn | Samp e | F nd ngs | Summary |
|---|---|---|---|---|---|
| | | | | d sc osure they d d t n s tuat ons where the top c of ch d sexua abuse was n some form addressed or act vated, where someone recogn zed the ch d's cues and probed further. They a so were sens t ve to others react ons, and whether the r d sc osures wou d be m s nterpreted. Severa of the ch dren perce ved negat ve consequences as major factors contr but ng to de ay ng d sc osure. They were pr mar y concerned about negat ve effects for the mother. The mothers sa d they were a so sens t ve to the ch dren's fee ngs. If the r ch dren showed s gns of d stress and d d not want to ta k, the mothers wou d change the subject or not pursue the top c further | |
| Sta er and Ne son-Garde (2005) | The purpose of th s study was to understand the fu process of CSA d sc osure and how th s unfo ded for preado escent and ado escent g r s. Exam ned what fac tated and h ndered d sc osure and subsequent consequences | Secondary ana ys s of qua tat ve focus group data. Or g na project cons sted of four focus groups conducted w th n the context of ongo ng therapy for g r s who had exper enced CSA. Secondary ana ys s cons sted of wr tten narrat ve summar es of each sess on group ng these conceptua y, and exam n ng the r nterconnectedness | Samp e cons sted of 34 part c pants from four groups. Sess ons ana yzed were between 60 and 90 m n ong; aud otaped and ater transcr bed for content ana ys s | F nd ngs are reported n three major doma ns: (1) se f-phase: where ch dren come to understand v ct m zat on nterna y; (2) conf dant se ect on—react on phase: where they se ect a t me, p ace, and person to te and then whether that person's react on was support ve or host e; and (3) consequences phase: good and bad that cont nued to nform the r ongo ng strateg es of te ng. The act ons and react ons of adu ts were s gn f cant and nformed the g r s' dec s ons. The consequences phase was further subd v ded nto four aspects: (1) goss p ng and news networks, (2) chang ng re at onsh ps, (3) nst tut ona responses and the after fe of te ng, and (4) ns der and outs der commun t es | Th s study prov ded a contextua exam nat on of the ent re d sc osure process, c oser to the po nt n t me when the abuse and d sc osure occurred. Sma groups of preado escent and ado escent g r s who had surv ved sexua abuse a so served as consu tants and were encouraged to share the r know edge for the benef t of profess ona pract t oners |
| A agg a (2004) | The study sought to exam ne nf uences that nh b t or promote ch dren's d sc osure of CSA to address gaps n know edge about how, when, and under what c rcumstances v ct ms of CSA d sc ose | The study emp oyed L IM—a phenomeno og ca des gn. Intens ve nterv ew ng that were 2 hr ong on average generated data for a themat c ana ys s. The nterv ew gu de was | Us ng purpos ve samp ng 24 adu t surv vors of ntrafam a abuse between ages of 18 and 65 (average age 41.2) were recru ted from agenc es and one un vers ty; 57% ma e and 43% fema e; | Through ana ys s of the nterv ew new categor es of d sc osure were dent f ed to add to ex st ng types. Three prev ous y dent f ed were conf rmed n these data: acc denta, purposefu, and prompted/e c ted accounted for 42% of d sc osure patterns n the study samp e. Over ha f the d sc osure patterns descr bed by the study samp e d d not f t these | Th s study expanded types of CSA d sc osures to more fu y understand how ch dren and adu ts d sc ose. And under what c rcumstances. Ask ng peop e to recount events that occurred n ch dhood s suscept b e to memory fa ure, espec a y when memor es were forgotten, |

(continued)

**Table I.** (cont nued)

| Study | Purpose | Des gn | Samp e | F nd ngs | Summary |
|---|---|---|---|---|---|
| | | deve oped to probe for nd v dua , nterpersona , env ronmenta , and cu tura factors nf uenc ng CSA d sc osure | average of age of abuse onset was 6.5 years; 42% of the part c pants had d sc osed the abuse dur ng ch dhood; 58% d sc osed as adu ts | prev ous y estab shed categor es. Three add t ona d sc osure categor es emerged: behav ora and nd rect verba attempts, d sc osures ntent ona y w thhe d, and d sc osures tr ggered by recovered memor es | de ayed, or repressed and ater recovered. D stort on and rev s on of events are a so potent a prob ems n reca . H gh degree of trustworth ness of the data was ach eved and quotes prov ded supported the categor es |
| Cr sma , Basco , Pac , and Rom to (2004) | The ma n goa s of th s study were to understand mped ments that prevent ado escents from d sc os ng CSA and seek ng he p from the r soc a network and/or the serv ces | In-depth te ephone (anonymous) nterv ews were conducted after nformed consent was exp a ned and obta ned. Three nvest gators exper enced n counse ng CSA counse ng conducted the nterv ews wh ch were recorded w th perm ss on. Three researchers ndependent y scored the nterv ews accord ng to a cod ng framework | The samp e was compr sed of 36 young peop e who exper enced sexua abuse n ado escence; 35 fema es and 1 ma e; aged 12–17. Some of the samp e exper enced sexua v o ence n a dat ng re at onsh p | The ma n mped ments to d sc ose to a fam y member were: fear of not be ng be eved, shame, and fear of caus ng troub e to the fam y. The ma n mped ments for not seek ng serv ces were: unaware of appropr ate serv ces, w sh to keep the secret, ack of awareness of be ng abused, m strust of adu ts and profess ona s, and fear of the consequences of d sc os ng sexua abuse. When they d d d sc ose to profess ona s, teens rece ved very m ted support as many profess ona s were not tra ned on sexua abuse and cou d not offer appropr ate ntervent ons to v ct ms | Th s study represented the f nd ngs of a m xed samp e of surv vors of ch d sexua abuse and nt mate partner v o ence. The study was conducted n Ita y and t s not c ear what sexua abuse response tra n ng s ava ab e. There may have been a sect on b as as the most d ssat sf ed surv vors responded to the research ca |
| Jonzon and L ndb ad (2004) | Study purpose was to exp ore how abuse tra ts, openness, react ons to CSA d sc osure, and soc a support were re ated. D fferences based on sever ty of abuse, t m ng and outcomes of d sc osure, soc a support, and pred ct ng factors of pos t ve and negat ve react ons were probed | Adu t women report ng CSA by someone c ose were nterv ewed us ng sem -structured gu des together w th quest onna res. Data on v ct m zat on and current soc a support were retr eved through the quest onna res, and data on d sc osure and react ons were gathered through the nterv ews w th part c pants | 122 adu t women between 20 and 60 years o d (average age of 41 years) report ng exposure to ch d sexua abuse by someone c ose before the age of 18 and had to d someone about at east one abuse event. 90% were Swed sh subjects. Purpos ve samp ng strategy was used | Abuse character st cs: abuse by mu t p e perpetrators was more common than by a s ng e perpetrator. Age of onset was often before age of 7, w th an average durat on of 7 years. Severe y abused women had to d someone more of the r soc a network, espec a y to profess ona s. D sc osures: 32% d sc osed dur ng ch dhood (before the age of 18) w th an average of 21 years de ay. Women who had d sc osed n ch dhood reported more nstances of phys ca abuse, mu t p e perpetrators, use of v o ence, and were more ke y to have confronted a perpetrator, and had rece ved a negat ve f rst react on. Factors | 68% de ayed d sc osure unt adu thood. At the t me of the study, t was one of the f rst stud es to focus on the nterp ay between soc a support networks and d sc osure of ch d sexua abuse. The study resu ts are somewhat m ted by an overrepresentat on of severe y abused women. Retrospect ve study and se f-report of nformat on cou d mp y reca ssues and thus m ts the accuracy of the nformat on obta ned on abuse and d sc osure character st cs. Cross-sect ona |

(continued)

**Table 1.** (continued)

| Study | Purpose | Design | Sample | Findings | Summary |
|---|---|---|---|---|---|
| | | | | significantly predicting delay were younger age at first event and no use of violence. Disclosure outcomes: of the 26 women who told in childhood during a period with ongoing abuse, 15 women were continuously abused after disclosure | design does not allow for definite conclusions of cause and effect on the relationship found |
| Kogan (2004) | The purpose of this study was to identify factors that influence the disclosures made by female survivors of USE in childhood and adolescence. The predictors of both the timing of disclosure and the recipient of the disclosure were investigated | Data were gathered from a subsample of female adolescents that participated in the NSA, which consisted of structured phone interviews. USEs reported in the NSA were assessed using a modified version of the Incident Classification Interview. They were then asked a series of questions about each episode of unwanted sexual contact including event characteristics and perpetrator characteristics | A subsample of 263 adolescent females between 12 and 17 years old, mean age of 15.2 years old, who reported at least one experience of unwanted sexual contact in the NSA. Participant characteristics, USE characteristics, and family contextual attributes were explored | Children under the age of 7 were at a higher risk for delayed disclosures. Participants whose USE occurred between the ages of 7 and 13 were most likely to tell an adult. Adolescents (14–17) were more likely to tell only peers than children aged 7–10 years. Children under 11 were more likely to tell an adult, but were at risk for delaying disclosure beyond a month. Children aged 11–13 tended to disclose within a month. Closer relationship to the perpetrator or a family member was associated with delayed disclosure. Immediate disclosure was more likely with stranger perpetration. Fear for one's safety and penetration were associated with disclosure to adults. Family factors linked to disclosure were (1) drug abuse in household member, which made survivors more likely to disclose more promptly and (2) never living with both parents was associated with nondisclosure | This study examined factors including disclosures of USEs in childhood and adolescence in a nationally representative sample of female adolescents who participated in the NSA. Surveys of investigations of victimization on experiences may be biased due to underreporting. Adolescents who refused to report or discuss an USE may represent a source of systematic bias and would make the results generalizable only to adolescents who are willing to disclose USE via survey. Although data may be retrospective, recall bias may have been minimized in this study since participants were adolescents, and so the time lag between the USE and the interview were presumably shorter than a study of adult participants recalling CSA experiences |
| Goodman-Brown, Edelstein, Goodman, Jones, and Gordon (2003) | The purpose of this study was to investigate variables associated with delay of disclosure of CSA and test a model for factors that influence how quickly children disclose sexual abuse | Case file reviews of data obtained from prosecutor's offices, as well as from structured interviews with the children's caretaker and observations of child interviews. Trained graduate students and one victim advocate completed the Sexual Assault Profile | Sample consisted of 218 children referred to prosecutors' offices for alleged CSA. A child in the sample had disclosed their abuse in some manner. Children ranged in age from 2 to 16 years at the beginning of abuse; 3–16 years at the end of the abuse, and 4–16 years at the time of the | 64% disclosed within a month and 29% within 6 months. Five variables for the model were tested: (1) age: children who were older disclosed sooner to disclose and older children feared more negative consequences to others than younger children; (2) type of abuse: victims of intrafamilial abuse took longer to disclose—victims of intrafamilial abuse feared greater negative consequences to others compared to victims of extrafamilial abuse; (3) fear of negative consequences: children who feared | This study represents a higher rate of disclosers with a month. These cases had been reported to authorities and were in process of prosecution which may explain higher rate of early disclosures. Legal sample with higher rate of extrafamilial abuse (52%) may also account for earlier disclosures. Model suggests that older children, victims of intrafamilial abuse; felt greater response by for the abuse, and perceiving |

*(continued)*

**Table 1.** (continued)

| Study | Purpose | Design | Sample | Findings | Summary |
|---|---|---|---|---|---|
| | The study focus was to gather data from a large sample of women about the length of time women who were raped before age 18 delayed disclosure who they disclosed to, and variables that predicted disclosure within 1 month. | questionnaire for child character studies, the abuse and their disclosure. Children's perception of responsibility and fear of negative consequences were probed. Correlational analyses were conducted with path analyses to test the hypothesized causal relations among variables | n = 1 a police report; 77% female, 70% Caucasian, 17% Hispanic, and 11% African American. Predominantly middle to low SES. Approximately 47% intrafamilial abuse | negative consequences of disclosure took longer to disclose, children who believed that their disclosure would bring harm to others took longer to disclose, fear of negative consequences to the self or the perpetrator was unrelated to time of disclosure, and girls more than boys feared negative consequences to others; (4) Perceived responsibility: children who felt greater responsibility for the abuse took longer to disclose and older children felt more responsibility for the abuse; and (5) gender was not a significant correlated with time to disclosure | negative consequences to disclosing took longer to disclose. We-described study with high level of rigor. Produced a viable mode of disclosure for further investigations. However, researchers were not able to interview children directly |
| Smith, Letourneau, Saunders, Kilpatrick, Resnick, and Best (2000) | | Structured telephone interviews that lasted approximately 35 min were used to collect data using a computer-assisted telephone interview system. A telephone interviews were conducted with each question on a computer screen. The survey consisted of several measures designed to elicit demographic information, psychiatric symptoms, substance use, and victimization history. The present study reports on data from the demographic and child rape victimization questions | Two probability samples. Wave I was a random sample of 2,009 respondents selected from stratified samples of defined jurisdictions. Random digital dialing was used to select households for Second random sample of 2,000 women between the ages of 18 and 34 was selected. Both Wave I and Wave 2 data were weighted to conform to the 1989 Census statistics | 288 (9%) reported experiencing at least one event that met the study's definition of childhood rape. The average age at the time of the first rape was 10.9 years. Of the 288 women who reported a child rape, 28% stated that they had never told anyone about this sexual assault until specifically queried by the interviewer for this study. 58% did not disclose for over 1 year and up to 5 years post-rape. 27% disclosed within a month. Among women who disclosed prior to the NWS interview case friends were the most common person to whom victims made disclosures, followed by mothers and other immediate family members. Fewer than 10% of victims reported making their initial disclosure to social workers or law enforcement personnel. Only 12% of child rape victims stated that their assaults were reported to authorities at some point | The time frame of this survey may have had important contextual implications. The majority of child rapes reported by this sample occurred prior to the large-scale childhood sexual assault prevention education programs that were begun in the 1980s that teach children that assaults (including CSA) are wrong and should be disclosed to respons ible adults. This information may have influenced (and may currently be influencing) young women's disclosure patterns. For Wave I, comparison of these data with the population parameters obtained from the U.S. Census Bureau indicated that the sample closely matched the demographic attributes of the population of U.S. women |

Note. SCL-90 = Symptom Check List-90; SES = socioeconomic status; LM = long interview method; CSA = child sexual abuse; NCHD = National Institute of Child Health and Human Development; USE = unwanted sexual experiences; NSA = National Survey of Adolescents; NWS = National Women's Study; QDS = Questionnaire informatisé sur les délinquants sexeuls.

examples of this usage were found in the research questions, interview guides, and surveys examined: "How and when do people decide to tell others about their early sexual experiences with adults?" (Hunter, 2011, p. 161); "Some men take many years to tell someone that they were sexually abused. Please describe why it may be difficult for men to tell about/discuss the sexual abuse" (Easton, Saltzman, & Willis, 2014, p. 462). "Participants were asked a series of open-ended questions to elicit a narrative regarding their experiences of telling . . ." (McElvaney, Greene, & Hogan, 2012, p. 1160). "Who was the first person you told?" (Schaeffer, Leventhal, & Anes, 2011, p. 346).

There was sound consistency between studies, defining disclosure in multifaceted ways with uniform use of categories of prompted, purposeful, withheld, accidental, direct, and indirect. However, defining the period of time that would delineate a disclosure as delayed varied widely across studies, wherein some studies viewed 1 week or 1 month as a delayed disclosure (i.e., Hershkowitz et al., 2007; Kogan, 2004; Schönbucher, Maier, Moher-Kuo, Schnyder, & Lamdolt, 2012). Other studies simply reported average years of delay sometimes as long as from 20 to 46 years (Easton, 2013; Jonzon & Linblad, 2004; Smith et al., 2000).

Second, the number of qualitative studies has increased significantly over the last 15 years. This rise is in response to a previous dearth of qualitative studies. Based on Jones's (2000) observation that disclosure factors and outcomes had been well documented through quantitative methods; in a widely read editorial, he recommended "Qualitative studies which are able to track the individual experiences of children and their perception of the influences upon them which led to their disclosure of information are needed to complement . . ." (p. 270).

Third, although a few studies strived to obtain representative samples in quantitative investigations (Hershkowitz, Horowitz, & Lamb, 2005; Kogan, 2004; Smith et al., 2000), sampling was for the most part convenience based, relying on voluntary participation in surveys and consent-based participation in file reviews (Collings, Griffiths, & Kumalo, 2005; Priebe & Svedin, 2008; Schönbucher et al., 2012; Ungar, Barter, McConnell, Tutty, & Fairholm, 2009a). Therefore, generalizability of findings is understandably limited. The qualitative studies used purposive sampling as is deemed appropriate for transferability of findings to similar populations. Some of those samples contained unique characteristics, since they were sought through counseling centers or sexual advocacy groups. These would be considered clinical samples producing results based on disclosures that may have been delayed or problematic. This might presumably produce data skewed toward barriers and bring forward less information on disclosure facilitators.

Through an in-depth, second-level analysis, this review identified five distinct themes and subthemes beyond the general trends as noted earlier.

**Theme 1**: Disclosure is viewed as an ongoing process as opposed to a discrete event—iterative and interactive in nature. A subtheme was identified regarding disclosure as

being facilitated within a dialogical and relational context is being more clearly delineated.

**Theme 2**: Contemporary disclosure models reflect a social–ecological, person-in-environment perspective to understand the complex interplay of individual, familial, contextual, and cultural factors involved in CSA disclosure. Subthemes include new categories of disclosure and a growing focus on previously missing cultural and contextual factors.

**Theme 3**: Age and gender are strong predictors for delaying disclosure or withholding disclosure with trends showing fewer disclosures by younger children and boys. One subtheme emerged that intrafamilial abuse/family-like relationship of perpetrator has a bearing on disclosure delays or withholding.

**Theme 4**: There is a lack of a cohesive life-course perspective. One subtheme includes the lack of data within the 18- to 24-year-old emerging adult population.

**Theme 5**: Significantly more information is available on barriers than on facilitators of CSA disclosure. Subthemes of shame, self-blame, and fear are uniformly identified as disclosure deterrents.

*Disclosure as an ongoing process: Iterative and interactive in nature.* Disclosure is now generally accepted as a complex and lifelong process, with current trends showing that CSA disclosures are too often delayed until adulthood (Collin-Vézina et al., 2015; Easton, 2013; Hunter, 2011). Knowledge building about CSA disclosure has moved in the direction of understanding this as an iterative and interactive process rather than a discrete, one-time event. Since the new millennium, disclosure is being viewed as a dynamic, rather than static, process and described "not as a single event but rather a carefully measured process" (Alaggia, 2005, p. 455). The catalyst for this view originates from Summit (1983) who initially conceptualized CSA disclosures as process based, although this notion was not fully explored until several years later. Examinations of Summit's (1983) groundbreaking proposition of the CSA accommodation (CSAA) model produced varying results as to whether his five stages of secrecy, helplessness, entrapment and accommodation, delayed, conflicted, and unconvincing disclosures, and retraction or recantation, hold validity (for a review, see London, Bruck, Ceci, & Shuman, 2005). However, the idea of disclosure as a process has been carried over into contemporary thinking.

Recently, McElvaney, Greene, and Hogan (2012) detailed a process model of disclosure wherein they describe an interaction of internal factors with external motivators which they liken to a "pressure cooker" effect, preceded by a period of containment of the secret. Moreover, this and other studies strongly suggest disclosures are more likely to occur within a dialogical context—activated by discussions of abuse or prevention forums providing information about sexual abuse (Hershkowitz et al., 2005; Jensen, Gulbrandsen, Mossige, Reichelt, & Tjersland, 2005; Ungar et al., 2009a). The term

dialogical simply means to participate in dialogue. Key dialogical vehicles identified in these studies were providing sexual abuse information through prevention programs, being asked about sexual abuse, and being prompted to tell (McElvaney et al., 2012; Ungar et al., 2009a).

*Contemporary models of CSA disclosure reflect a social-ecological perspective.* Knowledge on CSA disclosure has been steadily advancing toward a holistic understanding of the complex interplay of individual, familial, contextual, and cultural factors (Alaggia & Kirshenbaum, 2005; Brazelton, 2015; Fontes & Plummer, 2010). Where at one time factors examined and identified were predominantly of intrapersonal factors of child victims, knowledge construction has shifted to fuller social–ecological, person-in-environment explanations (Alaggia, 2010; Collin-Vézina et al., 2015; Easton et al., 2014; Hunter, 2011; Ungar, Tutty, McConnell, Barter, & Fairholm, 2009b). Social–ecological explanations open up more opportunities to intervene in facilitating earlier disclosures. Alaggia (2010) proposes an ecological mapping of what individual, interpersonal, environmental, and contextual influences impede or promote CSA disclosures based on analysis of in-depth interview data of 40 adult survivors. Subsequently, based on a sample of 67 adult survivors, Collin-Vézina, Sablonni, Palmer, and Milne (2015) identified three broad categories, closely aligned with an ecological framework that impede CSA disclosure: (1) barriers from within, (2) barriers in relation to others, and (3) barriers in relation to the social world which can be aligned to intrapersonal, interpersonal, and contextual factors.

A summary of knowledge building using a social–ecological framework follows. Knowledge gained in the intrapersonal domain includes expanded conceptualization of disclosure by building on previous categories of accidental, purposeful, and prompted disclosure to also include behavioral and indirect attempts to tell, intentionally withheld disclosure, and triggered and recovered memories (Alaggia, 2004). Categories of indirect behavioral disclosure patterns have been further verified in follow-up research by Hunter (2011), and through an extensive file review that used Alaggia's (2004) disclosure framework to analyze their data (Collings et al., 2005) for verification.

Interpersonal factors have also emerged in regard to certain family characteristics as disclosure barriers. Families with rigidly fixed gender roles, patriarchal attitudes, power imbalances, other forms of child abuse and domestic violence, chaotic family structure, dysfunctional communication, and social isolation have been found to suppress disclosure (Alaggia & Kirshenbaum, 2005; Collin-Vézina et al., 2015; Fontes & Plummer, 2010). In addition, relationship with perpetrator is a factor whereby research indicates that disclosure is made more difficult when the perpetrator is a family member or close to the family (Dumont, Messerschmitt, Vila, Bohu, & Rey-Salmon, 2014;Easton, 2013; Goodman-Brown et al., 2003; Hershkowitz et al., 2005; Priebe & Svedin, 2008; Schönbucher et al., 2012). This is especially a barrier when the perpetrator lives with the victim (LeClerc & Wortley, 2015).

In terms of environmental factors, one study revealed that neighborhood/community conditions can hinder disclosure when there is lack of school involvement in providing a supportive environment, such as in following up on troubling student behavior (Alaggia, 2010). Additionally, a child victim's anticipation of a negative response to disclosure, especially that they may not be believed by others outside their family such as neighbors or other community members, has shown to deter disclosure (Collin-Vézina et al., 2015).

Cultural factors influencing CSA disclosure have been studied to a much lesser degree. Despite this, a few important studies examining critical sociocultural factors now exist for better understanding CSA disclosure within a cultural context (Brazelton, 2015; Fontes & Plummer, 2010). Among these important contributions, Brazelton's (2015) research has delineated CSA disclosure processes as "shaped by relational, racial, socio-cultural, historical, and developmental factors" (p. 182). In a unique study using culturally focused research literature as data triangulated with clinical case material, culturally based belief systems in many cultures have been found to foster family climates that can silence children from disclosing abuse (Fontes & Plummer, 2010). Taboos about sexuality, patriarchal attitudes, and devaluation of women are among some of the cultural barriers that inhibit disclosure (Fontes & Plummer, 2010).

Clearly, disclosure conceptualizations are being integrated into a social–ecological model of individual and developmental factors, family dynamics, neighborhood, and community context as well as cultural and societal attitudes toward better understanding disclosure barriers and facilitators (Alaggia, 2010), although more data are needed on cultural and contextual factors.

### Age and gender as predictors of disclosure

*Age.* Age is consistently found to be an influential factor in CSA disclosure, making the life stage of the victim/survivor a critical consideration. Studies draw distinctions in age-groups falling into either under or over 18 years of age. Eighteen years of age was the common age cutoff point that investigators chose in order to distinguish child/youth populations from adult samples. Sixteen of the studies drew on samples of children and youth, while the other 15 studies sampled adults over the age of 18, and a further two studies used mixed age-groups (refer to Table 1). Among the child and youth samples, the age ranges spanned from preschool to late adolescence (3–17 years of age), with varying methodological approaches implemented across age cohorts. For younger cohorts, file reviews and secondary data analyses of CSA reports were typically undertaken. Adolescents were most often given surveys. Sometimes children and youth were interviewed as part of administering a survey or as a follow-up (Crisma et al., 2004; Hershkowitz et al., 2005; Ungar et al., 2009b). In the majority of child and adolescent samples, sexual abuse concerns were already flagged to investigative authorities. However, the work of Ungar, Barter, McConnell, Tutty, and Fairholm (2009a, 2009b) is one exception, whereby their survey elicited new disclosures.

Adult studies typically had a mean age between 40 and 50 years. Interviews were the main data collection method with a few exceptions using survey designs (i.e., Easton, 2013; Kogan, 2004; Smith et al., 2000) and case file reviews (i.e., Collings et al., 2005; Goodman-Brown et al., 2003). Results show a clear trend toward increased likelihood of disclosure in older youth, and findings from adult samples showing a preponderance of disclosures in adulthood, with the large majority of participants of adults reporting never having had a sexual abuse complaint filed with investigative authorities as a child or an adolescent (i.e., Hunter, 2011; Gagnier & Collin-Vézina, 2016; Sorsoli, Kia-Keating, & Grossman, 2008; Ungar et al., 2009b).

With children and youth under the ages of 18 distinct patterns emerged. First, accidental detection, rather than purposeful disclosure, is more likely to occur with younger children. For example, in one large-scale study of over 1,737 file reviews, over half of the CSA-related cases were identified through accidental and eyewitness detection (61%), while less than one third were purposeful disclosures initiated by the child victim (Collings et al., 2005). A second pattern which emerged is that rates of disclosure increase with age, especially into adulthood, which is supported by persistent findings of high rates of delayed disclosure reported later in the life course by adult survivors (Collings et al., 2005; Collin-Vézina et al., 2015 ; Easton, 2013; Jonzon & Linblad, 2004; Kogan, 2004; Leclerc & Wortley, 2015; Sorsoli et al., 2008). While gender and relationship with the perpetrator are considerable factors in CSA disclosure, age is consistently a stronger predictor of disclosure (or nondisclosure) (Hershkowitz et al., 2005; Leclerc & Wortley, 2015). Third, younger children who disclose are more likely to do so in an interview situation or other environment that provides prompts or questions about sexual abuse (Hershkowitz et al., 2005; McElvaney, Greene, & Hogan, 2014; Schaeffer et al., 2011), but this trend can also be seen in older youth (Ungar et al., 2009a, 2009b).

*Gender.* A number of studies have recently focused on CSA disclosures with male victims, since males have been an understudied population (Alaggia, 2005; Easton, 2013; Easton et al., 2014; Gagnier & Collin-Vézina, 2016). Most investigations that sampled both sexes show females outweighing male participants. Although women are at double the risk of being subjected to CSA, the ratio of women to men in most disclosure studies has not been representative. This finding may be indicative of male victims more likely delaying disclosing their CSA experiences, leaving male disclosure in child and youth samples underrepresented (Hébert, Tourigny, Cyr, McDuff, & Joly, 2009; Ungar et al., 2009b).

Easton, Saltzman, and Willis (2014) have been developing gender-specific modeling of disclosure examining male disclosures. Their proposed model groups male disclosures into barrier categories as determined by individual factors, interpersonal issues, and factors that are sociopolitical in nature. These authors suggest that predominant gender norms around masculinity reinforce the tendency for male victims of CSA to blame themselves for the abuse, resulting in no disclosure. Male participants in a subsequent study also relayed that gender norms and stereotypes contributed to them concealing the abuse because they were abused by a woman (Gagnier & Collin-Vézina, 2016). In the one study that compared male and female disclosures, investigator found that men's fears of being viewed as homosexual; profound feelings of stigmatization or isolation because of the belief that boys are rarely victimized; and fear of becoming an abuser acted as disclosure barriers. Whereas females felt more conflicted about who was responsible for the abuse and more strongly anticipated being blamed and not believed (Alaggia, 2005).

*Lack of a life-course perspective.* Given that the study of CSA disclosure draws on age-groups ranging from samples of very young children to retrospective studies of adult survivors, with significant developmental considerations, this area of study lacks an intentional cohesive life-course perspective. Most data are derived from either cross-sectional or retrospective designs, with few longitudinal studies. There are a series of sound, yet disconnected, studies focusing on specific age-groups of children and adolescents, along with adult retrospective studies. Thus, the available knowledge base does not allow for a cohesive picture of CSA disclosure processes and pathways over the life course to emerge.

The life-course perspective has long been recommended as a critical lens for the study of child abuse (Browning & Laumann, 1997; Williams, 2003). For example, a life-course perspective has been utilized to understand the immediate- and long-term effects of CSA on the developing child victim (Browning & Laumann, 1997). Further, a life-course perspective is important in terms of examining age of onset of CSA to explain the differential effects of sexual victimization and developmental impacts in terms of understanding their ability to disclose—effects that need to be understood within a developmental context, especially for designing appropriate interventions for disclosure at critical transitions from early childhood through to adolescence and into adulthood. In addition, important "turning points" in life may facilitate disclosures. For example, entry into adulthood given that delayed disclosure occurs more often in adulthood. Alaggia (2004, 2005) found that being in a committed relationship or the birth of children acted as facilitators for some survivors to disclose, especially to their spouses. These significant life events, as contributing to disclosures, bear further examination.

*Summary of barriers and facilitators.* Research over the past 15 years continues to uncover barriers to CSA disclosure at a higher frequency than that of facilitators. As stated previously, this might be the result of sampling methods whereby participants who volunteer for disclosure research may have had more negative disclosure experiences, especially since many report delays in disclosure. The following section outlines the major trends in both barriers and facilitators (see Table 2).

*Barriers.* Age and gender were found to contribute to barriers as covered in Theme 3. Disclosures generally increase with age

**Table 2.** Factors Influencing Child Sexual Abuse Disclosures.

| Barriers | Facilitators |
| --- | --- |
| Age: The younger the child victim, the less likely they will purposefully disclose. | Age: Disclosures increase with age, especially in adulthood. |
| Gender: Males may be less likely to disclose in childhood/adolescence, fear of being seen as homosexual and as a victim, females experience more self blame and anticipation of being blamed and/or not believed | Gender: Slight trend toward females who are older (adolescent) to disclose before adulthood |
| Relationship to perpetrator: If the perpetrator is a family member or in a family like role, disclosure is less likely to happen | Relationship to perpetrator: If the perpetrator is not living with the victim, disclosure rates increase |
| Internal: Shame, self blame, and fear are psychological barriers. In addition, fear of negative consequences on the family and for self safety inhibits disclosure | Dialogical context: Opportunities to disclose through discussion, therapeutic relationship, information sessions on sexuality, and sexual abuse prevention programs |
| Family relations: Families with a patriarchal structure, rigidly fixed gender roles, dysfunctional communication, other forms of abuse (i.e., domestic violence), and isolation inhibit disclosure | Family relations: Supportive parent–child relationship. |
|  | Involvement of others: Eyewitnesses coming forward and reporting; detection through community members, professionals |
| Environmental and cultural context: Lack of discussion about sexuality; passive acceptance that unwanted sexual experiences are inevitable; not wanting to bring shame to the family by admitting sexual abuse; lack of involvement from neighbors, school personnel; and stigma perpetuated by societal perceptions | Environmental and cultural context: Promotion of open discussion of sexuality; community member involvement |

as children gain more developmental capacity, understanding of sexual abuse as victimization, and increased independence. Males are somewhat less likely to disclose, but this is often in interaction with other factors in the environment such as societal attitudes that promote hypermasculinity as desirable, attitudes that perpetuate negative views of boys and men who are victims, and homophobic attitudes (Alaggia, 2010; Easton et al., 2014; Gagnier & Collin-Vézina, 2016).

Victims of intrafamilial abuse when the offender is a parent, caregiver, significant family member, or someone in a family-like role are less likely to disclose immediately or at all in childhood/adolescence because of obvious power differentials and dependency needs (Collings et al., 2005; Dumont et al., 2014; Hershkowitz et al., 2005; Kogan, 2004; Leclerc & Wortley, 2015; Paine & Hansen, 2002; Schaeffer et al., 2011).

Further, the perpetrator residing with their victim(s) increases the likelihood of no disclosure (Leclerc & Wortley, 2015).

Internalized victim-blaming, mechanisms to protect oneself (such as minimizing the impact of the abuse), and developmental immaturity at the onset of abuse constituted internal barriers. Further, shame, self-blame, and fear have been identified as significant factors deterring disclosure (Collin-Vézina et al., 2015; Crisma et al., 2004; Goodman-Brown et al., 2003; Hunter, 2011; Kogan, 2004; McElvaney & Culhane, 2015; McElvaney et al., 2014). However, aspects of shame, self-blame and fear, and have not been fully explored in research. Since these are strong predictors of disclosure suppression, they bear further examination in future research to understand more fully how they operate in disclosure processes.

In terms of interpersonal and environmental factors, family dynamics can play a part in deterring disclosure. As previously mentioned, families characterized by rigidly defined gender roles, patriarchal attitudes that perpetuate power imbalances

between men and women, parents and children, presence of other forms of child abuse and/or domestic violence, chaotic family structure, dysfunctional communication, and social isolation have been found to suppress disclosure (Alaggia & Kirshenbaum, 2005; Collin-Vézina et al., 2015; Fontes & Plummer, 2010). In regard to broader environmental factors, disclosure can be hindered when involved and supportive community members are not available, or not trained in sensitive responses, or when child victims anticipate not being believed by neighbors and other people outside the family (Alaggia, 2010; Collin-Vézina et al., 2015). Further, barriers in relation to the social world were identified as stigmatization, the negative labeling of sexual abuse victims, and taboos surrounding sexuality and talking about sex as driven by cultural norms (Collin-Vézina et al., 2015; Fontes & Plummer, 2010).

Identification of cultural barriers is important recent contribution to understanding disclosure processes—and in particular to the obstacles. Findings related to cultural barriers included themes of children's voices not being heard leading to silencing, the normalization of the sexualization and objectification of girls and women, and the perpetuation of hypermasculinity in men—all acting as barriers in terms of stigma to disclosure (Alaggia, 2005, 2010; Easton et al., 2014). Brazelton (2015) similarly found that lack of discussions about sex, young age at the onset of sexual abuse, therefore not having the language to express what was happening to them, and preserving the family good name by not talking about abuse in the family were also barriers to disclosure.

Finally, it may be the case that more barriers continue to be identified over facilitators of CSA disclosure perhaps because of the methods employed in studies—particularly those drawing on adult populations who delayed disclosure. These samples may not be representative of the overall population of CSA victims, since they may have had more negative disclosure

experiences, consequently more readily identifying barriers. On the other hand, these findings may speak to the actual imbalance between facilitating factors and barriers for disclosure, the latter carrying more weight in the victims/survivors' experiences, thus, explaining the high rates of disclosures delayed until adulthood.

*Facilitators.* Although fewer disclosure facilitators are identified in this review, very important facilitators were nonetheless uncovered—ones that should be noted for professionals in this field of practice. Internal factors that facilitate disclosures include symptoms that become unbearable, getting older with increased developmental efficacy, and realizing that an offence was committed (Collin-Vézina et al., 2015; Crisma et al., 2004; Easton, 2013; Hershkowitz et al. 2007; McElavaney, Greene, & Hogan, 2014; Schaeffer et al., 2011). Circumstantial facilitators are those where the child discloses because there has been evidence provided, eye-witnessing has occurred, and a report has been made. Environmental factors include settings that provide opportunities such as counseling, interviews, information sessions and educational forums/workshops, and prevention programs for children and youth to disclose.

To elaborate, dialogical contexts about CSA for children and youth can provide opportunities for discussion that may facilitate disclosures (Jensen et al., 2005). The research shows creating open dialogue in relationship contexts, to offset the power and influence of the perpetrator, can facilitate earlier disclosure. Among disclosure facilitators is being asked about abuse and given the opportunity to "tell" (McElavaney et al., 2014); workshops on abuse and sexual abuse, in particular, can facilitate disclosures (Ungar et al., 2009b); and using culturally sensitive probes and questions (Fontes & Plummer, 2010). In Gagnier and Collin-Vézina's (2016) study, positive disclosure experiences were described by participants as those where they felt that they had been listened to, were safe, were believed, and were not judged by the person they disclosed to. Further, family members and friends (peers) of the child victim can act as key supports to creating an open relational context and fostering positive responses (Jensen et al., 2005; Priebe & Svedin, 2008; Schönbucher et al., 2012; Ungar et al., 2009b). In particular, as children grow older, they are more likely to disclose to a peer, as shown in a number of studies, and this is an important reality for counselors and educators to be aware of (Dumont et al., 2014; Kogan, 2004; Schönbucher et al., 2012; Ungar et al., 2009b).

## Discussion

Through examination of 33 studies published since the year 2000, this review identified five distinct themes regarding CSA disclosure: (1) Disclosure is best viewed as an iterative, interactive process rather than a discrete event done within a relational context; (2) contemporary models reflect a social–ecological, person-in-environment framework for understanding the complex interplay of individual, familial, contextual, and cultural factors involved in CSA disclosure;

(3) age and gender are significant disclosure factors; (4) there is a lack of a life-course perspective; and (5) barriers to disclosure continue to outweigh facilitators. Based on these themes, a number of conclusions are drawn from this review. First, disclosure as a process is emphasized throughout contemporary research. Advances have been made in understanding these complex processes. However, the disclosure process over time—for example, how the first detection of CSA or attempts to disclose in childhood impact later disclosures—are not well understood. This is the result of the absence of a cohesive life-course perspective in investigations, although age consistently surfaces as significantly influencing CSA disclosure. Using a life-course perspective through the use of longitudinal studies is recommended.

The use of varied methodological designs, depending on the developmental stage of the victims/survivors, influences the data generated and subsequent findings. For example, most studies on children and youth are based on file reviews of cases that have been brought to the attention of authorities, or surveys, with only a few studies using interviewing of younger children. Therefore, there is less information available on process issues with children and youth. In contrast, research on adult populations largely favors the use of qualitative interview methods for retrospective inquiry producing important process findings. In addition, investigations have not yet captured the disclosure experiences of adults in the "emerging adult" stage given that adult studies have failed to recognized that the age range of 18–24, which is now considered a developmental phase defined by neurobiological developmental uniqueness. As well, late adulthood has not been given attention as shown by the absence of participants representing this age-group in current research (70+). With a swelling geriatric population in North America, issues of historic CSA can be expected to surface and, with that, new disclosures. This trend is also anticipated due to attitudinal shifts that have presumably occurred over the last two generations about revealing such traumas and changing views about discussing sexual victimization.

Interview guides used in a number of studies intentionally probed for facilitators, producing notable findings. For example, one such finding focuses on the importance of creating a contextually supportive environment to promote disclosure across the life course. These include developing therapeutic relational contexts for disclosure by providing information about sexuality, sexual abuse, prevention programming, and by asking directly. Disclosures to professionals are positive outcomes of how therapeutic contexts work; however, for forensic purposes prompting such disclosures would be viewed as problematic in legal settings, seriously compromising testimonies for trial proceedings. This is one example that speaks to the structural barriers victims and survivors run up against time and time again. Facilitators that show evidence to promote disclosure in one domain (therapeutic) are seen to work against CSA survivors in another domain—such as legal settings when perpetrators face prosecution. Defense attorneys will use this as evidence that the disclosure was prompted, and therefore the disclosure is potentially seen as not credible. Broadcasting of

the frequency of acquitted cases or rulings in favor of the perpetrator through media outlets, often sensationalized, become a further compounding barrier. Given the review findings, we conclude that barriers and facilitators to CSA disclosures are nuanced and clearly embedded within intrapersonal, interpersonal, environmental, contextual, and cultural domains—often interlocked in complex ways.

## Limitations

Although comprehensive in nature with its life-course coverage, this review may be limited by its qualitative, thematic focus rather than providing an evaluative, quantitative accounting of CSA disclosures. However, because of the recent focus on disclosure processes, the authors chose a suitably compatible approach—qualitative in nature. As well, a traditional checklist approach in rating the studies was not employed for interrater reliability, since two of the authors hold expertise in CSA disclosure research and are well versed with the literature. This expertise, and through closely following a systematic review framework (Kiteley & Stogdon, 2014), assures that a thorough adjudication of the research literature was completed.

## Implications for Research and Practice

These review findings have implications that can be useful in guiding future research and practice:

- Solid strides are being made in the use of a social–ecological framework to underpin investigations in the CSA disclosure investigations. Research efforts and practice considerations should continue in this vein. Investigating environmental factors and contextual and cultural forces is understudied, necessitating more research in these areas to more fully fill out understanding of CSA disclosure from a social–ecological perspective.
- There is good evidence that CSA disclosures are more likely to occur in a dialogical context—formal helping relationships but as well as other relationships such as peers and trusted adults. Providing information and education on topics of sexuality in general, and sexual abuse specifically, can help children and youth to disclose. Raising awareness and prevention programs can promote disclosures of sexual violence committed against children and youth.
- Goals of therapeutically supported disclosures (i.e., through therapy) may need to take precedence over forensic approaches, if well-being of child victims and adult survivors is to be made paramount. Legal processes may act to facilitate disclosures but can also act as barriers because of the negative outcomes experienced in the court process.
- Practitioners need to keep in mind that the legal system is lagging far behind in knowledge uptake of recent evidence on CSA disclosures so that victims and survivors continue to be systemically and structurally disadvantaged in legal proceedings.
- Health-care practitioners (i.e., child abuse pediatricians, family practice doctors, clinical nurse specialists, and public health nurses) should be made aware of the evidence in the CSA disclosure literature to create environments for facilitating therapeutic disclosures.
- Given that age is a stable predictor of disclosure of CSA, more studies are needed that make use of a life-course perspective. More longitudinal studies are needed to better identify trends over different life stages.
- The emerging young adult as a developmental age group needs specific investigation. Neuroscience research has established that ages 18–24 is a distinct developmental phase. Late adulthood is another life stage that deserves to be researched.
- Gender needs to be more fully investigated in relation to impact on disclosure. Awareness that boys and girls have unique challenges and barriers in disclosing CSA should be paramount for practitioners.
- Intervention planning should take note that disclosures increase when perpetrators no longer reside with victims, and this finding should be heeded by policy and law makers.
- Shame, self-blame, and fear are intrapersonal factors that persistently emerge as barriers to CSA disclosures and warrant more research to understand how to redress these barriers for earlier disclosures.

## Conclusion

There are still a substantial number of children and youth who are subjected to sexual abuse, despite preventative efforts. Just as concerning is the fact that many victims continue to suffer in silence as evidenced by the high numbers of delayed disclosure. These hidden cases should not be overlooked, and these victims should not be forgotten. Despite significant progress in bringing the issue of CSA to the forefront, improving facilitation of disclosure and increasing positive influences on disclosure processes are still critical in order to protect current and future generations of children and youth from the grave effects of sexual violence. Further, the focus should not be simply on strengthening and shoring up intrapersonal resources of victims to disclose but rather to change environmental conditions to create a more supportive and safer context for CSA victims and survivors to disclose.

### Declaration of Conflicting Interests

The author(s) declared no potential conflicts of interest with respect to the research, authorship, and/or publication of this article.

### Funding

The author(s) received no financial support for the research, authorship, and/or publication of this article.

# References

Alaggia, R. (2004). Many ways of telling: Expanding conceptualiza tions of child sexual abuse disclosure. *Child Abuse & Neglect*, *28*, 1213 1227.

Alaggia, R. (2005). Disclosing the trauma of child sexual abuse: A gender analysis. *Journal of Loss and Trauma*, *10*, 453 470.

Alaggia, R. (2010). An ecological analysis of child sexual abuse dis closure: Considerations for child and adolescent mental health. *Journal of the Canadian Academy of Child and Adolescent Psy chiatry Journal De l'Académie Canadienne De Psychiatrie De l'Enfant Et De l'Adolescent*, *19*, 32 39.

Alaggia, R., & Kirshenbaum, S. (2005). Speaking the unspeakable: Exploring the impact of family dynamics on child sexual abuse disclosures. *Families in Society*, *86*, 227 234.

Braun, V., & Clarke, V. (2006). Using thematic analysis in psychology. *Qualitative Research in Psychology*, *3*, 93. doi:10.1191/1478088706qp063oa

Brazelton, J. F. (2015). The secret storm: Exploring the disclosure process of African American women survivors of child sexual abuse across the life course. *Traumatology: An International Jour nal*, *21*, 181 187.

Browning, C. R., & Laumann, E. O. (1997). Sexual contact between children and adults: A life course perspective. *American Socio logical Review*, *62*, 540 560.

Collings, S. J., Griffiths, S., & Kumalo, M. (2005). Patterns of disclo sure in child sexual abuse. *South African Journal of Psychology*, *35*, 270 285.

Collin Vézina, D., Sablonni, D. L., Palmer, A. M., & Milne, L. (2015). A preliminary mapping of individual, relational, and social factors that impede disclosure of childhood sexual abuse. *Child Abuse & Neglect*, *43*, 123 134. doi:10.1016/j.chiabu.2015.03.010

Crisma, M., Bascelli, E., Paci, D., & Romito, P. (2004). Adolescents who experienced sexual abuse: Fears, needs and impediments to disclosure. *Child Abuse & Neglect*, *28*, 1035 1048.

Dumont, M., Messerschmitt, P., Vila, G., Bohu, D., & Rey Salmon, C. (2014). Le processus de révélation dans les agressions sexuelles intrafamiliales et extrafamiliales sur mineurs. *Annales Médico Psychologiques*, *172*, 426 431. doi:10.1016/j.amp.2012.06.024

Easton, S. D. (2013). Disclosure of child sexual abuse among adult male survivors. *Clinical Social Work Journal*, *41*, 344 355. doi:10.1007/s10615 012 0420 3

Easton, S. D., Saltzman, L. Y., & Willis, D. G. (2014). "Would you tell under circumstances like that?": Barriers to disclosure of child sexual abuse for men. *Psychology of Men & Masculinity*, *15*, 460 469.

Fallon, B., Van Wert, M., Trocmé, N., MacLaurin, B., Sinha, V., Lefebvre, R., . . . Goel, S. (2015). *Ontario Incidence Study of Reported Child Abuse and Neglect 2013* (OIS 2013). Toronto, ON: Child Welfare Research Portal.

Finkelhor, D., Shattuck, A., Turner, H. A., & Hamby, S. L. (2014). Trends in children's exposure to violence, 2003 to 2011. *JAMA Pediatrics*, *168*, 540 546. doi:10.1001/jamapediatrics.2013.5296

Fontes, L. A., & Plummer, C. (2010). Cultural issues in disclosures of child sexual abuse. *Journal of Child Sexual Abuse*, *19*, 491 518.

Gagnier, C., & Collin Vézina, D. (2016). The disclosure experiences of male child sexual abuse survivors. *Journal of Child Sexual Abuse*, *25*, 221 241.

Goodman Brown, T. B., Edelstein, R. S., Goodman, G. S., Jones, D., & Gordon, D. S. (2003). Why children tell: A model of children's disclosure of sexual abuse. *Child Abuse & Neglect*, *27*, 525 540.

Hébert, M., Tourigny, M., Cyr, M., McDuff, P., & Joly, J. (2009). Prevalence of childhood sexual abuse and timing of disclosure in a representative sample of adults from Quebec. *Canadian Journal of Psychiatry*, *54*, 631 636. Retrieved from http://search.proquest.com/docview/222860811?accountid=14771

Hershkowitz, I., Horowitz, D., & Lamb, M. E. (2005). Trends in children's disclosure of abuse in Israel: A national study. *Child Abuse & Neglect*, *29*, 1203 1214.

Hershkowitz, I., Lanes, O., & Lamb, M. E. (2007). Exploring the disclosure of child sexual abuse with alleged victims and their parents. *Child Abuse & Neglect*, *31*, 111 123.

Hunter, S. V. (2011). Disclosure of child sexual abuse as a life long process: Implications for health professionals. *The Australian and New Zealand Journal of Family Therapy*, *32*, 159 172.

Jensen, T. K., Gulbrandsen, W., Mossige, S., Reichelt, S., & Tjersland, O. A. (2005). Reporting possible sexual abuse: A qualitative study on children's perspectives and the context for disclosure. *Child Abuse & Neglect*, *29*, 1395 1413.

Jillian, B., Cotter, A., & Perreault, S. (2014). *Police reported crime statistics in Canada, 2013* (Catalogue number 85 002 X). Ottawa, ON: Statistics Canada.

Jones, D. P. H. (2000). Editorial: Disclosure of child sexual abuse. *Child Abuse & Neglect*, *24*, 269 271.

Jonzon, E., & Lindbald, F. (2004). Disclosure, reactions, and social support: Findings from a sample of adult victims of child sexual abuse. *Child Maltreatment*, *9*, 190 200.

Kiteley, R., & Stogdon, C. (2014). *Literature reviews in social work*. London, England: Sage.

Kogan, S. (2004). Disclosing unwanted sexual experiences: Results from a national sample of adolescent women. *Child Abuse & Neglect*, *28*, 147 165.

Leclerc, B., & Wortley, R. (2015). Predictors of victim disclosure in child sexual abuse: Additional evidence from a sample of incar cerated adult sex offenders. *Child Abuse & Neglect*, *43*, 104 111.

London, K., Bruck, M., Ceci, S. J., & Shuman, D. W. (2005). Disclo sure of child sexual abuse: What does the research tell us about the ways that children tell? *Psychology, Public Policy, and Law*, *11*, 194 226.

McElvaney, R. (2015). Disclosure of child sexual abuse: Delays, non disclosure and partial Disclosure. What the research tells us and implications for practice. *Child Abuse Review*, *24*, 159 169.

McElvaney, R., & Culhane, M. (2015). A retrospective analysis of children's assessment reports: What helps children tell? *Child Abuse Review*. doi:10.1002/car.2390.

McElvaney, R., Greene, S., & Hogan, D. (2012). Containing the secret of child sexual abuse. *Journal of Interpersonal Violence*, *27*, 1155 1175.

McElvaney, R., Greene, S., & Hogan, D. (2014). To tell or not to tell? Factors influencing young people's informal disclosures of child sexual abuse. *Journal of Interpersonal Violence*, *29*, 928 947.

Maier, T., Mohler Kuo, M., Landholt, M. A., Schnyder, U., & Jud, A. (2013). The tip of the iceberg. Incidence of disclosed cases of child sexual abuse in Switzerland: Results from a Nationwide Agency Survey. *International Journal of Public Health*, *58*, 875 883.

Paine, M. L., & Hansen, D. J. (2002). Factors influencing children to self disclose sexual abuse. *Clinical Psychology Review*, *22*, 271 295. doi:10.1016/S0272 7358(01)00091 5

Pereda, N., Guilera, G., Forns, M., & Gómez Benito, J. (2009). The international epidemiology of child sexual abuse: A continuation of Finkelhor (1994). *Child Abuse & Neglect*, *33*, 331. Retrieved from http://search.proquest.com/docview/230158315?accountid=14771

Priebe, G., & Svedin, C. G. (2008). Child sexual abuse is largely hidden from the adult society: An epidemiological study of ado lescents' disclosures. *Child Abuse & Neglect*, *32*, 1095 1108.

Reitsema, A. M., & Grietens, H. (2015). Is anybody listening? The literature on the dialogical process of child sexual abuse disclosure reviewed. *Trauma Violence Abuse*. doi:10.1177/152483801 5584368

Rosenthal, G., & Fisher Rosenthal, W. (2004). The analysis of narra tive biographical interviews in U Flick. In E. von Kardorff & I. Steinke (Eds.), *A Companion to Qualitative Research* (pp. 259 265). London, UK: Sage.

Schaeffer, P., Leventhal, J. M., & Asnes, A. G. (2011). Children's disclosures of sexual abuse: Learning from direct inquiry. *Child Abuse & Neglect*, *35*, 343 352. doi:10.1016/j.chiabu.2011.01.014

Schönbucher, V., Maier, T., Mohler Kuo, M., Schnyder, U., & Land olt, M. A. (2012). Disclosure of child sexual abuse by adolescents: A qualitative in depth study. *Journal of Interpersonal Violence*, *27*, 3486 3513. doi:10.1177/0886260512445380

Smith, D. W., Letourneau, E. J., Saunders, B. E., Kilpatrick, D. G., Resnick, H. S., & Best, C. L. (2000). Delay in disclosure of child hood rape: Results from a national survey. *Child Abuse & Neglect*, *24*, 273 287. Retrieved from http://search.proquest.com/docview/70933344?accountid=14771

Sorsoli, L., Kia Keating, M., & Grossman, F. K. (2008). "I keep that hush hush": Male survivors of sexual abuse and the challenges of disclosure. *Journal of Counseling Psychology*, *55*, 333 345. doi: 10.1037/0022 0167.55.3.333

Staller, K. M., & Nelson Gardell, D. (2005). "A burden in your heart": Lessons of disclosure from female preadolescent and adolescent survivors of sexual abuse. *Child Abuse & Neglect*, *29*, 1415 1432.

Statistics Canada. (2013). *Police reported crime statistics in Canada, 2012* (Catalogue number 85 002 X). Retrieved from the Statistics Canada website http://www.statcan.gc.ca/pub/85 002 x/2013001/article/11854 eng.htm#n2

Stoltenborgh, M., van IJzendoorn, M. H., Euser, E. M., & Bakermans Kranenburg, M. (2011). A global perspective on child sexual abuse: Meta analysis of prevalence around the world. *Child Mal treatment*, *16*, 79 101. doi:10.1177/1077559511403920

Summit, R. C. (1983). The sexual abuse accommodation syndrome. *Child Abuse & Neglect*, *7*, 177 193.

Tener, D., & Murphy, S. (2015). Adult disclosure of child sexual abuse. *Trauma, Violence & Abuse*, *16*, 391 400.

Trocmé, N., Fallon, B., MacLaurin, B., Daciuk, J., Felstiner, C., Black, T., . . . Cloutier, R. (2005). *Canadian incidence study of reported child abuse and neglect 2003: Major findings*. Ottawa: Minister of Public Works and Government Services Canada.

Trocmé, N., Fallon, B., MacLaurin, B., Sinha, V., Black, T., Fast, E., . . . Holroyd, J. (2008). *Characteristics of substantiated maltreatment. Canadian incidence study of reported child abuse and neglect: Major findings* (Chapter 4). Retrieved from http://www.phac aspc.gc.ca/cm vee/public eng.php

Ungar, M., Barter, K., McConnell, S. M., Tutty, L. M., & Fairholm, J. (2009a). Patterns of abuse disclosure among youth. *Qualitative Social Work*, *8*, 341 356.

Ungar, M., Tutty, L. M., McConnell, S., Barter, K., & Fairholm, J. (2009b). What Canadian youth tell us about disclosing abuse. *Child Abuse & Neglect*, *33*, 699 708.

Williams, L. M. (2003). Understanding child abuse and violence against women: A life course perspective. *Journal of Interpersonal Violence*, *18*, 441 451.

## Author Biographies

**Ramona Alaggia**, MSW, PhD, is an associate professor in social work and the Factor Inwentash Chair in Children's Mental Health at the University of Toronto. Her teaching and research focuses on gender and violence, sexual abuse disclosures, domestic violence exposure, and resilience processes.

**Delphine Collin-Vézina**, PhD, is an associate professor for School of Social Work, McGill University and director for Centre for Research on Children and Families. She holds the Nicolas Steinmetz and Gilles Julien Chair in Social Pediatrics in Community and the Canada Research Chair (Tier II) in Child Welfare. Her work focuses on research and clinical topics related to child maltreatment, child sexual abuse, and trauma.

**Rusan Lateef**, MSW, is a social worker employed in the criminal justice system with adult male offenders in Ontario, Canada. She specializes in the intersection of health and mental health, child sexual abuse disclosures, and she is a researcher on the "Make Resilience Matter" project examining childhood exposure to domestic violence with Dr. Alaggia at the Factor Inwentash Faculty of Social Work, University of Toronto.

Case 1:20-cr-00330-AJN   Document 397-2   Filed 10/29/21   Page 25 of 45

Child Abuse Review Vol. **24**: 159–169 (2015)
Published online 9 May 2015 in Wiley Online Library
(wileyonlinelibrary.com) DOI: 10.1002/car.2280

# Disclosure of Child Sexual Abuse: Delays, Non-disclosure and Partial Disclosure. What the Research Tells Us and Implications for Practice

**Rosaleen McElvaney**
School of Nursing and Human
Sciences, Dublin City University,
Dublin, Ireland

This paper reviews the research on disclosure of child sexual abuse with specific reference to delays in disclosing, non-disclosure and partial disclosure of experiences of child sexual abuse. Findings from large-scale national probability studies highlight the prevalence of both non-disclosure and delays in disclosure, while findings from small-scale qualitative studies portray the complexity, diversity and individuality of experiences. The possible explanations regarding why children are reluctant to disclose such experiences have significant implications for addressing the issue of child sexual abuse from the perspectives of child protection, legal and therapeutic professionals. The importance of understanding the dynamics of disclosure, in particular the needs of young people to maintain control over the disclosure process, the important role that peers play in this process, the responses of adults in both informal and formal networks, and the opportunities to tell, is key to helping young people speak more promptly about their experiences of sexual abuse. Copyright © 2013 John Wiley & Sons, Ltd.

'The importance of understanding the dynamics of disclosure'

KEY PRACTITIONER MESSAGES:
- Children typically delay disclosing experiences of abuse.
- Asking children questions about their wellbeing gives them the opportunity to tell when they are ready.
- The challenge is to find the right questions at the right time.
- Peers can be the right people to ask these questions.
- Adolescents need to know about how to ask and what to do if someone tells.

'Adolescents need to know about how to ask and what to do if someone tells'

KEY WORDS:  child sex abuse; disclosure; research to practice

A n issue of increasing concern in recent years is the phenomenon of delayed disclosure of childhood sexual abuse and the need to understand the process of how children and adults disclose their experiences of child sexual abuse, given the implications for child protection, social justice and

*Correspondence to: Rosaleen McElvaney, School of Nursing and Human Sciences, Dublin City University, Glasnevin, Dublin 9, Ireland. E-mail: rosaleen.mcelvaney@dcu.ie

Copyright © 2013 John Wiley & Sons, Ltd.

Accepted: 17 February 2013

**'This paper reviews the research on disclosure patterns of childhood sexual abuse'**

mental health outcomes. This paper reviews the research on disclosure patterns of childhood sexual abuse, specifically delays in disclosure, non-disclosure (as evident through adult retrospective studies) and partial disclosures, and discusses implications for practice. Literature searches of the online databases PSYCINFO and Social Sciences Citation Index, in addition to manual searches of texts published since 2000, were conducted using the search terms 'child sexual abuse', 'sex abuse' and 'disclosure'.

The research to date on disclosure patterns is based on two sampling methodologies – studies of adults reporting retrospective experiences and studies of children. The former group of studies has the benefit of drawing on large-scale national probability samples which can be considered to be representative of the general population. The latter group with some small exceptions (predominantly adolescent studies) uses samples of young people who have disclosed sexual abuse but would not be considered as representative of all children who have been abused:

'children who decide to tell someone about being sexually abused and whose cases therefore come to court are not representative of sexually abused children in general' (Olafson and Lederman, 2006, p. 29).

### Patterns of Disclosure: Delays and Non-disclosure

**'Most people who experience sexual abuse in childhood do not disclose this abuse until adulthood'**

There is consensus in the research literature that most people who experience sexual abuse in childhood do not disclose this abuse until adulthood, and when disclosure does occur in childhood, significant delays are common. Table 1 summarises two large-scale studies to highlight the extent of delays in disclosure and the percentage of those who did not disclose to anyone prior to the study.

Kogan (2004) examined the timing of disclosure of unwanted sexual experiences in childhood or adolescence in a sub-sample (n = 263 adolescent women, aged 12 to 17) of the National Survey of Adolescents (Kilpatrick and Saunders, 1995) in the USA – a nationally representative study. Kogan's results can be summarised as follows: immediate disclosure (within 1 month) 43 per cent, delayed disclosure (less than 1 year) 31 per cent and non-disclosure (disclosed only during the survey) 26 per cent. Smith and colleagues (2000) examined a sub-sample (n = 288) of the National Women's Study in the USA (Resnick et al., 1993, cited in Smith et al., 2000) who had reported a childhood rape prior to the age of 18. Smith et al.'s findings can be summarised as follows: immediate disclosure (within 1 month) 27 per cent, delayed disclosure (more than a year) 58 per cent and non-disclosure (survey only) 28 per cent. Those who had never disclosed prior to the survey constitute comparable proportions in these two studies while the rates for immediate

**Table 1.** Patterns of disclosure  delay and non-disclosure

|  | Kogan (2004) (n  263 adolescents) | Smith et al. (2000) (n  288 adults) |
|---|---|---|
| Told within 24 hours | 24% | 18% |
| Told within 1 month | 19% | 9% |
| Told within 1 year | 12% | 11% |
| Delayed telling more than 1 year | 19% | 47% |
| Never told before survey | 26% | 28% |

disclosure are higher in the adolescent study than in the adult study, a reassuring finding given the increased awareness of sexual abuse in society during the past 20 years.

Goodman-Brown and colleagues (2003) examined USA district attorney files of 218 children. Their categories were slightly different from the previous two studies but in summary, immediate disclosers (within 1 month) constituted 64 per cent of the sample while 29 per cent disclosed within six months. This study is unusual insofar as the sample studied had reported their experience of abuse to the authorities and a prosecution was in progress. Goodman-Brown *et al*. also pointed out that families who participated in this study were more likely to represent those children who experienced abuse by someone outside the family. Research has found that delays in disclosure are longer for those abused within the family (Sjoberg and Lindblad, 2002; Goodman-Brown *et al*., 2003; Kogan, 2004; Hershkowitz *et al*., 2005). Therefore, children who disclose more promptly may be overrepresented in legal samples.

In Sweden, Priebe and Svedin (2008) conducted a national survey of 4339 adolescents, of whom 1962 reported some form of sexual abuse (65% of girls and 23% of boys). Details of the time lapse in disclosing were not available from this study. However, of those who had disclosed and answered the questions on disclosure (n = 1493), 59.5 per cent had told no-one of their experiences prior to the survey. Of those who did disclose, 80.5 per cent mentioned a 'friend of my own age' as the only person who they had told. In this study, 6.8 per cent had reported their experiences to the social authorities or police. A further Swedish study of 122 women who had experienced childhood sexual abuse (Jonson and Lindblad, 2004) found that 32 per cent disclosed during childhood (before the age of 18) while the majority told in adulthood (68%). The delay was up to 49 years, with an average of 21 years ($SD$ = 12.9). Of those who told in childhood, 59 per cent told only one person. In Ireland, the SAVI study (n = 3118, McGee *et al*., 2002) found that 47 per cent of those respondents who had experienced some form of sexual assault prior to age 17 had told no-one of this experience until the survey. McElvaney (2002) investigated delay in a legal sample of ten adults who had made formal complaints of childhood sexual abuse in Ireland and found delays ranging from 20 years to 50 years.

Studies of children in the context of forensic/investigative interviews where children are interviewed by professionals due to concerns that the child has been sexually abused also point to high non-disclosure rates, particularly striking in cases where there is corroborative evidence that abuse has occurred – medical evidence (Lyon, 2007), or confessions from the abuser or videotaped evidence/witness reports (Sjoberg and Lindblad, 2002). Lyon (2007) reported his findings from a review of studies published between 1965 and 1993 of children diagnosed with gonorrhoea where the average disclosure rate among 579 children was 43 per cent (n = 250). In a study where the evidence for the abuse was available on videotape, children have denied abuse when interviewed by the police (Sjoberg and Lindblad, 2002).

In summary, significant numbers of children do not disclose experiences of sexual abuse until adulthood and adult survey results suggest that significant

'The rates for immediate disclosure are lower in the adolescent study than in the adult study'

'Children who disclose more promptly may be overrepresented in legal samples'

'Delays ranging from 20 years to 50 years'

Copyright © 2013 John Wiley & Sons, Ltd.

*McElvaney*

**'High numbers of respondents disclosing to researchers for the first time'**

proportions of adults have never disclosed such abuse, as evidenced by the high numbers of respondents disclosing to researchers for the first time.

**Patterns of Disclosure – Partial Disclosure**

Information on how children disclose over time can be obtained from studies of children who participated in forensic/investigative interviews where children are interviewed by professionals due to concerns that the child has been sexually abused. The issue of partial disclosures was highlighted by earlier studies such as those by DeVoe and Faller (1999) of five- to ten-year olds (i.e. making detailed informal disclosures that were not replicated in formal interviews) and Elliott and Briere (1994) of children aged eight to 15 years (i.e. disclosing only partial information until confronted with external evidence that led to more complete disclosures).

More recently, investigators have examined the role of the interviewer and questioning styles in the forensic interview and how this impacts on children's disclosures and the level of detail provided in interview. Hershkowitz *et al.* (2006) compared tapes of interviews with children who disclosed sexual abuse and those who did not (but about whom there was 'substantial' reason to believe that they had been abused). They found that interviewers behaved differently with the two groups, using different types of prompts with children who presented as somewhat uncooperative, offered fewer details and gave more uninformative responses at the beginning of the interview. It would appear that interviewers responded to less communicative children by increasing the proportion of closed questions which in turn led to children being less forthcoming. Lamb *et al.* (2002) have found that the use of a protocol that emphasises the use of prompts that elicit free narrative (e.g. 'tell me about that') as compared with closed questions (those requiring a yes/no response) has resulted in more detail and more accuracy in children's accounts.

**'They found that interviewers behaved differently with the two groups'**

Although few studies exist that examine the phenomenon of disclosure in informal settings (when disclosure is made to a friend or family member), some qualitative studies have described this process. McElvaney (2008) quoted one teenage girl who described hinting to her mother prior to disclosing the experience: 'I didn't tell her what happened but I was saying things that made her think it made her think that it happened but I didn't tell her' (p. 127). A parent described how her teenage son told her over a period of days, keeping the most difficult parts of the story until last:

**'A parent described how her teenage son told her over a period of days'**

'He came out with like it came out over two or three days so you know. . .he'd say well I've something else to tell you. . . the bad stuff last. . . what hurt him most and what he's saying what hurt him most' (p. 92)

And finally, one young person described how she told her social worker:

'I couldn't tell her most things but I just gave things to her to read. . . I told her at first I told her bits of it and em then just the others. I finished writing and then I gave them to her. . . later I told her that it was the father as well.' (p. 93)

This young person had been abused by both a father and son in a family with whom she was staying.

Copyright © 2013 John Wiley & Sons, Ltd.

In reviewing the literature on this subject, London and colleagues (2005) noted, 'when children do disclose, it often takes them a long time to do so' (p. 204).

## Reasons for Patterns of Delay, Partial Disclosure and Non-disclosure

There are many influences on disclosure that have been identified in the research literature to help explain why it is that children delay disclosure, are reluctant to disclose, provide details of their experiences over time or do not disclose at all. Age has been identified as a significant predictor of disclosure in that younger children are less likely to disclose than older children. Children who are abused by a family member are less likely to disclose and more likely to delay disclosure than those abused by someone outside the family (Smith *et al.*, 2000; Goodman-Brown *et al.*, 2003; Kogan, 2004). Children who do disclose during forensic interviews compared to children who do not disclose in such contexts (yet concerns remain that they have been abused) are more likely to have parents (particularly mothers) who are more supportive (Lawson and Chaffin, 1992). In Priebe and Svedin's (2008) study of young people, parental bonding (positive relationship with parent who was not overprotective) was identified as the most significant predictor of disclosure for both boys and girls. However, close relationships can also act as an inhibitor to disclosure. McElvaney (2008) found that many young people in her study were reluctant to disclose due to concerns of upsetting their parents while others were concerned about the consequences for others of their disclosure. One 13-year-old girl described her concern that if she told, her uncle would go to jail and her small cousins would be left without a father:

> 'I didn't want them to grow up with no Dad and just looking at . . . their other little friends having their Dad holding their hand I felt like I was taking their Dad away from them' (p. 130)

Gender has been found to influence disclosure in that boys appear to be more reluctant to disclose than girls (Goodman-Brown *et al.*, 2003; Hershkowitz *et al.*, 2005; Ungar *et al.*, 2009a). Mental health difficulties on the part of the child have also been found to be relevant, particularly when children experience dissociative symptoms or other post-traumatic stress symptomatology (Priebe and Svedin, 2008).

Some studies have found that the severity of abuse (e.g. penetrative abuse) predicts earlier disclosure while other studies have found no relationship between different types of abuse and disclosure timing. Similarly, the relationship between the duration of abuse – one-off incidents of abuse compared with abuse that takes place over a significant period of time – and timely disclosure has been investigated with mixed findings. Fear of the consequences of disclosure has been identified as a predictor of delayed disclosure and this in turn is associated with the age of the child (Goodman-Brown *et al.*, 2003). Older children are more cognitively competent in terms of being able to reflect on and anticipate possible reactions to their disclosure. This can act then as an inhibitor to disclosure, although as noted above, most studies have found that older children are more likely to disclose than younger children. Fears of not being believed have been described by young people as inhibiting their disclosure and these fears are often

**"When children do disclose, it often takes them a long time to do so"**

**'Younger children are less likely to disclose than older children'**

**'Many young people in her study were reluctant to disclose due to concerns of upsetting their parents'**

**'Fear of the consequences of disclosure has been identified as a predictor of delayed disclosure'**

Copyright © 2013 John Wiley & Sons, Ltd.

justified. Hershkowitz *et al*. (2007) interviewed children about their initial disclosures prior to formal interview and 50 per cent of the sample (n = 30) reported feeling afraid or ashamed of their parents' reaction. The authors reported that parents did show a tendency to blame their children and react angrily to the disclosure.

Recent research has highlighted the need for children to be asked direct questions to facilitate their disclosure. Of those children who did disclose, significant proportions disclosed following prompts rather than it being initiated by the child (Kogan, 2004). Qualitative studies drawing on interviews with children that focus on the disclosure process are important in investigating the precise circumstances that led to disclosures for children. McElvaney (2008) found that parents' questioning of children was prompted by their concern about the young person's emotional distress. On occasion, young people were communicating that something was not right in their world but were not able to articulate this verbally. Signs of psychological distress were, however, evident and questions targeted at the reasons for this distress were identified by McElvaney as a factor that helped young people to tell. Thus, many children may not have told about their experiences of abuse because they were not asked. McGee *et al*. (2002) followed up a sample of their respondents who had disclosed childhood abuse for the first time in their survey. When asked why they had not disclosed prior to the survey, many respondents noted that it was because they had not been asked. Increasingly, research studies are finding that significant proportions of disclosure have been prompted by questions by caregivers, friends or others in the child's educational and social milieu that in themselves provide an opportunity for the young person to tell (Jensen *et al*., 2005; Hershkowitz *et al*., 2007; McElvaney *et al*., 2012).

Finally, some children need time to tell. Mudaly and Goddard (2006) quote a 13-year-old girl: 'she (mother) helped by not making me, not rushing me to get it out, which, um, I think it's a really stupid idea to make kids get it out A.S.A.P.' (p. 91).

> 'Investigating the precise circumstances that led to disclosures for children'

> 'Significant proportions of disclosure have been prompted by questions by caregivers, friends or others'

**Implications for Practice**

The consensus in the research literature at the present time is that disclosure is multi-determined, influenced by a complex range of factors that may influence each child in a different way. Large-scale national probability studies confirm that non-disclosure and delays in disclosure are significant problems facing society and in particular for those professionals tasked with safeguarding the wellbeing of children. Children's fears and anxieties in relation to telling need to be understood and contained by those in their environment so that early disclosure can be encouraged and facilitated.

The implications of these findings can be considered in interrelated contexts: the legal context where action can only be taken if the child is able to give a clear, credible account of his/her experiences; child protection and therapeutic contexts where a comprehensive account is required to enable child protection professionals to intervene and where the psychological sequelae can be addressed to minimise the long-term impact of the experiences; and family and community contexts where early disclosure needs to be encouraged, and

> 'The implications of these findings can be considered in interrelated contexts'

Copyright © 2013 John Wiley & Sons, Ltd.

other family issues addressed in the aftermath of disclosure and where peers play an important role.

Studies have confirmed the importance of professionals asking children and young people in a sensitive, open manner about possible experiences of abuse using non-leading questioning styles to minimise inaccurate accounts or contaminate children's narratives. It is clearly important for professionals to remain open to the possibility of abuse and further disclosure. It is equally important for professionals to be able to avoid persisting with questioning those children who are 'reluctant disclosers'. Similarly, professionals engaged with children in therapeutic work need to be open to the possibility of both initial and further disclosures.

Contradiction in witness statements is a well-known feature of false statements and giving additional detail to original formal statements can be interpreted within child protection, therapeutic and legal contexts as a contradiction of an earlier account. Listening to children's accounts of their experiences of disclosure helps us understand why it is that disclosure can be delayed and that when they do feel ready to tell this is not an 'all or nothing' decision. As one young person in Staller and Nelson-Gardell's (2005) study noted, 'it's never finished, never' p. 1426. This understanding in turn helps us identify those circumstances and reactions that may encourage the child to disclose.

> **'Contradiction in witness statements is a well-known feature of false statements'**

The importance of asking children questions, thus giving them an opportunity to tell, has been identified. While parents, teachers and those in daily contact with children are often reluctant to question children, it is clear that many children do not disclose unless given this opportunity. Education and increased awareness are needed on how to question children in an appropriate manner. McElvaney (2008) noted that questions did not need to be about sexual abuse *per se*, but rather questions prompted by the young person's psychological distress, asking after the young people's wellbeing. This questioning in effect acted as an external pressure for the young person to tell his/her secret (McElvaney *et al.*, 2012). In Ungar *et al.*'s (2009a) study of Canadian youth, they found that young people used a range of disclosure strategies ranging from less direct strategies (such as risk-taking behaviours, not talking about the abuse) to direct strategies (such as seeking support from peers, turning to non-professional adult supports, disclosing to formal service providers), representing a process that relied heavily on others to 'build the bridges between the youth and formal care providers' (p. 352).

> **'Education and increased awareness are needed on how to question children in an appropriate manner'**

The tendency to delay disclosing and the partial nature of many disclosures are not conducive to successful legal investigations and prosecutions. In addition, the knowledge base that exists within the legal sphere is limited if only a percentage of the children who experience sexual abuse engage with this system. The disproportionately high 'immediate disclosure' rate found in Goodman-Brown *et al.*'s (2003) legal sample compared to Kogan's (2004) community sample raises the question of the representation of delayed disclosers in the legal system. Are children who delay in disclosing less likely to engage with the legal system? Are delays in disclosing contributing to decisions not to prosecute child sexual abuse crimes? In Ireland, the 1990s saw a significant increase in the numbers of complainants coming before the courts reporting experiences of childhood sexual abuse. Many of these cases were referred to the higher courts for judicial review proceedings to establish whether the cases could proceed without prejudicing the accused given the

> **'Are children who delay in disclosing less likely to engage with the legal system?'**

Copyright © 2013 John Wiley & Sons, Ltd.

delay in the complaint being made and giving due regard to the accused's right to a speedy trial. Psychological expert testimony was sought as part of these proceedings to explain the delay in disclosure in each individual case to enable the courts to adjudicate on whether the delay in reporting was reasonable (see McElvaney, 2002). This legal mechanism provided an opportunity to enhance the knowledge base within the legal profession as to the complexities involved in disclosing and formally reporting experiences of childhood sexual abuse for adults. While one might expect that the legal system would be more sympathetic to children's difficulties in making disclosures, it may also be the case that the belief that 'if the child was really sexually abused, why would they not tell?', as articulated by Summit (1983), still prevails.

In addition, concerns that engagement with the legal system will lead to further psychological trauma need to be considered. A prospective longitudinal study conducted by Quas *et al*. (2005) indicated that the consequences of legal involvement change over the course of development and as a function of the child's reactions to and experiences during the legal case. The associations between legal involvement and outcomes varied with age. The authors suggested that although younger children may be at increased risk for some adverse outcomes such as mental health problems, older children may be at increased risk for other undesirable sequelae such as the negative attitudes of others toward them. Quas and Goodman's (2011) recent review notes that older children are more at risk in developing poor mental health outcomes. Thus, as noted earlier, young people's fears of the consequences of disclosure may well be justified. Raised awareness of both the prevalence of non-disclosure of sexual abuse and the importance of supporting children to disclose may go some way to addressing children's fears.

One interesting finding in recent studies is that many young people who delayed disclosure to an adult had told a friend. McElvaney (2008) and Ungar *et al*. (2009b) identified peer influence as significant in encouraging disclosure among adolescents. There is some suggestion from the research that regardless of the age at the time of abuse, adolescence may be a 'critical period' for disclosure. It may be that targeting adolescents in general (rather than those at risk of abuse) may be a powerful prevention tool in encouraging early disclosure. Evaluations of child abuse prevention programmes have shown significant improvements in the levels of awareness of child abuse in children and young people (Rispers *et al*., 1997; Zwi *et al*., 2007). It may be that the increasing trend towards peer disclosure is a by-product of such educational and awareness-raising programmes. There is evidence that public awareness campaigns when implemented as part of a multi-dimensional strategy that involves targeting children, parents and communities (see Lalor and McElvaney, 2010, for a review of child abuse prevention programmes) are an effective tool in the prevention of child abuse.

McElvaney *et al*. (2012) describe the importance for young people of containing the secret of abuse and their need for confidentiality following disclosure as representing an adaptive strategy on the part of the young person to contain the experience and his/her emotional reaction to it. The conflict between wanting/needing to keep the secret and wanting/needing to tell is mediated by what they term the 'pressure cooker effect'. Young people in their study described influences from within and without that led to a build up of pressure, ultimately leading to disclosure. They suggest that building up the

**'Concerns that engagement with the legal system will lead to further psychological trauma need to be considered'**

**'Many young people who delayed disclosure to an adult had told a friend'**

**'An adaptive strategy on the part of the young person to contain the experience'**

Copyright © 2013 John Wiley & Sons, Ltd.

pressure for young people by providing opportunities to tell may be needed to help young people tell more promptly. However, the lack of control that young people experience following disclosure remains an issue (Ungar *et al*., 2009b; Quayle *et al*., 2012). This highlights the need for dissemination of information directly to young people about the legal process, the possible consequences of disclosure, as well as ongoing developments in legal proceedings when young people and their families interface with the legal system.

The more recent focus on investigating those strategies that children use in making disclosures rather than solely on identifying barriers to disclosure is perhaps more helpful in informing awareness-raising campaigns and professional interventions. The author is involved in a large-scale review of children's files in an assessment service to ascertain those factors that helped children tell about their experiences of sexual abuse. A pilot study has suggested that this is an appropriate methodology for gathering data on children's experiences of informal disclosure, acknowledging the limitations of such an approach. Ungar *et al*. (2009a) describe the optimal conditions for disclosure as follows: being directly asked about experiences of abuse; having access to someone who will listen, believe and respond appropriately; having knowledge and language about what constitutes abuse and how to access help; having a sense of control over the process of disclosure both in terms of their anonymity (not being identified until they are ready for this) and confidentiality (the right to control who knows); and effective responses by adults both in informal and formal contexts.

Ungar *et al*. (2009b) support recent developments in prevention programmes that target supportive formal and informal caregivers in being better able to detect the possibility of abuse and support disclosures rather than focusing on empowering children themselves in making disclosures. Their findings in relation to the importance of bridge building for young people to access formal supports are supported by Jensen *et al*.'s (2005) emphasis on the dialogical nature of disclosure, and the important role that trusted adults and peers play in the disclosure process through noticing signs of psychological distress and asking young people about their psychological wellbeing (Collings *et al*., 2005; Jensen *et al*., 2005; McElvaney *et al*., 2012). More emphasis is therefore needed on providing opportunities for children and young people to disclose. The challenge for professionals and those who care for children is how to do this in a way that protects children and promotes their wellbeing.

'More recent focus on investigating those strategies that children use in making disclosures'

'Having a sense of control over the process of disclosure both in terms of their anonymity and confidentiality'

### References

Collings SJ, Griffiths S, Kumalo M. 2005. Patterns of disclosure in child sexual abuse. *South African Journal of Psychology* **35**(2): 270 285.

DeVoe ER, Faller KC. 1999.The characteristics of disclosure among children who may have been sexually abused. *Child Maltreatment* **4**: 217 227.

Elliott DM, Briere J. 1994. Forensic sexual abuse evaluations of older children: Disclosures and symptomatology. *Behavioral Sciences & the Law* **12**: 261 277.

Goodman Brown TB, Edelstein RS, Goodman GS, Jones DPH, Gordon DS. 2003. Why children tell: A model of children's disclosure of sexual abuse. *Child Abuse & Neglect* **27**: 525 540.

Hershkowitz I, Horowitz D, Lamb ME. 2005. Trends in children's disclosure of abuse in Israel: A national study. *Child Abuse & Neglect* **29**(11): 1203 1214.

Hershkowitz I, Orbach Y, Lamb ME, Sternberg KJ, Horowitz D. 2006. Dynamics of forensic interviews with suspected abuse victims who do not disclose. *Child Abuse & Neglect* **30**: 753 769.

Copyright © 2013 John Wiley & Sons, Ltd.

Hershkowitz I, Lanes O, Lamb ME. 2007. Exploring the disclosure of child sexual abuse with alleged victims and their parents. *Child Abuse & Neglect* **31**: 111 123.

Jensen TK, Gulbrandsen W, Mossige S, Reichelt S, Tjersland OA. 2005. Reporting possible sexual abuse: A qualitative study on children's perspectives and the context for disclosure. *Child Abuse & Neglect* **29**(12): 1395 1413.

Jonson E, Lindblad F. 2004. Disclosure, reactions and social support: Findings from a sample of adult victims of child sexual abuse. *Child Maltreatment* **9**(2): 190 200.

Kilpatrick DG, Saunders BE. 1995. The National Survey of Adolescents in the United States [Computer File]. Medical University of South Carolina [producer], 1999. Inter university Consortium for Political and Social Research [distributor], 2000: Ann Arbor, MI.

Kogan SM. 2004. Disclosing unwanted sexual experiences: Results from a national sample of adolescent women. *Child Abuse & Neglect* **28**: 147 165.

Lalor K, McElvaney R. 2010. Child sexual abuse, links to later sexual exploitation/high risk sexual behavior, and prevention/treatment programs. *Trauma, Violence & Abuse* **11**(4): 159 177. DOI: 10.1177/1524838010378299

Lamb ME, Orbach Y, Sternberg KJ, Esplin PW, Hershkowitz I. 2002.The effects of forensic interview practices on the quality of information provided by alleged victims of child abuse. In Children's Testimony: A Handbook of Psychological Research and Forensic Practice, Westcott HL, Davies GM, Bull R (eds). John Wiley & Sons Ltd: Chichester, England; 131 145.

Lawson L, Chaffin, M. 1992. False negatives in sexual abuse disclosure interviews: Incidence and influence of caretaker's belief in abuse in cases of accidental abuse discovery by diagnosis of STD. *Journal of Interpersonal Violence* **7**(4): 532 542.

London K, Bruck M, Ceci SJ, Shuman D. 2005. Disclosure of child sexual abuse: What does the research tell us about the ways that children tell? *Psychology, Public Policy, and Law* **11**(1): 194 226.

Lyon TD. 2007. False denials: Overcoming methodological biases in abuse disclosure research. In Child sexual abuse: Disclosure, delay and denial, M Pipe, M Lamb, Y Orbach, AC Cederborg (eds). Lawrence Erlbaum Associates: London; 41 62.

McElvaney R. 2002. Delays in reporting childhood sexual abuse and implications for legal proceedings. In Sex and Violence: The Psychology of Crime and Risk Assessment, Farrington DP, Hollin CR, McMurran M (eds). Routledge: London; 138 153.

McElvaney R. 2008. How children tell: containing the secret of child sexual abuse. Unpublished doctoral dissertation, Trinity College, Dublin.

McElvaney R, Greene S, Hogan D. 2012. Containing the secret of child sexual abuse. *Journal of Interpersonal Violence* **27**(6):1155 1175. DOI: 10.1177/0886260511424503

McGee H, Garavan R, deBarra M, Byrne J, Conroy R. 2002. The SAVI Report: Sexual Abuse and Violence in Ireland. The Liffey Press: Dublin.

Mudaly N, Goddard C. 2006. The truth is longer than a lie: Children's experiences of abuse and professional interventions. Jessica Kingsley Publishers: London.

Olafson E, Lederman CS. 2006. The state of the debate about children's disclosure patterns in child sexual abuse cases. *Juvenile and Family Court Journal* **57**(1): 27 40.

Priebe G, Svedin CG. 2008. Child sexual abuse is largely hidden from the adult society: An epidemiological study of adolescents' disclosures. *Child Abuse & Neglect* **32**: 1095 1108.

Quas JA, Goodman GS. 2011. Consequences of criminal court involvement for child victims. *Psychology, Public Policy and Law* **18**, 392 414 10.1037/a0026146

Quas JA, Goodman GS, Ghetti SA, Kristen W, Edelstein RR, Allison D, Cordon IM, Jones, DPH. 2005. Childhood sexual assault victims: Long term outcomes after testifying in criminal court: VII. General discussion. *Monographs of the Society for Research in Child Development* **70**(2): 104 117.

Quayle E, Jonsson L, Lööf L. 2012. Online Behaviour related to Child Sexual Abuse: Preliminary Version. *ROBERT Project*. Available: http://www.innocenceindanger.de/fileadmin/user upload/Downloads/ROBERT/Interview analysis PRELIMINARY.pdf [18 June 2012].

Resnick HS., Kilpatrick DG., Dansky BS, Saunders BE, & Best CL. 1993. Prevalence of civilian trauma and posttraumatic stress disorder in representative national sample of women. *Journal of Consulting and Clinical Psychology* **61**: 984 991.

Rispers J, Aleman A, Goudena PP. 1997. Prevention of child sexual abuse victimization: A meta analysis of school programs. *Child Abuse & Neglect* **21**: 975 987.

Sjoberg RL, Lindblad F. 2002.Limited disclosure of sexual abuse in children whose experiences were documented by videotape. *The American Journal of Psychiatry* **159**: 312 314.

Copyright © 2013 John Wiley & Sons, Ltd.

Smith DW, Letourneau EJ, Saunders BE, Kilpatrick DG, Resnick, HS, Best CL. 2000. Delay in disclosure of childhood rape: Results from a national survey. *Child Abuse & Neglect* **24**: 273 287.

Staller KM, Nelson Gardell D. 2005. "A burden in your heart": Lessons of disclosure from female preadolescent and adolescent survivors of sexual abuse. *Child Abuse & Neglect* **29**: 1415 1432.

Summit R. 1983. The child sexual abuse accommodation syndrome. *Child Abuse & Neglect* **7**(2): 177 193

Ungar M, Barter K, McConnell S, Tutty L, Fairholm J. 2009a. Patterns of disclosure among youth. *Qualitative Social Work* **8**(3): 341 356. DOI: 10.1177/1473325009337842.

Ungar M, Tutty LM, McConnell S, Barter K, Fairholm J. 2009b. What Canadian youth tell us about disclosing abuse. *Child Abuse & Neglect*, **33**: 699 708.

Zwi KJ, Woolfenden SR, Wheeler DM, O'Brien TA, Tait P, Williams KW. 2007. School based education programmes for the prevention of child sexual abuse (Review). *Cochrane Database of Systematic Review* **3**: CD004380.

Copyright © 2013 John Wiley & Sons, Ltd.





CLINICAL RESEARCH ARTICLE

# Predictors of delayed disclosure of rape in female adolescents and young adults

## Iva A. E. Bicanic[1]*, Lieve M. Hehenkamp[1], Elise M. van de Putte[2], Arjen J. van Wijk[3] and Ad de Jongh[3,4]

[1]National Psychotraumacenter for Children and Youth, University Medical Center Utrecht, Utrecht The Netherlands; [2]Department of Paediatrics, University Medical Center Utrecht, Utrecht, The Netherlands; [3]Department of Behavioral Sciences, ACTA, University of Amsterdam and VU University, Amsterdam, The Netherlands; [4]School of Health Sciences, Salford University, Manchester, United Kingdom

***Background***: Delayed disclosure of rape has been associated with impaired mental health; it is, therefore, important to understand which factors are associated with disclosure latency. The purpose of this study was to compare various demographics, post rape characteristics, and psychological functioning of early and delayed disclosers (i.e., more than 1 week post rape) among rape victims, and to determine predictors for delayed disclosure.
***Methods***: Data were collected using a structured interview and validated questionnaires in a sample of 323 help seeking female adolescents and young adults (12–25 years), who were victimized by rape, but had no reported prior chronic child sexual abuse.
***Results***: In 59% of the cases, disclosure occurred within 1 week. Delayed disclosers were less likely to use medical services and to report to the police than early disclosers. No significant differences were found between delayed and early disclosers in psychological functioning and time to seek professional help. The combination of age category 12–17 years [odds ratio (OR) 2.05, confidence intervals (CI) 1.13–3.73], penetration (OR 2.36, CI 1.25–4.46), and closeness to assailant (OR 2.64, CI 1.52–4.60) contributed significantly to the prediction of delayed disclosure.
***Conclusion***: The results point to the need of targeted interventions that specifically encourage rape victims to disclose early, thereby increasing options for access to health and police services.

*Keywords: Adolescents; young adults; rape; sexual assault; disclosure; latency to disclosure; posttraumatic stress disorder*

Responsible Editor: Rita Rosner, KU Eichstaett Ingolstadt, Germany.

*Correspondence to: Iva A. E. Bicanic, National Psychotrauma Center for Children and Youth, University Medical Center Utrecht, P.O. Box 85090, NL 3508 AB Utrecht, The Netherlands, Email: i.a.e.bicanic@umcutrecht.nl

For the abstract or full text in other languages, please see Supplementary files under 'Article Tools'

Received: 31 August 2014; Revised: 30 March 2015; Accepted: 13 April 2015; Published: 11 May 2015

Previous studies have shown that disclosure of rape to formal agencies, such as police or mental health services, is uncommon (Fisher, Cullen, & Turner, 2000; Wolitzky-Taylor et al., 2011), especially when the rape has been committed on a date or by an acquaintance and involves the victim's use of drugs and/or alcohol (Resnick et al., 2000; Wolitzky-Taylor et al., 2011). There is evidence to suggest that victims believe that professionals will not be helpful to them because their rape experience does not match stereotypical conceptions of rape, such as involving a stranger, a weapon, and severe injury (Patterson, Greeson, & Campbell, 2009; Resnick et al., 2000). Accordingly, adolescents and young adults, who are more at risk to be victimized by rape than other age

groups (De Haas, Van Berlo, Bakker, & Vanwesenbeeck, 2012; Tjaden & Thoennes, 2006), may not receive targeted mental health care and may not report the crime to the police (Ruch, Coyne, & Perrone, 2000).

For reasons of mental health and public safety, it is important to understand the potential factors that are related to disclosure. Timing of disclosure may be a crucial factor, as early disclosers are more likely to utilize appropriate medical care and report to the police than delayed disclosers (Ahrens, Stansell, & Jennings, 2010; Ullman & Filipas, 2001). In contrast, adults who wait longer than 1 month to disclose the rape are more likely to suffer from posttraumatic stress disorder (PTSD) and depression compared to early disclosers (Ruggiero et al., 2004).

European Journal of Psychotraumatology 2015. © 2015 Iva A. E. Bicanic et al. This is an Open Access article distributed under the terms of the Creative Commons Attribution 4.0 International License (http://creativecommons.org/licenses/by/4.0/), allowing third parties to copy and redistribute the material in any medium or format, and to remix, transform, and build upon the material, for any purpose, even commercially, under the condition that appropriate credit is given, that a link to the license is provided, and that you indicate if changes were made. You may do so in any reasonable manner, but not in any way that suggests the licensor endorses you or your use.

1

Citation: European Journal of Psychotraumatology 2015, **6**: 25883   http://dx.doi.org/10.3402/ejpt.v6.25883
(page number not for citation purpose)

Iva A. E. Bicanic et al.

In addition, adolescents who disclose their rape experience at least 1 month after the incident took place are found to be at higher risk for major depressive disorder and delinquency (Broman-Fulks et al., 2007) compared to those who disclosed within 1 month.

Victim–assailant relationship is crucial in disclosure latency, with victims being at higher risk for delayed disclosure if there is a close relation with the assailant (Kogan, 2004; Koss, 1988; Rickert, Wiemann, & Vaughan, 2005). In contrast, delayed disclosure is less common in victims of a stereotypical rape, i.e., rape by a stranger including a weapon and injury (Smith et al., 2000). Victims of prior sexual trauma are more likely to postpone disclosure of a subsequent assault than those without prior victimization (Smith et al., 2000; Ullman, 1996). This is in contrast with the findings of Ahrens et al. (2010), who report no difference in rates of prior sexual trauma between early and delayed disclosers. In addition, the victim's age appears to be an important variable in predicting disclosure. Evidence suggests that young children are at higher risk for delayed disclosure than adolescents (Kogan, 2004; Schönbucher, Maier, Mohler-Kuo, Schnyder, & Landolt, 2012). Thus, various rape and victim-related characteristics have been found to be associated with timing of disclosure.

The majority of the aforementioned studies included college and adult female rape victims. It is important to examine rape disclosure latency in an age and sex group that is most at risk for rape victimization. There is only one prior quantitative study in adolescents (those aged 12–17 years) that identified factors that might influence disclosure latency (Kogan, 2004). He found that identity of the assailant, a familial relationship with the assailant, and a history of drug abuse in the household were related to the timing of disclosure. The results suggested that a familial relationship with the assailant will postpone disclosure, whereas a history of drug abuse in the household, albeit this seems counterintuitive, makes prompt disclosure more likely. This study had some limitations, including the fact that the interviews were conducted by telephone and that the description of the relationship with the assailant was limited. Therefore, in the present study, we investigated a sample of female adolescent and young adult victims of rape who were admitted to a specialized mental health centre for victims of sexual assault. The first aim of this study was to compare demographics, post-rape characteristics, and psychological functioning between early and delayed disclosers in this group. The second aim, based on the exploratory findings of Kogan (2004), was to determine the predictors for delayed disclosure in adolescents and young adults, including age, prior trauma, and victim–assailant relationship using logistic regression analyses. Insight into the predictors for delayed disclosure for adolescents and young adults may reveal not only potential causal mechanisms but also possible targets for interventions that increase victims' opportunities to receive timely post-rape services.

## Methods

### Subjects and data collection

Rape was defined as "an event that occurred without the victim's consent that involved the use or threat of force in vaginal, anal, or oral intercourse" (Tjaden & Thoennes, 2006). The definition includes both attempted and completed rape; the term "completed" referring to vaginal, oral, anal, or multiple penetrations. Victims who disclosed within 1 week were defined as "early disclosers," whereas those who disclosed at least after 1 week were defined as "delayed disclosers." This dichotomization of the variable "disclosure latency" was based on the study of Ahrens et al. (2010) and the national standard criteria for admission to a Rape Centre in the Netherlands, i.e., a maximum of 7 days post-rape.

The study was conducted in the Dutch National Psychotrauma Centre, which provides psychological services for rape victims aged 12–25 years and their parents. Between May 2005 and December 2011, the centre received 621 phone calls concerning alleged rape victims from police authorities, mental health services, and self-referrals. In 178 cases, the phone call did not result in admission at the centre because of age limitations, or motivational reasons. In 108 cases, referrals were made to other institutions because the index trauma was chronic childhood sexual abuse rather than rape in adolescence/young adulthood. Of the 335 cases admitted to the centre, 12 were not included in this study because of male gender, resulting in a final sample of 323 females with the index trauma being single rape. Referral sources for this final sample included the police (33.7%), mental health services (40.7%), and self-referrals, i.e., victims or parents (25.6%).

### Procedure

During admission, all patients underwent a psychological assessment, consisting of 1) a structured interview for obtaining demographic and post-rape characteristics and 2) self-report questionnaires to obtain information about mental health functioning. Information from the interview was transcribed onto a form designed for this purpose. The following variables were obtained and dichotomized or categorized for the purpose of the study:

### Demographic and victim characteristics

We asked patients about their current age, educational level (lower, middle, or higher), and whether they were of Dutch origin (i.e., in case of having parents born in the Netherlands). Those between 12 and 17 years of age were defined as adolescents and those between 18 and 25 years of age as young adults. We also asked whether the patient was living with their parent(s) (yes/no), and whether the

family structure was complete, i.e., whether the biological parents were living together (yes/no). Patients were then asked to confirm the presence of prior negative sexual experiences (yes/no), and whether they had a current sexual relationship (yes/no).

### Rape characteristics

Information about date and time of the rape was obtained to calculate the time since rape at admission. Next, patients were requested to describe the rape. Their response was categorized into use of penetration (yes/no), group rape (yes/no), use of physical violence (yes/no), and use of threats verbally and/or with a weapon (yes/no). Also, information regarding the victim's relationship to the assailant was obtained. The assailant was defined as a stranger when the victim had never been in contact with the assailant before the rape. Responses were used to form a closeness category (yes in case of family, (boy) friend, or mentor). Patients were also asked about the (estimated) age of the assailant (categorized into 12–17 years or >18 years), and whether the victim had used alcohol prior to the rape (yes/no).

### Post-rape characteristics

Patients were asked when they first talked about the rape. The response was used to calculate the disclosure time and the help-seeking time. At the end of the interview, patients were asked whether they had reported to the police after the incident (yes/no), and whether they had received any medical care after the incident (yes/no).

The study was performed in accordance with the precepts and regulations for research as stated in the Declaration of Helsinki, and the Dutch Medical Research involving Humans Subjects Act concerning scientific research. According to the Ethical Medical Committee of the University Medical Centre Utrecht, this act was not applicable to the present study. Written informed consent was obtained from both patients and parents.

## Measures

### Posttraumatic stress

The Children's Responses to Trauma Inventory (CRTI; Alisic, Eland, & Kleber, 2006) was used for participants aged 12–18 years. This is a 34-item questionnaire assessing severity of PTSD symptoms according to DSM-IV. Patients are asked to indicate to what extent a reaction to a traumatic event was present during the past week. Scores range from 1 to 5, with higher scores indicating more symptomatology. The four subscales: Intrusion, Avoidance, Arousal, and Other Child-Specific Reactions consist of 7, 11, 6, and 10 items, respectively. The reliability of this instrument is good to excellent (Cronbach's α 0.92 for total score, 0.79 for Intrusion, 0.77 for Avoidance, 0.71 for Arousal; Alisic & Kleber, 2010).

For the purpose of the study, only the total score was analysed.

### Depression

Children Depression Inventory (CDI; Kovacs, 1992; Timbremont & Braet, 2002) was used for participants aged 12–17 years of age. The CDI is a 27-item questionnaire, assessing cognitive, affective, and behavioural symptoms of depression. The Dutch CDI has a satisfactory internal consistency, with Cronbach's α ranging between 0.71 and 0.89 (Timbremont & Braet, 2002).

### Behavioural problems

The Youth Self-Report (YSR; Achenbach & Rescorla, 2001) was used for participants aged 12–18 years. This questionnaire evaluates the teenager's perception of behavioural and emotional problems. YSR has shown to be internally reliable (Cronbach's α's ranging from 0.71 to 0.95), and convergent and discriminant validity is reported to be satisfactory (Bérubé & Achenbach, 2006). The YSR includes four broadband scales and nine narrow-band scales to assess behaviour problems. For the purpose of the study, only the total score on behaviour problems was included in the analyses.

### General psychopathology

The Symptom Checklist-90-R (SCL-90-R; Arrindell & Ettema, 1986) was used for participants aged 12–25 years. This is a 90-item self-report inventory to assess psychosocial distress. Patients were instructed to indicate the amount they were bothered by each of the distress symptoms during the preceding week. Patients rated 90 distress symptoms on a five-point Likert scale with 1 being "not at all" and 5 being "extremely." The statements are assigned to eight dimensions, reflecting various types of psychopathology: anxiety, agoraphobia, depression, somatization, insufficiency, sensitivity, hostility, and insomnia. The Global Severity Index (GSI) can be used as a summary of the test and reflects the severity of all answered statements as a global measure of distress. Cronbach's α has been found to range from 0.73 to 0.97. For the purpose of the study, only the GSI was analysed.

## Data analyses

To compare demographic and post-rape characteristics between the early and delayed disclosers, chi-square tests were used. To compare multiple continuous psychological scores, MANCOVA was used with "time since trauma" as a covariate to correct for the potential influence of time since trauma.

Delayed disclosure was used as a dependent variable. The strength of the univariate associations between each potential risk factor and delayed disclosure was estimated by calculating the odds ratio (OR) along with 95% confidence intervals (95% CI). To determine the strongest risk factors for delayed disclosure, each potential risk

Iva A. E. Bicanic et al.

factor identified in the univariate analyses with a significant OR ($p < 0.05$) was entered as a predictor variable into the multivariable model, using a stepwise forward logistic regression (LR) analysis with delayed disclosure as the outcome variable. The Hosmer–Lemeshow goodness-of-fit chi-square was used to calculate how well the data fit the model. For all statistical analyses, a $p$-value of $<0.05$ was considered statistically significant.

All statistical analyses were conducted using SPSS (IBM SPSS Statistics for Windows, Version 20.0, IBM Corp., Armonk, NY).

## Results

### Socio-demographic characteristics

Socio-demographic characteristics of the sample are presented in Table 1. Victims' age ranged from 12 to 25 years, with a mean age of 16.7 years (SD = 2.7) and a median age of 16.1 years. Victims' mean age at time of rape was 14.3 years (SD = 2.7) and a median age of 13.9 years. Penetration occurred in 79.6% of the cases. None of the victims reported prior chronic child sexual abuse. Data about victim–assailant relationship are presented in Table 2. Victims first disclosed after a mean 20.8 weeks (SD = 56.8, range 1–624 weeks), although 58.5% of the cases told within 1 week. First disclosure was to a friend (45.8%), parent(s) (17.1%), (ex) boy-friend (9.4%), family member (6.8%), professional (5.8%), or other adult (15.2%). With regard to post-rape services, 53.8% of all victims consulted a doctor for medical care and 51.4% reported to the police. On average, victims were admitted to the centre 59.8 weeks post-rape (SD = 93.7, range 1–676). The mean GSI of the rape victims on the SCL-90-R (M = 209.7, SD = 61.8) was comparable with previously reported data of psychiatric populations [M = 203.55, SD = 61.60; $t(269) = 1.629$, $p = 0.104$] and was substantially

Table 1. Demographic characteristics of rape victims (N = 323) in valid percentages

|  | N | % |
|---|---|---|
| Dutch origin[a] | 274 | 84.8 |
| Education level[b] |  |  |
| Low | 182 | 58.0 |
| Medium | 76 | 24.2 |
| High | 56 | 17.8 |
| Parents divorced | 102 | 31.9 |
| Lives at parental home | 273 | 85.3 |
| Current relationship | 81 | 26.5 |
| Prior negative sex | 46 | 14.8 |

[a]Dutch origin was defined as being a child from parents born in the Netherlands; [b]after 6 years of general primary school, at the age of 12 years, students enter low (4 years), medium (5 years), or high (6 years) secondary education level.

Table 2. Victim assailant relationship (N = 323) in valid percentages

|  | N | % |
|---|---|---|
| Stranger | 94 | 29.5 |
| (Ex-)Boyfriend | 32 | 10.0 |
| Friend | 33 | 10.3 |
| Acquaintance | 61 | 19.1 |
| Person met during nightlife | 30 | 9.4 |
| Second-degree relative | 15 | 4.7 |
| Person seen only once | 15 | 4.7 |
| Person from school | 14 | 4.4 |
| Person met on the internet | 12 | 3.8 |
| Colleague | 10 | 3.1 |
| Mentor | 3 | 1.0 |

higher [$t(269) = 24.297$, $p < 0.001$] compared to the general population (M = 118.28, SD = 32.38; Arrindell & Ettema, 1986). For the CDI, mean scores were in the clinical range (M = 17.2, SD = 4.6) and rape victims had significantly higher mean scores ($t(230) = 15,923$, $p < 0.001$), in comparison to previously reported data of the general population of adolescent girls (Timbremont, Braet, & Roelofs, 2008; M = 9.01, SD = 6.45).

### Differences between early and delayed disclosers

Fifty-nine percent of the sample consisted of early disclosers (disclosure within 1 week). No significant differences in demographic characteristics were found between early and delayed disclosers, except that there were more delayed disclosers in the age category 12–17 years compared to the early disclosers group ($\chi^2(1) = 6.96$; $p = 0.008$). For rape characteristics, significant differences between groups were found for the use of penetration, with more victims of penetration in the delayed disclosers group compared to the early disclosers group ($\chi^2(1) = 5.37$; $p = 0.02$). Also, the delayed disclosers group presented more victims of verbal and/or weapon threats than the early disclosers group ($\chi^2(1) = 5.35$; $p = 0.02$). Furthermore, among the delayed disclosers more victims identified the assailant as a close person compared to the early disclosers ($\chi^2(1) = 10.84$; $p = 0.001$). Alcohol was used more often in the early disclosers group compared to the delayed disclosers group ($\chi^2(1) = 20.24$; $p < 0.001$).

With respect to post-rape characteristics, a significantly smaller proportion of the delayed disclosers (15.9%) utilized medical services following the rape compared to the early disclosers (30.3%; $\chi^2(1) = 5.32$; $p = 0.02$). Similarly, a significantly smaller proportion of the delayed disclosers (14.6%) compared to the early disclosers (34.3%) reported the rape to the police ($\chi^2(1) = 16.15$; $p < 0.001$). The time since trauma at admission was significantly lower for early disclosers (M = 41.1 weeks, SD = 79.4) than for delayed disclosers (M = 82.9 weeks,

Citation: European Journal of Psychotraumatology 2015, **6**: 25883   http://dx.doi.org/10.3402/ejpt.v6.25883

$SD = 103.3$; $t(314) = 4.06$, $p < 0.001$). Mean and median time to seek help were 37.7 and 12.0 weeks, respectively. Mean time to seek help did not differ between groups ($t(309) = 2.54$, $p < 0.48$). Excluding outliers ($M \pm 3$ SD, $N = 11$) did not change the outcome of this analysis. Both early and delayed disclosers scored in the highest level of psychological distress when compared to previously reported norm scores (CRTI, Alisic, Eland, Huijbregts, & Kleber, 2012; CDI, Timbremont et al., 2008; YSR, Achenbach & Rescorla, 2001; SCL-90, Arrindell & Ettema, 1986), but the MANCOVA results showed that when comparing multiple continuous psychological scores, the overall psychological functioning (posttraumatic stress, depression, behavioural problems, and general psychopathology) did not differ significantly between early and delayed disclosers ($F(6,198) = 0.88$, $p = 0.51$).

Table 3 shows the ORs with 95% CIs for the associations between potential risk factors and delayed disclosure. Delayed disclosers, when compared to early disclosers, were significantly more likely to be in the age category of 12–17 years (OR = 2.10), to have experienced rape by a close person (OR = 2.35), to have been threatened verbally and/or with a weapon (OR = 1.75), and to have experienced penetration (OR = 1.99). Delayed disclosers were also found less likely to have used alcohol prior to the rape (OR = 0.22). None of the other factors were found to be significant risk factors for delayed disclosure.

## Predicting delayed disclosure

A stepwise forward LR analysis was conducted to predict delayed disclosure, using "age category," "close assailant," "use of threats," and "penetration" as predictors. Victims' alcohol use was not entered in the analysis because of missing values for 33.4% of the cases. The use of threats was not a significant predictor in the model. A test of the full model against a constant-only model was statistically significant, indicating that the predictors (i.e., age category 12–17 years, close assailant, penetration) reliably distinguished between early and delayed disclosers ($\chi^2$ (3) = 23.09, $p < 0.000$). There were no significant interactions between the predictors. Nagelkerke's $R^2$ of 10.5% suggests only a modest association between the predictors and delayed disclosure, although the model did show an adequate fit to the data (Hosmer–Lemeshow $\chi^2$ (4) = 2.77, $p < 0.60$). In total, 62% of the respondents were categorized correctly, when using the three predictors that contributed significantly to the prediction of delayed disclosure: age category 12–17 years (OR 2.05, CI 1.13–3.73), penetration (OR 2.36, CI 1.25–4.46), and closeness to the assailant (OR 2.64, CI 1.52–4.60).

## Discussion

The results of this study show that, although no differences were found between delayed and early disclosers in psychological functioning and time to seek help, delayed disclosers were less likely to use medical services and to report to the police than early disclosers. Furthermore, this study identified a number of factors related to the timing of rape disclosure, showing that delayed disclosers represented significantly more adolescents than young adults, significantly more victims of penetration than assault, significantly more victims who were threatened than not threatened, and significantly more victims who were close with the assailant.

The finding that delayed disclosers are less likely to utilize medical services and report to the police than early disclosers is in line with previous studies in adult women (Ahrens et al., 2010; Ullman, 1996; Ullman & Filipas, 2001). It suggests that disclosure latency is important for public health and safety, as delayed disclosure may not only impede reception of proper medical care, such as treating anogenital injuries and preventing the onset of STDs and unwanted pregnancy (Linden, 2011), but also impede the forensic investigation and apprehension of the assailant (Lacy & Stark, 2013).

Three variables were identified that successfully predicted delayed disclosure: age category 12–17 years, penetration, and the assailant being a close person. The finding that the victim's age significantly predicts disclosure latency is in line with previous research showing that adolescents are at a greater risk for delayed disclosure when compared to their older counterparts (Kogan, 2004; Smith et al., 2000). Adolescents may be less able to overcome the barriers to disclose, including factors such as assailant tactics for maintaining secrecy, stigma that often accompanies rape, and fear that their parents would consequently limit their freedom (Crisma, Bascelli, Paci, & Romito, 2004). Also, as victims approach adulthood, they may possess more information about their rights and options after victimization, and have more possibilities for whom to disclose. In our study, most adolescents disclosed the rape event to peers, in line with prior research (Crisma et al., 2004; Priebe & Svedin, 2008).

The use of penetration was found to make victims more likely to postpone disclosure, opposite to the results from Priebe and Svedin (2008), but in line with an older study by Arata (1998), who found that more severe forms of sexual abuse were associated with less disclosure. Penetration may influence disclosure latency through a variety of mechanisms. It could be argued that more severe rape, indicated by the use of penetration, is more likely to be accompanied by extensive coercive use of tactics to maintain the victim's silence, with fear of reprisal possibly contributing to the finding of delayed disclosure (Kogan, 2004). Also, adolescents may think that social reactions in response to disclosure are more negative in case of completed rape compared to assault.

Another factor that seems to make immediate disclosure of rape less likely is closeness to the assailant, as indicated by the assailant being a (boy)friend, family

Iva A. E. Bicanic et al.

*Table 3.* Demographic and (post-)rape characteristics by disclosure time (early vs. delayed disclosers) and odds ratios for delayed disclosure

| Demographic and (post-)rape characteristics | Early disclosure (N = 185) | | Delayed disclosure (i.e., > 1-week post-rape), N = 131 | | OR | 95% CI |
|---|---|---|---|---|---|---|
| | N | % | N | % | | |
| Age category (years) | | | | | | |
| 18 25 | 55 | 17.4 | 22 | 7.0 | | |
| 12 17 | 130 | 41.1 | 109 | 34.5 | 2.10 | 1.20 3.65* |
| Dutch origin | | | | | | |
| No | 27 | 8.5 | 22 | 7.0 | | |
| Yes | 158 | 50.0 | 109 | 34.5 | 0.85 | 0.46 1.56 |
| Living with parent(s) | | | | | | |
| No | 29 | 9.2 | 16 | 5.1 | | |
| Yes | 155 | 49.2 | 115 | 36.5 | 1.35 | 0.70 2.59 |
| Complete family structure | | | | | | |
| No | 58 | 18.4 | 42 | 13.3 | | |
| Yes | 127 | 40.3 | 88 | 27.9 | 0.96 | 0.59 1.55 |
| Current sexual relationship | | | | | | |
| No | 127 | 41.8 | 97 | 31.9 | | |
| Yes | 53 | 17.4 | 27 | 8.9 | 0.67 | 0.39 1.14 |
| Prior negative sexual experience(s) | | | | | | |
| No | 152 | 49.4 | 110 | 35.7 | | |
| Yes | 32 | 10.4 | 14 | 4.5 | 0.61 | 0.31 1.19 |
| Known assailant | | | | | | |
| No | 56 | 17.7 | 36 | 11.4 | | |
| Yes | 129 | 40.8 | 95 | 30.1 | 1.15 | 0.70 1.88 |
| Close to assailant | | | | | | |
| No | 150 | 47.6 | 84 | 26.7 | | |
| Yes | 35 | 11.1 | 46 | 14.6 | 2.35 | 1.40 3.93* |
| Group rape | | | | | | |
| No | 160 | 50.8 | 116 | 36.8 | | |
| Yes | 24 | 7.6 | 15 | 4.8 | 0.86 | 0.43 1.71 |
| Age of assailant (years) | | | | | | |
| 12 17 | 63 | 20.6 | 54 | 17.6 | | |
| > 18 | 117 | 38.2 | 72 | 23.5 | 0.72 | 0.45 1.14 |
| Use of penetration | | | | | | |
| No | 46 | 14.7 | 19 | 6.1 | | |
| Yes | 136 | 43.5 | 112 | 35.8 | 1.99 | 1.10 3.60* |
| Use of threats | | | | | | |
| No | 90 | 31.6 | 48 | 16.8 | | |
| Yes | 76 | 26.7 | 71 | 24.9 | 1.75 | 1.09 2.82* |
| Use of physical violence | | | | | | |
| No | 130 | 42.6 | 82 | 26.9 | | |
| Yes | 51 | 16.7 | 42 | 13.8 | 1.31 | 0.80 2.14 |
| Victim's alcohol use | | | | | | |
| No | 72 | 33.5 | 69 | 32.1 | | |
| Yes | 61 | 28.4 | 13 | 6.0 | 0.22 | 0.11 0.44* |

*$p < 0.05$.
Seven participants were dropped from analyses due to missing disclosure time data.

member, or mentor. This finding is consistent with previous studies showing that the closer the relationship between the victim and assailant, the less likely the young woman was to report this victimization to anyone (Koss, 1988; Rickert et al., 2005; Wolitzky-Taylor et al., 2011). The dynamics of intrafamilial abuse is often proposed as

Citation: European Journal of Psychotraumatology 2015, **6**: 25883   http://dx.doi.org/10.3402/ejpt.v6.25883

the explanation for delayed or non-disclosure (Kogan, 2004; Smith et al., 2000). In the present study, however, only 5% of the assailants were identified as a family member. Most close relationships referred to (boy)friends, suggesting that a significant percentage of the sample experienced peer-to-peer victimization. This type of victimization is most likely to occur during adolescence, as compared to childhood or young adulthood, and greatly increases the risk of revictimization (Humphrey & White, 2000). Hence, victims of rape by peers may be a target group for interventions promoting early disclosure.

Clearly, there are many variables working in tandem to affect the timing of victim's disclosure. A closer look at the final model, which identified three unique variables that contributed significantly to the prediction of delayed disclosure, can help us to better understand the phenomenon of initial disclosure in adolescents and young adults. Younger adolescent victims who are raped by a close person are more likely to delay disclosure than older victims of attempted rape by a stranger or acquaintance. Perhaps, they struggle with the notion that someone close to them performed such a violent act against them, which confuses them about what might happen in terms of safety if they would disclose (or not). This finding is especially important in the light of the fact that approximately 80% of victims had some sort of relationship with their perpetrator prior to the assault (Basile, Chen, Black, & Saltzman, 2007). With regard to rape types, it would intuitively seem that less severe forms of sexual assault are associated with delayed disclosure and that completed rape would be easier to identify as clearly inappropriate and wrong. Victims of completed rape, however, may be more likely to experience negative psychological reactions, e.g., self-blame and avoidance coping. It is conceivable that they delay their disclosure as a result of rape-induced psychological distress (Starzynski, Ullman, Filipas, & Townsend, 2005), not necessarily the severity of the assault.

Although the final model showed acceptable goodness of fit, the percentage of explained variance of delayed disclosure was modest. Thus, there must be other variables predictive of delayed disclosure, such as the assailant's use of alcohol or weaker support systems, that we did not assess in this study. Besides this limitation, there are other drawbacks of this study that should be mentioned. First, a clinical sample was used with patients reporting high mean levels of psychological distress. This ceiling effect may explain why no differences were found between early and delayed disclosers in psychological functioning, contrary to prior studies (Broman-Fulks et al., 2007; Ruggiero et al., 2004). Second, posttraumatic stress was only assessed for children up to 18 years, and for young adults additional suitable measures were not used. Third, information could have been lost due to dichotomizing the variable disclosure latency. Fourth, results may not be

generalizable to all rape victims, because the percentage of victims that consulted a medical professional and reported to the police was higher in our sample than in most studies (Hanson et al., 2003; Resnick et al., 2000; Zinzow, Resnick, Barr, Danielson, & Kilpatrick, 2012). Perhaps, these differences could, at least partially, be explained by the fact that stranger rape, representing 30% of our sample, leads to higher likelihood of help-seeking and police reporting because of its association with higher acknowledgment of victim status (Resnick et al., 2000; Smith et al., 2000). The fact that this is a help-seeking sample is critical for the reasons cited in the discussion, but also because the generalizability of these data to rape victims who never tell anyone—perhaps the group most at risk—simply cannot be known. Besides these limitations, several strengths of the current study need to be noted. One strength is the unique set of adolescents and young adults who presented at a mental health care centre after a single rape event, but who reported no prior chronic sexual abuse in childhood. For 85% of the sample, the index trauma was a first time event. Moreover, data were collected at a designated referral centre for victims of rape and, therefore, the sample is likely to represent the clinical population of Dutch victims in the age group of 12–25 years.

The findings of the current study, suggesting that delayed disclosers are less able to benefit from emergency medical care and evidence collection, have a number of practical implications. One of the strategies to enhance victims' willingness to disclose within the first week post-rape may be *sexual* education campaigns in school and media, as being uninformed is one of the reasons for them not to disclose (Crisma et al., 2004). Education may include medical information on rape-related pregnancy and STDs, as well as the need for timely emergency contraception and prophylaxis, given that these concerns appear to be facilitators of seeking medical help (Zinzow et al., 2012). Also, practical information about DNA evidence and how to best protect it, e.g., related to showering, clothing, eating, and drinking, may increase the awareness of opportunities in the early-phase post-rape. Moreover, facts about the potential psychological impact of rape, such as PTSD and revictimization, but also information about evidence-based treatments (Elwood et al., 2011; Littleton & Ullman, 2013; McLaughlin et al., 2013), may increase help-seeking behaviour in an early stage. Furthermore, efforts to encourage early disclosure must consider peer-to-peer victimization as a primary factor, as most participants in this study experienced this type of victimization, and may initially not have defined *or acknowledged* the incident as rape because they rationalize such experiences as normal (Hlavka, 2014), leading to the finding of delayed disclosure.

In conclusion, the results of the present study suggest that adolescent victims of rape with penetration by

Iva A. E. Bicanic et al.

someone close are at increased risk for delayed disclosure, and that delayed disclosers are less likely to use medical services and to report to the police. These findings may assist clinicians and policymakers in understanding rape and help to develop interventions (Unterhitzenberger & Rosner, 2014), specifically targeted to support adolescents and young adults to disclose in an early-phase post-rape. Although the vast majority of the participants was living at their parental home, many of the sample did not first disclose to their parents. Therefore, it could be argued that in prevention programs specific attention should be given to the strengthening of the child–parent relationship, to facilitate disclosure to parents (Schönbucher et al., 2012). Next, as victims tend to disclose mostly to peers, prevention programmes may need to aim at teaching adolescents how they can help a peer victim if they become a recipient of disclosure (Schönbucher et al., 2012). In addition, education may increase victims' willingness to disclose early, thereby increasing opportunities for access to health and police services. It is more likely to reach adolescents with direct, active, and online outreach programs via communication channels that are frequently used by adolescents and young adults particularly social media (i.e., Facebook, Twitter, YouTube, etc.), forums, and mobile apps. Such programmes, wherein adolescents and young adults are being treated as agents and decision makers (Hlavka, 2014), should focus on information concerning what rape actually is—not only the stereotypical idea of rape and what (not) to do in the aftermath of rape especially in the first week post-rape. Another way to help improve the support of victims of rape is the implementation of multidisciplinary sexual assault centres (Bicanic, Snetselaar, De Jongh, & Van de Putte, 2014; Bramsen, Elklit, & Nielsen, 2009), as these may be the most suitable places to organize education campaigns and offer integrated post-rape services in one location. Future research should investigate whether the availability of such centres increases the prevalence of police reporting and use of medical care. Moreover, as discussed, previous research concerning the topic of disclosure has focused on the disclosure process, mainly the effect of negative social reactions, and not the latency. In future research, social reactions in relation to disclosure (latency) should be assessed by using the Social Reactions Questionnaire, as well as the victim's perception of their own experience being defined as rape, as many girls and young women do not report or seek help because they regard sexual violence against them as normal (Hlavka, 2014).

## Conflict of interest and funding

There is no conflict of interest in the present study for any of the authors.

## References

Achenbach, T. M., & Rescorla, L. A. (2001). *Manual for the ASEBA school age forms & profiles*. Burlington, VT: University of Vermont, Research Centre for Children, Youth, and Families.

Ahrens, C. E., Stansell, J., & Jennings, A. (2010). To tell or not to tell: The impact of disclosure on sexual assault survivors' recovery. *Violence and Victims*, 25(5), 631 648.

Alisic, E., Eland, J., Huijbregts, R. A. D., & Kleber, R. J. (2012). *Schokverwerkingslijst voor kinderen* [Children's responses to trauma inventory revised version]. Amsterdam: Boom test uitgevers.

Alisic, E., Eland, J., & Kleber, R. J. (2006). *Schokverwerkingslijst voor Kinderen herziene versie* [Children's responses to trauma inventory revised version]. Utrecht: Institute for Psychotrauma in collaboration with Clinical Psychology (University of Utrecht) and Psychotrauma Centre for Children and Youth (University Medical Centre Utrecht).

Alisic, E., & Kleber, R. J. (2010). Measuring posttraumatic stress reactions in children: A preliminary validation of the children's responses to trauma inventory. *Journal of Child & Adolescent Trauma*, 3(3), 192 204.

Arata, C. M. (1998). To tell or not to tell: Current functioning of child sexual abuse survivors who disclosed their victimization. *Child Maltreatment*, 3(1), 63 71.

Arrindell, W. A., & Ettema, J. H. M. (1986). *SCL 90: Handleiding bij een multidimensionele psychopathologie indicator* [SCL 90: manual for a multidimensional measure of psychopathology]. Lisse: Swets Test.

Basile, K. C., Chen, J., Black, M. C., & Saltzman, L. E. (2007). Prevalence and characteristics of sexual violence victimization among U.S. adults. *Violence & Victims*, 22, 437 448.

Bérubé, R. L., & Achenbach, T. M. (2006). *Bibliography of published studies using ASEBA: 2006 edition*. Burlington, VT: University of Vermont, Research Centre for Children, Youth and Families.

Bicanic, I., Snetselaar, H., De Jongh, A., & Van de Putte, E. (2014). Victims' use of professional services in a Dutch sexual assault centre. *European Journal of Psychotraumatology*, 5, 23645, doi: http://dx.doi.org/10.3402/ejpt.v5.23645

Bramsen, R. H., Elklit, A., & Nielsen, L. H. (2009). A Danish model for treating victims of rape and sexual assault: The multidisciplinary public approach, Journal of Aggression. *Maltreatment & Trauma*, 18(8), 886 905.

Broman Fulks, J. J., Ruggiero, K. J., Hanson, R. F., Smith, D. W., Resnick, H. S., Kilpatrick, D. G., et al. (2007). Sexual assault disclosure in relation to adolescent mental health: Results from the National Survey of Adolescents. *Journal of Clinical Child and Adolescent Psychology*, 36(2), 260 266.

Crisma, M., Bascelli, E., Paci, D., & Romito, P. (2004). Adolescents who experienced sexual abuse: Fears, needs and impediments to disclosure. *Child Abuse & Neglect*, 28(10), 1035 1048.

De Haas, S., Van Berlo, W., Bakker, F., & Vanwesenbeeck, I. (2012). Prevalence and characteristics of sexual violence in the Netherlands, the risk of revictimization and pregnancy: Results from a national population survey. *Violence and Victims*, 27(4), 592 608.

Elwood, L. S., Smith, D. W., Resnick, H. S., Gudmundsdottir, B., Amstadter, A. B., Hanson, R. F., et al. (2011). Predictors of rape: Findings from the National Survey of Adolescents. *Journal of Traumatic Stress*, 24(2), 166 173.

Fisher, B. S., Cullen, F. T., & Turner, M. G. (2000). *The sexual victimization of college women*. Washington, DC: U.S. Department of Justice, National Institute of Justice, and Bureau of Justice Statistics.

Citation: European Journal of Psychotraumatology 2015, **6**: 25883   http://dx.doi.org/10.3402/ejpt.v6.25883

Hanson, R. F., Kievit, L. W., Saunders, B. E., Smith, D. W., Kilpatrick, D. G., Resnick, H. S., et al. (2003). Correlates of adolescent reports of sexual assault: Findings from the national survey of adolescents. *Child Maltreatment*, *8*(4), 261 272.

Hlavka, H. R. (2014). Normalizing sexual violence: young women account for harassment and abuse. *Gender & Society*, doi: 10.1177/0891243214526468.

Humphrey, J. A., & White, J. W. (2000). Women's vulnerability to sexual assault from adolescence to young adulthood. *Journal of Adolescent Health*, *27*(6), 419 424.

Kogan, S. M. (2004). Disclosing unwanted sexual experiences: Results from a national sample of adolescent women. *Child Abuse and Neglect*, *28*, 147 165.

Koss, M. P. (1988). *Criminal victimization among women: Impact on health status and medical service usage* (Grant No. 85 IJ CX 0038). Washington, DC: National Institute of Justice.

Kovacs, M. (1992). *Children depression inventory CDI: Manual*. New York: Multi Health Systems.

Lacy, J. W., & Stark, C. E. (2013). The neuroscience of memory: Implications for the courtroom. *Nature Reviews Neuroscience*, *14*(9), 649 658.

Linden, J. A. (2011). Care of the adult patient after sexual assault. *New England Journal of Medicine*, *365*(9), 834 841.

Littleton, H., & Ullman, S. E. (2013). PTSD symptomatology and hazardous drinking as risk factors for sexual assault revicti mization: Examination in European American and African American women. *Journal of Traumatic Stress*, *26*(3), 345 353.

McLaughlin, K. A., Koenen, K. C., Hill, E. D., Petukhova, M., Sampson, N. A., Zaslavsky, A. M., et al. (2013). Trauma exposure and posttraumatic stress disorder in a national sample of adolescents. *Journal of the American Academy of Child and Adolescent Psychiatry*, *52*(8), 815 830.

Patterson, D., Greeson, M., & Campbell, R. (2009). Understanding rape survivors' decisions not to seek help from formal social systems. *Health & Social Work*, *34*(2), 127 136.

Priebe, G., & Svedin, C. G. (2008). Child sexual abuse is largely hidden from the adult society. An epidemiological study of adolescents' disclosures. *Child Abuse & Neglect*, *32*, 1095 1108.

Resnick, H. S., Holmes, M. M., Kilpatrick, D. G., Clum, G., Acierno, R., Best, C. L., et al. (2000). Predictors of post rape medical care in a national sample of women. *American Journal of Preventive Medicine*, *19*(4), 214 219.

Rickert, V. I., Wiemann, C. M., & Vaughan, R. D. (2005). Disclosure of date/acquaintance rape: Who reports and when. *Journal of Pediatric and Adolescent Gynecology*, *18*(1), 17 24.

Ruch, L. R., Coyne, B. J., & Perrone, P. A. (2000). *Reporting sexual assault to the police in Hawaii* (NCJ 188264, National Criminal Justice Reference Service). Washington, DC: U.S. Department of Justice.

Ruggiero, K. J., Smith, D. W., Hanson, R. F., Resnick, H. S., Saunders, B. E., Kilpatrick, D. G., et al. (2004). Is disclosure of childhood rape associated with mental health outcome? Results from the National Women's Study. *Child Maltreatment*, *9*(1), 62 77.

Schonbucher, V., Maier, T., Mohler Kuo, M., Schnyder, U., & Landolt, M. (2012). Disclosure of child sexual abuse by adolescents: A qualitative in depth study. *Journal of Interper sonal Violence*, *27*, 3486 3513. doi: 10.1177/0886260512445380.

Smith, D. W., Letourneau, E. J., Saunders, B. E., Kilpatrick, D. G., Resnick, H. S., & Best, C. L. (2000). Delay in disclosure of childhood rape: Results from a national survey. *Child Abuse & Neglect*, *24*(2), 273 287.

Starzynski, L. L., Ullman, S. E., Filipas, H. H., & Townsend, S. M. (2005). Correlates of women's sexual assault disclosure to informal and formal support sources. *Violence and Victims*, *20*, 417 432.

Timbremont, B., & Braet, C. (2002). *Children's depression inventory: Nederlandstalige versie* [Children's Depression Inventory: Dutch version]. Lisse: Swets & Zeitlinger.

Timbremont, B., Braet, C., & Roelofs, J. (2008). *Handleiding Children's Depression Inventory* [Children's Depression Inven tory: Dutch version]. Amsterdam: Pearson Assessment and Information B.V.

Tjaden, P. G., & Thoennes, N. (2006). *Extent, nature, and consequences of rape victimization: Findings from the National Violence against Women Survey*. Washington, DC: U.S. Department of Justice.

Ullman, S. E. (1996). Correlates and consequences of adult sexual assault disclosure. *Journal of Interpersonal Violence*, *11*(4), 554 571.

Ullman, S. E., & Filipas, H. H. (2001). Correlates of formal and informal support seeking in sexual assault victims. *Journal of Interpersonal Violence*, *16*(10), 1028 1047.

Unterhitzenberger, J., & Rosner, R. (2014). Lessons from writing sessions: A school based randomized trial with adolescent orphans in Rwanda. *European Journal of Psychotraumatology*, *5*, 24917, doi: http://dx.doi.org/10.3402/ejpt.v5.24917

Wolitzky Taylor, K. B., Resnick, H. S., Amstadter, A. B., McCauley, J. L., Ruggiero, K. J., & Kilpatrick, D. G. (2011). Reporting rape in a national sample of college women. *Journal of American College Health*, *59*(7), 582 587.

Zinzow, H. M., Resnick, H. S., Barr, S. C., Danielson, C. K., & Kilpatrick, D. G. (2012). Receipt of post rape medical care in a national sample of female victims. *American Journal of Preventive Medicine*, *43*(2), 183 187.