UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------ x
                            :
UNITED STATES OF AMERICA,     :
                            :
        v.              :     S2 20 Cr. 330 (AJN)
                            :
GHISLAINE MAXWELL,       :
                            :
           Defendant.     :
                            :
------------------------------------------------------ x

# GHISLAINE MAXWELL'S REPLY IN SUPPORT OF
# HER MOTIONS *IN LIMINE*

Jeffrey S. Pagliuca
Laura A. Menninger
HADDON, MORGAN & FOREMAN P.C.
150 East 10th Avenue
Denver, CO 80203
Phone: 303-831-7364

Christian R. Everdell
COHEN & GRESSER LLP
800 Third Avenue
New York, NY 10022
Phone: 212-957-7600

Bobbi C. Sternheim
Law Offices of Bobbi C. Sternheim
225 Broadway, Suite 715
New York, NY 10007
Phone: 212-243-1100


*Attorneys for Ghislaine Maxwell*

# TABLE OF CONTENTS

I.      THIS COURT SHOULD PRECLUDE INTRODUCTION OF ALLEGED CO-
        CONSPIRATOR STATEMENTS AS A SANCTION FOR GOVERNMENT'S
        FAILURE TO COMPLY WITH THIS COURT'S SEPTEMBER 3, 2021 ORDER
                1

    A.    The Court's Order was Neither Ambiguous Nor Misread by the Defense.................... 1

    B.    The Court Has the Authority to Require Disclosure ...................................................... 2

    C.    There Should Be a Sanction ........................................................................................... 4

    D.    There are Substantial Issues with the Government's Anticipated Position ................... 5

II.     GOVERNMENT CONCEDEDLY FAILED TO GIVE NOTICE OF THE BASIS OR
        REASONING TO ADMIT *ANY* 404(B) EVIDENCE          6

    A.    The Emails Bear No Relationship to the Charged Conspiracy, Reflect Pure Propensity
          Evidence, and Otherwise are Unduly Prejudicial to Uninvolved Third-Party Adults . 7

    B.    █████████████████████ ............................................................. 11

        1.    ████████████████████████████ ......................... 12

        2.    The government has apparently abandoned efforts to introduce her testimony as Rule
              404(b) evidence.......................................................................................................... 13

        3.    ████████████████████ constitutes an impermissible constructive
              amendment and variance to the Indictment. .............................................................. 13

    C.    Ms. Maxwell reiterates her request to defer briefing and ruling on the admissibility █████
          ██████████████████ for two weeks. ........................................... 15

III.    THIS COURT SHOULD EXCLUDE LISA ROCCHIO'S TESTIMONY UNDER
        FEDERAL RULE OF EVIDENCE 702 AND *DAUBERT V. MERRELL DOW
        PHARMACEUTICALS, INC.*, 509 U.S. 579 (1993) AND GRANT A *DAUBERT*
        HEARING      15

    A.    This Court should reject the government's arguments to the extent that they are based on
          newly disclosed material, which this Court ordered the government to produce six months
          ago. ............................................................................................................................... 15

    B.    Rocchio's proposed testimony is inadmissible.............................................................. 17

    C.    At a minimum, this Court should hold a *Daubert* hearing. ......................................... 23

IV.     THE COURT SHOULD EXCLUDE EVIDENCE RELATED █████████████
        ██████████24

V.      THE GOVERNMENT CONCEDES THAT IT WILL NOT OFFER EVIDENCE OF MS.
        MAXWELL'S ALLEGED "FLIGHT"          32

VI.     THE GOVERNMENT CONCEDES THAT IT WILL NOT OFFER EVIDENCE OF MS. MAXWELL'S ALLEGED FALSE STATEMENTS AND AGREES TO MS. MAXWELL'S PROPOSED REDACTIONS32

VII.    THE COURT SHOULD HOLD A PRE-TRIAL EVIDENTIARY HEARING ON MS. MAXWELL'S MOTION TO SUPPRESS IDENTIFICATION.     32

VIII.   GOVERNMENT AGREES NOT TO ELICIT LAW ENFORCEMENT OPINION TESTIMONY 35

IX.     THE COURT SHOULD PRECLUDE TESTIMONY ABOUT ANY ALLEGED "RAPE" BY JEFFREY EPSTEIN     36

XII.    REFERENCE TO ACCUSERS AS "VICTIMS" IS IMPROPER VOUCHING     38

XIII.   THE COURT SHOULD PRECLUDE INTRODUCTION OF GOVERNMENT EXHIBITS 52, 251, 288, 294, 313, 606 AND THE SEARCH OF EL BRILLO WAY     41

    A.  The Court Should Exclude the Challenged Government Exhibits .............................. 41

    B.  Government Exhibit 52 ........................................................................................... 42

    C.  The Palm Beach Search of El Brillo Way................................................................ 42

    D.  ██████████████████ ........................................................................... 43

    E.  The Twin Torpedoes............................................................................................... 43

    F.  Government Exhibit 313 ......................................................................................... 44

    G.  Government Exhibit 606 ......................................................................................... 44

# TABLE OF AUTHORITIES

**Cases**

*Bosco v. United States*, No. 14 CIV. 3525 (JFK), 2016 WL 5376205 (S.D.N.Y. Sept. 26, 2016)19

*Cf. State v. Wigg*, 889 A.2d 233 (Vt. 2005) ........ 40

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) ........ passim

*Dougherty v. County of Suffolk*, No. CV 13-6493 (AKT), 2018 WL 1902336 (E.D.N.Y. Apr. 20, 2018) ........ 41

*Esquivel-Quintana v. Sessions*, 137 S. Ct. 1562 (2017) ........ 30

*Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461 (S.D.N.Y. 2005) ........ 41

*Lott v. United States*, 218 F.2d 675 (5th Cir. 1955) ........ 5

*Old Chief v. United State*s, 519 U.S. 172 (1997) ........ 38

*People v. Davis*, 423 N.Y.S.2d 229 (N.Y. App. Div. 1979) ........ 39

*Raheem v. Kelly*, 257 F.3d 122 (2d Cir. 2001) ........ 34

*Ricketts v. City of Hartford*, 74 F.3d 1397 (2d Cir.1996) ........ 41

*Solomon v. Smith*, 645 F.2d 1179 (2d Cir. 1981) ........ 34

*State v. Cortes*, 851 A.2d 1230 (Conn. App. Ct. 2004) ........ 39

*State v. Sperou*, 365 Or. 121, 131, 442 P.3d 581 (2019) ........ 40

*Talkington v. State*, 682 S.W.2d 674 (Tex. App. 1984) ........ 39

*United States v. Angelilli*, 660 F.2d 23 (2d Cir. 1981) ........ 8

*United States v. Arroyo*, 600 F. App'x 11 (2d Cir. 2015) ........ 7

*United States v. Bagaric*, 706 F.2d 42 (2d Cir. 1983) ........ 26

*United States v. Bocio*, 103 F. Supp. 2d 531 (N.D.N.Y. 2000) ........ 2

*United States v. Bozeman*, No. 3:11-CR-129, 2012 WL 1071207 (E.D. Tenn. Mar. 29, 2012) ..... 3

*United States v. Brewington*, No. 15-CR-00073-PAB, 2018 WL 1411274 (D. Colo. Mar. 21, 2018) ........ 3

*United States v. Burns*, No. 07 CR 556, 2009 WL 3617448 (N.D. Ill. Oct. 27, 2009) ........ 20, 21

*United States v. Cummings*, 60 F. Supp. 3d 434 (S.D.N.Y. 2014) ........ 26

*United States v. Curley*, 639 F.3d 50 (2d Cir. 2011) ........ 26

*United States v. Curley*, No. S1 08 Cr. 404 (SCR), 2009 WL 10688209 (S.D.N.Y. Jul. 15, 2009) ........ 26

*United States v. D'Amelio*, 683 F.3d 412 (2d Cir. 2012) ........ 14

*United States v. Dupre*, 462 F.3d 131 (2d Cir. 2006) ........ 14

*United States v. Ehrens*, No. CR-15-200-C, 2015 WL 7758544 (W.D. Okla. Dec. 1, 2015) ...... 39

*United States v. English*, No. 18 Cr. 492 (PGG) (S.D.N.Y. 2020) ................................ 37

*United States v. Golyansky*, 291 F.3d 1245 (10th Cir. 2002) ....................................... 4

*United States v. Gonyer*, No. 1:12-CR-00021-JAW, 2012 WL 3043020 (D. Me. July 24, 2012) 20

*United States v. Graham*, No. 14 Cr. 500 (NSR), 2015 WL 6161292 (S.D.N.Y. Oct. 20, 2015) 38

*United States v. Gross*, 15-cr-769 (AJN), 2017 WL 4685111 (S.D.N.Y. Oct. 18, 2017) ........... 14

*United States v. Jacobs*, 650 F. Supp. 2d 160 (D. Conn. 2009) ..................................................... 2

*United States v. LaFlam*, 369 F.3d 153 (2d Cir. 2004) ................................................ 7

*United States v. Lee*, 834 F.3d 145 (2d Cir. 2016) ....................................................... 4

*United States v. Lewis*, 818 F. App'x 74 (2d Cir. 2020) ............................................. 15

*United States v. Lincoln*, No. 19-CR-6047 (CJS), 2019 WL 719822 (W.D.N.Y. Dec. 23, 2019) 28

*United States v. Moccia*, 681 F.2d 61 (1st Cir. 1982) .................................................. 38

*United States v. Mollica,* 849 F.2d 723 (2d Cir. 1988) ............................................... 14

*United States v. Nektalov*, 325 F. Supp. 2d 367 (S.D.N.Y. 2004) ......................... 29, 37

*United States v. Pineros*, 532 F.2d 868 (2d Cir. 1976) ................................................. 4

*United States v. Raniere*, No. 18-CR-2041-NGG-VMS, 2019 WL 2212639 (E.D.N.Y. May 22, 2019) ................................................................................................................. 20, 23

*United States v. Raymond*, 700 F. Supp. 2d 142 (D. Me. 2010) ...................... 20, 21, 22

*United States v. Rigas*, 490 F.3d 208 (2d. Cir. 2007) ................................................ 14

*United States v. Salmonese,* 352 F.3d 608 (2d Cir. 2003) ......................................... 14

*United States v. Schneider*, No. CRIM.A. 10-29, 2010 WL 3734055 (E.D. Pa. Sept. 22, 2010) 20, 41

*United States v. Sena*, No. 19-CR-01432, 2021 WL 4129247 (D.N.M. Sept. 9, 2021) ......... 39, 40

*United States v. Sliker,* 751 F.2d 477 (2d Cir.1984) .................................................. 41

*United States v. Smalls*, No. CR 06-2403 RB, 2008 WL 11361098 (D.N.M. Jan. 24, 2008) ........ 3

*United States v. Stein*, 521 F. Supp. 2d 266 (S.D.N.Y. 2007) ..................................... 38

*United States v. Townsend*, No. S1 06 CR. 34 (JFK), 2007 WL 1288597 (S.D.N.Y. May 1, 2007) ................................................................................................................. 29, 36

*United States v. Tracy*, 12 F.3d 1186 (2d Cir.1993) ..................................................... 5

*United States v. Velez*, No. 3:10CR147 JBA, 2010 WL 4929266 (D. Conn. Nov. 30, 2010) ........ 3

*United States v. Vickers*, 708 F. App'x 732 (2d Cir. 2017) ................................... 28, 31

*United States v. Von Foelkel*, 136 F.3d 339 (2d Cir. 1998) ........................................ 26

*United States v. Walia*, No. 14–CR–213 (MKB), 2014 WL 3734522 (S.D.N.Y. Jul. 25, 2014) . 25

*United States v. Williams*, 506 F.3d 151 (2d Cir. 2007) ............................................. 22

**Statutes**

18 U.S.C. § 1591 ............................................................................................................. 37

18 U.S.C. § 2422 ............................................................................................................. 28

18 U.S.C. § 2423(a) ......................................................................................................... 28

N.Y. Penal Law § 130.55 ................................................................................................ 28

**Other Authorities**

6 Handbook of Fed. Evid. § 801:25 (9th ed.) ................................................................. 5

**Rules**

Fed. R. Crim. 16 .............................................................................................................. 17

Fed. R. Evid. 104 ............................................................................................................. 41

Fed. R. Evid. 401 ........................................................................................................ 22, 43

Fed. R. Evid. 402 ............................................................................................. 10, 16, 43, 44

Fed. R. Evid. 403 ................................................................................................... passim

Fed. R. Evid. 404(b) .............................................................................................. passim

Fed. R. Evid. 412 ................................................................................................. 14, 18, 22

Fed. R. Evid. 702 ................................................................................................. 17, 21, 22

Fed. R. Evid. 801 ..................................................................................................... 2, 3, 5

Ghislaine Maxwell hereby submits her Reply In Support of Her Motions *in Limine*.

## I.   THIS COURT SHOULD PRECLUDE INTRODUCTION OF ALLEGED CO-CONSPIRATOR STATEMENTS AS A SANCTION FOR GOVERNMENT'S FAILURE TO COMPLY WITH THIS COURT'S SEPTEMBER 3, 2021 ORDER

The government offers several excuses for its failure to comply with this Court's September 3, 2021 Order. These excuses are insufficient and should be rejected.

### A.   The Court's Order was Neither Ambiguous Nor Misread by the Defense

First, the government suggests that Ms. Maxwell has misread the Order. We disagree. The Court unambiguously rejected the government's position and ruled that the government's expressed concern about disclosure "does not outweigh the risk of surprise to the Defendant in this case or the need for the parties to litigate co-conspirator issues in advance of trial to ensure the absence of delay." Dkt. 335 at 3. To both "avoid the risk of surprise" and "litigate co-conspirator issues in advance of trial to ensure the absence of delay, " the Court identified two things that were necessary from the government:  *First*, no later than October 11, 2021, the government was required to "disclose to the defense the identities of any unnamed co-conspirators who allegedly participated in the conspiracies charged in the S2 indictment to whom the government will refer at trial." *Id. Second*, the Court, unambiguously and emphatically, directed: "The Government is FURTHER ORDERED to disclose *all* co-conspirator hearsay statements it intends to offer at trial no later than October 11, as consistent with this Court's scheduling order. Dkt. No. 297 at 1." (emphasis in original.)

The Court used the word "disclose" both as to the identity of the co-conspirators "to whom the government will refer at trial" and "*all* co-conspirator hearsay statements it intends to offer at trial…." The government, in an attempt to blunt the Order, decided to interpret the same word, "disclose" in materially distinct fashions. As to the identity of the co-conspirators, the government disclosed (*i.e*., identified) three names. When it was parsing the second part of

the Order, however, the government defined the word "disclose" differently. Disclose, as to the actual statements, according to the government, means "produced" at some time in the past or to be produced in the future, perhaps as an oral statement during trial.

Of course, the Court will tell the parties whether it meant two completely different things when it used the same word, as argued by the government, or whether it intended for the government to disclose the statements it intends to offer as co-conspirator statements. To avoid delay over this issue during trial, Ms. Maxwell suggests that she cannot litigate this issue in advance of trial without knowing what statements are being offered under Federal Rule of Evidence 801(d)(2)(e).

What is clear from the government's response is not that it misunderstood the Order, but rather, it *continues to disagree* with the Order.

### B.   The Court Has the Authority to Require Disclosure

Second, doubling down on its disagreement with the Court,  the government claims "it is aware of no such case" in which a court ordered the identification of anticipated co-conspirator statements prior to trial. While the government may not be "aware" of such cases, they certainly, and abundantly, exist.

In *United States v. Bocio*, 103 F. Supp. 2d 531, 534 (N.D.N.Y. 2000), the court ordered pretrial disclosure  of statements of co-conspirators (Government "must disclose to the defendant and make available for inspection, copying, or photographing: any relevant written or recorded statements ..., or copies thereof, within the possession, custody, or control of the government.").

In *United States v. Jacobs*, 650 F. Supp. 2d 160, 171 (D. Conn. 2009), the court ordered co-conspirator statements be produced in advance of trial ("In the case of a co-conspirator who the government plans to call as a witness at trial, that time is now, and the government is directed to produce any relevant statement to defense counsel forthwith.")

2

In *United States v. Velez*, No. 3:10CR147 JBA, 2010 WL 4929266, at *7 (D. Conn. Nov. 30, 2010), the defendant moved for disclosure of any co-conspirator statements in advance of trial. In response, the government agreed to disclose "well in advance of trial, exactly which of the intercepted telephone calls will be offered as full exhibits at trial and transcripts of those calls will be provided in advance of trial." Based on that representation the court denied the motion to produce as moot, "without prejudice to renew if the Government fails to comply with its ongoing disclosure obligations." *Id*.

In *United States v. Smalls*, No. CR 06-2403 RB, 2008 WL 11361098, at *8–9 (D.N.M. Jan. 24, 2008), the court's order was very detailed:

The United States is hereby instructed to:

file a supplemental brief identifying the summary witness; specifically identifying each and every coconspirator statement it intends to offer at trial as evidence against Defendants pursuant to Fed. R. Evid. 801(d)(2)(E); and stating how each proffered statement satisfies the requirements of Rule 801(d)(2)(E). Specifically, with respect to each alleged coconspirator statement, the United States must indicate: a) the identity of the coconspirator who made the alleged statement; b) the identity of the person or persons to whom the coconspirator statement was made; c) the identity of the witness who will testify at trial about the coconspirator statement; d) the content of the coconspirator statement; e) when the statement was made; f) how the statement is in the course of the alleged conspiracy; and g) how the statement is in furtherance of the alleged conspiracy. Additionally, the United States must identify the independent evidence it intends to offer in support of admission of the alleged coconspirator statements.

*See also United States v. Brewington*, No. 15-CR-00073-PAB, 2018 WL 1411274, at *3 (D. Colo. Mar. 21, 2018) (court required the government to identify and produce all its purported 801(d)(2)(e) statements, in the hundreds; held an evidentiary pre-trial hearing about the admissibility of those statements; and made detailed, statement by statement rulings about admissibility, excluding some and conditionally admitting others); *United States v. Bozeman*, No. 3:11-CR-129, 2012 WL 1071207, at *14 (E.D. Tenn. Mar. 29, 2012), *aff'd*, No. 3:11-CR-

129-1, 2012 WL 1565099 (E.D. Tenn. May 1, 2012) (government must disclose any statements of co-conspirators that it intends to use at trial three weeks prior to the trial).

There is ample legal authority for the Court to enter the Order to avoid delays and arguments during trial about what statements are or are not within the 10-year conspiracy alleged here and to prevent surprise and prejudice to the Defendant.

### C.   There Should Be a Sanction

Hedging its bets, the government acknowledges that it "may have misread the court's order" but offers no solution other than the defense is "free to litigate the admissibility of any such statement during trial." This was the government's losing argument before the Order.

District courts have broad discretion to sanction a party who violates discovery orders. *United States v. Golyansky*, 291 F.3d 1245, 1249 (10th Cir. 2002). In considering a particular remedy for a violation, the factors considered are "the reasons why disclosure was not made, the extent of the prejudice, if any, to the opposing party, the feasibility of rectifying that prejudice by a continuance, and any other relevant circumstances." *United States v. Lee*, 834 F.3d 145, 159 (2d Cir. 2016) (quoting *United States v. Pineros*, 532 F.2d 868, 871 (2d Cir. 1976)). The appropriate remedy is exclusion. Ms. Maxwell has been in jail for approximately 18 months. She is trying not to request a continuance of the trial and her lawyers are making every effort to review massive amounts of discovery, interview potential witness, prepare for trial, and juggle a myriad of other responsibilities. The government offers no legitimate excuse for non-compliance. It clearly knows what statements it will try to introduce, it just does not want to tell anyone to avoid challenges to the statements. This is willful, not negligent or inadvertent conduct which should not be sanctioned by the Court.

### D.   There are Substantial Issues with the Government's Anticipated Position

For a statement to fall within the definition of Fed. R. Evid. 801(d)(2)(E), "a court must find (1) that there was a conspiracy, (2) that its members included the declarant and the party against whom the statement is offered, and (3) that the statement was made both (a) during the course of and (b) in furtherance of the conspiracy." *United States v. Tracy*, 12 F.3d 1186, 1196 (2d Cir. 1993). A cursory review of the discovery produced related to one purported co-conspirator demonstrates the folly of proceeding as the government persists.

The government failed to follow the Court's Order and fails to explain why it did not disclose the statements as ordered. Accordingly, the Court should prohibit introduction of any alleged co-conspirator statements at trial.

## II.   GOVERNMENT CONCEDEDLY FAILED TO GIVE NOTICE OF THE BASIS OR REASONING TO ADMIT *ANY* 404(B) EVIDENCE

The government concedes that (i) it was aware of the December 2020 Amendments to Rule 404(b) (Resp. at 34), (ii) those Amendments required it to give notice of the "*permitted purpose* for which the prosecutor intends to offer the [404(b)] evidence and the *reasoning* that supports the purpose" (*id.*) ("Notice"), and (iii) the October 11th "Maxwell Rule 404 Letter" ("Letter") did not identify the "permitted purpose" under Rule 404(b) for which the government seeks (alternative) admission of the two categories of evidence, nor the "reasoning that supports that evidence."[1]   The government wholly fails to explain *why* it could not comply with these "relatively modest" new Notice requirements on the timeline ordered by this Court.   Nowhere in response does the government seek leave for an extension to provide the appropriate Notice out of time nor justify its "good cause" for failure to timely comply with both the Court's Order and the Rule.   Instead, they assert that "any alleged gap in the Government's notice is remediated by this brief."   Resp. at 39-40.   To quote the government's response to Ms. Maxwell's motion in *limine*, "to the extent the [government] takes issue with the rule" requiring specific pre-trial Notice under Rule 404(b), "that complaint is properly directed to the drafters of the Federal Rules of Evidence."   Resp. at 61 n.15.

Having failed to comply with the Notice requirements of the Rule by the (extended) Court ordered deadline of October 11, the government belatedly argues that the tendered evidence is either direct evidence or admissible under Rule 404(b).   They are wrong on both fronts.

---

[1] Under the misleading and disingenuous sub-heading (2) ("The Government has Met and Exceeded its Notice Obligations"), the government points only to its (i) October 11 disclosure of certain of the *evidence* (which gives neither a a proper "purpose" or "reasoning"), and (ii) its Response (the required "notice is remediated by this brief").

"In assessing whether a district court properly admitted other act evidence, we consider whether (1) it was offered for a proper purpose; (2) it was relevant to a material issue in dispute; (3) its probative value is substantially outweighed by its prejudicial effect; and (4) the trial court gave an appropriate limiting instruction to the jury if so requested by the defendant." *United States v. Arroyo*, 600 F. App'x 11, 13 (2d Cir. 2015) (summary order) (quoting *United States v. LaFlam*, 369 F.3d 153, 156 (2d Cir. 2004). ██████████ are offered for improper purposes, i.e., propensity, are not relevant to any material issue in dispute and their probative value is substantially outweighed by their prejudicial effect.

A. ██████████ **Bear No Relationship to the Charged Conspiracy, Reflect Pure Propensity Evidence, and Otherwise are Unduly Prejudicial** ██████████

The government's argument for admissibility of ██ ██████ is breathtaking in its claims and unsupported by admissible evidence.  Without expert testimony or even bothering to interview ██████████, the government contends ██████████ represent "direct evidence" of a conspiracy (to recruit, groom, and sexually abuse *minor females* or to entice, transport or traffic them for Jeffrey Epstein's sexual pleasure) that ██████████

██████████

██████████

██████████ Resp. at 36.

██████████

██████████

██████████

---

[2] The proffered evidence is found at GX 401-404, 409-410 and 413 ██████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████

The government contends that ████████ reveal "defendant's intent and motive," but their argument is defies logic. ███████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████ This is exactly the type of evidence forbidden by Rule 404(b). *See United States v. Angelilli*, 660 F.2d 23, 40–41 (2d Cir. 1981) ("While we conclude that the custom and practice evidence was admissible for the purposes we have discussed, we agree with the defendants that Rule 404(b) barred its use to prove that the individual defendants acted in conformity with the custom and practice. …").

Even if the Court overlooks the government's failure to provide notice, ████████ absence of relevance to the charged conspiracy, and the government's failure to set forth a non-propensity ground for admissibility, ███████ should also be excluded under Rules 401 and 403, as they do not tend to make any fact of consequence more or less probable, and their probative value is substantially outweighed by the danger of unfair prejudice and confusing the issues. ████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████████████████████

███████████████████████████████████ ▪

██████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████████████████

_____

▪ █████████████████████████████████████████████████████
██████████████████████████████████████████████
███████████████████████████████████████

██████████████████████████████████████████
█████████████████████████████████████████████████████
█████████████████████████████████████████████████████
█████████████████████████████████████████████████████
██████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████

   █████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████████

██████████████████████ ████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████

   █████████████████████████████████████████████

████████████████████████████████████████████████████ Ms.

Maxwell strongly disputes that suggestion.  Notably, as the Court can tell, the government did

not offer any evidence (or any offer of proof in their Response) that this document *was* in fact

───────────────────────────

   █ ████████████████████████████████

drafted by Ms. Maxwell. *Compare* GX 417-B, 418-B, 420-B, 420-B (all purporting to represent metadata of other emails with the author identified). ███████████████████

███████████████████████████████████████████

███████████████████████████████████

███████████████████████████ Such arguments are based on outdated stereotypes and reveal a reliance on character evidence that the Rules of Evidence specifically disallow.

This Court should reject the belated, insufficient, improper argument that █████████ are direct evidence of the charged conspiracy, should find they are propensity evidence barred by Rule 404(b) and should also exclude them under Rule 403 as more prejudicial than probative.

**B.** █████████████████

████████████████████████

███████████████████████████████████

████████████████████████████

██████████████████████████████

██████████████████████████████

██████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

████████████████████████████████

███████████████████████████

████████████████████████████████████████████████████

████

    **1.**   ████████████████████████████████

        ████████████████████████████████████

████████████████████ ████ █████████████████████████

████████████████████████ Mot. at 7.  Defense counsel had insufficient time to

review, investigate or rebut the admissibility of the materials as direct evidence less than one

week later on October 18th.  For that reason, the Motion did not move to exclude the evidence as

direct evidence but rather sought additional time in which to do so.  Given the drafting of

hundreds of pages of pleadings in the last week, counsel is still unprepared to make the required

showing on the direct evidence point and seeks additional time in which to do so.  ████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████

---

[5] Bear in mind that the government also moved to *exclude* evidence that these same "abused" individuals reported to the police that they had no interactions or dealings with Ms. Maxwell.  Gov't Motion in Limine at 42 ("The defendant is not charged with committing crimes against [the] victims [who reported that they had no interactions or dealings with Ms. Maxwell].")  The fact that the government clearly intends to rely on how open the alleged abuse was, the relevance of evidence that even the people who claim they were abused by Epstein during the same time frame but without any knowledge or participation by Ms. Maxwell becomes highly relevant to rebut such testimony.

### 2. The government has apparently abandoned efforts to introduce her testimony as Rule 404(b) evidence.

In their response, the government still fails to comply with the new Rule 404(b) notice requirements.  First, they do not actually identify the evidence with any specificity, especially with respect to the "exhibits" that they hope to introduce through her.  Second, while they use the words "plan and preparation" or "knowledge," they fail to explain how those uses of the testimony are independent of the character / propensity inference banned by Rule 404(b).  How are the process and frequency of massages or the sexual nature of massages *after the period of the conspiracy* proof of a plan or preparation, apart from the propensity inference?  A plan or preparation usually comes *before* an event.  Planning or preparing for something after it has occurred can only be based on an assumption that because you are the kind of person who solicits underage massages later, you must have been the kind of person to do so earlier.  Similarly, knowledge *after* the end of the conspiracy is not the same as *knowledge* at the time of or before the purported charged acts occurred, except by way of propensity.  Finally, unspecified exhibits, many of which appear to have been written *after* the conspiracy (e.g., GX 505 – dated Feb. 14, 2005) cannot likewise be proof of the charged crimes which were allegedly completed before ▆▆▆▆▆ showed up.

Because the government makes no effort to argue the non-propensity purpose for these uses of ▆▆▆▆▆ via Rule 404(b), and failed to give notice of the purposes or reason in advance in any event, this Court should exclude the evidence on this ground.

### 3. ▆▆▆▆▆▆▆▆▆▆ constitutes an impermissible constructive amendment and variance to the Indictment.

Finally, what is clear from the government's proffer in their Response, the anticipated testimony of ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆, will serve as an improper constructive

amendment to, and an impermissible variance of, the Indictment.  As this Court previously has

ruled:

> "To prevail on a constructive amendment claim, a defendant must demonstrate that
> 'the terms of [an] indictment are in effect altered by the presentation of evidence
> and jury instructions which so modify *essential elements* of the offense charged that
> there is a substantial likelihood that the defendant may have been convicted of an
> offense other than that charged in the indictment." *United States v. D'Amelio*, 683
> F.3d 412, 416 (2d Cir. 2012) (quoting *United States v. Mollica,* 849 F.2d 723, 729
> (2d Cir. 1988)). Because the doctrine of constructive amendment protects a
> defendant's Grand Jury Clause rights, a constructive amendment constitutes a "per
> se violation" of the defendant's constitutional rights—i.e. there is no requirement
> that a defendant make a specific showing of prejudice. *Id.* at 417. In contrast to a
> constructive amendment, "[a] variance occurs when the charging terms of the
> indictment are left unaltered, but the evidence at trial proves facts materially
> different from those alleged in the indictment." *Id.* (quoting *United States v.
> Salmonese,* 352 F.3d 608, 621 (2d Cir. 2003)).

*United States v. Gross*, 15-cr-769 (AJN), 2017 WL 4685111, at *20 (S.D.N.Y. Oct. 18, 2017).

As this Court then recognized, the Second Circuit has consistently relied on the same

start and end dates of a conspiracy to find that differing trial proof did not affect a constructive

amendment or variance.  *See id.* ("The indictment and the evidence at trial contained the same

starting and ending dates of the conspiracy…") (quoting *United States v. Rigas*, 490 F.3d 208,

229 (2d. Cir. 2007)); *see also United States v. Dupre*, 462 F.3d 131, 141 (2d Cir. 2006) ("The

starting and ending dates of the conspiracy noted in the indictment correspond to the conspiracy

proven at trial…").  Conversely, the substantial quantity of testimony – for the post-conspiracy

time period of █████████████████████████████████████████████████

███████, who never met any of the four accusers as far as can be gleaned, and the documents she

intends to authenticate, run a substantial risk that the government's proof at trial will *not* be the

same core evidence charged in the Indictment because it will be based on evidence that post-

dates the events charged in the Indictment.

**C.  Ms. Maxwell reiterates her request to defer briefing and ruling on the admissibility of ███████ ████████████ and exhibits for two weeks.**

For the reasons already detailed, the complexity of the issues and the fact that ██ ████████ recently disclosed testimony appears to be of utmost centrality to the government's case, Ms. Maxwell repeats and reiterates her request that she be afforded additional time to submit a comprehensive motion in *limine* concerning the introduction of this testimony and exhibits as supposed direct evidence of the charged conspiracy.  In that there remains a full month before opening statements, Ms. Maxwell's fundamental rights to present a defense, to have the effective assistance of counsel, and to a right to confront witnesses and subpoena witnesses to testify in her defense all will be preserved by a small delay on this issue.

**III.  THIS COURT SHOULD EXCLUDE LISA ROCCHIO'S TESTIMONY UNDER FEDERAL RULE OF EVIDENCE 702 AND *DAUBERT V. MERRELL DOW PHARMACEUTICALS, INC.*, 509 U.S. 579 (1993) AND GRANT A *DAUBERT* HEARING**

**A.  This Court should reject the government's arguments to the extent that they are based on newly disclosed material, which this Court ordered the government to produce six months ago.**

Recognizing that Rocchio's proposed testimony is on shaky ground (to say the least), the government belatedly tries to shore up its case and hoist up its expert witness. Two days ago, and *six months after the court-imposed deadline for expert disclosures*, the government first disclosed to defense counsel about 300 pages of material on which Rocchio apparently relied in reaching her conclusions. This Court should reject the government's untimely effort to save Rocchio's testimony from exclusion. *See United States v. Lewis*, 818 F. App'x 74, 79 (2d Cir. 2020) (unpublished) (affirming exclusion of defendant's proffered expert evidence "that did not adhere to the discovery schedule").

15

In any case, the newly discovered material doesn't help the government's cause. Exhibit A (literally) to the government's response is a journal article describing "grooming" as a "construct." Resp, Ex. A, Natalie Bennett & William O'Donohue, *The Construct of Grooming in Child Sexual Abuse*, 23 J. Child Sexual Abuse 957, 974 (2014). (In fact, Ms. Maxwell cited this article in her motion.) Far from supporting Rocchio's conclusions, the article proves their unreliability:

> There have been claims that some child molesters engage in a "seduction stage" prior to committing abuse. These behaviors, commonly known as "grooming," are understood as methods child molesters use to gain access to and prepare future victims to be compliant with abuse. *However, there is a lack of consensus regarding exactly what this process entails and how it is clearly distinguished from normal adult–child interactions. . . . Furthermore, there are no methods of known psychometrics to validly assess grooming.*

Gov't Resp., Ex. A, p 2 (emphasis added). The article concludes:

> Currently there is no consensus regarding how to define grooming. In addition, there is no valid method to assess whether grooming has occurred or is occurring. The field possesses an insufficient amount of knowledge about key issues such as the interrater reliability of these judgments or the error rates of these judgments including the frequency of false negatives or false positives. *Thus currently it appears that grooming is not a construct that ought to be used in forensic settings as it does not meet some of the criteria in the* Daubert *standard. . . . Right now it does not appear to be the case that there are "reliable principles and methods" to define and detect grooming.*

*Id.* at 19 (emphasis added).

Because the government cannot justify admission of Rocchio's testimony based on its prejudicially late disclosures, and because those disclosures don't support Rocchio's views, and underscore that "grooming" is not a scientific principle based on psychometric testing, this Court should preclude Rocchio from testifying. And as explained below, the government's other defenses of Rocchio fall far short of what is required by Rules 401, 402, 403, 404, 702, and 704.

**B.   Rocchio's proposed testimony is inadmissible.**

According to the government, Ms. Maxwell "does not contest that Dr. Rocchio is a qualified expert." Resp. at 9. To the degree that Dr. Rocchio has the credentials of a *potential* expert, the government is right.

But saying that Rocchio is a "qualified expert" is not enough. The government must identify what Rocchio is an expert in.  Fed. R. Evid. 702; Fed. R. Crim. 16.  As Ms. Maxwell pointed out in her motion, the government hasn't done that.  Mot. at 2.

What's more, even if Rocchio is a "qualified expert" in something, she is not a "qualified expert" in everything. (For example, the government agrees that she is not an expert in the human brain or memory generally. Resp. at 30 n.7.) And as even the government admits, Rocchio has *no* experience or expertise in diagnosing, evaluating, or treating alleged perpetrators of sexual abuse. Resp. at 19, 23, 26. She cannot therefore speak to the psychology of alleged perpetrators and their so-called "grooming techniques."

The government attempts a two-step to get around this problem. "By virtue of experience treating victims," says the government, "Dr. Rocchio is necessarily informed about perpetrators' actions." Resp. at 19.

But how does Rocchio know her patients were victims of sexual abuse?  Because her patients told her so, and Rocchio assumes they are telling the truth. Again, Rocchio's opinions are based on her treatment of a self-selected, unrepresentative group of individuals she assumes are telling the truth and are therapeutic consumers in a financial relationship with her.

The government has no response to this, other than to say that Rocchio and other "[c]linical psychologists are not so credulous." Resp. at 16.  If this were right, though, one would expect the government to explain how clinical psychologists ensure their patients are telling the truth — in other words, how clinical psychologists like Rocchio test and verify their opinions.

17

But that's not what the government does. Instead, right after claiming that "[c]linical psychologists are not so credulous," the government essentially says to Ms. Maxwell, "How dare you?" In the government's words, "The Court should reject the defendant's speculative claim that Dr. Rocchio has been misled by hundreds of patients who sought professional treatment for traumatic events that did not occur." Resp. at 16.

In this way, and in one breath, the government attests that Rocchio is "not so credulous." But in the next breath, the government asks this Court to assume that Rocchio "has [not] been misled by hundreds of patients who sought professional treatment for traumatic events that did not occur." In other words, the government asks this Court to assume Rocchio's patients are telling the truth, just as Rocchio does. Apparently Rocchio *is* "so credulous." But there is no reason this Court should be.

The government next notes that the term "grooming-by-proxy" "appears nowhere in the Government's expert notice." Resp. at 26. That's hardly surprising, though, because there is no reliable way to assess or analyze if one individual "grooming" a minor to facilitate abuse by someone else, even though that is exactly what the government says Ms. Maxwell did.

As detailed today is Ms. Maxwell's Rule 412 motion, the Indictment alleges "grooming" or "normalization" of sexual behavior by Ms. Maxwell over a dozen times. The government does not, however, contend that Ms. Maxwell "groomed" anyone for her own benefit; instead, the government contends that she "groomed" them for Epstein's benefit. But as the government does not dispute, there is nothing—not a journal article, and not a study, nothing—to validate Rocchio's opinions on grooming-by-proxy (even if she doesn't use that phrase).[6]

---

[6] The articles and cases the government cites involve alleged grooming behavior by the preparator of the abuse, not alleged grooming behavior by a third party.

Recognizing that Rocchio's opinions are thus unreliable, the government says: "If the victim experienced attachment and grooming, it makes no analytical difference whether the perpetrator intends to engage in sexual contact with the victim or, instead, is preparing the victim for abuse by a third party." Resp. at 26.

Hardly. It makes all the difference in the world because Ms. Maxwell is on trial, not Mr. Epstein. The logic (such as it is) of grooming evidence is that the perpetrator normalizes sexual behavior to facilitate his later abuse of the victim. But because Ms. Maxwell did not abuse anyone, there is no basis to conclude that anything she did was "grooming." The government thus intends to have Rocchio characterize innocent conduct by Ms. Maxwell as something more nefarious, thereby further blurring the line that experts are already unable to draw reliably. Resp. Ex. A, p 2 ("There is a lack of consensus regarding exactly what [the grooming] process entails and how it is clearly distinguished from normal adult–child interactions.").

The government's additional arguments fail.

- A psychologist who treats alleged victims of abuse but does not treat alleged perpetrators is nothing like a urologist who treats urology patients. Resp. at 11 (citing *Bosco v. United States*, No. 14 CIV. 3525 (JFK), 2016 WL 5376205 (S.D.N.Y. Sept. 26, 2016)). Rocchio assumes her patients are telling the truth, and she never hears or credits the other side of the story. The urologist, by contrast, has scientific means to verify what her patients tell her, and there isn't another person whose side of the story she needs to hear.

- The government repeatedly says that "courts have frequently admitted testimony about the psychological relationship between victims of sexual abuse and their perpetrators." Resp. at 13. *See also id.* at 7-8. But those cases do not address the

19

situation here, in which the alleged "groomer" was not the person who perpetrated the alleged abuse.

- Even where the "groomer" and "perpetrator" are the same person, courts have recognized the unreliability of grooming testimony. *United States v. Gonyer*, No. 1:12-CR-00021-JAW, 2012 WL 3043020, at *2-3 (D. Me. July 24, 2012); *United States v. Raymond*, 700 F. Supp. 2d 142, 146-47 (D. Me. 2010); *United States v. Schneider*, No. CRIM.A. 10-29, 2010 WL 3734055, at *4 (E.D. Pa. Sept. 22, 2010); *see also United States v. Raniere*, No. 18-CR-2041-NGG-VMS, 2019 WL 2212639, at *7 (E.D.N.Y. May 22, 2019); *United States v. Burns*, No. 07 CR 556, 2009 WL 3617448, at *5 (N.D. Ill. Oct. 27, 2009) (criticizing the "grooming theory" in the context of a sentencing guidelines calculation).

- The government tries to distinguish *United States v. Raymond* by saying that the expert's own book in that case "disavow[ed] [its] reliability . . . for legal use." Resp. at 14. But that is exactly the situation here, because the primary article on which the government relies—Exhibit A to its response—flatly says "that grooming is not a construct that ought to be used in forensic settings as it does not meet some of the criteria in the *Daubert* standard." Resp., Ex. A, p 19.

- The government says Rocchio's opinions are not "anecdotal." But that's not right either, as her endorsement makes clear: Rocchio's opinions are based "on her education and training on psychological trauma, traumatic stress, interpersonal violence, and sexual abuse *[and her] extensive clinical experience treating individuals who suffered sexual abuse and trauma in childhood and adolescence,*

*as well as [her] experience conducting forensic psychological evaluations of*

*people who have experienced sexual abuse and trauma*." Mot. Ex. 1, p 2.

- The government tries to disclaim the importance of error rates. Resp. at 15-17. But it's not just that Rocchio cannot identify an error rate, it's that her implicit conclusion is that she *doesn't have an error rate*. That is, all her patients are telling the truth when they say they were groomed, so any evidence that matches what her patients have told her is therefore evidence of grooming.

- But even if the error-rate discussion were misplaced, that doesn't mean Rocchio's opinions are reliable. As a "qualitative" matter, and as the government's own Exhibit A concedes, there are no "'reliable principles and methods' to define and detect grooming." Govt. Resp., Ex. A, p 19 (quoting Fed. R. Evid. 702).

- The government apparently expects that, "somehow, a lay jury without guidance [will] apply [Rocchio's] analyses reliably to the facts of a case in determining guilt." *See Raymond*, 700 F. Supp. 2d at 150 (rejecting argument that a jury could do just that). This Court should not, as the government request, simply punt the matter to the jury. Resp. at 17-18. The Court is the gatekeeper. It must ensure the evidence is reliable and relevant. If it's not both, it has no place in a criminal jury trial, because it will "radically simplify" an otherwise complex case, *Burns*, 2009 WL 3617448, at *5, and it will, as the United States Supreme Court has cautioned, prejudicially mislead the jury, *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993) ("Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it.").

21

- The government denies Ms. Maxwell's argument that "a lay jury will be unable to apply Dr. Rocchio's analyses to the facts of this case" because "[t]hat is not how Rule 702 works." Resp. at 20. Responds the government: "That is precisely how Rule 702 works in cases where experts testify about general principles, which the Rule contemplates." *Id.* at 21. Surely that is not right when, as here, the "general principles" are unreliable. Fed. R. Evid. 702, Advisory Committee Note (if expert testifies to general principles but not apply them, "the testimony [must] be reliable"). *See also* Mot. at 10; *Raymond*, 700 F. Supp. 2d at 150 n.12 (expert testimony about general principles is helpful only when it "describe[es] widely recognized and highly predictable and verifiable phenomena").

- The government attempts to fault Ms. Maxwell for making "no argument that the minor victims in this case are distinctive in some way such that general principles of psychology may diverge as to them." Resp. at 18. This argument flips the proper analysis on its head. It's the government's burden to prove reliability. *E.g.*, *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007). It's not Ms. Maxwell's burden to prove unreliability (though if it were her burden, she would have met it).

- The government says that "the causal connection between . . . psychological problems and child sexual abuse is outside the experience of the average juror" and is relevant to the alleged victims' credibility. Resp. at 24. It's not, and any minor probative value the evidence has is substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 401, 403. And as explained in the Rule 412 motion today, if Rocchio offers testimony and the government presents argument

22

along these lines, that will open the door to other sexual behavior evidence. That door can remain at least partially closed if Rocchio is not permitted to offer her irrelevant and unfairly prejudicial testimony.

- The government still hasn't explained how it helps the jury to be told that a victim of sexual abuse might make an immediate disclosure, or she might make an incremental disclosure, or she might make a delayed disclosure. Resp. at 27-30. And when the government says, "[s]exual abuse also impacts the way memory is encoded," that opinion is far outside Rocchio's expertise because the parties agree that she is not an expert in "the human brain or memory generally." Resp. at 30 n.7.

### C.  At a minimum, this Court should hold a *Daubert* hearing.

There is ample reason for this Court to exclude Rocchio's testimony outright. At the very least, Ms. Maxwell is entitled to a *Daubert* hearing. The government implicitly concedes as much. In a footnote, the government acknowledges the decision in *United States v. Raniere*, in which Judge Garaufis ordered a *Daubert* hearing on the government's proposed expert testimony on grooming. 2019 WL 2212639, at *7-8. In that case, however, the government withdrew its endorsement rather than submit to an *Daubert* hearing. Resp. at 19 n.3.

Judge Garaufis reasoned that even if other courts in other cases had admitted testimony about grooming, "that [did] not make Dr. Hughes's opinion about grooming techniques reliable under the *Daubert* standard," if only because "her extensive academic and clinical experience appears focused on victims of sexual abuse, not perpetrators." *See id.* at *7. The same is true here, particularly because Rocchio has no experience in, and there is no authority supporting her opinions on, grooming-by-proxy. Quite the contrary. The government's late-breaking disclosure states:

> *Thus currently it appears that grooming is not a construct that ought to be used in forensic settings as it does not meet some of the criteria in the* Daubert *standard. . . . Right now it does not appear to be the case that there are "reliable principles and methods" to define and detect grooming.*

*Id*. at 19 (emphasis added).

At a minimum, therefore, this Court should hold a *Daubert* hearing.

## IV. THE COURT SHOULD EXCLUDE EVIDENCE RELATED ████████████ ████████████

The government's arguments in favor of admitting evidence related ████████ ████████████████ as direct evidence of the charged conspiracies all but concede that the evidence is more appropriately considered under Rule 404(b).  In an effort to bolster their position, the government makes the sweeping assertion that as long as ████████████ was under the age of 18, her evidence is admissible as direct evidence of the conspiracy.  That is a fundamentally incorrect statement of the law and should be rejected.  The government's arguments for admitting ████████████ evidence under Rule 404(b) and for denying the defense's requested limiting instruction are similarly baseless.  The Court should therefore exclude evidence related to ████████████ or, if it is admitted, give the jury the requested limiting instruction.[7]

The government advances four principal arguments for why evidence related to ████████ ████████ should be admitted as direct evidence of the charged conspiracies: (1) her testimony allegedly shows a "pattern" of how Epstein and Ms. Maxwell sexually abused young women and establishes Ms. Maxwell's "intent" to participate in the charged conspiracies (Resp. at 45-46), (2) her allegations are included in the S2 Indictment and are therefore not covered by Rule

---

[7] As it pertains to ████████████ and the other accusers, the defense will be submitting proposed jury instructions and special verdict findings.

404(b) (*id*. at 46-47), (3) her evidence is "intrinsic" proof of the charged conspiracies and necessary to "complete the story" of the charged offenses (*id*. at 47-49), and (4) ████████ ████████ was under the age of 18, the age of consent under federal law, when the alleged sexual abuse took place, and that is "all that is required for evidence relating to the defendant's exploitation of Minor Victim-3 to be direct evidence of the charged offenses" (*id*. at 50).  The first is an argument for admission of this evidence under Rule 404(b), not as direct evidence of the conspiracy.  The second simply begs the question and assumes that the government can circumvent Rule 404(b) by alleging "other act" evidence in the indictment.  The third overlooks the numerous precedents in this Circuit finding that evidence of criminal offenses that are separate and distinct from the charged offenses are not admissible as direct evidence of a conspiracy.  And the fourth completely misstates the law.  These arguments should be rejected.

 <u>First</u>, the government argues that ████████████ evidence is admissible as direct evidence of the charged conspiracies because it is relevant to show the "pattern" of abuse— including "grooming" the accusers, encouraging them to give massages to Epstein, and asking them to recruit others—and her "intent" to participate in the charged conspiracies.  (*Id*. at 45-46). But "pattern" is just another word for "*modus operandi*," which along with "intent" are bases for admission under Rule 404(b), not as direct evidence of the conspiracies.  *See* Fed. R. Evid. 404(b) ("other act" evidence may be admissible to prove "motive, opportunity, *intent*, preparation, plan, knowledge, identity, absence of mistake, or lack of accident) (emphasis added); *United States v. Walia*, No. 14–CR–213 (MKB), 2014 WL 3734522, at *13 (S.D.N.Y. Jul. 25, 2014) (Rule 404(b) permits "other act" evidence to be admitted to prove "*modus operandi*").

The very case the government cites in support of their position, *United States v. Curley*, 639 F.3d 50 (2d Cir. 2011), affirmed the district court's decision to admit "other act" evidence of prior spousal abuse to prove "intent" and "pattern" under Rule 404(b) "with an appropriate instruction on this evidence's limited purpose," not as direct evidence of the conspiracy.  *See Curley*, 639 F.3d at 59 (citing *United States v. Von Foelkel*, 136 F.3d 339, 340-41 (2d Cir. 1998) (per curiam) (affirming district court's decision to admit evidence of prior domestic violence to prove defendant's intent under Rule 404(b)).  Indeed, the evidence could not have been admitted as direct evidence of a conspiracy because Curley *was not charged* with a conspiracy.  *See United States v. Curley*, No. S1 08 Cr. 404 (SCR), 2009 WL 10688209, at *1 (S.D.N.Y. Jul. 15, 2009) (defendant was convicted of two counts of stalking and one count of interstate violation of a protection order).  *Curley* therefore supports the defense's position that the admissibility of ▮ ▮ evidence must be evaluated under Rule 404(b).

<u>Second</u>, the government does not confront the defense's point that simply including "other act" evidence in the indictment does not necessarily mean it is direct evidence of the conspiracy.  *See* Mot. at 9-10.  Instead, the government engages in circular reasoning by effectively arguing that (i) allegations in an indictment are not 404(b) evidence, (ii) ▮ ▮ allegations are in the indictment, (iii) therefore they are not 404(b) evidence.  *See* Resp. at 46-47.  But as the defense pointed out in its Motion, "other acts" are only admissible as evidence of a conspiracy "as long as they are within the scope of the conspiracy.*"  United States v. Cummings*, 60 F. Supp. 3d 434, 437 (S.D.N.Y. 2014), *vacated on other grounds* 858 F.3d 763 (2d Cir. 2017) (quoting *United States v. Bagaric*, 706 F.2d 42, 64 (2d Cir. 1983)).  The government has not explained why ▮ evidence provides any proof that Ms. Maxwell "furthered" an alleged conspiracy to cause *minors* (she did not) to *travel* (she did not)

for the purpose of engaging in *unlawful* sexual activity (it was not).  Moreover, allowing the government to circumvent Rule 404(b) by charging "other act" evidence in the Indictment would swallow the rule and allow the jury to broadly consider evidence that should only be considered for a limited purpose and with an appropriate limiting instruction regarding propensity.  The Court should not allow this.

Third, the government claims that ███████████ evidence can be admitted as intrinsic proof of the charged conspiracies to show Ms. Maxwell's (1) "relationship with Epstein, including her willingness to procure teenagers to give Epstein massages," (2) "knowledge of both the sexual nature of those massages and the need to procure additional victims," and (3) "willingness to transport minors to further their abuse."  Resp. at 47.  The government further argues that ███████████ evidence is necessary to "complete the story" of the charged offenses.  *Id*. at 48-49.  In its Motion, the defense cited numerous cases in this Circuit holding that evidence of other conduct involving alleged co-conspirators—even conduct that was similar to the charged offenses—was not admissible as intrinsic proof of the conspiracies if the other conduct was separate and distinct from the charged offenses.  *See* Mot. at 9 (citing cases).  The government concedes that these cases so hold and points out that these cases admitted some of the proffered evidence under Rule 404(b).  Resp. at 48 n.11.  This just proves the point; the admissibility of ███████████ evidence should be evaluated under Rule 404(b).

Fourth, the government asserts that the defense "misunderstands" the law and that the government simply needs to prove that Ms. Maxwell "took steps to provide Jeffrey Epstein with access to girls *under the age of 18*, knowing that Epstein intended to have sexual contact with those girls."  *Id*. at 50 (emphasis added).  In the government's view, it is totally irrelevant that

███████████████████████████████████████████████████

██████████████████████████████████████████████████████████.  *See id.* at 49-50.  According to

the government, "all that is required" for ████████████████ evidence to be admissible as direct

evidence of the charged conspiracies is that she was under the age of 18, the age of consent

under U.S. federal law, and that Ms. Maxwell knew that Epstein intended to engage in sexual

contact with her.  *See id.*

      It is the government, not the defense, that apparently does not understand the law.  The

Mann Act conspiracies charged in the S2 Indictment each require proof that Ms. Maxwell acted

with the intent that the alleged victim would "engage in sexual activity for which a person can be

charged with a criminal offense."  S2 Ind. ¶¶ 12 (citing 18 U.S.C. § 2422), 18 (citing 18 U.S.C. §

2423(a)).  That element incorporates offenses under state law.  *See United States v. Lincoln*, No.

19-CR-6047 (CJS), 2019 WL 719822, at *4 (W.D.N.Y. Dec. 23, 2019) (collecting § 2422 cases);

*United States v. Vickers*, 708 F. App'x 732, 735 (2d Cir. 2017) (summary order) (criminal sexual

activity under § 2423 includes crimes "under federal, state, or foreign law").  Indeed, the Mann

Act conspiracies in the S2 Indictment charge a violation of a New York State misdemeanor as

the "sexual activity for which a person can be charged with a criminal offense."  S2 Ind. ¶¶ 13b,

19b (citing N.Y. Penal Law § 130.55).  Section 130.55 prohibits "subject[ing] another person to

sexual contact without the latter's consent."  N.Y. Penal Law § 130.55.  To be guilty of Section

130.55 based on the victim's incapacity to consent due to age, the victim must be under the age

of 17.  *Id.* § 130.05(3)(a).  The government itself acknowledged this in its draft proposed jury

instructions, as well as the fact that Ms. Maxwell cannot be convicted of the Mann Act

conspiracies unless she *knew* that the alleged victim was under 17.  *See* Gov't Proposed Jury

Instructions ("[I]n order to find that the intended acts were nonconsensual solely because of the

victim's age, you must find that the defendant *knew that the victim was less than seventeen years old*.") (emphasis added).

It is unclear whether the government is now claiming that to admit ████████████ evidence as proof of the Mann Act conspiracies, it only needs to prove that ███████████ was under the age of 18 at the time of the alleged abuse and that Ms. Maxwell did not need to know anything about ████████████ age, or that Ms. Maxwell only needed to know that ███ ████████ was under the age of 18.  Either one is a misstatement of the law.  For "sexual activity" to be "criminal," it must be illegal under the laws of the jurisdiction where the sex acts allegedly took place.  If those crimes are based on lack of consent due to age, it is only illegal if the alleged victim is under the age of consent in that jurisdiction.  And according to the government's own proposed jury instructions, Ms. Maxwell can only be found guilty of the Mann Act conspiracies if she *knew* ██████████████ (and the other alleged victims) were under the age of consent in the particular jurisdictions where the sex acts allegedly took place.  Because ████████████████ was, at all times, over the age of consent in the relevant jurisdictions, her evidence is not within the scope of the charged conspiracies and is therefore not admissible as direct evidence.  At the very least, because it is not "manifestly clear" that ████████████ evidence is proof of the charged conspiracies, "the proper course is to proceed under Rule 404(b)."  *United States v. Townsend*, No. S1 06 CR. 34 (JFK), 2007 WL 1288597, at *1 (S.D.N.Y. May 1, 2007) (citing *United States v. Nektalov*, 325 F. Supp. 2d 367, 372 (S.D.N.Y. 2004)).

██████████████████ evidence should also be excluded under Rule 404(b) and Rule 403. As argued in our initial Motion, evidence that Ms. Maxwell allegedly encouraged an adult to engage in legal sexual activity is not, in any way, evidence of her intent to facilitate Epstein's

alleged scheme to cause minors to travel to engage in illegal sex acts, or her knowledge of the same.  *See* Mot. at 11.  Nor is the evidence of alleged "grooming" sufficiently unique to qualify as proof of "*modus operandi*."  *See id*. at 12.  Furthermore, there is a strong likelihood that the jury will assume that Epstein's alleged sex acts with ███████████ were illegal and will misapply that evidence in evaluating Ms. Maxwell's guilt or innocence to the charged Mann Act conspiracies.  Her evidence should therefore be excluded under Rule 403.  *See id*. at 12-13.

If the Court decides to admit █████████████ evidence, it should preclude the government and ████████████ from referring to her as a "minor" or asserting that she was a "minor" at the time of the alleged sex acts, (2) preclude the government and ████████████ from representing that she was "sexually abused" by Jeffrey Epstein, and (3) give the jury the appropriate limiting instruction the defense has requested.  *See* Mot. at 14-15.

The government argues that the term "minor" is appropriate because ████████████ was, for a brief time, below the age of 18, which is the age of consent under federal law.  Resp. at 52-53.  Although the government would like to believe that U.S. federal law is the only law that matters, even as to acts that allegedly took place in a foreign country, that is not the case. The Court should not permit ████████████ to be referred to as a "minor" because she was not a "minor" under the laws of the relevant jurisdiction when any of the alleged sex acts took place. It would not only be inaccurate to call her a "minor," but it would also mislead the jury to believe that the acts that allegedly took place in the U.K. were "criminal sexual activity" when they were not.  The same is true for the phrase "sexual abuse," which connotes criminal activity.  *See* Mot. at 14-15 (citing *Esquivel-Quintana v. Sessions*, 137 S. Ct. 1562, 1569 (2017)).

Finally, the government opposes the defense's requested jury instruction regarding the age of consent under U.K. law on the grounds that it is "irrelevant" and would "confuse the

jury." Resp. at 53-54. Apparently, the government believes the jury would be "confused" if the

Court told the jurors what the law actually is so that they do not improperly assume that ███████

█████████ testimony is being offered as proof of "criminal sexual activity" and apply it

incorrectly to convict Ms. Maxwell of the Mann Act conspiracies. The jurors would not be

"confused"; they would be educated on how to properly evaluate ██████████████ evidence.

The government's objection is non-sensical. But not as non-sensical as the government's final

proclamation:

> The sexual activity involving Minor Victim-3 can be considered criminal for
> purposes of the crimes charged in the Indictment, because it is probative proof of
> the defendant's guilt of those crimes. The instruction the defense proposes, in
> contrast, creates serious risk that the jury will think the Court is telling them that
> the conduct is lawful and therefore irrelevant to the case.

*Id*. at 54. A better example of circular reasoning you could not find – ███████████████ sex

acts with Epstein are "criminal" because they are "proof of the defendant's guilt of those

crimes"? No. And the "risk that the jury will think that … the conduct is lawful? It *was* lawful.

Whatever misgivings ████████████ may now have about those alleged sex acts, and whether

she now views those incidents as "sexual abuse," there was *nothing* illegal about them.

And that is precisely the point. If she is permitted, ███████████ will testify about

feeling sexually abused by Epstein and the jury will assume that the sex acts were illegal. Unless

the Court instructs the jury that the sex acts were not illegal under U.K. law, and they cannot be

considered as "criminal sexual conduct" in evaluating the elements of the Mann Act

conspiracies, there is a substantial risk that the jury will misapply her evidence and improperly

convict Ms. Maxwell of those counts. The government has agreed to do this in similar cases and

it is appropriate to do so here. *See Vickers*, 708 F. App'x at 735-36 (government sought and

received jury instructions explaining the applicable criminal laws of the relevant jurisdictions

and jury returned a special verdict form finding "that the defendant intended to engage in sexual

31

activity for which the defendant could be charged with specific New Jersey, Pennsylvania, New

York, and Canadian criminal offenses" (emphasis added)).  Accordingly, the Court should give

the jury the defense's requested limiting instruction.[8]

### V.   THE GOVERNMENT CONCEDES THAT IT WILL NOT OFFER EVIDENCE OF MS. MAXWELL'S ALLEGED "FLIGHT"

The government has conceded that it will not elicit any evidence or argue to the jury that

Ms. Maxwell "was hiding from, evading, or fleeing from law enforcement between Epstein's

arrest and her own."  Resp. at 81-82.

### VI.   THE GOVERNMENT CONCEDES THAT IT WILL NOT OFFER EVIDENCE OF MS. MAXWELL'S ALLEGED FALSE STATEMENTS AND AGREES TO MS. MAXWELL'S PROPOSED REDACTIONS

The government has also conceded that it will not elicit any evidence concerning Ms.

Maxwell's alleged false statements in her 2016 depositions and agrees to the defense's request to

redact the perjury counts and related allegations from the S2 Indictment.  Resp. at 82.

### VII.   THE COURT SHOULD HOLD A PRE-TRIAL EVIDENTIARY HEARING ON MS. MAXWELL'S MOTION TO SUPPRESS IDENTIFICATION.

From approximately ███████████████████████████████████████████

███████████████  ████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████████

---

[8] The defense also agrees with the government that the Court should instruct the jury that it
cannot convict Ms. Maxwell of the charged conspiracies based solely on ██████████████ evidence.
*See* Resp. at 50 n.12.

██████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████████████

████████████

It was not until 2020, after making a multi-million dollar claim to the Epstein Victim

Compensation fund, that the SDNY interviewed ████████████ and then in 2021 showed her

photos -- the majority of which were men or women much younger than Ms. Maxwell.  Only two

of the photos look anything like Ms. Maxwell and ████████████ thought one was Ms. Maxwell

and the other might be Ms. Maxwell. Of course, no one thought to ask ████████████ if her

lawyers had shown her photos of Ms. Maxwell as part of her multi-million-dollar request or if

she had seen any of the many photographs displayed on the internet of Ms. Maxwell, including

those published in relation to the first indictment by Acting U.S. Attorney Strauss's Rule 23.1-

violative press conference, or any of the millions of photographs published in the wake of the

Indictment. The photo array process was not recorded, and we do not know why certain photos

in the array were selected or by whom. No one documented how long the photo array was

viewed or any other relevant indicia of reliability.

The claim that the show-up was merely a "confirmatory identification" of someone that

████████████ had "known and identified by name over the years" is completely unsupported by

the evidence. Tellingly, the government appends no supporting exhibit or declaration in support

of this conclusory statement because it cannot. The truth of the matter is that ████████████ had

never identified Ms. Maxwell as someone who abused her and never claimed to have seen Ms.

Maxwell prior to 2020 when it became economically prudent for her to do so.

The facts about ███████████ interaction with Ms. Maxwell are hotly disputed. Ms. Maxwell rejects the government's unsupported conclusory statements about when and if she interacted with Ms. Maxwell and her ability to do so absent suggestion.

When the prosecution offers testimony from an eyewitness to identify the defendant as a perpetrator of the offense, fundamental fairness requires that that identification testimony be reliable. *Raheem v. Kelly*, 257 F.3d 122, 133 (2d Cir. 2001). The court must first determine whether the pretrial identification procedures unduly and unnecessarily suggested that the defendant was the perpetrator. If the court finds, however, that the procedures were suggestive, it must then determine whether the identification was nonetheless independently reliable. *Id.*

The critical question here, ignored by the government, is not whether ███████████ *knew that she was accusing Ms. Maxwell* in 2020 (she undoubtably was) but whether she could *identify Ms. Maxwell* as the person she was now claiming abused her.  Of the pictures selected here, ██████████ had a high probability of picking Ms. Maxwell -- even then, she was tentative about one person who was not Ms. Maxwell. The show up was neither confirmatory nor fair.

The protection against unduly suggestive procedures encompass not only the right to avoid improper police methods that suggest the initial identification, but as well the right to avoid having suggestive methods transform a selection that was only tentative into one that is positively certain. *Solomon v. Smith*, 645 F.2d 1179, 1185 (2d Cir. 1981).

Ms. Maxwell has met her burden of demonstrating the show up was unduly suggestive. Under these circumstances the Court should next consider the well know "five factors": (1) the witness's opportunity to observe the criminal at the time of the crime, (2) the degree of the witness's attention at that time, (3) the accuracy of the witness's initial description of the

criminal, (4) the certainty with which the witness first identified the suspect, and (5) the time

lapse between the crime and the identification. *Id.* at 1186. Each of these factors weighs heavily

in Ms. Maxwell's favor:  as to 1-3, until 2020, ███████████ had never claimed Ms. Maxwell

participated in any abuse and never identified Ms. Maxwell -- indeed, she had never before been

asked to identify Ms. Maxwell. Concerning number 4, ███████████ was less than certain, as

demonstrated by her selection of someone else who may have been "Ms. Maxwell."  Factor 5

also weighs in Ms. Maxwell's favor, as the delay was 17 years.

     Accordingly, Ms. Maxwell requests that the Court hold an evidentiary hearing on this

motion and find that the show up was unduly suggestive and suppress any identification of Ms.

Maxwell, before or during trial.

## VIII.   GOVERNMENT AGREES NOT TO ELICIT LAW ENFORCEMENT OPINION TESTIMONY

     The government agrees that it has not noticed any law enforcement officers as experts

and, as to their fact police officers, "will not elicit expert testimony from them."  Resp. at 82-83.

Overlooking the long list of potential law enforcement opinion testimony that has been

disallowed by Courts in the past (*see* Mot. at 2-5), the government then goes on to make the

confusing claim that the defense should have to "provide expert" testimony from the

government's own case agents if it wants to call them as witnesses. Resp. at 83 n.24.

     The defense has no intention of eliciting opinion testimony from the agents when they

testify.  As the motion makes clear, the defense fully understands the contours of lay versus

opinion testimony from law enforcement officers. The case agents are first hand percipient

witnesses to a number of facts in the investigation and prosecution of this case, including as the

impeachment witness for the many changed stories of the accusers.

As evidenced by their recently disclosed interviews, the government lawyers, despite its protests about the defense's ability to call percipient fact witnesses, have been preparing the case agents for months to testify in the defense's case.  The risk highlighted by the defense it its footnote is that, even though they are not asked a question that calls for opinion testimony, the agents are likely to try to offer their opinions either during the defense's questioning or when the government attempts to rehabilitate them.  Because *neither* side has noticed any opinion testimony from the case agents, they should be prohibited from offering any, especially because it will be non-responsive to any questions that should be asked of them.

## IX.    THE COURT SHOULD PRECLUDE TESTIMONY ABOUT ANY ALLEGED "RAPE" BY JEFFREY EPSTEIN

The government argues that the expected testimony of ███████████ that she was raped by Jeffrey Epstein is admissible to show the "ongoing relationships between the defendant, Epstein, and the victims" and is necessary "to complete the story of the crime on trial."  Resp. at 79-80.  The government offers no explanation, however, for why testimony of an alleged rape would prove the relationship "between the defendant, Epstein, and the victims" when ███████████ has never claimed in her prior statements to the FBI or anywhere else that Ms. Maxwell knew of, facilitated, or participated in the alleged rape in any way.  Nor does the government explain why this testimony is somehow necessary "to complete the story of the crime on trial" when the rape allegation is an outlier and does not fit the "story" of alleged sexual abuse that the government has described in the S2 Indictment—namely, "grooming" the alleged victims to gradually break down their inhibitions so that forcible rape is *not* required to engage in sexual activity with them. Because the rape allegation is the only one of its kind and has no connection to the other incidents of alleged sexual abuse, it should not be admitted as intrinsic proof of the charged crimes.  *See United States v. Townsend*, No. S1 06 CR. 34 (JFK), 2007 WL 1288597, at *2

(S.D.N.Y. May 1, 2007) (defendant's prior narcotics and firearm transactions with the same confidential informant not "inextricably intertwined" with the charged narcotics conspiracy, even though the conduct was "generally similar to the conduct underlying the offenses charged in the indictment"); *United States v. Nektalov*, 325 F. Supp. 2d 367, 369-70 (S.D.N.Y. 2004) (prior similar money laundering transactions between defendant and cooperating witness not "inextricably intertwined" with the charged money laundering offense or "*necessary* to complete the story" of the charged conspiracy (emphasis in original)).

Testimony concerning the alleged rape should also be excluded because the S2 Indictment contains no allegations of rape and such testimony is therefore irrelevant to the charged crimes. The government dismisses this point arguing that indictments do not need to include all of the government's evidence, and the terms "sexual activity" and "commercial sex act" are broad enough to cover rape. *See* Resp. at 80. But this misses the point. The rape allegations are irrelevant to the charges because the charges are based on sexual activity that was illegal because the alleged victims were under the age of consent. The indictment does not charge any crimes that are premised on sex acts that involve the use of force, like rape. For example, Counts Five and Six charge sex trafficking offenses. *See* S2 Ind. ¶¶ 22-27. But they do not charge the section of the statute that criminalizes sex trafficking that "was effected by means of force, threats of force, fraud, or coercion." 18 U.S.C. § 1591(b)(1). The government is therefore off base when its states that "evidence of rape, where it occurs … is the core conduct in the case." Resp. at 81. It is only the "core conduct" of the case when the indictment alleges *forcible* sex acts. Indeed, the cases cited by the government prove this point. *See* Ex. E, Indictment, *United States v. English*, No. 18 Cr. 492 (PGG) (S.D.N.Y. 2020) (defendant charged with sex trafficking conspiracy "effected by means of force" under 18 U.S.C. § 1591(b)(1));

*United States v. Graham*, No. 14 Cr. 500 (NSR), 2015 WL 6161292, at *1 (S.D.N.Y. Oct. 20, 2015) (same).

Finally, whatever minimal probative value the rape allegation might have would be substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury.  Fed. R. Evid. 403.  As we previously argued in our initial Motion, rape is highly emotional and inflammatory, much more so than the "sexualized massages" alleged in the S2 Indictment.  *See* Mot. at 2-3.  Admitting testimony of an alleged rape would pose a serious risk that the "jury will convict for crimes other than those charged—or that, uncertain of guilt, it will convict anyway because a bad person deserves punishment."  *Old Chief v. United State*s, 519 U.S. 172, 181 (1997) (quoting *United States v. Moccia*, 681 F.2d 61, 63 (1st Cir. 1982) (Breyer, J.)) (discussing propensity evidence).  Such evidence would also confuse the issues at trial and mislead the jury.  It will cause the jurors to focus on conduct that is not relevant to the charged offense and suggests that they convict Ms. Maxwell on an improper and highly emotional basis. *See United States v. Stein*, 521 F. Supp. 2d 266, 273 (S.D.N.Y. 2007) (excluding other-act evidence in a conspiracy case under Rule 403 because of the "risk that this evidence would confuse the issues, cause undue delay, and be used for an improper purpose").  The Court should therefore preclude any testimony or evidence about an alleged rape.

## XII.   REFERENCE TO ACCUSERS AS "VICTIMS" IS IMPROPER VOUCHING

Without explaining its logic, and by way of cases concerning jury instructions, the government disagrees that use of the term "victim" by witnesses and the prosecution during trial amounts to improper vouching.  Yet, the government offers that the only times it expects the word will be used at trial are (a) by the prosecutors during their jury addresses, and (b) in Dr. Rocchio's testimony concerning her patients.  Resp. at 77.  The government's legal analysis and

argument are flawed, and the Court should enter the order proposed by Ms. Maxwell that all

parties, witnesses, and the Court should refer to the individuals by their proper names.

First, overlooking the frequency with which state courts must grapple with fair trials

inherent in sex crimes, the government complains that the defendant cited no *federal* authority

for the proposition that the Court, witnesses, and parties should use the individuals' names rather

than the word "victim."  To remedy that perceived problem, counsel refers the Court to *United

States v. Sena*, No. 19-CR-01432, 2021 WL 4129247, at *1–2 (D.N.M. Sept. 9, 2021), and the

other cases cited therein:

> "*[Defendant] is correct that the term [victim] is prejudicial when the core issue at
> trial is whether a crime has been committed—and, therefore, whether there is a
> victim. See State v. Cortes*, 851 A.2d 1230, 1239-40 (Conn. App. Ct. 2004), *aff'd,*
> 885 A.2d 153 (Conn. 2005) (holding that jury charges using the term "victim"
> instead of "alleged victim" violated a defendant's due process right to a fair trial);
> *Talkington v. State*, 682 S.W.2d 674, 674 (Tex. App. 1984) (use of the term
> "victim" in court's rape charge was reversible error when the issue at trial was
> whether complainant consented to sexual intercourse); *People v. Davis*, 423
> N.Y.S.2d 229, 230 (N.Y. App. Div. 1979) ("By referring in its charge to the
> complainant as the 'victim' and to the defendant as the 'perpetrator', the court
> impermissibly insinuated to the jury that the complainant was the victim of injuries
> resulting from acts committed by the defendant.").
>
> At [the] upcoming trial, the jury has the responsibility of deciding whether a crime
> occurred and whether that crime resulted in harm to [the accuser]. Thus, to label
> [the accuser] as a victim at the outset of trial carries the risk of improperly
> influencing the jury's decision. Moreover, there is virtually no probative value in
> allowing the government to use the term "victim" to describe [the accuser]. *See
> United States v. Ehrens*, No. CR-15-200-C, 2015 WL 7758544, at *2 (W.D. Okla.
> Dec. 1, 2015) (considering a similar motion and finding that there was "no need by
> any party to refer to [the alleged victim] by any particular descriptor other than her
> name"). *Restricting the use of the term "victim" does not prevent the government
> from describing [the accuser's] injuries, or from presenting any of its other
> evidence. The government and its witnesses remain free to refer to [the accuser] by
> name or by other descriptive terms (e.g., "the mail carrier").*

*Id.* (emphasis added).

As argued in the motion, when the government, the Court, or another witness uses the

term "victim" at the outset of the trial, it risks the jury pre-judging the merits, improperly

speculating that the accusers have already been found credible by someone, or that their decision is a foregone conclusion.  On the other side of the probative-prejudicial scale, the government simultaneously fails to articulate any probative value in use of the term "victim," either in its jury address or otherwise.  *Cf. State v. Wigg*, 889 A.2d 233, 236 (Vt. 2005) ("the use of the term 'victim' had no inherent probative value").

Second, the government improperly suggests in response that the stricture on vouching should not apply to the witnesses themselves.  Resp. at 79.  As explained by numerous cases, having any witness refer to themselves or another witness as a "victim" is the very height of improper vouching.  *Sena, supra; State v. Sperou*, 365 Or. 121, 131, 442 P.3d 581, 590 (2019) ("another witness's description of the complaining witness as a 'victim' conveys an opinion that the complaining witness is telling the truth. That is what the vouching rule is intended to prevent."); *Wigg, supra.*

Finally, the government contends that Dr. Rocchio can use the word "victim" in reference to "victims of sexual abuse generally," but her use of the term is even more problematic.  For the reasons articulated in our *Daubert* motion and reply, Dr. Rocchio bases her expertise on her therapeutic number of individuals who have self-identified as sexual abuse victims, without any research or investigation as to whether the individuals' self-reports are true.  She then intends to draw from her anecdotal and experiential treatment to generalize about all "victims" without their ever having been a finding that any of the persons she has provided treatment to were, in fact, "victims."  If she is permitted to testify, there is no reason for her to vouch for the credibility of her patients, unless she clarifies each time that she is taking the individual at their word that they were in fact a victim.  The danger of confusion to a jury is that anyone treated by Dr. Rochio must have been a victim.  As the *Wigg* court recognized, there will be a "danger of unfair

prejudice because the [witness's] choice of language implied that he and the prosecution believed the complainant's testimony." *Id.*

For these and the previously stated reasons, Ms. Maxwell asks the Court to order that the parties, the witnesses, and the Court use individuals' names in the presence of the jury.

## XIII.   THE COURT SHOULD PRECLUDE INTRODUCTION OF GOVERNMENT EXHIBITS 52, 251, 288, 294, 313, 606 AND THE SEARCH OF EL BRILLO WAY

### A.   The Court Should Exclude the Challenged Government Exhibits

Rule 901(a) of the Federal Rules of Evidence provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." *See also Ricketts v. City of Hartford,* 74 F.3d 1397, 1409 (2d Cir.1996); *United States v. Sliker,* 751 F.2d 477, 496–500 (2d Cir.1984) (discussing the interaction between Fed.R.Evid. 104 and 901). "In order for a piece of evidence to be of probative value, there must be proof that it is what its proponent says it is. The requirement of authentication is thus a condition precedent to admitting evidence." *United States v. Sliker*, 751 F.2d 477, 497 (2d Cir. 1984). A motion *in limine* to preclude evidence calls on the "[C]ourt to make a preliminary determination on the admissibility of evidence under Rule 104 of the Federal Rules of Evidence." *Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461 (S.D.N.Y. 2005) (internal quotation marks omitted). "The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." *Dougherty v. County of Suffolk*, No. CV 13-6493 (AKT), 2018 WL 1902336, at *1 (E.D.N.Y. Apr. 20, 2018) (internal quotation marks omitted).

Ms. Maxwell has filed *in limine* motions challenging the admissibility of discrete items of evidence that the government intends to offer at trial.  As discussed below, the Court should hold

a pre-trial hearing at which the government must demonstrate that the proposed evidence is both

authentic, admissible, relevant and not unduly prejudicial.

### B.   Government Exhibit 52

Government Exhibit (GX) 52 was acquired by the government as part of a sting operation

from Alfredo Rodriguez. Mr. Rodriquez worked for Jeffrey Epstein for approximately six

months, from late 2004 to early 2005. In 2009, he was deposed and then ultimately arrested in an

undercover sting operation in which the government claims exhibit 52 was seized from Mr.

Rodriguez, apparently on or about November 3, 2009, by one ████████████, who is not listed

as a testifying witness.  No one knows where or when the exhibit was acquired by Mr.

Rodriguez, what he did with it for as long as he had it, who may have created the exhibit, and

where it came from. In its Response, the government does not identify what it claims this exhibit

to be, who might authenticate the exhibit, only that a "witness with personal knowledge of the

physical book is expected to testify to its authenticity." Resp. at 73. Given that Mr. Rodriguez is

dead, and ██████████ is not a witness, we are left to wonder who this foundational witness may

be.

The government further claims that even if the exhibit is hearsay, it is admissible, not for

the truth of the matter asserted, but to show "the defendant kept contact information for relevant

individuals at trial, including victims." *Id*.  These are bold, unexplained claims that Ms. Maxwell

disputes. The proffers here are inadequate to meet any burden of admissibility. The government

should not be allowed to refer to the exhibit prior to the establishment of an adequate foundation;

and Ms. Maxwell requests a pretrial evidentiary hearing on this issue.

### C.   The Palm Beach Search of El Brillo Way

Again, the government claims that it will have live witnesses "to establish the

authenticity of the evidence at trial."  It does not identify the witness or the basis of that person's

knowledge. The government does not provide any clues about who may have touched the evidence after it was seized in October 2005, ten months after the end of the conspiracy alleged and it does not address how these items seized are relevant to acts allegedly seized 10 years after the start of the alleged conspiracy or even 10 months after it ended.

GX 295 is not a "past recollection recorded" by some other witness. It is a testimonial hearsay statement by a dead witness and admission of any part of GX 295 would violate Ms. Maxwell's rights to confront the declarant and the rules of evidence. The government offers no explanation about how the affidavit of Detective Recarey could possibly be the recorded recollection of someone else; and a pretrial evidentiary hearing is warranted.

**D.** ▮▮▮▮▮▮▮▮▮▮▮▮

The supposed relevance for ▮▮▮▮▮▮▮▮, again seized almost one year after the alleged conspiracy ended, is that they "help to establish that *it was apparent* from ▮▮



▮▮▮▮▮▮▮▮▮▮▮ *Id.* at 74-75. ▮▮

▮▮▮▮▮▮▮▮▮ The ▮▮▮ then, establish no material fact in this case and their admission should be prohibited under Federal Rules of Evidence 401, 402, 403, and 404(b).

**E.  The Twin Torpedoes**

Seized in 2005, and still in the box, unopened, no witness will testify that Ms. Maxwell used these devices. The items were not and could not have been used in connection with any alleged act in this case, assuming a foundation can be established. Accordingly, the exhibit, whether it be the photograph or the actual boxed items, should not be admitted under FRE 401, 402, 403, and 404(b).

### F.  Government Exhibit 313

GX 313 was seized in 2019. It was not seized from Ms. Maxwell. No one will testify about where it was taken, who took it, or where it was kept. Because the government cannot establish the location of the photograph, it is not corroborative, as the government claims, of "topless swimming" at the Palm Beach pool, which is also not relevant to the allegations here. Ms. Maxwell has not challenged other photographs showing a close relationship between Ms. Maxell and Epstein, and we expect there to be evidence of their relationship at trial. Accordingly, any probative value of the evidence is substantially outweighed by the prejudicial impact of the picture. Again, this exhibit should be excluded under FRE 401, 402, 403, and 404(b).

### G.  Government Exhibit 606

GX 606 comes from an unknown author, created at an unknown time, and for an unknown purpose. The government's proffer is speculative and does not supply any evidentiary foundation, authenticity, or relevance.  The exhibit should be excluded under FRE 901, 802, 401, 402, 403, and 404(b). As with the other exhibits discussed herein, Ms. Maxwell requests a pretrial evidentiary hearing.

Dated: October 27, 2021

Respectfully submitted,


*s/ Jeffrey S. Pagliuca*
Jeffrey S. Pagliuca
Laura A. Menninger
HADDON, MORGAN & FOREMAN P.C.
150 East 10th Avenue
Denver, CO 80203
Phone: 303-831-7364

Christian R. Everdell
COHEN & GRESSER LLP
800 Third Avenue
New York, NY 10022
Phone: 212-957-7600

Bobbi C. Sternheim
Law Offices of Bobbi C. Sternheim
225 Broadway, Suite 715
New York, NY 10007
Phone: 212-243-1100

*Attorneys for Ghislaine Maxwell*

**Certificate of Service**

I hereby certify that on October 27, 2021, I electronically filed the foregoing *Ghislaine Maxwell's Reply In Support of Her Motions In Limine* with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Alison Moe
Maurene Comey
Andrew Rohrbach
Lara Pomerantz
U.S. Attorney's Office, SDNY
One Saint Andrew's Plaza
New York, NY 10007
Alison.moe@usdoj.gov
Maurene.comey@usdoj.gov
Andrew.Rohrbach@usdoj.gov
Lara.Pomerantz@usdoj.gov

*s/ Nicole Simmons*