# LAW OFFICES OF BOBBI C. STERNHEIM

212-243-1100 • Main
917-912-9698 • Cell
888-587-4737 • Fax

225 Broadway, Suite 715
New York, NY 10007
bcsternheim@mac.com

November 3, 2021

Honorable Alison J. Nathan
United States District Judge
United States Courthouse
40 Foley Square
New York, NY 10007

Re: *United States v. Ghislaine Maxwell*
S2 20 Cr. 330 (AJN)

Dear Judge Nathan:

Counsel for Ghislaine Maxwell renew our request that the Court release the names of potential jurors, *for attorneys' eyes only*, as soon as the written questionnaires are distributed. Based on the Court's statement during the October 21 teleconference, it was counsel's understanding that juror names would be provided to counsel on the Juror Sheet to be inserted in the questionnaire. In responding to the Court's order regarding approval of the video to be played to prospective jurors, the government importuned the Court to deny counsel the opportunity to properly vet jurors at this critical state of the proceeding. Not knowing the names of the potential jurors will prevent the parties from conducting necessary background research on the jurors in advance of voir dire so that they may evaluate potential challenges and strikes. Due to the large number of potential jurors (600), waiting until voir dire to release the names of the jurors will make it virtually impossible for the parties to conduct any meaningful research to uncover issues that may require follow-up questions, lead to additional cause challenges, or enable the parties to exercise their peremptory challenges in an informed manner.

Recently, in *Sines, et al. v. Kessler, et al.*, 17-CV-72 (KNM) (W.D. Va.), the civil case brought against the organizers of the Unite the Right rally in Charlottesville, Virginia, the United

States District Court for the Western District of Virginia ordered a semi-anonymous jury (jurors were publicly referred to by number only) and released the names of all potential jurors to counsel, plus all *pro se* defendants (including Richard Spencer and Christopher Cantwell), who are allegedly prominent white supremacists, neo-Nazis, and the leaders of hate groups that planned, promoted, and executed the violent acts in Charlottesville. (*See* Exhibit A, annexed.) The defendants in *Sines* included factions of the Ku Klux Klan. The concerns for juror privacy in *Sines* dwarf any conceivable concerns in this case and *Sines* is also the subject of extensive ongoing publicity. We submit that withholding the names of 600 jurors until the day of jury selection will deprive Ms. Maxwell of her right to be tried by a fair and impartial jury and is a procedure that would violate due process in this particular case.[1]

"An impartial jury is one in which all of its members, not just most of them, are free of interest and bias." *United States v. Parse*, 789 F.3d 83, 111 (2d Cir. 2015). In *Parse*, a case before Judge Pauley *sub nom United States v. Daugerdas*, a jury convicted defendant Parse and three of his co-defendants of numerous financial fraud and tax evasion charges. 789 F.3d at 86. After trial, all defendants moved pursuant to Fed.R.Crim.P. 33(a) for a new trial on the ground that one of the jurors, Juror No. 1 (Catherine M. Conrad), "had lied and withheld material information during voir dire and was biased against defendants. Judge Pauley appointed Bobbi C. Sternheim, Esq. to represent the juror and conducted an evidentiary hearing in which the juror was examined, and in a detailed thorough opinion (*see United States v. Daugerdas,* 867 F.Supp.2d 445 (S.D.N.Y.2012) found it "undisputed that Conrad lied extensively during voir dire and concealed important information about her background" (*id.* at 451), her level of education, place of residence, criminal history, and other matters. *Parse,* 789 F.33 at 87-90.

---

[1] We are unaware of any other recent high-profile case in which a written juror questionnaire was used and the Court withheld the names of the jurors from counsel following the completion of the questionnaires.

Judge Pauley granted a motion for a new trial as to Parse's three co-defendants but held that Parse had waived his right to an impartial jury because his attorneys had sat on background research collected before and during trial that suggested Conrad's voir dire answers were false. *Id*. at 101.  On appeal, the Second Circuit "had no difficulty with the ruling of the district court in the present case that the jury empaneled to hear the case against these defendants was not an impartial jury." *Id*. at 111.  Moreover, the Second Circuit reversed Judge Pauley's ruling that Parse had waived his right to an impartial jury, and vacated Parse's conviction. *Id*. at 118.

The result in *Parse* was that a three-month trial, with 41 witnesses and some 1,300 exhibits, was undone by the falsehoods of one juror during voir dire—falsehoods that could have been uncovered by thorough background research and prompt action by the parties.  Numerous bar associations have recognized that trial counsel is expected to conduct internet research on potential jurors.  Some bar associations have opined that professional standards of competence and diligence may *require* such research.  For example, just weeks after Judge Pauley conducted a post-conviction evidentiary hearing in *Parse*, the New York City Bar Association stated the following in Formal Opinion 2012-2:

> Just as the internet and social media appear to facilitate juror misconduct, the same tools have expanded an attorney's ability to conduct research on potential and sitting jurors, and clients now often expect that attorneys will conduct such research. Indeed, standards of competence and diligence may require doing everything reasonably possible to learn about the jurors who will sit in judgment on a case.

Similarly, in 2014, the American Bar Association recognized the "strong public interest in identifying jurors who might be tainted by improper bias or prejudice," and therefore opined that it was proper for counsel to research "a juror's or potential juror's Internet presence, which may include postings by the juror or potential juror in advance of and during a trial. . . ." *See* Standing Committee on Ethics and Professional Responsibility, Formal Op. 466 at 1-2, Am. Bar

Assn. (2014); *see also* New York State Bar Association, Dec. 8, 2015 Report of the Social Media Committee of the Commercial and Federal Litigation Section, at 15 ("[I]t is not only permissible for trial counsel to conduct Internet research on prospective jurors, but [] it may even be expected.").

Other courts have acknowledged that using the internet to conduct background research on prospective jurors is a "rudimentary practice" during jury selection. *United States v. Stone*, No. 19-0018 (ABJ), 2020 U.S. Dist. LEXIS 67359, at *93 (D.D.C. Apr. 16, 2020); *see also Carino v. Muenzen*, No. A-5491-08T1, 2010 N.J. Super. Unpub. LEXIS 2154, at *27 (Super. Ct. App. Div. Aug. 30, 2010) (trial judge erred in preventing counsel from using the internet during jury selection). It is so routine that a party who fails to uncover disqualifying information about a potential juror, despite a reasonable opportunity to do so, risks waiving the right to use that information in post-conviction proceedings. *Stone* at *90 (denying motion to vacate conviction and for a new trial because, *inter alia*, "the defense could have discovered the [foreperson's social media] posts as early as September 12, 2019, the day counsel received access to the completed juror questionnaires, including the foreperson's, which had her name printed legibly on the signature page.").

Having additional time to conduct background research on each of the venirepersons is the best way to ensure a fair and impartial jury. Balancing the need to protect juror privacy against Ms. Maxwell's right to a fair and impartial jury weighs in favor of releasing the names of potential jurors to counsel upon the completion of their written questionnaires, not at voir dire.

Respectfully submitted,<br>
/s/<br>
BOBBI C. STERNHEIM

Enc.
cc: All counsel of record

**EXHIBIT A**

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
# CHARLOTTESVILLE DIVISION

| | |
|---|---|
| ELIZABETH SINES, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> JASON KESSLER, *et al.*, <br><br> *Defendants.* | CASE NO. 3:17-cv-00072 <br><br> ORDER <br><br> JUDGE NORMAN K. MOON |

Upon this Court's own motion, upon notice that Plaintiffs' counsel may seek to designate certain non-lawyers within their list of six (6) persons to be provided electronic access to the jury questionnaires, and otherwise finding good cause shown, the Court hereby **AMENDS** Pretrial Order ¶ 3, (Dkt. 1172) as follows:

Plaintiffs, and Defendants represented by counsel collectively, may each designate no more than **six (6) persons**, which may be comprised of (1) <u>current counsel of record</u> or (2) <u>third parties working under their direction, who are formally engaged and supervised by the attorneys of record, and for whom such attorneys of record will be responsible, and who will have signed the Court's protective order</u>, Dkt. 167, so long as such persons include at least one attorney admitted to practice in the Western District of Virginia, to be provided electronic access by the Clerk to receive and review copies of the jury questionnaires, on a rolling basis. A list including names and occupations of prospective jurors, and information matching such prospective jurors with the questionnaires pursuant to Dkt. 1204 ¶ 2, will also be provided to such specifically designated persons by Plaintiffs and represented Defendants, no more than **five (5) days** before trial. Jury questionnaires and such occupation list, and any information contained therein, are

1

subject to the Court's orders regarding confidentiality in Dkt. 1172 and 1204, and **shall not be disclosed to any other person without prior authorization of Court**.

Any *pro se* Defendant—upon completing a declaration stating, under penalty of perjury, they will not disclose the contents of such questionnaires or the jury occupation list provided to such *pro se* Defendant to any other person—may review the questionnaires and jury occupation list *onsite in the Clerk's Office*. A paper copy of the completed questionnaires and the jury occupation list customarily made available to *pro se* litigants will be maintained in the Clerk's Office.

If any party requests specific access to the confidential juror questionnaires in excess of the provisions outlined above and in Dkts. 1172 and 1204, they shall file a motion to that effect. In all other respects, this Court's Orders of Dkt. 1172 and 1204 shall remain unchanged and in force.

It is so **ORDERED**.

The Clerk of the Court is directed to send a certified copy of this Order to the parties.

Entered this  19th  day of October, 2021.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE