# LAW OFFICES OF BOBBI C. STERNHEIM

212-243-1100 • Main  
917-912-9698 • Cell  
888-587-4737 • Fax

225 Broadway, Suite 715  
New York, NY 10007  
bcsternheim@mac.com

November 3, 2021

Honorable Alison J. Nathan  
United States District Judge  
United States Courthouse  
40 Foley Square  
New York, NY 10007

Re: *United States v. Ghislaine Maxwell*  
S2 20 Cr. 330 (AJN)

Dear Judge Nathan:

I write to once again ask the Court to release Ghislaine Maxwell prior to trial on the conditions set forth in her previous bail applications. My weekly in-person legal visits with Ms. Maxwell are conducted under the most humiliating circumstances that I have ever experienced in many decades of federal criminal practice. As disturbing and invasive as they are for no justifiable reason, I get to leave; Ms. Maxwell does not. The surveillance rivals scenes of Dr. Hannibal Lecter's incarceration as portrayed in the movie, "Silence of the Lambs," despite the absence of the cage and plastic face guard. Ms. Maxwell's conditions of detention for the past 16 months continue to be reprehensible and utterly inappropriate for woman on the cusp of turning 60 with no criminal record or history of violence. It is unwarranted, unrelenting, and utterly inappropriate.

Ms. Maxwell has been subject to physical and emotional abuse by the correction officers, poor and unsanitary living conditions, insufficient nutrition, difficulties reviewing the millions of legal discovery documents in the case against her, and sleep deprivation. She has been consistently housed in segregation from all other inmates, with rotating teams of multiple corrections officers per daily shift which rotate on a bi-weekly basis. Many of the officers are

openly hostile toward her and have mentioned having read the press and seen various television shows which amplify their hostility. There are cameras on her constantly, most are stationary, but one camera follows her as she moves throughout the facility, and is constantly surveilling her, even during confidential attorney-client conferences. Ms. Maxwell has reported to counsel and the BOP that she has been threatened by corrections officers that she will be subject to discipline if she is ever out of, or anything interferes with, the camera's view.

    Ms. Maxwell is subject to numerous pat searches per day, despite being completely isolated, during which she alleges to have been touched in a sexually inappropriate manner by corrections officers on multiple occasions. She declines recreation time to avoid being searched, which has negatively impacted her physical health. She was denied an extra blanket in the winter, and, on more than one occasion, an officer took one of her blankets from her after her request for an extra blanket was granted. She was not provided a proper food regimen for the first few months she was incarcerated, wherein she was provided with small, inadequate portions or rotten food. She has lost at least 15 pounds since her incarceration and has experienced hair loss. Currently, she suffers from headaches and back pain and general physical weakness.

    Ms. Maxwell's guards shine flashlights on the ceiling of her cell in 15-minute intervals and have done so every night since she has been incarcerated. As reported by the government, "MDC staff conduct flashlight checks every fifteen minutes because the defendant, while not on suicide watch, is on an enhanced security schedule because MDC has identified a number of factors that raise heightened safety and security concerns with respect to this defendant." (Dkt. 270.)  This response provides further support that Ms. Maxwell is overmanaged because of the intense criticism sustained by the Department of Justice over the Bureau of Prison's blunders that resulted in the death of Jeffrey Epstein, an event that preceded the arrest and prosecution of Ms.

Maxwell. At that time, Attorney General William Barr said he initially had his own suspicions about Epstein's death while detained at the MCC but came to conclude that Epstein's death, an apparent suicide, was the result of "a perfect storm of screw-ups."[1]

During an interview with ABC News, Barr stated he was "livid" when he learned that Jeffrey Epstein had committed suicide and "happy that they had gotten Ms. Maxwell." [2] When asked if the government had Maxwell's security "locked in" to ensure she would neither be able to kill herself or be harmed, Barr answered, with a mixture of laughter and a smile on his face: "Yes. We have asked them to tell us specifically the protocols they're following, and *we have a number of redundant systems to monitor the situation." Id.* (emphasis added.)

Ms. Maxwell has consistently described, and complained formally, of being subject to unfair and inconsistent treatment and threatening and intimidating behavior by corrections officers and ongoing sleep deprivation throughout her incarceration. The flashlight checks every 15 minutes have significantly hindered her ability to sleep, as she frequently wakes up every time the guards shine the flashlight into her cell. When she has been transported from the detention facility to court, she is awakened between 3:00 and 4:00 a.m., transported to the courthouse, and held in a cold cell on an approximately 12-inch metal bench for hours prior to her scheduled court appearance.

The experience of unfairness, disrespect, and a lack of safety significantly contributes to psychological distress in incarcerated individuals.[3] Furthermore, according to recent research on

---

[1] https://apnews.com/article/ap-top-news-politics-new-york-business-suicides-4ff27f28f32d446795b65ac7dd8cc4ac.

[2] https://abcnews.go.com/Politics/video/barr-livid-jeffrey-epstein-case-71681411.

[3] Liebling, A., Durie, L., Stiles, A., & Tait, S. (2013). Revisiting prison suicide: The role of fairness and distress. In *The effects of imprisonment* (pp. 229-251).

the effects of sleep deprivation on cognitive functioning, "sleep deprivation result[s] in a loss of cognitive flexibility through feedback…sleep deprivation causes a fundamental problem with dynamic attentional control." [4]

Ms. Maxwell's ability to cope with the stress of her legal proceedings and to participate meaningfully in her defense have been gradually eroded over time due to the conditions of her confinement and are further exacerbated by ongoing sleep deprivation. The conditions of her confinement are seriously impacting her overall mental and physical health which will continue to worsen over time if she remains incarcerated under the current conditions and subject to the regiment on trial – sleep deprivation, inadequate nutrition, exposure to cold temperature, daily humiliation. If she were released, her ongoing symptoms which will be exacerbated during trial would likely resolve completely, and she would be afforded the opportunity to properly prepare her defense for trial and endure the rigor of each trial day.

Ms. Maxwell is not a flight risk. The government concedes she poses no risk to the community. She is a mature adult with no prior history of criminal or violent behavior. She has steadfastly proclaimed her innocence, has maintained a strong desire to fight the case against her and is determined to fight her charges at trial and clear her name. There is no indication that she would attempt to flee given her personality profile and determination to be exonerated.

The bi-weekly teams of guards rotated in from high-security BOP facilities have reported to Ms. Maxwell that they are informed that she is a security and suicide risk, which heightens their vigilance and contempt. Like the assertion that she is a flight risk, alleging she is a suicide risk is a total fiction. Recently, a senior staff person at the MDC stated, in substance: "The problem we have with Ms. Maxwell is simple: she's not a criminal."

---

[4] Honn, K. A., Hinson, J. M., Whitney, P., & Van Dongen, H. P. A. (2019). Cognitive flexibility: a distinct element of performance impairment due to sleep deprivation. *Accident Analysis & Prevention*, *126*, 191-197.

Case 1:20-cr-00330-AJN   Document 408   Filed 11/03/21   Page 5 of 7

LAW OFFICES OF BOBBI C. STERNHEIM

Little has been done to improve Ms. Maxwell's situation, despite repeated disclosures by counsel. Neither the Court nor the government welcomes these issues but there is no recourse except to raise and expose Ms. Maxwell's inappropriate conditions of confinement and the daily problems that counsel must navigate as the sole advocates for Ms. Maxwell.[5]

As the trial draws near, we urge the Court to release Ms. Maxwell on the extremely restrictive conditions previously proposed and any additional conditions that the Court deems necessary. There is no factual or legal basis to conclude that no conditions exist to ensure Ms. Maxwell's appearance at trial.

If Ms. Maxwell is subject to the situation she was forced to endure on April 23, 2021, the day of her arraignment on the superseding indictment, and again yesterday, there is serious concern that she will be further diminished physically, rendering her unable to withstand the rigors of trial might render her incapable of attending her own trial.  On April 23, she was awakened at approximately 3:00 a.m., transported to the courthouse, kept in the cellblock from approximately 5:00 am to approximately 2:00 p.m., when she was brought to the courtroom holding cell.  For the entire day she was provided inadequate food and liquid, was not permitted to retain and review her legal materials and was kept shackled on a metal bench in an excessively cold cell. This past Monday, she was awakened at 3:45 a.m. and given a brown bag with two small apples, two small containers of milk and a cup of cereal but no utensils. She was not permitted to bring a sweatshirt for warmth. She was transported to the courthouse by two marshals. Her leg shackles and arm restraints prevented her from raising her feet to enter the van upright, requiring her to climb into the van on hands and knees. She arrived at the courthouse at

---

[5] Regarding the ongoing issue concerning receipt of legal mail and disclosures from the government, yesterday afternoon – November 2 – Ms. Maxwell received two discs and a hard drive containing many hundreds of pages of witness materials, exhibits and other discovery mailed by the government with cover letters dated October 26 and October 29, corresponding to the same disclosure made to counsel on October 25 and October 28.

approximately 5:30 a.m. and was placed in a cold cellblock without the opportunity to retain and review her legal file. Nor was she provided any soap or any disinfectant to wash her hands, in disregard of CDC pandemic protocols. When she caught a few minutes of sleep in the holding cell, a marshal jabbed her in the leg to get her attention.[6] She is already sleep deprived. Should she be subjected to these conditions throughout the trial, it is highly likely that she will not have the stamina to assist in her defense and endure the physical demands of a five-day per week, multi-week court proceedings under the current onerous conditions of her detention.

The Court and the defense are now in possession of Jencks Act and *Giglio* material regarding the four accusers which contradict the purported "strength" of the government's case. Contrary to the government's claim – which the Court relied on to repeatedly deny Ms. Maxwell's robust bail applications – there is no independent corroboration for the accusers' respective allegations of abuse. Their respective statements do not corroborate one another and further demonstrate contamination and collusion from various sources. These disclosures substantially undermine the strength of the government's case and underscore the fact that Ms. Maxwell should not be detained.

---

[6] The male marshal assigned to Ms. Maxwell's detail on Monday was inappropriately rough with and threatening to her. After returning Ms. Maxwell to the 4th floor cell block at 500 Pearl following the court appearance at 40 Foley Square, a round trip that required Ms. Maxwell to navigate stairs while in leg shackles, the marshal was verbally threatening. His brusque manner was evident in the courtroom. When alone with Ms. Maxwell, he stated, in substance: *"You think you are special. You are not special. Remember you are in custody and the judge doesn't care about you"* Ms. Maxwell was placed in a holding cell where she remained, unaware whether she would be brought to the U.S. Attorney's Office on the 5th Floor of 500 Pearl Street for a scheduled evidence review of which the marshal was aware. Ms. Maxwell does not need to be reminded that she is in custody and that she is being treated worse than most other pretrial detainees. It is especially concerning when a pretrial detainee is treated more abusively in court than in the MDC. The marshal's vitriol runs counter to the presumption of innocence and reflects poorly on the district's Marshal Service. I made a complaint to the U.S. Marshal and have requested that this particular marshal not be assigned to Ms. Maxwell's detail in the future. Marshal Ralph Sozio promptly responded and informed me that the issue is under investigation.

LAW OFFICES OF BOBBI C. STERNHEIM

It is incumbent on the Court to address these concerns and ensure that Ms. Maxwell's health and well-being are not further degraded by the punitive conditions of her confinement in the MDC and in the courthouse. Release is the appropriate and just remedy.

                                                        Very truly yours,

                                                        *Bobbi C. Sternheim*
                                                        BOBBI C. STERNHEIM

cc: All counsel