**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

November 8, 2021

**BY ECF**

The Honorable Alison J. Nathan
United States District Court
Southern District of New York
United States Courthouse
40 Foley Square
New York, New York 10007

    **Re:**    ***United States v. Ghislaine Maxwell*, 20 Cr. 330 (AJN)**

Dear Judge Nathan:

    The Government respectfully submits this letter in opposition to the defendant's motion to reconsider this Court's prior bail determinations. (Dkt. 408 ("Def. Mot.")). This Court has repeatedly found that there are no conditions of release that can reasonably assure the defendant's appearance (Dkt. 93, 106, 169), and the Second Circuit has twice rejected the defendant's appeals (*see United States v. Maxwell*, No. 21-58, Dkt. 86, 96 (2d Cir.)). The defendant's latest motion largely repeats arguments that have been made and rejected before. There is no basis for the Court to reconsider its prior rulings.

    **A. Procedural History**

    1. The Court's First Detention Order

    After the defendant's arrest, this Court received multiple written submissions and held a lengthy oral argument on the question of bail. (*See* Dkt. 93 ("First Order")).  On July 14, 2020, in a detailed oral ruling, the Court ordered the defendant detained on the basis of risk of flight. (*Id.* at 79-91). First, the Court found that "the nature and circumstances of the offense here weigh in favor of detention," given the statutory presumption of detention triggered by charges involving

minor victims and the potential penalties those charges carry. (*Id.* at 82). Second, the Court determined that "[t]he government's evidence at this early juncture of the case appears strong" based on the "multiple victims who provided detailed accounts of Ms. Maxwell's involvement in serious crimes," as well as corroboration in the form of "significant contemporaneous documentary evidence." (*Id.*). Third, the Court found that the defendant's history and characteristics demonstrate that she poses a risk of flight. (*Id.* at 83). In addressing that third factor, the Court emphasized the defendant's "substantial international ties," which "could facilitate living abroad," including "multiple foreign citizenships," "familial and personal connections abroad," and "at least one foreign property of significant value." (*Id.*). The Court noted that Maxwell "is a citizen of France, a nation that does not appear to extradite its citizens," and found that Maxwell "possesses extraordinary financial resources," yet "the representations made to Pretrial Services regarding the defendant's finances likely do not provide a complete and candid picture of the resources available." (*Id.* at 83-84).

Accordingly, the Court found that the Government had carried its burden of demonstrating that the defendant "poses a substantial actual risk of flight" and that "even the most restrictive conditions of release would be insufficient" to ensure her appearance. (*Id.* at 86). The Court found that although Maxwell "apparently failed to submit a full accounting or even a close to full accounting of her financial situation," "[e]ven if the picture of her financial resources were not opaque, as it is, detention would still be appropriate." (*Id.* at 86-87). That conclusion was informed by the defendant's "significant financial resources" and "demonstrated sophistication in hiding those resources and herself." (*Id.* at 87). The Court emphasized that the defendant's "recent conduct underscores her extraordinary capacity to evade detection, even in the face of what the defense has acknowledged to be extreme and unusual efforts to locate her." (*Id.*). The Court

Page 3

concluded that electronic monitoring and private security guards "would be insufficient" because the defendant could remove the monitor and evade private guards. (*Id.* at 87-88).

Finally, the Court rejected the defendant's arguments about the risks of COVID-19 and the difficulty of preparing a defense with an incarcerated client, noting that the defendant had many months to prepare for trial. (*Id.* at 89-90). The Court found that measures in place were sufficient to ensure the defendant's access to her counsel, but also directed the Government to work with the defense "to provide adequate communication between counsel and client" and stated that the defense may make specific applications to the Court for further relief if the process was "inadequate in any way." (*Id.* at 90-91).

### 2. The Court's Second Detention Order

The defendant renewed her bail application in December 2020, presenting a revised bail package with additional financial restrictions. (Dkt. 97). After receiving further written submissions (Dkt. 100, 103), the Court denied the defendant's application in a written opinion issued on December 28, 2020. (Dkt. 106 ("Second Order")).  The Court found that the arguments presented "either were made at the initial bail hearing or could have been made then" and the new information "only solidifies the Court's view that the Defendant plainly poses a risk of flight and that no combination of conditions can ensure her appearance." (*Id.* at 1-2). The Court explained:

> the charges, which carry a presumption of detention, are serious and carry lengthy terms of imprisonment if convicted; the evidence proffered by the Government, including multiple corroborating and corroborated witnesses, is strong; the Defendant has substantial resources and foreign ties (including citizenship in a country that does not extradite its citizens); and the Defendant, who lived in hiding and apart from the family to whom she now asserts important ties, has not been fully candid about her financial situation.

(*Id.* at 2). The Court rejected the defendant's claim that the Government overstated the strength of its case at the bail hearing, finding that the defendant "too easily discredits the witness testimony."

(*Id.* at 9-10). The Court credited the Government's proffer that "additional evidence, including flight records and other witnesses' corroborating testimony, will further support the main witnesses' testimony and link the Defendant to Epstein's conduct." (*Id.* at 10).

The Court found that the defendant "continues to have substantial international ties and multiple foreign citizenships, and she continues to have familial and personal connections abroad." (*Id.* at 11). The Court was unpersuaded by the defendant's offer to consent to extradition, noting that the "legal weight of the waivers is, at best, contested" and therefore the risk of flight remained "fundamentally unchanged." (*Id.* at 11-13). The Court further explained that the defendant's "extraordinary financial resources also continue to provide her the means to flee the country and to do so undetected." (*Id.* at 13).

The Court emphasized that the defendant's "pattern of providing incomplete or erroneous information to the Court or to Pretrial Services bears significantly" on its assessment of her history and characteristics. (*Id.* at 15). In so doing, the Court highlighted that in July 2020 the defendant represented to Pretrial Services that she possessed around $3.5 million in assets, but in connection with her renewed request for bail presented a report on her finances that estimated the net worth of the defendant and her spouse to be approximately $22.5 million as of October 2020. (*Id.*). The Court found that the difference "makes it unlikely that the misrepresentation was the result of the Defendant's misestimation rather than misdirection." (*Id.* at 15-16). The Court explained:

> In sum, the evidence of a lack of candor is, if anything, stronger now than in July 2020, as it is clear to the Court that the Defendant's representations to Pretrial Services were woefully incomplete. That lack of candor raises significant concerns as to whether the Court has now been provided a full and accurate picture of her finances and as to the Defendant's willingness to abide by any set of conditions of release.

(*Id.* at 16). The Court again concluded that the defendant presented a risk of flight and that the proposed bail package "cannot reasonably assure her appearance," as it "would leave unrestrained millions of dollars and other assets that she could sell in order to support herself" and the "proposed bond is only partially secured." (*Id.* at 16-18).

Finally, the Court was "unpersuaded" by the defendant's argument "that the conditions of her confinement are uniquely onerous, interfere with her ability to participate in her defense, and thus justify release." (*Id.* at 20). The Court noted that the defendant did not "meaningfully dispute" that she has received more time than other inmates at the Metropolitan Detention Center ("MDC") to review discovery and as much, if not more, time to communicate with her lawyers. (*Id.*). And the Court reiterated that it would continue to ensure that the defendant is able to speak and meet regularly with her attorneys and review discovery to prepare her defense. (*Id.* at 20 n.3).

### 3. The Court's Third Detention Order

On February 23, 2021, the defendant filed a third bail application, proposing two additional bail conditions: (1) renunciation of her French and British citizenship; and (2) placement of a portion of her and her spouse's assets in a new account to be overseen by a monitor. (Dkt. 160). After considering multiple written submissions (Dkt. 160, 165, 171), the Court denied the defendant's request in another written opinion. (Dkt. 169 ("Third Order")).

The Court concluded that the defendant's new application did not disturb its prior conclusions. (*Id.* at 2). The Court reiterated that detention was warranted in light of the proffered strength and nature of the Government's case, the defendant's "substantial international ties, familial and personal connections abroad, substantial financial resources, and experience evading detection," and the defendant's "lack of candor regarding her assets" at the time of her arrest. (*Id.* at 7).

The Court rejected the defendant's argument that the strength of the evidence was diminished by her then-pending pre-trial motions (which have since been denied). (*Id.* at 5-6). The Court also rejected the two additional conditions proposed by the defendant, noting the "[c]onsiderable uncertainty regarding the enforceability and practical impact of the [foreign citizenship] renunciations," and finding that, despite the proposed monitorship, the defendant "would continue to have access to substantial assets—certainly enough to enable her flight and to evade prosecution." (*Id.* at 10-11). The Court concluded, "If the Court could conclude that any set of conditions could reasonably assure the Defendant's future appearance, it would order her release. Yet while her proposed bail package is substantial, it cannot provide such reasonable assurances." (*Id.* at 11).

### 4. The Second Circuit's Orders

The defendant filed appeals from the Court's second and third detention orders. After hearing oral argument, the Circuit denied the defendant's motion for bail in a written order. (*See United States v. Maxwell*, No. 21-58, Dkt. 86 (2d Cir. Apr. 27, 2021)).

Following that decision, the defendant submitted a letter to this Court asking it "to address Ms. Maxwell's sleeping conditions by directing MDC to cease 15-minute light surveillance of Ms. Maxwell or justify the need for the disruptive flashlight surveillance." (Dkt. 256 at 2). The Court promptly ordered the Government to confer with MDC counsel and provide the Court with an explanation regarding the use of flashlights and the basis for it, which the Government then did. (Dkt. 257, 270). On May 14, 2021, this Court issued an order denying the defendant's request for an order directing the MDC to modify its nighttime monitoring schedule. (Dkt. 282). In reaching this decision, the Court noted that the defendant's claim that MDC staff were shining the light directly into her eyes and disrupting her sleep was "unsupported by affidavit or other factual

showing." (*Id.* at 1). The Court also found that "nothing in the record plausibly establishes that current protocols interfere with Maxwell's ability to prepare for her trial and communicate with her lawyers." (*Id.* at 2).

The defendant then filed another motion in the Second Circuit, seeking bail or, in the alternative, an evidentiary hearing regarding the conditions of her confinement. (*See United States v. Maxwell*, No. 21-58, Dkt. 89 (2d Cir. May 17, 2021)). In the motion, she renewed her claims that the "horrific conditions [at MDC] make it impossible to prepare for trial." (*Id.* at 2; *see also id.* at 2-3 (listing alleged horrific conditions, such as sleep deprivation, brown water, surveillance of attorney-client meetings, overflowing sewage, computer without sufficient capacity to review discovery)). The Second Circuit denied her motion in a written order. (*See United States v. Maxwell*, No. 21-58, Dkt. 96 (2d Cir. June 2, 2021)).

### B. Applicable Law

In seeking pretrial detention, the Government bears the burden of showing, by a preponderance of the evidence, that the defendant poses a risk of flight, and that no condition or combination of conditions would reasonably assure her presence in court. *See* 18 U.S.C. § 3142(f); *United States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007).

However, where, as here, the defendant is charged with certain offenses, including offenses involving a minor victim under 18 U.S.C. §§ 1591, 2422 or 2423, a statutory presumption arises "that no condition or combination of conditions will reasonably assure the appearance of the person as required . . . ." 18 U.S.C. § 3142(e)(3)(E). In such a case, the defendant "bears a limited burden of production—not a burden of persuasion—to rebut that presumption by coming forward with evidence that [s]he does not pose a … risk of flight." *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001). Even where a defendant produces sufficient evidence to rebut the statutory

presumption of detention, the presumption does not disappear; instead, it becomes a factor to be weighed and considered in deciding whether release is warranted. *Id.*

Where the Government seeks detention based on flight risk, the court must consider: (1) "the nature and circumstances of the offense charged"; (2) "the weight of the evidence against the person"; and (3) the "history and characteristics of the person." 18 U.S.C. § 3142(g).

A detention hearing may be reopened "at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required." 18 U.S.C. § 3142(f); *see also United States v. Bush*, No. 18 Cr. 907 (PAC), 2021 WL 371782, at *1 (S.D.N.Y. Feb. 3, 2021) (motion for reconsideration of bail requires defendant to show "controlling decisions or data that the court overlooked— matters, in other words, that might reasonably be expected to alter the conclusion reached by the court" (internal citation and quotations omitted)).

### C. Discussion

On three occasions, this Court has correctly found that there are no conditions of release that can reasonably assure the defendant's appearance, given the grave risk of flight that she presents. In three carefully reasoned decisions issued after lengthy briefing and argument, this Court has concluded that detention is appropriate in light of the nature and circumstances of the offense, which carry a presumption of detention; the strength of the Government's proffered evidence; and the defendant's history and characteristics, particularly her substantial international ties, multiple foreign citizenships, familial and personal connections abroad, ownership of at least one foreign property of significant value, lack of candor about her finances, and "extraordinary capacity to evade detection." (First Order at 79-91; Second Order at 7-20; Third Order at 6-11).

The defendant's latest bail application does not meaningfully engage with the Court's previous findings and reasoning. Nor does it identify any intervening change in law or factual circumstance. Instead, the defense turns to rhetoric and anecdotes better suited to tabloids than briefs. Where legal arguments can be found, they are cursory and unpersuasive.

With respect to risk of flight, the defendant's argument consists of a single paragraph, in which she asserts that she "is not a flight risk" because she "is a mature adult" who has "proclaimed her innocence" and therefore "[t]here is no indication that she would attempt to flee given her personality profile and determination to be exonerated." (Def. Mot. 4). These conclusory assertions were also made in her prior bail applications, which have been rejected. (*See, e.g.*, Dkt. 18 at 1, 3; Dkt. 97 at 1; Dkt. 160 at 2). And they completely fail to address the Court's detailed findings about the defendant's substantial international ties, multiple foreign citizenships, familial and personal connections abroad, ownership of at least one foreign property of significant value, lack of candor about her finances, and extraordinary capacity to evade detection.

The defendant's primary argument consists of allegations and complaints about the conditions of her confinement, which are loosely tied to the claim that such conditions impair her ability to prepare for trial. But these same complaints have been a part of each of the defendant's bail applications (*see, e.g.*, Dkt. 18 at 7-9; Dkt. 97 at 35-38; Dkt. 171 at 9-10), as well as numerous other submissions to the Court. Throughout this case, the Court has maintained close oversight of those conditions,[1] and ensured that the defendant has ample time to review her discovery and prepare for trial—more time, in fact, than any other inmate at the MDC. (Second Order at 20). And the Court has repeatedly found that the defendant's ability to prepare for trial has not been

---

[1] For example, in response to the defendant's most recent complaint—regarding the timing of her transportation to Court—the Court directed the Government to confer with the BOP and United States Marshals Service, and the Government is providing a letter addressing the issue today.

compromised. (*See, e.g.*, Dkt. 282 at 2 (finding "nothing in the record plausibly establishes that current protocols interfere with Maxwell's ability to prepare for her trial and communicate with her lawyers")).

Finally, in a single paragraph, the defendant argues that the Jencks Act and *Giglio* material she has received "contradict the purported 'strength' of the government's case." (Def. Mot. 6). But that claim is supported by only the most conclusory of assertions that "there is no independent corroboration" for the victims' statements and that they "demonstrate contamination and collusion from various sources." (*Id.*). The defendant has made such arguments about the strength of the Government's case before (*see, e.g.*, Dkt. 18 at 19; Dkt. 97 at 30-33; Dkt. 171 at 7-8), and each time the Court has rejected the defendant's bail application. (*See, e.g.*, Second Order at 9-10 (rejecting the defendant's claim that the Government overstated the strength of its case at the bail hearing, finding that the defendant "too easily discredits the witness testimony")). Moreover, since the Court's third detention order, the Court has also rejected the defendant's pretrial motions to dismiss the charges (Dkt. 207, 317), the pendency of which the defendant had also claimed undermined the strength of the case (*see, e.g.*, Dkt. 171 at 7-8), and a grand jury returned a superseding indictment charging additional counts based on an additional victim, and the Government intends to prove the existence of two additional victims at trial. Thus, the defendant's latest *ipse dixit* about the victims does not in fact "undermine the strength of the government's case." (Def. Mot. 6). Quite the contrary, that the defendant is this close to trial and still cannot make a more compelling argument about the strength of the case underscores what has been apparent from the Government's first proffer: the case is strong.

The defendant's motion for reconsideration should be denied.

Page 11

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By:  ___s/_____
     Maurene Comey
     Alison Moe
     Lara Pomerantz
     Andrew Rohrbach
     Assistant United States Attorneys
     Southern District of New York

Cc: Defense Counsel (By ECF)