# Exhibit D

# Grooming and Seduction

Journal of Interpersonal Violence
2018, Vol. 33(1) 28–36
© The Author(s) 2017
Reprints and permissions:
sagepub.com/journalsPermissions.nav
DOI: 10.1177/0886260517742060
journals.sagepub.com/home/jiv

$SAGE

## Park Dietz[1]

### Abstract

Ken Lanning's recollections of the origins of the use of the term "grooming" to refer to techniques used by acquaintances to gain sexual access to and control over children is an important contribution to the history of the significant recognition that many cases of child sexual abuse occur at the hands of offenders who are acquaintances of the child and who do not need to use force, threats, or violence to gain the compliance of their victims. That this recognition was slow in coming is obvious in retrospect, as is true of any social problem that remains hidden for centuries only to burst into public consciousness over the course of a few years. In this article, I report the results of searches using Google Scholar to look at the introduction of this use of the term "grooming" to the peer-reviewed literature in 1984 and its increasing use through 2016. Since 2008, the usage has been adopted in hundreds of articles in the professional literature each year, suggesting that this usage of the term "grooming" will remain common in the decades ahead. I also examine the history of the term "seduction" in the context of child sexual abuse, particularly two archaic uses of the term: as a euphemism for any sexual or sexually stimulating encounter between child and adult and in the context of suggestions that it was the child who seduced the adult. To avoid resurrecting any confusion over these issues, it would be a mistake to abandon "grooming" in favor of "seduction." I conclude that the best strategy may be that adopted by Lanning of using the terms grooming and seduction in tandem, explaining the parallels between the seduction of one adult by another and the grooming or seduction of a child by an adult.

[1]Park Dietz & Associates, Newport Beach, CA, USA

**Corresponding Author:**
Park Dietz, Park Dietz & Associates, Newport Beach, CA 92663, USA.
Email: expert@parkdietzassociates.com

**Keywords**

grooming, seduction, child sexual abuse, acquaintance molestation, litigation

## Grooming and Seduction

In the development of knowledge of child sexual abuse, few discoveries could outweigh the importance of recognizing that a large proportion of offenses are committed by acquaintances of the child using techniques other than force or threat of force. No individual has done more to share this insight with the international law enforcement community than Ken Lanning, whose writings and teachings have also reached mental health professionals, those who work in the criminal justice and social service systems, those who care for the nation's children, and countless concerned citizens and parents.

The application of the terms "seduction" or "grooming" to these nonforceful, nonthreatening, and nonviolent techniques has been in the service of disseminating this important insight, which first burst into public consciousness as a real possibility in the mid-1980s as a result of partially untrue media reports about the McMartin School case and the case of Father Gilbert Gauthe, both of which stories first broke in 1984. Yet even today, far too many people, including many who should know better, have difficulty grasping the possibility of nonforceful, nonthreatening, and nonviolent acquaintance molestation, as their preconceptions of childhood innocence and predatory molesters are too strong to allow them to accept that children can be so readily manipulated into doing or allowing things that others find abhorrent.

## Grooming

Lanning (2018) is precisely correct in dating to the 1980s the use of the term "grooming" to refer to techniques for gaining sexual access to children and in his observation that during the 1980s, this usage gradually increased. Using the search capabilities of Google Scholar, I found no use of the word "grooming" to mean such techniques in conjunction with the terms "child sexual abuse," "child molestation," or "child molester" in the professional literature from 1850 through 1983. The first publication identified by Google Scholar as using the term "grooming" in this way was an article by Conte (1984) citing Groth and Birnbaum (1979) for the proposition that "[i]n most cases, except those involving abuse by a stranger, the perpetrator involves children in sexual abuse through a grooming process in which a combination of kindness, attention, material enticement, special privilege, and coercion are

*Journal of Interpersonal Violence 33(1)*



**Figure 1.** Use of the term "grooming" in association with "child sexual abuse" in the professional literature accessed by Google Scholar, 1984-2016, as of 25 August, 2017.

expertly applied" (p. 558). Groth and Birnbaum accurately describe the process (at p. 142-143), but do not use the term "grooming."

Figure 1 shows how the maximum number of publications in the database using the term "grooming" for this meaning[1] has increased since 1984. For the remainder of the 1980s, zero to nine publications per year used "grooming" for this meaning. From 1990-1999, the annual frequency rose from eight to 63, and from 2000 to 2009, from 64 to 227. From 2010 to 2016, the annual frequency rose from 282 to 533.

My own recollection of the growing use of the term "grooming" in this context during the 1980s and 1990s is that it spread not only through peer-reviewed literature and books, but also though the teaching and training being conducted by Ken Lanning, Ann Burgess, and other thought leaders of the era, and that it was gradually adopted by journalists and the general public as well. As the term came to be widely applied, it became increasingly obvious that offenders who groom children often groom the parents of those children, the organizations through which they work or volunteer with children, and the communities in which they function. The success of these offenders in doing so makes it all the more difficult for observers to overcome the false belief that such a "nice guy" could not be harming children (Lanning & Dietz, 2014).

Lanning (2018) points to some of the ways in which the term "grooming" has been misapplied (e.g., to refer to the use of "lures" in stranger cases or what might be expected parental behaviors in intrafamilial cases) but does

not mention the misuse of the term in civil litigation. Where a victim is suing an employer or organization in connection with the sexual abuse of a minor by an employee or volunteer, it has become commonplace for the victim's advocate to argue that the failure to detect "grooming" was negligent on the part of the employer or organization. If their use of the term "grooming" always encompassed excessive focus on a particular child, time alone with the child, or inappropriate touching, this usage might not be problematic, but when "grooming" is applied to such common and desirable behaviors as being kind or attentive or helpful or caring, there is considerable risk of mis-leading the fact finder into believing that these latter behaviors are well-established predictors of child sexual abuse when there is no evidence whatsoever that they can help discriminate between good employees and vol-unteers, on the one hand, and risky employees and volunteers, on the other hand. In the litigation context, efforts to expand the concept of "grooming" to encompass desirable behaviors that are not associated with elevated risk is misleading, particularly when coupled with the presumption or suggestion that "grooming" always reflects an intent or plan to offend or, worse, that an offense can be proved by the fact that the accused engaged in "grooming."

## Seduction

Although I agree with Lanning (2018) that the term "seduction" is preferable to the term "grooming," at least when there is an opportunity to explain how similar the seduction of a child is to the seduction of an age-appropriate part-ner, there is ample historical reason to be cautious about the use of the term "seduction" in this context without further explanation. This is because of two archaic usages of "seduction" in the older literature.

### Archaic Usage #1: Seduction as a Euphemism for the Offense

One of the archaic usages of "seduction," found often in the older scientific literature, is as a vague euphemism for any occurrence of child sexual abuse or an event that may have been sexually simulating to the child, as in these passages:

- "[A] shock of some kind is held responsible for the neurosis—an attack by an animal, a threat of castration, a seduction, an actual view-ing of parental coitus . . ." (Isaacs, 1928, p. 193).
- ". . . I wondered whether the precocity of these fantasies and their frequency might not be due to actual seduction that the child had expe-rienced . . ." (Rank, 1942, p. 56).

- ". . . It was expected that a connection would be found between the child's symptom and the seduction, which was assumed to be the traumatic factor . . ." (Bornstein, 1946, p. 230).
- ". . . [W]here father or mother, either consciously or unconsciously, elevate the child into a substitute sexual partner or commit real acts of seduction with him . . ." (A. Freud, 1968, p. 45).
- "If we assume that the term 'seduction' refers to any kind of sexual encounter, it can range from milder types, such as exposing oneself and enticing the child to follow suit, all the way to forcible rape" (Finch, 1974, p. 34).
- "She was then able to use the dolls to reveal the drama of her own seduction and the ensuing family chaos . . ." (Mrazek, 1980, p. 279).

Here "seduction" is not referring to the process by which a child is groomed or seduced but to the offensive event itself. Freud's seduction hypothesis ". . . generalized that the roots of all adult neuroses lay in childhood sexual contacts with adults" (Gagnon, 1965, p. 177). The vagueness of this use of "seduction" makes it impossible to determine which child sexual abuse behaviors are and are not encompassed by the term and suggests that "seduction" may mean different specific things to different authors.

Authors sometimes imply that "seduction" does not include violence, as when they distinguish it from rape or other violent assaults, as in these examples:

- "Klein has stated that an experience of seduction or rape by a grown-up person may have serious effects upon the child's psychic development . . ." (Bender & Blau, 1937, p. 500).
- "[T]he possible . . . event of seduction, incest, or rape . . ." (Lewis & Sarrel, 1969, p. 606).
- "Violence is rarely found to accompany the incestuous act, possibly because seduction, passive compliance, or sexual curiosity or exploration promote such relationships" (Singer, 1979, p. 8).
- "Children can be broken much more easily than adults, and the effect on them of torture, hatred, seduction, and rape—or even of indifference, of deprivation of love and care—is the devastating one of developmental arrest . . ." (Shengold, 1979, p. 537).

Although this usage comports with the modern idea of seduction or grooming insofar as it is to be distinguished from the use of force, threats, or violence, we would not today distinguish seduction from rape but rather would view seduction (or grooming) as a means of completing a rape or other sexual offense with minimal resistance or risk of disclosure.

Cioffi (1976) interpreted Freud as using the concept of seduction to refer only to nonviolent sexual assaults, writing ". . . he duly reported that he had discovered the specific cause of psychoneurotic disorder: A passive sexual experience before puberty. In other words, a seduction" (p. 275). Cioffi's (1976) quotations of Freud in the same article support this interpretation: "Freud later assigned to his patients in phrases like: 'hysterics trace back their symptoms to fictitious traumas'—or patients 'ascribe their symptoms to passive sexual experiences in early childhood'" (p. 277). Even here, however, what constitutes a "passive sexual experience" is unclear, as it could mean the offender did not use violence, that the child did not resist, or that the child was not an active participant.

### *Archaic Usage #2: The Child as Seducer*

A second archaic usage of "seduction" is to refer to the child's tempting of the offender. This is diametrically opposed to our current thinking about child sexual abuse in its suggestion that it is the child who is at fault, as in these examples:

- ". . . [A] most striking feature was that these children were distinguished as unusually charming and attractive in their outward personalities. Thus, it is not remarkable that frequently we considered the possibility that the child might have been the actual seducer rather than the one innocently seduced" (Bender & Blau, 1937, p. 514).
- "The majority of pedophiles are harmless individuals and their victims are usually known to be aggressive and seductive children" (Revitch & Weiss, 1962, p. 78).
- "In many [cases] it was highly probable that the child had used his charm in the role of seducer rather than that he had been the innocent one who had been seduced . . ." (Bender & Grugett, 1952, p. 826).
- "Abraham (1907) and Bender and Blau (1937) have commented on how charming and seductive these children can be" (Rosenfeld, Nadelson, Krieger, & Backman, 1977, p. 332).

Three examples of authors attempting to remedy this archaic view are as follows:

- ". . . Although there may be a different quality to a seduction than to an attack, it must be remembered that even a seductive child cannot have full adult comprehension of the act she is courting and cannot be viewed as responsible in this area" (Lipton & Roth, 1969, p. 859).

"Because the affectional needs of the child are not adequately met by the parents, the child may indiscriminately relate to adults in an affection-seeking manner in an effort to ensure her emotional survival.

Numerous other investigators have characterized this behavior of the child as 'seductive'. However, our study indicates that this behavior is instead the child's often desperate attempt to meet her needs for care and attention . . . The child's behavior may often appear sexualized to an adult . . . As a result, it is more appropriate to describe this behavior as affection-seeking rather than seductive" (Johnston, 1979, pp. 948-949).

- "'Everybody knows' that adults must protect themselves from groundless accusations of seductive or vindictive young people. . . . What everybody does not know, and would not want to know, is that the vast majority of investigated accusations prove valid and that most of the young people were less than eight years old at the time of initiation" (Summit, 1983, p. 178).

## Conclusion

Since its introduction to the peer-reviewed professional literature in 1984, the term "grooming" has become so widely adopted that it will remain in widespread use for decades to come. We can and should clarify the meaning of the term wherever possible to avoid misuse or misleading of our audiences. We could benefit from prospective studies of the frequency of grooming-like behaviors among adults in target-rich environments such as schools, youth sports, and youth groups, which could help distinguish behaviors portending risk from those that do not, though it would require a large sample and a long time to reveal at least some of the offenders in the sample.

The two archaic uses of the term "seduction" in the context of child sexual abuse identified here are too recent and too widely known to justify completely abandoning the term "grooming" in favor of "seduction," even if it were possible to do so. Perhaps the best strategy is that adopted by Lanning (2018) of explaining the parallel between the courtship and mating rituals that adults use with one another and the courtship and mating rituals that some use with children.

### Declaration of Conflicting Interests

The author(s) declared no potential conflicts of interest with respect to the research, authorship, and/or publication of this article.

**Funding**

The author(s) received no financial support for the research, authorship, and/or publication of this article.

**Note**

1. The data on which Figure 1 is based are derived from year-by-year searches of Google Scholar for the combination of the terms "child sexual abuse" and "grooming," excluding citations and patents. One should not assume that the underlying database is complete or that all the publications included in the count use "grooming" in this way or represent peer-reviewed literature, as newsletters, government reports, books, and other documents also make their way into such searches. Nonetheless, the graph gives an adequate representation of the growing use of the term "grooming" for this purpose.

**References**

Abraham, K. (1907). The experiencing of sexual traumas as a form of sexual activity. In E. Jones (Ed.), *Selected papers on psycho-analysis* (pp. 47-63). London, England: Hogarth Press.

Bender, L., & Blau, A. (1937). The reaction of children to sexual relations with adults. *American Journal of Orthopsychiatry*, *7*, 500-518.

Bender, L., & Grugett, Jr., A. E. (1952). A follow-up study of children who had atypical sexual experience. *American Journal of Orthopsychiatry*, *22*, 825-837.

Bornstein, B. (1946). Hysterical twilight states in an eight-year-old child. *The Psychoanalytic Study of the Child*, *2*, 229-240.

Cioffi, F. (1976). Was Freud a liar? *Orthomolecular Psychiatry*, *5*, 275-280.

Conte, J. R. (1984). The justice system and sexual abuse of children. *Social Service Review*, *58*, 556-568.

Finch, S. M. (1974). Effects of adult sexual seduction on children. *Journal of Clinical Child Psychology*, *3*, 33-35.

Freud, A. (1968). Indications and contraindications for child analysis. *The Psychoanalytic Study of the Child*, *23*, 37-46.

Gagnon, J. H. (1965). Female child victims of sex offenses. *Social Problems*, *13*, 176-192.

Groth, A. N., & Birnbaum, H. J. (1979). *Men who rape: The psychology of the offender*. New York, NY: Plenum Press.

Isaacs, S. S. (1928). The mental hygiene of the pre-school child. *British Journal of Medical Psychology*, *8*, 186-193.

Johnston, M. S. K. (1979). The sexually mistreated child: Diagnostic evaluation. *Child Abuse & Neglect*, *3*, 943-951.

Kris, E. (1950). The significance of Freud's earliest discoveries. *The International Journal of Psychoanalysis*, *31*, 108-116.

Lanning, K. V. (2018). The evolution of grooming: Concept and term. *Journal of Interpersonal Violence*, *33*, 5-16.

Lanning, K. V., & Dietz, P. (2014). Acquaintance molestation and youth-serving organizations. *Journal of Interpersonal Violence*, *29*, 2815-2838. doi: 10.1177/0886260514532360

Lewis, M., & Sarrel, P. M. (1969). Some psychological aspects of seduction, incest, and rape in childhood. *Journal of the American Academy of Child Psychiatry*, *8*, 606-619.

Lipton, G. L., & Roth, E. I. (1969). Rape: A complex management problem in the pediatric emergency room. *The Journal of Pediatrics*, *75*, 859-866.

Mrazek, D. A. (1980). The child psychiatric examination of the sexually abused child. *Child Abuse & Neglect*, *4*, 275-284.

Rank, B. (1942). Where child-analysis stands today. *American Imago; A Psychoanalytic Journal for the Arts and Sciences*, *3*(3), 41-60.

Revitch, E., & Weiss, R. G. (1962). The pedophiliac offender. *Diseases of the Nervous System*, *23*, 73-78.

Rosenfeld, A. A., Nadelson, C. C., Krieger, M., & Backman, J. H. (1977). Incest and sexual abuse of children. *Journal of the American Academy of Child Psychiatry*, *16*, 327-339.

Shengold, L. L. (1979). Child abuse and deprivation: Soul murder. *Journal of the American Psychoanalytic Association*, *27*, 533-559.

Singer, M. (1979). Perspective on incest as child abuse. *Australian & New Zealand Journal of Criminology*, *12*, 3-16.

Summit, R. C. (1983). The child sexual abuse accommodation syndrome. *Child Abuse & Neglect*, *7*, 177-193.

## Author Biography

**Park Dietz,** MD, MPH, PhD, was educated at Cornell, Johns Hopkins, and the University of Pennsylvania, and taught for 10 years at Harvard Medical School and the University of Virginia School of Law and School of Medicine. He is now a clinical professor of psychiatry and biobehavioral sciences at University of California, Los Angeles (UCLA). As president of Park Dietz & Associates, Inc., he regularly oversees forensic evaluations of psychological damages and expert assessments of liability in child sexual abuse litigation, and as president of Threat Assessment Group, Inc., he regularly participates in the development and implementation of programs to prevent and respond to misconduct in organizations and institutions.