UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| United States of America,<br><br>—v—<br><br>Ghislaine Maxwell,<br><br>Defendant. | 20-CR-330 (AJN)<br><br>OPINION & ORDER |

ALISON J. NATHAN, District Judge:

      Before the Court is the Defense's motion to exclude the Government's expert witness, Dr. Lisa Rocchio, pursuant to Federal Rule of Evidence 702 and the standard in *Daubert v. Merrell Dow Pharmaceuticals*, Inc., 509 U.S. 579 (1993). Dkt. No. 386. The Government filed a response brief, Dkt. No. 397, and Defendant filed a reply, Dkt. No. 398. The Court conducted a *Daubert* hearing on November 10, 2021, at which both parties examined Dr. Rocchio. Dkt. No. 431. The Court stated its oral opinion at that hearing that it would deny and grant in part Defendant's motion, to be followed by this opinion.

      **I.**    **Legal standard**

      Federal Rule of Evidence 702 governs the admissibility of expert testimony. That rule states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
>     (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

1

>    (b) the testimony is based on sufficient facts or data;
>
>    (c) the testimony is the product of reliable principles and methods; and
>
>    (d) the expert has reliably applied the principles and methods to the facts of the case.

The Court exercises a "gatekeeper function" in assessing the admissibility of expert testimony. *Restivo v. Hessemann*, 846 F.3d 547, 575 (2d Cir. 2017). To determine whether an expert's method is reliable, the Court considers the non-exhaustive list provided by the Supreme Court in *Daubert*, including whether the expert's method has been tested, whether it has been subjected to peer review, the rate of error, standards controlling the method's operation, and whether the method is accepted by the expert community. *United States v. Kidd*, 385 F. Supp. 3d 259, 263 (S.D.N.Y. 2019) (citing *Daubert*, 509 U.S. at 593–94).

But Rule 702 ultimately sets a "liberal" and "permissive" standard of admissibility. *Nimely v. City of New York*, 414 F.3d 381, 395–96 (2d Cir. 2005). In particular, not every expert admissible under *Daubert* need rely on a method that conforms with "the exactness of hard science methodologies." *E.E.O.C. v. Bloomberg L.P.*, No. 07-CV-8383 (LAP), 2010 WL 3466370, at *13–14 (S.D.N.Y. Aug. 31, 2010) (quoting *United States v. Simmons*, 470 F.3d 1115, 1123 (5th Cir. 2006)).

**II.    Discussion**

As a preliminary matter, the Defense argues that the additional materials filed by the Government in support of Dr. Rocchio's expertise should be excluded as failing to comply with the Court's order that the Government make all expert witness disclosures by April 23, 2021. Dkt. No. 250. But that Order, made pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G), required only that the Government provide an adequate summary of the intended topics and opinions of Dr. Rocchio's testimony, which the Government did here in a timely manner. *See*

*Kidd*, 385 F. Supp. 3d at 262.  The Defense cites only one case, *United States v. Lewis*, which involved the distinct situation where a district court excluded expert testimony because the notice itself was untimely.  818 F. App'x 74, 79 (2d Cir. 2020).  The Court concludes that the Government's supplemental materials in further response to the Defense's motion are timely and may be considered in resolving the *Daubert* motion.

Turning to the proffered expert opinions, as articulated in the Government's disclosure and at the *Daubert* hearing, Dr. Rocchio would offer five expert opinions.  First, that perpetrators of sexual abuse of minors frequently use manipulation or coercion short of physical force as part of a strategic pattern, often referred to as grooming, to make the minor vulnerable to abuse.  Second, that manipulation and grooming can prevent the minor from understanding their experience as abuse and so prevent disclosure.  Third, that abuse can cause long-term traumatic and psychological consequences.  Fourth, that the presence of another individual can facilitate sexual abuse of minors.  And fifth, that nondisclosure, incremental disclosure, and secrecy are common among victims of sexual abuse and that memory can be affected by a variety of factors, including the effects of trauma.

The Defense does not contest that Dr. Rocchio has the qualifications to express opinions on these subjects.  Dr. Rocchio has a PhD in clinical psychology and is a clinical instructor at the Alpert Medical School of Brown University.  She has more than two decades of experience treating hundreds of victims of trauma, many of which were minor victims of sexual abuse.  She has published peer-reviewed articles on trauma and sexual abuse and has given numerous talks in addition to her teaching.  Given these papers, and her credible and extensive hearing testimony, the Court therefore finds Dr. Rocchio qualified as an expert.

The Defense instead argues that Dr. Rocchio's method is unreliable, that it is not relevant to the jury's determination, and that its prejudicial effect would substantially outweigh its probative value. These arguments rely heavily on a district court opinion from outside this circuit, *United States v. Raymond*, 700 F. Supp. 2d 142 (D. Me. 2010). After careful consideration of the Defense's arguments and the thorough reasoning in *Raymond*, the Court concludes that Dr. Rocchio's anticipated testimony is admissible with one exception. The Court will address first why Dr. Rocchio's testimony is admissible and then address the one opinion that it will exclude.

*First*, Dr. Rocchio's method is reliable and well-accepted in her profession. It is for this reason that several courts in this circuit have admitted the testimony of similar experts, such as testimony on so-called trauma bonding to explain why prostitutes may not flee from their pimps even when not physically restrained. In *United States v. Kidd*, the court admitted the testimony, finding it to be "quite common[ ]" and accepted in the academic literature. 385 F. Supp. 3d at 263. Identical testimony was admitted by Judge Furman in *United States v. Dupigny*, No. 18-Cr.-528 (JMF) (S.D.N.Y. 2019), Dkt. No. 198 at 27, by Judge Engelmayer in *United States v. Randall*, 19 Cr. 131 (PAE) (S.D.N.Y. 2020), Dkt. No. 335 at 24–30, and by Judge Cote in *United States v. Torres*, No. 20-CR-608 (DLC), 2021 WL 1947503, at *7 (S.D.N.Y. May 13, 2021).

Their decisions are consistent with the vast majority of courts to consider the admission of such experts. A number of courts have admitted experts on the particular topic of grooming at issue here, a sample of which include the Seventh Circuit in *United States v. Romero*, 189 F.3d 576, 585 (7th Cir. 1999), the Fifth Circuit in *United States v. Hitt*, 473 F.3d 146, 158 (5th Cir. 2006), the Ninth Circuit in *United States v. Halamek*, 5 F.4th 1081, 1087–89 (9th Cir. 2021), the Tenth Circuit in *United States v. Batton*, 602 F.3d 1191, 1201–02 (10th Cir. 2010), the Eighth

Circuit in *United States v. Johnson*, 860 F.3d 1133, 1141 (8th Cir. 2017), and the District of Massachusetts in *Doe ex rel. Pike v. Pike*, 405 F. Supp. 3d 243, 249 (D. Mass. 2019).

Here, Dr. Rocchio has extensive experience treating minors who have been sexually abused, and those decades of relevant experience, combined with her formal training, are an adequate basis for her to testify on methods that perpetrators of sexual abuse often use to build trust with their victims, whether that be grooming or other forms of manipulation and coercion. The Government has also provided several articles on the subject of grooming that convince the Court that it is a well-accepted theory in Dr. Rocchio's field. Though the Second Circuit has not ruled on the admissibility of a grooming expert, it has previously recognized the academic literature on grooming to facilitate sexual abuse of minors. *See United States v. Brand*, 467 F.3d 179, 203 (2d Cir. 2006). The Defense cites to several contrary articles that suggest experts disagree on the kinds of behaviors that define grooming. But if experts disagree on the proper interpretation of evidence, "it is not the Court's role to resolve the dispute through exclusion of one of the expert's opinions." *In re Digital Music Antitrust Litig.*, 321 F.R.D. 64, 80 (S.D.N.Y. 2017).

Moreover, Dr. Rocchio addressed these contrary articles during the *Daubert* hearing, identifying points of agreement and disagreement. Based on her testimony, the parties' submission and accompanying exhibits, the Court concludes that the core concept of grooming is well-accepted in the relevant literature, even if experts continue to debate the details.

The Defense's primary argument is that Dr. Rocchio's method is unreliable because it is based on her personal experience with the clients she has treated, that Dr. Rocchio did not verify whether those clients were truthful, and that Dr. Rocchio has not and cannot identify an error rate. The Court finds that these objections are misplaced in the field of clinical psychology,

particularly when studying the causes and effects of sexual abuse of minors. The Court agrees with Judge Engelmayer's response to this argument:

> The absence of large quantity statistical studies is explained by a practical reason that should be obvious to all. Studying the circumstances and psychological drivers of trafficked women is not like studying diseases or potential cures in laboratory animals. In those studies, laboratory conditions literally can be achieved. . . .
>
> That strictly quantitative mode of inquiry is not realistic or even ethical in the context of studying sex trafficking. The causes and contributors to sex trafficking by their nature must be studied retrospectively. They cannot ethically be studied otherwise. Subjects cannot be tested to see under what circumstances they would and would not, on a going forward basis, fall prey to the predations of sex traffickers. Given the necessarily retrospective nature of such a study, given the small size of the populations under review, and given the inherently individualized circumstances presented by different perpetrators, victims, and contexts in this tumultuous and emotionally fraught area of criminal conduct, the vocabulary of error rates and statistical significance is an unusually poor fit.

Tr. at 29–30, *United States v. Randall*, 19-Cr.-131 (PAE) (S.D.N.Y. 2020), Dkt. No. 335.

For the reasons Judge Engelmayer gave—which Dr. Rocchio echoed in her testimony—the Court finds that the error-rate factor listed by *Daubert* is not determinative as to the reliability of Dr. Rocchio's method.

For similar reasons, the Court rejects the Defense's argument that Dr. Rocchio's method is unreliable because she relied on the reports of her clients. Given the realities of studying sensitive criminal acts like sexual abuse, a researcher can only rarely verify reports with absolute certainty. Yet that does not mean a clinical or forensic psychologist accepts all statements at face value. Rather, as the Government notes, part of Dr. Rocchio's profession is to examine and diagnose her patients consistent with her significant training and specialized knowledge. Further, on the forensic side of her practice, Dr. Rocchio regularly investigates and verifies sexual abuse. She reports "remarkable consistency" between the reports of her clinical patients

6

and her forensic findings. Nov. 10 Tr. at 40. That said, the Defense is of course free to cross-examine Dr. Rocchio about how she evaluates her patients.

The Defense also suggests that Dr. Rocchio's experience is based on an unrepresentative sample of alleged victims because her patients self-selected seeking treatment with her. Yet the Defense does not explain why Dr. Rocchio's experience with a large number of patients would not be applicable to the alleged victims in this case. To the extent the Defense wishes to argue that Dr. Rocchio's experience is under-representative, that is a topic for cross-examination.

Further, the Defense argues that Dr. Rocchio's experience treating victims of sexual abuse does not make her an expert on grooming, which would require experience with perpetrators themselves. This argument overlooks the fact that, as she testified, Dr. Rocchio also relied on literature that includes studies of sexual abusers' reported behaviors. But more importantly, the Court concludes, as other courts like the Ninth Circuit have, that extensive experience with victims can be used to study perpetrators' process of victimization. *See Halamek*, 5 F.4th at 1088. That is especially so here where the crux of Dr. Rocchio's expected testimony is the effect that grooming behaviors have on the minor, not the perpetrator's mental state when performing the behaviors.

*Second*, the Court finds that Dr. Rocchio's opinions are relevant to the Government's case against Ms. Maxwell. Two points of law bear mention here. For one, as the Second Circuit has explained, expert testimony cannot "constitute evaluations of witness credibility"—that is, expert testimony is inadmissible if it "comment[s] directly, under the guise of expert opinion, on the credibility of trial testimony from" specific fact witnesses. *Nimely*, 414 F.3d at 398. Additionally, if the expert's "opinion is one that the jury could reach with their own 'common knowledge and common sense,' no expert testimony is warranted." *Edmondson v. RCI Hosp.*

7

*Holdings, Inc.*, No. 16-CV-2242 (VEC), 2020 WL 1503452, at *6 (S.D.N.Y. Mar. 30, 2020) (quoting 4 Weinstein's Federal Evidence § 702.03 (2019)); *see also United States v. Mulder*, 273 F.3d 91, 101 (2d Cir. 2001) (explaining that "the district court should not admit testimony that is 'directed solely to lay matters which a jury is capable of understanding and deciding without the expert's help'" (quoting *United States v. Castillo*, 924 F.2d 1227, 1232 (2d Cir. 1991))). Dr. Rocchio's first and second opinions may assist the jury in understanding how a minor may be enticed, induced, or coerced into illegal sexual activity without physical force. These opinions may also assist a jury in assessing evidence that some alleged victims repeatedly interacted with Jeffrey Epstein, seemingly voluntarily, even after they suffered abuse. Dr. Rocchio's fourth opinion is similarly relevant to the charges that require proving intentional enticement or inducement.

Dr. Rocchio's third and fifth opinions pertain to issues that will arise in the case based on anticipated cross-examination by the Defense. Specifically, the third opinion becomes relevant if the Defense impeaches an alleged victim based on their substance abuse. And the fifth opinion may become relevant if the Defense impeaches an alleged victim based on an ostensible delay in fully disclosing sexual abuse. At the *Daubert* hearing, the Defense stated that they intended to pursue both lines of impeachment at trial. Nov. 10 Tr. at 156–57. The Court therefore finds these elements of Dr. Rocchio's testimony relevant to matters the Defense intends to put in issue during anticipated cross-examination. The Court also concludes that these opinions satisfy the other relevant *Daubert* requirements. Namely, they would assist the jury in understanding concepts that require expert knowledge without directing the jury to reach any conclusion as to a witness's credibility. Additionally, both Dr. Rocchio's opinion about sexual abuse's connection to substance abuse and her opinion about delayed disclosure are "are outside the ken of the

average person," and so appropriate for expert testimony. *United States v. Felder*, 993 F.3d 57, 72 (2d Cir. 2021). Nor would admission of these opinions cause unfair Rule 403 prejudice since they are relevant rebuttal to impeachment points that the Defense will put in issue.

The Defense argues that Dr. Rocchio's testimony is not relevant because the Government represents that she will testify only to general principles and not offer "testimony regarding any specific victim." Dkt. No. 386 at 3. The Defense has the law backwards on this point. As explained above regarding the Second Circuit's *Nimely* decision, an expert may not testify as to a specific witness's credibility. 414 F.3d at 398. And as other courts have explained in admitting similar testimony, Dr. Rocchio's testimony is appropriate because she does *not* testify as to any specific witness's credibility. *See, e.g.*, *Torres*, No. 20-CR-608 (DLC), 2021 WL 1947503, at *7; *Johnson*, 860 F.3d at 1140 (8th Cir. 2017) (explaining that an expert may testify "regarding the general characteristics that sexually abused children exhibit" but may not usurp the jury's role of assessing the credibility of any specific victim); *United States v. Telles*, 6 F.4th 1086, 1097–98 (9th Cir. 2021) (same).

This analysis is referred to in the case relied upon by the Defense, *United States v. Raymond*, and in portions of the Defense's briefing, as a question of "fit." 700 F. Supp. 2d at 149. But *Daubert*'s "fit" requirement is really just a specialized relevance inquiry that asks "whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Alto v. Sun Pharm. Indus., Inc.*, No. 1:19-CV-09758 (GHW), 2021 WL 4803582, at *3 (S.D.N.Y. Oct. 13, 2021) (quoting *Daubert*, 509 U.S. at 591). Fit is satisfied if the expert's opinion would assist the jury's decision on a relevant question of fact without "usurp[ing] either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it." *Id.* (quoting

9

*United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994)).  For the reasons already provided, the Court finds that fit is satisfied here.

      *Third*, the probative value of Dr. Rocchio's testimony is not substantially outweighed by 403 prejudice to Ms. Maxwell.  The Court finds that Dr. Rocchio's testimony would not unduly "'simplify' an otherwise complex case" or mislead jurors by a supposedly infallible expert.  Dkt. No. 386 at 11.  Dr. Rocchio's opinions speak only to concepts and will not (and indeed may not) suggest that the jury find any alleged victim witness to be credible or to find Ms. Maxwell guilty. The more general nature of Dr. Rocchio's opinions, which the Court heard in detail at the *Daubert* hearing, therefore mitigates its prejudicial effect.  *Telles*, 6 F.4th at 1097.  It is the jury's role to determine whether and how Dr. Rocchio's opinions apply to the facts of this case and the credibility of the witnesses.

      Last, as previously mentioned, the Court will grant in part the Defense's *Daubert* motion. The Defense argues that Dr. Rocchio's opinion that grooming can be done to facilitate sexual abuse by a third party or that the presence of a third party can otherwise facilitate grooming is unreliable.  The Defense calls this "grooming-by-proxy."  *E.g.*, Dkt. No. 386 at 9.  Terminology aside, the Court agrees with this narrower objection to Dr. Rocchio's testimony.  As discussed at the hearing, this phenomenon is not identified in the relevant literature regarding child sexual abuse and has not been subjected to peer review.  Instead, the Court understands this opinion to be an extrapolation of the broader principle of how grooming functions through the development of trust.  That extrapolation may be logical and follow common sense, but it is for the jury to make on the facts of this case.  The Court therefore excludes Dr. Rocchio's opinion that the presence of a third party can facilitate grooming.  Dr. Rocchio's core opinions about grooming, however, remain admissible under the Rule 702 and *Daubert* standard and remain relevant

pursuant to Rule 401 and not unduly prejudicial. As discussed, the jury may extrapolate from the opinions that the presence of a third party creates the atmosphere of trust that can facilitate grooming. Moreover, as the Government explains, Dr. Rocchio's testimony is still relevant because the Government alleges both that Ms. Maxwell "in fact participated in sexual abuse of minors" and that she "conspired with a predator who groomed and sexually abused minors." Dkt. No. 397 at 27.

The Court therefore denies the Defense's motion to exclude Dr. Rocchio's testimony except as to the opinion that the presence of a third party can facilitate grooming.

This resolves docket number 386.

SO ORDERED.

Dated: November 11, 2021

New York, New York

ALISON J. NATHAN
United States District Judge