UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

  -v.-

GHISLAINE MAXWELL,

           Defendant.

S2 20 Cr. 330 (AJN)

# THE GOVERNMENT'S MOTIONS *IN LIMINE*

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Alison Moe
Lara Pomerantz
Andrew Rohrbach
Assistant United States Attorneys
    *Of Counsel*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................. 2

ARGUMENT ........................................................................................................................ 3

I.    The Court Should Permit Certain Witnesses to Testify Under Pseudonyms or Using First
      Names, and Permit the Sealing of Related Exhibits ................................................. 3

      A. Applicable Law ....................................................................................................... 4

      B. Discussion ........................................................................................................... 10

II.   The Minor Victims' Prior Consistent Statements Are Admissible for Their Truth If the
      Defense Challenges Their Credibility ...................................................................... 17

      A. Applicable Law ..................................................................................................... 17

      B. Discussion ........................................................................................................... 19

III.  The Court Should Preclude Evidence or Argument About Investigations of the Defendant .. 20

      A. The Court Should Not Permit the Defense to Elicit Evidence About Charging Decisions or
      Possible Reasons for Them ....................................................................................... 22

      B. The Court Should Preclude Evidence or Argument About the Length of And Investigative
      Steps Taken During Current or Prior Investigations ............................................... 29

      C. The Defense Should Not Be Permitted to Call Case Agents Without First Proffering a Valid
      Basis for Their Testimony ......................................................................................... 32

IV.   The Court Should Preclude Evidence or Argument About the Government's Alleged Motives
      for Prosecution ......................................................................................................... 33

V.    The Court Should Preclude Challenges to the Credibility of Individuals Who Are Not
      Witnesses at This Trial ............................................................................................. 36

VI.   Evidence or Argument that Minor Victims Consented to Sexual Abuse is Inadmissible ....... 38

VII.  Before Offering Evidence or Argument of the Defendant's Failure to Commit Other Bad
      Acts, the Court Should Require the Defense to Proffer the Basis and Relevance of Such
      Evidence ................................................................................................................... 41

VIII. The Court Should Not Permit the Defendant to Introduce Her Own Prior Statements ........... 44

IX.   The Court Should Preclude Evidence or Argument Sounding in Nullification ..................... 47

X.    The Court Should Preclude the Defense from Making the Baseless Argument that the
      Defendant Was a Victim of Jeffrey Epstein ............................................................ 49

XI.   The Defendant Should Be Precluded from Arguing That She Was A "Prevailing Party" in
      Civil Litigation ......................................................................................................... 51

CONCLUSION ................................................................................................................... 53

## PRELIMINARY STATEMENT

The Government respectfully submits the following motions in *limine*.  *First*, the Government respectfully requests that the Court protect the dignity and privacy of victims by permitting certain witnesses to testify under pseudonyms or using only their first names, and permitting the filing of related trial exhibits under seal.  *Second*, the Government moves to admit prior consistent statements made by the minor victims in this case.  *Third*, the Government moves to preclude the defense from distracting the jury with irrelevant and confusing testimony and argument relating to the investigative and prosecutive decisions of law enforcement agents and prosecutors.  In particular, the Government moves to preclude the defense from calling agents from the Federal Bureau of Investigation ("FBI"), in an improper effort to put the Government on trial.  *Fourth*, and relatedly, the Government respectfully requests that the Court preclude the defense from offering argument or evidence at trial in support of the defense's unfounded theory that the Government is prosecuting the defendant for nefarious reasons.  *Fifth*, the Government moves to preclude the defense from attempting to impeach the credibility of individuals who will not be witnesses at trial.  *Sixth*, consent is not a legal defense in this case, and the defense should be precluded from suggesting to the jury that the victims consented to their abuse.  *Seventh,* the Government requests that the Court require the defendant to explain the relevance of any evidence she seeks to offer showing that she did not commit crimes with which she is not charged, before she offers that evidence or makes argument based on that evidence.  *Eighth*, the Government requests that the Court preclude the defense from offering out-of-court statements by the defendant, which are hearsay.  *Ninth*, the Government moves to preclude the defense from offering irrelevant evidence to garner sympathy for the defendant. ████

relatedly, the Government moves to preclude the defendant from making the baseless claim at trial that she is a victim herself. *Eleventh*, and finally, the Government moves to preclude the defense from misleadingly suggesting to the jury that the defendant prevailed in civil litigation related to the facts of this case.

For the reasons set forth below, the Court should grant the Government's motions.

## ARGUMENT

### I. The Court Should Permit Certain Witnesses to Testify Under Pseudonyms or Using First Names, and Permit the Sealing of Related Exhibits

The Government requests, pursuant to the Crime Victims' Rights Act, that the Court take certain measures at trial to protect the dignity and privacy of victims. *See* 18 U.S.C. § 3771(a)(8). The Government expects the four Minor Victims named in the Indictment to testify at trial. In the course of their testimony—and the corroborating testimony of other trial witnesses—the jury will learn that two other minors (Minor Victim-5 and Minor Victim-6) were also victims of the conspiracies charged in the Indictment. Specifically, Minor Victim-4 will testify that she was recruited by Minor Victim-5, and that she in turn recruited Minor Victim-6. Neither Minor Victim-5 nor Minor Victim-6 will testify at trial.

In order to protect the privacy of crime victims, the Government respectfully requests that the Court take certain measures at trial, which are narrowly tailored to the particular circumstances and privacy interests of each victim and consistent with the protections victims of sex crimes have been afforded in recent federal trials. To be clear, the defense is already aware of the identities of all of these victims and witnesses, and the jury will be made aware of the identities of these victims and witnesses. The Government simply proposes measures that will

3

protect against unnecessary public disclosure of their identities, in order to protect the Minor Victims from potential harassment from the media and others, undue embarrassment, and other adverse consequences.

Specifically, the Government requests that (1) that Minor Victim-1, Minor Victim-3, and certain witnesses related to them be referred to at trial using only pseudonyms; (2) Minor Victim-4, Minor Victim-6, and certain witnesses related to them be referred to at trial using only their first names; (3) the Court preclude the defense from eliciting personally identifying details of those witnesses; and (4) the Court seal exhibits that contain the first and/or last names of witnesses which are not otherwise permitted to be stated at trial.   Below, we address the applicable law, before turning to the specific relief the Government requests in this case.[1]

## A.  Applicable Law

The Confrontation Clause guarantees defendants the right to cross-examine witnesses who testify against them.  *See, e.g.*, *United States v. Figueroa*, 548 F.3d 222, 227 (2d Cir. 2008). This right, however, is not absolute.  A defendant's rights under the Confrontation Clause must yield to accommodate other legitimate interests in the criminal trial process.  *See, e.g.*, *id*.  For instance, trial courts have "wide latitude . . . to impose reasonable limits . . . on . . . cross-examination based on concerns about, among other things, harassment, prejudice, . . . or the witness's safety."  *United States v. Al Farekh*, 810 F. App'x 21, 25 (2d Cir. 2020) (summary

---

[1] Simultaneously with the filing of this motion, the Government is filing a sealed letter providing the names of the Minor Victims and witnesses identified in this section, along with certain other personal information.  The Government requests that the defense omit identifying information from its response brief or permit the Government an opportunity to seek necessary redactions or sealing.

order) (alterations in original) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)); *see* Fed. R. Evid. 611(b) (imposing limits on the scope of cross-examination).

In the context of the disclosure of witness identifying information, the Second Circuit has identified two primary interests of defendants: "(1) obtaining information needed for in-court and out-of-court investigation of the witness; and (2) enabling defense counsel to elicit information that might be relevant to the jury's deliberations as to the credibility or knowledgeability of the witness." *United States v. Marcus*, No. 05 Cr. 457 (ARR), 2007 WL 330388, at *1 (E.D.N.Y. Jan. 31, 2007) (citing *United States v. Marti*, 421 F.2d 1263, 1266 (2d Cir. 1970)) (finding the defendant's argument that "the district court's decision permitting two of the Government's witnesses to testify using only their first names and not to disclose their addresses or employment violated" the defendant's due process rights to be "without merit" in a sex trafficking and forced labor case), *aff'd*, 628 F.3d 36, 45 n.12 (2d Cir. 2010). If the Government provides a reason to "limit disclosure of identifying information in open court," the defendant must "demonstrate a 'particularized need' for disclosure . . . which the court weighs against the risks to the witness." *Id.* (citing *Marti*, 421 F.2d at 1266; *United States v. Bennett*, 409 F.2d 888, 901 (2d Cir. 1969)); *see United States v. Urena*, 8 F. Supp. 3d 568, 572-73 (S.D.N.Y. 2014) (permitting an undercover law enforcement officer to testify under a pseudonym, after balancing the relevant interests); *cf. United States v. Cavallaro*, 553 F.2d 300, 304 (2d Cir. 1977) ("[W]here the government voices a legitimate concern for a witness' safety, the trial court must balance the potential danger to the witness against the need of the defense for the information.").

5

"[T]here is no absolute right of an accused to have a jury hear a witness's true name and address." *Clark v. Ricketts*, 958 F.2d 851, 855 (9th Cir. 1991). Strong public interests support limiting public disclosure of victim identities and other sensitive information. The Crime Victims' Rights Act, 18 U.S.C. § 3771, requires district courts to implement procedures to ensure that crime victims are accorded, among other rights, "[t]he right to be reasonably protected from the accused," and "[t]he right to be treated with fairness and with respect for the victim's dignity and privacy." *Id.* §§ (a)(1), (a)(8). Moreover, the public "has a strong interest in protecting the identities of sexual assault victims so that other victims will not be deterred from reporting such crimes." *Doe on behalf of Doe No. 1 v. Nygard*, No. 20 Civ. 6501 (ER), 2020 WL 4890427, at *3 (S.D.N.Y. Aug. 20, 2020) (quoting *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 195 (E.D.N.Y. 2006)).

These interests are particularly salient in sex abuse cases. Victims in such cases often testify or are referred to only using pseudonyms or without using their last names. *See* Aug. 3, 2021 Tr. at 53:13-55:2, *United States v. Kelly*, No. 19 Cr. 286 (E.D.N.Y.); Oct. 17, 2019 Tr. at 32:1-36:6, *United States v. Dupigny*, No. 18 Cr. 528 (JMF) (S.D.N.Y.) Dkt. No. 198 (permitting use of real first names and fake last names); Order at 10-11, *United States v. Kidd*, No. 18 Cr. 872 (VM) (S.D.N.Y. July 1, 2019), Dkt. No. 60 ("The Court is persuaded that, to protect the minor victims, they should be permitted to testify under pseudonyms and that such anonymous testimony does not violate Kidd's Sixth Amendment rights."); May 8, 2019 Tr. at 6:20-21, *United States v. Benjamin*, No. 18 Cr. 874 (JSR) (S.D.N.Y.), Dkt. No. 53; Order at 29-35, *United States v. Raniere*, No. 18 Cr. 204 (NGG) (E.D.N.Y. May 6, 2019), Dkt. No. 622; *United States v.*

*Zhong*, No. 16 Cr. 614 (DLI), 2018 WL 6173430, at *2 (E.D.N.Y. Nov. 26, 2018) (granting government's motion to have victim witnesses testify using pseudonyms); Order at 2-3, *United States v. Martinez*, No. 17 Cr. 281 (ERK) (E.D.N.Y. Dec. 18, 2017), Dkt. No. 34 ("Jane Doe will be permitted to testify as 'Jane Doe' at trial, and will not be required to disclose her address, names of family members or exact place of employment (if any)."); Apr. 5, 2016 Tr. at 6-10, *United States v. Quraishi*, No. 15 Cr. 598 (CBA) (E.D.N.Y.), Dkt. No. 46 (permitting a witness to testify using only her first name); *United States v. Corley*, No. 13 Cr. 48 (AJN), 2016 WL 9022508, at *3-4 (S.D.N.Y. Jan. 15, 2016) (noting that "Judge Patterson . . . permitted the minor victims to testify under a pseudonym at trial" and denying the *pro se* defendant's request for the surnames of the minor victims for his appeal); *United States v. Graham*, No. 14 Cr. 500 (ER), 2015 WL 6161292, at *10 (S.D.N.Y. Oct. 20, 2015) (permitting victims to testify using their first names only); Order at 2, *United States v. Rivera*, No. 09 Cr. 619 (JMA) (E.D.N.Y. Apr. 26, 2011), Dkt. No. 231; *United States v. Paris*, No. 06 Cr. 64 (CFD), 2007 WL 1484974, at *2 (D. Conn. May 18, 2007). Because of the explicit nature of the offense conduct, which may require victims to testify about "degrading and humiliating treatment," revealing victim identities "would likely cause . . . anxiety and risk social stigma," and "could chill the willingness of other alleged victims of sex crimes to come forward." Order at 2, *Martinez*, No. 17 Cr. 281 (ERK) (E.D.N.Y. Dec. 18, 2017), Dkt. No. 34. Additionally, victims in sex abuse cases suffer from "likely adverse personal, professional and psychological consequences of publicly linking their identities to their past" conduct. *Paris*, 2007 WL 1484974, at *2. "In light of the explicit nature of the conduct" that is the subject of the case, victims have "legitimate" fears "of harassment by

the media" and "loss of employment potentially resulting from trial publicity."  *Marcus*, 2007 WL 330388, at *1.  These interests significantly outweigh any defense interest, especially where the defense knows the true identities of victims and is able to mount their defense.  *See id.*; Order at 2-3, *Martinez*, No. 17 Cr. 281 (ERK) (E.D.N.Y. Dec. 18, 2017), Dkt. No. 34.[2]

Indeed, in two recent highly publicized cases in the Eastern District of New York, the district court judges permitted victims to testify using pseudonyms or using only their first names.  In *United States v. Raniere*, No. 18 Cr. 204 (E.D.N.Y.), the Government moved to allow testifying victims to testify "under a nickname, first name, or pseudonym only, and to not be required to disclose uniquely identifying information," such as "addresses, names of family members, or exact places of education or employment."  Order at 29, 32, *Raniere*, No. 18 Cr. 204 (E.D.N.Y. May 6, 2019), Dkt. No. 622.  The Court granted the motion, explaining that "requiring victims of sex trafficking . . . and other crimes to provide their names in public could chill their willingness to testify," and "would only cause further embarrassment and humiliation, given the inflammatory nature of the conduct alleged."  *Id.* at 32, 35 (citations and internal quotation marks omitted).  It also may "cause other victims to fear seeking help from law enforcement as that could subject them to further harassment and embarrassment."  *Id.* (citation and internal quotation marks omitted).  Although the defendant claimed that several victims'

---

[2] Sex abuse cases are not unique.  In other contexts, courts have permitted the Government to call witnesses using pseudonyms or using their first names only, notwithstanding a defendant's Sixth Amendment rights.  *See, e.g.*, *United States v. Schulte*, 436 F. Supp. 3d 698, 706 (S.D.N.Y. 2020) (permitting use of pseudonyms in national security case); *United States v. Hernandez*, 12 Cr. 809 (PKC), 2013 WL 3936185, at *3 (S.D.N.Y. July 29, 2013) (permitting use of pseudonym for undercover agent in narcotics case).

names were already public and that some victims had come forward by choice, Judge Garaufis found those facts "irrelevant": "just because some victims' names are publicly available does not mean that the details of their experiences are already available," and "the choice of a victim to publicly discuss a crime is not analogous to being put on the stand about it, as, in court, the victim will not be able to choose how and to what level of detail she discusses the crime." *Id.* at 34 n.17.

Judge Donnelly reached a similar result in *United States v. Robert Kelly*, 19 Cr. 286 (AMD).  In that case, the Government also moved *in limine* to permit certain victims to testify using pseudonyms or their first names and prevent public disclosure of their addresses, names of family members, or exact places of employment.  Mot. at 1, *Kelly*, No. 19 Cr. 286 (E.D.N.Y. July 10, 2021), Dkt. No. 121.  As the Government explained, the victims were "expected to testify in explicit detail and/or be the subject of highly sensitive and personal testimony concerning their . . . illegal sexual abuse by the defendant, some of which occurred while most of the Victim-Witnesses were under the age of 18." *Id.* at 9-10.  The Government also explained that two of the victims had "not spoken publicly about their experiences," and while a third had done so, "her anticipated testimony at trial will be more fulsome than her prior public disclosures and will include sensitive information that has not been previously publicly revealed." *Id.* at 11. The Court granted the motion.  Aug. 3, 2021 Tr. at 53:13-55:2, *Kelly*, No. 19 Cr. 286 (E.D.N.Y.).

**B. Discussion**

The victims are expected to testify in explicit detail and/or be the subject of highly sensitive and personal testimony concerning sexual abuse, most of which occurred while they were under the age of 18. The limited protections requested by the Government are reasonable, necessary, and narrowly tailored to protect the victims' well-being, prevent undue embarrassment and other adverse consequences, including loss of employment, and prevent the victims from being harassed by the press and others.

Specifically, the Government requests that Minor Victim-1 and Minor Victim-3—██ ██████████████████████████████—be permitted to testify under a pseudonym. ██

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████

Additionally, ██████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████

The Government also requests that two witnesses ("Witness-1" and "Witness-2"), who the Government expects will testify at trial about Minor Victim-1, be permitted to testify under pseudonyms.    This request is a corollary of the protection requested for Minor Victim-1: Witness-1 is ██████████████████████████████████████████

████████████████████████████████████████████████████

Witness-2 is ██████████████████████████████████████████

██████████████████████████    ████████████████████

████████████████████████████████████

The Government requests that Minor Victim-4 be permitted to testify using her first name only, and that two witnesses ("Witness-3" and "Witness-4"), who the Government anticipates will testify about Minor Victim-4, also be permitted to testify using their first names.  Further, the Government requests that Minor Victim-6, who will not testify at trial, be referred to in open court by her first name only. ████████████████████████████████████████

██████████████████████████    ██████████████████████

███████████████████████████████████████████.

Finally, the Government asks that the Court: (1) limit references at trial for the above Minor Victims and witnesses to the manner described above, including in jury addresses and

examination of other witnesses; (2) preclude the defense from eliciting personal identifying information for the Minor Victims, Witness-1, Witness-2, Witness-3, or Witness-4, including their addresses or the details of their current employment; and (3) seal exhibits containing the names of Minor Victim-1, Minor Victim-3, and Witness-1, or the last names of Minor Victim-4 and Minor Victim-6.

To be clear, the Government's request is that those names not be stated in open court or read into the record.  The defendant already knows the true names of these victims and witnesses.  And the Government expects the jury to learn the true names of the relevant minor victims and witnesses at trial.  The Government intends to offer documentary evidence that would corroborate the testimony of the Minor Victims and which contains the names of certain of the Minor Victims.  While those names may remain hidden from the public, they will be revealed to the jury.[3]

Since the defendant's arrest, this case has garnered significant media attention, and the Government expects that members of the media will attend and report on the trial.  Under these circumstances, it is highly likely that, if stated publicly in open court, the names of the Minor Victims will be widely publicized.  ███████████████████████████████████ ███████████████████████████████████████████████

That publicity imposes real costs on the Minor Victims and the public.  First, publicizing the names of the Minor Victims will cause them significant embarrassment, anxiety, and social

---

[3] This can be accomplished simply.  For instance, the jury can learn Minor Victim-1's name by displaying a document containing Minor Victim-1's name for the witness and the jury—but not the public—and asking Minor Victim-1 whether the name on the document is her name.

stigma.  These details are "inflammatory" in light of the "nature of the conduct alleged."  Order at 32, *United States v. Raniere* (May 6, 2019), Dkt. No. 622.  Minor Victims-1 through -4 are expected to testify in explicit detail and/or be the subject of highly sensitive and personal testimony concerning illegal sexual abuse by the defendant and Epstein, much of which occurred while they were under the age of 18.  While Minor Victim-5 and Minor Victim-6 will not testify, similar details are expected to be elicited as to them.  These details will likely appear in the news and on the internet, but the Court can ensure that they will not be publicized side-by-side with the victim's true name.  *See* Order at 2-3, *Martinez*, No. 17 Cr. 281 (ERK) (E.D.N.Y. Dec. 18, 2017), Dkt. No. 34 ("This case has already received significant national and local press coverage. Revealing Jane Doe's identity would likely cause her anxiety and risk social stigma.").

Second, the publicity increases the personal and professional consequences to the Minor Victims for testifying.  One Minor Victim has expressed substantial concern to the Government about the risks that her association with this case will pose to future employment.  Making that association widely public—for that victim and others—requires the Minor Victims to be associated with the graphic details of their experiences, not just in the general public consciousness, but with their friends, families, colleagues, and prospective employers.

Third, the publicity increases the risk that the Minor Victims will be harassed by the press and public.  In light of the significant media attention this case has generated, it is likely that the Minor Victims will be approached and harassed by members of the press and the public after

13

their testimony.  Publicizing their names will subject them to unwanted attention at the time they are testifying in a criminal sex abuse trial.[4]

Taken together, requiring the Minor Victims to testify under their true and full names imposes serious costs on them.  It is inconsistent with the Crime Victims' Rights Act's exhortation that victims are to be treated with respect for their "dignity and privacy."  18 U.S.C. § 3771(a)(8).  And requiring victims of sex crimes to provide their names in public could chill their willingness to testify, for fear of having their personal histories publicized as they rebuild their lives.  *See* Order at 2, *Martinez*, No. 17 Cr. 281 (ERK) (E.D.N.Y. Dec. 18, 2017), Dkt. No. 34.  It could also cause other victims—including minors—to avoid seeking help from law enforcement because of fear that coming forward could subject them to further harassment and embarrassment.  *Cf.* Fed. R. Evid. 412 Advisory Committee Note (explaining that, by protecting the victim "against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details," the rule "encourages victims of sexual misconduct to . . . participate in legal proceedings against alleged offenders").

---

[4] The Government would consent to an appropriate jury instruction explaining that the reason for the precautions is "regard for the witnesses' and non-witness victims' privacy," and that no inference should be drawn against the defendant because of those precautions.  Order at 33-34, *United States v. Raniere* (E.D.N.Y. May 6, 2019), Dkt. No. 622 ("[T]he court is confident that any prejudice can be cured with a jury instruction explaining that the reason for the anonymity is regard for the witnesses' and non-witness victims' privacy."); Apr. 5, 2016 Tr. at 9-10, *United States v. Quraishi* (E.D.N.Y. Apr. 5, 2016), Dkt. No. 46.  As the district court in the *Raniere* case explained, "[g]iven the potentially embarrassing nature of the allegations, and the media attention thus far, such an explanation will certainly seem plausible to the jury."  Order at 34, *United States v. Raniere* (E.D.N.Y. May 6, 2019), Dkt. No. 622 (footnote omitted).

Public disclosure of victim information is unnecessary.  The defendant already knows the true identity of all six Minor Victims, Witness-1, Witness-2, Witness-3, and Witness-4.  The defense is therefore fully able to complete an investigation in advance of trial.  Indeed, defense investigators have contacted many of the victims and witnesses at issue in this motion already. The defense will then be able to use that information on cross-examination.  And, because the jury will know the Minor Victims' true names, the defense is free to make every argument, including by reference to the general occupation and living situation of the Minor Victims or witnesses.  But there is no need—much less a particularized need—for the victims' true names or other personal identifying information to be stated in open court to accomplish that purpose.[5]

In sum, the identifying information the Government seeks to limit in open court, including the full names of the victims and witnesses, specific employment and family information, is largely irrelevant to their testimony.[6]  There is a substantial risk, however, that

_____

[5] Public disclosure of these names is also not necessary for jury selection.  At voir dire, prospective jurors can be given a sheet of paper with the true names and pseudonyms of the protected witnesses and asked whether they know any individuals on the paper. ███████████ ███████████████████████████████████████████████████████████████████████ ████████████████████████  Accordingly, the Court and parties may screen for juror bias without requiring any juror to state a protected name in open court.

[6] The Government has no objection to cross-examination of Minor Victim-1, Minor Victim-3, and Witness-2 on ████████████████████████████████████████████████████████, ██████████████████████████  . The defense should be precluded from eliciting such details.

15

disclosure of such information will identify the Minor Victims with particularity, and thus subject them to harassment, retaliation, and embarrassment, or additional consequences.[7]

The sealing of exhibits containing the names of Minor Victim-1, Minor Victim-3, and Witness-1, or the last names of Minor Victim-4 and Minor Victim-6, is also appropriate. Although "the public has an 'especially strong' right of access to evidence introduced in trials," *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995), it "is not absolute," *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978); *see also United States v. Graham*, 257 F.3d 143, 149 (2d Cir. 2001). For example, "subject matter [that] is traditionally considered private rather than public" will weigh "heavily against access." *Amodeo*, 71 F.3d at 1050. This includes certain "financial records . . . , family affairs, illnesses, embarrassing conduct with no public ramifications, and similar matters . . . ." *Id.* at 1051. "[T]he 'venerable' privacy-interest exception to the presumption of access exists to avert 'cater[ing] 'to a morbid craving for that which is sensational and impure.'" *United States v. Cohen*, 366 F. Supp. 3d 612, 626-627 (S.D.N.Y. 2019) (quoting *Amodeo*, 71 F.3d at 1051). The Government's sealing request is narrowly tailored to prevent public disclosure only of those exhibits which would identify *by name* the Minor Victims testifying in this case. Any other result would defeat the purpose of permitting the Minor Victims to testify using pseudonyms or their first names, incurring all the harms described above. *See Paris*, 2007 WL 1484974, at *2 (concluding that the interest in

---

[7] For the same reasons, any courtroom sketch artists should be precluded from drawing the faces of victims. *See* May 6, 2019 Text Order, *Raniere*, 18 Cr. 204 (NGG) (E.D.N.Y.) ("Sketch artists . . . may not draw exact likenesses of jurors or witnesses other than co-defendants should they testify . . . .").

protecting victim identities outweighs the public interest in access to information because "the public and press will be able to hear the Jane Does' and Minors' testimony in full").

## II. The Minor Victims' Prior Consistent Statements Are Admissible for Their Truth If the Defense Challenges Their Credibility

If the defendant claims that the Minor Victims' testimony has been recently fabricated or that the Minor Victims have motives to lie, or if the defense otherwise attacks the credibility of the Minor Victims on another ground, the Government will seek to introduce the Minor Victims' prior consistent statements to witnesses about their experiences with the defendant and Epstein.

### A. Applicable Law

Under Rule 801(d)(1)(B) of the Federal Rules of Evidence, a prior statement is not hearsay if the declarant testifies and is subject to cross examination about the statement, the statement is consistent with the declarant's testimony, and the statement is offered either "(i) to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying; or (ii) to rehabilitate the declarant's credibility as a witness when attacked on another ground."  Notably, "the prior consistent statement need not be proffered through the testimony of the declarant but may be proffered through any witness who has firsthand knowledge of the statement." *United States v. Caracappa*, 614 F.3d 30, 39 (2d Cir. 2010) (affirming admission of prior consistent statements to rebut defense insinuation that witness had testified from improper motive).

Prior to 2014, a witness's prior consistent statement was only permitted to rebut a charge of recent fabrication that postdated the prior consistent statement.  *See Tome v. United States*, 513 U.S. 150, 156 (1995).  Many courts, however, including the Second Circuit, had developed

17

rules allowing admission of prior consistent statements outside of the context of Rule 801(d)(1)(B) in order to rehabilitate a witness after certain attacks on credibility. *See, e.g.*, *United States v. Pierre*, 781 F.2d 329, 333 (2d Cir. 1986).  In 2014, the Rule 801 was amended to allow prior consistent statements that were "otherwise admissible for rehabilitation" to come in "substantively as well."  Fed R. Evid. 801 (Advisory Committee's Note to 2014 Amendment) ("The intent of the amendment is to extend substantive effect to consistent statements that rebut other attacks on a witness—such as the charges of inconsistency or faulty memory.").

Thus, as amended in 2014, Rule 801(d)(1)(B)(ii) "expands the purposes for which prior consistent statements may be offered."  *United States v. Purcell*, 967 F.3d 159, 196 (2d Cir. 2020).  The Second Circuit has relied on subsection (ii) of the amended Rule 801(d)(1)(B) in finding that the district court did not abuse its discretion in admitting prior consistent statements that were introduced to rebut "defendants' attacks on [the declarant's] credibility and memory," notwithstanding that the defendants' "challenges to [the declarant's] memory were brief and were not their main challenges."  *United States v. Flores*, 945 F.3d 687, 705-06 (2d Cir. 2019) (quoting Fed. R. Evid. 801 Advisory Committee Note (2014) for the proposition that "[t]he intent of the amendment [adding subpart (B)(ii)] is to *extend substantive effect* to consistent statements that rebut other attacks on a witness—such as the charges of inconsistency *or faulty memory*." (emphases in *Flores*)); *see also Purcell*, 967 F.3d at 196-98 (affirming admission of statements under Rule 801(d)(1)(B)(ii) where the declarant was accused of making inconsistent statements and defense counsel never suggested "that the accuracy of [declarant's] trial testimony was marred by recent fabrication or a recently created improper motive or influence").

18

Similarly, the Sixth Circuit has found that a district court properly admitted evidence of prior consistent statements that "rebutted [the d]efendant's attack on [the declarant's] purportedly faulty memory." *United States v. Cox*, 871 F.3d 479, 487 (6th Cir. 2017).

## B. Discussion

The Government expects the Minor Victims to testify at trial about their experiences with the defendant and Jeffrey Epstein, including the sexual abuse to which they were subjected, in the 1990s and early 2000s. To the extent the defendant challenges the credibility of the testimony of the Minor Victims—whether in opening statements or on cross-examination—the Government intends to call a number of witnesses to introduce certain of the Minor Victims' prior consistent statements to witnesses about their experiences with the defendant and Epstein. *See, e.g.*, *Flores*, 945 F.3d at 705-06 (admitting prior consistent statement of witness after defense's opening statement called into question the witness's credibility); *United States v. Burrell*, 43 F. App'x 403, 406 (2d Cir. 2002) (allowing prior consistent statements of cooperating witness because the defendant "argued in her opening statement that the cooperating witnesses had a motive to lie").

Such testimony is admissible under both subparts (i) and (ii) of Rule 801(d)(1)(B). As to subpart (i), if the defendant claims that a Minor Victim recently fabricated her testimony, the admissibility of her prior consistent statements will depend in part on the alleged "recent improper influence or motive in so testifying." Because the Minor Victims' prior consistent statements to witnesses about their experiences with the defendant and Epstein were made well over a decade ago, they are almost certain to qualify as having been made prior to any accusation of motive to fabricate. They therefore tend to rebut any assertion that the victims or witnesses

recently fabricated their allegations about the defendant.  *See Tome*, 513 U.S. at 159, 167 (holding that the Rule "permits the introduction of a declarant's consistent out-of-court statements to rebut a charge of recent fabrication or improper influence or motive" where "those statements were made before the charged recent fabrication or improper influence or motive").

And regardless of the timing of any alleged motive to lie, the Minor Victims' prior consistent statements will be admissible under subpart (ii), which was enacted "to *extend* substantive effect to consistent statements that rebut other attacks on a witness."  2014 Advisory Committee Notes to Fed. R. Evid. 801 (emphasis added); *see Flores*, 945 F.3d at 705 ("As 'not hearsay,' such statements are—subject to the usual prerequisites such as relevance—admissible as proof of the substance of the statement.").  If the defense attacks the credibility of the Minor Victims on another ground, such as inconsistency or faulty memory, the Government is entitled to rehabilitate the Minor Victims through prior consistent statements made to other witnesses. *See, e.g.*, *Purcell*, 967 F.3d at 197; *Flores*, 945 F.3d at 705-06; *Cox*, 871 F.3d at 487.

### III.    The Court Should Preclude Evidence or Argument About Investigations of the Defendant

In the 2000s, the Palm Beach Police Department conducted an investigation of Jeffrey Epstein, which later became part of an FBI investigation (together, the "Florida Investigations"). Those investigations culminated in a September 2007 non-prosecution agreement between Epstein and the United States Attorney's Office for the Southern District of Florida ("USAO-SDFL"), which did not name the defendant as a co-conspirator, and pursuant to which Epstein pleaded guilty to a Florida state offense.  In or about November 2018, this Office opened its

investigation into Epstein and his co-conspirators, leading to a 2019 indictment against Epstein and a 2020 indictment against the defendant.

The defense has indicated that it will seek to make the prior investigations and charging decisions the subject of testimony at this trial.  For example, the defense has notified the Government that it seeks to call FBI case agents from these investigations to testify "concerning the scope, timeline, and resolution of the investigation, as well as the various investigative steps taken by the agents, including by not limited to testimony about numerous witness interviews they conducted, physical evidence they reviewed, [and] documents they obtained by subpoena." (*See* Exhibit A).  In their voir dire motion, the defense stated that they expect "Epstein's arrests and prior convictions for sexual misconduct, allegations of his sexual misconduct of minors over the course of two decades, and his untimely death awaiting his federal trial will be front and center" at this trial.  (Mem. of Law, Dkt. No. 342 at 2).

The Court should preclude any evidence and argument about (1) charging decisions in criminal investigations of Epstein and his co-conspirators, and possible reasons for those decisions, and (2) the investigative steps taken during the current and prior investigations, including the length of those investigations.  The Government's charging decisions are squarely within its discretion and not a probative topic on which the jury should speculate, and the Government has no obligation to use any particular investigative technique.  The Court should not permit evidence on these subjects, which would create an irrelevant sideshow that would significantly delay this trial and confuse the jury.  Similarly, the Court should not permit the defense to call FBI case agents in order to introduce evidence about those topics.

21

### A. The Court Should Not Permit the Defense to Elicit Evidence About Charging Decisions or Possible Reasons for Them

#### 1. Applicable Law

Federal Rule of Evidence 402 provides that "[i]rrelevant evidence is not admissible." Accordingly, any evidence that does not bear on the defendant's guilt or innocence of the charges in the indictment should be excluded as irrelevant. Rule 403 further states that the Court may "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Accordingly, any evidence that is likely to distract the jury from the issue of guilt or innocence should be excluded under Rule 403. *See, e.g.*, *United States v. Rosado*, 728 F.2d 89, 93 (2d Cir. 1984) (criticizing admission of evidence about the propriety of a prosecution "for turning the trial away from a determination of whether the elements of the offense charged had been proved beyond a reasonable doubt into a wide-ranging inquiry into matters far beyond the scope of legitimate issues in a criminal trial").

Evidence about charging decisions made by law enforcement officials is rarely admissible because such evidence typically consists of hearsay, is not relevant, and is likely to confuse and mislead the jury. As such, courts in this Circuit have repeatedly precluded evidence of charging decisions for one or more of these reasons. *See, e.g.*, *United States v. Borrero*, No. 13 Cr. 58 (KBF), 2013 WL 6020773, at *2 (S.D.N.Y. Nov. 1, 2013) (precluding cross examination regarding a government charging decision in part because "the limited amount of probative value that the . . . charging decisions add is substantially outweighed by the risk of

22

undue confusion and an unnecessary sideshow . . ."); *United States v. Boyle*, No. 08 Cr. 523

(CM), 2009 WL 5178525, at *3 (S.D.N.Y. Dec. 23, 2009) (explaining that the defendant "may

offer evidence that Powell killed Hydell.  He may not, however, offer evidence concerning that

Powell was arrested and prosecuted for the murder."); *United States v. Rodriguez*, 582 F. Supp.

2d 486, 487 (S.D.N.Y. 2008) (to avoid confusing jurors, defendants precluded from introducing

evidence about dismissals of prior charges against them in trial for the same conduct four years

later); *United States v. Hill*, No. 12 Cr. 214 (KAM), 2014 WL 198813, at *1-2 (E.D.N.Y. Jan.

14, 2014) (precluding evidence or cross examination of a detective regarding the Kings County

District Attorney's Office decision to question but not charge the defendant for a murder that

occurred in 1997 but was only indicted fifteen years later because such testimony is hearsay,

irrelevant, and confusing); *United States v. Watts*, 934 F. Supp. 2d 451, 484-486 (E.D.N.Y.

2013) (precluding the defendant from eliciting basis of decision not to charge a possible co-

conspirator); *United States v. Carneglia*, No. 08 Cr. 76 (JBW), 2009 WL 185725, at *1

(E.D.N.Y. Jan. 27, 2009) ("'[T]he government's charging decisions are not proper subjects for

cross-examination and argument.'  Evidence related to the government's charging decisions may

be excluded at trial based on lack of relevance." (quoting *United States v. Re*, 401 F.3d 828, 832

(7th Cir. 2005))).[8]

---

[8] Although there is no *per se* bar to admission of charging decisions, the Second Circuit has
permitted such evidence under narrow circumstances not present here, as discussed in greater
detail below. *See infra* pp. 25-26 (discussing *United States v. White*, 692 F.3d 235, 246 (2d Cir.
2012)).

23

## 2.  Discussion

The defense should be precluded from offering evidence or making arguments about (1) the fact that the USAO-SDFL entered into a non-prosecution agreement with Epstein in 2008; or (2) the fact that the USAO-SDNY first indicted Epstein alone in 2019 before it indicted the defendant.  Such evidence is irrelevant, would confuse and mislead the jury, and calls for hearsay.

*First*, those facts are irrelevant.  These charging decisions say nothing at all about guilt or innocence and fail to make more or less probable any fact of consequence.  Such decisions are often made after consideration of multiple factors, including, for example, available prosecutorial or investigative resources and a desire not to disrupt an ongoing investigation.  Even if a decision not to prosecute is based upon the prosecutor's view of the available evidence, it is irrelevant both because investigations routinely uncover additional evidence and because it is not the prosecutor's view of the evidence that matters, but rather that of the jury.

Those points are particularly true here.  It is entirely speculative to assume that the USAO-SDFL did not charge the defendant in 2008—or immunize her by name in the non-prosecution agreement—and that this Office did not charge her in 2019 solely because it lacked the evidence to do so and that such evidence could not have been developed had the investigation focused its resources on the defendant.  *See Hill*, 2014 WL 198813, at *2 ("Any connection between purported concerns about [a witness's] identification [of the defendant] and the decision not to charge in 1997 would thus be based on speculation and conjecture by government witnesses who did *not* decide whether to charge [the defendant] in 1997." (emphasis in original)).  And because signification portions of the Government's evidence were developed

24

after 2019, including testimony from two of the Minor Victims, any connection between the evidentiary background of the USAO-SDFL's charging decisions or this Office's 2019 indictment of Epstein and the defendant's guilt or innocence is attenuated.

It is not the Government's view of the evidence at any one time that matters—it is the view of the jury considering the evidence before it, and past charging decisions have no bearing on that evidence. *See, e.g.*, *United States v. Stewart*, No. 03 Cr. 717 (MGC), 2004 WL 113506, at *1 (S.D.N.Y. Jan. 26, 2004) ("Defendants may not invite the jury to speculate as to why [a particular] charge was not included in the indictment."), *aff'd and remanded*, 433 F.3d 273 (2d Cir. 2006). At trial, the questions for the jury will be whether, based on the evidence presented, the defendant participated in the charged Mann Act and sex trafficking offenses. Nothing about the decisions of the USAO-SDFL and this Office has any bearing on the defendant's guilt or innocence.

The Second Circuit's decision in *United States v. White*, 692 F.3d 235 (2d Cir. 2012), only underscores this point. In that case, the appellant challenged his conviction for being a felon in possession of a firearm. *Id.* at 238. "The only significant issue at trial was whether White possessed a firearm, and, more specifically, whether the jury would believe the officers' claim that one was recovered from his front pocket." *Id.* at 247. White was traveling in a vehicle with four other people on the day of his arrest, and "[t]he defense's strategy was to seek to demonstrate that the [firearm in question] was found in the vehicle and not on White's person." *Id.* at 238. All five individuals were arrested and charged that day in state court with possession of the firearm at issue. *See id.* at 239. Under New York law, a firearm found in an

25

automobile is deemed to be the possession of all passengers in the automobile *unless* the firearm is found on the person of a particular passenger. *See id.* at 245, 247 (citing N.Y. Penal Law § 265.15(3)). The district attorney dropped the charges against the defendant and three other individuals, leaving only one of the individuals facing state charges for other firearms. *See id.* at 245.

White therefore sought to admit the initial charging decisions at his federal trial, arguing that "if the gun had actually been recovered from his person, none of the other individuals would have been charged with possession of that particular gun." *Id.* at 245. The district court rejected that argument, and the Second Circuit reversed, explaining that the "decision to charge *all* passengers traveling in the vehicle with possession . . . supports White's theory that none of the firearms was found on his person and discredits the officers' testimony to the contrary." *Id.* at 247.

This case thus contrasts quite sharply with *White*. In *White*, the state's earlier charging decision directly contradicted a consequential fact in the case—whether the defendant was in actual possession of the gun. It was therefore highly relevant as evidence used to undermine the credibility of the officers testifying to the defendant's possession. Here, however, the Government's past charging decisions are entirely irrelevant to any factual issue in the case or the credibility of any witness. *See Watts*, 934 F. Supp. 2d at 485 (distinguishing *White* in a conspiracy case because "a conspiracy necessarily involves agreement amongst more than one actor to engage in criminal conduct for which all members of the conspiracy may be found equally culpable").

26

*Second*, even if the decision of whether to charge the defendant in 2008 or 2019 had some minimal relevance, it would be substantially outweighed by the dangers of confusing the issues and misleading the jury.  As courts in this Circuit have routinely held, introduction of irrelevant decisions of whom and when to charge presents a substantial risk of confusing and misleading the jury because a prosecutorial charging decision would tend to misdirect the jury's attention to a discretionary decision that is not connected to the ultimate quantum of evidence that the Government adduces at trial.  *See, e.g.*, *Borrero*, 2013 WL 6020773, at *2 (holding that "the limited amount of probative value that the . . . charging decisions add is substantially outweighed by the risk of undue confusion and an unnecessary sideshow into [the] circumstances"); *Hill*, 2014 WL 198813, at *2 ("[T]he reasons for the Kings County District Attorney's Office decision not to charge [the defendant] in 1997 are unknown and would cause confusion of and speculation by the jury.").  That evidence invites the jury to abdicate its own view of the fully developed evidentiary record in favor of speculation about charging decisions by prosecutors at different times looking at different evidence and weighing different factors.

Those risks are particularly acute here.  Any discussion of the Government's prior charging decisions would require extended trials within a trial concerning the bases for those decisions.  For instance, if the defense wishes to argue that the USAO-SDFL did not charge the defendant in the Florida Investigations because those investigations did not generate inculpatory evidence as to the defendant, it therefore puts at issue the non-prosecution agreement and the circumstances of its creation.  As the Court is aware, those circumstances were the subject of a 290 page report from the Department of Justice Office of Professional Responsibility.  (*See*

Dep't of Justice, Office of Professional Responsibility Report, Dkt. No 293 Ex. A).  Discussion of those issues would be all the more confusing to the jury because it involves decisions of a different prosecuting authority, because the USAO-SDFL resolved its investigation before significant investigative steps were completed, and because the USAO-SDFL investigation *did* nonetheless generate inculpatory material as to the defendant.  To evaluate the evidence, jurors would also need to understand the sequencing of the various investigations into Epstein and the defendant, so they could understand which witnesses and evidence were available to which law enforcement agencies and prosecutors at what times.  The history of various investigations into Epstein reaches back 20 years, and a review of that history would create an extensive sideshow. Any marginal probative value of evidence of the Government's charging decisions is substantially outweighed by the extended digression and confusion that such evidence would require.

*Third,* eliciting information about past charging decisions would be hearsay.  *See White*, 692 F.3d at 244-45 (declining to decide whether the evidence in that case was hearsay); *id.* at 253 (Jacobs, J., dissenting) ("[A]s the majority opinion observes, hearsay problems abound in this case; yet, since neither party raised these issues on appeal, the Court has not decided whether the charging documents . . . are admissible hearsay.").  Those charging decisions were made internally by prosecutors at the USAO-SDFL or at this Office.  No prosecutors from either office are testifying at trial, and no witness testifying at this trial can explain the Government's past charging decisions.  Any knowledge that an FBI agent has, or that a witness has, about the basis for a prior charging decision is based on statements made by prosecutors, which are themselves

hearsay.  *See id.* at 246 (majority op.) (charging decisions proper subjects for cross-examination only "if otherwise admissible"); *Hill*, 2014 WL 198813, at *1-2 (precluding cross examination of agent regarding district attorney's charging decision as inadmissible hearsay).

The Government's prior charging decisions and the bases for them are irrelevant, hearsay, and disruptive to the trial.  They should not be admitted.

### B.   The Court Should Preclude Evidence or Argument About the Length of And Investigative Steps Taken During Current or Prior Investigations

For similar reasons, the defense should be precluded from offering evidence or arguing to the jury about the investigative steps taken during the Florida Investigations or this Office's investigation, including the duration of those investigations.

### 1.   Applicable Law

It is settled law that the jury should "base its decision on the evidence or lack of evidence that had been presented at trial."  *United States v. Saldarriaga*, 204 F.3d 50, 52 (2d Cir. 2000) (per curiam).  The Government's "failure to utilize some particular technique or techniques does not tend to show that a defendant is not guilty of the crime with which he has been charged."  *Id.* at 53; *see, e.g.*, *United States v. Ngono*, 801 F. App'x 19, 24 (2d Cir. 2020) (summary order) ("We have held that a district court does not commit error in instructing the jury that the Government has no legal obligation to use any particular investigative technique in preparing its case.").  While a defendant "may comment on the failure of proof in the record, such as the absence of forensic evidence in the form of voice, handwriting, or fingerprint analysis," such comment becomes improper when it encompasses the further argument that "the government had failed to undertake to procure such evidence."  *United States v. Londono*, 175 F. App'x 370, 375

(2d Cir. 2006) (summary order) (affirming a district court that sustained an objection during a defense summation).  Accordingly, issues like the "length of the investigation, the investigative techniques used, and the fact that [the defendant] was not initially a target of the investigation are all irrelevant."  *United States v. Duncan*, No. 18 Cr. 289 (SHS), 2019 WL 2210663, at *3 (S.D.N.Y. May 22, 2019); *see United States v. Aleynikov*, 785 F. Supp. 2d 46, 65 (S.D.N.Y. 2011) ("As a general matter, the quality and scope of the Government's investigation are not appropriate lines of examination . . . ."), *rev'd on other grounds by* 676 F. 3d 71 (2d Cir. 2012).

### 2.  Discussion

It is not relevant or probative for the defense to elicit evidence or make argument about investigative steps taken or untaken by the Government, either in this investigation or the Florida Investigations, or about the length of those investigations.

The issue before the jury is whether the admissible evidence before it demonstrates the defendant's guilt beyond a reasonable doubt.  The particular investigative steps used (or not used) by the Government, and the length of the investigation, are wholly irrelevant to question.  *See* Fed. R. Evid. 401.  Rather, the jury's decision should be fixed on "the evidence or lack of evidence that had been presented at trial."  *Saldarriaga*, 204 F.3d at 52.  The defendant should be precluded from eliciting testimony about facts the jury cannot properly consider, and which do not bear on the defendant's guilt or innocence.

Moreover, whatever marginal relevance a discussion of investigative steps or the length of an investigation may have is outweighed by the risk of confusing the issues and misleading the jury.  *See* Fed. R. Evid. 403.  It is routine practice in this District to give an instruction that "the government is not on trial."  *See, e.g.*, *United States v. Knox*, 687 F. App'x 51, 54-55 (2d

Cir. 2017) (summary order) (instructing jury that the "government is not on trial" is "appropriate" (internal quotation marks omitted)).   Introducing evidence about investigative decisions would only confuse the issues properly before the jury and suggest that jurors should focus on the history of investigations into Epstein and his co-conspirators rather than the evidence against the defendant.

Judge Stein's decision in *United States v. Duncan*, No. 18 Cr. 289 (SHS) (S.D.N.Y.), is instructive.   In that case, a defendant sought to call a case agent on three topics: (1) the length of the FBI's investigation, (2) the law enforcement techniques that were used and not used, and (3) contacts and communications with that defendant prior to his arrest.   Letter, *id.*, Dkt. No. 130. The Court explained that defense counsel "wanted to bring out that [the defendant] was not a target of the investigation for a long period of time."   May 16, 2019 Tr. at 1168:12-23, *id.*, Dkt. No. 159.   Citing *Saldarriaga*, the Court explained that the argument was "absolutely irrelevant," because "[w]hat matters is whether the government has proven its case against [the defendant] here beyond a reasonable doubt."   *Id.* at 1168:12-25; *see Duncan*, 2019 WL 2210663, at *3 ("Evidence about the length of the investigation, the techniques used, and when Locust became a target is therefore not admissible pursuant to Fed. R. Evid. 401.").

So too here.   It is irrelevant what investigative steps were taken during the Florida investigations or this investigation, and it is irrelevant how long those investigations lasted. Testimony and argument on those points would not assist the jury in evaluating the defendant's guilt or innocence, but it would confuse the jury by directing them to focus on investigators' conduct.   Especially where the investigative context is complicated and a topic of public interest

31

(*see generally* Dep't of Justice, Office of Professional Responsibility Report, Dkt. No. 293 Ex. A at v-vi), evidence or argument on that point can only distract the jury from its function.

The defense is free to offer its own evidence about the victims and instances charged in this case, and it is free to attempt to impeach the Government's witnesses through legitimate evidentiary means.  But evidence about unrelated investigative steps and their outcomes would only serve to extend the trial and distract the jury with irrelevant information.  This Court should preclude such evidence.

### C. The Defense Should Not Be Permitted to Call Case Agents Without First Proffering a Valid Basis for Their Testimony

As explained above, the Court should preclude evidence or argument regarding either the outcomes of the prior investigations, investigative steps taken during those investigations, the length of those investigations, or the evidence developed during those investigations about unrelated events.  Nevertheless, it appears the defense intends to call one or more case agents in order to elicit such improper testimony.  The Court should preclude testimony from case agents unless the defense identifies a proper basis for their testimony.

The Government has received a request from the defense pursuant to *United States ex. rel. Touhy v. Regan*, 340 U.S. 462 (1951) for the testimony of two FBI case agents from the Florida Investigations and two FBI case agents for the investigation that led to charges in this District against Epstein and the defendant.  The notice is attached as Exhibit A.  According to the *Touhy* request, which must summarize the testimony sought, *see* 28 C.F.R. § 16.23(c), the defendant seeks testimony "concerning the scope, timeline, and resolution of the investigation, as well as the various investigative steps taken by the agents, including but not limited to testimony

32

about numerous witness interviews they conducted, physical evidence they reviewed, documents they obtained by subpoena," and their activities before the grand jury.  (Ex. A at 1-2).

But as set forth above, testimony about the "resolution" of a prior investigation is irrelevant hearsay that would only serve to confuse the jury.  Evidence about the "scope," "timeline," or "various investigative steps taken by the agents" is similarly irrelevant and misleading.  The case agents are not summary witnesses that the defense can use to place before the jury sweeping conclusions about the Florida Investigations or this one.[9]  The bases identified for their testimony are improper, and the Court should preclude them unless the defense identifies a specific, valid purpose for their testimony.

## IV.   The Court Should Preclude Evidence or Argument About the Government's Alleged Motives for Prosecution

As the Court is aware, the defendant has claimed that she is being prosecuted as a scapegoat because Jeffrey Epstein is dead.  (*See, e.g.*, Mem. of Law, Dkt. No. 142, at 1 ("[T]he government has sought to substitute our client for Jeffrey Epstein . . . .")).  That claim is as false as it is offensive.  But in any event, the Government's motives for prosecution are irrelevant to the question of the defendant's factual guilt that will be before the jury at trial, and any probative

---

[9] Furthermore, the proffered bases for the case agents' testimony will likely run afoul of numerous evidentiary rules.  The Government's case agents cannot testify to the substance of "numerous witness interviews they conducted" with uncalled witnesses, which is hearsay.  The agents' prior testimony before the grand jury is admissible only under the limited principles that govern prior consistent or inconsistent statements.  And there is significant risk that case agent testimony will introduce additional evidentiary issues.  For instance, questioning the case agents about information their investigations generated about the defendant would likely yield hearsay responses and would open the door to agents offering other information that is inculpatory to the defendant and that the Government would not otherwise offer at trial.

value of such evidence is substantially outweighed by the unfair prejudice to the Government and risk of distracting the jury or encouraging jury nullification. *See* Fed. R. Evid. 401, 403. The Court should therefore preclude evidence or argument regarding the Government's supposed motives for prosecution, including evidence of Jeffrey Epstein's 2019 death and the timing of charges against the defendant.

The Second Circuit has explained that claims of purported government misconduct must be "directed to the court rather than jury." *United States v. Regan*, 103 F.3d 1072, 1082 (2d Cir. 1997). Allegations concerning the government's conduct are "ultimately separate from the issue of [a defendant's] factual guilt" and concern an alleged "defect in the institution of the prosecution." *Id*. (internal quotation marks omitted). Accordingly, district courts routinely and correctly preclude defendants from raising these arguments at trial. *See id*. ("[W]e agree with the district court's decision to resolve for itself whether the government's conduct was lawful and to prevent Regan from presenting evidence on that subject."); *United States v. Stewart*, No. 03 Cr. 717 (MGC), 2004 WL 113506, at *1 (S.D.N.Y. Jan. 26, 2004) (granting motion to preclude the defendant from "presenting arguments or evidence that would invite the jury to question the Government's motives in investigating and indicting" the defendant), *aff'd and remanded*, 433 F.3d 273 (2d Cir. 2006).

This extends to claims challenging the motives of a prosecution. In general, "the decision as to whether to prosecute generally rests within the broad discretion of the prosecutor, and a prosecutor's pretrial charging decision is presumed legitimate." *United States v. Sanders*, 211 F.3d 711, 716 (2d Cir. 2000) (citations and internal quotation marks omitted); *see United States*

34

*v. Armstrong*, 517 U.S. 456, 463 (1996) ("[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute . . . generally rests entirely in [the prosecutor's] discretion." (internal quotation marks omitted)). Defendants are permitted to challenge the motives for a prosecution by seeking dismissal of an indictment due to vindictive or selective prosecution. *See, e.g.*, *United States v. Avenatti*, 433 F. Supp. 3d 552, 558, 562-64, 576 (S.D.N.Y. Jan. 15, 2020) (denying vindictive and selective prosecution claims). Such challenges, however, are issues "for the court rather than for the jury." *United States v. Farhane*, 634 F.3d 127, 167 (2d Cir. 2011) (quoting *Regan*, 103 F.3d at 1082); *see* Fed. R. Crim. P. 12(b)(3)(A)(iv) (listing, among pretrial motions, "a defect in instituting the prosecution, including . . . selective or vindictive prosecution"). Accordingly, courts have sustained objections or precluded defendants from arguing to the jury about the Government's motives. *See Farhane*, 634 F.3d. at 166-67 (affirming a sustained objection to a defense closing argument that "the government had targeted him for prosecution based on his religion"); *United States v. Duncan*, No. 18 Cr. 289 (SHS), 2019 WL 2210663, at *3 (S.D.N.Y. May 22, 2019) ("[T]o the extent Locust seeks to highlight the fact that he was not a target of the investigation to suggest that the government's true targets were the doctors and lawyers allegedly involved in the conspiracy and to draw attention to their absence from this case, the Court has already ruled that such argument is improper.").

The defense is free to argue that the defendant is not guilty. However, offering evidence or argument to claim the Government is prosecuting the defendant because Epstein is dead, as a scapegoat for Epstein, or for any other improper motive, is impermissible—and untrue. The

reasons for the prosecution have no bearing whatsoever on the jury's proper function.  If the facts gave rise to a viable claim of improper motive, the proper course would have been to file a motion to dismiss the Indictment on those grounds.  But the defendant did not do so, and she may not now pursue that theory before the jury.

Evidence or argument about Epstein's death while awaiting prosecution is also irrelevant and substantially more prejudicial than probative.  *See* Fed. R. Evid. 403.  The fact that Epstein died while awaiting prosecution more than fifteen years after the charged conduct is entirely irrelevant to the defendant's guilt or innocence.  Introducing that evidence to the jury and arguing that it somehow relates to the Government's case would only confuse the jury about their task and unfairly prejudice the Government should the defense then imply or argue that it relates to the Government's motives for prosecution.

## V.     The Court Should Preclude Challenges to the Credibility of Individuals Who Are Not Witnesses at This Trial

At trial, the Government expects that witnesses will testify about individuals who are not witnesses at trial, and whose out-of-court statements will not be offered for their truth.  For example, witnesses will testify about Minor Victim-5 and Minor Victim-6, who will not be witnesses at trial.  The Court should preclude the defense from attempting to impeach the credibility of individuals who will not be witnesses at trial, and whose credibility is therefore irrelevant.

An "essential safeguard" of a fair trial is the "right to place the witness in his proper setting and put the weight of his testimony and his credibility to a test."  *United States v. Harvey*, 547 F.2d 720, 723 (2d Cir. 1976) (citation and internal quotation marks omitted).  Accordingly,

36

the Federal Rules of Evidence contain extensive provisions governing the impeachment of witnesses.  Fed. R. Evid. 607-13.  Rule 806 also authorizes attacks on the credibility of hearsay declarants, agents, and co-conspirators when those individual's statements have been admitted into evidence.  Fed. R. Evid. 806.  This rule "effectively treats the hearsay declarant as a witness for impeachment and rehabilitation purposes."  2 McCormick on Evid. § 324.2 (8th ed.).

For individuals who are not witnesses and not hearsay declarants, however, none of those rules apply.  Instead, those non-witnesses' "credibility is irrelevant."  *United States v. McGowan*, 58 F.3d 8, 15-16 (2d Cir. 1995).  The Second Circuit has therefore "clearly established . . . the principle that a statement not offered to prove the truth of the matter asserted may not be impeached under Rule 806."  *United States v. Paulino*, 445 F.3d 211, 217 (2d Cir. 2006); *see United States v. Dipietro*, No. 02 Cr. 1237 (SWK), 2005 WL 1430483, at *1 (S.D.N.Y. June 17, 2005) ("It has long been the case in the Second Circuit that it is proper to preclude cross-examination of an individual whose statements are not admitted for their truth.").  Even if the individual is a "'central figure'" in the case, "a district court need not allow impeachment" if the individual's "out-of-court statements were not admitted for their truth."  *United States v. Regan*, 103 F.3d 1072, 1083 (2d Cir. 1997) (quoting *McGowan*, 58 F.3d at 15-16); *see United States v. Perez*, No. 05 Cr. 441 (PKL), 2005 WL 2709160, at *3 (S.D.N.Y. Oct. 20, 2005) ("Because the informant's statements are not hearsay, and because the government will not call the informant as a witness at trial, it follows that defendant may not impeach the credibility of the informant.").

In this case, the Government is not planning to call Minor Victim-5 or Minor Victim-6.  To the extent other witnesses are expected to testify about the activities of Minor Victim-5 and

Minor Victim-6, including statements made by them, that testimony will not include any statements by Minor Victim-5 or Minor Victim-6 offered for the truth of the matter asserted or under one of the other exceptions listed in Rule 806. *See* Fed. R. Evid. 806 (referencing Fed. R. Evid. 801(d)(2)(C)-(E), which concern authorized speakers, agents or employees acting within the scope of that relationship, and co-conspirator statements). That testimony instead is expected to include discussion of acts by Minor Victim-5 and Minor Vicitm-6 and statements offered not for the truth of the matter asserted, but for some other reason, such as the effect on the listener. For instance, and as noted above, Minor Victim-4 is expected to testify that she was recruited by Minor Victim-5. Those statements are not offered for their truth, but to explain Minor Victim-4's actions. Similarly, Minor Victim-4 is expected to testify that she personally observed the sexual abuse of Minor Victim-5—observations that require no hearsay statements from Minor Victim-5. Accordingly, since Minor Victim-5 and Minor Victim-6 are neither witnesses nor hearsay declarants, their credibility is not at issue, and they should not be subject to impeachment or attack on that basis.[10]

## VI. Evidence or Argument that Minor Victims Consented to Sexual Abuse is Inadmissible

A defendant is entitled to present a defense only if it has a foundation in the evidence and it does not fail as a matter of law. *See, e.g.*, *United States v. Miles*, 748 F.3d 485, 489 (2d Cir. 2014) (per curiam) ("A federal court may preclude a defendant from presenting a defense when

---

[10] This analysis is not unique to the Minor Victims. Attacks on the credibility of any individual who is neither a witness nor a hearsay declarant, including victims' counsel, is improper. (*See, e.g.*, Reply Mem. of Law, Dkt. No. 285 (arguing that the Government improperly colluded with victim's counsel)).

the evidence in support of such a defense would be legally insufficient." (citation and internal quotation marks omitted)); *United States v. Bakhtiari*, 913 F.2d 1053, 1057 (2d Cir. 1990) ("This procedure enabled [the Court], upon finding that the defense failed as a matter of law, to preclude the evidence and thereby avoid unnecessary jury confusion."). If there is a question of whether a defense is sufficient as a matter of law, the Court may conduct a hearing. *See Bakhtiari*, 913 F.2d at 1057. But if the Court finds a defense insufficient as a matter of law, the Court is under no duty to allow the defendant to present the evidence, or advance the defense, to the jury. *See Miles*, 748 F.3d at 489; *United States v. Paul*, 110 F.3d 869, 871 (2d Cir. 1997) (citing *United States v. Bailey*, 444 U.S. 394, 416-17 (1980)).

Consent is not a valid defense to any of the counts in the Indictment. It is not a valid defense to sex trafficking of minors. *See United States v. Corley*, 679 F. App'x 1, 4 (2d Cir. 2017) (summary order) ("Further, the victims could not consent because they were minors."); *United States v. Elbert*, 561 F.3d 771, 777 (8th Cir. 2009) ("Because the victims were minors and could not legally consent, the government did not need to prove the elements of fraud, force, or coercion, which are required for adult victims."); *United States v. Kidd*, 385 F. Supp. 3d 250, 253 (S.D.N.Y. 2019). It is not a defense to the Mann Act counts. *See United State v. Holland*, 381 F.3d 80, 84 (2d Cir. 2004) (explaining that 18 U.S.C. § 2423(a) "makes no distinction between victims and coconspirators for purposes of imposing liability on the person who transports another; the defendant need only have transported an 'individual' . . . to be guilty under the Act."); *United States v. Williams*, 529 F.3d 1, 6 (1st Cir. 2008) ("[C]onsent is not a defense to a prosecution under section 2423(a)."); *United States v. Jones*, 808 F.2d 561, 565 (7th

39

Cir. 1986) ("[C]onsent is a defense to kidnapping but not to a Mann Act charge . . . ."); *United States v. Rivera*, No. 13 Cr. 149 (KAM), 2015 WL 1886967, at *7 n.4 (E.D.N.Y. Apr. 24, 2015) ("[C]onsent is not a defense to the sex trafficking of minors . . . and is also not a defense to violations of 18 U.S.C. § 2422."); *United States v. Griffith*, No. 99 Cr. 786 (HB), 2000 WL 1253265, at *18 (S.D.N.Y. Sept. 5, 2000) ("The Mann Act (18 U.S.C. §§ 2241-3) has never, since its inception, provided for a defense of consent."); *see also Gebardi v. United States*, 287 U.S. 112, 119 (1932) ("For the statute is drawn to include cases in which the woman consents to her own transportation."). And it is not a defense to the New York offense which is the object of the Mann Act counts. *See* N.Y. Penal Law § 130.05(3)(a) ("A person is deemed incapable of consent when he or she is . . . less than seventeen years old . . . .").

The Indictment concerns only minor victims, and as a matter of law, such underage victims could not consent to engage in sexual activity. Accordingly, evidence or arguments that the victims consented to being trafficked, transported, enticed, or sexually exploited would not give rise to a valid defense, and they should be precluded. *See Elbert*, 561 F.3d at 777-78 (affirming exclusion of evidence of a victim's consent under Federal Rule of Evidence 412). In the absence of a consent defense, evidence about the victims' consent to sexual activity should also be excluded as irrelevant. *See* Fed. R. Evid. 401. Such evidence is not probative or relevant to any issue at the trial. It cannot support a defense, and it does not impeach the witnesses or undermine their credibility.

And in any event, argument and evidence about victims' consent should be excluded under Rule 403. Any marginal value of such evidence would serve primarily to cast aspersions

40

on the victims for participating in the defendant's crimes, embarrassing the victims and inviting the jury to engage in stereotyping and nullification.  These are precisely the forms of harm the law elsewhere tries to mitigate.  *Cf.* Fed. R. Evid. 412 & Advisory Committee Note (restricting introduction of evidence of a victim's other sexual behavior to encourage victims to come forward and avoid "invasion of privacy, potential embossment and sexual stereotyping"); 18 U.S.C. § 3771(a)(8) (giving victims the right to be treated with "respect for the victim's dignity and privacy").  The probative value of such evidence is therefore significantly outweighed by the danger of prejudice.

The Court should permit evidence of a minor victim's consent to engage in sexual activity only if doing so would aid the jury to evaluate a legitimate defense theory, which the defense has not yet proffered.

### VII.   Before Offering Evidence or Argument of the Defendant's Failure to Commit Other Bad Acts, the Court Should Require the Defense to Proffer the Basis and Relevance of Such Evidence

The defense has repeatedly suggested that any witness who did not observe the defendant participating in criminal conduct is exculpatory evidence.  Specific-act propensity evidence is no more admissible to refute a criminal charge than it is to establish one.  Accordingly, before the Court permits the defense to offer evidence or make argument regarding other crimes that did not involve the defendant, the Court should require the defense to proffer the basis and relevance of that evidence.

"No less than evidence of a defendant's prior 'bad acts' used to show that he committed the crime charged, . . . 'good acts' evidence is only relevant if we assume that a defendant acted in conformity with those prior good acts—*i.e.*, if we make the exact propensity inference Rule

404(b)(1) is designed to prohibit." *United States v. Dawkins*, 999 F.3d 767, 792 (2d Cir. 2021) (upholding exclusion of "testimony regarding [defendant's] relationships with coaches whom he did not bribe"). Accordingly, "[a] defendant may not seek to establish his innocence . . . through proof of the absence of criminal acts on specific occasions." *United States v. Scarpa*, 913 F.2d 993, 1011 (2d Cir. 1990) (internal quotation marks omitted). "A single occurrence of lawful conduct is 'simply irrelevant' to other occurrences of unlawful conduct." *United States v. Chambers,* 800 F. App'x 43, 46 (2d Cir. 2020) (citing *United States v. Walker*, 191 F.3d 326, 336 (2d Cir. 1999)); *see United States v. Williams*, 205 F.3d 23, 34 (2d Cir. 2000) ("We reject Williams's assertion that the evidence of innocent travel was necessary to rebut the government's allegation that Williams had been involved in other cocaine importations from Jamaica. Although the government did argue that Williams had been involved in other importations, it did not allege that Williams had engaged in drug activity during these particular trips."); *Boyce v. Weber*, No. 19 Civ. 3825 (JMF), 2021 WL 2821154, at *8 (S.D.N.Y. July 7, 2021) (in a civil sex trafficking case, excluding evidence of witnesses who would testify that the defendant did not abuse them, because "[i]t is well established that a defendant may not seek to establish his innocence through proof of absence of criminal acts on specific occasions" (alterations and internal quotation marks omitted)).

The Government has produced to the defendant records of interviews of many victims who were sexually abused by Epstein, some of whom did not have personal interactions or dealings with the defendant, including during the time period of the charged conspiracy. The defendant is not charged with committing crimes against these victims. In prior filings, the

defendant has emphasized these witness statements, and claimed that they are exculpatory.  (*See, e.g.*, Mem. of Law, Dkt. 138 at 7-11; Letter, Dkt. 64 at 1; Mot., Dkt. No. 346 at 2 n.1).

As explained above, as a general matter, "evidence of good conduct that does not refute evidence of the offense charged" is inadmissible.  *United States v. Rivera*, No. 13 Cr. 149 (KAM), 2015 WL 1725991, at *2 (E.D.N.Y. Apr. 15, 2015).  The Government will not contend at trial that the defendant personally participated in the abuse of all of Epstein's victims, and it is not a defense to claim that the defendant is not guilty of crimes with which she is not charged. This Court has already said as much.  In the defendant's pretrial motions, she alleged pre-indictment delay on the grounds that the lead detective from the Palm Beach Police Department investigating Epstein "revealed that not one of the alleged Epstein victims ever mentioned Ms. Maxwell's name and she was never considered a suspect."  (Mem. of Law, Dkt. 138 at 10-11). The Court rejected this argument, explaining that the testimony the defendant suggested that the detective might have offered "is propensity evidence that does nothing to establish her innocence of the charged offenses."  (Opinion & Order, Dkt. 207 at 18); *see United States v. Raniere*, 384 F. Supp. 3d 282, 325 (E.D.N.Y. 2019) (rejecting a motion for discovery because "statements by individuals who were not allegedly directed to have sex with [the defendant] or were not threatened with the release of collateral in exchange for acts of care are not *Brady* material because they have no bearing on whether the alleged victims were so directed or threatened").

Moreover, the Government notes that evidence of these encounters is only admissible through the victims themselves.  Any other method of eliciting that evidence, such as through

testimony by a case agent, is inadmissible hearsay.  While the defendant has no burden to put on a defense case, she can only introduce this evidence by doing so.

Accordingly, before the defendant—in opening or during trial—argues or offers evidence about the defendant's absence when Epstein abused victims who are not part of the Government's case-in-chief, the Court should require the defendant to explain the evidence she plans to offer and why such evidence would be admissible.

## VIII.   The Court Should Not Permit the Defendant to Introduce Her Own Prior Statements

The Government has produced to the defendant many of her own statements, including primarily (1) statements contained in emails or other communications, and (2) statements from her own deposition.  Some of the latter statements contain denials of portions of the offense conduct, for which the defendant is separately charged with perjury.  (*See* Indictment ¶¶ 28-31). The Court should not permit the defense to introduce these statements.

A defendant may not offer her own statement into evidence without subjecting herself to cross-examination.  "When the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible."  *United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982); *see also, e.g.*, *United States v. Rea*, 958 F.2d 1206, 1225 (2d Cir. 1992) (similar); *United States v. Fernandez*, 839 F.2d 639, 640 (9th Cir. 1987) (per curiam) ("[D]efense counsel wished to place [the defendant's] statement . . . before the jury without subjecting [the defendant] to cross-examination, precisely what the hearsay rule forbids."); *United States v. Torres*, 435 F. Supp. 3d 526, 538 (S.D.N.Y. 2020) ("Finally, the Court agrees with the Government that, in the event evidence of his flight is admitted, Torres may not

44

automatically admit his alternative explanation for his flight, insofar as he wishes to bring in his out-of-court statements to others on social media or to prison officials."). The Government is able to introduce the defendant's statements as statements of an opposing party under Federal Rule of Evidence 801(d)(2)(A). *See* Fed. R. Evid. 801(d)(2)(A) (defining as "not hearsay" a statement "offered against an opposing party" and "made by the party"). But the Federal Rules contain no parallel provision for the defendant. *See Marin*, 669 F.2d at 84. Instead, if the defendant wishes to place her own statements before the jury, she must testify so the Government may cross-examine her. *See United States v. Yousef*, 327 F.3d 56, 153 (2d Cir. 2003) (holding that defendant "could have testified to everything asserted in his statement, [but] he could not offer the document itself for the truth of the matter asserted"), *overruled on other grounds by Montejo v. Louisiana*, 556 U.S. 778 (2009).

Notwithstanding the hearsay bar, a defendant may in limited circumstances invoke the so-called "rule of completeness" to require the introduction of additional portions of his or her own out-of-court statement when the Government offers excerpts of it. *See* Fed. R. Evid. 106 ("If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time."). "Under this principle, even though a statement may be hearsay, an 'omitted portion of [the] statement must be placed in evidence if necessary to explain the admitted portion, to place the admitted portion in context, to avoid misleading the jury, or to ensure fair and impartial understanding of the admitted portion.'" *United States v. Johnson*, 507 F.3d 793, 796 (2d Cir. 2007) (alteration in original) (quoting

45

*United States v. Castro*, 813 F.2d 571, 575-76 (2d Cir. 1987)).  But this doctrine "has never required the admission of portions of a statement that are neither explanatory of nor relevant to the admitted passages."  *United States v. Williams*, 930 F.3d 44, 58 (2d Cir. 2019) (internal quotation marks and alterations omitted); *see id.* at 61 ("[T]he rule of completeness does not *require* the admission of self-serving exculpatory statements in all circumstances." (emphasis in original)).  This rule is strictly applied, leading the Second Circuit to hold, for example, that a defendant could not introduce a portion of his confession relating "to the *execution* of [a] robbery," where the portion introduced by the Government concerned only "*plans* to execute the robbery." *Johnson*, 507 F.3d at 796 (emphasis in original).

The Government expects to offer certain of the defendant's written statements contained in her emails and oral statements through witness testimony.  To the extent the defendant wishes to offer her own out-of-court statements, they are hearsay, whether in emails, deposition transcripts, or elsewhere.  And unless they accomplish the narrow function of the rule of completeness, the Court should preclude them.  Given the limited admissibility of such statements, and to avoid mid-trial delays, the Government requests that (a) to the extent the defense seeks to admit such evidence during the Government's case-in-chief during cross-examination of witnesses, the defense preview with the Government and the Court prior to each trial day any statement of the defendant it intends to admit, so that any evidentiary issues can be addressed outside of the trial day; and (b) that the defendant be required to mark any such statements that she intends to offer during her case-in-chief at the time of her Rule 26.2 disclosures.

46

## IX.      The Court Should Preclude Evidence or Argument Sounding in Nullification

The defendant may attempt to offer evidence of aspects of her life that may tend to elicit the juror's sympathy, such as her charitable works or evidence of her family history. Such evidence should be excluded as irrelevant, confusing, and prejudicial.

As discussed above, the Federal Rules of Evidence preclude the use of good acts to draw a propensity inference in favor of the defendant, just as they preclude the use of prior bad acts for the same purpose. *See supra* Section VII. Evidence and argument that makes the defendant appear sympathetic for reasons unrelated to the charges at issue should also be excluded as inviting the jury to acquit a defendant even where the evidence proves her guilt beyond a reasonable doubt. Juries are not "to act based on their . . . sympathy." *United States v. Stroming*, 838 F. App'x 624, 627 (2d Cir. 2021) (summary order); *see, e.g.*, *United States v. Mustaga*, 753 F. App'x 22, 37 (2d Cir. 2018) (summary order) ("The district court correctly recognized that evidence of solitary confinement could be used for the improper purpose of provoking juror sympathy."). Any attempt to encourage such sympathy is therefore an attempt at nullification, which is itself plainly improper. *See, e.g.*, *United States v. Thomas*, 116 F.3d 606, 615 (2d Cir. 1997) (Jury nullification is "by no means a right or something that a judge should encourage or permit if it is within his authority to prevent."); *id.* at 614 ("We categorically reject the idea that, in a society committed to the rule of law, jury nullification is desirable or that courts may permit it to occur when it is within their authority to prevent."); *see also United States v. Washington*, 705 F.2d 489, 494 (D.C. Cir. 1983) (per curiam) ("A jury has no more '*right*' to find a 'guilty' defendant 'not guilty' than it has to find a 'not guilty' defendant 'guilty,' and the fact that the former cannot be corrected by a court, while the latter can be, does not create a right out of the

power to misapply the law.  Such verdicts are lawless, a denial of due process and constitute an exercise of erroneously seized power." (emphasis in original)).

Even if a defendant offers character evidence, that evidence may not include specific instances of good conduct, unless the defendant's character is an "essential element" of the offense.  Fed. R. Evid. 404(a) & 405; *see, e.g.*, *United States v. Dawkins*, 999 F.3d 767, 792 & n.77 (2d Cir. 2021); *United States v. Nachamie*, 28 F. App'x 13, 20-21 (2d Cir. 2001) (summary order).  Character evidence is only admissible "by testimony about the person's reputation or by testimony in the form of an opinion."  Fed. R. Evid. 405(a); *see, e.g.*, *United States v. Riley*, 638 F. App'x 56, 64 (2d Cir. 2016) (summary order) ("The limitations imposed by the district court followed directly from the Rules of Evidence, which permit a defendant to offer evidence of a personal opinion or his reputation for a pertinent character trait, but not to offer testimony regarding 'specific instances' of conduct in conformity with a trait that is not at issue." (citations omitted)).

The Government is unaware of any relevant reason for the jury to consider the defendant's charitable activities, family history, or similar facts.  Because those facts have nothing to do with her guilt or innocence, and they are not permissible character evidence, she should be precluded from mentioning such subjects in her opening statement, during the presentation of evidence, or in closing statements, absent a ruling that a specific fact is relevant and more probative than unfairly prejudicial.

### X.     The Court Should Preclude the Defense from Making the Baseless Argument that the Defendant Was a Victim of Jeffrey Epstein

In order for counsel to ask questions or make argument about a fact, counsel must have a good faith basis for advancing that fact.  *See, e.g.*, *United States v. Figueroa*, 548 F.3d 222, 227 (2d Cir. 2008) ("Although counsel may explore certain areas of inquiry in a criminal trial without full knowledge of the answer to anticipated questions, he must, when confronted with a demand for an offer of proof, provide some good faith basis for questioning that alleges adverse facts." (citation and internal quotation marks omitted)).  The Government's years-long investigation has not developed any evidence that the defendant was victimized in any way by Jeffrey Epstein. The Government has also met with the defense many times, both prior to presenting this case to a grand jury and when conferring during the pendency of this matter.   During one of those meetings, defense counsel made a variety of factual assertions in order to dissuade the Government from charging the defendant.   At no time has the defense represented to the Government that Epstein victimized the defendant in any manner.  In preparing these motions, the Government asked the defense whether they plan to offer such evidence at trial, and defense counsel declined to answer. [11]

---

[11] As set forth in the Government's cover letter, the Government seeks redaction of this section. Were this argument discussed in public filings, it would likely result in significant publicity, which would be highly prejudicial to the Government if in fact there is no good-faith basis for the argument, as the Government suspects will be the case.   Accordingly, the Court should permit redaction and sealing of this section at least until the conclusion of trial.

Accordingly, the Court should require the defense to make an offer of proof before permitting any questioning or argument alleging that the defendant is a victim of abuse by Epstein—or anyone else, for that matter.

Even if the defendant had a good-faith basis for such evidence or argument, the Court would still need to assess its relevance and conduct the balancing required by Federal Rule of Evidence 403.  Evidence of this sort may well be irrelevant and unfairly prejudicial.  It is entirely possible for someone to be both a victim and co-conspirator of Epstein; indeed, it is not unusual for individuals who engage in sex trafficking to have co-conspirators who are also victims.  To complete the offenses charged in the Indictment, the defendant needs to intend the transportation, enticement, or trafficking of Minor Victims, or agree to do so.  Accordingly, any victimization— if it occurred—would not necessarily exculpate her or negate her *mens rea*.  And only certain limited evidence would be sufficient to provide a foundation for a duress or coercion defense. *See United States v. Zayac*, 765 F.3d 112, 120 (2d Cir. 2014) ("The affirmative defense of duress excuses criminal conduct committed under circumstances from which a jury may infer that the defendant's hand was guided not by evil intent, but by the imminent threat of grievous bodily harm.").

Even if such alleged victimization were probative in some way on an issue at trial, there is significant risk that such evidence would be highly prejudicial to the Government and confusing to the jury.  It would primarily serve to invite the jury to feel sympathy for the defendant, providing an unlawful basis for jury nullification.  At best, it would confuse the jury

into thinking that victimization was in some way relevant to its evaluation of the defendant's *mens rea*.

Because the Government is aware of no evidence that the defendant was a victim of Epstein, and because any such evidence may well be irrelevant and unfairly prejudicial in any event, the Court should preclude the defense from discussing it at trial absent a specific offer of proof in advance as to the nature and relevance of such evidence.[12]

## XI.   The Defendant Should Be Precluded from Arguing That She Was A "Prevailing Party" in Civil Litigation

The Court should preclude the defense from inaccurately suggesting to the jury that the defendant prevailed in civil litigation related to some of the events at issue at trial.

By way of background, Minor Victim-2 filed a civil action in this District, bringing claims against the defendant and the estate of Jeffrey Epstein.  *See* ██████████████████ ██████████████████. Minor Victim-2 received a substantial settlement from the estate after participating in a compensation program for victims of Jeffrey Epstein.  As part of that settlement, Minor Victim-2 moved to dismiss her civil action in its entirety.  The defendant— who was represented in that lawsuit by attorneys who represent her in this criminal case—asked

---

[12] The Government is not moving specifically to preclude a defense or evidence based on Federal Rule of Criminal Procedure 12.2 because the defense has represented that it is not planning to offer such a defense or evidence.  Specifically, if a defendant intends to (1) assert an insanity defense, or (2) introduce "expert evidence relating to a mental disease or defect or any other mental condition of the defendant bearing on . . . the issue of guilt," the defendant must provide written notice to the Government "within the time provided for filing a pretrial motion or at any later time the court sets."  Fed. R. Crim. P. 12.2(a)-(b).  The defense has not provided such notice, and has informed the Government that they do not intend to rely on any defense covered by the Rule.  Accordingly, the Government understands that the defense has waived any Rule 12.2 defense.

the court to declare the defendant the prevailing party in that suit, because Minor Victim-2 had dismissed the case with prejudice in connection with the settlement agreement. *See* Fed. R. Civ. P. 54(d)(1) ("[C]osts . . . should be allowed to the prevailing party."). The defendant further filed a motion for costs, demanding that Minor Victim-2 pay the defendant ▮▮▮ in costs, because, by virtue of the dismissal, the defendant was technically the "prevailing party." *See* ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ While Minor Victim-2 did "not agree that the Defendant is the prevailing party," she agreed to pay the costs rather than engage in motion practice that would "far exceed the above cost." ▮▮▮▮▮▮▮▮▮

        At trial, the defense should be precluded from suggesting to the jury—during cross examination or otherwise—that the defendant prevailed in civil litigation. Such evidence is irrelevant and confusing and would potentially mislead the jury into believing that the civil matter was adjudicated on the merits and resolved in the defendant's favor. Although the Government has no objection to the defense cross-examining Minor Victim-2 about filing a civil lawsuit and obtaining a settlement, the defense should be precluded from claiming at trial that the defendant prevailed in civil litigation.[13]

---

[13] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

## **CONCLUSION**

For the reasons set forth above, the Government respectfully requests that the Court grant the

Government's *in limine* motions.

Dated: October 18, 2021
        New York, New York

                                        Respectfully submitted,

                                        DAMIAN WILLIAMS
                                        United States Attorney for the
                                        Southern District of New York


                           By:    _____/s/_____
                                        Alison Moe
                                        Lara Pomerantz
                                        Andrew Rohrbach
                                        Assistant United States Attorneys