UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x
                        :

UNITED STATES OF AMERICA,     :
                        :

      v.                 :     S2 20 Cr. 330 (AJN)
                        :

GHISLAINE MAXWELL,       :
                        :

          Defendant.    :
                        :

-------------------------------------------------------- x

## GHISLAINE MAXWELL'S RESPONSE TO GOVERNMENT'S OMNIBUS MOTIONS *IN LIMINE*

Jeffrey S. Pagliuca
Laura A. Menninger
HADDON, MORGAN & FOREMAN P.C.
150 East 10th Avenue
Denver, CO 80203
Phone: 303-831-7364

Christian R. Everdell
COHEN & GRESSER LLP
800 Third Avenue New
York, NY 10022
Phone: 212-957-7600

Bobbi C. Sternheim
Law Offices of Bobbi C. Sternheim
225 Broadway, Suite 715
New York, NY 10007
Phone: 212-243-1100

*Attorneys for Ghislaine Maxwell*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

  A.  The True Purpose of a Motion *in Limine* ............................................... 1

  B.  Advisory Rulings are Not Appropriate Here ........................................ 2

  C.  The Court Should Reject the Government's Attempts to Preview any Defense Case or Cross Examination ....................................................... 4

I.   THE GOVERNMENT'S PSEUDONYM TACTIC IS UNNECESSARY, UNWORKABLE, AND UNCONSTITUTIONAL IN THIS CASE ................................ 4

  A.  ████████████████████████████████████ ████ ............................................................................................... 5

    1.  ██████████████ .......................................................... 5

    2.  ██████████████████ ............................................... 10

    3.  █████████████████ ................................................. 12

  B.  The Government Has Failed to Carry its Burden to Establish the Extraordinary Need to Use Fake Names .................................................. 15

  C.  ██████████████████ Defeats the Proffered Purpose for Using Fake Names ..... 17

    1.  ████████████████████████████████ ████. .......................................................................................... 17

    2.  ████████████████████████████ .................... 18

  D.  ████████████████ ......................................................... 19

  E.  No Legitimate Safety Concerns are Present ........................................ 19

  F.  ██████████████████████ Has No Nexus to Ms. Maxwell and Any Reference to Her Should Be Excluded -- Eliminating the Need for a Pseudonym or Other Artifice ................................................................................................. 20

  G.  ██████████████████████████████████ ████████████████, Hiding Their Identities and Those of Related Witnesses Serves No Legitimate Purpose ........................................ 20

  H.  The Use of Fake Names is Unfairly Prejudicial to Ms. Maxwell ..................... 20

  I.   SUPPRESSION OF THE EXHIBITS IS CONTRARY TO WELL-ESTABLISHED SECOND CIRCUIT LAW ............................................................................. 23

II.  PRE-TRIAL RULING ON "PRIOR CONSISTENT STATEMENTS" INAPPROPRIATE 23

  A.  The 2014 Amendments Did Not Change the Grounds for Which Prior Consistent Statements May Be Admitted ............................................... 24

  B.  Substantial Limits Remain on Admissibility of Prior Consistent Statements .................. 25

III.  EVIDENCE AND ARGUMENT ABOUT PRIOR CHARGING DECISIONS AND THE
      COURSE OF PRIOR INVESTIGATIONS IS ADMISSIBLE........................................... 28

   A.  The NPA Is Admissible to Show the Bias and Interest of ███████████████
       ██████.................................................................................................................... 29

   B.  Evidence and Argument About the NPA, Prior Charging Decisions, and the Death of
       Jeffrey Epstein Is Admissible to Challenge the Thoroughness and Good Faith of the New
       York Investigation.......................................................................................................... 32

       1.  Applicable Law ...................................................................................................... 32

       2.  Discussion .............................................................................................................. 32

   C.  Evidence and Argument About the Fact that Ms. Maxwell Was Not Charged by the
       USAO-SDFL Is Relevant to █████████████ ................................................... 36

       1.  Applicable Law ...................................................................................................... 36

       2.  Discussion .............................................................................................................. 37

   D.  Evidence and Argument About the Scope, Timeline, and Investigative Steps of Prior
       Investigations Is Admissible ......................................................................................... 40

   E.  A Proffer Regarding the Basis for the Case Agents' Testimony is Unnecessary and
       Unwarranted................................................................................................................... 41

IV.  THE GOVERNMENT'S MOTION TO PRECLUDE EVIDENCE OR ARGUMENT
     ABOUT ITS MOTIVES FOR PROSECUTING MS. MAXWELL IS MISGUIDED AND
     MERITLESS .......................................................................................................................... 42

V.   A PRE-TRIAL BAN ON CHALLENGES TO THE CREDIBILITY OF NON-
     TESTIFYING WITNESSES IS UNSUPPORTED LEGALLY OR FACTUALLY .......... 43

VI.  CERTAIN EVIDENCE OR ARGUMENT THAT MINOR VICTIMS CONSENTED TO
     SEXUAL ABUSE MAY BE ADMISSIBLE........................................................................ 46

VII. UNFOUNDED REQUEST TO PRECLUDE EVIDENCE OF MS. MAXWELL'S GOOD
     ACTS SHOULD BE SUMMARILY DENIED .................................................................. 49

   A.  The Government Cites No Authority for Requiring Pre-trial Notice of Such Evidence... 50

   B.  The Referenced Evidence Demonstrates that Jeffrey Epstein Committed Acts of Abuse --
       Without Ms. Maxwell's Knowledge or Participation – May Be Relevant to Existence of
       Conspiracy or Knowledge of Its Illegal Objectives. ....................................................... 51

VIII. THE GOVERNMENT'S MOTION TO LIMIT THE INTRODUCTION OF MS.
      MAXWELL'S STATEMENTS IS PREMATURE AND SHOULD BE DENIED AT THIS
      TIME ..................................................................................................................................... 54

IX.  MS. MAXWELL'S COUNSEL UNDERSTANDS AND WILL FOLLOW THE RULES OF
     EVIDENCE AND PROHIBITION AGAINST ARGUMENT FOR JURY
     NULLIFICATION – RENDERING THIS MOTION MOOT ............................................. 55

X.   REQUEST TO PREVIEW DEFENSE'S EVIDENCE SHOULD BE DENIED ................. 56

XI. ███████████████████████ MS. MAXWELL WAS THE PREVAILING
PARTY IN CIVIL LITIGATION BASED ON THE SAME FACTS AS THIS CRIMINAL
TRIAL, WHICH IS RELEVANT TO MS. MAXWELL'S DEFENSE................................ 57

CONCLUSION.......................................................................................................................... 59

# TABLE OF AUTHORITIES

**Cases**

*Alford v. United States*, 282 U.S. 687 (1931) ........................................................ 20, 29

*Application of Nat'l Broad. Co., Inc.,* 635 F.2d 945 (2d Cir. 1980) ............................ 23

*Baxter Diagnostics, Inc. v. Novatek Med., Inc.,* 1998 WL 665138 (S.D.N.Y. Sept. 25, 1998) ...... 2

*Bowen v. Maynard*, 799 F.2d 593 (10th Cir. 1986) .................................... 32, 35, 41, 42

*Boyce v. Weber*, 19 Civ. 3825 (JMF), 2021 WL 2821154 (S.D.N.Y. July 7, 2021) .................. 53

*Campanella v. O'Flynn*, No. 10-CV-6236L, 2012 WL 2194556 (W.D.N.Y. June 14, 2012) ...... 19

*Cap. Mgmt. Select Fund Ltd. v. Bennett*, 680 F.3d 214 (2d Cir. 2012) .......................... 3

*Chambers v. Mississippi*, 410 U.S. 284 (1973). ....................................................... 28

*CMM Cable Rep., Inc. v. Ocean Coast Properties, Inc.*, 48 F.3d 618 (1st Cir.1995) ................. 19

*Crane v. Kentucky*, 476 U.S. 683 (1986) ................................................................ 36

*Crowe v. Bolduc*, 334 F.3d 124 (1st Cir. 2003) ....................................................... 30

*Curto v. Med. World Commc'ns, Inc.*, 783 F. Supp. 2d 373 (E.D.N.Y. 2011) ........................ 19

*Delaware v. Van Arsdall*, 475 U.S. 673 (1986) ........................................................ 21

*Doe v. Cook Cty., Illinois*, No. 1:20-CV-5832, 2021 WL 2258313 (N.D. Ill. June 3, 2021) ....... 16

*Doe v. Shakur*, 164 F.R.D. 359 (S.D.N.Y. 1996) ...................................................... 16

*Doe v. Weinstein*, 484 F. Supp. 3d 90 (S.D.N.Y. 2020) .............................................. 16

*Esquival-Quintana v. Sessions,* 137 S. Ct. 1562 (2017). ............................................. 46

*Ferrier v. Duckworth*, 902 F.2d 545 (7th Cir.) ....................................................... 54

*In re Bonanno*, 344 F.2d 830 (2d Cir. 1965) .......................................................... 16

*In re Refco Cap. Markets, Ltd. Brokerage Customer Sec. Litig.*, No. 06 CIV. 643 (GEL), 2008 WL 4962985 (S.D.N.Y. Nov. 20, 2008) .......................................................... 3

*Knaust v. City of Kingston*, 157 F.3d 86 (2d Cir. 1998) ............................................. 19

*Kyles v. Whitley*, 514 U.S. 419 (1995) .............................................................. passim

*Lindsey v. King*, 769 F.2d 1034 (5th Cir. 1985) ........................................ 32, 35, 41, 43

*Luce v. United States*, 469 U.S. 38 (1984) ............................................................. 1

*M.K. ex rel. Mrs. K. v. Sergi*, 554 F. Supp. 2d 233 (D. Conn. 2008) ............................... 3

*Nat'l Union Fire Ins. Co. v. L.E. Myers Co. Group et al.*, 937 F. Supp. 276 (S.D.N.Y. 1996)...... 2

*Palmieri v. Defaria* et al., 88 F.3d 136 (2d Cir. 1996)..................................................... 1

*Palocioz v. Hannigan*, 962 F.2d 17 (10th Cir. 1992)...................................................... 19

*People v. Harvey Weinstein,* 02335/2018 (N.Y. Sup. Ct.)............................................... 16

*People v. Harvey Weinstein,* 2673/2019 (N.Y. Sup. Ct.)................................................ 16

*Rapp v. Fowler*, No. 20-CV-9586 (LAK), 2021 WL 1738349 (S.D.N.Y. May 3, 2021)............. 16

*Seymour v. Bache & Co.*, 502 F. Supp. 115 (S.D.N.Y. 1980) ........................................ 3

*Spencer v. City of New York*, No. 06 Civ. 2852 (KMW), 2011 WL 13257640 (S.D.N.Y. Jul. 5, 2011)................................................................................................................. 31

*State v. Ryan Odom* 2011CF012120AMB ...................................................................... 18

*Tome v. United States*, 513 U.S. 150 (1995)................................................... 25, 26, 27

*TVT Recs. v. Island Def Jam Music Grp.*, 250 F. Supp. 2d 341 (S.D.N.Y. 2003)....................... 2

*United Realty Advisors, LP v. Verschleiser*, No. 14-CV-5903 (JGK), 2019 WL 5285043 (S.D.N.Y. Oct. 3, 2019) ...................................................................................... 2

*United States ex rel. Annunziato v. Manson*, 425 F. Supp. 1272 (D. Conn. 1977)....................... 29

*United States v. Al-Moayad*, 545 F.3d 139 (2d Cir. 2008) .......................................... 36

*United States v. Avenatti*, 433 F. Supp. 3d 552 (S.D.N.Y. 2020) .................................. 42

*United States v. Borrero*, No. 13 Cr. 58 (KBF), 2013 WL 6020773 (S.D.N.Y. Nov. 1, 2013) .. 37, 39

*United States v. Boyle*, No. 08 Cr. 523 (CM), 2009 WL 5178525 (S.D.N.Y. Dec. 23, 2009) ..... 37

*United States v. Cacchillo*, 416 F.2d 231 (2d Cir. 1969)............................................... 3

*United States v. Caracappa*, 614 F.3d 30 (2d Cir. 2010) .......................................... 27

*United States v. Carneglia*, No. 08 Cr. 76 (JBW), 2009 WL 185725 (E.D.N.Y. Jan. 27, 2009) . 37

*United States v. Cavallaro*, 553 F.2d 300 (2d Cir. 1977) ........................................... 17

*United States v. Chambers,* 800 F. App'x 43 (2d. Cir. 2020) ...................................... 52

*United States v. Corley*, No. 13-CR-48 (AJN), 2016 WL 9022508 (S.D.N.Y. Jan. 15, 2016) .... 17

*United States v. Crisona*, 416 F.2d 107 (2d Cir. 1969) .............................................. 3

*United States v. Cuervelo*, 949 F.2d 559 (2d Cir. 1991).............................................. 42

*United States v. Dan Zhong*, No. 16-CR-614 (DLI), 2018 WL 6173430 (E.D.N.Y. Nov. 26, 2018)................................................................................................................ 17

*United States v. Dawkins*, 999 F.3d (2d Cir. 2021) ................................................... 52

*United States v. Dees*, 34 F.3d 838 (9th Cir. 1994) .................................................. 30

*United States v. Duncan*, No. 18 Cr. 289 (SHS), 2019 WL 2210663 (S.D.N.Y. May 22, 2019). 41

*United States v. Evanchik*, 413 F.2d 950 (2d Cir. 1969) ............................................ 3

*United States v. Farhane*, 634 F.3d 127 (2d Cir. 2011)..............................................42

*United States v. Flores*, 945 F.3d 687 (2d. Cir. 2019)................................................25

*United States v. Fratello*, 44 F.R.D. 444 (S.D.N.Y. 1968).........................................4

*United States v. Gangi*, 1 F. Supp. 2d 256 (S.D.N.Y. 1998) .....................................19

*United States v. Gardner*, No. 16-cr-20135, 2016 WL 5404207 (E.D. Mich. Sept. 28, 2016)....56

*United States v. Graham*, 257 F.3d 143 (2d Cir. 2001) ..............................................23

*United States v. Jeffrey Epstein*, 19-CR-490 (RMB) ..................................................11

*United States. v. Karl Roye,* Crim. No. 3:15-cr-29 (JBA), 2016 WL 4147133 at (D. Conn. Aug. 4, 2016)................................................................................................26

*United States v. Lester*, 248 F.2d 329 (2d Cir. 1957) .................................................30

*United States v. Londono*, 175 F. App'x 370 (2d Cir. 2006)......................................41

*United States v. Marti*, 421 F.2d 1263 (2d Cir. 1970) ...............................................17

*United States v. Martin*, No. 04 Cr. 1106 MCA, 2005 WL 8163890 (D.N.M. Apr. 11, 2005)....31

*United States v. Morel*, 751 F. Supp. 2d 423 (E.D.N.Y. 2010) ...................................2

*United States v. Morris*, No. 14-CR-399 (ENV), 2018 WL 2088301 (E.D.N.Y. May 4, 2018)..17

*United States v. Ngono*, 801 F. App'x 19 (2d Cir. 2020) ...........................................41

*United States v. Overton,* No. 15-CR-9S, 2017 WL 6347084 (W.D.N.Y. Dec. 13, 2017) ...........2

*United States v. Paris*, No. CR. 3:06-CR-64CFD, 2007 WL 1484974 (D. Conn. May 18, 2007)..17

*United States v. Percoco*, 13 F.4th 158 (2d Cir. 2021)................................................28

*United States v. Pierre*, 781 F.2d 329 (2d Cir. 1986)................................24, 25, 26

*United States v. Regan*, 103 F.3d 1072 (2d Cir. 1997) ...............................................42

*United States v. Rivera*, No. 13 Cr. 149 (KAM), 2015 WL 1725991 (E.D.N.Y. Apr. 15, 2015) 53, 54

*United States v. Rounds*, No. 10-CR-239S (1)(2)(3), 2015 WL 5918372 (W.D.N.Y. Oct. 9, 2015) ....................................................................................................51

*United States v. Saldarriaga*, 204 F.3d 50 (2d Cir. 2000)..........................................41

*United States v. Sanders*, 211 F.3d 711 (2d Cir. 2000) ..............................................42

*United States v. Scarpa*, 913 F.2d 993 (2d. Cir. 1990) ..............................................52

*United States v. Urena*, 8 F. Supp. 3d 568 (S.D.N.Y. 2014) ......................................17

*United States v. White*, 692 F.3d 235 (2d Cir. 2012) .................................................36

*Velez v. Novartis Pharms. Corp.*, No. 04 CIV. 9194 CM, 2010 WL 11043081 (S.D.N.Y. Feb. 25, 2010)................................................................................................54

*Williams v. Florida*, 399 U.S. 78 (1970).....................................................................4

*Yokohama Rubber Co. LTD v. Stamford Tyres Int'l PTE LTD*, No. SA-CV-0700010-CJCMGLX, 2008 WL 11342955 (C.D. Cal. Feb. 19, 2008) ........................................................................ 3

**Statutes**

Fla Stat. § 796.07 ............................................................................................................ 47, 48

Fla. Stat. § 794.05(1) ............................................................................................................. 46

New York State Penal Law § 130.55 ...................................................................................... 47

NM Stat. Ann. § 30-9-13(A)(1) .............................................................................................. 46

NY Penal Law Ann. § 130.03(3)(a) ........................................................................................ 46

**Other Authorities**

1 McCormick On Evid. § 47 (7th ed.) ..................................................................................... 26

ABA Criminal Justice Standards, Defense Function, Standard 4-7.5(b) .................................. 51

France Penal Code, Article 227-25 ......................................................................................... 46

Wright & Miller, 30B Fed. Prac. & Proc. Evid.(2021 ed.) .................................................. 26, 27

**Rules**

Fed. R. Evid. 401 ............................................................................................................... 27, 36

Fed. R. Evid. 403 ............................................................................................................... 35, 36

Fed. R. Evid. 404(b) ........................................................................................................... 50, 51

Fed. R. Evid. 801 ............................................................................................................... passim

Fed. R. Evid. 802 .................................................................................................................... 54

Fed. R. Evid. 803 .................................................................................................................... 54

Ghislaine Maxwell herby submits her response to the Government's Omnibus Motions *in Limine*.

## PRELIMINARY STATEMENT

The government's self-described "Motions *in Limine*" are an ill-founded attempt to: (1) improperly obtain advisory rulings from the Court on an undeveloped factual record; (2) prematurely, and unconstitutionally, force Ms. Maxwell to reveal defense theories, strategies, and cross-examination; (3) improperly limit Ms. Maxwell's defenses; and (4) inappropriately enlist the Court in vouching for the credibility of the accusers by the use of pseudonyms and other artifices.

For the most part, the issues raised by the government cannot, and should not, be addressed pretrial because the Court lacks the necessary facts to make intelligent rulings. The issues raised under headings II-XI should be denied on this basis alone. The arguments related to the use of pseudonyms and other artifices fails because ███████████████████ ███████████ the limitations suggested by the government will: (1) unconstitutionally restrict Ms. Maxwell's confrontation rights; (2) run afoul of both her right to a public trial and the First Amendment right to public access, and (3) are simply unworkable as a practical matter inviting a mistrial.

### A.  The True Purpose of a Motion *in Limine*

The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility of certain forecasted evidence. *See Luce v. United States*, 469 U.S. 38, 40 n. 2 (1984) (explaining that the motion *in limine* is used to "to exclude anticipated prejudicial evidence before the evidence is actually offered"); *see also Palmieri v. Defaria* et al., 88 F.3d 136, 141 (2d Cir. 1996) ("The purpose of an *in limine* motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as

to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." (citation and internal quotation marks omitted)); *Nat'l Union Fire Ins. Co. v. L.E. Myers Co. Group et al.*, 937 F. Supp. 276, 283 (S.D.N.Y. 1996) (same). Evidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds. *See Baxter Diagnostics, Inc. v. Novatek Med., Inc.,* 1998 WL 665138, at *3 (S.D.N.Y. Sept. 25, 1998); *Nat'l Union Fire Ins. Co.*, 937 F. Supp. at 287.

The way the government has raised its purported "*in limine*" motions is disfavored. Like the government's motions here, where a party "endeavor[s] to strike in shotgun fashion at whole topics and sources of prospective evidence, out of context and before any specific objection against its proper backdrop is raised…," the strategy is "impermissible" and the motions should be denied. *TVT Recs. v. Island Def Jam Music Grp.*, 250 F. Supp. 2d 341, 344 (S.D.N.Y. 2003).

Where the *in limine* motion seeks to preclude evidence or argument regarding various defenses it "is plainly improper." *United Realty Advisors, LP v. Verschleiser*, No. 14-CV-5903 (JGK), 2019 WL 5285043, at *1 (S.D.N.Y. Oct. 3, 2019); *see also United States v. Overton,* No. 15-CR-9S, 2017 WL 6347084, at *2 (W.D.N.Y. Dec. 13, 2017); *United States v. Morel*, 751 F. Supp. 2d 423, 427–28 (E.D.N.Y. 2010).

## B.   Advisory Rulings are Not Appropriate Here

Out of context, the government attempts to preclude whole categories of potential defenses, argument, and cross examination before one witness has testified. *See* Sections III, IV, IX ("The Court Should Preclude Evidence or Argument"), V (The Court Should Preclude Challenges), VII ("the Court Should Require the Defense"), VIII ("The Court should not Permit"),  X ("The Court Should Preclude the Defense"), and XI ("The Defendant Should be Precluded").

2

These arguments are about things that have not occurred and may not occur. Ms. Maxwell's counsel understand the rules of evidence and the law. Much of what may or may not happen in this trial will depend on the evidence produced by the government. Ms. Maxwell has no burden of proof and is not required to respond to hypothetical demands or provide previews about how she intends to cross examine witnesses. Consistent with prudent judicial practices, the Court should decline to rule on these hypothetical complaints. *See Seymour v. Bache & Co.*, 502 F. Supp. 115, 119 (S.D.N.Y. 1980) ("In light of the uncertainties surrounding these legal issues, a potentially unnecessary, and thus merely advisory, ruling should be avoided."); *In re Refco Cap. Markets, Ltd. Brokerage Customer Sec. Litig.*, No. 06 CIV. 643 (GEL), 2008 WL 4962985, at *5 (S.D.N.Y. Nov. 20, 2008), *aff'd sub nom. Cap. Mgmt. Select Fund Ltd. v. Bennett*, 680 F.3d 214 (2d Cir. 2012) ("However, this request amounts to a demand for an advisory ruling as to the effect of an entirely hypothetical future pleading that might be asserted given the occurrence of contingent future events."); *M.K. ex rel. Mrs. K. v. Sergi*, 554 F. Supp. 2d 233, 242 (D. Conn. 2008) ("The Court again declines to provide an advisory ruling on a matter that is not yet ripe."); and *Yokohama Rubber Co. LTD v. Stamford Tyres Int'l PTE LTD*, No. SA-CV-0700010-CJCMGLX, 2008 WL 11342955, at *2 (C.D. Cal. Feb. 19, 2008) ("The Court will not issue an advisory ruling on a theoretical affirmative defense that may not actually be asserted.").

The government's overreaching extends to areas that cannot be anticipated prior to witness testimony, and the trial court's power to limit (or not limit) cross-examination is often best exercised after hearing the direct testimony of the witnesses. *United States v. Evanchik*, 413 F.2d 950, 953 (2d Cir. 1969); *United States v. Crisona*, 416 F.2d 107, 117 (2d Cir. 1969), *cert. denied,* 397 U.S. 961 (1970); *United States v. Cacchillo*, 416 F.2d 231, 234 (2d Cir. 1969).

### C.   The Court Should Reject the Government's Attempts to Preview any Defense Case or Cross Examination

Unless and until the prosecution has established its prima facie case, the defendant "is not called upon to determine whether to produce documents and material normally privileged. It imposes a price on the exercise of a constitutional right to require a pre-trial decision of the trial tactics which are normally determined by a defense lawyer following the completion of the prima facie case." *United States v. Fratello*, 44 F.R.D. 444, 452 (S.D.N.Y. 1968).  Moreover, the decision to prosecute someone criminally carries with it certain consequences:

> Under our constitutional system, a criminal defendant—need not do anything at all to defend himself, and certainly he cannot be required to help convict himself. Rather he has an absolute, unqualified right to compel the State to investigate its own case, find its own witnesses, prove its own facts, and convince the jury through its own resources. Throughout the process the defendant has a fundamental right to remain silent, in effect challenging the State at every point to: "Prove it!"

*United States v. Wilkerson*, 388 F. Supp. 3d 969, 972 (E.D. Tenn. 2019) (quoting *Williams v. Florida*, 399 U.S. 78, 112  (1970) (Black, J., dissenting)).

Much of the government's argument is directed at causing the defense to provide a preview of its strategy and the substance of defense cross examination which should be rejected by the Court.

### I.   THE GOVERNMENT'S PSEUDONYM TACTIC IS UNNECESSARY, UNWORKABLE, AND UNCONSTITUTIONAL IN THIS CASE

The government proposes various false or partial names for some of the accusers and witnesses. The request is not supported by any factual declaration. No evidence exists suggesting that any witness has been or would be threatened by Ms. Maxwell. None of the witnesses are minors. ████████████████████████████

████████████████████████████████

████████████████████████████████





















███████████████████████████████████████████████████

**B.   The Government Has Failed to Carry its Burden to Establish the Extraordinary Need to Use Fake Names**

The government's motion to use false names and suppress evidence from the public falls short in both evidence and analysis. Other than conclusory arguments by lawyers, the motion contains no facts supporting any of the claims related to future reputational harm or embarrassment. As the proponent of this extraordinary measure, the government cannot simply hypothesize that, as to adult women ████████████████████████████ ████████████████████████████████████████████████, the use of false names here will "protect [their] well-being, prevent undue embarrassment and other adverse consequences, including loss of employment, and prevent the victims from being harassed by the press and others." Mot. at 10.  It is the government's burden to establish that, ████████████████████████████████████████████████████████ ████, some reason exists to proceed by pseudonym. That "burden is not, of course, discharged by mere conclusory or *ipse dixit* assertions, for any such rule would foreclose meaningful inquiry" into the issue.  *In re Bonanno*, 344 F.2d 830, 833 (2d Cir. 1965).

────────────────────────

███████████████████████████████████████████████████

The movant bears the burden of proof to show factors that outweigh the ordinary presumption of judicial openness. *Doe v. Cook Cty., Illinois*, No. 1:20-CV-5832, 2021 WL 2258313, at *3 (N.D. Ill. June 3, 2021). And, in the context of maintaining an alleged victim's anonymity for the types of reasons proffered by the government, "conclusory statements are of limited utility." *Rapp v. Fowler*, No. 20-CV-9586 (LAK), 2021 WL 1738349, at *6 (S.D.N.Y. May 3, 2021). Even if the government's motion was supported by *any* evidence, "claims of public humiliation and embarrassment" due to "significant media attention. . . are not sufficient grounds for allowing" an accuser to proceed anonymously. " *Doe v. Shakur*, 164 F.R.D. 359, 361-62 (S.D.N.Y. 1996) (denying motion to proceed by pseudonym brought by woman who alleged that rapper Tupac Shakur assaulted her despite the media attention the case likely was to attract); *see also Doe v. Weinstein*, 484 F. Supp. 3d 90, 95 (S.D.N.Y. 2020) (denying motion to proceed by pseudonym brought by woman who alleged that movie producer Harvey Weinstein assaulted her despite that Weinstein's infamy was likely to cause significant media attention); *see also People v. Harvey Weinstein,* Indictment Nos. 02335/2018 and 2673/19 (N.Y. Sup. Ct.)

████████████████████████████████████████████████████████████

With no analysis relating to the facts of this case, the government has cobbled together a variety of cases holding that under certain limited circumstances the identity of alleged sex assault victims may be publicly suppressed. Generally, these cases fall into a few overlapping categories: ██████████████████████████████████████████████



[17] (2) alleged minor victims who are truly minors at the time of their testimony[18]; and (3) alleged victims who demonstrated legitimate safety concerns.[19]

---

[18] Mot. at 7 *United States v. Corley*, No. 13-CR-48 (AJN), 2016 WL 9022508, at *1 (S.D.N.Y. Jan. 15, 2016)(minor victim after trial).

[19] Mot. at 5, *United States v. Marti*, 421 F.2d 1263, 1265 (2d Cir. 1970)(The government claims this case involved the identity of the witness, which is not true. The only issue was the address of the witness, "Pelletier" identified in the opinion: "Since counsel could not insure that Pelletier or his family would not be harassed, it was perhaps not unreasonable for them to view as too costly the court's condition on allowing Pelletier to answer." *Id*.); *United States v. Urena*, 8 F. Supp. 3d 568 (S.D.N.Y. 2014)(allegations of racketeering, murder, and narcotics trafficking identity of officers suppressed); *United States v. Cavallaro*, 553 F.2d 300, 304 (2d Cir. 1977)(kidnapping, witness was threatened and was in witness protection program-only address of witness, not identity was restricted); Mot. at 7, *United States v. Dan Zhong*, No. 16-CR-614 (DLI), 2018 WL 6173430, at *1 (E.D.N.Y. Nov. 26, 2018)(victims of the alleged forced labor conspiracy-concerns for safety)



**2.**



**D.** ████████████████████████

The events that are the subject matter of the S2 Indictment are alleged to have occurred

decades ago. Thus, the witnesses are adults with established lives and careers. ████████████

████████████████████████████████████████████████████

Accordingly, cases involving actual minors and the reasons for shielding their names in sex

assault cases are not present here.

**E.   No Legitimate Safety Concerns are Present**

Another reason that some courts have agreed to allow the use of false names is where the

witness has a legitimate safety concern. None has been articulated here. Ms. Maxwell has never

interacted with these witnesses, nor has she threatened them.

**F.** ███████████████████████████████████████████**and Any Reference to Her Should Be Excluded -- Eliminating the Need for a Pseudonym or Other Artifice**

Apparently, the government contends that ████████████████████was induced to perform sexual acts by ████████████████████████. █████████████ ████████████████████████████who has never met, spoken to, or identified Ms. Maxwell. Because this potential witness was only recently disclosed, investigation into her background is ongoing and Ms. Maxwell will need to supplement this response. However, the government has not made any compelling factual showing about why secrecy is necessary here.

**G.** ███████████████████████████████████████**, Hiding Their Identities and Those of Related Witnesses Serves No Legitimate Purpose**

The government also requests that the identities of various witnesses, ████████████ ████████, also be shielded form the public because, according to the government, revealing the identity of the witness will reveal the identity of the accuser. As noted *supra*, ████████████ ████████████████████████████████████ ████████████████████████████ Given these facts, pseudonyms for the witnesses is a futile gesture.

**H.   The Use of Fake Names is Unfairly Prejudicial to Ms. Maxwell**

"Cross-examination of a witness is a matter of right."  Permissible purposes of cross-examination are that the witness may be identified in her community so that independent testimony may be sought and offered of her reputation for veracity in her own neighborhood, that the jury may interpret the testimony by knowledge of the witness's environment, and that facts may be brought out tending to discredit the witness by showing that her testimony was untrue or biased.  *Alford v. United States*, 282 U.S. 687, 691–92 (1931).  The Confrontation Clause of the

Sixth Amendment guarantees the right of an accused in a criminal prosecution to be confronted with the witnesses against her.  The right to confront means more than being allowed to confront the witness physically. The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination.  *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986).

Here, the government seeks to strip Ms. Maxwell of her right to confront the witnesses. The identity, occupations, and backgrounds of the accusers is material and relevant to the defense of this case for many reasons. First, ████████████████████████████ .  A jury should be able to evaluate the testimony knowing that ██████████████████████ ████████████████████████████████████████████████████████ ███████████████████████████ including when the allegations may or may not have occurred, whether any action attributed to Ms. Maxwell could be considered "grooming," and the resources available to the accusers at any point in time. ████████████████ ████████████████████████████████████████

████████ Each of these items of cross-examination will further expose the identities of the witness.

████████████████ background and circumstances are also relevant. ████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████████

████████ Being part of the government's case here obviated any need for actual proof to the fund.

The identity of the lawyers for the accusers may also be the subject of cross examination. The lawyers for the accusers have cooperated and shared information with each other and the government for years. ███████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████

Substantial impeachment evidence exists as to ████████████ under her real name, not a pseudonym. Ms. Maxwell should not be forced to compromise the full effect of this evidence by use of a first name only.

The government's proposal also creates substantial possibility for confusion. ██████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████ Given the age of the  allegations and the potential for confusion by the witnesses the use of first names or fake names is untenable.

Should the Court grant the government's request it will also be confusing, and impossible to neutrally explain to the jury why some accusers are publicly identified by their real names while others are not. Any explanation will be prejudicial to Ms. Maxwell.

████████████████████████████████████████████ here is no legitimate reason for fake names. The request by the government is tactical. Having the court instruct the jury that, as a result of "privacy" or "safety" concerns, certain accusers or witnesses are being shielded affords the witness Court-sanctioned sympathy and credibility at Ms. Maxwell's expense. To be clear, any accuser who testifies that Ms. Maxwell participated in sex abuse or sex trafficking is not telling the truth. Anonymizing false statements allows additional freedom to fabricate and impede potential witnesses from coming forward with countervailing testimony.

22

## I.   SUPPRESSION OF THE EXHIBITS IS CONTRARY TO WELL-ESTABLISHED SECOND CIRCUIT LAW

At this point, everyone associated with this litigation knows the definition of a "judicial document."  In this Circuit, "there is a presumption in favor of public inspection and copying of any item entered into evidence at a public session of a trial." *Application of Nat'l Broad. Co., Inc.,* 635 F.2d 945, 952 (2d Cir. 1980). Moreover, after "the evidence has become known to the members of the public, including representatives of the press, through their attendance at a public session of court, it would take the most extraordinary circumstances to justify restrictions on the opportunity of those not physically in attendance at the courtroom to see and hear the evidence, when it is in a form that readily permits sight and sound reproduction." *Id.*  Where the requested documents were introduced at trial, the strong weight to be accorded the public right of access to judicial documents was largely derived from the role those documents played in determining litigants' substantive rights -- conduct at the heart of Article III -- and from the need for public monitoring of that conduct. *United States v. Graham*, 257 F.3d 143, 151 (2d Cir. 2001).

Suppression of any exhibit that contains an accuser's name in this case is doubly problematic -- many of the anticipated exhibits are "judicial documents" from other proceedings that have previously been made public or documents already accessible by the public. There is nothing confidential about the exhibits and neither the exhibits nor the names of the witnesses should be redacted or suppressed.

## II.   PRE-TRIAL RULING ON "PRIOR CONSISTENT STATEMENTS" INAPPROPRIATE

The government seeks a pre-trial ruling that certain unspecified "prior consistent statements" of the accusers will be admissible at trial if the defense "challenges the credibility of the testimony" of the accusers in some unspecified way.  Mot. at 17. Under the government's apparent view, *any* credibility challenge will permit *any* prior statement of the government's

23

choosing to be admitted, in any quantity or as to any topic.  That's not the law.  Because a number of foundational prerequisites must be satisfied prior to determining that any given "prior statement" is admissible, the government's request for a pre-trial ruling on prior consistent statements calls for an inappropriate advisory opinion.  Not one of the cases cited by the government in its Motion concerned a *pretrial* ruling as to the admissibility of a prior consistent statement, and with good reason.  If the government had wanted the Court to rule pretrial on the admissibility of prior consistent statements, it could have told the Court exactly which statements they will seek to admit, the circumstances of those prior statements, whether they are in fact consistent with specific anticipated trial testimony, and whether the other foundational prerequisites, including Rule 403, will be satisfied and how.  Having failed to provide the Court with these particulars, the government's motion *in limine* should be denied.

### A.  The 2014 Amendments Did Not Change the Grounds for Which Prior Consistent Statements May Be Admitted

First, the 2014 Amendments were not nearly as ground-breaking as the Motion suggests. The Amendments did not, contrary to the government's implication, change the *grounds* for admissibility of prior consistent statements.  *See* Mot. at 17-18.  According to the Advisory Committee Notes:

> "The [2014] amendment does not change the traditional and well-accepted limits on bringing prior consistent statements before the factfinder for credibility purposes. It does not allow impermissible bolstering of a witness.... The amendment does not make any consistent statement admissible that was not admissible previously — the only difference is that prior consistent statements otherwise admissible for rehabilitation are now admissible substantively as well."

As the government correctly notes, prior to 2014 the Second Circuit, like many other circuits, admitted prior consistent statements "outside of the context of Rule 801(d)(1)(B) in order to rehabilitate a witness after certain attacks on credibility."  Mot. at 18 (citing *United States v. Pierre*, 781 F.2d 329, 333 (2d Cir. 1986)).  The effect of the 2014 Amendment then, as

the Second Court explained, was to allow for such statements to be admitted "substantively as well," rather than as non-substantive rehabilitation.  *See United States v. Flores*, 945 F.3d 687, 705-06 (2d. Cir. 2019) (amendment "*extend[s] substantive effect* to consistent statements that rebut other attacks on a witness – such as the charges of inconsistency or *faulty memory*") (emphasis in original).  Thus, consistent with *Pierre* and other pre-2014 cases, prior consistent statements may be admissible to rehabilitate a witness or to explain a faulty memory, and any such evidence will now be admitted substantively, but the limits on those prior methods of admitting prior consistent statements for rehabilitation remain applicable post-2014.

### B.   Substantial Limits Remain on Admissibility of Prior Consistent Statements

The question at trial will be <u>which</u> of the supposedly prior consistent statements are admissible and for what purpose.  On that question, the government is silent.  *See* Mot. at 19 (government "intends to call a number of witnesses to introduce *certain* of the Minor Victims' prior consistent statements to witnesses about their experiences with the defendant and Epstein") (emphasis added).  By not specifying in their Motion which statements they seek to introduce or the specific purposes for which they will move for admission, the government has deprived the defense of an opportunity to challenge the statements' admissibility or for the Court to rule on the admissibility pre-trial. Rule 801(d)(1)(B)'s amendment in 2014 did not alter the landscape so much that *any* attack on the accusers' credibility will allow *any* prior consistent statement. Important limits remain on the admissibility of prior consistent statements.

If the government moves to admit particular statements to rebut a charge of recent fabrication or improper motive under Rule 801(d)(1)(B)(i), as the Motion suggests they will, the evidentiary hurdles established by *Tome v. United States*, 513 U.S. 150, 156 (1995), still apply. In particular, the government must show proof that the motive for fabrication or improper purpose arose *after* the purported statement.  In *Tome*, the U.S. Supreme Court held that the

motive to fabricate arose immediately after the supposed child-abuse, and thus statements made to others, months or years later, were inadmissible under now-Rule 801(d)(1)(B)(i). The same is true here. The improper influence and motive to fabricate occurred, in several instances, many years ago, shortly after the purported abuse occurred, and before the recently-disclosed "consistent" statements. Wright & Miller, 30B Fed. Prac. & Proc. Evid. § 6753 Consistent Premotive Statements (2021 ed.) ("As in *Tome*, prior consistent statements will frequently be tainted by the same alleged motive to lie that is claimed to impugn the witness' trial testimony. If so, Rule 801(d)(1)(B)(i) does not permit their introduction. This result has favorable policy implications. As *Tome* stresses, the general exclusion of prior consistent statements ensures that 'the whole emphasis of the trial' does not "shift to the out-of-court statements" as opposed to 'the in-court ones.'").

If the government instead offers prior consistent statements to rehabilitate their accusers or explain their faulty memory under Rule 801(d)(1)(B)(ii), the "offered prior consistent statement must serve to rehabilitate the witness's credibility on the same ground upon which the witness's credibility was attacked." *United States. v. Karl Roye,* Crim. No. 3:15-cr-29 (JBA), 2016 WL 4147133 at *1 (D. Conn. Aug. 4, 2016) (citing 1 McCormick On Evid. § 47 (7th ed.) ("The general test of admissibility is whether evidence of the witness's ... consistent statements is logically relevant to explain the impeaching fact. The rehabilitating facts must meet the impeachment with relative directness. The wall, attacked at one point, may not be fortified at another, distinct point.")). As was the case prior to the 2014 Amendments, "a prior consistent statement may only be used for rehabilitation "when the statement has a probative force bearing on credibility beyond merely showing repetition." *United States v. Pierre,* 781 F.2d 329, 333 (2d. Cir. 1986).

Finally, admissibility of the number and type of prior consistent statements still is guided by Rules 401 and 403, including whether the prior consistent statements are reliable, cumulative, or unfairly prejudicial; the Court may choose to exclude prior consistent statements when the quantity and type of prior consistent statements form the bulk of the government's case rather than the trial testimony of the witnesses.  *Tome v. United States*, 513 U.S. 150, 165 (1995)  ("If the Rule were to permit the introduction of prior statements as substantive evidence to rebut every implicit charge that a witness' in-court testimony results from recent fabrication or improper influence or motive, the whole emphasis of the trial could shift to the out-of-court statements, not the in-court ones."); Wright & Miller, *supra*, § 6754 ("The danger of substantive use of the prior statement remains on the unfair prejudice side of the ledger.").  "One thing the courts all agree on is that there is 'no rule admitting *all* prior consistent statements simply to bolster the credibility of a witness."  *Id.* (emphasis supplied).

As to introduction of these prior consistent statements through other witnesses, the Second Circuit is clear that "where the declarant has already testified and the prior consistent statement is proffered through the testimony of another witness, the Rule's 'subject to cross-examination' requirement is satisfied if the opposing party is not denied the opportunity to recall the declarant to the stand for cross-examination concerning the statement." *United States v. Caracappa*, 614 F.3d 30, 39 (2d Cir. 2010).  Thus, if the government elicits prior consistent statements from third-party witnesses, then they will be obliged to make the declarant-Accuser available for recall to be subjected to cross examination concerning those statements.

In sum, the Court's rulings regarding admissibility of prior consistent statements can only come at the time the government proffers them, explains the purpose for which they are offered (whether under subpart (i) or (ii) of Rule 801(d)(1)(B)) and clears the other evidentiary hurdles

for admissibility.  To the extent the government seeks a pretrial ruling that *all* prior consistent statements may be admitted after *any* attack on the accusers' credibility, this Court should deny such a request.

### III.  EVIDENCE AND ARGUMENT ABOUT PRIOR CHARGING DECISIONS AND THE COURSE OF PRIOR INVESTIGATIONS IS ADMISSIBLE

"The right to call witnesses in order to present a meaningful defense at a criminal trial is a fundamental constitutional right secured by both the Compulsory Process Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment, as well as by the Due Process Clause of the Fifth Amendment."  *United States v. Percoco*, 13 F.4th 158, 177 (2d Cir. 2021) (internal citations and quotation marks omitted).  "The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations.  The rights to confront and cross-examine witnesses and to call witnesses in one's own behalf have long been recognized as essential to due process."  *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973).

The government seeks to cripple Ms. Maxwell's ability to present a meaningful defense to the charges by trying to preclude evidence and argument that is relevant and admissible and central to Ms. Maxwell's defense.  The government argues that Ms. Maxwell should be precluded from offering evidence and argument concerning the following facts: (1) the United States Attorney's Office for the Southern District of Florida ("USAO-SDFL") entered into a Non-Prosecution Agreement ("NPA") with Jeffrey Epstein, which resolved the USAO-SDFL/Palm Beach FBI investigation into Epstein (the "Florida Investigation") in 2008; (2) the USAO-SDFL did not charge Ms. Maxwell in its proposed indictment and did not immunize her by name in the NPA; and (3) the United States Attorney's Office for the Southern District of New York ("USAO-SDNY") charged only Epstein in the first indictment in this case, and did

not charge Ms. Maxwell until later in its investigation (the "New York Investigation").  *See* Mot. at 24.  Contrary to the government's assertion, this evidence is directly relevant to, and probative of, issues of consequence in this case and is therefore admissible on several grounds.  Indeed, the government's motion seems more calculated to preclude evidence that may be embarrassing or reflect badly on the government, rather than evidence that may be inadmissible.

### A.   The NPA Is Admissible to Show the Bias and Interest of ███████████ ███████████

The government has missed a straightforward reason why the NPA is itself admissible: the terms of the NPA apply to ████████████████████████████ ███████████████—and it may therefore be used to show their bias and interest.

████████████████████████████

████████████████████████████████

███████████████████████████████

██████████████████████████████

██████   Like any witness subject to a cooperation agreement or immunity agreement, the defense is entitled to cross-examine ██████████████████████

██████████████████████████████

██████████████████████████████

████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████

The NPA also applies to ████████████ and can be used to show her financial interest. Under the terms of the NPA, Epstein was required to pay for a lawyer for all the individuals

whom the government identified as a victim of his offenses so that they could sue him for damages in civil lawsuits.  *See* NPA at 4. ███████████████ was one of those individuals.  The NPA further stipulated that Epstein could not contest his liability in those lawsuits and could not contest the amount of money damages as long as it was agreed upon by the parties.  *See id* ███████ ████████ sued Epstein under this provision of the NPA and eventually settled with him for ████████████████████████████████████  Accordingly, the NPA is relevant and admissible, and the defense is entitled to use it to cross-examin ███████████ about her financial interest.  *See United States v. Lester*, 248 F.2d 329, 334 (2d Cir. 1957) ("it is permissible to show [on cross-examination] that the witness is financially interested in the outcome of the litigation); *Crowe v. Bolduc*, 334 F.3d 124, 132 (1st Cir. 2003) (evidence that a trial witness has a financial incentive in the outcome of the trial is "classic evidence of bias, which is routinely permitted on cross-examination"); *United States v. Dees*, 34 F.3d 838, 844 (9th Cir. 1994) (the question of whether witness had financial interest in outcome of trial is "critical" to the jury's determination of credibility).

There is also little risk that the jury will be confused by the introduction of the NPA.  The Florida Investigation, which the NPA concluded, will already be a significant part of the government's case-in-chief.  It is clear from the government's witness list and exhibit list that it intends to call at least two members of the Palm Beach Police Department, ████████████ █████████████████, to introduce various items of evidence that were recovered from the search of Epstein's Palm Beach residence in October 2005.  These include numerous message pad slips as well as photographs and video of the exterior and interior of the Palm Beach residence.  *See* GX-1-A through GX-1-P; GX-2-A through GX-2-W; GX-3-A through GX-3-KK; GX-4-A through GX-4-K.; GX-201 through GX-296.

Accordingly, the Florida Investigation will already be a central part of the case presented to the jury.  It will not be confusing or distracting to elicit evidence of how that investigation concluded, as the government contends.  *See* Mot. at 27.  In fact, the opposite is true.  Without that evidence, the jury will be left to speculate how and when the Florida Investigation ended, and whether Ms. Maxwell was charged in connection with that investigation.  Accordingly, eliciting evidence of how the Florida Investigation ended, including who was (and was not) charged in the proposed indictment, and who was (and was not) immunized in the NPA, will be necessary to *avoid* jury confusion and speculation, as well as prejudice to Ms. Maxwell.

The government also suggests that introducing the NPA would require an extended "trial within a trial" concerning the history of its creation, which was the subject of the 290-page report from the Department of Justice Office of Professional Responsibility (the "OPR Report").  Mot. at 27-28.  Not so.  The defense has no interest in probing the minutiae of the circumstances surrounding the creation of the NPA.  It seems even less likely that the government would do so, given that the OPR Report found that the NPA was "flawed" and was extremely critical of how the U.S. Attorney for the Southern District of Florida, Alexander Acosta, handled the resolution of the investigation.  OPR Report at 284.  The risk of delay or juror confusion by putting the NPA at issue in the trial is therefore illusory.  It should not be excluded under Rule 403.[20]

---

[20] The NPA is also not hearsay.  It is an agreement that has independent legal significance and is a "verbal act" "containing legally operative language affecting the rights of the parties" that does not qualify as hearsay.  *Spencer v. City of New York*, No. 06 Civ. 2852 (KMW), 2011 WL 13257640, at *1 (S.D.N.Y. Jul. 5, 2011); *United States v. Martin*, No. 04 Cr. 1106 MCA, 2005 WL 8163890, at *5 (D.N.M. Apr. 11, 2005); Fed. R. Evid. 801(c), committee notes, subdivision (c).

**B.   Evidence and Argument About the NPA, Prior Charging Decisions, and the Death of Jeffrey Epstein Is Admissible to Challenge the Thoroughness and Good Faith of the New York Investigation**

### 1.   Applicable Law

The Supreme Court has recognized that it is entirely proper for the defense to explore and challenge "the thoroughness and even the good faith of the [government's] investigation." *Kyles v. Whitley*, 514 U.S. 419, 445 (1995).  For example, the defense may elicit evidence and argue that the government's disregard for inconsistencies in the evidence shows a willingness to accept allegations against the defendant without carefully and critically evaluating their veracity or seeking other corroborating evidence, which calls into question the integrity of the investigation. *Id*. at 445, 448 (the police's acceptance of main witness' statements, which were "replete with inconsistencies," revealed a "remarkably uncritical attitude" on the part of the police which "undermine[d] the … integrity of the investigation").  Similarly, the defense may attack the government's investigation for its poor quality and lack of thoroughness, including its failure to corroborate key witness testimony.  *See Bowen v. Maynard*, 799 F.2d 593, 613 (10th Cir. 1986).  For all of these reasons and others, the defense may "attack[] the reliability of the investigation" and even "the decision to charge the defendant."  *Kyles*, 514 U.S. at 446; *see also id*. (citing *Bowen,* 799 F.2d at 613 ("A common trial tactic of defense lawyers is to discredit the caliber of the investigation or the decision to charge the defendant[.]") and *Lindsey v. King*, 769 F.2d 1034, 1042 (5th Cir. 1985) (exculpatory evidence "carried within it the potential ... for the ... discrediting ... of the police methods employed in assembling the case")).

### 2.   Discussion

Here, the NPA, the government's prior charging decisions, and the death of Jeffrey Epstein are all relevant and admissible to allow Ms. Maxwell to challenge the "thoroughness"

and "good faith" of the New York investigation leading to the charges against her.  *Kyles,* 514

U.S. at 445.

It is clear from the documents produced by the government that the NPA was the reason

why the New York Investigation was opened in late 2018.  On a telephone call with the

prosecutors on February 11, 2021, former AUSA ██████████ confirmed that she met with

attorneys for some of Epstein's accusers on February 29, 2016, when she was the Project Safe

Childhood Coordinator at the USAO-SDNY, but ultimately did not open an investigation at that

time.  *See* Ex. G at SDNY_GM_02742887-91.  In late November 2018, however, Julie K. Brown

published a series of articles in the *Miami Herald* entitled "Perversion of Justice," which were

sharply critical of the NPA and the perceived leniency that Epstein received to resolve the

Florida Investigation.  ██████████ confirmed that she read the *Miami Herald* articles when they

came out and "was very disturbed to read about how the case was resolved in SDFL, which was

inconsistent with [her] assumptions when the case was presented by the attorneys in February

2016."  *Id.* at SDNY_GM_02742892.  ██████████ further stated that soon afterwards, she spoke

to prosecutors in the Public Corruption Unit, including some of the prosecutors on this case, and

discussed the *Miami Herald* articles and her February 29, 2016 meeting with the attorneys.  *See*

*id*.  Shortly after that, the New York Investigation was opened.

It is also clear from the documents produced by the government, that the government

initially focused its investigation on Epstein and did not begin to investigate Ms. Maxwell until

after Epstein died on August 10, 2019, roughly one month after he was arrested.  To give just

one example, the New York FBI did not speak to a single one of the four accusers in this case

until after Epstein's death. ██████████████████████████████████

██████████████████████████████████████████████

████████████████████████ With Epstein dead, the media focus shifted immediately to Ms. Maxwell who was vilified as Epstein's principal accomplice.  In addition, Epstein's accusers were extremely upset, having been denied the opportunity to see Epstein face the allegations against him in open court.  Then-Attorney General William Barr publicly vowed that "[a]ny co-conspirators should not rest easy.  The victims deserve justice, and we will ensure they get it."[21] Thereafter, in announcing the arrest of Ghislaine Maxwell at a choreographed press conference on July 2, 2020, Acting United States Attorney Audrey Strauss boldly announced: "This case against Ghislaine Maxwell is the prequel to the earlier case we brought against Jeffrey Epstein."  *See* https://youtu.be/hGAsZthBKCE.

The defense is entitled to elicit this evidence, as well as evidence of the public outcry and media scrutiny that followed the *Miami Herald* articles and Epstein's death, to argue that the government initially focused the New York investigation on Epstein and charged only him in the initial July 2, 2019 indictment in order to rectify the perceived injustice that the NPA was a "sweetheart deal" for Epstein.  When Epstein died, however, the government had to scramble to quickly build a case against his purported co-conspirators, including Ms. Maxwell.  The defense is further entitled to argue that the public pressure to charge Epstein's co-conspirators and the attendant focus on Ms. Maxwell caused the government to engage in a hasty and sloppy investigation in which they ignored inconsistencies in the evidence, accepted the witness' statements at face value without testing them or verifying them with corroborating evidence, and generally exhibited a "remarkably uncritical attitude" to the evidence against Ms. Maxwell. *Kyles* at 445, 448 (police's acceptance of main witness' statements, which were "replete with

---

[21] 8/12/2019 Remarks of Attorney General William Barr to the Fraternal Order of Police (New Orleans, LA, Aug. 12, 2019) available at https://www.justice.gov/opa/speech/attorney-general-william-p-barr-delivers-remarks-grand-lodge-fraternal-order-polices-64th.

inconsistencies," revealed a "remarkably uncritical attitude" on the part of the police which "undermined the … integrity of the investigation").

Ms. Maxwell cannot pursue this legitimate line of argument without eliciting evidence of the NPA, the government's decision not to charge her in the initial 2019 indictment, and the death of Epstein.  Accordingly, evidence and argument related to these topics is highly relevant and admissible.  *See id.* at 445-49; *Bowen,* 799 F.2d at 613; *Lindsey*, 769 F.2d at 1042.  The probative value of this evidence is also not substantially outweighed by the danger of jury confusion.  Fed. R. Evid. 403.  The story of how the New York investigation progressed from its opening due to the *Miami Herald* articles that criticized the Florida Investigation and the NPA, to the indictment of Epstein in July 2019 and his death in August 2019, and finally to the indictment of Ms. Maxwell in June 2020 is simple and straightforward.  The government has a dim view of the average juror's intelligence if it does not think the jury can follow that there were two separate investigations—one in Florida that ended in 2008 with the NPA, and one in New York that led to charges against Epstein in 2019 and Ms. Maxwell in 2020.  *See* Mot. at 27-28.  That is not hard to follow.[22]  Accordingly, this evidence should not be excluded because of an unfounded concern about juror confusion.[23]

---

[22] It is particularly hypocritical of the government to argue that a discussion of the various investigations would create an "extensive side-show" because the investigations "reach[] back 20 years."  Mot. at 27.  If the government does not want a discussion about events that took place over 20 years ago, the solution is simple: don't charge a case where the alleged conduct is over 20 years old.

[23] The defense can also elicit this evidence without relying on hearsay.  For example, the New York case agents could testify to the fact that Epstein alone was charged in the 2019 indictment, and the fact of his death, both of which are not hearsay.  Moreover, we do not intend to ask the New York case agents *why* Ms. Maxwell was not charged in the 2019 indictment.  It is premature, however, to litigate any hearsay issues at this stage.  Those issues should await trial.

35

**C. Evidence and Argument About the Fact that Ms. Maxwell Was Not Charged by the USAO-SDFL Is Relevant to ▮▮▮▮▮▮▮▮ Credibility**

**1. Applicable Law**

The Second Circuit has rejected the position that evidence of government charging decisions is never admissible by a criminal defendant. *United States v. White*, 692 F.3d 235, 246 (2d Cir. 2012) ("We hold … that the government's charging decisions may be proper subjects for cross-examination and argument if otherwise admissible."). "Such an all or nothing approach undermines the longstanding principle that 'the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense.'" *Id*. (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (internal quotation marks omitted)). This is particularly true when the evidence "is central to the defendant's claim of innocence." *Id*. (categorical exclusion of government charging decisions "infringe[s] upon a weighty interest of the accused" and threatens "the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing" (internal citations omitted)).

In determining the admissibility of such evidence, a court must evaluate its "relevance and probative value." *Id*. A court may not exclude evidence of government charging decisions if it is relevant, admissible, and its probative value satisfies Rule 403. *Id*. at 246-48. The standard for relevance is "very low." *Id*. (quoting *United States v. Al-Moayad*, 545 F.3d 139, 176 (2d Cir. 2008)). Evidence is relevant when "it has any tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the action." Fed. R. Evid. 401. Moreover, Rule 403 "favors admissibility." *White*, 692 F.3d at 247.

36

"[E]vidence is only excluded when its probative value is *substantially outweighed* by the prejudice of jury confusion." *Id*. (emphasis in original).[24]

### 2. Discussion

After a roughly two-year investigation during which the Palm Beach FBI interviewed dozens of alleged victims of Epstein—*none* of whom implicated Ms. Maxwell, *including* ▮▮▮▮▮▮▮▮▮▮ the USAO-SDFL did not charge Ms. Maxwell. Instead, the USAO-SDFL charged Epstein ▮▮▮▮▮▮▮▮, whom ▮▮▮▮▮▮▮ had accused of facilitating Epstein's alleged sex trafficking. The fact that ▮▮▮▮▮▮▮ first implicated ▮▮▮▮▮▮ and only later implicated Ms. Maxwell is directly relevant to the credibility of ▮▮▮▮▮▮ and the government's acceptance of her later testimony against Ms. Maxwell in 2020, which forms the basis of the sex trafficking offenses charged in Counts Five and Six of the S2 Indictment. *See United States v. Borrero*, No. 13 Cr. 58 (KBF), 2013 WL 6020773, at *2 (S.D.N.Y. Nov. 1, 2013) (government's decision to charge two different people for the same crime on two different occasions based on the testimony of the same cooperating witness is relevant "to the witness's credibility" and "the government's view of the [witness's] credibility").

Counts Five and Six of the S2 Indictment charge Ms. Maxwell with conspiracy to commit sex trafficking and a substantive sex trafficking offense for allegedly recruiting or obtaining ▮▮▮▮▮▮▮ to engage in commercial sex acts with Epstein. *See* S2 Ind. (Dkt. 187) ¶¶ 22-27. But in her first and only interview with the Palm Beach FBI on August 7, 2007,

---

[24] The government relegates its discussion of *White* to a footnote in its Applicable Law section, even though it is the controlling Second Circuit precedent on this issue. *See* Gov't Mot.at 23 n.8. Instead, the government cites several cases that were decided before *White* rejected the categorical approach to precluding evidence of prior charging decisions. *See id*. at 22-23 (citing *United States v. Boyle*, No. 08 Cr. 523 (CM), 2009 WL 5178525 (S.D.N.Y. Dec. 23, 2009); *United States v. Rodriguez*, 582 F. Supp. 2d 486 (S.D.N.Y. 2008); and *United States v. Carneglia*, No. 08 Cr. 76 (JBW), 2009 WL 185725 (E.D.N.Y. Jan. 27, 2009). The Court should give these cases little or no weight.

██████████ *never once* mentioned Ms. Maxwell.[25]  *See* 3505-005.  Instead, she told Special

Agent ███████████ that (1) ████████████████ would call her on the phone from

New York to schedule the massages, (2) ████████ led her upstairs to the massage room and

prepared the massage table, (3) ████████ called her on one occasion to tell her that Epstein had

bought her concert tickets, and (4) ████████ took nude photographs of her for Epstein when she

was 16 years old.  *See* 3505-005 at 2-4.  On the basis of ████████████ testimony and other

related documentary evidence, the USAO-SDFL charged Epstein ██████████, and not Ms.

Maxwell, with a substantive count of sex trafficking in a proposed indictment that Special Agent

██████████ presented to the grand jury on March 18, 2008.  *See* 3505-018 at 28 (Count Two of

the proposed SDFL indictment alleged that "Jeffrey Epstein ██████████ procured

[Accuser-4] to engage in commercial sex acts knowing that she was under 18").

████████████████ 2007 testimony stands in stark contrast to her first interview with the

New York FBI almost thirteen years later, on July 17, 2020, when she specifically recalled that

on her first visit to the residence she was greeted at the door by "Ghislaine Maxwell" and

recounted what Ms. Maxwell said to her.  *See* 3505-068 at 1-2.  ████████████ further described

seeing Ms. Maxwell multiple times at the residence and having "multiple conversations" with

her about sexual topics, and claimed, among other things, that Ms. Maxwell called her to

schedule massages, paid her for the massages on a few occasions, sent her gifts, and offered to

help her get a passport so that she could travel with Epstein.  *See id.* at 2-4.  In subsequent

---

[25] ██████████ made a passing reference to "an older lady with short black hair and an unknown accent" whom she saw at the Palm Beach residence the first time she went.  3505-005 at 1.  But even assuming, *arguendo*, that Accuser-4 was referring to Ms. Maxwell (which we do not concede), she did not implicate Ms. Maxwell in Epstein's alleged sex trafficking in any way.

interviews, ███████████ went even further, claiming that Ms. Maxwell saw her naked several times and even fondled ██████████ breasts on one occasion. *See* 3505-074 at 3.

Count Two of the proposed SDFL indictment is the same as Count Six of the S2 Indictment and it is based on the exact same evidence that the government proposes to introduce to support Count Six; namely, the testimony of ██████████ and related documentary evidence. *See* GX-1-A through GX-1-P; GX-2-A through GX-2-W; GX-3-A through GX-3-KK; GX-4-A through GX-4-K (message pad slips); GX-551 (██████████ phone records); GX-801-803 (FedEx records). The only difference is that ██████████ changed her story and accused Ms. Maxwell thirteen years later when she was interviewed by the New York FBI. The fact that ██ ██████████ testimony led to two different charging decisions on two different occasions is relevant to her credibility and the government's acceptance of her differing testimony. The decision by the USAO-SDFL not to charge Ms. Maxwell in 2008 is therefore relevant and admissible. *See Borrero*, 2013 WL 6020773, at *2.

This evidence could be elicited without hearsay. Special Agent ██████████ had first-hand knowledge that Ms. Maxwell was not charged in the proposed SDFL indictment because she presented the indictment to the grand jury. *See* 3505-018 at 28:5-8. And it should not be excluded under Rule 403. The viability of Counts Five and Six of the S2 Indictment rise and fall on the credibility of ██████████. Moreover, the government's decision to credit ██ ██████████ 2020 testimony, despite its obvious inconsistencies with her 2007 testimony, goes to the thoroughness and good faith of the New York investigation. The fact that Ms. Maxwell was not charged in 2008 is highly probative of both issues and is not substantially outweighed by the risk of juror confusion or speculation. It is therefore admissible.

### D.   Evidence and Argument About the Scope, Timeline, and Investigative Steps of Prior Investigations Is Admissible

The government's motion to preclude the defense from eliciting evidence about the investigative steps taken in the Florida Investigation and the New York Investigation, and the duration of those investigations (*see* Mot. at 29-32), is entirely off base and breathtaking in the scope of what it seeks to restrict.  It is as if the government will not tolerate any questioning about its investigations at all.  That is certainly not the law.  For example, the decision to interview a witness is an investigative step.  Does the government really mean to suggest that questioning the case agents about who they spoke to and when they spoke to them is irrelevant?  Similarly, the decision to issue a subpoena for documents is an investigative step.  Does the government really mean to suggest that questioning the case agents about which documents they subpoenaed and when they subpoenaed them is irrelevant?  Furthermore, the government will seek to offer numerous items of evidence collected in both the Florida and New York Investigations.  Does the government really mean to suggest that questioning the case agents about when those investigations began and ended is irrelevant?  Surely not.  Such questions are entirely appropriate and will yield relevant, admissible evidence.  The government cannot possibly try to prevent the defense from asking these types of valid questions or from calling the case agents as witnesses to answer them.

The government seems to be conflating "investigative steps" with "investigative techniques," even though the defense's *Touhy* letter does not request testimony from the case agents about "investigative techniques."  *See* Mot., Ex. A (requesting testimony "concerning the scope, timeline, and resolution of the investigation, as well as the various investigative steps taken by the agents").  The defense is aware of the rule that it may comment on the absence of proof in the record, but it is not permitted to argue that the government should have used any

particular "investigative technique" to prepare its case.  *See United States v. Saldarriaga*, 204

F.3d 50, 52-53 (2d Cir. 2000); *United States v. Ngono*, 801 F. App'x 19, 24 (2d Cir. 2020)

(summary order); *United States v. Londono*, 175 F. App'x 370, 375 (2d Cir. 2006) (summary

order); *United States v. Duncan*, No. 18 Cr. 289 (SHS), 2019 WL 2210663, at *3 (S.D.N.Y. May

22, 2019).  We do not intend to violate that rule.

Nevertheless, conducting a shoddy investigation is not an "investigative technique."  As

previously discussed, the defense is entitled to elicit evidence and argument challenging the

"thoroughness and even the good faith of the [government's] investigation."  *Kyles,* 514 U.S. at

445; *see also id*. at 446 (citing *Bowen,* 799 F.2d at 613 ("A common trial tactic of defense

lawyers is to discredit the caliber of the investigation or the decision to charge the defendant[.]")

and *Lindsey*, 769 F.2d at 1042 (exculpatory evidence "carried within it the potential ... for the ...

discrediting ... of the police methods employed in assembling the case")).

As the people with the most knowledge of the scope and progress of the investigations,

the case agents are the most appropriate witnesses for the defense to call to explore these topics.

And because the government has assiduously avoided calling them in its case-in-chief, the

defense must call them in its own case.  It is meritless for the government, at this stage of the

case, to try to preclude entire topics or areas of questioning, or to preclude the defense from

calling the case agents at all.  The Court should not permit this.  If particular questions to the

case agents are objectionable, those objections can be addressed at trial.

### E.   A Proffer Regarding the Basis for the Case Agents' Testimony is Unnecessary and Unwarranted

The government asserts that the defense should be precluded from calling the case agents

as witnesses unless and until it provides a proffer identifying a "proper basis for their testimony."

Gov't Mot. at 32-33.  The defense already did so in its *Touhy* letter and the government has cited

no authority indicating that more is required.  Indeed, the government's demand for a proffer is nothing more than an attempt to force the defense to spell out exactly what it plans to ask the case agents and reveal its defense strategy.  The Court should reject this demand.

## IV.   THE GOVERNMENT'S MOTION TO PRECLUDE EVIDENCE OR ARGUMENT ABOUT ITS MOTIVES FOR PROSECUTING MS. MAXWELL IS MISGUIDED AND MERITLESS

The government moves to preclude the defense from eliciting evidence and argument "regarding the government's supposed motives for prosecuting Ms. Maxwell, including evidence of Jeffrey Epstein's 2019 death and the timing of charges against the defendant."  Mot. at 34. Once again, the government's motion reaches too far and should be denied.

First, as the government points out, challenges to the prosecutors' motives are typically brought by raising claims of "vindictive prosecution," "selective prosecution," or "outrageous government conduct," which must be resolved by the court, not the jury.  *See United States v. Regan*, 103 F.3d 1072, 1082 (2d Cir. 1997); *United States v. Farhane*, 634 F.3d 127, 167 (2d Cir. 2011).  But the defense is not raising any of those claims.  Simply arguing to the jury that the government substituted Ms. Maxwell for Jeffrey Epstein after his death does not imply that the prosecution was the result of the government's "animus toward the defendant" (vindictive prosecution), or was "motivated by a discriminatory purpose" (selective prosecution), or was so outrageous that "due process considerations" must bar the prosecution (outrageous government conduct).  *See United States v. Avenatti*, 433 F. Supp. 3d 552, 562-53 (S.D.N.Y. 2020); *United States v. Sanders*, 211 F.3d 711, 716-17 (2d Cir. 2000); *United States v. Cuervelo*, 949 F.2d 559, 565 (2d Cir. 1991).

Second, for the reasons set forth above, the defense is entitled to elicit evidence of Epstein's death and the timing of the charges against Ms. Maxwell to challenge the thoroughness and reliability of the government's investigation.  *Kyles,* 514 U.S. at 445-46; *Bowen,* 799 F.2d at

612-13; *Lindsey*, 769 F.2d at 1042.  Accordingly, this evidence does not impermissibly question the government's motives and should not be precluded.

## V.   A PRE-TRIAL BAN ON CHALLENGES TO THE CREDIBILITY OF NON-TESTIFYING WITNESSES IS UNSUPPORTED LEGALLY OR FACTUALLY

The government again refrains from telling the Court exactly what evidence it expects at trial, yet asks the defense to preview its possible cross-examination or defense-case evidence, in order both to circumvent the Rules of Criminal Procedure's guidelines and this Court's orders as to when the defense must disclose certain evidence.  What's more, the government gives only summary suggestions of what the evidence "might" be and then asks the Court to rule definitively that the defense is precluded from challenging that evidence via cross-examination or otherwise.  Because this Court cannot rule on the admissibility of impeachment evidence of a non-testifying witness unless and until the government actually elicits testimony concerning such a witness, this motion should be denied or deferred until the appropriate time at trial.

The government does a poor job of previewing exactly what statements it anticipates offering from others related to ██████████████████████████████████████ ███████████████   It says that "other witnesses are expected to testify about the activities" of those two non-testifying witnesses, "including [unspecified] statements by them," which statements according to the government "will not include any statements … offered for the truth of the matter asserted or under one of the other exceptions listed under Rule 806."  Mot. at 37-38. The government then gives two non-exclusive examples[26] but fails to elucidate what exactly the pertinent statements will be, to wit:

---

[26] The government does not give any examples pertaining to ███████████████████████████ and therefore it is wholly unclear what statements the government intends to elicit about her or for what purpose.  *See* Mot. at 37-38.

1.        ██████████████ **(Accuser 4) will testify that** ██████████ **(Accuser 5)**
**"recruited" her**.  Mot. at 38.  How?  What will ████████████ say that ████████████ said to her?
Is it, "I am here to 'recruit you' to a sex abuse ring founded by Jeffrey Epstein and Ghislaine
Maxwell, and Ghislaine Maxwell told me what to do, and I first went over there when I was
under 18."  Or will it simply be, "go over to Jeffrey Epstein's house and he will pay you $200 to
give a massage."  The answer to whether or not the "recruitment" statement is being offered for
the truth of the matter asserted, or is simply offered for the effect on the listener, can only be
determined at the time the statement is offered and depends very much on the content of the
purported statement.  At that time, the government either will or will not be successful in
overcoming a hearsay objection and the grounds for the objection; if it is subsequently admitted
under one of the exceptions listed under Rule 806, the credibility of the accuser-declarant will
become an issue.

2.        ████████████████ **will testify that she "personally observed the sexual abuse**
**of"** ██████████████.  Mot. at 38.  According to the government, this testimony will not include
any "hearsay statements" from ████████████.  But that assertion is suspect:  "Sexual abuse" is a
legal phrase.  In this case, it is asserted that the sexual contact was "sexual abuse" because the
participant (██████████████████) was underage at the time; indeed ████████████ says that
she saw ██████████ engage in seemingly consensual intercourse with Jeffrey Epstein and
outside the presence of Ghislaine Maxwell.  So mere observation would not tell ████████████
what she saw was "sexual abuse" unless ████████████ also said something about her age, and any
statement by ████████████ about her age at the time would be offered for the truth.  (████████████
was both below and above the age of consent during the period of the charged conspiracy; the
dates on which ████████████ supposedly observed anything will be hotly contested at trial.)  The

government has provided "notice" tha ██████████ was a "victim" in this case, and has disclosed

a number of exhibits related to her – school records (GX 781-783); employment records (GX

821-22), photo (GX 332).[27]  It is apparent that the government hopes to prove that ██████████

was a "victim" in the sense that she was underage when she had sex with Jeffrey Epstein, without

calling her as a witness in this case.  Again, if the government offers evidence that the sexual

contact observed by ██████████ between ██████████ and Mr. Epstein amounts to "sexual

abuse" because ██████████ was underage, then such testimony would open the door to the

mountains of evidence that tends to impeach that assertion. ████████████████████████

██████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████████

        Given the failure to specify the statements that will be elicited, the purposes for which

those statements qualify as non-hearsay, depriving the defense of an opportunity to brief whether

such statements open the door to credibility challenges of the accuser-declarants ██████████ and

██████████████, this Court should deny the motion.

---

[27] Tellingly, the government failed to provide an exhibit for ██████████ birth certificate, but did for ███
██████████.  *See* GX 11-15.

45

## VI.   CERTAIN EVIDENCE OR ARGUMENT THAT MINOR VICTIMS CONSENTED TO SEXUAL ABUSE MAY BE ADMISSIBLE.

The government seeks blanket preclusion of evidence or argument that the accusers "consented to sexual abuse." It bears noting that the Indictment does not charge sexual abuse. The charged offenses allege "sexual activity" (Counts One through Four) and "sex trafficking" (Counts Five and Six).

The age of consent for sexual contact purposes varies by jurisdiction. The offenses charged in the S2 Indictment allege sexual activity with minors and focus on age, rather than mental or physical incapacity.  Accordingly, to qualify as sexual activity with a minor, the statute must prohibit sexual acts based at least on age of the purported victim.  *See Esquival-Quintana v. Sessions,* 137 S. Ct. 1562 (2017). As the Supreme Court noted, "state criminal codes aid our interpretation of 'sexual abuse of a minor' by offering useful context." *Id*. at 1577 n.3. For purposes of sexual activity alleged in this case, the definition of "minor" varies among states and nations:  New York defines "minor" as a person under the age of 17[28]; Florida: under the age of 18[29]; United Kingdom: under the age of 16[30];  France: under the age of 15.[31]  New Mexico does not have a specific age of consent statute but criminalizes all sexual contact of a minor under the age of 13 when no coercion or force is involved.[32] In the context of the charged offense focusing

---

[28] NY Penal Law Ann. § 130.03(3)(a).

[29] Fla. Stat. § 794.05(1).  At the time of the charged offenses in Counts Five and Six, individuals under the age of 18 could be charges with prostitution.  In 2016, the law was changed, decriminalizing prostitution of by individuals under the age of 18.

[30] Sexual Offences Act, Chap. 44.

[31] Penal Code, Article 227-25.

[32] NM Stat. Ann. § 30-9-13(A)(1). New Mexico criminalizes sexual contact of minor on a child 13 to 18 years old when coercion is involved. § 30-9-12(A)(2).

solely on the age of the participant, the generic federal definition of minor requires that the age

of the alleged victim be the then-current age of consent in the jurisdiction where the sexual

activity was intended or did occur.

Where the ability or incapacity to consent to sexual activity is age-dependent, the proof

must satisfy the elements governed by the statute in effect at time and place where the alleged

sexual activity may occur. For each count in the Indictment, age is a predicate element which the

government must prove to bar the defense of consent. Counts Two and Four specify violations of

New York State Penal Law § 130.55, which criminalizes sexual contact with a person less than

17 years old.[33]  For Count Two, the government must prove that Ms. Maxwell knew that ███

███ was less than 17 years old.[34] For Count Four, the government must prove that ███████

was less than 17 years old during purported sexual activity.[35]  For Count Six, the government

must prove that Ms. Maxwell knew that ████████████ was under age 18.[36]

Counts One and Three charged conspiracies alleging conduct involving all four accusers

identified in the Indictment and multi-jurisdictional locations with varying local state laws.

Depending on the age of the accusers during the time frame of the conspiracy, consent may be an

---

[33] Section 130.55 – Sexual Abuse in the Third Degree – states in pertinent part:

> A person is guilty of sexual abuse in the third degree when her or she subjects another
> person to sexual contact without the latter's consent, except that in any prosecution under
> this section, it is an affirmative defense that (a) such other person's lack of consent was
> due solely to incapacity by reason of being less that seventeen years old.

Designated a B misdemeanor, the maximum penalty is "shall not exceed three months," (§70.15(2)), far
less than the16 months Maxwell has served in pretrial detention.

[34] *See* Government Proposed Request to Charge.

[35] *See* Government Proposed Request to Charge.

[36] See Government Proposed Request to Charge.

appropriate and viable defense. While the age of consent for Counts Five and Six is 18, at the

time of the alleged offense, individuals under the age of 18 could be charged with commission of

the crime of prostitution.[37]  At the time of the charged offenses, ███████████ was a co-

conspirator who committed crimes of prostitution chargeable under Florida law.  *See* Fla Stat.

§ 796.07 ("Prohibiting prostitution and related acts").[38]  In connection with Counts Five and Six,

it is appropriate to raise the defense of consent to engage in prosecution.

An additional problem with the government's *in limine* request is that it conflates two

very distinct and significant concepts:  consent by an accuser as an affirmative defense to alleged

unlawful sexual activity and consent to voluntary acts by an accuser.  As noted above, the age of

the alleged victim and the state in which any alleged act took place may implicate a consent

defense. Separately, however, the voluntary acts of an accuser are relevant evidence that is

---

[37] In October 2016, the Florida State Senate enacted House Bill 545, which decriminalized prosecution of minors found to be engaging in prostitution. Since 2016, Florida considers minors involved in prostitution victims rather than culprits.

[38] Fla. Stat.§ 796.07(2) sets out all unlawful acts chargeable as prostitution:
    a.  To own, establish, maintain, or operate any place, structure, building, or conveyance for the purpose of lewdness, assignation, or prostitution.
    b.  To offer, or to offer or agree to secure, another for the purpose of prostitution or for any other lewd or indecent act.
    c.  To receive, or to offer or agree to receive, any person into any place, structure, building, or conveyance for the purpose of prostitution, lewdness, or assignation, or to permit any person to remain there for such purpose.
    d.  To direct, take, or transport, or to offer or agree to direct, take, or transport, any person to any place, structure, or building, or to any other person, with knowledge or reasonable cause to believe that the purpose of such directing, taking, or transporting is prostitution, lewdness, or assignation.
    e.  To offer to commit, or to commit, or to engage in, prostitution, lewdness, or assignation.
    f.  To solicit, induce, entice, or procure another to commit prostitution, lewdness, or assignation.
    g.  To reside in, enter, or remain in, any place, structure, or building, or to enter or remain in any conveyance, for the purpose of prostitution, lewdness, or assignation.
    h.  To aid, abet, or participate in any of the acts or things enumerated in this subsection.
    i.  To purchase the services of any person engaged in prostitution.

admissible to demonstrate the lack of any intent or knowledge on the part of Ms. Maxwell. As with the other *in limine* requests, this evidence will need to be evaluated on a question by question basis and it is premature to issue blanket rulings as requested by the government.

This case poses multi-jurisdictional issues that invite various defenses. The government has elected to prosecute, federally, conduct that is quintessentially state-based, and it is bound by its choice. It has charged offenses associated with coercion, force and violence, when such conduct did not occur in this case. It has alleged violation of a statute enacted to combat human trafficking, conduct that does not exist in this case. The government has manipulated federal statutes to fit alleged conduct that is not normally prosecuted federally and seeks to preclude defenses responsive to the allegations in the Indictment. It is premature to constrain Ms. Maxwell's defense before trial. Ms. Maxwell reserves the right to present evidence and make argument on the issue of consent when and where appropriate.

## VII. UNFOUNDED REQUEST TO PRECLUDE EVIDENCE OF MS. MAXWELL'S GOOD ACTS SHOULD BE SUMMARILY DENIED

The government asks this Court to require that, before Ms. Maxwell refers to or offers evidence of her "absence when Epstein abused victims who are not part of the government's case-in-chief, . . . [she] explain the evidence she plans to offer and why such evidence would be admissible." Mot. at 44. According to the government, evidence that Ms. Maxwell was "absent" when Mr. Epstein allegedly abused certain individuals is actually inadmissible "good acts" evidence because the jury could use it *only* to conclude that Ms. Maxwell acted in conformity with the prior good acts. *Id.* The government's argument imagines a duty to provide notice where none exists, and it misunderstands what constitutes prior-act evidence and basic concepts of relevance in the context of a conspiracy where one actor denies knowledge of an illegal

49

purpose or agreement with any co-conspirator to facilitate an illegal objective. The ill-founded motion should be denied.

### A. The Government Cites No Authority for Requiring Pre-trial Notice of Such Evidence.

At the outset, this Court can deny the government's motion for a simple reason: There is no authority requiring Ms. Maxwell to provide the government with notice of the evidence she intends to offer at trial. To the contrary, when such notice is required, the Rules of Evidence or Procedure make the requirement express. Rule of Criminal Procedure 16(b), for example, imposes a duty on Ms. Maxwell to make certain disclosures, particularly as they regard expert witnesses and opinions. But the Rule does not require her to identify evidence of her "absence when Epstein abused victims who are not part of the government's case-in-chief" and then "explain the evidence she plans to offer and why such evidence would be admissible."

Nor does Rule of Evidence 404(b) require notice from the defendant. In fact, the government's invocation of Rule 404(b) actually undermines its motion. In a criminal case, that Rule imposes on the *government* a duty to provide advance notice of any other-acts evidence it desires to admit at trial. Fed. R. Evid. 404(b)(3).[39] The Rule *does not* impose a similar obligation on a defendant.

---

[39] The Rule says:

> In a criminal case, the *prosecutor* must:
>
> (A) provide reasonable notice of any such evidence that the prosecutor intends to offer at trial, so that the defendant has a fair opportunity to meet it;
>
> (B) articulate in the notice the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose; and
>
> (C) do so in writing before trial – or in any form during trial of the court, for good cause, excuses lack of pretrial notice.

Fed. R. Evid. 404(b)(3) (emphasis added).

Because nothing requires Ms. Maxwell to advise the government in advance of the evidence she intends to admit at trial or why that evidence is relevant, this Court should deny the government's motion. If Ms. Maxwell's attorneys have a good-faith belief that evidence will be admissible, they can refer to that evidence in opening statement. ABA Criminal Justice Standards, Defense Function, Standard 4-7.5(b) Opening Statement at Trial ("Defense counsel's opening statement at trial should be confined to a fair statement of the case from defense counsel's perspective, and discussion of evidence that defense counsel reasonably believes in good faith will be available, offered, and admitted."). When the defense offers evidence, the government can make any objections it thinks are appropriate, and this Court can rule on the objections in context. *See United States v. Rounds*, No. 10-CR-239S (1)(2)(3), 2015 WL 5918372, at *1 (W.D.N.Y. Oct. 9, 2015) ("Without hearing the evidence in context, this Court cannot enter a blanket pretrial ruling. The government's motion *in limine* is therefore denied as premature, without prejudice to the government raising this issue at an appropriate time during trial.").

### B. The Referenced Evidence Demonstrates that Jeffrey Epstein Committed Acts of Abuse -- Without Ms. Maxwell's Knowledge or Participation – May Be Relevant to Existence of Conspiracy or Knowledge of Its Illegal Objectives.

The government seeks to exclude evidence that "many victims who were sexually abused by Epstein…did not have personal interactions or dealings with the defendant, including during the time period of the charged conspiracy." Mot. at 42. The government characterizes this evidence as "good acts" of Ms. Maxwell (*id.* at 41-42); they are neither "good," nor Ms. Maxwell's "acts." Rather, relying on inapposite cases, the government seeks to exclude as "propensity" evidence the fact that Mr. Epstein sexually abused minors (other than the specified Accusers) *without Ms. Maxwell's knowledge and involvement*. The government conveniently overlooks that:

51

- the Indictment charged a conspiracy between Jeffrey Epstein and Ms. Maxwell during a discrete time period;

- the charged conspiracy encompasses females other than the four specified Accusers;

- the government's burden at trial will be to show both an agreement between Mr. Epstein and Ms. Maxwell to accomplish the specified illegal objectives;

- the government's burden at trial will also encompass proof beyond a reasonable doubt that Ms. Maxwell had knowledge of the conspiracies' illegal objectives.

Thus, evidence that Jeffrey Epstein acted alone, or with other co-conspirators, without the knowledge or participation of Ms. Maxwell may be admissible as direct evidence of Ms. Maxwell's lack of awareness of or participation in the charged conspiracies. For example, if the government attempts to prove up the conspiratorial agreement or the knowledge of the illegal objective based on a pattern and practice, then evidence that Epstein acted alone or without Ms. Maxwell's knowledge or participation may become relevant.

Each of the cases cited by the government is readily distinguishable. First, all but one of the cases dealt with specific "good" propensity evidence *of the defendant*, not the absence of a co-conspirator during "bad" acts by the defendant. *See United States v. Dawkins*, 999 F.3d 767 (2d Cir. 2021) (defendant – not a co-conspirator – proffered evidence that on other occasions he did not bribe other potential targets); *United States v. Scarpa*, 913 F.2d 993, 1011 (2d. Cir. 1990) (absence of defendants' discussions about drugs on single occasion not admissible to "disprove government's theory that the defendants congregated … to discuss the marijuana business"); *United States v. Chambers,* 800 F. App'x 43, 46 (2d. Cir. 2020) (summary order) (fact that defendant also ran a legitimate law practice not admissible to disprove he committed bad acts through illegal practice); *Boyce v. Weber*, 19 Civ. 3825 (JMF), 2021 WL 2821154, at *8 (S.D.N.Y. July 7, 2021) (defendant's access to other potential victims without engaging in abuse not admissible to establish innocence). Moreover, each of these cases had to do with tendering

evidence during trial; none stands for the specific relief requested by the government: that "before the Court permits the defense to offer evidence or make argument regarding other crimes that did not involve the defendant, the Court should require the defense to proffer the basis and relevance of that evidence." For the reasons discussed *supra* in subsection (A), there is nothing in the Federal Rules of Criminal Procedure that require the defense to disclose its argument or evidence pre-trial in the manner suggested by the government.

Indeed, the only case cited by the government which dealt with a motion in *limine*, Judge Matusumoto's decision in *United States v. Rivera*, No. 13 Cr. 149 (KAM), 2015 WL 1725991 (E.D.N.Y. Apr. 15, 2015), actually undercuts the government's position. *See* Mot. at 43. Although the Court excluded pre-trial evidence of "unrelated prior good conduct, i.e., charitable giving or cooperation with law enforcement," it held:

> To the extent that evidence of good conduct is relevant to the charged conduct (i.e., to establish an alibi) or may be necessary to prevent misleading the jury, the court will consider its introduction at trial. The defendants are cautioned, however, that evidence of good conduct that does not refute evidence of the offense charged will not be admitted.

*Id.* at *2. Thus, the court properly excluded evidence – unrelated to the charged conspiracy – of the defendant's "good" propensity, and it also properly reserved for trial the admissibility of "evidence of good conduct … relevant to the charged conduct" or as "may be necessary to prevent misleading the jury." Here, too, evidence that the purported conspiracies operated without the knowledge or participation of Ms. Maxwell during the period charged amounts to direct evidence that the conspiratorial agreement or knowledge of the objectives likewise did not exist. Only after the government has made its opening statements and put on its evidence will the defense even know, much less be in a position to argue, what contrary evidence will be offered. As with the Court in *Rivera*, this Court should defer ruling on the admissibility of any such evidence until the time it is offered into evidence by the defense.

## VIII.  THE GOVERNMENT'S MOTION TO LIMIT THE INTRODUCTION OF MS. MAXWELL'S STATEMENTS IS PREMATURE AND SHOULD BE DENIED AT THIS TIME

Hearsay is a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement. Fed. R. Evid. 801. Hearsay is not admissible unless allowed by a federal statute; the Federal Rules of Evidence or  other rules prescribed by the Supreme Court. Fed. R. Evid. 802. "The hearsay rule is designed to prevent the admission of unreliable hearsay but to permit through its many exceptions the admission of reliable hearsay." *Ferrier v. Duckworth*, 902 F.2d 545, 547 (7th Cir.), *cert. denied*, 498 U.S. 988 (1990).

Counsel for Ms. Maxwell understand the Federal Rules of Evidence and intend to follow them. Notably, there are dozens of exceptions to the hearsay exclusionary rule, many of which could be applicable at any trial in this case, for example, those contained in Fed. R. Evid. 803(1) through 803(23). Ms. Maxwell has not moved *in limine* to admit any hearsay statement, and the government does not identify any statement made by Ms. Maxwell that it believes will be at issue in this trial. Basically, the government is asking the Court to enter an order directing the parties to follow the Rules of Evidence.

The failure of the government to identify any statement or circumstance where a statement might be offered makes it impossible for the Court to rule on the admissibility of this unknown evidence. As noted by the court in *Velez v. Novartis Pharms. Corp.*, No. 04 CIV. 9194 CM, 2010 WL 11043081, at *6 (S.D.N.Y. Feb. 25, 2010), the "'motion to exclude hearsay'… is yet another example of the improper use of *in limine* motions. . . ."  Denying the motion, the court directed the following solution: "If a witness is asked for hearsay testimony, an attorney… should stand up and object, and the Court will rule." *Id.*

The parties should follow the Rules. Ms. Maxwell intends to do so and will object to evidence she believes is inadmissible at trial.

## IX.   MS. MAXWELL'S COUNSEL UNDERSTANDS AND WILL FOLLOW THE RULES OF EVIDENCE AND PROHIBITION AGAINST ARGUMENT FOR JURY NULLIFICATION – RENDERING THIS MOTION MOOT

This motion *in limine,* like most of the preceding ones, is another request that the parties, and the Court, abide by the Federal Rules of Evidence or that the Court offer an advisory opinion as to which types of evidence fall within the Rules.  As described previously, *supra* at Preliminary Statement, these are inappropriate motions *in limine*.  It is unclear if the government's real intent in filing the motion is to entice defense counsel to share her intended evidence or arguments for trial in advance of the deadlines set by this Court.  In any event, Ms. Maxwell's defense and her evidence depends very much on what evidence the government elicits or argues at trial and in opening statements.

There are certain longstanding and easily understood rules of evidence which apply to this case.  Rule 404(a)(2) permits introduction at trial of a defendant's "pertinent trait," which, if offered, the government may rebut.  Rule 405(a) permits evidence of a person's character or character trait by reputation or opinion, which, if offered, the opposing party may then inquire as to relevant specific instances of conduct.  Rule 608(a) permits a witness's credibility to be attacked or supported by reputation testimony for truthfulness or untruthfulness.  Ms. Maxwell and her counsel do not dispute that these rules of evidence apply nor that they all understand the prohibitions on encouraging jury nullification.  Ms. Maxwell and her counsel will not argue to the jury that they may acquit if they do not like that law.  *See United States v. Gardner*, No. 16-cr-20135, 2016 WL 5404207, at *6-*7 (E.D. Mich. Sept. 28, 2016) (denying motion *in limine* regarding jury nullification. because, "[a]t this point, it is unclear exactly what is included in the category of "evidence or argument that relates only to jury nullification. Although some

examples were given, the Court finds that this is too vague a category to grant the relief requested.").

The government has not explained why they believe that counsel does not understand these rules or what evidence (beyond "charitable works" or "evidence of her family history") that they expect to be offered at trial.  If the topic of "charitable works" comes up in the government's case, then topics of Ms. Maxwell's "charitable works" may become relevant.  If the topic of Ms. Maxwell's family history is elicited or argued by the government, then topics of Ms. Maxwell's family history may become relevant.  One wonders if the government is suggesting these topics because it intends to try to elicit some testimony on these topics and then preclude Ms. Maxwell from responding.  If that were the case, then the government should have said so in their Motion. Regardless, there is no reason for the Court to enter any orders on this topic.  Ms. Maxwell will tender evidence on cross examination and in her defense case that is relevant.  The government is free to make any objections it deems appropriate at that time, with reference to any evidence the government has already elicited from the witnesses and in opening statements.

## X.  REQUEST TO PREVIEW DEFENSE'S EVIDENCE SHOULD BE DENIED

The government would like nothing better than for the Court to require defense counsel to have their hands tied behind their back and their mouths duct-taped while the accusers, and related witnesses, testify under anonymity, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  If the government wants to preclude the interposing of defenses, it should dismiss the case.

The government is not and should not be privy to the defenses Ms. Maxwell may interpose at trial, despite the claim that the government's "years-long investigation has not developed any evidence that the defendant was victimized in any way by Jeffrey Epstein" and defense counsel made not factual assertions regarding victimization. (Mot. at 49). Perhaps the

government should re-read the many thousands of pages of witness statements before asserting that it would be "baseless" to claim that Ms. Maxwell was a victim of Epstein.   The defense has not provided notice under Rule 12.2, as would be required to interpose a defense based on Ms. Maxwell's mental condition and its bearing on culpability. Ms. Maxwell maintains her innocence and does not intent to assert any affirmative defense.

The government has the burden of proving the charges in the Indictment beyond a reasonable doubt.  The defense bears no burden and is not obligated to disclose defense theory or strategy unless required by statute.  The government seems overly concerned that the jury will be confused, a reference it uses 24 times throughout its Motions *in Limine*, and that the government will be highly prejudiced. Any confusion will be the result of its own presentation of evidence, the lack of corroborating evidence, and the prejudice  inflicted upon Ms. Maxwell.

**XI.** ███████████████████████████ **MS. MAXWELL <u>WAS</u> THE PREVAILING PARTY IN CIVIL LITIGATION BASED ON THE SAME FACTS AS THIS CRIMINAL TRIAL, WHICH IS RELEVANT TO MS. MAXWELL'S DEFENSE**

███████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████ "did not agree that" Ms. Maxwell was the prevailing party.  Mot. at 51-52. ███████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████ There is nothing "inaccurate" or "confusing" about ████████████

█████████████████████████████████████████

████████████████████████████████████ . ███████████████



█████████████████████████████████████████████████
█████████████████████████████████████████████████

The same is true for █████████████████████████████████

█████████████████████████████████████████████████
█████████████████████████████████████████████████
█████████████████████████████████████████████████

The bias and motive for these witnesses to testify against Ms. Maxwell at the criminal

trial must be explored on cross-examination and █████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

████████████████

## CONCLUSION

For the foregoing reasons, the Court should deny the government's various motions *in limine.*

Dated: October 25, 2021

59

Respectfully submitted,


*s/ Jeffrey S. Pagliuca*

Jeffrey S. Pagliuca
Laura A. Menninger
HADDON, MORGAN & FOREMAN P.C.
150 East 10th Avenue
Denver, CO 80203
Phone: 303-831-7364

Christian R. Everdell
COHEN & GRESSER LLP
800 Third Avenue
New York, NY 10022
Phone: 212-957-7600

Bobbi C. Sternheim
Law Offices of Bobbi C. Sternheim
225 Broadway, Suite 715
New York, NY 10007
Phone: 212-243-1100

*Attorneys for Ghislaine Maxwell*

## Certificate of Service

I hereby certify that on October 25, 2021, I electronically filed the foregoing *Ghislaine Maxwell's Response to Government's Omnibus Motions In Limine* with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Alison Moe
Maurene Comey
Andrew Rohrbach
Lara Pomerantz
U.S. Attorney's Office, SDNY
One Saint Andrew's Plaza
New York, NY 10007
Alison.moe@usdoj.gov
Maurene.comey@usdoj.gov
Andrew.Rohrbach@usdoj.gov
Lara.Pomerantz@usdoj.gov

*s/ Nicole Simmons*