UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

   -v.-

GHISLAINE MAXWELL,

         Defendant.

S2 20 Cr. 330 (AJN)


**REPLY MEMORANDUM  OF LAW IN FURTHER SUPPORT
OF THE GOVERNMENT'S MOTIONS *IN LIMINE***


DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007


Alison Moe
Lara Pomerantz
Andrew Rohrbach
Assistant United States Attorneys
   *Of Counsel*

## **TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ................................................................ **3**

**ARGUMENT** .......................................................................................... **3**

I. The Court Should Permit Certain Witnesses to Testify Under Pseudonyms or Using First Names, and Permit the Sealing of Related Exhibits ................................................ 3

    A.  Applicable Law ...................................................................................... 4

    B.  The Minor Victims Retain Significant Privacy Interests ............................... 7

        1.      Minor Victim-1 ................................................................... 7

        2.      Minor Victim-3 ................................................................. 10

        3.      Minor Victim-4 ................................................................. 12

        4.      Minor Victim-6 ................................................................. 13

    C.  The Government's Proposal Would Protect Those Privacy Interests ................ 14

    D.  The Defendant Has No Countervailing Interests at Stake, Much Less a Particularized Need for Disclosure. ....................................................... 16

    E.  Sealing Related Exhibits is Entirely Appropriate ...................................... 19

II. The Court Should Resolve Litigation Related to Prior Consistent Statements at the Appropriate Time ........................................................................................ 21

III. The Court Should Preclude the Defense from Making Improper Arguments and Proffering Irrelevant Evidence ........................................................................ 22

    A.  The Court Should Preclude Evidence and Argument about Investigations of the Defendant ........................................................................................... 24

    B.  Evidence of the Non-Prosecution Agreement is Not Otherwise Admissible for Any Purpose .......................................................................................... 29

    C.  Evidence that the Defendant was Not Charged by the USAO-SDFL is Irrelevant to Minor Victim-4's Credibility ............................................................. 31

    D.  The Government Should Preclude Testimony from Case Agents About Irrelevant Matters ............................................................................................. 33

    E.  The Government's Alleged Motives Are Irrelevant ................................... 34

    F.  The Court Should Preclude Challenges to the Credibility of Individuals Who Are Not Witnesses at Trial ......................................................................... 35

G.  Evidence or Argument About the Minor Victims' Consent is Categorically
Inadmissible ................................................................................................... 35

H.  The Court Should Be Wary of the Defense Refusal to Address the Government's
Motions ........................................................................................................... 37

I.   The Court Should Not Allow the Defense to Suggest to the Jury That The Defendant
Prevailed Against the Minor Victims in Litigation......................................... 38

**CONCLUSION** ......................................................................................................... **38**

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in further support of its October 18, 2021 motions *in limine*.

## ARGUMENT

**I.   The Court Should Permit Certain Witnesses to Testify Under Pseudonyms or Using First Names, and Permit the Sealing of Related Exhibits**

The Government seeks limited, narrowly tailored relief to protect the victims in this case. Certain of the Minor Victims have not publicly identified themselves as victims of child sexual abuse by the defendant and Jeffrey Epstein, or have not done so in the same level of detail as they are expected to provide at trial.  Consistent with the Crime Victims' Rights Act, *see* 18 U.S.C. § 3771(a)(8), and the regular practice in this District and the Eastern District, (*see* Gov't Mot. at 6-8 (citing twelve cases)), the Government asks the Court to permit those Minor Victims to testify using either pseudonyms or first names, and for related relief regarding other witnesses and exhibits to protect the identities of the same Minor Victims.  To the extent this request presents logistical concerns, they are readily solvable in this case, as they were in *United States v. Kelly*, No. 19 Cr. 286 (AMD) (E.D.N.Y.), *United States v. Raniere*, No. 18 Cr. 204 (NGG) (E.D.N.Y.), and numerous other recent sex trafficking trials, including high-profile sex trafficking trials and ones in which victims had made prior public statements.  The Government has not sought to withhold the identities of the Minor Victims from the defense or the jury, so this request has no effect whatsoever on the defendant's right to a fair trial.

The defendant's primary response is to ███████████████████████████████████

████████████████████████████████████████████████████████████████████████

3

███████████. That misses the point entirely. The Court must decide whether to protect the privacy of four victims who will testify in a criminal trial, for the first time in their lives, about the painful details of the sexual abuse they were subjected to as children. The answer to that question is emphatically yes.

The defense has failed to articulate any particularized need to publicize the full names of the Minor Victims. Nor could they, since the full names are known to the defense and the Court, and will be known to the jurors in this case. And the Government's narrowly tailored proposal balances the public interest in access to information with the Minor Victims' right to privacy and dignity. The Court should grant the motion.

## A. Applicable Law

As the Government explained in its motions (Gov't Mot. at 4-9), if the Government provides a reason to "limit disclosure of identifying information in open court," the defendant must "demonstrate a 'particularized need' for disclosure . . . which the court weighs against the risks to the witness." *United States v. Marcus*, No. 05 Cr. 457 (ARR), 2007 WL 330388, at *1 (E.D.N.Y. Jan. 31, 2007) (citing *United States v. Marti*, 421 F.2d 1263, 1266 (2d Cir. 1970); *United States v. Bennett*, 409 F.2d 888, 901 (2d Cir. 1969)), *aff'd*, 628 F.3d 36, 45 n.12 (2d Cir. 2010)); *see United States v. Urena*, 8 F. Supp. 3d 568, 572-73 (S.D.N.Y. 2014) (permitting an undercover law enforcement officer to testify under a pseudonym, after balancing the relevant interests); *cf. United States v. Cavallaro*, 553 F.2d 300, 304 (2d Cir. 1977) ("[W]here the government voices a legitimate concern for a witness' safety, the trial court must balance the potential danger to the witness against the need of the defense for the information.").

4

As noted in the Government's motion, an order imposing privacy safeguards at trial for victims of sex crimes is commonplace.  *See* Aug. 3, 2021 Tr. at 53:13-55:2, *United States v. Kelly*, No. 19 Cr. 286 (AMD) (E.D.N.Y.); Oct. 17, 2019 Tr. at 32:1-36:6, *United States v. Dupigny*, No. 18 Cr. 528 (JMF) (S.D.N.Y.), Dkt. No. 198 (permitting use of real first names and fake last names); Order at 10-11, *United States v. Kidd*, No. 18 Cr. 872 (VM) (S.D.N.Y. July 1, 2019), Dkt. No. 60 ("The Court is persuaded that, to protect the minor victims, they should be permitted to testify under pseudonyms and that such anonymous testimony does not violate Kidd's Sixth Amendment rights."); May 8, 2019 Tr. at 6:20-21, *United States v. Benjamin*, No. 18 Cr. 874 (JSR) (S.D.N.Y.), Dkt. No. 53; Order at 29-35, *United States v. Raniere*, No. 18 Cr. 204 (NGG) (E.D.N.Y. May 6, 2019), Dkt. No. 622; *United States v. Zhong*, No. 16 Cr. 614 (DLI), 2018 WL 6173430, at *2 (E.D.N.Y. Nov. 26, 2018) (granting government's motion to have victim witnesses testify using pseudonyms); Order at 2-3, *United States v. Martinez*, No. 17 Cr. 281 (ERK) (E.D.N.Y. Dec. 18, 2017), Dkt. No. 34 ("Jane Doe will be permitted to testify as 'Jane Doe' at trial, and will not be required to disclose her address, names of family members or exact place of employment (if any)."); Apr. 5, 2016 Tr. at 6-10, *United States v. Quraishi*, No. 15 Cr. 598 (CBA) (E.D.N.Y.), Dkt. No. 46 (permitting a witness to testify using only her first name); *United States v. Corley*, No. 13 Cr. 48 (AJN), 2016 WL 9022508, at *3-4 (S.D.N.Y. Jan. 15, 2016) (noting that "Judge Patterson . . . permitted the minor victims to testify under a pseudonym at trial" and denying the *pro se* defendant's request for the surnames of the minor victims for his appeal); *United States v. Graham*, No. 14 Cr. 500 (ER), 2015 WL 6161292, at *10 (S.D.N.Y. Oct. 20, 2015) (permitting victims to testify using their first names only); Order at 2, *United States v. Rivera*, No. 09 Cr. 619 (JMA)

5

(E.D.N.Y. Apr. 26, 2011), Dkt. No. 231; *United States v. Paris*, No. 06 Cr. 64 (CFD), 2007 WL 1484974, at *2 (D. Conn. May 18, 2007).

The defense largely ignores the overwhelming precedent for the Government's motion, including the recent high profile sex abuse trials in the Eastern District, *see United States v. Kelly*, No. 19 Cr. 286 (AMD) (E.D.N.Y.); *United States v. Raniere*, No. 18 Cr. 204 (NGG) (E.D.N.Y. May 6, 2019).[1]  Instead, the defendant points the Court to the law in civil cases governing motions by plaintiffs seeking to proceed by pseudonyms.  (*See* Def. Opp. at 16 (citing, *e.g.*, *Doe v. Cook Cty., Illinois*, No. 20 Civ. 5832, 2021 WL 2258313, at *3 (N.D. Ill. June 3, 2021)).  This is not a civil case filed by the minor victims, and a civil plaintiff is not similarly situated to a crime victim in a federal criminal case.    Civil plaintiffs are generally forced to identify themselves by Rule 10(a) of the Federal Rules of Civil Procedure.  *See Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 188 (2d Cir. 2008).  By contrast, crime victims are entitled to the statutory protection of the Crime Victims' Rights Act.  *See* 18 U.S.C. § 3771(a)(8).  They have been asked to testify by the Government, and they do not decide whether this case proceeds.  There is no reason to look to civil law when a body of criminal cases provides direct guidance on this question.[2]

---

[1] The defense brief takes pains to distinguish cases the Government cited in its discussion of how courts approach balancing witness and defendant interests in this area, and fails to address nearly all of the cases applying that analysis in the specific context of sex abuse cases like this one. (*Compare* Def. Opp. at 16-17 & n.19, *with* Gov't Mot. at 5-7)

[2] In discussing the Government's burden to justify privacy safeguards, the defense cites to *In re Bonanno*, 344 F.2d 830, 833 (2d Cir. 1965), a case about disclosure of the existence of an attorney-client relationship.  (Def. Opp. at 15).

**B.  The Minor Victims Retain Significant Privacy Interests**

The bulk of the defense's brief focuses on publicity surrounding this case ███████████

███████████████████████████████████████████████████.  As explained

in greater detail below, that is irrelevant.  But in any event, ███████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████

**1.  Minor Victim-1**

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████

7



## 2. Minor Victim-3

███████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████ █   ████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

─────────────────────

█ ███████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████

   ██████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

-----------------------

[5] Indeed, in entering the Government's requested protective order in this case, the Court noted that "[a]s a general matter, it is undisputed that there is a strong and specific interest in protecting the privacy of alleged victims and witnesses in this case that supports restricting the disclosure of their identities." (Dkt. No. 37 at 2). ████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████

### 3.  Minor Victim-4

Regarding Minor Victim-4, the defense motion largely focuses on disparaging her credibility.  (*See* Def. Opp. at 12-15).  Without relitigating the issue here (*see* Gov't Opp. to Def. Supp. Mots. at 21, Dkt. No. 295 ("[T]he Government notes that the defense motion overstates the significance of the particular statements Minor Victim-4 made during the USAO-SDFL's investigation."), that issue is entirely orthogonal to her privacy interests at stake in her testimony.

████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████



Absent protection from the Court, her testimony will entail a further loss of privacy and dignity. *See* 18 U.S.C. § 3771(a)(8).[7] Accordingly, the Government requests relief narrowly tailored to the particular circumstances and privacy interests of Minor Victim-4—namely, that Minor Victim-4 be permitted to testify using her first name only.

### 4. Minor Victim-6

13

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

## C. The Government's Proposal Would Protect Those Privacy Interests

The Government has proposed permitting Minor Victim-1, Minor Victim-3, and two witnesses related to Minor Victim-1 to testify under pseudonyms, and limiting reference to them at trial to those pseudonyms.  The Government has also proposed permitting Minor Victim-4 and certain witnesses related to her to testify under their first names, and limiting reference to those witnesses and Minor Victim-6 to their first names.  [REDACTED]

[REDACTED]

[REDACTED]

[REDACTED].

This proposal would successfully protect the victim privacy interests identified above.  The question is not whether the victims' testimony—that is, the intimate details of their childhood sexual abuse at the hands of the defendant and Jeffrey Epstein—will become public.  They will, and in light of the publicity surrounding this case, those details are likely to be highly publicized.  The question is whether those details will be linked to the names of the Minor Victims.  Under the

---

[8] Although the defense also says it needs to investigate Minor Victim-6 as a "potential witness" (Def. Opp. at 20), as the Government has said before, Minor Victim-6 will not be a witness or hearsay declarant at this trial.

Government's proposal, the Minor Victims' names will not be said in open court.  A person in the gallery, or a person reading the transcript, cannot simply write down the Minor Victims' names and put them on the internet.

██████████████████████████████████████████████████████

████████████████████████████████████████████  There is

every reason to believe that, if the Court orders that Minor Victims be permitted to testify under

pseudonyms, many major publications will honor that request and not rebroadcast the Minor

Victims' names should they surface elsewhere.  The Government does not assume that the

mainstream press would reveal the identity of a victim against her wishes, particularly if the victim

is testifying under Court-ordered protections to preserve her anonymity.  Furthermore, the

Government's understanding from conferring with prosecutors in similar cases is that the

mainstream press did not, in fact, reveal the identities of victims who testified under court-ordered

protections.  And in any event, even marginally reduced exposure is significant to the Minor

Victims.[9]  There is a very meaningful difference between the names of victims appearing in some

dark corner of the internet, and the names of the victims appearing in the news outlets that will be

viewed by the friends, families (including children), and employers of the Minor Victims.

### D. The Defendant Has No Countervailing Interests at Stake, Much Less a Particularized Need for Disclosure.

In the context of the disclosure of witness identifying information, the Second Circuit has

identified two primary interests of defendants: "(1) obtaining information needed for in-court and

out-of-court investigation of the witness; and (2) enabling defense counsel to elicit information

---

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████

that might be relevant to the jury's deliberations as to the credibility or knowledgeability of the witness." *Marcus*, 2007 WL 330388, at *1 (citing *Marti*, 421 F.2d at 1266).  And where the Government establishes a legitimate reason to limit disclosure of identifying information in open Court, the defendant must "demonstrate a 'particularized need' for disclosure." *Id.*

Here, both of those interests are satisfied.  The defendant knows who the Minor Victims and other witnesses are and has conducted a fulsome investigation, as shown by the defendant's brief in opposition.  And the jury, which will also know the true names of the Minor Victims, will fully understand whatever information the defense elicits on cross-examination or at trial.  For instance, as the Government has said, the defense is free to elicit the fact that ███████████████

████████████████.  (*Compare* Def. Opp. 21, *with* Gov't Mot. at 15 n.6 ("The Government has no objection to cross-examination . . . ████████████████████████

████████████████████████).  The only substantive limit the Government proposes on the defendant's ability to elicit information is certain detailed personally identifying information, none of which is relevant or necessary to elicit at trial.  (*See* Gov't Mot. at 15 & n.6).

Citing general cases about the Confrontation Clause, the defense describes a series of other lines of cross-examination they might like to elicit, including (a) ████████████████

████████████████ (b) ███████████████████████████ (c) ███████████████

████████████████████████████████████████████████████

████████████████, and (d) the identities of the lawyers for the Minor Victims.  (Def. Opp. at 21-22).  Some of these topics are objectionable for other reasons.  But for purposes of this motion, the defendant must show that she requires the *true names* of the Minor Victims to be publicly disclosed

to make the point. She does not. Much of this information can be elicited without using names at all, such as Minor Victim-4's past statements and the general arc of the Minor Victims' professional work.[10] And the defense does not provide a *particularized* justification for any identifying information, ███████████████████████████████. Even the baseless defense argument that Minor Victim-4 and her lawyer are suborning perjury would not require use of either name. Notably, despite the numerous cases in which pseudonyms or first names have been used, the defense cites no case in which a court has forced victims to testify under their true names so that the defense could conduct cross-examination along these lines.

The defendant also argues that "[s]ubstantial impeachment evidence exists as to [Minor Victim-4] under her real name," and the defendant "should not be forced to compromise the full effect of this evidence by use of a first name only." (Def. Opp. at 22). The defendant is not so compromised. The defendant is allowed to elicit this information and, where it is contained in exhibits, and show those to the jury without redaction. The jury will know the Minor Victims' full names and will understand the complete argument. The defense can even say Minor Victim-4's first name. They would only be limited from saying her last name out loud in court. The same is true with exhibits including the names of certain other Minor Victims.[11]



Finally, the defense argues that this motion is purely tactical on the part of the Government, because this motion affords sympathy to the victims. (Def. Opp. at 22).   Remarkably—and unfortunately—the defense again repeats their claim that testimony is being fabricated.  (*Id.*).  The Government is responding to the real concerns of its victims, as it is duty-bound to do, and as is common in cases involving sexual abuse.  It has also already agreed to a jury instruction, as is sometimes given in these cases, explaining that the use of pseudonyms and first names should not be held against the defendant.  (*See* Gov't Mot. at 14 n.4).  If any tactical gamesmanship is occurring, it is on the part of the defense, which spends a few paragraphs out of nearly twenty pages of their brief offering conclusory reasons why privacy safeguards undermine a defense interest.  As the defense is well aware, such safeguards are significant to the Minor Victims and their willingness to testify.  But the Court need not arbitrate issues of litigation tactics.  The balance of interests on this issue is clear and weighs in favor of privacy safeguards, as it did in many other trials involving sex crimes.

### E.  Sealing Related Exhibits is Entirely Appropriate

Just as the Government's proposal is narrowly tailored with respect to the defendant, so it is narrowly tailored with respect to the right of the public and the press to access the trial.  The public and press are free to attend the entire trial.  They may observe each of the Minor Victims, in person, testify in full.  At no point during testimony is the Government seeking closure of the courtroom.  The public and the press are also welcome to see most of the trial exhibits.

The only narrow exception is for those exhibits that specifically contain identifying information of Minor Victims.  As the Court is well aware, the right to access trial evidence is not absolute, and it can be overcome—especially by information that is "traditionally considered

19

private rather than public," which avoids "catering" to "sensational" interests.  (Gov't Mot. at 16 (quoting *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995); *United States v. Cohen*, 366 F. Supp. 3d 612, 626-627  (S.D.N.Y. 2019) (alterations and internal quotation marks omitted)). This limited sealing request is significantly protective of the interests of the Minor Victims, who were sexually abused as minors, and minimally burdensome to the public.  *See Paris*, 2007 WL 1484974, at *2 (concluding that the interest in protecting victim identities outweighs the public interest in access to information because "the public and press will be able to hear the Jane Does' and Minors' testimony in full"); *cf.* 18 U.S.C. § 3509 (d)(2) (permitting any papers that disclose the name of a child to be filed under seal without the necessity of a court order).[12]

Although the defense argues that this request is "contrary to well-established Second Circuit Law" (Def. Opp. at 23), the cases it cites concern the strong presumption in favor of access associated with public dissemination of records that are already shared publicly at trial.  *See United States v. Graham*, 257 F.3d 143, 149 (2d Cir. 2001); *Application of National Broadcasting Co.*, 635 F.2d 945, 951-52 (2d Cir. 1980).  Both cases also recognize that no such presumption applies for evidence submitted under seal, "because with respect to that item of evidence, the session of court was not public."  *Graham*, 257 F.3d at 149 (quoting *Application of National Broadcasting Co.*, 635 F.2d at 952 n.4).  Here, the Government is not seeking a limitation on information shared in open court, so these cases are inapposite.

---

[12] To the extent the defense wishes to make arguments about particular exhibits, (*see* Def. Opp. at 22-23), the Government is happy to address that on a document-by-document basis at trial.

20

The Government is seeking an order issued in many other cases to protect the privacy and dignity of Minor Victims who will take the stand and testify about being sexually abused. The defense has failed to carry its burden of identifying any right of the defendant that is burdened by such an order. The Court should grant the motion.

## II. The Court Should Resolve Litigation Related to Prior Consistent Statements at the Appropriate Time

The Government has moved *in limine* to admit prior consistent statements of its witnesses pursuant to Rule 801(d)(1)(B) of the Federal Rules of Evidence. (*See* Gov't Mot. Section II). The Government briefed this issue in advance in order to notify the Court that the Government intends to offer evidence of prior consistent statements, and to provide briefing on the relevant law. Because the Government cannot fully anticipate the defense's opening arguments or lines of cross-examination regarding the credibility of witnesses it will call at trial, and the defense has not elaborated on them in its brief, the Government cannot identify prior consistent statements it will offer in response. Accordingly, the Government does not seek a decision on prior consistent statements at this time.

In their brief, the defense recites the applicable law, largely in agreement with the Government's view. The Government notes two points with respect to that discussion. First, it is plainly proper to offer prior consistent statements to rebut a purported inconsistency between the witness's trial testimony and an earlier statement. *See United States v. Purcell*, 967 F.3d 159, 196-97 (2d Cir. 2020). Second, it is also plainly proper for the Government to begin offering prior consistent statements if the defense attacks witness credibility in its opening statement, and the

Government need not wait until the witness is cross-examined.  *See United States v. Flores*, 945 F.3d 687, 706 (2d Cir. 2019).

Following defense attacks on the Minor Victims' credibility, the Government anticipates offering prior consistent statements it expects to elicit from its witnesses.  Specifically, while the Government expects that some of its prior consistent statements will be offered to rebut the charge that the declarant "recently fabricated [their testimony] or acted from a recent improper influence or motive," Fed. R. Evid. 801(d)(1)(B)(i), many other statements will be offered to "rehabilitate the declarant's credibility as a witness," including from charges that the declarant has given inconsistent statements or has a faulty memory, Fed. R. Evid. 801(d)(1)(B)(ii).  Because the grounds for admission will depend on the defense's precise challenge to the witness, the Government will raise this issue with the Court before eliciting prior consistent statements from its witnesses.

### III.   The Court Should Preclude the Defense from Making Improper Arguments and Proffering Irrelevant Evidence

At trial, the jury will be asked to determine whether the defendant conspired with others to arrange for the sexual abuse of six specific minors.  Several of the Government's motions are aimed at preventing the defense from surprising the Court and the Government with irrelevant, inflammatory, and highly prejudicial arguments.

The defense response makes clear that they intend to put before the jury the history of the various Epstein investigations in other jurisdictions and the outcomes of those matters.  Although that evidence is entirely improper and irrelevant, the defense plainly intends to make this *central* to the trial.  (*See* Def. Opp. at 28-29).  The breadth of the conspiracy theories the defense intends

to put before this jury illustrates the side show the defense hopes to create.  Those conspiracy theories include, among other things, as the defense would describe: (1) the Government's alleged motives for prosecuting the defendant (*id*. at 42-43); (2) the credibility of individuals who are not testifying at this trial and are not hearsay declarants (*id.* at 43-45); (3) supposed evidence relating to the Minor Victims' consent (*id.* at 46-49); (4) evidence of other abuse which did not involve the defendant (*id.* at 51-53); (5) the defendant's statements offered by the defendant (*id.* at 54-55); (6) arguments sounding in nullification (*id.* at 55-56); (7) alleged evidence—of which the Government is not aware—that the defendant was a victim of Epstein (*id.* at 56-57); and (8) evidence that the defendant was the prevailing party in civil litigation (*id.* at 57-59).  The defense also now suggests that they may argue that attorneys for the Minor Victims are conspiring with their clients to manufacture evidence.  (*Id.* at 21-22).

These topics are far afield—a galaxy away—from the questions of fact to be resolved by the jury.  The Government is concerned that the defense plans to exceed its limits and, therefore, has moved to preclude the defense from arguing them or offering evidence of them.  The defense urges the Court not to rule on these *in limine*, instead providing the empty assurance that the defense understands the Federal Rules of Evidence and will only offer evidence the defense deems proper.  But is for the Court—not the defense—to decide what is admissible at this trial.

More troubling still, the defense brief makes clear that they plan to put these theories before the jury before the Court has an opportunity to rule on these issues, including in their opening statement.  (Def. Opp. at 51 ("If Ms. Maxwell's attorneys have a good-faith belief that evidence will be admissible, they can refer to that evidence in opening statement.")).  The Court should not

permit this.  As the Government has explained, for many of the subjects of the Government's motions, any evidence or argument is irrelevant, inadmissible, lacks a good faith basis, and is highly prejudicial.  The Court should preclude the defense from discussing these issues in its opening statement or attempting to offer evidence relating to these issues at trial unless and until the defense makes an offer of proof so that the Court can make evidentiary rulings.  *See United States v. Randle*, 745 F. App'x 422, 424 (2d Cir. 2018) (summary order) ("'The making and timing of opening statements can be left constitutionally to the informed discretion of the trial judge.'" (quoting *United States v. Salovitz*, 701 F.2d 17, 21 (2d Cir. 1983)) (alteration omitted)); *United States v. Ahaiwe*, No. 20 Cr. 179 (DLC), 2021 WL 2134922, at *3 (S.D.N.Y. May 26, 2021) ("The Government's motions to preclude defense counsel from making certain statements in its opening statement or in its questioning of witnesses is granted with the following exceptions.").  To proceed otherwise would risk an improper defense opening statement or attempts to elicit other improper evidence that could cause a mistrial.

## A. The Court Should Preclude Evidence and Argument about Investigations of the Defendant

A defendant has a "right to call witnesses in order to present a meaningful defense."  (Def. Opp. at 28) (quoting *United States v. Percoco*, 13 F.4th 158, 177 (2d Cir. 2021)).  "The right is not, of course, unlimited; the defendant must comply with established rules of procedure and evidence designed to assure both fairness and reliability."  *Percoco*, 13 F.4th at 177 (citation and internal quotation marks omitted).  For instance, "[a] federal court may preclude a defendant from presenting a defense when the evidence in support of such a defense would be legally insufficient."

24

*United States v. Miles*, 748 F.3d 485, 489 (2d Cir. 2014) (per curiam) (citation and internal quotation marks omitted).

It is elementary that "the Government is not on trial in this case, and the jury will not be asked to pass on the adequacy of its investigation." *United States v. Carton*, No. 17 Cr. 680 (CM), 2018 WL 5818107, at *3 (S.D.N.Y. Oct. 19, 2018). The issue before the jury is simply whether, "in light of [the] evidence or lack of evidence, the jury [is] convinced beyond a reasonable doubt that the defendant was guilty of the crimes with which [she is] charged." *United States v. Saldarriaga*, 204 F.3d 50, 52 (2d Cir. 2000) (per curiam). Accordingly, there is no basis to offer evidence about why the Government or the USAO-SDFL opened their respective investigations, how they resolved those investigations, or the death of Jeffrey Epstein. These issues simply do not relate to the defendant's guilt or innocence of the charged crimes. *See United States v. Duncan*, No. 18 Cr. 289 (SHS), 2019 WL 2210663, at *3 (S.D.N.Y. May 22, 2019) ("The length of the investigation, the investigative techniques used, and the fact that [the defendant] was not initially a target of the investigation are all irrelevant pursuant to this principle."); *United States v. Aleynikov*, 785 F. Supp. 2d 46, 65 (S.D.N.Y. 2011) ("As a general matter, the quality and scope of the Government's investigation are not appropriate lines of examination . . . ."), *rev'd on other grounds*, 676 F.3d 71 (2d Cir. 2012).

The defense argues that they are free to offer whatever evidence they like in order to challenge the "thoroughness and even the good faith of the [government's] investigation." (Def. Opp. at 32 (quoting *Kyles v. Whitley*, 514 U.S. 419, 445 (1995)). In support, the defense cites three decades-old cases, none from this Circuit or any district in this Circuit. All arise under very

particular set of circumstances, and none address evidentiary rulings.  Instead, these cases concern *Brady* errors involving the withholding of exculpatory information, such as a statement in which a witness at trial stated that he "did not see the perpetrator's face," *Lindsey v. King*, 769 F.2d 1034, 1036 (5th Cir. 1985), or evidence pointing toward an alternative perpetrator, *Bowen v. Maynard*, 799 F.2d 593, 612 (10th Cir. 1986).  *See also Kyles*, 514 U.S. at 445-46 (confidential informant "essential to [the Government's] investigation" made statements "replete with inconsistencies").  In addition to the obvious exculpatory value of this information, the courts explained that it would be used to "attack[] the reliability of the investigation."  *Kyles*, 514 U.S. at 446.

The defense would rest a pile of irrelevant evidence on this slender reed.  In their view, from the principle that the defense can attack the "thoroughness" of an investigation, they may elicit any information aimed at explaining—and attacking—the decisionmaking of the agents and prosecutors involved in a case.  *Kyles*, the case chiefly cited by the defense, is about whether the "prosecution improperly withheld evidence that, had it been disclosed, would have 'raised opportunities to attack the thoroughness and even the good faith of the investigation.'  *Kyles* provides *no guidance* about what evidence must be admitted at trial or what lines of questioning must be permitted to ensure a meaningful opportunity to cross-examine adverse witnesses," *Watson v. Greene*, 640 F.3d 501, 512 n.11 (2d Cir. 2011) (emphasis added, alteration in original, citation omitted), nor do the other cases.

Even if the cases cited by the defense spoke directly to this context, and not the limits of *Brady* material, they still would not reach so far.  For instance, in *Bowen*, the Tenth Circuit found that if the defense had been provided information about the alternative perpetrator, they could have

"cross-examined the detectives" about the identification procedure and "pointed out that [the defendant] was charged even though he had a confirmed alibi and [the alternative perpetrator] did not." 799 F.2d at 613.  The court said in addition that "[a] common trial tactic of defense lawyers is to discredit the caliber of the investigation or the decision to charge the defendant, and we may consider such use in assessing a possible *Brady* violation."  *Id.*  But the Court did not say that any and all evidence that went to the diligence of the Government's investigators or prosecutors is admissible.

The reason is that litigating whether the investigators were sufficiently thorough is not a defense.  The rule is that the Government is not on trial—the law does not permit the defense to offer evidence solely to attack the Government's motives or thoroughness.  To the extent the defense may do so, they may do so in closing argument, *see United States v. Londono*, 175 F. App'x 370, 375 (2d Cir. 2006) (summary order) (explaining that "a defendant may comment on the failure of proof in the record"), through relevant cross-examination, *see Watson*, 640 F.3d at 511, and through evidence that is otherwise relevant, *see Kyles*, 514 U.S. at 445, 453 (defense could have called informant whose "behavior raised suspicions that he had planted both the murder weapon and the victim's purse in the places they were found").  *See also United States v. Mickens*, Nos. 20-258 (L), 20-462, 20-630, 2021 WL 3136083, at *9 (2d Cir. July 26, 2021) (summary order) (describing a defense that "emphatically and repeatedly" attacked the thoroughness of the Government's investigation in "cross-examinations and closing statements").  But that is all.  Indeed, if such a line of defense were permissible, it would be used routinely, and the defense

27

would not have to stretch for cases about *Brady* disclosures from other circuits.  *See Bowen*, 799 F.2d at 613 (referring simply to a "common trial tactic of defense lawyers").

This case exemplifies the point.  The defense would like to (inaccurately) argue that the New York investigation was opened in response to the non-prosecution agreement entered between the USAO-SDFL and Epstein (the "NPA"), that the Government "scramble[d]" to investigate the defendant after Epstein's death, and that "public pressure" led to a sloppy investigation.  (Def. Opp. at 34).  To do this, the defense would like to elicit information about the process by which the Government opened the New York investigation, media coverage, statements by the former Attorney General, Epstein's death, and a variety of other topics.  (*Id.* at 33-35).  Presumably, under its view, the defense could introduce other categories of evidence that relate in any way to the thoroughness or good faith of the investigation.  None of that has anything to do with the defendant's guilt or innocence.

With respect to Rule 403, it is not enough for the defense to say that jurors can understand that there were two separate investigations.  (*See id*. at 35).  The defense, as the proponent of this alleged evidence, has the burden to establish that the probative weight outweighs any prejudice.  They cannot do so.  It is the defense's plan to introduce information about the internal case opening and charging decisions of the USAO-SDFL and this Office, a summary of media coverage, and a host of other irrelevant topics.[13]  The circus this would create at trial vastly outweighs any

_____

[13] In any event, if any investigation can be attacked, it is only the New York investigation.  The New York investigation led to the charging decision in this case, and law enforcement officers from Florida are being called as limited fact witnesses.  The Government does not expect to elicit the NPA except perhaps to draw the sting if the Court permits cross-examination on the subject.

theoretical relevance this could have.  That problem is only compounded by the fact that, if the defense wishes to try to show that the Government's investigations were sloppy, the Government is entitled to rebut that argument with evidence of its thoroughness and care—creating a mini-trial that is immaterial to the jury's function.

### B. Evidence of the Non-Prosecution Agreement is Not Otherwise Admissible for Any Purpose

The defense argues that evidence of the NPA is nonetheless admissible for impeachment, specifically to show the bias and interest of ███████  ███████████ (Def. Opp. at 29). The Court should reject that baseless argument as mere pretext to put the NPA before the jury, in an attempt to confuse and mislead the jury and argue for jury nullification.

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████



In any event, even if the NPA were admissible, that would not open the door to introducing the defense's wish list of arguments about the New York and Florida investigations. The NPA is an agreement between Epstein and a different U.S. Attorney's Office that resolved a different investigation, with provisions that—the defense argues—are useful impeachment for two witnesses. Conducting that impeachment does not require the defense to offer evidence about why the New York investigation started, or the timing of charges against the defendant, or various investigators' views of the quantum of evidence generated against the defendant at any time.[14]

### C. Evidence that the Defendant was Not Charged by the USAO-SDFL is Irrelevant to Minor Victim-4's Credibility

The defense argues that the fact that the defendant was not charged by the USAO-SDFL after the Florida investigation is probative of Minor Victim-4's credibility, because Minor Victim-4 was interviewed by the FBI at the time and did not implicate the defendant (according to the defendant). The defense brief again recites at length its view of her statements to law enforcement. (Def. Opp. at 36-39). That argument is incorrect. The defense is free to cross-examine Minor

---

[14] The defense suggests that telling the jury that the defendant was not charged in the NPA is necessary because the jury might otherwise speculate on how the Florida investigation ended and whether the defendant was charged in that investigation. (Def. Opp. at 31). That point highlights that the defense intends to use the NPA, even if elicited on cross, as a proxy for the argument that the defendant was not charged in the Florida investigation. There is no reason to think the jury will so speculate if they do not learn how the Florida investigation terminated. But if they do so learn, they might incorrectly assume that the defendant was not charged solely because that investigation could not have generated inculpatory evidence against the defendant, which the Government is permitted to rebut. Although the defense argues that the Government would not discuss the circumstances of the NPA (*Id.* at 31), the Government might have to do so if the NPA becomes central to the defense case and is used to invite the jury to think that no evidence inculpating the defendant existed in 2007.

Victim-4 on the substance of her earlier statements to the FBI.  Whether those statements translated

into a charging decision is irrelevant, among other reasons, because the decision relied on other

factors and was based on different evidence than will be presented at this trial.  (*See* Gov't Mot. at

24-28).  Even at best, it is cumulative of cross-examination of the substance of Minor Victim-4's

statements.  *See United States v. Borrero*, No. 13 Cr. 58 (KBF), 2013 WL 6020773, at *2 (S.D.N.Y.

Nov. 1, 2013) (excluding evidence of charging different people for the same crime because "the

point will be made and can be duly 'hammered home' on cross-examination" without using the

charging decision, which "implicate[s] a variety of additional considerations").

    In any event, introducing that charging decision would invite the jury to speculate—

falsely—that the Florida investigation generated no other inculpatory evidence against the

defendant.  It would therefore open the door to testimony rebutting that speculation.  For instance,

the defense proposes to call a special agent to testify that the defendant was not named in a draft

indictment that was never presented to a Florida grand jury.  (Def. Opp. at 39).  On cross, the

Government would be entitled to elicit inculpatory information from the Florida investigation that

it currently is not planning to offer.  In combination, an examination along these lines would create

a bizarre spectacle, largely based on discussions of hearsay and prosecutorial discretion.  The Court

should preclude this distracting and irrelevant line of questioning.  The jury should decide this case

based on the evidence or lack of evidence presented at trial, not the evidence or lack of evidence

evaluated by prosecutors in another jurisdiction in 2007.  As much as the defendant hopes to ask

the jury to evaluate the prosecutorial discretion of multiple sets of prosecutors in different

jurisdictions, it is the defendant—and only the defendant—who will be on trial.

### D. The Government Should Preclude Testimony from Case Agents About Irrelevant Matters

The defense claims it needs to call case agents to talk about investigative steps, but fails to identify any question about an investigative step that would yield relevant information.

The defense does not identify a single relevant topic in their brief.  (Def. Opp. at 40-41). They have made clear, however, that they intend to put before the jury numerous irrelevant topics: (1) the thoroughness of the Government's investigation, untethered from any other defense theory (*id.* at 41); (2) the scope and timeline of the Florida and New York investigations (*id.* at 40 (discussing "when those investigations began and ended")); *see United States v. Duncan*, No. 18 Cr. 289 (SHS), 2019 WL 2210663, at *3 (S.D.N.Y. May 22, 2019) (concluding that the length of the investigation is irrelevant); and (3) the charging decisions of those investigations (*id.* at 39 (stating that a special agent "had first-hand knowledge that [the defendant] was not charged in the proposed SDFL indictment because she presented the indictment to the grand jury.").  The defense has also remained entirely silent as to whether they intend to call the case agents to testify as "summary witnesses . . . to place before the jury sweeping conclusions about the Florida Investigations or this one."  (Gov't Mot. at 33).

The Government's position is simply that, before the defense calls the case agents and "explore[s]" the "scope and progress of the investigations" (Def. Opp. at 41), the defense should have to identify for the Court the evidence relevant to the defendant's guilt or innocence that they plan to elicit.  Moreover, the defense should be precluded from previewing in their opening statement any argument or evidence along these lines, unless and until they make an offer of proof and seek a ruling from the Court.

33

### E. The Government's Alleged Motives Are Irrelevant

The defense claims it is proper to cast aspersions on the Government's alleged motives for prosecuting the defendant, and they claim they should be permitted to advance theories that Epstein's death motivated the "timing of the charges" in this case. (Def. Opp. at 42). The defense concedes that they have not established a vindictive or selective prosecution claim. (*Id.*). That is because they have no legitimate theory based on the Government's supposed motives. But the defense is not permitted to direct this argument to the jury simply because they lack a basis to make that argument to the Court. (*See* Gov't Mot. at 34-35 ("The Second Circuit has explained that claims of purported government misconduct must be 'directed to the court rather than jury.'" (quoting *United States v. Regan*, 103 F.3d 1072, 1082 (2d Cir. 1997)))).

As the Government said in its motions, the defense is free to argue that Epstein is guilty and the defendant is innocent. (*Id.* at 35-36). They are not free, however, to argue that—irrespective of guilt or innocence—the defendant is being prosecuted *because* Epstein is dead. Certainly, the defense could not make that argument absent any evidence, and no agent—including the Florida and New York case agents—can offer hearsay testimony about why they think prosecutors charged or did not charge certain individuals at certain times. And to be clear, the agents would testify that this case was charged promptly after the Government was in a position to prove the defendant's guilt.

**F.   The Court Should Preclude Challenges to the Credibility of Individuals Who Are Not Witnesses at Trial**

The defendant does not appear to dispute the Government's statement of the law: the credibility of individuals who are neither witnesses nor hearsay declarants is not at issue and cannot be challenged.  (Def. Opp. at 43-45).  The motion should therefore be granted.

The defense's primary response is that they are not sure what statements will be elicited and the non-hearsay bases for such statements.  Of course, the defense has had the Government's witness list and Jencks Act material for more than two weeks.  Those materials make clear that the Government does not intend to elicit hearsay statements from Minor Victim-5 and Minor Victim-6.  And the defense has failed to point to any such evidence.  To give one example, to the extent the Government offers a school record related to Minor Victim-5 as a business record (*see id*. at 45 (citing GX 781-83)), that record would not constitute a statement by Minor Victim-5 offered for the truth of the matter asserted.

Insofar as the defense's point is that the Government might open the door to challenging the credibility of an individual by offering that individual's hearsay statement for the truth of the matter asserted, the Government agrees.  But if the Government does not open the door, the credibility of Minor Victim-5 and Minor Victim-6 are not at issue.  And the defense cannot challenge the credibility of these individuals—in opening statements or otherwise—unless and until the defense seeks a ruling from the Court that the Government has opened the door.

**G.   Evidence or Argument About the Minor Victims' Consent is Categorically Inadmissible**

The defendant is charged with enticement of a minor, transporting a minor, sex trafficking of a minor, and conspiracy to commit those offenses.  (*See* Indictment ¶¶ 11-27).  None of those

35

offenses are negated by a consent defense.  (*See* Gov't Mot. at 39-40).  Accordingly, there is no basis to offer evidence or make argument related to the Minor Victims' consent.

In Counts Two and Four, the defendant is charged under the Mann Act with transporting a minor with intent to violate New York Penal Law § 130.55, and enticing a minor to do the same. That crime does not relate to prostitution.  In Counts One and Three, the defendant is charged with conspiracy to violate the *same statute*—not "varying local state laws" in "multi-jurisdictional locations,"  (Def. Opp. at 47), and not violating the Mann Act with intent to commit prostitution. In Count Six, the defendant is charged with sex trafficking of a person less than eighteen.  In Count Five, the defendant is charged with conspiracy to commit the same.

Because these offenses all involve crimes with victims below specified age cutoffs for which consent is not a defense, consent is not at issue in this case.  The defense is therefore wrong when it argues that the Government has "charged offenses associated with coercion, force and violence."  (*Id*. at 49).  The charges in the Indictment concern sexual activity with a minor, *simpliciter*.  The Government has not, for instance, charged sex trafficking through force, fraud, or coercion, and those elements are not at issue in this case.

This misunderstanding by the defense underlies its response to this point.  For instance, the defense suggests that Minor Victim-4 was engaged in prostitution at the time of the charged offenses, which might give her criminal exposure under Florida law.  (*See id*. at 48).  That is irrelevant, because all that matters for the purposes of 18 U.S.C. § 1591—and therefore this case— is that she was a minor.  *See, e.g.*, *United States v. Corley*, 679 F. App'x 1, 4 (2d Cir. 2017) (summary order) ("Further, the victims could not consent because they were minors.").

The defense also argues that they should be permitted to elicit information that the Minor Victims engaged in voluntary acts, because that may go to the defendant's knowledge. The Government agrees that, if the defense asks questions along those lines, the Court will need to evaluate it on a question-by-question basis. But questions that are relevant to consent but not the defendant's *mens rea*, and any argument to the jury about the Minor Victims' consent, is irrelevant and should be precluded.

### H. The Court Should Be Wary of the Defense Refusal to Address the Government's Motions

The defendant has largely refused to respond to the Government's motion to preclude evidence of the defendant's other acts, offering the defendant's own statements, arguments sounding in nullification, or the baseless argument that the defendant was allegedly a victim of Epstein. (Def. Opp. at 49-57). The Court should accordingly preclude the defendant from opening on these subjects or attempting to elicit evidence along these lines unless and until she explains to the Court how this evidence could possibly be admissible.

As explained above and in the Government's motion, however, there is significant risk that the defense theories will contravene the Federal Rules of Evidence and the law of the Circuit to put irrelevant matters, such as the Florida investigation, before the jury. The Court should not permit the defense to open on these points without first providing notice so they can be litigated. In particular, the Government does not believe there is a good-faith basis to argue that the defendant was a victim of Epstein, such an argument would be entirely irrelevant, and it may well contravene Rule 12.2 of the Federal Rules of Criminal Procedure. The Court should allow these issues to be litigated in advance, and not at sidebar after the jury has already heard the

inflammatory and prejudicial statement or questions by the defense.  The Court should not indulge the defense's effort to get these inflammatory arguments in front of the jury before the Court can rule on this issue.

### I.   The Court Should Not Allow the Defense to Suggest to the Jury That The Defendant Prevailed Against the Minor Victims in Litigation

The fact that the defendant "prevailed" in litigation, for purposes of awarding a small amount of costs, is irrelevant.  That litigation resolved through a voluntary dismissal in connection with a settlement.  To be sure, the defendant is a prevailing party as part of the cost-shifting statute, and so her current counsel sought a total of ███████, presumably in part for the purpose of making this improper argument at trial.  (*See* Def. Opp. at 57-59).  But any suggestion that the defendant "prevailed" can only confuse the jury into thinking that the Court adjudicated the substance of claims in the defendant's favor.  That never occurred.  If the defense is permitted to elicit this testimony, the Government will need to explain the relevant legal principles to the jury, showing them that—contrary to the defendant's position—to a lay person, this is a technicality, and the litigation terminated with a settlement.  (*See id*. at 58).  Even if there were marginal probative value in a civil case, it would deeply confuse the jury to suggest that the defendant prevailed substantively, and would require a mini-trial on the meaning of a prevailing party in civil litigation.  *See* Fed. R. Evid. 403.

### <u>CONCLUSION</u>

The defense would make this trial about many things it is not: the Florida investigation, various civil lawsuits, the media, and the Government's alleged motives, among others.  None of this bears on the factual question that the jury must decide.  The Government asks the Court to

ensure that only relevant evidence and arguments are presented at trial, and that the defense be precluded from offering inflammatory, irrelevant, and prejudicial material.

For the reasons set forth above, the Government respectfully requests that the Court grant the Government's motions *in limine*.

Dated:  October 27, 2021
        New York, New York

<div style="margin-left:50%">

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York


By: _____/s/_____
    Alison Moe
    Lara Pomerantz
    Andrew Rohrbach
    Assistant United States Attorneys

</div>