UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------x
                             :

  UNITED STATES OF AMERICA,        :

           v.               :     20 Cr. 330 (AJN)

                             :

  GHISLAINE MAXWELL,          :

        Defendant.          :

                             :
----------------------------------------------------x

**GHISLAINE MAXWELL'S MOTION TO EXCLUDE UNDER FEDERAL RULE OF EVIDENCE 702 AND *DAUBERT V. MERRELL DOW PHARMACEUTICALS, INC.*, 509 U.S. 579 (1993) AND REQUEST FOR *DAUBERT* HEARING**

Jeffrey S. Pagliuca
Laura A. Menninger
HADDON, MORGAN & FOREMAN P.C.
150 East 10th Avenue
Denver, CO 80203
Phone: 303-831-7364

Christian R. Everdell
COHEN & GRESSER LLP
800 Third Avenue New York,
NY 10022
Phone: 212-957-7600

Bobbi C. Sternheim
Law Offices of Bobbi C. Sternheim
225 Broadway, Suite 715
New York, NY 10007
Phone: 212-243-1100

*Attorneys for Ghislaine Maxwell*

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................... ii

TABLE OF AUTHORITIES ............................................................................................. iii

TABLE OF EXHIBITS .................................................................................................... v

INTRODUCTION AND SUMMARY OF THE ARGUMENT ................................................. 1

FACTUAL BACKGROUND............................................................................................. 2

ARGUMENT ................................................................................................................. 3

I.    Rocchio's proposed testimony is inadmissible. .................................................... 3

    A.    Opinion 1: Minor victims are often subject to a strategic pattern of behaviors, often
        called grooming, that can take a variety of forms and function to render the victims
        vulnerable to abuse, to obscure the nature of the abuse, and to build trust and attachment
        with their abuser. ..................................................................................................... 5

        1.    Rocchio's grooming opinions are unreliable. ............................................. 5

        2.    Rocchio's grooming-by-proxy opinions have no valid basis. ...................... 9

        3.    Rocchio's grooming opinions will not assist the trier of fact..................... 10

        4.    Roccio's grooming opinions are substantially more prejudicial than probative. ....... 11

    B.    Opinion 2: The relationship of trust and attachment between an alleged perpetrator and
        alleged victim prevents victims from being aware that what they are experiencing is
        abuse and can prevent disclosure. .............................................................................. 12

    C.    Opinion 3: Repeated exploitation and abuse can increase the likelihood of victimization
        later in life and can result in long-term traumatic and psychological consequences,
        especially when it occurs in the context of complex trauma........................................ 13

    D.    Opinion 4: The presence of other individuals can facilitate the sexual abuse of minors. 14

    E.    Opinion 5: Nondisclosure, incremental disclosure, and secrecy are common among
        victims of sexual abuse for a variety of reasons, and that memory and disclosure of
        traumatic or abusive events is impacted by a number of factors, including the
        circumstances surrounding the trauma ...................................................................... 15

II.   At a minimum, this Court should hold a *Daubert* hearing................................... 17

CONCLUSION............................................................................................................. 17

# TABLE OF AUTHORITIES

## Cases

*Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256 (2d Cir. 2002) ................................. 3, 4

*Andrews v. Metro N. Commuter R. Co.*, 882 F.2d 705 (2d Cir. 1989) ......................................... 14

*Casey v. Merck & Co.*, 653 F.3d 95 (2d Cir. 2011) ....................................................................... 6

*Celebrity Cruises Inc. v. Essef Corp.*, 434 F. Supp. 2d 169 (S.D.N.Y. 2006) ............................... 9

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) ................................. passim

*E.E.O.C. v. Bloomberg L.P.*, Civ. No. 07–8383(LAP), 2010 WL 3466370, at *14 (S.D.N.Y. Aug. 31, 2010) ................................................................................................................................ 7, 12

*Electra v. 59 Murray Enterprises, Inc.*, 987 F.3d 233 (2d Cir. 2021) ........................................... 4

*Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1999) .............................................................................. 7

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) .................................................................... 4

*Nimely v. City of N.Y.*, 414 F.3d. 381 (2d Cir. 2005) ..................................................................... 4

*Primavera Familienstifung v. Askin*, 130 F. Supp. 2d 450, 530 (S.D.N.Y. 2001) ........................ 6

*United States v. Burns*, No. 07 CR 556, 2009 WL 3617448, at *5 (N.D. Ill. Oct. 27, 2009)....... 11

*United States v. Charley*, 189 F.3d 1251 (10th Cir. 1999) .......................................................... 16

*United States v. DiNapoli*, 8 F.3d 909 (2d Cir. 1993) ................................................................. 14

*United States v. Figueroa*, 618 F.2d 934 (2d Cir. 1980) ............................................................. 14

*United States v. Garcia*, 413 F.3d 201 (2d Cir. 2005) ................................................................ 13

*United States v. Gonyer*, No. 1:12-CR-00021-JAW, 2012 WL 3043020, at *2 (D. Me. July 24, 2012) ........................................................................................................................................ passim

*United States v. Mulder*, 273 F.3d 91 (2d Cir. 2001)................................................................... 14

*United States v. Raniere*, No. 18-CR-2041-NGG-VMS, 2019 WL 2212639, at *7 (E.D.N.Y. May 22, 2019) ......................................................................................................................................... 9

*United States v. Raymond*, 700 F. Supp. 2d 142 (D. Me. 2010)................................... 7, 8, 10, 11

*United States v. Schneider*, No. CRIM.A. 10-29, 2010 WL 3734055, at *4 (E.D. Pa. Sept. 22, 2010) ........................................................................................................................................ passim

*United States v. Serna*, 799 F.2d 842 (2d Cir.1986) ..................................................................... 14

*Wehling v. Sandoz Pharms. Corp.*, 162 F.3d 1158, at *5 (4th Cir. 1998) ................................... 10

**Other Authorities**

Natalie Bennett & William O'Donohue, *The Construct of Grooming in Child Sexual Abuse*, 23 J. Child Sexual Abuse 957, 974 (2014).................................................................................... 6, 11

**Rules**

Fed. R. Evid. 401 ................................................................................................................. 3, 13

Fed. R. Evid. 402 ................................................................................................................. 3, 13

Fed. R. Evid. 403 ................................................................................................................. passim

Fed. R. Evid. 404 ................................................................................................................. 1, 4, 5

Fed. R. Evid. 704 ................................................................................................. 4, 5, 13, 16

## TABLE OF EXHIBITS

EXHIBIT 1: Government's Apr. 23, 2021 Notice of Expert Witness Dr. Lisa M. Rocchio

EXHIBIT 2: Dr. Lisa M. Rocchio's Curriculum Vitae

Ghislaine Maxwell moves to exclude the proposed testimony of Lisa M. Rocchio, Ph.D., under Federal Rules of Evidence 401, 402, 403, 404, 702, 704, and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

The case against Ms. Maxwell is rife with problems. Recognizing them, the government retreats to a familiar tactic: The use of a "blind" expert to fill in the gaps, to explain away the inconsistencies, and to vouch of the truthfulness of the accusers.

The foundation of Lisa M. Rocchio's proposed expert testimony is so-called "grooming" behavior. But grooming is not a widely recognized or highly predictable and verifiable phenomena. To the contrary, "there is no valid method to assess whether grooming has occurred or is occurring."[1] What's more, there is nothing—not a journal article, and not a study—to validate Rocchio's opinions on "grooming-by-proxy"—*i.e.*, that Ms. Maxwell groomed victims not for her own benefit but for that of Jeffrey Epstein.

Rocchio's opinions about "grooming" are entirely subjective—they are based on her personal experience treating a self-selected group of people who claim to have been sexually abused and who Rocchio assumes are telling the truth. There are no studies or data to back up her conclusions; they have no associated error rate; they cannot be tested, verified, or reproduced; and they "virtually impregnable for purposes of cross-examination."[2] Since "expert

---

[1] Natalie Bennett & William O'Donohue, *The Construct of Grooming in Child Sexual Abuse*, 23 J. Child Sexual Abuse 957, 974 (2014).

[2] *United States v. Gonyer*, No. 1:12-CR-00021-JAW, 2012 WL 3043020, at *2 (D. Me. July 24, 2012).

evidence can be both powerful and quite misleading because of the difficulty in evaluating it,"[3] and for all the other reasons given below, this Court should preclude Rocchio from testifying.

## FACTUAL BACKGROUND

The government has endorsed Rocchio as an expert witness. EXHIBIT 1. Although the government says that Rocchio is a "clinical instructor of psychiatry and human behavior," the government's notice does not say in what specialty it proposes this Court endorse her. *Id.* at 1-3.

Instead, the government broadly asserts that Rocchio has "treated patients with trauma, including sexual trauma in childhood and adolescence," has "received specialized training in traumatic stress, sexual abuse, and clinical and forensic psychology," and has "written, presented, and taught about the assessment and treatment of trauma, among other topics." *Id.* at 1-2.

According to the government, Rocchio intends to testify on the following topics:

Individuals with particular vulnerabilities are often targeted by perpetrators of sexual abuse. Sexual abuse of minors frequently occurs through the use of manipulation or coercion in the context of an established relationship that is developed over time, rather than through the use of forcible rape. Minor victims are often subject to a strategic pattern of behaviors, often called grooming, that can take a variety of forms and function to render the victims vulnerable to abuse, to obscure the nature of the abuse, and to build trust and attachment with their abuser. The relationship of trust and attachment can prevent victims from being aware that what they are experiencing is abuse and can prevent disclosure. Minor victims therefore may not identify themselves as victims of abuse while it is ongoing, and may not recognize the consequences of that abuse until adulthood. Repeated exploitation and abuse can increase the likelihood of victimization later in life and can result in long-term traumatic and psychological consequences, especially when it occurs in the context of complex trauma. The presence of other individuals can facilitate the sexual abuse of minors. Dr. Rocchio is also expected to testify that nondisclosure, incremental disclosure, and secrecy are common among victims of sexual abuse for a variety of reasons, and that memory and disclosure of traumatic or abusive events is impacted by a number of factors, including the circumstances surrounding the trauma. Dr. Rocchio has not evaluated any specific victim in this case, and the

---

[3] *Daubert v. Merrell Dow Phar., Inc.*, 509 U.S. 579, 595 (1993).

Government does not presently intend to offer Dr. Rocchio's testimony regarding any specific victim.

*Id.* at 2.

The government elaborates that Rocchio will offer this testimony based

on her education and training on psychological trauma, traumatic stress, interpersonal violence, and sexual abuse [and her] extensive clinical experience treating individuals who suffered sexual abuse and trauma in childhood and adolescence, as well as [her] experience conducting forensic psychological evaluations of people who have experienced sexual abuse and trauma.

*Id.* at 2.

## ARGUMENT

## I.   Rocchio's proposed testimony is inadmissible.

Federal Rule of Evidence 702 governs the admissibility of Rocchio's proposed testimony.

That rule says:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Rule 702 charges district courts "with 'the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002) (quoting *Daubert*, 509 U.S. at 597); *see* Fed. R. Evid. 401 & 402. A court must ensure that an expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Nimely*

*v. City of N.Y.*, 414 F.3d. 381, 396 (2d Cir. 2005) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)). "To decide 'whether a step in an expert's analysis is unreliable, the district court should undertake a rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand.'" *Electra v. 59 Murray Enterprises, Inc.*, 987 F.3d 233, 254 (2d Cir. 2021) (quoting *Amorgianos*, 303 F.3d at 267). If an expert's opinions rest "on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony." *Amorgianos*, 303 F.3d at 266.

The Supreme Court in *Daubert* set forth several factors for the court to consider in determining reliability: "(1) whether a theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) a technique's known or potential rate of error, and the existence and maintenance of standards controlling the technique's operation; and (4) whether a particular technique or theory has gained 'general acceptance' in the relevant scientific community" *Amorgianos*, 303 F.3d at 266 (cleaned up). "Rule [702] applies its reliability standard to all 'scientific,' 'technical,' or 'other specialized' matters within its scope." *Kumho Tire*, 526 U.S. at 147-48.

Assuming an expert's opinions clear the relevancy and reliability hurdles of *Daubert* and Rule 702, the court must nevertheless exclude the evidence if it violates Rule 704, Rule 403, or Rule 404. *Daubert*, 509 U.S. at 595.

Rule 704 provides that "[i]n a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an

element of the crime charged or of a defense" because those "matters are for the trier of fact alone." Fed R. Evid. 704(b).

Rule 403 demands exclusion when the probative value of evidence is substantially outweighed by the danger of unfair prejudice or misleading the jury. Fed. R. Evid. 403.

And Rule 404 prohibits any witness, witness or lay, from offering evidence "of a person's character or character trait . . . to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a)(1).

Applying these provisions, and as elaborated below, each of Rocchio's opinions is inadmissible.

### A. Opinion 1: Minor victims are often subject to a strategic pattern of behaviors, often called grooming, that can take a variety of forms and function to render the victims vulnerable to abuse, to obscure the nature of the abuse, and to build trust and attachment with their abuser.

#### 1. Rocchio's grooming opinions are unreliable.

Rocchio's first and most prominent proposed area of testimony concerns "grooming," which she characterizes as "a strategic pattern of behavior[] . . . that can take a variety of forms and function to render the victims vulnerable to abuse, to obscure the nature of the abuse, and to build trust and attachment with their abuser." Ex. 1, p 2. Rocchio continues that "[i]ndividuals with particular vulnerabilities are often targeted [through grooming] by perpetrators of sexual abuse" and that "[s]exual abuse of minors frequently occurs through the use of manipulation or coercion in the context of an established relationship that is developed over time, rather than through the use of forcible rape." *Id.*

These opinions on grooming are not based "on scientific research or data." *Gonyer*, 2012 WL 3043020, at *2 (granting defendant's motion to preclude evidence from the government's "expert on sexual predator grooming techniques in its case-in-chief in a jury trial on charges of

sexual exploitation of children and possession of child pornography"). To be sure, the government's notice and Rocchio's CV do not point to a single study, report, or article (peer-reviewed or otherwise) establishing the reliability of her opinions on grooming. To the contrary, a review of grooming literature shows that grooming does not have a consistent definition and "there is no valid method to assess whether grooming has occurred or is occurring." Natalie Bennett & William O'Donohue, *The Construct of Grooming in Child Sexual Abuse*, 23 J. Child Sexual Abuse 957, 974 (2014).

Rocchio's opinions appear to be based on her personal experience as a treatment provider of individuals who claim to have suffered trauma. But an expert basing her opinion solely on experience "must do more than aver conclusorily that [her] experience led to [her] opinion," and she must do more than "propound a particular interpretation of [a party's] conduct." *Primavera Familienstifung v. Askin*, 130 F. Supp. 2d 450, 530 (S.D.N.Y. 2001).[4] An expert relies "solely or primarily on experience, the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702, Advisory Committee's Note to the 2000 Amendments. Rocchio cannot provide that required explanation here.

First, nothing beyond Rocchio's personal opinion corroborates the allegations by her patients. Rocchio simply assumes her patients are telling the truth when they claim they were abused. This assumption fatally undermines the reliability of her opinion because "[t]here is also no known or identified rate of error to [Rocchio's] conclusion, nor is there a reliable method or a series of factors guiding [Rocchio's] conclusion as to whether an individual victim is fabricating [her] abuse." *United States v. Schneider*, No. CRIM.A. 10-29, 2010 WL 3734055, at *4 (E.D. Pa.

---

[4] Abrogated on other grounds by *Casey v. Merck & Co.*, 653 F.3d 95, 100 (2d Cir. 2011).

Sept. 22, 2010) (finding expert's opinion unreliable because the expert testified "that when her clinical patients tell her they have been subjected to sexual abuse, she unequivocally believes them"). Rocchio's testimony thus runs the significant "risk of being the *ipse dixit* of the expert against which the Supreme Court has warned." *Gonyer*, 2012 WL 3043020, at *3 (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1999)). And because of her "inability to cite an error rate for false positives," her "testimony [is] virtually impregnable for purposes of cross-examination." *Id.* at *2 (citing *United States v. Raymond*, 700 F. Supp. 2d 142, 146-47 (D. Me. 2010) (excluding testimony about grooming in prosecution for transporting a minor across state lines with the intent of engaging in illegal sexual activity)).

But even if Rocchio's personal opinion about the veracity of her patients were sufficient to render her testimony reliable, her patients are a self-selected group of individuals. Rocchio has not and cannot point to a single study, controlled or otherwise, establishing the representativeness of her patients as typical victims of so-called grooming behavior. Ex. 1; *E.E.O.C. v. Bloomberg L.P.*, Civ. No. 07–8383(LAP), 2010 WL 3466370, at *14 (S.D.N.Y. Aug. 31, 2010) (exclusion of an expert is required where the expert makes "no effort to ensure that the materials he reviewed were representative"). Again, Rocchio's opinions "cannot be challenged or tested in any meaningful way." *See Schneider*, 2010 WL 3734055, at *4.

There are other problems with Rocchio's proposed testimony. She opines, for example, that "[i]ndividuals with particular vulnerabilities are often targeted [through grooming] by perpetrators of sexual abuse," Ex. 1, p.2, but she doesn't explain how often. Half the time? Two-thirds of the time? Nor does she explain how "frequently" the "sexual abuse of minors . . . occurs through the use of manipulation or coercion in the context of an established relationship that is developed over time." *Id.* Rocchio's generic conclusions that grooming "often" happens or

"frequently occurs" are not reliable, because she does not explain how these conclusions were reached, what testing was involved, what data she considered, or how her conclusions can be verified.

This is exactly why the Court in *United States v. Raymond* excluded grooming testimony in a prosecution for transporting a minor across state lines with the intent of engaging in illegal sexual activity. In that case, the expert (Ken Lanning) proposed to testify that "offenders who prefer younger child victims are more likely to first 'seduce' the victim's parents to gain their trust and obtain increased access to the potential victim" and that "[i]n my experience, many valid claims of child sexual molestation, especially those by compliant child victims, involve the delayed disclosures, inconsistencies, varying accounts, exaggerations, and lies often associated with false allegations." 700 F. Supp. 2d. at 148. The Court excluded this testimony as unreliable, explaining:

> Nowhere does Lanning cite an objective benchmark for these frequencies or comparisons. What is "more likely"? Fifty-one percent? How many is "many"? How few is "some"? What is the error rate for Lanning's behavioral generalizations? Can Lanning's opinions be tested or challenged in any objective sense? Nowhere do I see any discussion of false positives. How many cases has Lanning found where people who possess all the characteristics he describes nevertheless turn out to be innocent or where victims who behave as he describes turns out to be lying? Has he even looked for such examples? For all I can tell, that number may be more, fewer, or the same as, the thousands of cases he says that he has investigated where a defendant turned out to be guilty or where a victim turned out to be telling the truth. And are these rules of exclusion, or only of inclusion? For example, Lanning describes what the "grooming or seduction process usually consists of." But what if a defendant fails to do one of the things that Lanning's child molester would usually do? Can the defendant then argue to the jury that he must therefore not have been grooming a child?

*Id.* at 148-49 (citations and footnote omitted). This Court should apply the teachings of *Raymond* to this case.

Finally, Rocchio is a treatment provider of alleged victims of trauma, including victims of sexual assault. But she has no experience treating or evaluating alleged perpetrators of sexual

assault. *See Schneider*, 2010 WL 3734055, at *2-3 (precluding "grooming" testimony from psychologist in prosecution for traveling in foreign commerce for the purpose of engaging in sex with a minor because psychologist's "experience in the field of child sexual abusers and their victims is one-sided, as it is limited to therapeutic sessions with victims of sexual abuse," and because she did "not treat or diagnose adult abusers of children"). Any opinion Rocchio might offer about the psychology of alleged perpetrator and their so-called "grooming" techniques is outside her expertise and therefore unreliable. *United States v. Raniere*, No. 18-CR-2041-NGG-VMS, 2019 WL 2212639, at *7 (E.D.N.Y. May 22, 2019); *see also Celebrity Cruises Inc. v. Essef Corp.*, 434 F. Supp. 2d 169, 192 (S.D.N.Y. 2006) (expert not "permitted to testify regarding" subjects "outside the expertise of the witness").

### 2.   Rocchio's grooming-by-proxy opinions have no valid basis.

Rocchio's generalized grooming opinions are unreliable for all the reasons given above. But there is another reason this Court should exclude her grooming opinions under Rule 702 and *Daubert*: Nothing establishes the reliability of her opinions on "grooming-by-proxy."

Recall that Ms. Maxwell is not accused of soliciting or enticing sexualized massages for herself. Instead, the government claims that Ms. Maxwell recruited minors to provide sexualized massages for Mr. Epstein. Part of this recruiting, the government alleges, involved grooming behavior by Ms. Maxwell.

There is no authority—no journal articles, no studies, no tests, nothing—to support Rocchio's opinions on grooming-by-proxy. These opinions fail under any application of the *Daubert* test, because the theory has not gained any acceptance (let alone general acceptance) in the relevant community; it has not been peer-reviewed; it has not and cannot be tested; and there is no known or potential rate of error. *See Daubert*, 509 U.S. at 594. Rocchio's opinions are grooming-by-proxy are nothing but prejudicial speculation. *See Wehling v. Sandoz Pharms.*

*Corp.*, 162 F.3d 1158, at *5 (4th Cir. 1998) (unpublished) ("An 'expert' opinion is considered unreliable and inadmissible under *Daubert* where, as here, the expert has developed the opinions expressly for purposes of testifying in the case, has [herself] performed no tests or studies that support [her] opinions, has cited no peer-reviewed, controlled studies substantiating [her] opinions, and fails to point to some objective source to show that [she has] followed the scientific method." (cleaned up)).

### 3.   Rocchio's grooming opinions will not assist the trier of fact.

None of Rocchio's opinions about grooming will "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591 ("'Fit' is not always obvious, and scientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes."). As in *Raymond* and *United States v. Gonyer*, the government here "does not propose to have [Rocchio] relate [her] general opinions about grooming by sexual predators to the facts in this case." *Gonyer*, 2012 WL 3043020, at *3. Expert testimony about general principles is helpful only when it "describe[es] widely recognized and highly predictable and verifiable phenomena." *Raymond*, 700 F. Supp. 2d at 150 n.12; *Gonyer*, 2012 WL 3043020, at *3. But even Rocchio does not contend that "grooming" is a "widely and highly predictable and verifiable phenomena." *See* Ex. 1.

Still, without any elucidation, Rocchio claims grooming "often" or "frequently occurs," without providing the jury any explanation of how to decide whether grooming actually occurred in this case. The government thus wants Rocchio to describe her conception of grooming and then leave it to "a lay jury without guidance . . . to apply [her] analyses reliably to the facts of a case in determining guilt." *Raymond*, 700 F. Supp. 2d at 150. That is not how Rule 702 works. *Raymond*, 700 F. Supp. 2d at 143 (grooming testimony "about the behavioral patterns of child molesters and their victims—as it might be used in this case to suggest the defendant's criminal

intent or the truthfulness of the victim's testimony—does not satisfy the fit or reliability requirements" of Rule 702); Bennett & O'Donohue, 23 J. Child Sexual Abuse at 974 ("[I]t appears that grooming is not a construct that ought to be used in forensic settings as it does not meet some of the criteria in the *Daubert* standard.").

### 4.   Roccio's grooming opinions are substantially more prejudicial than probative.

Rocchio's proposed testimony is also inadmissible under Rule 403. For one thing, it will "radically simplify" an otherwise complex case. *See United States v. Burns*, No. 07 CR 556, 2009 WL 3617448, at *5 (N.D. Ill. Oct. 27, 2009) (criticizing the "grooming theory" in in the context of a sentencing guidelines calculation). As the Court explained in *United States v. Burns*, Rocchio's "grooming theory" can "foist a damning teleology on a series of actions each of which might have been motivated by a variety of ends or no ends at all . . . radically simplifyi[ng] the mess of . . . competing feelings, urges, and needs over the course of [a] relationship into the neat dichotomy of victim and predator." *Id. See Gonyer*, 2012 WL 3043020, at * 3 (to describe the so-called "attributes of a sexual predator" is to "invite the jury to so label a defendant" a sexual predator).

For another thing, her testimony "runs the risk of creating a false sense of expert infallibility in an area of testimony that has not been subjected to scientific scrutiny." *Gonyer*, 2012 WL 3043020, at * 3 (citing *Raymond*, 700 F.Supp.2d at 150 ("a toxic mixture of purported expertise and common sense")). This is particularly true given the Supreme Court's recognition that "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it." *Daubert*, 509 U.S. at 595.

Were there any doubt about the reliability or relevance of Rocchio's grooming opinions, which there isn't, the Court should still exclude her testimony under Rule 403.

**B.  Opinion 2: The relationship of trust and attachment between an alleged perpetrator and alleged victim prevents victims from being aware that what they are experiencing is abuse and can prevent disclosure.**

Rocchio's second opinion—that the relationship of trust and attachment between an alleged perpetrator and alleged victim prevents victims from being aware that what they are experiencing is abuse and can prevent disclosure—has several flaws that render it inadmissible.

First, the opinion is unreliable, because it is, in reality, an opinion about grooming disguised as an opinion about delayed disclosure. In Rocchio's view, alleged victims delay or fail to disclose alleged abuse *because* they were groomed. But because Rocchio's proposed grooming testimony is unreliable, not helpful to the trier of fact, and unfairly prejudicial (for all the reasons given above, *supra* Part 1.a-1.c), so too is this opinion unreliable, not helpful to the trier of fact, and unfairly prejudicial.

To reiterate, Rocchio's opinions are based on her personal experience as a treatment provider. She assumes her clients are telling the truth, and her clients are a self-selected group of alleged victims. Rocchio cannot cite an error rate for her conclusions, nor can she say how representative her patients are of those who suffer sexual abuse. *See E.E.O.C.*, 2010 WL 3466370, at *14 (exclusion of an expert is required where the expert makes "no effort to ensure that the materials he reviewed were representative"). Her conclusions cannot be tested or verified, and they are "virtually impregnable for purposes of cross-examination." *Gonyer*, 2012 WL 3043020, at *2.

Second, Rocchio apparently has no experience treating alleged perpetrators. So her view of the "relationship of trust and attachment between an alleged perpetrator and alleged victim" is entirely one-sided. *See Schneider*, 2010 WL 3734055, at *2-3. The second opinion Rocchio proposes to offer is outside her expertise.

12

Finally, Rocchio's second opinion is inadmissible under Rules 704 and 403. It's inadmissible under Rule 704 because it amounts to an opinion that the alleged victims in this case are testifying truthfully. The credibility of the accusers, however, is a question for the jury to decide. It is not properly the subject of an expert opinion.

Rocchio's proposed testimony also violates Rule 403, because it risks jurors accepting her "expert" opinion as gospel at the expense of their duty to evaluate the evidence and to come to their own independent judgment. And because expert opinion testimony can be both "powerful" and "misleading," *Daubert*, 509 U.S. at 595, the balance weighs in favor of exclusion when the predicate for the opinion—grooming—is itself unreliable and not helpful to the jury.

### C. Opinion 3: Repeated exploitation and abuse can increase the likelihood of victimization later in life and can result in long-term traumatic and psychological consequences, especially when it occurs in the context of complex trauma.

Rocchio's third opinion—that repeated exploitation and abuse can increase the likelihood of victimization later in life and can result in long-term traumatic and psychological consequences, especially when it occurs in the context of complex trauma—has nothing to do with this case. It is irrelevant and unfairly prejudicial.

This case is about one thing: Whether the government can prove each of the elements of the indicted offenses beyond a reasonable doubt. *See United States v. Garcia*, 413 F.3d 201, 215 (2d Cir. 2005) ("[T]he jury's singular responsibility to decide from the evidence admitted at trial whether the government has carried its burden of proof beyond a reasonable doubt."). That is the only thing the jury will be asked to decide, and it's a decision that has nothing to do with the "long-term traumatic and psychological consequences" of alleged abuse. Rocchio's opinions on those consequences are irrelevant under Rule 401 and 402, they will not assist the trier of fact in deciding the case, Fed. R. Evid. 702.

13

Rather, Rocchio's testimony will serve only to inflame and passions and emotions of the jury, prejudicing Ms. Maxwell, and to distract and mislead the jury from its constitutional obligation of holding the government to its burden of proof. *See United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980) (evidence is unfairly prejudicial "when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence. The prejudicial effect may be created by the tendency of the evidence to prove some adverse fact not properly in issue or unfairly to excite emotions against the defendant"). This court should exclude Rocchio's third proffered opinion.

### D.  Opinion 4: The presence of other individuals can facilitate the sexual abuse of minors.

Rocchio's fourth opinion—that the presence of other individuals can facilitate the sexual abuse of minors—is not properly admitted as expert opinion. Such an opinion is not based on "scientific, technical, or other specialized knowledge." Fed. R. Evid. 702. It is "basically . . . [a] general pronouncement[]" that "coincide[s] with common sense." *United States v. Serna*, 799 F.2d 842, 850 (2d Cir.1986)*, abrogated on other grounds by United States v. DiNapoli*, 8 F.3d 909, 914 n. 5 (2d Cir. 1993). Expert testimony like this is not admissible because it concerns "lay matters which a jury is capable of understanding and deciding without the expert's help." *Andrews v. Metro N. Commuter R. Co.*, 882 F.2d 705, 708 (2d Cir. 1989). *See also United States v. Mulder*, 273 F.3d 91, 101 (2d Cir. 2001) ("[T]he district court should not admit testimony that is directed solely to lay matters which a jury is capable of understanding and deciding without the expert's help." (quotation omitted)).

14

### E.   Opinion 5: Nondisclosure, incremental disclosure, and secrecy are common among victims of sexual abuse for a variety of reasons, and that memory and disclosure of traumatic or abusive events is impacted by a number of factors, including the circumstances surrounding the trauma

There are several problems with Rocchio's proposed testimony that "nondisclosure, incremental disclosure, and secrecy are common among victims of sexual abuse for a variety of reasons, and that memory and disclosure of traumatic or abusive events is impacted by a number of factors, including the circumstances surrounding the trauma."

The first half of this opinion—regarding nondisclosure, incremental disclosure, or late disclosure—is unreliable because the alleged connection "between child sexual abuse and a failure to report . . . is not a testable hypothesis." *Schneider*, 2010 WL 3734055, at *4. Rocchio offers no data or analyses to support her conclusion, Ex. 1, and she formed her subjective opinion based entirely on her treatment of a self-selected group of individuals she assumes are telling the truth. *Schneider*, 2010 WL 3734055, at *4 ("Indeed, Edelman testifies that when her clinical patients tell her they have been subjected to sexual abuse, she unequivocally believes them."). "There is also no known or identified rate of error to [Rocchio's] conclusion, nor is there a reliable method or a series of factors guiding [Rocchio's] conclusion as to whether an individual victim is fabricating [her] abuse or has simply delayed reporting such abuse." *See id.* And because Rocchio's experience is apparently "limited to providing therapy for those child victims who have reported their abuse," Rocchio is in no position "reliably opine as to the characteristics or psychology of victims who maintain their silence." *See id.* Rocchio's testimony, therefore, "cannot be challenged or tested in any meaningful way." *Id.* Her opinions are unreliable and inadmissible.

Rocchio's testimony also "will [not] help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Rocchio's opinions on disclosure are so generic

as to explain whatever a victim might do. Rocchio says that nondisclosure, delayed disclosure, and incremental disclosure are "common" and therefore consistent with being sexually abused. But since Rocchio does not contend that nondisclosure, delayed disclosure, and incremental disclosure are the inevitable consequence of sexual abuse, then it's necessarily also true that nondisclosure, delayed disclosure, and incremental disclosure are *inconsistent* with being sexually abused. Rocchio's testimony, therefore, adds nothing to the case, because the jury has no means to apply her opinions to the evidence and to determine whether ███████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████.

Rocchio's opinions about disclosure are not helpful to the jury, and they will serve only to prejudice Ms. Maxwell. Fed. R. Evid. 403. While the government will surely contend that Rocchio will not opine as to the truthfulness of any of the alleged victims in this case, the practical effect of Rocchio's opinion that "nondisclosure, incremental disclosure, and secrecy are common among victims of sexual abuse" is to suggest to the jury that those who delayed disclosure are telling the truth about the abuse they suffered. *Schneider*, 2010 WL 3734055, at *6.[5] Because a witness's credibility is solely within the province of the jury to determine, however, Federal Rule of Evidence 704(b) bars testimony that a witness is testifying truthfully. Moreover, Rocchio's testimony serves to bolster the credibility of the victims, and such bolstering is impermissible. *See United States v. Charley*, 189 F.3d 1251, 1267 (10th Cir. 1999) ("In general, expert testimony which does nothing but vouch for the credibility of another

---

[5] Of course, the court should not expect Rocchio to disavow the converse of this proposition—that those who immediately disclose alleged abuse are lying. After all, ████████████████████ ██████████████████████████████     ████████████████████████████████████████ ████

witness encroaches upon the jury's vital and exclusive function to make credibility determinations and therefore does not 'assist the trier of fact' as required by Rule 702.") (citations omitted). Rocchio's opinions on disclosure also contravene Rule 403 because they suggest that delayed reporting of child sexual abuse is more consistent with truthfulness than with fabrication, a determination which the jury must make for itself. *Schneider*, 2010 WL 3734055, at *6.

That leaves the second half of Rocchio's disclosure opinion: that memory and disclosure of traumatic or abusive events is impacted by a number of factors, including the circumstances surrounding the trauma. This opinion is so generic as to be meaningless. It is also a matter of common sense—how could anyone dispute that memory is "impacted by a number of factors"? Moreover, Rocchio is not an expert in the human brain or memory generally. And her opinion about when, why, and how alleged victims of sexual assault remember being assaulted suffers from all the same flaws discussed above: Rocchio doesn't point to any data or studies validating her opinion; her opinions cannot be tested, reproduced, or meaningfully challenged; and her opinion is based on the self-reports of her own clients, who she assumes are telling the truth.

## II.  At a minimum, this Court should hold a *Daubert* hearing

For all these reasons, this Court should preclude Rocchio from testifying in this case. At the very least, this Court should hold a *Daubert* to evaluate each of her proposed opinions.

## CONCLUSION

This Court should exclude Rocchio's proposed testimony or, in the alternative, hold a *Daubert* hearing.

Dated: October 18, 2021

Respectfully submitted,

_s/ Jeffrey S. Pagliuca_
Jeffrey S. Pagliuca
Laura A. Menninger
HADDON, MORGAN & FOREMAN P.C.
150 East 10th Avenue
Denver, CO 80203
Phone: 303-831-7364

Christian R. Everdell
COHEN & GRESSER LLP
800 Third Avenue
New York, NY 10022
Phone: 212-957-7600

Bobbi C. Sternheim
Law Offices of Bobbi C. Sternheim
225 Broadway, Suite 715
New York, NY 10007
Phone: 212-243-1100

_Attorneys for Ghislaine Maxwell_

**Certificate of Service**

I hereby certify that on October 18, 2021, I electronically filed the foregoing *Ghislaine Maxwell's Motion to Exclude Under Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993) and Request for Daubert Hearing* with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Alison Moe
Maurene Comey
Andrew Rohrbach
Lara Pomerantz
U.S. Attorney's Office, SDNY
One Saint Andrew's Plaza
New York, NY 10007
Alison.moe@usdoj.gov
Maurene.comey@usdoj.gov
Andrew.Rohrbach@usdoj.gov
Lara.Pomerantz@usdoj.gov

*s/ Nicole Simmons*