UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------ x
                                :

UNITED STATES OF AMERICA,       :
                                :
         v.                 :     20 Cr. 330 (AJN)
                                :

GHISLAINE MAXWELL,          :
                                :
            Defendant.    :
                                :
------------------------------------------------------ x

## GHISLAINE MAXWELL'S MOTION *IN LIMINE* TO EXCLUDE ITEMS PURPORTEDLY SEIZED DURING SEARCH OF 358 EL BRILLO WAY ON OCTOBER 20, 2005

Jeffrey S. Pagliuca
Laura A. Menninger
HADDON, MORGAN & FOREMAN P.C.
150 East 10th Avenue
Denver, CO 80203
Phone: 303-831-7364

Christian R. Everdell
COHEN & GRESSER LLP
800 Third Avenue New
York, NY 10022
Phone: 212-957-7600

Bobbi C. Sternheim
Law Offices of Bobbi C. Sternheim
225 Broadway, Suite 715
New York, NY 10007
Phone: 212-243-1100

*Attorneys for Ghislaine Maxwell*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

I.    The Palm Beach Investigation ................................................................................. 1

    A.  Message Pads ................................................................................................ 4

    B.  "CPU's," "Zip CD's," "CD's," and "Flash Cards" .................................... 4

    C.  Photos ............................................................................................................ 4

II.   The Proposed Evidence Is Inadmissible Because of a Lack of Authenticity and Personal Knowledge ................................................................................................. 4

III.  Detective Recarey's Absence Implicates Ms. Maxwell's Right to Confront and Cross-Examine Witnesses ....................................................................................... 5

IV.   Conclusion ............................................................................................................... 6

# TABLES OF AUTHORITIES

**Cases**

*Coy v. Iowa*, 487 U.S. 1012, 1017 (1988)..........................................................................5

*Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009) .................................................6

*United States v. Al–Moayad*, 545 F.3d 139 (2d Cir. 2008)............................................4

*United States v. Gelzer*, 50 F.3d 1133 (2d Cir. 1995)....................................................5

*United States v. Muhanad Mahmoud Al-Farekh*, 956 F.3d 99 (2d Cir. 2020) .............5

*United States v. Natale,* 526 F.2d 1160 (2d Cir.1975)...................................................5

*United States v. Netschi*, 511 F. App'x 58 (2d Cir. 2013).............................................5

**Rules**

Fed. R. Evid. 602 ............................................................................................................5

Fed. R. Evid. 901 ............................................................................................................5

# INTRODUCTION

The S2 Indictment alleges that Ms. Maxwell committed the charged crimes between 1994 and 2004. Accusers -1, -2 and -3 purportedly were abused between 1994 and 1997. Accuser 3 is alleged, in the Indictment, to have had contact with Jeffrey Epstein between 2001 and 2004, ███████████████████████████████████████████████████ ████████████████████████.

The Government has listed a series of exhibits allegedly obtained during an October 2005 search of Epstein's Palm Beach residence, 358 El Brillo Way. The Court should prohibit the introduction of any item seized during the search because of serious questions about how and where the evidence was maintained, the lack of any authenticating witness, and the lack of relevance to the charges against Ms. Maxwell.

## I.  The Palm Beach Investigation

Ms. Maxwell was never a target or focus of any investigation undertaken by the Palm Beach Police Department, ever.   Not one of the witnesses contacted during the investigation identified Ms. Maxwell as a person who recruited them, had contact with them, or instructed them to do anything with Epstein.

The reports from the Palm Beach Police Department reflect that Officer ███████████ received an anonymous complaint about an unidentified male on March 14, 2005. Officer ████ began an investigation that, six months later, was turned over to officer Joseph Recarey. Officer ███████ investigative efforts centered on an alleged victim ████████, according to the police reports, was contacted at her school as a result of a concern by her stepmother.  When questioned at the school, ███████ denied any sexual contact with any adult male. Later she acknowledged having sexual contact with Epstein and also told the police that she told Epstein that she was 18 years old. She indicated that she met Epstein through an individual named ████ and also

identified a blonde woman as being at the residence.  (Ms. Maxwell is not blonde and has never

had blonde hair.)

Officer ██████, according to the police reports, then conducted various investigative

measures including subpoenas for phone records and trash collection at Epstein's home. Officer

██████'s involvement appears to have ended on September 21, 2005.

Officer Recarey contacted ██████ on October 3, 2005. According to the police reports, ██████

██████ was introduced to Epstein by her friend, ██████.  At Epstein's home she met his assistant,

██████████████████████.  ██████ introduced ██████ to Epstein and performed a

massage on Epstein. According to ██████ Epstein asked her to recruit other girls, which she did.

██████████ according to ██████, was her contact person.  ██████ was advised by the police that

they considered her actions criminal.  ██████ agreed to cooperate to receive a lesser charge.

Officer Recarey, according to the police reports, continued to investigate the allegations

and interviewed a number of individuals that purportedly had contact with Epstein.  None of the

purported victims had ever met Ms. Maxwell.  None of the purported victims claimed to have

been recruited by Ms. Maxwell.  None of the purported victims claimed to have any contact with

Ms. Maxwell, sexual or otherwise.

The investigation continued. On October 20, 2005, a search warrant was executed at

Epstein's residence. Ms. Maxwell was not present and nothing belonging to Ms. Maxwell was

identified or seized during the execution of the warrant. Through trash searches and the search

warrant, the Palm Beach Police purportedly recovered items that it viewed as being relevant to

the investigation. The agency allegedly turned over all of the seized material to the United States

Attorney pursuant to a subpoena.

In approximately April 2006 the investigation was concluded. According to the police reports, the investigating detectives believed that they had probable cause to charge Jeffrey Epstein, ████████ and ████ Ms. Maxwell's name is absent from any charging document or probable cause statement.

The police reports reflect that a disagreement arose between the police and the state attorney as to how the case was being handled. Essentially, the police believed that Mr. Epstein was not being treated harshly enough and that here had been an excessive amount of delay in the prosecution because of the inaction by the prosecuting attorneys. The disagreements over how the case was being prosecuted became significant and public. The Chief of Police, Mr. Reiter, wrote several letters to the prosecuting attorneys including a letter suggesting that the prosecutors had a conflict of interest. In a letter to one of the alleged victims Chief Reiter wrote: "I do not feel that justice has been sufficiently served by the indictment that has been issued. Therefore please know that his (sic) matter has been referred to the Federal Bureau of Investigation to determine if violations of federal law have occurred."

The reports and seized documents are a mash-up of a various hearsay sources. More often than not, it is difficult to determine how many multiple layers of hearsay exist with regard to a particular piece of alleged evidence. Significantly, the Palm Beach Police Department Property Receipt/Search Warrant Return (Government Exhibit 295), attached as Exhibit A, is cursory, and reflects items moved in and out of the property department. Detective Recarey is dead, and no record custodian exists that can identify what was (1) seized; (2) what was maintained by the Palm Beach Police Department and by whom; (3) what was returned and (4) what was purportedly transferred to the FBI. Other documents provided to the defense suggest that when the FBI opened packages that were alleged to have contained evidence nothing was inside and

the package did not match the item. Simply stated, the evidence collection and retention in this matter is an unreliable mess.

### A. Message Pads

The Government contends that various message pads were seized from different locations by the Palm Beach Police Department and appears to intend to offer hundreds of the messages as evidence at trial. *See, e.g.,* Government Exhibits 1 through 4-K. Many of the alleged messages are undated, un-signed, contain various hearsay statements that do not appear to be relevant to this case, are outside the applicable time frame alleged in the indictment.

### B. "CPU's," "Zip CD's," "CD's," and "Flash Cards"

The search warrant inventory identifies numerous electronic storage devices as having been seized. However, no actual inventory of the alleged contents of these drives appears to have been prepared by anyone in the Palm Beach Police Department. The items were not identified by hard drive name or number or photo. Accordingly, there exists no way for anyone to accurately identify what content may have been on any particular device and how that device may or may not relate to any issue in this case.

### C. Photos

The inventory also lists the seizure of "Photos." Many of the photos are not identified with any particularity.

## II. The Proposed Evidence Is Inadmissible Because of a Lack of Authenticity and Personal Knowledge

Evidence may be authenticated through direct or circumstantial proof. *United States v. Al–Moayad*, 545 F.3d 139, 172 (2d Cir. 2008)). "The chain of custody is ordinarily a method of authentication for physical evidence." *United States v. Gelzer*, 50 F.3d 1133, 1140 (2d Cir.

1995). To be admitted, there must be substantial evidence from which it could be inferred that the evidence is authentic. *United States v. Natale,* 526 F.2d 1160, 1173 (2d Cir.1975).

Here, the original custodian of the evidence is dead and unavailable to testify at trial. The handwritten notes contained in the inventory are confusing and hearsay. The evidence was apparently transferred to case agents who will not be testifying in this trial. Accordingly, no witness has sufficient personal knowledge about the proposed exhibits to satisfy either Fed. R. Evid. 901 or 602. *See United States v. Netschi*, 511 F. App'x 58, 62 (2d Cir. 2013) (no foundation existed to establish that the emails were what the defendant asserted, and the proposed method of introducing them through an investigator with no personal connection—beyond seeing them in an inbox—was insufficient).

## III. Detective Recarey's Absence Implicates Ms. Maxwell's Right to Confront and Cross-Examine Witnesses

The Confrontation Clause protects a criminal defendant's right to cross-examine witnesses. Limitation on cross-examination may violate the Sixth Amendment's Confrontation Clause if it prevents the defendant from, among other things, exposing a witness's biases, motivation, or incentives for lying, or eliciting testimony that is relevant and material to the defense. *United States v. Muhanad Mahmoud Al-Farekh*, 956 F.3d 99, 114 (2d Cir. 2020). The Sixth Amendment's Confrontation Clause entitles a criminal defendant to encounter witnesses "face-to-face." *Coy v. Iowa*, 487 U.S. 1012, 1017 (1988). As the Supreme Court has noted, this right "traces back to the beginnings of Western legal culture" and has, throughout generations, ensured fairness in criminal proceedings—both actual and apparent. *Id.* at 1016–18.

The admission of the seized evidence is based on Government Exhibit 295, the affidavit of Detective Recarey. Only Detective Recarey was familiar with the items seized, the content of the items seized, how the items were stored, and the disposition of those items. "The Sixth

Amendment does not permit the prosecution to prove its case *via ex parte* out-of-court affidavits, and the admission of such evidence" is error. *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 329  (2009).

## IV.  Conclusion

For the foregoing reasons, Ms. Maxwell respectfully requests that the Court exclude from trial all items purportedly seized during search of 358 El Brillo Way on October 20, 2005 and Government Exhibit 295, the affidavit.

Dated: October 18, 2021

Respectfully submitted,


*s/ Jeffrey S. Pagliuca*

Jeffrey S. Pagliuca
Laura A. Menninger
HADDON, MORGAN & FOREMAN P.C.
150 East 10th Avenue
Denver, CO 80203
Phone: 303-831-7364

Christian R. Everdell
COHEN & GRESSER LLP
800 Third Avenue
New York, NY 10022
Phone: 212-957-7600

Bobbi C. Sternheim
Law Offices of Bobbi C. Sternheim
225 Broadway, Suite 715
New York, NY 10007
Phone: 212-243-1100

*Attorneys for Ghislaine Maxwell*

**Certificate of Service**

I hereby certify that on October 18, 2021, I electronically filed the foregoing *Ghislaine Maxwell's Motion In Limine to Exclude Items Purportedly Seized During Search of 358 El Brillo Way on October 20, 2005* with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Alison Moe
Maurene Comey
Andrew Rohrbach
Lara Pomerantz
U.S. Attorney's Office, SDNY
One Saint Andrew's Plaza
New York, NY 10007
Alison.moe@usdoj.gov
Maurene.comey@usdoj.gov
Andrew.Rohrbach@usdoj.gov
Lara.Pomerantz@usdoj.gov

*s/ Nicole Simmons*