

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

November 12, 2021

**BY ECF**

The Honorable Alison J. Nathan
United States District Court
Southern District of New York
United States Courthouse
40 Foley Square
New York, New York 10007

Re:   *United States v. Ghislaine Maxwell*, 20 Cr. 330 (AJN)

Dear Judge Nathan:

The Government respectfully submits this letter in support of the admission of certain statements by the defendant's co-conspirators at trial pursuant to Federal Rule of Evidence 801(d)(2)(E).  Consistent with the Court's directives at the November 1, 2021 conference in this case, the Government has provided the defense with categories of co-conspirator statements it intends to offer at trial, as well as examples of particular statements within each category.  After conferral, the defense indicated that, subject to certain clarifications, it would not object to the majority of the proffered statements.  The defense further indicated that it objected to a particular subset of the Government's proffered statements.  For the reasons set forth below, the Court should admit these statements at trial.

**A.  The Proffered Statements**

The Government identified four categories of statements by co-conspirators of the defendant that the Government may seek to admit at trial: (1) statements made by Epstein to friends and family of Minor Victims; (2) statements made by Epstein to his employees; (3) statements made by a co-conspirator to the Minor Victims or their families; and (4) statements made by

Epstein to the Minor Victims or in their presence.  In addition, the Government provided specific exemplars of statements falling within each of these four categories.  The Government explained that it expected many of the statements falling within the four categories to be offered without use of Rule 801(d)(2)(E), but it included those statements in an abundance of caution.

In response, defense counsel indicated that they did not object to the first, third, and fourth categories so long as those proffered statements are limited to individuals identified as "minor victims" in the Second Superseding Indictment (the "Indictment") or correspondence to defense counsel dated October 11, 2021, and so long as the statements were not made outside of the dates of the alleged conspiracies in the Indictment.  The Government can confirm both that the proffered statements only relate to the victims identified either in the Indictment or in its October 11, 2021 letter to defense counsel, and that all such proffered statements occurred between in or about 1994 and in or about 2004.  Accordingly, the Government understands there is no objection to the statements in those categories.

As to the second category, the defense indicated they object to the first two exemplars provided by the Government.  The defense indicated that they do not object to the third exemplar in this category, so long as it relates to the time period alleged in the Indictment.  The Government can confirm that the proffered statement in that exemplar occurred during the period alleged in the Indictment.

As a result, the parties appear to disagree about the admissibility of only two exemplars provided by the Government.  In particular, those exemplars are as follows:

- In or about 2005, Epstein told an employee witness ("Employee-1"), who was identified as a co-conspirator in the Government's October 11, 2021 letter to the defense, that the defendant used to find girls for him.

- In or about October 2005, Epstein and an employee ("Employee-2"), who was identified as a co-conspirator in the Government's October 11, 2021 letter to

the defense, told Employee-1 to go to his Palm Beach house to help someone who was coming to take computers from Epstein's Palm Beach House.

For the reasons set forth below, the Government respectfully submits that both statements are admissible at trial.

## B. Applicable Law

Hearsay is defined as a declarant's out-of-court statement "offer[ed] in evidence to prove the truth of the matter asserted in the statement," and is inadmissible unless it falls within an exception. Fed. R. Evid. 801(c). "If the significance of an offered statement lies solely in the fact that it was made," however, then "no issue is raised as to the truth of anything asserted, and the statement is not hearsay." Fed. R. Evid. 801(c) advisory committee's note. "Thus, a statement offered to show its effect on the listener is not hearsay." *United States v. Dupree*, 706 F.3d 131, 136 (2d Cir. 2013); *see also George v. Celotex Corp.*, 914 F.2d 26, 30 (2d Cir. 1990) ("To be sure, an out of court statement offered not for the truth of the matter asserted, but merely to show that the defendant was on notice of a danger, is not hearsay.").

Rule 801(d)(2)(E) of the Federal Rules of Evidence provides in relevant part that "[a] statement . . . is not hearsay [if] . . . [t]he statement is offered against an opposing party and . . . was made by the party's co-conspirator during and in furtherance of the conspiracy." To admit a statement under this rule, the Court must find two facts by a preponderance of the evidence: first, that a conspiracy that included the defendant and the declarant existed, and, second, that the statement was made during the course and in furtherance of that conspiracy. *Bourjaily v. United States*, 483 U.S. 171, 175 (1987); *United States v. Gigante*, 166 F.3d 75, 82 (2d Cir. 1999). If those two prongs are satisfied, then the offered statement is admissible for the truth of the matter asserted.

Page 4

With respect to the first prong of this rule, "[t]he conspiracy between the declarant and the defendant need not be identical to any conspiracy that is specifically charged in the indictment" or that is the subject of the relevant trial. *Id.*; *see also United States v. Russo*, 302 F.3d 37, 45 (2d Cir. 2002) (explaining that this is because co-conspirator's statement exception "has its roots in" principles of agency). "In fact, the Second Circuit has held that it is not even necessary that the Government charge a conspiracy to take advantage of Rule 801(d)(2)(E)." *United States v. Ulbricht*, 79 F. Supp. 3d 466, 483-84 (S.D.N.Y. 2015) (citing *United States v. DeVillio*, 983 F.2d 1185, 1193 (2d Cir. 1993)); *see also United States v. Maldonado-Rivera*, 922 F.2d 934, 962 (2d Cir. 1990) ("Though . . . Fed. R. Evid. 801(d)(2)(E) requires proof that both the declarant and the party against whom a declaration is offered be members of the same conspiracy, it does not require that the conspiracy be one charged in the indictment."), *cert. denied sub. nom. Ramirez-Talavera v. United States*, 501 U.S. 1211 (1991). To admit a co-conspirator statement made in furtherance of an uncharged conspiracy, the Government must show only that the declarant and the defendant in question were members of a conspiracy that somehow was "'factually intertwined'" with the charged offenses. *See United States v. Stratton*, 779 F.2d 820, 829 (2d Cir. 1985) (quoting *United States v. Lyles*, 593 F.2d 182, 194 (2d Cir. 1979), *cert. denied* 440 U.S. 972).

When determining whether the predicate conspiracy has been established, the Court is not bound by the rules of evidence, *see* Fed. R. Evid. 104(a), and "the district court may consider the hearsay statement itself" as evidence of "the existence of a conspiracy." *United States v. Padilla*, 203 F.3d 156, 161 (2d Cir. 2000) (citing *Bourjaily*, 483 U.S. at 181). Moreover, although Rule 801(d)(2)(E) "requires that both the declarant and the party against whom the statement is offered be members of the conspiracy, there is no requirement that the person to whom the statement is

Page 5

made also be a member." *In re Terrorist Bombings of U.S. Embassies in East Africa,* 552 F.3d 93, 139 (2d Cir. 2008).

With respect to the second prong of this rule, a statement is in furtherance of a conspiracy if it was in some way designed to promote or facilitate achievement of a goal of the conspiracy. Under this standard, a co-conspirator statement is admissible if it "reasonably [can] be interpreted as encouraging a co-conspirator or other person to advance the conspiracy, or as enhancing a co-conspirator or other person's usefulness to the conspiracy."  *United States v. Tarantino*, 846 F.2d 1384, 1412 (D.C. Cir. 1988).  Thus, statements are in furtherance of the conspiracy if they: (1) inform or provide an update as to the status or progress of the conspiracy, *see United States v. Desena*, 260 F.3d 150, 158 (2d Cir. 2001); (2) "prompt the listener . . . to respond in a way that promotes or facilitates the carrying out of a criminal activity," *Maldonado-Rivera*, 922 F.2d at 958; (3) "seek to induce a co-conspirator's assistance," *Desena*, 260 F.3d at 158; (4) "provide reassurance," *id.*; (5) "serve to foster trust and cohesiveness," *id.*; *United States v. Simmons*, 923 F.2d 934, 945 (2d Cir. 1991); (6) "facilitate and protect" the conspiratorial activities, *United States v. Diaz*, 176 F.3d 52, 87 (2d Cir. 1999); or (7) inform a co-conspirator of "the identity and activities of his coconspirators," *United States v. Rastelli*, 870 F.2d 822, 837 (2d Cir. 1989); *United States v. Rahme*, 813 F.2d 31, 36 (2d Cir. 1987).

**B.  Discussion**

Both proffered statements are admissible as non-hearsay under the Federal Rules of Evidence.  The first exemplar qualifies as a co-conspirator statement under Rule 801(d)(2)(E), and the second exemplar is not offered for the truth of the matter asserted.  Accordingly, both are admissible at trial.

### 1. First Exemplar

The first exemplar to which the defense objects involved a statement Epstein made to Employee-1 in order to provide background information and history about an ongoing sex trafficking conspiracy.  Specifically, Epstein informed Employee-1, in sum and substance, that the defendant used to find girls for Epstein.  The Government expects that Employee-1 will testify that at the time Epstein made this statement, Employee-1 was a participant in a conspiracy to sex traffic minors for Epstein.  In particular, Employee-1 will testify that in 2005, Epstein was still receiving paid sexualized massages from minor girls, which his employees facilitated.  As part of that conspiracy, Employee-1 made phone calls to schedule girls, whom Employee-1 knew to be underage, to provide Epstein with massages, which Employee-1 knew would involve sex acts in exchange for money.  Although Minor Victim-4 had already turned 18 in 2005, Employee-1 will testify that Epstein and his employees continued to arrange for other minor girls to provide the paid sexualized massages.

In other words, although the time period for the sex trafficking conspiracy charged in the Indictment ends in 2004, the same sex trafficking conspiracy continued beyond that time.  Further, the defendant cannot be presumed to have withdrawn from the conspiracy simply because the conspiracy charged in the Indictment ends in 2004.  *See Diaz*, 176 F.3d at 98 ("Unless a conspirator produces affirmative evidence of withdrawal, his participation in a conspiracy is presumed to continue until the last overt act by any of the conspirators." (quoting *United States v. Greenfield*, 44 F.3d 1141, 1150 (2d Cir. 1995))).  The defendant therefore remained in a sex trafficking conspiracy with Epstein in 2005.  And for purposes of analysis under Rule 801(d)(2)(E), it is irrelevant that the Indictment includes a timespan that ends in 2004 because "[t]he conspiracy between the declarant and the defendant need not be identical to any conspiracy

that is specifically charged in the indictment" or that is the subject of the relevant trial. *Gigante*, 166 F.3d at 82; *see also Maldonado-Rivera*, 922 F.2d at 962 ("Though . . . Fed. R. Evid. 801(d)(2)(E) requires proof that both the declarant and the party against whom a declaration is offered be members of the same conspiracy, it does not require that the conspiracy be one charged in the indictment."). Employee-1's testimony regarding the continuing conspiracy thus satisfies Rule 801(d)(2)(E)'s first prong.

When making this statement, Epstein was attempting to induce Employee-1's cooperation to effect the conspiracy's goals. *See, e.g.*, *United States v. Gupta*, 747 F.3d 111, 125 (2d Cir. 2014) ("Statements designed to induce the listener's assistance with respect to the conspiracy's goals satisfy the Rule's in-furtherance requirement."). Here, Epstein's statement to Employee-1 was intended to convey to Employee-1 that other employees had participated in the conspiracy to traffic minors and to encourage Employee-1 to similarly participate. *See United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1199 (2d Cir. 1989) ("Coconspirator statements may be found to be 'in furtherance' of the conspiracy within the meaning of Rule 801(d)(2)(E) if they 'prompt the listener to respond in a way that facilitates the carrying out of criminal activity.'" (quoting *Rahme*, 813 F.2d at 35)). Epstein's statement reassured Employee-1 that Employee-1 would not be alone among his employees by participating in his scheme and informed Employee-1 about the history of the conspiracy. Further, Epstein's statement conveyed to Employee-1 that the defendant was someone who had participated in the scheme and accordingly could be trusted. *See Simmons*, 923 F.2d at 945 (statements between co-conspirators that "provide reassurance, serve to maintain trust and cohesiveness among them, or inform each other of the current status of the conspiracy," further the conspiracy); *see also United States v. Handy*, 668 F.2d 407, 408 (8th Cir. 1982) (statement of

one coconspirator identifying another is in furtherance of conspiracy). Accordingly, this statement is admissible as a co-conspirator statement under Rule 801(d)(2)(E).

This statement is also directly relevant to the charges in the Indictment. Although Epstein made the statement in 2005, he was discussing a time *in the past* when the defendant found girls for him. In other words, this statement references conduct that took place during the period charged in the Indictment. Epstein was telling Employee-1 that the defendant took precisely the actions alleged in the Indictment by recruiting girls for Epstein.

### 2. Second Exemplar

The second exemplar involves instructions provided to Employee-1 by Epstein and Employee-2, who was also a co-conspirator. In particular, Employee-1 was instructed to go to Epstein's Palm Beach residence in October of 2005 and help someone who was coming to remove computers from the house.

This exemplar is a case in which the Government expects to offer the statement without use of Rule 801(d)(2)(E). The instructions are not hearsay because the Government will not offer them for their truth. Rather, these statements are offered to demonstrate their impact on the listener—Employee-1—in order to explain why Employee-1 removed computers from Epstein's Palm Beach house in October of 2005. As a result, the proffered statement is not hearsay. *Dupree*, 706 F.3d at 136 ("[A] statement offered to show its effect on the listener is not hearsay.").

Although this event post-dated the time period contained in the Indictment, it explains why the members of the Palm Beach Police Department found that computer hard drives appeared to be missing from Epstein's Palm Beach residence when they executed a search warrant there on October 20, 2005. In particular, the Government expects a member of the search team to testify that during the search, he observed computer monitors and keyboards without any hard drives

attached to them, suggesting that electronic equipment had been removed in advance of the search. The absence of that electronic equipment, which resulted from Employee-1 removing the equipment at Epstein's instruction, will both corroborate that witness's testimony and will help the jury understand why they have not been presented with any electronic evidence from the 2005 search.

Finally, while the Government does not seek to offer this statement for its truth, the Government notes that it included the statement within the Rule 801(d)(2)(E) disclosure letter because that is an alternative basis of admission. Like the first exemplar, this statement was made during the sex trafficking conspiracy that continued past 2004. The statement was also in furtherance of the conspiracy because it related to efforts to protect co-conspirators from legal jeopardy so that the conspiracy might continue. *Cf. United States v. Johnson*, 469 F. Supp. 3d 193, 213 (S.D.N.Y. 2019) ("[A] 'plot to silence [a] witness[ ]' is admissible as a co-conspirator statement, because the plot "furthers the goals of the conspiracy in that the [conspiracy's objectives] would be facilitated by the acquittal of all the defendants'" (quoting *United States v. Arrington*, 867 F.2d 122, 130 (2d Cir. 1989)). Accordingly, although the Government does not anticipate offering this statement for its truth under Rule 801(d)(2)(E), it would also be admissible on that basis.

Page 10

**D. Conclusion**

For the forgoing reasons, the Government respectfully submits that the proffered statements should be admitted at trial.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: ___s/_____
    Maurene Comey
    Alison Moe
    Lara Pomerantz
    Andrew Rohrbach
    Assistant United States Attorneys
    Southern District of New York

Cc: Defense Counsel (By ECF)