

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

November 12, 2021

**BY ECF**

The Honorable Alison J. Nathan
United States District Court
Southern District of New York
United States Courthouse
40 Foley Square
New York, New York 10007

> Re:   *United States v. Ghislaine Maxwell*, 20 Cr. 330 (AJN)

Dear Judge Nathan:

The Government respectfully submits this letter regarding Government Exhibit 52, a contact book belonging to the defendant, which includes contact information for ███████████ ███████████.  At the November 1, 2021 conference, the Court requested additional briefing regarding this evidence.  The defense has moved to preclude this evidence, arguing that it cannot be authenticated.  (Dkt. No. 390).  For the reasons set forth below, the defense is incorrect. Testimony at trial will establish that Government Exhibit 52 is in fact a contact book that belonged to the defendant, and the fact that the defendant kept contact information for ███████████ ███████████ is compelling evidence of her guilt.  This evidence should be admitted.

**I.   Background**

Government Exhibit 52 is a printed, bound contact book, containing dozens of pages of contacts, including family and friends of the defendant.  The entire book is marked for identification as Government Exhibit 52, and the Government anticipates asking a witness at trial about the book—specifically, an individual who worked for Jeffrey Epstein ("Employee-1"). However, the Government does not intend to offer the full contact book in evidence.  Instead, the

Page 2

Government anticipates offering only specific excerpts from the book that relate to the conduct charged in the Superseding Indictment. Those excerpts have been marked as Government Exhibits 52A through 52F and were produced to the defense on October 11, 2021.[1]  Most notably, Government Exhibit 52G, which the Government intends to offer,[2] contains █████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

█████████████████████████████

Employee-1 is expected to testify that, while working for Epstein in ████, Employee-1 was aware of two sets of contact books maintained in Epstein's residences, both of which were printed and bound in a distinct format. Employee-1 will testify that multiple copies of each book were kept in various locations, including at Epstein's Palm Beach residence. The first book belonged to Epstein. The second book was a small, bound book, which was commonly referred to throughout the residence as the defendant's book. There were multiple copies of that book in the Palm Beach residence, and Employee-1 recalls seeing a copy in the defendant's office in the Palm Beach house. Employee-1's account of the two different contact books is corroborated by documentary evidence. In particular, the household manual in effect during the same year Employee-1 worked for Epstein instructs employees to make sure that "[a] copy of Mr Epstein and Ms Maxwell's telephone directories must be placed to the right of each telephone (except for the

---

[1] These exhibits were marked in advance of the Court's rulings *in limine*. In light of the Court's rulings regarding evidence offered under Rule 404(b), the Government does not intend to offer in its case-in-chief certain of the excerpts that it had previously marked.

[2] The Government is attaching a copy of Government Exhibit 52G. The Government respectfully requests that Government Exhibit 52G be filed under seal because the exhibit contains identifying information for various third parties, including minor victims.

Guestrooms)." *See* Government Exhibit 606 at 7; *see also id.* at 10 ("JE and GM telephone directories [are] placed to the right of telephone" in "check off list" for "pre-arrival preparations" for the master bedroom); *id.* at 22 ("*JE* and *GM* telephone directories" in Vehicles and Bicycles section); *id.* at 23 ("*JE* and *GM* telephone directories placed to the right of the telephone" for "Ms Maxwell's desk").

Employee-1 has examined Government Exhibit 52 in preparation for trial and recognizes it to be the defendant's contact book, copies of which were maintained in Epstein's Palm Beach residence, among other locations.  Employee-1 recognizes the shape, color, and binding of the book, and recognizes the formatting and style of the entries as consistent with the manner in which the defendant's book was organized and the way in which entries appeared.  Employee-1 also recognizes several of the contacts listed in Government Exhibit 52 as friends of the defendant and Epstein.  The entries include, among others, the defendant's family members.  *See* GX 52E.

## II. Discussion

### A. Authenticity

As a general matter, "an item of evidence must 'be authenticated through introduction of evidence sufficient to warrant a finding that the item is what the proponent says it is.'"  *United States v. Corley*, 679 F. App'x 1, 4 (2d Cir. 2017) (summary order) (quoting *Crawford v. Tribeca Lending Corp.*, 815 F.3d 121, 126 (2d Cir. 2016)).  "Under Rule 901 of the Federal Rules of Evidence, '[t]he requirement of authentication . . . as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.'"  *United States v. Jackson*, 345 F.3d 59, 65 (2d Cir. 2003) (quoting Fed. R. Evid. 901(a)).

This bar for authentication "is 'not particularly high.'"  *United States v. Bout*, 651 F. App'x 62, 63–64 (2d Cir. 2016) (summary order) (quoting *United States v. Gagliardi*, 506 F.3d 140, 151

Page 4

(2d Cir. 2007)).  To meet this burden, the Government need only introduce "sufficient proof . . . so that a reasonable juror could find in favor of authenticity or identification." *United States v. Tin Yat Chin*, 371 F.3d 31, 38 (2d Cir. 2004) (internal quotation marks omitted).  For "a document attributed to the defendant, the prosecution need only provide a rational basis from which the jury could infer that the document did, in fact, belong to [her]." *United States v. Osarenkhoe*, 439 F. App'x 66, 69 (2d Cir. 2011) (summary order) (internal quotation marks and citation omitted).

Evidence of authenticity "may be direct or circumstantial, and the latter category may include distinctive characteristics of the document itself." *United States v. Maldonado-Rivera*, 922 F.2d 934, 957 (2d Cir. 1990); *Tin Yat Chin*, 371 F.3d at 37.  Indeed, Rule 901 contemplates multiple avenues through which a proponent may authenticate evidence.  For example, the proponent may offer "[t]estimony that an item is what it is claimed to be," or may offer evidence of "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." Fed. R. Evid. 901(b)(1) and (4).

Here, the testimony of Employee-1 establishes the authenticity of Government Exhibit 52. In particular, the fact that Employee-1 recognizes this exhibit and can identify it as the defendant's contact book based on its "distinctive characteristics" is all that Rule 901 requires.  Indeed, the Second Circuit has affirmed the admission of evidence under similar circumstances, where, as here, the Government does not offer evidence at trial about how the exhibit came into the Government's possession.  In *United States v. Al Farekh*, 810 F. App'x 21 (2d Cir. 2020) (summary order), the defendant argued that the Government had failed to establish the authenticity of "handwritten letters that were found in a USB drive that was handed to an agent of the Federal Bureau of Investigation in Afghanistan." *Id.* at 24.  The Second Circuit rejected the challenge. "Although the Government did not present evidence regarding the circumstances surrounding the

seizure of the USB drive, Federal Rule of Evidence 901(b)(4) permits authentication based on '[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances.'" *Id.* (alteration in original) (quoting Fed. R. Evid 901(b)(4)). Witness testimony about the content of the letters was "sufficient to pass the relatively low bar for authentication of evidence," and the Second Circuit explained that "any remaining questions as to the reliability of the letters go to their evidentiary weight, not their admissibility." *Id.* at 24-25; *see United States v. Bagaric*, 706 F.2d 42, 67 (2d Cir. 1983), *abrogated on other grounds by Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249 (1994) (letter's contents were sufficient to authenticate it under Rule 901(b)(4)).

The same is true here. Employee-1 will identify Government Exhibit 52 as the defendant's contact book based on its appearance and contents. Moreover, Employee-1's testimony will be corroborated by the contents of the book itself, which includes (a) contact information for the defendant's family, and (b) contact information for victims who interacted with the defendant during the relevant time period. That is more than sufficient to establish the authenticity of the exhibit under Rule 901. To the extent the defense disputes Employee-1's testimony, or takes issue with the circumstances under which Government Exhibit 52 came into the Government's possession,[3] those arguments are for the jury. The anticipated testimony satisfies Rule 901, and the evidence should be admitted.

---

[3] It is a matter of public record that in 2009, an employee of Jeffrey Epstein, Alfredo Rodriguez, attempted to sell Government Exhibit 52 to a plaintiff's attorney. The attorney contacted the Federal Bureau of Investigation, and agents seized Government Exhibit 52 from Rodriguez, who was arrested. Rodriguez has stated that he took the book from Epstein's Palm Beach residence during his employment for Epstein from 2004 to early 2005. Government Exhibit 52 has remained in the possession of the FBI since that time. Rodriguez pleaded guilty to obstruction of justice and acknowledged that he was obligated to turn this evidence over to the FBI years earlier, when he was interviewed during the course of the FBI's investigation of Epstein. *See United States v. Alfredo Rodriguez*, 10 Cr. 80015 (KAM). Rodriguez passed away following the conclusion of the

Page 6

### B. Relevance

Federal Rule of Evidence 401 defines "relevant evidence" as evidence that "has any tendency to make a fact more or less probable than it would be without the evidence" provided that "the fact is of consequence in determining the action." Relevant evidence is "not confined to that which directly establishes an element of the crime." *United States v. Gonzalez*, 110 F.3d 941, 942 (2d Cir. 1997). As the Second Circuit has explained, "[t]o be relevant, evidence need only tend to prove the government's case, and evidence that adds context and dimension to the government's proof of the charges can have that tendency." *Id.*

Government Exhibit 52 is plainly relevant. The specific excerpts from the exhibit that the Government seeks to offer include the names and contact information of ██████████████ ████████████████████████████ The presence of those names and phone numbers establishes that the defendant possessed contact information for ███████ ██████████████████████ which of course is of significant relevance at this trial. This evidence thus demonstrates that the defendant in fact knew ███ ███████████████████████████████████. Moreover, with respect to several of the contacts listed in ████████████████████ ██████████████████, which support an inference that the defendant knew that at least some of these individuals were minors.

While Employee-1 did not see the defendant's contact book until ████, the contents of the book make plain that it contains information gathered previously, during the course of the charged

---

criminal case. Nothing about those circumstances affects the admissibility of this exhibit. Indeed, if anything, they cut in favor of authenticity: if Rodriguez had fabricated Government Exhibit 52, then he would not have been guilty of obstruction of justice. But the opposite happened. Rodriguez admitted that this evidence was genuine and that he was guilty of obstruction of justice for concealing it.

conspiracy.  By its very nature, a contact book that collects phone numbers for many people is not the sort of thing that is generated in a single day.  Like the digital contact list in the ordinary modern cellphone, a directory represents a collection of information and numbers typically gathered over a period of years.  Based on this alone, the jury could readily infer that Government Exhibit 52, which was seen by Employee-1 in ███, contains information the defendant collected during the period of the conspiracy, including 2004 and earlier.  But there is more.  As noted, the book contains contact information for ████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ███████████████████████████

In any event, GX-52 is relevant even if it was created after the period of the conspiracy— though, as noted, it clearly was not.  Proof that the defendant, at any point in time, had contact information for ████████████████████████████ is relevant to her knowledge of and participation in the crime.  Take, for example, a defendant charged with a pattern of bank robberies.  If police officers searched the defendant's apartment long after the crimes were committed and discovered a list of the various bank branches the defendant had robbed, there would be no question that the list was relevant, even if it were unclear when the list was made or there was some suggestion that the list was made a year after the robberies.  Such a list would reflect the defendant's knowledge of relevant locations, persons, and activities involved in the alleged criminal conduct.  This case is no different. No matter when the defendant had this contact information, this evidence demonstrates that the defendant knew ████████████████████████████████████████ ████████████████████████████.  Thus, this evidence is directly relevant to the issues before the jury at this trial.  *See United States v. Abu-Jihaad*, 630 F.3d 102, 132 (2d Cir. 2010) ("To be

relevant, evidence need not be sufficient by itself to prove a fact in issue, much less prove it beyond

a reasonable doubt.").

### III. Conclusion

The Government respectfully submits that this evidence should be admitted.   The

Government seeks leave to file this letter with redactions, ████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████

 

 

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney


By: ___s/_____
    Maurene Comey
    Alison Moe
    Lara Pomerantz
    Andrew Rohrbach
    Assistant United States Attorneys
    Southern District of New York


Cc: Defense Counsel (By ECF)