LalWmaxC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4                 v.                          20 Cr. 330 (AJN)

5   GHISLAINE MAXWELL,

6                 Defendant.
                                             Telephone Conference
7   ------------------------------x

8                                            New York, N.Y.
                                             October 21, 2021
9                                            12:00 p.m.

10  Before:

11
                        HON. ALISON J. NATHAN,
12
                                             District Judge
13
                            APPEARANCES
14
    DAMIAN WILLIAMS
15      United States Attorney for the
        Southern District of New York
16  BY:  LARA E. POMERANTZ
         ALISON G. MOE
17       ANDREW ROHRBACH
         MAURENE R. COMEY
18       Assistant United States Attorneys

19  BOBBI C. STERNHEIM
        Attorney for Defendant
20      -and-
    COHEN & GRESSER LLP
21  BY:  CHRISTIAN R. EVERDELL
          -and-
22  HADDON, MORGAN and FOREMAN, P.C.
    BY:  LAURA A. MENNINGER
23       JEFFREY S. PAGLIUCA

24  Also Present:  Rigoberto Landers
                   Susan Yee Foon
25                 Rhonda Mayers-Best
                   Thomas Mixon

                    SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

LalWmaxC

1          (Case called; appearances noted)

2          THE COURT:  Good afternoon, everyone.  This is Judge

3    Nathan.

4          We are here for a pretrial conference in this matter.

5    The case is scheduled to commence the jury selection process on

6    November 4, trial to commence on November 29.

7          The primary purpose of today's conference is to go

8    over jury selection matters and logistics.  I'll also address

9    the request to seal the proposed questionnaire and voir dire

10   submitted by the parties, as I indicated I would in my order

11   docketed yesterday.

12         As a preliminary matter, let me note that we are

13   proceeding telephonically today.  Counsel, my view is that,

14   under Rule 43, we need not be in person with Ms. Maxwell

15   present for today's proceeding.  We do have Ms. Maxwell on the

16   phone, of course.  I do want to make sure counsel agree with

17   that view and have no objection to proceeding remotely by phone

18   conference today.

19         Ms. Pomerantz.

20         MS. POMERANTZ:  The government has no objection, your

21   Honor.

22         THE COURT:  Ms. Sternheim.

23         MS. STERNHEIM:  The defense has no objection.  Thank

24   you.

25         THE COURT:  OK.  Thank you.

LalWmaxC

1          All right.  We will proceed.

2          A few preliminary matters.

3          I did provide public access to this proceeding via a

4   phone line that can accommodate up to 4,000 callers, who are in

5   listen-only mode.  I do remind anyone calling in and listening

6   that federal law prohibits the recording or rebroadcasting of

7   any portion of this proceeding, and violation of that rule can

8   result in monetary or other sanctions.

9          Another preliminary matter, as I indicated in my

10  order, Dkt. No. 344, I will ensure access to this proceeding

11  and all proceedings in the case for alleged victims as well as

12  for family members of Ms. Maxwell, and the District Executive's

13  Office has coordinated with defense counsel to ensure access to

14  this call by family members of Ms. Maxwell.  The D.E. has also

15  coordinated with the victim coordinator unit in the U.S.

16  Attorney's Office to ensure access for any alleged victims who

17  wish to be present.

18          My thanks to the D.E.'S Office for facilitating those

19  arrangements.

20          On that front, I will note that I have asked

21  representatives of the District Executive's Office and the jury

22  department to be on the phone today in case I need their

23  assistance in handling any logistics that may come up, although

24  I do believe I have a firm handle on the arrangements.  I've

25  been working hard with the folks in the clerk's office, the

LalWmaxC

```
1    jury department, the D.E.'S Office to make sure we are ready
2    for the upcoming proceeding.
3            As I've noted, the primary purpose of today's
4    conference is to go through the questionnaire and voir dire
5    procedures for jury selection.  I've received the parties'
6    joint proposed questionnaire and voir dire.  The defendant
7    filed a motion regarding the voir dire procedures, and I've
8    considered those submissions as well, Dkt. No. 341, and the
9    government's response at 355.
10           I've also, in coming to resolution as to how to handle
11   these procedures, considered examples of questionnaires and
12   voir dire used for jury selection in many high-profile matters
13   by my colleagues in this district and other districts.  I've
14   reviewed and studied case law on the subject, including
15   Press-Enterprise Co. v. Superior Court of Cal., 464 U.S. 501
16   (1984); Presley v. Georgia, 558 U.S. 209 (2010); U.S. v. King,
17   140 F.3d 76 (2d Cir. 1998); and ABC, Inc. v. Stewart, 360 F.3d
18   90 (2d Cir. 2004).  And of course, all of this must be
19   considered in conjunction with the district's COVID-19
20   protocols.
21           As to that, as I noted, I've worked closely and
22   extensively with the very hardworking folks in the clerk's
23   office, including the jury department and the D.E.'S Office, to
24   map out plans for how to effectuate my determinations as to the
25   best way to proceed under all of these factors and
```

LalWmaxC

1    considerations.

2              Taking all of that into account, I'll describe now how

3    we will proceed.

4              As I've indicated, we will do a screening

5    questionnaire before jury selection.  That questionnaire will

6    prescreen for what I see as the major for-cause strike issues

7    in the case.  So, for example, the trial's length and schedule,

8    a juror's personal knowledge of the parties, extent of a

9    juror's awareness of publicity about the case and the

10   defendant, and any bias due to publicity or as a result of the

11   nature of the charges.  This sort of questionnaire is, of

12   course, very common in high-profile cases.  I transmitted my

13   draft questionnaire to counsel yesterday, and we'll discuss it

14   shortly.

15             As they typically do, the clerk's office will randomly

16   assign juror numbers and create a corresponding list of names

17   and juror numbers for the prospective jurors.  That list will

18   go to counsel and the Court for use throughout jury selection.

19   On the questionnaire itself, jurors will be identified only by

20   their assigned juror number.  We will refer to the jurors in

21   court throughout the process by their juror numbers only.

22             The jury department will administer the questionnaire

23   in morning and afternoon panels on November 4th, 5th and 12th.

24   The procedure between questionnaires and voir dire will be as

25   follows:

LalWmaxC

| | |
|---|---|
| 1 | The jury department will provide the completed |
| 2 | questionnaires to the U.S. Attorney's Office for copying.  The |
| 3 | U.S. Attorney's Office will provide copies to the defense. |
| 4 | I've been informed by the jury department that this is the |
| 5 | standard practice for the administrative tasks, but certainly |
| 6 | let me know if either side has a different proposal to |
| 7 | effectuate that administrative task of copying the completed |
| 8 | questionnaires. |
| 9 | After reviewing the completed questionnaires, counsel |
| 10 | must then confer in good faith and jointly submit to the Court |
| 11 | four lists: |
| 12 | No. 1, prospective jurors that both sides agree should |
| 13 | proceed to voir dire; |
| 14 | Two, prospective jurors that both sides agree should |
| 15 | be excused; |
| 16 | Three, prospective jurors that the defense but not the |
| 17 | government believes should be excused; and |
| 18 | Fourth, prospective jurors that the government but not |
| 19 | the defense believes should be excused. |
| 20 | I want to pause for a moment because I heard a chime. |
| 21 | Ms. Williams, I just want to confirm that we have |
| 22 | Ms. Maxwell and counsel and the court reporter still on the |
| 23 | line. |
| 24 | THE DEPUTY CLERK:  Yes, Judge.  That's someone coming |
| 25 | into the room. |

LalWmaxC

1        THE COURT:  OK.  Thank you.

2        Those are the four lists.

3        For the questionnaires completed on November 4th and

4    5th, those lists will be due to the Court via email by November

5    7.  For questionnaires completed on November 12, the lists will

6    be due by email by November 13, and that's so I can let the

7    jury department know who to call back for voir dire.

8        I am setting a placeholder conference, an in-person

9    placeholder conference for November 15 at 9:30 a.m. to resolve

10   disputes, as needed, with respect to for-cause strikes based on

11   the questionnaire.

12       That's the questionnaire process.

13       I'll turn now to voir dire.

14       On November 16th through 19th, if we need all of those

15   days, I will then conduct voir dire of the individual jurors

16   who have been brought back, asking appropriate follow-up

17   questions based on questionnaire responses, some additional

18   questions more appropriately asked during oral voir dire, and

19   background information that will enable the lawyers to gather

20   substantial information in aid of the exercise of informed

21   peremptory challenges.  And yesterday, I sent the parties my

22   draft voir dire, which we will also discuss in a moment.

23       I will conduct this as one-on-one voir dire with each

24   prospective juror in the presence of the parties and with

25   public access to the proceedings.  We will do this one juror at

LalWmaxC

```
 1     a time, because of Covid-related space limitations, to
 2     streamline the process in light of a likelihood of high a
 3     number of sidebars which would otherwise be required, and to
 4     ensure that the comments of one juror do not infect the pool.
 5     The other jurors will be held in a different courtroom on the
 6     same floor and brought over to the courtroom we will be in one
 7     at a time.
 8            I am not going to permit attorney-conducted voir dire.
 9     As a general matter, neither I nor most of my colleagues permit
10     attorney-conducted voir dire.  The factors related to this case
11     point strongly against deviation from that standard practice.
12     That doesn't mean counsel can't have input into potential
13     follow-up questions.  As in any voir dire, if you want to
14     propose a particular follow-up question, you can tell me and
15     I'll decide whether or not to ask the proposed question and how
16     best to phrase it in a neutral and appropriate way.
17            As noted, I will permit public access to the voir dire
18     questioning.  Prospective jurors will be referred to only by
19     their juror numbers.  In order to comply with the district's
20     COVID-19 protocols, the public will be able to access the voir
21     dire questioning via overflow rooms in the courthouse.  The
22     overflow rooms will have live feeds of the proceeding.
23            Two pool reporters will be permitted in the courtroom
24     proper.  In-house press will be able to view the proceedings
25     from press rooms, which, like the public overflow rooms, will
```

LalWmaxC

1    have live feeds of the proceedings.

2              The D.E.'S Office will facilitate these arrangements,

3    and I am grateful in advance to them as well as for the thought

4    that they've already put into this process.

5              That's how we'll work.  There are some deviations from

6    my normal practices certainly in light of the many

7    considerations in this case.  The COVID-19 protocols make

8    spacing tricky.  The procedures I've described are the best way

9    to screen the necessary number of jurors for this type of

10   high-profile case in a an efficient manner considering the

11   space and time limitations that we'll be working with.

12             We're also all aware that there's been intense media

13   and public interest in this case, as the defendant's motion

14   highlights, and I expect certainly will continue.  Moreover,

15   this trial is dealing with sensitive and controversial issues;

16   namely, the alleged sexual assault and sex trafficking of

17   minors.  To impanel a jury that can fairly and impartially

18   consider these charges, I'll have to ask personal questions

19   about the prospective jurors' experience with these issues.

20   I've carefully taken all of these factors into account.

21             Based on this careful consideration of all of the

22   relevant factors, the procedures I've just described will

23   protect the health of the parties and prospective jurors during

24   the continuing pandemic; help protect juror privacy; help

25   ensure juror candor and honesty; and, ultimately, help to

LalWmaxC

1    ensure the selection of a fair and impartial jury.

2          At the same time, these procedures will ensure the

3    First Amendment rights to public access, as is necessary and

4    required by law.

5          I'm going to pause here and ask if counsel have any

6    questions about what I've described so far.

7          Ms. Pomerantz.

8          MS. POMERANTZ:  Thank you, your Honor.

9          The government, I'm happy to raise certain questions

10   we have regarding the names and locations to be supplied in the

11   oral voir dire, as the government has certain proposals that it

12   would like to set forth for the Court.  I'm happy to do that

13   now or at another point if the Court would like.

14         THE COURT:  Do these proposals relate to the

15   government's motion that was just filed but not fully briefed,

16   or are those separate concerns?

17         MS. POMERANTZ:  It relates to the government's motion

18   regarding privacy and dignity of certain minor victims in this

19   case, specifically relating to the request that victims and

20   witnesses, certain victims and witnesses testify under

21   pseudonyms or their first names only.

22         THE COURT:  Right.  I think I have to get briefing on

23   that motion.  Needless to say I'm not prepared to rule on that

24   yet, so to the extent that the proposals you want to suggest

25   had a resolution of that motion, I think we need to wait.  But

LalWmaxC

1   let me say that I think we have time to resolve that because

2   those matters I don't think need to be dealt with for purposes

3   of the questionnaire but for purposes of the oral voir dire.

4           Do you agree with that, Ms. Pomerantz?

5           MS. POMERANTZ:  Yes, I agree with that, your Honor.

6           THE COURT:  OK.  Anything else you want to raise based

7   on the process I've described so far?

8           MS. POMERANTZ:  No.  Thank you, your Honor.

9           THE COURT:  Ms. Sternheim.

10          MS. STERNHEIM:  Thank you, Judge.

11          While we appreciate the questioning of the jurors one

12  at a time, we do have a concern with regard to very sensitive

13  issues being raised in the presence of media and other public,

14  other people in the public who may have access to this.  I

15  would like to know how the Court is going to handle that.

16          THE COURT:  Well, I think, as in any voir dire, there

17  are sometimes instances in which something slightly different

18  might be required, but I guess without knowing specifically

19  what the issue is or what the specific concern is, I don't know

20  that I can address it writ large.  If you want to give an

21  example, I'm happy to hear that.

22          MS. STERNHEIM:  Sure.

23          With regard to personal experience that may have

24  bearing on the subject matter of the charges, that is

25  particularly sensitive information.  I think that it has a

LalWmaxC

1    chilling effect for any juror who, under oath, is going to have

2    to answer very personal questions, let alone to have to answer

3    those questions in a public forum with press being present and

4    other members of the public viewing this from an overflow room.

5         THE COURT:  My view is we can deal with those

6    situations kind of one at a time, depending on what emerges

7    from the particular questionnaire that we're looking at at the

8    time.  As an example, I have conferred with Judge Donnelly, who

9    went through similar voir dire questioning recently in the

10   Eastern District, and there was public access to the individual

11   questioning, and I think all of that was managed in a way that

12   everybody felt comfortable with.

13        I think we start with, as the law requires, as the

14   First Amendment requires and case law requires, the presumption

15   of public access.  I will take into account, as need be, any

16   specific requests for deviation in a tailored and narrow way to

17   ensure juror candor, protection of privacy, and the like.

18        That's my overall approach.  I don't think we need to

19   deal with it in any broader way now, but tell me if you

20   disagree.

21        MS. STERNHEIM:  I do not disagree.  We do not need to

22   deal with it now.  I just wanted to express our concerns on

23   that issue.

24        THE COURT:  OK.  Anything else, Ms. Sternheim?

25        MS. STERNHEIM:  Yes.  Just a moment, please?

LalWmaxC

1          THE COURT:  Go ahead.

2          MS. STERNHEIM:  Your Honor, at this point do we know

3    how many jurors will be summoned and how many the Court is

4    planning to select for the final voir dire?

5          THE COURT:  Yes.  What I can tell you -- and again, I

6    just want to say an enormous thanks to the jury department, who

7    I've been working with closely on this for months, as you can

8    imagine.  The return rate in the Covid era has gone up and down

9    on summonses, but we have estimated our ability to administer

10   the questionnaire over the three days in a morning and

11   afternoon panel each day; the goal was 600 jurors, if we need

12   it.

13         That's the answer to question one.

14         Question two I was going to get to the exercise of

15   peremptories in a moment.

16         I'm sorry.  Maybe I misunderstood.

17         What was question No. 2, Ms. Sternheim?

18         MS. STERNHEIM:  It was how many you are going to

19   ultimately have us select to sit.

20         THE COURT:  Yes.  OK.  I thought I had that in a prior

21   order, but my intention is to sit six alternates, so we'll have

22   a jury of 18.

23         MS. STERNHEIM:  Thank you.

24         THE COURT:  OK.  Are there other questions on what was

25   discussed so far, Ms. Sternheim?

LalWmaxC

1          MS. STERNHEIM:  Does the Court know how many will be

2     in each sitting, or are you just dividing up the 600 by the

3     number of sittings?

4          THE COURT:  They've put out a certain number of

5     summonses with --

6          Let me just back up.  The need to do it over several

7     days, the need to do it in panels and the limits on the numbers

8     are dramatically affected by Covid, because we have six-foot

9     spacing requirements under the district protocols.  They've

10    worked hard to maximize the number of people who can sit in

11    what will be two rooms, two large rooms, with sufficient

12    spacing.  All of those rooms require staffing, of course, so I

13    believe that we're talking about 100 people per panel.

14          Let me just get confirmation of that.

15          MS. MAYERS-BEST:  My name is Rhonda Mayers-Best.  I'm

16    the jury administrator.

17          THE COURT:  Just a second, Rhonda.  Thank you.  I'll

18    let you know if I need you, and I appreciate that.

19          And Rhonda, you can confirm you've summoned

20    anticipating 100 people per panel.  Is that correct, Rhonda?

21          MS. MAYERS-BEST:  Correct.

22          THE COURT:  OK.

23          Ms. Sternheim, we'll have 100 people in the morning

24    each day, 100 people in the afternoon each day, over the course

25    of three days.

LalWmaxC

1          MS. MAYERS-BEST:  Correct.

2          MS. STERNHEIM:  Thank you, Judge.

3          The other questions I can wait until the Court

4     addresses other protocol.

5          THE COURT:  OK.

6          And let me just pause.

7          The next thing I wanted to talk to you about goes to

8     the exercise of peremptories and the number of qualified jurors

9     that I will, number of jurors I'll seek to qualify.

10          Once we get a sufficient number of qualified jurors

11     through the practice I've just described, the parties will

12     exercise their peremptories, of course, and what I'd like

13     counsels' input on at this time is a timing question.  I've

14     thought a lot about this.  I think we've got two potential

15     options as to timing of the exercise of peremptories, depending

16     on how quickly we move through the voir dire process and get a

17     sufficient number of qualified jurors.

18          If we use every day, including the 19th, then I think

19     we only have one option, but if we're done before that, which I

20     think there's a good chance of, then I think we have two

21     options: either November 19 or November 29.

22          So let me just back up.

23          As a preliminary matter, by my count, I need to

24     qualify 40 jurors.  Consistent with Rule 24 of the Federal

25     Rules of Criminal Procedure, 12 primary jurors, with respect to

LalWmaxC

1   that, the defense gets ten peremptories; the government gets

2   six.  As I said, I'll seat six alternates.  Under the rule,

3   that's three additional peremptories per side for the

4   alternates.  If my math is right, that adds up to 40.

5          To have a cushion heading into peremptory challenges,

6   it's my plan -- again, time dependent -- to try to qualify at

7   least 50 jurors, somewhere in the 50 to 60 range.  So then the

8   question is do we have that panel of qualified jurors come back

9   on the 19th and exercise peremptories, or do we have them come

10  back on the 29th?

11         Either way, I anticipate that once we have that panel

12  of qualified jurors come back, I'd ask some very basic

13  preliminary questions -- do any jurors wish to amend answers?

14  Confirm that they've not read or researched about the case,

15  we'd deal with any issues along those lines, and then the

16  parties would exercise the peremptories and all the others

17  would be excused.

18         If we do that on the 19th and finish the process, I'd

19  inform the 18 that they've been selected as jurors, remind them

20  very clearly of all the instructions and restrictions that

21  apply, and direct them to return on the morning of the 29th.

22         On that date, I'd swear them in, give them standard

23  preliminary instructions, and we head to openings, straight

24  into opening statements.

25         Alternatively, if we were to wait for that final

LalWmaxC

1   process until the 29th, I'd bring that panel of 50 to 60

2   qualified prospective jurors back.  The parties would

3   exercise -- I'd do that initial questioning to ensure no final

4   issues.  The parties would exercise their peremptories, and

5   then I would excuse the unused or struck jurors, swear in our

6   18, give the instructions, and we'd get on our way.

7           I will say that I think there are advantages and

8   disadvantages to both.  I'll also say that I believe both will

9   be logistically possible, although the 29th is not yet totally

10  certain, because jury selection in other cases will go forward

11  on that day, occupying the larger spaces, and it impacts both

12  available space and staff resources.  But I believe we can work

13  out the logistics.  But before I finalize either way, I wanted

14  to hear the parties' views.

15          Ms. Pomerantz.

16          MS. POMERANTZ:  Thank you, your Honor.

17          The government appreciates the Court's thoughtfulness

18  on this.

19          The government's view would be that November 19 would

20  be strongly preferred to -- and I would note, your Honor, that

21  because there are witnesses traveling out of state, and in

22  light of Covid-related issues, having a firm start date, a date

23  when we know witnesses will start to be put on the stand,

24  that's very helpful for planning purposes.

25          THE COURT:  Yes, we will start on the 29th.  There is

LalWmaxC

1    no doubt about that.  I think what we're talking about is a

2    fairly limited process that requires, of course, checking in

3    the individuals.  But we'll lose a little bit of time, to be

4    sure.

5              Is that the government's view and the basis for that

6    view?

7              MS. POMERANTZ:  Yes.  Thank you, your Honor.

8              THE COURT:  All right.

9              Ms. Sternheim.

10             MS. STERNHEIM:  Thank you, Judge.

11             The defense would request that challenges be exercised

12   on the 29th for the following reason:

13             There is at least a ten-day gap from the last

14   scheduled day of jury selection until the start of the trial on

15   the 29th.  Significantly, prospective jurors will be

16   celebrating Thanksgiving, a holiday that most have not

17   celebrated in more than a year.  It is likely that the topic of

18   jury service and this case may come up.  Views may be espoused,

19   especially if people know that a family member or friend has

20   been summoned to jury service, and it is very unlikely and very

21   uncomfortable for a prospective juror to have to remove

22   themselves from the Thanksgiving table or the venue to avoid

23   being involved in that conversation.

24             I would say that in an abundance of caution, that the

25   better approach would be to do it on the 29th.  It will not

LalWmaxC

1    take that long.  We will be ready to strike, but your Honor

2    will need to get to see whether, in that interval, there has

3    been any impact on the ability of the panel that comes in to

4    serve fairly and impartially.

5              THE COURT:  All right.

6              Any final thoughts, Ms. Pomerantz?

7              MS. POMERANTZ:  Nothing further from the government.

8    Thank you, your Honor.

9              THE COURT:  All right.  I will consider it.  You've

10   all articulated factors I've considered, and I will see about

11   the logistics issue, and I'll see if those can be worked out so

12   that we have the option for either.  And then what I may do is

13   wait and see where we are as we head into the voir dire process

14   before coming to final resolution.  But to the extent I decide

15   to do that, I will let you know, and I thank you for your

16   input.

17             OK.  I'm now ready to turn to the sealing issue, but

18   let me give both sides an opportunity to raise anything, to ask

19   any other questions about what I've described, or to raise any

20   concerns or points for further consideration.

21             Ms. Pomerantz.

22             MS. POMERANTZ:  Thank you, your Honor.  Nothing

23   further from the government.

24             THE COURT:  Ms. Sternheim.

25             MS. STERNHEIM:  Nothing other than some preliminary

LalWmaxC

1    questions about which courtroom we will ultimately be using.

2    But I think that getting to the issue of sealing is more

3    important.

4              THE COURT:  OK.  And I think I can answer the other

5    logistic questions, probably.

6              All right.  As I've noted, the defense, without

7    objection from the government, requests that the parties' joint

8    proposed questionnaire and voir dire be sealed.

9              I guess my first question, just for clarification,

10   Ms. Sternheim, is whether that request extends to the Court's

11   draft or what will ultimately be the final blank questionnaire

12   and anticipated voir dire.

13             MS. STERNHEIM:  Judge, the answer is yes, and if you'd

14   like me to give my reasons, I'm glad to.

15             THE COURT:  Yes.  First I wanted to know whether

16   you've consented to that, and I'll hear you.  I assume whatever

17   the reasons are it would apply to all.  But I do want to hear,

18   and I need to hear very specifically, are you seeking

19   particular redactions, or what is the concern?  And to the

20   extent you have any authorities for the proposition that you

21   seal proposed documents like this and the Court's draft in

22   anticipation, I would certainly take that.  But it's my

23   understanding, and research indicates, that they are typically

24   docketed.  I've certainly always docketed them in the many

25   cases I've tried.  But let me hear specifically what the issue

LalWmaxC

1    is, Ms. Sternheim.

2              MS. STERNHEIM:  OK.  The documents, all four of

3    them -- the two questionnaires, the parties' and the Court's,

4    as well as the voir dire questions -- contain references to

5    this case, names of participants.  Any person who is summoned

6    for jury service, they likely connect their summons with any

7    press coverage there may be with regards to the questionnaire

8    and the jury voir dire questions and this case.

9              Until the prospective jurors complete their

10   questionnaires, they may read coverage, search the media.  They

11   are under no obligation or requirement to refrain from that,

12   and we're concerned that that will further have a diluting

13   effect on our ability to seat a fair and impartial jury.  We

14   have no problem whatsoever at the moment the jury is sworn,

15   after peremptories have been exercised, that the Court place on

16   the public record all of those documents.  This is a procedure

17   that we think can ensure a fair trial for both parties in light

18   of extraordinary media coverage in this case.

19             THE COURT:  I need more specifics.  You said

20   references to this case, names of participants.  The docket now

21   and going forward, as more filings come in, is going to contain

22   names related to this case, names of participants.  All of that

23   information is part of the docket in this case, to be sure.

24             That's No. 1.  So No. 1 is I don't see how those

25   factors in the questionnaire are particularly different from

LalWmaxC

1     any prejudice analysis from other materials on the docket.

2              And No. 2, I'm still failing to see what the prejudice

3     is.  If you have a grade school math test and you get the

4     questions in advance, you surely have some sort of advantage.

5     To the extent we have a juror who has some awareness of the

6     questionnaires because it's reported in the media in some way,

7     they will have to truthfully tell us that in the questionnaire

8     and the voir dire process.  We would be able to explore that in

9     any way, and it's just unclear to me what prejudice you're

10    seeing as a result of that.

11             I'll hear you on those two points.

12             MS. STERNHEIM:  Your Honor, I think this is an

13    extraordinary case, and there has been no ability for the Court

14    or the government and certainly not the defense to control any

15    of the vast media coverage in this case, which has

16    significantly prejudiced our client.

17             While things are placed on the public record, and

18    rightly so, this is a situation that is somewhat different.

19    Giving jurors the opportunity to view the questionnaire before

20    they come to court to fill it out is like a take-home exam and

21    they can fill out all the answers and do all the research and

22    decide what answers they want to put on those papers.

23             I think that there's an opportunity for people to be

24    motivated to want to sit on this jury for a variety of reasons,

25    some of which I have expressed in other filings that have been

LalWmaxC

made public.  I think in this case the Court has the

supervisory power and the discretion to make sure that every

protocol is put in place to ensure that a jury is seated that

is fair and impartial.

        Perhaps I've been in too many cases where jurors have

said one thing and many things they don't say, and you can ask

as many questions as you want, but we have to rely on the

candor of individuals who come to serve.  I do not think that

there is a great hardship or denial of the public's right to

know when the Court has just said that the press can be present

during the questioning, and that would be the day of the jurors

actually being in court.  But I think to place the

questionnaire and the voir dire questions on the public record

and have them reported in the press, a situation that the Court

cannot control, will have a very negative effect on both the

parties in this case, but most significantly on the party that

has been most damaged, that being Ms. Maxwell.

        THE COURT:  OK.  Any authorities, any specific

authorities, and I mean examples of any other -- there are lots

of significant high-profile cases that have occurred in this

district and others.  Any examples, and I don't presume any

judge in such a case could control press coverage.  I don't

even know what that would look like, but you have to try the

case as the law requires in a public trial, and surely there

are high-profile cases in this modern era, where you could name

LalWmaxC

1    an example in which a judge didn't docket these materials in

2    advance.

3          MS. STERNHEIM:   Judge, I would just respond that, yes,

4    there have been high-profile cases, but in federal court, I am

5    not aware of a high-profile case that has alleged minor

6    victims, whose identities are sought to be protected.   I think

7    that this is an extraordinary case.   It has garnered more media

8    attention than any of the other high-profile cases, and we are

9    urging the Court to exercise its discretion and supervisory

10   power.   We will provide to the Court any authority that we have

11   on this topic at the close of business today.

12         THE COURT:   We'll see about that.

13         Ms. Pomerantz.

14         MS. POMERANTZ:   Thank you, your Honor.

15         In conferring with the defense about the parties'

16   joint proposed questionnaire and voir dire, the defense shared

17   concerns with the government regarding press coverage

18   prejudicing the jury selection process, and so the defense

19   asked the government to file under seal, which the government,

20   as your Honor knows, the government did.   Respectfully, the

21   government submits that because this is the defense's request,

22   it is up to the defense to justify the sealing request, and the

23   government defers to the Court's judgment.

24         THE COURT:   Do you continue to not oppose, or do you

25   oppose?   Obviously, it's their motion, so it's their burden.

LalWmaxC

 1    I'm asking the government's position.

 2              MS. POMERANTZ:  Your Honor, we defer to the Court on

 3    this.

 4              THE COURT:  I'll take that as you continue not to

 5    oppose.  OK, Ms. Pomerantz?  That's the last position stated,

 6    and you're not changing that view, as I hear you.  Correct?

 7              MS. POMERANTZ:  Correct, your Honor.

 8              THE COURT:  I am prepared to rule on this.

 9              The request to file the joint proposed questionnaire

10    and voir dire under seal as well as the Court's proposed

11    questionnaire, which the government does not oppose, has been

12    requested by letter and now argued here.  Several news

13    organizations have opposed the request.

14              I do conclude that the defendant has failed to justify

15    sealing the proposed voir dire and questionnaire.  First,

16    there's no privacy interest in a blank questionnaire, like the

17    kind of interest that is articulated in *Lugosch v. Pyramid Co.*

18    *of Onondaga*, 435 F.3d 110 (2d Cir. 2006).  The parties' sole

19    rationale for sealing the submission is to at a general level

20    avoid media coverage that may prejudice the jury selection

21    process.  The jurors are sworn to give true and complete

22    answers to the questionnaire and voir dire.

23              I will be individually, one-on-one, questioning the

24    jurors, and with the parties present, I feel confident that I

25    can discern any clear dishonesty.  This is not just going to be

LalWmaxC

1    a summary voir dire; it will be probing.

2           Even if a juror were somehow exposed to a specific

3    media report on the questionnaire, the juror would be sworn to

4    report that exposure.  The questionnaire and voir dire are

5    designed to unearth that kind of prior exposure and any

6    resulting potential bias.

7           Nor is it clear what prejudice results from that

8    possibility.  As I said, I am not persuaded that in the off

9    chance there's a juror who has the questionnaire or a media

10   reporter has the questionnaire in advance and fails to disclose

11   that, it's somehow prejudiced in their response to a question.

12   If a juror's going to lie and be dishonest, we will smoke that

13   out, and the fact of this questionnaire being publicly docketed

14   is not going to increase or decrease any such likelihood.

15          Moreover, as I said, the proposed exact questionnaires

16   are in my experience regularly docketed, including in

17   comparably high-profile cases.  Again, in Judge Donnelly's case

18   just very recently, so similar nature of charges, similar

19   high-publicity media attention, in an age of social media and

20   the like, she docketed the proposed her addressed questionnaire

21   in advance of jury selection, as I understand it.  And I'm not

22   aware of counterexamples.

23          Lastly, defense does not articulate any likely

24   prejudice that distinguishes this from the public docketing of

25   other pretrial materials already on the docket or that will be

LalWmaxC

1    on the docket as litigation in advance of trial continues.

2            For these reasons, I deny the defendant's request to

3    seal the proposed voir dire and questionnaire.  They should be

4    docketed by the end of the week, and my chambers will do the

5    same with my draft as well.

6            All right.  With that resolved, I would like to turn

7    to the specifics of my draft and hear, with the background now

8    of how we'll proceed and opportunity to have reviewed those

9    drafts in advance, if there are issues to raise, specific

10   objections to my draft questionnaire and voir dire, which I

11   transmitted to the parties yesterday.

12           Ms. Pomerantz.

13           MS. POMERANTZ:  Thank you, your Honor.

14           The government has no objection to the Court's draft

15   questionnaire and voir dire.

16           THE COURT:  OK.

17           Ms. Sternheim.

18           MS. STERNHEIM:  Yes, Judge.

19           Although we would have preferred a more fulsome

20   questionnaire, containing a larger percentage of the questions

21   that we requested, we do have a few requests that we would ask

22   the Court to consider.

23           THE COURT:  OK.

24           MS. STERNHEIM:  And if you'd just give me a moment so

25   that I can get that document?

LalWmaxC

| | |
|---|---|
| 1 | THE COURT:  Sure. |
| 2 | MS. STERNHEIM:  I apologize. |
| 3 | Judge, I apologize.  There's some ringing in the |
| 4 | phone. |
| 5 | I just would like, if the Court would permit me -- I'm |
| 6 | not able to find the document, but I would ask that |
| 7 | Mr. Everdell be able to speak on this issue. |
| 8 | THE COURT:  OK. |
| 9 | MS. STERNHEIM:  Very brief. |
| 10 | THE COURT:  OK. |
| 11 | I will ask my deputy if Mr. Everdell can be unmuted, |
| 12 | please. |
| 13 | MS. STERNHEIM:  Judge, I'm prepared to proceed.  I've |
| 14 | found the document. |
| 15 | THE COURT:  Thanks. |
| 16 | MS. STERNHEIM:  OK? |
| 17 | THE COURT:  I think whatever you're doing when you |
| 18 | turn away from the phone, Ms. Sternheim, may create that |
| 19 | feedback. |
| 20 | MS. STERNHEIM:  I apologize.  I apologize. |
| 21 | THE COURT:  All right. |
| 22 | MS. STERNHEIM:  Very briefly, we would ask for the |
| 23 | following inclusions in the Court's questionnaire.  With regard |
| 24 | to No. 24(b), we would ask that the Court include, and please |
| 25 | include, the crimes that were involved. |

LalWmaxC

1          THE COURT:  OK.  That is a follow-up in the voir dire,

2     I believe.  Let me double-check.

3          MS. STERNHEIM:  It is, Judge, but we thought that the

4     questionnaire might be a place where the juror would be more

5     open and comfortable.

6          THE COURT:  I will consider that and let you know.

7          MS. STERNHEIM:  With regard to 31 and 32(c), we would

8     ask for the inclusion "or the former acting U.S. Attorney for

9     the Southern District of New York, Audrey Strauss."

10          THE COURT:  All right.

11          Ms. Pomerantz, any objection?

12          MS. POMERANTZ:  Your Honor, the government isn't --

13          (Persistent feedback)

14          THE COURT:  I'm not sure if it's you, and I apologize

15     if it's not, but please, to the extent that you're muting your

16     line or moving it in some way that's creating that feedback --

17     I'm not sure, again, if it's you, but that seemed to be the

18     pattern.  Let's see if we can hold still.

19          Ms. Pomerantz, let's try again.

20          MS. POMERANTZ:  Thank you, your Honor.

21          The government --

22          (Persistent feedback)

23          THE COURT:  It's not working.  I'm hoping that the

24     tech folks working with Ms. Williams can help us correct this.

25          Everybody mute for a moment.  Everybody mute their

LalWmaxC

1    lines.

2              (Persistent feedback)

3              THE COURT:  I think we've muted everyone.

4              Ms. Williams, can you indicate by text whether you can

5    hear me.

6              OK.  And now I'll ask, Ms. Pomerantz, are you able to

7    speak now?

8              MS. POMERANTZ:  Yes, your Honor.

9              THE COURT:  All right.  I think we've done that so I'm

10   going to have Ms. Williams please keep everyone muted until I

11   call on them.  That seems, hopefully, to be able to resolve the

12   issue.

13             Go ahead, Ms. Pomerantz.

14             MS. POMERANTZ:  Thank you, your Honor.

15             The government is not aware of any reason why Audrey

16   Strauss's name would come up at trial, so the government

17   doesn't understand the basis for the inclusion.

18             THE COURT:  All right.

19             I'll ask for Ms. Sternheim to be unmuted, please, and

20   then mute Ms. Pomerantz while --

21             Go ahead, Ms. Sternheim.

22             MS. STERNHEIM:  I am unmuted.  And Judge, I just want

23   you to know I have not moved my phone, so I do not think that I

24   contributed to the problem before.

25             THE COURT:  OK.

LalWmaxC

1          MS. STERNHEIM:  But I'm glad it's cleared up.

2          THE COURT:  I apologize for my own efforts at

3     technological problem solving.

4          MS. STERNHEIM:  I appreciate that, Judge.

5          Previously, with regard to the document, the Court

6     referenced the fact that there have been many documents filed

7     on the record that the public may have seen, and up until last

8     week, every single document filed by the government bore the

9     name of acting U.S. Attorney for the Southern District of New

10    York, Audrey Strauss.  So to the extent that people have read

11    those documents or seen the press conference, I think it is

12    relevant and in no way prejudices the jury at all.  In fact, it

13    provides for the smoking out of any jurors who may know

14    Ms. Strauss or have negative feelings toward her, which would

15    be impugned to the government.

16         THE COURT:  Thank you.

17         Ms. Pomerantz.

18         MS. POMERANTZ:  Thank you, your Honor.

19         That explanation was helpful for us to understand.  We

20    don't object, your Honor.

21         THE COURT:  All right.  We will add a line that says

22    something like "or the former acting U.S. Attorney for the

23    Southern District of New York, Audrey Strauss."

24         What else, Ms. Sternheim?

25         MS. STERNHEIM:  32(d), we would ask that Alexander

LalWmaxC

1   Rossmiller be included.  We believe his name will come up

2   during the course of the trial, and he is a member of the U.S.

3   Attorney's Office.

4           THE COURT:  Ms. Pomerantz.

5           MS. POMERANTZ:  The government, again, isn't aware of

6   any reason why his name would come up at trial, and so the

7   government submits that it's not necessary to include him in

8   the questionnaire.

9           THE COURT:  All right.  Well, I'm not going to resolve

10  that now.  Since his name may come up, to be decided shortly, I

11  don't see any prejudice, so I will allow it.  We will add

12  Alexander Rossmiller to the list of past -- or with any of the

13  assistant United States attorneys, we could say "who have been

14  involved with prosecuting this case."

15          OK, Ms. Sternheim?

16          MS. STERNHEIM:  And the last, your Honor, has to do

17  with No. 44.

18          THE COURT:  OK.

19          MS. STERNHEIM:  We would ask that you include the word

20  "protested."  I can read it fully if that's more helpful.

21          THE COURT:  Go ahead.

22          MS. STERNHEIM:  Would that help?

23          THE COURT:  Yes, please.

24          MS. STERNHEIM:  OK.  "Have you or a family member ever

25  lobbied, petitioned, protested, or worked in any other manner

LalWmaxC

```
 1   for or against any laws or regulations relating to sex
 2   trafficking, sex crimes against minors, sex abuse, or sexual
 3   harassment generally, or supported organizations that seek to
 4   address sex abuse or sexual harassment generally?"
 5              THE COURT:  So you've changed the question beyond
 6   inserting "protested."
 7              MS. STERNHEIM:  That's correct.
 8              THE COURT:  Let me ask you to give that to me again.
 9              MS. STERNHEIM:  Of course.
10              "Have you or any family member ever lobbied,
11   petitioned, protested, or worked in any other manner for or
12   against any laws or regulations relating to sex trafficking,
13   sex crimes against minors, sex abuse, or sexual harassment
14   generally, or supported organizations that seek to address sex
15   abuse or sexual harassment generally?"
16              THE COURT:  Just a moment.
17              Ms. Pomerantz.
18              MS. POMERANTZ:  Thank you, your Honor.
19              The government doesn't have an issue with adding the
20   word "protested," but I would submit that the additional
21   language proposed by the defense makes the question a bit
22   vague, and I think the Court's question, as framed, captures
23   sufficient information and should get, I think, several
24   responses from prospective jurors.
25              THE COURT:  Ms. Sternheim, I will accept "protested";
```

LalWmaxC

1    I think that's a helpful addition.  I'm not sure what is

2    gained, other than some potential confusion, out of the

3    additional language you're suggesting.

4         MS. STERNHEIM:  Well, one word that is lacking in that

5    first part is "support," and we believe it's important to

6    identify individuals who have been supporters or involved in

7    the Me Too or Times Up movements.  I don't think the question

8    as originally stated is broad enough to do that.

9         THE COURT:  Just a moment.

10        How about "Have you or a family member ever supported,

11   petitioned, protested, or worked in any other manner for or

12   against any laws or regulations or organizations relating to

13   sex trafficking, sex crimes against minors, sex abuse, or

14   sexual harassment?"

15        Ms. Sternheim.

16        MS. STERNHEIM:  Thank you, Judge.  That would suffice.

17        THE COURT:  Ms. Pomerantz.

18        MS. POMERANTZ:  That's fine with the government.

19   Thank you, your Honor.

20        THE COURT:  All right.  We'll make that change.

21        Anything else, Ms. Sternheim?

22        MS. STERNHEIM:  No.  Thank you.

23        MS. POMERANTZ:  Your Honor, if I may, in light of the

24   issue raised by the defense on 32(d), the government would

25   request that as to 32(e) additional names of defense attorneys

LalWmaxC

1    who are representing or have represented the defendant be

2    included.

3              THE COURT:  OK.

4              Ms. Sternheim.

5              MS. STERNHEIM:  I'm not sure who the government is

6    referring to.  The counsel of record are appearing at this

7    conference.  No one else has been a member of the defense team.

8              MS. POMERANTZ:  Your Honor, I'm happy to respond to

9    that.

10             Mark Cohen is on the docket in this case, and David

11   Marcus has also represented the defendant in connection with

12   her various appeals.

13             THE COURT:  Right.  And I've written about the extent

14   to which Mr. Marcus is obligated to follow the relevant rules

15   that apply to the defense in this case.  I'm inclined,

16   Ms. Sternheim, to agree for similar reasons to the inclusion of

17   Mr. Rossmiller and include Mr. Cohen and Mr. Marcus.

18             MS. STERNHEIM:  Judge, I don't mean to draw the

19   distinction that it is correct that at some point Mark Cohen

20   was counsel who put in a notice of appearance.  Mr. Marcus has

21   not put in a notice of appearance.  He was only coupled in when

22   the government took issue with something that he had written

23   that we had not endorsed.

24             THE COURT:  OK.  I'm going to include the names.

25             With respect to these three names -- the two for the

LalWmaxC

1    defense and the one for the government -- where they have

2    people not part of the defense team, if you prefer to have

3    those included in the list of names that we'll deal with after

4    voir dire instead of indicated as current members of the

5    defense or prosecution teams, I'm fine with that.

6              Ms. Sternheim, do you prefer that?

7              MS. STERNHEIM:  I think we would.

8              THE COURT:  Ms. Pomerantz.

9              MS. POMERANTZ:  That's fine, your Honor.

10             THE COURT:  All right.  We'll do that so there's

11   clarity.  What we're asking in the questionnaire are the

12   current members of the prosecution and defense teams, and to

13   the extent we have to draw a list, broadly anyway, of any names

14   of people who may be mentioned at trial and to the extent there

15   are former counsel who are not participating immediately in the

16   case or who are participating but haven't filed a notice of

17   appearance, it's appropriate to include their names in the list

18   to be sure that no one has any personal knowledge.

19             We will do that.

20             Anything else?

21             Ms. Sternheim.

22             MS. STERNHEIM:  No.  Thank you.

23             THE COURT:  Ms. Pomerantz.

24             MS. POMERANTZ:  No.  Thank you, your Honor.

25             THE COURT:  OK.  I am going to make the changes that I

LalWmaxC

1    suggested before docketing this.  The only one left open was

2    24(b).  Let me just take a quick look.

3            I'm going to leave that as it is, because we'll do

4    that as a follow-up in the voir dire.  I should say all of

5    this, a lot of work went into balancing the questions that are

6    included in the questionnaire and the questions that are

7    included in the voir dire because there are timing constraints

8    on both, and so partly, I'm seeking to achieve a balance, and

9    we need the questionnaire to be completable in time for the

10   afternoon panel, as an example, and I think this is an

11   appropriate question in any event for follow-up as I anticipate

12   in the voir dire.

13           That resolves the open questions.  I'll make the

14   changes.  My draft will be docketed by the end of the week and

15   the parties' joint proposed will be docketed by the end of the

16   week as well in light of my prior ruling.

17           Let me just get to one, I think, additional issue that

18   I have.

19           This is a logistical question that goes to my

20   providing some oral preliminary instructions to the panel

21   before they fill out the questionnaire.

22           Typically, many judges would make, do make, a brief

23   appearance in the jury assembly room where questionnaires are

24   being filled out before the jurors fill out the questionnaire

25   in order to emphasize the basic instructions and to see the

LalWmaxC

1    judge there in person.  I can do that, but there are space

2    limitations to get enough potential jurors in the room to take

3    these that we wouldn't be able to fit counsel table and the

4    parties in the room.  I would also have to repeat it six times,

5    since we have two panels a day over three days.

6          Another option that occurs to me is to record a short

7    video, which the jury department would simply play in advance

8    of each panel filling out the questionnaire.  Either way, I

9    would distribute the script of what I would say before I record

10   it to counsel so that you can weigh in or object or make any

11   changes.

12         Let me hear your views as to that question regarding

13   the logistics of some preliminary instructions from me.

14         Ms. Pomerantz.

15         MS. POMERANTZ:  Thank you, your Honor.

16         The government has no preference and defers to what

17   the Court prefers.

18         THE COURT:  OK.

19         Ms. Sternheim.

20         MS. STERNHEIM:  I think that's a fine idea, Judge, so

21   you don't have to repeat it six times.  But I do have a

22   question, since you just mentioned counsel table.  Is there an

23   expectation that counsel be present on the days that the

24   questionnaires are completed?

25         THE COURT:  No.  I think the only reason we would even

LalWmaxC

1    need to think about that is when judges do go give those

2    preliminary instructions, as best I can tell, sometimes counsel

3    are present, sometimes they're not.  We wouldn't be able to

4    accommodate in-person presence for that purpose.  I don't think

5    it would be necessary, so my suggestion is not to have the

6    parties present for the filling out of the questionnaire.

7            Do you disagree with that in any way, Ms. Sternheim?

8            MS. STERNHEIM:  No, Judge.  I just wanted a

9    clarification, because I have attended when judges have given

10   those preliminary instructions.  But we have no objection to

11   the Court doing it in a recorded method.

12           THE COURT:  OK.

13           Ms. Pomerantz, do you continue to be comfortable with

14   that?

15           MS. POMERANTZ:  Yes.  Thank you, your Honor.

16           THE COURT:  All right.  I will docket an anticipated

17   script soon to get your input in a letter with any requests for

18   changes, and then I will get that recorded and work with the

19   tech folks in the D.E.'S Office and the jury department to be

20   able to have that played before the questionnaire is filled

21   out.

22           That's what I have, counsel.  Are there other matters

23   to raise related to jury selection or otherwise at this time?

24           Ms. Pomerantz.

25           MS. POMERANTZ:  Not from the government.  Thank you,

LalWmaxC

1   your Honor.

2              THE COURT:  Ms. Sternheim.

3              MS. STERNHEIM:  Briefly, Judge.

4              What courtroom will the jury be selected, and where

5   will the trial be held?

6              THE COURT:  OK.  Questionnaires will be filled out in

7   the jury assembly room and in a ninth floor courtroom, as the

8   district has been doing jury selection throughout Covid.  So

9   there would typically -- to the extent it happens in those

10  rooms, typically there's a live feed between the jury assembly

11  room and the ninth floor courtroom that will be able to hold,

12  and I think we might even have an additional room to get up to

13  the 100 people per panel.  That's 500 Pearl, those spaces for

14  the filling out of the questionnaire.

15             I believe what we will do for the voir dire practice I

16  described, it will take place on the fifth floor of the

17  Thurgood Marshall Courthouse in courtroom --

18             My deputy asked me to pause and confirm.

19             Ms. Maxwell, are you still on the line?

20             THE DEFENDANT:  Yes, your Honor.

21             THE COURT:  OK.  Great.

22             Ms. Pomerantz.

23             MS. POMERANTZ:  Yes, your Honor.

24             THE COURT:  Ms. Sternheim, you're still on.

25             MS. STERNHEIM:  Yes, your Honor.

1          THE COURT:  OK.  We have everyone we need.

2          The courtrooms on the fifth floor where jury selection

3    will take place are, and my clerk's just going to make sure I

4    get this right via text, 506 and 518, I believe.

5          I'm waiting for the text.

6          That's correct.  506 and 518.

7          We have walked through the logistics of that so that

8    we're able to walk the next juror -- No. 1, the jurors will be

9    able to report to those rooms using nonpublic elevators and

10   hallway, and the like, and we'll be able to move the juror from

11   one room to the next via nonpublic space, so that should aid

12   the process throughout.

13         Trial, we believe, will be in 318.  And I'm going to

14   get confirmation of that.

15         318 in the Thurgood Marshall Courthouse.

16         Ms. Sternheim.

17         MS. STERNHEIM:  Thank you, Judge.

18         THE COURT:  OK.  And I will say we will, there will be

19   an opportunity through the D.E.'S Office, and my chambers will

20   reach out to counsel on both sides, an opportunity for

21   walk-throughs of the spaces in advance of trial.

22         And I think that's it.

23         Ms. Sternheim, any other questions?

24         MS. STERNHEIM:  No, Judge, but I do recall, having

25   tried a case before your Honor in 318, that there are

LalWmaxC

```
 1    acoustical issues that I would hope might be addressed by the
 2    tech department.
 3              THE COURT:  We've spent a fair amount of time talking
 4    about that, and the acoustics won't be as good as they would be
 5    in 500 Pearl, but there are other very good reasons to be where
 6    we'll be.  I can assure you that the D.E.'S Office and my
 7    chambers will continue to work to make it as good as it can
 8    possibly be in an old courtroom.  But I feel confident, based
 9    on what we've done so far and what I hope will continue to be
10    the case, that it's going to work well.
11              MS. STERNHEIM:  Thank you.
12              MS. POMERANTZ:  Your Honor, I wanted to just raise one
13    issue, which is that the government is aware of certain
14    courtroom sketches of Jeffrey Epstein at, I believe, 500 Pearl,
15    and so just wanted to raise that for the Court and
16    understanding that such sketches would be removed before the
17    selection process.
18              THE COURT:  OK.  I think that's a good suggestion, and
19    I will talk to the D.E.'S Office.
20              MS. POMERANTZ:  Thank you very much, your Honor.
21              THE COURT:  Anything else?
22              Ms. Pomerantz.
23              MS. POMERANTZ:  Nothing further.  Thank you.
24              THE COURT:  Ms. Sternheim.
25              MS. STERNHEIM:  Nothing further.  I do thank the
```

LalWmaxC

1    government for raising that.  It was something we were going to

2    raise.  The pictures, at least the last time I saw, were in the

3    corridor right by the elevator.

4            THE COURT:  Yes.  We'll get that down for sure.

5            Our next conference is November 1, and I think that's

6    all I have for now.

7            Thank you, everyone.

8            We're adjourned.

9            (Adjourned)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25