

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

November 18, 2021

**BY E-MAIL**

The Honorable Alison J. Nathan
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

    Re:    *United States v. Ghislaine Maxwell*, S2 20 Cr. 330 (AJN)

Dear Judge Nathan:

The Government respectfully submits this letter motion to quash the defendant's Rule 17(c)(3) subpoena to Jordana Feldman, the administrator of the Epstein Victims' Compensation Program (EVCP). For the reasons set forth below, the subpoena should be quashed.[1]

**I.    Applicable Law**

As the defendant acknowledges, she bears the burden of satisfying the standard in *United States v. Nixon*, 418 U.S. 683 (1974). (Def. Mot. at 1). Pursuant to that standard, the "party seeking issuance of [a Rule 17(c)] subpoena must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." *United States v. Cole*, 2021 WL 912425, at *3 (S.D.N.Y. Mar. 10, 2021) (internal quotation marks omitted). The proponent must also establish that the records sought "are not otherwise procurable." *Id.* (quoting *Nixon*, 418 U.S. at 699-700).

---

[1] For sake of simplicity, the Government uses the term "Minor Victims" to include Witness-3. The Government acknowledges the Court's order that Witness-3 should not be referenced at trial as a victim.

The *Nixon* test is enforced strictly. As the Supreme Court has explained, "[i]t was not intended by Rule 16 to give a limited right of discovery, and then by Rule 17 to give a right of discovery in the broadest terms." *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951); *see also United States v. Purin*, 486 F.2d 1363, 1368 (2d Cir. 1973) ("A subpoena duces tecum in a criminal case is not intended as a means of discovery."). It is not sufficient for a party to show only that the subpoenaed documents "are potentially relevant or admissible." *United States v. Wey*, 252 F. Supp. 3d 237, 254 (S.D.N.Y. 2017) (internal quotation marks omitted); *see United States v. Skelos*, No. 15 Cr. 317, 2018 WL 2254538, at *2 ("The materials sought under Rule 17 must themselves be admissible at trial; it is not enough that they contain information which could be admissible." (alterations and internal quotation marks omitted)); *United States v. RW Prof'l Leasing Servs. Corp.*, 228 F.R.D. 158, 162 (E.D.N.Y 2005) (explaining that it is "insufficient" for a party to show only that the subpoenaed documents "are potentially relevant or may be admissible"). Similarly, the party requesting the subpoena must also show that the "the application is made in good faith and is not intended as a general fishing expedition." *United States v. Ulbricht*, 858 F.3d 71, 109 (2d Cir. 2017) (quoting *Nixon*, 418 U.S. at 699-700) (internal quotation marks omitted), *abrogated on other grounds as recognized by United States v. Chambers*, 751 F. App'x 44, 46 & n.1 (2d Cir. 2018) (summary order).[2]

**II.    Discussion**

The defendant has subpoenaed four categories of information: (1) copies of any payments to the Minor Victims and their counsel, and (2) "[a]ny and [a]ll [r]eleases executed by the [Minor

---

[2] Although generally "production of impeaching evidence pursuant to Rule 17(c) is not required until after the witness testifies," *Skelos*, 2018 WL 2254538, at *2, in this case the Government expects each of the Minor Victims named in the subpoena to testify at trial. Accordingly, if the Court permits enforcement of the subpoena, the Government does not object to production of the records to the Court before the Minor Victims actually testify for the sake of efficiency.

Victims];" (3) "[a]ny and all" material "submitted by each [Minor Victim]" to the EVCP; and (4) "communications" between the EVCP and the Minor Victims or their counsel. (Def. Mot. Attachment A). The subpoena should be quashed as to each of these categories.[3]

### A. Payment Records

The first category—copies of payments made to the Minor Victims—concerns information already in the defendant's possession. Indeed, the defendant's motion cites the amounts received by the Minor Victims, which is reflected in their 3500 material (Def. Mot. at 3), and the Government expects the Minor Victims to testify to those amounts at trial.

Accordingly, this information is "otherwise procurable." *United States v. Pena*, No. 15 Cr. 551 (AJN), 2016 WL 8735699, at *2 (S.D.N.Y. Feb. 12, 2016). The subpoena should therefore be quashed. At most, the Court should order production of that information to the Court so that it may be provided to the defense in the unlikely event that the Minor Victims testify inconsistently with their prior statements at trial.

### B. Claim Release Forms

The defendant makes no argument for the relevance of the release forms executed by the Minor Victims, and none is apparent to the Government. The Court should therefore quash the subpoena insofar as it calls for that category of information, at least until the defendant explains what relevant and admissible evidence is contained in the release forms.

---

[3] The Government has standing to challenge the subpoena because it targets information about anticipated Government witnesses, "based on the Government's 'interest in preventing any undue lengthening of the trial, any undue harassment of the witness and [her] family, and any prejudicial over-emphasis on the witness's credibility.'" *United States v. Ray*, 337 F.R.D. 561, 571 (S.D.N.Y. Nov. 25, 2020) (quoting *United States v. Giampa*, No. 92 Cr. 437 (PKL), 1992 WL 296440, at *1 (S.D.N.Y. Oct. 7, 1992)). The Government has provided notice of this subpoena to the Minor Victims and is informed that at least two victims expect to file submissions regarding the subpoena.

### C. Any and All Material Submitted to the EVCP

The defendant makes a further request for any and all submissions by the Minor Victims to the EVCP. This request would not generate relevant, admissible evidence for two reasons.

*First*, the defendant has not identified a theory by which these materials are relevant and admissible. The defendant argues primarily that the materials contain relevant impeachment information because "[f]ull and complete cross-examination is impossible without understanding the complete terms of the agreement with the Epstein Fund, including the claims concerning Maxwell, as well as others." (Def. Mot. at 6). Materials are not relevant and admissible at trial, as required by *Nixon*, simply because they aid the defendant's "understanding." And the defendant articulates only one theory by which EVCP materials may be admitted to show bias. According to the defendant, the May 2020 Protocol governing the EVCP states that claims are evaluated depending on whether "there exists any information and/or pertinent findings offered by the appropriate . . . United States Attorneys' Office or other law enforcement agency." (Def. Mot. at 5). If this "prosecution against [the defendant] went forward," the argument goes, the Minor Victims and their lawyers would "benefit." (*Id.*)

The defendant already has the information relevant to this argument. She has the protocol for the EVCP. The Government has "offered" no "information" or "findings" to the EVCP about the Minor Victims; to the extent the EVCP relied on publicly available information about this case to make its determination, such as the charging instruments in this case, that information is in the public record. And the Government has already disclosed to the defendant the settlement

amounts—which the defendant cites in her motion. (Def. Mot. at 5). Thus, if these records are relevant at all, they are "otherwise procurable." *Pena*, 2016 WL 8735699, at *2.[4]

The defendant also argues that the subpoenaed records contain prior statements of the Minor Victims, presumably suggesting that they may be admissible as prior inconsistent statements. (Def. Mot. at 4). This argument misses the mark. Any statements in the EVCP's files are unlikely to be inconsistent in light of the context in which they were made. *See United States v. Barrow*, 400 F.3d 109, 123 (2d Cir. 2005) (citing *United States v. Strother*, 49 F.3d 869, 875 (2d Cir. 1995) for the proposition that an omission in a prior statement "should have been admitted as an inconsistent statement because it would have been natural for the witness to include the fact" (internal quotation marks and alterations omitted)). In order to initiate a proceeding with the *Epstein* Victims Compensation Fund, a victim must articulate a claim "directed against *Epstein*." (Indep. Epstein Victims' Compensation Program Protocol, Def. Mot. Ex. 1 Attachment A Ex. 1 at 3 (emphasis added)). And in that context, it would be wholly unsurprising if victims spoke at times about their experience with Epstein without discussing the defendant.[5] Further, if it were true (as the defendant argues above) that EVCP funds will reveal the Minor Victims' bias because their recovery from the EVCP was aided by the Government's continued case against the defendant, one would expect that any statements by the Minor Victims to the EVCP regarding the defendant would be consistent with their statements to the Government and at trial. If the Minor

---

[4] Indeed, because all four Minor Victims identified in the subpoena have resolved their claims with the EVCP, there is no reason to think their trial testimony will be biased in order to advance their claims in a now-completed settlement process.

[5] Consider, for instance, if a victim met Epstein and the defendant together on a certain date. It would be entirely consistent for the victim to testify as much on the stand, and to tell the EVCP that she "met Epstein"—without mentioning the defendant—on that date.

Victims' submissions to the EVCP did not discuss the defendant, a criminal case against the defendant would not advance their claims.

*Second*, even if these subpoenas yielded marginally relevant impeachment material or marginally inconsistent statements notwithstanding their context, such evidence would not be admissible under Rule 403. At the November 1, 2021 conference, the defendant sought to preclude the Government from arguing that the Minor Victims' settlements with the EVCP reflects an endorsement of their claims, which "would be confusing to the jury" and "open the door to an explanation from the defense about what really happened in those proceedings," a request to which the Court and Government agreed. (11/01/21 Tr. at 43:7-46:3). It remains the Government's position that cross-examination highlighting the fact that the Minor Victims received large settlements for their claims would not open the door to a broader discussion of the Epstein Victims Compensation Program.

If, however, the defendant engages in significant cross-examination about what Minor Victims did and did not say to the EVCP, and the reasons for those statements, it would create just that confusion and open just that door. If the defendant argues that a Minor Victim should have, but did not, make statements about the defendant to the EVCP, the Government will have to explain to the jury the purpose of the EVCP and its adjudicative process in order to contextualize that omission. Similarly, if the defendant argues that the Minor Victims' testimony was biased by some interrelationship between the EVCP and this case, the Government will have to explain to the jury the absence of such an interrelationship, including the timeline of the Minor Victims' statements relative to the timeline of the EVCP. Indeed, it appears that the defendant anticipates arguing that some Minor Victims' bias is shown by the fact that their counsel was involved in structuring the EVCP, which would require further response from the Government about the

operations of the EVCP. (Def. Mot. at 5 ("Lawyers for Accuser-2 and Witness-3 were instrumental in creating and structuring the terms of the Protocol.")). The risk of confusing the issues and wasting time at trial substantially outweigh any probative value in the evidence the defendant might obtain.

This is not a trial about the scope and adjudicative process of the EVCP. All of this should be precluded, and therefore none of it is admissible under *Nixon*. The defendant is able to make arguments about bias and consistency without issuing a subpoena that is unlikely to yield relevant information—information that would be precluded at trial in any event.[6]

### D. Communications

Finally, the subpoena calls for communications between EVCP and the Minor Victims and their counsel. The term "communications" is defined broadly, covering "all forms of correspondence, including regular mail, email, text messages, memorandum, or other written communication of information of any kind."

This subpoena request is a classic fishing expedition that the Court should quash. There is no reason to believe that the Minor Victim or their counsel would make substantive statements, which might be inconsistent, in emails and text messages. The defendant offers no reason why their theory of bias would find support in correspondence. Nor is one supported by logic: the theory is that the Minor Victims told false stories *to the Government* to advance the prosecution, not that they did or said biased things to the EVCP. This subpoena does not seek to "obtain identified evidence" but rather to engage in "a general 'fishing expedition' that attempts to use the

---

[6] The defendant defines "EVCP Material" to include information regarding compensation received by Minor Victims and releases signed by them. (Def. Mot. Ex. 1 Attachment A). Those items should be treated identically to the specific requests for them, as discussed above.

rule as a discovery device." *United States v. Cuthbertson*, 630 F.2d 139, 144 (3d Cir. 1980); *see Ulbricht*, 858 F.3d at 109. Such an expedition is precluded by *Nixon*. 418 U.S. at 700.

### III. Conclusion

For the foregoing reasons, the Court should quash the defendant's subpoena.[7]

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by: /s/
Maurene Comey
Alison Moe
Lara Pomerantz
Andrew Rohrbach
Assistant United States Attorneys
(212) 637-2324

cc: Counsel of Record (by email)

---

[7] In the event the Court does not quash the subpoena, the Government notes that it is returnable to the Court for *in camera* review. (Def. Mot. at 1). To the extent the Court releases any records from the EVCP to the defendant, it should only release those records that comply with the *Nixon* standard. *See Skelos*, 2018 WL 2254538, at *2 ("To avoid delay in trial, courts sometimes require production of impeaching material to the court (but not to counsel), with the court reviewing these documents *in camera* and then disclosing any admissible documents only after the witness testifies."). For instance, if the Court identifies a prior inconsistent statement in only one document, no other records should be released to the defendant. And, in addition to evaluating whether any statement is relevant to show bias or as a prior inconsistent statement, the Court should consider whether it is precluded under Rule 403, for the reasons described above. *See supra* pp. 6-7.