

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

November 21, 2021

**BY E-MAIL**

The Honorable Alison J. Nathan
United States District Court
Southern District of New York
United States Courthouse
40 Foley Square
New York, New York 10007

Re: *United States v. Ghislaine Maxwell*, S2 20 Cr. 330 (AJN)

Dear Judge Nathan:

The Government respectfully submits this letter in reply to the defendant's motion to exclude Government Exhibit 52. (*See* Dkt. No. 476). The Court ordered the Government to respond in particular to the defendant's argument that "Employee-1 cannot authenticate Government Exhibit 52 because Mr. Rodriguez, a former employee, purportedly removed the document from the property before Employee-1 began working for Mr. Epstein." (*Id.*)

The Second Circuit has "often commented that the bar for authentication of evidence is not particularly high." *United States v. Al-Moyad*, 545 F.3d 139, 172 (2d Cir. 2008) (alteration and internal quotation marks omitted). The "proponent of the evidence is not required to rule out all possibilities inconsistent with authenticity, or to prove beyond a reasonable doubt that the evidence is what it purports to be." *United States v. Dhinsa*, 243 F.3d 635, 658 (2d Cir. 2001). All that is required is "sufficient proof . . . so that a reasonable juror could find in favor of authenticity or

1

identification." *Id.* (internal quotation marks omitted); *see* Fed. R. Evid. 901(a). The "standard for authentication is one of 'reasonable likelihood' and is 'minimal.' The testimony of a witness with knowledge that a matter is what it is claimed to be is sufficient to satisfy this standard." *United States v. Gagliardi*, 506 F.3d 140, 151 (2d Cir. 2007) (citations and internal quotation marks omitted). After this low bar is satisfied, "the other party then remains free to challenge the reliability of the evidence, to minimize its importance, or to argue alternative interpretations of its meaning, but these and similar other challenges to go the *weight* of the evidence—not to its *admissibility*." *United States v. Tan Yat Chin*, 371 F.3d 31, 38 (2d Cir. 2004) (emphases in original).

The defendant's argument suggests that Government Exhibit 52 is unique in a way unsupported by the evidence. Government Exhibit 52 is a bound, sewn, typed address book with a particular cover. Employee-1 will testify that, based on its appearance, contents, and distinctive characteristics, it appears to be a copy of the defendant's address book. She will also testify that other bound, sewn, typed copies of the same address book with the same cover were located in specific places in Epstein's Palm Beach house, as was the operating practice of Epstein's house. That testimony is corroborated by Government Exhibit 606, the household manual, which states that "A copy of Mr Epstein and Ms Maxwell's telephone directories must be placed to the right of each telephone (except for the Guestrooms)." (GX 606 at 7). And it is corroborated by Mr. Rodriguez himself, whose counsel said at sentencing in his case that the book he possessed was "a copy of the book, of which there were many copies, and Mr. Rodriguez had one as Mr. Epstein's house man." Sent. Tr. at 10, *United States v. Rodriguez*, 10 Cr. 80015 (KAM) (S.D.F.L. June 18,

2010), Dkt. No. 32.[1]

Further, Employee-1 observed the defendant's contact book in close temporal proximity to Mr. Rodriguez's departure. Mr. Rodriguez worked for Epstein in "2004 and 2005." Plea Agreement/Factual Proffer Statement ¶ 10(a), *Rodriguez*, 10 Cr. 80015 (KAM), Dkt. No. 25.[2] Employee-1 worked for Epstein ▮▮▮▮▮▮▮▮ There was therefore no significant time gap between the day Rodriguez left Epstein's employment with a copy of the address book and when Employee-1 worked for Epstein and saw a copy of the address book. Consider if an employer gives a "history of the firm" book to each new employee. An employee who was aware of that practice and who starts in 2021 can authenticate a copy of that book, even if the particular copy was given to an employee who started in 2020. Or consider if the Yankees have distinctive team-branded water bottles spread across their locker room. A player who has seen the water bottles can authenticate one, even if the particular water bottle was taken from the locker room before that player joined the Yankees. The same is the case here. *See United States v. Al Farekh*, 810 F. App'x 21, 24-25 (2d Cir. 2020) (authenticating "handwritten letters" based on their contents and "considerable similarities between the handwriting" and known exemplars). Indeed, the fact that both Employee-1 and Mr. Rodriguez have seen multiple copies of the same address book further confirms its authenticity.

Finally, the authenticity of the address book does not rely exclusively on Employee-1's testimony: it is also reinforced by its internal markings. Other evidence at trial will show that the address book in fact contains the information of persons listed therein who in fact knew the

---

[1] The Government is not currently planning to offer trial evidence regarding Mr. Rodriguez, although it may if the Court concludes that evidence is critical to the authentication question.
[2] The defendant erroneously suggests that Mr. Rodriguez stopped working for Epstein in 2004. (11/15/21 Def. Letter at 1).

defendant at the time. *See United States v. Prevezon Holdings, Ltd.*, 319 F.R.D. 459, 463 (S.D.N.Y. 2017) (describing "distinctive characteristics" for purposes of Fed. R. Evid. 901(b)(4) to include "pages of 'nonpublic information'"). ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

The Court can readily reject the defendant's suggestion that Government Exhibit 52 is a forgery. The book is sewn, bound, and contains an extensive set of private information. The defense offers no theory for how Mr. Rodriguez could have generated that information and bound it together seamlessly in an address book that could fool Employee-1. Further, if the address book were a forgery, it would have provided Mr. Rodriguez with a complete defense in his criminal case: the defendant could not have impaired a grand jury investigation by "concealing" a forged document. *See* 18 U.S.C. § 1512(c). Instead, Mr. Rodriguez was sentenced to eighteen months in prison.

Nor is there reason to believe that the book was altered in any significant way by Mr. Rodriguez. As the Court can see from the pages the Government has marked separately (*see* GX 52-A through G2-H), any handwriting is minimal and non-substantive, at least on the pages the Government intends to emphasize at trial. The "added tabs" the defendant mentions are literally sticky notes attached to certain pages, likely added by law enforcement after they seized the book from Mr. Rodriguez. And the "additional handwritten pages" to which the defendant refers are Mr. Rodriguez's separate notes that are *not* part of Government Exhibit 52. *See* Plea Agreement/Factual Proffer Statement ¶ 10(f), *Rodriguez*, 10 Cr. 80015 (KAM), Dkt. No. 25

("During the meeting, the defendant produced a small bound book and several sheets of legal pad paper containing hand-written notes."). Again, the book is sewn and bound, like the other copies seen by Employee-1, and is not amenable to easy insertion of pages. These "alterations" do not undermine the authenticity of the book in the slightest, but at most, they go to weight and not admissibility. *See Tan Yat Chin*, 371 F.3d at 38; *cf. Gagliardi*, 506 F.3d 140, 151 ("Based on the[] testimony [that electronic communications were accurate], a reasonable juror could have found that the exhibits did represent those conversations, notwithstanding that the e-mails and online chats were editable.").

The defense is correct that Employee-1 cannot say that she saw the specific address book that is Government Exhibit 52 while she worked for Epstein. But she can recognize Government Exhibit 52 as one of the many copies of the defendant's address book that she did see, and she can testify to the practice that, close in time to when Government Exhibit 52 left Epstein's house, the address book was regularly kept in specific places around Epstein's house. That testimony is enough to satisfy the low bar for authentication, and it is supported by Government Exhibit 606 and by testimony that corroborates private information inside the address book.

                    Respectfully submitted,

                    DAMIAN WILLIAMS  
                    United States Attorney

By:    s/                              
      Maurene Comey  
      Alison Moe  
      Lara Pomerantz  
      Andrew Rohrbach  
      Assistant United States Attorneys  
      Southern District of New York

Cc: Defense Counsel (by e-mail)