UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

   -v.-

GHISLAINE MAXWELL,

          Defendant.

**S2 20 Cr. 330 (AJN)**

## THE GOVERNMENT'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION *IN LIMINE* TO PRECLUDE EXPERT TESTIMONY
## OF DR. RYAN HALL, BENNETT GERSHMAN, ROBERT KELSO, JOHN LOPEZ,
## GERALD LAPORTE, AND JENNIFER NASO

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Maurene Comey
Alison Moe
Lara Pomerantz
Andrew Rohrbach
Assistant United States Attorneys
   *Of Counsel*

## TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ................................................................................................. 1

**I.        APPLICABLE LAW** ................................................................................................ 1

**II.       THE COURT SHOULD PRECLUDE THE TESTIMONY OF DR. RYAN HALL** ........ 4

A.      Dr. Hall's Opinions ▮▮▮▮▮▮▮ Are Irrelevant ................................................. 5

B.      The Bases of Dr. Hall's Opinions Are Not Independently Admissible.................................. 12

C.      Any Undisclosed Significance of Dr. Hall's Opinions Is Inadmissible .................................. 14

D.      Dr. Hall's Fact Testimony Is Inadmissible.......................................................... 15

**III.      THE COURT SHOULD PRECLUDE THE TESTIMONY OF BENNETT GERSHMAN** ...................................................................................................... **20**

**IV.       BEFORE THE DEFENDANT'S REMAINING WITNESSES OFFER EXPERT TESTIMONY, THE DEFENDANT SHOULD BE REQUIRED TO PROVIDE SUPPLEMENTAL NOTICE    21**

A.      Robert Kelso and John Lopez........................................................................ 22

B.      Forensic Document Specialists....................................................................... 24

**CONCLUSION** ..................................................................................................... **26**

## PRELIMINARY STATEMENT

The defendant has notified the Government that she plans to call six additional experts. One of them, Dr. Ryan Hall, ███████████████████████████████████████ and drafted a lengthy report, containing largely a recitation of hearsay, attributing some but not all of ███████████████████████████████████ Another, Bennett Gershman, is a purported expert on prosecutorial misconduct. Neither of these issues is relevant at trial, and both experts should be precluded.

The defendant has failed to provide adequate notice as to the four remaining experts. Instead of describing those experts' opinions and the bases for them, as required by Rule 16, the notice identifies topics on which the experts might testify. The Government is therefore not able to interpose a *Daubert* challenge at this time.[1] The Court should require the defense to provide supplemental expert notice forthwith or preclude these witnesses from testifying.

## I.     APPLICABLE LAW

Federal Rule of Criminal Procedure 16(b)(1)(C) provides that where, as here, the Government has provided expert notice and requested reciprocal notice from the defense, the defendant "must . . . give to the government a written summary of any [expert] testimony that the defendant intends to use . . . as evidence at trial." Such summary must "describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Fed. R.

---

[1] As described below, however, insofar as two of these witnesses will testify as fact witnesses related to computer forensics and financial records, the Government does not object to their testimony on *Daubert* grounds.

Crim. P. 16(b)(1)(C).

As the 1993 amendments to Rule 16 note, the Rule is meant to "minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination." *Id.* 1993 Amend.  Accordingly, the Rule requires the defense to provide (1) "notice of the expert's qualifications which in turn will permit the requesting party to determine whether in fact the witness is an expert within the definition of Federal Rule of Evidence 702;" (2) a "summary of the expected testimony," which "permit[s] more complete pretrial preparation by the requesting party;" and (3) "a summary of the bases of the expert's opinion." *Id*.

The content of the expert notice must actually "summarize the experts' opinions." *United States v. Ulbricht*, 858 F.3d 71, 115 (2d Cir. 2017), *abrogated on other grounds by Carpenter v. United States*, 138 S. Ct. 2206 (2018).  "Merely identifying the general topics about which the expert will testify is insufficient; rather, the summary must reveal the expert's actual opinions." *United States v. Valle*, No. 12 Cr. 847 (PGG), 2013 WL 440687, at *5 (S.D.N.Y. Feb. 2, 2013); *see Ulbricht*, 858 F.3d at 115 (calling "plainly inadequate" a disclosure that "listed general and in some cases extremely broad topics on which the experts might opine"). The notice then must describe the bases and reasons for those opinions.  "[A] general description of possible bases does not meet the requirements of Rule 16(b)(1)(C)." *United States v. Tuzman*, 2017 WL 6527261, at *10 (S.D.N.Y. Dec. 18, 2017) (internal quotation marks omitted). "Merely asserting that [an expert] will provide [an] opinion based on some unspecified method . . . based on data from unspecified sources, does not suffice." *United States v. Ulbricht*, No. 14

2

Cr. 68 (KBF), 2015 WL 413318, at *6 (S.D.N.Y. Feb. 1, 2015), *aff'd*, *Ulbricht*, 858 F.3d 71.  A

district court has "broad discretion" over the remedy for failure to comply with Rule 16,

including "ordering the exclusion of evidence." *Ulbricht*, 858 F.3d at 115 (internal quotation

marks omitted).

As the Court is well aware, a properly noticed expert witness may then testify if such

testimony complies with Federal Rule of Evidence 702.  Accordingly, before admitting expert

testimony, the Court must conclude that (1) the witness is qualified to be an expert, (2) the

proposed expert testimony is reliable, and (3) the proposed testimony is relevant.  *See Daubert*

*v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993); *Nimely v. City of New York*, 414 F.3d

381, 396 n.11 (2d Cir. 2005).  "Expert testimony which does not relate to any issue in the case

is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591 (internal quotation marks

omitted).  The party that proffers the testimony bears the burden of showing that it is admissible

by a preponderance of the evidence.  *See id.* at 592 & n.10 (citing *Bourjaily v. United States*,

483 U.S. 171, 175-76 (1987)).

Rules 401 and 403 of the Federal Rules of Evidence state that relevant evidence is

admissible when it tends to make the existence of any fact that is of consequence more or less

probable than it would be without the evidence, but it may be excluded if its probative value is

substantially outweighed by, among other things, the danger of unfair prejudice, confusion of the

issues, and misleading the jury.  "Expert evidence can be both powerful and quite misleading

because of the difficulty in evaluating it.  Because of this risk, the judge in weighing possible

prejudice against probative force under Rule 403 . . . exercises more control over experts than over

lay witnesses." *Daubert*, 509 U.S. at 595 (quoting authority omitted).  Among other things, the

3

Court "must consider whether an expert's proposed testimony would usurp the province of the judge to instruct on the law, or of the jury to make factual determinations." *Island Intell. Prop. LLC v. Deutsche Bank AG*, No. 09 Civ. 2675 (KBF), 2012 WL 526722, at \*2 (S.D.N.Y. Feb. 14, 2012) (citations omitted).

## II.    THE COURT SHOULD PRECLUDE THE TESTIMONY OF DR. RYAN HALL

Dr. Ryan Hall is a psychiatrist who frequently testifies as an expert witness. ███████
████████████████████████████████████████████████████████████████
███████████████████████████████████████ According to the notice provided by the defendant, Dr. Hall "will offer the opinions and diagnoses contained in his ████ report, the bases for those opinions, and the significance of the diagnoses and opinions." (Ex. A, Def. Expert Notice, at 12).[2] ███████████████████████████████████
█████████████████████████████████████████████████████████████
█████████████████████████████████████████

This Court should exclude Dr. Hall's testimony. As disclosed, his expert opinions ████
████████ have no relevance, because none bears on the facts of this case or Minor Victim-4's credibility. Any basis for those opinions is therefore also irrelevant. Similarly, absent some as-yet-undisclosed relevance, the "significance" of Dr. Hall's opinions ████████ have no bearing here: Because none of those opinions bear on the facts of this case or a witness's credibility, their introduction would serve only ███████████████████████████████
█████████████████████████ Dr. Hall's proffered fact testimony should also be

---

[2]    The Government has attached, and moves to file, the same redacted version of the defendant's expert notice attached to its previous filings (*See* Dkt. Nos. 418 and 424).

excluded.  Much of it would constitute hearsay, and the small portion that may not would run afoul of other rules of evidence.

    **A.  Dr. Hall's Opinions ██████████ Are Irrelevant**

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████ ███████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████

    ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████ ████████████████

████████████████████████████████████████████████████

---

3    The Government moves to redact portions of this brief and seal Exhibit B, which is Dr. Hall's evaluation of Minor Victim-4, in accordance with the three-part test articulated by the Second Circuit in *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006). Although this brief and the attached exhibit are judicial documents subject to the common law presumption of access, because this brief discusses a psychiatric evaluation of Minor Victim-4 contained in Exhibit B, consisting throughout of ██████████████████████████████████, these redactions and sealing requests are narrowly tailored to protect her privacy interest.

███████████████████████████████████████████████████████

████████████████████████████ █████████████████████████████

███████████████████████████████████████████████████████

████████████████████████   Dr. Hall's conclusion on this issue should thus be excluded to avoid "confusing the issues," as well as causing "undue delay," and "wasting time." Fed. R. Evid. 403; *see United States v. Blum*, 62 F.3d 63, 68 (2d Cir. 1995) (assessing whether evidence would result in "confusing the issues" under Rule 403 by asking whether it would bear upon, or distract from, "the central issue" of the defendant's "guilt or innocence"); *United States v. Stewart*, 433 F.3d 273, 313 (2d Cir. 2006) (upholding preclusion of evidence that would have necessitated a "mini-trial").

█████████████████████████████████████████   ████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

─────────────────────────

█████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████













**B.  The Bases of Dr. Hall's Opinions Are Not Independently Admissible**

According to the defendant's expert notice, she also seeks to elicit the "bases" for the opinions in Dr. Hall's ███ report.  Because those opinions themselves should not be admitted for the reasons just discussed, there is no ground to admit their basis. ████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████

To start, all the summarized information about Minor Victim-4's past is hearsay or otherwise inadmissible.  Dr. Hall was obviously not a percipient witness to any of the conduct discussed in his report, and instead derived his understanding of Minor Victim-4's past from out-of-court statements by Minor Victim-4 and others, ████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

In any event, no information about the bases of Dr. Hall's opinions can satisfy the requirements of Rule 703.  Pursuant to that Rule, although an expert may rely on hearsay in forming his opinion, the "expert may not, however, simply transmit that hearsay to the jury." *United States v. Mejia*, 545 F.3d 179, 197 (2d Cir. 2008).  Instead, "if facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect."  *See* Fed. R. Evid. 703.  Here, the probative value of relaying the hearsay would be essentially nil:

13

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████

### C. Any Undisclosed Significance of Dr. Hall's Opinions Is Inadmissible

In addition to testifying about ████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████   As discussed above, to the extent his

████ report discloses the significance of his opinions, for purposes of this case they have none, because nothing in the report concerns the elements of or defenses to the charged offenses, or Minor Victim-4's ability to testify accurately.  (*See supra* at 5 to 11).  And to the extent Dr. Hall would testify about any undisclosed significance to his opinions, the failure to disclose that testimony itself renders it inadmissible.

The party proposing to call an expert must provide "a written summary of any testimony that the defendant intends to use."  Fed. R. Crim. P. 16(b)(1)(C).  The Rule requires that the expert disclose what his testimony will be, not just the topics about which he will testify.  *See United States v. Valle*, No. 12 Cr. 847 (PGG), 2013 WL 440687, at *5 (S.D.N.Y. Feb. 2, 2013) ("Merely

14

identifying the general topics about which the expert will testify is insufficient; rather, the summary must reveal the expert's actual opinions."); *United States v. Duvall*, 272 F.3d 825, 828 (7th Cir. 2001) ("The Rule requires a summary of the expected testimony, not a list of topics."). "Proper expert disclosures are not a mere technicality with which compliance may be made or not—they are required by Rule 16 of the Federal Rules of Criminal Procedure" and the requirements "do not only apply to one side and not the other." *United States v. Ulbricht*, No. 14 Cr. 68 (KBF), 2015 WL 413318, at *2 (S.D.N.Y. Feb. 1, 2015), *aff'd*, 858 F.3d 71 (2d Cir. 2017).

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████ Such a belated disclosure may require a *Daubert* hearing to test the reliability of Dr. Hall's heretofore unrevealed analysis on this question.  But as the record now stands, because Dr. Hall's expert opinions are irrelevant without the addition of some undisclosed significance, his testimony should be excluded.  *See Ulbricht*, 2015 WL 413318, at *5 (collecting cases concerning the exclusion of expert testimony for insufficient notice).[8]

### D.  Dr. Hall's Fact Testimony Is Inadmissible

The defendant's disclosure states that, in addition to providing his expert opinions and their basis, Dr. Hall would testify about ██████████████████████████████████

---

[8]   To the extent the defendant is aware of additional conclusions Dr. Hall would offer, those should be disclosed immediately—both because without such disclosures his opinions have no apparent relevance, and because even the current disclosures are vague yet disclosed relatively close to trial.  *See, e.g.*, *Valle*, 2013 WL 440687, at *6 (ordering rapid supplemental disclosure).

███████████████████████████████████████████████████

███████████████████████████████████    If Dr. Hall had some admissible substantive

testimony, the Government would not object to a foundational account of how he evaluated Minor

Victim-4.  The defendant has not, however, identified any admissible substantive testimony from

Dr. Hall.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

---

This Court has discretion, after careful consideration of alternatives, to exclude Dr. Hall's testimony based solely on the inadequacy of the defendant's disclosures and the lateness of any supplemental disclosures.  *See Ulbricht*, 858 F. 3d at 116-17 (affirming district court's exclusion of two defense experts on those grounds).



██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████

It remains theoretically possible that Dr. Hall's interview with Minor Victim-4 will become relevant for impeaching her with a prior inconsistent statement. At present, however, the Government does not expect that Minor Victim-4's testimony will be contradicted by statements she made to Dr. Hall. And to be clear, Minor Victim-4's expected testimony about the defendant's involvement in Epstein's scheme is not inconsistent with the fact that Minor Victim-4 did not describe those instances to Dr. Hall. "It is well settled that for two statements to be inconsistent, they need not be diametrically opposed. Nevertheless, the statements must be inconsistent." *United States v. Trzaska*, 111 F.3d 1019, 1024–25 (2d Cir. 1997) (citations and internal quotation marks omitted). In *Trzaska*, the Circuit explained that a witness's statement on one occasion that his son was willing to give away certain guns was not inconsistent with the witness's statement on another occasion that his son was obsessed with different guns, or guns in general. *Id.* Similarly, that Minor Victim-4 described to Dr. Hall certain aspects of Epstein's abuse that did not involve the defendant is not inconsistent with describing other aspects that did involve the defendant.

In addition, the defendant does not need Dr. Hall's testimony to inform the jury that Minor Victim-4 has not always disclosed the defendant's role in Epstein's abuse. Minor Victim-4 also failed to mention the full extent of the defendant's role during her first FBI interview. Because the Government believes that in this interview—unlike the Hall interview—Minor Victim-4 was asked questions that would have referenced the defendant in a complete answer, the Government

expects to elicit the failure to mention her on direct, and does not object to reasonable cross examination on the subject.

It may nonetheless be that *after* Minor Victim-4 testifies the defendant will be able to argue that some statement made to Dr. Hall satisfies the multiple prerequisites for introducing extrinsic evidence of a prior inconsistent statement. *See generally United States v. Ghailani*, 761 F. Supp. 2d 114, 117-19 (S.D.N.Y. 2011) (discussing requirements).[10]  As the Court has noted, any argument on that score must await the presentation of evidence. (*See* Nov. 11, 2021 Sealed Tr., at 194).  But at present, the defendant has identified no relevant fact testimony that Dr. Hall could offer.  Because his expert testimony is similarly inadmissible, he should be excluded as a witness absent further developments at trial.

---

[10]  To be clear, although Dr. Hall could conceivably testify as to his recollection of some prior inconsistent statement by Minor Victim-4, the rough transcript of his interview with her cannot become admissible as extrinsic evidence of Minor Victim-4's statements regardless how she testifies.  That label—"rough transcript"—comes from the document itself. (3505-035, at 1).  And it is quite obviously rough.  The document contains numerous errors, including on material points. ███████████████████████████████████████████████████████████████████ Because the rough transcript is not a verbatim transcript, it cannot be offered as extrinsic evidence of prior inconsistent statements. *See United States v. Almonte*, 956 F.2d 27, 29 (2d Cir. 1992) (per curiam) ("[A] 'third party's characterization' of a witness's statement does not constitute a prior statement of that witness unless the witness has subscribed to that characterization."); *United States v. Leonardi*, 623 F.2d 746, 757 (2d Cir. 1980) (FBI notes offered to impeach not attributable to witness because "a witness may not be charged with a third party's characterization of his statements unless the witness has subscribed to them"); *see also Ghailani*, 761 F. Supp. 2d at 117-18, 120 (excluding testimony about prior witness interviews offered as prior inconsistent statements due to, among other things, concerns about translation errors).

### III.   THE COURT SHOULD PRECLUDE THE TESTIMONY OF BENNETT GERSHMAN

The defense proposes to call Bennett Gershman, a professor of law at Pace University, for the following testimony:

> We expect Professor Gershman to provide testimony on best practices to ensure the integrity of any prosecution, focusing on investigation, witness preparation, media contact, neutrality, obligations to provide accurate information, and relationship with crime victims, their counsel, and case-related civil litigation.

(Ex. A at 12).

This testimony should be precluded as irrelevant.  At the conference on November 1, 2021, the Court precluded "affirmative evidence by the defense that goes to the thoroughness of the investigation," (11/01/21 Tr. at 17:15-17), including "evidence of the public outcry and scrutiny that preceded the decision to charge the defendant," (*id.* at 21:1-9), as well as evidence regarding "why and when the government conducted the investigation," including any defense evidence that the Government "has a legally improper motive for prosecuting [the defendant] or somehow [is] fabricating evidence or suborning perjury or the like," (*id.* at 23:2-6).  The Court reaffirmed the settled law in this Circuit that "the government is not on trial."  (*Id.* at 23:10-11 (quoting *United States v. Knox*, 687 F. App'x 51 (2d Cir. 2017))).  To the extent evidence similar to this evidence is permissible, the Court concluded that it was permitted only as "relevant cross-examination of the government's witnesses."  (*Id.* at 27:19-29:24).

Gershman's proposed testimony is relevant only to the defense theories that the Court has precluded.  This testimony invites the jury to conclude that either the New York investigation or Florida investigation—or both—lacked "integrity."  (Ex. A at 12).  Whether that supposed lack of

"integrity" goes to an argument about thoroughness, or an argument about motive and the corruption of evidence, the Court has already ruled that the defense may not offer affirmative evidence of that point to the jury.

Even if this testimony was not plainly barred by the Court's prior ruling, it should still be precluded for inadequate notice.  The expert notice for this witness provides only general topics of discussion and not Gershman's opinions, and it does not identify the bases for his testimony— which are independent reasons to preclude Gershman or to require supplemental notice.  It is likely that such information would demonstrate the unreliability or further irrelevance of Gershman's testimony.  In a recent case, however, Gershman attempted to offer precisely the sort of testimony that this Court has already excluded.  *See U.S. Securities and Exchange Comm'n v. Collector's Coffee Inc.*, -- F. Supp. 3d --, 19 Civ. 4355 (VM) (GWG), 2021 WL 3418829, at *2 (S.D.N.Y. Aug. 5, 2021) (excluding Gershman's testimony in a civil case that, *inter alia*, "the SEC improperly obtained an ex parte order from the Court," and "the SEC's lawyers have 'engaged in a pattern of irregular, overzealous, unethical, and unlawful conduct' throughout this litigation"). The Court should not permit expert testimony on those subjects.

## IV. BEFORE THE DEFENDANT'S REMAINING WITNESSES OFFER EXPERT TESTIMONY, THE DEFENDANT SHOULD BE REQUIRED TO PROVIDE SUPPLEMENTAL NOTICE

The defense provided brief notice of four additional experts: Robert Kelso, who would testify about computer forensics; John Lopez, who would testify about financial records; and two forensic document specialists.  The defendant's expert notice is not clear regarding these witness's expected testimony and the bases for that testimony.  Insofar as Kelso and Lopez will testify as fact witnesses, the Government does not object to that testimony.  If they are expected to testify as

21

experts, however, and before any testimony by the forensic document specialists, the defense must

say more about these witnesses' opinions and the bases for them.  The Government is not able to

take a position on the reliability or relevance of those opinions from the face of the expert notice.

Given the proximity to trial, any additional delay to provide sufficient notice should be closely

scrutinized by the Court, and entirely precluded if notice is not provided forthwith.

## A. Robert Kelso and John Lopez

The defendant anticipates calling Robert Kelso, a computer forensics specialist, to testify

about:

> the user data associated with certain devices seized and
> searched by the government's team in this case, documents
> and photographs extracted from certain of those devices, and
> the metadata associated with certain documents and
> photographs.  He may also testify generally about computer
> forensic principles associated with the creation of documents,
> storage and retrieval of digital documents and photographs,
> including the limits to the information that can be gleaned
> from the metadata. Mr. Kelso may testify in rebuttal to any
> testimony offered by the government through Stephen Flatley.
> As trial preparation proceeds, the defense will update the
> topics for Mr. Kelso if any arise.

(Ex. A at 12-13).

Similarly, the defendant anticipates John Lopez, a financial investigator, to testify about:

> his review of certain financial records provided by the
> government in discovery. Specifically, Mr. Lopez will discuss
> various transfers of funds that are reflected in the financial
> records and explain the information contained in the financial
> records regarding those transfers.

(*Id*. at 13).

To the extent Kelso and Lopez are expected to summarize evidence otherwise in the record,

that testimony is not expert testimony, and therefore its admission is not precluded by Rule 702.

*See United States v. Lebedev*, 932 F.3d 40, 50 (2d Cir. 2019) (concluding that "an account and litigation consultant" who "summar[ized] . . . the relevant financial records" was not an expert witness).  The Government has similarly provided expert notice in an abundance of caution for Stephen Flatley, an FBI computer forensic examiner who will testify as a fact witness about his extraction of devices seized pursuant to court authorized search warrants and evidence recovered from those devices.[11]

To the extent Kelso and Lopez would testify based on their "scientific, technical, or other specialized knowledge," however, that testimony is expert testimony.  *Id.* (quoting Fed. R. Evid. 702(a)).  And any such testimony is not reflected in the expert notice.  These expert notices provide lists of "general and in some cases extremely broad topics," which is "plainly inadequate" under Rule 16.  *Ulbricht*, 858 F.3d at 115.  For instance, the notice for Kelso states that he will testify "generally about computer forensic principles associated with the creation of documents," and testify "about user data associated with certain devices seized and searched by the government's team in this case."  (Ex. A at 12).  It also states that the defense may "update the *topics* for Mr. Kelso" before trial.  (*Id.* at 13 (emphasis added)).  Similarly, Lopez will "discuss various transfers of funds that are reflected in the financial records and explain the information contained in the financial records."  (*Id.*).  These lists of topics do not permit the Government to identify Kelso and Lopez's opinions, determine whether the proffered experts are in fact expert on those subjects, and litigate the reliability and relevance of those opinions.

---

[11] The Government also pointed to four other cases in this District and the Eastern District in which Flatley testified, including *United States v. Kelly*, 19 Cr. 286 (AMD) (E.D.N.Y.).

Accordingly, the Court should preclude expert testimony from Kelso and Lopez unless and until the defense to provides supplemental expert notice forthwith.[12]  If the defense does so, the Government should have an opportunity at that time to litigate its admissibility.  And if the defense does not do so, those witnesses should be limited to purely factual testimony.  *See Lebedev*, 932 F.3d at 50 (affirming a limiting instruction clarifying that the witness was not providing an expert opinion).

## B. Forensic Document Specialists

Finally, the defendant has identified two forensic document specialists who she may call as expert witnesses.  Gerald LaPorte is a "Forensic Chemist and Document Dating Specialist," and Jennifer Naso is a "Forensic Document Examiner."  (Ex. A at 13-14).  Regarding their expert opinions, the defendant writes:

> Defendant anticipates the receipt of documents produced by the government and documents received pursuant to defense subpoena included but not limited to journal pages by witness [Minor Victim-2]. These documents may require analysis regarding the dates of creation, completeness, alteration and manipulation. When these documents are disclosed, Defendant will seek to have them analyzed and present testimony on the analysis as needed.

(*Id.* at 13-14).

This notice also does not provide the experts' "opinions" or "the bases and reasons for those opinions."  Fed. R. Crim. P. 16(b)(1)(C).  It does not even identify the set of documents

---

[12] Similarly, absent additional expert notice, Kelso and Lopez should be required to limit their testimony to facts in the record.  Experts—but not other witnesses—may rely on facts or data that are not admissible, and may disclose them to the jury in certain circumstances.  *See* Fed. R. Evid. 703, 705.

24

purportedly awaited or topics of testimony, besides documents that "may require analysis," leading to whatever testimony is "needed." (Ex. A at 13-14). This is plainly inadequate under the rules, and the Government cannot litigate the qualifications, reliability, or relevance of unknown testimony about unidentified documents at this time.

Of course, the Court has the option of permitting the defense to clarify this notice mid-trial whenever the defense receives and reviews the documents they have in mind. Doing so, however, would almost certainly lead to mid-trial *Daubert* briefing, possibly a mid-trial *Daubert* hearing, and late-breaking rebuttal expert notice by the Government.

The better course is to require the defense to identify, immediately, the documents they expect to be the subject of forensic analysis and the precise forensic methodology that these experts will use to analyze those documents. That may—depending on the details—permit some *Daubert* litigation to occur now, because the Government may be able to agree with, or challenge, the notion that these experts are qualified to use the methodology, that the methodology is reliable, or that the document is relevant. *See, e.g.*, Jennifer L. Mnookin, "Scripting Expertise: The History of Handwriting Identification Evidence and the Judicial Construction of Reliability," 87 Va. L. Rev. 1723, 1726-27 (2001) (describing "major pretrial battles being waged over the admissibility of . . . expert evidence in handwriting identification"). [13]

Here too, the Court should order the defendant to provide additional expert notice of the methodology these experts intend to use, and the precise documents they expect to examine. Such

---

[13] It would of course defeat the purpose of an order along these lines if the defendant gives expert notice of numerous document examination methodologies, requiring extensive *Daubert* litigation that may stretch into trial and would far exceed the scope any actual testimony that may be presented at trial.

an order will likely permit the Government to interpose a *Daubert* challenge now.  Absent rapid supplemental notice along these lines, the Court should preclude the forensic document specialists.

## **CONCLUSION**

For the reasons set forth above, the Government respectfully requests that the Court preclude the testimony of Dr. Ryan Hall and Bennett Gershman; preclude any expert testimony (as opposed to fact testimony) by Robert Kelso or John Lopez; and preclude any testimony at all from the forensic document specialists, unless and until the defendant provides supplemental expert notice, which the Court should order the defense to provide forthwith.


Dated: November 15, 2021
        New York, New York


                                        Respectfully submitted,

                                        DAMIAN WILLIAMS
                                        United States Attorney for the
                                        Southern District of New York


                                  By:   _____/s/_____
                                        Maurene Comey
                                        Alison Moe
                                        Lara Pomerantz
                                        Andrew Rohrbach
                                        Assistant United States Attorneys

26