**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

December 4, 2021

**BY ECF**

The Honorable Alison J. Nathan
United States District Court
Southern District of New York
United States Courthouse
40 Foley Square
New York, New York 10007

> Re:   *United States v. Ghislaine Maxwell*, S2 20 Cr. 330 (AJN)

Dear Judge Nathan:

The Government respectfully submits this letter moving to admit photographs from the interior of Jeffrey Epstein's house in New York. As explained below, particular images are corroborative of testimony by the witness using the pseudonym "Jane." They are therefore relevant to the issues before the Court.[1]

### I. Applicable Law

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence," and the fact "is of consequence in determining the action." Fed. R. Evid. 401; *see* Fed. R. Evid. 402 ("Relevant evidence is unless [another law] provides otherwise

---

[1] The Government has redacted the exhibits from this letter entirely to avoid publicizing photographs which may not be exhibits at trial. The Government is prepared to file publicly a version that contains redacted versions of the exhibits if the Court so orders.

1

. . . ."). The "standard of relevance established by the Federal Rules of Evidence is not high." *United States v. Southland Corp.*, 760 F.2d 1366, 1375 (2d Cir. 1985) (Friendly, J.) (internal quotation marks omitted). A district court's "evidentiary rulings" are reviewed on appeal "under a deferential abuse of discretion standard," and are disturbed only if "manifestly erroneous." *United States v. Skelos*, 988 F.3d 645, 662 (2d Cir. 2021) (internal quotation marks omitted).

"[A] suggestion that an item of evidence relates to a period that is too remote goes to both the item's relevance and its weight." *United States v. Certified Env. Services, Inc.*, 753 F.3d 72, 90 (2d Cir. 2014) (internal quotation marks omitted.). But evidence of continuity between the time of the consequential fact and the time of the proffered evidence supports a finding of relevance. *See, e.g., id.* (evidence that predated the charged conspiracy by five years relevant because it concerned "a pattern of activity that continued up to the time of the charged conduct," and evidence that postdated acts charged in the indictment provided evidence "of a longstanding continuous mental process" (internal quotation marks omitted)); *United States v. Roux*, 715 F.3d 1019, 1027 (7th Cir. 2013) (rejecting a relevance challenge to prior acts evidence because they "were offered to establish Roux's sexual interest in minors, a proclivity that . . . is unlikely to vanish with the passage of time"). And evidence that corroborates earlier evidence is "admissible for the same reasons." *Certified Env. Servs.*, 753 F.3d at 91 ("[B]ecause the 2009 guidance document memorialized the 2006 email exchange, it served to corroborate that evidence, and therefore was admissible for the same reasons.").

    **II.**    **Discussion**

Certain photographs in the 900 series are strongly corroborative of specific statements made by Jane. In defense counsel's words, Jane's recollection "of everything . . . is critical to the

case," and "[h]er memory of every single detail of her childhood is central to the case." (12/01/21 Tr. at 413). Accordingly, photographs that corroborate Jane's testimony are highly relevant.

There are two sets of photographs that are particularly corroborative: photographs of Epstein's massage room and photographs that corroborate details of other portions of Epstein's house.

### A. The Massage Room

Jane testified that she was sexually abused in the massage room of Epstein's New York house, and she gave detailed testimony about permanent features of the room. Photographs taken of the massage room specifically corroborate that testimony.[2]

Jane described the walls of the room: "[I]t was very dark," "I don't know if it was painted dark, but – or maybe that was the lighting, but it sort of had this, like, red mood. And then there was just a giant black massage table in the middle of it." (11/30/21 Tr. at 320). More generally, she testified that the house was decorated with "fabric wallpaper, like red curtains." (11/30/21 Tr. at 318).

As depicted in Government Exhibit 903, among other photos of the massage room, the massage room has reddish dark walls with wallpaper and red curtains. A large massage table is located in the middle of the room:

**[Redacted]**

Jane explained that the room had a "built-in bookcase on the right-hand side, and there was a stereo system." (11/30/21 Tr. at 320).

---

[2] In particular, the Government seeks admission of Government Exhibits 902 through 904, 917, and 928.

As depicted in Government Exhibit 928, the massage room in fact has a large built-in bookcase with a stereo system:

[Redacted]

Jane also testified that the massage room was approximately the size of a "giant walk-in closet." (11/30/21 Tr. at 320). And more generally, she testified that the building itself had "Lots of stone, you know, old wood." (*Id.* at 317-18).

As depicted in Government Exhibits 904 and 917, the massage room is about the size of a walk-in closet, and the moldings in the massage room were made of wood:

[Redacted]

Finally, Jane explained that the artwork in the house included "Paintings of naked women and orgies and things like that." So much so, in fact, that "[i]t didn't seem very unusual at this point." (11/30/2021 Tr. at 318).

That description is accurate, as evident from the above photos. It is also accurate with respect to other photos of the massage room, including Government Exhibit 902, a photo of the entrance to the massage room:

[Redacted]

These photos readily surmount the low bar of relevance. They specifically corroborate Jane's memories of the room in which she was sexually abused, showing that in fact she spent time in that room, a critical fact of the case.

The Government understands the Court's point that there has not been testimony specifically comparing these particular photographs to items present during the time period of the conspiracy. But most of Jane's testimony about the massage room does not concern "movable

items." (12/3/21 Tr. at 1076). Much of it concerns fixtures: the room's size, its dark and reddish wallpaper and curtains, its built-in bookcase, and its wooden molding. Those cannot be removed from the room without a renovation—in some cases, a significant renovation.

Even those items that are "movable" are consistent with Epstein's longstanding practices, and therefore still probative. Jane did not testify to any art in the massage room, and the Government would not argue that the particular nude artwork in the exhibits was present while Jane was abused. But there is evidence of Epstein's practice of displaying depictions of naked women in his homes from the mid-1990s through the mid-2000s, through both Jane's testimony and evidence of the search of his Palm Beach house. The artwork in Epstein's home at the time of the search is a continuation of that practice and tends to make it make it more likely that Jane's testimony was accurate. That is all that is required to show relevance.

At a more general level, this evidence is probative that Jane knew how Epstein decorated his New York massage room. It was dark, red, with curtains, a built-in bookcase, and a stereo system. It was in a house decorated with wood, wallpaper, and artwork showing nude women. The jury will know full well, and the defense will surely argue, that time has passed since the mid-1990s. But that argument goes to weight, not whether the evidence is relevant at all. A jury could reasonably conclude that it is no coincidence that these photos match Jane's description—it is because Jane has been in this room.

If the Court remains concerned about the relevance of movable property, the Government can offer photos that redact the artwork. But the photographs of the massage room are probative

evidence on a material matter, and they should be admitted.[3]

### B. Other Photographs

Many of the remaining photographs of Epstein's house corroborate other testimony by Jane. As with the nude pictures in the massage room, each of these photographs is consistent with testimony about Epstein's practices, so they are probative corroboration of that testimony.

*First*, Jane testified that Epstein used vibrators and back massagers of sizes while abusing her. (11/30/21 Tr. at 310). Juan Alessi, whose testimony corroborated Jane, also testified that he found two different kinds of vibrating back massagers after Epstein received massages, and that those massagers were kept in Epstein's bathroom in Palm Beach. (12/02/21 Tr. at 894-95).

The Government recovered two vibrating massagers in the bathroom of the New York home adjacent to the massage room. The Government therefore seeks admission of two photos, Government Exhibits 918 and 921, depicting those two devices:

**[Redacted]**

The point of this evidence is not to show that these vibrators are the particular vibrators used on Jane. It is to show that they are the type that were used on Jane, and corroborate Jane's testimony by showing that Epstein did, consistent with the *modus operandi* of the conspiracy from the mid-1990s through the early 2000s, possess this sort of massager device.

*Second,* Jane testified that the home contained "creepy looking animals." (11/30/21 Tr. at

---

[3] The Government could not elicit testimony from Jane about these photographs without substantially diminishing the probative force of the evidence. Before showing the photographs to Jane on the stand, the Government would surely need to show her the photographs in advance. Doing so would permit an inference that Jane tailored her testimony about her memories of the massage room to the photographs, thereby vitiating the photographs' value as independent corroboration.

6

305). This comment about Epstein's distinct decorating style may seem implausible to jurors. But the Government observed and photographed more than one stuffed animal that could fairly be described as "creepy looking" during its search of Epstein's house, including as depicted in Government Exhibit 938[4]:

**[Redacted]**

The fact that this stuffed tiger is movable property is counterbalanced by the fact that it is highly idiosyncratic. While the Government would not argue that Epstein had this particular stuffed tiger in his home in the mid-1990s, it is probative of Jane's testimony that—at any point in time—Epstein possessed the kind of "creepy looking animals" that she described.

*Third*, the Government would offer six photos—Government Exhibits 909 through 911, 913, 915, and 933—to demonstrate structural features of the house. Some of these photographs will provide context for the law enforcement officer's testimony by showing the entrance areas of the house which she searched. And all of them will corroborate Jane's testimony that the house was intimidating and contains significant amounts of wood and stone, as Jane stated. (11/30/21 Tr. at 317-18 (describing the house as "massive" and made her feel "Intimidated."); 320 (explaining that the house had "Lots of stone, you know, old wood.")). Neither of these theories involve movable property of any kind, and the Government would not argue that any movable furniture or artwork was present when Jane visited the house.[5]

*Fourth*, Epstein's home contained a large number of photographs of celebrities, including

---

[4] A stuffed dog is also depicted in Government Exhibit 936.

[5] The Government also notes that the Court has already ruled that it will reserve, subject to connection, on the admissibility of costumes from the search, which are marked as physical exhibits and depicted in Government Exhibits 919 and 920. (12/03/21 Tr. at 929). The Government similarly will offer Government Exhibits 919 and 920 subject to connection.

photos of the defendant and Epstein with celebrities, and additional artwork depicting nude women. The Government does not currently intend to offer exhibits depicting those photographs or artwork, but it does intend to elicit testimony from the law enforcement witness that the home contained those items. That testimony is further corroboration of Jane's general knowledge of categories of decorations Epstein preferred, but it contains no suggestion that any particular exhibit corroborates Jane's testimony.

*Finally,* the Government notes that the defense has not raised a Rule 403 prejudice argument, and for good reason. None of the evidence in this category is prejudicial to the defense. There will be no suggestion that the defendant or Epstein possessed these particular items during the time period of the conspiracy, and the defense is free to argue that the distance in time undermines the probative force of the evidence. But whether that probative force is significant (as the Government suggests) or minimal (as the defense suggests), the defense is not prejudiced by pictures of a massager, a stuffed tiger, or photos of structural features of Epstein's home.

### III. Conclusion

For the foregoing reasons, photographs from the 900 series of Government Exhibits should be admitted.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney


By: ___s/_____
    Maurene Comey
    Alison Moe
    Lara Pomerantz
    Andrew Rohrbach
    Assistant United States Attorneys
    Southern District of New York

Cc: Defense Counsel (by ECF)