

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

December 6, 2021

**BY ECF**

The Honorable Alison J. Nathan
United States District Court
Southern District of New York
United States Courthouse
40 Foley Square
New York, New York 10007

Re:   *United States v. Ghislaine Maxwell*, S2 20 Cr. 330 (AJN)

Dear Judge Nathan:

The Government respectfully submits this letter in response to the defense motion to call Jane's attorney, Robert Glassman, to testify. Any such testimony is protected by attorney-client privilege and, in any event, should be excluded under Rule 403.

I. **Applicable Law**

The "common law" governs claims of privilege in federal cases. Fed. R. Evid. 501. And "[t]he attorney-client privilege is the oldest of the privileges for confidential communications known to the common law. Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observation of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383 (1981); *see United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989) (explaining that the privilege "recognizes

that a lawyer's assistance can only be safely and readily availed of when free from the consequences or the apprehension of disclosure" (internal quotation marks omitted)). The privilege "protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *United States v. Krug*, 868 F.3d 82, 86 (2d Cir. 2017) (internal quotation marks omitted).

The attorney-client privilege "belongs solely to the client and may only be waived by [her]. An attorney may not waive the privilege without [her] client's consent." *In re von Bulow*, 828 F.2d 94, 100 (2d Cir. 1987); *see Chirac v. Reinicker*, 24 U.S. 280, 294 (1826) ("The privilege, indeed, is not that of the attorney, but of the client . . . ."). Absent such a waiver, however, "the publication of confidential communications by an attorney does not constitute a relinquishment of the privilege by the client." *In re von Bulow*, 828 F.2d at 100; *see Hanson v. U.S. Agency for Int'l Dev.*, 372 F.3d 286, 294 (4th Cir. 2004) ("Roy as an attorney could not waive USAID's right without USAID's consent.").[1] Courts have found that clients have impliedly waived the privilege "when a client testifies concerning portions of the attorney-client communication, when a client places the attorney-client relationship directly at issue, and when a client asserts reliance on an attorney's advice as an element of a claim or defense." *In re County of Erie*, 546 F.3d 222, 228 (2d Cir. 2008) (alterations and internal quotation marks omitted). The "quintessential example of an implied waiver of the privilege" occurs when a client asserts an advice-of-counsel defense. *Id.* (internal quotation marks omitted).

---

[1] In "appropriate circumstances," an attorney "may . . . possess an implied authority to waive the privilege on behalf of his client." *In re von Bulow*, 828 F.2d at 101 (internal quotation marks omitted).

Although criminal defendants possess constitutional rights to "a meaningful opportunity to present a complete defense and to confront witnesses," those rights are not unqualified. *United States v. Rivera*, 799 F.3d 180, 184-85 (2d Cir. 2015) (citations and internal quotation marks omitted). "A defendant's right to present relevant evidence . . . is subject to reasonable restrictions," and therefore may "bow to accommodate other legitimate interests in the criminal trial process." *United States v. Scheffer*, 523 U.S. 303, 308 (1998) (internal quotation marks omitted); *see also Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (discussing a district court's "wide latitude . . . to impose reasonable limits on cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witnesses' safety, or interrogation that is repetitive or only marginally relevant," notwithstanding the Confrontation Clause). The attorney-client privilege is one such interest. *See Taylor v. Illinois*, 484 U.S. 400, 410 (1988) ("The accused does not have an unfettered right to offer testimony that is incompetent, *privileged*, or otherwise inadmissible under the standard rules of evidence." (emphasis added)). Where the privilege applies, it is "essential to the protection of [the client's] legal rights," and "stands in derogation of the public's right to every man's evidence." *In re Horowitz*, 482 F.2d 72, 81 (2d Cir. 1973) (internal quotation marks omitted).

**II.     Discussion**

As a general matter, Jane and Glassman's conversations with each other in which Glassman provided legal advice are privileged. They were: (1) between a client and counsel, (2) remain confidential, and (3) for the purpose of obtaining or providing legal advice.

The defense has two theories by which Glassman's alleged statement to Jane that her cooperation and testimony would "help her case" is not privileged: (1) it was not intended to be

kept confidential because it was information the Government "would want to know" and "Jane would want the government to know," (Def. Letter at 2); and (2) any privilege was waived when the statement was disclosed to the Government. These arguments lack merit. The first suggests a limitation on the privilege that would swallow its protections. The second errs because Glassman could not waive the privilege. And in any event, the probative value of this testimony is so slight that it should be excluded under Rule 403.

*First*, the defense argues that the advice was not intended to be kept confidential because "Jane's motive for cooperating with the government and testifying against Ms. Maxwell is essential to the government's assessment of Jane's credibility and its preparation for her cross-examination." (Def. Letter at 3). This theory suggests that anything which would be essential to the Government's assessment of a witness' credibility and preparation for cross-examination cannot be kept confidential, and so is not privileged. Such a rule is not the law. If it were, it would effectuate a subject-matter waiver about innumerable topics, to the great detriment of the attorney-client relationship. The Government and the defense would be entitled to invade that relationship to learn about the client's discussions on topics that go to bias, motive, or other items material to a case. For instance, the Government frequently calls witnesses testifying pursuant to a cooperation agreement. Once the cooperation agreement is signed, the Government could not—and would not—ask the cooperator for a proffer of their conversations with their counsel about their motives to testify. *See* 12/01/21 Tr. at 567 ("THE COURT: The attorney's advice to the client about whether they should take a plea and what assistance that might get them and all of that obviously is privileged."). Or, for instance, the Government sometimes immunizes witnesses and calls them to testify. The Government could not—and would not—ask the immunized witnesses

to divulge their conversations with counsel about how significant their attorneys assess the benefits of immunity to be.

In such cases, it is not that these issues are irrelevant to the Government or to the defense. They are highly relevant. But the attorney-client communications are privileged, and the attorney's advice is not presumptively expected to be shared with the Government because the witness will testify for the Government. Instead, the client makes factual statements about the issue—not about the attorney-client communications—which the Government turns over to the defense. *See, e.g.*, *In re General Motors LLC Ignition Switch Litig.*, 80 F. Supp. 3d 521, 528 (S.D.N.Y. 2015) ("It is well established, however, that the attorney-client privilege protects communications rather than information."). The fact that "certain *information* might later be disclosed to others does not, by itself, create the factual inference that the *communications* were not intended to be confidential at the time they were made." *Id.* at 529 (emphasis in original, internal quotation marks omitted). In this case, it would have been improper for the Government to ask Jane how Glassman had advised her regarding her decision whether to assist the Government.[2]

*Second*, Glassman did not waive any privilege over Jane's communications with him through his comments to the Government. The reason is that Jane, not Glassman, was holder of the privilege, and it was not Glassman's to waive. *See In re von Bulow*, 828 F.2d at 100. And

---

[2] *United States v. Bergonzi*, 216 F.R.D. 487 (N.D. Cal. 2003), on which the defendant relies (Def. Letter at 3), is inapposite. In that case, a company agreed to turn over certain documents to the Government "before the documents had been prepared." *Id.* at 493. Accordingly, the company could not assert privilege over the documents, because they were made "for the purpose of relaying communication to a third party." *Id.* There is no reason to believe that Glassman's legal advice to Jane was made with the intent to turn over *that legal advice* to the Government.

5

there is no reason to think Jane expressly or implicitly authorized Glassman to waive her privilege on the topic of Glassman's advice to Jane about assisting the Government. Despite the Court's invitation, the defendant has offered no argument to the contrary. 12/01/21 Tr. at 573 ("THE COURT: "Well right. But whether he waived – whether the privilege – it's the client's to waive, I think. That will be part of the briefing, I suppose.").

Nor is this a case in which Jane impliedly waived privilege. Jane has not testified "concerning portions of the attorney-client communication," placed "the attorney-client relationship directly at issue," or asserted "reliance on an attorney's advice as an element of a claim or defense." *In re County of Erie*, 546 F.3d at 228. On that first point, Jane was asked whether she "knew" that her cooperation with the Government would benefit her civil litigation or her claim with the victim's compensation fund, and she said no. 12/1/21 Tr. at 581. Neither of those answers described portions of her communications with her attorney. It is the defense which is injecting the attorney-client relationship into the trial by attempting to use privileged communications to impeach Jane. That cannot constitute a privilege waiver by Jane.[3]

*Third*, even if Glassman's statement to the Government could waive Jane's privilege, the Court should exclude that evidence under Rule 403. Any waiver would at most cover whatever statement Glassman made to the Government, and not the subject matter of his advice to Jane about cooperation. *See* 12/01/21 (defense counsel stating that "whatever he communicated to the government is what was waived. I don't think he's waived – I'm not arguing for subject matter waiver, for example."). The defense has other avenues to suggest that cooperating with the

---

[3] For these reasons, the cases cited by the defense are inapposite. (Def. Letter at 3-4). They concern voluntary disclosures of privileged information. But *Jane* did not voluntarily disclose any privileged information.

Government would have aided Jane's claim before the Epstein Victims' Compensation Fund and that Jane was aware of that fact, as the defense has already argued. And insofar as the point is to impeach Jane, this statement is of minimal impeachment value. Jane said no when asked whether she knew that "cooperation with the government, including testifying, would benefit you in your civil litigation against the Epstein estate and Ms. Maxwell." 12/01/21 Tr. at 581; *see id.* (asking the same question about her knowledge "at any point" regarding Jane's civil litigation). As of August 17, 2021, the date of the statement from Glassman to the Government, Jane had been paid by the Epstein Victims Compensation Fund, and her civil case had been dismissed. And Glassman appears to have advised Jane that the civil cases were fully resolved. *See* 12/01/21 Tr. at 619 (testimony by Jane that she does not have a financial stake in the outcome of this trial).[4] At most, then, the statement means that Glassman, at some point in the past, advised Jane that testifying would aid another "case." And at most, that would impeach Jane by suggesting that, while she accurately testified that she did not "know" that her "cooperation with the government, including testifying," would benefit her in her civil case or EVCP claim, she had been told that at one point in the past.

By contrast, there is significant risk that admission of the statement would require Glassman to divulge further privileged communications with Jane. Glassman's comment to the Government is not easily intelligible. Glassman referenced "help[ing] her case," which is not specifically a reference to civil litigation or her claim with the EVCP, and says that "it," whatever it is, would help that case. (Def. Letter Ex. A). To explain what Glassman is referencing, and when he gave that advice, he would likely have to provide more content to his advice to Jane and

---

[4] The Government is of course not aware of Glassman's privileged advice to Jane.

the context in which it was made. Indeed, that statement is one of several in the notes, and to avoid misleading the jury, Glassman would also have to describe and provide context to the remaining points reflected in the note. Doing all this would require Glassman to go well beyond the notes, exceeding the scope of any privilege waiver.

### III.  Conclusion

For the foregoing reasons, the Court should preclude testimony by Jane's counsel.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: ___s/_____
    Maurene Comey
    Alison Moe
    Lara Pomerantz
    Andrew Rohrbach
    Assistant United States Attorneys
    Southern District of New York

Cc: Defense Counsel (by ECF)