

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

December 8, 2021

**REQUEST TO BE FILED UNDER SEAL**
**BY EMAIL**

The Honorable Alison J. Nathan
United States District Court
Southern District of New York
United States Courthouse
40 Foley Square
New York, New York 10007

     Re:    *United States v. Ghislaine Maxwell*, **S2 20 Cr. 330 (AJN)**

Dear Judge Nathan:

       The Government respectfully submits this letter renewing its application for the admission of Government Exhibit 52, the contact book. At trial on December 2, the Court reserved its decision on whether to admit the book during the testimony of Juan Alessi. 12/02/21 Tr. at 876. At the time, the Government anticipated calling Employee-1, who was expected to provide additional authentication testimony. The Government no longer intends to call Employee-1 to testify at trial, but additional corroboration of Government Exhibit 52's authenticity has been received in evidence. The Government therefore submits that the issue is ripe for resolution, and that the exhibit should be admitted.

       The lone issue before the Court is whether the Government has established the authenticity

1

of Government Exhibit 52, under Rule 902.  For the reasons set forth below, the record at trial establishes that Government Exhibit 52 is authentic.  Accordingly, excerpts of Government Exhibit 52 should be admitted.

## I.     Applicable Law

The Second Circuit has "often commented that the bar for authentication of evidence is not particularly high."  *United States v. Al-Moyad*, 545 F.3d 139, 172 (2d Cir. 2008) (alteration and internal quotation marks omitted).  The "proponent of the evidence is not required to rule out all possibilities inconsistent with authenticity, or to prove beyond a reasonable doubt that the evidence is what it purports to be."  *United States v. Dhinsa*, 243 F.3d 635, 658 (2d Cir. 2001).  All that is required is "sufficient proof . . . so that a reasonable juror could find in favor of authenticity or identification."  *Id.* (internal quotation marks omitted); *see* Fed. R. Evid. 901(a).  The "standard for authentication is one of 'reasonable likelihood' and is 'minimal.'  The testimony of a witness with knowledge that a matter is what it is claimed to be is sufficient to satisfy this standard."  *United States v. Gagliardi*, 506 F.3d 140, 151 (2d Cir. 2007) (citations and internal quotation marks omitted); *see United States v. Al Farekh*, 810 F. App'x 21, 24-25 (2d Cir. 2020) (authenticating "handwritten letters" based on their contents and "considerable similarities between the handwriting" and known exemplars).  After this low bar is satisfied, "the other party then remains free to challenge the reliability of the evidence, to minimize its importance, or to argue alternative interpretations of its meaning, but these and similar other challenges to go the *weight* of the evidence—not to its *admissibility*."  *United States v. Tan Yat Chin*, 371 F.3d 31, 38 (2d Cir. 2004) (emphases in original).

2

II.      **Discussion**

The Government has laid sufficient foundation for admission of Government Exhibit 52 through three sources: (1) the testimony of Juan Alessi, (2) the admission of Government Exhibit 606 (the household manual), and (3) evidence corroborating the fact that the contact book reflects the contact information of multiple people who knew the defendant and Epstein.  Taken together, this evidence is more than sufficient for a reasonable juror to conclude that the contact book is in fact a contact book from the Palm Beach house.

*First*, Alessi personally examined Government Exhibit 52 and recognized it.  Tr. at 850. He said it is the same "type of book," and appeared to be one of the "directories of Ms. Maxwell and Mr. Epstein."  *Id.*  He said it had the "same cover," had the "same binding," and had layout that was "exactly as the books" that he recalled.  (*Id.* at 851).  Although the books he saw were thicker and had larger font, the "format was the same." (*Id.* at 851-52).

As to the contents of the book, Alessi testified that he saw "many, many, many, many names" in Government Exhibit 52 that were he recognized from the book he saw when he worked for Epstein.  (*Id.* at 851).  He specifically recognized entries in the list for massage in Palm Beach, which is copied in Government Exhibit 52-G.  (*Id.*)

Although Alessi only worked in the Palm Beach house until the end of 2002, he explained that the practice during his twelve years that he worked for Epstein was to print new directories twice a year.  Tr. at 864.  He also determined that Government Exhibit 52 is a copy of a book from sometime after he was employed because his name was not in the book, whereas his contact information and it was "originally . . . in the information for Palm Beach information of the house." *Id.* at 853.  That is confirmed by the date inside the book (2004-2005) and the fact that it contains

3

the name of Sarah Kellen, who began working for Epstein shortly before Alessi left his employment.  Tr. at 832; *see* Fed. R. Evid. 901(b)(4) (permitting authentication based on the "contents" of the item).  Alessi recognized Government Exhibit 52 as a book that belonged to Epstein and Maxwell, consistent with his experience working for them.

The defendant's challenge to Alessi's foundation rested largely on Alessi's lack of knowledge of the origins of Government Exhibit 52.  (*See id.* at 872-73, 875 "The bottom line here, Mr. Alessi, you don't have any personal knowledge about first how or when Exhibit 52 was created; correct?").[1]  But authentication does not require evidence about the circumstances of the creation or seizure of a piece of evidence, so long as it can be identified by its distinctive markings as what the proponent claims it is.  *See Al Farekh*, 810 F. App'x at 24-25.  It is well settled that defects in chain of custody go to weight and not admissibility.

*Second*, the household manual—dating from 2005, the year on Government Exhibit 52—demonstrates that the practice identified by Alessi remained in operation into 2005.  The manual explains that "[t]elephone directories are to be updated every six months, or as the new telephone directories are available."  GX 606 at 7.  And it explained that the directories in fact belong to the defendant and Epstein: a copy of their directories "must be placed to the right of each telephone (except for the Guestrooms)."  GX 606 at 7.

*Third*, the contents of Government Exhibit 52 have been confirmed by other evidence to accurately reflect relationships between the defendant and other individuals.  *See United States v. Prevezon Holdings, Ltd.*, 319 F.R.D. 459, 463 (S.D.N.Y. 2017) (permitting authentication under

---

[1] Defense counsel also pointed to the additional markings that may have been added by Rodriguez or the FBI.  Tr. at 872-73, 875.  These markings are non-substantive on any page which the Government is offering, as explained in a prior brief.  (Dkt. No. 491 at 4-5).

Rule 901(b)(4) where the proposed evidence contained "identical" or "substantially similar, pages of 'nonpublic information'" as admitted evidence).   The list under "Massage – Florida" in Government Exhibit 52-G[2] includes the following entries:

- "Virginia (parents)." ██████████████████████████████
  ████████████████████████████████████████████
  ██████████████████████

- ████████████████████████████████████████████
  ████████████████████████████████████████████
  ████████████████████████████████████████████
  ██████████████████████████████████

- ████████████████████████████ ██████████████████████████
  ████████████████████████████████████████████
  ████████████████

- Entries for "Melissa (Carolyn's friend)" and "Kristen (carolyn's friend)."  Carolyn testified that she brought other victims to Epstein's Palm Beach house, Tr. 1543, and Shawn testified this morning that one such friend was named Melissa.

- Gwendolyn Beck.  David Rogers testified this evening that Gwendolyn Beck was a friend of Epstein's who flew on his private plane.

Elsewhere, the contact book contains private information demonstrating its authenticity as an item that belonged to Epstein and Maxwell, including:

---

[2] Government Exhibit 52-G is a photocopy of a page within Government Exhibit 52.
█ ████████████████████████████████████████████
██████████████████████

- A large entry relating to Epstein.  GX-52-H.

- A series of entries relating to the defendant's family, including many with multiple phone numbers.  GX-52-E.

- ███████████████████████████████████████████████████████████████
  ████████████████████████████████████████████

- ███████████████████████████

Tellingly, the defense has failed to point to any entry in this book that is inaccurate, despite the fact that the book contains hundreds—if not thousands—of points of contact.  A jury could reasonably conclude from the content of the book, in combination with Alessi's testimony, that this contact book in fact belonged to Epstein and the defendant.  That is all that is required for authentication.

*Finally*, the Government notes that the defendant's challenge to the authenticity of Government Exhibit 52 relies heavily on the circumstances through which the Government obtained the book, namely, by seizing it from Alfredo Rodriguez.  *See, e.g.*, Mot., Dkt. No. 390 at 3; Letter, Dkt. No. 490.  To the extent the Court exercises its gatekeeping function through examination of evidence that the jury is not considering, the Government notes that the defendant herself has acknowledged the authenticity of the contact book.

Specifically, in her April 2016 deposition, the defendant was confronted with a document that appears to be a scan of the contact book and some additional pages.  (*See* Exhibit A (Maxwell Deposition Ex. 13)).  When shown the scan, the defendant was asked whether she was familiar with the document, and she replied that she was familiar with the "actual document."  (Exhibit B (Maxwell Depo. Tr.) at 312).  She said that she believed "that this is a copy of a stolen document,"

and "would love to know how [plaintiff's counsel] got it." *Id.* at 316.  The defendant was further

asked whether, "during the time you worked for Jeffrey Epstein, was there a hardcopy document

of any kind that kept phone numbers for Jeffrey Epstein, if he needed to contact someone?" *Id.*

She replied: "The stolen document I have in front of me is what you are referring to." *Id.*  Finally,

when asked whether she had access to "a hardcopy document that she could refer to to find

someone's number," she replied that "This is, *I believe,* the book that was stolen, that was the

hardcopy of whatever was there." *Id.* at 317 (emphasis added).  And she repeated that "*This book*

– if this is what this is, *I believe it was,* this is the stolen document from his house." *Id.* at 317

(emphasis added).[4]

In sum, Government Exhibit 52 has been extensively authenticated.  Alessi and the

household manual establish that the practice at the Epstein house was to regularly make and use

contact books through 2005.  Alessi and significant other documentary and testimonial evidence

from the case show that Government Exhibit 52 is one such contact book. And, in case there were

any doubt, the defendant herself looked at a scan of this book and came to the same conclusion.

Government Exhibit 52 should be admitted.

---

[4] The defendant denied being involved in the creation of the document and said that she had
stopped working for Epstein by the time this document was created.  *See, e.g.*, Tr. at 313, 323.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney


By: ___s/_____
     Maurene Comey
     Alison Moe
     Lara Pomerantz
     Andrew Rohrbach
     Assistant United States Attorneys
     Southern District of New York


Cc: Defense Counsel (by e-mail)