UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



United States,

–v–

Ghislaine Maxwell,

                  Defendant.

20-cr-330 (AJN)

MEMORANDUM
OPINION & ORDER

ALISON J. NATHAN, District Judge:

      The Government seeks to admit what has been identified as Government Exhibit 52 ("GX 52"), and submit to the jury a redacted version of GX 52. The Defense objects to the admission of GX 52 on authentication and hearsay grounds.[1] The admissibility of the exhibit has been the subject of pretrial motion *in limine* briefing and extensive supplemental briefing. *See* Dkt. Nos. 390, 397, 398, 457, 476, 490. This includes supplemental briefing received on December 8, 2021, after the authenticating witness, Mr. Juan Alessi, underwent direct examination by the Government and voir dire by the Defense. The Court reserved ruling on the exhibit, pending what was anticipated to be additional testimony. Trial Tr. at 876. The Court now overrules the Defense's objections.

    **I.**    **LEGAL STANDARD**

      Federal Rule of Evidence 901 provides that to properly authenticate or identify an item of evidence, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). The bar for authentication is "not

---

[1] The Defense previously agreed that if GX 52 is admitted, it will stipulate that Government Exhibits 52A, 52D, 52E, 52F, 52G, and 52H are true and correct photocopies of five pages from GX 52. Trial Tr. at 858.

particularly high." *United States v. Al-Moayad*, 545 F.3d 139, 172 (2d Cir. 2008). It does not require ruling out "all possibilities inconsistent with authenticity," or "prov[ing] beyond any doubt that the evidence is what it purports to be." *United States v. Dhinsa*, 243 F.3d 635, 658 (2d Cir. 2001). Rather, all that is required is "sufficient proof . . . so that a reasonable juror could find in favor of authenticity or identification." *Id.* This "minimal" standard can be satisfied by the "testimony of a witness with knowledge that a matter is what it is claimed to be." *United States v. Gagliardi*, 506 F.3d 140, 151 (2d Cir. 2007). Once this "minimal" standard is met, "the other party then remains free to challenge the reliability of the evidence, to minimize its importance, or to argue alternative interpretations of its meaning, but these and similar other challenges go to the *weight* of the evidence—not to its *admissibility*." *United States v. Tin Yat Chin*, 371 F.3d 31, 38 (2d Cir. 2004).

Federal Rule of Evidence 801 defines "hearsay" as "a statement that a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c)(2).

II.     ANALYSIS

The Court first addresses authentication under Rule 901 and concludes that Mr. Alessi's testimony is sufficient to meet this Rule's standard. Mr. Alessi testified that he worked in the Palm Beach residence from 1990 to December 2002. Trial Tr. at 778. His job required him to spend a significant amount of time in the residence. *Id.* at 779-80. Based on his years working at the residence, he recalled that Mr. Epstein and Ms. Maxwell maintained telephone directories and that GX 52 was a version of those directories.

He first testified about the function of the telephone directories in the Palm Beach residence, and that he recalled first seeing the directories in 1995 or 1996. *Id.* at 849. He testified where in the home the directories were kept—"in the kitchen desk," "Ms. Maxwell's

desk," "Mr. Epstein's three desks he had in the house," "Ms. Maxwell's each side of her night table or Mr. Epstein's night table." *Id*. He testified that the directories were updated either once or twice a year, and new contacts were added in each new copy. *Id*. Mr. Alessi's testimony on this score is corroborated by Government Exhibit 606, the "Household Manual." *See id.* 827-28 (Mr. Alessi identifying the manual's reference to "JE and GM telephone directories" as "books with hundreds and hundreds of names and their telephone numbers" (referring to GX 606 at 10)); *see also* GX 606 at 7 ("A copy of Mr. Epstein and Ms. Maxwell's telephone directories must be placed to the right of each telephone (except for the Guestrooms).").

He also explained the physical appearance of the directories he observed while working for Mr. Epstein. He explained how the books had a "type of hard binding," were either "blue or black," and the "size of a large telephone." Trial Tr. at 827-28. And as to the contents, he testified that the directories he observed contained: "a list of alphabetical order of all the people, friends and families and business with Mr. Epstein and Ms. Maxwell," *id.* at 828; Jane's contact information in particular, *id*. at 848-49; and "a page with the massages—massage therapists for Palm Beach," *id*.

Upon examining GX 52, he testified that "the type of book, it was the same" as the directories he had just recalled observing during at least six of his over ten years of employment with Ms. Maxwell and Mr. Epstein. *Id*. at 850. As for the appearance, he testified that GX 52 had "exactly the same cover of the directories that I saw," "the same binding," and "exactly" the "layout" as the books he recalled. *Id*. at 851. While he did note that GX 52 was thinner and had "much smaller font" than the books he recalled, he overall testified that the "format was the same." *Id*. at 852. And as for the contents, he testified that he had reviewed every page of the

3

exhibit and that he recognized "many, many, many, many names" amongst the entries, including some of the entries that were for "massage in Palm Beach." *Id*. at 851.

The Defense first objects that Mr. Alessi has no personal knowledge about the creation of this particular directory and is thus incapable of authenticating the exhibit. Mr. Alessi acknowledged that GX 52 was a different version than the directories he was familiar with because GX 52 was not as thick as those versions, and his name and his wife's name were in the version he observed, but neither his name nor his wife's name was in GX 52. *Id*. at 853, 865. But a document may be admitted under 901(b)(4) even when no witness saw the creation of the document or the particular copy admitted at trial.

For example, in *United States v. Al Farekh*, 810 F. App'x 21 (2d Cir. 2020), the court affirmed the district court's authentication of handwritten letters even though no testifying witness confirmed they had previously examined the letters. Instead, testimony that the "appearance, contents, substance, internal patterns, or other distinctive characteristics" of the letters were consistent with other letters previously observed was sufficient to satisfy Rule 901. *Id.* at 24-25. Similarly, in *Tin Yat Chin*, the Second Circuit affirmed the admission of copies of credit card receipts despite uncertainty about who signed the receipts and when. 371 F.3d at 38; *see also United States v. Gordon*, 634 F.2d 639, 643-44 (1st Cir. 1980) (referring to authenticated documents as "parallel documents" with distinctive characteristics such as being printed on the "same stationary," to "indicate a common authorship"). Finally, cases have allowed a witness to authenticate emails under Rule 901(b)(4), even if they were not a recipient of the specific email being admitted, when the witness had a history and familiarity with the defendant's email communication tendencies. *See, e.g.*, *United States v. Bertram*, 259 F. Supp. 3d 638 (E.D. Ky. 2017); *see also United States v. Gasperini*, 16-CR-441 (NGG), 2017 WL

3140366, at *4 (E.D.N.Y. 2017) ("The Court is unaware of any authority that authentication of emails can only come through a witness with direct knowledge of the drafting, and Defendant provides none.").

Concluding that Mr. Alessi's testimony sufficiently authenticates GX 52 follows this well-tread path. Mr. Alessi's testimony established an intimate familiarity with the distinctive directories used in the Palm Beach household over many years and during the time period of the charged conspiracy. He testified that GX 52 was the same "type of book," with the same type of binding, cover, and information. This testimony of the appearance, content, substance, and other distinctive characteristics of the exhibit is sufficient to satisfy Rule 901.[2]

The Defense's further objections go to the weight of the evidence, not its admissibility. *See Tin Yat Chin*, 371 F.3d at 38. For example, Mr. Alessi was crossed on voir dire that he did not have personal knowledge about the creation of GX 52 or how the exhibit had been maintained since it was allegedly removed from the house. Trial Tr. at 875. He acknowledged that he would not know whether GX 52 had been altered in some way, such as whether pages had been added or whether it had been rebound. Nor could he explain the addition of Post-It notes and other pencil markings in the otherwise type-face book. Trial Tr. at 872-75. But it is well settled that "any flaws in the chain of custody bear only on the weight of the evidence, and not on its admissibility." *United States v. Stuckey*, No. 06 Cr. 339 (RPP), 2007 WL 2962594, at *7 (S.D.N.Y. 2007) (citing *United States v. Morrison*, 153 F.3d 34, 57 (2d Cir. 1998)). Thus, arguments as to the Government's possession of the document or how it has been maintained do not go to authentication. *See Al Farekh*, 810 F. App'x at 25 ("Although the Government did not present evidence regarding the circumstances surrounding the seizure of the USB drive, . . . . any

---

[2] The Court notes that this conclusion does not rely on the Government's citation in its December 8, 2021, letter to the transcript of Ms. Maxwell's April 2016 civil deposition.

remaining questions as to the reliability of the letters go to their evidentiary weight, not their admissibility."). Mr. Alessi's testimony sufficiently surmounts Rule 901's "minimal" bar. The Defense's objection on authentication grounds is accordingly overruled.

The Court also overrules the Defense's objection on hearsay grounds. The directory does not constitute hearsay because it is not being offered for the truth that the names listed identify a particular individual or that the phone numbers listed next to the names are correct. The Second Circuit has affirmed the admission of documents that provide names and contact information for the non-hearsay purpose of linking the individual that possessed that document to that name or phone number, rather than for the truth of that contact information. For example, in *United States v. Al-Moayad*, 545 F.3d 139 (2d Cir. 2008), the defense objected on hearsay grounds to the admission of two address books that belonged to mujahidin fighters that listed the defendant's name and a phone number. On appeal, the Second Circuit held that the address books were not hearsay because they were not admitted to establish that the phone number next to defendant's name "was, in fact, his phone number." *Id.* at 176. Rather, it was relevant alone that his "name and contact information appeared in the address books of two men identified as mujahidin fighters." *Id.*

In an analogous line of cases, the Second Circuit has regularly admitted for non-hearsay purposes documents that contain a name for the fact that *a person* claiming to have that name took a particular action. For example, in *United States v. Londono*, 175 F. App'x 370, 373 (2d Cir. 2006), the Second Circuit affirmed the admission of Western Union wire receipts to prove that a person that claimed to have the defendant's name completed wire orders. The Government also admitted other circumstantial evidence to permit the jury to infer that the receipts were "linked to" the defendant. *Id.* at 374; *see also United States v. Zapata*, 356 F. Supp. 2d 323,

330–31 (S.D.N.Y. 2005). Similarly, in *United States v. Lieberman*, 637 F.2d 95 (2d Cir. 1980), the Second Circuit affirmed admission of a hotel guest card for the non-hearsay purpose that a person claiming to have the name of a coconspirator registered at the hotel. The Government then admitted "other evidence . . . from which the jury could infer that the hotel card spoke the truth." *Id.* at 101. Last, in *Tin Yat Chin*, the Second Circuit concluded that credit card receipts were admissible because they "tended to show that a person referring to himself as [the defendant] signed receipts on the dates and times in question." 371 F.3d at 39. Other courts have taken a similar approach to the Second Circuit. *See e.g.*, *United States v. Chavez*, 229 F.3d 946, 953-54 (10th Cir. 2000) (scrap of paper containing a phone number admissible "for the non-hearsay purpose of linking the co-conspirators," but "the number could not have been submitted for the truth of the matter asserted"); *United States v. Munguia*, 273 F. App'x 517, 521 (6th Cir. 2008) (affirming admission of "cell-phone contact lists . . . for the non-hearsay purpose of linking [the defendant] to his co-conspirators"); *United States v. Gaitan-Acevedo*, 148 F.3d 577, 591 (6th Cir. 1998) ("The government offered the numbers and addresses to demonstrate, in conjunction with other evidence, that members of the conspiracy associated with each other for business purposes. . . . These documents are not offered to prove the information they contained and therefore, may not be excluded as hearsay.").

Here, the jury could conclude based on the testimony of Mr. Alessi and GX 606 that Ms. Maxwell regularly used this telephone directory, versions of which were maintained over the years at the Palm Beach residence. *See* Trial Tr. at 849; GX 606 at 7, 10. The directory is thus relevant for the non-hearsay purpose that it tends to show a link between Ms. Maxwell and the names and phone numbers listed, as well as how the information was organized. It is not offered to establish that any of the information contained within the book, such as the listed phone

7

numbers, is in fact accurate. A limiting instruction to that effect is appropriate. If requested by the Defense, the Court would also instruct the jury that they may not consider any of the hand-written markings, since those were not authenticated.

### III.    CONCLUSION

For the foregoing reasons, the Court overrules the Defense's objections to GX 52. The parties are ORDERED to confer and propose a limiting instruction consistent with this ruling on or before **today, December 9, 2021, at 7:00 p.m.** The parties are FURTHER ORDERED to confer and prepare a stipulation that Government Exhibits 52A, 52D, 52E, 52F, 52G, and 52H are true and correct photocopies of five pages from GX 52. *See* Trial Tr. at 858.

SO ORDERED.

Dated: December 9, 2021
         New York, New York

_____
ALISON J. NATHAN
United States District Judge