LBNAMAXTps

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  UNITED STATES OF AMERICA,

4              v.                        20-cr-330 (AJN)

5  GHISLAINE MAXWELL,

6              Defendant.               Hearing

7  ------------------------------x

8                                       New York, N.Y.
                                        November 23, 2021
9                                       9:40 a.m.

10  Before:

11                 HON. ALISON J. NATHAN

12                                      District Judge

13
                        APPEARANCES
14
   DAMIAN WILLIAMS
15       United States Attorney for the
         Southern District of New York
16  BY:  MAURENE COMEY
         ALISON MOE
17       LARA POMERANTZ
         ANDREW ROHRBACH
18       Assistant United States Attorneys

19  HADDON MORGAN AND FOREMAN
         Attorneys for Defendant
20  BY:  JEFFREY S. PAGLIUCA
         CHRISTIAN R. EVERDELL
21       LAURA A. MENNINGER
         -and-
22  BOBBI C. STERNHEIM
         Attorney for Defendant
23

24

25

                   SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

LBNAMAXTps

1          (Case called)

2          THE CLERK:  Counsel, please state your name for the

3     record, starting with the government.

4          MS. COMEY:  Good morning, your Honor.  Maureen Comey,

5     Alison Moe, Andrew Rohrbach, and Lara Pomerantz for the

6     government.

7          THE COURT:  Good morning, everyone.

8          MS. STERNHEIM:  Good morning.  Bobbi C. Sternheim,

9     Jeffrey Pagliuca, Christian Everdell, Lara Menninger for

10    Ghislaine Maxwell, who is present at counsel table.

11         THE COURT:  Good morning, everyone.

12         MR. PAGLIUCA:  Good morning, your Honor.

13         THE COURT:  Please be seated.

14         All right, we are here for a final pretrial conference

15    in this matter, jury selection to be completed first thing on

16    Monday morning, the 29th.  I did note, counsel, after we had

17    the last process, at the recommendation of the jury department,

18    we have kept the unexcused jurors on -- the unused jurors at

19    this point on call in case we need them, and once we have our

20    jury finally selected on the 29th, the jury department will

21    excuse the remaining jurors.  That was one note I wanted to

22    make.

23         For purposes of today's conference, there are a few --

24    I have tried to give written guidance on as much as I could on

25    the outstanding issues.  There are a few remaining issues that

LBNAMAXTps

1   I got supplemental briefing on to discuss.  The motion in

2   limine 7 of the defense, which is Government Exhibit 52, I got

3   supplemental briefing on that; supplemental briefing on a few

4   exemplars of co-conspirator statements; the remaining disclosed

5   defense experts perhaps, so we'll discuss that.  I have a few

6   other things just to tick off the list, and go over logistics

7   for Monday, and take your questions or hear your issues.

8         Ms. Comey, anything before we get underway?

9         MS. COMEY:  Yes, your Honor.  We do have a few issues

10   to raise.  The first is that unfortunately I do think we will

11   need to ask for a briefing schedule to preclude

12   cross-examination on certain topics of government witnesses.

13   On Friday afternoon, the government conferred with defense

14   counsel.  We presented about a dozen topics that we believe are

15   clearly improper topics for cross-examination.  Yesterday

16   defense counsel told us that they're not in a position to tell

17   us that they will not cross on any of those topics.  Because

18   there are many of them and because they include things like

19   criminal convictions that are beyond the scope of 609 and other

20   personal information that might either identify anonymized

21   witnesses or embarrass witnesses, we would ask to be able to

22   submit briefing rather than raise those issues on the public

23   record.

24         THE COURT:  You can, but not until you have further

25   discussion and narrow disputes, because that's going to happen.

LBNAMAXTps

1          MS. COMEY:  Your Honor, I can assure you we've

2     attempted to.  We raised issues that we thought are clearly not

3     proper ground for cross-examination, like arrests as a juvenile

4     for curfew violations, misdemeanor convictions that are more

5     than ten years old, things that have nothing do with

6     credibility, and the defense told us that they cannot assure us

7     that they will not raise those issues on cross.  We obviously

8     need a pretrial ruling so that we know whether we have to raise

9     those things on direct to draw the sting.

10          MR. PAGLIUCA:  Your Honor, this is not a surprise to

11     me that this is being raised, but this is a surprising issue, I

12     think, to be raised.  The list, laundry list of things that the

13     government wants to talk about include things that are clearly

14     within the rules, and --

15          THE COURT:  I don't want a speech.  What I want, it

16     sounds like they're saying there are things that are clearly

17     outside of the rules, in their view.  And you say there are

18     things that are clearly within the rules.  You'll have a

19     mature, reasonable discussion, and come to some agreement where

20     agreement can be had.  When you have disputes that are good

21     faith and reasonable and based on available interpretations of

22     the law, you'll submit to me in writing and I'll be happy to

23     resolve it.

24          MR. PAGLIUCA:  That's totally fine, your Honor.  I

25     guess the problem is -- and this is where we're going to end

LBNAMAXTps

1   up, which is why I'm telling you this now -- we can't predict

2   what people are going to say on either direct or

3   cross-examination.  And of course we will follow the rules.

4   But here's an example:  If someone were to say on direct

5   examination, "I've never been in trouble in my entire life,"

6   well, then that opens up the whole panoply of what is or is not

7   permissible under Rule 609.

8            And so that's where we end up here.  And I think,

9   frankly, these are not issues that need to be briefed.  These

10  are issues that simply come up during trial, and if someone

11  does something that one side or the other thinks is not

12  appropriate, there's an objection and it's resolved.  I can

13  assure you that we are not going to do anything that is outside

14  of the rules, and if we think it's even close, we would of

15  course approach and address the issue with the Court.

16           If the government wants, I am happy to confer more

17  about this.  If the government wants to brief it, they can.

18  But I think we end up in that place, which is, these are

19  trial-time decisions.

20           THE COURT:  That may be true, and I suspect if you

21  have a conversation where the government says, you can't raise

22  under the rule a juvenile conviction for -- what was it?

23           MS. COMEY:  A curfew violation, your Honor.

24           THE COURT:  -- a curfew violation, and you say, well,

25  of course it could be that they say, I've never been in trouble

LBNAMAXTps

1    in my life, I think you can come to point of agreement, can't

2    you?

3            MS. COMEY:  Yes, your Honor.  Indeed we told the

4    defense that we by no means mean to bind the defense against

5    raising an issue that comes up during direct.  We just wanted

6    to know ex ante as things stand, do they have a good-faith

7    basis to believe that there's a grounds for cross-examination

8    along those topics.

9            THE COURT:  It sounds like, I bet, this conversation

10   could happen without me and everybody else in this room.  But

11   I'm glad to be here for you.

12           MS. COMEY:  Thank you, your Honor.

13           MR. PAGLIUCA:  Thank you, your Honor.  Thank you.

14           THE COURT:  What's next?

15           MS. COMEY:  Your Honor, the other issue was, we've

16   become aware recently of a number of subpoenas that the defense

17   has served on witnesses.  There's one in particular that we

18   wanted raise at this juncture, which is, the defense has served

19   the attorney who currently represents Minor Victim 4 with a

20   subpoena, seeking his testimony at this trial.  We've attempted

21   to confer on this issue because the government has no idea what

22   admissible testimony that attorney could possibly offer at this

23   trial that would not be covered by attorney-client privilege.

24   We would move to preclude it, but we cannot fathom what the

25   testimony would be.  And so we're raising it with your Honor

LBNAMAXTps

1    because of the obvious issue that would arise with

2    attorney-client privilege and with Minor Victim 4's right to

3    representation of counsel.

4             MR. PAGLIUCA:  Well, first, your Honor, I don't think

5    that it's appropriate for me to have to discuss defense

6    strategy in this context.  However --

7             THE COURT:  That's fine.  There will be no -- without

8    briefing, you will not call an attorney for a witness, period.

9    I'm happy to see briefing, but until that happens, you won't.

10            MR. PAGLIUCA:  That's fine, your Honor.

11            THE COURT:  OK.

12            MS. COMEY:  Thank you, your Honor.

13            We had one other question for your Honor, which is

14   whether the Court intends to, in its preliminary instruction,

15   inform the jury that certain witnesses will be testifying under

16   pseudonyms.  We wanted to know that so that we understand how

17   to approach that issue in our opening statement.

18            THE COURT:  I think we have a pending proposal, with

19   the two sides having slightly different views as to what

20   language to use for those instructions.  I haven't dealt with

21   that yet, but I will.  And then I guess the second question

22   you're asking is, will I include that in my preliminary

23   instructions as opposed to at the time the first witness is

24   called.  It should come before opening, I presume, because

25   you'll refer to witnesses pursuant to pseudonyms during

LBNAMAXTps

1    opening.

2                 MS. COMEY:  Precisely, your Honor.

3                 THE COURT:  OK.

4                 Defense, any objection to me including, in pre-opening

5    preliminary instructions, what I determine is an appropriate

6    instruction regarding witnesses testifying under pseudonyms?

7                 MS. STERNHEIM:  No.

8                 THE COURT:  Thank you.

9                 MS. COMEY:  Thank you, your Honor.  There was just one

10   more issue that I believe Ms. Moe was going to address.

11                THE COURT:  Thank you.  Ms. Moe.

12                MS. MOE:  Thank you, your Honor.  I'm going to bring

13   to the Court's attention an issue that came to our attention

14   regarding prospective Juror No. 93.  We learned, following voir

15   dire, based on publicly available information, that that

16   prospective juror is an attorney at a financial institution.

17   At trial, there will be a witness from that financial

18   institution.  He is more than a records custodian in the sense

19   that he is an executive director at that financial institution.

20   And he'll be talking about certain financial transactions.

21                During our meetings with this witness, an attorney for

22   the financial institution had been present along with outside

23   counsel for the financial institution.

24                So we want to just bring that to the Court's

25   attention.  We flagged that for the defense as well.

LBNAMAXTps

1           THE COURT:  What do you propose?

2           MS. MOE:  Your Honor, I think at a minimum we propose

3    some additional follow-up guess for the juror about her role,

4    whether she interfaces with folks dealing with compliance,

5    which is within the scope of what this witness does, whether

6    there would be any issues about hearing testimony about the

7    financial institution where she works.

8           We have not flagged for our witness that there is a

9    juror, of course, who works with the institution, so it's hard

10   for us to gauge whether they may have overlapped or whether

11   they would recognize one another in the courtroom.  So I

12   recognize it would be difficult to probe this issue without

13   creating an issue, but we think at a minimum a question about

14   sort of her role and any issues about being fair or discomfort

15   about witnesses who are testifying from the financial

16   institution might address this issue.

17          THE COURT:  Who will I hear from?

18          MS. STERNHEIM:  You'll hear from me, Judge.

19          I think it is a little late.  The publicly available

20   information would have revealed that there are other people who

21   are in that same institution or have been affiliated with that

22   institution, some of which were excused, and at least one that

23   is still here.  The government can exercise a challenge if it

24   wishes.  But I think it's unnecessary.  And it flags something

25   inappropriately at this stage of the game.  It will highlight

LBNAMAXTps

1    something, and this witness is technically, I believe, a

2    records custodian.  He may be of a higher level than your

3    standard records custodian, but his testimony is sort of

4    ancillary to the charges in this indictment.

5              THE COURT:  All right.

6              The purpose of me asking the parties to submit a list

7    of entities or addresses that may be mentioned during trial was

8    to capture this sort of issue.  It sounds like the government

9    failed to include a financial institution that will be

10   mentioned during trial.

11             I agree.  It's too late to go back and redo that,

12   having failed to do so.  So I think if you think it's an issue,

13   it's a peremptory.

14             What else?

15             MS. COMEY:  No other issues, your Honor, other than

16   the outstanding ones your Honor outlined.

17             THE COURT:  OK.  Any -- go ahead.

18             MR. PAGLIUCA:  Yes.

19             Your Honor, I wanted to talk a little bit about use of

20   impeachment material during trial.  I have a concern -- well,

21   what I am proposing is that if we are going to be either

22   impeaching or refreshing recollection of a particular witness,

23   that we be able to do it electronically.  I think that that

24   would be fine, and that's typically how we would do this.  The

25   problem with using impeachment material during the course of

LBNAMAXTps

1    this trial in paper format is that there's just too much paper

2    involved.  And the plan would be, if we're going to be

3    impeaching the witness, you know, on an inconsistent statement

4    or something else, that we would simply display that

5    electronically to the Court, counsel, and here at the podium,

6    and the witness, do the impeachment, and then take it down.

7    These would not be things that would be shown to the jurors.

8    But I want to make sure that that's an acceptable process to

9    the Court.

10            THE COURT:  There are times when the witness will want

11    to see the full document, so you'll have those available should

12    they ask for them or need them.  But it's certainly consistent

13    with standard practice to show the document electronically,

14    and, again, say, you want to see more, either the whole

15    document in paper or the page before or after, you'll

16    accommodate that.  But otherwise, I don't see an issue.

17            MS. MOE:  Yes, your Honor.  As the Court may have

18    recalled, when the parties submitted a joint proposal with

19    respect to issues regarding witness anonymity, one of the joint

20    proposals was that exhibits under seal which contain

21    identifying information or victims or other relative witnesses

22    would be handled in paper copies with binders for the jurors?

23            THE COURT:  Because the screens are visible.

24            MS. MOE:  Exactly, your Honor.  And so to the extent

25    any of those exhibits fall within that category, our view is

LBNAMAXTps

1    that those should be treated similarly.  To the extent there's

2    an exhibit that can otherwise be shown electronically, like

3    other exhibits that can be shown electronically, of course we

4    have no objection to that.  But for documents that contain

5    identifying information, given the location of the jurors'

6    screens in this courtroom and how they would be visible to

7    members of the public, we would request that they be treated

8    like other sealed exhibits.

9            MR. PAGLIUCA:  These are not exhibits, your Honor, so

10   they won't be admitted into evidence.

11           THE COURT:  Same issue, right?

12           MR. PAGLIUCA:  Yes.

13           THE COURT:  Whatever they are, we're protecting

14   anonymity, which is my order.  Screens are visible.  Should

15   that be an issue with respect to anything you want to show for

16   refreshing recollection, why not show that on -- you'll show

17   that on paper.

18           MR. PAGLIUCA:  It's an unwieldy and impossible project

19   here, your Honor.

20           THE COURT:  To use paper?

21           MR. PAGLIUCA:  To use --

22           THE COURT:  The way trials have been done for a very

23   long time?

24           MR. PAGLIUCA:  It is likely there will be -- there are

25   thousands of pages of potential material that will be at issue.

LBNAMAXTps

1    And in order to accommodate paper, there will be, I think,

2    substantial delays during the process.  It will require handing

3    out of copies.

4              THE COURT:  Get to the solution.  So the problem we

5    know is that I have ordered anonymity with respect to some

6    witnesses.  The second portion of the problem we know is that

7    the way the courtroom is constructed, screens are available

8    that may show names or identifying information, which I'm not

9    permitting to be made public.  What's the solution?

10             MR. PAGLIUCA:  Well, they won't be shown to the

11   jurors, so that's not an issue.

12             THE COURT:  We're not keeping the names from the

13   jurors, so that's certainly not an issue.

14             MR. PAGLIUCA:  Impeachment information won't be on the

15   screen to the jurors because it's not an admitted exhibit.  OK.

16             THE COURT:  Right.  I think the issue is the screens

17   on counsel's table.

18             MR. PAGLIUCA:  I don't believe -- and I was trying to

19   see this from the back of the courtroom -- I don't believe that

20   you can see, you know, a paper document from the back of the

21   courtroom when it's up on the screen.

22             Certainly, we could turn off these screens over here,

23   or, alternatively, I can give the government paper copies and

24   the government can look at paper copies.  So that takes care of

25   the problem.  And then that way, we don't have to be

LBNAMAXTps

1    displaying -- we don't have to be approaching the witness and

2    we can move seamlessly through this.

3              These are all documents that are in the government'

4    possession to begin with, your Honor.  These are not things

5    that are unknown at this point.

6              THE COURT:  Again, that seems off topic.  But -- so

7    it's manageable to give the government paper.

8              MR. PAGLIUCA:  It should be.

9              THE COURT:  Any reason you can't -- how about this.

10   Prepare it as a binder for potential use, even if it's not the

11   full document, but anything that you might use -- that you

12   think you might use.  As you know, it's a known quantity.  You

13   have it in a binder and you could direct them to turn to it.

14   If it turns out there's something that you do want to show that

15   you didn't put in the binder, we'll deal with that and you'll

16   be able to show it, either by turning off the counsel screens

17   and showing it on the monitor or we'll hand up paper at that

18   point.

19             MR. PAGLIUCA:  I think there is going to be a real

20   problem, your Honor, to do it like that.  It just --

21             THE COURT:  Help me understand this as a practical

22   matter.  You will have your outline for your cross, and you're

23   going to know enough to tell your paralegal, Put up document

24   number so-and-so, page 7.  And that's how your paralegal is

25   going to pull that up and put it on the screen, right?  Why

LBNAMAXTps

1    can't you just have put that in a binder, a paper binder, in

2    advance?  And as I said, if there's something that comes up or

3    you realize you neglected to put it in, we could deal with

4    that.  But by and large, you're directing them to a tab in a

5    binder, just like you would direct your paralegal to show a

6    particular document on the screen.  What am I missing?

7               MR. PAGLIUCA:  Well, we can try that, your Honor.  And

8    we'll see how it goes.  I mean, we'll be prepared to do it both

9    ways.

10              THE COURT:  And I assure you, if for some reason

11   there's something you want to show that's not in the binder, we

12   will work that out and you won't be precluded from showing it.

13   But to the extent you've prepared your cross outline and you

14   know what you're going to ask about, just like you would call

15   it up, just have that in a tabbed binder so they can turn to

16   it.

17              And, again, to be completely clear, should there be

18   anything you need to do that wasn't in the binder, you'll be

19   able to do it and we'll either hand up paper in those few

20   instances or we'll turn off the table monitors and show it on

21   the screen.

22              MR. PAGLIUCA:  OK, your Honor.  Thank you.

23              THE COURT:  Thank you.

24              What else?

25              No?  OK.

LBNAMAXTps

1    So defense seeks to preclude, in motion in limine 7,

2    Government Exhibit 52.  I'm not going to preclude, but I do

3    think this needs to play out at trial.  I need to hear the

4    witness testimony and I'll allow voir dire, given factually

5    what I understand to be the issues surrounding this item, and

6    as I understand it -- the witness is going to -- tell me if I

7    have this wrong.  The anticipated testimony, Ms. Comey -- this

8    is for you, Ms. Comey -- the anticipated testimony is that not

9    this exact book but a similar-looking book, characteristically

10   similar, binding, pages, font, etc., was seen by this witness,

11   and she can attempt to authenticate by describing the

12   similarities between what is Government Exhibit 52 and what she

13   saw.  Is that the idea?

14   MS. MOE:  That's correct, your Honor.  Because this

15   witness has not been informed about how that exhibit came into

16   the government's possession, I just wanted to clarify one small

17   thing, which is that this witness won't say that this isn't one

18   of the -- you know, in particular, that because she recognizes

19   it as one in a series, but doesn't know how it came to the

20   government's possession, it's just identifying it in that way.

21   THE COURT:  So your understanding is, by the time

22   frame, this wouldn't have been the one that she saw, but she

23   won't know that because you anticipate her testimony to be

24   there were several versions of these and they are all the same.

25   MS. MOE:  That's correct, your Honor.

LBNAMAXTps

1          THE COURT:  So I will allow -- I don't know if it's

2     admissible.  I think, from what I see, it's a close question.

3     It's going to turn on the testimony.  So I'll allow that

4     testimony to take place.  I'll allow voir dire.  And then I'll

5     make a ruling, depending on how that goes, as to whether it

6     meets the threshold for admissibility, and the questions that

7     have been raised go to weight.  But as I sit here, I don't know

8     until I hear that testimony.

9          I do think that the government needs to make it

10    available for inspection to the defense, and so you'll work out

11    the logistics of that pretrial.  To the extent that they want a

12    forensic expert to look at it, a document forensic expert to

13    look at it, you'll work out the logistics to make it available.

14    OK?

15          MS. MOE:  Yes, your Honor.

16          THE COURT:  Any questions about that?

17          MR. PAGLIUCA:  No, your Honor, other than one of my

18    requests was that the actual document be here at trial and not

19    a photocopy of one page.

20          MS. MOE:  Yes, your Honor.  The actual exhibit will be

21    here in the courtroom at trial.  And we have already made that

22    exhibit available for the defense for inspection.  They have

23    personally inspected it, I believe that was on November 1st.

24          THE COURT:  Great.  I'm happy to hear that.  And not

25    just the page but the whole book.

LBNAMAXTps

1          MS. MOE:  That's correct, your Honor.  We made it

2     available for inspection this summer.  We notified the defense

3     in a letter that it was available for inspection.  The defense

4     asked for an inspection the week before our conference on

5     November 1st.  I made it available for inspection that day.

6     They personally inspected it.  We're happy to continue to make

7     that available for inspection to the defense.

8          THE COURT:  I'm very happy to hear that.  Thank you.

9     I appreciate that.  And I think that takes care of that for

10    now.

11         I guess one question:  I think, given the uncertainty

12    as to admission, the government should not mention it in its

13    opening.

14         MS. MOE:  Of course, your Honor.  Thank you.

15         THE COURT:  Anything before we move on?

16         MR. PAGLIUCA:  No, your Honor.  Thank you.

17         THE COURT:  So next is the admissibility of

18    co-conspirator statements.  I do appreciate the efforts to come

19    to reasonable agreement, of course, with the defense preserving

20    objections as to ultimate admissibility.  Based on the law, of

21    course the government has to make the showing that's required

22    during the course of the trial.

23         There are two statements that are exemplars that

24    remain in issue, and I think, starting with the second one

25    first: so the second one, it seems to me, is not being offered

LBNAMAXTps

1  for the truth, that it is being, as I understand it, being

2  offered for the effect on the listener, and so really there

3  is -- it's a potential relevance issue and not a hearsay issue.

4  I think this needs to play out at trial, but tell me if anybody

5  disagrees with that.

6          MS. COMEY:  We agree, your Honor.

7          MR. PAGLIUCA:  Agreed.

8          THE COURT:  And then the other one, the government is

9  seeking admission pursuant to 801(d)(2)(E), and in question is

10  whether the statement was made during the course of and in

11  furtherance of that conspiracy.

12          I don't think I have enough to answer that before me.

13  So I can either hear more now or let it play out at trial.

14          MS. COMEY:  I think it should play out at trial, your

15  Honor.

16          MR. PAGLIUCA:  Yes.  I agree, your Honor.

17          THE COURT:  Great.  Thank you.  All right.  That takes

18  care of that.

19          Next are the four additional individuals that the

20  defense disclosed as potential experts.  So we've got Kelso and

21  Lopez, who, it strikes me, are primarily potentially fact

22  witnesses and not expert witnesses, with the exception of that

23  Kelso tes -- so I think first, let's see if we get agreement

24  on:  Lopez would be fact testimony, correct?

25          MR. ROHRBACH:  That's the government's understanding,

LBNAMAXTps

1   your Honor, although it's not clear from the expert notice

2   whether they anticipate going beyond pure fact testimony.

3           MR. EVERDELL:  Your Honor, at this point we anticipate

4   him being a fact witness.

5           THE COURT:  Summary and fact witness.

6           MS. MENNINGER:  Yes.

7           MR. EVERDELL:  I think.

8           THE COURT:  Doesn't sound like expert to me, so I

9   don't think there's anything to do on that now.

10          Kelso also seems largely anticipated to summarize data

11  documents and photographs on electronic devices either as a

12  fact witness or summary testimony under 1006.  And except

13  Kelso's testimony that may cross over into expert testimony is,

14  I'm going to quote from the notice, "generally about computer

15  forensic principles associated with the creation of document

16  storage and retrieval of digital documents and photographs,

17  including the limits to the information that can be gleaned

18  from the metadata."

19          I don't think there's been a sufficient disclosure at

20  this point pursuant to Rule 16.  The disclosure doesn't say

21  what Kelso's opinions actually are about, as to any of these

22  topics, or provide any basis for those opinions.  So certainly

23  further disclosure would be necessary before I would allow

24  expert testimony.  Is that anticipated?

25          MS. MENNINGER:  Your Honor, this is my witness.  He

LBNAMAXTps

1       would largely be in rebuttal to a government witness.

2       Mr. Flatley was disclosed by the government for similar

3       purposes to talk about the retrieval of metadata from some of

4       the devices that were seized from Epstein's home.  To the

5       extent Mr. Flatley talks about the retrieval of metadata or

6       what that metadata means, Mr. Kelso may then be a rebuttal

7       witness, but we don't know yet from the government's disclosure

8       exactly what documents Mr. Flatley intends to refer to.  And so

9       that's why there isn't more information about what Mr. Kelso

10      might or might not say.  Frankly, we think it would largely be

11      factual.  It may stray into areas about metadata if Mr. Flatley

12      offers opinions along those grounds, and we think that it's not

13      accurate.  If that's true, we can provide an updated

14      disclosure, once we've heard Mr. Flatley's testimony.

15              THE COURT:  Mr. Rohrbach.

16              MR. ROHRBACH:  Your Honor, the exhibits that

17      Mr. Flatley is going to talk about are now marked as government

18      exhibits, and the defense has Mr. Flatley's 3500 information as

19      well as examples the government has pointed to where

20      Mr. Flatley has offered similar testimony in other cases in

21      this district and in the Eastern District.  So I think the

22      government has given ample notice about what Mr. Flatley will

23      testify about.

24              But as a more general matter, to the extent that the

25      defense provides supplemental notice at some point about

LBNAMAXTps

1  whether they're going to cross the line from pure fact

2  testimony to expert testimony, I think we can deal with it at

3  that time.

4          THE COURT:  OK.  What I would just say is, if your

5  expert, looking at the 3500 material and the disclosure, has

6  different expert views, you need to notice those now.  But to

7  the extent it's something that comes out at trial, that

8  couldn't have been anticipated, then you can notice down the

9  road.

10         So just in terms of what, if your expert has testimony

11  now that's different from what's anticipated in light of the

12  government's notice and the marked exhibits and 3500 material,

13  when would you like to provide additional notice?

14         MS. MENNINGER:  Your Honor, some of the "marked

15  exhibits" are a placeholder for an entire hard drive that has

16  any number of documents on it.  If the government is now

17  representing they will only be referring to the documents that

18  are separately marked and not to exhibits that say "hard drive

19  58," "hard drive 85," "hard drive 96," we could do that, but

20  they haven't made that representation.

21         THE COURT:  Fair enough.

22         MR. ROHRBACH:  Those drives are marked for

23  identification for authentication purposes, but to the extent

24  that the point is that Mr. Kelso is going to testify about

25  general principles associated with the creation of documents

LBNAMAXTps

1    and the extraction of metadata as his expert testimony,

2    Mr. Flatley's views on those questions should be available

3    through the 3500 material and through his other expert

4    testimony, so there's really no need for any sort of further

5    identification by the government of anything before Mr. Kelso

6    should be able to let us know his views on those questions.

7           MS. MENNINGER:  Your Honor, the 3500 material doesn't

8    say Mr. Flatley is going to describe the extraction of user

9    data this way.  He's talked about the fact that he has observed

10   the user data, but he hasn't talked about the methods that he's

11   used it.  It's not that type of 3500 material from the

12   government.  So I don't agree that we could tell from what they

13   have provided thus far exactly what Mr. Flatley's testimony is

14   going to be.

15          And frankly, they said Mr. Flatley was largely a fact

16   witness as well.  So if I'm understanding now that they're

17   intending to offer something along the lines Mr. Kelso is, they

18   didn't provide sufficient notice for Mr. Flatley's expertise in

19   that area either.

20          THE COURT:  Well, I have to go back and look at the

21   notice.  But are you using Flatley as an expert?

22          MR. ROHRBACH:  We think Mr. Flatley is primarily a

23   fact witness, but the line between a fact witness in a setting

24   like this and someone testifying on the basis of their

25   expertise is not well settled, and so we've given expert notice

LBNAMAXTps

```
 1    in an abundance of caution, and also identified for the defense
 2    four other cases in which Mr. Flatley has testified on a
 3    similar topic so they can see --
 4              THE COURT:  That includes his ex-- to the extent it
 5    crossed over into expert opinion about methodology, for
 6    example --
 7              MR. ROHRBACH:  If I may have a minute, your Honor.
 8              Mr. Flatley is qualified as an expert in some of those
 9    four cases, which highlights the vagaries of this line, and it
10    provides information about the bases of his opinion about these
11    topics.
12              To the extent that there is an issue that is not
13    raised, either in the government's expert notice or 3500, or in
14    the similar exemplars we've given the testimony, that might be
15    something that's outside the bounds of the government axe pert
16    notice, depending on exactly what it is.
17              THE COURT:  So I think what we need to do is, you have
18    your expert look at the testimony that he's provided.  If he's
19    got some differing expert opinion as to forensic principles or
20    creation of documents or storage and retrieval of digital
21    documents, or what information can be gleaned from metadata
22    generally, I think you should notice those opinions.  But
23    absent that, we'll let it play out.  OK.
24              MS. MENNINGER:  Certainly, your Honor.  And obviously
25    if Mr. Flatley attempts to offer opinions during his testimony
```

LBNAMAXTps

1  that are not disclosed, I will raise that with the Court at

2  that time.

3              THE COURT:  All right.

4              Just with respect to what you have as anticipated

5  opinion about those subjects, when will you -- give me the date

6  by which you'll tell me if your expert has different expert

7  opinions to offer with respect to those areas.

8              MS. MENNINGER:  This Saturday, your Honor?

9              THE COURT:  All right.

10             MS. MENNINGER:  And I don't -- I guess what I'm

11 hearing is, the only opinions he may offer are those disclosed

12 in other cases.  They haven't disclosed an opinion from this

13 case.  So we will look at those other trial testimony, and any

14 opinions in those testimony that our client -- our expert

15 disagrees with we can provide them by this Saturday.

16             THE COURT:  That sounds very reasonable to me.  OK?

17             MR. ROHRBACH:  Yes, your Honor.  Although we know

18 that, again, in addition to the other -- his testimony in other

19 cases, we would point the defense expert to the 3500 material

20 as well in this case and the government's exhibits.

21             THE COURT:  Well, I mean, your notice should provide

22 the opinions that he's going to offer.  Does it?

23             It's not a scavenger hunt.  You're required, as the

24 first matter, to provide, pursuant to Rule 16, the opinions

25 that he's going to offer.  Have you done that?

LBNAMAXTps

1      MR. ROHRBACH:  Yes.  The government believes that its

2  notice, in combination with its 3500 materials and the cases

3  it's pointed the defense to, should give the defense an

4  understanding of Mr. Flatley's opinions, to the extent that

5  they're expert opinions at all and not just fact opinions.

6      THE COURT:  Well --

7      MR. ROHRBACH:  Your Honor, my point is that

8  Ms. Menninger says that she would have her expert review

9  Mr. Flatley's testimony in other cases to see if there are

10  opinions he disagreed with, and I just wanted to clarify that

11  the defense expert should review the material the government

12  has provided them.

13      THE COURT:  That's fine, but it's your notice that

14  sets up the opinions that your expert is offering.

15      MR. ROHRBACH:  Yes, your Honor.

16      THE COURT:  So what they should do is look at the

17  notice, and if their expert has different views than what's in

18  the notice, they should provide those views.

19      MR. ROHRBACH:  Yes, your Honor.

20      THE COURT:  If your notice is insufficient under Rule

21  16 to tell us now what opinions your expert is going to

22  provide, then you may have problems down the road.  But I'm not

23  going to have them held to a different standard than what the

24  government has done here.

25      MR. ROHRBACH:  Of course, your Honor.

LBNAMAXTps

1          THE COURT:  So, Ms. Menninger, with respect to

2     Saturday, if there's anything in the notice that's suggested

3     that your expert has different expert opinions on, please

4     provide notice.  Otherwise we'll see how it plays out.

5          MS. MENNINGER:  Of course.  Thank you, your Honor.

6          THE COURT:  And then LaPorte and Naso, I don't have

7     any sense, based on the disclosures, what evidence this will go

8     to, and the defense says that's because they don't know what

9     evidence the government will produce.  What documents do you

10     imagine you would have these experts analyze?

11          MR. PAGLIUCA:  I think it's unlikely that they will

12     testify, your Honor.  The only document that was potentially at

13     issue relates to Accuser No. 2.  And I doubt that that -- I

14     doubt that that's going to become an issue during trial.  We

15     endorsed them just out of an abundance of caution, and I don't

16     really see it playing out.  But I think if it -- if it comes

17     up, if it becomes an issue, certainly I'll give as much notice

18     as I can.  But I don't really think they're going to be

19     testifying at trial.

20          THE COURT:  Good enough for me.

21          Mr. Rohrbach.

22          MR. ROHRBACH:  I'd like to say it's good enough, your

23     Honor.  The concern is that if the defense decides mid trial

24     that they would like to call these experts, it's going to

25     create a difficult situation for the government to file the

LBNAMAXTps

appropriate *Daubert* motion, identify responsive experts if

necessary.  And so the government asks that the Court preclude

the defense experts at this time unless they give at least more

specific notice about what they might testify to.

THE COURT:  Well, they are precluded without more

specific notice.  That's true.

MR. ROHRBACH:  OK.  Then that's fine for the

government, your Honor.

THE COURT:  Yes.  I mean, plainly, Rule 16 hasn't been

met at this stage, and the representation is, they're not

anticipating anything coming up.  If something comes up, they

would have to first provide sufficient notice in order for us

to be able to resolve this.  So it can't being is that could

have been anticipated at this point.  OK?

MR. PAGLIUCA:  Yes.  Totally understood, your Honor.

THE COURT:  OK.  Thank you.

All right.  Next thing on my checklist, the limiting

instructions related to witness 3 that I proposed.  Who's

taking this one?

MR. ROHRBACH:  I am, your Honor.

THE COURT:  So Mr. Rohrbach, you propose -- so I

suggested, "However, you may not convict the defendant on the

basis of the testimony regarding the sexual conduct between

this witness and Mr. Epstein."  You agree that's a correct

statement of the law, yes?

LBNAMAXTps

1        MR. ROHRBACH:  I apologize, your Honor.  I'm just

2   trying to pull find that.  This is for the --

3        THE COURT:  For witness 3.

4        MR. ROHRBACH:  For witness 3.  Yes, your Honor, we

5   agree that's a correct statement of the law.

6        THE COURT:  But you want to add "solely."

7        MR. ROHRBACH:  Yes.  The government thinks that that

8   clarification --

9        THE COURT:  Let me ask you this.  So if you add

10  "solely," then, to my ear, it would mean that you can convict

11  the defendant on the basis of the testimony of witness 3

12  regarding the sexual conduct between this witness and

13  Mr. Epstein, and other evidence regarding the sexual conduct

14  between this witness and Mr. Epstein.  Is that a correct

15  statement of law?

16        MR. ROHRBACH:  Yes, your Honor.  Insofar as the Court

17  has ruled that evidence related to witness 3 is direct evidence

18  of the offense, if that is offered in combination with other

19  evidence in the case that goes --

20        THE COURT:  No, I think maybe you misunderstood my

21  question.  The government has said that the sexual conduct

22  between Mr. Epstein and this witness took place over all

23  relevant ages of consent.  Correct?

24        MR. ROHRBACH:  Yes, your Honor.

25        THE COURT:  So the defendant can't be convicted based

LBNAMAXTps

1    on the sexual conduct between this witness and Mr. Epstein.

2    Correct?

3              MR. ROHRBACH:  Yes.

4              THE COURT:  My question is, I think if you add

5    "solely," this is what I hear: that the defendant can be

6    convicted based on this witness's testimony regarding the

7    sexual conduct between Mr. Epstein and this witness, and other

8    evidence regarding the sexual conduct between this witness and

9    Mr. Epstein.  Is that a correct statement?

10             MR. ROHRBACH:  I see your Honor's point.  Yes, that

11   would be a correct statement.

12             THE COURT:  That would be in, in--

13             MR. ROHRBACH:  That would be incorrect.

14             THE COURT:  That would be wrong.  As a matter of law.

15             MR. ROHRBACH:  Yes.

16             THE COURT:  And that doesn't solely give it that

17   meaning, that potential meaning?

18             MR. ROHRBACH:  I see your Honor's point that if

19   "solely" is read to modify the sexual-conduct point, then that

20   creates a -- it becomes amenable to that reading.  The

21   government's point is that --

22             THE COURT:  And should the jury be instructed that

23   way, that would be, in my mind, reversible error.

24             MR. ROHRBACH:  That would be an incorrect statement of

25   law, yes, your Honor.

LBNAMAXTps

1              THE COURT:  So we won't add "solely," because we don't

2       want to wrongly instruct the jury about the law.  So we'll keep

3       that one as it is.

4              I need to think about the other one.  In my mind, this

5       is an issue that pertains -- I understand there's a witness

6       where the only sexual conduct took place in New Mexico, and I

7       had understood previously that that witness was above the age

8       of consent in New Mexico, but that the government was offering

9       that evidence as enticement to engage in illegal sexual conduct

10      in New York.  And that's what I was trying to capture in the

11      instruction, so that that evidence could be relevant, the jury

12      could see that evidence as relevant to the enticement to

13      illegal sexual activity as defined under New York law, which is

14      the only way that the government has charged this case, other

15      than the trafficking count -- well, including the trafficking

16      count, yes.

17             And that's what I was trying to capture.  And I'll

18      consider the alterations you're suggesting.  What we can't do

19      is infuse the instruction with the government's case and

20      arguments.  The point here is just to make clear what the

21      jurors can't do and then, to the extent they otherwise deem the

22      evidence relevant, they can consider it and we'll give them the

23      charge at the end of the day.  But I'll consider the

24      suggestions.  I haven't -- just haven't had time.

25             Anything on that?

LBNAMAXTps

1          MR. EVERDELL:  Yes, your Honor.  I mean, it's the

2   defense's position that the Court's instruction is a correct

3   statement of law.  It's concise, it's clear, and will clarify

4   the issues for the jurors as opposed to confuse the issues.  I

5   think the government's instruction is exactly the opposite.  It

6   is cumbersome, it is difficult to follow, and it will confuse

7   rather than to clarify.

8          And I will just point out, I think your Honor

9   identified the correct example, which is Accuser 2, which is

10  alleged events that took place in New Mexico when she was above

11  the age of consent for those acts in New Mexico.

12          And so this illustrates the problem of trying to prove

13  a conspiracy where the illegal sexual activity is a violation

14  of New York law with acts that took place in other

15  jurisdictions which were legal and have nothing to do with New

16  York law.

17          So as I think you've discussed before, your Honor, if

18  the witness is going to testify to these events that took place

19  in New Mexico, even though they're legal under New York law --

20  there's no issue there -- they're going to --

21          THE COURT:  Not under New York law.

22          MR. EVERDELL:  Under New Mexico law.  I'm sorry.  I

23  misspoke.  Under New Mexico law.

24          THE COURT:  Right.

25          MR. EVERDELL:  They're going to assume that the

LBNAMAXTps

1    purpose of this testimony is that these are illegal acts that

2    they're talking about, and unless they're instructed otherwise

3    by the Court, they may convict Ms. Maxwell on an improper

4    basis, which is that this witness's testimony is talking about

5    illegal sexual activity, as that's charged in the indictment.

6    So there has to be a clarification on this point.

7         And I just would note, your Honor, the reason why

8    we're here in this position is because the government has

9    chosen to add Accuser 2, Accuser 3, people who have nothing to

10   do with violations of New York law, in this conspiracy, and if

11   they're going to do that and you try to use that as evidence of

12   a violation of New York law --

13        THE COURT:  Well, the charge is enticement.  And, in

14   my mind, this witness is in a very different position than

15   witness 3.

16        MR. EVERDELL:  Yes.

17        THE COURT:  But it's certainly relevant evidence to

18   the enticement charge with respect to New York law.  There's no

19   doubt about that.

20        But I agree, we have to make sure that the jury

21   understands, though it can be relevant evidence for that, if

22   they want to take it into account for whatever they want to

23   take it into account for, what they can't take it into account

24   for is itself the New Mexico activity -- sexual activity as

25   itself illegal conduct charged in the indictment.

LBNAMAXTps

1          But it seems to me these witnesses are in very

2     different postures, and therefore different risk of prejudice.

3     But I propose an instruction that I think gets to the point.

4     And it's a different instruction precisely for this reason,

5     that that sexual conduct can be relevant evidence of the

6     enticement charge to violate New York law.  So I do think some

7     charge with respect to that witness, some limiting instruction

8     with respect to that witness, is necessary.  I won't make it

9     confusing, and I won't allow the government to just insert its

10    theory into the charge.  But I'll take a look to see if there

11    is any additional clarification.  That would be helpful.

12          MR. ROHRBACH:  Just in response to Mr. Everdell's

13    point, your Honor, the government is not prepared to concede

14    today that the sexual activity that occurred in New Mexico was

15    above the relevant age of consent.  As we briefed in our

16    letter, that's a complex question of New Mexico state law.

17          THE COURT:  So, I mean, if there's a factual question

18    that the government intends to put on, as to whether that was

19    illegal sexual activity under New Mexico law, then certainly

20    I'm not going to -- again, that's not how you charged it.

21    That's not how you charged it here.  Right?  You haven't

22    charged pursuant to New Mexico law.  But if what the government

23    is saying is, I shouldn't give that charge because in fact

24    you're going to show that it was illegal sexual activity -- I'm

25    not going to misinform the jury that it wasn't illegal under

LBNAMAXTps

1    New Mexico law if that's something the government is going to

2    show.

3            MR. ROHRBACH:  Your Honor, we completely agree that

4    our charging theory is just a violation of the New York statute

5    and not the New Mexico statute, or any particular New Mexico

6    statute.  Our point is that it is not a straightforward

7    question that any sexual activity that occurred in New Mexico

8    was necessarily above New Mexico's own age of consent.  So at

9    least the legal accuracy of that has not been established at

10   this point.

11           THE COURT:  Will it be an issue in trial?

12           MR. ROHRBACH:  No, your Honor, because the government

13   is not planning to put on evidence aimed at meeting any

14   particular New Mexico offense, since that's not the charges

15   that we've established in this case.  That's just a point in

16   terms of the accuracy of the proposed jury instruction -- that

17   is, whether the sexual conduct was legal or illegal within New

18   Mexico.

19           THE COURT:  So what I had said was, "I anticipate

20   you'll hear testimony from the next witness about sexual

21   conduct that she says she had with Mr. Epstein in New Mexico."

22   And then I had suggested, because it's what I understood from

23   the parties, "I instruct you that because the witness was over

24   the age of consent in New Mexico at the relevant time period,

25   the sexual conduct she says occurred with Mr. Epstein was not

LBNAMAXTps

```
 1    illegal sexual activity, as the government has charged in the
 2    indictment."  So it sounds to me, from what you're saying, is
 3    that the first part of that sentence may be factually in
 4    dispute.  But the key, I think, goes to the latter part of the
 5    sentence, which is that the sexual conduct she says occurred
 6    with Mr. Epstein was not illegal sexual activity as the
 7    government has charged in the indictment.  You agree with that.
 8              MR. ROHRBACH:  That's correct, your Honor.
 9              THE COURT:  So let me work on this one, and I'll
10    propose -- I mean, I'll put out a new proposal after I've had
11    some time to absorb.
12              MR. ROHRBACH:  If I may make just one other point,
13    your Honor, related to this, which is that, given that we've
14    charged this as a -- minor Victim 2 is only charged in the
15    conspiracy counts of the indictment.  And so whether or not
16    events that took place in New Mexico constitute illegal sexual
17    activity within the meaning of the Mann Act doesn't bear on
18    whether there was an independent to engage -- sorry.  It bears
19    on whether there was an intent to engage in illegal sexual
20    activity in New York but only insofar as that sexual activity
21    in New Mexico would satisfy the New York definition of --
22              THE COURT:  Yes.
23              MR. ROHRBACH:  And so whether or not --
24              THE COURT:  I understand.  The only fear of confusion
25    is if they think that you've established the illegal sexual
```

LBNAMAXTps

1    activity by having put on evidence of the sexual conduct in New

2    Mexico.

3              MR. ROHRBACH:  Yes, your Honor.  And we, for the

4    reason --

5              THE COURT:  I understand your point, which is whether

6    or not it violated New Mexico law, that witness, in her

7    telling, was under the age of consent in New York, and

8    therefore it goes to the conspiracy to -- the Mann Act

9    conspiracy count.

10             MR. ROHRBACH:  Right, yes.

11             THE COURT:  I get it.

12             I will absorb this information and propose -- I do

13   think a charge is necessary, but it has to be correct, and it

14   sounds like it may not be entirely correct as written.  So I'll

15   propose.

16             MR. EVERDELL:  Your Honor, if I could just be heard

17   briefly.

18             THE COURT:  Sure.

19             MR. EVERDELL:  On the point about not being illegal

20   under New Mexico law, this is really an eleventh-hour issue the

21   government is raising.  They haven't charged it this way.  I

22   imagine if they thought this was really a violation of New York

23   law there would be a substantive --

24             THE COURT:  New Mexico law.

25             MR. EVERDELL:  I'm sorry.  I keep misstating, your

LBNAMAXTps

1    Honor.  -- New Mexico law, that we would have a substantive

2    violation in addition for this witness.  We don't.  And in fact

3    I believe the government, bassed on the case law they're

4    citing, the issue they're raising is that there has to be force

5    involved or coercion involved for this to be something illegal.

6    And that's not how they charge it.  That's never been an issue

7    in this case.  We've litigated that issue quite extensively.

8    So I think it is a correct statement of law to say this is not

9    illegal sexual activity under New Mexico law, and that's what

10   the instruction should reflect to the jury.

11           THE COURT:  I think the important point has to be

12   captured in "as charged by the government and for purposes of

13   establishing the elements that the jury has to consider."  So I

14   hear your point.  I'm going to think about the best way to

15   provide clarity to the jury so that they know what they can and

16   what they can't do with this evidence.

17           MR. EVERDELL:  Thank you, your Honor.

18           THE COURT:  I'll do my best.  And I'll hear from you

19   after I re-propose.

20           Anything else on that?

21           MR. ROHRBACH:  No.  Thank you, your Honor.

22           THE COURT:  Anything else, Mr. Everdell?

23           MR. EVERDELL:  No, your Honor.  Thank you.

24           THE COURT:  All right.  So next is just to go over,

25   make sure we're all on the same page -- that's all I have for

LBNAMAXTps

1   legal issues.  The next is to make sure we're on the same page

2   about logistics for Monday.  So we'll be here, as you know.

3   The jurors will be assembled in two different courtrooms, and

4   they -- when they left, we gave them instructions as to where

5   they should go.  So we'll have -- and you've been provided

6   that -- jurors in the two different courtrooms.

7            We'll meet here at 8:30, by the way.

8            So once we have all of the jurors assembled, we'll

9   have the video feed, and I will say good morning to them and

10  then say I'm going to ask two questions and if they have a

11  "yes" response to either of the questions they should raise

12  their hand.  And as we discussed, the two questions are:

13           "(1) Since you were here for individual questioning by

14  me, have you read, heard, seen, researched anything about the

15  case or discussed the case with anybody?  If yes, please raise

16  your hand.

17           "(2) Do you feel for any reason that you could not be

18  a fair and impartial juror in this case?  If yes, please raise

19  your hand."

20           If any jurors raise their hand, we'll bring them in

21  one at a time and see what the issues are.

22           Once we get through that, then we'll have our pool,

23  and your peremptories will be exercised on the first 40 jurors

24  in ascending order.  Any questions about that?

25           And we'll have the board and you'll do alternate

LBNAMAXTps

1   strikes.

2         MS. COMEY:  No questions, your Honor.

3         MS. STERNHEIM:  No.  Thank you.

4         THE COURT:  OK.

5         I always ask at the final pretrial conference if there

6   are any issues to discuss regarding exclusion of witnesses

7   under Federal Rule of evidence 615.  And especially because the

8   parties have feeds into their war rooms, I want to make sure

9   we're all on the same page that anybody who may testify, other

10  than the parties, who would potentially be needing to discuss

11  whether they can listen to testimony or be excluded, experts or

12  case agents, or you tell me.

13        Are there any potential witnesses who the government

14  anticipates would be listening to some or all of the testimony?

15        MS. COMEY:  No, your Honor, certainly not before they

16  testify.  After certain victims testify, they may choose to be

17  present after the completion of their testimony pursuant to

18  their rights under the Crime Victims' Rights Act, but otherwise

19  no witnesses that we know of will be listening to testimony.

20        THE COURT:  OK.  Ms. Menninger.

21        MS. MENNINGER:  Your Honor, I would note that the

22  government has -- and we've litigated -- whether any of the

23  accusers' prior inconsistent statements may be admitted after

24  their credibility has been attacked.  Pursuant to the rule, if

25  there is later introduction of inconsistent -- I'm sorry, I

LBNAMAXTps

```
1    mean --

2              THE COURT:  You mean prior consistent.

3              MS. MENNINGER:  -- prior consistent -- we've got a

4    problem at this table misspeaking -- of prior consistent

5    statements, that the declarant be made available, subject to

6    recross -- or recall to the stand, to explain those supposed

7    prior consistent statements.

8              So I don't know how that bears on the Court's thinking

9    about permitting those accusers who may be subject to recall to

10   listen in on testimony following their release from their

11   original testimony, your Honor.

12             THE COURT:  Well, I guess the first question is, under

13   the rule, which reads, "At a party's request, the court must

14   order witnesses excluded so they cannot hear other witnesses'

15   testimony" -- or I could do it on my own.  But I guess the

16   question is, is the defense -- so the government says alleged

17   victim witnesses, after they testify, may want to listen to

18   testimony after that.  Ms. Menninger, are you requesting they

19   not do that because of the possibility that they may be

20   recalled for rebuttal?

21             MS. MENNINGER:  Yes, your Honor.

22             MS. COMEY:  Your Honor, if we may, we would ask to put

23   in a letter on this issue, to look into it.

24             THE COURT:  Yes.  Fair enough.  And I think you're

25   right.  There may be an intersection between the Crime Victim
```

LBNAMAXTps

1    Protection Act and 615.  Why don't you both look at it, confer,

2    see if you can come to agreement, and if not, put in a letter.

3          MS. COMEY:  Thank you, your Honor.

4          THE COURT:  Thank you.

5          MR. PAGLIUCA:  Your Honor, one other issue on

6    sequestration.  I was hoping to be able to provide a copy of

7    Dr. Rocchio's testimony to either Dr. Dietz or Dr. Loftus,

8    because I anticipate there may be issues that come up that they

9    need to address during their testimony.  And so for that

10    purpose I would ask for a limited exclusion from Rule 615 for

11    those witnesses.

12          MR. ROHRBACH:  That's fine with the government, your

13    Honor.

14          THE COURT:  Thank you.  This is why I asked.  Make

15    sure we're on the same page.

16          Anything else in that regard?

17          MS. COMEY:  Not from the government, your Honor.

18          THE COURT:  When may I have an order-of-witness list?

19          MS. COMEY:  We would propose by Saturday, your Honor?

20          THE COURT:  OK.  And, as I always do, I ask at the

21    final pretrial conference if any plea offers were communicated

22    to the defense.

23          MS. COMEY:  None were communicated, your Honor.

24          THE COURT:  And Ms. Sternheim, that's accurate; none

25    were communicated?

LBNAMAXTps

1          MS. STERNHEIM:  None were communicated.

2          THE COURT:  Thank you.

3          What else?  Anything?

4          MS. COMEY:  Nothing from the government, your Honor.

5          THE COURT:  Anything from the defense?

6          MS. STERNHEIM:  No.  Thank you.

7          THE COURT:  Give me one second?

8          Yes.  Just on the point, Ms. Comey, regarding the

9    witnesses who may be recalled for rebuttal, you'll, both sides

10   will look into it, you'll confer, and when would you like to

11   put in a letter if there's disagreement?

12         MS. COMEY:  May we submit it by Saturday, your Honor?

13         THE COURT:  Yes.

14         MS. COMEY:  Thank you.

15         THE COURT:  All right.  Nothing further?

16         Thank you, everyone.  Have a good Thanksgiving.  I'll

17   see you on Monday.

18         (Adjourned)

19

20

21

22

23

24

25