

**Haddon, Morgan and Foreman, P.C**
**Jeffrey S. Pagliuca**

150 East 10th Avenue
Denver, Colorado  80203
PH  303.831.7364
FX  303.832.2628
www.hmflaw.com
jpagliuca@hmflaw.com

December 13, 2021

**VIA Email**

The Honorable Alison J. Nathan
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

    Re:    *United States v. Ghislaine Maxwell*, 20 Cr. 330 (AJN)

Dear Judge Nathan,

    I write to alert the Court to the questions Ms. Maxwell anticipates asking Attorneys Jack Scarola, Brad Edwards, and Robert Glassman, and to explain why none of the answers they will offer are protected by the attorney client privilege.

    "The attorney-client privilege protects from disclosure (1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." *In re County of Erie*, 473 F.3d 413, 419 (2d Cir. 2007). "The burden of establishing the attorney-client privilege, in all its elements, always rests upon the person asserting it." *United States v. Schwimmer*, 892 F.2d 237, 244 (2d Cir. 1989). The burden here falls on the government.

    None of the questions Ms. Maxwell intends to ask these witnesses implicates the attorney-client privilege. Indeed, none calls for an attorney to reveal confidential communications with his client at all, let alone a communication made for the purpose of obtaining or providing legal advice. Rather, all the questions concern interactions between the

The Honorable Alison J. Nathan
December 13, 2021
Page 2

attorneys themselves and agents of the government, and all are relevant to show how and why Ms. Maxwell's accusers came to cooperate with the prosecution and testify against Ms. Maxwell. The questions are relevant to motive and bias, and because the answers are not privileged, this Court should permit Ms. Maxwell to call Mr. Scarola, Mr. Edwards, and Mr. Glassman as witnesses.

Despite this Court's invitation, the government refused to stipulate to the testimony Ms. Maxwell seeks from Mr. Glassman. In an effort to avoid a dispute, Ms. Maxwell also inquired whether the government would be willing to stipulate as to Mr. Scarola's and Mr. Edwards' testimony. Without disputing Ms. Maxwell's contention that their testimony is not shielded by the attorney-client privilege, the government nonetheless again refused to stipulate.

### A.   Jack Scarola

Ms. Maxwell anticipates that Mr. Scarola would be questioned on the following non-privileged topics, which primarily relate to his acting as a conduit between Carolyn and the government. All the information Ms. Maxwell seeks to elicit taken from government 3500 disclosures about Carolyn. The essence of the testimony is the following:

- Mr. Scarola is an attorney licensed to practice law in the state of Florida.
- Mr. Scarola represented Carolyn in a civil lawsuit against Mr. Epstein and Sarah Kellen in 2008 and 2009.
- Mr. Scarola sent an email to Assistant United States Attorney Rossmiller in August 2019, copying other attorneys who represented alleged victims of Jeffrey Epstein, including Robert C. Josefsberg and Mr. Edwards.

The Honorable Alison J. Nathan
December 13, 2021
Page 3

- The government told Mr. Scarola that it was having difficulty contacting Carolyn, and Mr. Scarola replied that he had "forwarded your message to Carolyn."

- In February 2020, Mr. Scarola spoke with the government, and the government provided Special Agent Young's contact information for Mr. Scarola to pass along to Carolyn.

- In March 2020, the government informed Mr. Scarola that it wanted to meet with Carolyn. Mr. Scarola replied that his several attempts to contact Carolyn had not been successful. Mr. Scarola provided the government with Carolyn's phone number.

- In July 2020, Mike Danchuck, a person working with Mr. Scarola on behalf of Carolyn, called the government and indicated that Carolyn was willing to meet with the government.

- Also in July 2020, Mr. Scarola contacted the government about a meeting scheduled by video conference with Mr. Scarola and Carolyn for July 17, 2020.

- Mr. Scarola was present during the meeting between the government and Carolyn on July 17, 2020. During the meeting, when Carolyn was not in the room, Mr. Scarola told the government that in 2008 he showed a picture of ▬▬▬▬▬▬ to Carolyn, who could not identify ▬▬▬▬▬▬ at that time.

- Mr. Scarola was present at a meeting between the government and Carolyn on August 11, 2020.

- Mr. Scarola spoke with the government on August 11, 2020, for approximately ten minutes about Carolyn.

- Mr. Scarola was present for interviews of Carolyn by the government on January 19 and January 21, 2021.

- Mr. Scarola represented Carolyn in her claim submitted to the Epstein Victim Compensation Program (EVCP), and he filed the claim on October 20, 2021.

- Mr. Scarola, on behalf of Carolyn, resolved the claim against the EVCP for $3,250,000.

None of this testimony implicates the attorney-client privilege. Ms. Maxwell is not asking questions about confidential communications between Carolyn and her attorney. She is asking questions primarily about Mr. Scarola's interactions with the government. To the extent the answers to Ms. Maxwell's questions allude to any statements made by Carolyn, those statements are not confidential because they were made in the presence of, or with the understanding that they would be disclosed to, a third party—the government. And all this testimony is relevant to establish the timeline of Carolyn's cooperation with the government and her motive and bias in testifying against Ms. Maxwell, in particular the fact that Carolyn was unresponsive and uncooperative until there was the prospect of a payout from the EVCP.

Unless put at issue by the government during cross-examination, Ms. Maxwell does not intend to ask Mr. Scarola any questions about any communications between Carolyn and Mr. Scarola, or other employees working with Mr. Scarola, concerning the above referenced email or phone discussions between Mr. Scarola and the government.

The government has not met its burden of proving the attorney-client privilege applies. Any statements about forwarding messages to Carolyn were not made for the purpose of obtaining legal advice nor intended to be kept confidential. The initial statement from Mr.

Scarola to the government about Carolyn was also not for the purpose of obtaining or providing legal advice, is not a communication by Carolyn, and "it was [not] intended to be . . . kept confidential." *Erie*, 473 F.3d at 419; 1 McCormick on Evid., § 91 ("Wherever the matters communicated to the attorney are intended by the client to be made public or revealed to third persons, obviously the element of confidentiality is wanting.") (8th ed. Jan. 2020 update). Finally, Carolyn's motivation for cooperating with the government and testifying against Ms. Maxwell is essential to the jury's assessment of Carolyn's credibility.

But even if the privilege did apply, the privilege was waived. "It is well-established that voluntary disclosure of confidential material to a third party generally results in forfeiture of any applicable attorney-client privilege." *United States v. Ghavami*, 882 F. Supp. 2d 532, 537 (S.D.N.Y. 2012). That is exactly what happened here when Mr. Scarola made the statements to the government. As Fed. R. Evid. 502(a) recognizes, "[w]hen the disclosure [of confidential information] is made in a federal proceeding or to a federal office," that generally "waives the attorney-client privilege or work-product protection . . . ." *See* Fed. R. Evid. 502(a) (defining the limits of such a waiver as to undisclosed or inadvertently disclosed information); *In re Steinhardt Partners, L.P.*, 9 F.3d 230, 236 (2d Cir. 1993) (when a party voluntarily discloses otherwise privileged information to the government, she "necessarily decides that the benefits of participation [in the government investigation] outweigh the benefits of confidentiality"); 1 McCormick On Evid., § 93 ("Waiver may be found, as Wigmore points out, not merely from words or conduct expressing an intention to relinquish a known right, but also from conduct such as partial disclosure which would make it unfair for the client to invoke the privilege thereafter.").

The Honorable Alison J. Nathan
December 13, 2021
Page 6

**Brad Edwards**

A U-Visa affords a special immigration status to victims of certain crimes, including sex crimes, who have suffered mental or physical abuse and are helpful to law enforcement or government officials in the investigation or prosecution of criminal activity.[1] Because providing help to the government is a condition of eligibility for U-Visa, and because the government must support the individual's application by attesting to her being helpful, *see* 8 U.S.C. § 1101(a)(15)(U)(i); 8 U.S.C. § 1184(p), an alleged victim's desire for a U-Visa is powerful evidence of motive and bias.

During cross-examination, however, Kate denied wanting a U-Visa or beginning the process of obtaining a U-Visa. TR at 1276. Material produced by the government, however, shows that Kate's attorney, Brad Edwards, provided a U-Visa application to the government on behalf of Kate during a proffer session. TR at 1285. (3513-045). Ms. Maxwell intends to question Mr. Edwards about this topic.

There is nothing privileged about Mr. Edwards' providing a U-Visa application to the government on behalf of Kate. That testimony does not reveal a confidential communication between Mr. Edwards and Kate. *See Erie*, 473 F.3d at 419. But even if it did, Mr. Edwards' statements to the government during the proffer session and his act of providing the application on behalf of Kate amount to a waiver of whatever privilege that may have existed. *See* Fed. R. Evid. 502(a); *Steinhardt Partners,* 9 F.3d at 236; 1 McCormick on Evid., § 93.

---

[1] https://www.uscis.gov/humanitarian/victims-of-human-trafficking-and-other-crimes/victims-of-criminal-activity-u-nonimmigrant-status (last visited Dec. 13, 2021).

The Honorable Alison J. Nathan
December 13, 2021
Page 7

### Robert Glassman

Ms. Maxwell has already briefed why the attorney-client privilege does not protect Mr. Glassman from having to testify that he told the government that he told Jane it would "help her case" if she cooperated with the government and testified against Ms. Maxwell. Dec. 3, 2021 Maxwell Letter re Attorney Glassman. Mr. Glassman's statement to Jane was not intended to be confidential and was not in fact maintained as confidential. *Id.* But even if the privilege did apply, it was waived when Mr. Glassman communicated the statement to the government. *Id.*

There is a second category of relevant and non-privileged testimony Mr. Glassman has to offer. Jane claimed to remember certain events happening in 1994 because that was the year Mr. Epstein took her to see the Broadway production of The Lion King. As the attached email exchange between AUSA and Mr. Edwards shows, the government quickly recognized a problem with Jane's story because The Lion King did not premiere on Broadway until 1997. Ex. 1 (3509- 010). AUSA Rossmiller and Mr. Glassman then exchanged emails in which AUSA Rossmiller tried to massage the problem and not-so-subtly invited Jane to change her story to say that she had actually seen The Lion King movie, not the play. But Jane, through Mr. Glassman, doubled down, saying in response to AUSA Rossmiller's email she saw the Broadway production of The Lion King, not the movie:

> Broadway play... Epstein bragged about being good friends with Julie Taymor, and we had amazing first row mezzanine seats they she had apparently given him.

Ex. 1.

There is nothing privileged about this evidence. At the request of AUSA Rossmiller, Mr. Glassman went back to Jane about her The Lion King story. Knowing that the request came from the government, Jane stuck to her story, and Mr. Glassman communicated that response to the

The Honorable Alison J. Nathan
December 13, 2021
Page 8

government. Jane's statement is not privileged because it was not "intended to be . . . kept confidential." *See Erie*, 473 F.3d at 419. And any privilege that may have existed was waived when Mr. Glassman shared Jane's statement with the government. *See* Fed. R. Evid. 502(a); *Steinhardt Partners,* 9 F.3d at 236; 1 McCormick on Evid., § 93.

There is a third category of relevant communications. During cross-examination, Jane denied knowing that after the EVCP made its $5 million offer to settle, Mr. Glassman went back to the EVCP on her behalf to seek more money. TR at 558:8-17. In fact, Mr. Glassman did exactly that. He originally demanded $25 million for Jane from Ms. Maxwell. Jane then filed a claim with the EVCP, which offered $5 million. Mr. Glassman replied to the EVCP that Jane "is a sophisticated claimant who knows the value of her claim is worth a lot more than $5 million." Mr. Glassman then demanded a settlement in the eight figures. Because Mr. Glassman communicated these demands to a third party, the first demand to Ms. Maxwell's counsel and the second to the EVCP, and because these communications were not between Mr. Glassman and his client, the exchanges are not protected by the attorney-client privilege and, even if they were, any privilege was waived.

Finally, there can be no argument that AUSA Rossmiller's statements to Mr. Glassman, and Mr. Glassman's statements in response, which do not repeat or refer to statements by Jane, are *not* privileged. The exchanges between AUSA Rossmiller and Mr. Glassman are not "communication[s] between client and counsel." *See Erie*, 473 F.3d at 419.

\* \* \*

Ms. Maxwell has a constitutional right to compulsory process and to present a defense. U.S. Const. amends. V, VI. Because the attorney-client privilege does not preclude her from

The Honorable Alison J. Nathan
December 13, 2021
Page 9

asking Mr. Scarola, Mr. Edwards, and Mr. Glassman about the above-described issues, Ms. Maxwell has a constitutional right to call then as witnesses and to ask them the necessary questions.

_____
Jeffrey S. Pagliuca
Laura A. Menninger
HADDON, MORGAN & FOREMAN P.C.
150 East 10th Avenue
Denver, CO 80203
Phone: 303-831-7364

Christian R. Everdell
COHEN & GRESSER LLP
800 Third Avenue
New York, NY 10022
Phone: 212-957-7600

Bobbi C. Sternheim
Law Offices of Bobbi C. Sternheim
225 Broadway, Suite 715
New York, NY 10007
Phone: 212-243-1100

*Attorneys for Ghislaine Maxwell*

cc: Counsel of record (via email)