

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

December 14, 2021

The Honorable Alison J. Nathan
United States District Court
Southern District of New York
United States Courthouse
40 Foley Square
New York, New York 10007

    Re:    *United States v. Ghislaine Maxwell*, S2 20 Cr. 330 (AJN)

Dear Judge Nathan:

    The Government respectfully submits this letter in opposition to the defendant's request to call Jack Scarola, Brad Edwards, and Robert Glassman—all counsel for victims—to testify in the defendant's case-in-chief. Rather than asking these attorneys about their conversations with their clients, which are privileged, the defendant seeks to elicit testimony about those attorneys' conversations with the Government. This end-run around privilege, however, would only generate irrelevant evidence. The victims themselves have testified and been cross-examined about what they do and do not know or believe. There is no relevance to their lawyers' conversations with the Government when the defendant has failed to establish the victim's knowledge of those statements, nor would testimony about those conversations serve as proper impeachment, unless those conversations were in some way communicated to their clients. And that fact has not been

1

established and cannot be established without infringing on privilege. Finally, even if the proposed testimony were relevant to some minimal extent, the Court should deny the motion under Rule 403 rather than compel victims' counsel to testify against their own clients. The defendant's approach here is strongly disfavored by courts because, even if not implicating privileged, forcing an attorney to testify against his client comes at the direct expense of the attorney-client relationship, especially for a vulnerable victim like the victim of sexual abuse.

I. **Applicable Law**

Federal Rule of Evidence 402 provides that "[i]rrelevant evidence is not admissible." Accordingly, any evidence that does not bear on the defendant's guilt or innocence of the charges in the indictment should be excluded as irrelevant. Rule 403 further states that the Court may "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." It is generally disfavored for a party at a trial to call an attorney as a witness against the attorney's client, because doing so intrudes on the attorney-client relationship. *Cf., e.g.*, 1 Att'y-Client Privilege in the U.S. § 3:24 (2021) ("Although attorneys are subject to subpoena just like any other witness, courts discourage the government from calling the attorney of a defendant, or of the target of a criminal investigation, because forcing an attorney to testify against his client comes at the direct expense of the attorney-client relationship. 'The serving of a subpoena will immediately drive a chilling wedge between the attorney/witness and his client.'"); *United States v. Schwartzbaum*, 527 F.2d 249, 253 (2d Cir. 1975) (holding that the defendant may not call Government counsel as a witness unless "required by a compelling and legitimate need"); *Edebali v. Bankers Standard Ins. Co.*, 14 Civ. 7095 (JS)

(AKT), 2017 WL 3037408, at *9 (E.D.N.Y. July 17, 2017) ("[T]here is a presumption disfavoring attorney depositions which is based on the recognition that even a deposition of counsel limited to relevant and non-privileged information risks disrupting the attorney-client relationship and impeding the litigation." (alterations and internal quotation marks omitted)); ABA Model Rule 3.7 cmt. (noting potential conflict of interest issues that arise if, for instance, "there is likely to be substantial conflict between the testimony of the client and that of the lawyer").

## II. Discussion

The defendant seeks to call three attorneys for victims: Jack Scarola, Brad Edwards, and Robert Glassman. For each, the proposed testimony is either duplicative of facts already in evidence, is irrelevant or is improper impeachment. And in any event, whatever marginal probative value that testimony might offer is outweighed by the prejudice and jury confusion associated with calling an attorney to testify against his client.

### A. Jack Scarola

The defendant proposes to call Jack Scarola, counsel for Carolyn, to testify about the course of his communications with the Government. While that testimony would not be privileged, it is irrelevant and improper impeachment.

Much of the testimony the defendant seeks from Scarola is evidence confirmed by Carolyn on cross-examination. Specifically, Carolyn agreed to the following facts:

- Jack Scarola represented Carolyn in her 2008 lawsuit and before the Epstein Victims Compensation Program. (Tr. 1617-18).

- Carolyn did not contact the Government between 2007 and March 2019, and then again was out of touch until her representative, Mr. Danchuck, responded in July 2020. (Tr.

3

1681-83).

- Scarola was present for Carolyn's the meetings the Government listed by the defense. (Tr. 1684; Def. Letter at 3-4).

- Carolyn received $2,804,000 from the Epstein Victims Compensation Program, not counting the $446,000 she had previously received from her claims against Epstein and Sarah Kellen (Tr. 1688-89).

Accordingly, the defendant has already obtained through Carolyn much of the testimony it anticipates from Scarola. There is no need for Scarola to testify to information already obtained from Carolyn, and it obviously does not impeach Carolyn for Scarola to confirm her answers.

Nearly all of additional testimony the defendant proposes to elicit from Scarola is irrelevant and non-impeaching. It does not matter that Scarola is a member of the Florida bar (Def. Letter at 2), nor are the additional specifics of the Government's unsuccessful efforts to contact Carolyn probative (*id.* at 3).[1] It says nothing about Carolyn that Scarola copied counsel for other victims on an email. (*id.* at 2). None of that information impeaches Carolyn's testimony in any way—rather, it is entirely consistent with her testimony.[2]

The defendant argues this testimony is relevant to "establish the timeline of Carolyn's cooperation with the government and her motive and bias in testifying against Ms. Maxwell, in particular the fact that Carolyn was unresponsive and uncooperative until there was the prospect

---

[1] The Government would stipulate to the specific dates of meetings between Scarola, Carolyn, and the Government. (*See* Def. Letter at 3-4).

[2] The defendant would also elicit from Scarola that, during a 2020 meeting, Scarola told the Government that he had shown Carolyn a picture of the Epstein associate with the same name as Jane, but Carolyn could not identify the person at the time. But the defendant did not ask Carolyn about that person, so this testimony would not impeach Carolyn—to the extent it is not privileged.

of a payout from the EVCP." (Def. Letter at 4). This argument does not demonstrate relevance for two reasons. First, that articulation of bias matters only insofar as Carolyn was aware of the date the EVCP began accepting claims when she decided to cooperate with the Government. But she testified that she was not aware of that fact, and none of Scarola's anticipated testimony would contradict Carolyn's testimony on that point. (Tr. 1683). This bias theory accordingly has no factual predicate. Second, even if the defendant's timeline testimony did go to bias in some way, the additional facts the defense would elicit from Scarola do not. For instance, Carolyn testified that she was largely out of touch between 2007 and July 2020, notwithstanding emails forwarded by Scarola, as noted above. Nothing about that timeline changes if the jury learns that the Government gave Scarola the contact information for an agent in February 2020. And if it did, it would serve simply as an end-run around the information the defendant would prefer to elicit, but which is protected by privilege: the substance of Scarola and Carolyn's conversations about the EVCP and cooperation with the Government.

Finally, even if there were some probative value to those details, it is substantially outweighed by the prejudice and jury confusion associated with calling Carolyn's counsel to the stand. *See* Fed. R. Evid. 403. Imposing such an obligation on Scarola would have an immediate chilling effect on Carolyn and Scarola's attorney-client relationship, and it would confuse the jury by suggesting they should infer the existence and substance of privileged conversations for which there is no evidence. Whether or not Scarola testifies as the defendant suggests, there will be no evidence from which the jury can properly conclude that Scarola had any particular conversation with Carolyn on any topic.

B. **Brad Edwards**

The defendant proposes to call Brad Edwards, counsel for Kate, to say that he provided a U-Visa application to the Government on behalf of Kate. This testimony, too, would not be privileged, but it is irrelevant and improper impeachment.

Kate testified that, at a meeting, she asked the Government to look into sponsoring her for a U-Visa. (Tr. 1279, 1287, 1300). She acknowledged that Edwards likely attended the meeting, but did not recall whether he provided a U-Visa form to the Government (Tr. 1300). Kate also explained that her plan is simply to renew her current visa, and that the Government has made no promises to assist her. (Tr. 1207-08, 1295).

The fact that Edwards provided the Government with a U-Visa application form during a meeting with Kate is not relevant or impeaching of Kate. Rather, it is entirely consistent with Kate's testimony—specifically, that she made an inquiry about a U-Visa but was not sure whether her lawyer provided the Government with a U-Visa form. And the fact that her lawyer provided the Government with a U-Visa form is not "powerful evidence of motive of bias," as the defendant suggests. (Def. Letter at 6). First, as with Scarola's proposed testimony, it could only be evidence of Kate's bias to the extent she is aware of the fact, a predicate which the defense did not establish. Second, it is not "powerful" evidence of anything. Kate acknowledged asking the Government about a U-Visa. Whether her lawyer, at the same time, gave the Government a partially complete U-Visa form is at most marginally confirming extrinsic evidence of Kate's own testimony. It does not show, for instance, that Kate or Edwards continued to seek a U-Visa after the meeting, that she continues to seek one now, or that the Government has made any promises to Kate of any kind about her immigration status, nor could the defense argue any of that from the anticipated

6

testimony. Edwards's anticipated testimony about the U-Visa is therefore inadmissible, and in any event, should be precluded under Rule 403 for the same reasons as testimony from Scarola.

### C. Robert Glassman

In addition to the Glassman's statement which is already the subject of litigation, the defendant identifies two additional statements which she seeks to offer: (1) Glassman's exchange with the Government about Jane's recollection of seeing *The Lion King* on Broadway, and (2) Glassman's communications with the EVCP in which Glassman sought a larger award from the Program.

Jane's statements in *The Lion King* e-mail do not impeach Jane's testimony. Jane acknowledged that she originally told the Government that she flew to New York first with Epstein and the defendant to see *The Lion King* when she was 14, but she later realized she was incorrect in her timeline, and she saw the show on a different trip. (Tr. 503). The defense cross-examined her on this point at length (Tr. 503-12). After her recollection was refreshed with the specific email attached as Exhibit 1 to the defendant's letter, Jane also acknowledged that her "lawyer communicated to the government [Jane's] recollection that, in fact, [she] had seen *The Lion King* Broadway show and not the movie." (Tr. 509-10). She confirmed details, including that she sat in mezzanine seats and that Epstein "bragged about getting those seats because he knew the director," and that all of that information was conveyed to the Government in response to questions about her timeline from the Government. (Tr. 510-11).

Jane confirmed every question the defense asked about the content of this email, except questions which drew sustained objections because they asked Jane about the substance of her conversations with Glassman. (Tr. 510-12). Calling Glassman to testify to the same information

7

would serve no proper purpose.[3]

Finally, Glassman's conversations with the EVCP do not impeach Jane's testimony. The defendant would call Glassman to testify that he originally demanded a higher settlement from the EVCP. As the Court explained when the defendant raised this very issue at a break on December 1, "there are personal knowledge questions in issue." (Tr. 489). On cross, defense counsel asked Jane if she knew whether her attorney asked the EVCP for more money, and she said she did not know. (Tr. 558). Today, as on December 1, evidence of Glassman's negotiations with the EVCP (or the defendant) go to Jane's bias only if Jane was aware of them. Jane testified that she was not aware of them, and the evidence the defendant would elicit from Glassman would not cure that defect. It is therefore improper impeachment. And for Glassman, as for Scarola and Edwards, the suggestion that the jury should infer that Jane and Glassman had certain privileged conversations that affect Jane's knowledge from the fact that Glassman had other exchanges with other individuals is more prejudicial than probative. *See* Fed. R. Evid. 403.

### III. Conclusion

For the reasons set forth above, the Court should preclude testimony from Jack Scarola, Brad Edwards, and Robert Glassman.

---

[3] The defendant also argues that Glassman's exchanges with the Government that "do not repeat or refer to statements by Jane" are not privileged. (Def. Letter at 8). Glassman's statements in the email are "Hey [prosecutor]. Hope you guys are staying safe. Here was her response about the lion king," which are irrelevant. And the prosecutor's statements can only be relevant to the extent that Jane was aware of them. But the defense has not established that fact, in part because the defense framed its questions on cross to call for privileged information. (*See, e.g.*, Tr. 511 ("The government suggested to you that perhaps you meant to say *The Lion King* movie through your attorney to you; correct?" (emphasis added))).

8

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: \_\_\_s/_____
    Maurene Comey
    Alison Moe
    Lara Pomerantz
    Andrew Rohrbach
    Assistant United States Attorneys
    Southern District of New York

Cc: Defense Counsel (by e-mail)