# Exhibit A

LB1TMAX1

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                          20 CR 330 (AJN)

5   GHISLAINE MAXWELL,

6              Defendant.

7   ------------------------------x
                                      New York, N.Y.
8                                     November 1, 2021
                                      11:05 a.m.
9
    Before:
10
                   HON. ALISON J. NATHAN,
11
                                      District Judge
12

13                   APPEARANCES

14  DAMIAN WILLIAMS
         United States Attorney for the
15       Southern District of New York
    ALISON MOE
16  MAURENE COMEY
    ANDREW ROHRBACH
17  LARA POMERANTZ
         Assistant United States Attorney
18
    COHEN & GRESSER
19       Attorneys for Defendant
    CHRISTIAN EVERDELL
20
    HADDON MORGAN FOREMAN
21       Attorneys for Defendant
    JEFFREY PAGLIUCA
22  LAURA MENNINGER

23  BOBBI C. STERNHEIM
         Attorney for Defendant
24

25

LB1TMAX1

1     to rehabilitate a witness attacked on another ground.  It's

2     801(d)(1)(B)(ii).  For example, the statement could be admitted

3     to explain what would otherwise appear to be an inconsistency

4     in the witness's statement and rebut a charge of faulty memory.

5     *United States v. Purcell*, 967 F.3d 159, (2d Cir. 2020).

6          If it becomes relevant, the government may offer prior

7     statements before the witness testifies if the defense attacks

8     the credibility in opening statements and it's clear that the

9     witness will be subject to cross-examination.  *United States v.*

10    *Flores*, 945 F.3d 687, (2d Cir. 2019).  That's restating the

11    applicable law here that the parties appear to agree to in the

12    briefs.  The government doesn't anticipate any such effort to

13    offer such statements at this time and won't mention any in

14    opening beyond that.

15          Is there anything specific to flag or discuss here,

16    from the government's perspective?

17          MS. MOE:  No, your Honor, thank you.

18          THE COURT:  Ms. Sternheim?

19          MS. MENNINGER:  Your Honor, Laura Menninger.  None for

20    the defense at this time.  Thank you.

21          THE COURT:  All right.  Thank you.

22          The government's 3 and 4, which I'm going to group,

23    the government seeks to preclude evidence and arguments by the

24    defense, (1) about the investigation in Florida, including the

25    non-prosecution agreement, (2) that Ms. Maxwell was not charged

LB1TMAX1

by the U.S. Attorney's Office in the Southern District of Florida, (3) about the scope and timeline of investigation in New York, and (4) other evidence that demonstrates the government's motives for investigating Ms. Maxwell.

The Court's analysis here is guided by four principles set by the Second Circuit and the Supreme Court.

First, because the government has no duty to employ, in the course of a single investigation, any particular investigative technique, the failure to utilize some particular technique does not tend to show that a defendant is not guilty of the crime of which he's been charged and is therefore irrelevant. *United States v. Saldarriaga*, 204 F.3d 50, (2d Cir. 2000). That's the first legal principle that frames the discussion here.

Second, arguments that the government had an improper motive generally must be directed to the Court rather than the jury. *United States v. Regan*, 103 F.3d 1072, (2d Cir. 1997); *see also*, *United States v. Farhane*, 634 F.3d 127 (2d Cir. 2011).

Third legal principle: There is no per se bar on admitting evidence of the government's charging decisions. Rather, the Court must -- I will quote here -- "inquire into its relevance and probative value to the respective case." *United States v. White*, 692 F.3d 235 (2d Cir. 2012); *see also*, *United States v. Ngono*, 801 F.App'x. 19 (2d Cir. 2020).

LB1TMAX1

1          Fourth, the confrontation clause of the Sixth

2    Amendment guarantees a criminal defendant the right to

3    meaningful cross-examination of government witnesses at trial.

4    *United States v. Figueroa*, 548 F.3d 222, (2d Cir. 2008).

5    Indeed, cross-examination is the principal means by which the

6    believability of a witness and the truth of his testimony are

7    tested.  *Davis v. Alaska*, 415 U.S. 308, 316, (1974).

8          With this legal framework in mind, and in light of the

9    parties' extensive briefing on these issues, I think the

10   admissibility of some of the proposed evidence can be

11   determined now, but the admissibility of other evidence will

12   require additional facts and the context of trial to decide,

13   but I think it's important for me to give guidance.

14         Based on the papers before me, I provide the following

15   guidance:  First, the Court will preclude affirmative evidence

16   by the defense that goes to the thoroughness of the

17   investigation.  Although evidence that goes to the thoroughness

18   of the government's investigation can in some cases be relevant

19   and may in some cases be admissible, it's not relevant or

20   admissible if not probative of the defendant's guilt of the

21   crimes charged.

22         In its briefing, the defense relies heavily on *Kyles

23   v. Whitley*, 514 U.S. 4 (1995), in which the Supreme Court held

24   that an informant's statements to police were material for

25   purposes of *Brady* disclosures because the statements could be

LB1TMAX1

used to "attack the thoroughness and even the good faith of the investigation."

        That holding has only limited relevance here.  First, the statement at issue in *Kyles* was probative because it suggested the defendant's innocence, not because it was evidence of the reasons for the charging decision or the investigation's timeline.

        Second, the Second Circuit in *Watson v. Greene* narrowly construed the holding in *Kyles* by clarifying that it "addresses only the prosecution's obligations to disclose *Brady* material" and "provides no guidance about what evidence must be admitted at trial or what lines of questioning must be permitted to ensure a meaningful opportunity to cross-examine adverse witnesses."  *Watson v. Greene*, 640 F.3d 501, 512, n. 11 (2d Cir. 2011).

        Now the Second Circuit's decision in *Watson* does, however, suggest that some arguments about the thoroughness of the investigation are probative of guilt in some circumstances. In that case, law enforcement had received a tip that the defendant was innocent because another individual shot the victim.  The Second Circuit stated that cross-examination of the lead investigating officer on that tip was probative because the jury could conclude that law enforcement had prematurely concluded the defendant was the shooter and it failed to investigate diligently the possibility that it was

1     the other individual.  *Watson*, 640 F.3d, 511-12.

2              Other courts in this Circuit have described challenges

3     to the thoroughness of the investigation as a "common method of

4     undermining a prosecution" by, for example, cross-examining

5     officers on which leads they followed and which they did not.

6     *See, for example, Gray v. Ercole* -- I don't have that full

7     quote -- 2011 WL 5082868 (E.D.N.Y 2008).  Or defense counsel

8     may, on cross, examine investigating officers if they

9     considered alternative suspects.  *United States v. Birbal*, 92

10    CR 98, 1996 WL 192924 at *7, that's the District of the

11    Vermont, 1996.  That was affirmed by the Second Circuit at 113

12    F.3d 1230.  And I will quote here, "The length of the

13    investigation, the investigative techniques used, and the fact

14    that the defendant was not initially a target of the

15    investigation are all irrelevant pursuant to" the principle

16    that the government's failure to use particular investigative

17    techniques does not tend to show that the defendant is not

18    guilty.  *See*, *for example*, *United States v. Duncan*, No. 18 CR

19    289, 2019 WL 2210663 (S.D.N.Y. 2019); see also, *United States*

20    *V. Aleynikov*, 785 F.Supp.2d 46, 65 (S.D.N.Y. 2011).

21             The other two cases the defense cites, neither of

22    which is binding on the Court, don't suggest anything different

23    than the law I just referred to.  In *Bowen v. Maynard*, the 10th

24    Circuit held that *Brady* evidence in the government's possession

25    was material because it suggested that another likely suspect

LB1TMAX1

did not have an alibi and suggested that a photo lineup was
unduly suggestive.  799 F.2d 593, (10th Cir. 1986).  The court
stated that, if disclosed, "the defense could have
cross-examined the detectives about their decision to use the
photographs" that they did as well about their failure to
corroborate the other suspect's alibi.

          And the defense cites another *Brady* violation in
*Lindsey v. King* where the Fifth Circuit found that a police
report was material under *Brady* because it showed key witnesses
to a murder had changed their story, which on cross-examination
would have meant the destruction of the witness's
identification and the discrediting in some degree of the
police methods employed in assembling the case against the
defendant.  *Lindsey v. King*, 769 F.2d 1034, (5th Cir. 1985).

          These two examples of focused cross-examination to
impeach a witness that testified to the defendant's guilt and
thereby throw the product of the government's investigation
into doubt are far afield from the specifics of what the
defense proposed here.  In its brief, the defense seeks to
affirmatively -- and I will quote from their brief -- "call FBI
case agents as witnesses" to ask who they talked to, what
documents they subpoenaed, and when.  *See*, defense's response
at 40.  But as the Second Circuit explained in *Saldarriaga*, the
government's use or non-use of certain investigative techniques
does not tend to show the defendant's innocence of the charges.

LB1TMAX1

1          The defense also seeks to elicit evidence of the

2    public outcry and scrutiny that preceded the decision to charge

3    the defendant.  The defense refers to public statements made by

4    assistant United States attorneys -- not those appearing in the

5    case -- to suggest that Ms. Maxwell was charged for improper

6    reasons.

7          The Court finds that this specific proffered evidence

8    is irrelevant to the charged conduct and, therefore,

9    inadmissible.

10          To the extent that the defense's affirmative evidence

11   in this regard would have some marginal probative value, it is

12   substantially outweighed by 403 prejudice.  *See*, *for example*,

13   *United States v. Hill*, 12 CR 214, 2014 WL 198813 (E.D.N.Y.

14   2014), affirmed by the Second Circuit, 658 Fed. Appx. 600.

15          Here's the reason for that 403 analysis:

16          First, investigative details are likely to confuse the

17   jury about the proper standard for determining Ms. Maxwell's

18   guilt by suggesting that the government's choices of

19   investigative techniques are relevant to whether guilt is

20   proved beyond a reasonable doubt.  Moreover, I will instruct

21   jurors, as is standard, to the effect that the government is

22   not on trial.  And that standard charge can be found in many

23   cases.  Admitting testimony on the investigation would confuse

24   the jury once it's received that instruction.

25          Second, these lines of argument are likely to

LB1TMAX1

1    substantially confuse and delay the trial.  The evidence

2    outlined in the defense's papers, including who was interviewed

3    and when, what documents were subpoenaed and other details of

4    investigations in two different states and different time

5    periods would substantially expand the scope of the trial.

6    Exactly what steps investigators took is not a simple question,

7    of course.  The government would likely present a contrary

8    account of events, leading to trials within trials on what law

9    enforcement did over the course of years.  This prejudice would

10   substantially outweigh any minimum probative value that might

11   be gained from such a far-flung endeavor.

12          Third, as to prejudice, the evidence would be

13   cumulative, demonstrating that an investigation was "hasty" and

14   not thorough is at best repetitive of the defense's arguments

15   that the government collected insufficient evidence of guilt.

16   That point is made most clearly and directly by focusing on the

17   evidence or lack of evidence and credibility or lack of

18   credibility of the witnesses presented at trial.

19          The second piece of guidance I can provide now is that

20   the Court will exclude much of the evidence outlined in the

21   defense's papers of the government's alleged motives for

22   investigating and charging Ms. Maxwell.  This evidence includes

23   but is not limited to the Miami Herald article, statements from

24   Attorney General William Barr and the like.

25          The evidence presented by the government in this trial

1    is the relevant basis for the jury's determination of guilt or

2    innocence.  Why and when the government conducted the

3    investigation is not relevant.  If the defense believes the

4    government has a legally improper motive for prosecuting

5    Ms. Maxwell or somehow fabricating evidence or suborning

6    perjury or the like, the Second Circuit has made clear that the

7    proper remedy is to file a motion for the Court to consider.

8    *See*, *Regan*, 103 F.3d 1082.  Absent that, the law is clear that

9    for purposes of the jury, "the government is not on trial."

10   *United States v. Knox*, 687 F.App'x 51, (2d Cir. 2017).

11             Moreover, evidence of motive would be highly

12   prejudicial.  For the reasons I explained a moment ago, it

13   would confuse jurors as to the proper standard of guilt to be

14   applied in the case.  Indeed, the defense's outlined evidence

15   of improper motives is strongly suggestive of jury

16   nullification because it suggests a vindictive or political

17   prosecution which is rightly a matter reserved to the Court.

18             Calling witnesses to testify to the government's

19   motive would substantially expand the scope of trial, rely

20   likely on hearsay and other inadmissible evidence.  So what

21   motivated a particular investigative step or charging decision

22   of course doesn't have a black or white answer, and the defense

23   would have one story and the government another, neither of

24   which would assist of the jury in deciding Ms. Maxwell's guilt

25   or innocence of the charges here based on of the government's

1    ability to prove its case beyond a reasonable doubt.

2              Third piece of guidance:  The Court will exclude from

3    evidence the non-prosecution agreement, both its existence and

4    its particular terms.  The defense argues the NPA is relevant

5    to the bias and financial interest of two witnesses.  One

6    anticipated witness received immunity from criminal prosecution

7    under the NPA.  Additionally, under the NPA, Epstein agreed to

8    pay for a lawyer for an alleged victim who was anticipated to

9    testify and agreed not to contest her civil suit against him.

10   The civil suit ended in a settlement with respect to an alleged

11   victim.

12             Of course, defendants are always able to cross-examine

13   witnesses about relevant bias.  For example, cross-examination

14   about civil litigation or civil claims against Epstein or

15   others and related financial incentive are fair grounds.

16   Moreover, cooperating witnesses are commonly cross-examined

17   about how testimony may affect the sentence that they receive.

18   And if it were the case that any witness were to receive

19   testimonial immunity in this case, the defense may

20   cross-examine about that.  But the defense has not explained

21   any bias or incentive to fabricate that results from or relates

22   to the NPA.  Regardless of how the witness covered by the NPA

23   might testify, that witness will remain protected under the NPA

24   in the Southern District of Florida, and as I already ruled,

25   the NPA does not provide protection in the Southern District of

1    New York.

2           Similarly, no matter how a witness who has a

3    settlement or financial incentive testifies, those benefits are

4    not received under the NPA, so I don't see any theory of bias

5    that would be relevant that the defense has articulated with

6    respect to the NPA.

7           Moreover, even if there were some relevance, it would

8    be substantially outweighed by a significant risk of 403

9    prejudice from introducing the NPA.  The jury would need to be

10   instructed on what the non-prosecution agreement is, and would

11   need to have its terms explained.  In particular, NPA, of

12   course, is controversial and complicated and has a complicated

13   background.  There's a risk of undue delay, juror confusion,

14   and improper suggestions of sympathy or nullification made to

15   the jury on the basis of the NPA.

16          I will be clear, it's not clear to me the NPA could

17   never be admitted, but the rationale now provided by the

18   defense in its papers does not justify admission based on the

19   balancing of 401 and 403 factors.

20          Fourth guidance:  The government's charging decisions

21   are likely not relevant and therefore inadmissible.  The

22   government didn't indict Ms. Maxwell by the end of the Florida

23   investigation, and the government didn't indict Ms. Maxwell

24   when it indicted Jeffrey Epstein originally in New York.  As

25   the Second Circuit stated in *White*, charging decisions can be

LB1TMAX1

admissible under the usual rules of relevance.  In *White*, the

court determined that a prior charging decision was admissible

because it bore directly on the credibility of a witness that

testified at the defendant's trial.

As currently proffered by the defense, the rationale

doesn't apply here.  For example, according to the defense, an

alleged victim's statement to the FBI previously did not

implicate or exculpate Ms. Maxwell, but her statement today

does implicate her.  On the basis of that statement, and

assumedly other evidence available to them and a host of

reasons, officials in the Southern District of Florida decided

to not indict Ms. Maxwell at that time.  That charging decision

could be understood as a determination that in 2008 the

government lacked sufficient evidence of Ms. Maxwell's guilt,

but the decision not to charge -- or it could mean any number

of a host of reasons, but the decision not to charge has little

probative value that the Court can see as to this case.

Charging decisions, as I said, are made for a host of

reasons.  Trying to sort through those reasons would be

prejudicial pursuant to 403 both because they would require

significant time to explore and because juror confusion would

be likely.  Any consideration of the government's decisions

would also likely rely on hearsay or other inadmissible

evidence.  More importantly, unlike in *White*, those officials'

assessments of the evidence in Florida in 2008 is not relevant

1    to the jury's decision now, which is whether there is evidence

2    of Ms. Maxwell's guilt beyond a reasonable doubt as the

3    government will put its case to the jury.

4            Now there is a difference between admitting a witness'

5    prior statements for impeachment purposes, which is protected

6    by the confrontation clause, and admitting prior charging

7    decisions.  In a case analogous to this one on this issue,

8    *United States v. Borrero*, another district court judge held

9    that a defendant could permissibly cross-examine a witness

10   about their prior statement to law enforcement in which they

11   accused a different individual of the crime for which the

12   defendant was later charged.  2013 WL 6020773 (S.D.N.Y. 2013).

13   That case docket is 13 CR 58.  But the court there did not

14   admit the charging decision that the early investigation had

15   ended in a nolle, because it would confuse jurors, require

16   extended factual disputes, and was, at best, cumulative of the

17   witness's statement.  As I have explained, the same would

18   appear to be true here.

19           Fifth piece of guidance:  In contrast to what I

20   indicated may not come in, the Court will permit relevant

21   cross-examination of the government's witnesses.  Defense seeks

22   to impeach the credibility of some witnesses by admitting those

23   witnesses' prior statements to the government that purportedly

24   did not implicate Ms. Maxwell.  This use of cross-examination

25   to impeach a witness that has allegedly changed her story to

LB1TMAX1

1   law enforcement is exactly the kind of attack on the

2   thoroughness of the government's investigation that the Fifth

3   Circuit approved in *Lindsey v. King*.  Provided that the rules

4   for admitting prior inconsistent statements are satisfied, the

5   Court concludes that this line of evidence is relevant and

6   admissible.

7           The defense may also cross-examine about witnesses'

8   motives or biases for testifying, including, for example, the

9   witnesses' motives for implicating Ms. Maxwell after Jeffrey

10  Epstein's death.  Admitting prior statements on

11  cross-examination may require providing the jury some

12  background information about the prior investigations so that

13  the prior statements are understood in the proper context and

14  the jury is provided necessary background to understand that

15  evidence.

16          (Continued on next page)

17

18

19

20

21

22

23

24

25

LB15MAX2

1          THE COURT:  (Continuing)

2          I imagine this can be done through cross-examination

3     questions if the witness has personal knowledge.  I would also

4     encourage the parties to discuss stipulations in this regard to

5     provide the jury any necessary and non-prejudicial context or

6     background, or other proposals for permitting the jury to

7     understand the background or context without crossing over into

8     the 403 prejudice line.

9          I also would permit the defense to cross-examine law

10    enforcement officers about the investigative steps that were

11    taken if the government puts the thoroughness of the

12    investigation into issue as this, too, would be permissible

13    impeachment and cross.

14         These articulated lines of cross-examination of

15    government witnesses would be relevant to impeach a witness by

16    suggesting bias or otherwise implicating their credibility.

17    Moreover, denying Ms. Maxwell these lines of questioning would

18    have implications under the confrontation clause.  The Court

19    expects that the probative value would not be substantially

20    outweighed by 403 prejudice if done along the lines of what I

21    have indicated, especially if accompanied by a limiting

22    instruction by the Court that, for example, prior inconsistent

23    statements are to be considered for their impeachment value and

24    the like.

25         Similarly, the Court may instruct the jury that

LB15MAX2

```
1    counsel made only a good faith -- actually, I will retract that
2    last sentence.
3              At base, the Court encourages the parties to confer on
4    appropriate process for putting background information in front
5    of the jury, as necessary, to allow the kinds of
6    cross-examination that would be permissible and required under
7    the relevant law.
8              Let me pause and ask counsel if they have any
9    questions with respect to the guidance I have offered at this
10   time.  Obviously there may be issues we will need to take up as
11   we go.
12             Ms. Moe?
13             MS. MOE:  Not from the government, your Honor.  Thank
14   you.
15             MR. EVERDELL:  Your Honor, Christian Everdell.
16             Not at this time, your Honor.
17             THE COURT:  Thank you.
18             No. 6, evidence that goes to consent issues.
19             The government requests to exclude evidence or
20   argument regarding consent.  Now let me ask counsel, it seems
21   to me the issues implicated in this motion overlap, at least
22   potentially, to the issues raised and to be discussed in the
23   412 motion and I am wondering if we should at least begin by
24   taking it up at that time, as necessary.
25             MS. MOE:  Your Honor, the government agrees that makes
```

LB15MAX2

1    sense to address this issue at the same time.

2              MS. STERNHEIM:  We agree.

3              THE COURT:  So we will defer on that.  In light of the

4    overlap on the 412 issues we will take that up at the 412

5    hearing.

6              Government's 7.  The government argues that before

7    offering evidence or argument of Ms. Maxwell's failure to

8    commit other bad acts it should require the defense to proffer

9    the basis and the relevance of such evidence.  Let me hear from

10   the government what the specific concern is here and then I

11   will speak to the defense.

12             MS. MOE:  Yes, your Honor.  Thank you.

13             The concern here is what the defense has flagged in

14   its opening papers relating to statements by other victims who

15   were interviewed during the course of the government's

16   investigation.  Evidence along those lines, if proffered in an

17   opening statement, or if asked about in cross-examination of a

18   law enforcement officer, would be inappropriate and hearsay.

19   Such evidence could only come in at trial, if at all, if the

20   defense called, as defense witnesses, victims who were not at

21   issue in this case.  And so, for that reason, your Honor, the

22   defense should be precluded from opening on this issue unless

23   and until they proffer which victims these statements would

24   come through, who they would anticipate calling as defense

25   witnesses at trial so the Court can assess whether that is

LB15MAX2

1   relevant at all.

2          As the government set forth in its moving papers, the

3   defendant is not charged with trafficking certain victims and

4   so whether or not the defendant is guilty of those crimes is

5   irrelevant before this jury.

6          THE COURT:  Ms. Sternheim, any mention on opening with

7   respect to this line of --

8          We will ask everyone please make sure your masks are

9   on -- counsel, fully on -- unless you are at the podium.

10          MS. STERNHEIM:  Judge, I just want to say that we are

11   honoring your one counsel rule but we have designated various

12   topics.

13          THE COURT:  Appreciate it.

14          MS. STERNHEIM:  So if you will allow us?

15          THE COURT:  Go ahead.

16          MS. MENNINGER:  Your Honor, I don't believe that we

17   will be opening on these issues but I think the government is

18   understating what is charged in the indictment.  They have put

19   forth an indictment that does not just allege the four main

20   accusers, rather they have set forth a conspiracy that they

21   claim involves a number of other unnamed individuals, and I

22   believe they have proffered an intent to put other evidence

23   about unnamed individuals in their exhibits, in their trial

24   testimony.  For example, there are a number of exhibits that

25   they've set forth that come from a time period outside of the

LB15MAX2

1    conspiracy and so forth.  So it is our position that if they

2    open the door to evidence about anyone other than these four

3    then we would, likewise, be able to talk about the fact that

4    those other individuals were interviewed by the government and

5    said that Ms. Maxwell is not involved, was not there, and was

6    not a part of the activities that they're talking about.  None

7    of the cases that the government cited had to do with a

8    co-conspirator.  The evidence was just because a defendant did

9    not act in conformity with the charged conduct on a separate

10   occasion, couldn't be set forth by the defense.

11            THE COURT:  Do you agree with that principle?

12            MS. MENNINGER:  Yes, your Honor.  If it is good

13   character evidence, generally I understand the rules of

14   evidence wouldn't apply, but what we have here is a 10-year

15   charged conspiracy with an intent by the government to allude

16   to other individuals.  To the extent they try to put on

17   evidence in the form of message pads or other types of evidence

18   that refer to other people, then I think we have the ability to

19   confront that evidence with the fact that Ms. Maxwell was

20   reported by those individuals not to have been involved.

21            THE COURT:  Ms. Moe?

22            MS. MOE:  Thank you, your Honor.

23            The government agrees that this issue can be deferred

24   until trial unless and until this becomes an issue, provided

25   the defense counsel doesn't intend to open on this issue.

LB15MAX2

1  However, even if this became an issue at the trial, the remedy

2  would be to permit the defense to call these relevant witnesses

3  to talk about whether the defendant was or was not involved in

4  their sex trafficking.  The remedy would not be to permit

5  defense from cross-examining law enforcement agents about

6  hearsay statements that other individuals provided to them.  It

7  would be extremely confusing for the jury to be hearing,

8  through law enforcement agents, the statements of these

9  individuals to assess whether or not those individuals

10  implicated the defendant or simply said nothing about the

11  defendant.  And so, the government submits that the only way

12  that this could come in at trial would be if the defense called

13  those witnesses themselves and, of course, it is difficult to

14  determine the potential relevance, if any, of testimony along

15  those lines, and so the government respectfully submits that

16  none of this should be offered at trial unless and until there

17  is an offer of proof along those lines.

18          THE COURT:  Ms. Menninger?

19          MS. MENNINGER:  Your Honor, whether someone said no

20  one else involved or didn't implicate our client is not

21  hearsay, it is the absence of a statement.  So I don't

22  understand the government's position that if an investigator --

23          THE COURT:  It is not the absence of the statement,

24  right?  If you are trying to put in an out-of-court statement

25  from someone who said that Ms. Maxwell wasn't involved, it is

1    an out-of-court statement you are putting on for the truth, it

2    is hearsay.

3         MS. MENNINGER:  Slightly different, your Honor.

4         If a witness says they interviewed -- if a law

5    enforcement says they interviewed another accuser and that

6    accuser never said that Ms. Maxwell was involved, that's not a

7    hearsay statement.  They just didn't mention her, it is the

8    absence of a statement.  And as your Honor just ruled in terms

9    of the thoroughness of the investigation, if there is evidence

10   that the government puts on about these other accusers I think

11   that's what opens the door.  It is not us opening the door, it

12   would be them submitting evidence that other people were

13   victims without putting those people on, putting on message

14   pads that had their names on it, and then precluding us from

15   introducing evidence that none of those individuals implicated

16   Ms. Maxwell.

17        THE COURT:  Right.  So, if the government does that

18   you are not precluded from putting other evidence on.  The

19   question is what evidence would it be and would it be

20   admissible under the relevant rules of evidence.  I am not sure

21   I can resolve that in the abstract.  It sounds like neither

22   side intends to open with respect to this issue and I think we

23   largely agree on the legal principles.  Tell me if you need

24   more guidance for purposes of opening or preparing your case.

25        Ms. Menninger?

LB15MAX2

1          MS. MENNINGER:  No, your Honor.  I think it depends on

2    the trial testimony.

3          THE COURT:  Ms. Moe?

4          MS. MOE:  No, your Honor.  Thank you.

5          THE COURT:  It sounds like the government does need to

6    think about its opening and whether reference to non-testifying

7    alleged victims would open the door, potentially, to the issue.

8          MS. MOE:  Yes, your Honor.  And it remains the

9    government's position that, to the extent the defense is

10   offering anything along these lines, it would be for the truth

11   and, therefore, hearsay.  But given the fact that the parties

12   don't intend to open on this issue, we don't believe our

13   opening statements would open the door to this issue either, we

14   are happy to raise this issue at the appropriate time.

15         THE COURT:  OK.

16         MS. MOE:  Thank you, your Honor.

17         THE COURT:  OK.  Thank you.

18         Next is government 8 which are prior statements of

19   Ms. Maxwell.  I think I come away from the papers agreeing with

20   the defense that this one may be premature but, Ms. Moe, what

21   is the specific concern?  What are prior statements that you

22   are worried about here?

23         MS. MOE:  Yes, your Honor.

24         For example, the government has produced to the

25   defense in discovery a large volume of electronically-stored