# UNITED STATES DISTRICT COURT
## FOR THE
## SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,    )
    )
       Plaintiff,    )
    )
    v.    )   Case No. 20-CR-330 (AJN)
    )
GHISLAINE  MAXWELL    )
    )
       Defendant.    )
    )

## AMICUS CURIAE BRIEF OF THE NATIONAL ASSOCIATION
## OF CRIMINAL DEFENSE LAWYERS

Abbe David Lowell (*SDNY # AL2981*)
Christopher D. Man
Winston & Strawn LLP
1901 L Street NW
Washington, DC 20036152
ADLowell@winston.com
(202) 282-5875

Joel B. Rudin (*SDNY # JR5645*)
Vice Chair, Amicus Curiae Committee,
NACDL
Law Offices of Joel B. Rudin, P.C.
152 West 57th Street, 8th Floor
New York, New York 10019
jbrudin@rudinlaw.com
(212) 752-7600

## INTRODUCTION

The National Association of Criminal Defense Lawyers ("NACDL") represents approximately 40,000 criminal defense lawyers who often defend notorious or unpopular clients. *See* Motion for Leave to File Amicus Brief.  We know from the experiences of our members that child sexual abuse cases are "the most difficult of all" for eliminating juror bias and we thus hold regular training programs concerning voir dire strategies in such cases.  NACDL, *What Are They Thinking?*, https://www.nacdl.org/Event/2022-Midwinter-Meeting (program description).  Even prosecutors agree that "[t]raditional voir dire questions . . . might not sufficiently address potential jurors' emotional reactions to sexual assault cases," and advocate more probative voir dire. Christopher Mallios & Toolsi Meisner, *Educating Juries In Sexual Assault Cases*, Strategies at 2 (2010), http://www.ncdsv.org/images/AEquitas_EducatingJuriesInSexualAssaultCasesPart1_7-2010.pdf.  The reality of an unbiased jury is a structural prerequisite for a fair trial and, particularly in a notorious case such as this that has attracted international attention, the appearance that a fair and impartial jury has decided the defendant's fate is essential for public respect for and acceptance of the outcome.  Imagine that a juror had failed to reveal profound bias against law enforcement, been permitted to sit on the jury and, after an acquittal, trumpeted her role in interviews with the press.  The public would be asking what is wrong with the American trial process that could allow such a thing to happen, and the government would be investigating the juror for perjury.

Accurate answers from prospective jurors about their own experiences and attitudes are essential for follow-up questioning and the ultimate judgment of the parties and the court about which jurors should serve in the case at hand.  In this case, Juror No. 50 gave untrue answers about the fundamental issue of whether he himself had been victimized by *sexual abuse* and could be fair and impartial in a *sexual abuse case*.  The parties and the Court relied on the accuracy of his answers in allowing him to sit on the jury.  Now that he has exposed his real experiences and

1

views, it is clear he was biased and unfit to serve. If he made his false statements intentionally to get on the jury, that would mean he had a personal agenda and his bias was even more apparent, but even false statements in the absence of lying would justify striking him for cause. Juror 50's false answers undermined the voir dire process this and other courts follow, including reliance on written questionnaires, to screen for jurors who, due to their prior experiences, cannot be trusted to be fair in the individual case. What happened here is a structural error: "a defendant is 'entitled to be tried by 12, not 9 or even 10, impartial and unprejudiced jurors.'" *United States v. Martinez-Salazar*, 528 U.S. 304, 316-17 (2000) (quoting *Parker v. Gladden*, 385 U.S. 363, 366 (1966)).

I.     **THIS COURT SHOULD VIGOROUSLY PROTECT DEFENDANTS' RIGHT TO AN IMPARTIAL JURY, PARTICULARLY IN HIGH-PROFILE AND SENSATIONAL TRIALS**

The issue arising in this case reflects a broader problem. The Sixth Amendment explicitly secures criminal defendants the right to trial "by an impartial jury," but delivering upon that promise has grown increasingly difficult in high-profile and sensational trials. "The prime safeguard is voir dire," *Fields v. Brown*, 503 F.3d 755, 772 (9th Cir. 2007), in which "[t]he necessity of truthful answers by prospective jurors if this process is to serve its purpose is obvious," *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554 (1984) (plurality).

> Honesty is the heart of the jury-selection process in an adversarial system; indeed, "voir dire" means "to speak the truth." The whole point of the voir dire process is to elicit information from the venire that may shed light on bias, prejudice, interest in the outcome, competence, and the like so that counsel and the parties may exercise their judgment about whom to seat and whom to challenge.

*Fields*, 503 F.3d at 772. Just as judges must recuse themselves to protect the appearance of impartiality, s*ee Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 886 (2009), judges must ensure that jurors, as judges of the facts, are also impartial in appearance as well as in reality.

Since the beginning of our Republic, sensational high-profile trials have complicated efforts to eliminate bias from the jury through voir dire,[1] but never before have jurors been as incentivized to lie.  In the past, coupling voir dire with prospective jurors swearing an oath to tell the truth was a powerful way to eliminate bias, but the oath no longer carries the force that it once did.  As a former Chief Judge of this Court remarked:

> When our judicial system was established and the requirement of an oath or affirmation on the part of a witness was borrowed from the British common law, the swearing of an oath meant something—namely, that the court could be fairly sure that a witness would tell the truth.  In the time of our Founding Fathers, witnesses believed that they would be subject to severe and perhaps immediate Divine retribution if they lied under oath on the witness stand, based on the Ninth Commandment's proscription, handed down by God to Moses that "Thou shalt not bear false witness against thy neighbor" (Exodus, Ch. 20, Verse 16 (King James Version)).  Unfortunately, the sanctity of the oath taken by witnesses at trial has been significantly eroded and laced with skepticism in recent years.

*United States v. Ianniello*, 740 F. Supp. 171, 179 (S.D.N.Y. 1990) (Brieant, C.J.), *rev'd in part*, *United States v. Salerno*, 974 F.2d 231 (2d Cir.1992); *see, e.g.*, Donald Blackwell, *Has The Time Come To Dispense With The Testimonial Oath?*, 36 No. 4 Trial Advocate Quarterly 28, 29-30 (2017) (noting that prospective jurors now frequently lie during voir dire).

Prospective jurors now have more reason to lie than they did in the past because they know that sitting as jurors in a high-profile trial may bring them fame, prestige, and even profit.  We live in an age of reality television in which the "true crime" genre is dominant.  Jurors often find themselves instant celebrities.  They are interviewed by the press and talk shows,[2] and often seek

---

[1] *See, e.g.*, *United States v. Burr*, 25 F. Cas. 49, 52 (C.C. Va. 1807) (Marshall, C.J.) (concluding that an impartial trial for Burr's alleged treason could be chosen through voir dire).

[2] *See, e.g.*, *Derek Chauvin Jurors Speak Out For The First Time*, CNN (Oct. 28, 2021) (interview with seven jurors who convicted a police officer of killing George Floyd); *Weinstein Juror Reflects On Witness Testimonies*, CBS Morning (Feb. 28, 2020); *Juror On Weinstein Case Explains How Verdict Was Reached*, Inside Edition (Feb. 25, 2020).

to profit by writing books.[3]  This has given rise to the so-called "stealth juror" who deliberately lies or evades full disclosure of bias to get on a jury.  In the O.J. Simpson trial, for example, five jurors were dismissed for misstatements during voir dire, including "[o]ne juror [who] failed to reveal that she had been a victim of spousal abuse, despite alleging six years earlier that her husband had shoved her and forced her to have sex."[4]

The trial of a person accused of a heinous or notorious crime places great pressure on jurors to convict to achieve personal acclaim for convicting a despised defendant or to avoid scorn for an acquittal.  Here, for example, Juror 50's social media posts expressed appreciation for the statements of gratitude he received for bravely telling his personal story of abuse and convicting Ms. Maxwell.  With so many advocacy groups demanding that victim witnesses be "believed," jurors may fear condemnation, or worse, if they acquit.  Following the acquittal of the officers who beat Rodney King, for example, riots took place in Los Angeles and jurors received death threats.[5]

To counter the heightened concern with juror bias in high-profile, sensational trials, NACDL believes that courts must vigorously protect the integrity of this process on the front end, through questionnaires and extensive voir dire, and on the back end by refusing to allow a conviction where a juror, by his false answers to core questions relating to his ability to be fair, has impaired the Court's ability to exclude biased jurors from the panel.

---

[3] *See, e.g.*, *Believing In The Truth* (2012) (book by juror in trial of polo mogul John Goodman); *Hung Jury: The Diary Of A Menendez Juror* (2018); *We, The Jury: Deciding The Scott Peterson Case* (2007) (book written by seven of Scott Peterson's jurors); *Madame Foreman: A Rush To Judgment* (1996) (book by three O.J. Simpson jurors, with interviews with five additional jurors); *The Private Diary Of An O.J. Juror: Behind The Scenes Of The Trial Of The Century* (1995).  The Goodman book revealed that the juror lied to get onto the jury, which led to a new trial.  *See* Joshua Dubin, *Juror Misconduct In The Age Of Social Technology*, 41 Champion 20, 26 (2017).

[4] *When Jurors Lie: Differing Standards For New Trials*, 22 Am. Crim. L. Rev. 733, 734 (1995).

[5] *"Let It Fall": Rodney King Juror In His Own Words*, ABC News (Apr. 28, 2007).

## II.    JUROR 50's PRESS STATEMENTS REVEAL THAT HE WAS BIASED AND SHOULD HAVE BEEN STRUCK FOR CAUSE

Where a juror's inaccurate answer during voir dire is revealed, the starting point for analyzing whether a new trial is required is the Supreme Court's decision in *McDonough*. The Court's plurality opinion states: "[w]e hold that to obtain a new trial in such a situation, a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause." 464 U.S. at 556. However, the plurality's focus on whether the juror was "honest" does not mean that an inaccurate answer, though not given deliberately, cannot suffice to undermine the integrity of the verdict. Five Justices of the Court, in two concurring opinions, agreed that a court may vacate a conviction based upon a juror's erroneous answer if, under all the circumstances, the juror is shown to have been biased. *See id.* at 556 (explaining that a court can order a new trial "regardless of whether a juror's answer is honest or dishonest") (Blackmun, J., concurring with Stevens and O'Connor, JJ.); *id.* at 557-59 (incorrect answer may be sufficient) (Brennan, J., concurring with Marshall, J.).[6]

The Second Circuit has framed the test: "a party alleging unfairness based on undisclosed juror bias must demonstrate first, that the juror's *voir dire* response was false and second, that the correct response would have provided a valid basis for a challenge for cause." *United States v. Stewart*, 433 F.3d 273, 303 (2d Cir. 2006). "False" in this context means inaccurate or materially misleading, not necessarily deliberately untruthful; any other rule would unacceptably dilute the

---

[6] The rule that error need not be deliberate is followed in other contexts in criminal law. *Cf. Strickler v. Greene*, 527 U.S. 263, 288 (1999) ("[U]nder *Brady* an inadvertent nondisclosure has the same impact on the fairness of the proceedings as deliberate concealment. 'If the suppression of evidence results in constitutional error, it is because of the character of the evidence, not the character of the prosecutor.'") (internal citation omitted).

protections of the voir dire process.  *See Porter v. Zook*, 898 F.3d 408, 431 (4th Cir. 2018) (It is clearly established law that "the 'honesty' aspect of the first *McDonough* prong as encompassing not just straight lies, but also failures to disclose.").

Once an untrue answer is discovered, under the second prong of the *McDonough* test, "the district court must 'determine if it would have granted the hypothetical challenge.'" *Stewart*, 433 F.3d at 304 (quoting *United States v. Greer*, 285 F.3d 158, 171 (2d Cir. 2002).  That requires an inquiry into whether accurate and complete answers, together with the answers to the "follow-up questions (and answers)," would have provided "a valid basis to challenge for cause." *Porter*, 898 F.3d at 432; *see also United States v. Colombo*, 869 F.2d 149, 151 (2d Cir. 1989) (noting false answers prevent "follow-up questions" that may expose bias).

In this case, the first prong under *McDonough* is satisfied by Juror 50's press statements showing that his purported voir dire answers – that he was not sexually abused as a child and that he would view abuse victim witnesses like any other witness – were untrue.  Juror 50 apparently told the Court in his Questionnaire that he would assess the credibility of alleged sex crime victims "just the way [he] would any other witness" (Question 47), and he denied that he had been the victim of sexual abuse (Question 48).  Further, he was asked if he or anyone close to him had any experience that would affect his ability to be fair and impartial, and he apparently said no. (Question 50).  Question 51 even gave Juror 50 the opportunity to answer these questions confidentially to avoid embarrassment or protect his privacy, but he reportedly declined.  During live questioning, Juror 50 purportedly assured the Court that he could be fair and impartial.

But these answers were inaccurate, at the very least.  The *Independent* reported that Juror 50 admitted that he was "sexually abused."[7]  Juror 50 explained that his own experience with sexual abuse influenced his view of why an alleged victim may delay reporting abuse and not recall seemingly important details – credibility issues central to this case.  He drew on his own experience, explaining, "I didn't disclose my own abuse until I was in high school," and that he cannot remember all the details ("I know what happened when I was sexually abused. I remember the color of the carpet, the walls.  Some of it can be replayed like a video. . .  But I can't remember all the details, there are some things that run together.").  Juror 50 explained to the press what he would not admit during voir dire – he was willing to dismiss memory lapses and delayed reporting by such a witness, he would resent an attack on her credibility, and he would respond to the defense questioning her credibility by feeling more "compassion for her."

Juror 50 made similar comments to the *Daily Mail*.  He took the "victim's point of view and explained how 'you can't remember all the details' of traumatic memories."  He expressed his belief that his "sexual abuse" gave "him access to a better understanding of the testimony of victims."  Similarly, to *Reuters*, Juror 50 said he told jurors his own story of sexual abuse.

With the first prong of the *McDonough* test so clearly satisfied, the court's inquiry should move on to the second prong: whether an honest answer would have created a valid basis for disqualifying the juror for cause.  In this regard, the Second Circuit recognizes three bases for disqualifying a juror for bias: (1) "actual bias," (2) "implied" or "presumed" bias, and (3)

---

[7] Lucia Osborn-Croweley, *Ghislane Maxwell Juror Breaks Silence To The Independent: "This Verdict is For All The Victims"*, Independent (Jan. 4, 2022); *see also* Laura Collins & Daniel Bates, *"Gislane Was A Predator As Guilty As Epstein,"* Daily Mail (Jan. 5, 2022); Luc Cohen, *Some Ghislaine Maxwell Jurors Initially Doubted Accusers, Juror Said*, Reuters (Jan. 5, 2022).

"inferable bias." *United States v. Torres*, 128 F.3d 38, 43-48 (2d Cir. 1997). Juror 50's press statements show he was biased in all three such ways.

**Actual Bias:** "Actual bias is 'bias in fact' – the existence of a state of mind that leads to an inference that the person will not act with entire impartiality. A juror is found by the judge to be partial either because the juror admits partiality, or the judge finds actual partiality based upon the juror's voir dire answers." *Torres*, 128 F.3d at 43 (internal citation omitted); *see United States v. Haynes,* 398 F.2d 980, 984 (2d Cir.1968) (actual bias is "based upon express proof, e.g., by a voir dire admission by the prospective juror of a state of mind prejudicial to a party's interest").

This Court asked jurors about their history of sexual abuse because of the traumatic implications for victims of abuse and the strong likelihood of bias where the issue to be tried is whether complainants in fact were sexually abused. Psychological studies support this common sense conclusion. A recent meta-analysis of nine studies of childhood sexual abuse victims sitting as mock jurors in sex abuse cases "revealed that, compared with others, mock jurors with abuse experience (sexually abused themselves or knew other victims) had higher levels of child victim empathy and, in turn, perceived the victim to be more credible and assigned more guilt to defendants." *Child Victim Empathy Mediates The Influence Of Jurors' Sexual Abuse Case Judgments: Metanalysis*, 26 Pyschol. Pub. Pol'y & L. 312, 328 (2020); *see also id.* at 325 ("Psychologists serving as jury consultants have concurred with the latter: 'Sexually based offenses are particularly complicated because jurors may possess personal victimization histories ... Jurors with personal abuse histories are unlikely to be impartial.").

Here, Juror 50's press statements reflect actual bias. He stated his own sexual abuse experience predisposed him to credit the stories of sexual abuse complainants despite delays in reporting and memory lapses. His own experience, in his own mind, left him predisposed to reject

the defense view that such delays and lapses may discredit such a witness. Indeed, his affiliation with sexual abuse victims caused him to have a negative emotional reaction when defense counsel did their job holding up the testimony of alleged victims to scrutiny. Thus, his own experiences disqualified him as an unbiased juror. Additionally, it created the potential he would bias the other panelists. But even one biased juror out of 12 fatally undermines the structural integrity of the process – the Constitutional requirement of a unanimous jury verdict by 12 fair and impartial jurors. *See, e.g., Warger v. Shauers*, 574 U.S. 40, 49 (2014) (discussing "structural" errors).

Had Juror 50 made the same sort of statement during voir dire that he made to the media about approaching this case "from a victim's point of view," surely the Court would have struck him for cause the way it struck so many other jurors who admitted being abuse victims. *See United States v. Encarnation*, 2022 WL 500399, at *6 (1st Cir. Feb. 18, 2022) (jury should be "free from preconceived viewpoints"). That is actual bias. Even when jurors who were sexually abused as children claim they can be impartial, courts have found otherwise and reversed convictions. *See Ward v. Commonwealth*, 587 S.W.3d 312, 329 (Ky. 2019); s*ee also Mach v. Stewart*, 137 F.3d 630, 633 (9th Cir. 1997) (reversing conviction because struck juror told the venire that she worked with child sex abuse victims and never knew a child to lie about abuse).

**Implied And Inferred Bias:** "In contrast to the inquiry for actual bias, which focuses on whether the record at voir dire supports a finding that the juror was in fact partial, the issue for implied bias is whether an average person in the position of the juror in controversy would be prejudiced." *Torres*, 128 F.3d at 45. "And in determining whether a prospective juror is impliedly biased, 'his statements upon voir dire [about his ability to be impartial] are totally irrelevant.'" *Id.* (citation omitted). As Chief Justice Marshall explained, there are circumstances in which a prospective juror "is presumed to have a bias" and even though "[h]e may declare that

notwithstanding these prejudices he is determined to listen to the evidence, and be governed by it; but the law will not trust him." *Burr*, 25 F. Cas. at 50. Such a juror "may declare that he feels no prejudice in the case; and yet the law cautiously incapacitates him from serving on the jury because it suspects prejudice, because in general persons in a similar situation would feel prejudice." *Id.*

In addition to these situations in which bias must be implied, there are situations where bias may be inferred. "Bias may be inferred when a juror discloses a fact that bespeaks a risk of partiality sufficiently significant to warrant granting the trial judge discretion to excuse the juror for cause, but not so great as to make mandatory a presumption of bias." *Torres*, 128 F.3d at 47.

Here, Juror 50's media statements establish both implied and inferred bias. The average person who was sexually victimized and had Juror 50's feelings about the crime and those who complain about it could not be fair, his protestations to the contrary notwithstanding. To borrow Chief Justice Marshall's phrase, Juror 50 should have been "cautiously incapacitate[d]" from serving on this jury.

## CONCLUSION

The Court should not allow any juror to thwart its screening process by giving inaccurate answers and thereby create such a grave potential, realized in this case, for depriving the defendant of her right to a fair trial. A new trial is required.

Respectfully submitted,

/s/ Abbe David Lowell

Abbe David Lowell (*SDNY # AL2981*)
Christopher D. Man
Winston & Strawn LLP
1901 L Street NW
Washington, DC 20036152
ADLowell@winston.com
(202) 282-5875

Joel B. Rudin (*SDNY # JR5645*)
Vice Chair, Amicus Curiae Committee, NACDL
Law Offices of Joel B. Rudin, P.C.
152 West 57th Street, 8th Floor
New York, New York 10019
jbrudin@rudinlaw.com
(212) 752-7600

## CERTIFICATE OF SERVICE

I hereby certify that on this February 24, 2022, I electronically submitted the foregoing

motion with the Clerk of Court via email and copied counsel for Defendant and the government.

Dated:  February 24, 2022                                  Respectfully submitted,

_/s/ Lara Markarian_____

Counsel for *National Association* of *Criminal Defense Lawyers*