UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------- x
                                :

UNITED STATES OF AMERICA       :

       v.                         :           S2 20 Cr. 330 (AJN)

GHISLAINE MAXWELL,          :

            Defendant.      :

                                :

-------------------------------------------------- x

## **GHISLAINE MAXWELL'S REPLY IN SUPPORT OF HER MOTION FOR A NEW TRIAL**

Jeffrey S. Pagliuca
Laura A. Menninger
HADDON, MORGAN & FOREMAN P.C.
950 17th Street, Suite 1000
Denver, CO 80202
Phone: 303-831-7364

Christian R. Everdell
COHEN & GRESSER LLP
800 Third Avenue
New York, NY 10022
Phone: 212-957-7600

Bobbi C. Sternheim
Law Offices of Bobbi C. Sternheim
225 Broadway, Suite 715
New York, NY 10007
Phone: 212-243-1100

*Attorneys for Ghislaine Maxwell*

# Table of Contents

Table of Contents ........................................................................................................................ ii

Table of Authorities ................................................................................................................... iii

Introduction ................................................................................................................................. 1

The Facts ...................................................................................................................................... 3

The Law ........................................................................................................................................ 6

I.     Ms. Maxwell is entitled to a new trial. ............................................................................. 6

    A.   The government's policy concerns—the abstract interest in "finality" and the so-called "disfavor" with which new trial motions are viewed—are misplaced. ............................... 6

    B.   Ms. Maxwell does not have to prove that Juror No. 50's *voir dire* answers were deliberately false ................................................................................................................. 9

    C.   Juror No. 50's answers were deliberately false. ............................................................. 14

    D.   If Juror No. 50 had truthfully answered Questions 25 and 48, the correct responses would have provided a valid basis for a challenge for cause. ...................................................... 16

    E.   This Court should reject the government's attempt to manufacture a "Show Hearing" ... 19

        1.   The lawyers should conduct the questioning ............................................................ 19

        2.   The questioning should encompass any topic on which actual bias may be based .... 21

        3.   The Additional Biased Juror Should Be Questioned ................................................. 23

        4.   Ms. Maxwell is entitled to Discovery ....................................................................... 24

        5.   Juror No. 50 is not entitled to discovery in advance of the hearing. .......................... 25

Conclusion ................................................................................................................................. 25

Certificate of Service ................................................................................................................ 27

# Table of Authorities

**Cases**

*Amirault v. Fair*, 968 F.2d 1404 (1st Cir. 1992)...........................................................................9

*Burton v. Johnson*, 948 F.2d 1150 (10th Cir. 1991) .....................................................................18

*Cannon v. Lockhart*, 850 F.2d 437 (8th Cir. 1988)........................................................................9

*cf. Pena-Rodriguez v. Colorado*, 137 S. Ct. 855 (2017)..............................................................23

*Cf. United States v. James*, 609 F.2d 36 (2d Cir. 1979)...............................................................21

*Connick v. Thompson*, 563 U.S. 51 (2011) ....................................................................................9

*Diorio v. Kreisler-Borg Const. Co.*, 407 F.2d 1330 (2d Cir. 1969)..............................................15

*Dyer v. Calderon*, 151 F.3d 970 (9th Cir. 1998)...............................................................9, 18, 20

*Gomez v. United States*, 490 U.S. 858 (1989) ................................................................................7

*Gray v. Mississippi*, 481 U.S. 648 (1987)......................................................................................7

*Haynes v. Williams*, 88 F.3d 898 (10th Cir. 1996) ......................................................................13

*Indep. Cmty. Bankers of Am. v. Bd. of Governors of Fed. Rsrv. Sys.*, 195 F.3d 28 (D.C. Cir. 1999)............................................................................................................................................12

*Jama v. Immigr. & Customs Enf't*, 543 U.S. 335 (2005).............................................................12

*Leonard v. United States*, 378 U.S. 544 (1964) ...........................................................................10

*McDonough Power Equip. v. Greenwood*, 464 U.S. 548 (1984) ..........................................passim

*P. Beiersdorf & Co. v. McGohey*, 187 F.2d 14 (2d Cir. 1951) ....................................................13

*Parker v. Gladden*, 385 U.S. 363 (1966) ...................................................................................1, 6

*Purvis v. Oest,* 614 F.3d 713 (7th Cir. 2010)...............................................................................19

*Schacht v. Wis. Dep't of Corr.,* 175 F.3d 497 (7th Cir. 1999).....................................................19

*Smith v. Phillips*, 455 U.S. 209 (1982) ...........................................................................10, 14, 18

*Tanner v. United States*, 483 U.S. 107 (1987) ...........................................................................7, 8

*Texaco Inc. v. Louisiana Land & Exploration Co.*, 995 F.2d 43 (5th Cir. 1993)........................13

*United States v. Daugerdas*, 867 F. Supp. 2d 445 (S.D.N.Y. 2012)............................................ 16

*United States v. Daugerdas*, No. 1:09-cr-00581-DLC, Sept. 9, 2011 ......................... 2, 16, 18, 19

*United States v. Ferguson*, 246 F.3d 129 (2d Cir. 2001) ........................................................ 6, 7

*United States v. French*, 904 F.3d 111 (1st Cir. 2018) ............................................................ 3

*United States v. Greer*, 285 F.3d 158 (2d Cir. 2002).................................................... 13, 14, 17, 21

*United States v. Haynes*, 398 F.2d 980 (2d Cir. 1968) ............................................................ 11

*United States v. Ianniello*, 866 F.2d 540 (2d Cir. 1989) ......................................................... 7, 8

*United States v. Langford*, 990 F.2d 65 (2d Cir. 1993) ..................................................... passim

*United States v. Martinez-Salazar*, 528 U.S. 304 (2000)...................................................... passim

*United States v. McCourty*, 562 F.3d 458 (2d Cir. 2009) ........................................................ 6, 7

*United States v. Moon*, 718 F.2d 1210 (2d Cir. 1983) .................................................................. 8

*United States v. Nelson*, 277 F.3d 164 (2d Cir. 2002) .................................................................. 6

*United States v. Parse*, 789 F.3d 83 (2d Cir. 2015) .................................................................. 16

*United States v. Shaoul*, 41 F.3d 811 (2d Cir. 1994) ......................................................... 12, 13, 17

*United States v. Stewart*, 433 F.3d 273 (2d Cir. 2006) ....................................................... passim

*United States v. Stone*, 282 F.2d 547 (2d Cir. 1960) .................................................................. 15

*United States v. Torres*, 128 F.3d 38 (2d Cir. 1997).............................................................. 16, 18

*United States v. Wilkerson*, 361 F.3d 717 (2d Cir. 2004) ......................................................... 12

*Warger v. Shauers*, 574 U.S. 40........................................................................................... 23

*Zerka v. Green*, 49 F.3d 1181 (6th Cir. 1995) ...................................................................... 9, 10

**Other Authorities**

Jeremy Peterson, *Unpacking Show Trials: Situating the Trial of Saddam Hussein*, 48 Harv. Int'l
    L.J. 257, 260 (2007)............................................................................................................ 19

**Rules**

Fed. R. Crim. P. 33 ............................................................................................................... 1

Fed. R. Evid. 606(b)........................................................................................................... 23, 24

**Constitutional Provisions**

U.S. Const. amends. V ........................................................................................ 1, 6, 23

U.S. Const. amends. VI....................................................................................... 1, 6, 23

Ghislaine Maxwell submits this reply in support of her motion under Federal Rule of Criminal Procedure 33 for a new trial.

## Introduction

Ms. Maxwell "was entitled to be tried by 12, not 9 or even 10, impartial and unprejudiced jurors." *Parker v. Gladden*, 385 U.S. 363, 366 (1966). That did not happen. Juror No. 50's presence on the jury deprived Ms. Maxwell of the fair and impartial jury the due process and the Sixth Amendment guarantee. U.S. Const. amends. V, VI.[1] "[T]he seating of any juror who should have been dismissed for cause . . . require[s] reversal." *United States v. Martinez-Salazar*, 528 U.S. 304, 316 (2000).

The government's response to this suffers from two fundamental errors. The first is to insist that a new trial is required only if Juror No. 50 was "dishonest" by "deliberately" providing false answers to Questions 25 and 48. That is not the law. Neither the United States Supreme Court nor the Second Circuit requires a showing of a "deliberate falsehood." *United States v. Stewart*, 433 F.3d 273, 303 (2d Cir. 2006) (applying *McDonough Power Equip. v. Greenwood*, 464 U.S. 548 (1984) and holding that the requirement of a fair and impartial jury is "reflected in the *McDonough* standard for analyzing allegations that a juror's false *voir dire* concealed bias that affected the fairness of the trial: a party alleging unfairness based on undisclosed juror bias must demonstrate first, that the juror's *voir dire* response was false and second, that the correct

---

[1] It appears that, at best, Ms. Maxwell had 10 fair and impartial jurors, not the 12 guaranteed her by the United States Constitution. We know at least one other juror in addition to Juror No. 50 falsely denied having been a victim of sexual abuse or assault.

Although this Court need not hold a hearing since the record already establishes that Ms. Maxwell was deprived of her Sixth Amendment right to trial by an impartial jury, any such hearing must also serve to identify this other juror. Such a hearing likely would also show that Juror No. 50 was actually biased, in addition to being impliedly and inferably biased.

response would have provided a valid basis for a challenge for cause"). That's because, as the

Supreme Court held in *United States v. Martinez-Salazar*, "the seating of any juror who should

have been dismissed for cause . . . require[s] reversal." 528 U.S. at 316. Thus, irrespective of

whether Juror No. 50 deliberately provided false answers to Questions No. 25 and 48 (though the

record shows he did), his presence on the jury requires reversal if he was impliedly, inferably, or

actually biased.

Second, the government misunderstands this Court's role during any evidentiary hearing.

Ours is an adversarial system, not an inquisitorial system. Ms. Maxwell has a right to present her

arguments to the Court, to call material witnesses in support of those arguments, and to confront

and cross-examine those witnesses. The government's request for a narrow and limited hearing

in which only Juror No. 50 would testify and only the Court would ask questions flies in the face

of this adversarial process. A hearing conducted on the government's terms would violate Ms.

Maxwell's constitutional right to assistance of counsel, hamstring the search for the truth, and

contravene the tradition and precedent of this judicial district. *See, e.g.*, EXHIBIT 3, *United States

v. Daugerdas*, Case No. 09 Cr. 581 (Hon. William H. Pauly III) (Trans. of Motion for New

Trial).  As the government itself argued in *Daugerdas,* a juror who "conceal[ed] personal

background material so analogous to the case on trial"  had "bias [] implied as a matter of law"

and the affected defendant therefore would be entitled to a new trial.  Doc. 487, p 21, *United

States v. Daugerdas*, No. 1:09-cr-00581-DLC, Sept. 9, 2011.  This is just such a case.

The government's response to Ms. Maxwell's motion for a new trial elides the stakes

involved and the significance of the constitutional right at issue. Ms. Maxwell was on trial for

her life. That trial required 12 fair and impartial jurors. While paying lip service to the

requirement of a fair trial, the government incants the words "finality" and "disfavor" as a basis

for turning a blind eye to Juror No. 50's misconduct and the constitutional right to a fair and impartial jury, and it then proposes a superficial inquiry that would make it all but impossible for Ms. Maxwell to meet the erroneously high burden the government asks this Court to apply.

Yet this Court has "an unflagging duty . . . to investigate [Ms. Maxwell's] claim."[2] Properly understood and properly considered, Ms. Maxwell's claim has evident merit. For all the reasons given in the motion and elaborated below, this Court should reject the government's attempt to cripple Ms. Maxwell's  vindication of her constitutional right to a trial by a fair and impartial jury.

## The Facts

The government's response relies heavily on the fact that several potential jurors who admitted to being victims of sexual assault, sexual abuse, or harassment were not excluded for case. That is nothing but misdirection.

███████████████████████████████████

███████████████████████████████████

███████████████████████████████

Juror No. 50, by contrast, has now admitted to being the victim of child sexual abuse— the very same conduct at issue in this case. And he has also admitted to responding to that abuse in much the same way the alleged victims in this case responded—delaying disclosure, relying on memories that can be replayed like a video, etc. This Court should not be misled by the government's misleading comparisons.

---

[2] *United States v. French*, 904 F.3d 111, 117 (1st Cir. 2018) (quotation omitted).

* * *

This is a case where alleged child victims of sexual abuse delayed disclosure of their claimed abuse for many years. The central issue in the trial was the credibility of the accusers about those claims. Accordingly, it was important for Ms. Maxwell to screen prospective jurors and eliminate any juror with a background that would, consciously or unconsciously, make the juror more sympathetic to the accusers, dismiss challenges to the accusations as overly aggressive defense tactics, and credit the alleged victims' stories because of abuse suffered by the juror as a child.

The Court denied Ms. Maxwell's request to have her lawyers question prospective jurors on this topic, denied Ms. Maxwell's request to include additional questions on the written questionnaire on this topic, but assured Ms. Maxwell that the Court would "smoke out" potential jurors who did not tell the truth:

> I will individually, one-on-one, question[] the jurors, and with the parties present, I feel confident that I can discern any clear dishonesty. This is not just going to be a summary *voir dire*; it will be probing. . . . If a juror's going to lie and be dishonest, we will smoke that out.

Tr. 10/21/21 Hrg. at 26:12.

Although given multiple opportunities to identify himself as a victim of child sexual abuse, Juror No. 50 failed to truthfully respond to very clear and pointed questions such as "were you the victim of a crime" and specifically, whether

> Have you or a friend or family member [have] ever been the victim of sexual harassment, sexual abuse, or sexual assault? (This includes actual or attempted sexual assault or other unwanted sexual advance, including by a stranger, acquaintance, supervisor, teacher, or family member.)

Had Juror No. 50 truthfully disclosed his child-victim status he would have been immediately challenged for cause by Ms. Maxwell regardless of his answers to any other questions. In the unlikely event this challenge was denied, Juror No. 50 would have been questioned, *in camera,*

by the Court. Juror No. 50 would have been asked to explain what happened to him as a child and the impact it had on him. He would have been asked if his own traumatic, scarring, and life-changing abuse would make him more sympathetic towards the accusers in this case and less sympathetic towards Ms. Maxwell. He would have been probed about any claimed ability to be fair and impartial.

Of course, everyone wants to believe that they can be fair and impartial and can set aside any bias they may have based on their prior experiences, but we know that this is difficult, if not impossible for any human to do. Regardless of Juror No. 50's answers to questions about his purported ability to disregard his own childhood victimization, Ms. Maxwell would have challenged Juror No. 50 for cause and, consistent with other prospective juror challenges, the request would have been granted by the Court.

Assuming Juror No. 50 recounted any of his beliefs during jury selection, subsequently disclosed by him in the media—such as the abusive event is like a video and victims remember the event accurately—there is no doubt a challenge would have been made, unopposed, and granted.

Now, after having been alerted by the government that he may be in trouble, Juror No. 50 has predictably, either with the assistance of counsel or simple common sense, attempted to disavow his earlier comments and actions, going to great lengths to stress his now claimed ignorance of the questions and his ability to be fair.

If we, the lawyers and jurist in this matter, are being truthful, the essential facts surrounding this issue are not really subject to dispute: (1) whether a prospective juror suffered childhood sexual abuse was a material fact; (2) Juror No. 50 was (or claims to be) a victim of

childhood sexual abuse; and (3) had he answered the questions accurately he would have been challenged for cause and disqualified.

**The Law**

**I.  Ms. Maxwell is entitled to a new trial.**

>  **A.  The government's policy concerns—the abstract interest in "finality" and the so-called "disfavor" with which new trial motions are viewed— are misplaced.**

The government's response is conspicuous in that it does not begin with the law governing new trial motions based on juror bias. Instead, the government sets the table with appeals to "finality," statements that new trial motions are "disfavored," and implications that courts should turn a blind eye to juror misconduct because to do otherwise would expose jurors to harassment and intimidation. Resp. at 10-11. None of these concerns has any purchase here.

In the government's view, the jury in this case "finally" determined Ms. Maxwell's guilt. To be entitled to a new trial, says the government, "a district court must find that there is 'a real concern that an innocent person may have been convicted.'" Resp. at 10 (quoting *United States v. McCourty*, 562 F.3d 458, 475 (2d Cir. 2009) (quoting *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001))). That is not correct.

*Everyone* accused of a crime is entitled a trial by a fair trial and impartial jury. U.S. Const. amends. V, VI. That constitutional promise demands twelve fair and impartial jurors. *Parker*, 385 U.S. at 366. "[T]he seating of any juror who should have been dismissed for cause" is structural error and it "require[s] reversal." *Martinez-Salazar*, 528 U.S. at 316; *United States v. Nelson*, 277 F.3d 164, 204 (2d Cir. 2002) ("[T]he empanelment of a jury on which [a] biased juror sat [means that] the defendants in this case were convicted, in contravention of the Sixth Amendment and due process, by a jury that cannot be deemed to have been fully impartial.").

Ms. Maxwell is not required to show prejudice, nor must the Court have "a real concern that an innocent person may have been convicted" before a new trial is required. The government's contrary contention is specious.[3]

The government next invokes cases in which appellate courts have purported to view new trial motions with "disfavor." Resp. at 11. These cases, warn the government, counsel against "inquiries into juror conduct." *Id.* Quoting *Tanner v. United States*, the government says: "Allegations of juror misconduct, incompetency, or inattentiveness, raised for the first time . . . after the verdict, seriously disrupt the finality of the process. Moreover, full and frank discussion in the jury room, jurors' willingness to return an unpopular verdict, and the community's trust in a system that relies on the decisions of laypeople would all be undermined by a barrage of post-verdict scrutiny of juror conduct." *Id.* (quoting *Tanner v. United States*, 483 U.S. 107, 120-21 (1987)). The government also quotes the Second Circuit's decision in *United States v. Ianniello*, in which the Court said that "post-verdict inquiries may lead to evil consequences: subjecting juries to harassment, inhibiting juryroom deliberation, burdening courts with meritless applications, increasing temptation for jury tampering and creating uncertainty in jury verdicts." 866 F.2d 540, 534 (2d Cir. 1989).

---

[3] The government draws the "real concern" language from cases addressing new trial motions based on the conduct of the trial itself—e.g., the admissibility or truthfulness of testimony of witnesses, *McCourty*, 562 F.3d at 475, or the quality and sufficiency of the evidence, *Ferguson*, 246 F.3d at 134.

The cases cited by the government do not address the fundamental right to trial by an impartial jury, and they do not undermine the blackletter law that "[a]mong those basic fair trial rights that 'can never be treated as harmless' is a defendant's 'right to an impartial adjudicator, be it judge or jury.'" *Gomez v. United States*, 490 U.S. 858, 876 (1989) (quoting *Gray v. Mississippi*, 481 U.S. 648, 668 (1987)).

The government's invocation of *Tanner* and *Ianniello* is strikingly disingenuous. Both cases involved alleged conduct during trial and, crucially, during deliberations. The interest in "shielding jury deliberations from public scrutiny" is what motivated the Supreme Court's decision in *Tanner*, 483 U.S. at 119, and the Second Circuit's cautionary note in *Ianniello*, 866 F.2d at 543.

In this case, by contrast, ███████████████████████████████████████ ██████████████████████████, conduct that occurred *outside* the jury room. The reluctance of courts to second-guess jury deliberations by inquiring into how the jury reached its decision simply has no relevance here, and neither do *Tanner* or *Ianniello*.

In fact, the government's reliance on *Ianniello* is doubly wrong, because the Second Circuit there set aside any reluctance it might have had to question the conduct of deliberations by ordering the defendant's requested evidentiary hearing. As the Court explained, "a post-trial jury hearing must be held when a party comes forward with 'clear, strong, substantial and incontrovertible evidence . . . that a specific, non-speculative impropriety has occurred.'" *Ianniello*, 866 F.2d at 543 (quoting *United States v. Moon*, 718 F.2d 1210, 1234 (2d Cir. 1983)).[4] Here, of course, the government concedes Ms. Maxwell's entitlement to an evidentiary hearing.

The government cannot with a straight face claim that Ms. Maxwell's motion risks exposing Juror No. 50 to harassment and intimidation. Let's be clear. The *only* reason Ms. Maxwell knows of Juror No. 50's false answers during *voir dire* is that Juror No. 50 has sought out the limelight. He has sat for several interviews with journalists, he has allowed himself to be videotaped, he has Tweeted and publicized himself on social media, and he has even participated

---

[4] To be clear, this standard does not apply to Ms. Maxwell's claim; it applies when a new trial motion alleges misconduct during deliberations. *Ianniello*, 866 F.3d at 543; *Moon*, 718 F.3d at 1234.

in a "documentary." Inquiring into the false answers Juror No. 50 has publicly admitted making risks nothing that Juror No. 50 hasn't already brought on himself.

Ms. Maxwell's motion has nothing to do with her innocence or guilt. It involves no strategy or artifice by the defense. And it risks no unauthorized inquiry into the jury room. The motion is about one thing, and one thing only: Every person's constitutional right to a fair and impartial jury. The government hopes to deprive Ms. Maxwell of that right in the name of "finality."

This Court should disregard the government's policy arguments, which address arguments and claims Ms. Maxwell is not making. In turn, the government's policy arguments betray the weakness of its legal position. And they cast significant doubt on the United States solemn duty to seek justice and not merely to convict. *Connick v. Thompson*, 563 U.S. 51, 65-66 (2011) ("Prosecutors have a special "duty to seek justice, not merely to convict.").

### B.   Ms. Maxwell does not have to prove that Juror No. 50's *voir dire* answers were deliberately false.

The government insists that Ms. Maxwell is entitled to a new trial only if she can prove that Juror No. 50 deliberately provided false answers during *voir dire*. Not so.

Contrary to the government's argument, the decision *McDonough Power Equip. v. Greenwood*, "does not entirely foreclose a party from seeking a new trial on the basis of a prospective juror's honest, though mistaken, response." *Zerka v. Green*, 49 F.3d 1181, 1186 n.7 (6th Cir. 1995); *accord Dyer v. Calderon*, 151 F.3d 970, 981 (9th Cir. 1998) (en banc) ("In extraordinary cases, courts may presume bias based on the circumstances."); *Amirault v. Fair*, 968 F.2d 1404, 1405-06 (1st Cir. 1992) ("[T]he majority vote in *McDonough*. . . require[s] a further determination on the question of juror bias even where a juror is found to have been honest. . . ."), *cert. denied*, 506 U.S. 1000; *Cannon v. Lockhart*, 850 F.2d 437, 440 (8th Cir.

1988) (interpreting *McDonough* and holding that "a juror's dishonesty is not a predicate to obtaining a new trial. The focus is on bias"). To the contrary, as five justices recognized in *McDonough* and as the Second Circuit held in *United States v. Langford*, a new trial is required when a biased juror is seated even if the juror's false *voir dire* answers were the result of inadvertence rather than the product of a deliberate effort. *McDonough*, 464 U.S. at 556-57 (Blackmun, J., concurring (citing *Smith v. Phillips*, 455 U.S. 209, 215-16 (1982); *id.* at 220-24 (O'Connor, J., concurring))); *id.* at 557-58 (Brennan, J., concurring in judgment); *United States v. Langford*, 990 F.2d 65, 68 (2d Cir. 1993) ("We read [the *McDonough*] multi-part test as governing not only inadvertent nondisclosures but also nondisclosures or misstatements that were deliberate. . . .").[5] *See also Leonard v. United States*, 378 U.S. 544 (1964) (per curiam) (reversing conviction based on implied bias and holding that prospective jurors who had heard the trial court announce the defendant's guilty verdict in the first trial should be automatically disqualified from sitting on a second trial on similar charges). In Justice Blackmun's words, which were joined by Justices Stevens and O'Connor and expressed a view shared by Justice Brennan and Justice Marshall, "regardless of whether a juror's answer is honest or dishonest, it remains within a trial court's option, in determining whether a jury was biased, to order a post-

---

[5] The government implies something deceitful by Ms. Maxwell's reliance on Justice Blackmun's and Justice Brennan's concurrences, noting that six justices joined Justice Rehnquist's *McDonough* majority opinion. Resp. at 14 & n.8.

Contrary to the government's implication, however, Ms. Maxwell's motion accurately described *McDonough* and its holding, noting that Justice Blackmun (joined by Justices Stevens and O'Connor) "concurred" in the majority opinion while Justice Brennan (joined by Justice Marshall) "concurred in judgment." Mot. at 26. Most importantly, any way you look at it, five votes is five votes. *Zerka*, 49 F.3d at 1186, n.7 (counting the votes in *McDonough* and explaining the holding). And in *McDonough*, as the Court recognized in *Langford* when it quoted and adopted Justice Brennan's reasoning, the *McDonough* decision "govern[s] not only inadvertent nondisclosures but also nondisclosures or misstatements that were deliberate." 990 F.2d at 68 (citing *McDonough*, 464 U.S. at 557-58 (Brennan, J., concurring in judgment)).

trial hearing at which the movant has the opportunity to demonstrate actual bias or, in exceptional circumstances, that the facts are such that bias is to be inferred." *McDonough*, 464 U.S. at 556-57 (Blackmun, J., concurring) (citing *Smith*, 455 U.S. at 215-16; *id.* at 220-24 (O'Connor, J., concurring)).

This is the only fair reading of *McDonough* and *Langford*, and it is only conclusion the Sixth Amendment permits. Imagine the counterfactual scenario in which Juror No. 50 truthfully answered Questions 25 and 48. If Ms. Maxwell had challenged Juror No. 50 for cause and this Court had denied that challenge, Ms. Maxwell would be able to raise the issue in a new trial motion and, if that were denied, on appeal. In the new trial motion or on appeal, Ms. Maxwell's only burden would be to prove that Juror No. 50 was impliedly, inferably, or actually biased. *E.g.*, *United States v. Haynes*, 398 F.2d 980, 983 (2d Cir. 1968) (new trial required when a deliberating juror is actually or impliedly biased). She would not have to prove any inadvertent falsehoods or deceit by Juror No. 50.

In the government's view, however, Ms. Maxwell must carry a heavier burden than she otherwise would because Juror No. 50 did not tell the truth. That neither makes sense nor is fair. Ms. Maxwell should not be punished because Juror No. 50 did not tell the truth, particularly when Ms. Maxwell could not have challenged Juror No. 50 for cause at the time precisely because he did not tell the truth and she lacked any ability to question the juror.

Fortunately, the government's view is wrong, as five justices in *McDonough* made clear and the Second Circuit held in *Langford*. Under Second Circuit law, as the Court held in *United States v. Stewart*, "[A] party alleging unfairness based on undisclosed juror bias must demonstrate first, that the juror's *voir dire* response was false and second, that the correct response would have provided a valid basis for a challenge for cause." *United States v. Stewart*,

433 F.3d 273, 303 (2d Cir. 2006) (citing *McDonough*, 464 U.S. at 556). Ms. Maxwell need not

prove a deliberate falsehood. *Id.*

The government all but ignores *Stewart*, relying on *United States v. Shaoul*, 41 F.3d 811

(2d Cir. 1994), in an effort to minimize *Langford*. The government's invocation of *Shaoul* fails.

First, *Shaoul* did not reject the argument Ms. Maxwell makes here. Nowhere in *Shaoul*

does the Court cite or discuss Justice Blackmun's concurring opinion or Justice Brennan's

opinion concurring in judgment, which together were supported by five justices. *See Shaoul*, 41

F.3d at 815-17. This Court should not read *Shaoul* to have rejected an argument it did not even

consider.

Second, the language from *Shaoul* on which the government relies is *dictum*. That's

because the *Shaoul* Court held that the defendant could not "satisfy the second part of the

*McDonough* test—that the juror could have been challenged for cause." *Id.* at 816. The Court's

discussion of deliberate-versus-inadvertent false answers thus was not necessary to its

conclusion, and this Court is not bound by it. *Jama v. Immigr. & Customs Enf't*, 543 U.S. 335,

352 n.12 (2005) ("Dictum settles nothing, even in the court that utters it.").

Third, if the government's reading of *Shaoul* were correct, then *Shaoul* is inconsistent

with *Langford*, not to mention *McDonough*. Because *Langford* was decided first, and because

*McDonough* is a United States Supreme Court opinion, this Court is bound by both and not by

*Shaoul*. *Compare United States v. Wilkerson*, 361 F.3d 717, 732 (2d Cir. 2004) (one panel of the

Court of Appeals is "bound by the decisions of prior panels until such time as they are overruled

either by an en banc panel of our Court or by the Supreme Court"), *with Indep. Cmty. Bankers of*

*Am. v. Bd. of Governors of Fed. Rsrv. Sys.*, 195 F.3d 28, 34 (D.C. Cir. 1999) ("In the event of

conflicting panel opinions . . . the earlier one controls, as one panel of this court may not overrule

another." (quoting *Texaco Inc. v. Louisiana Land & Exploration Co.*, 995 F.2d 43, 44 (5th Cir. 1993))); *see also Haynes v. Williams*, 88 F.3d 898, 900 n. 4 (10th Cir. 1996) ("[W]hen faced with an intra-circuit conflict, a panel should follow earlier, settled precedent over a subsequent deviation therefrom."); *P. Beiersdorf & Co. v. McGohey*, 187 F.2d 14, 15 (2d Cir. 1951) (when there is an intra-circuit conflict, courts must follow the earlier decision).

Of course, this Court need not conclude that *Shaoul* is inconsistent with *McDonough* and *Langford* in order to reject the government's argument. As described above, *Shaoul* does not address the reading of *McDonough* that Ms. Maxwell advocates for here, since it did not discuss or even cite the *McDonough* concurring opinions.

Moreover, Second Circuit cases following *Lanford* and *Shaoul* have reaffirmed that a deliberate falsehood is not a prerequisite to a new trial. *Cf. United States v. Mansfield*, 2019 WL 3858511, at *4 & n.4 (D. Colo. No. 18-cr-00466-PAB, Aug. 16, 2019) (in face of intra-circuit conflict, following first-decided case and noting that subsequent cases had followed first decision was as well). *In Stewart*, for example, decided in 2006, the Court cited and quoted *McDonough* and yet did not require a deliberately false answer, stating instead that "a party alleging unfairness based on undisclosed juror bias must demonstrate first, that the juror's *voir dire* response was false and second, that the correct response would have provided a valid basis for a challenge for cause." *Stewart*, 433 F.3d at 303 (citing *McDonough*, 464 U.S. at 556).

Then there's *United States v. Greer*, which reads *McDonough* and *Langford* just as Ms. Maxwell reads them, even while citing *Shaoul*. *United States v. Greer*, 285 F.3d 158, 171-72 (2d Cir. 2002). As the Court explained in *Greer*, "*McDonough* establishes a multi-part test in which a juror's dishonesty *is among the 'factors to be considered' in the ultimate determination of bias*. . . ." *Id.* at 173 (citing *Langford*, 990 F.2d at 68-70 (emphasis added)). Thus, just as Ms. Maxwell

13

explained in the motion, the "deliberateness" of a prospective juror's "particular lies [may] evidence[] partiality"[6]—think of a juror who deliberately lies because of a desire to sit on a jury and punish one of the parties to the case—but the lack of a deliberately false answer does not prove the absence of partiality.

In the end, under *McDonough*, *Langford*, *Stewart* and *Greer*, a deliberately false answer is not required.[7]

### C.   Juror No. 50's answers were deliberately false.

Even so, the record more than supports the conclusion that Juror No. 50's answers to Questions 25 and 48 ██████████████████████████ ███ were deliberately false. Juror No. 50 knew he was the victim of a crime. He was a prospective juror in a case where the accused was on trial for alleged sexual misconduct with minors. As the childhood victim of a sex crime, answering questions in a case about a childhood sex crime, there is no plausible explanation for why Juror No. 50 did not answer Question 25, "Yes." The only believable answer is that he knew that answering that question "Yes" would lead to further questions like, what was the crime, which would then lead to questions about what happened to him, which would end with his disqualification.

---

[6] *Greer*, 285 F.3d at 173.

[7] A deliberately false answer by a juror in *voir dire* is thus neither necessary nor sufficient to entitle a defendant to a new trial. It's not necessary because, if a biased juror actually serves on a jury, structural error occurs, and a new trial is required even if the juror did not provide a deliberately false answer during *voir dire*. *Martinez-Salazar*, 528 U.S. at 316; *McDonough*, 464 U.S. at 556-57 (Blackmun, J., concurring); *id.* at 557-58 (Brennan, J., concurring in judgment); *Smith*, 455 U.S. at 215-16; *id.* at 220-24 (O'Connor, J., concurring); *Stewart*, 433 F.3d at 303; *Greer*, 285 F.3d t 171-72; *Langford*, 990 F.2d at 68. And it's not sufficient because a juror may not be biased even if he dishonestly answers a question during *voir dire*. *Greer*, 285 F.3d at 173 ("[A]n analysis of bias is required even if the juror's erroneous response was deliberate.").

Question 48 was not confusing or complicated and, again, there is no credible explanation for why the victim of a sexual assault, in a case about sexual assault, would not have taken a long look at that question. The claim that he just "missed it" or "forgot" or "didn't understand" is after-the-fact, self-serving, nonsense, the type of nonsense repeatedly rejected by courts, not to mention the government, when addressing material omissions or false oaths by omission.

For example, in bankruptcy proceedings the failure to truthfully answer questions about assets or ownership interests regularly leads  the government to move to dismiss the debtor's petition. Not surprisingly, debtors often claim confusion, mistake, or inadvertence as the reason for the false answer. However, success of a bankruptcy program (like jury trials) "hangs heavily on the veracity of statements made by the bankrupt"—or here, the prospective jurors. *See Diorio v. Kreisler-Borg Const. Co.*, 407 F.2d 1330, 1330–31 (2d Cir. 1969). *See also United States v. Stone*, 282 F.2d 547, 553 (2d Cir. 1960) (the purpose of a debtor filling out a detailed financial disclosure (SOFA) "is to give dependable information without need of going further"). When a false-oath-giver claims carelessness as the reason for the untruthful statement, courts are skeptical because in a system that relies on a person's word, the answers "must be regarded as serious business; reckless indifference to the truth, is the equivalent of fraud." *Diorio*, 407 F.2d at 1330–31.

In a case like this one, which charges the defendant with perjury, it's ironic the lengths to which the government has gone to excuse Juror No. 50's false answers as nothing but an innocent mistake, an indulgence the government is unwilling to afford Ms. Maxwell.

**D.  If Juror No. 50 had truthfully answered Questions 25 and 48, the correct responses would have provided a valid basis for a challenge for cause.**

It is both unnecessary and premature for this Court to consider whether Juror No. 50 was actually biased.

It's unnecessary because any bias is sufficient to require a new trial, and here the record shows that Juror No. 50 was both impliedly and inferably biased. Because Juror No. 50 was impliedly and inferably biased, a new trial is required. *Martinez-Salazar*, 528 U.S. at 316. And it's premature because the actual bias inquiry depends in part on the statements a prospective juror makes during *voir dire*. *United States v. Torres*, 128 F.3d 38, 43 (2d Cir. 1997) ("A juror is found by the judge to be partial either because the juror admits partiality, or the judge finds actual partiality based upon the juror's *voir dire* answers."). Here, Juror No. 50 hasn't had to answers the questions that would have been posed to him if he had answered Questions 25 and 48 truthfully. Only a hearing—if this Court orders one—will permit the Court and parties to evaluate actual partiality.

The government here attempts to raise the bar for relief, just as it did in *United States v. Daugerdas*: "The Government urges this Court to adopt a narrow reading of *McDonough* unsupported by law. But contrary to the Government's contention, the test is not whether the true facts would compel the Court to remove a juror for cause, but rather whether a truthful response 'would have provided a valid basis for a challenge for cause.'" *United States v. Daugerdas*, 867 F. Supp. 2d 445, 468 (S.D.N.Y. 2012) (ordering new trial for two of three defendants based on juror providing false answers during voir dire and concluding that the third defendant waived the new trial argument), *vacated and remanded sub nom. United States v. Parse*, 789 F.3d 83 (2d Cir. 2015) (reversing district court's waiver conclusion) (quoting *McDonough*, 464 U.S. at 556).

"This means that 'the district court must determine if it would have granted the hypothetical challenge' if it had known the true facts." *Id.* (quoting *Stewart*, 433 F.3d at 304) (citing *Greer*, 285 F.3d at 171; *United States v. Shaoul*, 41 F.3d 811, 816 (2d Cir. 1994) (noting that under the second prong of McDonough. a defendant must have a basis for arguing that the district court is required to sustain his challenge for cause)). As in *Daugerdas*, and under any reading of *McDonough*, Juror No. 50's misconduct demonstrates that he was incapable of being an impartial juror and the Court would have struck him for cause. *See id.*

The government's contrary arguments do not withstand scrutiny. Foremost, the government mischaracterizes Ms. Maxwell's argument and then attempts to shoot down the strawman. Ms. Maxwell does not argue that *every* person who has been a victim of sexual assault or sexual abuse was subject to a "mandatory" challenge for cause based on implied bias. Ms. Maxwell's argument is simply that Juror No. 50 was impliedly biased—an argument more than supported by the record, Juror No. 50's pattern and practice of telling falsehoods to the Court, and the statements of Juror No. 50 himself.

Likewise, the government misunderstands Ms. Maxwell's argument about Juror No. 50's false claims ███████████████████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████ is part of his pattern and practice of giving false answers under oath during *voir dire*, in a (successful) attempt to serve as a juror. "The deliberateness of the particular lies evidence[] partiality." *Greer*, 285 F.3d at 173.

17

The government fails to distinguish *United States v. Torres*, 128 F.3d 38 (2d Cir. 1997). The government admits the case is analogous because the juror in *Torres* engaged in conduct similar to that charged against the defendant, while here Juror No. 50 was the victim of conduct similar to that charged against Ms. Maxwell. The best the government can muster is to say that this Court has discretion—"ample discretion," says the government—to chart a different path here. But the government doesn't offer *any* reason *why* this Court's discretion should not be guided by the Second Circuit's reasoning in *Torres*. And that's because there's no good reason to treat the two cases differently—indeed, for all the reasons given, the case for inferred bias here is stronger than in *Torres*.

Finally, the government's argument here is directly contrary to the argument it made in opposition to the new trial motion in *Daugerdas*. In that case, the government argued that the defendants were not entitled to a new trial in part because the juror did not "conceal personal background material so analogous to the case on trial that bias was implied as a matter of law." Doc. 487, p 21, *United States v. Daugerdas*, No. 1:09-cr-00581-DLC, Sept. 9, 2011. In the government's words:

> [T]hose courts have granted a new trial or conducted a post-verdict evidentiary hearing only when . . . (ii) following the reasoning of Justice O'Connor's concurrence in *Smith v. Phillips*, 455 U.S. at 221, where the juror in question concealed personal background information so analogous to the case on trial that bias was implied as a matter of law. *See Dyer v. Calderon*, 151 F.3d 970, 975 (9th Cir. 1998) (juror in a murder trial concealed the fact that her brother had been murdered in manner similar to that alleged against defendant); *Burton v. Johnson*, 948 F.2d 1150, 1154 (10th Cir. 1991) (implied bias found in case involving juror who suffered from domestic abuse similar to that of defendant, who was accused of killing her husband).

*Id.* The government was right then about when a new trial is required—when, as here, the juror in question concealed personal background information so analogous to the case on trial that bias is implied as a matter of law—and it is wrong now.

### E.  This Court should reject the government's attempt to manufacture a "Show Hearing"[8].

To read the government's brief, one would think this Court could hold a meaningful

hearing at which it (and not the parties) would pose two softball questions of Juror No. 50: ▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮  The government implies that an affirmative to either question would end the hearing.

Not so.

### 1.  The lawyers should conduct the questioning.

First, the parties should be permitted to question Juror No. 50, as occurred recently in this

judicial district.[9]  *United States v. Stewart*, 433 F.3d 273, 306 (2d Cir. 2006) ("We therefore

caution district courts that, if any significant doubt as to a juror's impartiality remains in the

wake of objective evidence of false *voir dire* responses, an evidentiary hearing generally should

be held. Such a hearing is often the most reliable way for discerning the true motivations behind

a juror's false replies.") (citations omitted).

---

[8] "[A] show trial can be defined by the presence of two elements. The first element is increased probability of the defendant's conviction resulting from the planning and control of the trial. The second element is a focus on the audience outside of the courtroom rather than on the accused—the extent to which the trial is designed or managed for the benefit of external observers rather than for securing justice for the defendant." Jeremy Peterson, *Unpacking Show Trials: Situating the Trial of Saddam Hussein*, 48 Harv. Int'l L.J. 257, 260 (2007); *see also Purvis v. Oest*, 614 F.3d 713, 718 (7th Cir. 2010) ("fundamentally biased process is not *due* process"); *Schacht v. Wis. Dep't of Corr.,* 175 F.3d 497, 503 (7th Cir. 1999) ("sham procedures do not satisfy due process").

[9]  *E.g.*, *United States v. Daugerdas*, Exhibit 3.

At any hearing it is the Court's job to evaluate the evidence presented, not present the evidence. The evidence elicited should be the product of all available investigation and research. In *Dyer v. Calderon*, 151 F.3d 970, 976 (9th Cir. 1998), cited favorably by the government, Judge Kozinski explained the perils of a court conducting a juror bias inquiry with incomplete information or failing to ask critical questions. "[A] judge investigating juror bias must find facts, not make assumptions . . . [I]t was the trial court's obligation to develop the relevant facts on the record, not merely presume them. The judge's lack of verve in pursuing the matter casts doubt on his findings." *Id.* at 976-77.  The Ninth Circuit *en banc* opinion also was critical of the trial judge's refusal to allow the defense to subpoena a critical witness of the bias. "Where juror misconduct or bias is credibly alleged, the trial judge cannot wait for defense counsel to spoon feed him every bit of information which would make out a case of juror bias; rather, the judge has an independent responsibility to satisfy himself that the allegation of bias is unfounded." *Id.* at 978.

If the Court is charged with the responsibility questioning Juror No. 50, what resources will the Court use to uncover any statements and misstatements made by Juror No. 50? Will the Court investigate Juror No. 50's motives? Will the Court hire an investigator to find all of the posts made by Juror No. 50 about the trial? Having witnessed Juror No. 50 during the trial and having previously questioned Juror No. 50 -- both through a written questionnaire and in person -- under the government's farcical hearing the Court would be a (1) witness, (2) inquisitor, (3) factfinder and (4) sole decision maker. These multiple, conflicted, roles are no model of due process.

### 2.   The questioning should encompass any topic on which actual bias may be based.

Moreover, the questioning should be significantly broader than proposed by the government. Although Ms. Maxwell need not prove Juror No. 50's intent, whether he acted deliberately is "is among the 'factors to be considered' in the ultimate determination of bias. . . ." *Greer*, 285 F.3d at 173. An analysis of Juror No. 50's intent requires consideration of the totality of the circumstances. And if only because Juror No. 50 has a pattern and practice of giving false answers to the Court, Ms. Maxwell is not required to accept any post-hoc assertion by him that he did not act deliberately. *Cf. United States v. James*, 609 F.2d 36, 46 (2d Cir. 1979) ("[W]hen attempting to show bias or interest, as opposed to bad reputation, the examiner is not bound to accept the witness' answer, but is free to call additional witnesses for impeachment.").

The government disingenuously suggests that the Court ███████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

21

███████████████████████ ████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████ .

The government also mischaracterizes the record regarding questions ████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████████

_____

   ■ ████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████████
█████████████████████████████████████ ████████████

For all the reasons given in the motion, Rule of Evidence 606(b) poses no bar to the inquiry this Court should conduct on Ms. Maxwell's motion, primarily because Ms. Maxwell possesses evidence from external to the deliberations to substantiate Juror No. 50's bias. To the extent the Rule might apply as a bar to limit certain questions, it violates Ms. Maxwell's constitutional rights to due process and to confrontation as applied to her. U.S. Const. amends. V, VI; *cf. Pena-Rodriguez v. Colorado*, 137 S. Ct. 855 (2017) (finding the no-impeachment rule of 606(b) unconstitutional as applied to juror statements indicating racial bias). The Rules of Evidence cannot constitutionally prevent Ms. Maxwell from proving juror misconduct and vindicating her right to a fair and impartial jury.[11]

### 3. The Additional Biased Juror Should Be Questioned

As detailed in the motion at 21, a second juror has alerted the New York Times that they too had deliberated on the case and were the victim of childhood sexual abuse. That juror whose identity is currently unknown also failed to disclose their victimhood in response to Question 48.[12] The government would like to bury its head in the sand and deprive Ms. Maxwell of the

---

[11] *See also Warger v. Shauers*, 574 U.S. 40, 49 & n.3 (holding, before *Pena-Rodriguez* was decided, that Rule 606(b) bars inquiry to "deliberations evidence" when seeking a new trial based on juror false statements during voir dire but recognizing that "[t]here may be cases of juror bias so extreme that, almost by definition, the jury trial right has been abridged. If and when such a case arises, the Court can consider whether the usual safeguards are or are not sufficient to protect the integrity of the process. We need not consider the question, however, for those facts are not presented here.").

*Warger* doesn't control here, though, if only because it was a civil and not a criminal case. Moreover, in this case, Juror No. 50's statements admitting to having provided false answers during *voir dire* are statements he personally made to the media and on social media. Those statements are not "deliberations evidence" and not subject to Rule 606(b) in any case, even under *Warger*.

■ ████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████

ability to establish that yet a second juror was biased by having been a victim of the very type of crime at issue in this trial.  The cases relied on by the government are inapposite as none reach the issue of whether a juror was dishonest in response to *voir dire* questions regarding whether they had been the victim of the same type of crime at issue.  *See* Resp. at 38-39.  Importantly, the government cites only to cases where the *only* evidence that a juror had engaged in misconduct was a news article to that effect.  Here, there are two pieces of evidence:  one, the New York Times article, and two, Juror No. 50's media statement that a second juror disclosed that they were also a victim of childhood sexual abuse.  Where there is "clear, strong, substantial and incontrovertible evidence" of juror misconduct, a hearing on that issue is *required*.  *United States v. Stewart*, 433 F.3d 273, 302-03 (2d Cir. 2006).

The government paints a parade of horrors to try to dissuade the Court from pursuing this second clear instance of a juror's inaccurate *voir dire* statement on a critical issue in this case. Resp. at 37.  Yet simply asking the other 11 jurors one question, whether they were the victim of childhood sexual abuse is not the intrusion the government suggests; the juror apparently felt comfortable sharing that information both during deliberations and also to the New York Times.

### 4.   Ms. Maxwell is entitled to Discovery

The government cites no authority for its request to foreclose discovery in advance of the hearing, nor could they given that such discovery is often necessary to establish the very misconduct at issue.  The government's complaints center on their view that the requested discovery is either overbroad or violative of Rule 606(b).  The government intentionally mis-reads the defendant's request.  Obviously, Ms. Maxwell would be requesting communications that occurred outside of deliberations.  It is also surprising that the government thinks that there will be a "high volume" of social media material during the "relevant time frame," i.e., between when Juror No. 50 ███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████

### 5. Juror No. 50 is not entitled to discovery in advance of the hearing.

Finally, for all the reasons given in the new trial motion and the letters about sealing, Ms. Maxwell maintains that Juror No. 50 should not be provided a copy of the questionnaire, which is currently under seal in this Court. Providing that questionnaire will only distort the search for the truth by allowing Juror No. 50 to further refine his story and excuses. Of course, if this Court orders a hearing, Juror No. 50 will receive his questionnaire at that time. But balanced against Ms. Maxwell's constitutional right to a fair and impartial jury and this Court's unflagging duty to investigate Ms. Maxwell's claim, Juror No. 50's request for the questionnaire now pales in comparison.

## Conclusion

Let there be no doubt. The prosecution's response is not credible because the government has the luxury of a double standard. If a juror had falsely answered material *voir dire* questions to favor Ms. Maxwell, the government would not hesitate to prosecute the juror for contempt or perjury. But when, as here, a juror falsely answers *voir dire* questions to favor the prosecution, the government invokes words like "finality" and "disfavor" and sighs, "well, no trial is perfect."

But all trials, perfect or not, require a fair and impartial jury. That is non-negotiable. That is the premise and fundamental guarantee of the criminal justice system, a system that was undermined by Juror No. 50's misconduct.

Juror No. 50 was not fair and impartial. His presence on the jury violated Ms. Maxwell's Sixth Amendment rights and constituted structural, reversible error. This Court should vacate the

jury's verdict and order a new trial. In the alternative, this Court should hold an evidentiary

hearing and examine all twelve jurors.

Dated: February 9, 2022

Respectfully submitted,

*s/ Jeffrey S. Pagliuca*
Jeffrey S. Pagliuca
Laura A. Menninger
HADDON, MORGAN & FOREMAN P.C.
950 17th Street, Suite 1000
Denver, CO 80202
Phone: 303-831-7364

Christian R. Everdell
COHEN & GRESSER LLP
800 Third Avenue
New York, NY 10022
Phone: 212-957-7600

Bobbi C. Sternheim
Law Offices of Bobbi C. Sternheim
225 Broadway, Suite 715
New York, NY 10007
Phone: 212-243-1100

*Attorneys for Ghislaine Maxwell*

**Certificate of Service**

I hereby certify that on February 9, 2022, I electronically filed the foregoing *Ghislaine Maxwell's Reply in Support of Her Motion for a New Trial*, with the Court and counsel for the government:

Alison Moe
Maurene Comey
Andrew Rohrbach
Lara Pomerantz
U.S. Attorney's Office
SDNY One Saint Andrew's Plaza
New York, NY 10007
Alison.moe@usdoj.gov
Maurene.comey@usdoj.gov
Andrew.Rohrbach@usdoj.gov
Lara.Pomerantz@usdoj.gov

*s/ Nicole Simmons*