UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/24/22
```

United States of America,

—v—

Ghislaine Maxwell,

                    Defendant.

20-CR-330 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

Before the Court is the Defendant's motion for a new trial pursuant to Federal Rule of

Criminal Procedure 33, which the Government opposes. *See* Maxwell Br., Jan. 19, 2022; Gov.

Br., Feb. 2, 2022.  The Defendant seeks a new trial on the basis that Juror 50 "falsely answered a

material question during *voir dire* and . . . that, had he answered truthfully, he would have been

subject to a challenge for cause."  Maxwell Br. at 48.  The Defendant contends that the current

paper record sufficiently supports her motion and should be granted without a hearing.  *Id.*  In

the alternative the Defendant requests an evidentiary hearing to inquire into Juror 50's alleged

nondisclosure.  She also argues a broader hearing is required based on a news article that

suggests a second juror was allegedly a victim of sexual abuse.  *Id.* at 49.  The Government urges

this Court to deny the Defendant's motion on the current record, but it consents to a limited

hearing on the issue of whether Juror 50 provided a materially false answer to Question 48 of the

questionnaire.  Gov. Br. at 31–32.

The Defendant's motion for a new trial based on the current record is DENIED.

Defendant's motion on the current record relies extensively on statements made by Juror 50

regarding what occurred during jury deliberations that the Court is prohibited from considering

under Rule 606.  With regard to Juror 50's statements that do not pertain to jury deliberations, in

order to resolve the motion at this stage, the Court would have to accept these unsworn statements made to media outlets as true and reach factual determinations that are not available on the current record.

Accordingly, a hearing is necessary to resolve the Defendant's motion.  The Court concludes, and the Government concedes, that the demanding standard for holding an evidentiary hearing is met as to Juror 50's answer to Question 48 of the questionnaire.  The Court further concludes that Juror 50's response to Question 25 is relevant to the inquiry.  Following trial, Juror 50 made several direct, unambiguous statements to multiple media outlets about his own experience that do not pertain to jury deliberations and that cast doubt on the accuracy of his responses to Questions 25 and 48.  Such statements are "clear, strong, substantial and incontrovertible evidence that a specific, nonspeculative impropriety"—namely a false statement during jury selection—has occurred.  To be clear, the potential impropriety is not that someone with a history of sexual abuse may have served on the jury.  Rather, it is the potential failure to respond truthfully to questions during the jury selection process that asked for that material information so that any potential bias could be explored.  Conversely, the demanding standard for ordering an evidentiary hearing is not met as to Juror 50's use of social media nor the conduct of any other juror.  The Court therefore ORDERS a hearing take place at which the Court will question Juror 50 under oath.  The Defendant's request for a broader hearing and pre-hearing discovery is DENIED.

## I.    Background

On December 29, 2021, the jury returned a verdict in this case, finding the Defendant guilty of five counts.  A week after the jury announced its verdict, on January 5, 2022, the Government informed the Court that a juror had given at least three post-verdict interviews to

press outlets about his jury service and requested a hearing be held on the matter.  Dkt. No. 568.

The letter noted that in the interviews, which were both in print and on video, the juror

"described being a victim of sexual abuse" and asserted that he "flew through" the juror

questionnaire and did not recall being asked whether he had been a victim of sexual abuse.  *Id.* at

1.  The Government indicated in a redacted footnote that it believed the juror to be Juror 50, and

a review of his questionnaire showed that he had provided a negative response to a question that

asked whether a prospective juror had been a victim of sexual abuse.  *Id.* at 2 n.2.[1]  Finally, the

Government requested that the Court offer court-appointed counsel to the juror in the event a

hearing was ordered.  A letter from the Defendant followed shortly thereafter also informing the

Court about the juror's interviews.  Dkt. No. 569.  The Defendant filed a second letter that same

day opposing the Government's request "because based on undisputed, publicly available

information, the Court can and should order a new trial without any evidentiary hearing."  Dkt.

No. 570.[2]

The Defendant filed a motion for a new trial on January 19, 2022.  The Government

opposed the motion on February 2, 2022, and the Defendant filed a reply in support on February

9, 2022.  In addition to Juror 50's post-trial interviews, the Defendant's motion relies on a *New*

*York Times* article reporting that "a second juror described in an interview . . . having been

---

[1] The Government proposed redacting the footnote because the juror questionnaire was not a public document at that time.  Because (for the reasons explained below) the Court now unseals the questionnaire, that redaction is no longer necessary.

[2] For completeness of the record, the Court notes the following occurred also on January 5, 2022:  The Jury Department of the Southern District of New York received a call from Juror 50 asking for guidance because of statements he had given to certain media outlets that were being widely reported on in the press and inquiring whether he needed an attorney.  At the Court's direction, the District Executive returned Juror 50's call and informed him that the Court was unable to provide any guidance or response to his question.  Juror 50 then asked the District Executive if he could access his questionnaire.  The District Executive, again at the Court's direction, informed Juror 50 that the questionnaire was not a public document and could not be provided to him.

sexually abused as a child" as a basis for a broader hearing beyond inquiry into Juror 50.
Maxwell Br. at 21, 49.

## II.    Motion for a new trial on the current record

Federal Rule of Criminal Procedure 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33(a).  The parties agree that a defendant's Rule 33 motion premised on a juror's alleged nondisclosure during *voir dire* is governed by *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548 (1984).  Maxwell Br. at 22–28; Gov. Br. at 11.  In *McDonough*, the Supreme Court held that to obtain a new trial on the basis of juror nondisclosure during *voir dire*, "a party must first demonstrate that a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause."  *McDonough*, 464 U.S. at 556; *see also United States v. McCoy*, 995 F.3d 32, 51 (2d Cir. 2021); *United States v. Shaoul*, 41 F.3d 811, 815–16 (2d Cir. 1994); *United States v. Langford*, 990 F.2d 65, 68 (2d Cir. 1993).[3]

> The *McDonough* inquiry is restricted by Federal Rule of Evidence 606, which states:
>
> During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.

Fed. R. Evid. 606(b)(1).

---

[3] The parties dispute certain contours of the *McDonough* test, including whether it requires a deliberately false answer.  But at a minimum, the parties agree that the deliberateness of a juror's incorrect answer is relevant to this inquiry.  Maxwell Reply at 13–14.  Because, as explained below, the Court does not now resolve at this juncture whether Juror 50's answers on the questionnaire and *voir dire* merit a new trial, it need not and does not resolve those disputes pre-hearing.

The Defendant urges this Court to resolve the motion on the papers, without the need for a hearing.  Maxwell Br. at 28.  But resolving the motion now would require the Court to accept as true Juror 50's unsworn statements made to media outlets.  Moreover, in arguing for a new trial based on the current record, the Defendant relies extensively on statements prohibited from consideration by Rule 606.  *E.g.*, Maxwell Br. at 12–14 (describing Juror 50's statements in deliberation and other jurors' reactions).  The Defendant also urges the Court to reach factual conclusions that are unavailable on the current record; for example, that Juror 50 deliberately lied in failing to disclose that he was the victim of sexual abuse.  *See* Maxwell Br. at 39–43. Finally, the Defendant cites no authority—nor is the Court aware of any—in which a court granted a new trial under the *McDonough* standard without first conducting an evidentiary hearing.  As the Second Circuit has instructed, "if any significant doubt as to a juror's impartiality remains in the wake of objective evidence of false *voir dire* responses, an evidentiary hearing generally should be held."  *United States v. Stewart*, 433 F.3d 273, 306 (2d Cir. 2006) (citing *United States v. Boney*, 977 F.2d 624, 634 (D.C. Cir. 1992)).  The Court therefore denies the Defendant's motion to grant a new trial on the current record.

## III.    Evidentiary hearing

For the reasons outlined below, the Court determines that a hearing must be held regarding Juror 50's alleged nondisclosure during the jury selection process.

### A.  Threshold for an evidentiary hearing

Because of the importance of finality of judgments, the threshold for conducting a post-verdict inquiry is high.  A post-verdict inquiry into juror misconduct is conducted only "when there is clear, strong, substantial and incontrovertible evidence that a specific, nonspeculative impropriety has occurred which could have prejudiced the trial of a defendant."  *United States v.*

*Baker*, 899 F.3d 123, 130 (2d Cir. 2018) (cleaned up) (quoting *United States v. Moon*, 718 F.2d 1210, 1234 (2d Cir. 1983)).  Mere "[g]ossip and anonymous tips do not satisfy this standard." *United States v. Stewart*, 317 F. Supp. 2d 432, 443 (S.D.N.Y. 2004).  Rather, "[a]llegations of impropriety must be 'concrete allegations of inappropriate conduct that constitute competent and relevant evidence.'"  *Baker*, 899 F.3d at 130 (quoting *United States v. Ianniello*, 866 F.2d 540, 543 (2d Cir. 1989)).

The Defendant argues that this is the wrong standard.  Maxwell Reply, Feb. 9, 2022, at 8 n.4.  But the Defendant does not identify an alternative standard.  And the Second Circuit has applied precisely this standard to determine whether a district court should hold a *McDonough* hearing on the basis of a juror's nondisclosure during *voir dire*.  *Stewart*, 433 F.3d at 302–03.  The Court is bound to apply this demanding standard.

This high standard for an evidentiary hearing intentionally raises an "exacting hurdle" for defendants because "motions to set aside a jury verdict are disfavored."  *United States v. Ventura*, No. 09-CR-1015 (JGK), 2014 WL 259655, at *3 (S.D.N.Y. Jan. 21, 2014).  As the Second Circuit has repeatedly warned, "post-verdict inquiries may lead to evil consequences: subjecting juries to harassment, inhibiting juryroom deliberation, burdening courts with meritless applications, increasing temptation for jury tampering and creating uncertainty in jury verdicts." *Ianniello*, 866 F.2d at 543; *see also Tanner v. United States*, 483 U.S. 107, 119–20 (1987) (citing *McDonald v. Pless*, 238 U.S. 264, 267–68 (1915)).  And an evidentiary hearing "is not held to afford a convicted defendant the opportunity 'to conduct a fishing expedition.'"  *Stewart*, 433 F.3d at 306 (quoting *Moon*, 718 F.2d at 1234).

The Defendant argues that the considerations in *Tanner* and *Ianniello* are inapplicable to her motion because those cases "involved alleged conduct during trial and, crucially, during

6

deliberations."  Maxwell Reply Br. at 8.  This argument is wrong, as "the ultimate purpose of the [requested] post-trial evidentiary hearing is to set aside a jury verdict."  *Ventura*, 2014 WL 259655, at *3.  And "there is no discernible reason to apply a different general standard to new trial motions based on juror misconduct than to those premised on any other reason."  *United States v. Guzman Loera*, No. 09-CR-0466 (BMC), 2019 WL 2869081, at *5 n.5 (E.D.N.Y. July 3, 2019), *aff'd*, 24 F.4th 144 (2d Cir. 2022).  "[E]ven though there are additional considerations . . . when ruling on an evidentiary hearing and new trial motion premised upon allegations of juror misconduct, these are the overarching legal standards applicable to all Rule 33 motions, including when juror misconduct is at issue."  *Id.*

If a hearing is held, "its scope should be limited to only what is absolutely necessary to determine the facts with precision."  *Ianniello*, 866 F.2d at 544.  "Therefore, in the course of a post-verdict inquiry . . . , when and if it becomes apparent that the above-described reasonable grounds to suspect prejudicial jury impropriety do not exist, the inquiry should end."  *Moon*, 718 F.2d at 1234.  The Court has discretion to structure the hearing and to determine what testimony is needed.  *Ianniello*, 866 F.2d at 544.

## B.  The scope of the hearing

The Court will conduct an evidentiary hearing on ████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████████  The Government acknowledges that Juror 50's answer to Question 48 satisfies the demanding standard for an evidentiary hearing under *McDonough*.  Gov. Br. at 33.  The Court agrees.  Question 48 asked jurors:

> Have you or a friend or family member ever been the victim of sexual
> harassment, sexual abuse, or sexual assault?  (This includes actual or attempted

sexual assault or other unwanted sexual advance, including by a stranger,
acquaintance, supervisor, teacher, or family member.)

Dkt. No. 462 at 24.  In response to that question, Juror 50 checked the box for "No," not the box

for either "Yes (self)" or "Yes (friend or family member)."  But in several public statements

made to media outlets after the trial, including interviews in *The Independent* and *The Daily Mail*

dated January 5, 2022, Juror 50 stated that he was sexually abused as a minor.  The statements

are direct, unambiguous, and made by Juror 50 himself to multiple media outlets.  Moreover, the

statements themselves describe Juror 50's own experience.[4]  They constitute "clear, strong,

substantial and incontrovertible evidence that a specific, nonspeculative impropriety has

occurred," and so warrant an evidentiary hearing.  *Baker*, 99 F.3d at 130.

Although the Court does not decide whether the threshold to hold a hearing based on

Question 25 alone has been met, because the Court will hold a hearing on Juror 50's answer to

Question 48 and because Question 48 and 25 are sufficiently related, the Court will inquire into

Juror 50's answer to Question 25.  Question 25 asked jurors:

Have you, or any of your relatives or close friends, ever been a victim of a crime?

Dkt. No. 462 at 13.  Again, Juror 50 checked the box for "No," and not the box for either "Yes

(self)" or "Yes (friend or family member)."  But Juror 50's post-trial statements, if true, may

describe criminal conduct of which he was the victim.  Therefore, Juror 50's answer to Question

25 is sufficiently related to the answer to Question 48 and so the Court will also inquire as to

Question 25 at an evidentiary hearing.  *See Baker*, 99 F.3d at 130.

---

[4] The articles additionally state that Juror 50 shared this experience with the jury during deliberations.  The Court is
prohibited by Rule 606 from considering that Juror 50 also told this information to the jury.  That Juror 50 revealed
that he also disclosed this information to the jury does not prohibit the Court from considering Juror 50's
independent statements made to a reporter about his own experience.

The potential impropriety that warrants a hearing is not that someone with a history of sexual abuse may have served on the jury.  Rather, it is Juror 50's potential failure to respond truthfully to questions during the jury selection process that asked for such material information so that any potential bias could be explored.  Accordingly, the Court will hold a hearing limited in scope to Juror 50's answers to Questions 25 and 48 of the questionnaire.

### C.  The Defendant has not justified an inquiry into Juror 50's social media

The parties devote significant portions of the briefs to the question of whether Juror 50 answered falsely the Court's questions about social media usage during *voir dire*.  To the extent that the Defendant seeks a hearing to probe Juror 50's answers to *voir dire* about his social media usage, her arguments are based on speculation, and she has failed to make the high showing required.  *See Baker*, 899 F.3d at 130.  At *voir dire*, when asked if he "use[s] social media," Juror 50 stated, "I do, but I actually just deleted them because I just got out of a relationship and I didn't want to see anything regarding them.  So I am fully off of it right now."  Nov. 16, 2021 Tr. at 133.  The Court then asked, "What did you use, Facebook, Twitter?" to which Juror 50 replied "Facebook and Instagram," clarifying that the accounts contained "[p]ersonal stuff, like selfies." *Id.*

The screenshots proffered by the Defendant do not demonstrate that any of these answers implicate *McDonough*.  First, Juror 50 did not deny having a Twitter account.  Second, Juror 50's account had only 1 follower and followed only 39 people, which corroborates that his Twitter use was, at most, relatively minimal.  *See* Maxwell Br. at 17.  Third, the fact that Juror 50's Twitter account was opened in April 2021 and that he used it again in January 2022, after the completion of the trial, is consistent with Juror 50's answer that he deleted his social media accounts, or just the social media applications, shortly before *voir dire*.  The same is true of Juror

50's Instagram account, on which he also posted in January 2022, after the completion of the

trial.  *Id.* at 20.  And fourth, the screenshots proffered match Juror 50's description of his social

media accounts as containing only "[p]ersonal stuff, like selfies."  *Id.*  The threshold for a

hearing has not been met on this issue and the Court will not permit "a fishing expedition" into

Juror 50's social media usage.  *Moon*, 718 F.2d at 1234 (quoting *United States v. Moten*, 582

F.2d 654, 667 (2d Cir. 1978)).

### D.  The Defendant has not justified an inquiry into other jurors

The Defendant seeks to examine not only Juror 50 at an evidentiary hearing but also the

other eleven members of the jury in order to identify a second juror who, according to an article

published by the *New York Times*, also was sexually abused as a minor.  Maxwell Br. at 21, 49–

50.  The Defendant further argues that even if the article alone is insufficient to order a hearing

as to the juror mentioned in the article, Juror 50's post-trial statements corroborate that another

juror discussed sexual abuse during deliberations.  Maxwell Reply at 24.  As explained below,

the evidence of this allegation is inadequate to meet the exacting standard for a hearing and the

Court denies the Defendant's request to examine any jurors on this basis.[5]

---

[5] On December 31, 2021, the Court informed the parties by sealed order that a juror had contacted court staff about being approached by a reporter despite the fact that the juror had not identified themselves publicly and wished to remain anonymous.  Because the contact by the member of the media had been uninvited by the juror, chambers staff notified all jurors via email on December 30, 2021, about the development.  Subsequently, on January 5, 2022, a juror replied to the December 30 email sent by court staff.  In that reply email, the juror wrote regarding news reports about the issue with Juror 50.  The Court informed the parties of the juror communications by sealed order on January 6, 2022.  The Defendant requested the communications, which the Court denied without prejudice.  *See* Sealed Memo Endorsement, Jan. 13, 2022.  The Defendant now renews her request on the theory that the communications could shed light on the identity of the second juror referred to by the *New York Times*.  *See* Maxwell Br. at 21 n.10; Maxwell Reply at 23 n.12.  Such a request is nothing but unfounded speculation.  A juror's communication expressing fear about the media reports and the parties' responses to Juror 50's interviews are not relevant to the current inquiry.  Nonetheless, in order to ensure a complete record, the Court will transmit under seal the concerned juror's communications to the parties with the name and contact information of the concerned juror redacted in order to protect the juror's privacy and prevent juror harassment.  *See Ianniello*, 866 F.2d at 543.  The Court also includes a subsequent communication with the same juror expressing additional concerns so that the parties have a complete record of non-logistical juror communications.  The Court will file the unredacted communications under seal for preservation for the appellate record.

*First*, the news article upon which the Defendant relies does not warrant a hearing. *Baker*, 899 F.3d at 130. The article includes a short, non-detailed mention of an anonymous juror. As the Second Circuit recently held in affirming the denial of a hearing after a high-profile trial, "the unsworn, uncorroborated statements that one unidentified juror made to a magazine reporter do not constitute the 'clear, strong, substantial and incontrovertible evidence'" of misconduct that requires a hearing. *United States v. Guzman Loera*, 24 F.4th 144, 161 (2d Cir. 2022) (quoting *Moon*, 718 F.2d at 1234). Another court in this circuit held that a *New York Times* article that, in a single sentence, alleged misconduct by an unidentified juror was insufficient to justify a hearing. *United States v. Bin Laden*, No. S7R 98-CR-1023 (KTD), 2005 WL 287404, at *2 (S.D.N.Y. Feb. 7, 2005), *aff'd sub nom. In re Terrorist Bombings of U.S. Embassies in E. Afr.*, 552 F.3d 93 (2d Cir. 2008) ("This single sentence, an unsworn snippet of hearsay within a newspaper article, is far less substantial than the sworn affidavits present in cases where evidentiary hearings have been ordered.").

Other courts have also concluded that unsworn, hearsay, and/or anonymous reports of juror misconduct are not the clear, strong, and nonspeculative evidence required for a hearing. *See, e.g.*, *King v. United States*, 576 F.2d 432, 438 (2d Cir. 1978) (affirming the denial of a hearing where the defendant presented "weakly authenticated, vague, and speculative material as to one juror," even where that juror was not anonymous); *United States v. Wilbern*, 484 F. Supp. 3d 79, 87 (W.D.N.Y. 2020) (finding a "double hearsay" report of misconduct inadequate to justify a hearing); *Stewart*, 317 F. Supp. 2d at 438 (denying the defendant's request for an evidentiary hearing where the defendant's support, including post-trial media interviews, "amount[s] to little more than hearsay, speculation, and in one instance, vague allegations made by a person who refused to identify himself"). Accordingly, the *New York Times* article is an

insufficient basis for an evidentiary hearing, especially one that, according to the Defendant, would require the Court to "haul [11] jurors in after they have reached a verdict" to probe for who, if anyone, may have been mentioned in the article. *Guzman Loera*, 24 F.4th at 161 (quoting *Moon*, 718 F.2d at 1234).

*Second*, Federal Rule of Evidence 606 bars the Court from considering Juror 50's statements as evidence of another juror's statements purportedly made during deliberations. As previously quoted, the rule states:

> During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.

Fed. R. Evid. 606(b)(1).

Rule 606(b) is subject to three enumerated exceptions that permit a juror to testify about whether (A) "extraneous prejudicial information was improperly brought to the jury's attention"; (B) "an outside influence was improperly brought to bear on any juror"; or (C) "a mistake was made in entering the verdict on the verdict form." Fed. R. Evid. 606(b)(2). In addition to these exceptions enumerated in the rule, the Supreme Court has held that Rule 606 "give[s] way" where "a juror makes a clear statement that indicates he or she relied on racial stereotypes or animus to convict a criminal defendant." *Pena-Rodriguez v. Colorado*, 137 S. Ct. 855, 863 (2017). Absent one of these circumstances, evidence within the ambit of Rule 606 may not be considered.

Here, the Defendant relies on Juror 50's statements of what another juror allegedly stated during deliberations. That proffer is barred by Rule 606.

In response, the Defendant argues that Juror 50's statements about the second juror fall outside the scope of Rule 606 because she "does not seek to impeach the verdict based on the

content of deliberations" but instead to demonstrate that the second juror made a false statement during *voir dire*, like Juror 50 allegedly did.  Maxwell Br. at 50.  But this reading of Rule 606 has been squarely rejected by the Supreme Court, which held that the "plain meaning" of this language is that "Rule 606(b) applies to juror testimony during a proceeding in which a party seeks to secure a new trial on the ground that a juror lied during *voir dire*."  *Warger v. Shauers*, 574 U.S. 40, 44 (2014).  The Defendant's one-sentence attempt to dismiss *Warger* because it involved a civil rather than a criminal case is unavailing.  Maxwell Reply at 23 n.11.  It is the same rule of evidence in issue, and the principles enunciated by the Supreme Court apply here with equal force.

The Defendant may also be suggesting in this argument that Rule 606 does not bar Juror 50's statements because they concern "extraneous prejudicial information," which is an enumerated exception to the rule.  *See* Fed. R. Evid. 606(b)(2)(A).  To the extent that argument is raised, it is meritless.  Information is "extraneous" when it is "external to the jury"—that is, "publicity and information related specifically to the case the jurors are meant to decide," rather than "the general body of experiences that jurors are understood to bring with them to the jury room."  *Warger*, 574 U.S. at 51 (cleaned up).  So, for example, the Supreme Court has held that a foreperson's undisclosed experience with a car accident is not extraneous information, even in a motor-vehicle lawsuit where that failure to disclose could have supported a for-cause strike.  *Id.* at 42–43.  The same is true here, as the second juror's alleged undisclosed experience "did not provide either [the juror] or the rest of the jury with any specific knowledge regarding" this particular case.  *Id.* at 51–52.  Rather, as this Court instructed, jurors are expected to bring their "reason, experience, and common sense" to bear in evaluating witnesses' credibility and the

Defendant's ultimate guilt.  Trial Tr. at 3066; *see also U.S. ex rel. Owen v. McMann*, 435 F.2d 813, 818 (2d Cir. 1970).

Last, the Defendant argues—in a single sentence of her reply brief—that if Rule 606 does bar consideration of Juror 50's statements about the second juror, then the rule "violates Ms. Maxwell's constitutional rights to due process and to confrontation as applied to her."  Maxwell Reply at 23.  The Court rejects this argument.  The Confrontation Clause guarantees a criminal defendant the right "to be confronted with the witnesses against him."  U.S. Const., amend. VI. The Defendant's right to confrontation is not implicated here because Juror 50 is not a "witness[] against" the Defendant but was instead a factfinder in her trial.  Simply put, Juror 50's testimony at the hearing will be proffered to determine whether *Juror 50* has engaged in any misconduct warranting a new trial, not to accuse *the Defendant* of any crime.  *Cf. Crawford v. Washington*, 541 U.S. 36, 43 (2004) (describing the Confrontation Clause as a "right to confront one's *accusers*" (emphasis added)).  Even if the Confrontation Clause were implicated, Rule 606's prohibition on juror affidavits to impeach a verdict is a reasonable limitation, subject to other exceptions not at issue here, on the evidence that a defendant may muster, a limitation with a long historical pedigree.  *See Pena-Rodriguez*, 137 S. Ct. at 863 (tracing Rule 606 to traditional English common law); *Crawford*, 541 U.S. at 54 (explaining that the Confrontation Clause "is most naturally read as a reference to the right of confrontation at common law, admitting only those exceptions established at the time of the founding").

Next, the Defendant's due-process claim is squarely foreclosed by controlling precedent. The Supreme Court in *Tanner v. United States* rejected a constitutional challenge to Rule 606, explaining that a criminal defendant's right to an impartial jury is "protected by several aspects of the trial process," including questions asked in *voir dire*; observations in court made by the

judge, court personnel, and counsel; observations by other jurors, who "may report inappropriate juror behavior to the court *before* they render a verdict"; and "impeach[ment] [of] the verdict by nonjuror evidence of misconduct."  483 U.S. at 127; *see also Warger*, 574 U.S. at 51 ("[A] party's right to an impartial jury remains protected despite Rule 606(b)'s removal of one means of ensuring that jurors are unbiased.").  The Defendant cites in support the Supreme Court's decision in *Pena-Rodriguez v. Colorado*, but that case is unavailing to her position.  There, the Supreme Court held that "where a juror makes a clear statement that indicates he or she relied on racial stereotypes or animus to convict a criminal defendant, the Sixth Amendment requires that the no-impeachment rule give way in order to permit the trial court to consider the evidence of the juror's statement and any resulting denial of the jury trial guarantee."  137 S. Ct. at 869. Throughout the opinion, the Supreme Court took great care to hold that the "unique historical, constitutional, and institutional concerns" intrinsic to a juror with racial animus do not attach to other forms of juror misconduct.  *Id.* at 868.  In fact, it *expressly* contrasted the case of a juror with racial animus to a juror that "ha[s] a personal experience that improperly influences her consideration of the case," as was at issue in *Warger v. Shauers* and as is alleged here.  *Id.* at 869.

    *Third*, even if the Court did consider Juror 50's statements about what another juror said during deliberations—which Rule 606 prohibits—the statements proffered by the Defendant do not meet the threshold of "clear, strong, substantial and incontrovertible evidence that a specific, nonspeculative impropriety has occurred."  *Baker*, 899 F.3d at 130.  According to an article in the *Daily Mail*, Juror 50 "revealed that he was not the only juror to share a story of sexual abuse."  That sentence summarizes an unsworn and non-specific statement, which does not identify the alleged misconduct or the juror in question with any particularity.  It therefore falls

short of the demanding standard for ordering a post-verdict evidentiary hearing.  *See Bin Laden*, 2005 WL 287404, at *2.  Notably, this case is far from *United States v. Colombo*, where the Second Circuit ordered an evidentiary hearing on the basis of two sworn affidavits that identified another juror by name and described with particularity the alleged misconduct.  869 F.2d 149, 151 (2d Cir. 1989).

The Court therefore rejects the Defendant's as-applied constitutional challenge to Rule 606 and further concludes that Rule 606 bars the Court's consideration of Juror 50's statements about the second juror.  Even if the Court considered Juror 50's statement about another juror, the evidence would be insufficient to meet the high threshold for an inquiry.  Without nonspeculative evidence of misconduct by any juror but Juror 50, the Court restricts the focus of the evidentiary hearing to Juror 50.  *See Ianniello*, 866 F.2d at 544.[6]

## IV.    The nature of the hearing

### A.  The Court will examine the witnesses and the parties may submit questions

In concluding that an inquiry into Juror 50's conduct is warranted, the Court is mindful that the "object of the proceeding is to permit the truth to be discovered with the least possible harm to other interests."  *Moten*, 582 F.2d at 666.  Accordingly, the Court denies the Defendant's request that counsel directly question the juror—a decision committed to this Court's "sound discretion."  *Id.* at 667; *see also Ianniello*, 866 F.2d at 544 ("We leave it to the district court's discretion to decide the extent to which the parties may participate in questioning the witnesses, and whether to hold the hearing in camera.").  The Court will conduct the questioning at the

---

[6] The Defendant's briefing is unclear as to whether she seeks to question the other 11 jurors only to identify the juror implicated by the news article, or if she would seek to question the other jurors in any event to determine "what Juror No. 50 said to the other jurors."  *See* Maxwell Br. at 49.  To the extent the Defendant is requesting the ability to question jurors about what Juror 50 allegedly disclosed during deliberations, that request is denied as it is plainly foreclosed by Rule 606. *See also Ianniello*, 866 F.2d at 544.

public hearing with input from counsel.  The parties may submit questions consistent with this

ruling, including what the Court holds in this Opinion are the limitations imposed by Rule 606

and the appropriate scope of the hearing.  Once again, the scope of the inquiry is ████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

      Per this Court's prior order, the parties must submit the proposed questions under

temporary seal to ensure the integrity of the inquiry.  *See* Dkt. No. 596 at 4.  Proposed questions

must be submitted via email on or before **March 1, 2022**.  The proposed questions will be

unsealed following the hearing.

### B.  The Defendant's subpoena requests are denied

      The Defendant seeks two sets of subpoenas to conduct discovery in advance of the

hearing.  Maxwell Br. at 48–49.  First, from Juror 50, the Defendant seeks any emails or other

communications between Juror 50 and any alleged victim or witness; any other juror; any other

person or media organization about Juror 50's jury service; and, finally, any record of payments

for any interview or information that Juror 50 gave about his jury service.  Second, from

Facebook, Twitter, LinkedIn, Instagram, and other social media platforms, the Defendant seeks

all communications to and from Juror 50 regarding his jury service; all posts, comments, or

photographs by Juror 50 regarding his jury service; and all documents reflecting when Juror 50

opened or closed his accounts.  In her initial brief, the Defendant simply lists these requests

without justification.  In her reply, she provides only a short rebuttal to the Government's

objections and does not explain why each request is relevant or proper.

      The Court denies these requests as vexatious, intrusive, unjustified, and a fishing

expedition.  Given the focused inquiry the Court is ordering, the evidentiary hearing's scope

must be "limited to only what is absolutely necessary to determine the facts with precision."

*Ianniello*, 866 F.2d at 544.  The Defendant can only speculate that the requested communications

between Juror 50 and unknown persons and entities would shed any light on Juror 50's answers

to the questionnaire and his bias *before* the trial at the time of *voir dire*.  Nor has the Defendant

explained why Juror 50's receipt of financial payment for interviews *after* the trial, if true, would

be probative of his inclination to not disclose at *voir dire prior* to trial.  The Court will not grant

the Defendant "the opportunity to 'conduct a fishing expedition.'"  *Moon*, 718 F.2d at 1234

(quoting *Moten*, 582 F.2d at 667).

Moreover, the Defendant's requested subpoenas directed at social media companies who

have custody of Juror 50's communications, comments, and posts are procedurally improper.

Those requests for social media content are subject to the Stored Communications Act, 18 U.S.C.

§§ 2701–11, which requires an additional factual showing for the Court to order disclosure, *see* 2

Wayne LaFave et al., Criminal Procedure §§ 4.8(b), 4.8(d) (4th ed. 2021); *Matter of Warrant to*

*Search a Certain E-Mail Acct. Controlled & Maintained by Microsoft Corp.*, 829 F.3d 197, 206

(2d Cir. 2016), *vacated and remanded on other grounds*, 138 S. Ct. 1186 (2018).  And only the

Government, not private parties like the Defendant, may request disclosure pursuant to the Act.

*United States v. Nix*, 251 F. Supp. 3d 555, 559 (W.D.N.Y. 2017) ("[T]he [SCA] does not permit

a defendant in a criminal case to subpoena the content of a Facebook or Instagram account.");

*Facebook, Inc. v. Wint*, 199 A.3d 625, 629 (D.C. 2019) (collecting cases).  Though the

Government raised the Act in its briefing, the Defendant does not acknowledge it or purport to

show she is entitled to make a request.  Accordingly, the requests as to the listed social media

companies are denied.

The Court concludes that the Defendant has not made a showing that any pre-hearing discovery is appropriate, and the request to engage in an intrusive fishing expedition is denied.

### C.  The Court will release Juror 50's questionnaire

This Court previously reserved ruling on Juror 50's request that the Court release his jury questionnaire to counsel, but that the document otherwise remain under seal to protect his supposed privacy interest.  *See* Dkt. No. 596 at 5 n.1.  The Defendant opposes both the unsealing and releasing the questionnaire to counsel, arguing that "advance disclosure . . . will undoubt[edly] color Juror No. 50's testimony and allow him to place himself in the best possible posture."  Maxwell Br. at 53.  The Government argues that there is no legitimate interest in limiting Juror 50's access and opposes maintaining the questionnaire under seal.  Gov. Br. at 42; *see also* Dkt. No. 594.

The Court will provide Juror 50 a copy of his completed questionnaire.  Unlike the parties' proposed questions, Juror 50's access to his completed questionnaire—the answers to which he wrote—will not undermine the integrity of the inquiry.  The Defendant's concern that advance disclosure may somehow taint Juror 50's testimony is unfounded.  *See United States v. McCoy et al.*, No. 14-CR-6181 (EAW), Dkt. No. 329, at 15 (W.D.N.Y. June 2, 2017) (providing the jury questionnaire to juror's counsel in advance of the hearing).  Rather, delaying disclosure until the hearing would needlessly delay the fact-finding process.

Moreover, the Court concludes that the presumption of access dictates that the questionnaire must be docketed.  Juror 50's and the Defendant's request that the questionnaire remain sealed is governed by the three-part test articulated by the Second Circuit in *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006).  *See* Dkt. No. 596 at 2 (outlining the test).  First, the jury questionnaire easily qualifies as a judicial document.  It is a key exhibit to

the Defendant's motion for a new trial.  *Cf. Carbon Inv. Partners, LLC v. Bressler*, No. 20-cv-3617 (ER), 2020 WL 5441497, at *2 (S.D.N.Y. Sept. 10, 2020).  Accordingly, a high presumption of access attaches.  For the reasons stated in this Court's prior order, this presumption of access is not outweighed by the possibility of media interest in the document.  *See* Dkt. No. 596 at 3.  Nor is sealing necessary to safeguard a possible hearing for the reasons stated above.  Finally, any privacy interest Juror 50 may have had in his questionnaire, *see Press-Enterprise Co. v. Superior Ct. of Cal.*, 464 U.S. 501, 511–12 (1984), has at least been greatly diminished, if not extinguished, since his public comments.  The Court further notes that prospective jurors had the opportunity to request that particular questionnaire answers remain confidential; Juror 50 did not make any such request.  Accordingly, Juror 50's privacy interest in the questionnaire is now outweighed by the presumption of access.  *Lugosch*, 435 F.3d at 119–20.  The Defendant is accordingly ORDERED to docket Exhibit 1 to her motion for a new trial, Juror 50's completed questionnaire.

## V.    Conclusion

For the reasons stated above, the Court will hold a hearing regarding Juror 50's answers to Questions 25 and 48 of the questionnaire.  The public proceeding will take place on **March 8, 2022, at 10:00 a.m.**  Juror 50 is hereby ORDERED to appear in Courtroom 906 of the Thurgood Marshall United States Courthouse, 40 Centre Street, New York, New York at that date and time to give testimony under oath in response to the Court's questions.  Counsel for the Defendant and the Government are ORDERED to submit via email proposed questions in accordance with this Opinion & Order on or before **March 1, 2022**.

SO ORDERED.

Dated:  February 24, 2022
        New York, New York

_____
          ALISON J. NATHAN
       United States District Judge