**C&G**  **COHEN & GRESSER LLP**

800 Third Avenue
New York, NY 10022
+1 212 957 7600 phone
www.cohengresser.com

Christian R. Everdell
+1 (212) 957-7600
ceverdell@cohengresser.com

March 1, 2022

**BY EMAIL**

The Honorable Alison J. Nathan
United States District Court
Southern District of New York
United States Courthouse
40 Foley Square
New York, NY 10007

Re:  *United States v. Ghislaine Maxwell*, S2 20 Cr. 330 (AJN)

Dear Judge Nathan:

We write in response to the Court's order, dated February 24, 2022, permitting the parties to submit proposed questions to the Court for the hearing related to Ms. Maxwell's Motion for a New Trial.  Dkt. 610.

**Renewed Request for Counsel to Conduct the Questioning of Juror 50**

Ms. Maxwell reiterates her request that the Court allow counsel to conduct the questioning of Juror 50 during the upcoming hearing.  Attorney-conducted questioning enhances the opportunity and ability to elicit bias on the part of the juror.  *See, e.g.*, Johnson & Haney, *Felony Voir Dire: An Exploratory Study of its Contents and Effect,* 18 Law and Human Behavior 309 (1994). To smoke out the reasons why Juror 50 did not truthfully answer Questions 48 and 25 on the jury questionnaire, he must be cross-examined.  Defense counsel is in the best position to conduct that cross-examination.  This was the procedure that Judge Pauley followed in *United States v. Daugerdas*, and there is no reason to follow a different procedure here.  *See* Dkt. 616-1.

The Honorable Alison J. Nathan
March 1, 2022
Page 2

**Proposed Questions**

**A. Questions to Determine the Nature of Juror 50's Sexual Abuse and Whether Juror 50's Responses to Questions 48 and 25 of the Jury Questionnaire Were False**

Under the *McDonough* test, the Court must first determine whether Juror 50's responses to Questions 48 and 25 were, in fact, false as reflected in his post-trial statements to the media. *United States v. Stewart*, 433 F.3d 273, 303 (2d Cir. 2006) (citing *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 556 (1984)).  It is also necessary for the Court to inquire about the nature of the sexual abuse that Juror 50 experienced.  Had Juror 50 disclosed in response to Question 48 that he was the victim of sexual abuse, he would have had to explain the nature of that abuse in his response to the very next question.  *See* Question 48a.  Furthermore, it is important for the Court to explore the specifics of Juror 50's sexual abuse to determine how similar his experience was to the experiences of the witnesses who testified at trial.  *See United States v. Daugerdas*, 867 F. Supp. 2d 445, 472 (S.D.N.Y. 2012) ("Courts imply bias 'when there are similarities between the personal experiences of the juror and the issues being litigated.'" (quoting *United States v. Sampson*, 820 F. Supp. 2d 151, 163-64 (D. Mass. 2011)).  Accordingly, the defense requests that the Court ask Juror 50 the following questions:

1. *The Independent* and the *Daily Mail* reported that you said you were the victim of sexual abuse when you were child, correct?

2. Did you say that?

3. So, it is accurate that you claim to have been a victim of sexual abuse when you were under the age of consent?

4. How old were you when you were sexually abused?

The Honorable Alison J. Nathan
March 1, 2022
Page 3

5.  Who abused you – was it a family member? An acquaintance? A stranger?

6.  Was it someone in position of authority or trust – a teacher? A coach? A mentor? A family friend? A religious leader – i.e., a priest/rabbi/etc.? A scout master or group leader?

7.  How old was the person who abused you?

8.  How many times were you abused?

9.  Over how long a time period did the abuse happen?

10. What was the nature of the sexual abuse?

    a.  Did the abuse involve sexual touching?

    b.  Did the abuse involve just you and the abuser, or were others ever involved?

11. Where were you when the abuse took place?

    a.  Were you at your home, or the home of the abuser, or some other place?

    b.  Were your parents nearby or were they absent?

12. Were you living with both your parents when the abuse took place? Or were you in a single parent household?

13. Did you know the accuser before the abuse took place?  For how long?

14. Did the abuser spend time with you before the abuse took place?  Please describe that interaction.

15. Did the abuser spend time with your parents before the abuse took place?  Please describe that interaction.

16. Did the abuser give you attention?

The Honorable Alison J. Nathan
March 1, 2022
Page 4

17. Did the abuser give you gifts?

18. Did the abuser buy you things?

19. Did the abuser offer to help you in any way?

20. Did the abuser discuss sexual topics with you before the abuse took place?

21. Did the abuser otherwise try to normalize sexual topics or sexual situations before the abuse took place?

22. How old were you when the abuse stopped?

23. Did you report the abuse right away?  Why not?

24. When did you report the abuse?

    a.   How old were you?

    b.   To whom did you report the abuse?

    c.   What led you to report the abuse at that time?

    d.   Did you seek counseling for the abuse?

25. What you have described was a very traumatic event, wouldn't you agree?

26. This is the kind of event that someone never forgets, right?

27. This is something that you never forgot?

28. You agree that what was done to you was a crime?

29. As you sit here today, do you consider yourself to be the victim of a crime?

30. Was a friend or family member of yours ever the victim of sexual abuse?

31. Please explain the nature of the sexual abuse they experienced.

    a.   [REPEAT SAME QUESTIONS AS ABOVE]

The Honorable Alison J. Nathan
March 1, 2022
Page 5

32. The jury questionnaire that you filled out before you were selected to be a juror on this case asked you the following question: "Have you or a friend or a family member ever been the victim of sexual harassment, sexual abuse, or sexual assault?"

   a. That was Question 48?

   b. And it gave you the choice of marking "Yes (self)" or "Yes (friend of family member)" or "No"?

   c. And you marked "No"?

   d. Based on what you have just described about your own experience of being sexually abused as a child, that answer is not true, correct?

33. The jury questionnaire also asked you the following question: "Have you, or any of your relatives or close friends, ever been the victim of a crime?"

   a. That was Question 25?

   b. And it gave you the choice of marking "Yes (self)" or "Yes (friend of family member)" or "No"?

   c. And you marked "No"?

   d. Based on what you have just described about your own experience of being sexually abused as a child, that answer is not true, correct?

**B. Questions to Probe the Reasons for Juror 50's Responses to the Questions on the Questionnaire and the Credibility of His Explanations**

The Court ruled that the scope of the hearing must include an inquiry into "the explanation for [the] answers" that Juror 50 gave to the questions in the jury questionnaire.  2/24/2022 Op. & Order at 7.  The Court therefore must ask questions that explore Juror 50's level of knowledge

The Honorable Alison J. Nathan
March 1, 2022
Page 6

about the case before he completed the jury questionnaire, his state of mind when he completed

the questionnaire, and how he approached the task of completing the questionnaire, as well as

questions that test Juror 50's after-the-fact explanation that he "flew through" the questions.

Accordingly, the defense requests that the Court ask Juror 50 the following questions:

1. You were aware of the case before jury selection began, correct?

2. Tell me everything you can recall knowing about either Jeffrey Epstein or Ghislaine
   Maxwell before jury selection began.

   a. What did you learn about the case from media reports?

   b. When did you learn that it was a case involving allegations of sexual abuse of
      minors?

3. When you first learned of this case in the media, that must have caused you to think
   about your own abuse as a child, correct?

   a. That must have caused you to want to know more about the case, right?

   b. As a victim of serious child sexual abuse, you must feel sympathy for other
      victims, correct?

   c. Do you identify with them as people who had experienced the same type of
      abuse that you had experienced as a minor?

4. When you were called for jury duty, did you know which case you were summoned
   for?

5. When you arrived at the courthouse on the day you received your questionnaire, you
   learned that you were summoned for the Maxwell case?

The Honorable Alison J. Nathan
March 1, 2022
Page 7

6. And you recognized her as someone who was accused of helping Jeffrey Epstein sexually abuse children?

7. You also heard a preview of the case before completing your questionnaire?

8. The questionnaire included a summary of the case on the second page?

   a. That summary explained that the charges in the indictment "stem from allegations that from at least 1994 through 2004, the Defendant conspired with and aided and abetted Jeffrey Epstein to entice minors to travel to engage in criminal sexual activity, to transport minors to engage in criminal sexual activity, and to engage in sex trafficking of a minor"?

   b. You read that summary before completing the questionnaire?

9. So, before you started answering the questions on the questionnaire, you knew the case involved allegations of sex abuse of minors and sex trafficking of minors?

   a. How did that make you feel about the case?

   b. Did it cause you to think about your own sexual abuse as a child?

   c. Did it cause you to feel sympathy for the victims?

10. You were asked to read the jury questionnaire and answer the questions?

    a. The jury questionnaire was several pages long?

    b. And it contained 51 questions?

    c. And some of those questions had subparts?

11. When you first got the questionnaire, you read through the Preliminary Instructions on the first two pages?

The Honorable Alison J. Nathan
March 1, 2022
Page 8

12. You knew that you were "sworn to give true and complete answers to all questions in

[the] questionnaire"?

13. So, you knew that you needed to pay attention to the questions, read them carefully,

and answer truthfully?

14. You are familiar with this kind of attention to detail in your own work, correct?

    a.   You work for ██████████████

    b.   You are employed as an executive assistant?

    c.   ██████████████ expects thoroughness and attention to detail from its

        employees, especially on important matters, correct?

    d.   Your job requires you to be thorough?

    e.   Your job requires you to be accurate?

    f.   Your job requires you to be truthful?

    g.   You don't "fly through" important tasks at your job?

    h.   You know how to read a document carefully?

    i.   And you knew that truthful and accurate responses on the jury questionnaire

        was critical for selecting a fair and impartial jury in this trial?

15. You knew that you had as much time as you needed to read the questionnaire and

answer the questions accurately?

    a.   You weren't given any time limits to complete the questionnaire?

    b.   You did not feel pressured to complete the questionnaire quickly?

The Honorable Alison J. Nathan
March 1, 2022
Page 9

16. When you got to end of the questionnaire, you signed your name and swore under

   penalty of perjury that your answers were "true and correct"?

   a. When you are required to affirm the truth of your answers, you read them

      carefully before you sign your name?

   b. You had the opportunity to go back and check your answers before you signed

      the questionnaire?

   c. Did you review your answers?

17. You have spoken to the media on several occasions about your involvement as a juror

   in this case?

   a. You spoke to a reporter working with a UK publication called *The*

      *Independent*?

   b. You spoke to a reporter working with the UK publication called the *Daily*

      *Mail*?

   c. You gave a videotaped interview to that same reporter?

   d. And you spoke to a reporter working for Reuters?

   e. You told the Reuters reporter that you "flew through" the questionnaire?

18. Please look at page 8 of the questionnaire.  That is the section entitled "Basic Legal

   Principles and Media Restrictions"?

   a. It starts off with a series of questions that ask you whether you can accept

      certain legal principles that you must accept in order to serve on the jury?

   b. Those are Questions 10-14?

The Honorable Alison J. Nathan
March 1, 2022
Page 10

    c.   You read those questions?

    d.   You understood those questions?

    e.   You knew that if you responded "No" to any of these questions, you might not be able to serve on the jury?

    f.   And you responded "Yes" to each?

    g.   You gave truthful and accurate responses to those questions?

    h.   Then at Question 15, the questions switch – they describe some of the anticipated evidence in the case and they ask you whether that kind of evidence would affect your ability to be fair and impartial?

    i.   Those are Questions 15-16?

    j.   You read those questions?

    k.   You understood those questions?

    l.   You knew that if you responded "Yes" to any of these questions, you might not be able to serve on the jury?

    m.   So, it was the reverse of Questions 10-14?

    n.   And you responded "No" to each?

    o.   You gave truthful and accurate responses to those questions?

    p.   You didn't "fly through" Questions 15 and 16 and answer "Yes" simply because you had checked "Yes' for Questions 10-14?

    q.   You read the questions carefully and realized they were asking something different, and as a result, you gave a different answer?

The Honorable Alison J. Nathan
March 1, 2022
Page 11

19. Please look at pages 11-13 of the questionnaire.  That is the section entitled

"Experience as a Witness, Defendant, or Crime Victim"?

    a.  Those questions explored whether you or a relative or a close friend had any

       experiences with the legal system or with law enforcement or with being a

       crime victim that might prevent you from being a fair and impartial juror?

    b.  Each of those questions had multiple parts?

    c.  If you answered "yes," to any of those questions, you would have to provide

       further information and potentially a written explanation?

    d.  You read those questions?

    e.  You understood those questions?

    f.  Those questions included Question 25, which asked you if you were the victim

       of a crime?

    g.  You responded "No" to each of those questions?

    h.  You didn't respond to any of the sub-questions that asked for further

       information if you answered "Yes" to the first question?

    i.  You skipped those?

    j.  Because you had read the initial question and the follow-up questions closely

       and realized that you didn't need to answer the follow-up questions if you

       answered "no" to the first question?

20. Please look at pages 19-21 of the questionnaire.  That is the section entitled

"Knowledge of the Case and People"?

The Honorable Alison J. Nathan
March 1, 2022
Page 12

    a. As the title suggests, this section contains questions about your knowledge of the case and the relevant parties and whether you have formed any opinions about them?

    b. With the exception of the last question in this section (Question 41), all of the questions ask you to provide additional information if your answer is "yes or unsure"?

    c. And you did provide additional information?

    d. You provided a written response to Question 34 because you answered that question "Yes."

    e. You didn't just "fly through" that question?

    f. You took the time to give a written response, as the questionnaire requested?

    g. You also provided a written response to Question 37 because you answered that question "Yes."

    h. You didn't just "fly through" that question either?

    i. You took the time to give a written response, as the questionnaire requested?

    j. Please look at Question 41.  As I mentioned, Question 41 is the only question in this section that asks for further information if your answer to the initial question is "No"?

    k. And you responded "Yes."

    l. You did not "fly through" that question and answer "no"?

The Honorable Alison J. Nathan
March 1, 2022
Page 13

m.  You responded "Yes" because you carefully read the question and realized that it was asking something different?

n.  The two questions before Question 41 asked if information you had heard about the case might make it difficult for you to be a fair and impartial juror?

o.  You responded "No" to those questions?

p.  By contrast, Question 41 asked whether you could put aside anything you heard and decide the case on the evidence?

q.  You responded "Yes" to that question?

r.  Because you had read the question carefully enough to know that your response to the question was different from the previous two?

21. Please look at pages 24 of the questionnaire.  That is where Question 48 appears?

a.  You told the reporter from Reuters that you "flew through" the questionnaire and you don't recall being asked on the questionnaire about personal experiences with sexual abuse?

b.  You also told the reporter from the *Daily Mail* in your video interview that you weren't asked about your sexual abuse history in the jury questionnaire?

c.  When the reporter from the *Daily Mail* told you that Question 48 asked that very question, you said "I don't remember it being there."

d.  But you also said, "I definitely remember a family or relative or something … being sexually abused."

The Honorable Alison J. Nathan
March 1, 2022
Page 14

    e.   And when you made that statement to the *Daily Mail* reporter, you had not seen your jury questionnaire since you had filled it out.

    f.   So, at the time of your interview with the *Daily Mail*, you recalled a question about whether or not a family member or a relative was sexually abused, but you didn't recall a question about whether you yourself were sexually abused?

    g.   Question 48 is the only question in the entire questionnaire that asks whether you or a friend or a family member has been the victim of sexual abuse?

    h.   And the word "you" comes before "friend" and "family member"?

    i.   So, you're saying that you read this question closely enough at the time you filled out the questionnaire to remember that it asked about sexual abuse involving your friends and family members, but not involving yourself?

    j.   So, you didn't "fly through" this question – you remember almost all of it?

    k.   The only part you now claim you "flew through" is the part that asked about your own sexual abuse?

### C. Questions to Probe Whether Juror 50 Was Biased Due to His Childhood Sexual Abuse and Could Have Been Struck for Cause

Apart from the questions set forth above concerning the similarities between Juror 50's childhood sexual abuse and those of the witnesses—which alone is sufficient to support a for cause challenge—the Court should inquire about other possible sources of actual, implied, and inferred bias that may have resulted from his abuse. *See United States v. Torres*, 128 F.3d 38, 43 (2d Cir. 1997) (Challenges for cause can be based on implied bias, inferable bias, or actual bias). The defense believes it serves no purpose to ask Juror 50 what he would have said if he had been

The Honorable Alison J. Nathan
March 1, 2022
Page 15

asked, at the time of jury selection, whether he could still be fair and impartial juror despite his experience with childhood sexual abuse.  Similarly, it serves no purpose to ask Juror 50, after the fact, whether his experience with childhood sexual abuse affected his ability to be a fair and impartial juror during the deliberations.  Both questions will elicit only self-serving answers.  The Court should, instead, ask Juror 50 questions that are designed to elicit the impact that the sexual abuse had on Juror 50 and his ability to impartially assess evidence of a case involving sexual abuse.

1.  How has the sexual abuse you experienced as a child affected your life?

    a.  Did it affect how you interact with people?  How?

    b.  Did it affect your ability to trust people?  How?

    c.  Did it affect your personal relationships?  How?

2.  Have you ever been involved in victims' rights groups or victim advocacy?

    a.  Do you support victims' rights or victim advocacy groups?

    b.  Are you a member of any of these groups?

    c.  Do you donate your time to these groups?

    d.  Do you donate money to these groups?

    e.  Have you ever attended rallies or protests in support of victims' rights?

3.  Did you seek mental health counseling to address the abuse you experienced?

    a.  You have spoken publicly about your own therapy in your social media posts?

    b.  How long have you been in therapy?

    c.  Have you used your therapy to address your feelings about the abuse?

The Honorable Alison J. Nathan
March 1, 2022
Page 16

    d.   Have you participated in any support groups for sexual abuse survivors? Which ones?  How often?

4.   You posted on your Instagram account shortly after the trial that you "see a therapist regularly" who has given you "some help dealing with the stress from this case."

    a.   Did you speak to your therapist before trial when you became a potential juror on this case?

    b.   Did you speak to your therapist during trial while serving as a juror on this case?

    c.   Did you speak to your therapist after the trial?

    d.   Were your feelings of stress you mentioned in your Instagram post caused in any way by the allegations of sexual abuse?

    e.   Were your feelings of stress caused in any way by the testimony of the witnesses?

    f.   Did their testimony cause you to revisit your own traumatic experience of sexual abuse?

5.   You made number of statements to the media about how you remember your own abuse?

    a.   You told *The Independent* "I know what happened when I was sexually abused. I remember the color of the carpet, the walls.  Some of it can be replayed like a video."

The Honorable Alison J. Nathan
March 1, 2022
Page 17

    b.   You believe that there are parts of your memory of your own abuse that are like a video tape that can be played back?

    c.   Those parts of your memory are frozen and inalterable (like a videotape) and are so vivid that they cannot be altered by the passage of time?

    d.   And you believe that all victims' memories function this way?

    e.   You believe that victims may not be able to remember all of the details, but they will never forget or misremember the core aspects of the abuse?

    f.   Does that include who participated in the abuse?

    g.   Do you believe it is possible that someone who makes an allegation of child sexual abuse can be mistaken about who abused them?

    h.   You do not credit other people who say that victims may misremember even core details of their abuse?

    i.   You have this belief because that's how your memory of your own abuse functions?

    j.   That is a belief that you had even before jury selection began?

    k.   And had you been asked about this belief during voir dire, you would have disclosed it?

6.   Being a victim of a sexual assault is something you will never forget, is that a fair statement?

7.   As a former victim you are sympathetic to other victims of sexual abuse?

2100689.3

The Honorable Alison J. Nathan
March 1, 2022
Page 18

8. Do you agree with the following statement: "Based on my own experience and without knowing the particular facts of any case, if someone claims that they were abused, it is more likely that I will believe they are telling the truth"?

9. Do you believe that people who make allegations of being sexually abused as a child are usually telling the truth?

10. Do you believe that victims would not go through the stress of testifying at trial about the sexual abuse they suffered as a child unless they were telling the truth?

### D. Questions to Elicit Whether Juror 50's Responses to Questions 48 and 25 of the Jury Questionnaire Were Deliberately or Intentionally False

The Court did not resolve whether the standard for a new trial requires the prospective juror to make a deliberate false statement on the jury questionnaire or whether an inadvertent misstatement is sufficient as long as a correct response would have provided a valid basis for a challenge for cause. *See* 2/24/2022 Op. & Order at 4 n.3. The defense and the *amici* believe that that a deliberate misstatement is not required. Nevertheless, because this issue has not been resolved, the Court should ask additional questions to elicit whether Juror 50's responses to Questions 48 and 25 were deliberately false. That includes questions to establish when he first spoke to the press, whether he contacted the press himself, whether he got paid for his interviews, and what his intentions were about serving on the Maxwell jury.

Ms. Maxwell submits that whether Juror 50 received payment for interviews after the trial is probative of his intention to not disclose information during *voir dire* that would have called into question his ability to serve as a fair and impartial juror. As discussed in the Amicus Brief, fame, prestige, and profit are powerful motivators; and the lure has given rise to the so-called

The Honorable Alison J. Nathan
March 1, 2022
Page 19

"stealth juror" who deliberately lies or evades full disclosure of bias to get on a jury.  *See* Dkt. 614

at 4-5.  Jurors who have served in high-profile trials have become instant celebrities, garnering 15-

minutes of fame and beyond.  They are interviewed by the press; appear on talk shows,

documentaries, and podcasts; publish books; and even become employed as trial consultants.  The

proliferation of social media and 24-hour news channels has made the media interest surrounding

jurors more intense and has created abundant opportunity for jurors to step into the limelight and

profit from their experience.  Jurors have profited financially[1] and gained notoriety from

publishing books,[2] being interviewed,[3] and securing employment based on their trial experience.[4]

---

[1] Alternate Juror No. 2, Jeffrey Welbaum sold his trial notebooks to Vincent F. Amen, *The Michael Jackson Trial Juror Notebooks.* https://www.vincentfamen.com/juror-notebooks/;*;* Michael Knox, author of *Private Diary of an O.J. Juror,* reportedly received $100,000 advance. https://www.latimes.com/archives/la-xpm-1995-05-23-mn-5092-story.html).

[2] *See* Dkt.614 at n 3*; see also* Greg Beratlis, Juror No. 1, Tom Marino, Juror No. 2, Mike Belmessieri, Juror No. 4, Dennis Lear, Juror No. 5, Richelle Nice, Juror No. 7, John Guinasso, Juror No. 7, and Julie Zanartu, Juror No. 9, *We, the Jury: Deciding the Scott Peterson Case;* Jury Foreman Herman Tubic*, Inside the Manson Jury: From Deliberation to Death Sentence.*

[3] CNN broadcast a joint interview of Chauvin jurors days before the trial judge officially released names of jury members. https://www.cnn.com/videos/us/2021/10/28/don-lemon-derek-chauvin-trial-jurors-newsroom-vpx.cnn; Jury Duty host Kary Antholis interviewed Durst jurors.  Durst Trial Podcast: Juror Interviews. https://shows.acast.com/jury-duty-the-trial-of-robert-durst/episodes; https://podcasts.apple.com/bh/podcast/jury-duty/id1521920134; Interviews of Chauvin Juror No 52 Brandon Mitchell. https://www.facebook.com/ABCNewsLive/videos/watch-juror-brandon-mitchell-speaks-to-abc-news-robin-roberts-in-his-first-telev/129172915896546/; https://abcnews.go.com/US/derek-chauvin-juror-trial-watching-die-daily-basis/story?id=77361744; Interview of Alternate Juror Lisa Christenson. https://www.youtube.com/watch?v=FsgDdd4pcbY.

[4] *See, e.g.,* Stephanie Francis Ward, *Former Jurors To Be Consultants-Defense is Hiring Them For Help in Gang-Rape Retrial,*30 A.B.A. J. E. REP., July 30, 2004; Michael D. Goldhaber, *Thinking Out of the Jury Box: Lawyer-Juror on Hung Panel Joins the Defense for Retrial,* NAT'L L.J., July 26, 1999.

The Honorable Alison J. Nathan
March 1, 2022
Page 20

Money, fame, and prestige are powerful motivators enhancing a prospective juror's desire to be seated in a high-profile case. The amount of money Juror 50 may have received post-verdict may have minimal relevance. However, whether he hoped he would gain the opportunity to profit from jury service in the Maxwell trial is relevant to his motive to be selected as a juror on this case and may underly his failure to truthfully answer Questions 25 and 48.

1.  When did you first have contact with a member of the media concerning this case?

    a.  Was it before, during, or after jury deliberations?

    b.  You already told us that you spoke journalists working for *The Independent*, the *Daily Mail*, and Reuters?

    c.  When did you first make contact with each of them?

    d.  Who made the first contact – did you first contact the journalists, or did they contact you?

    e.  Did you speak to any other member of the media? When? Who reached out to whom?

2.  Did you get paid for any of these interviews?

    a.  Was that part of the reason you spoke to the media?

3.  When did you first decide that you would talk to the media about your experience as a juror on the Maxwell case?

    a.  Was it after you were selected as a juror, but before the trial began?

    b.  Was it during the trial, but before jury deliberations began?

    c.  Was it during jury deliberations?

The Honorable Alison J. Nathan
March 1, 2022
Page 21

    d.  Was it after the verdict?

4.  You did not shy away from speaking publicly about your jury service?

5.  You did not shy away from publicly revealing that you were a victim of child sex abuse?

6.  What was your reason for going public?

    a.  You told the reporter from *The Independent*: "This verdict is for all the victims" and "shows that you can be found guilty no matter your status."

    b.  When Annie Farmer posted a Tweet thanking you for your jury service, you Tweeted back "Thanks for sharing my story."

    c.  In early January, shortly after the trial was over, you posted the following message on Instagram: "I can now tell everyone that I was a juror on the Ghislaine Maxwell trial."

7.  Did you want to be on the Maxwell jury?

    a.  Did you think it was important that you be on the Maxwell jury as a survivor of childhood sexual abuse?

    b.  Did you view your role on the jury as a someone who could provide the perspective of someone who had been abused as a child?

    c.  Did you view the verdict as a triumph for victims over abusers?

    d.  Was it your intent to "share your own story" about being a juror on the Maxwell case after the trial was over?

The Honorable Alison J. Nathan
March 1, 2022
Page 22

   e. By speaking to the media, did you want to be viewed as a champion of victims

of sexual abuse?

          Sincerely,


           /s/ Christian Everdell
          Christian R. Everdell
          **COHEN & GRESSER LLP**
          800 Third Avenue, 21st Floor
          New York, New York 10022
          (212) 957-7600


cc:  All Counsel of Record (by ECF)


2100689.3