UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- x
                                             :
UNITED STATES OF AMERICA                     :
                                             :          S2 20 Cr. 330 (AJN)
            v.                               :
                                             :
GHISLAINE MAXWELL,                           :
                                             :
                    Defendant.               :
                                             :
                                             :
------------------------------------------------------- x


### REPLY MEMORANDUM OF GHISLAINE MAXWELL
### IN SUPPORT OF HER POST-TRIAL MOTIONS


Christian R. Everdell
COHEN & GRESSER LLP
800 Third Avenue
New York, NY 10022
Phone: 212-957-7600


Jeffrey S. Pagliuca
Laura A. Menninger
HADDON, MORGAN & FOREMAN P.C.
150 East 10th Avenue
Denver, Colorado 80203
Phone: 303-831-7364


Bobbi C. Sternheim
Law Offices of Bobbi C. Sternheim
33 West 19th Street - 4th Floor
New York, NY 10011
Phone: 212-243-1100


*Attorneys for Ghislaine Maxwell*

# TABLE OF CONTENTS

**Page**

I.      The Court's Response to the Jury Note (Court Exhibit #15) Was Erroneous and
        Resulted in a Constructive Amendment/Variance. ............................................................. 1

        A.      The Jury Note Indicated that the Jury Misunderstood the Intent Requirement
                for Count Four......................................................................................................... 3

        B.      The Court Erred When It Declined to Give the Jury a Supplemental
                Instruction Clarifying the Intent Requirement for Count Four............................. 7

II.     All Three Conspiracy Counts Are Multiplicitous Because They Are Based on a
        Single Underlying Criminal Scheme. ............................................................................... 10

        A.      The Criminal Offenses Charged .......................................................................... 12

        B.      Overlap in Participants, Time, and Geographic Scope ........................................ 14

        C.      Common Overt Acts ............................................................................................. 16

        D.      Similarity of Operation, Common Objectives, and Degree of
                Interdependence ................................................................................................... 17

III.    The Court Should Grant Ms. Maxwell's Other Motions. .................................................. 18

CONCLUSION............................................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bollenbach v. United States*,
  326 U.S. 607 (1946).......................................................................................................2

*United States v. Broce*,
  488 U.S. 563 (1989).....................................................................................................11

*United States v. Calderone*,
  982 F.2d 42 (2d Cir. 1992)......................................................................................16, 17

*United States v. Gross*,
  No. 15-cr-769 (AJN), 2017 WL 4685111 (S.D.N.Y. Oct. 18, 2017) ...............................2, 7, 8

*United States v. Guzman*,
  7 F. App'x 45 (2d Cir. 2001) .........................................................................................12

*United States v. Korfant*,
  771 F.2d 660 (2d Cir. 1985) (*per curiam*) .................................................................11, 12, 13

*United States v. Millstein*,
  401 F.3d 53 (2d Cir. 2005)............................................................................................3, 8

*United States v. Parker*,
  903 F.2d 91 (2d Cir. 1990).............................................................................................2, 7

*United States v. Reid*,
  475 F. App'x 385 (2d Cir. 2012) ...................................................................................15

*United States v. Sattar*,
  314 F. Supp. 2d 279 (S.D.N.Y. 2004)........................................................................11, 13

*United States v. Villa*,
  No. 12 Cr. 40 (JBA), 2014 WL 252013 (D. Conn. Jan. 22, 2014) .........................................13

**Statutes**

18 U.S.C. § 2422........................................................................................................12

18 U.S.C. § 2423(a) ....................................................................................................12

New York Penal Law, Section 130.55....................................................................................8, 9

**Other Authorities**

Federal Rule of Criminal Procedure Rule 33..................................................................................18

Federal Rule of Criminal Procedure Rule 29............................................................................18, 19

Ghislaine Maxwell respectfully submits this Reply Memorandum in Support of her Post-Trial Motions ("Motion" or "Mot.").

## I.   The Court's Response to the Jury Note (Court Exhibit #15) Was Erroneous and Resulted in a Constructive Amendment/Variance.

As the government states in its Opposition to Ms. Maxwell's Motion ("Opp."), the parties agree that the Mann Act offenses for which Ms. Maxwell was convicted required the following proof of intent: that Ms. Maxwell "knowingly transported Jane with the intent that Jane engage in criminal sexual activity *in New York*" (Count Four) and that she "conspir[ed] to entice and transport minors in interstate commerce with the intent that they engage in criminal sexual activity *in New York*" (Counts One and Three).  (Opp. at 6 (emphasis added)).  Stated differently, the government agrees that if the jury found that Ms. Maxwell intended for Jane or the other victims of the Mann Act conspiracies to engage in sexual activity in some place other than New York, such as New Mexico, that would not be sufficient, by itself, to convict Ms. Maxwell of the Mann Act counts.  (Opp. at 6-7 ("As the defendant correctly states … 'it was necessary to prove that [the defendant] enticed or caused underaged girls to travel to *New York*, or conspired to do the same, with the intent that they would engage in illegal sexual activity that violated *New York* law.'" (quoting Mot. at 1) (emphasis in original)).

Similarly, the government does not dispute that, for purposes of a constructive amendment analysis, Ms. Maxwell's intent to have Jane or the other victims of the Mann Act conspiracies engage in sexual activity within the state of New York that violated New York law was an "essential element" of Counts One, Three, and Four, and part of the "core of criminality" for those charges.  (Opp. at 6 ("That is the core of criminality charged in the S2 Indictment, and it is what the Government proved at trial and the Court captured in its jury instructions.")).  The only dispute is whether "the evidence or jury instructions at trial created a substantial likelihood

that [Ms. Maxwell] was not convicted of the crime described in that core, but of a crime 'distinctly different' from the one alleged." *United States v. Gross*, No. 15-cr-769 (AJN), 2017 WL 4685111, at *21 (S.D.N.Y. Oct. 18, 2017). In other words, the dispute is whether there is a substantial likelihood that the jury convicted Ms. Maxwell on Counts One, Three, and Four *without* finding that she intended Jane and the other victims to engage in sexual activity in New York in violation of New York law, and instead convicted her of a "distinctly different" crime based on a finding that she intended the illegal sexual activity to occur in New Mexico.

Based on a plain reading of the Jury Note (Court Exhibit #15), it is substantially likely that this is exactly what happened in this case. The government once again confidently states that there is "no likelihood" that this could have occurred because the government never argued this as a theory of guilt and the jury instructions required the jury to find that Ms. Maxwell intended to violate New York law. (Opp. at 10). But that argument misses the mark entirely. Regardless of what the government did or did not argue in its summation, or what the jury instructions did or did not say about the intent requirement for Count Four, the Jury Note laid bare that the jury was confused about that element and had the mistaken belief that if it found that Ms. Maxwell intended for Jane to engage in sexual activity *in New Mexico*, and the other elements of Count Four were satisfied, it could convict Ms. Maxwell on Count Four *without* finding that she intended Jane to engage in sexual activity in New York.

At that point, it was incumbent on the Court to correct the jury's misunderstanding of an essential element of the offense with a supplemental instruction, as the defense requested. *See Bollenbach v. United States*, 326 U.S. 607, 612-13 (1946) (When "a jury makes explicit its difficulties [through a written inquiry,] a trial judge should clear them away with concrete accuracy"); *United States v. Parker*, 903 F.2d 91, 101 (2d Cir. 1990) (when a jury sends a note

2

indicating that it is confused, "[i]t is the responsibility of the trial judge to provide the jury with sufficient instruction to enable it to assess the evidence within the proper legal framework and to reach a rational verdict"). The Court's decision not to do so and to refer the jurors to the existing jury instructions, which had caused the confusion in the first place, was erroneous and resulted in a constructive amendment and/or variance by permitting the jury to convict Ms. Maxwell on the Mann Act counts based on an alternative theory of guilt not charged in the Indictment. *See United States v. Millstein*, 401 F.3d 53, 65 (2d Cir. 2005) ("When the trial evidence or the jury charge operates to broaden the possible bases for conviction from that which appeared in the indictment, the indictment has been constructively amended." (cleaned up)). Accordingly, the Court should vacate her convictions on Counts One, Three, and Four and grant a new trial.[1]

### A.    The Jury Note Indicated that the Jury Misunderstood the Intent Requirement for Count Four.

The Court erred when it concluded that that the Jury Note was "too difficult to parse" and declined to give the jury a supplemental instruction. (Tr. 3126-40). In fact, the text of the Jury Note is straightforward and indicates on its face that the jurors had an incorrect understanding of the intent requirement for Count Four that needed to be clarified with a supplemental instruction. The Note reads:

> Under Count Four (4), if the defendant aided in the transportation of Jane's return flight, but not the flight to New Mexico where/if the intent was for Jane to engage in sexual activity, can she be found guilty under the second element?

(Court Exhibit #15). Stated slightly differently, but using the same words that the jurors themselves used, the question posed by the Jury Note was the following:

---

[1] The government contends that this argument is "better framed as a challenge to the Court's response to the jury note or a challenge to the jury instructions in the form of a constructive amendment argument." (Opp. at 20). It is not clear to the defense how these arguments differ in any material respect from the one we are advancing. For the sake of clarity, we are claiming that the Court's response to the Jury Note was erroneous and resulted in a constructive amendment/variance.

Under the second element of Count Four, can the defendant be found guilty if the defendant's intent was for Jane to engage in sexual activity in New Mexico and if the defendant aided in the transportation of Jane's return flight from New Mexico, but not the flight to New Mexico?

Hence, the question posed by the Jury Note contained two parts. The jury wanted to know if it was sufficient to satisfy the second element of Count Four if it found (1) that Ms. Maxwell's intent was for Jane to engage in sexual activity in New Mexico, and (2) that Ms. Maxwell assisted with Jane's return flight from New Mexico, but not her flight to New Mexico. That is the straightforward, common sense reading of the Jury Note.

The answer to the first part of the jury's question is an unequivocal no. The jury instruction for the second element of Count Four charged that the government had to prove beyond a reasonable doubt that Ms. Maxwell "knowingly transported Jane in interstate commerce with an intent that Jane engage in sexual activity for which any person can be charged with a criminal offense *in violation of New York law*." (Instr. No. 21 (emphasis added)). It was therefore not sufficient to satisfy this element if the jury found that Ms. Maxwell intended for Jane to engage in sexual activity in New Mexico. Any sexual activity that occurred in New Mexico could not, by definition, be a violation of New York law.

Accordingly, the Jury Note revealed that the jury had a fundamental misunderstanding of the intent requirement under Count Four. The jury needed to be given a supplemental instruction clarifying that to convict under Count Four, they needed to find that Ms. Maxwell intended for Jane to engage in sexual activity *in New York* and that any sexual activity that occurred in New Mexico, while it was potentially relevant evidence, could not have violated New York law. The Court's decision to simply refer the jury to the existing jury instruction for the second element of Count Four did nothing to cure the misunderstanding because the jury already had those instructions and was still evidently confused about the proof necessary to satisfy Count Four. As

a result, there is a substantial likelihood that the jury convicted Ms. Maxwell on Count Four based on a constructive amendment of the crime charged in the Indictment.

The government goes to great lengths to muddy the common sense reading of the Jury Note by focusing on peripheral or irrelevant issues, or by mischaracterizing the text of the Note, or even by inserting words, phrases, and punctuation that are not contained in the Note, in an effort to confuse and complicate the analysis.  (Opp. at 15-17).  This is nothing more than misdirection and should be rejected.

For example, the government asserts that Jane's testimony concerning the New Mexico conduct was proper and relevant to the jury's consideration of the Mann Act counts, and that the jury "could have convicted even if no sexual abuse occurred in New York, so long as it concluded that the defendant *intended* for abuse to occur in New York."  (Opp. at 11-12 (emphasis in original)).  The Court itself raised this same point in declining to give the jury the requested supplemental instruction.  (Tr. 3149-50).  Ms. Maxwell does not dispute either assertion.  But that is not the issue raised by the Jury Note.  In fact, the Jury Note makes clear that the jury was considering convicting Ms. Maxwell on Count Four *without* concluding that she intended for Jane to be abused in New York.  The question posed in the Jury Note was whether Ms. Maxwell could "be found guilty" under the second element of Count Four (to use the jury's own words) if the jury found that Ms. Maxwell's intent was for Jane to engage in sexual activity in New Mexico.  (Court Exhibit #15).  In other words, the jury was asking whether they could convict Ms. Maxwell on Count Four based on that intent, and that intent alone.  The answer to that question is no, and the jury should have been so instructed to prevent a constructive amendment.

The government further argues that the Jury Note is ambiguous because it is not clear which flights it refers to or where the jury believed the sexual activity occurred. (Opp. at 15-16). The first point is irrelevant and the second is based on a disingenuous reading of the Jury Note. As to the flights, it is true that one of the jury's questions was whether it was sufficient to convict under Count Four if the jury found that Ms. Maxwell assisted with Jane's return trip from New Mexico, but not her flight to New Mexico. But the problem raised by the Jury Note had nothing to do with the specific flights the jury may have been referring to, or whether Jane was on those flights, or whether those flights may have gone to New York. The problem raised by the Jury Note related to the jury's other question about Ms. Maxwell's *intent*. The jury was asking whether they could convict on Count Four if they found that Ms. Maxwell's intent was for Jane to engage in sexual activity *in New Mexico*. That was the question that raised the potential for a constructive amendment. And contrary to the government's assertion, the Jury Note was crystal clear about where the jury believed the sexual activity occurred: New Mexico. *See* Court Exhibit #15 ("… the flight to *New Mexico where/if the intent was for Jane to engage in sexual activity* …" (emphasis added)).[2]

Finally, the government attempts to cast further doubt on the clear meaning of the Jury Note by altering its text. The government posits that the jury was asking whether Ms. Maxwell could be found guilty based "in part" on sexual activity occurring in New Mexico. (Opp. at 16). That is simply not what the Jury Note says. The jury could have easily asked that very question: "Can Ms. Maxwell be found guilty on Count Four based in part on Jane's testimony about sexual abuse in New Mexico?" In fact, as the government points out, the jury had previously sent a

---

[2] We note that the government inserted a comma between "New Mexico" and "where/if," which does not exist in the Jury Note. *Compare* Opp. at 13 ("… New Mexico, where/if …") *with* Court Exhibit #15 ("… New Mexico where/if …"). The absence of a comma is significant to the analysis because it clarifies that the jury was focused on New Mexico as the place where Ms. Maxwell intended Jane to engage in sexual activity.

note asking a similar question about Annie Farmer's testimony.  *See* Court Exhibit # 9 ("Can we consider Annie's testimony as conspiracy to commit a crime in Counts One and Three?").  But the Jury Note did not say that, nor did it contain the phrase "in part."  Instead, the Jury Note asked a much more specific question about whether the jury could convict Ms. Maxwell on Count Four if it found that she (1) intended for Jane to engage in sexual activity in New Mexico and (2) aided with Jane's return flight from New Mexico, but not her flight to New Mexico.  The government's speculation about what the jury may have meant cannot alter the clear text and meaning of the Jury Note, which revealed that the jury fundamentally misunderstood the intent requirement necessary for Count Four and needed to be given a supplemental instruction to remedy the confusion.[3]

**B.**     **The Court Erred When It Declined to Give the Jury a Supplemental Instruction Clarifying the Intent Requirement for Count Four.**

The Court further erred when it declined to give the jury a supplemental instruction, as requested by the defense, clarifying the intent requirement for Count Four – namely, that the government had to prove that Ms. Maxwell intended for Jane to engage in sexual activity *in New York*.  The Jury Note showed not only that the jury had a mistaken understanding of the law concerning intent, but also indicated that the jury might convict Ms. Maxwell on Count Four based an alternative theory of guilt not charged in the Indictment.  At that point, it was the responsibility of the Court to give the jury a supplemental instruction "to enable it to assess the evidence within the proper legal framework and to reach a rational verdict" and to avoid a constructive amendment of the charges.  *Parker*, 903 F.2d at 101; *see also Gross*, 2017 WL

---

[3] The government chides the defense for engaging in speculation about what the jury may have been thinking before sending the Jury Note.  (Opp. 17-19).  The defense engaged in that discussion to explain why the proof at trial may have led the jury to focus on Jane's testimony about the conduct in New Mexico with respect to Count Four.  But the Court need not rely on that analysis.  The Jury Note speaks for itself.  The jury was focused on Jane's abuse in New Mexico and misunderstood the intent requirement necessary to convict under Count Four.

4685111, at *23 ("[T]he Second Circuit has emphasized the power of limiting instructions to *prevent* constructive amendment[.]" (emphasis in original)).  By declining to provide a supplemental instruction, the Court created "a substantial likelihood" that Ms. Maxwell was convicted of crimes "distinctly different" from the ones alleged.  *Gross*, 2017 WL 4685111, at *21; *see also Millstein*, 401 F.3d at 65 ("When the trial evidence or the jury charge operates to broaden the possible bases for conviction from that which appeared in the indictment, the indictment has been constructively amended." (cleaned up)).

The government argues that any confusion the jury may have had on the issue of intent was ameliorated by the Court's decision to refer the jury to the existing instruction on the second element of Count Four.  (Opp. at 19).  According to that instruction, the government had to prove that Ms. Maxwell intended "that Jane engage in sexual activity for which any person can be charged with a criminal offense in violation of New York law" and further specified that the relevant criminal offense was a violation of New York Penal Law, Section 130.55.  (Instr. No. 21).  The government contends that the jury could not have misunderstood the instruction because it did not mention New Mexico at all and only mentioned an intent to engage in sexual activity that violated New York law.  (Opp. at 19-20).

The government's confidence, however, is belied by the Jury Note, which indicates that the jury thought it could potentially convict Ms. Maxwell on Count Four if it found that she intended for Jane to engage in sexual activity in New Mexico.  And it is not hard to see where this confusion came from.  Although the jury instructions state that the jury needed to find that Ms. Maxwell intended "that Jane engage in sexual activity for which any person can be charged with a criminal offense in violation of New York law," nowhere in the jury instructions does it state that a violation of New York law, or specifically a violation of Section 130.55, must occur

*within the state of New York.* (*See* Instr. No. 17, 19, 21). To lawyers, that may seem obvious because we are familiar with the concept of jurisdiction and understand the limited territorial reach of state criminal statutes. But to a juror who does not have legal training, it is not so obvious. Based on the jury instructions they had been given, the jury could have easily (but mistakenly) determined that the sexual abuse Jane described in New Mexico was "sexual activity for which any person can be charged with a criminal offense in violation of New York law," as long as it met all the elements of Section 130.55, even though all of the conduct took place in New Mexico. It follows, then, that the jury could have mistakenly believed that if they found that Ms. Maxwell intended for Jane to engage in sexual activity in New Mexico, as opposed to New York, that was sufficient to satisfy the second element of Count Four.

Ultimately, it is not necessary to determine why the jury was confused on this point. The confusion was clear on the face of the Jury Note and needed to be corrected. The defense's proposed supplemental instruction would have clarified this very issue. It stated in relevant part:

> As to the second element of Count Four, you must determine whether the Government has proven beyond a reasonable doubt that the Defendant transported Jane with the intent that Jane would engage in sexual activity *within the state of New York* in violation of New York Penal Law 130.55.

Dkt. 566 (emphasis added). The defense further explained that the instruction needed to be given because, according to the Jury Note, the jury did not understand that Count Four "requires an intent to violate New York law, *and you can't violate this section of New York law in New Mexico.*" (Tr. 3154) (emphasis added). But the Court declined to give this instruction, even though neither the Court nor the government questioned its accuracy. (Tr. 3148-54).[4] The

---

[4] The Court disagreed with the appropriateness of the first paragraph of the defense's proposed instruction and questioned the accuracy of the third paragraph. But neither the Court nor the government challenged the accuracy of the second paragraph, which is quoted above. (Tr. 3148-54). Moreover, even if the Court disagreed with the entire text of the defense's proposed instruction, it was the Court's responsibility to give the jury an appropriate instruction that clarified the intent requirement and prevented a constructive amendment.

Court's error was compounded by its earlier refusal to instruct the jury that Jane's sexual abuse in New Mexico could not be considered "illegal sexual activity" as charged in the Indictment because it was not a violation of New York law, as it had instructed with regard to Kate and Annie Farmer's testimony.  (Tr. 2775-77).  As a result, the jury instructions were insufficient to properly instruct the jury on the law and created a substantial likelihood that Ms. Maxwell was convicted of a crime other than the one alleged in the Indictment.  Moreover, because the Mann Act conspiracy counts (Counts One and Three) required an identical finding of intent, there is a substantial likelihood that the jury improperly convicted Ms. Maxwell on those counts based on the same conduct.  Accordingly, the Court should vacate Ms. Maxwell's convictions on Counts One, Three, and Four, and grant a new trial on these counts.

## II. All Three Conspiracy Counts Are Multiplicitous Because They Are Based on a Single Underlying Criminal Scheme.

The government concedes in its Opposition that the Mann Act conspiracies charged in Counts One and Three are so similar that they are multiplicitous, and that the Court should only enter judgment as to one of those two counts.  (Opp. at 24) ("[T]he Government agrees that the Court should enter judgment on only one of the Mann Act conspiracy counts, given the similarities between those counts.").  The government maintains, however, that the sex trafficking conspiracy charged in Count Five is not multiplicitous and that the Court should enter judgment on Counts Three and Five because they "arose from different criminal schemes, involving different criminal conduct, different statutory predicates, and a different modus operandi."  (Opp. at 24).

The government's attempt to separate and distinguish the conspiracies charged in Counts Three and Five is directly contrary to its theory of prosecution and the proof at trial, and flies in the face of the arguments the government made to the jury.  The government never framed these

counts in the Indictment or in its arguments to the jury as two separate criminal agreements between Epstein and Ms. Maxwell to commit two separate crimes.  To the contrary, the government's theory throughout the case was that Ms. Maxwell participated in a <u>single</u> criminal conspiracy with Epstein, which may have evolved slightly over time, but always maintained the same overarching objective, the same core participants, and the same method of operation throughout the entire time period alleged in the Indictment.

The government's arguments to the jury were consistent with the proof at trial, which established, at most, a single decade-long conspiracy between Epstein and Ms. Maxwell, not multiple independent conspiracies.  *See United States v. Sattar*, 314 F. Supp. 2d 279, 307 (S.D.N.Y. 2004) ("A single agreement to commit several crimes constitutes one conspiracy," but "multiple agreements to commit separate crimes constitute multiple conspiracies" (quoting *United States v. Broce*, 488 U.S. 563, 570-71 (1989)).  Indeed, the government repeatedly emphasized to the jury the similarities of what occurred to the four accusers and the "common playbook" that Epstein and Ms. Maxwell used with each of them.  (Tr. 2848) ("[Maxwell] ran the same playbook over and over and over again as she exploited young girls. The similarities between what happened to Jane and Annie and Carolyn and Kate are incredibly powerful evidence of the defendant's guilt").

The government's current position is a 180-degree about-face and is nothing more than an after-the-fact attempt to preserve as many counts of conviction as possible and avoid the consequences of its own charging theory.  As we explained in our Motion and as discussed further below, under the governing multi-factor test established in *United States v. Korfant*, 771

11

F.2d 660, 662 (2d Cir. 1985) (*per curiam*), Count Three and Count Five are multiplicitous.  The

Court should therefore enter judgment only on Count Three.[5]

### A.    The Criminal Offenses Charged

The government argues that the differences between the offenses charged in Count Three

and Count Five are fatal to the defense's multiplicity argument.  Not so.[6]  Count Five is not a

distinct conspiracy simply because it alleged a different statutory object than Count Three, as the

government claims.  (Opp. at 27).  If that were the case, the government would never have

conceded that Counts One and Three were multiplicitous because they, too, alleged different

statutory objects.  Count One alleged a conspiracy to violate the enticement statute (18 U.S.C. §

2422), while Count Three alleged a conspiracy to violate the transportation statute (18 U.S.C. §

2423(a)).  (Ind. ¶¶ 11-12, 17-18).  Moreover, each of these statutory objects has different

elements.  For example, enticement does not require actual travel in interstate commerce,

whereas transportation does.  (*Compare* Instr. 14 *with* Instr. 19).  Enticement requires persuasion

or inducement to travel, whereas transportation does not.  (*Id*.)  Transportation (in this case)

requires that the defendant know that the individual transported was under the age of seventeen,

whereas enticement does not.  (*Id*.).  These legal distinctions are no less significant than the

distinctions between Count Three and Count Five that were highlighted by the government –

*e.g.*, the age of consent was seventeen for Count Three and eighteen for Count Five, and Count

---

[5] As discussed further below, the conspiracy charged in Count Five is a smaller subset of the larger conspiracy charged in Count Three.  The Court should therefore enter judgment on Count Three.

[6] The government suggests that the defense deliberately asked the Court to ignore this factor to avoid the Court's consideration of it.  That is absolutely incorrect.  The first *Korfant* factor, as set forth in the *Korfant* case itself, is "the criminal offenses charged *in successive indictments*."  *Korfant*, 771 F.2d at 662 (emphasis added).  Hence, it was not evident that this factor applied in cases where the multiplicitous counts were in the same indictment.  The defense accepts that the Second Circuit has applied this factor in such cases and the Court may consider it here.  *See United States v. Guzman*, 7 F. App'x 45, 54-55 (2d Cir. 2001).  But this factor is by no means fatal to the defense's multiplicity argument.

three required travel to New York whereas Count Five did not require interstate travel. (Opp. at 28). Yet the government still readily concedes that Counts One and Three are multiplicitous because the conduct underlying these counts is so similar. Count Five is no different.[7]

Indeed, it is evident from the way the government charged the S2 Indictment that the conduct charged in Count Five is part of the same conspiratorial agreement as the conduct charged in Counts One and Three. The Court will recall that Counts Five and Six, the sex trafficking counts, were added to the Indictment after the government located Carolyn and secured her as a witness. These counts are based primarily on her allegations of sexual abuse and are therefore limited to the time period from 2001-2004. But in superseding the Indictment, the government did not treat Carolyn's allegations as a separate conspiracy. Instead, the government recognized that the abuse she described was a continuation of the same conspiracy and fully incorporated her allegations into the existing Mann Act conspiracies. For example, the government expanded the date range of Counts One and Three from 1994-1997 to 1994-2004 to include Carolyn's abuse and added an overt act to both counts alleging that Ms. Maxwell "invited [Carolyn] to travel from Florida to a place outside of Florida with Epstein." (Ind. ¶¶ 13e, 19e). Consistent with this charging theory, the government argued to the jury that it could consider all of the evidence related to Carolyn as evidence of the Mann Act conspiracies. (Tr. 2895) ("The first two conspiracy counts are from 1994 to 2004. Those counts are about Jane, *Carolyn*, and Annie." (emphasis added)).

---

[7] The cases cited by the government are not to the contrary. In *United States v. Villa*, No. 12 Cr. 40 (JBA), 2014 WL 252013 (D. Conn. Jan. 22, 2014), the District Court considered the nature of the offenses in holding that the relevant conspiracies were different but did not rely exclusively on that factor and instead based its decision on a thorough analysis of all of the *Korfant* factors. *United States v. Sattar*, 314 F. Supp. 2d 279 (S.D.N.Y. 2004) is inapposite on this point because the relevant conspiracies were charged under two separate clauses of the general conspiracy statue and were therefore distinct conspiracies on their face, whereas the conspiracies in the Indictment in this case were all charged under the same clause.

13

The government's decision to add Counts Five and Six, which are based on the same conduct, did not suddenly convert Carolyn's abuse and the conduct she described in the Palm Beach residence from 2001-2004 into a separate, distinct conspiracy.  In fact, the conduct in the 2000s that Carolyn described was no different than the conduct in the 1990s that Jane described. Like Carolyn, Jane testified that Epstein gave her money after almost every sexual encounter with him at this Palm Beach residence, which would support a sex trafficking charge.  (Tr. 301-02).  Indeed, the government concedes that the only reason it did not expand Count Five to include Jane and Annie Farmer's abuse (as it had expanded Counts One and Three to include Carolyn's abuse) was that the sex trafficking statute was not enacted until *after* their abuse had occurred.  (Opp. at 28).  Had that legal impediment not existed, the government could have, and no doubt would have, broadened the date range of Count Five to 1994-2004, as it had done with Counts One and Three, and included overt acts related to Jane.  Instead, the government included a more narrow sex trafficking count based primarily on Carolyn's allegations from 2001-2004, but still framed all of the charges in the Indictment as the product of a single, decade-long scheme between Epstein and Ms. Maxwell to "groom" and recruit minor girls to be sexually abused at Epstein's various residences from 1994 to 2004.  (*See* Ind. ¶¶ 1-2, Overview Section). Accordingly, the offenses charged in the Indictment support a finding of multiplicity.

B.     **Overlap in Participants, Time, and Geographic Scope**

The government makes a half-hearted attempt to deny the obvious overlap between Counts Three and Five in participants, time period, and geographic scope. (Opp. at 30-32).  For example, the government argues that some "but importantly, not all" of the participants in the two conspiracies overlapped, and notes that Sarah Kellen, who scheduled massage appointments for Epstein in Palm Beach, only appeared in the 2000s during the time period of the sex trafficking conspiracy.  (Opp. at 30-31).  But in the end, the government concedes, as it must,

that the core participants of the conspiracies—Epstein and Ms. Maxwell—were consistent throughout and that Carolyn was a victim of the conspiracies charged in both Count Three and Count Five.  (*Id*.)  The addition of Sarah Kellen as a co-conspirator towards the end of the conspiracy does not create multiple conspiracies.  *See United States v. Reid*, 475 F. App'x 385, 387 (2d Cir. 2012) ("[C]hanges in membership do not necessarily convert a single conspiracy into multiple conspiracies, and there is no requirement that the same people be involved throughout the duration of the conspiracy." (cleaned up)).

The government also argues that although the time period of Count Five (2001-2004) was entirely contained within the time period of Count Three (1994-2004), there was no significant temporal overlap because "the gravamen of the offense conduct for Count Three occurred in the 1990s, while the offense conduct charged in Count Five took place in the 2000s."  (Opp. at 31).  That is non-sensical.  Count Three charges a conspiracy lasting continuously from 1994-2004.  Just because three of the witnesses testified about conduct in the 1990s and one of the witnesses testified about conduct in the 2000s, that does not mean that the 1990s conduct was somehow more important or more relevant to Count Three than the 2000s conduct.  As charged, the conspiracy spanned the entire time period.  Hence, the temporal overlap between Count Three and Count Five was not "minimal," as the government contends.  (Opp. at 31).  It was complete. The time period of Count Five was entirely contained within, and overlapped with, the time period of Count Three.

Finally, the government disingenuously argues that the geographic scope of the two conspiracies did not overlap because Count Three "was focused on travel to New York," whereas Count Five "largely concerned conduct that took place in Florida."  (Opp. at 31-32). Here, the government is talking out of both sides of its mouth.  The government argued

repeatedly, and the Court agreed, that evidence of travel to locations other than New York, and sexual abuse that occurred in those locations, was relevant to the Mann Act conspiracies. As a result, the jury heard a great deal of testimony from Jane, Kate, and Annie Farmer, as well as other evidence, about conduct that took place in Epstein's residences in New Mexico, London, the U.S. Virgin Islands, and, of course, Florida. Indeed, a large portion of Jane's testimony, which was relevant to the Mann Act conspiracies, described incidents of sexual abuse in Epstein's residence in Palm Beach that involved no interstate travel. (Tr. 298-315). Accordingly, the geographic scope of Count Five (Florida) was included within the geographic scope of Count Three.

Count Five did not describe a separate, independent conspiracy. Rather, it was a smaller subset of the broader overarching conspiracy charged in Count Three. Counts Three and Five are therefore multiplicitous. *See United States v. Calderone*, 982 F.2d 42, 47-48 (2d Cir. 1992) (finding two conspiracies were multiplicitous where, among other things, the time frame and geographic scope of one conspiracy was entirely contained within the other conspiracy and the core participants were the same); *see also id.* at 48 ("The Government cannot be permitted to retry defendants on smaller and smaller conspiracies, wholly contained within the scope of a large conspiracy, until it finds one small enough to be proved to the satisfaction of a jury.").

## C.    Common Overt Acts

The government argues that the lack of common overt acts between Count Three and Count Five indicates that they were different conspiracies. (Opp. at 30). As we explained in our initial Motion, because Count Five was based on Carolyn's allegations and did not involve Jane, Kate, or Annie Farmer, that count alleged overt acts specific to Carolyn that were not alleged in Count Three. (Mot. at 24; Ind. ¶¶ 25a-d, 19a-e). Nevertheless, because the conspiracy charged in Count Five was a subset of the conspiracy charged in Count Three, as discussed above, the

16

overt acts alleged in Count Five could easily have been alleged in Count Three because they were in furtherance of the same conspiracy. Hence, the differing overt acts do not indicate different conspiracies. *See Calderone*, 982 F.2d at 48 (finding two conspiracies were multiplicitous even though twenty-one overt acts listed in the second conspiracy were not listed in the first, because they were "all in furtherance of the broader conspiracy alleged in the first").

> ### D.    Similarity of Operation, Common Objectives, and Degree of Interdependence

Finally, the government argues that Counts Three and Five were different conspiracies because they were "fundamentally independent schemes, with different objectives and modes of operation." (Opp. at 32). In doing so, the government conveniently ignores the argument it made to the jury at trial – namely, that Jane, Kate, Carolyn, and Annie Farmer were all victims of the *same* criminal plan to sexually exploit underaged girls, which Epstein and Ms. Maxwell carried out using the *same* methods throughout the entire course of the conspiracy. (Tr. 2848) ("[Maxwell] ran the same playbook over and over and over again as she exploited young girls. The similarities between what happened to Jane and Annie and Carolyn and Kate are incredibly powerful evidence of the defendant's guilt.").

The government attempts to side-step this obvious inconsistency by arguing that the conspiracy charged in Count Three involved "groom[ing] [victims] to travel to Epstein's properties for sexual abuse," whereas Count Five involved "paying victims for so-called 'massage appointments,' where they were sexually exploited." (Opp. at 32). But "grooming" and travel were not exclusive to Count Three. Carolyn testified about being progressively introduced to more serious sexual situations, which was a form of "grooming. (Tr. 1521-23, 1537). She also testified that Epstein and Ms. Maxwell asked her to travel to his island. (Tr. 1534-35). Similarly, payment and massages were not exclusive to Count Five. Jane testified

that Epstein gave her money after "almost every visit" to his home in Palm Beach.  (Tr. 302).  And both Jane and Annie Farmer testified about massages.  (Tr. 308-11; 2083-86).

The government's attempt to characterize Count Three as an "earlier scheme" and Count Five as a "later pyramid scheme" with different objects and methods is unavailing.  (Opp. at 32). The government's theory, as presented to the jury, was that Epstein and Ms. Maxwell engaged in a single conspiracy with a common method of operation and objective: to recruit and "groom" underage girls to sexually abuse them.  That theory was entirely consistent with the evidence at trial.  For these reasons, Counts Three and Five describe a single conspiracy, not multiple conspiracies, and are therefore multiplicitous.  Accordingly, the Court should enter judgment only on Count Three.

## III.   **The Court Should Grant Ms. Maxwell's Other Motions.**

For the reasons already set forth in her initial Motion, the Court should vacate Ms. Maxwell's convictions as to all counts and dismiss the Indictment due to prejudicial pre-indictment delay.  Further, the Court should enter a judgment of acquittal as to all counts under Rule 29 of the Federal Rules of Criminal Procedure because the government failed to prove each element of the charges beyond a reasonable doubt.

## CONCLUSION

For the foregoing reasons, Ms. Maxwell respectfully requests that the Court, in the alternative, (1) vacate Ms. Maxwell's convictions on the Mann Act counts (Counts One, Three, and Four) and grant a new trial under Rule 33 because the convictions were based on a constructive amendment and/or variance from the allegations in the Indictment, (2) enter judgment on only one of the three multiplicitous conspiracy counts – specifically, Count Three,

(3) vacate Ms. Maxwell's conviction on all counts and dismiss the S2 Indictment for pre-

indictment delay, and (4) enter a judgment of acquittal as to all counts under Rule 29.

Dated:  March 11, 2022
        New York, New York

                                        Respectfully submitted,


                                        /s/ Christian R. Everdell
                                        Christian R. Everdell
                                        COHEN & GRESSER LLP
                                        800 Third Avenue
                                        New York, NY 10022
                                        Phone: 212-957-7600

                                        Jeffrey S. Pagliuca
                                        Laura A. Menninger
                                        HADDON, MORGAN & FOREMAN P.C.
                                        150 East 10th Avenue
                                        Denver, Colorado 80203
                                        Phone: 303-831-7364

                                        Bobbi C. Sternheim
                                        Law Offices of Bobbi C. Sternheim
                                        33 West 19th Street - 4th Floor
                                        New York, NY 10011
                                        Phone: 212-243-1100

                                        *Attorneys for Ghislaine Maxwell*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 11, 2022, I served by ECF the within memorandum upon the following:

Maurene Comey, Esq.
Maurene.Comey@usdoj.gov

Alison Moe, Esq.
Alison.Moe@usdoj.gov

Lara Pomerantz, Esq.
Lara.Pomerantz@usdoj.gov

Andrew Rohrbach, Esq.
Andrew.Rohrbach@usdoj.gov

*/s/ Christian R. Everdell*
Christian R. Everdell