UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

UNITED STATES OF AMERICA      :

   -v.-      :      S2 20 Cr. 330 (AJN)

GHISLAINE MAXWELL,      :

          Defendant.      :

------------------------------------------------------------x

# THE GOVERNMENT'S MEMORANDUM IN OPPOSITION
# TO THE DEFENDANT'S MOTION FOR A NEW TRIAL

DAMIAN WILLIAMS
United States Attorney
Southern District of New York
Attorney for the United States of America

Maurene Comey
Alison Moe
Lara Pomerantz
Andrew Rohrbach
Assistant United States Attorneys
- Of Counsel -

**TABLE OF CONTENTS**

I.   The Defendant's Motion for a New Trial Should Be Denied .................................................. 2

   A.   The Record Does Not Support a Finding of Deliberate Falsehood ...................................... 2

   B.   The Record Does Not Support a Finding that the Court Would Have Granted a Hypothetical for Cause Challenge ........................................................................................ 8

Conclusion ....................................................................................................................... 14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

UNITED STATES OF AMERICA              :

   -v.-                                                    :           S2 20 Cr. 330 (AJN)

GHISLAINE MAXWELL,                    :

                      Defendant.           :

------------------------------------------------------------------x

       The Government respectfully submits this memorandum in further support of its opposition to the defendant's motion for a new trial, dated January 19, 2022 (the "Defense Motion"). After the thoughtful and thorough hearing held by this Court, it is crystal clear that the defendant received a fair trial. Juror 50's sworn testimony at the hearing made evident that he did not deliberately lie in completing the questionnaire, but that he instead made an honest mistake. And in any event, had Juror 50 accurately reported in his questionnaire that he had been a victim of sexual abuse, he would not have been struck for cause. Juror 50 repeatedly explained—just as he did during voir dire—that he would be fair and impartial and would decide the case based on the evidence at trial and the law as explained by the Court. Accordingly, under controlling Supreme Court and Second Circuit precedent, the defendant cannot show that Juror 50 harbored any bias against the defendant. Moreover, during voir dire, multiple other potential jurors in this case reported having experienced sexual abuse and were nonetheless qualified as jurors without any objection from the defendant. It was entirely appropriate for Juror 50 to sit on this jury, and nothing about his service as a juror calls into question the integrity of the verdict in this case.

1

In short, at each step of the analysis, the defendant has not come close to establishing that the extraordinary remedy of a new trial is warranted. Accordingly, the Court should deny the defendant's motion for a new trial.

## I. The Defendant's Motion for a New Trial Should Be Denied

A defendant seeking Rule 33 relief based on alleged juror misrepresentations during voir dire must satisfy a conjunctive two-part test: "a party must first demonstrate that a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause." *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984). The defendant cannot satisfy either prong of the *McDonough* test.

### A. The Record Does Not Support a Finding of Deliberate Falsehood

As set forth in the Government's opposition to the Defense Motion, to satisfy the first prong, the defendant must demonstrate that the juror committed a deliberate falsehood, not an honest mistake.[1] (Dkt. No. 643 at 11, 13-15). There is no evidence in the record that Juror 50

---

[1] In her reply brief (Dkt. No. 644 at 12-14), the defendant asks the Court to ignore the Second Circuit's binding, on-point decision in *United States v. Shaoul*, 41 F.3d 811 (2d Cir. 1994), which requires deliberateness. The Court should reject this invitation.

The defendant asserts that *Shaoul*'s holding that "a defendant must show . . . that a juror gave a dishonest answer," *id.* at 816, is dicta, claiming that *Shaoul* was decided on the second prong of the *McDonough* test. (Dkt. No. 644 at 12). Not so. In *Shaoul*, the Circuit expressly affirmed the district court's conclusion that the defendant "had failed to satisfy the threshold requirement of the *McDonough* test," before concluding that he "also cannot satisfy the second part." *Id.*; *see, e.g.*, *Pyett v. Pa. Bldg. Co.*, 498 F.3d 88, 92 (2d Cir. 2007) ("Our conclusion . . . was an alternative holding, not *dicta*, and continues to bind our Court."), *rev'd on other grounds sub nom.*, *14 Penn Plaza LLC v. Pyett*, 56 U.S. 247 (2009). This holding stands in stark contrast to the passing statements made in later cases the defendant cites, which did not consider whether the first prong requires deliberateness, much less reject *Shaoul*. *See United States v. Stewart*, 433 F.3d 273, 303-05 (2d Cir. 2006) (explaining that only two "alleged intentional omissions" justified further inquiry, but even if proved, neither would have satisfied the second prong); *United States v. Greer*, 285 F.3d 158, 170 (2d Cir. 2002) (finding it "unnecessary to determine whether, under

intended to mislead the Court while completing his jury questionnaire or during voir dire. Juror 50 testified under oath that he made an "[i]nadvertent mistake," "one of the biggest mistakes [he has] ever made in [his] life." (Mar. 8, 2022 Tr. at 14:23-24). On this record, the defendant cannot satisfy the first prong of the *McDonough* test.

In particular, at the hearing, Juror 50 acknowledged that he inaccurately answered Question 48 of the written questionnaire, which asked prospective jurors whether they themselves or any friends or family members had been a victim of sexual harassment, sexual abuse, or sexual assault. Juror 50 explained that he "didn't see the part [of Question 48] where it says self, I just–I completely skimmed way too fast." (*Id.* at 14:10-11; *see also id.* at 14:23-15:2). The questionnaire and the process by which Juror 50 completed the questionnaire "must be viewed in context." *United States v. Fell*, No. 01 Cr. 12 (WKS), 2014 WL 3697810, at *13 (D. Vt. July 24, 2014). Juror 50's description of the process of completing the questionnaire on November 4, 2021 credibly explained how he came to make unintentional mistakes on the questionnaire. Juror 50 testified that he arrived at the courthouse early, waited 45 minutes to get through the security line, and then sat in the courthouse for hours before the Court's video with instructions on the questionnaire was played successfully. (*Id.* at 12:4-6, 14:10-19). He explained that by the time he was answering the later questions in the questionnaire, such as Question 48, he was "super distracted" because of his proximity to the table where prospective jurors were dropping off their questionnaires and "all the noise going on around" him, noting that "[p]eople were asking

---

*McDonough*'s prong one, [the juror] dishonestly answered questions at *voir dire*"). Further, the defendant suggests that *Shaoul* is inconsistent with *United States v. Langford*, 990 F.2d 65 (2d Cir. 1993), which—the defendant says—held that deliberateness is not required on prong one. She therefore argues that, as the earlier decision, *Langford* controls rather than *Shaoul*. (Dkt. No. 644 at 12-13). But as *Shaoul* itself explained, it is not inconsistent with *Langford*; rather, the defendant's reading of *Langford* is incorrect. 41 F.3d at 815-16.

questions, there was papers being ripped off the questionnaire packets, and there's a lot of talking going on, and it's super distracting." (*Id.* at 12:12-20, 14:11-12). He candidly told the Court that he wanted to finish the questionnaire, and that he never expected to actually serve on the jury, given the "sheer volume of people there." (*Id.* at 12:2-3, 12:17, 13:18, 14:12-13; *see also id.* at 18:6-11 (explaining that "growing up in school I never wanted to be last one finished. You want to finish your test and go hang out with your friends. So it's kind[] of that same policy . . . everyone else is finishing . . . I'm like: I'm never going to get chosen, let's get this done with.")). He contrasted filling out the later questions of the questionnaire with the earlier questions where he "was still . . . in focus and in the zone" and "had more focus than [he] did at the end and less distractions, so it was easier to follow along." (*Id.* at 19:14-20).[2]

Juror 50 testified that he "[a]bsolutely [did] not" "in any way intentionally provide an inaccurate answer" to Question 48; that he "[a]bsolutely [did] not" answer no to Question 48 to "make it more likely that [he] would be selected for the jury"; and that he did "[n]ot at all" try to tailor his answers about his history of sexual abuse to "make it more likely that [he] would be selected for the jury." (*Id.* at 15:23-16:8). And he was emphatic that "this is never anything that [he] intended or did on purpose," and he "certainly wouldn't have put [him]self in . . . this position." (*Id.* at 23:2-8).

---

[2] To be sure, Juror 50 should have realized that Question 48 was asking about his own experience and not just those of family and friends, given the purpose of the questionnaire. But as he testified, while he realizes in retrospect that this is information the parties would have wanted to know, at the time he "honestly didn't think about it." (Mar. 8, 2022 Tr. at 21:17-22:3). Given Juror 50's testimony about his lack of focus at this point in the questionnaire, and the fact that jurors cannot be held to the standard of trained lawyers, this fact does not detract from his credibility. *See McDonough,* 464 U.S. at 555 ("Called as they are from all walks of life, many [jurors] may be uncertain as to the meaning of terms."); *Dyer v. Calderon*, 151 F.3d 970, 973 (9th Cir. 1998) ("[W]e must be tolerant, as jurors may forget incidents long buried in their minds, misunderstand a question or bend the truth a bit to avoid embarrassment.").

4

Juror 50's testimony about Question 48 was clear and consistent. He made a mistake. His testimony did not evince any intent to deceive or mislead the Court when completing the questionnaire. Rather, it was consistent with his statements in the *Daily Mail* interview, which was when Juror 50 first learned that the questionnaire may have contained a question that asked about his own sexual abuse history. (*Id.* at 15:19-22). And it was during the *Daily Mail* interview, when first confronted with the possibility of having made a mistake, that Juror 50 told the reporter that he "could not remember" the part of the questionnaire asking whether he had experienced sexual abuse, but he "was certain that he had answered all questions honestly." (Dkt. No. 643, Ex. B at 8). Juror 50's sworn testimony at the hearing echoed his comments to the press when he learned of his error. Juror 50 did not know he "had made a huge mistake," and upon learning this information during the interview, he was "embarrassed and sort of like shocked and didn't know that was the full question." (Mar. 8, 2022 Tr. at 44:19-45:3).

Juror 50's sworn testimony about the mistakes he made when completing the questionnaire—which related to the single topic of the sexual abuse he experienced as a nine-year-old—similarly made clear that he did not intend to inaccurately answer Questions 25 and 49. When the Court inquired at the hearing about Juror 50's answer to Question 25—which asked whether he or any relatives or close friends had been a victim of a crime—Juror 50 explained that "[l]ooking back at [Question 25] now," his negative answer was incorrect. (*Id.* at 9:22). He explained that he "wasn't thinking of [his] sexual abuse as being a victim of a crime because [he] no longer associate[s] being a victim" and that he had been thinking of whether he had been "robbed or mugged or some sort of crime like that" at the time he was completing the questionnaire. (*Id.* at 10:4-9; *see also id.* at 16:17-25 ("I do not feel that I am a victim of a crime . . . .")). Against this backdrop, it is understandable that the questionnaire's inquiry about

5

"crime" did not prompt Juror 50 to disclose his experience of childhood sexual abuse, which was not criminally prosecuted, on his questionnaire. Lay persons often may not think of themselves as victims of a crime even where lawyers and judges would. *See, e.g.*, *Fell*, 2014 WL 3697810, at *6-7, *13 (crediting juror's explanation that she did not disclose past sexual abuse in response to question about whether she had been a victim of a crime because she did not consider the abuse, for which the abuser was never prosecuted, a crime). Juror 50 plainly stated that he "[a]bsolutely [did] not" "[i]n any way . . . intentionally provide an inaccurate answer" to Question 25; that he did not answer no to Question 25 to "make it more likely that [he] would be selected for the jury"; and that he did not try to tailor his answers about his history of sexual abuse to "make it more likely that [he] would be selected for the jury." (Mar. 8, 2022 Tr. at 17:1-10).

The same is true regarding Question 49. After Juror 50 explained that he had been abused by a stepbrother "who is no longer a part of the family" (*id.* at 8:14-15, 9:3-8), the Court directed Juror 50's attention to Question 49, which asked whether he, a friend, or family member had ever been accused of sexual harassment, sexual abuse, or sexual assault. Juror 50 initially stated that his negative answer to that question was accurate. The Court asked why Juror 50's sexual abuse by a family member did not count, and Juror 50 responded "[b]ecause I don't consider them part of my family. I never considered them part of my family even when they lived with us for a few years." (*Id.* at 11:12-20). Only after the Court pressed Juror 50 and asked him several pointed questions about Question 49, did Juror 50 realize that he should have answered yes to that question "[b]ecause by law, by marriage, that person was [his] stepbrother." (*Id.* at 13:5-6).

Juror 50's testimony about Question 49 illustrates the point that a lay juror filling out a questionnaire cannot be held to the standard of a trained lawyer conducting a close examination of a document. *See McDonough,* 464 U.S. at 555; *Dyer*, 151 F.3d at 973. Juror 50's answer to

6

Question 49 was not precisely accurate, as he freely acknowledged at the hearing. But, as he explained, at the time he completed the questionnaire, it did not occur to him that his own abuse required an affirmative answer. (Mar. 8, 2022 Tr. at 11:25). And when asked during the hearing, his initial answer reflected an honest and reasonable understanding of the question: he answered no because he did not consider his former stepbrother, who he never considered to be part of his family, as a family member. *See United States v. Stewart*, 317 F. Supp. 2d 432, 438 (S.D.N.Y. 2004) ("Would a reasonable juror necessarily consider an ex-girlfriend to be 'someone close to him?'"), *aff'd*, 433 F.3d 273 (2d Cir. 2006). It was only once the Court focused his attention on the literal meaning of the question that he realized a different answer was accurate. Juror 50's answers on this score bespeak a lack of linguistic precision, not a lack of credibility.

Jurors can and do make mistakes, and a defendant is entitled to fairness, not perfection. *See McDonough*, 464 U.S. at 553-55 ("This Court has long held that [a litigant] is entitled to a fair trial but not a perfect one, for there are no perfect trials. . . . To invalidate the result of a three-week trial because of a juror's mistaken, though honest response to a question, is to insist on something closer to perfection than our judicial system can be expected to give." (alteration in original, internal quotation marks omitted)). It is clear that Juror 50 made a mistake from a failure to be careful, and not a desire to get on the jury. Juror 50 repeatedly and consistently testified under oath that he did not try to get on the jury. In response to questioning by the Court, Juror 50 explained, without hesitation, that he "did not hope to be on this jury" and that he "did not set out in order to get on this jury."[3] (Mar. 8, 2022 Tr. at 14:2-5). He did not even know what case he

---

[3] Nothing about this argument is undermined by Juror 50's comment that "if you're going to serve jury duty, it might as well [] be something that's interesting." (Mar. 8, 2022 Tr. at 14:2-4). To the contrary, that comment demonstrates Juror 50's candor at the hearing. Juror 50 said that *if* he had to serve jury duty, this case was "something interesting" when compared to more boring cases. (*Id.* at 44:8-11; *see id.* at 44:6 ("So not everybody gets called for jury duty.")). Surely every

7

was being considered for as a juror when he went into jury selection and only learned after sitting in the courtroom for three hours. (*Id.* at 13:20-21, 17:20-22). He further explained that he "honestly never thought [he] would be chosen to sit on this jury" because of the "sheer volume of people" present for jury selection; he thought "surely they will be interviewing thousands of people. And they ultimately choose twelve people to sit on a jury, and I never thought I would be one of those twelve." (*Id.* at 12:3-4, 13:18-25).

The hearing held by this Court made clear that Juror 50 did not deliberately lie or engage in deceit in completing the questionnaire. Juror 50 made an "honest mistake." (*Id.* at 23:5). The defendant's motion fails at the first prong of the *McDonough* test.

### B. The Record Does Not Support a Finding that the Court Would Have Granted a Hypothetical for Cause Challenge

The hearing established that Juror 50 harbored no bias, approached his jury service with an open mind, and was committed to deciding the case based on the evidence and the Court's legal instructions. If Juror 50 had accurately answered the questions relating to sexual abuse in the questionnaire, the Court would have asked Juror 50 follow up questions during voir dire to determine if it would have granted a challenge for cause. The Court asked those questions at the hearing, and Juror 50's sworn responses made clear that he was a fair and impartial juror who did not harbor any bias and who would not have been excused for cause. Because the defendant cannot establish that Juror 50 was biased, she is not entitled to the extraordinary relief she seeks.

---

prospective juror would agree that, if required to serve on a jury, they would rather do so on an interesting case, and surely many prospective jurors would find this case more interesting than a contract dispute or the like. But as Juror 50 made clear repeatedly, including twice in that same colloquy, he "did not set out in order to get on this jury." (*Id.* at 14:4-5). Were he attempting to lie or mislead the Court, he surely would have omitted that comment and left his answer at "I did not hope to be on this jury." (*Id.* at 14:2). Instead, he gave as complete an answer as he could, demonstrating his candor at the hearing—including his candor that he made no effort to be selected as a juror.

8

At the hearing, the Court questioned Juror 50 to determine whether, if he had answered accurately, it would have granted a hypothetical strike for cause. The record before this Court makes clear that Juror 50 would not have been struck for cause. The Court began by asking Juror 50 what his answers would have been to Questions 25(a), 48(b), and 49(b) of the questionnaire, which asked whether his experience would have prevented him from being a fair and impartial juror in this case. Juror 50 repeatedly indicated that he would have answered those questions in the negative. For example, when asked how he would have answered Question 48(b)—which asked if his prior experience with sexual abuse would affect his ability to serve fairly and impartially as a juror in the case—Juror 50 responded that his answer "would have been no, because it did not affect [his] ability to be fair and impartial at all." (Mar. 8, 2022 Tr. at 9:15-16; *see also id.* at 10:23-24 ("[An accurate answer to Question 25(a)] would have been no. I was definitely able to set aside everything and be fair and impartial.")). Juror 50 unequivocally stated, "In no case [would my experience affect my ability to serve fairly and impartially]. It would not affect me." (*Id.* at 13:15).

After asking Juror 50 how he would have answered those follow-up questions on the questionnaire, the Court took Juror 50 "back in time" to November 16, 2021, the day of voir dire, and asked Juror 50 the additional questions it would have asked that day had Juror 50 accurately filled out Questions 25, 48, and 49 of the questionnaire. (*Id.* at 24:18-27:17). In response to the Court's question as to whether his history of sexual abuse would affect his ability to be a fair and impartial juror, Juror 50 testified that his prior experience with sexual abuse "would not affect [his ability to be a fair and impartial juror] in any way" and that he would not be "thinking about [his] own experience in a way that would prevent [him] from being fair or impartial." (*Id.* at 25:17-22, 27:4-6). Juror 50 explained that there was nothing about his experience that would have affected

9

his ability to render a verdict based solely on the evidence presented at trial and the Court's instructions as to the law, and that "[a]bsolutely in no way" would his experience with prior sexual abuse interfere with his ability to assess the credibility of witnesses alleging sexual abuse. (*Id.* at 25:23-26:10). Juror 50 answered the questions quickly and forthrightly, and his demeanor evinced that he was a fair and serious juror who deeply regretted making an inadvertent error. *See Greer*, 285 F.3d at 171 (quoting *United States v. Torres*, 128 F.3d 38, 44 (2d Cir. 1997), for the proposition that a "finding of actual bias is based upon determinations of demeanor and credibility that are peculiarly within a trial judge's province.").[4]

On this record, it is evident that Juror 50 would not have been struck for cause. Of the 58 individuals who were qualified to serve as jurors, eight individuals disclosed in their written questionnaires that they themselves had been a victim of sexual harassment, sexual abuse, or

---

[4] Juror 50's answers about whether he thought his family or friends would learn about his sexual abuse through his press interviews do not undermine his credibility. While the trial participants, who have been attentive to developments in this case for years, quickly learned of Juror 50's statements, Juror 50 reasonably thought differently about his friends and family. As Juror 50 explained, his family and friends "didn't even know that this trial was even happening" when he revealed that he had been on the jury through social media—media in which he did not reveal his own experience with abuse. (Mar. 8, 2022 Tr. at 42:15-43:9). Juror 50 therefore expected that "a little article about a juror giving their experience wouldn't be . . . really in the news at all." (*Id.* at 42:21-23). His family and friends appear not to have consumed media about the trial—just like many of the actual and prospective jurors in this case, who reported no or almost no exposure to the defendant or Jeffrey Epstein on their questionnaires. (*See, e.g.*, Juror 7; Juror 20; Juror 37; Juror 54; Juror 89; Juror 151). It is even more unlikely that they would learn about his experience with abuse given that Juror 50 did not use his last name, disconnecting his press interviews from his Google search results, and that he gave two of his three interviews to foreign press. (*See* Dkt. No. 643 at 8-9). And Juror 50 did not think that his interviews would trigger significant public attention and further proceedings in the case because he had attempted to answer the questions honestly and had nothing to hide. (Mar. 8, 2022 Tr. at 22:23-23:5 ("I didn't think this would happen . . . if I lied deliberately I wouldn't have told a soul. I certainly wouldn't have put myself in a position . . . this position that I'm in now, potentially any sort of criminal charges, I just wouldn't have done it. It was an honest mistake . . . .")). At worst, Juror 50's expectations about the consequences of his interviews reflect naivety; they do not reflect deception.

sexual assault. In each case, during voir dire, each juror affirmed to the Court that he or she could be fair and impartial. Not only did the Court not strike each of those eight jurors for cause, but neither party even moved to do so on these grounds. (*See* Dkt. No. 643 at 4-6, 20). Thus, if Juror 50 had disclosed his history of sexual abuse in the written questionnaire, the Court would not have immediately granted a challenge for cause, but would have instead asked additional follow-up questions. Juror 50's answers to the follow-up questions, as given at the hearing, showed that he could be fair and impartial notwithstanding his prior experience.

The defendant cannot demonstrate that Juror 50 was biased. At the hearing, Juror 50 repeatedly denied that he harbored any bias or feelings one way or another with respect to the defendant or the Government. (*See* Mar. 8, 2022 Tr at 26:15-20; *see also id.* at 27:13-17 (explaining that he had "no doubt" as to his ability to be fair to both sides); *id.* at 26:21-23 ("Q. Did you want to put your thumb on the scale in any direction? A. No.")). To the contrary, Juror 50 consistently testified that he was fair and impartial in this case and that he rendered a verdict consistent with the evidence and the Court's instructions of law.[5] That testimony is consistent with Juror 50's statements during oral voir dire, during which Juror 50 reaffirmed that he was "[a]bsolutely" able to put aside anything that he read or heard about the defendant and decide the case based on the facts and evidence, or lack of evidence, presented in court, and follow the Court's instructions as to the law. (Nov. 16, 2021 Tr. at 130:12-18; *see also id.* at 131:1-7; *see also id.* at

---

[5] Juror 50's comment that he was not concerned about following the Court's instructions while filling out the questionnaire (Mar. 8, 2022 Tr. at 18:17-18) does not support the defendant's motion for a new trial. As Juror 50 later explained, that response was derived from the fact that he "began to float, fly through it, in order to get done" and was "super distracted." (*Id.* at 40:18-20). It did not reflect a general disobedience of the Court's instructions, and indeed, Juror 50 made clear that he carefully followed the Court's instructions during voir dire—during which he paid attention to the Court's instructions, listened carefully to the Court's questions, "answered every single one of those questions accurately," and did not "at all" fail "to pay attention to the specifics of the questions"—and during trial. (*Id.* at 41:1-24).

11

134:15-22 (stating during voir dire that Juror 50 had no doubt about his ability to be fair to both sides and that he did not have any reason to think he could not be fair and impartial)). Juror 50's hearing testimony is further corroborated by the fact that jury deliberations lasted for five days, during which time the jury asked a number of questions of the Court, sought transcripts of a large volume of trial testimony, and ultimately rendered a split verdict by declining to find the defendant responsible for Count Two. *See Greer*, 285 F.3d at 171 ("The court . . . noted that the outcome of the trial demonstrated that all the jurors . . . fairly considered the evidence."). These objective facts indicate that the jury remained impartial.

The defendant's failure to demonstrate actual bias is fatal to her motion. (*See* Dkt. No. 643 at 21 (citing *Smith v. Phillips*, 45 U.S. 209, 215 (1982), for the proposition that the remedy is limited to a hearing for "actual bias" and noting that the Second Circuit has not decided whether implied or inferred bias may be considered in this context)). But even if the Court were to consider the defendant's arguments regarding implied or inferred bias, they too are meritless.

The defendant has argued that bias should be implied because of alleged similarities between Juror 50's personal experiences and the issues being litigated. (*See* Dkt. No. 642 at 31-33). The defendant's argument misapprehends both the facts and the law. The Second Circuit has rejected the notion that similarity of conduct is a proper basis to make a finding of mandatory, implied bias, and the circumstances here do not fall within the extremely narrow categories of implied bias that the Second Circuit has recognized. (*See* Dkt. No. 643 at 24-27). Moreover, the manner in which the Court handled the voir dire of prospective jurors who reported having experienced sexual abuse makes clear that the Court would not have made a finding of implied bias. (*See id.* at 27-28). And in any event, Juror 50's testimony at the hearing demonstrated that the sexual abuse he described experiencing is *not* particularly similar to the abuse experienced by

the victims in this case—rather, it is quite different. (Mar. 8, 2022 Tr. at 8:14-20 (stating that he was abused at age nine or ten by a family member, and that he disclosed the abuse in high school)).

There is also no basis in the record for the defendant's request that the Court infer bias on the part of Juror 50. (*See* Dkt. No. 642 at 37-38). Juror 50's testimony does not "permit an inference that [he] would not be able to decide the matter objectively." *Torres*, 128 F.3d at 47. Instead, Juror 50 repeatedly testified that he would be fair and impartial and decide the case based on the evidence at trial and the law as explained by the Court. *See id.* at 47 n.12 ("particularly when considering whether some marginal types of disclosed facts are enough to show inferable bias," judge may be "persuaded by the force of the juror's assurance"). Just as the Court properly elected to not exercise its discretion to infer bias where prospective jurors disclosed during voir dire that they had been victims of sexual abuse or harassment, so too should the Court decline to make a finding of inferred bias on the part of Juror 50. (*See* Dkt. No. 643 at 29-30). Such a finding is without any support in the record.

The testimony given by Juror 50, under oath, makes clear that he was a fair and impartial juror. Because the defendant cannot establish either prong of the *McDonough* test, let alone both, her motion for a new trial is meritless and should be denied.

**Conclusion**

For these reasons, and for the reasons set forth in the Government's memorandum in opposition (Dkt. No. 643), the defendant's motion for a new trial should be denied.

Dated: New York, New York
March 15, 2022

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By:    s/
Maurene Comey
Alison Moe
Lara Pomerantz
Andrew Rohrbach
Assistant United States Attorneys