# LAW OFFICES OF BOBBI C. STERNHEIM

212-243-1100 • Main  
917-912-9698 • Cell  
888-587-4737 • Fax

225 Broadway, Suite 715  
New York, NY 10007  
bcsternheim@mac.com

March 15, 2022

Honorable Alison J. Nathan  
United States District Judge  
United States Courthouse  
40 Foley Square  
New York, NY 10007

Re: *United States v. Ghislaine Maxwell*, S2 20 Cr. 330 (AJN)

Dear Judge Nathan:

We respectfully submit this letter following the hearing on March 8, 2022 (the "Hearing") in further support of Ghislaine Maxwell's Motion for a New Trial ("Motion").

The Court has now heard from Juror 50 in his own words. If there is one thing we learned from Juror 50 at the Hearing, it is this: he should *never* have been a member of this jury. Juror 50 conceded that he gave false responses to not one, but three critical questions on the juror questionnaire, all of which, had he answered them truthfully, would have revealed his prior sexual abuse. The abuse Juror 50 described at the Hearing, which he should have disclosed on the questionnaire and during *voir dire*, was remarkably similar to the abuse described by the government's four key victim witnesses and would, by itself, have formed the basis for a challenge for cause. Moreover, his answers to the Court's questions, which he gave after careful preparation by his attorney and under the protection of government-granted immunity, alternated between inconsistent, implausible, and contradictory, and at all times lacked credibility.

Juror 50's explanation that he "flew through" the questionnaire does not hold water, and his repeated after-the-fact assurances that the sexual abuse he suffered as a child did not affect his ability to be a fair and impartial juror were self-serving and simply not believable. Like anyone in his position, Juror 50 does not want to be responsible for the retrial of Ghislaine

Maxwell, so he attempted to give innocuous explanations for his false questionnaire responses and his decision to "tell his story" to the international press following trial. In fact, Juror 50's responses only further revealed his bias. In the end, what was evident before the Hearing is even more clear after the Hearing – had Juror 50 given truthful answers on the questionnaire, his biases and sympathies would have been fully explored and he would have been challenged, and excluded, for cause. Instead, Juror 50's false responses to the most critical questions on the questionnaire undermined *voir dire* and deprived Ms. Maxwell of her constitutional right to a trial by a fair and impartial jury.

**I.    The Hearing Testimony Established that Juror 50 Falsely Answered Three Critical Questions on the Jury Questionnaire.**

There can be no dispute that Juror 50's testimony established conclusively that he falsely answered three separate questions on the jury questionnaire – Questions 48, 25, and 49. It is no coincidence that Juror 50 gave false answers to these questions. These were the questions that, had he answered truthfully, would have revealed his prior sexual abuse. Question 48 asked "Have you or a friend or family member ever been the victim of sexual harassment, sexual abuse, or sexual assault?" (Court Exhibit #1 at 24). Juror 50 had answered "No." (*Id.*). Juror 50 admitted that this was not an accurate answer and that the truthful answer was "Yes (self)" because he had, in fact, been sexually abused as a child by his stepbrother and his friend. (Tr. 7-8). Question 25 asked "Have you, or any of your relatives or close friends, ever been a victim of a crime?" (Court Exhibit #1 at 13). Juror 50 had answered "No." (*Id.*). Juror 50 admitted that this was not an accurate answer and that the truthful answer was "Yes (self)" because of the same childhood sexual abuse. (Tr. 9-10). Finally, in light of Juror 50's statement that he had been sexually abused by his stepbrother, the Court confronted Juror 50 about his answer to

2

Question 49, which asked "Have you or a friend or family member ever been accused of sexual harassment, sexual abuse, or sexual assault?" (Court Exhibit #1 at 25). Juror 50 had answered "No." (*Id*.). Although Juror 50 initially claimed that this was an accurate response because he did not consider his stepbrother a "family member," Juror 50 eventually admitted that this was not an accurate answer and that the truthful answer was "Yes (friend or family member)" because a stepbrother is a family member and Juror 50's mother reported the stepbrother's sexual abuse to the police when Juror 50 disclosed it to her several years after it happened. (Tr. 8-9, 11-13).

Accordingly, the record is clear that several of Juror 50's *voir dire* responses were false, satisfying the first prong of the *McDonough* test. *See United States v. Stewart*, 433 F.3d 273, 303 (2d Cir. 2006) ("[A] party alleging unfairness based on undisclosed juror bias must demonstrate first, that the juror's *voir dire* response was false and second, that the correct response would have provided a valid basis for a challenge for cause." (citing *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 556 (1984)).[1]

## II. Had Juror 50 Answered the Questions Truthfully, He Would Have Been Struck for Cause

The Court must next consider whether the correct responses to the voir dire questions would have provided Ms. Maxwell with a valid basis to challenge Juror 50 for cause. *See Stewart*, 433 F.3d at 303. The Court must determine whether Juror 50 was capable of being an impartial, unbiased juror "capable and willing to decide the case solely on the evidence before

---

[1] Ms. Maxwell reiterates her position that it is not necessary for the false statement to be intentional or deliberate to satisfy the first prong of the *McDonough* test. *See* Motion at 23-28; Reply at 9-10. Nevertheless, the record establishes that Juror 50's false statements were intentional. (*See* discussion *infra*). Even if the Court determines that they were not, and that *McDonough* requires an intentional false statement, Ms. Maxwell is still entitled to a new trial based on Juror 50's bias. *See Skaggs v. Otis Elevator Co*., 164 F.3d 511, 516 (10th Cir. 1998) ("Although unable to prove a juror's incorrect response to a material question was intentional, a movant may introduce evidence demonstrating bias on the part of a juror who gave an incorrect but not intentionally dishonest answer during voir dire.").

3

him." *United States v. Daugerdas*, 867 F. Supp. 2d 445, 470 (S.D.N.Y. 2012) (quoting *McDonough*, 464 U.S. at 554). Challenges for cause can be based on implied bias, inferable bias, or actual bias. *See United States v. Torres*, 128 F.3d 38, 43 (2d Cir. 1997). In determining whether Juror 50 was biased, the Court should consider several factors, including "[1] the similarity between the juror's experiences and important facts presented at trial, [2] the scope and severity of the juror's dishonesty, and [3] the juror's motive for lying." *See Sampson v. United States*, 724 F.3d 150, 166 (1st Cir. 2013) (citations omitted). The record developed at the Hearing strengthened the already compelling evidence of Juror 50's bias and established that, had he answered the questionnaire honestly, he would have been struck for cause.

### A. The Similarity Between Juror 50's Sexual Abuse and the Witnesses' Sexual Abuse, As Well As His Post-Trial Conduct, Establish Bias.

At the hearing, Juror 50 disclosed the facts of his sexual abuse, which significantly paralleled the abuse described by the government's four key victim witnesses at trial. Jury 50 had already disclosed some of these facts in his post-trial press interviews. But the opportunity to question Juror 50 further about the circumstances of his abuse at the Hearing—an opportunity that Ms. Maxwell was denied at *voir dire* because of his false answers to the questionnaire—revealed even more striking similarities to the abuse described by the four victim witnesses at trial. Like the four accusers, Juror 50 (i) was sexually abused as a minor, (ii) was abused on multiple occasions over the course of several years, and (iii) delayed reporting the abuse. (Tr. 8-9). Like the four accusers, Juror 50 was abused by two people who were friends and who each participated in the abuse. (Tr. 8-9). Furthermore, Juror 50 was not abused by a stranger or sexually assaulted by someone he did not know. He was abused by someone familiar to him, his stepbrother, who was part of his life (Tr. 8-9), just as the four accusers described the relationship between their families and Epstein and Ms. Maxwell. These similarities are significant and

4

contrast sharply with other jurors who answered "Yes" to Question 48 and were not struck for cause, but who disclosed incidents that were not directly analogous to the facts presented at trial.

In this situation, where Juror 50 experienced the same traumatic childhood sexual abuse that the trial victims did, with many of the same surrounding circumstances, he was not capable of setting his experiences aside and impartially deciding the case solely on the evidence at trial. *See Daugerdas*, 867 F. Supp. 2d at 472 ("Courts imply bias 'when there are similarities between the personal experiences of the juror and the issues being litigated.'" (quoting *United States v. Sampson*, 820 F. Supp. 2d 151, 163-64 (D. Mass. 2011)); *Sampson* 724 F.3d at 167 ("It would be natural for a juror who had been the victim of [the same crime] to harbor bias against a defendant accused of such a crime."). Had this information come to light during *voir dire*, Juror 50 would have been struck for cause. *See* Motion at 30-38; *Sampson*, 724 F.3d at 167 (affirming grant of new trial when juror in a gunpoint bank robbery case did not disclose that she had been threatened by her husband with a gun); *State v. Ashfar*, 196 A.3d 93, 94-97 (N.H. 2018) (affirming grant of new trial when juror in child sexual assault case did not disclose that he was sexually assaulted by a babysitter when he was five or six years old); *Torres*, 128 F.3d at 47-48 (affirming for cause strike of juror in a structuring case who did not disclose she had engaged in similar structuring activity herself); *Burton v. Johnson*, 948 F.2d 1150 1159 (10th Cir. 1991) (affirming grant of new trial when juror in murder case involving domestic violence did not disclose she was living in similarly abusive circumstances at the time of trial).

Furthermore, Juror 50's decision to speak to multiple members of the international press after trial to "tell his story" shows how closely he identified with the victims in this case and reveals his bias. Juror 50 testified at the Hearing that he usually does not share his experience of sexual abuse. (Tr. 22) ("I don't tell very many people."). Despite his normal reserve, Juror 50

decided post-trial to reach out to one of the victims in this case, publicly acknowledge his own sexual abuse, and loudly proclaim to the international press that Ms. Maxwell's guilty verdict was a verdict "for all the victims." At the Hearing, Juror 50 explained his reasons for doing this: "After sitting on this trial for several weeks and seeing the victims be brave enough to give their story, I felt like if they can do it, then so can I." (Tr. 24).

Juror 50's testimony shows that the victims' testimony personally resonated with him in a way that jurors who had not been sexually abused as children would not have felt. It caused him to regard himself as an advocate of the victims rather than a neutral arbiter of the facts. Even if the Court credits Juror 50's contention (and it should not) that he did not have these emotions at the time of *voir dire* and only developed them after hearing the witness' testimony, it still shows that Juror 50 was not capable of "separating [his] own life experiences from the evidence in the case." *Sampson*, 724 F.3d at 167; *see also Ashfar*, 196 A.3d at 94-97 (finding bias for juror who did not disclose his prior sexual abuse, communicated with a female victim of sexual assault, and identified himself as "an advocate for the people").

Moreover, the hearing testimony established that Juror 50's history of sexual abuse did, in fact, compromise his ability to be fair and impartial. Prior to the Hearing, Juror 50 told the press that he recalled several details of his own sexual abuse and that "some of it can be replayed like a video." At the Hearing, Juror 50 underscored that his own experience of sexual abuse shaped his beliefs about how victims' memories of traumatic events work. He stated that he talked to the press about "how I view things and how I can recall memories … [and] remember things and recall things, like the color of the wall[.]" (Tr. 23). He further stated that his own memories are "why I believe a certain way" about the nature of victims' memories. (Tr. 22). As set forth in our initial Motion, Juror 50's beliefs directly contradict Dr. Loftus' expert testimony

6

about how memory can be corrupted and rendered him incapable of objectively evaluating a central aspect of Ms. Maxwell's defense. (Motion at 32-33).

The Court should not credit Juror 50's repeated assurances that he would not, and did not, let his past experience of sexual abuse affect his ability to fairly and impartially evaluate the evidence. Those answers were self-serving and are of no value to the Court's analysis of potential bias. Indeed, the Second Circuit had recognized that in determining whether implied or inferred bias exists, "the juror's statements as to his or her ability to be impartial become irrelevant." *Torres*, 128 F.3d at 47. Instead, bias must be determined from the surrounding facts and circumstances—especially in cases where the juror's experience closely tracks the trial evidence—because "the bias of a juror will rarely be admitted by the juror himself, 'partly because the juror may have an interest in concealing his own bias and partly because the juror may be unaware of it.'" *Id*. (quoting *McDonough*, 464 U.S. at 558). Here, the record establishes that Juror 50 was biased and would have been struck for cause had he truthfully disclosed his history of sexual abuse.

### B. Juror 50's Answers to the Court's Questions Were Not Credible and Further Revealed His Bias

Juror 50's responses to the Court's questions at the Hearing were rife with contradictions and inconsistencies. His explanation for his false statements on the jury questionnaire—that he "flew through" the questions and did not see that multiple questions called for him to disclose his sexual abuse—lacked all credibility. And his assertion that he did not think anyone would find out about his sexual abuse after giving three interviews to the international press, including a video interview, about his service as a juror on the most widely covered case in decades was utterly implausible. Juror 50's false statements and his explanation for those false statements, a

sample of which are provided below, provide further evidence of his bias. *See Skaggs*, 164 F.3d at 517 (dishonest answers are a factor that can contribute to a finding of implied bias).

**First**, Juror 50's explanation that he answered Question 48 falsely because he was distracted and felt rushed and did not see the word "you" and the answer "Yes (self)" are not credible. (Tr. 12-15, 21). Juror 50 estimated that he had about an hour to complete the questionnaire (Tr. 21), more than ample time to review it and answer the questions carefully. Moreover, by the time Juror 50 reached Question 48, he had answered fifty-two questions that contained the word "you." (*See* Court Exhibit 1, Questions 1-3, 5-32, 33a-f, 34, 34a, 35-47). Juror 50 testified that he was still focused when he answered the first several questions in the questionnaire and was only rushed when he got to the end. (Tr. 19). Hence, even accepting Juror 50's own testimony, he would have seen that almost all of the questions in the early part of the questionnaire contained the word "you" and asked about the juror himself.

Furthermore, Juror 50 told the press that while he did not recall a question about his own sexual abuse, he did recall one about the abuse of friends and family members. Prior to answering Question 48, Juror 50 had answered sixteen questions that referenced "family" or "relative" and "close friend." (*See* Court Exhibit 1, Questions 20- 28, 33a-f, 45). Every question Juror 50 answered containing "family" or "relative" and "close friend" also contained the word "you." It is simply not plausible to believe that Juror 50 failed to see the word "you" in Question 48 but did somehow recall all of the other words including "friends" and "family."

**Second**, in explaining why he answered "no" to Question 25—that he was not the victim of a crime, despite his sexual abuse—Juror 50 stated that as part of his "healing process" he did not consider himself as a victim of sexual abuse. (Tr. 10) ("I wasn't thinking of my sexual abuse as being a victim of a crime because I no longer associate being a victim. It's part of my healing

process and it's how I dealt with the abuse."). Juror 50 elaborated on this statement later in the Hearing:

> I don't really think about my abuse really much anymore because it doesn't define me, it doesn't make me who I am today. It's something that happened, it's an experience that I lived through, and I have become the person I am today because of my goals and ambitions. And I do not feel that I am a victim of a crime, even though looking back on this abuse, that does make me a victim of a crime, which is why I should have marked yes for self.

(Tr. 16). Juror 50's answers are telling. First, it shows that the abuse was, understandably, such a traumatic experience in his life and that he needed to undergo a "healing process" to be able to deal with the abuse. Indeed, Juror 50 disclosed on social media that he sees a therapist regularly who, among other things, gave him help "dealing with the stress of the [Maxwell] case." (Motion at 20). Second, it shows that as part of the healing process, Juror 50 does not identify as a victim and rejects that label. We do not question in any way the strategies that Juror 50 has used to cope with and heal from his traumatic experience. However, his statements do reveal just how deeply the trauma affected him and continues to affect him. The objectively correct answer to Question 25 is "yes" if you have been the victim of sexual abuse. That is how a neutral, unbiased juror would have answered that question. But for Juror 50, the question used a label that sparked an immediate negative reaction that was tied up with the healing process he has used to deal with his trauma and prevented him from answering accurately. His response shows quite clearly that Juror 50 was too biased to serve as a juror in this case.[2]

**Third**, Juror 50's answers about why he did not mark "yes (friend or family member)" to Question 49 are also not credible. After disclosing that he was abused by his stepbrother and that his mother reported the abuse to the police after he disclosed it, the Court asked Juror 50 why he

---

[2] The Court denied the defense's request to ask further questions about Juror 50's healing process. We believe that those questions were relevant and appropriate. Accordingly, we reiterate our objection to the Court's denial of those questions and the others posed by defense counsel in its letter submission and at sidebar during the hearing.

9

did not disclose that in response to Question 49, which asks whether a family member has ever been accused of sexual abuse. (Tr. 11-13). Juror 50 originally answered that "no" was an accurate response because he "never considered them part of my family even when they lived with us for a few years." (Tr. 11). That response contradicted a response he gave only a few minutes earlier concerning Question 48, when he first described the abuse to the Court. There, he said he was abused by "a family member, who is no longer part of the family." (Tr. 8). He then quickly changed his answer and returned to his familiar refrain that he "flew threw" the questionnaire and said he "didn't even consider" whether his stepbrother was a family member. (Tr. 11-12). He then admitted that the accurate answer would have been "Yes (friend or family member) because his stepbrother was, in fact, a family member. (Tr. 12-13). Juror 50's shifting explanation for his answer to this question shows an intent to answer this question falsely.

**Fourth**, Juror 50 made a tortured and thoroughly unbelievable attempt to reconcile his statement that he "[doesn't] tell very many people" about his abuse with his decision to speak publicly about his abuse to multiple international media outlets, including the British tabloids, and his decision to post on numerous social media accounts. As soon as he was confronted with the obvious inconsistency, he provided an unprompted and obviously rehearsed answer: "I didn't lie in order to get on this jury and then go to the press and tell them about my abuse. It just … it's a little illogical thinking about it, like if I lied deliberately I wouldn't have told a soul." (Tr. 22-23). The Court continued to press after his unresponsive answer. When asked if he thought about the fact that many people would learn about his sexual abuse, he responded "No, I did not." (Tr. 23). He later added that he thought "a little article about a juror giving their experience wouldn't be record-breaking or really in the news at all." (Tr. 42). That is absolute nonsense. Juror 50 had numerous media outlets pursuing him for an interview as soon as the

trial ended. There is no question that Juror 50 would have known (if he didn't know before) that that Maxwell trial was all over the press and was the subject of a massive media blitz. Far from hoping to remain anonymous, Juror 50 reveled in the attention and started posting his own messages on social media, using his actual picture and his real first name, announcing to the world that he was on the Maxwell jury. (*See* Motion at 20, Juror 50's Instagram Account) ("I can now tell everyone that I was a juror on the Ghislaine Maxwell trial."). Juror 50 was not looking to avoid notice. He was looking to soak up his 15 minutes of fame. This, again, is strong evidence of Juror 50's bias.

Whether Juror 50's false responses were for the purpose of securing a spot on the jury or because he was deluding himself about his ability to be impartial, Juror 50's multiple false statements on the questionnaire and to the Court add to the bases for finding that he should have been struck for cause. *See Sampson*, 820 F. Supp. 2d at 165 ("Even when prospective jurors are dishonest for reasons other than a desire to secure a seat on the jury, dishonest answers to voir dire questions indicate that a juror is unwilling or unable to apply the law as instructed by the court to the evidence presented by the parties and, therefore, are indicative of a lack of impartiality[.]" (internal quotation marks omitted)).

Finally, Juror 50 admitted that he was perfectly willing to disregard the Court instructions. In light of his statements that he "flew through" the questionnaire, the Court asked Juror 50 whether he was concerned about following the Court's instructions. (Tr. 18). Juror 50 responded, "Absolutely not." (*Id.*). When the Court asked him again, he again responded "No, I really ... this is a terrible excuse, but I didn't really think I would be chosen." (*Id.*). A willingness to disregard the Court's instructions shows an inability to serve as an unbiased juror and raises independent grounds for a for cause challenge. *See Dyer v. Calderon*, 151 F.3d 970,

11

983 (9th Cir. 1998) (*en banc*) ("If a juror treats with contempt the court's admonition to answer voir dire questions truthfully, she can be expected to treat her responsibilities as a juror – to listen to the evidence, not to consider extrinsic facts, to follow the judge's instructions – with equal scorn.").

\*   \*   \*

As Felix Frankfurter observed, "Justice must satisfy the appearance of justice." Excusing Juror 50's false answers because he believes his concealed history of sexual abuse did not affect his ability to serve as a fair and impartial juror does not satisfy the appearance of justice. Only a new trial would. The Court should therefore order a new trial.

Very truly yours,

  /s/ Bobbi C. Sternheim  
Bobbi C. Sternheim

  /s/ Christian Everdell  
Christian R. Everdell  
COHEN & GRESSER LLP  
800 Third Avenue, 21st Floor  
New York, New York 10022  
(212) 957-7600

cc:   All Counsel of Record (by ECF)