UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/29/22
```

United States of America,

    −v−

Ghislaine Maxwell,

      Defendant.

20-CR-330 (AJN)

OPINION & ORDER

ALISON J. NATHAN, Circuit Judge, sitting by designation:

  In 2020, the Defendant Ghislaine Maxwell was indicted for her participation in a scheme to entice, transport, and traffic underage girls for sexual abuse by and with Jeffrey Epstein, her longtime companion.  The Government at trial presented extensive witness testimony from multiple victim witnesses and others, as well as corroborating documentary and physical evidence.  The testimony and other trial evidence established the Defendant's role in grooming and recruiting underage girls and using the cover of massage to perpetrate sexual abuse.

  Following the thirteen-day trial, the Court submitted to the jury the six counts in the Indictment.  The jury deliberated for over five days and returned a verdict of guilty on five of the six counts.  Two of these counts of conviction charged the Defendant with substantive violations of federal statutes that target sexual abuse of minors—the Mann Act as to Count Four and the Trafficking Victims Protection Act as to Count Six.  The other three counts of conviction, Counts One, Three, and Five, charged the Defendant with conspiring with Jeffrey Epstein to violate those same statutes from 1994 to 2004.

  Before the Court are the Defendant's post-trial motions making four alternative arguments for vacating some or all of her five counts of conviction.  First, the Defendant argues that judgment may be imposed on only one of the three conspiracy counts (*i.e.*, Counts One,

Three, and Five) because they are "multiplicitous"—meaning that they all charge the same offense—and therefore entry of judgment on all three counts would violate the Fifth Amendment's Double Jeopardy Clause.  Second, she requests under Rule 29 of the Federal Rules of Criminal Procedure that the Court acquit her of all counts because there is insufficient evidence for any rational juror to find her guilty beyond a reasonable doubt.  Third, the Defendant moves to vacate Counts One, Three, and Four under Rule 33 because, she claims, the convictions were based on a constructive amendment of, or variance from, the Indictment.  And fourth, she requests that the Court vacate all five convictions because the Government intentionally and prejudicially delayed its prosecution.

With one exception, the motions are denied.  The Rule 29 motion challenging all counts of conviction is denied because the jury's guilty verdicts were readily supported by the extensive witness testimony and documentary evidence admitted at trial.  Further, those counts of conviction matched the core of criminality charged in the Indictment, presented by the Government at trial, and on which the jury was accurately instructed.  The Defendant's contrary claim of a constructive amendment of or variance from the Indictment rests on an implausible and speculative interpretation of a single ambiguous jury note.  In addition, the Court concludes that the Government did not intentionally delay its prosecution and, in any event, the Defendant's ability to prepare a defense was not prejudiced by any delay.

The Court does conclude, however, that the three conspiracy counts charge the same offense, and, accordingly, are multiplicitous.  The Government concedes that Count One is multiplicitous with Count Three but argues that Count Three and Count Five nevertheless involve distinct conspiracies.  The Court concludes that Count Five, like Counts One and Three, charges the Defendant's participation in the same decade-long unlawful agreement with the

Defendant's continuous coconspirator, Jeffrey Epstein.  The overarching conspiracy—which, as the Government argued and proved at trial, employed a single "playbook" to groom and sexually abuse underage girls—constitutes a single conspiracy offense with multiple victims.  Because the Double Jeopardy Clause prohibits the Court from imposing multiple punishments for the same offense, the Court will enter judgment on Count Three alone among the conspiracy counts.  This legal conclusion in no way calls into question the factual findings made by the jury.  Rather, it underscores that the jury unanimously found—three times over—that the Defendant is guilty of conspiring with Epstein to entice, transport, and traffic underage girls for sexual abuse.

I. **The Court grants the Defendant's multiplicity claim.**

The Defendant was indicted on six counts: (1) conspiracy to entice individuals under the age of seventeen to travel in interstate commerce with intent to engage in sexual activity illegal under New York law, in violation of 18 U.S.C. § 371; (2) enticement of individuals under the age of seventeen to travel in interstate commerce with intent to engage in sexual activity illegal under New York law, and aiding and abetting the same, in violation of 18 U.S.C. §§ 2422, 2; (3) conspiracy to transport individuals under the age of seventeen to travel in interstate commerce with intent to engage in sexual activity illegal under New York law, in violation of 18 U.S.C. § 371; (4) transportation of an individual under the age of seventeen with intent to engage in sexual activity illegal under New York law, and aiding and abetting the same, in violation of 18 U.S.C. §§ 2423(a), 2; (5) conspiracy to commit sex trafficking of individuals under the age of eighteen, in violation of 18 U.S.C. § 371; and (6) sex trafficking of an individual under the age of

eighteen, and aiding and abetting the same, in violation of 18 U.S.C. §§ 1591, 2.  S2 Indictment, Dkt. No. 187.[1]

In two prior pretrial motions, the Defendant requested that the Court dismiss two of the three conspiracy counts—that is, Counts One, Three, and Five—as multiplicitous, given that all three were premised on the Defendant's participation in a single criminal conspiracy with Epstein.  To punish her for all three counts, she argued, would violate the Double Jeopardy Clause.  In opinions dated April 16, 2021, and August 13, 2021, the Court denied those motions as premature because the Double Jeopardy Clause would prohibit only multiple punishments for the same offense, but not indictments for the same offense.  *United States v. Maxwell*, 534 F. Supp. 3d 299, 322 (S.D.N.Y. 2021) (citing *United States v. Josephberg*, 459 F.3d 350, 355 (2d Cir. 2006)); *United States v. Maxwell*, No. 20-CR-330 (AJN), 2021 WL 3591801, at *5 (S.D.N.Y. Aug. 13, 2021).

Because the jury convicted the Defendant on all three conspiracy counts, the Defendant now requests that the Court impose judgment on only one of these counts.  Maxwell Br. at 19, Dkt. No. 600.  The Government concedes that Counts One and Three are multiplicitous and agrees that the Court should not impose judgment on Count One, but it argues that Counts Three and Five are distinct offenses premised on distinct criminal conspiracies, and so the Court should impose judgment on both.  Gov. Br. at 24, Dkt. No. 621.

On consent of both parties, the Court will not impose judgment on Count One because it is multiplicitous.  For the reasons that follow, the Court further grants the Defendant's motion to also not enter judgment on Count Count Five because it is also multiplicitous with Count Three.

---

[1] The original and S2 Indictments also included two counts of perjury.  *See* S2 Indictment ¶¶ 28–31.  The Court granted the Defendant's motion to sever those counts for a separate trial.  *United States v. Maxwell*, 534 F. Supp. 3d 299, 321 (S.D.N.Y. 2021).

### A.  Applicable law

The Double Jeopardy Clause of the Fifth Amendment guarantees that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb."  U.S. Const. amend. V. That guarantee "serves principally as a restraint on courts and prosecutors," ensuring that a court does not "exceed its legislative authorization by imposing multiple punishments for the same offense."  *Brown v. Ohio*, 432 U.S. 161, 165 (1977); *see also Morris v. Reynolds*, 264 F.3d 38, 48 (2d Cir. 2001).  An indictment is multiplicitous, and therefore implicates double jeopardy, "when it charges a single offense as an offense multiple times, in separate counts, when, in law and fact, only one crime has been committed."  *Maxwell*, 534 F. Supp. 3d at 322 (quoting *United States v. Chacko*, 169 F.3d 140, 145 (2d Cir. 1999)).  "A claim of multiplicity cannot succeed, however, 'unless the charged offenses are the same in fact and in law.'"  *United States v. Jones*, 482 F.3d 60, 72 (2d Cir. 2006) (quoting *United States v. Estrada*, 320 F.3d 173, 180 (2d Cir. 2003)).

If the two offenses at issue are both conspiracies charged under the same statute, then the multiplicity inquiry turns on whether the two conspiracies are the same "in fact," meaning they involve the same agreement.  *United States v. Araujo*, No. 17-CR-438 (VEC), 2018 WL 3222527, at *3 (S.D.N.Y. July 2, 2018) (citing *United States v. Ansaldi*, 372 F.3d 118, 124–25 (2d Cir. 2004)); *United States v. Gaskin*, 364 F.3d 438, 454 (2d Cir. 2004) ("[T]o survive a double jeopardy attack, the government would have to show that the two schemes involved 'distinct' agreements.").  Yet "whether the evidence shows a single conspiracy or more than one conspiracy is often not determinable as a matter of law or subject to bright-line formulations."  *Jones*, 482 F.3d at 72.  Rather, the parties agree that the Court's inquiry is guided by the Second Circuit's *Korfant* factors.  *See, e.g.*, *United States v. Diallo*, 507 F. App'x 89, 91 (2d Cir. 2013)

(summary order) (citing *United States v. Korfant*, 771 F.2d 660, 662 (2d Cir. 1985) (per

curiam)); *United States v. Villa*, 744 F. App'x 716, 720 (2d Cir. 2018) (summary order).  Those

factors include:

> (1) the criminal offenses charged in successive indictments; (2) the overlap of
> participants; (3) the overlap of time; (4) similarity of operation; (5) the existence
> of common overt acts; (6) the geographic scope of the alleged conspiracies or
> location where overt acts occurred; (7) common objectives; and (8) the degree of
> interdependence between alleged distinct conspiracies.

*United States v. Macchia*, 35 F.3d 662, 667 (2d Cir. 1994) (quoting *Korfant*, 771 F.2d at 662).  In

applying the *Korfant* factors, "no dominant factor or single touchstone" determines whether two

allegedly distinct conspiracies "'appear in fact and in law the same.'"  *Id*. at 668 (quoting *United

States v. Reiter*, 848 F.2d 336, 340 (2d Cir. 1988)).  Moreover, "the *Korfant* list is not

exhaustive, and every case must be assessed on its own terms . . . based on the entire record."

*United States v. Maslin*, 356 F.3d 191, 196 (2d Cir. 2004).

     In assessing the evidence, the Second Circuit applies a burden-shifting framework.  The

defendant carries the initial burden of making a non-frivolous showing that the two counts in fact

charge only one conspiracy.  If met, the burden then shifts to the Government to show, "by a

preponderance of the evidence, that there are in fact two distinct conspiracies and that the

defendant is not being placed in jeopardy twice for the same crime."  *United States v. Lopez*, 356

F.3d 463, 467 (2d Cir. 2004) (per curiam) (citing *United States v. DelVecchio*, 800 F.2d 21, 22

(2d Cir. 1986)); *see also United States v. Mallah*, 503 F.2d 971, 986 (2d Cir. 1974) (applying this

burden-shifting approach post-conviction); *United States v. Hernandez*, No. 09-CR-625 (HB),

2009 WL 3169226, at *9 (S.D.N.Y. Oct. 1, 2009).

**B. Analysis**

A further summary of the two counts at issue is required. As briefly outlined above, Count Three of the Indictment charged the Defendant under 18 U.S.C. § 371, the general federal conspiracy statute, with conspiring to violate 18 U.S.C. § 2423(a) (the Mann Act), by transporting minors across state lines with the intent to engage in sexual activity criminalized by state law. S2 Indictment ¶¶ 16–18. In this case, the relevant state offense was New York Penal Law Section 130.55, which criminalizes sexual contact with an individual known to be under the age of seventeen. Trial Tr. 3034–35. The Count Three conspiracy spanned from 1994 to 2004. S2 Indictment ¶ 17. As the Government explained in its summation, the jury could convict the Defendant under Count Three based on evidence related to Jane, Carolyn, and Annie Farmer, three victims who testified at trial. Trial Tr. at 2895.[2]

Count Five of the Indictment also charged the Defendant under 18 U.S.C. § 371, but for conspiring to violate 18 U.S.C. §§ 1591(a) & (b) (the Trafficking Victims Protection Act), by trafficking individuals under the age of eighteen for commercial sex acts that affect interstate commerce. S2 Indictment ¶¶ 22–24. Count Five's conspiracy spanned from 2001 to 2004. *Id.* ¶ 23. The Government explained to the jury that it could convict the Defendant on Count Five based on evidence related to Carolyn and Virginia Roberts. Trial Tr. at 2896.

The Defendant primarily contends that Count Five is a subset of, is subsumed in, or is otherwise too similar to Count Three under the *Korfant* factors. The Court agrees. Although some *Korfant* factors favor the Government, the weight of the factors—supplemented by a review of the Government's case presented at trial—demonstrates that the Government has not

---

[2] The Court permitted certain victim witnesses to testify using a pseudonym or first name. *See* Nov. 1, 2021 Tr. at 6–7.

met its burden of proving by a preponderance of the evidence that the counts are not multiplicitous.

*The offenses charged and common objectives*.  Both Counts Three and Five are charged under the same statute, 18 U.S.C. § 371, for conspiracy to commit an offense against the United States.  But going beyond this "general level" of similarity, the statutory objectives of the two counts differ.  *Macchia*, 35 F.3d at 669.  Count Three is a conspiracy to violate § 2423(a) and Count Five a conspiracy to violate § 1591.  These differing statutory objectives entail legal differences.  Count Three, for example, charges unlawful sexual activity (defined as sexual touching of a minor) while Count Five charges commercial sexual activity with a minor.  And each provision defines "minor" differently: under seventeen years old for Count Three but under eighteen years old for Count Five.  Further, Count Three requires an agreement with intent to transport across state lines, while Count Five's agreement requires only intent of sexual activity that affects interstate commerce.  These differences push the first *Korfant* factor in the Government's favor.  *See Estrada*, 320 F.3d at 182 (distinguishing between a conspiracy to distribute cocaine and one to distribute crack); *United States v. Villa*, No. 3:12-CR-40 (JBA), 2014 WL 252013, at *4 (D. Conn. Jan. 22, 2014), *aff'd*, 744 F. App'x 716 (2d Cir. 2018) (summary order) (distinguishing between a § 371 conspiracy to "commit theft from an interstate shipment and to transport stolen property across state lines" and one to "sell stolen property").

The Government, however, errs in suggesting that this factor alone is "fatal" to the Defendant's multiplicity claim.  Gov. Br. at 29.  To the contrary, no single *Korfant* factor is dominant or dispositive.  *Macchia*, 35 F.3d at 668.  And courts in this district have found two conspiracy counts to be the same offense even when they have different statutory objectives because both counts can arise from the same agreement.  *E.g.*, *Hernandez*, 2009 WL 3169226, at

*11 (concluding that conspiracies to defraud the United States and to commit mail and wire fraud were the same conspiracy as earlier conspiracy to use or transfer false IDs).  After all, "[a] single agreement to commit several crimes constitutes one conspiracy."  *United States v. Broce*, 488 U.S. 563, 570–71 (1989).  The Government implicitly conceded this point of law when it agreed that Counts One and Three were multiplicitous.  Count One charges a conspiracy to *entice* minors to travel across state lines in violation of 18 U.S.C. § 2422 while Count Three charges a conspiracy to *transport* minors across state lines in violation of 18 U.S.C. § 2423(a).  Despite distinct statutory predicates for these two § 371 conspiracies, the Government did not contest that they were the same offense.  Though Count Five is unquestionably less similar to Count Three than is Count One, the difference in statutory predicates does not end the matter.  It is well established that a single conspiracy can contain multiple objectives, particularly if the objectives share important similarities, as they do here.  *United States v. Salameh*, 152 F.3d 88, 148 (2d Cir. 1998) (citing *United States v. Aracri*, 968 F.2d 1512, 1518 (2d Cir. 1992)).

*Overlap of participants*.  The participants in the two conspiracies in Counts Three and Five substantially overlap with one another.  Of course, the defendant will always overlap between two allegedly multiplicitous conspiracies, so their participation in both conspiracies has negligible significance.  *Villa*, 2014 WL 252013, at *5.  More importantly here, Epstein was the Defendant's primary coconspirator in both conspiracies, and the Government argued that in both conspiracies the Defendant played the same role of acquiring underage girls for Epstein to sexually abuse.  They were, the Government explained, "partners in crime" over the decade alleged in the Indictment.  *E.g.*, Trial Tr. at 34, 2842, 2885; *see also id.* at 41 ("For a decade, the defendant played an essential role in this scheme.").  This overlap in key participants, and in core

roles played by those participants, significantly favors the Defendant as to the second *Korfant* factor. *See Macchia*, 35 F.3d at 669; *Hernandez*, 2009 WL 3169226, at *11.

The Government responds that the Count Five conspiracy included Sarah Kellen, who was not involved in Count Three.  Yet Kellen received far less attention than other conspirators in the Government's case, being mentioned only briefly in the Government's opening statement and closing arguments.  *E.g.*, Trial Tr. at 2876 (noting, "and sometimes Sarah Kellen would call, too").  Conspiracies often change membership without forming a new, distinct conspiracy, particularly if key members of the conspiracy remain over the course of a decade.  *See United States v. Eppolito*, 543 F.3d 25, 48 (2d Cir. 2008).  Kellen's participation beginning in 2001 therefore does not shift the import of the second *Korfant* factor.

*Overlap of time*.  The time periods of the two counts overlap completely.  Namely, Count Five's period of 2001 to 2004 is "wholly within the time frame" of Count Three from 1994 to 2004, which substantially favors the Defendant on this *Korfant* factor.  *United States v. Calderone*, 982 F.2d 42, 47 (2d Cir. 1992).  The Government's attempt to minimize this factor by noting that most overt acts for Count Three occurred in the 1990s is simply not reflected in this circuit's case law.  *See, e.g.*, *Macchia*, 35 F.3d at 669 (focusing on the overlap in time frame alleged in the indictment).  The overlap in time here raises the inference that one conspiracy wholly encompasses the other, and that inference tips in the Defendant's favor.  *See Araujo*, 2018 WL 3222527, at *6.

*Similarity of operations*.  Counts Three and Five involve significant similarities in operations.  The methods by which the Defendant groomed and facilitated the sexual abuse of minor victims was a central focus of both parties' cases at trial.  The Government called as an expert witness Dr. Lisa Rocchio, who identified the typical steps in sexual abusers' grooming of

minors for sexual abuse.  Trial Tr. at 714–19.  Applying that expert testimony to the witnesses'
testimony, the Government argued that the Defendant's conduct as to each victim followed a
uniform "playbook."  *E.g.*, *id*. at 2184 ("She ran the same playbook again and again and again.
She manipulated her victims and she groomed them for sexual abuse."), 2853 ("The patterns you
saw throughout this trial, the playbook that Maxwell ran for years, is just one of the many ways
that you know that Maxwell is guilty.").  And the Government emphasized the many similarities
in the Defendant's conduct as recounted by all four witnesses.  *Id*. at 2848 ("The similarities
between what happened to Jane and Annie and Carolyn and Kate are incredibly powerful
evidence of the defendant's guilt.  So I want to talk to you about the playbook that Maxwell ran
again and again and again."), 2901 ("Four women have testified at this trial about Maxwell.
They all describe the same woman, the same playbook.").  Carolyn was the only witness who
testified regarding Count Five.  The Government argued that her testimony "was corroborated by
what Annie and Kate and Jane told [the jury] about Maxwell and how she operated for years."
*Id*. at 2880; *see also id*. at 2895–96 ("Maxwell groomed both Annie and Carolyn as part of a
broader agreement with Epstein to provide him with underage girls for abuse.").  The
Government, in short, argued that the Defendant engaged in substantially the same operations for
a decade as to all victims under both Counts Three and Five.

   The Government responds that while the Defendant and Epstein continuously conspired
to sexually abuse minor victims, their conduct beginning in 2001 evolved from developing one-
on-one relationships with their victims to include a "pyramid scheme of abuse," by which they
acquired underage girls by paying them for so-called "massage" appointments.  Gov. Br. at 32
(quoting Trial Tr. at 40).  To be sure, the Government in both its opening statement and its
closing arguments explained that the Defendant and Epstein's abuse "evolved over the course of

a decade," having both the "earlier phase" and the later "pyramid scheme."  Trial Tr. at 40; *see also, e.g.*, *id*. at 2886 (describing 2001 as "the beginning of the pyramid scheme of abuse").  But a single conspiracy can enter "two or more phases or spheres of operation" without creating a discontinuity in the underlying unlawful agreement, particularly if the same people are serving the same roles in each phase.  *United States v. Pena*, 846 F. App'x 49, 51 (2d Cir. 2021) (summary order) (quoting *United States v. Berger*, 224 F.3d 107, 114–15 (2d Cir. 2000)); *see also United States v. Maldonado-Rivera*, 922 F.2d 934, 963 (2d Cir. 1990).  Notably, the Government, after distinguishing between earlier and later phases in the pattern of abuse, immediately emphasized that "[f]or a decade, the defendant played an essential role in this scheme," blurring any difference between the two phases.  Trial Tr. at 41.

Moreover, though these phases did involve some differing means to acquire minor victims, the differences presented at trial were not as great as the Government suggests in its brief.  As to both counts, both before and after 2001, the Government emphasized that massage was a primary means by which the Defendant and Epstein normalized bodily contact and also the means by which the Defendant and Epstein commonly instigated instances of sexual abuse.  *Compare id*. at 40 ("You will learn that in the 1990s, they used the cover of mentoring young girls . . . to introduce massage . . . and that you will learn that they used these so called massages as a way to sexually abuse the victims."), *with id*. at 41 ("Under this pyramid scheme of abuse, the defendant could just call girls to schedule massage appointments and hand them cash afterwards . . . ."); *e.g.*, *id*. at 35 ("You will learn that the cover of massage was the primary way the defendant and Epstein lured girls into sexual abuse."), 2852 ("Again and again throughout this trial, you heard about how these girls were asked to perform sexualized massages on Jeffrey Epstein.").

Further, in both counts, the witnesses testified that they received financial gifts and payments as a means by which the Defendant and Epstein acquired their victims' trust and extended the period of sexual abuse. *E.g.*, *id.* at 302 (Jane testified that she was given money "[a]lmost every visit" and that Epstein paid for things like voice lessons and clothes). The Government emphasized such financial gifts as one step in the Defendant's playbook of grooming. *E.g.*, *id.* at 2851 ("Then came the next step in the playbook: Making these girls feel special, giving them gifts, making friends, giving them money, promising to help with their futures, promises like sending Annie on a trip to Thailand or helping to pay for Jane's voice lessons and tuition."), 2890 ("[Jane] told you that Epstein gave her money and gifts and paid for school. That money wasn't free . . . . That is inducement, that is enticement, that is coercion."). The financial quid pro quo may have become more explicit beginning in 2001, but that shift in approach is not nearly so dramatic as to suggest that the Defendant and Epstein at that time entered "a wholly new agreement" with a new "conspiratorial objective." *Haji v. Miller*, 584 F. Supp. 2d 498, 519 (E.D.N.Y. 2008). The similarity-of-operations factor therefore favors the Defendant.

*Overlap of geographic scope.* There is some, albeit incomplete, geographic overlap between the two counts. Count Three focused on travel to New York because the ultimate objective of the conspiracy was to transport minors to New York to engage in criminal sexual activity in violation of New York law. Count Five, by contrast, focused on Epstein's residence in Florida, where Carolyn and Virginia Roberts were paid to give Epstein sexualized massages. Nevertheless, some geographic overlap between the two counts remained. All four witnesses testified about sexual conduct by the Defendant or Epstein in locations other than New York, whether Florida, New Mexico, or London. The Court admitted such testimony concerning

13

sexual conduct outside of New York as relevant to Count Three because it tended to establish the

existence of a conspiracy and of the Defendant and Epstein's intent to abuse the victims in New

York.  In sum, the same locations—particularly Florida—were part of the Government's case for

both counts.  And over time, a conspiracy's "shifting emphasis in the location of operations

do[es] not necessarily require a finding of more than one conspiracy."  *Eppolito*, 543 F.3d at 48

(quoting *Jones*, 482 F.3d at 72).  This factor therefore favors the Defendant or, at least, is neutral.

*Common overt acts*.  The Government correctly notes that the overt acts provided to the

jury for Counts Three and Five are distinct.  *See* Jury Charge, Dkt. No. 565 at 49–50.  This factor

therefore tips toward the Government—but only slightly.  A number of the overt acts listed for

Count Three could have been prosecuted under Count Five but for the fact that 18 U.S.C. § 1591,

the Trafficking Victims Protection Act, was not enacted until 2000.  *See* Gov. Br. at 28.  That

some identical overt acts were not listed for both conspiracies is therefore more a function of

legal timing than an indication of two distinct conspiracies.  *Cf. Hernandez*, 2009 WL 3169226,

at *12.

*Interdependence*.  Counts Three and Five are not interdependent because the success or

failure of one conspiracy is independent of the success or failure of the other.  *See Macchia*, 35

F.3d at 671.  In other words, the success of the Defendant and Epstein's scheme to abuse Carolyn

from 2001 to 2004 was not made more or less likely by the prior success or failure to abuse Jane,

Annie, or any other underage girl.  This factor, however, makes little difference in the final

analysis if "what was ultimately proven was one common conspiracy."  *Maslin*, 356 F.3d at 197.

*The Government's theory at trial*.  The Second Circuit has instructed district courts to

consider not only the enumerated *Korfant* factors but to consider the entire record.  *See id.* at

196; *United States v. Olmeda*, 461 F.3d 271, 282 (2d Cir. 2006).  In *Maslin*, the Second Circuit

first explained that applying the *Korfant* factors led to the conclusion that successive prosecutions for conspiracies to distribute marijuana were barred by double jeopardy, but then continued, stating that "several additional factors . . . not directly addressed in *Korfant* . . . further point toward a finding of double jeopardy," namely, "the fact that the Government, in its opening and closing arguments, presented both cases to the jury as broad conspiracies of an essentially identical nature." 356 F.3d at 197.  The same is true here.  As explained above, the Government's opening statement and closing arguments presented a theory of a singular conspiracy, highlighting:  The degree of similarity between each victim witness's experience over a decade; the common "playbook" that the Defendant ran "over and over and over again," Trial Tr. at 2848; and the tight partnership between the Defendant and Epstein.  And each of those features was accompanied by references to a singular "scheme" to abuse all victim witnesses.  *Id*. at 36, 2843, 2853.  At bottom, the case presented to the jury by the Government was of a single decade-long conspiracy by the Defendant and Epstein to sexually abuse underage girls.  Having pursued such a broad and encompassing conspiracy, the Government cannot now claim, and cannot carry its burden of proving by a preponderance of the evidence, that Count Five was legally and factually distinct.  *See Maslin*, 356 F.3d at 197.

Because Count Three and Count Five are multiplicitous, the proper remedy is to enter judgment on only one of the counts.  *See Josephberg*, 459 F.3d at 355 ("If the jury convicts on more than one multiplicitous count, the defendant's right not to suffer multiple punishments for the same offense will be protected by having the court enter judgment on only one of the multiplicitous counts." (citing *Ball v. United States*, 470 U.S. 856, 865 (1985))).  Because Count Five is factually subsumed by Count Three, the Court will impose judgment only on Count Three.  The Court emphasizes, however, that finding Count Five to be multiplicitous "does not

overturn any of the factual findings made by the jury" —it means only that, "as a matter of law, the jury found the same thing twice." *Ansaldi*, 372 F.3d at 125.  Or, in this case, three times.

## II.    The Court denies the Defendant's Rule 29 motion.

The Defendant argues there was insufficient evidence to support any of her five counts of conviction, and, therefore, the Court should enter a judgment of acquittal as to all counts under Rule 29 of the Federal Rules of Criminal Procedure.  Rule 29 provides, in relevant part, that "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."  Fed. R. Crim. P. 29(a); *United States v. Pugh*, 945 F.3d 9, 19 (2d Cir. 2019).  "[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be . . . to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 318 (1979).  "The court must make that determination with the evidence against a particular defendant, viewed in the light most favorable to the government, and with all reasonable inferences resolved in favor of the government."  *Pugh*, 945 F.3d at 19 (cleaned up) (quoting *Eppolito*, 543 F.3d at 45).  Under this inquiry, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson*, 443 U.S. at 319 (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)); *United States v. Zhong*, 26 F.4th 536, 560 (2d Cir. 2022).

At the close of the Government's case, the Defendant made her Rule 29 application "with respect to every count in the S2 indictment," but "confine[d] [her] comments to address specifically Counts One and Two."  Trial Tr. at 2266.  The Court denied the motion.  *Id*. at 2274.

Following the close of the defense case, the Defendant renewed her previous Rule 29 application. *Id*. at 2736.

In her brief, the Defendant reiterates her request that the Court "enter a judgment of acquittal as to all counts." Maxwell Br. at 30. The Court has deemed Counts One and Five multiplicitous, *see supra* Part I, and therefore the Court will not enter judgment on those counts. And at trial, the jury found the Defendant not guilty on Count Two. Thus, the Court will consider the sufficiency of the evidence for the remaining counts: Three, Four, and Six. After considering the arguments and evidence, the Court denies the Defendant's Rule 29 motion.

The Court first notes that the Defendant has not provided substantive argument on the sufficiency of the evidence—in either the oral application or the post-conviction briefing—for Counts Three, Four, or Six. Instead, for these remaining counts, the Defendant simply asserts that the Court should "enter a judgment of acquittal as to all counts under Rule 29 . . . because the government failed to prove each element of the charges beyond a reasonable doubt." Maxwell Reply at 18, Dkt. No. 647; Maxwell Br. at 30. The Court disagrees.

The Court first considers the substantive counts. Count Four charged the Defendant with the substantive count of transportation of an individual under the age of seventeen with intent to engage in sexual activity in violation of New York law. This count related only to Jane during the period 1994 to 1997. The Government was required to establish the following elements beyond a reasonable doubt: (1) that the Defendant knowingly transported an individual in interstate commerce, as alleged in the Indictment; (2) that the Defendant transported the individual with the intent that the individual would engage in sexual activity for which any person can be charged with a criminal offense under New York law, as alleged in the Indictment; and (3) that the Defendant knew that the individual was less than seventeen years old at the time

of the acts alleged in Count Four; or that the Defendant aided and abetted the same.  Jury Charge

at 26, 37.

The Court concludes that there was sufficient evidence for the jury to find the Defendant

guilty of Count Four beyond a reasonable doubt.  Jane testified that Epstein first engaged in

sexual activity with her in Palm Beach when she was fourteen years old.  Trial Tr. at 305.  She

then began traveling from Palm Beach to New York with the Defendant and Epstein at that same

age.  *Id*. at 315–16.  Jane explained that she traveled on commercial flights and Epstein's private

jet.  *Id*. at 316.  She testified that the Defendant also traveled on some of these flights, and that

the Defendant assisted her in making her travel arrangements to New York.  *Id*. at 316–17.  On

one occasion when she was fifteen, Jane recounted, she had trouble getting on a commercial

flight because she did not have proper identification.  However, the Defendant "made it happen"

for her by making a call and helping her get on the flight.  *Id*. at 323–24.  Jane also testified that

the Defendant was present on some occasions when Epstein sexually abused Jane in New York

when she was under the age of seventeen.  *Id*. at 320.  The Court concludes that this evidence,

taken together, was sufficient for the jury to find beyond a reasonable doubt that the Defendant

knowingly transported Jane to New York with the intent to engage in sexual activity illegal

under New York law, or at minimum, aided and abetted Epstein in doing so.

Next, the Court concludes that there was sufficient evidence for the jury to find the

Defendant guilty of Count Six.  Count Six charged the Defendant with the substantive count of

sex trafficking of an individual under the age of eighteen.  The Government was required to

prove beyond a reasonable doubt that: (1) the Defendant knowingly recruited, enticed, harbored,

transported, provided, or obtained a person; (2) the Defendant knew that the person was under

the age of eighteen; (3) the Defendant knew the person would be caused to engage in a

18

commercial sex act; and (4) the Defendant's acts were in or affecting interstate commerce; or that the Defendant aided and abetted the same. Jury Charge at 32, 37. Count Six applied solely to Carolyn during the period 2001 to 2004. *Id.* at 32.

Carolyn testified that when she was under the age of eighteen, the Defendant would call her to set up appointments for Carolyn to perform sexualized massages on Epstein. Trial Tr. 1527, 1530. Carolyn explained the sexual activities that occurred during the massages. *Id.* at 1544–47. Carolyn testified that the Defendant saw her naked in the massage room and continued to call Carolyn to schedule appointments with Epstein. *Id.* at 1538. She recalled a specific incident when she was fourteen in which she was naked in the massage room and the Defendant touched her breasts and commented that Carolyn "had a great body for Mr. Epstein and his friends." *Id.* at 1536–38. Carolyn testified that the Defendant knew that she was under the age of eighteen and continued to call her to schedule appointments with Epstein after learning that fact. *Id.* at 1535. Carolyn further testified that she received money in exchange for performing sexualized massages on Epstein. *E.g.*, *id.* 1523. She recalled that while money was often left on the sink outside of the massage room, the Defendant paid her directly after massages on one or two occasions. *Id.* at 1540–41. Carolyn's testimony was corroborated by Shawn, Carolyn's boyfriend at the time, and physical evidence including phone message pads. This evidence was plainly sufficient for the jury to find beyond a reasonable doubt that the Defendant committed sex trafficking of an individual under eighteen, or aided and abetted Epstein in doing so.[3]

---

[3] If the Court were to conclude that Count Five is not multiplicitous, it would deny the Defendant's Rule 29 motion as to Count Five. Count Five charged the Defendant with participating in a conspiracy to commit sex trafficking of individuals under the age of eighteen from about 2001 to 2004. The evidence that supports the Defendant's conviction of Count Six, the substantive count, also supports the Count Five conspiracy conviction. Additionally, Juan Alessi testified that the Defendant approached Virginia Roberts in a parking lot and that he then saw her at Epstein's Palm Beach residence later that day. Trial Tr. at 841–43. Documentary evidence, including flight records, established that Virginia was under the age of eighteen when she met the Defendant and Epstein. *See, e.g.*, *id.* at 1855 (December 2000 flight record including Epstein, the Defendant, and Virginia); *see also* GX-14 (birth certificate). Carolyn testified that Virginia recruited her and that Virginia performed sexualized massages on

Finally, Count Three charged the Defendant with conspiracy to transport individuals under the age of seventeen to travel in interstate commerce with intent to engage in illegal sexual activity in violation of New York law. The Government was required to prove beyond a reasonable doubt: (1) that two or more persons entered into the unlawful agreement charged; (2) the Defendant knowingly and willfully became a member of that conspiracy; (3) one of the members of the conspiracy knowingly committed at least one overt act; and (4) the overt act that the jury found to have been committed was committed in furtherance of that conspiracy. Jury Charge at 41.

The Court concludes that the trial evidence supported a finding of guilt beyond a reasonable doubt for each element of Count Three. The Government presented evidence that could lead a reasonable juror to conclude that the Defendant worked with Epstein between 1994 and 2004 to groom minor victims in an effort to transport them to New York to engage in sexual activity illegal under New York law. As noted above, Jane testified in detail about her travel to New York with the Defendant and Epstein where she was sexually abused. Trial Tr. at 319–20. Jane also testified about the steps taken by the Defendant and Epstein to make her feel comfortable before they began engaging in sexual activity with her and inviting her to travel. *Id*. 299–303; *see also id*. at 348 (Jane testifying that their behavior toward her made her "feel special").

Other witnesses testified to similar conduct. Annie testified that after she met Epstein in New York, she was invited to travel with the Defendant and Epstein to New Mexico when she was sixteen. *Id*. at 2068–69, 2075–77. She testified that on this trip, the Defendant and Epstein took her shopping and to the movies. *Id*. at 2080–81. She also testified that the Defendant

---

Epstein in exchange for money. Trial Tr. 1518–24. The Court concludes that the evidence related to Carolyn and Virginia was sufficient for the jury to convict the Defendant on Count Five.

encouraged her to massage Epstein's feet, and that the Defendant then gave her a massage during which the Defendant touched Annie's breasts.  *Id*. at 2083–86.  As noted above, Carolyn testified that the Defendant paid her for performing sexualized massages on Epstein.  She also testified that Epstein and the Defendant asked her about her life and family and discussed sexual topics with her.  *Id*. at 1533–36.  Epstein then invited her to travel generally, and the Defendant invited her to travel to Epstein's private island in the Caribbean.  *Id.* at 1535, 1540.  A reasonable juror could have concluded that the Defendant's and Epstein's actions, including their efforts to normalize sexual conduct and invitations for underage girls to travel to New Mexico and the Caribbean, were in furtherance of the conspiracy's goal of transporting minors to New York for the purpose of engaging in sexual activity illegal under New York law.  Finally, although the jury was instructed that it could not convict the Defendant solely on the basis of Kate's testimony, her testimony corroborated the testimony of other witnesses as to the Defendant's knowledge and role in the conspiracy.  *Id*. at 1177–90.  The Court concludes that this evidence was sufficient for a reasonable jury to convict the Defendant for conspiring to transport individuals in interstate commerce with intent to engage in sexual activity illegal under New York law.

Accordingly, the Court denies the Defendant's Rule 29 motion for a judgment of acquittal.

### III.    The Court denies the Defendant's motion claiming a constructive amendment or prejudicial variance.

The Defendant also seeks to vacate her convictions as to Counts One, Three, and Four (the Mann Act counts) pursuant to Federal Rule of Criminal Procedure 33.  She contends that the jury convicted her of intending that Jane engage in sexual activity in New Mexico, rather than New York, thus resulting in a constructive amendment of the Indictment, or in the alternative, a

21

prejudicial variance.  For the following reasons, the Court disagrees and denies the Defendant's motion on this basis.

### A.  Applicable Law

Under the Fifth Amendment's Grand Jury Clause, "a defendant has the right to be tried only on charges contained in an indictment returned by a grand jury."  *United States v. Wozniak*, 126 F.3d 105, 109 (2d Cir. 1997).  "[W]hen the charge upon which the defendant is tried differs significantly from the charge upon which the grand jury voted," a constructive amendment occurs and reversal is required.  *United States v. Khalupsky*, 5 F.4th 279, 293 (2d Cir. 2021).

"To prevail on a constructive amendment claim, a defendant must demonstrate that either the proof at trial or the trial court's jury instructions so altered an essential element of the charge that, upon review, it is uncertain whether the defendant was convicted of conduct that was the subject of the grand jury's indictment."  *United States v. Salmonese*, 352 F.3d 608, 620 (2d Cir. 2003) (quoting *United States v. Frank*, 156 F.3d 332, 337 (2d Cir. 1998)).  In making this determination, the Court first delineates the "core of criminality" of the crime alleged.  *United States v. Gross*, No. 15-cr-769 (AJN), 2017 WL 4685111, at *20 (S.D.N.Y. Oct. 18, 2017), *aff'd sub nom. United States v. Lebedev*, 932 F.3d 40 (2d Cir. 2019).  The "core of criminality . . . involves the essence of a crime, in general terms."  *United States v. Daugerdas*, 837 F.3d 212, 225 (2d Cir. 2016) (alteration in original) (quoting *United States v. D'Amelio*, 683 F.3d 412, 418 (2d Cir. 2012)).  The Court then determines whether the evidence or jury instructions at trial created a "substantial likelihood" that the defendant was not convicted of the crime described in that core, but instead of a crime "distinctly different."  *D'Amelio*, 683 F.3d at 416, 419.  The Second Circuit has "consistently permitted significant flexibility in proof, provided that the defendant was given *notice* of the *core* of criminality to be proven at trial."  *United States v.*

*Banki*, 685 F.3d 99, 118 (2d Cir. 2012) (quoting *United States v. Rigas*, 490 F.3d 208, 228 (2d Cir. 2007)).  Thus, the defendant must show that "the challenged evidence or jury instructions tied a defendant's conviction to 'behavior *entirely separate* from that identified in the indictment.'"  *United States v. Bastian*, 770 F.3d 212, 223 (2d Cir. 2014) (emphasis added) (quoting *United States v. Danielson*, 199 F.3d 666, 670 (2d Cir. 1999)).

By contrast, "[a] variance occurs when the charging terms of the indictment are left unaltered, but the evidence at trial proves facts materially different from those alleged in the indictment."  *Salmonese,* 352 F.3d at 621 (quoting *Frank*, 156 F.3d at 337 n.5).  "Although the distinction between constructive amendment and variance may appear 'merely one of degree,' there is an important difference in outcome: 'a constructive amendment of the indictment is considered to be a *per se* violation of the grand jury clause, while a defendant must show prejudice in order to prevail on a variance claim.'"  *Id.* (quoting *Frank*, 156 F.3d at 337 n.5); *see also Rigas*, 490 F.3d at 226 ("[A] defendant alleging variance must show 'substantial prejudice' to warrant reversal.").  "A defendant cannot demonstrate that [s]he has been prejudiced by a variance where the pleading and the proof substantially correspond, where the variance is not of a character that could have misled the defendant at the trial, and where the variance is not such as to deprive the accused of his right to be protected against another prosecution for the same offense."  *Khalupsky*, 5 F.4th at 294 (quoting *Salmonese*, 352 F.3d at 621–22).  Moreover, when a defendant has sufficient notice of the Government's theory at trial, she cannot claim that she was unfairly or substantially prejudiced.  *See United States v. Kaplan*, 490 F.3d 119, 129–30 (2d Cir. 2007).

Finally, the Court bears in mind that the Defendant brings her motion pursuant to Rule 33, which permits the Court to "vacate any judgment and grant a new trial if the interest of

justice so requires." Fed. R. Civ. P. 33(a).  Such a motion is granted "sparingly and in the most

extraordinary circumstances, and only in order to avert a perceived miscarriage of justice."

*United States v. Gramins*, 939 F.3d 429, 444 (2d Cir. 2019) (cleaned up).

### B.  No constructive amendment occurred.

Count Four charged the Defendant with transportation of an individual under the age of

seventeen with intent to engage in illegal sexual activity, and Count Three charged a conspiracy

to do the same.  The core of criminality of these counts, the parties agree, was a scheme by

Epstein and the Defendant to cause underage girls to travel to New York with the intent that they

would engage in sexual activity in violation of New York law.  Gov. Br. at 6; Maxwell Br. at 9.[4]

The Defendant contends that a jury note received during deliberations revealed that the

jury convicted the Defendant on a crime different from this core of criminality.  Namely, the

Defendant argues that in convicting her of Count Four, the jury found she intended for Jane to

engage in sexual activity in New Mexico, *without* finding that she intended for Jane to engage in

sexual activity in New York.  Maxwell Reply at 2.  She argues the Court's decision to refer the

jury back to the charge and refusal to give a supplemental instruction was error.  As a result of

this same error, she says, the jury also improperly convicted her of Count Three.  For the reasons

that follow, the Court concludes that there is not a "substantial likelihood" that the Defendant

was "convicted of an offense other than that charged in the indictment."  *D'Amelio*, 683 F.3d at

416 (quoting *United States v. Mollica*, 849 F.2d 723, 729 (2d Cir. 1988)).

---

[4] The Defendant also contends that her conviction on Count One was the result of a constructive amendment.
Because the Court will not enter judgment on Count One per the parties' consent, the Court does not address Count
One here.  In any event, the Defendant's argument as to why Count One was constructively amended is the same as
her argument as to Count Three, and the Court's analysis would be the same.  *See* Maxwell Br. at 16.

### 1. The Court's instructions, the evidence at trial, and the Government's summation captured the core of criminality.

*First*, the Court's instructions to the jury during trial and after the close of evidence

captured the core of criminality. As explained above, the Indictment charged the Defendant with

four counts in violation of the Mann Act, each predicated on a violation of New York Penal Law

Section 130.55. That provision of New York law criminalizes sexual contact with an individual

known to be under the age of seventeen. Jury Charge at 24. The jury charge made clear that this

provision of New York law served as the predicate offense for Counts Two and Four. *See id.* at

23–24 (Count Two), 28 (Count Four, instructing the jury to decide whether the Defendant had

knowingly transported Jane with the intent to engage in sexual activity with Jane in violation of

New York Penal Law Section 130.55, as alleged in the Indictment). The Court also accepted the

Defendant's requested edits that further clarified that the predicate state offense was New York

law. *See, e.g.*, Request to Charge at 19, 23, 26, 30, 31, Dkt. No. 410-1; Jury Charge at 20, 24,

26, 28 (specifying, *e.g.*, that the predicate state offense was "New York law," rather than an

unspecified "criminal offense").

The jury charge also clearly instructed on the role of New York law in the jury's

assessment of the Mann Act conspiracy counts, Counts One and Three. The charge explained

that the object of the conspiracies was a violation of the same New York law at issue in Count

Two. *See* Jury Charge at 44–45. In particular, the objects of Counts One and Three were the

enticement of minors to travel and the transport of minors, respectively, with the intent to engage

in sexual activity illegal under New York law. *See id.* As for the overt acts, the Court, at the

parties' request, did not provide the jury with a copy of the Indictment. Trial Tr. at 2781–82.

Rather, the charge specified the relevant overt acts. Jury Charge at 49–50. For Counts One and

Three, this included the instruction: "the Indictment alleges as follows: . . . (2) In or about 1996,

when Jane was under the age of 17, Jane was enticed to travel from Florida to New York for purposes of sexually abusing her at the New York Residence, in violation of New York Penal Law, Section 130.55." *Id.* at 49.

The Court also gave two limiting instructions to ensure that the jury's consideration of certain relevant evidence was properly focused on the core of criminality. These instructions pertained to testimony about sexual activity that was not criminal conduct under New York Penal Law Section 130.55. The first limiting instruction pertained to Kate. This instruction informed the jury that it could not convict the Defendant on Counts One and Three solely on the basis of Kate's testimony because Kate could not be considered a victim of the crimes charged. Trial Tr. at 1167–68. This was so because she was older than seventeen at the time of the events, and, as explained, the object of the charged conspiracies was transport with intent to engage in sexual conduct in violation of New York Penal Law Section 130.55, which criminalizes sexual contact with individuals under the age of seventeen. *See* Nov. 1, 2021 Tr. at 67–68. The second limiting instruction pertained to Annie, who testified about sexual contact in New Mexico only. The instruction explained that her testimony about sexual conduct did not describe "illegal sexual activity" as alleged in the Indictment, which was a legal term that the Court would explain at the end of the case. Trial Tr. at 2048–49. This was so because, as explained, the object of the charged conspiracies was a violation of New York law, not New Mexico law. Both limiting instructions explained that the jury could determine that the testimony was relevant evidence. That was so because such evidence tended to establish the Defendant's intent that transport of a minor victim to New York was for the purpose of sexual activity illegal under New York law. The Defendant concedes this point as to testimony about sexual activity in states other than New

York.  Maxwell Reply at 5.  The jury charge and limiting instructions at trial thus instructed the
jury on the core of criminality.

    *Second*, the Government marshaled evidence that captured the core of criminality as pled
in the Indictment and instructed by the Court.  Jane testified that after she met the Defendant and
Epstein at a summer camp, Epstein began engaging in sexual activity with her at his residence in
Florida.  Trial Tr. at 293–95, 305–06.  Jane then began traveling with Epstein and the Defendant
when she was fourteen years old.  *Id.* at 315.  As the Defendant notes, the majority of Jane's
testimony discussing travel pertained to trips to New York and sexual activity that took place in
New York.  Maxwell Br. at 13.  In her testimony, Jane recalled specific details of Epstein's New
York residence and the sexual acts that occurred there.  *See* Trial Tr. at 316–20.  She explained
that while she "mainly" traveled to New York on Epstein's private plane, she also took
commercial flights.  *Id.* at 316.  She further testified that the Defendant assisted in making these
travel arrangements.  *Id.* at 316–17.  Corroborating evidence included flight records to New York
and photos of Epstein's New York residence matching Jane's description.  *See id.* at 320.

    In addition to the New York trips, Jane testified about a trip she took to New Mexico with
the Defendant and Epstein when she was fifteen or sixteen years old.  *Id.* at 321.  In her
testimony regarding this trip, which spanned only three transcript pages, Jane explained that
during the trip Epstein engaged in sexual activity with her similar to what took place in New
York.  *See id.* at 321–23.  As explained above, testimony about sexual activity in other states,
including Florida and New Mexico, was relevant to the Defendant's intent.  The testimony was
part and parcel of the Defendant and Epstein's scheme to groom underage girls at Epstein's
various properties, including in New Mexico and Palm Beach, to then be transported to New
York for sexual activity illegal under New York law.  Accordingly, this particular testimony was

part of the same "set of discrete facts consistent with the charge in the indictment," not a previously unidentified and independent theory of guilt. *D'Amelio*, 683 F.3d at 419; *see also United States v. Jones*, 847 F. App'x 28, 30 (2d Cir. 2021) (summary order) (no constructive amendment in sex trafficking case where indictment did not allege "advertising" but the evidence "fell squarely within the charged scheme" (cleaned up)).

*Third*, the Government's summation also reflected the core of criminality of transporting Jane and other underage girls to New York with the intention that sexual activity would occur in New York. In its summation regarding Count Four, the Government focused on travel to New York. *See* Trial Tr. at 2891–92.[5] The Government's explanation of Counts One and Three followed this pattern as well, with the summation again making clear that the Defendant and Epstein had intended for the victims to be "sexually abused in New York." *Id.* at 2895. Thus, the Court's instructions to the jury, the evidence presented at trial, and the Government's argument in summation did not describe "behavior entirely separate from that identified in the indictment," *Bastian*, 770 F.3d at 223 (quoting *Danielson*, 199 F.3d at 670), but instead consistently captured the core of criminality with which the Defendant was charged.

### 2. The jury note and the Court's response did not result in a constructive amendment.

The Defendant contends that regardless of whether the Court's prior instructions or Government's arguments at trial were proper, a jury note revealed that the jury convicted the Defendant for intending that Jane engage in sexual activity in New Mexico, not New York. *See* Maxwell Reply at 2. She argues that the Court then erred by refusing a supplemental instruction. The ambiguous note and the Court's rejection of the Defendant's proposed responses to it did not

---

[5] In its summation regarding Count Two, which introduced the New York predicate offense to the jury, the Government also repeatedly emphasized that the Defendant and Epstein enticed Jane to travel to New York to be abused. *See* Trial Tr. 2889–90.

alter the fact that the evidence and instructions at trial captured the core of criminality of the Indictment.

> The jury note at issue read:
>
> Under Count Four (4), if the defendant aided in the transportation of Jane's return flight, but not the flight to New Mexico where/if the intent was for Jane to engage in sexual activity, can she be found guilty under the second element?

Court Ex. 15, Dkt. No. 593 at 23.  After hearing from the parties, the Court determined that it was unclear to what testimony the note referred and what legal question the note asked. Accordingly, the Court concluded that the appropriate course was to refer the jury back to the instruction for the second element of Count Four, with a reminder to consider carefully the full instruction.  Trial Tr. at 3141.  The Court also rejected the Defendant's supplemental instruction proposed the following day because it was partially unresponsive, partially redundant, and partially an erroneous statement of law.  *Id.* at 3148–50.

The Defendant's contention that this series of events worked a constructive amendment to the Indictment is without merit.  *First*, the Defendant speculates extensively about which flights and evidence the jury was referencing in the note, hazarding that the jury was focused on a 1997 flight from New York to New Mexico and an unidentified return flight to Florida.  *See* Maxwell Br. at 14–15.  But Jane testified about taking numerous flights both on Epstein's private plane and on commercial carriers.  The note did not specify which of these many flights or other testimony the jury was considering.  The Court could not provide supplemental instruction based on such a speculative foundation.

*Second*, the note was not "crystal clear" as the Defendant contends.  Maxwell Reply at 6. Rather, as sometimes occurs, the note was decidedly ambiguous as to the precise legal question being asked.  For example, the jury could have been asking about aiding-and-abetting liability as

to the second element.  Or it could have been asking if it was permissible to consider the New

Mexico testimony in its assessment of Count Four.  Indeed, the Defendant proffered a different

interpretation when the Court first read the note at trial.  Initially, the Defendant argued that the

jury was asking if the Defendant could be found guilty solely for aiding and abetting a flight

home from New Mexico, which she said raised the issue of whether sexual activity could be the

"significant or motivating purpose" for the travel.  Trial Tr. at 3128–30.  It was only after a

protracted discussion, spanning ten pages of transcript, that the Defendant eventually suggested

that the jury was considering convicting the Defendant on Count Four solely on conduct in New

Mexico without any travel to New York.  On this score, the Defendant argued at trial and argues

now that the absence of a comma between "New Mexico" and "where/if" revealed the jury's

thinking.  Maxwell Reply at 6 n.2.[6]  But hinging the note's meaning on an absent comma does

not indicate a meaning "clear on [its] face."  Maxwell Reply at 9.  With or without the comma,

the note was ambiguous as to the destination of the hypothetical return flight, the testimony

being referenced, and the legal question being asked.

 The note was clear on one point—the jury was asking about the second element of Count

Four.  Accordingly, the Court sent the jury back to the charge, which accurately instructed that

Count Four had to be predicated on finding a violation of New York law.  This response ensured

that the jury focused on the correct instruction and, in turn, reminded the jury that the only state

law at issue was *New York's*, even if sexual abuse in New Mexico was relevant evidence of

intent.  *See United States v. Rommy*, 506 F.3d 108, 126 (2d Cir. 2007) ("[A] trial court

---

[6] The Defendant also accuses the Government of muddying the inquiry by inserting a comma in this supposedly
crucial spot.  Maxwell Reply at 5, 6 n.2.  It is apparent from the Government's brief that it relied on the trial
transcript for its transcription of the jury note, which included a comma between these words.  *See* Gov. Br. at 13
(quoting Trial Tr. at 3126).

responding to a note from a deliberating jury is only required to answer the particular inquiries posed."); *see also United States v. Parker*, 903 F.2d 91, 101 (2d Cir. 1990) ("The trial judge is in the best position to sense whether the jury is able to proceed properly with its deliberations, and [s]he has considerable discretion in determining how to respond to communications indicating that the jury is experiencing confusion.").  The jury was free to send a clarifying or further note following the Court's instruction.

By contrast, the Defendant failed to propose a legally accurate response for the jury.  Her proposed responses to the note on the day it was received and the following morning were erroneous.  At the time the Court received the note and discussed it with counsel, the Defendant first proposed that the answer to the note's question was simply "no" because, she argued, a return flight is for the purpose of returning home, "not for the purpose of illegal sexual activity." Trial Tr. at 3128–30.  But the Court could not respond "no" to an ambiguous question.  *Id.* at 3138.  Moreover, the Defendant eventually conceded the principle that assistance with a return flight home could aid and abet a trip that was for the purpose of illegal sexual activity.  *See id.* at 3136.  Alternatively, the Defendant requested that if the Court were to refer the jury to the charge, that it direct the jury to lines 14 to 17 of Instruction No. 21, which instructed on "significant or motivating purpose."  *Id.* at 3131.  But it was unclear that those particular lines addressed the jury's question, and the Court's decision to refer the jury to the entirety of Instruction No. 21 encompassed those lines.

The following day, although the jury had not sought further clarification, the Defendant took another pass at proposing an additional response to the note.  She requested a three-paragraph supplemental instruction that referenced elements of Counts Two and Four.  *See* Dkt.

No. 566.[7]  The Second Circuit has cautioned that supplemental instructions "enjoy special prominence in the minds of jurors," *Arroyo v. Jones*, 685 F.2d 35, 39 (2d Cir. 1982), and that complete accuracy is of "crucial importance," *United States v. Kopstein*, 759 F.3d 168, 172 (2d Cir. 2014) (quoting *United States v. Lefkowitz*, 284 F.2d 310, 314 (2d Cir. 1960)).  Portions of the requested instruction were unresponsive, portions were redundant, and portions were legally inaccurate.  The first paragraph, which pertained to Count Two, was unresponsive to the jury's note that asked only about Count Four.  The second paragraph was unnecessary because it was redundant.  The Defendant now raises for the first time, in a footnote, that the Court should have *sua sponte* provided the jury this paragraph alone.  Maxwell Reply at 9 n.4.  But the charge as a whole already made clear that a violation of New York Penal Law Section 130.55 was the key inquiry.  *See* Jury Charge at 20, 23, 26, (specifying "a criminal offense under New York law"), 24 (Count Two instructions on New York Penal Law Section 130.55), 28 (Count Four referring back to these instructions), 49–50 (specifying the overt act of Jane traveling "from Florida to New York for purposes of sexually abusing her at the New York Residence, in violation of New York Penal Law, Section 130.55").  Finally, the proposal also inaccurately stated that "sexual activity in any state other than New York *cannot form the basis*" of

---

[7] The requested instruction read:

> As to the third element of Count Two, you must determine whether the Government has proven beyond a reasonable doubt that the Defendant acted with the intent that Jane would engage in sexual activity within the state of New York in violation of New York Penal Law 130.55.

> As to the second element of Count Four, you must determine whether the Government has proven beyond a reasonable doubt that the Defendant transported Jane with the intent that Jane would engage in sexual activity within the state of New York in violation of New York Penal Law 130.55.

> An intent that Jane engage in sexual activity in any state other than New York cannot form the basis of these two elements of Counts Two and Four.

Dkt. No. 566 at 7.

convictions on Counts Two and Four, erroneously implying that such evidence was irrelevant. Dkt. No. 566 at 7 (emphasis added). Thus, in light of the note's ambiguity and the Defendant's failure to propose an accurate response in either the first attempt or the second attempt a day later, the Court's decision to refer the jury back to the legally sound charge was not error and plainly did not result in a constructive amendment to the Indictment.

The Defendant does not expressly contend that the instructions were legally erroneous— nor could she. As explained above, the charge made clear that the only predicate state law at issue was New York's. Instead, the Defendant objects that the charge was "stripped of any mention of 'travel to New York.'" Maxwell Br. at 15. But the Court rejected the Defendant's specific requests that were unnecessary, inaccurate, or would have confused the jury. For example, the Court rejected the Defendant's request to limit the charge to requiring travel from "Florida to New York," as alleged in the "to wit" clause of the Indictment, because travel from New Mexico to New York, for example, would also have been sufficient. *See* Trial Tr. at 2758– 61 (Charging Conference); *see also United States v. Little*, 828 F. App'x 34, 37–38 (2d Cir. 2020) (summary order) (noting that generally, "'to wit' clauses do not modify essential elements of the offense"). The Court also denied the Defendant's request to instruct the jury on law governing the age of consent in New Mexico, the United Kingdom, and Florida. First, the Defendant's proposal oversimplified New Mexico's age of consent law. The Court could not accurately instruct the jury on New Mexico's law without potentially introducing a theory of guilt that the Government had not charged, or resolving a factual question on the use of force for the jury. Trial Tr. at 1712–13; Nov. 23, 2021, Final Pretrial Conference Tr. at 31–38. And second, instructing on state law that the Defendant was not alleged to have violated ran a serious risk of confusing the jury as to the role of that law. Indeed, it was the Defendant's proposal that

ran the risk of moving the jury away from consideration of the core of criminality alleged in the Indictment.[8]

The appropriate approach was to instruct the jury on the one and only predicate state offense for the Mann Act counts charged in the Indictment: New York Penal Law Section 130.55.  For that reason, the Court also rejected the Defendant's request to repeat in the charge the limiting instructions as to Kate's and Annie's testimony and the Defendant's request, raised for the first time at the charging conference and well after completion of her testimony, to include an unspecified limiting instruction as to Jane's New Mexico testimony.  Trial Tr. at 2773–77.  During the witnesses' testimony, the jury had yet to be instructed on the meaning of "illegal sexual activity as alleged in the indictment."  But it was unnecessary to repeat the limiting instructions alongside the charge's definition of "illegal sexual activity."  *Id.* at 2774–75.  The jury now had that phrase clearly defined as a violation of New York Penal Law Section 130.55.  In sum, the jury instructions charged that the jury could convict the Defendant only on the predicate state offense of New York law.  The jury is presumed to have followed these instructions.  *See United States v. Joyner*, 313 F.3d 40, 47 (2d Cir. 2002).

At bottom, the Defendant asks the Court to speculate based on an ambiguous note that the jury disregarded Jane's substantial testimony about travel to New York and sexual conduct in New York and further assumed a violation of *New York* law could be based on conduct only in *New Mexico*.  It is hardly plausible, let alone substantially likely, that this was the jury's

---

[8] The Defendant's proposed instruction on other jurisdictions' ages of consent first stated that "[t]o prove Counts One and Three, the government must establish beyond a reasonable doubt that Ms. Maxwell acted with the intent that the minors would engage in sexual activity for which any person can be charged with a criminal offense." Request to Charge at 51.  It then instructed on the ages of consent in several jurisdictions and stated that "[i]f the individual was at or above the age of consent in the relevant jurisdiction when the sexual activity occurred, then for the purposes of Counts One and Three, the sexual activity was not illegal." *Id.* at 52.  This proposed instruction would likely have created the confusion the Defendant raises now.

understanding. *See D'Amelio*, 683 F.3d at 416. Accordingly, the Court concludes that no constructive amendment resulted as to Count Four.

### 3. No constructive amendment occurred as to Count Three.

The Defendant's argument as to constructive amendment of Count Three, conspiracy to transport, wholly depends on her theory as to Count Four.[9] She argues that since it is "clear" that the jury convicted the Defendant of Count Four based only on Jane's New Mexico testimony, it must have convicted on the same basis for the conspiracy counts. Maxwell Br. at 16. Because no constructive amendment resulted as to Count Four, this argument is unavailing. But even if the Court were persuaded that the jury note revealed that the jury convicted the Defendant of Count Four on that basis, the note pertained only to Count Four and provided no basis to speculate as to the jury's conviction of Count Three. Moreover, it is not substantially likely that the jury convicted the Defendant of Count Three on Jane's New Mexico testimony alone. As described in detail above in the Court's denial of the Defendant's Rule 29 motion, the Government presented evidence that Annie and Carolyn were also victims of the conspiracy. Accordingly, even if a constructive amendment resulted as to Count Four, vacatur would still not be warranted as to Count Three.

### C. No prejudicial variance occurred.

In the alternative, the Defendant argues that she was substantially prejudiced because the Indictment did not contain any allegations that Jane was sexually abused in New Mexico. She therefore claims she was unfairly surprised by its introduction. For purposes of this motion, the Court will assume that Jane's testimony regarding New Mexico constituted a variance from the

---

[9] As noted above, because the Court will not enter judgment on Count One on the parties' consent, the Court addresses only Count Three here. In any event, the Defendant's arguments as to why Counts One and Three were constructively amended are the same. *See* Maxwell Br. at 16.

Indictment.  The Defendant has nevertheless failed to show that she was substantially prejudiced by this evidence.  *See Salmonese*, 352 F.3d at 621.

When a defendant has notice of the government's theory of the case before trial, she is not prejudiced by a variance.  *See Kaplan*, 490 F.3d at 129–30.  Pretrial disclosures may put a defendant on notice of evidence not specifically included in the indictment.  *See Khalupsky*, 5 F.4th at 294.  And a defendant's failure to object to allegedly surprising evidence or to request a continuance when evidence is introduced suggests that a defendant was not unfairly surprised or prejudiced.  *See Kaplan*, 490 F.3d at 130.

Here, the Defendant had sufficient notice of the Government's theory of the case, and of Jane's testimony regarding New Mexico specifically, to avoid substantial prejudice.  The Indictment charged a scheme to sexually abuse underage girls in New York.  In service of this scheme, the Indictment alleged that Epstein and the Defendant groomed the victims for abuse at various properties and in various states, including Epstein's ranch in New Mexico.  Jane had long recalled traveling to New Mexico, *see* Maxwell Br. at 16–17, although she did not report that Epstein had engaged in sexual activity with her at this property until closer to trial.  But the Defendant had adequate notice of this particular testimony such that there was no danger of substantial prejudice.  The Defendant received the Government's notes of Jane's interview where she recalled abuse in New Mexico on November 6, 2021, more than three weeks before trial.  At that point, the parties were still litigating the very instructions for Kate and Annie that the Defendant claims she would have sought for Jane had she received adequate notice.  *See, e.g.*, Nov. 23, 2021 Tr. at 28–38; *see also Lebedev*, 932 F.3d at 54 (concluding in part that the defendant was not "unfairly and substantially" prejudiced because "[t]he government disclosed the evidence and exhibits . . . four weeks prior to trial").  Moreover, that the Defendant did not

request a continuance or object to Jane's testimony until the charging conference suggests that she was not unfairly surprised. *See Kaplan*, 490 F.3d at 130. Accordingly, there is no indication in the record that the evidence adduced at trial unfairly surprised or prejudiced the Defendant.

Finally, the Defendant argues that Jane's testimony resulted in the "ultimate prejudice" because it led to the jury improperly convicting her on three of the four Mann Act counts. Maxwell Br. at 18. For the same reasons noted above, the Defendant was not prejudiced by the Court's response to the jury note because the ambiguous note did not reveal that the jury improperly convicted the Defendant of the Mann Act counts. Moreover, as explained above, the Defendant's request for a limiting instruction in the jury charge and a supplemental instruction following the ambiguous jury note was unnecessary. While Kate's and Annie's limiting instructions were appropriate at the time of their testimony when the jury had not yet been instructed on the meaning of "illegal sexual activity," it was unnecessary and potentially confusing to repeat them again in the context of the charge. At that point, the charge made clear to the jury that only a violation of New York law could form the predicate for the Mann Act counts—not New Mexico law. In sum, the Defendant has not shown that she suffered "substantial prejudice" meriting the vacatur of the Mann Act counts.

## IV. The Court denies the Defendant's pre-indictment delay claim.

Last, the Defendant argues, as she did in two pretrial motions, that all of her convictions should be vacated because of the Government's allegedly excessive and prejudicial delay in prosecuting the Defendant. As this Court previously explained, because "the statute of limitations is 'the primary guarantee against bringing overly stale criminal charges,'" the Defendant must satisfy a stringent two-part test. *Maxwell*, 534 F. Supp. 3d at 316 (quoting *United States v. Cornielle*, 171 F.3d 748, 751 (2d Cir. 1999)). The Defendant "must show both

that the Government intentionally delayed bringing charges for an improper purpose and that the delay seriously damaged [her] ability [to] defend against the charges." *Id.* (citing *Cornielle*, 171 F.3d at 751).

In its prior rulings, this Court concluded that the Defendant satisfied neither requirement: there was "no evidence that the Government's delay in bringing these charges was designed to thwart Maxwell's ability to prepare a defense," and she "failed to establish actual prejudice from the Government's delay." *Id.* at 316–17.  But, the Court explained, the Defendant could renew her motion if the factual record at trial showed prejudice that the pretrial record did not.  The Defendant now renews her motion, identifying a bevy of documentary records and witnesses that, she says, were unavailable because of the Government's delay.  The Court, for the reasons stated below, disagrees and denies the motion.

As an initial matter, even if the Court accepts all of the Defendant's contentions in her briefing, her pre-indictment delay claim must fail because the Defendant has made no claim that the Government intentionally delayed the Indictment to gain a tactical advantage over the Defendant.  *United States v. Alameh*, 341 F.3d 167, 176 (2d Cir. 2003).  The Court has twice concluded that "nothing in the record indicates that the Government's delay in bringing these charges was designed to thwart Maxwell's ability to prepare a defense."  *Maxwell*, 2021 WL 3591801, at *5.  It is the Defendant's burden to prove the Government's improper motive, but in her briefing she does not attempt to present evidence of intentional delay for tactical advantage. The Court therefore does not alter its prior conclusion.  If anything, as the Government notes, testimony at trial supplied legitimate explanations for the Government's failure to indict the Defendant at an earlier time.  For example, several witnesses testified that their cooperation with

the Government's investigation was relatively recent, *e.g.*, Trial Tr. at 354 (Jane), 1245 (Kate), 1680–84 (Carolyn), suggesting that an earlier prosecution was not feasible.

Even on the first step of the inquiry, the Defendant has failed to demonstrate that she suffered actual and substantial prejudice from delay. *United States v. Pierre-Louis*, No. 16 CR 541 (CM), 2018 WL 4043140, at *5 (S.D.N.Y. Aug. 9, 2018). Substantial prejudice is a stringent standard. The Defendant's "proof of prejudice must be definite and not speculative." *United States v. Birney*, 686 F.2d 102, 105–06 (2d Cir. 1982). Actual prejudice "is commonly demonstrated by the loss of documentary evidence or the unavailability of a key witness." *Cornielle*, 171 F.3d at 752. But "claims of mere loss of memory resulting from the passage of time have been held to be insufficient." *Pierre-Louis*, 2018 WL 4043140, at *4. And for any evidence lost because of delay, the Defendant "must 'demonstrate how (the loss of evidence) is prejudicial' to her." *Birney*, 686 F.2d at 106 (quoting *United States v. Mays*, 549 F.2d 670, 677 (9th Cir. 1977)).

The Defendant identifies two major sets of lost evidence that, she says, demonstrate actual prejudice to her defense at trial. First, she points to documentary evidence absent at trial: (1) flight records, including passenger manifests and records from Epstein's travel agent, that may have been more detailed than the flight logs entered at trial; (2) financial documents, including bank records and credit card records, which would have revealed more about the Defendant's receipt of funds from Epstein and could have been used to verify or disprove certain dates; (3) a complete set of the Defendant's phone records; and (4) Epstein's property records for both his New York and New Mexico residences. Second, the Defendant identifies four deceased witnesses: Albert Pinto and Roger Salhi, architects that built and renovated Epstein's residences in Florida, New York, and New Mexico; Sally Markham, a property manager for Epstein in the

39

2000s that could have testified the household manual was created by "the Countess," not the Defendant; and Lynn Fontanilla, a live-in housekeeper for Epstein in New York that could have testified about the Defendant's and Epstein's habits.

None of these identified pieces of alleged evidence satisfies the Defendant's burden of proving actual and substantial prejudice. The Court addresses first the documentary evidence. *First*, the Defendant does not attest, or even suggest, what the absent documents are likely to show. Though the Defendant would herself be best positioned to explain her own financial transactions (or the lack thereof), her brief does not suggest what the absent financial records would have shown. Similarly, the Defendant does not identify what would have been shown in the absent phone records. The same is true of the flight records that the Defendant argues were missing. At trial, the Government elicited testimony that flight manifests from before September 11, 2001, were far less detailed than modern manifests. *E.g.*, Trial Tr. at 2518–22. The Defendant can therefore only speculate that more accurate records *ever* existed. The location and appearance of Epstein's residences were also the source of significant testimony at trial. The Defendant does not explain what additional information would have been contained in official property records.

*Second*, even if more detail of the contents of these documents were presented, the Defendant fails to show why the evidence, if admitted at trial, would have benefitted her case. The Defendant's motion presumes that each piece of missing evidence would have favored her: an absence of payments by Epstein to the Defendant, an absence of phone calls from the Defendant to victims, an absence of the victims on detailed flight manifests. But this presumption is purely speculative. Each piece of evidence may very well have further substantiated the Government's case. Because the Defendant carries the burden of proof, she is

not entitled to the inference that all absent evidence would have been both favorable and material to her case. *United States v. Berry*, No. 20-CR-84 (AJN), 2021 WL 2665585, at \*2 (S.D.N.Y. June 29, 2021).

*Third*, the Defendant must show that the prejudicial loss of evidence was *caused* by the pre-indictment delay. That is, the Defendant must show that the evidence was at one point available but that at trial "the lost testimony or information was not available through other means." *Pierre-Louis*, 2018 WL 4043140, at \*4 (quoting *United States v. Sprouts*, 282 F.3d 1037, 1041 (8th Cir. 2002)). Here, the Defendant has made only a "bare allegation that [certain] records have been lost or destroyed," but without explaining when or why they were lost. *United States v. Dornau*, 356 F. Supp. 1091, 1094 (S.D.N.Y. 1973). Further, the Defendant does not explain whether any attempt was made to acquire these records either directly or by other means. It is unexplained, for example, why the Defendant believes that government property records that at one point existed are no longer available. Or why the Defendant could not have proven Epstein's residency by any alternative means. Similarly, the Defendant does not explain why the flight manifests that pilot Larry Visoski delivered to Epstein's office in New York have been lost. *See* Trial Tr. at 172. In short, the Defendant fails to show that the absence of documentary evidence was causally related to any decision by the Government to delay the Indictment.

For similar reasons, the Defendant fails to demonstrate prejudice by reference to the deceased potential witnesses. *First*, "[c]ourts have generally found that vague assertions that a deceased witness might have provided favorable testimony do not justify dismissing an indictment for delay." *Maxwell*, 534 F. Supp. 3d at 317; *see, e.g.*, *United States v. Lovasco*, 431 U.S. 783, 785–86, 788–90 (1977) (reversing dismissal for pre-indictment delay where a material defense witness had died); *United States v. Snyder*, 668 F.2d 686, 689 (2d Cir. 1982) (two

defense witnesses died three years or more prior to indictment); *United States v. King*, 560 F.2d 122, 130 (2d Cir. 1977) (defense witness died a year prior to the indictment).  Here, the Defendant largely speculates about the contents of these deceased witnesses' absent testimony. She states, for example, that the two architect witnesses "could have established" the timeline for Epstein's residences and renovations at each but does not say what that timeline is.  Maxwell Br. at 29.  Similarly, the Defendant states that Epstein's live-in housekeeper *could* have testified that the Defendant spent only limited time with Epstein at his townhouse in New York but provides little basis or detail for that anticipated testimony.  As with the documentary evidence above, such speculation, with the apparent presumption that absent evidence would necessarily favor the Defendant, is insufficient to establish actual prejudice.  *See United States v. Long*, 697 F. Supp. 651, 657 (S.D.N.Y. 1988) (no prejudice where there is "no way of knowing what [an absent witness's] testimony would have been").

    *Second*, the Defendant fails to establish that the content of these witnesses' testimony could not have been introduced into trial by other means.  At trial, witnesses testified that Epstein employed a significant number of individuals to work at his residences, renovate those residences, or fly his private airplane.  Some, like Juan Alessi, Larry Visoski, and David Rodgers, testified at trial.  Still others were listed on the parties' witness lists.  The Defendant does not explain why these witnesses' testimony, or the testimony of those listed witnesses who were not called, could not have supplied the same information that she seeks from individuals who were unavailable to testify.  Her assertion that only individuals that have since died could provide adequate testimony is entirely unsubstantiated.  Similarly, the Defendant does not explain why evidence of construction or renovations at Epstein's residences could not be proven by other witness testimony or by documentary evidence.

And *third*, the Defendant does not demonstrate that such witnesses, even if available to testify as the Defendant speculates they may have, would have meaningfully altered her defense such that she was substantially prejudiced by their absence. *Pierre-Louis*, 2018 WL 4043140, at *4. No witness listed could testify directly to whether or not the Defendant and Epstein sexually abused the victims. Rather, each would at best provide additional corroboration of the Defendant's arguments at trial to impeach the witnesses' credibility as to particular aspects of their testimony. This falls short of substantial prejudice. *United States v. Lawson*, 683 F.2d 688, 694 (2d Cir. 1982) (no prejudice where absent witness's testimony was "at best corroborative on minor points").

Specifically, the housekeeper's anticipated testimony that the Defendant rarely spent the night at Epstein's townhouse and that she and Epstein were not "always" together contradicts little, if any, of the Government's case at trial. Maxwell Br. at 30. The Defendant does not claim that the housekeeper was always aware of the Defendant's or Epstein's actions, and so is unlikely to have rebutted testimony that at other times and other locations, the Defendant and Epstein committed crimes. *See Pierre-Louis*, 2018 WL 4043140, at *4 (absence of a witness not prejudicial because unless the witness was with the defendant "every moment," it would have been "impossible for him to testify that defendant did not commit the charged crimes").

The speculated testimony of Sally Markham—that an individual known only as "the Countess," not the Defendant, wrote the household manual—is similarly unhelpful to the Defendant's claim. In considering whether testimony would have been beneficial to the Defendant, the Court must consider whether the witness would have been credible and withstood cross-examination. *See Maxwell*, 534 F. Supp. 3d at 317 (citing *United States v. Spears*, 159 F.3d 1081, 1085 (7th Cir. 1999)). The Defendant provides no basis to conclude that the jury

would have credited this vague testimony about an unnamed individual over the evidence presented at trial, including the testimony of Juan Alessi and an email chain between the Defendant and Markham that indicates that the Defendant worked closely with Markham to create the manual and provided specific content, such as the checklists, to be included. *See* GX-424.

Finally, the Defendant refers to her prior briefing in which she alleged substantial prejudice because of the absence of other deceased potential witnesses, including Epstein, Epstein's mother, Jane's talent agent Michael Casey, and Palm Beach Police Department Detective Joseph Recarey. *See* Dkt. No. 138 at 8–11. The Court has previously considered and rejected the Defendant's claim of prejudice based on these absent witnesses. *Maxwell*, 534 F. Supp. 3d at 317. The Defendant points to no development at trial that she believes should alter the Court's conclusion, nor is the Court aware of any such reason for reconsideration.

The Defendant's reply brief devotes just a single sentence to her claim of pre-indictment delay and does not address any of the defects identified by the Government. She has not satisfied either element required for a claim of pre-indictment delay, as she has not demonstrated that the Government improperly delayed prosecution nor that she suffered actual and substantial prejudice from such delay. The Court therefore denies her motion to vacate her convictions on this basis.

## V.   Conclusion

For the foregoing reasons, the Court denies the Defendant's Rule 29 motion because the jury's guilty verdicts were supported by the witness testimony and documentary evidence presented at trial. The Court denies the Defendant's motion based on constructive amendment or variance because the jury instructions, the Government's evidence at trial, and summation all

44

captured the core of criminality charged in the Indictment, and the Defendant was not prejudiced by any alleged variance.  Further, because the Government neither intentionally delayed its prosecution nor was the Defendant prejudiced by any delay, the Court also denies the Defendant's motion based on pre-indictment delay.  Finally, the Court grants the Defendant's motion as to multiplicity.  The Government concedes that Count One is multiplicitous with Count Three, and the Court further concludes that Count Five is multiplicitous with Count Three. Count Five, like Counts One and Three, charged the Defendant's participation in the same decade-long unlawful agreement with the Defendant's continuous coconspirator, Jeffrey Epstein, to groom and sexually abuse underage girls.

Accordingly, the Court will enter judgment of conviction on Counts Three, Four, and Six. The Defendant's sentencing date remains scheduled for June 28, 2022.  The Court previously set a schedule for sentencing submissions that remains in effect.  Dkt. No. 656.

This resolves Dkt. No. 599.

SO ORDERED.


Dated: April 29, 2022
      New York, New York

_____

ALISON J. NATHAN
United States Circuit Judge
Sitting by Designation