# LAW OFFICES OF BOBBI C. STERNHEIM

212-243-1100 • Main
917-912-9698 • Cell
888-587-4737 • Fax

225 Broadway, Suite 715
New York, NY 10007
bcsternheim@mac.com

June 24, 2022

**Submission Under Seal**

Honorable Alison J. Nathan
Sitting By Designation
United States District Court
40 Foley Square
New York, NY 10007

Re: *United States v. Ghislaine Maxwell*
S2 20 Cr. 330 (AJN)

Dear Judge Nathan:

Ghislaine Maxwell submits this letter in response to the Court's order (Dkt. 665). Ms. Maxwell objects to characterization of Sarah Ransome, Maria Farmer, Teresa Helm, and Juliette Bryant (collectively, the "Individuals") as "victims" of the counts of conviction and disputes that the Individuals qualify as statutory victims within the definition of a "crime victim" contained in the Crime Victims' Rights Act, 18 U.S.C.A. §3771 ("CVRA").

The issue that requires resolution in advance of sentencing is whether the Individuals, or their representatives, have statutory crime victim status under the CVRA. Under the statute, definition of "crime victim" takes as a given that there has been a "federal offense" committed. *See* 18 U.S.C. § 3771(e)(2)(A). Ms. Maxwell asserts that the Individuals are not statutory crime victims of the federal offenses of conviction, which require that (i) each was a minor at the time to the alleged abuse, (ii) the alleged abuse occurred during the period alleged in the indictment, and (iii) the Individuals were "directly and proximately harmed as a result of the commission of [the] *Federal* offense." *Id.*(emphasis added).

**Victim Impact Statements at Issue**

Without stating its position regarding standing under the CVRA, the government has provided seven witness impact statements allegedly authored by the following: Annie Farmer (Exhibit A), "Kate" (Exhibit B), Virginia Giuffre (Exhibit C),, Maria Farmer (Exhibit D), Sarah Ransome (Exhibit E), Teresa Helm (Exhibit F), and Juliette Bryant (Exhibit G).[1] Annie Farmer, a minor at the time of the offense, and "Kate" were both named in the indictment and each testified at trial. Virginia Giuffre did not testify at trial but testimony and exhibits support that she was a minor when she interacted with Epstein and Ms. Maxwell during the time period of the indictment. Annie Farmer and Ms. Giuffre qualify as victims under the CVRA: both were minors when they interacted with Epstein and Ms. Maxwell during the period of the charged offenses. "Kate" was not a minor during the time period, and the jury was charged as such.  Maria Farmer, Sarah Ransome, and Teresa Helm were not minors during the time they allegedly interacted with Epstein and Ms. Maxwell. Ms. Ransome's alleged interaction occurred beyond the period of the charged offenses. It is unknown whether  Juliette Bryant was a minor or when she allegedly interacted with Epstein and Ms. Maxwell.

The victim impact statements recount abuse and injuries suffered by the Individuals. Allegations alone do not serve to automatically qualify the Individuals as statutory victims under the CVRA. Their statements do not link the alleged abuse and  injuries "directly and proximately" to federal offense conduct whose essential qualifying element is that the victim was a minor at the time of the offense.

---

[1] The statements of Virginia Giuffre, Annie Farmer, Maria Farmer, Teresa Helm, and Juliette Bryant were submitted on the letterhead of their mutual attorney, Sigrid S. McCawley, Esq. "Kate's" statement was accompanied by a motion by her attorney, Bradley J. Edwards, Esq.  The statement of Sarah Ransome, referenced in a letter to the Court by her attorney, Robert Y. Lewis, Esq. (Dkt. 666), appears to have been submitted directly by Ms. Ransome.  Proposed redactions are reflected in each Exhibit.

**The CVRA Applies Only to Federal Crimes**

Based on the text, origin and limited legislative history, the CVRA applies to victims of *federal* crimes only. 18 U.S.C. § 3771(e).  The federal crimes of conviction require the involvement of minors.  The Individuals claiming sexual abuse who were not minors may qualify generically as victims of sexual abuse but not as statutory victims of the federal offenses of conviction.

**The Individuals Are Not "Victims" of the Counts of Conviction**

Neither the Superseding Indictment nor the Court's jury instructions support a position that anyone who was not a minor is a "victim" of the counts of conviction. The involvement of a minor is an essential element of the federal offense conduct. Maria Farmer claims she was abused during the time period of the indictment; however, she was not a minor. Sarah Ransome was not a minor when she claims she interacted with Epstein and Ms. Maxwell from approximately October 2006 to April 2007, a full two years after the conduct in this case ended. Teresa Helm also was not a minor and it is unknown when she claims to have had contact with Epstein and Ms. Maxwell. It is unknown whether Juliette Bryant was a minor or when she claims to have had contact with Epstein and Ms. Maxwell.  None of these Individuals testified at trial and their credibility remains unexamined. Regarding the charges in this case, they do not qualify as victims under the CVRA.

**The Individuals Are Not "Victims" Within the Meaning of the CVRA**

For the Individuals to invoke the rights enumerated under the CVRA, they must first be determined to be "victims" within the meaning of the statute.   The CVRA defines a "crime victim" as "a person directly and proximately harmed as a result of the commission of a *Federal* offense or an offense in the District of Columbia." 18 U.S.C. 3771(e)(2)(A) (emphasis added).

The concept of "direct and proximate harm," as used in the CVRA, is not limitless and only covers victims of the conduct underlying the offenses of conviction. See *United States v. Daly*, No. 3:11-cr-121 (AWT), 2012 WL 315409, at \*5-\*6 (D. Conn. Feb. 1, 2012) ("[T]he determination as to whether person has the rights of a 'crime victim' for purposes the CVRA is made with reference to the conduct underlying the *charged offense*.") (emphasis added). While individuals claiming to have been victims of sexual abuse may qualify generically as victims, all sex crimes are not federal offenses and, as such, would be confer rights under the CVRA.

Accordingly, for the Individuals to be considered "victims," they must have been minors and "directly and proximately" been harmed by the "commission" of the "federal crimes" for which Ms. Maxwell has been convicted.  Here, no such showing can be made for the Individuals. The alleged abuse and injuries were not caused by Ms. Maxwell's offenses of conviction: the Individuals were not minors at the time of the federal offenses and their allegations are too factually and temporally attenuated to the commission of the federal offenses.

As the Court instructed the jury, the age of the victim was an essential element for each offense.  The Individuals were not minors and are unable to demonstrate that their alleged abuse and injuries were a consequence of the charged offenses against minors.

**Because The Individuals Are Not "Crime Victims" Under the CVRA, They Should Be Precluded from Being Heard at Sentencing**

The right to be heard at sentencing applies only to persons who are statutory "crime victims" of the offenses of conviction. The CVRA provides that where a person is a "crime victim," as defined in that statute, she has the right to be reasonably heard at sentencing. 18 U.S.C. § 3771(a)(4), § 3771(e) (defining "crime victim"). While the sentencing court has discretionary authority to receive information from a wider range of affected individuals under 18 U.S.C. § 3661, only those holding statutory crime victim status have rights of

allocution at sentencing *Id.* §3771(a)(4), (e).  The definition of "victim" in the CVRA  does not mirror the various definitions of "victim" in the guidelines. *Cf. United States v. Blake,* 81 F.3d 498, 506 n.5 (4th Cir. 1996) ("The definition of victim provided in [the statute] is much narrower than the one in the guidelines.")   Therefore, the terms should not be conflated. It cannot be assumed that "relevant conduct" for guidelines purposes is the same as "related conduct" for purposes of determining statutory victim status under a scheme or conspiracy-based offense. Nor does the term "victim," as variously appearing in the guidelines, inform the determination of statutory victim status under the CVRA.

**Ms. Maxwell's Due Process Rights Must Be Safeguarded**

The CVRA affords victims the right of confrontation against their alleged abusers. The Act does not provide a reciprocal right to a defendant, whose due process rights rest in the opportunity to cross-examine an alleged victim during trial.  Of the four accusers who testified at trial, only two – Annie Farmer and "Kate"- have submitted victim impact statements. To the extent permitted by the Court's rulings, the defense had the opportunity to challenge their allegations and credibility during the trial. Under Federal Rule of Evidence 412, the Court precluded the defense from raising certain issues during trial.  Both Annie Farmer and "Kate" raise issues in their written statements that were not disclosed by the government or revealed during their testimony and should not be permitted to be aired during sentencing ███████████ ███████████████████████████████████████████. To the extent such portions of their statements are redacted, we will not press objection for CVRA victims. Virginia Giuffre was mentioned during trial but was not called as a government witness. Her credibility remains in issue.[2] By letters to the government, counsel for Alan Dershowitz have cautioned the

---

[2] Absent from Ms. Giuffre's statement is any mention of her abuse by a 65-year-old sex trafficker, Ron Eppinger, pre-dating her meeting Epstein and Ms. Maxwell, which she recounted in her memoir -

government concerning Ms. Giuffre's significant credibility problems  *See* Exhibits H and I.  Ms. Giuffre's impact statement, while admissible under the CVRA, should be redacted and the letters challenging her credibility should be made part of the record in this case.

The process for a sentencing court to receive and utilize victim impact information from statutory crime victims and other affected persons must be consistent with a defendant's due process rights: the right not to be sentenced based upon materially false information (*see Townsend v. Burke,* 334 U.S. 736, 741 (1948)) and the right to be sentenced based upon accurate information, as safeguarded by Federal Rule of Criminal Procedure 32. There are potential Sixth Amendment *Booker* concerns if the definition of statutory "crime victim" under the CVRA is interpreted so broadly that it is not based upon the offense established by the jury verdict.

**The Victim Impact Statements Should Be Redacted**

The Individuals are not "crime victims" of the charged federal offenses under the CVRA. Their victim impact statements are unduly prejudicial, contain allegations not previously before the Court which serve to inflame the emotions of the Court and public. Their airing during sentencing or any consideration by the Court in imposing sentence, would violate Ms. Maxwell's due process rights.

We object to the publication of the impact statement of the Individuals.  However, should the Court permit the inclusion of these victim impact statements in connection with the sentencing proceeding, we request that portions be redacted, including but not limited to statements that would have been precluded under Rule 412, medical conditions claimed to have

---

 "*The Billionaire's Playboy Club.*" *See Giuffre v. Maxwell*, 18-2868 (2d Cir.) Dkt. 278, Exhibit KK at 563-646.  Ms. Giuffre lived with Eppinger for approximately 6 months when he ran a front business for international sex trafficking known as the modeling agency "Perfect 10". He was prosecuted in the Southern District of Florida and pleaded guilty to charges of alien smuggling for prostitution, interstate travel for prostitution, and money laundering. *See United States v. Eppinger*, 00 Cr. 131 (FAM)(SD-FL)

been caused because of contact with Ms. Epstein, and graphic pictures. *See* Proposed Redactions

in Exhibits A-G. 

.[3]   Both Maria Farmer and Ms. Ransome have

elected to breach their personal privacy by placing themselves before the media.  In addition, Ms.

Ransome timed the release of her memoir, "*Silenced No More,*" (December 7, 2021) and book

tour to coincide with her attendance at the trial .

**The Sentencing Proceeding Should Not Be a Bully Pulpit for Anyone Who Claims Abuse**

The prosecution of Jeffrey Epstein was an opportunity for alleged victims who were

disenfranchised in connection with Epstein's Florida sweetheart deal to have their voices heard.

Epstein's untimely death following his arrest dealt a further blow to his accusers. Following

Epstein's sudden and untimely death almost three years ago, Judge Berman provided an

opportunity for any victim to make a statement regardless of whether they qualified under the

CVRA. Kate, Virginia Giuffre, and Sarah Ransome each spoke at that hearing, Annie Farmer

spoke solely on behalf of her sister, Maria Farmer. *See United States v. Epstein*, 19 Cr. 490 (Dkt.

53). But the sentencing proceeding to be held on June 28 is far different from the unique hearing

conducted by Judge Berman. The victim statements presented to Judge Berman had no impact on

the rights of Epstein, a deceased defendant whose case was required by law to be abated. Such is

not the case here. While it is appropriate for the public to be present and for legitimate CVRA

---

[3] Noticeably missing from Ms. Ransome's statement is conduct that very well may have contributed to her allegations: She was high-priced "escort" for Emperor's Club, the agency patronized by Elliot Spitzer. Litigation cited in her impact statement revealed that in or about October 2006, Ms. Ransome work for an agency, got paid thousands of dollars per "escort" and engaged in sexual activity. A modeling photo of Ms. Ransome produced in her discovery appeared on the Emperor's Club advertisement. The government prosecuted the Emperor's Club owners. *See United States v. Brener*, 08 Cr. 533 (DLC), Dkt. 1 (criminal complaint, 08 MJ 463).

victims to be heard, Ms. Maxwell's sentencing proceeding should not be an open-mike forum for any alleged victim.

Impact statements by alleged victims who did not testify, were not referenced in the record as victims, or do not qualify as "crime victims" under the CVRA should be published during the sentencing proceeding or have their statements included in the record. While the Congressional Record is silent on this issue, it is hard to believe that Congress intended the CVRA to give voice to anyone and everyone who claims to be a victim but does not qualify under the statute and whose accusations have not been verified. A high-profile case, such as this, becomes a lightning rod for individuals to come forward, especially where to do so may yield financial reward and media attention. Such an open forum would have significant and adverse consequences to any criminal defendant facing the most critical stage of the case: sentencing and deprivation of liberty.

Ms. Maxwell's sentencing proceeding should not a bully pulpit for anyone who was not identified as a victim of the charged federal offenses and does not qualify as such under the CVRA. We urge the Court to undertake its role as gatekeeper to ensure that Ms. Maxwell's rights are not trampled by individuals who are not statutory victims or by the rights afforded to legitimate victims under the CVRA.  To ensure that the appropriate balance of rights is achieved, those who qualify under the CVRA offenses should have the right to be heard but their statements should be in accordance with redactions and rulings made by the Court. Because the Individuals do not meet the definition of "crime victims" under the CVRA, they should not be permitted to give oral testimony or have their written victim impact statements read during sentencing.

LAW OFFICES OF BOBBI C. STERNHEIM

Very truly yours,

/s/

Bobbi C. Sternheim

Attachments

cc: Counsel of Record

# EXHIBIT A



BOIES
SCHILLER
FLEXNER

Sigrid S. McCawley
Telephone: (954) 356-0011
Email: smccawley@bsfllp.com

June 22, 2022

The Honorable Alison J. Nathan
United States District Court
Southern District of New York
United States Courthouse
40 Foley Square
New York, New York 10007

**Re:**    *United States v. Ghislaine Maxwell*, S2 20 Cr. 330 (AJN)

Dear Judge Nathan:

I am counsel for Annie Farmer, and I am providing the following victim impact statement for the Court's consideration with respect to Maxwell's sentencing.

Pursuant to the Crimes Victims' Rights Act, 18 U.S.C. Sec. 3771, Ms. Annie Farmer qualifies as a victim and was a testifying witness during the trial. Ms. Farmer thus requests the Court's permission to make an oral statement at the sentencing.

Statement by Annie Farmer:

Judge Nathan,

For a long time, I wanted to erase from my mind the crimes that Ghislaine Maxwell and Jeffrey Epstein committed against me and pretend they hadn't happened. Beyond my initial description to my boyfriend and family of what occurred when I was with them in New Mexico, I didn't talk about it for years. It was the type of dark memory that feels safest to keep locked away, and so I did the best I could.

The world did not cooperate with this strategy, however. Something would bring to mind this experience and my body would respond with an upset stomach and physical shakiness. I'd feel irritable, have trouble focusing, and feel disoriented. In recent years, I have been asked repeatedly to describe these crimes to law enforcement and the media, and I have learned heartbreaking details about the ways Maxwell and Epstein abused and exploited so many others. Focusing on these experiences that I tried so hard to avoid thinking about has forced me to acknowledge the many ripple effects of their crimes for myself and my family and the continued impact of these long-ago events on my life.

One of the most painful and ongoing impacts of Maxwell and Epstein's abuse was a loss of trust in myself, my perceptions, and my instincts. When predators groom and then abuse or exploit children and other vulnerable people, they are, in a sense, training them to distrust

BOIES SCHILLER FLEXNER LLP

401 East Las Olas Boulevard, Suite 1200, Fort Lauderdale, FL 33301 | (t) 954 356 0011 | (f) 954 356 0022 | www.bsfllp.com



themselves. When a boundary is crossed or an expectation violated, you tell yourself, "Someone who cares enough about me to do all these nice things surely wouldn't also be trying to harm me." This pattern of thinking is insidious, so these seeds of self-doubt took root even as I learned my sister had also been harmed by them, and came to find out years later that many others had been exploited. For years these memories triggered significant self-recrimination, minimization and guilt. I blamed myself for believing these predators actually wanted to help me. I felt tremendous survivor guilt when I heard what other girls and young women had experienced at the hands of Maxwell and Epstein. I saw how my sister's concern about me weighed on her and felt guilty about this as well.

This toxic combination of being sexually exposed and exploited, feeling confused and naïve, blaming myself all resulted in significant shame. That sickening feeling that makes you want to disappear. It was not constant, but would come in waves, similar to the waves of anxiety that would also show up. When I think back, I see a slideshow of moments when these feelings would surface and overwhelm me. I remember sitting at my desk in a Houston hospital physically shaking after seeing the photo of Maxwell with Virginia Giuffre and Prince Andrew because it became clear to me how their scheme had continued; the time an unexpected security screening from a TSA agent who patted down my chest with the back of her hand left me crying and disoriented at the airport; a 40th birthday gathering where I broke down crying telling the story to some friends for the first time. There are too many of these moments to name, and though I have come a long way in my path of healing, I know that these feelings will continue to be triggered at times.

The ripple effects of trauma are undeniable, when one person is abused, many others are harmed. In addition to the way I was impacted as an individual, there was the pain I experienced as a sister ████████████████████████████████, and the harm caused to the rest of my family due to these events. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ It was heartbreaking and infuriating, and we later learned how often this pattern was repeated. A young person on the path of pursuing her dreams was pulled in by Maxwell, was abused and exploited, and then had to try to piece together a life in the aftermath of this trauma that left them feeling distrustful and fearful. Most of these individuals had families who were also negatively impacted as they witnessed and felt the systemic effects of their loved one's losses and struggles. The number of people harmed is impossible to measure.

Maxwell had many opportunities to come clean, but instead continued to make choices that caused more harm. When my sister and I first spoke out to the media about what happened to us, Maxwell lied about us and threatened Maria, thus helping shut down investigations into Epstein's behavior so they could together continue to harm children and young women. After this attempt to alert people to Epstein and Maxwell's abusive behavior, I avoided being public about it for almost two decades. My shame told me that I should hide this fact because it was embarrassing. Later, as I pursued my profession as a psychologist, I feared it could potentially ruin my career. I worried clients would not want to work with me if I was associated with this story wrongly labeled as one of "child prostitution."  I feared being on Epstein and Maxwell's radar because of their previous lies and threats.



Once arrested, Maxwell faced another choice. She could admit her participation in this scheme, acknowledge the harm caused or even provide information that could have helped hold others accountable. Instead, she again chose to lie about her behavior, causing additional harm to all of those she victimized. For me, it meant having to be involved in this nearly two-year legal process that involved reliving this painful experience over and over again. It was incredibly stressful and interrupted my professional life as I missed sessions with my clients for court appearances, trial prep, and meetings with attorneys. An uncertain and shifting trial schedule made it difficult to plan anything. As the trial date drew closer, I scaled back my caseload, as I wasn't sure how it would impact me and how much work I'd have to miss. Then, during the trial, my memories were repeatedly called into question, and I was publicly grilled on the details of the trauma she perpetrated. Given the shame and self-doubt that these injuries had already caused, this all felt like a retraumatization—one that could have been easily avoided had she told the truth.

Judge Nathan, I hope when you consider the appropriate prison sentence for the role Maxwell played in this sex trafficking operation, you take into account the ongoing suffering of the many women she abused and exploited as we will continue to live with the memories of the ways she harmed us. I hope you weigh the systemic effects of the crimes she perpetrated—the ways that our family members, romantic partners, and friends have been hurt through our suffering. I ask you to bear in mind how Maxwell's unwillingness to acknowledge her crimes, her lack of remorse, and her repeated lies about her victims created the need for many of us to engage in a long fight for justice that has felt like a black hole sucking in our precious time, energy, and well-being for much too long now. These things cannot be replaced.

Respectfully,

Sigrid S. McCawley

# EXHIBIT B

## **In re: Ghislaine Maxwell, Statement for Consideration by "Kate"**

I began writing this statement on Mother's day, because, it has been my experience, that it was only in becoming a mother, to a daughter, that gave me the courage and impetus to speak out about the abuse I had suffered and made me understand the gravity and horror of what had taken place.

It was, in fact, when my daughter was about 1 or 2, that I reached out to attorney Brad Edwards and began to tell him the full extent of the heinous manipulation and abuse, instigated and perpetuated by Ghislaine Maxwell. From the very first conversation, I was emphatic that Ghislaine was the true enabler and facilitator of my abuse.

It has been proven to be true for me (and for many survivors of this kind of grooming and insidious abuse with whom I have spoken), that the experience of looking at my own baby girl and imagining her falling victim to such atrocities, awakened compassion in me for myself as a young girl and for the many, many others who suffered because of Ghislaine Maxwell. It was this experience that fueled a call to action.

It was the very skilled grooming, perpetrated on me, intentionally and consistently, that instilled in me, the belief that I could not say no to Ghislaine Maxwell, or Epstein.

I witnessed on numerous occasions, over many years, Ghislaine Maxwell trying to recruit other girls and making consistent and insistent demands on me and others to do the same.

I witnessed her relentless and insatiable drive to meet the sexual needs of Epstein, at any cost to the vulnerable girls and women, upon whom she preyed and fed to Epstein and other powerful men, to whom she wished to ingratiate herself.

There was never any ambiguity or doubt about her having full knowledge of what was to take place once she recruited girls.

The many acts that were perpetrated on me by Epstein, including ████████████ sexual assault, were never consensual, and would have never occurred, had it not been for the cunning and premeditated role Ghislaine Maxwell played.

She repeatedly reinforced rewards for acquiescence and consequences for disobedience.

Being around her was like being spun really fast in a circle and then trying to maintain balance. It was like a roller coaster ride, designed to disorient and disempower me as a vulnerable, young girl, for the sole purpose of providing me to Epstein for sexual abuse.

The best way to imprison someone, is to make them create the prison bars in their own mind, to instill enough fear to make sure they never risk leaving or disobeying and make the bars invisible to everyone, so that no one can see their cage, or hear their silent screams.

The consequences of what Ghislaine Maxwell did have been far reaching for me.
I have struggled with, and eventually triumphed over, substance use disorder.
I have suffered panic attacks and night terrors, with which I still struggle.
I have suffered low self esteem, loss of career opportunities.

I have battled greatly with feeling unable to trust my own instincts, in choosing romantic relationships.

I have had a hard time identifying dangerous people or situations.

I have also suffered periods ████████████.

At the age of 45, at 19 years of continuous sobriety and, after many years of engaging in different modalities of therapy, I am beginning to see some light in deprogramming my own mind and body from the messages I was programmed with, because of this abuse. What happened to me at that young age changed the course of my life drastically, forever.

Speaking out about what happened to me opened me up to much criticism and forced me to relive parts of my story that I would have preferred to have done privately, in the safety of trusted individuals.

Testifying in this trial was both terrifying and retraumatizing.

I do not, however, regret it for one moment. There is nothing more important than protecting the innocent and, if I was able to provide, in any way, information helpful to understanding the nature of this type of abuse, as perpetrated by Ghislaine Maxwell, then my pain has had meaning and therefore not been for naught.

I remain in deepest gratitude to the other women who came forward and to those who, for whatever reason, didn't or couldn't.

I remain in deepest gratitude to the prosecutors who worked tirelessly to bring Ghislaine Maxwell to justice, to protect the women who testified and to expose the grotesque malice with which these crimes were committed.

I remain in deepest gratitude to the people of the jury, who gave up their time and energy, to be part of this great judicial system, that saw a fair trial was executed.

I remain in deepest gratitude to Judge Nathan, for presiding so cautiously, fairly, and deliberately.

I remain in deepest gratitude to my partner, friends and family, who tirelessly supported me through this unnatural and traumatic time.

2

Finally, I remain in deepest gratitude to my attorneys Brad Edwards and Brittney Henderson, without whom this trial may never have come about.

To them I would like to say:

Thank you for listening when no one else would.
Thank you for never giving up on fighting for what is right.

Special thanks to Brad Edwards, for showing me that good men exist and fight for what is right, no matter the cost.

In becoming, a mother I have learned that forgiveness is important, but so are consequences.


Kate

# EXHIBIT C



Sigrid S. McCawley
Telephone: (954) 356-0011
Email: smccawley@bsfllp.com

June 22, 2022

United States District Court
Southern District of New York
United States Courthouse
40 Foley Square
New York, New York 10007

**Re:**   *United States v. Ghislaine Maxwell*, **S2 20 Cr. 330 (AJN)**

Dear Judge Nathan:

I am counsel for Virginia Giuffre, and I am providing the following victim impact statement for the Court's consideration with respect to Maxwell's sentencing.

Pursuant to the Crimes Victims' Rights Act, 18 U.S.C. Sec. 3771, Ms. Virginia Giuffre qualifies as a victim as the Defendant participated in her trafficking from 2000 to 2002, and testimony relating to that trafficking was presented as evidence during the trial in this case. Due to a medical issue, Ms. Giuffre is unable to attend the sentencing in person and therefore respectfully requests that the Court read her statement into the record or, alternatively, allow her attorney representative Sigrid McCawley to read the statement on her behalf.

<u>Statement by Virginia Giuffre:</u>

Your honor, my name is Virginia Roberts Giuffre. For more than two years, from age 16 to 19, I was abused by Ghislaine Maxwell. Before I begin, I want to acknowledge and profusely thank the police, FBI investigators, prosecutors and judges who have invested their time and integrity in this case to hopefully set a precedent for victims and the hunters who prey upon them.

Now, if it pleases the court, I would like to address my victim impact statement directly to Ghislaine Maxwell.

Ghislaine, twenty-two years ago, in the summer of 2000, you spotted me at the Mar-a-Lago Hotel in Florida, and you made a choice. You chose to follow me and procure me for Jeffrey Epstein. Just hours later, you and he abused me together for the first time. Together, you damaged me physically, mentally, sexually, and emotionally. Together, you did unthinkable things that still have a corrosive impact on me to this day.

I want to be clear about one thing: without question, Jeffrey Epstein was a terrible pedophile. But I never would have met Jeffrey Epstein if not for you. For me, and for so many others, you opened the door to hell. And then, Ghislaine, like a wolf in sheep's clothing, you used your femininity to betray us, and you led us all through it.

BOIES SCHILLER FLEXNER LLP

401 East Las Olas Boulevard, Suite 1200, Fort Lauderdale, FL 33301 | (t) 954 356 0011 | (f) 954 356 0022 | www.bsfllp.com



When you did that, Ghislaine, you changed the course of our lives forever. You joked that you were like a new mother to us. As a woman, I think you understood the damage you were causing—the price you were making us victims pay. You could have put an end to ▓▓▓▓▓▓, the molestations, the sickening manipulations that you arranged, witnessed and even took part in. You could've called the authorities and reported that you were a part of something awful.

I was young and naïve when we met, Ghislaine, but you knew that. In fact, you were counting on it.   My life as a young person was just beginning. You robbed me of that by exploiting my hopes and ambitions.

Ghislaine, the pain you have caused me is almost indescribable. Because of your choices and the world you brought me into, I don't sleep. Nightmares wake me at all hours. In those dreams, I relive the awful things you and others did to me and the things you forced me to do. Those memories will never go away. I have trouble meeting new people without questioning if somehow they are going to hurt me, too. I don't allow my children to stay over at friends' houses, or to walk down the street alone. I don't trust anyone to be near them without me or my husband close by. I am hyper-vigilant, because I know that evil exists. You taught me that.

There is not a day that goes by that I don't ask, "Why?" Why, Ghislaine, did you enjoy hurting us so much?  I worry every single day and night that you will get away with it and evade being punished. I will worry about that until you are brought to justice. And what should that justice look like? Ghislaine, you deserve to spend the rest of your life in a jail cell. You deserve to be trapped in a cage forever, just like you trapped your victims.

But Ghislaine, I want you to know that while you tried to break me, you didn't succeed. Despite you, I have grown into a woman who tries to do good in the world—a woman who, on her best days, feels like she is making a difference. My promise to you is as follows: As long as you and perpetrators like you continue to prey upon the vulnerable, I will not stop standing up and speaking out. Together, with so many others you abused, we will do all we can to keep predators from stealing the innocence of children. I will never give up. I will never go away. If you ever get out of prison, I will be here, watching you, making sure you never hurt anyone else again.

Thank you, your honor.


Respectfully,

Sigrid S. McCawley

# EXHIBIT D



BOIES
SCHILLER
FLEXNER

Sigrid S. McCawley
Telephone: (954) 356-0011
Email: smccawley@bsfllp.com

June 22, 2022

The Honorable Alison J. Nathan
United States District Court
Southern District of New York
United States Courthouse
40 Foley Square
New York, New York 10007

**Re:**     *United States v. Ghislaine Maxwell*, S2 20 Cr. 330 (AJN)

Dear Judge Nathan:

I am counsel for Maria Farmer, and I am providing the following victim impact statement for the Court's consideration with respect to Maxwell's sentencing.

Pursuant to the Crimes Victims' Rights Act, 18 U.S.C. Sec. 3771, Ms. Maria Farmer qualifies as a victim as the Defendant participated in her trafficking in 1996. Due to a medical issue, Ms. Farmer is unable to attend the sentencing in person, therefore she respectfully requests that the Court read her statement into the record or, alternatively, allow her attorney representative Sigrid McCawley to read the statement on her behalf.



BOIES SCHILLER FLEXNER LLP

401 East Las Olas Boulevard, Suite 1200, Fort Lauderdale, FL 33301 | (t) 954 356 0011 | (f) 954 356 0022 | www.bsfllp.com





Respectfully,

Sigrid S. McCawley



Sigrid S. McCawley
Telephone: (954) 356-0011
Email: smccawley@bsfllp.com

June 22, 2022

The Honorable Alison J. Nathan
United States District Court
Southern District of New York
United States Courthouse
40 Foley Square
New York, New York 10007

**Re:**    *United States v. Ghislaine Maxwell*, S2 20 Cr. 330 (AJN)

Dear Judge Nathan:

I am counsel for Maria Farmer, and I am providing the following victim impact statement for the Court's consideration with respect to Maxwell's sentencing.

Pursuant to the Crimes Victims' Rights Act, 18 U.S.C. Sec. 3771, Ms. Maria Farmer qualifies as a victim as the Defendant participated in her trafficking in 1996. Due to a medical issue, Ms. Farmer is unable to attend the sentencing in person, therefore she respectfully requests that the Court read her statement into the record or, alternatively, allow her attorney representative Sigrid McCawley to read the statement on her behalf.



**BOIES SCHILLER FLEXNER LLP**





Respectfully,

Sigrid S. McCawley

# EXHIBIT E

# EXHIBIT F

ENTIRE EXHIBIT SHOULD BE PRECLUDED



BOIES
SCHILLER
FLEXNER

Sigrid S. McCawley<br>
Telephone: (954) 356-0011<br>
Email: <u>smccawley@bsfllp.com</u>

June 22, 2022

The Honorable Alison J. Nathan
United States District Court
Southern District of New York
United States Courthouse
40 Foley Square
New York, New York 10007

    **Re:**     ***United States v. Ghislaine Maxwell***, **S2 20 Cr. 330 (AJN)**

Dear Judge Nathan:

    I am counsel for Teresa Helm, and I am providing the following victim impact statement for the Court's consideration with respect to Maxwell's sentencing.

    Pursuant to the Crimes Victims' Rights Act, 18 U.S.C. Sec. 3771, Ms. Teresa Helm qualifies as a victim as the Defendant participated in her trafficking in 2002. Ms. Helm thus requests the Court's permission to make an oral statement at the sentencing.



401 East Las Olas Boulevard, Suite 1200, Fort Lauderdale, FL 33301 | (t) 954 356 0011 | (f) 954 356 0022 | www.bsfllp.com

████████████████████████████████████

Respectfully,

Sigrid S. McCawley

# EXHIBIT G



Sigrid S. McCawley
Telephone: (954) 356-0011
Email: smccawley@bsfllp.com

June 22, 2022

The Honorable Alison J. Nathan
United States District Court
Southern District of New York
United States Courthouse
40 Foley Square
New York, New York 10007

  **Re:**   *United States v. Ghislaine Maxwell*, S2 20 Cr. 330 (AJN)

Dear Judge Nathan:

  I am counsel for Juliette Bryant, and I am providing the following victim impact statement for the Court's consideration with respect to Maxwell's sentencing.

  Pursuant to the Crimes Victims' Rights Act, 18 U.S.C. Sec. 3771, Ms. Juliette Bryant qualifies as a victim as the Defendant participated in her trafficking from 2022 to 2004. Ms. Bryant was unable to leave her small child to travel from South Africa for the sentencing hearing and is therefore, unable to attend. Ms. Bryant therefore respectfully requests that the Court read her statement into the record or, alternatively, allow her attorney representative Sigrid McCawley to read the statement on her behalf.

  I appreciate Your Honor imposing the maximum sentence available.

    Respectfully,

    Sigrid S. McCawley

BOIES SCHILLER FLEXNER LLP

401 East Las Olas Boulevard, Suite 1200, Fort Lauderdale, FL 33301 | (t) 954 356 0011 | (f) 954 356 0022 | www.bsfllp.com

# EXHIBIT H

**Bruce A Green**
**150 West 62nd Street, room 7-168**
**New York, NY 10023**
**Tel: 917-331-5321**
**Email: bgreen@law.fordham.edu**

June 7, 2022

Office of the United States Attorney for the Southern District of New York
One Saint Andrews Plaza
New York, NY 10007
Attn:  AUSAs Maurene Comey, Alison Moe & Alex Rossmiller

Re:    United States v. Maxwell

Dear Counsel:

I have been retained on behalf of Professor Alan Dershowitz to provide my opinions as a legal ethics expert regarding prosecutors' candor obligations relating to Virginia Giuffre's submissions at Ghislaine Maxwell's upcoming sentencing.

The relevant facts, provided for my consideration, are, in brief, as follows.  Although Ms. Giuffre was not a witness at Ms. Maxwell's trial, she has been notified of her right to make a victim's impact statement in connection with Ms. Maxwell's sentencing.  She may submit a written statement or testify at the hearing.  The presentence report may incorporate her submission, the prosecution might refer to it, and even if not, the District Judge might rely on it in imposing sentence.  Professor Dershowitz has informed the U.S. Attorney's Office ("Office") that Ms. Giuffre's recent civil deposition testimony in their pending case before District Judge Preska establishes Ms. Giuffre's serious lack of credibility with respect to the Epstein-Maxwell matter and would cast doubt on the reliability of her submission at the upcoming sentencing.  Professor Dershowitz has further advised that although the deposition transcript is sealed, it is available for the Government's review before the sentencing.  I have been asked whether, under these circumstances, the Office has a professional responsibility to review the transcript and, if it agrees that Ms. Giuffre's statement lacks credibility, to so advise the Court.

My qualifications to render an expert opinion on questions of prosecutorial ethics such as this one are set forth more fully in my curriculum vitae, which is available here: https://www.fordham.edu/download/downloads/id/1503/bruce_green.pdf.    I assume my qualifications would not be disputed, given that I provided advice to the Office in the 1980s when I served as Deputy Chief and Chief Appellate Attorney and have done so more recently as a consultant on legal ethics questions.  Of particular significance, for the past three decades I have taught a seminar on Ethics in Criminal Advocacy using self-produced course materials that I regularly update; I have written extensively on prosecutors' ethics, including on questions of prosecutors' candor to the court (see Bruce A. Green, *Candor in Criminal Advocacy*, 44 HOFSTRA L. REV. 429 (2016)); and as a member and chair of the ABA Criminal Justice Standards

1

SDNY_GM_02775899

SUBJECT TO PROTECTIVE ORDER PARAGRAPHS 7, 8, 9, 10, 15, and 17

Committee, I oversaw the drafting of the current version of the Prosecution Function Standards and participated in drafting and discussing prosecutors' candor obligations in particular.

In general, as "ministers of justice," prosecutors have more demanding candor obligations than other lawyers. Prosecution Function Standards, Standard 3-1.4(a) states: "In light of the prosecutor's public responsibilities, broad authority and discretion, the prosecutor has a heightened duty of candor to the courts . . . ." Prosecutors' candor obligations are not fully incorporated in the professional conduct rules or in courts' sanctions decisions. To a significant extent, courts expect candor from prosecutors regardless of whether the expectations are fully incorporated in enforceable law or whether a lack of candor is sanctionable. In rendering this opinion, I address what courts should expect of prosecutors as "ministers of justice" – expectations that are not fully codified in professional conduct rules and sanctions decisions.

If the Government were to call Ms. Giuffre as its witness in connection with the sentencing, then it would have the ordinary obligation first to satisfy itself of the truthfulness of her testimony and then to disclose impeachment material. *See, e.g.*, NY Rules of Professional Conduct, Rule 3.8(b); ABA Prosecution Function Standards, Standard 3-1.4(b) ("The prosecutor should not make a statement of fact or law, or offer evidence, that the prosecutor does not reasonably believe to be true . . . .") *id.*, Standard 3-5.4(c) ("a prosecutor should make timely disclosure to the defense of information [that tends to impeach the government's witnesses] that is known to the prosecutor, regardless of whether the prosecutor believes it is likely to change the result of the proceeding.").

I assume that the Government does *not* intend to make Ms. Giuffre its witness, and that insofar as Ms. Giuffre makes a presentation to the court, she will do so pursuant to her statutory right as a putative victim. Even if so, in my judgment, equivalent candor obligations arise if the Government were to rely on Ms. Giuffre's statement in its submissions to the court, thereby essentially making her its witness. Before asking the court to credit Ms. Giuffre's information, the Government should consider available evidence bearing on to her credibility, including deposition testimony that, it has been told, raises serious questions concerning the credibility of her relevant testimony. The prosecutors should not rely on Ms. Giuffre's information unless, in the language of Standard 3-1.4(b), they "reasonably believe [it] to be true." Their belief in Ms. Giuffre's reliability would not be reasonable unless they consider readily available information that, they have been told, discredits her and, given the totality of the circumstances, reasonably find her account truthful.

Finally, even assuming the Government does not intend to advance or rely on Ms. Giuffre's statement or testimony, its duty of candor to the court may be implicated, because prosecutors bear some responsibility to protect the sentencing court from relying on false information. As I have previously written: "Since the judge has no independent investigative authority, the sentencing judge must rely in large part on the prosecution for the relevant facts about the offense. If any lawyer must make full and frank disclosure of factual matters relevant to the sentencing court's decision-making, it is surely the prosecutor." Green, *Candor in Criminal Advocacy, supra*, at 446; *cf. United States v. E.V.*, 500 F.3d 747, 754 n.12 (8th Cir. 2007) (referring to "prosecutors' obligation to apprise the court of facts relevant to sentencing"). Consequently, the Office cannot consciously disregard Ms. Giuffre's deposition testimony bearing on the credibility of her submission to the court; further, if the Office concludes that Ms. Giuffre's submission is unreliable,

2

SDNY_GM_02775900

SUBJECT TO PROTECTIVE ORDER PARAGRAPHS 7, 8, 9, 10, 15, and 17

it has a candor obligation to raise this concern with the court, to protect it from relying on false information.

          I would be happy to discuss my opinion with the Office, if doing so might assist its consideration.

                          Very truly yours,

                          Bruce A. Green

3

SDNY_GM_02775901

SUBJECT TO PROTECTIVE ORDER PARAGRAPHS 7, 8, 9, 10, 15, and 17

# EXHIBIT I

LAW OFFICES OF

*Aidala, Bertuna & Kamins, P.C.*

ARTHUR L. AIDALA*
MARIANNE E. BERTUNA*
HON. BARRY KAMINS (RET.)
HON. JOHN M. LEVENTHAL (RET.)
JOHN S. ESPOSITO*
MICHAEL T. JACCARINO
IMRAN H. ANSARI
DIANA FABI SAMSON**
ANDREA M. ARRIGO*
LINO J. DE MASI
MICHAEL F. DIBENEDETTO*
TAYLOR M. FRIEDMAN+

546 FIFTH AVENUE
NEW YORK, NY 10036
TELEPHONE: (212) 486-0011
FACSIMILE: (917) 261-4832
WWW.AIDALALAW.COM

8118 - 13TH AVENUE
BROOKLYN, NEW YORK 11228
TEL: (718) 238-9898
FAX: (718) 921-3292

OF COUNSEL
JOSEPH A. BARATTA
ANTOINETTE LANTERI
WILLIAM R. SANTO
PETER S. THOMAS
LAWRENCE SPASOJEVICH

SENIOR COUNSEL
LOUIS R. AIDALA
JOSEPH P. BARATTA

*ALSO ADMITTED IN NEW JERSEY
**ALSO ADMITTED IN CONNECTICUT
+ALSO ADMITTED IN TEXAS

June 16, 2022

**VIA E-MAIL:** amoe@usa.doj.gov ; amoe@usdoj.gov

Office of the United States Attorney
Southern District of New York
One Saint Andrews Plaza
New York, NY 10007
Attn:  AUSAs Maurene Comey, Alison Moe & Alex Rossmiller

Re:    <u>United States v. Maxwell</u>

Dear Counsel:

    We are attorneys for Alan Dershowitz ("Professor Dershowitz") in the civil matter of *Virginia Giuffre v. Alan Dershowitz* pending before Hon. Loretta Preska in the Southern District of New York. Virginia Giuffre's ("Ms. Giuffre") lack of credibility, and actual conduct in recruiting young girls for Jeffrey Epstein, are critical issues in the above-mentioned litigation.

    We write to notify you that Ms. Giuffre gave approximately nine hours of deposition testimony across the span of two days on April 13th and 14th, 2022, in Washington, D.C. Her lawyers have designated the entire transcript to date as confidential under the applicable protective order.

    Our efforts to have the transcripts unsealed and made public have been denied by Judge Preska. Also denied was our request to provide the transcript to your office so that you could determine, on an informed basis, whether it would be appropriate or ethical for you to allow Ms. Giuffre to give a victim impact statement during the sentencing phase of the Ghislaine Maxwell trial and therein vouch in that proceeding for her credibility.

    Both the Court, and Ms. Giuffre's counsel, have made clear that they agree that we may notify you of the existence of the transcripts so that you can have the opportunity to review her testimony before she is allowed to provide a victim impact statement at the upcoming sentencing of Ghislaine Maxwell. We urge you, respectfully, to require her to produce it to you for your

SDNY_GM_02775902

SUBJECT TO PROTECTIVE ORDER PARAGRAPHS 7, 8, 9, 10, 15, and 17

review and careful consideration before permitting her to make a victim impact statement. In furtherance of this request, we enclose for your consideration a letter from Professor Bruce Green regarding the ethical considerations applicable to this matter.

Please let me know if you have any questions or would like to discuss this matter further. We are copying Ms. Giuffre's counsel here to help facilitate your request for her transcripts.

Yours, etc.

Imran H. Ansari

Arthur L. Aidala

Barry Kamins

John M. Leventhal

encl:   Bruce Green Letter

cc:   Todd & Weld, LLP
      *Attorneys for Alan Dershowitz*
      Howard M. Cooper
      Christian G. Kiely
      Kristine C. Oren

      Cooper & Kirk, PLLC
      *Attorneys for Virginia Giuffre*
      Charles J. Cooper
      Michael W. Kirk
      Nicole J. Moss
      Haley N. Proctor

AIDALA, BERTUNA & KAMINS, P.C. • 546 FIFTH AVENUE, NEW YORK, NY, 10036 • T: 212-486-0011 • F: 917-261-4832 • WWW.AIDALALAW.COM

SDNY_GM_02775903

SUBJECT TO PROTECTIVE ORDER PARAGRAPHS 7, 8, 9, 10, 15, and 17