## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- )
                                                                     )
UNITED STATES OF AMERICA,                                            )
                                                                     )
–v–                                                                  )          Case No. 20–CR–330 (AJN)
                                                                     )
                                                                     )
GHISLAINE MAXWELL,                                                   )
                                                                     )
                                        Defendant.                   )
-------------------------------------------------------------------- )

**MEMORANDUM OF LAW IN SUPPORT OF CRIME VICTIMS SARAH RANSOME'S
AND ELIZABETH STEIN'S MOTION TO BE ALLOWED TO DELIVER
ORAL VICTIM IMPACT STATEMENTS AT MAXWELL'S SENTENCING**

Sarah Ransome and Elizabeth Stein, through undersigned counsel, Robert Y. Lewis and

Margaret E. Mabie of the Marsh Law Firm PLLC, hereby submits this memorandum of law in

support of their motion to be allowed to deliver oral victim impact statements ("VIS") at the

sentencing of Ghislaine Maxwell on June 28, 2022. (Dkt. 666).

## <u>INTRODUCTION</u>

As the Court is aware, this case involves what is likely the most extensive known worldwide

sex trafficking operation in recent history. At the trial of the defendant, Ghislaine Maxwell, the

Government chose to prosecute a narrow sliver of the crimes that it believed Maxwell had

committed. A jury found Maxwell guilty of five sex trafficking counts – Nos. 1 and 3–6 of the

government's second superseding indictment.

Now, at sentencing, the Court has the power and the freedom to consider the full scope of

the harm that Maxwell's crimes caused. *See* 18 U.S.C. § 3661 ("no limitation shall be placed on the

information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."). Two of Maxwell's victims, Sarah Ransome and Elizabeth Stein, seek to assist the Court in exercising this authority by providing oral VISs at sentencing. The Court should allow these victims to present their statements detailing the impact of Maxwell's crimes on them to advance the cause of justice.

## FACTUAL BACKGROUND

As the extensive evidence at trial has revealed, Maxwell was involved in a far–reaching long–running sex trafficking conspiracy. As the Court recently explained, Maxwell was found guilty after a lengthy jury trial of a "decade–long unlawful agreement with the Defendant's continuous coconspirator, Jeffrey Epstein. The overarching conspiracy—which, as the Government argued and proved at trial, employed a single 'playbook' to groom and sexually abuse underage girls—constitutes a single conspiracy offense with multiple victims." (Dkt. 657 at 2–3).

Now, Maxwell is to be sentenced for her criminal involvement in this expansive conspiracy. The victims clearly have a right to be heard as part of this process.

Both moving victims, Sarah and Elizabeth, came to New York as young women seeking to matriculate at the Fashion Institute of Technology and then work in the fashion industry. Both became targets of Epstein and Maxwell who preyed on their vulnerabilities including their desire to advance in the competitive fashion industry, their relative youth, and naiveté. Epstein and Maxwell promised them that they would use their connections in the fashion industry to advance the victims' educations and careers. But there was a cruel catch. For every favor or promise of a favor, sexual

activity was demanded in return. And soon the sex overcame everything else. Sarah described the Epstein/Maxwell quid pro quo as the "Hotel California;" you can check-out any time you like, but you can never leave.

Both VISs provide relevant background information regarding Maxwell's character and conduct. Both statements further describe that for many years after finally extricating themselves physically from the Epstein/Maxwell trap, they suffered serious mental and physical illnesses. Elizabeth discusses numerous hospitalizations for mental breakdowns and being unable to hold down a job. After being a victim of Maxwell's conspiracy crimes, Sarah attempted suicide twice, both times ending up in the hospital with serious physical injuries.

Both Sarah and Elizabeth have submitted VISs to the probation office for inclusion in the Presentence Investigation Report. *See* Declaration of Robert Y. Lewis, dated June 23, 2022.

For the reasons set forth below, the Court should allow Sarah and Elizabeth to read their victim impact statements at Maxwell's sentencing hearing.

## <u>ARGUMENT</u>

### I.     These Victims Have a Statutory Right to be Heard Under the Crime Victim's Rights Act

The Crime Victim's Rights Act ("CVRA") defines the term "crime victim" as a "person directly and proximately harmed as a result of the commission of a Federal offense…." 18 U.S.C. § 3771(e). This definition was based on earlier restitution statutes which "all demonstrate a clarion congressional intent to provide restitution to as many victims and in as many cases as possible." *United States v. Martin*, 128 F.3d 1188, 1190 (7th Cir. 1997) (*quoted in United States v. Kamuvaka*, 719 F.Supp.2d 469, 475 (E.D. Pa. 2010)). In relying on these far–reaching statutes to craft the

CVRA, Congress used "an intentionally broad definition because **all victims of crime** deserve to have their rights protected." 150 Cong. Rec. S4270 (Apr. 22, 2004) (emphasis added) (statement of Sen. Kyl, agreed to by Sen. Feinstein). Congress understood that it was extending rights to "literally millions of people"—victims who were being denied rights in the federal criminal justice system. 150 Cong. Rec. S42604 (Apr. 22, 2004) (statement of Sen. Kyl). "The wisdom of Congress' action…is not within our province to second guess." *Eldred v. Ashcroft*, 537 U.S. 186, 222 (2003).

Under the CVRA's plain language, "a party may qualify as a victim, even though [she] may not have been the target of the crime, as long as [she] suffers harm as a result of the crime's commission." *In re Fisher*, 640 F.3d 645, 648 (5th Cir. 2011) ("Fisher I"). Thus, the CVRA "instructs the district court to look at the offense itself only to determine the harmful effects the offense has on parties." *In re Wellcare Health Plans, Inc.*, 754 F.3d 1234, 1239 (11th Cir. 2014). Because of this requirement to identify an offense's "harmful effects," numerous CVRA cases look beyond the narrow "record" of the charges themselves. *See,* e.g., *In re Fisher,* 649 F.3d 401, 403–04 (5th Cir. 2011) (collecting cases) ("*Fisher II*").

One instructive case comes from the D.C. Circuit which reversed a district court decision denying victim status in a drug trafficking case. The Circuit explained that in determining whether a decedent's family had CVRA victim status, the district court erred by "limit[ing] its evaluation to the indictment and the statement of facts submitted by [the defendant] as part of his negotiated plea agreement." *In re de Henriquez,* No. 15-3054, 2015 WL 10692637, at *1 (D.C. Cir. 2015). The Circuit noted that "[u]nder the CVRA, victims may participate in proceedings even when there has been no formal charge." *Id.* (citing 18 U.S.C. § 3771(a)(9) (victims have the right to timely notice of

a deferred prosecution agreement)) "Congress crafted the CVRA to recognize the harm and anguish suffered by victims of crime. This is why Congress made the statutory rights under the CVRA permissively accessible. 18 U.S.C. § 3771(d)(3)." *Id*. Moreover, "[b]ecause victim status can be argued for even prior to the filing of an indictment, it is clear that Congress intended courts to look beyond the four corners of an indictment or plea agreement. For example, in the context of the [drug trafficking] conspiracy here, neither the indictment nor the statement of facts included in the plea agreement mention violence of any kind. And yet, logic allows for the inference…that [the defendant's] paramilitary organization…employed violence and force as part of its method of operation." *Id*.

It is also important to understand that this case has now moved to a different phase than the trial phase where, of course, a defendant is entitled to a presumption of innocence and is protected by the requirement that the government prove guilt by proof beyond a reasonable doubt. But, in determining the "crime victim" issue at sentencing, the relevant standard of proof is the conventional standard for proceedings in criminal cases outside of trial—preponderance of the evidence. *See United States v. Giraldo-Serna*, 118 F.Supp.3d 377, 382 (D.D.C. 2015) ("Purported victims under the CVRA must prove their victim status by a preponderance of the evidence.") (citing *In re McNulty*, 597 F.3d 344, 351 (6th Cir. 2010); *United States v. Atl. States Cast Iron Pipe Co.*, 612 F.Supp.2d 453, 486, 495, 508 (D.N.J. 2009)); *see also United States v. Gushlak*, 728 F.3d 184, 195 (2d Cir. 2013) (applying preponderance of the evidence standard to victim restitution issue); *United States v. Kim*, 988 F.3d 803, 809 (5th Cir. 2021)(same).

Against this backdrop, Sarah and Elizabeth are categorial "victims" who should be allowed to speak at sentencing. Sexual abusers frequently use their actual or perceived power to manipulate and coerce victims during their abuse or trafficking. Jill Laurie Goodman & Dorchen A. Leidholdt, *Lawyer's Manual on Human Trafficking,* NY State Jud. Comm. on Women in the Court 169–76 (2013). The scheme Sarah and Elizabeth both describe in their victim impact statements is the same scheme Maxwell is being sentenced for and it involves the same defendant and co-conspirators as the conspiratorial scheme proven at trial.

Moreover, these victim statements reflect Sarah's and Elizabeth's personal knowledge of Maxwell's character and actions in furtherance of the scheme. Maxwell's argument that Sarah and Elizabeth do not qualify as real victims because they were not minors at the time of the trafficking and therefore are not victims within the counts of conviction is of no moment. The allegations in the second superseding indictment easily encompasses these non–minor victims. For example, in paragraph 4(e) of the second superseding indictment, which is a sub-part of a count for which there was a conviction, alleges that "through this process, Maxwell and Epstein enticed victims to engage in sexual activity with Epstein." Likewise, paragraph 9 of the second superseding indictment alleges that "among the victims induced or enticed by GHISLAINE MAXWELL, the defendant, were minor victims identified herein as Minor Victim–1, Minor Victim–2, Minor Victim–3 and Minor Victim–4." A fair reading of the indictment is that although it emphasizes minor victims, the sex trafficking conspiracy—as alleged—encompassed non–minor victims like Sarah and Elizabeth.

So too, one of the victim witnesses present at trial was not a minor under the law of the place where she was abused. Nonetheless, the Court allowed her to testify with a limiting instruction. Maxwell's offense conduct was not limited to minor victims.

Sarah and Elizabeth have the right to deliver an in–court statement at Maxwell's sentencing. The CVRA guarantees all crime victims the right to be "reasonably heard at any public proceeding in the district court involving…sentencing." 18 U.S.C. § 3771(a)(4). This is the right of any victim to give what is commonly referred to as a "victim impact statement." *See generally United States v. Degenhardt,* 405 F.Supp.2d 1341 (D. Utah 2005). Various courts have held that the CVRA's right to be reasonably heard guarantees victims the right to make an in–court statement. As one court explained: "At a sentencing hearing, the other participants will speak directly to the judge. Read against this backdrop, the CVRA commands that a victim should be treated equally with the defendant, defense counsel, and the prosecutor, rather than turned into a 'faceless stranger.'" *Id.* at 1348, quoting *Payne v. Tennessee,* 501 U.S. 808, 825 (1991). The Ninth Circuit has reached an identical conclusion. *See Kenna v. U.S. Dist. Court for C.D. Cal.,* 435 F.3d 1011, 1017–18 (9th Cir. 2006). These holdings are consistent with the intentions of the CVRA's drafters. As Senator Kyl explained, "the very purpose of this section is to allow the victim to appear personally and directly address the court." 150 CONG. REC. S10, 911 (daily ed. Oct. 9, 2004) (statement of Sen. Kyl), *quoted in Degenhardt,* 405 F.Supp.2d at 1346.

Further, victim impact evidence is probative of the offense conduct because an "assessment of the harm caused by the defendant has long been an important factor in determining the appropriate punishment, and victim impact evidence is simply another method of informing the sentencing

authority about such harm." *Payne v. Tennessee,* 501 U.S. 808, 808 (1991). Speaking directly to

Maxwell in this case is particularly important for these victims. Crime victims often want to speak

"to regain a sense of dignity and respect rather than feeling powerless and ashamed." *Degenhardt,* 405

F.Supp.2d at 1348 (internal quotation omitted). Here, Sarah and Elizabeth believe it is important

that they be given an opportunity to speak as part of the process of overcoming the horrific impact of

Maxwell's sex trafficking conspiracy on them and others.

## II.   Regardless of Whether Sarah and Elizabeth are CVRA "Victims," the Court Undoubtedly Possesses Discretion to Hear from them at Sentencing Under 18 U.S.C. § 3661

For all the reasons just explained, Sarah and Elizabeth have the right to speak at Maxwell's

sentencing under the CVRA. Additionally, this Court also possesses broad discretionary power,

derived from statute and common law, to hear from them when determining the appropriate

sentence for Maxwell's crimes. *See* 18 U.S.C. § 3661; *see also Degenhardt,* 405 F.Supp.2d at 1343

(discussing the court's discretionary powers to hear from victims).

The Court's discretion in this case is important not only because it provides an alternative

basis for considering Sarah's and Elizabeth's victim impact, but also because the Court may have

other requests to speak at Maxwell's sentencing. Some of these other victims may not be able to

afford legal counsel to present their arguments to this Court.[1] Federal courts have wide discretion to

gather information at sentencing subject to only a few constitutional or statutory restrictions. *See*

*United States v. Tucker*, 404 U.S. 443, 446 (1972) ("[A] judge may appropriately conduct an inquiry

---

[1] Under the CVRA, the Justice Department is obligated to use its "best efforts" to protect the rights of "crime victims." 18 U.S.C § 3771(c)(1). We trust that the Department will present factual and legal arguments in support of victims being heard at sentencing.

[at sentencing] broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come come."); *Williams v. New York*, 337 U.S. 241, 247 (explaining that in order to determine an "appropriate sentence" judges need "the fullest information possible concerning the defendant's life and characteristics."). The Federal Rules of Evidence do not limit the evidence that the court can consider at sentencing. *See* Fed. R. Evid. 110l(d)(3); *United States v. Croxford*, 324 F. Supp. 2d 1230, 1240 (D. Utah 2004); *United States v. Fennel*, 65 F.3d 812, 813 (10th Cir. 1995). *See also United States v. Cofield*, No. 17-CR-610, 2019 WL 4879331, at *2 (S.D.N.Y. Oct. 3, 2019). The information relied on post-conviction must only have "some minimal indicium of reliability beyond mere allegation." *United States v. Shine*, No. 17-CR-28-FPG-JJM, 2020 WL 32937, at *2 (W.D.N.Y. Jan. 2, 2020) quoting *United States v. Juwa*, 508 F.3d 694, 701 (2d Cir. 2007).

Of particular importance in confirming the expansive power of federal courts at sentencing is a broad federal provision—18 U.S.C. § 3661—which establishes that "*no limitation* shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence" (emphasis added). The critical words, "no limitation," grant a sentencing court extremely broad discretionary authority to consider wide–ranging unlimited information about Maxwell's "background, character, and conduct"—crucial information clearly possessed by Sarah and Elizabeth.

The Second Circuit has recognized the broad scope of this provision. In *United States v. Morrison*, 778 F.3d 396, 400–01 (2d Cir. 2015), the Second Circuit noted that section 3661

contains "emphatic language" which "preclude[s] categorical proscriptions on *any factor* concerning the background, character, and conduct of the defendant, with the exception of invidious factors.'" *Id.* (emphasis in original) (citing *United States v. Cavera*, 550 F.3d 180, 191 (2d Cir. 2008) (en banc)).

Additionally, there is nothing in section 3661 limiting sentencing information to individuals who meet the CVRA's definition of being directly and proximately harmed by the offense. *See Degenhardt,* 405 F.Supp.2d 1341, 1343 (D. Utah 2005). Federal judges have broad discretion to allow "affected individuals to present information to the court at sentencing." *United States v. Gamma Tech Industries, Inc.,* 265 F.3d 917, 924 (9th Cir. 2001). *See Williams v. New York,* 337 U.S. 241, 245 (1949).

At least one federal court of appeals has considered the situation where a person provided information to the sentencing court even though the defendant objected that the individual did not meet the CVRA's definition of victim. In *United States v. Leach,* 206 Fed. Appx. 432, 2006 WL 3203746 (6th Cir. 2006) (unpublished), the court, while sentencing the defendant to felon-in-possession of a firearm, allowed the defendant's estranged wife to be heard. She told the court that the defendant was a dangerous man who had threatened to kill her. The Sixth Circuit held that the sentencing court possessed discretion to hear from the wife under section 3661. The Court explained that the CVRA "did not alter (or, more importantly, limit) a district court's traditional broad discretion to consider a wide variety of factors at sentencing." *Id.* at 434.

These authorities clearly support the principle that this Court has broad unlimited discretion in sentencing Maxwell to hear from anyone it believes will have relevant information. Sarah and

Elizabeth respectfully submit that hearing their unique "information concerning the background, character, and conduct" of Maxwell will assist the Court in imposing a fair and just sentence.

A good illustration of these principles comes from the Seventh Circuit's decision in *United States v. Salutric*, 775 F.3d 948, 951–52 (7th Cir. 2015). In that case, the Seventh Circuit observed that "[i]n arriving at an appropriate sentence, a sentencing judge necessarily must consider not only the offense of conviction but the defendant's broader criminal record and history." *Id.* at 951. This point follows from the rationale that "[u]ncharged criminal acts (and the injuries inflicted upon the victims of those acts) have a bearing on whether the offense of conviction was an aberration or part of a larger pattern of criminal behavior, the likelihood of the defendant re–offending, and the need for specific deterrence." *Id., See also United States v. Laraneta,* 700 F.3d 983, 987 (7th Cir. 2012). The Seventh Circuit explained that the federal "Criminal Code makes clear that '[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense, which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence'." 775 at 952 (*quoting* 18 U.S.C. § 3661).

This Court should follow the same approach and hear from all victims of Maxwell's long–running and wide–ranging sex trafficking conspiracy. *See also United States v. Goss,* 325 F. Supp. 3d 932, 936 (E.D. Wis. 2018) (affirming the court's consideration of information at sentencing that was not, strictly speaking, a "victim" impact statement because the "court can consider information from a variety of sources" when imposing sentence). Matters of social welfare directly impact decisions regarding the appropriateness of a criminal sentence. *Krebs v. New York State Div. of Parole,* No. 9:08-CV-255NAMDEP, 2009 WL 2567779, at *2 (N.D.N.Y. Aug. 17, 2009) (allowing consideration of

a late–filed victim impact statement, finding that the parole board may waive one or more

requirements in order to further its policy of ensuring that crime victims are treated with fairness,

sensitivity and dignity).

III.     **The Court Should Exercise Its Discretionary Authority to Consider the Victim Impact on Women Who have Suffered from the Most Notorious Long-running Sex Trafficking Operation in Modern American History**

In this case especially, the Court should exercise its broad discretion to hear and consider all

information relevant to sentencing. First, allowing women who were sexually abused and trafficked

by Maxwell's conspiracy to speak will have an important cathartic benefit not only for the victims

speaking, but for those who are unable to speak as well. Second, in this case in particular, too many

unanswered questions remain about the scope and participants in this long-running wide-ranging sex

trafficking conspiracy – leading many Americans to believe that authorities continue to hide the

complete truth about what happened. Allowing all victims who wish to speak to do so publicly will

promote transparency and help to dispel some of those concerns.

A.     **Prohibiting Maxwell's Victims from Speaking Unfairly Denies Victims Important Cathartic Benefits**

Allowing crime victims to speak at a defendant's sentencing can have significant

psychological and emotional benefits for those victims. *See generally* Paul G. Cassell, *In Defense of

Victim Impact Statements*, 6 OHIO ST. J. OF CRIM. L. 611, 621–23 (2009). As one federal district

court explained, "[E]ven if a victim has nothing to say that would directly alter the court's sentence, a

chance to speak still serves important purposes…. '[Victim] allocution is both a rite and a right.'"

*United States v. Degenhardt*, 405 F. Supp. 2d 1341, 1349 (D. Utah 2005) (*quoting United States v.

De Alba Pagan*, 33 F.3d 125, 129 (1st Cir. 1994)).

Giving victims a chance to participate in the rite of allocution has important benefits for the victim. Professor Mary Giannini observes that by delivering a victim impact statement in court, "the victim gains access to a forum that directly and individually acknowledges her victimhood. The moment of sentencing is among the most public, formalized, and ritualistic parts of a criminal case. By giving victims a clear and uninterrupted voice at this moment on par with that of defendants and prosecutors, a right to allocute signals both society's recognition of victims' suffering and their importance to the criminal process." Mary Margaret Giannini, *Equal Rights for Equal Rites?: Victim Allocution, Defendant Allocution, and the Crime Victims' Rights Act*, 26 YALE L. & POL'Y REV. 431, 452 (2008); Richard A. Bierschbach, *Allocution and the Purposes of Victim Participation Under the CVRA*, 19 FED. SENT'G REP. 44, 46–47 (2006)).

These healing effects are not unusual. One thorough assessment of the literature on victim participation explained: "The cumulative knowledge acquired from research in various jurisdictions, in countries with different legal systems, suggests that victims often benefit from participation and input. With proper safeguards, the overall experience of providing input can be positive and empowering." Edna Erez, *Who's Afraid of the Big Bad Victim? Victim Impact Statements as Victim Empowerment and Enhancement of Justice*, CRIM. L. REV., July 1999, at 545, 550–51. Thus, the consensus is that victim impact statements allow the victim "to regain a sense of dignity and respect rather than feeling powerless and ashamed." *Kenna v. U.S. Dist. Court for C.D. Cal.*, 435 F.3d 1011, 1016 (9th Cir. 2006) (quoting Jayne W. Barnard, *Allocution for Victims of Economic Crimes*, 77 NOTRE DAME L. REV. 39, 41 (2001).

It is well known that being a crime victim inflicts numerous immediate psychological traumas on victims as well as those close to them. Post-Traumatic Stress Disorder ("PTSD") is commonly diagnosed in victims of violent crime. *See* Jim Parsons & Tiffany Bergin, *The Impact of Criminal Justice Involvement on Victims' Mental Health*, 23 J. TRAUMATIC STRESS 182, 182 (2010). PTSD can afflict not only the direct victims of violent crime, but also those who experience its profound repercussions more indirectly, such as family members and friends. Dean G. Kilpatrick & Ron Acierno, *Mental Health Needs of Crime Victims: Epidemiology and Outcomes*, 16 J. TRAUMATIC STRESS 119, 119, 125–27 (2003). PTSD is far from the only injury that violent crime can inflict on victims. Depression, substance abuse, panic disorder, and suicide are common victim impacts. *See* Parsons & Bergin, *supra*, 23 J. TRAUMATIC STRESS at 182.

Empirical research continues to demonstrate the importance of hearing from crime victims during sentencing—particularly victims of sexual offenses. Among the most recent research on the subject was conducted in Australia, where Rhiannon Davies and Lorana Bartels closely examined the perspectives of six adult female victims and fifteen justice professionals, supplemented by analysis of one hundred sentencing statements. *See* Rhiannon Davies and Lorana Bartels, THE USE OF VICTIM IMPACT STATEMENTS IN SENTENCING OF SEXUAL OFFENSES: STORIES OF STRENGTH (2021). The book–length study found that victim impact statements have the potential to give victims voice, validation, and vindication, which can be an important step in recovering from the trauma inflicted by a defendant's sexual crime.

Sarah's and Elizabeth's victim impact statement demonstrate that they both have already benefitted from knowing that Maxwell has been prosecuted, found guilty, and that they were allowed

to attend the trial. Being given an opportunity to speak at Maxwell's sentencing will further advance their recovery from the injuries caused by being sexually trafficked. [Sarah's VIS ("Last year I travelled to New York from England…to attend Maxwell's trial. It was therapeutic to hear the testimony of the four brave victim–witnesses, whose experience paralleled my own, to know that I was not alone and that our story was finally being told for the world to hear. I am grateful that the jury believed the victims and returned a guilty verdict. I look forward to attending the sentencing and watching Ms. Maxwell stand as her sentence is delivered in open court."); Elizabeth's VIS ("The arrests of Epstein and Maxwell in 2019 and 2020 respectively helped me immensely. For the first time, I was finally able to disclose their abuse to close friends and medical providers. Twenty–five years after meeting them, my experience was validated. I could finally see the possibility of closure. This past November and December, I commuted almost every day from my home in Philadelphia to attend Ghislaine Maxwell's trial in Manhattan. For weeks I sat in the courtroom anonymously, only revealing my identity the day before the verdict. I had to see justice for myself. At the age of 48, I feel as if I'm just starting my life. All those things I assumed I would have in life, the things that my siblings and friends have achieved: a career, success, a partner, family, a home, a legacy to be proud of leaving behind were jeopardized for more than two and a half decades.")].

### B. Allowing Victims to Speak Is Particularly Important in this Case Where Many Mysteries Abound About the Breadth of Maxwell's Conspiracy

In addition to the benefits that will inure to the individual women who speak at Maxwell's sentencing, a public airing of victim impact statements will serve the broader public interest of building confidence in the criminal justice system, especially in a case which remains shrouded in so much controversy. While the Court will be sentencing one defendant—Ghislaine Maxwell—for her

role in the New York crimes of an expansive long–running sex trafficking conspiracy, Maxwell's

criminal prosecution does not stand in a vacuum. Maxwell's recent prosecution in this district

followed the non–prosecution of her co–conspirator Jeffrey Epstein, Maxwell, and other unknown

co–conspirators in the Southern District of Florida under highly unusual circumstances. As the

Eleventh Circuit en banc recently stated, the facts involving the non–prosecution of Epstein,

Maxwell, and other un–named and un–known co–conspirators in Florida "are beyond scandalous—

they tell a tale of national disgrace." *In re Wild*, 994 F.3d 1244, 1247 (11th Cir. 2021), *cert. denied*

*sub nom. Wild v. United States Dist. Ct. for S. Dist. of Fla.*, 142 S. Ct. 1188 (2022).

In this Court, Maxwell will now be sentenced for conspiring with "one of this era's most

infamous child predators." *In re Wild*, 955 F.3d 1196, 1247 (11th Cir. 2020), *reh'g en banc granted,*

*opinion vacated*, 967 F.3d 1285 (11th Cir. 2020). But many questions remain about how and why

the innumerable co–conspirators in an extensive international child sex trafficking operation have

escaped justice for so long. In the Southern District of Florida, Epstein, Maxwell, and other co–

conspirators arranged a secret non–prosecution deal that allowed Epstein to, in effect, take the fall

for all involved and then to serve most of his prison time on "work release"—while the other co–

conspirators (such as Maxwell) escaped prosecution entirely. *See generally Jeffrey Epstein's Wealth*

*Allowed Him Many Perks While Serving Jail Time in Florida*, WASH. POST (July 19, 2019). The

"preposterous" inexplicable non–prosecution agreement has left the sex trafficking conspiracy's

victims—and the public—to wonder why Epstein, Maxwell, and other co–conspirators were treated

so favorably. Tung Yin, *Learning from the Jeffrey Epstein Mess: It's Time to Add a Cause of Action for*

*Damages to the Crime Victims' Rights Act*, 69 KANS. L. REV. 447, 489 (2021). As Eleventh Circuit

Judge Hull observed, "[m]ysteries remain about how Epstein escaped federal prosecution...." *In re Wild,* 994 F.3d at 1327 (11th Cir. en banc 2021) (Hull, J., dissenting).

These "mysteries" about this controversial non–prosecution deal have led to skepticism from all quarters. For example, Senator Ben Sasse, then–Chairman of the Senate Judiciary Oversight Subcommittee, wrote to Attorney General William Barr that "[t]he idea that wealth and connections can buy injustice...is wholly and completely inconsistent with the basic notions of fairness and equality that undergird the rule of law enshrined in our Constitution." Letter from Sen. Sasse to Attorney General Barr (Aug. 13, 2019).[2]

The sad reality is that the shocking lack of accountability for the Epstein and Maxwell criminal conspiracy has "ignited a crisis of public trust in the Department [of Justice] and exacerbated the erosion of trust that the American people have in our institutions of republican self–government more broadly." Letter from Senators Sasse, Blumenthal, Cruz, and Blackburn to Inspector General Horowitz (Dec. 2, 2019).[3]

The favorable treatment that Epstein, Maxwell, and their other wealthy co–conspirators received has created a public view that, so long as a defendant is powerful enough, he can manipulate the federal criminal justice system. *See generally* Marc Fisher et al., *The Pressure on a Prosecutor: How Epstein's Wealth and Power Steered Acosta Toward Lenient Deal,* WASH. POST (July 12, 2019). Indeed, the treatment of the conspirators has caused the public to believe that there is "an entirely different

---

[2] Available at https://www.sasse.senate.gov/public/index.cfm/2019/8/sasse-to-doj-rip-up-epstein-deal-go-after-coconspirators.

[3] Available at https://www.sasse.senate.gov/public/_cache/files/cb719d31-2a1f-45ad-a701-3fc3c7b73417/12-02-19-dojigepstein.pdf

justice system for crime victims of wealthy defendants." *In re Wild,* 994 F.3d at 1327 (11th Cir. en banc 2021) (Hull, J., dissenting). And Epstein's escape from conviction through apparent suicide in circumstances where federal authorities should have been more vigilant has created a widely spread meme that "Epstein didn't kill himself."[4]

Against this backdrop, if Maxwell's victims are prevented from speaking at her sentencing, it will compound the public perception that the conspiracy's victims are being silenced and that co–conspirators continue to receive favorable treatment. The best way to dispel this public perception is for the Court to broadly permit *all* Maxwell's victims who wish to be heard at sentencing to speak.

Judge Berman of this Court wisely recognized these realities in allowing all of Epstein's victims to speak at the court hearing where Epstein's criminal charges were dismissed after his death. *See U.S. v. Epstein,* Case No. 19-cr-490-RMB (S.D.N.Y. hearing transcript Aug. 27, 2019). As Judge Berman explained: "Public hearings are exactly what judges do. Hearings promote transparency and they provide the court with insights and information which the court may not otherwise be aware of. The victims have been included in the proceeding today both because of their relevant experiences and because they should always be involved before rather than after the fact." Aug. 27, 2019, Hrng. Trans. at 5. *See generally* Paul G. Cassell & Bradley J. Edwards, *Hearing on Dismissing Epstein Charges was not "Drama" but Proper Respect for Victims*, N.Y.L.J., Aug. 28, 2019.[5]

Of course, exactly the same point about the need to promote "transparency" can be made in this case—particularly since the Justice Department has yet to announce any other indictments of

---

[4] See https://en.wikipedia.org/wiki/Epstein_didn%27t_kill_himself.
[5] https://www.law.com/newyorklawjournal/2019/08/28/hearing-on-dismissing-epstein-charges-was-not-drama-but-proper-respect-for-victims

the dozens and dozens of other co–conspirators who were an essential part of the Maxwell/Epstein conspiracy to sexually abuse dozens and dozens of young women and girls.

Sarah and Elizabeth are entitled to read aloud their victim impact statements at Maxwell's criminal sentencing. Victim impact statements can help the Court understand the "effect of the offense on the victim and the victim's family, and may include oral testimony[.]" *See United States v. Wilson*, 493 F. Supp. 2d 364, 393 (E.D.N.Y. 2006) *quoting* 18 U.S.C. § 3593(a). Courts have allowed sentencing determinations to consider "oral or written testimony from close family members regarding victims and the direct impact" of the harm. *Kelly v. California,* 555 U.S. 1020 (2008) *quoting* Blume, *Ten Years of Payne: Victim Impact Evidence in Capital Cases,* 88 Cornell L.Rev. 257, 271–272 (2003) (collecting cases). Courts have also considered poems, photographs, hand–crafted items, and even multimedia video presentations. *Id.* Sarah's and Elizabeth's request to provide oral testimony should not be denied.

Allowing Maxwell's victims to speak will cause no unfair prejudice to Maxwell. As explained above, this Court clearly possesses the authority under 18 U.S.C. § 3661 to obtain any information that may be relevant to sentencing. Maxwell will have an opportunity to respond through her counsel to any information the victims provide.[6] The Court can then sift through all the information to determine what is relevant in imposing Maxwell's sentence. The Court should err on the side of

---

[6] Maxwell's response cannot include cross–examining the victims. *See* Paul G. Cassell & Edna Erez, *Victim Impact Statements and Ancillary Harm: The American Perspective*, 15 CANADIAN CRIM. L. REV. 150, 169-70 (2011) ("Federal courts have consistently held that full confrontation rights do not extend to sentencing, a ruling that would implicitly block cross–examination of victims at federal sentencing hearings.").

receiving the most information possible in making its sentencing decision and allow all the victims of all Maxwell's sex trafficking crimes to speak.

**IV.    If the Court Does Not Believe that Sarah and Elizabeth Are Entitled to be Heard at Sentencing, They Should Be Given Additional Time to Brief and Argue the Issue**

For all the reasons just explained, Sarah and Elizabeth believe that they have established entitlement to deliver their victim impact statements at Maxwell's sentencing. But if, for any reason, the Court has doubts about this issue, Sarah and Elizabeth respectfully request additional time to develop factual and legal arguments in support of their position. Sarah and Elizabeth have had just 48 hours to respond to the Court's June 21st order setting out procedures for briefing this issue. Such a short time frame has deprived them of an opportunity to develop both factual and legal arguments supporting their position. The Court should give them additional time to develop their position.

## <u>CONCLUSION</u>

For all these reasons, the Court should allow Sarah and Elizabeth to orally deliver their victim impact statements at Maxwell's sentencing or, in the alternative, provide them with additional time to further brief this issue.

Dated:  June 23, 2022
       New York, New York

Respectfully submitted,

MARSH LAW FIRM PLLC


_____/s/_____

Robert Y. Lewis
31 Hudson Yards, 11th Floor
New York, New York 10001
Phone: 212-372-3030
Email: robertlewis@marsh.law


_____/s/_____

Margaret E. Mabie
31 Hudson Yards, 11th Floor
New York, New York 10001
Phone: 212-372-3030
Email: margaretmabie@marsh.law