**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

December 7, 2021

**BY E-MAIL**

The Honorable Alison J. Nathan
United States District Court
Southern District of New York
United States Courthouse
40 Foley Square
New York, New York 10007

> **Re:**   ***United States v. Ghislaine Maxwell**, S2 20 Cr. 330 (AJN)*

Dear Judge Nathan:

The Government respectfully submits this letter in response to the defense letter motion to preclude testimony by Forensic Examiner Stephen Flatley of the Federal Bureau of Investigation. There is no reason to exclude any of Flatley's expected testimony or to delay his cross-examination. The Government believes that Flatley's expected testimony does not constitute expert opinion testimony. However, even if some aspect of his testimony were characterized as expert opinion, the Government has provided sufficient notice for such testimony and Flatley is undisputedly qualified to give it. And there is certainly no reason to preclude his testimony based on the defendant's late-breaking objection.

## I.     Factual Background

On September 15, 2021, the Government wrote the defendant a letter notifying her that it

expected to call Flatley as a witness at this trial.  The Government explained that, although the Government believed that this testimony would not require admission through Rule 702, the Government nonetheless provided notice in an abundance of caution.  In addition to the summary of Flatley's testimony identified in the defendant's letter (Def. Letter at 1-2), the Government identified four cases in which Flatley "previously testified regarding similar topics," including metadata and hash values.  *See* Trial Tr. at 935-36, *United States v. Hirst*, 15 Cr. 643 (PKC) (describing metadata); Trial Tr. at 292-93, *United States v. DiTomasso*, 14 Cr. 160 (SAS) (describing hash values); *see also* 11/23/21 Tr. at 22 (directing the defense to "have your expert look at the testimony that [Flatley's] provided" to see if "he's got some differing expert opinion").  Flatley was qualified as an expert in some of those cases; in others he was not.

The defendant did not raise a Rule 16 objection to this expert notice after the Government began producing 3500 material on October 11, 2021.  Nor did the defendant raise an objection on October 18, 2021—the time designated for filing motions *in limine*.  *Cf.* Mot. to Exclude Testimony of Dr. Lisa Rocchio, Dkt. No. 443.  Instead, the defendant first complained about the sufficiency of the notice at the final pretrial conference on November 23, 2021—less than a week before the start of trial.  *See* 11/23/21 Tr. at 21-23.  The Government quickly responded to the defense's notice concern, and three days later, the Government provided the defendant with a letter that summarizes Flatley's expected direct testimony and identified the Government exhibits about which Flatley was expected to testify.  (Def. Letter at 2-3).  That November 26, 2021, letter, which is attached as Exhibit A, continues to reflect Flatley's expected direct testimony, although the Government may not ask about all of the exhibits mentioned therein.

On November 27, 2021, the defendant wrote the Government a letter in which the

defendant claimed that the Government's supplemental letter was untimely and simultaneously supplemented the defendant's expert notice for Forensic Examiner Robert Kelso. Notwithstanding the anticipated objections, the defendant waited more than a week and filed a motion to preclude at approximately 9:45 p.m. the night before Flatley is expected to testify.

## II.      Applicable Law

"The Federal Rules of Evidence allow the admission of fact testimony so long as the witness has personal knowledge, while opinion testimony can be presented by either a lay or expert witness." *United States v. Cuti*, 720 F.3d 453, 457-58 (2d Cir. 2013). "The initial question is therefore whether the contested testimony should be characterized as fact or opinion," which is a distinction that is "at best, one of degree." *Id.* at 458. The admission of fact testimony is governed by Federal Rule of Evidence 602, which requires that the witness have "personal knowledge of the matter." Fed. R. Evid. 602. The admission of expert testimony is governed by Rule 702, and applies to witness who offer opinions who are "qualified as an expert by knowledge, skill, experience, training or education." Fed. R. Evid. 702.

Where a witness will offer expert testimony, the Federal Rules require the proponent to "describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Fed. R. Crim. P. 16(a)(1)(G), (b)(1)(C). As the 1993 amendments to Rule 16 note, the Rule is meant to "minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination." *Id.* 1993 Amend. "If a party fails to comply with Rule 16, the district court has broad discretion in fashioning a remedy . . . ." *United States v. Ulbricht*, 858 F.3d 71, 115 (2d Cir. 2017), *abrogated on other grounds by*

*Carpenter v. United States*, 138 S. Ct. 2206 (2018).  Exclusion is "a harsh sanction not to be imposed lightly."  *Id.* at 117; *see United States v. Canada*, 858 F. App'x 436, 439 (2d Cir. 2021) (Mem.) (affirming a decision to permit an expert to testify who was noticed "the night before the last day of trial" because the defendant "would have ample opportunity for cross-examination").

### III.    Discussion

The Government will offer testimony tomorrow for which the defense has received ample notice, and there is no reason to preclude any testimony or permit any delayed cross-examination.

*First*, the primary issue concerns Flatley's discussion of metadata.  The Government believes that Flatley's anticipated testimony on this subject is properly considered fact testimony. For instance, Flatley is expected to read an exhibit reflecting that the author of a document is "gmax."  That is pure fact testimony.  *See, e.g.*, GX 418-B.  He is also expected to testify that he used a program to confirm, for example, that the metadata reflected in GX 418-B is the metadata for GX 418. That does not constitute expert opinion, either, because it is based on his investigatory findings, not rooted exclusively in his expertise.  *See, e.g.*, *United States v. Rigas*, 490 F.3d 208, 224 (2d Cir. 2007) ("A witness's specialized knowledge, or the fact that he was chosen to carry out an investigation because of this knowledge, does not render his testimony expert as long as it was based on his investigation and reflected his investigatory findings and conclusions, and was not rooted exclusively in his expertise." (internal quotation marks and alteration omitted)).  This expected testimony is thus quite unlike the case cited by the defendant, *In re Digital Music Antitrust Litigation*, 321 F.R.D. 64 (S.D.N.Y. 2017).  There, the witness testimony included claims like the fact that "he chose to use a program named 'ExifTool,' which is a commonly accepted tool used for forensic data extraction," based on "his experience with it and because it would allow

4

him to handle the 'sheer amount of data that was produced.'"  *Id.* at 84.  He then conducted a "comparative analysis," and "concluded that determining the provenance of the Digital Music files requires conducting an individualized inquiry on a track-by-track basis."  *Id.*; *see id.* at 85 (describing the steps the witness had taken); *cf. United States v. Ganier*, 468 F.3d 920, 924, 926 (6th Cir. 2006) (concluding that an agent's testimony "from reports generated by the forensic software that searches had been run . . . using search terms relevant to the grand jury investigation" required specialized knowledge to "make sense of the software reports").

The Government understands, however, that this line is difficult to draw, and some discussion of the investigative steps Flatley has taken could be understood as testimony relying on his technical knowledge.  For instance, although Flatley is not expected to testify about why he used a particular forensic program to confirm the accuracy of metadata, he is expected to testify that he used the program.  Similarly, he would testify more generally how metadata is created and can be modified.  To the extent the Court has any concern that this (or any portion of Flatley's proffered testimony) may cross the line into expert opinion, the Government stands ready to qualify Flatley as an expert.[1]  And for that reason, the Government has ensured that the defendant has long had notice that Flatley will testify about metadata and has long had Flatley's expert qualifications.  The Government's September 15 letter described those qualifications, told the defendant that Flatley would testify about user information associated with devices and documents and photographs associated with the devices, and pointed the defendant to a case in which Flatley discussed metadata.  *See* Trial Tr. at 935-38, *United States v. Hirst*, 15 Cr. 643 (PKC) (describing

---

[1] The defense does not appear to dispute that Flatley could be qualified as an expert witness in this subject; their objection is only one of notice.

metadata).  The defendant understood this to be a disclosure that concerned metadata.  11/23/21 Tr. at 21 ("Mr. Flatley was disclosed by the government for similar purposes to talk about the retrieval of metadata from some of the devices that were seized from Epstein's home.").  In any event, the Government made that both explicit and highly specific in the November 26 letter, three days after the defendant expressed concerns about notice.  The November 26 letter identifies the precise exhibits about which Flatley will testify, including the exhibits that display metadata fields (which were produced on October 11, 2021), and it provides detail about the methods and metadata about which he will testify.  The sufficiency of the Government's notice is evidenced by the fact that the defendant noticed a rebuttal expert on November 1, 2021, and they likewise have had ample time to prepare any cross-examination on metadata.  Thus, to the extent the Court has any doubt as to whether Flatley's testimony constitutes expert opinion, the Government would seek to qualify him as an expert on the relevant subjects.

*Second*, the remainder of Flatley's expected testimony stated in the November 26 letter is clearly fact testimony.  As the letter explains, Flatley will testify that he examined Government Exhibits 54 and 55 and determined that particular other Government exhibits were stored there. (Ex. A at 2).  And he will testify that he, personally, made images of Government Exhibits 54 and 55.  (Ex. A at 1).

*Third*, the "newly and untimely-disclosed expert opinion testimony" (Def. Letter at 5) is no such thing:

- The primary defense concern appears to be about the statement, reflected in the 3500 material, that Flatley examined metadata to determine the number of times the "ghislaine" user account accessed Government Exhibit 54, as reflected in the notes for December 2.  This is not

expert opinion testimony, either, and thus no notice objection can be sustained.  But in any event the Government is not planning to offer this opinion in its direct examination of Flatley.  Instead, it is responsive to an expected line of cross-examination: the defense notice for Examiner Kelso suggests they will challenge whether the defendant ever used Government Exhibit 54.  The login data, which shows that the vast majority of logins occurred on the user account "Ghislaine," undermines that claim.  The defendant can hardly claim that the Government provided insufficient notice of testimony it discussed with the witness in response to the defendant's expert notice and which the Government would only elicit in response to cross-examination on the subject.

There is no further opinion contained in the December 5 notes.  In response to a question from defense counsel, the Government asked Flatley how he determined the number of user accounts and logins, and Flatley rechecked those numbers.  That information is additional detail for the December 2 notes, and not itself expert opinion, new or otherwise.  (And the production of 3500 material the same day it was generated is hardly an "untimely disclosure.")

- Although the Government has noticed the testimony, the Government is not planning to elicit any expert testimony about "clones."  (Def. Letter at 4).  He will simply provide fact testimony that he personally created an image of the devices marked for identification as Government Exhibits 54 and 55.

- Testimony that "once a file is burned onto a CD, can't unburn it" and "on original CD, created date would be the same date as the modified date," (Def. Letter at 5), is pure fact testimony. It requires no specialized training to know that information; Flatley can testify to those facts based on his personal knowledge.  And, again, this is testimony that the Government does not intend to elicit on direct examination, but rather would elicit only in response to cross-examination along

the lines of the defense expert notice.

*Fourth*, preclusion of any of Flatley's testimony is an improper remedy.  As set forth above, Flatley's testimony does not constitute expert opinion, and thus no notice was required.  But even if some aspect of Flatley's testimony were considered expert opinion, the Government's notice was sufficient, for the reasons set forth above.  Furthermore, the purpose of Rule 16's expert notice requirement is to "minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination."  Fed. R. Crim. P. 16(a)(1)(G), (b)(1)(C), 1993 Amend.  Here, the Government's notices have clearly served the purpose of the requirement. The defendant cannot seriously claim surprise: When the Government first provided notice of Flatley's testimony in September, the defendant did not object to its sufficiency or file a motion to preclude, but instead noticed her own counter-expert to Flatley on November 1, 2021, stating that he would testify about substantially the same subjects.  Moreover, the first time the defendant raised any complaint about notice, the Government responded in great detail within three days, and the defense then chose to wait until the night before Flatley's testimony to raise any further complaint with the Court.  Thus, any need for a continuance—and there is none—is the product of the defendant's gamesmanship.  Preclusion is an extreme remedy, *see Ulbricht*, 858 F.3d at 117; *Canada*, 858 F. App'x at 439; *Ganier*, 468 F.3d at 927 ("District courts should embrace the 'least severe sanction necessary' doctrine, and hold that suppression of relevant evidence as a remedial device should be limited to circumstances in which it is necessary to serve remedial objectives."); *United States v. Tuzman*, No. 15 Cr. 536 (PGG), 2017 WL 6527261, at *11-12 (S.D.N.Y. Dec. 18, 2017) (denying a motion to preclude a defense expert where the

Government is able to "prepare a meaningful cross-examination"), and is not called for under these circumstances. At most, the Court should permit the defense additional time to prepare their cross-examination of Flatley.

*Finally*, the Government notes that the defendant has given far less detailed expert notice than the Government has, despite the Court's order for the defendant to supplement her expert notice. (*See* 11/23/21 Tr. at 25 (directing the defense to supplement their notice by November 27)). A copy of the defense supplemental letter is attached as Exhibit B. For instance, a principal defense concern at the Final Pretrial Conference concerned a lack of certainty about the "methods that [Flatley's] used" to extract data and uncertainty about "exactly what documents Mr. Flatley intends to refer to." (*Id.* at 21, 23). The Government's November 26 letter identifies the specific methods Flatley used and the specific exhibits about which he will testify. The defendant's November 27 letter identifies neither any methods nor any specific exhibits. The defendant's expert notice should at a minimum be held to the same standard as the Government. But there are certainly no grounds for the defendant to challenge the sufficiency of the Government's detailed expert notice.

## IV.   Conclusion

For the foregoing reasons, the Court should deny the defendant's motion to preclude.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: ____s/_____
     Maurene Comey
     Alison Moe
     Lara Pomerantz
     Andrew Rohrbach
     Assistant United States Attorneys
     Southern District of New York

Cc: Defense Counsel (by e-mail)