**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

December 12, 2021

The Honorable Alison J. Nathan
United States District Court
Southern District of New York
United States Courthouse
40 Foley Square
New York, New York 10007

      Re:    *United States v. Ghislaine Maxwell*, S2 20 Cr. 330 (AJN)

Dear Judge Nathan:

The Government respectfully submits this letter moving to preclude one exhibit which the defendant produced in Rule 16 discovery Friday night.  Following the close of the Government's case in chief, the defendant produced her witness list and Rule 26.2 disclosures.  In addition, the defendant attached two new documents as Rule 16 discovery: a sale agreement for the defendant's London home at 44 Kinnerton Street (attached as Exhibit A) and a judicial opinion in *United States v. Epstein*, 96 Civ. 8307 (DC) (S.D.N.Y. Mar. 31, 1998). The Government seeks to preclude the sale agreement under Rule 16.[1]

The sale agreement should have been disclosed on November 8, 2021, the Court's deadline

---

[1] Although the judicial opinion does not appear to be admissible, the Government plans to confer with the defense on that document.

1

for defense production of Rule 16 materials.  The Government is prejudiced by the defendant's decision to delay production until after the close of the Government's case, and the defendant should therefore be precluded from offering the agreement in her case-in-chief.  And in any event, the agreement should be excluded under Rule 403.

## I.    Applicable Law

Pursuant to Federal Rule of Criminal Procedure 16(b)(1)(A), if a defendant "requests disclosure under Rule 16(a)(1)(E) and the government complies," then the defendant must permit the Government to inspect any documents in the defendant's "possession, custody, or control," which the defendant intends to use in her "case-in-chief at trial."  Fed. R. Crim. P. 16(b)(1)(A). Although "[a] defendant would always like more information about the government's case before revealing anything about his or her own," Rule 16 "conditions a defendant's disclosure obligations on the government's having made certain specified disclosures, not on the government's laying open its entire case or the defendant's satisfaction."  *United States v. Rajaratnam*, 09 Cr. 1184 (RJH), 2011 WL 723530, at *5 (S.D.N.Y. Feb. 25, 2011); *see* Fed. R. Crim. P. 16 Advisory Committee Note—1974 Amend. ("The majority of the Advisory Committee is of the view that . . . the giving a broader right of discovery to the defense is dependent upon giving also a broader right of discovery to the prosecution.").  When the defendant "avail[s herself] of the strategy to obtain discovery of the government, [s]he must comply with the requirement for reciprocal discovery"—even as to exhibits the defendant might introduce only if the defendant herself testifies.  *United States v. Ryan*, 448 F. Supp. 810, 810-11 (S.D.N.Y. 1978).   Just as the Government has a continuing duty to disclose discoverable material after its initial Rule 16 production, so the defense has the same continuing duty.  *See* Fed. R. Evid. 16(c).

2

Where either party fails to comply with its discovery obligations, the Court has discretion to "prohibit that party from introducing the undisclosed evidence." Fed. R. Crim. P. 16(d)(2)(C). Where a defendant makes an untimely production of Rule 16 materials, including by "not disclosing the document in the first place or by not fulfilling her continuing duty to disclose," it is "properly within the district court's discretion" to exclude the evidence. *United States v. Bruce*, 75 F. App'x 849, 851 (2d Cir. 2003); *see United States v. Weiss*, 930 F.2d 185, 199 (2d Cir. 1991) (affirming exclusion of evidence that the defense disclosed to the government after "[t]he government had already rested its case and the relevant government witnesses who could have provided information about the documents were out of state," because doing so "would have given the defense an unfair advantage"); *United States v. Napout*, No. 15 Cr. 252 (PKC), 2017 WL 6375729, at *8 (E.D.N.Y. Dec. 12, 2017) (describing the "approach used by many courts": "if the Court determine[s] that a Defendant could have made timely disclosure, but failed to timely do so, the defendant ran the risk that the exhibit would be excluded").

## II.    Factual Background

The Government has made thirty-eight discovery productions to the defense under Rule 16(a), beginning on August 5, 2020, totaling over two million pages, triggering the defendant's reciprocal discovery obligations under Rule 16(b).  On June 2, 2021, the Court ordered the Government to produce its Jencks Act material and proposed exhibit list on October 11, and the defendant to provide her Rule 16 disclosures on November 8—three weeks in advance of trial. (Dkt. No. 297).  On November 8, 2021, the defendant provided the Government with a Rule 16 production.

On December 10, 2021—more than a month later, shortly after the close of the

Government's case—the defendant provided a supplemental disclosure of material under Rule 16(b)(1)(A). Document "Rule 16_007" appears to be a sale agreement for the defendant's home at 44 Kinnerton Street, London, dated December 19, 1996. ███████████████████████ ██████████████████████████ ████████████████████████████ ████████████████.

Although the defense has not specified the relevance of this document, it appears to be offered in service of the argument that the defendant did not live at this address in 1994, which is when Kate testified she first visited the defendant there. To be clear, the document does not actually establish that fact: The defendant herself has testified under oath that she lived in the 44 Kinnerton Street residence beginning in 1992 or 1993 (*see* Exhibit B), and even assuming the date of sale is accurate, it hardly precludes the possibility that the defendant lived there at an earlier date.[2]

### III.   Discussion

The defendant's decision to withhold the sale agreement until the close of the Government's case violates her Rule 16 obligations. The records were within her possession, custody, and control long before trial, and the theory for which the Government expects the defendant to use the agreement has been apparent since the Government's production of Jencks Act material in mid-October, before the defendant's initial Rule 16 deadline. By failing to disclose the agreement until the close of the Government's case, the defendant has prevented the Government from conducting a full investigation, causing prejudice to the Government. The Court

---

[2] Nor does it preclude the possibility that Kate was simply mistaken about which of the defendant's London residences she first visited.

4

should preclude the defendant from offering the agreement now in her case-in-chief.

*First*, the agreement was in the defendant's possession, custody, and control long before trial.  The sale agreement is a contract between the defendant herself and third parties.  If a copy of the agreement was not in her personal possession, it surely was obtainable through her counsel in that transaction—who is expected to testify at trial.

*Second*, as noted, the theory of relevance for the sale agreement that the Government anticipates has been clear since long before the defendant's Rule 16 deadline.  The Government expects that the defendant will try to use the agreement to show that she did not purchase the townhome on Kinnerton Street until January 1997.  Kate testified that she visited that home in 1994, when she was 17.  (Tr. 1176).

Kate's testimony was not a surprise to the defense.  Kate described the home in an interview with the Government on September 1, 2021, a report of which was produced to the defense on October 11.  *See* 3513-037 at 8 (FBI 302); 3513-038 at 12 (underlying notes).  Although Kate did not give the street address, she identified the house's location as across the street from the Nags Head Pub.  That fact did not go unnoticed by the defense, which made a point of confirming with Kate on cross examination specifically that the defendant lived on Kinnerton Street across from the Nags Head Pub—twice.  Tr. 1235, 1253-54.  Even before the Government produced its 3500 material, the defense previewed its view that Kate's timeline is incorrect and she was older at the time of certain events than she testified she was.  *See* 11/01/21 Tr. at 89 ("It's quite possible, in fact likely, that [Kate] is older than [17].").  The defense has been planning to challenge Kate's testimony on this point for quite some time, and it knew that Kate said she visited the Kinnerton Street home.  Yet the defense did not produce the sale agreement in its Rule 16 production.

*Third*, this failure to disclose has caused prejudice to the Government.  The sale agreement is an isolated document with a handwritten date, and it ███████████████████████

████████████████████████████████████████████████████████████████████████████

███████████████[3]  The Government should have an opportunity to investigate and obtain records from the United Kingdom regarding the defendant's place of residence in the mid-1990s.  That is a time-consuming international, intergovernmental process involving multiple agencies in each country that is not likely to generate admissible evidence by the conclusion of trial.  And there is every reason for the Government to seek to investigate this document: the defendant has previously testified, under oath in a deposition, that she lived at the Kinnerton Street address beginning in 1992 or 1993.  (*See* Exhibit B at 8).  Such an investigation did not become necessary until the defendant sought to introduce a document in support of an apparent argument that, contrary to that testimony, the defendant lived elsewhere prior to the purchase of this home.

*Fourth*, no remedy other than preclusion is appropriate.  Insofar as the defendant waited until now to disclose the agreement, she "ran the risk that the exhibit would be excluded." *Napout*, 2017 WL 6375729, at *8.  Its introduction would prejudice the Government, and it should be so excluded.

*Finally*, the agreement should be excluded under Rule 403.  As explained above, the agreement runs the risk of "confusing the issues" and "misleading the jury" by presenting a document from which the jury is asked to infer conclusions that range far beyond the evidence.

---

[3] ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████

The probative value of the agreement is substantially outweighed by these risks.

**IV.      Conclusion**

For the reasons set forth above, the Court should preclude the defendant from offering at trial the sale agreement.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: ___s/_____
      Maurene Comey
      Alison Moe
      Lara Pomerantz
      Andrew Rohrbach
      Assistant United States Attorneys
      Southern District of New York

Cc: Defense Counsel (by e-mail)