

**Haddon, Morgan and Foreman, P.C**
**Jeffrey Pagliuca**

150 East 10th Avenue
Denver, Colorado  80203
PH  303.831.7364  FX  303.832.2628
www.hmflaw.com
jpagliuca@hmflaw.com

May 12, 2021

**VIA ECF**

The Honorable Alison J. Nathan
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

Re:     Response to Government Letters dated May 4, and May 6, 2021 Regarding F.R. Crim. P.
          17(c) Subpoena, *United States v. Ghislaine Maxwell*, 20 Cr. 330 (AJN)

Dear Judge Nathan,

On March 15, 2021, Ms. Maxwell asked the Court to issue a F.R.Crim.P. 17(c)(3)

subpoena for production of evidence controlled by Boies, Schiller, and Flexner ("BSF") lawyers

working with the government on behalf of alleged (now-adult) witnesses. In her *ex-parte*

application, Ms. Maxwell provided reasons for requesting certain items of evidence, including

that the government either failed to secure the evidence or refused to produce it to Ms. Maxwell;

she also disclosed theories related to her defense, strategy, and work product.

After considering the application and BSF's response, the Court invited *comment* from

the government regarding subpoenaed items 9 (a journal), 10 (boots), and 11(photographs).

Specifically, the Court directed the government "to notify the Court of its views as to Requests 9

through 11." Dkt. 252.

The government's position is consistent with its general approach to evidence in this case

which is to blindly accept information it considers unfavorable to Ms. Maxwell, begrudgingly

The Honorable Alison J. Nathan
May 12, 2021
Page 2

produce *Brady* material with various disclaimers such as "although the government is not obligated to do so" (Dkt. 269 pp. 8, 9), and obfuscate the importance of legitimate defense requests for discovery.  The government repeatedly demonstrates that it views this process not as a search for the truth, but for a conviction at any cost, including the truth.

### Request 9, The Journal

Accuser-2 has been represented by BSF since approximately 2016. She sued Ms. Maxwell and participated in the Epstein Victim Compensation Fund. She claims to have kept a journal for a period in 1996 in which she described various events, including her interactions with Jeffrey Epstein. Seven (7) photocopied pages of this journal, two of which are the front and back covers, were selectively produced by BSF in discovery during civil litigation to counsel for Ms. Maxwell, apparently as support for her claims against Epstein. The civil litigation was stayed and ultimately dismissed prior to resolution of questions related to the failure to produce the entire journal.  Accuser-2 relied on select portions of the journal in public discussions with various representatives of the media and claims to have looked at the journal to "refresh [her] memory about this time."  *See, e.g.,* Michael Baker, "The First Women to Report Jeffrey Epstein," The Daily Podcast, NY Times (Aug. 26, 2019), Tr. at 2 ("When I was looking, trying to refresh my memory about this time, I came across this journal entry.  [Host]  [Accuser-2] has this journal from that time period.  It's a spiral journal with a picture of two sisters on the front.").[1]

When it suits its purpose, such as arguing against bail, the government touts the journal as powerful evidence, to wit, "Contemporaneous journal entries corroborate details of another

---

[1] Podcast audio and transcript located at https://www.nytimes.com/2019/08/26/podcasts/the-daily/epstein-maxwell-farmer-sisters.html?showTranscript=1.

The Honorable Alison J. Nathan
May 12, 2021
Page 3

victim's account, including the details of when, where, and how that victim came to meet

Epstein." Dkt. 100 p. 11. And, the government has signaled its intent to introduce these pages at

trial, arguing that there is no "basis for doubting the authenticity of the documents which the

Government expects that [Accuser-2] will be able to properly authenticate at trial." Dkt. 268, p.

5.

   What did, or did not, happen "about this time" and what Accuser-2 recorded, and did not

record "about this time" is relevant, exculpatory, evidence. The government admits it does not

have the remaining pages of the journal and admits that it has made no effort to read the

remaining pages of the journal. This does not stop the government, however, from expressing

baseless opinions about the journal's content, relevance, or admissibility because, in the blind

search for a conviction regardless of the truth, ignorance is indeed bliss.  The government

implies that the journal, here, has "been evaluated for *Brady* material" (Dkt. 269 p. 4) which is

not true.  Free from any actual knowledge, the government liberally makes unfounded and

misleading claims like:

- "The remainder of the diary consists of [Accuser-2's] unrelated personal diary entries;" (*Id.*, p.3)

- "[T]he diary contains no relevant material;" (*Id.*, p. 4)

- The diary is "full of [Accuser-2's] personal and unrelated information;" (*Id.*, p. 4 n.1)

- The diary is "likely to sweep in a significant period of [Accuser-2's] life before [she] met Epstein…." (*Id.*, p. 6)

The government makes additional questionable, contradictory, statements regarding the

journal. The government offers that it "understands" that the item requested is Accuser-2's

"entire diary from her teenage years." (*Id.*, p.2) The "understanding" has no factual attribution

The Honorable Alison J. Nathan
May 12, 2021
Page 4

and is belied by an "understanding" months earlier where the government represented that

Accuser-2 "stopped writing in her journal about a month after" her meeting with Epstein, Dkt.

100, p.11 n.2.

Incredibly, the government has never examined or taken possession of the journal and is

relying on the representations of lawyers adverse to Ms. Maxwell in multiple civil litigations, the

same lawyers who have taken an active role in providing the government with selective pieces of

evidence and who regularly bash Ms. Maxwell in the media, hardly a reliable source.[2]

It is fundamentally wrong to use a part of a writing to, for example, deny bail, or refresh

recollection, or as a past-recollection recorded, or as a prior-consistent statement, and at the same

time ignore the remainder of the writing.  The government should know what is in the remainder

of the journal; it simply chooses selective ignorance and relies on lawyers adverse to Ms. Maxwell

for cover. This type of selective disclosure of information is routinely rejected by courts, including

the Second Circuit Court of Appeals. Known as the "fairness doctrine," when one party makes

assertions about parts of a communication or writing the entire communication loses protected

status and requires disclosure to the opposing party. The aim of the doctrine is to protect the adverse

"party, the factfinder, and the judicial process from selectively disclosed and potentially misleading

evidence." *In re von Bulow*, 828 F.2d 94, 102 (2d Cir. 1987); *see also United States v.*

*Bilzerian,* 926 F.2d 1285, 1292 (2d Cir. 1991); *Joy v. North,* 692 F.2d 880, 893–94 (2d Cir. 1982);

*Teachers Ins. & Annuity Ass'n of America v. Shamrock Broadcasting Co.,* 521 F.Supp. 638

(S.D.N.Y. 1981).

---

[2]  As Ms. Maxwell previously pointed out, another of BSF's clients confessed to creating a fake
"diary" to sell to a tabloid news journalist, fifteen years after the fact, and while represented by
BSF.  *See* Dkt. 244 at 10 n.4.

The Honorable Alison J. Nathan
May 12, 2021
Page 5

Given that Accuser-2, the putative witness, has publicly claimed to rely on the journal to

"refresh" her memory and the government's apparent intention to introduce the pages at trial other

evidentiary principles related to fairness come into play. F.R.E. 106, the Rule of Completeness,

allows that "[i]f a party introduces all or part of a writing or recorded statement, an adverse party

may require the introduction, at that time, of any other part--or any other writing or recorded

statement--that in fairness ought to be considered at the same time."

Federal Rule of Evidence 612 is also applicable here and states:

> (a) Scope**.** This rule gives an adverse party certain options when a witness
> uses a writing to refresh memory:
>
> (1) while testifying; or
> (2) before testifying, if the court decides that justice requires the party to
> have those options.
>
> (b) Adverse Party's Options; Deleting Unrelated Matter**.** Unless 18 U.S.C.
> § 3500 provides otherwise in a criminal case, an adverse party is entitled to
> have the writing produced at the hearing, to inspect it, to cross-examine the
> witness about it, and to introduce in evidence any portion that relates to the
> witness's testimony. If the producing party claims that the writing includes
> unrelated matter, the court must examine the writing in camera, delete any
> unrelated portion, and order that the rest be delivered to the adverse party.
> Any portion deleted over objection must be preserved for the record.
>
> (c) Failure to Produce or Deliver the Writing**.** If a writing is not produced or
> is not delivered as ordered, the court may issue any appropriate order. But if
> the prosecution does not comply in a criminal case, the court must strike the
> witness's testimony or--if justice so requires--declare a mistrial.

The witness has admitted using the journal to refresh her memory. Title 18 of U.S. Code

§ 3500 is inapplicable here by its very terms because the remainder of the journal is, admittedly,

not in the possession of the government.  *See* 18 U.S.C. § 3500(a) (applies exclusively to

statements "in the possession of the United States"); *see also United States v. Bin Laden,* 397 F.

Supp. 2d 465, 491 (S.D.N.Y. 2005) ("The statute thus establishes three essential elements

The Honorable Alison J. Nathan
May 12, 2021
Page 6

of 3500 Material: (1) a statement by the witness, (2) in the possession of the United States, (3) that relates to the subject matter of the witness's testimony.").

    This case now involves a ten-year time period beginning 27 years ago. The indictment and the accusers are vague regarding when things happened, what things happened and who may have been present when anything is alleged to have happened. Accuser-2's journal contains dated entries that place events in context with other alleged events.  Accuser-2's journal from 1996 purports to document encounters with Epstein in New York. The S2 indictment, paragraph 9(b), claims that "Maxwell interacted with [Accuser-2] on at least one occasion in or about 1996 at Epstein's residence in New Mexico…."  The journal references other dates, places, and events in 1996. The absence of any mention of Ms. Maxwell in context with other recorded events is both relevant and exculpatory.

    As a piece of physical evidence, the journal is subject to inspection and testing. *See* F. R. Crim. P. 17(c)(1).  Moreover, were the journal in the possession of the government it would be subject to inspection under F. R. Crim. P. 16 (a) (1) (E) which provides, in relevant part:

> Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
>
> (i) the item is material to preparing the defense;
>
> (ii) the government intends to use the item in its case-in-chief at trial[.]

    To avoid any disclosure obligations, the government has simply accepted partisan photocopies of five substantive pages without questioning the provenance of an exhibit it intends to introduce at trial. Comparison of one of the five pages demonstrates the problem. Attached as exhibit A is a photocopy of a journal entry first produced during the civil litigation. A photocopy

The Honorable Alison J. Nathan
May 12, 2021
Page 7

of the same entry, produced in the criminal discovery and attached as exhibit B, is obviously, and noticeably, different. The remaining six pages are identical except for the identifying bate ranges. Examination of the original document would answer legitimate questions about whether the document has been manipulated, altered, or fabricated. Disclosure of the document in advance of trial would prevent the unnecessary delay of having a qualified forensic document examiner take possession of the document, run tests, and offer an opinion during the middle of trial.

### Request 10, the Boots

The Court directed the government "to notify the Court of its views" regarding item 10. Instead of notifying the Court of its "views" the government, however, has taken steps to circumvent the pending defense subpoena request; it is "working to moot request 10" by having the FBI secure the boots, Dkt. 269, p.2.  This is an interference with Ms. Maxwell's ability to investigate her defense without interference from the government.  Ms. Maxwell's original request was *ex parte*, now the government is taking possession of the very things subject to Ms. Maxwell's subpoena.  The government's actions demonstrate a willingness to take control of evidence when it is tactically advantageous to do so but resist disclosure when it is not. Ms. Maxwell requests that the court order production of the boots to her lawyers pursuant to the subpoena, not to the government.

### Request 11, the Photographs

Regarding item 11, the photographs, the government offers inconsistent and illogical positions. In its letter of May 4, 2021, the government first advised the Court that it obtained "copies of the complete set of requested photographs" which it then produced to the defense. Two days later it admitted that "some of the original photographs are currently in the Prosecution Team's possession" and that it would "make them available to the defendant upon request."

The Honorable Alison J. Nathan
May 12, 2021
Page 8

(Dkt. 271, p.1) Tripping over its own largess, the "Prosecution Team" neglected to mention that Ms. Maxwell and her lawyers traveled to New York to review *all* of the physical evidence, including original photographs, in person, at considerable expense from April 12 to April 16, 2021. The government does not explain which original photographs it has in its possession nor does it offer any reason why these photographs were not made available "upon request." Attempts to confer with the government to explain these discrepancies have gone unanswered for days.

Photocopies, in most cases, (and most certainly in this case) are not adequate substitutes for originals, particularly when the photocopies are produced by lawyers adverse to Ms. Maxwell, were not collected by law enforcement directly from the source, and are subject to manipulation. Any original photographs will have markings that identify when the film was developed and other indicia indicating whether they are genuine or not. Again, like the journal, the government has outsourced the fact and truth finding function regarding the photographs to partisan advocates. If the government possessed the originals Ms. Maxwell would have the Rule 16 right to inspect them, just like the many photographs she inspected between April 12 and April 16, 2021.

Finally, the government devotes much of its submission attempting to bait Ms. Maxwell into revealing defense strategy and work product. Ms. Maxwell is happy to address any questions regarding relevance and admissibility *ex-parte* should the Court need any additional information.

Respectfully Submitted,

Jeffrey S. Pagliuca

CC: Counsel of Record (via ECF)

# EXHIBIT A

82   I'm so exited. Maria's Boss bought
me a tickets to come out + see
her - it has been almost a year - scary.
He is very wealthy + might help
me get into or pay for college.
I don't want to get my hopes
up because I hate dissapointment
but it would be really cool it
it happened + even if it doesn't
it is so great I get to go see
her.

# EXHIBIT B

88) I'm so excited. Maria's Boss bought me a ticket to come visit + see her. It has been almost a year x a ½. He is very wealthy + might help me get into or pay for college. I don't want to get my hopes up because I hate disappointment but it would be really cool it it happened + even it it doesn't it's so great I get to go see her.

CONFIDENTIAL