

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

December 15, 2021

The Honorable Alison J. Nathan
United States District Court
Southern District of New York
United States Courthouse
40 Foley Square
New York, New York 10007

Re:   *United States v. Ghislaine Maxwell*, S2 20 Cr. 330 (AJN)

Dear Judge Nathan:

The Government respectfully submits this motion to preclude certain testimony of certain defense witnesses. After reviewing the defendant's witness list and related material, it appears that certain witnesses are expected to testify about matters that are irrelevant, prejudicial, or improper impeachment.

Specifically, the Government moves to preclude the following:

- Testimony from Eva Dubin, Michelle Healy, or Kelly Bovino about whether they participated in a sexualized massage with Jane;

- Testimony from Alexander Hamilton as contained in the affidavit attached as Exhibit A;

- Testimony from Dr. Loftus about suggestive activities that did not occur in this case;

and

- Testimony from John Lopez about undisclosed exhibits.

**I.     Applicable Law**

Federal Rule of Evidence 402 provides that "[i]rrelevant evidence is not admissible." Accordingly, any evidence that does not bear on the defendant's guilt or innocence of the charges in the indictment should be excluded as irrelevant. Rule 403 further states that the Court may "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

As a general matter, "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." Fed. R. Evid. 608(b). The Rules permit extrinsic evidence for "other grounds of impeachment (such as contradiction, prior inconsistent statement, bias, and mental capacity)." *United States v. Johnson*, 469 F. Supp. 3d 193, 227 (S.D.N.Y. 2019) (quoting Fed. R. Evid. 608(b) Advisory Committee Notes). But even then, "[e]xtrinsic evidence offered for impeachment on a collateral issue is properly excluded." *United States v. Purdy*, 144 F.3d 241, 245-46 (2d Cir. 1998); *see United Sates v. Dore*, No. 12 Cr. 45 (RJS), 2013 WL 3965281, at *6 (S.D.N.Y. July 31, 2013) (Sullivan, J.) ("[T]he Second Circuit has held . . . that introduction of extrinsic proof of a prior inconsistent statement is only appropriate as it relates to matters which are not collateral, *i.e.*, as to those matters which are relevant to the issues in the case and could be independently proven." (internal quotation marks omitted)).

Specifically, while the doctrine of "impeachment by contradiction . . . operates as a limited

2

exception to Rule 608(b)," *United States v. Ramirez*, 609 F.3d 495, 499 (2d Cir. 2010) (internal quotation marks omitted), it is permitted in only narrow circumstances. As an initial matter, impeachment by contradiction is only available when a witness "in his direct testimony falsely states a specific fact." *United States v. Garcia*, 900 F.2d 571, 575 (2d Cir. 1990) (emphasis added); *see also Ramirez*, 609 F.3d at 500 n.1 (explaining the Court's "reluctan[ce] to extend" the impeachment-by-contradiction doctrine to the situation where the testimony to be contradicted is first elicited on cross-examination); *United States v. Benedetto*, 571 F.2d 1246, 1250 (2d Cir. 1978) (impeachment by contradiction available after a witness testifies to a "specific fact *on direct testimony*" (emphasis added)); Wright & Miller, Fed. Prac. & Procedure § 6119 (explaining that "if the cross-examiner is able to open the door for himself on cross, this would undermine the exclusionary rules avoided, such as Rule 608(b)"). Accordingly, if a party elicits a statement on cross-examination that did not come out on direct examination, the party is bound by the answer and may not offer extrinsic evidence to contradict it. *See United States v. Crowley*, 318 F.3d 401, 416 (2d Cir. 2003) (explaining that defense counsel could inquire on cross about alleged false accusations by a victim whose credibility was "obviously a critical issue at trial," but could not offer extrinsic evidence to refute denials); Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 608.22[1] (2d ed. 1997) (noting that, under Rule 608(b), if a witness denies having engaged in alleged untruthful conduct on cross-examination, "the examiner must take (or is bound by) the witness's answer"). Impeachment by contradiction, like other bases of impeachment, is not available "on a collateral issue." *United States v. Watts*, No. 10 Cr. 627 (KAM), 2013 WL 5423748, at *28 (E.D.N.Y. Sept. 26, 2013) (internal quotations omitted).

### II. The Court Should Preclude Testimony by Eva Dubin, Michelle Healy, or Kelly Bovino About Sexualized Massages with Jane

It appears that the defendant seeks to offer testimony from Eva Dubin, Michelle Healy, and Kelly Bovino that they did not participate in sexualized massages with Jane. This testimony would not contradict Jane's testimony at all. But even if it did, such contradiction is impeachment about a collateral matter through extrinsic evidence, and it is impeachment of supposedly contradictory statements made on cross examination, rather than on direct examination, each of which renders impeachment improper. Such testimony should be precluded.

#### A. Factual Background

On cross-examination, the defense asked Jane a series of questions about what she had told the Government about other participants in group sexual encounters with Epstein and the defendant. Tr. 523-24. In the course of that testimony, Jane confirmed that she "told the Government" there was "a woman named Eva" who "joined in" with another woman. Tr. 525-26. She also "remembered" another participant "named Michelle," who was "short." Tr. 526-27. And finally, Jane "remembered" a participant "name Kelly," whose last name Jane also "remembered," and who Jane thought was "a model who was older than [Jane]." Tr. 527.

Defense counsel confirmed that Jane told the Government that Jane thought she could recognize photos of at least a few of the participants, but the Government had not shown her photos of Eva, Michelle, or Kelly. Tr. 527, 530. Despite this line of questioning, defense counsel did not show Jane photos on the stand or ask Jane for last names of any of these individuals or any other identifying information.

#### B. Discussion

The Government expects that the defendant plans to call Eva Dubin, Michelle Healy, and

4

Kelly Bovino to testify that they did not participate in group sexualized massages with Jane, Epstein, and the defendant. The Court should preclude this testimony, which does not contradict Jane's, and is in any event improper impeachment about a topic of cross-examination that is collateral to the case.

*First*, the anticipated testimony does not contradict Jane's. Jane testified that she had told the Government that she remembered group sexualized massages involving "Eva," "Michelle," and "Kelly." Defense counsel did not ask Jane, and Jane did not testify, that these people were Eva Dubin, Michelle Healy, or Kelly Bovino. The defense had an opportunity to elicit specific names or identities from Jane, such as by eliciting a last name or pointing to a photograph, but they chose not to do so. Indeed, defense counsel elicited no description of Eva, and only elicited that Michelle was "short." (Tr. 527). With respect to Kelly, defense counsel only asked whether Jane told the Government that Kelly was an older model whose last name Jane knew—but then chose not to elicit that last name. (*Id.*)

Having failed to develop the record, defense counsel cannot now attempt to impeach Jane's testimony by calling specific individuals they claim are Eva, Michelle, and Kelly. Indeed, as defense counsel is aware, Jane had previously been asked in meetings with the Government about Eva Dubin, and she answered that she knew Dubin and "does not remember DUBIN being involved in massages." *See* 3509-020 at 1. That is, Jane knows who Eva Dubin is and has denied that Eva Dubin was involved in sexualized massages. *See id.*[1] Testimony from Eva Dubin that

---

[1] In her interviews with the Government, Jane has not always agreed that another "Eva" exists who participated in massages, as she testified on the stand. *Compare* 3509-008 at 4 (recalling that Eva would join in) and 3509-009 at 7 (unclear notation in the notes underlying 3509-008 about the name of the person who joined the massage) *with* 3509-020 at 2 (not recalling another Eva). But Jane has been consistent in saying that she knows Eva Dubin and that Jane had no personal

she did not engage in sexualized massages with Jane therefore in no way contradicts Jane's testimony.

Similarly, attempting to identify Michelle Healy as the "Michelle" Jane mentioned lacks a basis in the record. Michelle Healy was far from the only Michelle in the defendant and Epstein's world. For instance, the list of masseuses in the exhibit marked for identification as Government Exhibit 417 includes three entries for various people named Michelle, none identified with the last name Healy. And although Jane has previously told the Government that Kelly Bovino was involved in group sexualized encounters with her, she did not so testify under oath, and that fact was not put before the jury. Contrary testimony now from Kelly Bovino would only confuse the jury, and not contradict any of Jane's testimony.[2]

*Second*, even if the anticipated testimony did impeach Jane's testimony, it does so only on a collateral matter, namely, Jane's adult sexual activity. The only time marker the defendant elicited in connection with any of Eva, Michelle, or Kelly is testimony that Jane knew Michelle while Jane was living in New York. (Tr. 533). As Jane testified on direct, she moved to New

---

knowledge of sexualized massages involving Eva Dubin. *See* 3509-008 at 7 (explaining that Jane was "not sure if [the Eva on the flight records—that is, Eva Dubin] was part of the massages"); 3509-020 (explaining that Jane "does not remember DUBIN being involved in massages").

[2] Even if the defense had elicited the last names of the individuals Jane had in mind, their testimony still would not contradict Jane's. Defense counsel asked Jane whether she *told the Government* about Eva, Michelle, and Kelly. Jane was not asked, and did not testify, that these individuals in fact participated in the group sexualized massages. If Dubin, Healy, and Bovino testify that they did not, it in no way contradicts Jane's testimony about what she did and did not tell the Government in a prior interview. Although defense counsel asked Jane whether Eva and Kelly— but not Michelle—could confirm Jane's "story," those questions were continuations of counsel's questions regarding what Jane had told the Government in earlier interviews. (Tr. 526 ("You said [Eva] joined in with Sophie? . . . . She knew the routine? . . . So she could also confirm your story?"); Tr. 527 ("And you told the government [Kelly] could back up what you were talking about, right?").

York when she was 17 to attend Professional Children's School. (Tr. 349).

Jane's sexual activity when she was an adult is entirely collateral to this case. Consistent with Rule 412, the parties could not have offered independent evidence about who else participated in Jane's sexual activity over the age of consent. *See Dore*, 2013 WL 3965281, at *6 (defining "matters which are not collateral" as "those matters which are relevant to the issues in the case and could be independently proven."). Accordingly, as the Government explained as part of the litigation over Rule 412, the Government offered only brief testimony on direct about Jane's relationships after the age of consent in order to conclude the narrative. (*See* 11/10/21 Tr. at 160). Specifically, the Government asked about five questions establishing that, after Jane moved to New York and turned 18, she spent time with the defendant and Epstein and continued engaging in sexualized massages. (Tr. 349-50).

The defendant proposes to do something quite different. The anticipated testimony is, at least in part, an attempt to substantively impeach Jane on the identities of individuals with whom she had adult sexual contact. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Both are not relevant or subjects of independent proof in this case—they are collateral.

*Third*, even if the anticipated testimony did impeach Jane, and even if the testimony were about a non-collateral matter, it is impeachment by contradiction of a fact elicited on cross-examination. This is precisely the sort of impeachment that the rules are intended to prohibit. Absent Jane's testimony on cross, it would be irrelevant and improper for the defendant to call witnesses to say that they did *not* have sexual activity with Jane and the defendant. Through

7

leading questions about what Jane told the Government, the defendant has attempted to establish a basis for impeachment by contradiction. As the Second Circuit explained in *Ramirez* and as Wright & Miller agree, it undermines the Federal Rules of Evidence to use cross to open a door to put extrinsic evidence before the jury that is otherwise prohibited by those Rules. *See Ramirez*, 609 F.3d at 500 n.1; Wright & Miller, Fed. Prac. & Procedure § 6119. The Court should not permit it.

### III. The Court Should Preclude Testimony by Alexander Hamilton As Captured By His Affidavit

The defendant intends to call Alexander Hamilton and, in Rule 26.2 discovery, produced an affidavit from him that is attached as Exhibit A. This appears to be the signed declaration the defense referenced on cross of Kate, in which the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ None of the topics in the affidavit are admissible evidence, and the Court should preclude testimony from Hamilton along those lines.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*Second*, the affidavit says that Kate was a "coke head." (Ex. A ¶ 14). Kate already testified that she was addicted to cocaine during the relevant time period. Tr. 1205. This evidence is therefore not impeaching as to the relevant time period. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

8

█████████████████████████████

█████████████████████████████

███████████████████

████████████████████████

█████████████████████████████

█████████████████████████████

██ █████████████████████████

█████████████████████████

██████████



████████████████

███████████

████████████████████████████
████████████████████████████
████████████████████████████
████████████████████████████

██████████████████████

████████████████

████ ██████████████████████

---

[3] When the defense did ask Kate about these statements on the stand, ██████████████ To the extent Hamilton's testimony on this point is offered as a prior inconsistent statement of Kate's, she was not given an opportunity to deny it, as required by Rule 613(b).

▇▇▇▇▇▇▇▇ Just as extrinsic evidence on this point was improper during Kate's cross, so it is improper now.

*Finally*, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇ Hamilton's rank speculation about Kate's motives and intent are not probative of any issue in the case.

The remainder of the affidavit is simply background information about Hamilton and his relationship with Kate. Accordingly, the affidavit reflects no admissible testimony that Hamilton might offer, and he should be precluded from testifying to its contents.

### IV. The Court Should Preclude Testimony from Dr. Loftus That Does Not Fit the Facts of the Case

The Government understands that the Court has ruled that Dr. Loftus may testify and is not seeking to relitigate that issue. However, in reviewing transcripts of Dr. Loftus's testimony in other trials, it appears that Dr. Loftus has testified about the suggestive effects of (a) the use of leading questions by Government investigators and (b) pressure from therapists to provide more details about prior experiences (known as "response pressure"). Although it is unclear precisely what "suggestive activities" Dr. Loftus will discuss while on the stand, she should be precluded from any testimony about activities which do not fit the case.

As the Court has concluded, "one aspect of the Rule 702 and *Daubert* inquiry is 'fit,' which asks 'whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.'" (11/22/21 Mem. Op. & Order at 4). For an expert opinion to "fit," the opinion must "assist the jury's decision on a relevant question of fact . . . ." (*Id.*); *see* Fed. R. Evid. 702 advisory committee notes (explaining that generalized testimony must

10

"'fit' the facts of the case"). "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than over lay witnesses." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 595 (1993) (internal quotation marks and citations omitted).

Dr. Loftus has elsewhere testified that leading questions by the Government and response pressure can create suggestive memories. But at no time has the defendant elicited testimony from Jane, Kate, Carolyn, or Annie that they were asked such questions or subject to such pressure. Accordingly, testimony from Dr. Loftus on that point does not fit the facts of the case and has no probative value. It also would substantially prejudice the Government by suggesting to the jury—without evidence—that the Government or a therapist manufactured false memories in the Minor Victims. Dr. Loftus's opinion on suggestive activities therefore should not contain testimony about Government questioning or response pressure exerted by therapists.

V. **The Court Should Preclude Testimony from John Lopez About Undisclosed Exhibits**

Finally, the Court should preclude testimony from John Lopez about undisclosed exhibits. Lopez is expected to testify about financial records in the case. Although the defendant sent a letter purporting to notice Lopez as an expert witness in an abundance of caution, the Government understands from conferring with the defense that the defendant does not plan to elicit expert testimony from him.[4]

---

[4] The Government has also received no supplemental expert notice for Lopez. As the Government explained in its motion to preclude expert testimony from Lopez, the original expert notice was insufficient.

11

The Government has no objection to fact testimony from Lopez about the admitted exhibits. On December 13, however, defense counsel informed the Government that they may receive and produce financial records about which they would ask John Lopez to testify. Such records have not been produced to the Government as of the time of this letter. The Court should not permit the defense to produce and introduce additional financial records between now and Lopez's testimony. The account statements showing the financial transactions that the Government proved at trial were all produced to the defense more than a year before trial. Production of new exhibits at this late date would violate Rule 16 and would likely prejudice the Government.

### VI. Conclusion

For the reasons set forth above, the Court should deny the defendant's motion.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: ___s/_____
    Maurene Comey
    Alison Moe
    Lara Pomerantz
    Andrew Rohrbach
    Assistant United States Attorneys
    Southern District of New York

Cc: Defense Counsel (by e-mail)