

**Haddon, Morgan and Foreman, P.C**
**Jeffrey S. Pagliuca**

150 East 10th Avenue
Denver, Colorado  80203
PH  303.831.7364
FX  303.832.2628
www.hmflaw.com
jpagliuca@hmflaw.com

November 15, 2021

**VIA EMAIL**

The Honorable Alison J. Nathan
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

Re:     *United States v. Ghislaine Maxwell*, 20 Cr. 330 (AJN)

Dear Judge Nathan,

Pursuant to the Court's November 1, 2021, Order we write in response to the government's letter of November 12, 2021 to note our good faith objections to categories of alleged co-conspirator hearsay statements and representative examples[1]:

Category 2, "Statements made by Jeffrey Epstein to his employees" appears to  relate primarily to statements that post-date any alleged conspiracy. The last overt act alleged in the S-2

---

[1] In its November 12, 2021 letter to the Court, the government apparently misunderstands, and overstates, its understanding of the Defendant's position regarding the proffered statements. To be clear, Ms. Maxwell is not agreeing to the admission of any statements proffered by the government under Fed. R. Evid. 801(d)(2)(E) for many reasons including the fact that she was not a member of any conspiracy as alleged in the indictment. Ms. Maxwell understood that, in her conferral letter to the government, she was identifying her good faith objections given established Second Circuit procedures governing the admissibility of the proffered statements. Ms. Maxwell will object, at trial, to any proffered statement when appropriate.

The Honorable Alison J. Nathan
November 15, 2021
Page 2

Indictment occurred in 2004. It is Ms. Maxwell's position that any post-2004 statements by Epstein or other alleged co-conspirators were not in furtherance of any conspiracy at issue in this case.

The first exemplar is a statement allegedly from Epstein to CC-1 claiming that Ms. Maxwell "used to find girls for him." This statement, or statements like it, cannot have been made either in the course of or in furtherance of any conspiracy at issue here and are no more than "idle chatter." Casual conversation about "past events," "idle chatter" between co-conspirators, or "merely narrative descriptions by one coconspirator of the acts of another" do not qualify as statements in furtherance of the conspiracy. *United States v. Heinemann*, 801 F.2d 86, 95 (2d Cir. 1986); *United States v. Lieberman,* 637 F.2d 95, 102 (2d Cir.1980) (challenged testimony "smack[ed] of nothing more than casual conversation about past events. It is difficult to envision how it would have furthered the conspiracy.").

During 2005, according to the witness, she, Sarah Kellen, and ▮▮▮▮▮▮ (and others) were actively involved in soliciting females for Jeffrey Epstein. At that point there was no need for Epstein to encourage anyone to do anything. Allegedly saying that Ms. Maxwell "used to do something" is not "encouragement" or "enhancement of usefulness" or "reassurance." Moreover, it is an evidentiary stretch to reach the conclusions attached to the alleged statement by the government. Assuming that CC-1 is remembering a 17-year-old statement accurately, to reach the conclusion that it was done in furtherance of the conspiracy charged in the S-2 Indictment requires a speculative and subjective interpretation of why Epstein said what he said. The entire quote from the proffer is telling. According to the FBI 302, bate

page 3524-013, page 3 of 8, on May 14, 2021, after being interviewed multiple times, the witness said:

> EPSTEIN noted once that when he and Maxwell dated that MAXWELL would bring more girls for threesomes, saying they were sexual relationships. ▮▮▮ did not recall when or where EPSTEIN said this to her. EPSTEIN told ▮▮▮ that MAXWELL brought him girls.

The witness continued discussing her "impressions" of the conversation. Nothing in her "impressions" about this conversation relate to Epstein using the discussion to further any conspiracy. The witness does not indicate that any of the "girls" were underage. The witness further advised that during the time she worked for Epstein "she did not get the sense that he and MAXWELL were still in a romantic relationship." *Id*. Accordingly, the context of the statement reflects that anything said by Epstein was "idle chatter" and not something in furtherance of any conspiracy.

The Court should also exclude this statement under Fed. R. Evid. 403 because the probative value of the statement is substantially outweighed by the prejudicial impact to Ms. Maxwell. Epstein is dead and not subject to cross examination. It is not clear by the proffer what Ms. Maxwell "used to do." The witness could speculate that Epstein meant solicit underage females but the evidence at trial will establish that Ms. Maxwell hired a number of employees for Epstein prior to 2004. The statement is overly prejudicial especially when viewed in the context of the other evidence that the government claims it will produce at trial, i.e., direct statements from accusers that Ms. Maxwell recruited them. This post-hoc statement attributed to Epstein by a cooperating witness (17 years later) will be used by the government to argue that Epstein admitted that Ms. Maxwell was a co-conspirator. Given the weak foundation for the alleged statement the Court should exclude it. At a minimum, the Court should review the circumstances

The Honorable Alison J. Nathan
November 15, 2021
Page 4

surrounding the statement during the trial and evaluate admissibility prior to any attempt by the government to introduce the statement. The government should be instructed that it cannot discuss the alleged statement in its opening remarks.

Similarly, the second example concerns direction from Epstein and CC-2 to CC-1 to "help someone who was coming to take the computers…." Again, this statement does not appear to be during or in furtherance of any conspiracy alleged in the indictment. *See Lutwak v. United States*, 344 U.S. 604 (1953); *Krulewitch v. United States*, 336 U.S. 440 (1949). The government now seems to concede this point, falling back on the time honored "effect on the listener" and therefore not offered for the truth of the matter exception to the hearsay rule. The problem with the government's position, however, is that the statement and subsequent actions are not relevant to any material issue in this case. The apparent point of the proffered evidence is to demonstrate that, in 2005, Epstein was extracting his computers in advance of the search and thus may have had some guilty knowledge. Ms. Maxwell is not charged with tampering or obstruction and Epstein's motives for allegedly directing CC-1 to do something with his computers is not relevant to whether Ms. Maxwell conspired to do the things alleged in the indictment. Again, any probative value associated with this action is substantially outweighed by the prejudice to Ms. Maxwell who was not present, did not participate, and had no knowledge of either the statement or the acts.

The Honorable Alison J. Nathan
November 15, 2021
Page 5



Respectfully submitted,

Jeffrey S. Pagliuca
Laura A. Menninger
HADDON, MORGAN & FOREMAN P.C.
150 East 10th Avenue
Denver, CO 80203
Phone: 303-831-7364

Christian R. Everdell
COHEN & GRESSER LLP
800 Third Avenue
New York, NY 10022
Phone: 212-957-7600

Bobbi C. Sternheim
Law Offices of Bobbi C. Sternheim
225 Broadway, Suite 715
New York, NY 10007
Phone: 212-243-1100

*Attorneys for Ghislaine Maxwell*