

**Haddon, Morgan and Foreman, P.C**
**Jeffrey S. Pagliuca**

150 East 10th Avenue
Denver, Colorado  80203
PH  303.831.7364
FX  303.832.2628
www.hmflaw.com
jpagliuca@hmflaw.com

December 6, 2021

**VIA Email**

The Honorable Alison J. Nathan
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

    Re:    *United States v. Ghislaine Maxwell*, 20 Cr. 330 (AJN)

Dear Judge Nathan,

    I write in response to the government's untimely disclosure of expert opinion testimony to be offered by Computer Forensic Examiner Stephen Flatley of the Federal Bureau of Investigation's Computer Analysis Response Team. As explained below, this Court should preclude Examiner Flatley from offering the newly-disclosed expert opinion testimony—everything newly disclosed in the November 26 disclosure, the December 3 email, or the December 5 email.

## BACKGROUND

    On September 15, the government wrote to Ms. Maxwell's counsel to describe the testimony it expected to elicit from Examiner Flatley. The government insisted Examiner Flatley would not offer expert opinions. Instead, the government claimed Examiner Flatley would offer fact testimony about the steps he took to extract and clone certain devices seized under a search warrant. This was the full description of the expected testimony:

> The Government anticipates that, if called as a witness, Examiner Flatley will testify about his extraction of devices seized pursuant to court-authorized search

The Honorable Alison J. Nathan
December 6, 2021
Page 2

> warrants; user information associated with certain of those devices; and documents and photographs extracted from certain of those devices. The Government further anticipates that Examiner Flatley will also testify that some of the devices on which he performed extractions were clones of device extractions that had previously been performed by someone else.

Gov. Sept. 15, 2021 Letter.

On November 26, after the pretrial conference, the government sent a new letter to defense counsel. Despite the substance Examiner Flatley's expected testimony, the November 26 letter continued the refrain that Examiner Flatley was not going to offer expert opinions. Said the government:

> The Government anticipates that Examiner Flatley will testify regarding the forensic examination of the devices marked for identification as Government Exhibits 54 and 55, and his determination that those exhibits are clones. He is expected to testify that a clone is an exact copy of one piece of media to another. Examiner Flatley is expected to explain that he connected Government Exhibits 54 and 55 to a write blocker and subsequently imaged, or made an exact copy, of the exhibits. The Government anticipates that Examiner Flatley will explain that the images of Government Exhibits 54 and 55 are exact copies of the original devices because he ran a hash, or mathematical algorithm that uniquely identifies data, on the original devices and the images, which are identical.
>
> The Government further anticipates that Examiner Flatley will testify that Government Exhibits 405 and 419 reflect registry software information for Government Exhibits 55 and 54, respectively. Examiner Flatley will explain that such registry software information includes several fields, including registered organization and registered owner, which are user input data. He is expected to explain that Government Exhibits 405 and 419 were generated by Access Data AD Lab.
>
> The Government further anticipates that Examiner Flatley will testify that he examined certain exhibits contained on the devices marked for identification as Government Exhibits 54 and 55. In particular, he is expected to testify that Government Exhibits 412, 415, and 424 are emails on Government Exhibit 54; Government Exhibits 418, 420, 421, and 422 are Word documents on Government Exhibit 54; and Government Exhibits 418B, 420B, 421B, and 422B contain the properties, or metadata, for the corresponding exhibits. Examiner Flatley is expected to testify that Government Exhibits 418, 420, 421, and 422 were created under a user profile named "gmax." He is also expected to testify that Government Exhibit 417 is a Word document stored on Government Exhibit 55. Examiner

The Honorable Alison J. Nathan
December 6, 2021
Page 3

> Flatley is expected to testify that that the metadata fields listed on Government Exhibits 417, 418, 420, 421, and 422 are true and accurate reflections of the metadata properties for those files, such as the fields listing the author, content created date, date last saved, last saved by, and last printed. Examiner Flatley will explain that he confirmed the accuracy of metadata fields by running Access Data AD Lab. In the course of doing so, Examiner Flatley will explain that metadata is information about a file, such as the file name and when the file was created. He will also explain that metadata can be stored in a computer's file system or embedded inside certain files, like Word documents.

Gov. Nov. 26, 2021 Letter.

Next, at 12:10 a.m. on December 3, the government provided yet another disclosure, in the form of email notes apparently taken by Ms. Pomerantz during a December 2 meeting with Examiner Flatley:

> December 2, 2021 Meeting with Flatley
> Pomerantz
> McKay
> Young
>
> - GX 332 is a picture off of a compact disk or CD; GX 332 was copied from compact disk onto a computer; when copy file from CD onto another computer, computer will reset the created date to the date it was copied; access date was empty because CD did not have an access date; operating system put date and time that file was copied onto that computer; SF confirmed GX 332B is metadata of photo on computer to which photo was copied from compact disk
> - Once a file is burned onto a CD, can't unburn it
> - On original CD, created date would be the same date as the modified date
> - Cannot tell when photograph was taken from info on GX 332B; May 7, 2002 is when put on CD or put on computer and burned onto CD
> - User accounts on GX 54: 3 total; 2 are default (guest, administrator); third is ghislaine; default and admin logins were zero; over 400 ghislaine logins
> - gmax1@mindspring.com on all emails SF saw on GX 54
> - Prepared for trial testimony

Finally, at 11:17 p.m. last night (December 5), the government disclosed yet more expert opinions from Examiner Flatley, again in the form of notes apparently taken by Ms. Pomerantz.[1]

> December 5, 2021 Call with Flatley
> Pomerantz
> Young
>
> - Checked registry file called SAM file which documents users on machine, has identifiers for the users; checked Access Data's AD Lab
> - Re-checked 3 user accounts on GX 54: for guest account, zero logins; for administrator account, approximately 30 logins; ghislaine logins: 390 logins

If there were any doubt before, the government's midnight disclosure puts to bed the notion that Examiner Flatley does not intend to offer expert opinion testimony.

As elaborated below, this Court should exclude any opinion testimony first disclosed to Ms. Maxwell in the November 26 letter, the December 3 email, or the December 5 email.

## ARGUMENT

In substance and in brief, here's what the government's November 26, December 3, and December 5 disclosures reveal about the intended substance of Examiner Flatley's testimony, who is expected to testify *tomorrow*, December 7.

- **November 26**: Examiner Flatley will testify that Exhibits 54 and 55 are clones, *i.e.*, exact copies, of seized devices. He will testify how he cloned them and how he's sure Exhibits 54 and 55 are clones. He will testify that other exhibits (documents, photos, emails) were extracted from the clones. He will testify that certain of these were created under the username "gmax." He will opine about metadata, what it is, and what the metadata on these extracted documents, photos, and emails shows. He will testify that he verified the accuracy of the metadata and how he did so.

---

[1] Defense counsel conferred with Ms. Pomerantz on Friday, December 3 about this issue, after receiving the government's midnight disclosure from that day but before the government made yet another untimely disclosure late last night.

The Honorable Alison J. Nathan
December 6, 2021
Page 5

- **December 3**: Examiner Flatley will explain metadata and its significance. He will opine that a photo cannot be "unburned" from a CD. He will explain the difference between and significance of a "created date" and a "modified date." And he will opine about the three user accounts on Ex. 54 (guest, administrator, Ghislaine). All of this is expert opinion subject to Rule 702.

- **December 5**: Examiner Flatley will testify about the metadata he examined (registry files and user account data) to be able to opine about the number of times "ghislaine" or the "administrator" logged in to GX54.

All of this is newly and untimely-disclosed expert opinion testimony.

Testimony defining metadata and translating extracted metadata for the jury is expert opinion testimony under Rule 702. *In re Digital Music Antitrust Litig.*, 321 F.R.D. 64, 85 (S.D.N.Y. 2017) ("However, as described above, Mr. Read's analysis involved using a forensic tool to convert Plaintiffs' Digital Music metadata into data readable in an Excel spreadsheet, reviewing hundreds of data fields, and performing a comparative analysis. Plaintiffs make no showing that a lay person could have performed any of these tasks without specialized knowledge or training. Furthermore, various courts have rejected assertions that an expert "does not really offer expert testimony, in the sense that he has done no more than run a search that any lay person could run," where, as here, the expert "offers expertise beyond that of the typical lay juror" that "would therefore be helpful to a jury." (citing *Marten Transp., Ltd. v. Plattform Advert., Inc.*, 184 F.Supp.3d 1006, 1010 (D. Kan. 2016); *United States v. Ganier*, 468 F.3d 920, 926 (6th Cir. 2006) ("The average layperson today may be able to interpret the outputs of popular software programs as easily as he or she interprets everyday vernacular, but the interpretation [the expert] needed to apply to make sense of the software reports is more similar to the specialized knowledge police officers use to interpret slang and code words used by drug dealers."))).

The Honorable Alison J. Nathan
December 6, 2021
Page 6

The government did not timely disclose Examiner Flatley's expert opinions, waiting until November 26, December 3, and late last night to make the disclosures. Under Rule of Criminal Procedure 16(d)(2), this Court can exclude these opinions.

Rule 16(d)(2) says:

(2) Failure to Comply. If a party fails to comply with this rule, the court may:

(A) order that party to permit the discovery or inspection; specify its time, place, and manner; and prescribe other just terms and conditions;

(B) grant a continuance;

(C) prohibit that party from introducing the undisclosed evidence; or

(D) enter any other order that is just under the circumstances.

Fed. R. Crim. P. 16(d)(2).

"[T]he government . . . violate[s] Rule 16 if it . . . call[s] expert witnesses who were not timely disclosed." *United States v. W.R. Grace*, 526 F.3d 499, 516 (9th Cir. 2008) (en banc). "When the government has failed to comply with Rule 16, the district court has broad discretion to determine what remedial action, if any, is appropriate." *United States v. Miller*, 116 F.3d 641, 681 (2d Cir. 1997). "It is well-settled that a court may in its discretion preclude expert examination pursuant to Rule 16(d)(2)(C) of the Federal Rules of Criminal Procedure regarding any topics or opinions not properly disclosed." *United States v. Mahaffy*, No. 05CR613(S-3)(ILG), 2007 WL 1213738, at *2 (E.D.N.Y. Apr. 24, 2007). "A court may preclude the testimony as a whole, or any part that it determines was not properly disclosed to the [defense]." *Id.* "Even if the disclosure provides a sufficient summary of any opinions to be offered by the witness, it may be excluded if the [party] has made no attempt at all to describe the bases and reasons for those opinions." *Id.*

The Honorable Alison J. Nathan
December 6, 2021
Page 7

This Court should preclude the government from eliciting Examiner Flatley's expert opinion. As this Court explained to the government at the pretrial conference when Ms. Maxwell first raised this issue with the Court:

> Well, I mean, [the government's] notice should provide the opinions that [Examiner Flatley's] going to offer. . . .
>
> It's not a scavenger hunt. You're required, as the first matter, to provide, pursuant to Rule 16, the opinions that he's going to offer.
>
> . . .
>
> If your notice is insufficient under Rule 16 to tell us now what opinions your expert is going to provide, then you may have problems down the road. But I'm not going to have [Ms. Maxwell] held to a different standard than what the government has done here.

TR 11/23/2021, p 25-26.

It is clear that Examiner Flatley is no longer merely providing a factual narrative of what he did in this case. Based on his specialized training and experience, he's defining and explaining the significance of technical terms and concepts for the jury, and he is using reasoning unfamiliar to lay individuals to describe his analyses for, and to impart his conclusions to, the jury.

Ms. Maxwell has been preparing for the testimony of other witnesses and briefing other issues, and she has not had sufficient time to prepare for the cross-examination of Examiner Flatley. The government's disclosure comes far too late, it's prejudicial to Ms. Maxwell, and the testimony should be excluded.

## CONCLUSION

This Court should restrict Examiner Flatley's testimony to the fact-based narrative originally disclosed in the September 15 letter and preclude him from testifying to any expert opinions first disclosed in the November 26 letter or the December 3 or 5 emails.

Respectfully submitted,

_____
Jeffrey S. Pagliuca
Laura A. Menninger
HADDON, MORGAN & FOREMAN P.C.
150 East 10th Avenue
Denver, CO 80203
Phone: 303-831-7364

Christian R. Everdell
COHEN & GRESSER LLP
800 Third Avenue
New York, NY 10022
Phone: 212-957-7600

Bobbi C. Sternheim
Law Offices of Bobbi C. Sternheim
225 Broadway, Suite 715
New York, NY 10007
Phone: 212-243-1100

*Attorneys for Ghislaine Maxwell*

cc: Counsel of record (via email)