

**Haddon, Morgan and Foreman, P.C**
**Jeffrey S. Pagliuca**

150 East 10th Avenue
Denver, Colorado  80203
PH  303.831.7364
FX  303.832.2628
www.hmflaw.com
jpagliuca@hmflaw.com

December 13, 2021

**VIA Email**

The Honorable Alison J. Nathan
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

     Re:    *United States v. Ghislaine Maxwell*, 20 Cr. 330 (AJN)

Dear Judge Nathan,

     Ms. Maxwell has disclosed to the government the December 19, 1996 Agreement for Sale of 44 Kinnerton Street London SW1. Gov. Letter Mot., Ex. A. The 1996 Agreement is impeachment evidence, the relevance of which Ms. Maxwell could not have known until Kate testified on direct examination that Ms. Maxwell lived in the Kinnerton Street home in 1994. The 1996 Agreement contradicts Kate's testimony by proving that Ms. Maxwell did not purchase Kinnerton Street until 1996. Ms. Maxwell was not required to disclose the 1996 Agreement to the government until now.

     The government does not deny the authenticity or relevance of the 1996 Agreement. The 1996 Agreement shows that Ms. Maxwell contracted to purchase 44 Kinnerton Street in December 1996 and completed the sale in early 1997. The Kinnerton home is in the Belgravia neighborhood of London.

     Kate, by contrast, testified under oath that she visited Ms. Maxwell's home on Kinnerton Street in 1994 when Kate was 17 years old.

The Honorable Alison J. Nathan
December 13, 2021
Page 2

Q. When you were approximately 17 years old, where were you living?

A. I was living in England, London.

Q. What neighborhood in London did you live?

A. Belgravia.

TR 12/6/2021, p 1172:2-6. She said:

Q. And approximately what year were you 17 years old?

A. God, I can't do the math. So that was '94.

Q. Is that 1994?

A. Yes.

*Id.* at 1172:22-25. Then, after identifying a photo of Ms. Maxwell's Kinnerton Street home:

Q. Kate, in what neighborhood was this townhouse?

A. In the same neighborhood I lived in, in Belgravia.

*Id.* at 1177:5-6.

The 1996 Agreement proves that Kate's testimony is not accurate.

Confronted with proof that Kate did not tell the truth, the government asks this Court to preclude Ms. Maxwell from offering the 1996 Agreement into evidence on the theory that, because Ms. Maxwell did not disclose the 1996 Agreement earlier, the government was not able to fully and fairly investigate its case. Gov. Letter at 6. The government's argument is groundless.[1]

---

[1] It is also tone-deaf, considering the government's pattern and practice of discovering evidence in dead of night, just hours before witnesses testify. Some examples:

- The government first disclosed Kate's driver's license at 11:11 p.m. the night before she testified.

The Honorable Alison J. Nathan
December 13, 2021
Page 3

*First*, Ms. Maxwell did not contravene Rule 16. As a matter of reciprocal discovery, that Rule requires the defense to disclose an item to the government if "the defendant intends to use the item in the defendant's case-in-chief at trial." Fed. R. Crim. P. 16(b)(1)(A)(ii).

The relevance of the 1996 Agreement was not apparent until after Kate testified, under oath, to an impossibility—that she visited Kinnerton Street years before Ms. Maxwell bought it. The 1996 Agreement is classic evidence of impeachment by contradiction, which, "unlike affirmative evidence presented to support her defense, [a defendant] may not even know she may need to use . . . until after she hears the direct testimony of the witness." *United States v. Hsia*, No. CRIM. 98-0057 (PLF), 2000 WL 195067, at *2 (D.D.C. Jan. 21, 2000).

Contrary to the government's representation, Kate's FBI 302 materials *did not* show what she would say on the stand about where Ms. Maxwell's home was in 1994. Gov. Letter at 5. To the contrary, before her trial testimony last week, Kate had told the government two different stories. The first was that Ms. Maxwell lived in the *Kensington* neighborhood of London:

> [Kate] thought that there were approximately two assaults by EPSTEIN before she started traveling with he and MAXWELL, but was unsure about the exact number. This occurred at MAXWELL's residence in Kensington.

3513-009 at 3 (FBI 302).

---

- The government first endorsed and disclosed a *new witness* and *new exhibits* on December 9, the night before calling the witness to the stand on the last day of the government's case.

- The government belatedly disclosed expert opinion testimony from Examiner Flatley.

- All the material the government disclosed after November 30, including letters, PayPal record, and bank records.

The Honorable Alison J. Nathan
December 13, 2021
Page 4

The second was that she lived on Kinnerton Street in the Belgravia neighborhood of London. *See* 3513-037 at 3 (FBI 302) (Kate saying she lived at an apartment in the Belgravia neighborhood of London); *id.* at 8 (describing Ms. Maxwell's Kinnerton home as "across the street" from a pub "called 'Nags Head,'" which is in Belgravia).

Until Kate testified and committed to one of these versions of events, Ms. Maxwell could not have known whether the 1996 Agreement would be relevant and admissible at trial. After all, if Kate had testified that she visited Ms. Maxwell in 1994 at Ms. Maxwell's home in the Kensington neighborhood of London, the 1996 Agreement for the sale of the Kinnerton Street home in the Belgravia neighborhood of London would have been irrelevant. *See* Fed. R. Evid. 401, 402. Because Ms. Maxwell did not intend to use the 1996 Agreement as evidence until after Kate testified, and because Ms. Maxwell disclosed the 1996 Agreement to the government as soon as she decided to use the agreement as evidence, there was no violation of Rule 16.

The government is doubly wrong to imply impropriety by saying that the defense "made a point of confirming with Kate on cross examination specifically that the defendant lived on Kinnerton Street across from the Nags Head Pub—twice." Gov. Letter at 5 (citing TR 12/6/2021, pp 1235, 1253-54). It was *the government* that first elicited testimony from Kate that Ms. Maxwell allegedly lived at Kinnerton Street in the Belgravia neighborhood of London in 1994. TR 12/6/2021, p 1172, 1176-77. The questions Ms. Maxwell asked Kate on cross-examination and the evidence Ms. Maxwell now intends to use are responsive to, and impeachment of, Kate's testimony offered on direct examination. *See* TR 12/6/2021, p 1253:18-23 ("Q. Now you've testified that you met Ghislaine at her home on Kinnerton Street when you were 17 years old;

The Honorable Alison J. Nathan
December 13, 2021
Page 5

correct? A. I testified that I thought I was around that age, yes. Q. And I think you said, when

asked to do the math, that it was approximately 1994; correct? A. Yes.")

    **Second**, the government's theory of prejudice is bewildering. The government contends

that it was prejudiced by its own failure to investigate whether its witness was telling the truth.[2]

Gov. Letter at 6. Again, before her testimony, Kate had told the government two different stories

about where Ms. Maxwell lived in 1994—at a home in the Kensington neighborhood, or at the

Kinnerton Street home in the Belgravia neighborhood. The government chose not to investigate

where Ms. Maxwell actually lived in 1994 and which, if any, of Kate's stories were true. That is

not Ms. Maxwell's fault. And neither is it her duty to do the government's work for it. The

government cannot seriously contend that an investigation into where Ms. Maxwell lived "did

not become necessary" until after Kate testified. Gov. Letter at 6.

    The government complains about the difficulty of conducting investigations abroad. Gov.

Letter at 6 ("That is a time-consuming international, intergovernmental process involving

multiple agencies in each country that is not likely to generate admissible evidence by the

conclusion of trial."). The government's complaints are overwrought. For one thing, the

government had investigators in the United Kingdom investigating Ms. Maxwell's college

record. There was nothing preventing these investigators from asking the most basic of

questions: When did Ms. Maxwell purchase the Kinnerton Street property?

---

[2] The government's failure to investigate is not limited to Kate's allegations. The veracity
of another accuser, Jane, is the subject of a post-testimony 3500 disclosure. ████████████
██████████████████████████████████████████████████████████████████████████
████████████

The Honorable Alison J. Nathan
December 13, 2021
Page 6

For another thing, evidence that Ms. Maxwell did not purchase the Kinnerton Street home until 1996 is *publicly available* and accessible via the internet.[3] The government could have asked those same investigators to obtain property records. Further, the government has the ability to avail itself of a Mutual Legal Assistance Treaty (MLAT), an agreement between the United States and United Kingdom and an investigatory tool frequently used by the government for the purpose of gathering and exchanging information with the United Kingdom in the course of criminal investigations.

Now that the date of Ms. Maxwell's purchase of Kinnerton Street is relevant, Ms. Maxwell has requested these registry entries from Her Majesty's Land Registry. These entries show the transfer of title of 44 Kinnerton Street to Ghislaine Maxwell in March 1997 after the 1996 Agreement for Sale. Ms. Maxwell will provide these documents to the government as soon as she has them.

In addition, just this morning, Ms. Maxwell obtained a copy of the Transfer of Title for Kinnerton Street to Ms. Maxwell. Ms. Maxwell provided this document to the government within three hours of first receiving it. Thus, once it became clear that the 1996 Agreement was relevant, it took just days for Ms. Maxwell to obtain independently relevant and admissible evidence proving the same point—that Kate testified to an impossibility. Because the government has received a copy of the Transfer of Title, and because Ms. Maxwell will immediately produce the public records she obtains from the Land Registry, the government cannot claim to be prejudiced by the discovery of the 1996 Agreement.

_____

[3] https://eservices.landregistry.gov.uk/eservices/FindAProperty/view/QuickEnquiryInit.do (last visited Dec. 13, 2021).

The Honorable Alison J. Nathan
December 13, 2021
Page 7

**Finally**, the government's one-sentence 403 argument fails. Gov. Letter at 6 ("[T]he agreement runs the risk of 'confusing the issue' and 'misleading the jury' by presenting a document from which the jury is asked to infer conclusions that range far beyond the evidence."). The jury will not be confused or misled by evidence that Kate could not have visited Ms. Maxwell at Kinnerton Street in 1994 because Ms. Maxwell did not purchase that home for another two years. In contrast, jurors *will* be misled if they don't learn that Kate testified to something that could not have happened.

* * *

"The very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts." *United States v. Nixon*, 418 U.S. 683, 709 (1974) ("We have elected to employ an adversary system of criminal justice in which the parties contest all issues before a court of law. The need to develop all relevant facts in the adversary system is both fundamental and comprehensive."). To that end, Ms. Maxwell has a due process right to present evidence in her defense. U.S. Const. amend. V, VI. Excluding the 1996 Agreement, when Ms. Maxwell did not violate Rule 16 and the government has suffered no prejudice, would infringe this constitutional guarantee. And it would pervert the search for the truth, mislead the jury, and undermine the integrity of the criminal justice system. In the words of the Supreme Court, "The ends of criminal justice would be defeated if judgments were to be founded on a partial or speculative presentation of the facts." *Nixon*, 418 U.S. at 709.

This Court should deny the government's motion.

The Honorable Alison J. Nathan
December 13, 2021
Page 8

Jeffrey S. Pagliuca
Laura A. Menninger
HADDON, MORGAN & FOREMAN P.C.
150 East 10th Avenue
Denver, CO 80203
Phone: 303-831-7364

Christian R. Everdell
COHEN & GRESSER LLP
800 Third Avenue
New York, NY 10022
Phone: 212-957-7600

Bobbi C. Sternheim
Law Offices of Bobbi C. Sternheim
225 Broadway, Suite 715
New York, NY 10007
Phone: 212-243-1100

*Attorneys for Ghislaine Maxwell*

cc: Counsel of record (via email)