

**Haddon, Morgan and Foreman, P.C**
**Jeffrey S. Pagliuca**

150 East 10th Avenue
Denver, Colorado 80203
PH 303.831.7364
FX 303.832.2628
www.hmflaw.com
jpagliuca@hmflaw.com

December 16, 2021

**VIA Email**

The Honorable Alison J. Nathan
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

    Re:    *United States v. Ghislaine Maxwell*, 20 Cr. 330 (AJN)

Dear Judge Nathan,

    I write in response to the government's motion to preclude testimony from Eva Dubin, Michelle Healy, and Kelly Bovino.[1] The government claims that testimony from Eva, Michelle, and Kelly is inadmissible because: (1) it does not contradict Jane's testimony; and (2) it is improper impeachment on a collateral matter. The government is wrong.

## BACKGROUND

    On the stand, Jane alleged that several other women were involved in sexual conduct and group sexualized massages with her, Mr. Epstein, and Ms. Maxwell. These women included Eva, Michelle, and Kelly. TR. at 523-30. Although Jane has not always been consistent with the government about the involvement of these women, she testified that all these women were involved in or could "confirm" what happened in the group sexualized massages *that are the*

---

[1] The government also moved to preclude certain testimony from John Lopez. That part of the motion is moot because Ms. Maxwell will not call Mr. Lopez as a witness.

The Honorable Alison J. Nathan
December 16, 2021
Page 2

*very basis of the charges in this case*. *Id.* But Eva, Michelle, and Kelly will all testify they were *not* involved in and cannot "confirm" the group sexualized massages. Their testimony contradicts Jane's testimony, and it is relevant, material, and exculpatory. Finally, the details of the group sexualized messages, which form the very basis of the charges in this case, are not collateral matters. They are what this case is about.

## ARGUMENT

"Whether rooted directly in the Due Process Clause . . . , or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)); *see* U.S. Const. amends. V, VI. A court violates a defendant's right to present a defense when it excludes competent and reliable evidence that is central to the defense. *See Crane*, 476 U.S. at 690. The exclusion of such evidence "deprives a defendant of the basic right to have the prosecutor's case encounter and 'survive the crucible of meaningful adversarial testing.'" *Id.* at 690-91 (quoting *United States v. Cronic*, 466 U.S. 648, 656 (1984)).

The Constitution also affords Ms. Maxwell the right to confront her accusers. U.S. amend. VI; *Olden v. Kentucky*, 488 U.S. 227, 231 (1988). "[A] criminal defendant states a violation of the Confrontation Clause by showing that [she] was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness.'" *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986) (quoting *Davis v. Alaska*, 415 U.S. 308, 318 (1974)). "Cross-examination is the principal means by which the believability of a witness and the truth of [her]

testimony are tested." *Davis*, 415 U.S. at 316. The importance of cross-examination cannot be overstated where, as here, the government's proof depends almost entirely on the uncorroborated testimony of the accusers. *Poventud v. City of New York,* No. 07 CIV. 3998 DAB, 2015 WL 1062186, at *8 (S.D.N.Y. Mar. 9, 2015) ("Second Circuit case law . . . clearly establishe[s] that impeachment evidence constitutes exculpatory evidence that must be disclosed. The disclosure of impeachment evidence, where 'the [g]overnment's case depended almost entirely on [the victim's] testimony,' goes to the heart of *Brady* and *Giglio*." (quoting *Giglio v. United States*, 405 U.S. 150, 154–55 (1972))).

The standard for relevance is "very low," *United States v. White*, 692 F.3d 235, 246 (2d Cir. 2012) (explaining that Rule 401 prescribes a "very low standard"), and the definition of relevance is "very broad," *United States v. Certified Envtl. Servs., Inc.*, 753 F.3d 72, 90 (2d Cir. 2014). "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "To be relevant, evidence need not be sufficient by itself to prove a fact in issue. . . ." *United States v. Abu-Jihaad*, 630 F.3d 102, 132 (2d Cir. 2010). "[U]nless an exception applies, all 'relevant evidence is admissible.'" *White*, 692 F.3d at 246.

The testimony of Eva, Michelle, and Kelly, is relevant, because it makes it less likely that Jane engaged with sexualized massages with Mr. Epstein and Ms. Maxwell. During her testimony, Jane claimed that Eva, Michelle, and Kelly were all involved in or could confirm the sexualized massages involving Jane, Mr. Epstein, and Ms. Maxwell. Eva, Michelle, and Kelly are going to testify that they were *not* involved in sexualized massages and cannot "confirm" Jane's story. The testimony of Eva, Michelle, and Kelly is relevant because it makes it less likely

The Honorable Alison J. Nathan
December 16, 2021
Page 4

that the alleged sexualized massages occurred. These alleged sexualized massages *are the basis of the charges in this case.*

The government seeks to preclude testimony from Eva, Michelle, and Kelly on the ground that their testimony does not contradict Jane's allegations and that, in any event, their testimony concerns "collateral matters" The government is wrong on both counts.

### A.     Eva Dubin's testimony will contradict Jane's testimony.

Eva Dubin's testimony will contradict Jane's testimony. As to Eva, this is what Jane testified to on the stand:

- "[A] woman named Eva . . . joined in" the group sexualized massages. TR at 525.

- Eva "joined in [the group sexualized massages] with Sophie." *Id.* at 526.

- Eva "joined in the group scenario." *Id.*

- Eva "knew the routine." *Id.*

- Eva "could confirm her story." *Id.*

In her interviews with the government, Jane had this to say about Eva. In a February 2020 interview with the government, *see* 3509-008, p 4, Jane said:

- Jane's first sexual encounter with Mr. Epstein occurred in the pool house. *Id.* at 4.

- The next sexual encounter occurred in the bedroom or the massage room. *Id.*

- There was a short period of time in which the encounters only involved Mr. Epstein. *Id.*

- Ms. Maxwell then became involved. *Id.*

- The first time Ms. Maxwell was involved, there were two other girls as well—Sophie and Eva, who joined in. *Id.*

The Honorable Alison J. Nathan
December 16, 2021
Page 5

- The first time Ms. Maxwell was involved, Ms. Maxwell guided it, but the Sophie and Eva "knew the routine." *Id.*

- Sometimes it started with Mr. Epstein wanting a massage and saying, "you girls come with me."

- Sometimes the girls would make out with each other during these encounters. *Id.*

Eva will contradict this testimony.

Contrary to the government's argument, there is no doubt that Eva Dubin, who Ms. Maxwell intends to call as a witness, is the same "Eva" Jane claimed both during her testimony and the February 2020 interview was involved in group sexualized massages with Mr. Epstein and "could confirm her story."

- Lawrence Visoski testified that Eva Dubin was "one of Mr. Epstein's original first girlfriends," now his ex-girlfriend, a former Miss Sweden, who went on to marry Glenn Dubin. TR at 262-63.

- Jane told the government that "Eva" was Mr. Epstein's "ex-girlfriend and they stayed friends." *See* 3509-008 p 7.

- In an August 2021 interview with the government, *see* 3509-020, Jane told the government that "Eva" was the "Ms Sweden Lady." *Id.* at 1. Jane said she "does not remember" Eva "being involved in massages," but maybe Eva "aged out of that." *Id.*

- Although Jane did not recall Eva being involved in the massages when she spoke with the government in August 2021, she admitted that she did "not recall there being another Eva." *Id.* at 2.

The upshot of Jane's statements is this:

The Honorable Alison J. Nathan
December 16, 2021
Page 6

- In February 2020, Jane told the government that Eva was Mr. Epstein's ex-girlfriend and they stayed friends, just as Mr. Visoski testified. When the group massages began to involve others beyond Mr. Epstein, Ms. Maxwell joined in with Sophie and Eva. Sophie and Eva "knew the routine."

- In August 2021, Jane told the government that Eva was the "Ms Sweden Lady" (Mr. Visoski testified that Eva Dubin was a former Ms. Sweden). At the time, Jane did "not remember" Eva "being involved in massages," but maybe Eva "aged out of that." *Id.* At the same time, Jane "did not recall there being another Eva."

- In her testimony in this case, Jane told the jury that Eva was involved in the group sexualized massages with Mr. Epstein, Sophie, and Ms. Maxwell, that she "knew the routine," and that she "could confirm her story."

The record is clear that Jane has previously claimed (in February 2020) and testified (in this case) that Eva Dubin was involved in the sexualized massages with Mr. Epstein and Ms. Maxwell. Given that allegation, Ms. Maxwell has a constitutional right to call Eva Dubin to the stand and present her testimony, which will deny the allegations and contradict Jane's claims.

Perhaps hoping this Court won't notice, the government buries most of the facts about Jane's allegations about Eva in a footnote. Gov. Letter, pp 5-6 n.1. But even that footnote mischaracterizes what Jane said about Eva. Jane *did not* tell the government that Eva Dubin was not involved in group sexualized massages. At most, Jane said she "does not remember DUBIN being involved in massages." *See* 3509-020, p 1. But that's contrary to what she said in February 2020, and it's contrary to what she said on the stand. And it's wholly inconsistent with Jane's statement that she "does not recall there being another Eva." *Id.* at 2.

The Honorable Alison J. Nathan
December 16, 2021
Page 7

Ms. Maxwell has a right to present the testimony of Eva, who will deny Jane's allegations of being involved in the group sexualized massages that are the basis of the charges in this case.

### B.  Michell Healy's testimony will contradict Jane's testimony.

Michelle's testimony will also contradict Jane's testimony. As to Michelle, this is what Jane testified to on the stand:

- There was a fourth woman Jane remembers, named Michelle, who was short. TR at 526.

- Jane hung out with Michelle and Emmy and sometimes went out with Michelle and Emmy. *Id.* at 527. [2]

- Michelle "was also involved in the sexual contact." *Id.*

- Michelle was also involved in "group massages." *Id.*

The government did not examine Jane on any of these points, and it did not ask Jane whether Michelle was only involved in group massages with Mr. Epstein after Jane attained the age of 17.[3] Nor did the government ask Jane during its interviews when Michelle was involved

---

[2] The government's letter conveniently omits this testimony from Jane, which, as described below, establishes that Michelle Healy is the Michelle who Jane alleged was involved in group sexualized massages.

[3] The government's attempt to bootstrap Rule 412 into its motion fails. Gov. Letter, p 7. In her interview with the government, Jane said she was involved with sexualized massages with Michelle in New York when she was "young." *See* 3509-001, p 4. Even if, based on Jane's trial testimony, one might infer she was 17 years old at the time of the sexualized massages with Michelle, she said something different in her interviews with the government. And in any event, because the sexualized massages are the very conduct at issue in this case and are *not* collateral, Ms. Maxwell does not have to accept Jane's trial testimony as the last word on the issue. "The law of evidence has long recognized that a cross-examiner is not required to 'take the answer'" of a witness on a non-collateral issue, *United States v. Harvey*, 547 F.2d 720, 722 (2d Cir. 1976), such as her allegations about the very conduct she says is criminal.

in the group massages. To the contrary, in a September 2019 interview, Jane told the government that Emmy and Michelle "were involved in the sexual contact." *See* 3509-001, p 4. Jane made this claim about Michelle when discussing the abuse she claims to have suffered in New York when she was "young." *Id.*

Michelle's testimony will contradict Jane's testimony because she will deny being involved in the sexualized massages that Jane claims she was a part of.

Contrary to the government's argument, there is no doubt Michelle Healy, who Ms. Maxwell intends to call as a witness, is the same "Michelle" who Jane claimed both during her testimony and her September 2019 interview was involved in group sexualized massages with Mr. Epstein. Jane told the government in September 2019 that Michelle was "short" and that she introduced Jane to "white Russians," a vodka cocktail. *See* 3509-001, p 4. Michelle Healy is short, and Michelle will testify that she drinks white Russians. And, as Jane testified on the stand, Michelle will testify that she was good friends with Emmy Taylor, a point the government ignores in its letter.

As with Eva, Ms. Maxwell has a right to present the testimony of Michelle, who will deny Jane's allegations of being involved the group sexualized massages that are the basis of the charges in this case.[4]

---

[4] Michelle has other relevant testimony to offer, in addition to contradicting Jane's account of the group sexualized massages. The government does not challenge this other testimony.

The Honorable Alison J. Nathan
December 16, 2021
Page 9

### C. Kelly Bovino's testimony will contradict Jane's testimony.

Kelly's testimony will also contradict Jane's testimony. As to Kelly, this is what Jane testified to on the stand:

- Kelly was "another person [Jane] remembered." TR at 527.

- Jane remembered Kelly's last name. *Id.*

- Kelly was a model who was older than her. *Id.*

- Kelly could "back up what [Jane] was talking about." *Id.*

During her February 2020 interview with the government, Jane told agents that Kelly's last name was "Bovino" and that Jane "felt [Kelly] could back up what [Jane] had talked about regarding Maxwell. Jane described Kelly as being a model, who was older than [Jane] and knew Epstein and Maxwell before she did." *See* 3509-008, p 5-6.

Kelly's testimony will contradict Jane's testimony because Kelly will *not* back up Jane's account of the sexualized group massages. And there is no doubt Kelly Bovino, who Ms. Maxwell intends to call as a witness, is the same "Kelly" who Jane claimed was "back up" what Jane alleged. Jane admitted that Kelly's last name was "Bovino."

As with Eva and Michelle, Ms. Maxwell has a right to present the testimony of Kelly, who will contradict Jane's testimony about the sexualized massages that are the very basis of the charges in this case.

### D. These are not collateral matters.

The government's invocation of Rule 608 and the phrase "collateral issue" miss the mark entirely. As to Rule 608, the testimony of Eva, Michelle, and Kelly is not being offered "to prove specific instances of a witness's conduct in order to attack or support the witness's character for

The Honorable Alison J. Nathan
December 16, 2021
Page 10

truthfulness." Fed. R. Evid. 608(b). Their testimony is direct evidence about the very conduct at issue in this case—the alleged sexualized massages that form the basis of the charges. Jane says she was abused during group sexualized massages with Mr. Epstein and others and that these other people could confirm her story or back up what she was saying. Ms. Maxwell is entitled to call Eva, Michelle, and Kelly, who will deny being involved in the group sexualized massages, which are the basis of the charges in this case, and will do anything but "back up" or "confirm" what Jane has alleged.

These are not "collateral" issues. As the Notes to Rule 608 make clear, the bar on "extrinsic evidence applies *only* when the *sole* reason for proffering that evidence is to attack or support the witness' character for truthfulness." Fed. R. Evid. 608, Advisory Committee Notes, 2003 Amendments. Here, Eva, Michelle, and Kelly's testimony is not being offered to attack Jane's "character for truthfulness." To the contrary, it is being offered to show that the sexualized massages did not happen.

Jane has claimed that Eva, Michelle, and Kelly are essentially eyewitnesses to the abuse she allegedly suffered at the hands of Mr. Epstein and Ms. Maxwell. Eva, Michelle, and Kelly will deny that. The testimony of an "eyewitness" to the very conduct alleged to be criminal is not a "collateral issue."

Rule 608 bars "extrinsic evidence only if the sole purpose for offering the evidence was to prove the witness' character for veracity." *Id.* Contradiction testimony about the conduct at issue, which is what Eva, Michelle, and Kelly will provide, is never collateral. *Id.* ("By limiting the application of the Rule to proof of a witness' character for truthfulness, the amendment leaves the admissibility of extrinsic evidence offered for other grounds of impeachment (such as

The Honorable Alison J. Nathan
December 16, 2021
Page 11

*contradiction*, prior inconsistent statement, bias and mental capacity) to Rules 402 and 403.").[5]

*Cf. United States v. Schuler*, 458 F.3d 1148, 1155 (10th Cir. 2006) ("[A] matter is collateral if it could not have been introduced in evidence for any purpose other than impeachment.").

### E. The government's other arguments fail.

The government offers three other arguments. First, the government faults Ms. Maxwell for not showing Jane pictures of Eva, Michelle, and Kelly. Nothing required Ms. Maxwell to do that, and the government cites *no* authority for its argument.

What's more telling is that the *government* never showed Jane their photographs. The government's deliberate choice to muddy the waters is not Ms. Maxwell's fault or her problem. The record shows Eva Dubin, Michelle Healy, and Kelly Bovino are the "Eva," "Michelle," and "Kelly" who Jane testified about. Their testimony is admissible.

Second, it's irrelevant that Ms. Maxwell did not use last names in her examination of Jane. For one thing, Jane also did not use last names in her interviews with the FBI. For another thing, Eva Dubin's name was already on the record from Mr. Visoski's testimony, and Jane admitted knowing Kelly's last name. Finally, Ms. Maxwell did not use Michelle's last name in part because she intended to ask this Court for anonymity. It's immaterial that this Court subsequently denied that request.

Finally, the government mistakenly relies on cases purporting to hold that a defendant, through cross-examination, cannot open the door to proving collateral issues by extrinsic

---

[5] The government quite rightly does not make a 403 argument. And its relevance argument—that the testimony of Eva, Michelle, and Kelly does not contradict Jane's testimony—is wrong, as described above.

The Honorable Alison J. Nathan
December 16, 2021
Page 12

evidence. Gov. Letter, pp 3, 8. Even if that is what those cases hold (which Ms. Maxwell disputes), the cases have no applicability here, because the details of the sexualized massages are *not* collateral issues. They are the central issues in this case.

At best, the government's arguments go to weight, not admissibility. If the government wants to argue that Eva Dubin, Michelle Healy, and Kelly Bovino are *not* the Eva, Michelle, and Kelly who Jane was referring to, the government is free to make that argument. In fact, the government has already made precisely that argument as to ▮▮▮▮▮▮▮▮▮▮▮▮, responding to the flight logs' use of the name ▮▮▮▮▮▮ But that argument is no basis for denying Ms. Maxwell her constitutional right to present a defense. U.S. Const. amends. V, VI.

## CONCLUSION

This Court should deny the government's motion.

The Honorable Alison J. Nathan
December 16, 2021
Page 13

 

_____
Jeffrey S. Pagliuca
Laura A. Menninger
HADDON, MORGAN & FOREMAN P.C.
150 East 10th Avenue
Denver, CO 80203
Phone: 303-831-7364

Christian R. Everdell
COHEN & GRESSER LLP
800 Third Avenue
New York, NY 10022
Phone: 212-957-7600

Bobbi C. Sternheim
Law Offices of Bobbi C. Sternheim
225 Broadway, Suite 715
New York, NY 10007
Phone: 212-243-1100

*Attorneys for Ghislaine Maxwell*


cc: Counsel of record (via email)