

**Haddon, Morgan and Foreman, P.C**
**Jeffrey S. Pagliuca**

150 East 10th Avenue
Denver, Colorado 80203
PH 303.831.7364
FX 303.832.2628
www.hmflaw.com
jpagliuca@hmflaw.com

November 22, 2021

**VIA EMAIL**

The Honorable Alison J. Nathan
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

*Re:*   *United States v. Ghislaine Maxwell*, 20 Cr. 330 (AJN)

Dear Judge Nathan,

I write in response to the motions to quash Ms. Maxwell's Rule 17(c) subpoena to the

Epstein Victims' Compensation Program (EVCP). Four motions to quash were filed, one each by

the government,[1] the administrator of the EVCP, Accuser-2, and Witness-3. Neither Accuser-1

nor Accuser-4 moved to quash. As explained below, the arguments against enforcement of Ms.

Maxwell's subpoena lack merit, and this Court should deny the motions to quash.

**FACTUAL BACKGROUND**

On November 15, this Court issued a Rule 17(c) subpoena to the EVCP at the request of

Ms. Maxwell. The subpoena is narrow, specific, and targeted. It seeks just four categories of

---

[1] There is significant doubt whether the government has standing to move to quash, either in its own capacity or on behalf of the accusers. *See United States v. Nachamie*, 91 F. Supp. 2d 552, 558-61 (S.D.N.Y. 2000) (recognizing a common "misunderstanding of the concept of standing to quash a Rule 17(c) subpoena" and concluding the government lacked standing to move to quash in its own capacity or on behalf of the third parties). Even so, because the administrator of the EVCP and two of the accusers moved to quash, Ms. Maxwell will respond to all the arguments made in opposition to her subpoena, even the government's.

The Honorable Alison J. Nathan
November 22, 2021
Page 2

documents, all known to exist and all relevant and admissible in support of Ms. Maxwell's

constitutional rights to present a defense and to confront her accusers—Accuser-1, Accuser-2,

Witness-3, and Accuser-4. Each of these individuals (the accusers) filed claims with the EVCP,

and each received multi-million-dollar payouts. Accuser-1 has told the government that she

received $5,000,000; Accuser-2 has told the government that she received $1,500,000; Witness-3

has told the government that she received $3,250,000; and Accuser-4 has told the government

she received $3,500,000.

      Ms. Maxwell, however, does not have the payment records and cannot verify whether

these figures are accurate. Nor does she have all the releases the accusers signed, and therefore

no way to evaluate what consideration was offered and what the accusers gave up in exchange

for the payouts. Finally, Ms. Maxwell does not have the accusers' submissions to the EVCP or

communications between the accusers and the EVCP. As a result, and even though the accusers'

claims were based in part on the same conduct Ms. Maxwell is now criminally charged with

committing, Ms. Maxwell does not know how the accusers explained their entitlement to

compensation from the EVCP and how, if at all, they alleged Ms. Maxwell was involved in the

abuse.

      Left in the dark about these critical issues, Ms. Maxwell requested a subpoena to the

EVCP seeking production of:

    (1) Any and all EVCP material submitted by each accuser, not limited to claims forms

        and supporting submissions made by each accuser.

    (2) Communications between the EVCP to each of the accusers and/or their attorneys;

    (3) Copies of any payments to the accusers and their attorneys; and

The Honorable Alison J. Nathan
November 22, 2021
Page 3

(4) Any and all releases executed by the accusers.

Def. Mot. for Sub, Attachment A.

Ms. Maxwell filed a motion for issuance of the subpoena, explaining how her subpoena satisfied Federal Rule of Criminal Procedure 17(c) and the standard set forth in *United States v. Nixon*, 418 U.S. 683 (1974). Unlike Ms. Maxwell's earlier subpoena to Boies Schiller & Flexner (BSF), which the Court declined to issue, Dkt. Nos. 252, 298, the Court here authorized and issued Ms. Maxwell's subpoena to the EVCP, concluding (preliminarily and correctly) that it was proper under Rule 17(c). *See Nachamie*, 91 F. Supp. 2d at 561 ("As the Supreme Court has explained, it is the responsibility of the court, not the opposing party, to ensure that a subpoena secured under Rule 17(c) is for a proper purpose." (citing *United States v. Tomison*, 969 F. Supp. 587, 594 (E.D. Cal. 1997))). Ms. Maxwell's subpoena seeks production *at trial* (not pretrial), and it also requests that before the responsive material is produced to her for inspection, this Court conduct an *in camera* review. Combined with the narrowness of her request, Ms. Maxwell has suggested careful procedures to balance her need for the material and the accusers' interests in confidentiality.

Everyone agrees that Ms. Maxwell's subpoena specifically identifies the requested material, and there is no meaningful dispute that the material she seeks is both relevant and not otherwise procurable. (The government and Accuser-2 offer cursory arguments about relevance, which are easily dismissed.) Instead, the disagreement concerns whether the material is admissible and whether enforcement of the subpoena would be unreasonable and oppressive. Considering Ms. Maxwell's constitutional rights to present a defense and to confront her

The Honorable Alison J. Nathan
November 22, 2021
Page 4

accusers, this Court should resolve each of these disagreements in favor of Ms. Maxwell and

deny the motions to quash.

## ARGUMENT

This Court evaluates a Rule 17(c) subpoena under *Nixon*, 418 U.S. at 699-700. *See*

*United States v. Pena*, No. 15-CR-551 (AJN), 2016 WL 8735699, at * 1-2 (S.D.N.Y. Feb. 12,

2016).[2] Under *Nixon*, Ms. Maxwell "must make a preponderance showing that the materials

requested are relevant, specifically identified, admissible, and not otherwise procurable by the

exercise of due diligence." *Pena*, 2006 WL 8735699, at *2 (quoting *Barnes*, 560 Fed. Appx. at

39-40). If Ms. Maxwell satisfies this standard, the Court may quash the subpoena only "if

compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c).

---

[2] In *United States v. Pena*, this Court declined to follow the more liberal standard for defense subpoenas to third parties articulated in *United States v. Tucker*, 249 F.R.D. 58 (S.D.N.Y. 2008). The Second Circuit has not resolved this debate. *See United States v. Barnes*, 560 Fed. Appx. 36, 40 n.1 (2d Cir. 2014) (unpublished) (declining to address the defendant's argument that the court "forego the *Nixon* standard for the more permissive standard employed in [*Tucker*]").

Ms. Maxwell contends that *Tucker* articulates the correct standard. *See Nachamie*, 91 F. Supp. 2d at 562-63 ("A real question remains as to whether it makes sense to require a defendant's use of Rule 17(c) to obtain material from a non-party to meet [the *Nixon*] standard. Unlike the Government, the defendant has not had an earlier opportunity to obtain material by means of a grand jury subpoena. Because the Rule states only that a court may quash a subpoena 'if compliance would be unreasonable or oppressive,' the judicial gloss that the material sought must be evidentiary—defined as relevant, admissible and specific—may be inappropriate in the context of a defense subpoena of documents from third parties." (citing *Tomison*, 969 F. Supp. at 593 n.14)).

Even so, this Court need not reconsider its decision in *Pena*, because Ms. Maxwell's subpoena is enforceable under *Nixon*. Should this Court disagree, however, Ms. Maxwell makes this argument to preserve the record for potential appellate review.

The Honorable Alison J. Nathan
November 22, 2021
Page 5

### A.      The constitutional backdrop.

"Whether rooted directly in the Due Process Clause . . . , or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)); *see* U.S. Const. amends. V, VI. A court violates a defendant's right to present a defense when it excludes competent and reliable evidence that is central to the defense. *See Crane*, 476 U.S. at 690. The exclusion of such evidence "deprives a defendant of the basic right to have the prosecutor's case encounter and 'survive the crucible of meaningful adversarial testing.'" *Id.* at 690-91 (quoting *United States v. Cronic*, 466 U.S. 648, 656 (1984)).

The Constitution also affords Ms. Maxwell the right to confront her accusers. U.S. amend. VI; *Olden v. Kentucky*, 488 U.S. 227, 231 (1988). "[A] criminal defendant states a violation of the Confrontation Clause by showing that [she] was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness.'" *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986) (quoting *Davis v. Alaska*, 415 U.S. 308, 318 (1974)). "Cross-examination is the principal means by which the believability of a witness and the truth of [her] testimony are tested." *Davis*, 415 U.S. at 316. The importance of cross-examination cannot be overstated where, as here, the government's proof depends almost entirely on the uncorroborated testimony of the accusers. *Poventud v. City of New York,* No. 07 CIV. 3998 DAB, 2015 WL 1062186, at *8 (S.D.N.Y. Mar. 9, 2015) ("Second Circuit case law . . . clearly establish[s] that

The Honorable Alison J. Nathan
November 22, 2021
Page 6

impeachment evidence constitutes exculpatory evidence that must be disclosed. The disclosure

of impeachment evidence, where 'the [g]overnment's case depended almost entirely on [the

victim's] testimony,' goes to the heart of *Brady* and *Giglio*." (quoting *Giglio v. United States*,

405 U.S. 150, 154–55 (1972))).[3]

    Lastly, Ms. Maxwell has a constitutional right to compulsory process, U.S. Const. amend.

VI, which includes the ability to compel production of relevant documents. *See Nixon*, 418 U.S.

at 711.

    **B.    The materials requested are relevant.**

    The standard for relevance is "very low," *United States v. White*, 692 F.3d 235, 246 (2d

Cir. 2012) (explaining that Rule 401 prescribes a "very low standard"), and the definition of

relevance is "very broad," *United States v. Certified Envtl. Servs., Inc.*, 753 F.3d 72, 90 (2d Cir.

2014). "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than

it would be without the evidence; and (b) the fact is of consequence in determining the action."

Fed. R. Evid. 401. "To be relevant, evidence need not be sufficient by itself to prove a fact in

issue. . . ." *United States v. Abu-Jihaad*, 630 F.3d 102, 132 (2d Cir. 2010).

    Moreover, materials don't magically lose their relevance simply because other evidence

might also be relevant to the same issue. *Old Chief v. United States*, 519 U.S. 172, 179 (1997)

---

[3] *See also United States v. Petrillo,* 821 F.2d 85, 90 (2d Cir. 1987) (explaining that impeachment evidence of uncorroborated testimony is material where the witness "whose credibility was at issue supplied the only evidence linking the defendant[] to the crime"); *Grant v. Alldredge,* 498 F.2d 376, 382 (2d Cir. 1974) (finding *Brady* violation occurred where the prosecution did not disclose that a witness identified someone other than the accused); *United States v. Wilkins,* 326 F.2d 135, 140 (2d Cir. 1964) (where the state's case depended on the positive identification by two witnesses, the existence of two other witnesses who would testify the defendant was not the perpetrator of the crime was material).

The Honorable Alison J. Nathan
November 22, 2021
Page 7

("Nor was its evidentiary relevance under Rule 401 affected by the availability of alternative proofs of the element to which it went . . . . If, then, relevant evidence is inadmissible in the presence of other evidence related to it, its exclusion must rest not on the ground that the other evidence has rendered it 'irrelevant.'" (citing Fed. R. Evid. 401, 1972 Advisory Committee Notes)). Evidence is either relevant or it isn't, and "unless an exception applies, all 'relevant evidence is admissible.'" *White*, 692 F.3d at 246.

Under this "very low" standard and "very broad" definition, the materials Ms. Maxwell seeks are relevant. Of the four motions to quash, only the government and Accuser-2 dispute the relevance of the requested materials. Govt. Mot. at 3-8; Accuser-2 Mot. at 3.

For her part, Accuser-2's argument is both undeveloped and misplaced. Accuser-2 Mot. at 3. Accuser-2 relies on this Court's earlier orders declining to issue a twelve-request subpoena directed to BSF. That decision has no bearing on the motions to quash filed here.

Here, the subpoena is directed to the custodian of the relevant documents (the EVCP) and not to a different third party. The subpoena is also more narrowly tailored, including just four requests rather than twelve. In addition, the subpoena is returnable *at trial*, not pretrial. And most significantly, now unlike then, the Court *issued* the requested subpoena after considering Ms. Maxwell's brief in support. Because a Court "must be satisfied that the subpoena complies with the requirements of the Rule" before the Court "issues a Rule 17(c) subpoena," the Court has already (if preliminarily) determined that Ms. Maxwell's subpoena to be proper. *Nachamie*, 91 F. Supp. 2d at 561 (citing *Tomison*, 969 F. Supp. at 594 ("As the Supreme Court has explained, it is the responsibility of the court, not the opposing party, to ensure that a subpoena secured under Rule 17(c) is for a proper purpose.")). Accuser-2's relevance argument fails.

The Honorable Alison J. Nathan
November 22, 2021
Page 8

As explained below, the government's relevance arguments also fall short.

>    1.    *Payment Records.*

The payment records are relevant for an obvious reason: They show how much money each accuser was paid in relation to their claims against Mr. Epstein based on his conduct or the conduct of his employees, the very claims for which Ms. Maxwell now stands criminally accused. Ms. Maxwell is charged with conspiring with Mr. Epstein. The payments the accusers received from the EVCP are relevant to their motive and bias in implicating Ms. Maxwell, an alleged conspirator and employee of Mr. Epstein.

>    2.    *Claim Release Forms.*

Despite the government's professed inability to conjure a theory of relevance, Gov. Mot. at 3, the claim release forms are relevant to the accusers' motive and bias because Ms. Maxwell and the jury have a right to know what the accusers gave up in exchange for the millions of dollars they received from the EVCP based on the very allegations at issue in this criminal case.

>    3.    *Materials Submitted to the EVCP.*

The government also claims not to understand the relevance of the submissions the accusers made to the EVCP. Gov. at 4-6. (The administrator of the EVCP has no such difficulty, and she does not dispute the relevance of these materials.) The relevance is obvious.

Under the EVCP protocol, alleged victims of Mr. Epstein had to explain their entitlement to payments by providing, among other things, documentation, corroboration, or other circumstantial evidence "regarding the nature and extent of the abuse, the frequency, location and other details of the abuse, and the age of the victim at the time of the abuse." EVCP Protocol, p 5. The accusers' explanations are relevant because this case is about the very same conduct forming the basis of the accusers' claimed entitlement to payments from the EVCP. Ms.

The Honorable Alison J. Nathan
November 22, 2021
Page 9

Maxwell and the jury have a right to know to what extent, if any, the accusers claimed that Ms.

Maxwell was involved in the alleged abuse. As this Court well knows, the accusers have been

anything but consistent on this front.

Accuser-4, for example, was first interviewed by the FBI about Epstein in 2007. At that

time, she told the agents that she was recruited to provide massages to Mr. Epstein by Virginia

Giuffre, f/k/a Roberts, not Ms. Maxwell. She did not describe any grooming by Ms. Maxwell or

even any participation by Ms. Maxwell in any crime. In this interview, Accuser-4 describes Ms.

Giuffre as the person who showed her what to do with Epstein and relates that Ms. Giuffre had

sex with Mr. Epstein while Accuser-4 watched. Sarah Kellen was her contact person and the

person who took naked photos of Accuser-4 in exchange for $500. *Ms. Maxwell's name does not*

*appear in the FBI 302.*

Shortly after this interview Accuser-4 sued Epstein and Kellen, not Maxwell. The first

complaint, filed in Florida state court does not mention Ms. Maxwell. The complaint was

amended and removed to U.S. District Court and in over 200 paragraphs Ms. Maxwell's name

appears not once. In her answers to written discovery and in deposition testimony Accuser-4

does not accuse Ms. Maxwell of any misconduct, but instead affirms that she has told the entire

story which, according to Accuser-4 (then), began in 2002 and ended in 2003.

These claims were settled by Accuser-4 for a substantial amount of money and a release

was executed for all claims against Epstein, Kellen, and related individuals or entities. It was not

until after Epstein died and one month after the EVCF was created that the lawyers for Accuser-4

contacted the government to say that Accuser-4 wanted to meet. The lawyers were helpful

enough to provide to the government a new list of "persons" and "topics" for the government's

The Honorable Alison J. Nathan
November 22, 2021
Page 10

interview on July 17, 2020. *See* 3500 material at 3505-067. Of course, this is the first time that

Ms. Maxwell's name surfaces. The economic incentives here are obvious—having settled her

claims in 2009, Accuser-4 needed new, more sensational information to get more money. The

EVCP materials thus directly contradict the "motive theory" that will be advanced by the

prosecution at trial—that Ms. Maxwell was the procurer of underaged women for Epstein. *See*

*Mendez v. Artuz,* 303 F.3d 411, 414 (2d Cir. 2002) (information relevant and "exculpatory . . .

when it directly contradicts the motive theory testified to by prosecution witnesses").

      As this Court has already ruled, Witness-3 cannot be called a "victim" of the charged

conduct because she was not a minor. Even so, this Court ruled that "some of the anticipated

testimony [from Witness-3] can serve as direct evidence, notwithstanding the fact that the

alleged conduct as to [her] was not illegal for the purpose of the charges in this case." Ms.

Maxwell and the jury have a right to know what Witness-3 said the EVCP about the alleged

abuse she suffered, including how old she claimed to be when she was abused. If Witness-3

misrepresented her age to the EVCP, just as the government was misled by Witness-3 into

portraying her as a minor to the grand jury and this Court, that fact bears directly on her

credibility. Again, it is no coincidence that, after receiving money from the fund, Witness-3 is

now telling the government that if asked at trial about "specific dates when things occurred, the

answer might be she doesn't know." *See* 3500 material at 3513-059. Only when we see how

Witness-3 described how old she was to the fund will we know the truth.

      In last-ditch effort to preclude enforcement, the government says that Ms. Maxwell

"already has the information relevant this argument." Gov. Mot at 4. But even if that's true, that

The Honorable Alison J. Nathan
November 22, 2021
Page 11

doesn't mean the materials submitted to the EVCP are *irrelevant*. The relevance of evidence does not depend on theoretical evidentiary alternatives. *Old Chief*, 519 U.S. at 179.

         4.    *Communications.*

The government denies the relevance of the accusers' communications with the EVCP, saying there is "no reason to believe" the accusers would make substantive statements or inconsistent statements in their communications. Gov. Mot. at 7. Not so.

The government's argument seems to assume that after an accuser makes her submission to the EVCP, there will be no further communications between the EVCP and the accuser. But as the Protocol makes clear, after the initial submission, "[a]dditional documentation may be requested at the discretion of the Administrator" and the Claimant "will be afforded the opportunity to submit to the Administrator any information deemed relevant to the Administrator's evaluation and determination of the claim." Protocol, p 5. Moreover, if a Claimant submits "an incomplete or deficient claim, the Administrator will notify the Claimant, explain the additional information that is needed, and work with the Claimant or the Claimant's Legal Representative (where applicable) to assist in submitting a complete claim." *Id.* So, contrary to the government's argument, there is ample reason to think substantive and potentially inconsistent statements were made in "communications" apart from claims submission material itself. These communications are relevant.

    **C.**    **The materials requested are specifically identified.**

No motion challenges the specificity of Ms. Maxwell's subpoena. This *Nixon* factor is satisfied.

The Honorable Alison J. Nathan
November 22, 2021
Page 12

### D.    The materials requested are admissible.

The government does not dispute the admissibility of the payment records, the claims

release forms, or the communications. Gov. Mot. at 3-8. According to the government, however,

the submissions to the EVCP are inadmissible under Federal Rule of Evidence 403. Gov. Mot. at

6-7.

Neither Accuser-1 nor Witness-3 dispute the admissibility of any of the materials.

For its part, the EVCP argues that all the materials Ms. Maxwell seeks are inadmissible

under Federal Rule of Evidence 408. As elaborated below, neither Rule 403 nor Rule 408

renders the materials inadmissible.

We begin with the government's Rule 403 argument. To start, the government's 403

argument is premature because the Court has not yet reviewed the subpoenaed material *in

camera*. In any event, it's of no moment that the government says it would have to

"contextualize" the accusers' statements to the EVCP to argue the statements are not inconsistent

with their trial testimony. Gov. Mot. at 6-7. That is *always* the case with prior inconsistent

statements; the proponent of the evidence asks the jury to disbelieve the trial testimony because

the witness said something different on an earlier occasion, while the opponent tries to minimize

or explain away any inconsistency. That is not a reason to exclude the statements themselves, nor

is the government's vague complaint that this process is a "waste of time." The accusers' ever-

evolving allegations are central to this case.

The EVCP's Rule 408 argument next. Rule 408 says:

**(a) Prohibited Uses**. Evidence of the following is not admissible--on behalf of any
party--either to prove or disprove the validity or amount of a disputed claim or to
impeach by a prior inconsistent statement or a contradiction:

The Honorable Alison J. Nathan
November 22, 2021
Page 13

> **(1)** furnishing, promising, or offering--or accepting, promising to accept, or offering to accept--a valuable consideration in compromising or attempting to compromise the claim; and
>
> **(2)** conduct or a statement made during compromise negotiations about the claim--except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.
>
> **(b) Exceptions**. The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Fed. R. Evid. 408. For at least three reasons, Rule 408 does not apply here.

First, the Rule only prohibits evidence of compromise when the disputed claim is the same claim that was compromised. As the Second Circuit has held, "Evidence of an offer to compromise, though otherwise barred by Rule 408, can fall outside the Rule if it is offered for 'another purpose,' *i.e.*, for a purpose other than to prove or disprove the validity of *the claims that the offers were meant to settle*." *Trebor Sportswear Co. v. The Ltd. Stores, Inc.*, 865 F.2d 506, 510 (2d Cir. 1989) (emphasis added); *Carr v. Health Ins. Plan of Greater New York, Inc.*, No. 99 CIV. 3706 (NRB), 2001 WL 563722, at *4 (S.D.N.Y. May 24, 2001) ("[Rule 408] is not a blanket rule of inadmissibility for any and all statements in the settlement context. If evidence is 'offered for another purpose' apart from liability for (or damages resulting from) *the claim under settlement discussion*, that evidence may be admitted." (emphasis added)); *see also Equal Emp. Opportunity Comm'n v. Karenkim, Inc.*, No. 5:08-CV-1019 (NAM/DEP), 2011 WL 13352967, at *2 (N.D.N.Y. Jan. 10, 2011) ("But when settlement-related evidence is related to a claim not under consideration by a jury, courts generally permit its introduction, so long as it is otherwise admissible, if it is relevant to a claim that is at issue." (citing cases)).

The Honorable Alison J. Nathan
November 22, 2021
Page 14

This is clear from the language of the Rule. "The claim" to which subsections (a)(1) and (a)(2) refer is the "disputed claim" referenced in subsection (a). When the "disputed claim" is different from "the claim" compromised, the Rule's prohibitions do not apply. *Vulcan Hart Corp. v. N.L.R.B.,* 718 F.2d 269, 277 (8th Cir. 1983) ("Rule 408 excludes evidence of settlement offers only if such evidence is offered to prove liability for or invalidity of *the claim under negotiation*." (emphasis added)).

Here, the "disputed claim" is government's claim that Ms. Maxwell trafficked the accusers, facilitated their abuse, and conspired to do the same. "The claim" each accuser compromised with the EVCP was "the claim" that they were entitled to money for the abuse perpetrated by Mr. Epstein. Because Ms. Maxwell will use the materials for a "purpose other than to prove or disprove the validity of the claims that the offers were meant to settle," *Trebor Sportswear*, 865 F.2d at 510, Rule 408 does not apply.

Second, even if Rule 408 did apply, it would not bar admission of the evidence because evidence of compromise is admissible to prove a witness's bias and prejudice, a traditional object of cross-examination. Fed. R. Evid. 408(b). *Van Arsdall*, 475 U.S. at 680 (defendants have a constitutional right to engage in "cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness.'" (quoting *Davis*, 415 U.S. at 318)). There is no dispute that the accusers' settlement of their claims against Mr. Epstein for vast sums of money is relevant to their bias and motive in both cooperating with the government to secure prosecutorial credit, a factor in the EVCF's protocol, and testifying against Ms. Maxwell.

The Honorable Alison J. Nathan
November 22, 2021
Page 15

Finally, "evidence that a party lied during settlement negations may be admissible to

impeach that party under Federal Rule of Evidence 608(b) when she later testifies at trial,"

Wright & Miller, 23 Fed. Prac. & Proc. Evid., § 5305 Scope—Impeachment by Prior

Inconsistent Statement or Contradiction, (2d ed., Apr. 2021 update), despite the language in Rule

408(a) saying compromise evidence is generally inadmissible to impeach by a prior inconsistent

statement or contradiction. As Wright & Miller recognize,

> evidence of false statement during compromise negotiations would not be barred
> by Rule 408(a)(2) if offered to impeach on the theory it is a specific instance of
> conduct probative of a witness' character for untruthfulness and, thus, potentially
> admissible under Federal Rule of Evidence 608(b). This is consistent with the
> language of Rule 408(b), which permits admission of false statements made in
> negotiations so long as offered for a purpose other than that addressed by Rule
> 408(a).

Wight & Miller, Fed. Prac. & Proc. Evid., § 5310.

Conspicuously, the government *does not* assert that Rule 408 is an impediment to

admissibility. As just explained, that is for good reason.

### E. The materials requested are not otherwise procurable.

#### 1. *Payment Records.*

The government does not claim the payment records are "otherwise procurable." Gov.

Mot. at 3. Instead, the government elides the proper inquiry, saying that the *information* in the

payment records is otherwise procurable. *Id.* But that's not the question, and even if it were, the

government is wrong.

According to the government, the 3500 material includes statements from the accusers

attesting to the amounts of money they received. *Id.* But the constitution does not require Ms.

Maxwell to take her accusers' words for it. U.S. Const. amend. VI. She has a right to know

The Honorable Alison J. Nathan
November 22, 2021
Page 16

whether they are telling the truth, and if they aren't, she is allowed to impeach them. Fed. R.

Evid. 613(b) (allowing proof of inconsistent statement by extrinsic evidence).

The government's position is classic gamesmanship. The government says that whatever

the accusers told the government is good enough, and we should trust the accusers' accounts,

filtered by their lawyers. But the government also knows that it "is under no obligation to turn

over that which it does not have," *United States v. Upton,* 856 F. Supp. 727, 746 (E.D.N.Y.

1994), which is why it has not obtained the material. This is why Ms. Maxwell needs the Court's

assistance.

Ms. Maxwell is also allowed to present as trial exhibits documents that prove the amount

that the accusers were paid. A visual image can have in some cases more of an impact on the

jury, and Ms. Maxwell should be permitted to present her defense in whatever format she

chooses, not the format of the government's choosing.

Because Ms. Maxwell does *not* have the payment records, and because the records are

not otherwise procurable, this Court should reject the government's argument.[4]

> 2.   *Claim Release Forms.*

The claim release forms are not otherwise procurable, and this *Nixon* factor is satisfied.

The EVCP partially disagrees with this argument: "at least two courts in this district have

ordered plaintiffs to produce their EVCP releases to Maxwell (in one case with the amount

---

[4] The government's alternative request that the EVCP produce the records to the Court for *in camera* review is bizarre, Govt. Mot. at 3, for that is exactly what Ms. Maxwell requested in her motion. Mot. at 1 ("The document should be returned to this Court for an *in camera* review and, subject to this Court's review, disclosed to the defense to be used for impeachment of the witnesses at trial.").

The Honorable Alison J. Nathan
November 22, 2021
Page 17

redacted), so she is already aware of the content of the EVCP's general release." EVCP Mot. at

11-12. As is implicit in this argument, however, Ms. Maxwell does not have all or even complete

releases from each accuser.

Ms. Maxwell has a redacted release from Accuser-2 and a release from Accuser-1.[5] But

she does not have releases from either Witness-3 or Accuser-4. Nor does Ms. Maxwell know if

those releases are identical to Accuser-1's redacted release or Accuser-2's release.

Conspicuously, the EVCP makes no representation that the content of the releases is identical.

EVCP Mot. at 12. Ms. Maxwell thus cannot assess what her accusers gave up in exchange for

millions of dollars and whether they might even have released claims against Ms. Maxwell

herself. Nor can she use the releases she does not have (and the one she does) as trial exhibits in

this case.

> 3.  *Materials Submitted to the EVCP.*

No one disputes that the submitted materials are not otherwise procurable. This *Nixon*

factor is satisfied.

> 4.  *Communications.*

No one disputes that the communications are not otherwise procurable. This *Nixon* factor

is satisfied.

---

[5] For the release from Accuser-1, it was produced under restriction, and to use it during
this trial, ███████████████████████████████████████████████████████
███████████████████████████████████████████

The Honorable Alison J. Nathan
November 22, 2021
Page 18

**F.      Compliance with the subpoena would not be unreasonable or oppressive.**

Three of the motions argue that compliance with the subpoena would be unreasonable

and oppressive because the accusers were guaranteed confidentiality under the EVCP Protocol.

EVCP Mot. at 9-12; Accuser-2 Mot. at 4-6; Witness-3 Mot. at 2-3. The government does not

make such an argument. Gov. Mot. at 1-6. Some motions even imply that the confidentiality of

the materials is reason enough to quash the subpoena. Accuser-2 Mot. at 4-6; Witness-3 Mot. at

2-3.

First, even if the materials are confidential, this Court cannot quash the subpoena on that

basis alone. Rule 17 addresses the process for subpoenaing "personal or confidential information

about a victim." Fed. R. Crim. P. 17(c)(3). If confidential materials couldn't be subpoenaed, Rule

17(c)(3) would be superfluous.

In fact, under the express language of Rule 17, the only difference between a subpoena

for confidential information and a subpoena for non-confidential information is that the former

can be issued "only by court order" with notice to the victim. Fed. R. Crim. P. 17(c)(3). The

terms of Rule 17 do not require a heightened justification before a defendant can subpoena

confidential information, and they do not demand special treatment for motions to quash when

confidential information is at issue. *Id.*[6]

---

[6] Courts in this district have even authorized defense subpoenas when the information
sought is arguably privileged. *E.g.*, *United States v. Rajaratnam*, 753 F. Supp. 2d 317, 324-25
(S.D.N.Y. 2011) (denying motion to quash defense subpoena for tax returns even though the
returns might be privileged, saying "cases demonstrate . . . a potential exception to the tax return
privilege where, as here, the interests in truth and a criminal defendant's rights are both
implicated").

The Honorable Alison J. Nathan
November 22, 2021
Page 19

In any case, there are several reasons that concerns about confidentiality should not weigh heavily here. First, the EVCP imposes no confidentiality requirement on the accusers, who are free to discuss their submissions to and communications with the EVCP. Protocol, p 9 ("Individual claimants are not bound through the Program by any rules of confidentiality."). In turn, because Ms. Maxwell can compel her accusers to testify about their submissions to and communications with the EVCP, *see* U.S. Const. amend. VI, there is no reason to prevent Ms. Maxwell from subpoenaing the submissions and communications themselves. Again, Ms. Maxwell is not required to accept her accusers' assurances that the story they are telling the jury is the same they told to the EVCP.

More to the point, the accusers have repeatedly exercised their freedom to discuss the alleged abuse. Three of the four have filed public lawsuits against Mr. Epstein and/or Ms. Maxwell, and they have repeatedly publicized their claims. The accusers cannot with a straight face claim this information is confidential. There's no putting the horse back in the barn.

For example, ████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

The Honorable Alison J. Nathan
November 22, 2021
Page 20



Annie Farmer (Accuser-2) has eschewed confidentiality at every opportunity. She sued in

her own name in this court against Mr. Epstein and Ms. Maxwell. *See* Dkt. No. 1, *Annie Farmer*

*v. Indyke,* Case No. 19-cv-10475 (LGS) (Nov. 12, 2019). She spoke publicly and using her real

name at the Epstein bail hearing and case dismissal hearings, even though she was not a named

victim in that case. Dkt. No. 36, *United States v. Epstein,* Case No. 19-cr-490 (RMB) (July 15,

2019). She has appeared (with her face in full view) in the *Netflix* documentary using her real

name, on *Dateline*, 20/20, and many podcasts. All of these public statements reflect the same

facts and circumstances alleged in this criminal case. She is represented by David Boies and

Sigrid McCawley, who also represent Ms. Giuffre and numerous other Epstein-accusers. Mr.

Boies and Ms. McCawley have been prime advocates for the unsealing of all the filings in the

*Giuffre v. Maxwell* litigation before Judge Preska. *See generally* Dkt. Nos. 945 et seq., *Giuffre v.*

*Maxwell*, Case No. 15-cv-7433 (LAP).

The Honorable Alison J. Nathan
November 22, 2021
Page 21

Witness-3 is █████████████████████████████████████████████

█████████████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████████████████

███████████████████████████

Finally, Accuser-4 has widely publicized her account of being abused by Mr. Epstein, an account that only very recently came to include Ms. Maxwell. Accuser-4 was first contacted by the FBI in 2007. She was interviewed on August 7, 2007, by Special Agents Nesbitt Kuyrkendall and Jason Richards and asked the alleged abuse. According to Accuser-4, during that interview, she was recruited to perform sex acts with Mr. Epstein by Ms. Giuffre in the 2002-2003 timeframe. Accuser-4 did not identify Ms. Maxwell as someone who recruited her, groomed her, or otherwise interacted with her in Palm Beach, Florida, or any other location. Accuser-4 identified Sarah Kellen as someone she interacted with and who took nude photographs of her at Mr. Epstein's direction. She advised the agents that she became pregnant in 2003 and moved to Georgia.

After her FBI interview, ████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

The Honorable Alison J. Nathan
November 22, 2021
Page 22

██████████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████

              ███████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████ She did not identify Ms. Maxwell as

having had any role in any alleged sexual abuse or trafficking.

        Accuser-4 ██████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████

        Accuser-4 has ██████████████████████████████████

█████████████ .

        Like the other accusers, Accuser-4's ██████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████

              ████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████

The Honorable Alison J. Nathan
November 22, 2021
Page 23

████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████ they cannot reasonably claim an entitlement to

confidentiality when that entitlement must be balanced against the truth-seeking function of a

criminal trial, Ms. Maxwell's constitutional rights to present a defense and to confrontation, and

the stakes involved should Ms. Maxwell be convicted.

This Court need not consider whether other claimants have stronger claims to

confidentiality than the accusers in this case. Ms. Maxwell does not seek production of materials

related to other claimants, and there is no reason to think that production of the materials related

to Ms. Maxwell's accusers—who have not acted to keep confidential their claims against Mr.

Epstein and Ms. Maxwell—will somehow impair the functioning of the EVCP in working with

others. Indeed, the EVCP is now closed and there is no more work to be done—the cut-off for

claims has passed, the money has been paid, and the fund is closed.

Moreover, the lack of an objection by either Accuser-1 or Accuser-4 belies the argument

that compliance with Ms. Maxwell's subpoena would be unreasonable or oppressive, at least as

to them. *See Nachamie*, 91 F. Supp. 2d at 564 (concluding compliance would not be

unreasonable or oppressive, even though the government moved to quash, given "the absence of

objections from all but one doctor").

Finally, Ms. Maxwell's due process right to equal treatment would be violated were she

not entitled to inspect the materials simply because they are "confidential." U.S. Const. amend.

V. The judicial promise of confidentiality Ms. Maxwell received in *Giuffre v. Maxwell* turned

out to be illusory after the government secured an *ex parte* modification of the protective order

The Honorable Alison J. Nathan
November 22, 2021
Page 24

behind Ms. Maxwell's back and under the nose of the presiding judge. This Court and Chief

Judge McMahon concluded that Ms. Maxwell could not have reasonably relied on the protective

order's promise of confidentiality because the order was subject to modification and because of

the overriding interest in the "truth-seeking function of the judicial process." June 25, 2021

Order, p 13, 17-18.

If that is true, then it's equally true that Ms. Maxwell's accusers cannot reasonably expect

their submissions to and communications with the EVCP to remain confidential for all time and

for all purposes. The EVCP Protocol expressly provides that its confidentiality guarantee is

"subject to law, regulation and judicial process." And in view of the "truth-seeking function of

the judicial process" and Ms. Maxwell's constitutional rights to present a defense and confront

her accuses, any remaining interest in confidentiality must give way.

## CONCLUSION

Ms. Maxwell's subpoena is narrow, specific, and targeted. It seeks only that evidence

which is relevant to her defense and admissible at trial. Although the concerns about

confidentiality are overblown, Ms. Maxwell nevertheless has asked that this Court review the

material *in camera* before turning it over to the defense. That *in camera* review would provide

another layer of protection, even as there is no reason to think that Ms. Maxwell is on a fishing

expedition.

Accordingly, and for the reasons given above, Ms. Maxwell requests that this Court deny

the motions to quash.

The Honorable Alison J. Nathan
November 22, 2021
Page 25

Respectfully submitted,

_____
 Jeffrey S. Pagliuca
 Laura A. Menninger
 HADDON, MORGAN & FOREMAN P.C.
 150 East 10th Avenue
 Denver, CO 80203
 Phone: 303-831-7364

 Christian R. Everdell
 COHEN & GRESSER LLP
 800 Third Avenue
 New York, NY 10022
 Phone: 212-957-7600

 Bobbi C. Sternheim
 Law Offices of Bobbi C. Sternheim
 225 Broadway, Suite 715
 New York, NY 10007
 Phone: 212-243-1100

 *Attorneys for Ghislaine Maxwell*

cc: Counsel of record (by email)