**Smith Villazor** LLP
250 West 55th Street, 30th Floor
New York, New York 10019
www.smithvillazor.com

Patrick J. Smith
patrick.smith@smithvillazor.com
**T**   212.582.4400

SMITH | VILLAZOR

November 19, 2021

**BY E-MAIL to NathanNYSDChambers@nysd.uscourts.gov**
The Honorable Alison J. Nathan
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

Re:     *United States v. Maxwell*, No. 20 Cr. 330

Dear Judge Nathan:

We represent Jordana H. Feldman, the independent, neutral administrator of the Epstein

Victims' Compensation Program (the "EVCP").  Pursuant to the Court's memo-endorsement of

our letter dated November 15, 2021, we respectfully move to quash defendant Maxwell's

subpoena directed to Ms. Feldman for certain documents of the EVCP concerning four victims.

The EVCP is a court-approved, litigation-alternative program established to resolve

confidentially claims of sexual abuse against Jeffrey Epstein, his Estate, and other related

individuals and entities.  Protecting the confidentiality of EVCP claimants' information is a

cornerstone of the program and essential to its success.  In program documents, press releases,

and on its website, the EVCP and Ms. Feldman repeatedly emphasized the program's promise of

confidentiality.  That promise allowed for participation by victims who otherwise would have

been reluctant to share their stories.  It also encouraged victims to compromise claims that might

otherwise have taken up substantial judicial resources.  Only a confidential program can

November 19, 2021
Page Two

effectively achieve the EVCP's important societal goals of providing redress to victims and efficiently resolving civil claims outside the glare of a public proceeding.  Because Maxwell's subpoena would compromise that confidentiality and eviscerate the foundation of the EVCP and similar programs, compliance would be "unreasonable or oppressive" under Federal Rule of Criminal Procedure 17(c)(2).  And because Maxwell's subpoena seeks information that is largely (if not entirely) inadmissible under Federal Rule of Evidence 408, it fails the test in *United States v. Nixon*, 418 U.S. 683, 702 (1974).  Maxwell also seeks to subpoena statements of a witness or prospective witness that are not subject to subpoena under Federal Rule of Criminal Procedure 17(h).  The subpoena should be quashed in its entirety.

## Background

This background information comes principally from Ms. Feldman's declaration, which is submitted with this motion,[1] and public documents about the EVCP, also attached as exhibits.

### A.  Formation and Development of the EVCP

In November 2019, the co-executors of Epstein's estate (the "Epstein Estate") sought approval from a U.S. Virgin Islands court (where the Epstein Estate is being probated) to create a voluntary claims resolution program for victims of Epstein's sexual abuse.[2]  The program's design was led by Ms. Feldman, Kenneth R. Feinberg, and Camille S. Biros—all nationally recognized claims-administration experts.[3]  Mr. Feinberg is the nation's leading expert in crafting effective dispute resolution alternatives, and, with Ms. Biros, they have designed and

---

[1] Ex. A (Decl. of Jordana H. Feldman in Supp. of Mot. to Quash Rule 17(c) Subpoena ("Feldman Decl.")).

[2] Ex. B at 1 (Press Release, "Administrator Jordana H. Feldman Announces Proposed Establishment of the Epstein Victims' Compensation Program," dated Nov. 14, 2019 ("11/14/19 Press Release")).

[3] Ex. C at 1 (Press Release, "Renowned Claims Resolution Experts Announce Commencement of the Epstein Victims' Compensation Program," dated June 25, 2020 ("6/25/20 Press Release")); *see* Ex. A ¶ 3 (Feldman Decl.).

November 19, 2021
Page Three

administered other large-scale, complex compensation programs, including for the Catholic

Church sexual abuse claims, the Penn State sexual abuse claims, and the September 11th Victim

Compensation Fund.[4]  Ms. Feldman previously served as the Deputy Special Master of the

September 11th Victim Compensation Fund.[5]  Ms. Feldman is the independent, neutral third-

party administrator of the EVCP, and she has "complete autonomy and decision-making

authority over program operations and claim determinations."[6]

Ms. Feldman, Mr. Feinberg, and Ms. Biros designed the program with input and support

from attorneys representing over 70 victims, the Attorney General for the Virgin Islands, the

Epstein Estate, and other interested parties.[7]  Among many other tasks, they developed a

Protocol for administering the program and handling claims,[8] a set of frequently asked

questions,[9] and a website providing information about the program (including the Protocol and

FAQs) and through which individuals could register and submit their claims.[10]

The U.S. Virgin Islands court heard testimony from Ms. Feldman and Mr. Feinberg about

the proposed Protocol in February 2020.[11]  Both witnesses publicly testified about the

confidentiality protections the Protocol would provide to claimants.[12]  And the promise of

confidentiality was necessary in gaining interested parties' support for the program.[13]  On June 2,

---

[4] Ex. B at 1 (11/14/19 Press Release); Ex. C at 1 (6/25/20 Press Release).
[5] Ex. A ¶ 3 (Feldman Decl.).
[6] Ex. B at 1 (11/14/19 Press Release).
[7] Ex. C at 1 (6/25/20 Press Release).
[8] Ex. D (the "Protocol," dated May 29, 2020).
[9] Ex. E (the "FAQs," dated June 25, 2020).
[10] *See* https://www.epsteinvcp.com/ (last visited November 18, 2021).
[11] *See* Ex. A ¶ 10 (Feldman Decl.).
[12] Ex. H at 111:1-111:16, 118:9-118:24 (Ms. Feldman's testimony) and 170:25-171:25, 180:23-182:8 (Mr. Feinberg's testimony).
[13] *See* Ex. A ¶¶ 7-8, 12 (Feldman Decl.).

November 19, 2021
Page Four

2020, the U.S. Virgin Islands probate court approved the EVCP as designed.[14]  On June 25,

2020, the EVCP announced that individuals could begin the process of filing claims.[15]

In her motion seeking approval for the subpoena, Maxwell makes at least two

mischaracterizations of the Protocol for evaluating a claimant's eligibility for compensation.

First, she says that the Protocol "credits" victims "who have had charges filed against Epstein or

any employee of Epstein."[16]  The Protocol does no such thing.  It simply identifies the existence

of any information or findings of law enforcement as one factor to be considered, as part of a

non-exhaustive list of "appropriate factors and corroborative support" that the administrator may

consider in evaluating claims.[17]  Maxwell also mischaracterizes the Protocol when she says that

it "rewards Accusers who have filed a lawsuit, legal action or claim of sexual abuse."[18]  This is

inaccurate.  As the Protocol makes clear, the existence of "lawsuit[s], legal action[s] or claim[s]"

was used to identify individuals as potential victims to send them claim forms.[19]  Individuals

who had not previously filed a lawsuit, legal action, or claim were also invited to register a claim

with the EVCP.[20]

B.   *Key Features of the EVCP*

The EVCP was designed with non-exclusive "key features" to provide "an efficient and

fair resolution of claims" on a "voluntary, non-adversarial, [and] confidential" basis.[21]  For

example, the EVCP operates "entirely free from any interference or control by the Epstein

---

[14] Ex. G (order of the Superior Court of the Virgin Islands Division of St. Thomas and St. John, dated June 2, 2020); *see* Ex. A ¶¶ 8, 13 (Feldman Decl.).
[15] Ex. C (6/25/20 Press Release).
[16] Maxwell's Mot. for an Order Authorizing a Subpoena Pursuant to Fed. R. Crim. P. 17(c)(3), dated Nov. 14, 2021 ("Maxwell Mot."), at 3, 5.
[17] Ex. D at 5-6 (Protocol); *see* Ex. A ¶ 16 (Feldman Decl.).
[18] Maxwell Mot. at 3, 5.
[19] Ex. D at 4 (Protocol); *see* Ex. A ¶ 16 (Feldman Decl.).
[20] Ex. D at 4 (Protocol).
[21] *See* https://www.epsteinvcp.com/; *see also* Ex. D at 1-2 (Protocol).

November 19, 2021
Page Five

Estate."[22]  The program is also "purely voluntary"; claimants' rights are not impacted unless and until they accept an offer of compensation and execute a release.[23]  Victims were also eligible to participate "regardless of where they were harmed, when they were harmed, whether the claim is time-barred by the applicable statute of limitations, and whether they have previously filed a lawsuit against or settled with Epstein and/or the Estate."[24]

And as critically relevant here, the EVCP is confidential.[25]  The EVCP and Ms. Feldman repeatedly emphasized the importance of confidentiality to the integrity of the program and the assurance that the EVCP would keep confidential victims' participation in the program and any documents and other information submitted to, maintained by, exchanged with, or distributed by the program.[26]  Ms. Feldman's probate-court testimony, the Protocol, the FAQs, the EVCP website, and EVCP press releases all highlight the program's promise to maintain confidentiality of claimants' information and how that promise is a "cornerstone" of the EVCP.[27]  Victims relied upon the condition of strict confidentiality in agreeing to support the existence of the Program and in deciding to participate in the claims process.[28]

---

[22] *See* https://www.epsteinvcp.com/; *see also* Ex. D at 1 (Protocol).
[23] Ex. D at 1 (Protocol).
[24] Ex. D at 2 (Protocol).
[25] Ex. D at 2, 6, 8-9 (Protocol).
[26] Ex. A ¶¶ 8-12 (Feldman Decl.).
[27] *See*:
- Ex. H at 111:1-111:16, 118:9-118:24 (testimony).
- Ex. D at 8-9 (Protocol section on "Confidentiality/Privacy").
- Ex. E at 9 (FAQs no. 11).
- https://www.epsteinvcp.com/ (website noting claimant privacy of "paramount importance").
- Ex. C at 2 (6/25/20 Press Release noting claimant privacy of "paramount importance").
- Ex. F at 1 (8/9/21 Press Release noting confidentiality "critical to the success" and a "cornerstone" of the EVCP).
[28] *See* Ex. A ¶¶ 7-8, 12 (Feldman Decl.).

November 19, 2021
Page Six

### C.  The Critical Importance of Confidentiality to the EVCP and Similar Programs

Ms. Feldman's declaration explains why confidentiality is so critical to programs like the

EVCP.[29]  As she notes, "it can be incredibly difficult for victims of sexual abuse to share such

deeply personal, intimate, private information about their experiences and the impact it has had

on their lives," and many victims "suffer from a loss of trust and confidence in individuals in

positions of authority."[30]  The EVCP sought to create an environment where claimants did not

feel a need to "censor themselves" about their experiences.[31]  Creating that environment simply

would not be possible without strong assurances of confidentiality.  As expressed to Ms.

Feldman by victims' attorneys and victims themselves, "many victims were initially reluctant to

participate in the EVCP – or would have refused to participate – without an express assurance of

confidentiality."[32]

Any intrusion on that promise would threaten the foundation of the program.  As Ms.

Feldman explains, "[c]ompromising confidentiality in any way would eviscerate the very

foundation and fabric of the EVCP, and would have a disastrous chilling effect on victims."[33]

Compelling the EVCP to disclose the information it promised to keep confidential would be

"anathema to the integrity of this Program and others like it" and "would turn the Program on its

head with far-reaching consequences to this victim population and beyond"—meaning for the

EVCP and the viability of other past, existing, and future litigation-alternative victim

compensation programs.[34]  Ms. Feldman is unaware of any other instance in which an

---

[29] See Ex. A ¶¶ 5-14 (Feldman Decl.).
[30] Ex. A ¶ 6 (Feldman Decl.).
[31] Ex. A ¶¶ 8-12 (Feldman Decl.).
[32] Ex. A ¶ 7 (Feldman Decl.).
[33] Ex. A ¶ 13 (Feldman Decl.).
[34] Ex. A ¶¶ 13-14 (Feldman Decl.).

November 19, 2021
Page Seven

administrator of a program like the EVCP was required to disclose materials like those Maxwell

seeks here.[35]

### D.  The EVCP's Success

As of August 2021, when the EVCP announced that it had concluded its claimant-facing

operations, the EVCP had awarded nearly $125 million to approximately 150 eligible claimants;

ninety-two percent of eligible claimants accepted their offers, and the EVCP paid over $121

million to those claimants.[36]  The EVCP received about 225 claims, which far exceeded the

original expectation of about 100 claims.[37]

### E.  Procedural History

In April 2021, Maxwell sought authorization to subpoena the law firm Boies Schiller for

materials it submitted to EVCP on behalf of certain claimants.  This Court denied the request,

finding that Maxwell appeared to seek the materials for impeachment purposes, and that "the

mere fact that certain documents might be impeachment evidence does not render them

'relevant' for purposes of Rule 17(c); if at all, those documents would become relevant only after

a witness testifies."[38]  The Court also held that Maxwell "may renew her request for these

documents once she identifies specific individuals whose submissions she seeks and spells out

with specificity the relevance of all requested materials.  At that time, the Court will determine

whether it is proper to require production of these materials to the Court so that the information

---

[35] Ex. A ¶ 14 (Feldman Decl.); *see also* Ex. H at 180:23-182:8 (testimony of Mr. Feinberg noting that, in his forty years of experience, no law enforcement agency had sought materials from a program and, invoking his experience with the compensation programs to resolve sexual abuse claims against the Catholic church, cautioning against attempts to obtain claimant information when "individual victims have participated in a program on the absolute guarantee of the administrator that information that have been submitted will not be disclosed to anybody").
[36] Ex. F at 1 (8/9/21 Press Release).
[37] Ex. F at 1 (8/9/21 Press Release).
[38] Order, dated Apr. 27, 2021, at 7 (ECF No. 252).

November 19, 2021
Page Eight

may be made available to Maxwell, if appropriate, at the conclusion of each witness's direct testimony."[39]  Maxwell also appears to have sought subpoenas directed to "four individuals seek[ing] similar materials," including EVCP materials, a request this Court denied in August 2021, again without prejudice to renewal.[40]

On November 15, 2021, we learned that Maxwell sought leave to serve a subpoena on Ms. Feldman for certain EVCP documents and that the Court intended to authorize the subpoena. That same day, we informed the Court that we were authorized to accept service of the subpoena and that Ms. Feldman intended to move to quash it.  We received a copy of the subpoena on November 16, 2021.  The subpoena requests four categories of materials from four individual victims:  (i) "EVCP Material" (as defined in the subpoena) for the four victims; (ii) communications between the EVCP and the four victims "and/or their Attorneys"; (iii) copies of payments to the victims "and/or their Attorneys"; and (iv) any releases that the four victims executed.

The government filed its motion to quash the subpoena yesterday, which provides ample basis to quash the subpoena.  Ms. Feldman sets forth the following additional reasons to quash the subpoena.

---

[39] Order at 7-8 (ECF No. 252).
[40] Opinion and Order, dated Aug. 13, 2021, at 2, 5, 10 (ECF No. 334).

November 19, 2021
Page Nine

**Argument**

The subpoena should be quashed because (i) compliance would be unreasonable or oppressive; (ii) it seeks documents that are inadmissible under Rule 408 of the Federal Rules of Evidence; and (iii) it seeks "statements" of a witness that are not subject to subpoena under Rule 17(h) of the Federal Rules of Criminal Procedure.

    A. *Compliance with the subpoena would be unreasonable or oppressive.*

Under Federal Rule of Criminal Procedure 17(c)(2), the Court "may quash or modify the subpoena if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2). The determination of whether compliance would be unreasonable or oppressive is "committed to the sound discretion of the trial court." *United States v. Nixon*, 418 U.S. 683, 702 (1974). Compliance may be unreasonable or oppressive if the subpoena seeks information protected by "constitutional, statutory, or common-law privilege[s]," or if the subpoena is "irrelevant, abusive or harassing, overly vague, or excessively broad." *In re Grand Jury Subpoena for THCF Med. Clinic Recs.*, 504 F. Supp. 2d 1085, 1088 (E.D. Wash. 2007) (citations omitted) (quashing subpoena under Rule 17(c)(2)). In addition, "[c]ourts have relied on Rule 17(c) to quash a subpoena that intrudes gravely on significant interests outside the scope of a recognized privilege, if compliance is likely to 'entail consequences more serious than even severe inconveniences occasioned by irrelevant or overbroad requests for records.'" *THCF Med. Clinic Recs.*, 504 F. Supp. 2d at 1088 (quoting *In re Grand Jury Matters*, 751 F.2d 13, 18 (1st Cir. 1984)).

Here, it would be unreasonable or oppressive to require a court-approved victims' compensation program whose effectiveness depends on maintaining the confidentiality of victims' information to produce the very information it promised to keep confidential.

November 19, 2021
Page Ten

Confidentiality was a "cornerstone" of the EVCP,[41] "critical" to its success,[42] and of "paramount importance."[43]  Confidentiality was an indispensable term necessary to interested parties' support for the EVCP.[44]  Without the expectation of confidentiality, many victims would not have participated, and the whole purpose of the program would have been frustrated.[45]

The Supreme Court in *Nixon* recognized—in the context of a President's claim of confidentiality over communications with advisors—that the "interest in preserving confidentiality is weighty indeed and entitled to great respect." *Nixon*, 418 U.S. at 712.  And while the Supreme Court ultimately upheld the denial of a motion to quash given that the President's confidentiality concerns were "general in nature" and would "not be vitiated by disclosure of a limited number of conversations," *id.* at 713, the facts here show that the EVCP has a particularized interest in maintaining the confidentiality of sexual-abuse victims' information and that opening the door to any such disclosures poses a real risk of "vitiat[ing]" such a program's effectiveness, *id.*, and would "turn the Program on its head with far-reaching consequences to this victim population and beyond."[46]

Indeed, as another district court held in quashing a subpoena under Rule 17(c)(2), "individuals could be deterred from participating in the program if it were possible for" outside parties "to obtain this type of information." *THCF Med. Clinic Recs.*, 504 F. Supp. 2d at 1090-91 (quashing subpoena under Rule 17(c)(2) that sought information about participants in state-run medical marijuana program and recognizing the state's interest in "keeping its contract with its citizens to preserve the confidentiality of their records").  The existence of the U.S. Virgin

---

[41] Ex. F at 1 (8/9/21 Press Release) (statement of Ms. Feldman).
[42] Ex. F at 1 (8/9/21 Press Release).
[43] Ex. C at 2 (6/25/20 Press Release).
[44] *See* Ex. A ¶¶ 7-8, 12 (Feldman Decl.).
[45] *See* Ex. A ¶¶ 7-14 (Feldman Decl.).
[46] Ex. A ¶¶ 13-14 (Feldman Decl.).

November 19, 2021
Page Eleven

Islands' probate court order approving the program—and the associated, mandatory

confidentiality protections of the Protocol—provides yet another reason to quash the subpoena.[47]

*See THCF Med. Clinic Recs.*, 504 F. Supp. 2d at 1090 (quashing subpoena in part where, by

complying, state "would be violating its own laws").  Because compliance would be

unreasonable or oppressive, this Court should quash the subpoena.

Compliance would also be unreasonable or oppressive because all the information

Maxwell seeks is "otherwise procurable" or, indeed, already in Ms. Maxwell's possession.  *See*

*United States v. Pena*, No. 15 Cr. 551 (AJN), 2016 WL 8735699, at *2 (S.D.N.Y. Feb. 12, 2016)

(subpoena proponent must show materials are "not otherwise procurable" (citation omitted)).  As

noted, Maxwell previously sought to subpoena Boies Schiller and four individuals for EVCP

material and was denied without prejudice,[48] but she apparently has not sought to renew those

requests.  Instead, she decided to direct her subpoena at a different source:  the EVCP's

administrator.  While the EVCP cannot divine the reason behind that shift in legal strategy, it

appears as if she is attempting to do an end run around the Court's prior rulings or believes that

renewing those requests will be unfruitful.  The EVCP is not suggesting that Ms. Maxwell renew

her earlier requests directed at EVCP claimants.  The EVCP believes that no participant should

be required to turn over their confidential submissions against their wishes.  But there are

alternative ways to obtain the information she seeks, such as on cross-examination at trial, to the

extent permissible.  And—in the case of releases Maxwell seeks—at least two courts in this

---

[47] *See* Ex. A ¶ 13 (Feldman Decl.).
[48] ECF Nos. 252, 334.

November 19, 2021
Page Twelve

district have ordered plaintiffs to produce their EVCP releases to Maxwell (in one case with the amount redacted), so she is already aware of the content of the EVCP's general release.[49]

Forcing the EVCP to turn over information it promised all claimants it would keep confidential—an indispensable condition that victims relied upon—would "disembowel the very core" of this program and others like it.[50]  Compliance would be unreasonable and oppressive and, accordingly, this Court should quash the subpoena.

### B.   *The documents sought are inadmissible under Federal Rule of Evidence 408.*

The subpoena should also be quashed because the records sought are inadmissible under Federal Rule of Evidence 408.  Rule 17(c), in general, authorizes subpoenas returnable before trial, as well as subpoenas returnable at trial "to obtain impeachment material."  *United States v. Donziger*, No. 19-CR-561 (LAP), 2021 WL 1865376, at *4 (S.D.N.Y. May 10, 2021).  The test set forth in *Nixon* "governs both varieties" of subpoenas.  *Donziger*, 2021 WL 1865376, at *4.  Under *Nixon*, the subpoena must "clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity."  *Nixon*, 418 U.S. at 700.  Here, Maxwell's subpoena fails, at a minimum, to clear the admissibility hurdle, because Rule 408 makes the documents sought largely, if not entirely, inadmissible.

Under Rule 408(a), evidence of accepting a valuable consideration to compromise a claim, as well as statements or conduct made in connection with negotiations about the claim, are "not admissible—on behalf of any party—either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction."  Fed. R. Evid. 408(a).  Inadmissibility under Rule 408 provides a basis to quash a Rule 17(c) subpoena.  *See*

---

[49] *See* Order, dated Feb. 16, 2021 (ECF No. 120), at 2 in *Farmer v. Indyke*, 19 Civ. 10475 (S.D.N.Y.); Order, dated Mar. 19, 2021 (ECF No. 102) ¶ 2, in *Doe v. Indyke*, 20 Civ. 484 (S.D.N.Y.).
[50] Ex. A ¶ 14 (Feldman Decl.).

November 19, 2021
Page Thirteen

*United States v. Carton*, No. 17 CR 680 (CM), 2018 WL 5818107, at *5 (S.D.N.Y. Oct. 19,

2018) (quashing subpoena seeking a "forbearance agreement," citing Rule 408).

    The documents Maxwell seeks here fit within the exclusionary provisions of Rule 408.[51]

The documents sought—submissions to the EVCP, including claim forms; communications

between the EVCP and the victims or their attorneys; records of payments; and releases—

constitute evidence of either "furnishing, promising, or offering—or accepting, promising to

accept, or offering to accept—a valuable consideration in compromising or attempting to

compromise the claim," Fed. R. Evid. 408(a)(1), or "conduct or a statement made during

compromise negotiations about the claim," *Id.* 408(a)(2).

    The Protocol makes clear that by submitting a claim, "a Claimant is seeking to resolve all

claims relating to allegations of sexual abuse against Epstein and/or the Estate, and related

entities and individuals as set forth in the Release."[52]  And it also makes that clear that "[a]ll

parties agree that they are using the services of a third-party administrator to help reach a

resolution of individual claims of sexual abuse."[53]  The Protocol provides that "this Program is

entitled to confidentiality, privileges (mediation, settlement and all other pertinent privileges),

---

[51] It is true that, in 1996, the Second Circuit held that Rule 408 "does not require exclusion of evidence relating to a civil settlement in a criminal trial."  *Manko v. United States*, 87 F.3d 50, 51 (2d Cir. 1996).  But in 2006, the rule was amended to make clear that it applies in that circumstance.  As the Seventh Circuit has noted:  "In 2006 the Supreme Court promulgated an amendment to Rule 408 demonstrating that at least the new version (which took effect on December 1, 2006) applies to criminal cases."  *United States v. Roti*, 484 F.3d 934, 936 (7th Cir. 2007); *see* 2006 advisory committee note to Rule 408 (noting "statements made during compromise negotiations of other disputed claims are not admissible in subsequent criminal litigation, when offered to prove liability for, invalidity of, or amount of those claims"); *see also* Fed. R. Evid. 1101(b) (rules of evidence apply in criminal proceedings).  And the Second Circuit has since addressed the substance of a Rule 408 argument on a criminal appeal, without reference to *Manko* or to any possibility that Rule 408 was inapplicable in criminal cases.  *See United States v. Wahl*, 563 F. App'x 45, 50-51 (2d Cir. 2014).
[52] Ex. D at 7 (Protocol).
[53] Ex. D at 8 n.1 (Protocol).

November 19, 2021
Page Fourteen

and protection from disclosure under applicable law."[54]  That the EVCP was designed to invoke the exclusionary protections of provisions like Rule 408 is plain.

As such, the documents Maxwell seeks are not admissible "on behalf of any party" to either prove or disprove the validity of a claim or—as especially important here, given the Court's prior recognition that Maxwell sought EVCP Material from Boies Schiller "for impeachment"[55]—to "impeach by a prior inconsistent statement or a contradiction."  Fed. R. Evid. 408(a).  Because the documents are inadmissible, the subpoena fails to meet the *Nixon* test and should be quashed.

Rule 408's limited exceptions to inadmissibility are not applicable here and do not favor upholding the subpoena.  First, while Rule 408(a)(2) provides a limited exception to inadmissibility for statements or conduct "when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority," that exception does not apply here, where the underlying claims (*i.e.*, the victims' claims for sexual abuse against Epstein) were private matters, not "related to a claim by a public office."  *See United States v. Davis*, No. Crim. 09-343, 2009 WL 3646459, at *3 (E.D. Pa. Nov. 4, 2009) ("Since the agreement was entered into between private parties, it does not fall into the limited exception enunciated in 408(a)(2) involving compromise negotiations with a public agency.").

And while under Rule 408(b), the Court "may admit this evidence for another purpose, such as proving a witness's bias or prejudice," we are unaware of Maxwell having demonstrated how the materials she seeks would demonstrate "bias or prejudice" (including for the reasons in the government's motion) as opposed to being impermissibly used to "impeach by a prior

---

[54] Ex. D at 8 n.1 (Protocol).
[55] ECF No. 252 at 7.

November 19, 2021
Page Fifteen

inconsistent statement or a contradiction." Fed. R. Evid. 408(a). The Court should decline to

uphold the subpoena based on a possible permissible use under Rule 408(b) when the most

readily apparent purpose for the materials is one barred by Rule 408(a).

   C. *Rule 17(h) bars Maxwell from subpoenaing statements of a witness or potential witness.*

      Under Rule 17(h), Maxwell is barred from subpoenaing "a statement of a witness or of a

prospective witness," as the production of any such statements is governed by Rule 26.2. Fed. R.

Crim. P. 17(h). Many of the documents Maxwell seeks are statements of the four victims, such

as their claim forms or any communications they sent to the EVCP (or statements from

representatives of the EVCP. As courts have held, such statements are not subject to subpoena,

even when sought from a third party. *See United States v. Yudong Zhu*, No. 13 Cr. 761 (VM),

2014 WL 5366107, at *3 & n.3 (S.D.N.Y. Oct. 14, 2014) (quashing request under Rule 17(h) for

materials that "likely constitute" statements of a witness or prospective witness and rejecting

argument "that Rule 17(h) applies only to witness statements already in the Government's

possession" (citing *United States v. Vasquez*, 258 F.R.D. 68, 73 (E.D.N.Y.2009)). The Court

should quash the subpoena to the extent it seeks statements of witnesses or prospective

witnesses.

                           *      *      *

      For the foregoing reasons, the Court respectfully should quash the subpoena. We also

respectfully request oral argument on this motion, and we are available should the Court have

any questions.

                           Respectfully submitted,

                           */s/ Patrick J. Smith*

                           Patrick J. Smith
                           Smith Villazor LLP

November 19, 2021
Page Sixteen

cc:    AUSA Alison Moe, AUSA Maurene Comey, AUSA Andrew Rohrbach, AUSA Lara
Pomerantz, Christian R. Everdell, Esq., Jeffrey S. Pagliuca, Esq., Laura A. Menninger,
Esq., Mark Stewart Cohen, Esq., Bobbi C. Sternheim, Esq. (by e-mail)