UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
UNITED STATES OF AMERICA,
                                                             :
                                                                    No. 20 Cr. 330 (AJN)
            v.                                               :

GHISLAINE MAXWELL,                                           :

            Defendant.                                       :

                                                             :
------------------------------------------------------------ X

**Declaration of Jordana H. Feldman in support of**
**Motion to Quash Rule 17(c) Subpoena**

Jordana H. Feldman, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury as follows:

1. I am the independent, neutral third-party administrator of the Epstein Victims' Compensation Program ("EVCP" or "Program"), the litigation-alternative program established to confidentially resolve claims of sexual abuse against Jeffrey Epstein, his Estate, and other related individuals and entities.

2. I respectfully submit this declaration in support of the motion to quash a subpoena directed to me by the defendant Ghislaine Maxwell for certain documents submitted to, communications with, and payments issued by the EVCP. I have personal knowledge of the facts set forth in this declaration.

3. I am a professional in the field of independent claims administration. I previously served as the Deputy Special Master of the September 11th Victim Compensation Fund ("9/11 Fund"), a litigation-alternative program administered by the U.S. Department of Justice to compensate victims who became sick or died as a result of their September 11th-related

1

exposures. I worked for the 9/11 Fund for over ten years before leaving in November 2019 to serve as Co-Designer and Administrator of the EVCP.

4. Compensation programs like the EVCP and the 9/11 Fund are designed as alternative dispute resolution mechanisms through which alleged victims of traumatic events have an opportunity to voluntarily and confidentially resolve related civil tort claims through a non-adversarial administrative process outside of court.

5. Confidentiality is a critical, cornerstone feature in compensation programs like the EVCP and the 9/11 Fund. Preserving confidentiality and preventing the disclosure of all information and/or documentation submitted to, maintained by, exchanged with, and distributed by these programs in order to protect the privacy of claimants is of paramount importance.

6. Confidentiality is particularly important in the EVCP given that it involves claims of sexual abuse and given the history of the Epstein case. In my experience, it can be incredibly difficult for victims of sexual abuse to share such deeply personal, intimate, private information about their experiences and the impact it has had on their lives. To compound that, victims of sexual abuse often suffer from a loss of trust and confidence in individuals in positions of authority as well as a fear of exposure. This is especially true of victims of Jeffrey Epstein, many of whom share a common distrust of the justice system and lack of faith in basic principles of fairness.

7. Against this backdrop, it is not surprising that many victims were initially reluctant to participate in the EVCP – or would have refused to participate – without an express assurance of confidentiality. I had countless conversations with victims' counsel and sexual abuse experts when the Program was being designed in which they vigorously expressed this

sentiment, a sentiment that was also conveyed to me personally, repeatedly and pleadingly by the victims themselves.

8.      With that confidentiality imperative in mind, we designed the EVCP Protocol with input and support from the victims' lawyers, the Attorney General of the U.S. Virgin Islands, the Epstein Estate and other interested parties.  The Protocol was approved by the Probate Court of the U.S. Virgin Islands (where Epstein's estate is being probated); a copy of the court order is included with this motion as Exhibit G.  The Protocol sets out the terms, conditions and guiding principles that govern the Program, the claims process and my role and responsibilities as independent Administrator.  In accordance with the Protocol, I had complete and exclusive autonomy and decision-making authority over all claim determinations and all claim procedures.  The Estate agreed to pay whatever amounts I determined in my independent judgment to eligible claimants in exchange for the claimant releasing the Estate and other related individuals and entities from any civil claims relating to the allegations of sexual abuse.  The Protocol, as well as other information about the EVCP, is publicly available on its website at https://epsteinvcp.com/, and the Protocol is attached to the motion as Exhibit D.

9.      Confidentiality is an indispensable condition of the EVCP; its importance cannot be overstated.  The EVCP Protocol expressly requires confidentiality in order to protect the privacy of claimants.  In accordance with the Protocol, information provided to or obtained by the Program was used by me, in my role as Administrator, for the sole purpose of processing and evaluating claims and performing other Program-related work (such as resolution of any related Medicaid and/or Medicare liens).  It was otherwise kept - and must remain - confidential.  The Protocol provides that the Program's files are not available for inspection or review at any time, and that no information obtained solely through the Program will be disclosed publicly or used

by the Estate in defending itself from any claim, regardless of forum.  And the Protocol expressly authorizes the destruction of Program files to protect the privacy of claimants participating in the Program.

10.     In addition to the Protocol, I testified in open court in the Probate Court in the U.S. Virgin Islands about the confidentiality requirement imposed on the Program, as did Kenneth R. Feinberg, who was a Co-Designer of the EVCP.  A copy of relevant excerpts of the transcript is attached to the motion as Exhibit H, and the relevant testimony appears at pages 111:1-111:16, 118:9-118:24 (my testimony) and pages 170:25-171:25, 180:23-182:8 (Mr. Feinberg's testimony).  I posted FAQs on the EVCP website that address the scope and assurance of confidentiality.  A copy of the EVCP FAQs is attached to the motion as Exhibit E (see Questions 5, 6 and 11).  I also issued several press releases during the claims process that highlight confidentiality as a "cornerstone" of the EVCP and of "paramount importance."  Copies of EVCP press releases are attached as Exhibits B, C, and F.  Through numerous public forums, confidentiality was discussed as a centerpiece of the Program.

11.     The express condition of confidentiality significantly informed the way I administered the Program and approached the claims process.  I implemented a trauma-informed process where claimants could share information freely and openly without feeling the need to censor themselves - not only about the events that gave rise to the claim but also the often profound impact on their lives.  I spent months building trust and confidence in this alternative dispute resolution process among claimants and their attorneys – a process that was new and unfamiliar to many of them.  I dispensed with formal rules of procedure or evidence that would apply in a court of law in favor of a less formal, non-adversarial approach.  And I implemented

extensive measures to safeguard the confidentiality and security of all information submitted to, maintained by, exchanged with and distributed by the Program.

12. With the express assurance of confidentiality, and without the formality of court proceedings or fear of exposure and cross examination, victims agreed to participate in the Program, let their guards down and share exceedingly intimate, private information.  Claimants relied upon the express condition and assurances of confidentiality in agreeing to support the very existence of the Program, in deciding to participate in the claims process, and in submitting their claims and any other information to the EVCP.  They were willing to trust this process, despite deep-seated distrust of purported systems of "justice," because of Program confidentiality.

13. Compromising confidentiality in any way would eviscerate the very foundation and fabric of the EVCP, and would have a disastrous chilling effect on victims who are already loath to disclose such personal information.  The idea that the information the victims agreed to disclose to the EVCP solely for purposes of evaluation and potential resolution of the claim would be disclosed to anyone outside the EVCP for any other purpose is anathema to the integrity of this Program and others like it.  The Program and Protocol were approved by a court order from the Probate Court in the U.S. Virgin Islands and I abided by the terms and guiding principles of the Protocol in every way and at every step of the process.  Failing to abide by any term of the Protocol, much less the keystone condition of confidentiality, is intolerable, impermissible, and would lead to the unraveling of the Program.  Allowing any disclosure of any documents, information and/or communications submitted to, maintained by, or exchanged with the EVCP would turn the Program on its head with far-reaching consequences to this victim population and beyond.

14. As a matter of public policy, ensuring confidentiality in litigation-alternative victim compensation programs like the EVCP is an absolute imperative. To compromise confidentiality in any way in this case would threaten the integrity, credibility and viability of this program and all others like it – past, existing, and future. It has been my experience that victims, alleged tortfeasors, other interested parties, and courts have long recognized and respected the need to protect confidentiality in victim compensation programs as integral to program integrity. I personally know of no situation in which an independent administrator has been forced to disclose information and/or documentation that was submitted to, maintained by, exchanged with or distributed by a litigation-alternative compensation program for any purpose. To open the door in any way would disembowel the very core of this program and have devastating consequences for this and other victim compensation programs, particularly those involving claims of sexual abuse. Forcing disclosure of Program records, despite the fact that confidentiality is an express, agreed-upon, court-mandated term of the Program, would invite and embolden others who are pursuing civil legal claims or who are facing criminal prosecution or who are pursuing criminal prosecution of others or who otherwise want to get their hands on confidential information to file similar requests.

15. I designed the EVCP with confidentiality as a centerpiece and cornerstone of the claims process. Safeguarding that confidentiality in full and without condition is essential to the integrity and success of this Program, and the viability of other similar compensation programs.

16. Ms. Maxwell's motion seeking authorization for this subpoena makes inaccurate statements about the Protocol. Ms. Maxwell's motion expressed that "the Protocol credits claimants who have had charges filed against Epstein or any employee of Epstein." That is not an accurate characterization of the Protocol. The Protocol includes a non-exclusive list of factors

6

that I considered in evaluating claims.  One of those factors was "Whether there exists any information and/or pertinent findings offered by the appropriate Office of the District Attorney, United States Attorney's Office, or other law enforcement agency."  (Protocol at 5-6.)  The Protocol does not use the term "credit" nor does it address what weight, if any, is afforded to such information in the context of an individual claim.  That is because there was no formula or point system or quantifiable "credit" for this factor or any other factor in the determination of individual claims.  Claims were evaluated on a highly individualized analysis based on a host of factors and the overall totality of the circumstances.  Ms. Maxwell's motion also states that "[t]he Protocol also rewards Accusers who have filed a lawsuit, legal action or claim of sexual abuse against Epstein, or the Estate, which includes any employees or former employees of Epstein."  This too is inaccurate.  When the Protocol refers to an individual's "lawsuit, legal action or claim," it does so in the context of identifying individuals prior to the Program's launch to whom the program would be sending claim forms, because, on the basis of such lawsuits or claims, the program could identify them at the outset as potential claimants.  (Protocol at 4.)  The Protocol also indicates that individuals who had not filed a lawsuit or claim could also register to participate in the program, and, if my preliminary review determined that they were eligible to participate, these individuals too would be sent claim forms.  The fact that this language falls under the "Claims Submission Process" section of the Protocol and not the "Claims Evaluation and Determination" section demonstrates the purpose for which it was included.

     I declare under the penalty of perjury that the foregoing is true and correct.

Dated:  November 19, 2021

                                                                                                By: *Jordana H. Feldman*
                                                                                                    Jordana H. Feldman