LC9VMAXT

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x
    UNITED STATES OF AMERICA,
3
              v.                          20 CR 330 (AJN)
4
    GHISLAINE MAXWELL,
5
                    Defendant.            Jury Trial
6   ------------------------------x
                                          New York, N.Y.
7                                         December 9, 2021
                                          9:00 a.m.
8
    Before:
9                   HON. ALISON J. NATHAN,

10                                        District Judge

11                        APPEARANCES

12  DAMIAN WILLIAMS
         United States Attorney for the
13       Southern District of New York
    BY:  MAURENE COMEY
14       ALISON MOE
         LARA POMERANTZ
15       ANDREW ROHRBACH
         Assistant United States Attorneys
16
    HADDON MORGAN AND FOREMAN
17       Attorneys for Defendant
    BY:  JEFFREY S. PAGLIUCA
18       LAURA A. MENNINGER
              -and-
19  BOBBI C. STERNHEIM
              -and-
20  COHEN & GRESSER
    BY:  CHRISTIAN R. EVERDELL
21
    Also Present:  Amanda Young, FBI
22                 Paul Byrne, NYPD
                   Sunny Drescher,
23                  Paralegal, U.S. Attorney's Office
                   Ann Lundberg,
24                  Paralegal, Haddon Morgan and Foreman

25

LC9VMAXT

1          (Trial resumed; jury not present)

2          THE COURT:  All right.  Matters to take up.

3          MS. COMEY:  There were just a couple issues that we

4    wanted to put on the record, your Honor.

5          First, I've conferred with defense counsel, and they

6    have indicated that they are releasing Carolyn from recall.  So

7    I understand that any sequestration order no longer applies to

8    her.

9          MR. PAGLIUCA:  That's correct, your Honor.

10          THE COURT:  All right.  Thank you.

11          MS. COMEY:  And then I also conferred with defense

12    counsel about Kimberly Meder and whether she would be permitted

13    to be in the courtroom for the remainder of trial.  I'm told by

14    defense counsel that they have no objection; though, of course,

15    they may end up seeking to recall her in the defense case, but

16    that they have no objection to her being in the courtroom.

17          MR. EVERDELL:  That's correct, your Honor.

18          THE COURT:  Okay.

19          MS. COMEY:  And then with respect to redacted 296,

20    which was the video of the Palm Beach residence, defense

21    counsel has been reviewing the redacted version that we sent

22    them on Tuesday.  Once they have their position on its

23    admissibility, we will formally offer it.

24          MR. PAGLIUCA:  Also correct, your Honor.

25          THE COURT:  Great.  Okay.  Thank you.

LC9VMAXT

1    MR. EVERDELL:  Just a few procedural things from the

2    defense.

3          I believe the next witness from the government is

4    going to be Tracy Chapell from Federal Express.  And I have

5    some documents I can hand up to the Court.  I have one exhibit

6    that I intend to introduce through Ms. Chapel which I've given

7    to the government; I can give the Court a copy.  It's going to

8    be done in paper.

9          These are Federal Express invoices.

10          I'm going to offer them -- assuming they are allowed

11   to be admitted, I will offer them under temporary seal because

12   we haven't had the chance to go through and do all the

13   redactions.  But we will do that as soon as we can and get the

14   Court a redacted copy so that that could be published publicly.

15   But for the moment, we'll have to do this under seal.

16          THE COURT:  Is there going to be a lot of walking the

17   witness through the document?

18          MR. EVERDELL:  No.  Actually I'm just going to admit

19   them; no walking through, it's going to be for the jury's eyes

20   if they want to see it.

21          THE COURT:  Okay.  And so a redacted version for the

22   public by when?

23          MR. EVERDELL:  If we could do it over the weekend,

24   because there's a decent number of records, and have them ready

25   by Monday, we could do that.

LC9VMAXT

1          THE COURT:  Okay.  Thank you.

2          MR. EVERDELL:  I have a copy which I can hand up to

3     the Court now.

4          THE COURT:  Sure.  Thank you.

5          MR. EVERDELL:  Your Honor, on that same score, we'd

6     like to be able to put folders under the jurors' chairs with

7     that exhibit in them that they would only be asked to open if

8     it's admitted.

9          MS. COMEY:  No objection, your Honor.

10          THE COURT:  Okay.  Thank you.

11          MR. EVERDELL:  I will take care of that.

12          Thank you, your Honor.

13          MS. MENNINGER:  Good morning, your Honor.

14          THE COURT:  Good morning, Ms. Menninger.

15          MS. MENNINGER:  A couple of issues.

16          I've conferred with the government, and I believe we

17     have agreement.  I would like to just put them on the record

18     prior to the testimony of Annie Farmer.  She is not testifying

19     anonymously, your Honor.  Therefore, my plan is to use the

20     counsel screen as one normally would in these situations,

21     rather than so much of the paper.  But we have binders in the

22     event someone wants to look at the whole set, for the Court,

23     the government for any impeachment materials, and for the

24     witness.

25          THE COURT:  Correct to assume that none of the

LC9VMAXT

1    documents you'll show her have the full or real names of the

2    other witnesses testifying under pseudonym?

3              MS. MENNINGER:  Right, your Honor.  I don't think they

4    had any interaction with one another.  I don't believe there's

5    anything in here that references anyone else.

6              THE COURT:  Okay.

7              MS. MENNINGER:  Your Honor, there is a substantial

8    amount of hearsay, both within the record and also in the

9    public domain as between Annie Farmer and her sister Maria

10   Farmer.  I've conferred with the government that there won't be

11   hearsay being offered from Maria Farmer, with the exception of

12   at least one place I know where it's in effect on the listener

13   that Annie traveled to New York because her sister told her to

14   come there.  But outside of that, we have agreed that we're not

15   having -- there's no other hearsay exception that applies to

16   Maria Farmer's statements.

17             Within that subset, your Honor, there has been a

18   contention by Maria Farmer that nude photographs or provocative

19   photographs were stolen from her.  None were found when

20   Mr. Epstein's home was searched.  That, again, would be hearsay

21   from Maria and is not planning to be a part of the government's

22   case or the defense's cross.

23             And lastly, your Honor, because Ms. Farmer is herself

24   a practicing therapist, psychologist, she has made a number of

25   statements publicly about her opinions on the topic of

LC9VMAXT

1    grooming.  As she was not endorsed, obviously, under 702, I

2    expect that she will not use that word or give anything that

3    sounds like an opinion along those lines.  She's here as a fact

4    witness, your Honor.  And the government has agreed they don't

5    intend to offer any opinion testimony from her.

6              THE COURT:  Great.  Thank you.

7              MS. POMERANTZ:  That all sounds accurate, your Honor.

8              THE COURT:  Thank you, Ms. Pomerantz.

9              What else to take up?

10             MR. PAGLIUCA:  Your Honor, if I might, I don't know if

11   the Court wants to take this up now, but I'll just give this as

12   a preview for later.

13             The government has endorsed Mr. Buscemi as a, as I

14   understand it, summary witness.  This is a 1006 issue.  As I

15   understand it, I don't believe that this is an appropriate

16   summary witness under 1006.  As I understand it, the purpose is

17   to talk about testimony or pieces of evidence that have been

18   admitted, specifically not to analyze any complex records or

19   other business transactions or phone records or things like

20   that.  So I just wanted to give the Court a heads-up on that.

21   I'm not exactly sure precisely what he's being offered to

22   testify about, but I expect that there will be an objection to

23   that testimony before it happens.

24             THE COURT:  Who will I hear from?

25             MS. MOE:  Yes, your Honor.

LC9VMAXT

1          As we explained to the defense this morning, we

2     anticipate calling Special Agent Michael Buscemi as a summary

3     witness, as is common in this district.  His testimony will be

4     limited to his analysis of exhibits; he won't be analyzing

5     testimony of other witnesses.

6          There are a number of exhibits in this case which have

7     not yet been published or reviewed during the course of this

8     case; and so we anticipate fairly brief testimony from Special

9     Agent Buscemi about his review of several exhibits.

10          In short, the testimony will concern, among other

11     things, the message pads, the majority of which have not been

12     published or viewed by the jury at this point.  And the purpose

13     of the testimony is to connect up several exhibits and review

14     them in a way to make those exhibits clear to the jury and

15     publish them to show, for example, the continuity of certain

16     phone numbers and names, where they change over time, where

17     they are in the message books in order to make that clear for

18     the jury.

19          I anticipate that the testimony from Special Agent

20     Buscemi would be likely something like 15 to 20 minutes, maybe

21     slightly more, again, just talking about exhibits and the

22     similarity of phone numbers and names between a variety of

23     different exhibits.  That's the scope of his testimony.

24          Our view is that's consistent with the way summary

25     witnesses are called in many trials in this district and

LC9VMAXT

1    doesn't exceed the scope of the ordinary practice.

2            THE COURT:  Let's take the specific example that

3    you've given on message pads.  So just give me an example of

4    the kind of testimony he would provide there.

5            MS. MOE:  Yes, your Honor.

6            So, for example, within the message pads, we published

7    yesterday, I think, just either two or three specific messages

8    that had a first and last name of someone and a phone number.

9    But elsewhere throughout the message pads, there appear entries

10   that only have a first name, and sometimes that entry is, for

11   example, Carolyn and sometimes it's Caroline.  But when you

12   compare the phone numbers -- and there are a variety of

13   different phone numbers throughout the book -- it becomes clear

14   that Caroline is the same Carolyn, first and last name, as some

15   of the other messages, because there's continuity between the

16   phone numbers.

17           And there are a variety of different phone numbers

18   throughout the exhibits with different names like Carolyn,

19   Caroline, and Carolyn with a last name.  And reviewing them and

20   analyzing them makes it clear throughout the books and across a

21   variety of different dates that we're talking about the same

22   person.  And so that facilitates both publishing the exhibits

23   so that the jury can see them for the first time, and doing

24   that in a way that sort of connects up those different

25   exhibits.  And so that's the purpose of that testimony.

LC9VMAXT

1        THE COURT:  Let's take that example, Mr. Pagliuca.

2        MR. PAGLIUCA:  Your Honor, the problem, I think, is

3   that it is simply highlighting a specific piece of evidence;

4   that this is summation, essentially, and not witness testimony.

5   The witness has no personal knowledge of the phone calls.  The

6   witness is simply comparing this to that, which is what should

7   be done in summation or should have been done with the witness

8   who actually was the testifying witness with the exhibit.

9        So this could have been done, you know, with

10  Ms. Hesse, for example.  You have that message pad?  Yes.

11  Compare that message pad with this particular record.  Are

12  those the same phone numbers?  I suppose that could happen.

13       Or with Carolyn, could have been asked, Is that your

14  phone number?  Does that match the record?

15       This is simply an FBI agent who's going to take those

16  pieces of evidence selectively and then talk about them; this

17  matches this, this matches that.  I don't believe that's

18  appropriate under 1006, which is, you know, the rule that

19  allows for summary exhibits, for example, but does not allow

20  for summary testimony of things that have already been admitted

21  into evidence.

22       Certainly in the government's closing argument they

23  can do this and they can make whatever arguments they want.

24  But this is simply a closing argument through a summary witness

25  in the middle of a trial before a very long break, and I just

LC9VMAXT

1    don't think it's appropriate under these circumstances.

2            THE COURT:  This agent, what was his role in the

3    investigation?

4            MS. MOE:  Your Honor, this agent's role was limited to

5    analyzing these records in preparation for trial.

6            Your Honor, in particular because these exhibits

7    contain identifying phone numbers and names, we feel more

8    comfortable publishing these exhibits with an agent, as opposed

9    to asking lay witnesses to review government exhibits for us in

10   order to facilitate that testimony.  Our preference is to

11   publish this with an agent to do this carefully and

12   thoughtfully so that we're able to publish the exhibits before

13   the jury without exposing any identifying information.

14           It's very streamlined testimony, your Honor.  We're

15   talking about exhibits the jury hasn't yet seen that haven't

16   been published.  It's not duplicative of anything that's

17   already happened at the trial.  And in particular, because

18   closings will be maybe as long as two weeks from now, we think

19   the jury should see these exhibits now; they have not yet been

20   published.

21           THE COURT:  That's a little bit of the problem.

22           Typically, in my experience, the summary agent witness

23   is the agent who talks about what he did in the investigation,

24   and that helps draw out complicated document comparators and

25   the like, not somebody who's just effectively doing a mini

LC9VMAXT

1    closing.

2          MS. MOE:  Your Honor, we often call summary witnesses

3    who are not involved in the investigation who are just talking

4    about their analysis of records.  The purpose here isn't to

5    have the summary witness talk through the investigation or

6    investigative steps, but to talk about a review of exhibits.

7    And I have called agents to do just that.

8          THE COURT:  But for the purposes of doing what 1006

9    permits, that's not what this is.  I've seen it in two

10   contexts:  One, 1006 you've got a complicated, extensive set of

11   records that are being summarized via a witness.  And then

12   you've got investigative summary witnesses who talk through

13   factually what they did in a sense.  And you're not doing

14   either of those; you're providing essentially a closing

15   argument or mini closing argument via a witness who has no

16   personal involvement in the investigation and doing so, sounds

17   like, with materials that don't require the type of 1006

18   summary.

19         So you've created, I think, a little bit of a hybrid

20   of certainly what I've seen those two exemplars, for them to be

21   used.  And so it just does sound like argument, summation, and

22   the kind of thing that -- I mean, it's certainly true you could

23   have done it with the witnesses.  At some point I might have

24   said, Save it for summation, counsel.  But I can't say I've

25   ever seen a version like this.

LC9VMAXT

1          MS. MOE:  Yes, your Honor.

2          I have in trials in this district called summary

3     witnesses who helped publish and connect up facts across

4     exhibits without creating summary charts under Rule 1006.  I

5     think this testimony --

6          THE COURT:  You're not offering him under 1006?

7          MS. MOE:  That's correct, your Honor.

8          THE COURT:  And he isn't involved in the

9     investigation.

10         MS. MOE:  That's correct, your Honor.

11         We'd just like an opportunity to publish these

12    exhibits in a way that facilitates the jury seeing them without

13    doing this through lay witnesses where there are complications

14    about reading things out loud, so that it's streamlined and

15    efficient so the jury can see the evidence that's been

16    admitted.  We think that's appropriate.

17         THE COURT:  Why not just do it in closing?

18         MS. MOE:  Your Honor, I think to rest our case and

19    have the jury not see some of the evidence in this case, our

20    preference would be --

21         THE COURT:  The one thing I've seen that it sounds

22    like you're saying is actually not with a witness, but a bunch

23    of documents come in, and then the government spends a little

24    bit of time just publishing, publish this and publish that.

25         Again, I've never seen -- never seen -- an agent, a

LC9VMAXT

1    law enforcement agent, who had no involvement in the

2    investigation of the case and who isn't providing testimony

3    essentially pursuant to 1006.

4           MS. MOE:  Your Honor, if the Court's preference is for

5    us to, without a person on the stand, just ask the jury to turn

6    from one exhibit to another to another, we can do that.  I

7    think that is slightly more awkward than facilitating that

8    through a witness and pointing out the connections between two

9    things.

10          THE COURT:  Right.  But the witness is providing

11   testimony over which they have no personal knowledge.  You're

12   simply asking them to do the work of the government in the

13   closing.

14          So, Mr. Pagliuca, do you have any objection to the

15   government publishing a few documents, going to a few points,

16   and then we move on, without a witness?

17          MR. PAGLIUCA:  I don't understand that process, I

18   guess, your Honor.  We're simply going to -- is this with a

19   witness or without a witness?

20          THE COURT:  Without a witness.

21          MR. PAGLIUCA:  We're simply going to say, The

22   government would like the jury to look at this and then look at

23   that?

24          THE COURT:  Yes.

25          MR. PAGLIUCA:  I do object to that process, your

LC9VMAXT

Honor.  This is classically what someone would do in a closing

argument.  You can put this in a Power Point and put up a

screen that shows this, and then put up a screen that shows

that, and then make an argument about it.

And if they wanted to elicit this testimony, it should

have been done, I believe, with a witness that then could be

cross-examined substantively about what was being discussed.

This witness, Mr. -- if I'm saying it correctly,

Mr. Buscemi, can't be cross-examined substantively about

anything; all he's going to be able to say would be, I looked

at this, and I looked at that, and I looked at this, I looked

at that, and those are the exhibits.

So I guess I'm a little confused about the process,

where one would just look at a jury and say, Look at this and

then look at that.  And I don't understand why that isn't, sort

of, impermissibly highlighting certain pieces of evidence.  And

then, you know, am I allowed to get up and say, Why don't you

look at this and why don't you look at that?  It just seems

rather awkward to me to be doing it in that fashion.

MS. MOE:  Your Honor, that's why we propose doing this

with a witness, to avoid any, sort of, awkwardness.  But I

don't understand the objection to publishing items that are in

evidence that the jury has not yet seen.  Again, our hope was

for this to be very streamlined; but I understand the Court's

concerns.

LC9VMAXT

1          THE COURT:  Right.  It's a streamlined version of the

2     closing argument.  And again, I'm not aware -- I'm not aware --

3     certainly seen summary with investigative officers.  That's not

4     this.  And I've seen officers who are analyzing complicated

5     data under 1006 provide that to the jury.  That's not this.

6     And I've seen, when the evidence comes in, the government spend

7     a fair amount of time -- as you've done with some exhibits --

8     going through piece by piece in order to highlight and draw

9     certain connections.

10          I'm not going to let you do it through a witness who

11     has no personal experience.  I think you do it in closing.

12     That's what this is, it's closing argument.

13          MS. MOE:  Understood, your Honor.

14          THE COURT:  Okay.  What else?

15          MR. PAGLIUCA:  I think the only open issue that I'm

16     aware of, your Honor, is the Exhibit 52 issue.

17          THE COURT:  Yes.  I got the briefing at 9:45, so 15

18     minutes early finished, I appreciate it.  And I am still

19     dotting my i's and crossing my t's.  I think we don't need it

20     till the government is prepared to rest; is that right?

21          MS. COMEY:  That's correct, your Honor.

22          THE COURT:  You agree with that?

23          MR. PAGLIUCA:  Yes, your Honor.

24          THE COURT:  Anything else to take up now?

25          MR. PAGLIUCA:  Not from the defense, your Honor.

LC9VMAXT

```
 1          THE COURT:  On scheduling, needless to say, I didn't
 2    send you a draft of the charge last night.  I think my thinking
 3    is if the government rests today or tomorrow, which sounds like
 4    what we anticipate, I'll use the remainder of tomorrow, one, to
 5    hear the defense motions; and two, for me to work on the charge
 6    on my own, having already received your drafts.
 7          And then I'll send it to you at some point in advance
 8    of a charging conference, which we'll do next week.  And again,
 9    I'm open to you telling me whether you want to do it in the
10    evenings after testimony or on Saturday.  I think really the
11    analysis there depends on what the defense now anticipates as
12    the length of its case.
13          So are you in a position to give any additional
14    estimate as to that?
15          MR. PAGLIUCA:  We don't, your Honor.
16          I think we're hoping to take this evening and tomorrow
17    to put those pieces together, and then provide the Court and
18    the government with that analysis.
19          THE COURT:  Okay.  Ms. Sternheim.
20          MS. STERNHEIM:  May I just say, I think it is our
21    thinking at the moment that if we are going to be using the
22    trial days, that our preference would be to Saturday for a
23    charge conference.  It seems that it would just be a more
24    focused time.
25          THE COURT:  I think really the only reason not to do
```

LC9VMAXT

1    that -- and, as I said, I wanted to have agreement from both

2    sides on it.  But the reason not to do that would be if we

3    might get to closings before the following Monday.  And that's

4    why it's really -- because if we will get to closings before

5    the following Monday, the charge needs to be done before then.

6            MS. STERNHEIM:  Of course.  And we will update the

7    government and the Court with regard to scheduling.

8            THE COURT:  Okay.

9            So I think if there's a chance that the defense either

10   won't put on a case or would rest before Friday, then we should

11   do the charge conference Thursday night.  So that's the

12   question.

13           MR. PAGLIUCA:  Understood, your Honor.

14           THE COURT:  Okay.

15           Does the government have any preference or views on

16   that?

17           MR. ROHRBACH:  The government has no preference.  That

18   makes sense to us.  Thank you, your Honor.

19           THE COURT:  Okay.  Great.  Yes.

20           MS. COMEY:  Your Honor, in connection with the defense

21   case, I do think there's still the outstanding issue of the

22   subpoena to Mr. Glassman.

23           THE COURT:  Yes.  I was looking at that last night as

24   well.  And I have a question and a little bit of a proposal,

25   see if we can get back to a magical moment.  It's a difficult

LC9VMAXT

1     issue and it's close, I'll admit, based on where I am now.  I

2     think it's close.

3              But what I'm wondering is if what the defense

4     essentially needs to make the arguments it wants to make is

5     testimony from Mr. Glassman that he told the government that he

6     told Jane that some form of cooperation or testimony would help

7     her case.  That question might have some evidentiary issues,

8     but it's not an attorney-client privilege issue.

9              I think the answer to that question basically gets the

10    defense what it's looking for without infringing on

11    attorney-client privilege.  And so I'd like you to consider a

12    proposal in which the testimony that you're seeking is limited

13    to that and, depending on the parties' views and Mr. Glassman's

14    views, if that is the limit of the testimony, whether it could

15    be through stipulation.

16             So you'll consider that.

17             MS. COMEY:  Yes, your Honor.

18             MR. PAGLIUCA:  We will, your Honor.

19             THE COURT:  Okay.  All right.

20             Anything else I can take up?

21             We're checking on our jurors.

22             MR. EVERDELL:  Nothing from the defense, your Honor.

23             THE COURT:  I'm sorry.

24             So you put in the letters to me last night on 52.

25             You'll docket those today?

LC9VMAXT

<span>1</span>          MR. ROHRBACH:  Yes, your Honor.  The government has a

<span>2</span>     few proposed redactions to its letter; so we will propose those

<span>3</span>     redactions and docket a version that implements those

<span>4</span>     redactions subject to the Court's ruling on them.

<span>5</span>          THE COURT:  Okay.  Remember, my basic view is get it

<span>6</span>     on the docket and then propose your redactions so that I'm

<span>7</span>     not -- put it on the docket with your proposed redactions and

<span>8</span>     I'll let you know if it should be redacted less.

<span>9</span>          MR. ROHRBACH:  Yes, your Honor.  And we will do that

<span>10</span>    today.

<span>11</span>         THE COURT:  Okay.  And same for -- I think you were

<span>12</span>    just waiting to see if the government had proposed redactions,

<span>13</span>    is that --

<span>14</span>         MR. PAGLIUCA:  That's correct, your Honor.

<span>15</span>         I think we can mirror the government's redactions.  I

<span>16</span>    have to just think about whether the Exhibit A, I think it was,

<span>17</span>    that was attached and then responded to, I think we need to

<span>18</span>    think about how that gets redacted.  And I think likely my view

<span>19</span>    would be the entirety of it gets redacted.

<span>20</span>         THE COURT:  Okay.  I will consider that.

<span>21</span>         Anything else?

<span>22</span>         MR. ROHRBACH:  Nothing from the government.

<span>23</span>         MR. EVERDELL:  No, your Honor.

<span>24</span>         THE COURT:  All right.  We're missing a couple jurors,

<span>25</span>    but I suspect they'll be here soon.

LC9VMAXT                        Chapell - direct

1          We'll take a break and start as soon as they're here.

2          Thank you.

3          (Recess)

4          THE COURT:  Anything to take up before we bring in the

5     jury?

6          MR. ROHRBACH:  Nothing from the government, your

7     Honor.

8          MR. EVERDELL:  Nothing from the defense, your Honor.

9          THE COURT:  Okay.  We'll bring in the jury please.

10         (Jury present)

11         THE COURT:  Good morning, members of the jury.

12         Hope you had a good of evening.  Thank you again for

13    your continued diligence, punctuality, and patience.

14         Mr. Rohrbach, the government may call its next

15    witness.

16         MR. ROHRBACH:  The government calls Tracy Chapell.

17         THE COURT:  Tracy Chapell may come forward.

18     TRACY CHAPELL,

19         called as a witness by the Government,

20         having been duly sworn, testified as follows:

21         THE COURT:  Thank you, Ms. Chapell.

22         Mr. Rohrbach, you may inquire.

23    DIRECT EXAMINATION

24    BY MR. ROHRBACH:

25    Q.  Good morning, Ms. Chapell.

LC9VMAXT                          Chapell - direct

1   A.   Good morning.

2   Q.   Ms. Chapell, where do you work?

3   A.   Federal Express Corporation.

4   Q.   How long have you worked there?

5   A.   One year.

6   Q.   What's your position at Federal Express?

7   A.   Senior paralegal.

8            THE COURT:  Mr. Rohrbach, could you pull the mic up a

9   little please.  Thank you.

10           MR. ROHRBACH:  Of course.  I apologize, your Honor.

11           THE COURT:  Thank you.

12  Q.   And what are your duties and responsibilities as a senior

13  paralegal at FedEx?

14  A.   To respond to subpoenas and produce the records of Federal

15  Express.

16  Q.   And as part of your job, are you familiar with Federal

17  Express's recordkeeping practices?

18  A.   Yes.

19  Q.   In particular, are you familiar with the business practices

20  regarding billing invoices?

21  A.   Yes.

22  Q.   How are billing invoices generated?

23  A.   They are generated through the scanning events and then

24  populated through the revenue service department.

25  Q.   Can you explain what you mean by scanning events?

1    A.  Well, each movement of the package is scanned so it can be

2    tracked through the system as to where the package is.  Once it

3    meets the final delivery spot, then that final scan will

4    generate an invoice.

5    Q.  What sort of information is contained in an invoice?

6    A.  The account number, the invoice number, the invoice date,

7    the account holder information, and the amount of the shipment.

8    Q.  Does FedEx keep billing invoices in the ordinary course of

9    business?

10   A.  Yes.

11   Q.  And is making invoices a regular practice of FedEx?

12   A.  Yes.

13   Q.  Ms. Chapell, in the binder next to you, would you please

14   look at what's been marked for identification as Government

15   Exhibit 801.

16          Do you recognize this?

17   A.  Yes.

18   Q.  What is it?

19   A.  It's a invoice on Jeffrey E. Epstein's account.

20   Q.  Have you reviewed this before today?

21   A.  Yes.

22   Q.  Is it a fair and accurate copy of an invoice held by FedEx?

23   A.  Yes.

24          MR. ROHRBACH:  Your Honor, the government offers

25   Government Exhibit 801 under seal to protect third-party and

1    pseudonym-protected witnesses, and Government Exhibit 801-R not

2    under seal.

3              MR. EVERDELL:  No objection.

4              THE COURT:  All right.  GX-801 is admitted under seal

5    for the reason indicated.  And 801-R is admitted as a public

6    exhibit.

7              (Government's Exhibits 801, 801-R received in

8    evidence)

9    BY MR. ROHRBACH:

10   Q.  Ms. Chapell, would you turn to Government Exhibit 802,

11   what's been marked for identification as Government Exhibit 802

12   in your binder.

13   A.  Okay.

14   Q.  And do you recognize this?

15   A.  Yes.

16   Q.  What is it?

17   A.  Invoice on Jeffrey E. Epstein's account.

18   Q.  Have you reviewed this before today?

19   A.  Yes.

20   Q.  And is it a fair and accurate copy of the version held by

21   FedEx?

22   A.  Yes.

23             MR. ROHRBACH:  Your Honor, the government offers

24   Government Exhibit 802 under seal for the same reasons, and

25   Government Exhibit 802-R without any sealing.

1              MR. EVERDELL:  No objection.

2              THE COURT:  All right.  802 is admitted under seal for

3    the reason indicated.  802-R is admitted as a public exhibit.

4              (Government's Exhibits 802, 802-R received in

5    evidence)

6    BY MR. ROHRBACH:

7    Q.  And finally, Ms. Chapell, would you turn to what's been

8    marked for identification as Government Exhibit 803.

9    A.  Okay.

10   Q.  Do you recognize this?

11   A.  Yes.

12   Q.  And what is it?

13   A.  Invoice on Jeffrey E. Epstein's account.

14   Q.  Have you reviewed it before today?

15   A.  Yes.

16   Q.  And is this a fair and accurate copy of the version held by

17   Federal Express?

18   A.  Yes.

19             MR. ROHRBACH:  Your Honor, the government offers

20   Government Exhibit 803 under seal for the same reasons, and

21   Government Exhibit 803-R to the public.

22             MR. EVERDELL:  No objection.

23             THE COURT:  GX-803 is admitted under seal; 803-R is

24   admitted as a public exhibit.

25             (Government's Exhibits 803, 803-R received in

1   evidence)

2          MR. ROHRBACH:  With your Honor's permission, may I

3   publish the documents?

4          THE COURT:  Yes, you may publish the R versions.

5          MR. ROHRBACH:  Yes.

6          Ms. Drescher, will you please pull up Government

7   Exhibit 801-R for everyone.

8   BY MR. ROHRBACH:

9   Q.  Ms. Chapell, would you please turn to Government Exhibit

10  801 in your binder.

11         MR. ROHRBACH:  And with the Court's permission, I

12  would ask that the jury be instructed to turn to Exhibit 801 in

13  their binders.

14         THE COURT:  Okay.  Is it the large binder?

15         MR. ROHRBACH:  My understanding, there's one binder.

16         THE COURT:  Okay.  The only binder, 801 -- GX-801,

17  please.

18  Q.  Now that we're looking at it, Ms. Chapell, who is the

19  account holder on this invoice?

20  A.  Jeffrey E. Epstein.

21  Q.  And turning now to page 5 of the invoice and looking at the

22  top row of the invoice.

23  A.  Okay.

24  Q.  Who is the sender of this package?

25  A.  S. Kellen, and underneath it's Jeffrey E. Epstein.

LC9VMAXT                         Chapell - direct

1    Q.  And what is the sender address?

2    A.  It is 457 Madison Avenue, New York, New York, 10022.

3    Q.  And without saying any names, without saying the last name

4    of the recipient, what is the first name of the recipient?

5    A.  Carolyn.

6    Q.  And where is the city and state of the delivery?

7    A.  West Palm Beach, Florida.

8    Q.  Thank you.

9           MR. ROHRBACH:  And with the Court's permission, I

10   would ask the jurors to hold their place here and turn to

11   Government Exhibit 11 for a moment, which is in evidence.

12          MR. EVERDELL:  No objection.

13          THE COURT:  All right.

14          Please look at GX-11, and then turn back to this page.

15          MR. ROHRBACH:  And on GX-11 we would direct the jury's

16   attention to the date of birth.

17          THE COURT:  Okay.  Okay.

18          So you've looked at GX-11.

19          And then you'll go back to GX-803.

20          MR. ROHRBACH:  801, your Honor.

21          THE COURT:  I'm sorry.  801.  Apologies.

22   BY MR. ROHRBACH:

23   Q.  Ms. Chapell, what is the date that this package was sent?

24   A.  It was picked up to be shipped on December 3rd, 2002.

25   Q.  Keeping in mind the recipient's address, Ms. Chapell, I'd

LC9VMAXT                      Chapell - direct

1  like to turn to Government Exhibit 802 and to the eighth page.

2  And looking at the middle row, does the recipient have the same

3  address as the recipient we were just looking at?

4  A.  Yes.

5          MR. ROHRBACH:  Your Honor, if they haven't already

6  done so, we'd ask the jury to turn to Government Exhibit 802.

7          THE COURT:  Okay.  Please turn to GX-802.

8  Q.  Ms. Chapell, directing your attention to the middle row on

9  this page, who is the sender of this package?

10 A.  J. Epstein.

11 Q.  And what is the address?

12 A.  457 Madison Avenue, New York, New York.

13 Q.  And would you spell the first name of the recipient here?

14 A.  C-A-R-D-I-N-E.

15 Q.  And what is the city and state?

16 A.  West Palm Beach, Florida.

17 Q.  On what date was this package sent?

18 A.  December 12th, 2002.

19         MR. ROHRBACH:  And finally, your Honor, I would like

20 to turn the jurors' attention to Government Exhibit 803.

21         THE COURT:  Okay.  You may turn to 803, please.

22 Q.  And Ms. Chapell, if you would please do the same.  And

23 turning to page 6 of this document and directing your attention

24 to the bottom row, Ms. Chapell, who is the sender of this

25 package?

LC9VMAXT                         Chapell - cross

1    A.  Cecilia Steen.

2    Q.  Are there any other names listed?

3    A.  Yes, Jeffrey E. Epstein.

4    Q.  What is the shipping address?

5    A.  457 Madison Avenue, New York, New York.

6    Q.  Without saying the last name, what is the first name of the

7    recipient?

8    A.  Caroline.

9    Q.  What is the city and state of the recipient?

10   A.  West Palm Beach, Florida.

11   Q.  What is the date of this package?

12   A.  October 7th, 2002.

13   Q.  Thank you.

14           MR. ROHRBACH:  No further questions, your Honor.

15           THE COURT:  Okay.  Mr. Everdell.

16           MR. EVERDELL:  Thank you, your Honor.

17           THE COURT:  You may put your binders down.  Thank you.

18           MR. EVERDELL:  May I inquire, your Honor?

19           THE COURT:  You may.

20   CROSS-EXAMINATION

21   BY MR. EVERDELL:

22   Q.  Good morning, Ms. Chapell.

23   A.  Good morning.

24   Q.  You just testified about a few invoices from Federal

25   Express that were provided to you by the government; is that

1  right?

2  A.  Correct.

3  Q.  And you testified that they were associated with a FedEx

4  account of Jeffrey Epstein, right?

5  A.  Yes.

6  Q.  And all of those -- three of those invoices that we just

7  looked at, Government's Exhibit 801, 802, and 803, were from

8  the last few months of 2002; is that right?

9  A.  Yes.

10  Q.  And those invoices each showed shipments for roughly a few

11  week to a month period of time, right?

12  A.  Correct.

13  Q.  I just want to look at a few of those invoices that we

14  looked at.  I'm going to start with Government's Exhibit 803,

15  and I'm going to direct your attention to page 6 of 9.

16        MR. EVERDELL:  With the Court's permission, I'll have

17  the jurors look in the same binder at Government's 803.

18        THE COURT:  Yes.

19        Members of the jury, please look at GX-803.

20        MR. EVERDELL:  And just directing the jurors'

21  attention to page 6 of 9.

22        THE COURT:  Page 6.  Okay.  803, page 6.

23        MR. EVERDELL:  Actually, I apologize.  If we can just

24  first start with page 1 just so we can orient ourselves.

25        THE COURT:  Okay.

LC9VMAXT                    Chapell - cross

BY MR. EVERDELL:

Q.  So, Ms. Chapell, if you look at page 1.  So we're looking
here on Government's Exhibit 803-R at the invoice dated October
14th, 2002, right?

A.  Correct.

Q.  And as you said before, this is an invoice that's
associated with an account, the FedEx account of Jeffrey
Epstein, right?

A.  Yes.

Q.  And if you look up at that top left-hand corner, you see
the billing account shipping address, right?

A.  Yes.

Q.  And it says Jeffrey E. Epstein, 457 Madison Avenue, New
York, New York, 10022, right?

A.  Yes.

Q.  That's the address associated with this account for billing
purposes, right?

A.  Correct.

Q.  Now, I want you to skip to the page I mentioned before,
page 6 of 9.  All right.  Now, I think if you look down at the
last transaction on that page, that's a shipment that was sent
out or was picked up for shipment on October 7th of 2002,
right?

A.  Yes.

Q.  And do you see the information that's over on the left-hand

1    side under the heading "Sender"?

2    A.   Yes.

3    Q.   That information says Cecilia Steen; is that right?

4    A.   Yes.

5    Q.   And it has then Jeffrey E. Epstein and the address 457

6    Madison Avenue, right?

7    A.   Yes.

8    Q.   And that is the information that is present on the FedEx

9    slip that goes with the package, right?

10   A.   Correct.

11   Q.   So whatever information is filled out on the slip that gets

12   attached to the FedEx package is what appears under "Sender,"

13   right?

14   A.   Correct.

15   Q.   Okay.  And you see that this, the recipient here -- and I'm

16   not asking you to say her full name, but the first name of the

17   recipient here is Caroline; is that right?

18   A.   Correct.

19   Q.   And I think you mentioned the city and state, is that

20   right, of where this was going?

21            MR. EVERDELL:  May I confer?

22            THE COURT:  Yes.

23            (Counsel conferred)

24   Q.   You said that this was going to West Palm Beach, Florida,

25   right?

1    A.  Correct.

2    Q.  Okay.  And I just want to refer back to the sender though,

3    okay.  That sender says that the package was sent by Cecilia

4    Steen; correct?

5    A.  Correct.

6    Q.  It goes without saying that Cecilia Steen is not Ghislaine

7    Maxwell; correct?

8    A.  Correct.

9    Q.  Okay.  And that is the only transaction on this invoice

10   that the government showed you to discuss in your direct

11   testimony, right?

12   A.  Correct.

13   Q.  I want to show you another transaction on this invoice.  If

14   you can go to page 7 of 9.

15   A.  Okay.

16   Q.  And I want to show you the transaction in the middle of the

17   page, the middle of the three.  Do you see that one?

18   A.  Yes.

19   Q.  That is also a shipment that was picked up for shipment the

20   same day, October 7th of 2002, right?

21   A.  Correct.

22   Q.  And that is the same day as the package we just looked at

23   that was sent by Cecilia Steen on the page before, isn't it?

24   A.  Yes.

25   Q.  All right.  Well, looking at this one, you see the

1  recipient there is one named Casey Wasserman, right?

2  A.  Correct.

3  Q.  And you see the sender information on this shipment;

4  correct?

5  A.  Correct.

6  Q.  And the sender there is listed as Ghislaine Maxwell; is

7  that right?

8  A.  Correct.

9  Q.  And then, of course, there's the information below, Jeffrey

10  Epstein, 457 Madison Avenue.

11  A.  Yes.

12  Q.  Okay.  It goes without saying that -- well, I shouldn't say

13  "goes without saying."

14       There is no other transaction or there is no

15  transaction on this invoice we're looking at where someone

16  named Ghislaine Maxwell is sending a package to anyone named

17  Carolyn; correct?

18  A.  Correct.

19  Q.  Okay.  Let's look at the next one.  This is government's

20  801.  And I'm doing this because I believe this goes

21  chronologically in order, right.  The one we just looked at was

22  October, right?

23  A.  Yes.

24  Q.  So let's look at 801.

25       MR. EVERDELL:  And the jurors can do the same, with

1    the Court's permission.

2            THE COURT:  Yes.

3    Q.  And we'll go to the first page of 801-R.

4            So, Ms. Chapell, do you have that?

5    A.  Yes.

6    Q.  So this is an invoice from December 16th of 2002, right?

7    A.  Yes.

8    Q.  So that's just roughly two months after the invoice we just

9    saw?

10   A.  Yes.

11   Q.  And it's the same billing information, it's the same

12   account we're looking at?

13   A.  Yes.

14   Q.  That's the account of Jeffrey Epstein at 457 Madison

15   Avenue, right?

16   A.  Correct.

17   Q.  All right.  Let's take a look at page 5.

18           Do you have that page, Ms. Chapell?

19   A.  Yes.

20   Q.  All right.  This is the transaction that you were shown by

21   the government to discuss, right?

22   A.  Yes.

23   Q.  And this shows a shipment that was picked up for shipment,

24   FedEx package that was picked up for shipment on December 3rd

25   of 2002, right?

1    A.  Yes.

2    Q.  And here the recipient -- again, I'm just going to use

3    first names here.  The recipient is Carolyn, right?

4    A.  Correct.

5    Q.  That was going to West Palm Beach, Florida, as well?

6    A.  Yes.

7    Q.  All right.  But you see over at the sender information;

8    correct?

9    A.  Yes.

10   Q.  The sender is listed as S. Kellen, right?

11   A.  Correct.

12   Q.  Do you know who S. Kellen is?

13   A.  No.

14   Q.  Okay.  Safe to say that S. Kellen is not Ghislaine Maxwell,

15   right?

16   A.  No.

17   Q.  Okay.  Now, you were shown this transaction by the

18   government, right?

19   A.  Correct.

20   Q.  I want to point you to a different transaction in the same

21   invoice.

22           MR. EVERDELL:  If we can go to page 6, the next page.

23   Q.  And I want you to look at the bottom of that page, the last

24   transaction.

25   A.  Okay.

LC9VMAXT                    Chapell - cross

1   Q.  That is a shipment, a FedEx package that was picked up for

2   shipment on December 9th, 2002, right?

3   A.  Correct.

4   Q.  And you see that the recipient of that package is someone

5   named Lisa Anasrons is how it's spelled?

6   A.  Yes.

7   Q.  And the sender of that is G. Maxwell; correct?

8   A.  Correct.

9   Q.  And safe to say that this is not a package going to anybody

10  named Carolyn, right?

11  A.  It is not.

12  Q.  It's going to Lisa Anasrons, whoever that may be, right?

13  A.  Correct.

14  Q.  Okay.  Let's look at another one from this invoice, page 8.

15  I'll ask you to look at both of these transactions, if we

16  could.  These are both FedEx packages that were picked up for

17  shipment on December 10th of 2002; correct?

18  A.  Correct.

19  Q.  And if we look at the first one, the recipient there is

20  listed there as Isabel Maxwell?

21  A.  Yes.

22  Q.  And the sender is G. Maxwell?

23  A.  Yes.

24  Q.  And if you look down at the next one, the recipient there

25  is Ron Burckle, right?

LC9VMAXT                    Chapell - cross

1   A.  Yes.

2   Q.  And again, sender of that package same day is G. Maxwell,

3   right?

4   A.  Correct.

5   Q.  And in both the sender -- again, we have that information,

6   Jeffrey Epstein, 457 Madison Avenue, right?

7   A.  Yes.

8   Q.  So the first package looks like it's going to Isabel

9   Maxwell, and the second going to Ron Burckle, right?

10  A.  Yes.

11  Q.  Neither one of those is named Carolyn; correct?

12  A.  Correct.

13  Q.  And, in fact, there is no shipment or transaction reflected

14  in this invoice where someone named Ghislaine Maxwell is

15  sending a package to someone named Carolyn, right?

16  A.  Correct.

17  Q.  All right.  And let's just look at the last invoice you

18  were shown by the government, that's Government's 802.

19        MR. EVERDELL:  If you can pull that up.

20  A.  Okay.

21        THE COURT:  Jurors may turn to 802.

22        MR. EVERDELL:  Thank you, your Honor.

23  Q.  All right.  Ms. Chapell, do you have that in front of you?

24  A.  Yes.

25  Q.  All right.  So looking at the first page, this is the

LC9VMAXT                        Chapell – cross

1    invoice dated December 23rd, 2002; correct?

2    A.  Yes.

3    Q.  All right.  Again, same account we're looking at of Jeffrey

4    Epstein?

5    A.  Correct.

6    Q.  All right.  Let's flip to page 8.  I want you to take a

7    look at the middle of the three transactions there.  We'll pull

8    that up.  This was the transaction that you were shown by the

9    government on your direct, right?

10   A.  Correct.

11   Q.  And that is a FedEx package picked up for shipment on

12   December 12th, 2002; correct?

13   A.  Correct.

14   Q.  All right.  And the recipient there, I'm, again, not going

15   to use full names, but the first name there is listed as

16   Cardine; correct?

17   A.  Correct.

18   Q.  And the address is West Palm Beach, Florida, right?

19   A.  Yes.

20   Q.  The sender there is J. Epstein, right?

21   A.  Yes.

22   Q.  Safe to say that J. Epstein is not Ghislaine Maxwell,

23   right?

24   A.  Right.

25   Q.  Okay.  Now, I want to show you some other transactions on

1  that same invoice that you weren't shown by the government.

2  And I want to stay on the same page and I want to look at the

3  first transaction on the page.

4          Okay.  Now, I want to be careful about this.  I don't

5  want to use any names when we discuss this transaction, okay?

6  A.  Okay.

7  Q.  All right.  That is a package that was picked up for

8  shipment on the same day as the one we just looked at, December

9  12th, 2002; correct?

10 A.  Yes.

11 Q.  And I'm not going to name who the recipient is, but I'm

12 going to refer to that person as "Jane," okay?

13 A.  Okay.

14 Q.  So the recipient there is Jane.

15 A.  Yes.

16 Q.  The sender is someone named J. Epstein; correct?

17 A.  Correct.

18 Q.  Okay.  Again, that is not Ghislaine Maxwell or G. Maxwell,

19 right?

20 A.  No.

21 Q.  Okay.  Let's look at just a few others.

22          Page 4 of the same invoice, and we'll look at the

23 middle transaction here.

24          All right.  Now, that is a FedEx package that was

25 picked up for shipment on December 9th of 2002, right?

LC9VMAXT                        Chapell - cross

1   A.  Yes.

2   Q.  That was just a few days before the shipments we just

3   looked at on December 12th, right?

4   A.  Correct.

5   Q.  And you see the recipient here is listed as someone named

6   Laura Casey Wasserman, right?

7   A.  Yes.

8   Q.  And the sender is G. Maxwell?

9   A.  Yes.

10  Q.  This obviously is -- the recipient is not anyone named

11  Carolyn or Cardine, right?

12  A.  Correct.

13  Q.  And again, let's look at page 5, the next page.  And look

14  at the first transaction on this invoice.  That is a FedEx

15  package picked up for shipment on December 10th of 2002, right?

16  A.  Yes.

17  Q.  And the recipient there is someone named Danny Hillis?

18  A.  Yes.

19  Q.  And the sender is G. Maxwell?

20  A.  Correct.

21  Q.  Danny Hillis is not named Carolyn or Cardine or anything

22  like that, right?

23  A.  Correct.

24  Q.  Okay.  And again, on this invoice there is no transaction

25  reflected on this invoice where someone named Ghislaine Maxwell

LC9VMAXT                         Chapell - cross

1  or G. Maxwell is sending any packages to anybody named Carolyn

2  or Cardine or anything like that?

3  A.  Correct.

4  Q.  You can put those down.

5           MR. EVERDELL:  And the jurors, with the Court's

6  permission, can do the same.

7           THE COURT:  Yes.  Thank you.

8  Q.  Ms. Chapell, I'll just wait a moment.

9           Before you came to testify today, you had some phone

10  calls with the government; is that right?

11  A.  Yes.

12  Q.  And that was to prepare your testimony today; correct?

13  A.  Yes.

14  Q.  And before you spoke to them, they sent you those three

15  invoices that we were just talking about, is that right?

16  A.  Yes.

17  Q.  And you looked at them to verify that they were true and

18  accurate records that FedEx had in their system, right?

19  A.  Yes.

20  Q.  And those were the only invoices they sent you to verify;

21  is that right?

22  A.  Yes.

23  Q.  Those three that we were looking at?

24  A.  Yes.

25  Q.  Okay.  And I think they were so old at that point that you

LC9VMAXT                        Chapell - cross

1  actually had to go back and look at archived copies to verify

2  that they were true records, right?

3  A.  Correct.

4  Q.  They weren't still in your system; you had to go back to

5  the boxes in the warehouse, right?

6  A.  Correct.

7  Q.  But you were able to do that?

8  A.  Yes.

9  Q.  Okay.  Now, do you recall at any point where the defense

10 sent you some invoices to verify?

11 A.  Yes.

12 Q.  And do you remember how many roughly you were sent by the

13 defense?

14 A.  There were several hundred.

15 Q.  And were they from the same account or different accounts?

16 A.  Two different accounts.

17 Q.  Were those accounts associated with Jeffrey Epstein?

18 A.  Yes, they were both his.

19 Q.  And what were you asked to do with those records?

20 A.  Just verify the records.

21 Q.  Were you able to take those records and verify them with

22 the records in the boxes, that they were accurate business

23 records?

24 A.  Yes.

25 Q.  Okay.  And these were all records for accounts that

1   belonged to Jeffrey Epstein, right?

2   A.  Yes.

3   Q.  And can you explain just how you were able to verify them?

4   A.  I went back to the paper copies and verified the invoices

5   one by one.

6   Q.  Okay.

7           MR. EVERDELL:  Your Honor, I'm going to do this in

8   paper, if I could.  May I approach?

9           THE COURT:  You may.

10          MR. EVERDELL:  Okay.

11          THE COURT:  Showing the witness what's been marked as

12  Defendant's TC-1; is that correct?

13          MR. EVERDELL:  Correct, your Honor.

14          THE COURT:  Okay.

15  BY MR. EVERDELL:

16  Q.  All right.  Ms. Chapell, do you have in front of you what's

17  been marked for identification as Defendant's Exhibit TC-1?

18  A.  Yes.

19  Q.  Now, do you recognize what those are?

20  A.  Yes.

21  Q.  What are they?

22  A.  Jeffrey Epstein invoices.

23  Q.  Are those some of the records that were provided to you by

24  the defense?

25  A.  Yes.

1   Q.  Are they all of the several hundred records or just a

2   subset of those records?

3   A.  Just a few.

4   Q.  And how many roughly are there?

5   A.  In this stack?

6   Q.  Yes.

7   A.  About 50.

8   Q.  And what year or years do those invoices come from?

9   A.  2002.

10  Q.  And how is it that you recognize that that's what those

11  are?

12  A.  Because I verified it with the originals that we produced.

13  Q.  But how do you know that it's the same invoices that you

14  were asked to look at?

15  A.  I initialed at the bottom.

16  Q.  Now, were those records that you're looking at in Defense

17  Exhibit TC-1 made at or near the time of the shipping records

18  that are reflected in the invoice?

19  A.  Yes.

20  Q.  And are they based on information that was available at the

21  time that those shipments were made?

22  A.  Yes.

23  Q.  And is it the regular practice of Federal Express to make

24  invoices like this?

25  A.  Yes.

LC9VMAXT                        Chapell - cross

 1  Q.  And were these invoices kept in the regular course of

 2  FedEx's business?

 3  A.  Yes.

 4          MR. EVERDELL:  Your Honor, at this time the defense

 5  offers Defense Exhibit TC-1 under temporary seal.  We have not

 6  yet had the chance to make the appropriate redactions, but we

 7  will do so as soon as we can.

 8          MR. ROHRBACH:  No objection.

 9          THE COURT:  Thank you.  Defendant's TC-1 is admitted

10  under temporary seal until narrow redactions can be offered.

11          (Defendant's Exhibit TC-1 received in evidence)

12          MR. EVERDELL:  Absolutely, your Honor.

13          And if the jurors would like to take a look, with the

14  Court's permission, there is a folder underneath their chairs

15  with this exhibit.

16          THE COURT:  Yes, please.  You can open the folder to

17  Defendant's Exhibit TC-1.

18  BY MR. EVERDELL:

19  Q.  Ms. Chapell, I'm not going to go through these records with

20  you -- and the jurors are free to review it if they like -- but

21  I have no further questions for this witness.

22          THE COURT:  Okay.

23          MR. ROHRBACH:  Nothing further, your Honor.

24          THE COURT:  Okay.  Ms. Chapell, thank you.

25          You are excused.  You may step down.

LC9VMAXT

1          (Witness excused)

2          MS. MOE:  Your Honor, could I have just a moment to

3    confer with the defense?

4          THE COURT:  You may.

5          (Counsel conferred)

6          THE COURT:  Members of the jury, you may put the

7    folder back under your seats.

8          MS. COMEY:  Your Honor with the defense's consent,

9    we'd ask to be heard in the robing room please.

10         THE COURT:  Okay.  You anticipate an extended sidebar?

11         MS. COMEY:  We just need to be in the robing room,

12   your Honor.

13         THE COURT:  Okay.  Why don't I send the jury back to

14   the jury room for a break and then --

15         MS. MOE:  Thank you, your Honor.

16         THE COURT:  Yes, to the regular room.

17         (Jury not present)

18         THE COURT:  All right.  I'll hear you in the robing

19   room.  This is an extended discussion?

20         MS. MOE:  I'm not sure, your Honor, but our joint

21   preference would be to be heard in the robing room.

22         THE COURT:  Okay.  All right.

23         (Pages 2020 to 2024 SEALED)

24         (Continued on next page)

25

LC9VMAXT

```
 1                 (In open court)
 2                 THE COURT:  Bring in the jury.
 3                 MR. EVERDELL:  Your Honor?
 4                 MS. MENNINGER:  Our client is not here.
 5                 THE COURT:  I'm going to step off.
 6                 (Recess)
 7                 THE COURT:  We'll bring in the jury.
 8                 (Jury present)
 9                 THE COURT:  Thank you, members of the jury.
10          I've been informed there's an attorney in the case
11   who's ill, and that attorney needs to get care.  We have no
12   reason to believe it's COVID-related, but we do need that
13   attorney for what was anticipated to happen today.  So we need
14   to break.
15          My assumption is we'll resume tomorrow morning at our
16   normal time.  And I'll give you any additional information, if
17   I have that information.  But we want to make sure the attorney
18   is taken care of.  And rather than pause and delay, we're going
19   to break for the day.
20                 So all of my instructions apply.
21                 Thank you for your time and attention.
22                 We'll see you tomorrow morning.  Thank you.
23                 (Jury not present)
24                 THE COURT:  Counsel, is there anything we can take up
25   now or wait until we get further word?
```

LC9VMAXT

1            MS. COMEY:  I don't believe there's anything we can

2    take up now, your Honor.  We will keep the Court and the

3    defense informed.

4            THE COURT:  Okay.

5            MR. EVERDELL:  Nothing from the defense, your Honor.

6            THE COURT:  All right.  Thank you, everyone.

7            We're adjourned till tomorrow.

8            MS. MOE:  Thank you, your Honor.

9            (Adjourned to December 10, 2021 at 8:45 a.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

INDEX OF EXAMINATION

Examination of:                                    Page

 TRACY CHAPELL

Direct By Mr. Rohrbach . . . . . . . . . . . .1993

Cross By Mr. Everdell  . . . . . . . . . . . .2001

                   GOVERNMENT EXHIBITS

Exhibit No.                                   Received

 801, 801-R . . . . . . . . . . . . . . . . .1996

 802, 802-R . . . . . . . . . . . . . . . . .1997

 803, 803-R . . . . . . . . . . . . . . . . .1997

                    DEFENDANT EXHIBITS

Exhibit No.                                   Received

 TC-1    . . . . . . . . . . . . . . . . . .2018