LCI1MAX1

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x
     UNITED STATES OF AMERICA,
 3
                 v.                        20 CR 330 (AJN)
 4
     GHISLAINE MAXWELL,
 5
                      Defendant.           Jury Trial
 6   ------------------------------x
                                           New York, N.Y.
 7                                         December 18, 2021
                                           9:10 a.m.
 8
     Before:
 9                     HON. ALISON J. NATHAN,

10                                          District Judge

11                          APPEARANCES

12   DAMIAN WILLIAMS
          United States Attorney for the
13        Southern District of New York
     BY:  MAURENE COMEY
14        LARA POMERANTZ
          ANDREW ROHRBACH
15        Assistant United States Attorneys

16   HADDON MORGAN AND FOREMAN
          Attorneys for Defendant
17   BY:  JEFFREY S. PAGLIUCA
          LAURA A. MENNINGER
18           -and-
     BOBBI C. STERNHEIM
19           -and-
     COHEN & GRESSER
20   BY:  CHRISTIAN R. EVERDELL

21

22

23

24

25
```

LCI1MAX1

1                  (In open court; jury not present)

2                  THE COURT:  Good morning, everyone.

3                  ALL COUNSEL:  Good morning.

4                  THE COURT:  Please be seated.

5           All right.  Looks like we have everybody.  Let me just

6      make sure we're set up.

7           Okay.  Thank you, everyone, for the Saturday charging

8      conference, a first for me, but it helps us use our time well,

9      I think, so thank you for that.

10                 I circulated to the parties the draft charge, which we

11     docketed last night.  In the draft verdict form, the way I do

12     this is to just ask, starting with the first page on which you

13     have a request that you want to make, and give me the page and

14     line number and we'll discuss it.  If I accept the change, it

15     will be entered in redline by my law clerk.  And then once

16     we're finished, I'll send to the parties the redline so you can

17     help me make sure that everything got entered properly.

18                 All right.  So Mr. Rohrbach, first page that you have.

19                 MR. ROHRBACH:  The government's first request is on

20     page 32.

21                 THE COURT:  Before that?  Mr. Everdell?

22                 MR. EVERDELL:  Yes, your Honor.  Defense's first

23     request --

24                 THE COURT:  It may be best to -- you're welcome to

25     remain seated --

LCI1MAX1

```
1              MR. EVERDELL:  I can pull this up a little bit?

2              THE COURT:  -- if I'm going to hear from you a lot.

3    But yes, pull up the mic and -- yes.  First page, Mr. Everdell.

4              MR. EVERDELL:  Defense's first page is page 15.

5              THE COURT:  Okay.  Line?

6              MR. EVERDELL:  Well, we'll start with line 8 and 9.

7              THE COURT:  Okay.

8              MR. EVERDELL:  So this was the summary of the

9    indictment charge, your Honor.

10             THE COURT:  Yes.

11             MR. EVERDELL:  And on 8 and 9, there's a reference to

12   travel to both interstate and foreign commerce.  I think

13   throughout the charge there's a bit of an inconsistency.

14   Sometimes we're talking about just interstate, sometimes we're

15   talking about interstate and foreign.  I actually don't think

16   that there's any evidence, especially with respect to Count One

17   or the Mann Act charges or any of them, we're talking about

18   "and foreign commerce."  I think it's interstate commerce, so I

19   don't think the "and foreign" is necessary.

20             THE COURT:  I think we have -- Mr. Rohrbach?

21             MR. ROHRBACH:  Your Honor, this actually relates to

22   the government's later request, but the government's view is

23   that there are flight records that show Virginia Roberts

24   traveling with the defendant and Jeffrey Epstein overseas while

25   she is 17, I believe, and so that would be sufficient, at least
```

LCI1MAX1

1    as to Counts Five and Six.

2           THE COURT:  So the government's request is that I

3    include "foreign" in each instance and the defense's request

4    that I remove "foreign" in each instance.  As we stand, there's

5    inconsistency.  Do I have that right, Mr. Everdell?

6           MR. EVERDELL:  I'm sorry, your Honor.  Can you say

7    that again?

8           THE COURT:  Sure.  Right now there's inconsistency as

9    to whether "foreign commerce" is included or not, and the

10   defense's request is that "foreign" be excluded in each

11   instance and the government's request is that "foreign" be

12   included in each instance.

13          MR. EVERDELL:  That's correct, your Honor.

14          THE COURT:  Okay.  Mr. Everdell, do you want to

15   respond to the government's point about flight records.

16          MR. EVERDELL:  Your Honor, the flight records, I

17   think -- I'm trying to think of the references to -- you said

18   it relates to which individual?  I'm sorry, your Honor.

19          MR. ROHRBACH:  It relates to Virginia Roberts while

20   she was 17, and so that, at a minimum, in the government's

21   view, means "foreign commerce" should be included in Counts

22   Five and Six.

23          MR. EVERDELL:  Your Honor, there's no testimony about

24   the purpose of those trips or any enticement with respect to

25   those trips.  I think Virginia Roberts, the sum total of her

LCI1MAX1

testimony was that she recruited Carolyn, and she didn't

testify, and I don't think -- this is not the theory that the

government's been proceeding on on these counts.  These counts

relate to the four accusers that testified.  I think for the

jury to infer then that there's enticement with respect to

Virginia Roberts, when there's no evidence in the record of

Ms. Maxwell or anybody enticing her, there's just testimony

that she enticed Carolyn, if anything, that's not an

appropriate theory for the jury to base their conviction on

foreign commerce, if she's the one who traveled.

          MR. ROHRBACH:  If I may, your Honor.  I think for

counts --

          THE COURT:  We're talking 18 U.S.C. 1591, correct?

          MR. ROHRBACH:  Yes.  The government does not -- if the

Court and defense prefer to remove "foreign commerce" from One

through Four, Virginia Roberts's conduct doesn't show that.

While that's a legally proper instruction to leave "foreign

commerce," it's at least available to the jury as to Counts

Five and Six because of 18 U.S.C. 1591).

          THE COURT:  But the text of 18 U.S.C. 1591 doesn't

include "in foreign commerce," does it?

          MR. ROHRBACH:  Yes.  It says, "Whoever knowingly, in

or affecting interstate or foreign commerce, recruits, entices,

harbors," etc.

          Oh, I see.  It appears that --

LCI1MAX1

1            THE COURT:  There is a --

2            MR. ROHRBACH:  -- there was a statutory change that

3    added "foreign commerce."

4            MR. EVERDELL:  Yeah.

5            THE COURT:  It depends on what the operative time

6    period for the inclusion of it is.

7            MR. ROHRBACH:  In light of that, your Honor, I think

8    the government would withdraw its request as to Counts Five and

9    Six.

10           THE COURT:  Okay.

11           MR. ROHRBACH:  To avoid any ambiguity about that

12    point.

13           THE COURT:  Okay.  All right.  So you'll help me,

14    Mr. Everdell, find each instance in which we need to remove

15    "and foreign"?

16           MR. EVERDELL:  Yes, your Honor.

17           THE COURT:  The first one you've identified --

18           MR. EVERDELL:  If you like, on this charge, I can go

19    through the ones I see on this page.

20           THE COURT:  Let me just note the first one we've

21    discussed, because my clerk is going to wait for me to say the

22    change in order to make it.  So let me just note on page 15,

23    lines 8 and 9 -- on line 8, deleting the word "and," on line 9,

24    deleting the word "foreign."

25           Next one, Mr. Everdell?

LCI1MAX1

1              MR. EVERDELL:  Line 12, your Honor.

2              THE COURT:  Line 12, deleting the word "and," deleting

3      the words "and foreign"?  Go ahead, Mr. Everdell.

4              MR. EVERDELL:  Line 15, same change, your Honor.

5              THE COURT:  Line 15, deleting "and foreign."

6              MR. EVERDELL:  Yes, your Honor.

7              THE COURT:  And line 19?

8              MR. EVERDELL:  Correct, your Honor.

9              THE COURT:  Deleting "and foreign."

10             That's it for that, for the summary, correct?

11             MR. EVERDELL:  That's it for the "and foreign," yup.

12             THE COURT:  Okay.

13             MR. EVERDELL:  We have a few others.

14             THE COURT:  All right.  Well, let's be comprehensive

15     on this.  Are there any other places in the charge where that

16     appears?

17             MR. EVERDELL:  Oh, the other places in the whole

18     charge.

19             THE COURT:  Actually, we'll hit it when we get there.

20     So what else on 15?

21             MR. EVERDELL:  Sure.  So line 10, your Honor --

22             THE COURT:  Okay.  Just one second.

23             MR. EVERDELL:  Okay.

24             THE COURT:  Go ahead.

25             MR. EVERDELL:  Thank you, your Honor.  On line 10, it

LCI1MAX1

now reads, "Count One relates to multiple alleged victims in the time period 1994 into 2004."  We believe it should read, "Count One relates solely to Jane and the time period 1994 to 2004."  And I can explain, if you like, your Honor.

THE COURT:  Let me just get my eyes on it.

Okay.

MR. EVERDELL:  So, your Honor, this is an issue I think we've gone back and forth on quite a bit in the motions *in limine*.  But with respect to the government's theory of the conspiracy and of the substantive counts, enticement and transportation, so Counts One through Four, is that the underlying object was a violation of New York law, right, Section 130.55.  So there has to be -- the object of this conspiracy is a violation of New York law.  With respect to Kate, there was no violation of New York law.  Your Honor already instructed the jury that they can't consider that evidence for purposes of conviction because she was above the age of consent.  There was no violation of New York law.  Same thing with --

THE COURT:  Well, just to be slightly more precise, they can't convict on that count based solely on the evidence of the conduct involving her.

MR. EVERDELL:  Correct.  And with respect to Annie, the Court also instructed that this is -- whatever conduct they may find that she talked about in New Mexico, was not illegal

LCI1MAX1

sexual activity as charged in the indictment, which is a
reference to the violation of New York law, because that is the
theory we're proceeding under.

With respect to Carolyn, there was no limiting
instruction, but it's evident we were talking about Florida
conduct.  There is no violation of New York law there.  So the
only evidence we have that goes to -- that actually establishes
a violation of New York law, which is the object of this
conspiracy, and the object of the transportation conspiracy, is
what Jane said.

Now the Court did instruct the jury that they can
consider the testimony of Kate and of Annie for whatever
relevant purpose they see fit, and I suppose that could be
evidence of a conspiracy, correct, but for them to actually
convict on this, they have to believe that somebody committed a
violation of New York law, and that relates solely to Jane, and
so we don't think -- there are no multiple alleged victims of
this conspiracy other than Jane that's been established by the
evidence at trial.  So we believe while they may be able to
consider the testimony of Annie and Kate as evidence of some
sort of relevant evidence that speaks to this conspiracy, that
is not -- they are not victims of this conspiracy, there was no
violation of New York law that they testified to, and that is
Jane alone.  So this count relates solely to Jane, as does the
substantive count, your Honor.

LCI1MAX1

1              THE COURT:  Mr. Rohrbach?

2              MR. ROHRBACH:  Your Honor, this is a place where the

3    defense confuses conspiracy violations and substantive

4    violations.  There does not have to be a proven violation of

5    New York law as to any of the minor victims.  It just has to be

6    an agreement to accomplish that purpose.  Carolyn, for

7    instance, was invited to travel by the defendant.  The jury can

8    readily find that that invitation to travel included an

9    invitation to New York, where the abuse would continue, as it

10   did for Jane.  Annie was in fact transported by the defendant

11   Epstein to New Mexico and New York.  The jury could readily

12   find that that was a conspiracy that existed, and as part of

13   that grooming conduct, the plan would be to continue to abuse

14   her, including back in New York.  These are available

15   inferences to the jury, and that's all that's required for the

16   conspiracy count.

17             THE COURT:  That's precisely why there was a different

18   limiting instruction for Annie than there was for Kate.

19             MR. EVERDELL:  Well, your Honor, I would dispute the

20   facts a little bit there, because they said that Carolyn's

21   testimony was that she was invited to travel to the island.

22   She was not invited to travel anywhere; she specifically

23   testified she was given an invitation to the island.  That's

24   not travel to New York.  And her mother said she couldn't be

25   able to go.  So I don't think that is evidence -- if the object

LCI1MAX1

1    of the conspiracy is to violate New York law, then an

2    invitation to an island that's not New York doesn't count.

3            And also, an invitation to travel to New Mexico to do

4    whatever it is they were planning on doing in New Mexico is

5    also not a goal of violating New York law.  I'm sorry, from

6    Arizona.  So there's no connection to New York law with respect

7    to Annie's testimony either.

8            And so whatever purpose they want to glean from those

9    two witnesses' testimony, Kate and Annie, or even Carolyn, the

10   object of this conspiracy, for this to be a crime, it can only

11   be hung on the testimony, at least in the evidence in the

12   record, the testimony of Jane.  And --

13           THE COURT:  You're doing precisely what Mr. Rohrbach

14   said, which is you're switching back and forth between the

15   conspiracy and the substantive count.  So Annie, for example,

16   the evidence is the conduct occurred in New Mexico.  That's why

17   I gave the limiting instruction.  But that could be considered

18   with other evidence of the conspiracy with respect to New York,

19   the violation of New York law.  You don't have to have the

20   violation of New York law to establish the elements of the

21   conspiracy count.

22           So the objection is overruled.

23           Next.

24           MR. EVERDELL:  All right.  Next is line 13, your

25   Honor, same page.

LCI1MAX1

1        THE COURT:  Okay.

2        MR. EVERDELL:  We would add, the last sentence, "Count

3   Two relates solely to Jane and the time period 1994 to 1997."

4        THE COURT:  Okay.  Mr. Rohrbach?

5        MR. ROHRBACH:  I think that's redundant, but the

6   government is fine with that.

7        THE COURT:  Okay.  Page 15, line 13, adding "solely"

8   between "Count Two" and "relates."  No, I'm sorry.  Between

9   "relates" and the word "to."  So the sentence will read, "Count

10  Two relates solely to Jane."

11       Next.

12       MR. EVERDELL:  Yes, your Honor.  Same page, line 15.

13  This is on Count Three.

14       I'll just go back to line 14.  Count "Three of the

15  indictment charges the defendant with conspiring with others to

16  transport an individual," and we would add "under the age of

17  18," "in interstate commerce," because we've eliminated "and

18  foreign."

19       THE COURT:  Mr. Rohrbach.

20       MR. ROHRBACH:  I believe that the elements that the

21  Court has set forth for that count is an individual under the

22  age of 17.

23       MR. EVERDELL:  I'm sorry.

24       MR. ROHRBACH:  Is that --

25       THE COURT:  We've adopted the Sand suggestion.

LCI1MAX1

1          MR. EVERDELL:  Right.

2          THE COURT:  So just rather than give the jury two

3    elements with two different ages, which I think makes sense.

4    But so then the suggestion is "to transport an individual under

5    the age of 17."

6          MR. EVERDELL:  Yes, your Honor.

7          THE COURT:  Mr. Rohrbach?

8          MR. ROHRBACH:  The government agrees that that's an

9    element of the offense.  There is no reason to incorporate all

10   of the elements into the summary.

11         THE COURT:  Well, he's not asking all.  He's just

12   asking this one.  So --

13         MR. ROHRBACH:  That's fine, your Honor, although the

14   government would note that that creates an asymmetry between

15   Counts One and Three, so we think it should be in both or

16   neither.

17         THE COURT:  All right.

18         MR. EVERDELL:  Well, it's not an element of the

19   offense in Count One.  I add it there because it says "an

20   individual" and "an individual" seems sort of vague.  I mean,

21   there's testimony about lots of individuals traveling, and

22   transporting here and there.  We just wanted to make it clear

23   to the jury that we're talking about individuals under the age

24   of 17 rather than all these people on the flight logs that we

25   saw who we have no evidence of their ages.

LCI1MAX1

 1           MR. ROHRBACH:  If this is the defense's preference,

 2      your Honor, the government is fine with it.

 3           THE COURT:  Okay.  I'll accept that request.  Page 15,

 4      line 15, after the word "individual," adding "under the age of

 5      17."

 6           Next?

 7           MR. EVERDELL:  Yeah.  And then similar request: line

 8      18, after the word "individual," add "under the age of 17."

 9           THE COURT:  Mr. Rohrbach?

10           MR. ROHRBACH:  No objection.

11           THE COURT:  Okay.  Making that same change, page 15,

12      line 18, after "individual," adding "under the age of 17."

13           Let me just give my law clerk a moment to get it

14      entered.

15           Okay.

16           MR. EVERDELL:  And then line 20, it's a similar --

17           THE COURT:  Hang on.  Hang on.  Let me just read that

18      full sentence for clarity.

19           So page 15, line 18, first sentence of the paragraph,

20      "Count Four of the indictment charges the defendant with

21      transporting an individual under the age of 17 in interstate

22      commerce."

23           MR. EVERDELL:  Yes, your Honor.

24           THE COURT:  Go ahead.

25           MR. EVERDELL:  Next line, line 20, similar to what we

LCI1MAX1

1   asked for before, last sentence, "Count Four relates solely to

2   Jane and the time period --"

3           THE COURT:  Okay.  I'll accept that.

4           Page 15, line 20, the sentence that begins, "Count

5   Four," adding "solely" after "relates," so the sentence would

6   read, "Count Four relates solely to Jane."

7           Okay.  Next?

8           MR. EVERDELL:  Page 16, line 2, similar request:

9   "Count Six relates solely to Carolyn."

10          THE COURT:  Okay.  I'll accept that.

11          Page 16, last line, adding "solely" after "relates"

12  and before "to Carolyn."

13          Okay.  Next page.

14          MR. EVERDELL:  Page 17, this is a small one, your

15  Honor.

16          THE COURT:  Okay.

17          MR. EVERDELL:  Lines 2 to 3, "Each count charges the

18  defendant," since we're using "Ms. Maxwell" in the other parts

19  of this charge, we'll just say, "Each count charges Ms. Maxwell

20  with a different crime."

21          THE COURT:  All right.  That's fine.

22          So instruction 11, page 17, line 3, changing

23  "defendant" to "Ms. Maxwell."  So the sentence reads, "Each

24  count charges Ms. Maxwell with a different crime."

25          MR. EVERDELL:  Your Honor, can I just have one moment.

LCI1MAX1

1          THE COURT:  Yes.

2          MR. EVERDELL:  Your Honor, I'm sorry.  Could we just

3     return to page 15.

4          THE COURT:  Sure.

5          MR. EVERDELL:  Line 23.

6          THE COURT:  Okay.

7          MR. EVERDELL:  There, it says -- and it's also on the

8     next page, but we'll get to that.  It says, "Count Five of the

9     indictment charges the defendant with conspiring to engage in

10    sex trafficking of minors.  And the word "minors" depends on

11    jurisdiction, and it creates a lot of ambiguity because we've

12    got allegations, especially because the time period of the

13    conspiracy, 2001 to 2004, you know, the word "minors" is going

14    to create an ambiguity, and it raises issues with the age of

15    consent, because you're not a minor unless, you know --

16         THE COURT:  You want to change it to an individual

17    under the age of 17?

18         MR. EVERDELL:  Yeah, either under the age of 17 or

19    under the age of consent.

20         MR. ROHRBACH:  Well, your Honor, first, for the sex

21    trafficking counts, the relevant age of consent is 18.

22         THE COURT:  Right.  Sorry.  Thank you.

23         MR. EVERDELL:  Yeah, actually, that's right.  That's

24    in the language of the statute itself.

25         MR. ROHRBACH:  Yeah.

LCI1MAX1

1      MR. EVERDELL:  So why don't we say "under the age of

2  18," if we could, your Honor.

3      THE COURT:  Is that okay, Mr. Rohrbach?

4      MR. ROHRBACH:  Since it relates to multiple

5  individuals here, it would have to be "individuals under the

6  age of 18," but the government would be fine with that change

7  to avoid ambiguity.

8      THE COURT:  Okay.  So page 15, line 23, it will read

9  "to engage in sex trafficking of individuals under the age of

10  18."  Just one moment.

11      Okay.

12      MR. EVERDELL:  And your Honor, next page, it's a

13  similar request.  On line 1, we would say, "Count Six of the

14  indictment charges the defendant with sex trafficking of

15  individuals under the age of 18."

16      THE COURT:  Okay.

17      MR. ROHRBACH:  Well, your Honor, for this one, since

18  it just relates to Carolyn, it could just be an individual, but

19  otherwise that's fine.

20      MR. EVERDELL:  An individual under the age of 18.

21      THE COURT:  That's right.  All right.  So we'll change

22  page 16, line 1 to read, "Count Six of the indictment charges

23  the defendant with sex trafficking of an individual under the

24  age of 18."

25      MR. EVERDELL:  Yes, your Honor.

LCI1MAX1

<table>
<tr><td>1</td><td>THE COURT:  Okay.  Have we made it to 17?</td></tr>
<tr><td>2</td><td>MR. EVERDELL:  We've made it to 19, in fact.</td></tr>
<tr><td>3</td><td>THE COURT:  19.  Wow.  Progress.</td></tr>
<tr><td>4</td><td>MR. EVERDELL:  Page 19 is the next one, your Honor.</td></tr>
<tr><td>5</td><td>THE COURT:  Okay.  Go ahead.</td></tr>
<tr><td>6</td><td>MR. EVERDELL:  First, on line 5, there's another "or</td></tr>
<tr><td>7</td><td>foreign," which we can omit.</td></tr>
<tr><td>8</td><td>THE COURT:  Okay.  Let me just look.</td></tr>
<tr><td>9</td><td>Yeah.  Okay.</td></tr>
<tr><td>10</td><td>MR. ROHRBACH:  It would need to be ellipses since this</td></tr>
<tr><td>11</td><td>is the statutory text, but that's fine with the government.</td></tr>
<tr><td>12</td><td>THE COURT:  So we'll do, page 19, line 5, it will</td></tr>
<tr><td>13</td><td>read, "Travel in interstate... commerce," cutting "or foreign"</td></tr>
<tr><td>14</td><td>and replacing with the ellipses.</td></tr>
<tr><td>15</td><td>Okay.  Next page.</td></tr>
<tr><td>16</td><td>MR. EVERDELL:  Same page, your Honor, line 4.</td></tr>
<tr><td>17</td><td>Don't worry.  I tried to be efficient about this.</td></tr>
<tr><td>18</td><td>We'll go quickly.</td></tr>
<tr><td>19</td><td>THE COURT:  That's fine.</td></tr>
<tr><td>20</td><td>MR. EVERDELL:  Line 4.  There is the inclusion of the</td></tr>
<tr><td>21</td><td>statutory text "or coerces," and since we don't have any</td></tr>
<tr><td>22</td><td>evidence of coercion, our proposal would be to add -- have it</td></tr>
<tr><td>23</td><td>read "knowingly persuades, induces, or entices... any</td></tr>
<tr><td>24</td><td>individual."</td></tr>
<tr><td>25</td><td>THE COURT:  Or in brackets.</td></tr>
</table>

LCI1MAX1

1          MR. EVERDELL:  Or in brackets because it's an addition

2     to the statutory text.

3          MR. ROHRBACH:  Your Honor, the government does not

4     agree with this one.  The jury could conclude that the minors

5     had been coerced for the enticement counts.  There's expert

6     testimony from Dr. Rocchio about how these relationships sort

7     of evolved; there's testimony from Jane in the record about

8     how, toward the end of her relationship with Mr. Epstein, she

9     felt like she was compelled to continue answering the phone and

10    would drop everything because she had no other choice.  I think

11    the jury could conclude that these victims were coerced.

12    "Coercion" in this context just bears its ordinary and natural

13    meaning, and there's no reason to delete it from the charge.

14         MR. EVERDELL:  Well, your Honor, I agree I know we

15    give normal meanings to these words, and coercion in my normal

16    meaning implies some sort of force, or at least of violence or

17    something, and there's no evidence of that in the record.

18         MR. ROHRBACH:  It's an argument that the defense is

19    free to make to the jury.

20         THE COURT:  Well, what's the legal basis for the

21    notion that coercion as used here textually requires force?

22         MR. EVERDELL:  Your Honor, as in Sand, they just say

23    "given the normal everyday meaning."  It's not particularly

24    helpful, but I guess that can differ by person.  My normal

25    everyday meaning of "coercion" means some sort of force being

LCI1MAX1

1   used, and if that's not the Court's opinion, then --

2          THE COURT:  I'm just asking if you have any legal

3   support for that principle.

4          MR. ROHRBACH:  Your Honor, one good reason to think

5   that coercion does not involve force is that the sex

6   trafficking statute includes criminal activity by force, fraud,

7   or coercion, and in that statute, "force" and "coercion" carry

8   different meanings.

9          THE COURT:  Okay.  I'm going to overrule the

10  objection.  So that will remain.

11         Next page, Mr. Everdell.

12         MR. EVERDELL:  Yes, your Honor.  Before I get to the

13  next page, just for purposes of clarity, if the Court overrules

14  a proposed edit, I would still note that I have that same

15  proposal going through my changes.  I just won't reiterate it.

16  But I would like to just preserve those, preserve my

17  suggestions, similar ones in similar charges.

18         THE COURT:  So you would repeat your request to remove

19  "coercion" from every instance, so that is preserved.

20         MR. EVERDELL:  Correct, your Honor.

21         All right.  So we can go to page 20 now, your Honor.

22         THE COURT:  Okay.

23         MR. EVERDELL:  All right.  So on this one, your Honor,

24  I understand, we're talking about the substantive count, and I

25  do understand that because the way the charge is organized and

LCI1MAX1

1    the conspiracy counts come later, I think there is an attempt

2    here to generalize the wording of the elements because it's

3    going to be applied later to the conspiracy counts, right?  But

4    this is the substantive count, and if we look at the line 5, it

5    says first that the defendant knowingly persuaded or induced or

6    enticed or coerced an individual to travel in interstate

7    commerce.  The individual in the substantive count is Jane.

8    The defense request is for it to say not "an individual,"

9    replace that with "Jane to travel in interstate commerce from

10   Florida to New York, as alleged in the indictment."

11              THE COURT:  Mr. Rohrbach.

12              MR. ROHRBACH:  So, your Honor, I don't think the jury

13   will be confused.  Both in the summary and later on in this

14   section, it says this relates to Jane.  If the defense would

15   like it to say it relates solely to Jane here as in the

16   summary, that would be fine, but the Court is just laying out

17   the elements of the offense and there's no need to put all of

18   the factual predicates of the offense into the statement of the

19   elements.  I think here and elsewhere, the defense --

20   Mr. Everdell can correct me, but an issue in the parties'

21   proposed requests to charge is whether things like the name

22   Jane, travel to New York, the name Jeffrey Epstein should all

23   be included in the recitation of the elements.  I think the

24   defense is getting that because it's in the "to wit" clause of

25   the indictment, and the law is quite clear -- and I have

LCI1MAX1

1    authority if the Court would like -- that the fact that there

2    are proper nouns in the "to wit" clauses does not mean the

3    government is bound by them as elements of the offense, as long

4    as the government is proceeding on the essential elements of

5    the crime as charged by the grand jury.  And I think there's no

6    suggestion -- it's quite clear that the government has been

7    trying to prove the offenses in the indictment and there's no

8    need to include words like "travel from Florida to New York,"

9    or "Jane," to avoid any suggestion of a variance.

10        THE COURT:  Yes, I agree with that.  Obviously this

11   dispute was in the parties' proposed charge, and I balanced I

12   think, as appropriate, including the name of the individual

13   where a particular count applies only to them, but not

14   otherwise restating factually in the explanation of the counts

15   and the elements each of the factual points to be proved.  So I

16   think here, Mr. Rohrbach, you didn't disagree with substituting

17   Jane for an individual?

18        MR. ROHRBACH:  Well, that just creates the -- the

19   government thinks the charge is fine as it is because, in

20   line 11, it says it relates to Jane, and the government would

21   be fine with adding "solely to Jane," or "relates," if that's

22   what the defense would like.  I do think adding Jane in line 6

23   would create a problem when it's later incorporated by the

24   conspiracy instruction.

25        THE COURT:  Okay.  I agree with that.  And that's the

LCI1MAX1

usefulness of line 11, which states expressly Count Two, and

I'll add, "Count Two relates solely to Jane during the time

period 1994 to 1997," for the reason indicated.  Because the

conspiracy count requires looking back to the substantive count

for the object of the conspiracy.

I won't adopt the requested change within the

statement of the elements.

Anything else on page 20?

MR. EVERDELL:  With the addition of solely, your

Honor, on line 11, there is just, on line 7, another "or

foreign" that we need to omit.

THE COURT:  Okay.  Thank you.  So from the second

element, page 20, line 7, the sentence that begins with

"Second," cutting "or foreign."  Okay.

MR. EVERDELL:  Page 21, your Honor.  On line 4, I'll

just reiterate, I understand this has been overruled by the

Court but we would propose replacing "an individual" with the

word "Jane."  On line 5, there is "or foreign," which should be

omitted.

THE COURT:  Thank you.  Page 21, line 5, "to travel in

interstate commerce," cutting "or foreign."

Okay.

MR. EVERDELL:  On line 6 we would just reiterate our

objection to the word "coerced."  I understand that's been

overruled.  But then, your Honor, generally I would say the

LCI1MAX1

1    word "coerced" we would like to remove.  We understand that's

2    been overruled by the Court.

3          Okay.  But there is some additional language we would

4    propose at the end of line 6, and this is something that I

5    raised I think in a letter submission in -- or not in a

6    letter -- orally at the Rule 29 argument.  It's based on *U.S.*

7    *v. Broxmeyer*, which, as I argued to the Court at the Rule 29

8    argument, the words "persuade," "induce," and "entice" are

9    words of causation and they need to cause an effect, and so

10   what we would propose after the sentence, "The terms

11   'persuaded,' 'induced,' 'enticed,' and 'coerced' have their

12   ordinary, everyday meanings," we would propose adding the

13   following language:  "This element is satisfied only if the

14   'persuasion,' 'inducement,' or 'enticement' caused Jane to

15   travel in interstate commerce as alleged in the indictment."

16   We're basing that on *U.S. v. Broxmeyer*, interpreting those

17   words from a different but related statute.

18          THE COURT:  Give me one moment.

19          MR. EVERDELL:  I have a copy of *Broxmeyer*, your Honor,

20   if you'd like to see it.

21          THE COURT:  Sure.  I'll take it.

22          MR. EVERDELL:  Your Honor, I believe it's on page 125

23   of the opinion.

24          THE COURT:  Okay.  The relevant language.

25          MR. ROHRBACH:  Your Honor, this is not just a

LCI1MAX1

different statute, it's quite a different statute.  It's the

production of child pornography statute.  And also, the

question in *Broxmeyer* was somewhat different.  It was a

sufficiency of the evidence question about whether the

government's evidence showed that the persuasion or inducement

occurred before the production of the child pornography, and so

that's -- I don't think that this case stands for a particular,

like, form of causal nexus that's required between

"persuasion," "inducement," or "coercion" and the travel

itself.  I think the jury will be confused by an instruction

along those lines because it suggests that some amount of

causation is required above the inherent causation in the

statutory terms of inducement or enticement.  Those are words

of causation, but they are sort of words of causation in the

plain and ordinary sense and not in any greater or more

significant sense that I think a further instruction on that

point would suggest.

MR. EVERDELL:  Your Honor, if I could just respond.  I

don't think this is heightening the level of proof.  I think

this is simply -- the opinion is simply explaining what is

required by those words, "persuasion," "inducement,"

"enticement," and those words are the exact same words that are

used in the statute, so I don't think the context of the case

really matters in terms of what those words mean.  There may be

some inherent causation built into these words, but this is

LCI1MAX1

explaining the fact that that causation needs to exist.   In

case there's any doubt in the minds of the jurors, there does

need to be causation.   There has to be an effect from the

inducement, the persuasion, the enticement.

MR. ROHRBACH:   First there has to be some sort of

causal relationship.   That's what the word "inducement" means,

for example, as a form of a causal relationship.   I'm certainly

not aware of any case or treatise that provided this

instruction.   Maybe perhaps defense counsel is.   But, you know,

the fact that it is in *Broxmeyer* does not mean it's appropriate

to give a further and more specific instruction about causation

than is already inherent in the ordinary meaning of these

words.

THE COURT:   Just so I have my head around it, the

specific suggestion was what, Mr. Everdell?

MR. EVERDELL:   "This element is satisfied only if the

persuasion, inducement, or enticement caused Jane," or we can

say "caused the individual," "to travel in interstate commerce

as alleged in the indictment."

MR. ROHRBACH:   The problem, your Honor, is that to the

extent that those words already mean to cause, inducement has a

causal meaning, persuasion has a causal meaning.   It's already

in the instruction.   And to say, you can only satisfy those

words if she caused the travel suggests that there are two

requirements -- there's the requirement that the defendant

LCI1MAX1

induced the travel, and a separate requirement that she caused
the travel.  And there's no causal obligation or causal
requirement in the statute above and beyond the persuasion,
inducement type causal requirement.

MR. EVERDELL:  I mean, your Honor, if the objection is
to the preamble by saying, "This element is satisfied only if,"
we could modify that a bit, if the government's saying that is
too strong, but the guts of the suggestion is that the
persuasion, inducement, or enticement must have caused the
individual to travel in interstate commerce, as alleged in the
indictment.

THE COURT:  I mean, I've seen this charge in a variety
of cases.  I've never seen that language.  This decision is
2010.  Have you ever seen it in a charge?

MR. EVERDELL:  I can't say that I have, your Honor.
But it is interpreting the very words of the statute that are
at issue here, and I don't think this is the way that -- the
proposal I'm proposing is not trying to belabor the point, but
it is trying to raise the issue of causation.

THE COURT:  I mean, the opinion includes further
definition of the words that are subject to the ordinary
meaning, the paragraph above that you point to.

MR. EVERDELL:  Your Honor, I'll add that it is
possible to be persuaded, induced or enticed, and then not
actually travel.  I mean, the persuasion does have to cause the

LCI1MAX1

1 travel, so that there has to be a causation, some effect of the

2 persuasion.

3    MR. ROHRBACH:  Well, the instructions say that there

4 has to be persuasion and inducement or enticement to travel,

5 and the individual has to actually travel.  Those concepts are

6 all already captured in the instruction.  These instructions

7 for this element are just -- or this offense are quite standard

8 that are in the Court's jury charge.

9    THE COURT:  Yeah, I think that's right.  It seems to

10 me -- well, one, it's a standard charge for this provision;

11 two, it's accurate; three, adding -- I mean, it seems to me

12 that the basic suggestion applies additional causation beyond

13 what's required by the ordinary meaning, and I don't see a

14 basis for that.  So I will overrule the request.

15    What's next?

16    MR. EVERDELL:  One moment, your Honor?

17    THE COURT:  Yes.

18    MR. EVERDELL:  Your Honor, next request is at page 23.

19    THE COURT:  Okay.

20    MR. EVERDELL:  This is at line 15 through 22, which is

21 the instruction on significant or motivating purpose --

22    THE COURT:  Yes.

23    MR. EVERDELL:  -- which was a suggestion from the

24 defense, and we appreciate the Court's inclusion.

25    THE COURT:  Well, I think you'd suggested significant

LCI1MAX1

1 and, if I'm remembering correctly --

2          MR. EVERDELL:  Yes, your Honor.  That may be true.

3          THE COURT:  Yes.  Go ahead.

4          MR. EVERDELL:  So we have found a different

5 instruction on this point which we would ask the Court to

6 consider, and it comes from *United States v. Miller*, and I can

7 hand that up to the Court and the government.

8          THE COURT:  Just to be clear, I adopted your

9 suggestion and now you're asking me to do something different.

10          MR. EVERDELL:  Well, it is true, your Honor, and I

11 will keep what I have, if this is objectionable to the Court.

12 But we only found this one as we were looking through with

13 respect to the charge.

14          THE COURT:  It happens.  Just give me a moment to get

15 to my notes on this one.

16          MR. EVERDELL:  Your Honor, I can give a typewritten

17 proposed instruction.

18          Page 211 of the opinion is the instruction that was

19 given by Judge Rakoff.

20          THE COURT:  And what's the charge in the *Miller* case?

21          MR. EVERDELL:  Well, your Honor, Miller was found

22 guilty of 2422 and 2423, the same statutes we're talking about.

23          THE COURT:  Okay.  So the proposal is, in order to

24 establish the element, the government must prove that it was

25 part of Ms. Maxwell's conscious purpose in having Jane travel

LCI1MAX1

1    across state lines to have her engage in criminal sexual

2    conduct, in violation of New York law.  It need not have been

3    her only purpose or motivation, but it must have been more than

4    merely incidental.  It must have been one of the dominant

5    purposes of the trip.

6              MR. ROHRBACH:  Your Honor, all that the law requires

7    is that it be one of the dominant purposes of the trip, which

8    is the instruction that the defense originally sought and the

9    Court gave.  It's the practice, as Sand endorses, to rephrase

10   "dominant" as "significant or motivating purpose" to avoid

11   confusion, because it doesn't have to be the sole dominant

12   purpose, it just has to be a dominant purpose, and so from

13   Sand, that creates ambiguity that it has to be a sufficient --

14   such a big purpose that it's the dominant purpose, which is not

15   what is required by the statute.  This instruction suggests

16   there's an additional requirement, which is that it be some

17   sort of conscious purpose to engage in the particular criminal

18   violation suggesting knowledge of the criminal statute and

19   criminal prohibition.  All the *Miller* case does is affirm that

20   this instruction is not error.  It does not say that that is

21   the required instruction by -- at least as I'm reading the --

22   I'm reading the *Miller* case for the first time now, but it is

23   an appeal from a conviction on that instruction.  It is not

24   suggesting that it's required by --

25              THE COURT:  Let me look.  I've only read the --

1          MR. ROHRBACH:  I've only read portions of it too, but

2     that's my quick read.

3          THE COURT:  So the defendant's argument in *Miller* was

4     that the prostitution or other criminal sexual activity must be

5     the dominant purpose of the interstate travel rather than only

6     one of the dominant purposes as the judge charged.

7          MR. ROHRBACH:  In fact, your Honor, I think in light

8     of that conclusion, the final sentence of the defense's

9     proposed instruction would be suggestive of error because the

10     point is that -- or at least creates the very confusion that

11     arose in *Miller* about whether it has to be one of the dominant

12     purposes.  The use of the word "dominant" is a source of

13     confusion, as Sand has explained.

14          MR. EVERDELL:  Well, your Honor, on that point, the

15     language "significant or motivating purpose" is completely

16     invented by Sand, right, and now people have used it because

17     Sand is an authority in this area, but that does not -- that

18     did not come from case law.  That is Sand's proposal to deal

19     with the issue of the dominant purpose versus one dominant

20     purpose.  There is, however, case law in many circuits where

21     the instruction "one dominant purpose" is accepted instruction,

22     and the *Miller* case endorses that instruction because that was

23     the charge that was given by Judge Rakoff and they said it was

24     perfectly proper to give that charge.  So I actually think

25     there is more support in the case law for the "one dominant

LCI1MAX1

purpose" language than language that happened to have been

invented by Sand.  As smart as Judge Sand was, that did not

actually come from any circuit case law.  So we propose going

with what the courts have actually said on this issue rather

than a proposal in Sand.

THE COURT:  I'm just going to read for a moment.

I think I want to start by asking what's wrong with

the current instruction, the one that you proposed that I

adopted?  That's the one that I've seen in --

MR. EVERDELL:  Well --

THE COURT:  -- in charges.

MR. EVERDELL:  Your Honor, there's nothing wrong with

it per se.  It is a charge that has been used in other cases,

and we proposed it, so we obviously think it's acceptable.  But

I think the new proposed charge is a charge that is more

accurate and also tracks the case law development on this point

because the dominant purpose is actually something that was in

a Second Circuit opinion and it's, you know -- Judge Rakoff has

tried to craft an instruction in *Miller* to deal with the issue

of one dominant purpose versus the dominant purpose, but the

way that I think the case law has developed in the Second

Circuit, it started with "dominant purpose" was the language

used and then we had to deal with this issue of ambiguity

there, and this is how Judge Rakoff came out, but was still

keeping the "dominant purpose" language but clarifying it was

LCI1MAX1

1    only one of the dominant purposes.

2         THE COURT:  Let me just note my remarkably crack law

3    clerks have found the following case:  *United States v. An Soon*

4    *Kim*.

5         MR. EVERDELL:  Yes.

6         THE COURT:  You're aware of it.

7         MR. EVERDELL:  Yes.  But that case --

8         THE COURT:  Just let me give the cite.  471 F. App'x

9    82 (2d Cir. 2012).  Summary order, obviously, but it says a

10   couple of things.  One -- ooh, I lost what my crack law clerk

11   sent there.  It endorses the Sand language over "dominant."

12   "These instructions are legally sound.  Neither 'dominant' nor

13   'predominant' appear in the statutory language.  Although we

14   have previously approved a jury charge that included the phrase

15   "one of the dominant purposes," (*see*, *e.g.*, *Miller*) we've never

16   required such language to appear in a jury charge on 2421.

17   Indeed, Judge Sand recommends excluding the word 'dominant'

18   from the charge so as to avoid confusion."  And then at the end

19   of the opinion, "The charge given by the district court, which

20   closely tracks the charge outlined by Judge Sand, accurately

21   and thoroughly conveyed the second element of the crime.

22   Accordingly, we find no error, much less plain error, in the

23   jury charge."

24        MR. EVERDELL:  Yes.  So the way I read that case, your

25   Honor, is that there are two variants on how this charge has

LCI1MAX1

1    been given in the Second Circuit, both of which have been

2    endorsed by the Second Circuit, neither of which is required

3    but both are permissible.

4              THE COURT:  But I think what we have here is Second

5    Circuit agreeing with Sand that "dominant" can be confusing.

6    And so I will stick with your original proposal and not the

7    request to change that out now for the language adopted by

8    Judge Rakoff because it would include the -- although deemed

9    not error, it would include the "one dominant purpose"

10   language, which is potentially confusing and not moored to the

11   text of the statute.

12             What's next?

13             MR. EVERDELL:  Understood, your Honor.

14             The next page, your Honor?

15             THE COURT:  Yes, please.

16             MR. EVERDELL:  Page 24.  So this is the page where the

17   charge describes the violation of New York law.

18             THE COURT:  Page?  Oh, I'm sorry.  I'm on my annotated

19   version.  Just a second.

20             Yes.

21             MR. EVERDELL:  Well, first, this one very small change

22   on line 19, if we could replace "the defendant" with

23   "Ms. Maxwell."

24             THE COURT:  Okay.

25             MR. EVERDELL:  But there's a larger request.

LCI1MAX1

1      THE COURT:  All right.  Page 24, line 19, I'll adopt

2   that change.  So instead of "the defendant," "Ms. Maxwell."

3      Just one moment.

4      Okay.

5      MR. EVERDELL:  Okay.  So the additional request is --

6   this is where the issue of the fact that Kate was above the age

7   of consent and about the fact that -- well, Annie's testimony

8   was not a violation of New York law.  That's what the Court

9   gave the limiting instruction to the jury on.  We think that it

10  is appropriate to incorporate those limiting instructions into

11  the jury charge and that this is the place where it should be

12  given.  Because it's one thing to give the limiting instruction

13  at the time of the testimony -- that is what we asked for and

14  we appreciate the Court doing that -- but I think that they

15  need to be instructed again before they go into deliberations,

16  now having heard 12 plus days of testimony, that what those

17  considerations -- that testimony they are allowed to consider

18  for what purpose, because if they're given an instruction on

19  New York law, I think it's time to reiterate in the charge to

20  them that Kate was over the age of consent and was not

21  involved -- it cannot be considered illegal sexual activity,

22  because this is where the illegal sexual activity is defined.

23  And same with Annie.  I have a proposed instruction to add

24  here, but it tracks the language of the limiting instruction

25  the Court gave, so I don't think it's adding any language.  I

LCI1MAX1

1    can hand it up.

2              THE COURT:  Sure.

3              MR. EVERDELL:  And your Honor, as you consider that,

4    there is one proposed addition I just want to request to what's

5    on that page, but I want to handle that slightly separately.

6              THE COURT:  The representation is these are --

7              MR. EVERDELL:  Yeah.

8              THE COURT:  -- my limiting instructions given before

9    Kate and Ms. Farmer testified, and you're asking for

10   inclusion -- repetition of those limiting instructions where

11   the violation of New York criminal law is provided.

12             MR. EVERDELL:  That's correct, your Honor.  And we

13   would propose just putting it at the end after the discussion

14   that's already there.

15             THE COURT:  Mr. Rohrbach.

16             MR. ROHRBACH:  I think that among other things, your

17   Honor, I think that would be -- the instruction as you've

18   crafted it is a correct statement of New York law and the

19   relevant issues.  Adding these instructions would be quite

20   confusing to the jury.  The jury has already heard them.  This

21   is the place where there's no reason to give the Kate

22   instruction because these jury instructions state specifically

23   that the jury may not convict based solely on overt acts that

24   relate to Kate, and so there is no risk, when these full set of

25   instructions is read to the jury, that they will think that

LCI1MAX1

1        they can convict based on the illegal sexual activity as it

2        relates to Kate and as it relates to Annie.  Annie only relates

3        to the conspiracy counts, at least as to these Mann Act

4        charges, and the jury is going to be instructed here that the

5        relevant illegal sexual activity has to be the violation of the

6        New York offense.  So again, there's no risk that the jury will

7        think that the sexual contact that happened in New Mexico is

8        something that on its own is sufficient to show the illegal

9        sexual activity required by the statute.  So, here, in the full

10       set of instructions, there's no need for an additional

11       instruction, especially on top of the fact that the Court has

12       already given these limiting instructions to the jury.

13              THE COURT:  All right.  I agree with that.

14              MR. EVERDELL:  Well, your Honor, there's one other

15       issue, which is the part that's not in the typewritten

16       instruction I handed you, which is the fact that Jane testified

17       about traveling to New Mexico at various times in her

18       testimony.  And there was I think one trip she may have said

19       she was under the age of 16, which -- 15 or 16 I think is what

20       she said as to that trip, which we believe is the actual legal

21       age of consent in New Mexico; but she also testified about

22       other travel to New Mexico, where events took place, where

23       sexual contact took place, and so I think with respect to that,

24       we are going to need some kind of instruction to the jury that

25       if she's above the age of consent in New Mexico, that can't be

LCI1MAX1

1    considered illegal sexual activity for the purposes of their

2    deliberations.  It's not as charged in the indictment.  We're

3    talking about New York law, so I don't know if that was made

4    clear to the jury.

5         MR. ROHRBACH:  Your Honor, these instructions do not

6    put before the jury any violation of any New Mexico offense

7    whatsoever above or below the age of consent, so I think

8    there's no risk that the jury is going to convict the defendant

9    based on their concerns about a violation of a New York

10   offense.

11        MR. EVERDELL:  That's not really the issue about what

12   instructions to put before the jury.  The testimony put before

13   the jury, sexual contact between Jane and Epstein in New Mexico

14   after what we believe is the age of consent in New Mexico, and

15   so if --

16        THE COURT:  That's why, I think, it's the same reason

17   I gave limiting instructions as asked with respect to the

18   testimony of Kate and Annie.  I think what I'm hearing you say

19   is, you meant to ask for a limiting instruction at that time?

20        MR. EVERDELL:  Well, your Honor, we knew from the

21   proffered 3500s for the other witnesses what they were planning

22   on testifying to, so we were able to request those at the time

23   before the witnesses testified and brief those *in limine*.  I

24   didn't think we -- what we knew about Jane ahead of time was

25   that she alleged that she traveled to New Mexico but that

LCI1MAX1

nothing happened on the New Mexico trips, and then I think it
came out in the testimony -- unless the government wants to
correct me if we're wrong about that, but I think that our
status of our knowledge was that we weren't expecting to hear
about testimony about sexual contact in New Mexico.  But they
can correct me if I'm wrong about that.

          MR. ROHRBACH:  I believe that Jane only testified as
to one sexual incident of sexual abuse in New Mexico and that
that was reflected in the 3500 material.  I think Ms. Pomerantz
is looking for it, but it should not have been a surprise to
the defense.

          THE COURT:  Yeah.  I mean, the problem -- the
instructions are accurate.  It's clear it's a violation of New
York law.  This was the government's argument for not giving
the limiting instructions that I gave with respect to Annie and
Kate, but I did give those instructions.  It sounds like maybe
there was an instance in which the defense might have requested
one following a particular piece of testimony.  To add that
now, having not -- well, let me put it this way.  Having not
asked for a limiting instruction then I don't think provides a
basis for inclusion of limiting instructions, repetition of
limiting instructions in the charge, and even without it, which
was the government's original argument, it's clear that the
violation of law is as charged in New York.  So I'm not
persuaded to include it.  I'm not persuaded to include it.

LCI1MAX1

1          MR. EVERDELL:  Understood, your Honor.

2          Okay.  Next page, your Honor?

3          THE COURT:  Yes.

4          MR. EVERDELL:  The next one we have is on page 26.

5          THE COURT:  Okay.

6          MR. EVERDELL:  We would reiterate, just for the

7    purposes of the record, of including "Jane" as opposed to "an

8    individual" or "the individual."  That's been overruled, but we

9    will ask that the word "solely" be included on line 12, so,

10   "Count Four also relates solely to Jane."

11         MR. ROHRBACH:  No objection.

12         THE COURT:  Okay.  We'll make that change.  And my

13   clerk tells me we missed an "and foreign" on page 25.

14         MR. EVERDELL:  Yes, yes.  So we do have to go back to

15   page 25.  So on line 5, there's an "or foreign."

16         THE COURT:  So that will be with the ellipses.  So

17   page 25, line 5, "interstate... commerce..."

18         MR. EVERDELL:  Yes.  And there's one other thing on

19   that page, your Honor, I forgot to mention.

20         THE COURT:  Just a moment.

21         Okay.  Go ahead.

22         MR. EVERDELL:  Your Honor, on line 4 of that same

23   page, 25, I know it's a quote from the statute, which does say,

24   "knowingly transports any individual under the age of 18," but

25   this is the issue with New York law being under the age of 17,

LCI1MAX1

1    which is on the next page, page 26.  The third element says

2    that the defendant knew that Jane was less than 17 years old.

3            THE COURT:  Do you want to do bracket?

4            MR. EVERDELL:  Yeah, I think we should do a bracket.

5            THE COURT:  Mr. Rohrbach?

6            MR. ROHRBACH:  That's fine.  The government proposed

7    perhaps an awkward instruction I think to perhaps explain this

8    to the jury.  This is an elegant solution.

9            THE COURT:  I spent an inordinate amount of time

10   thinking through precisely this question, and I decided that

11   it's best just to do this because it would just be confusing.

12   I mean, it is a separate element, but it would just be

13   confusing.  So I think this is a good suggestion.

14           Page 25.  So we'll take out -- well, why don't we do

15   this.  Why don't we do "under [the age of 17 years] in

16   interstate commerce."

17           MR. EVERDELL:  That's fine, your Honor.

18           MR. ROHRBACH:  That's fine with the government.

19           MR. EVERDELL:  That's perfectly acceptable.

20           THE COURT:  So page 25, line 4, "Any individual under

21   [the age of 17 years] in interstate commerce."

22           Okay.  What's next?

23           MR. EVERDELL:  We covered page 26 already, so -- and

24   on page 27, I believe there's an "or foreign" issue, so line 5.

25           THE COURT:  Yes.  Page 27, line 5, deleting "or

LCI1MAX1

1    foreign."

2              MR. EVERDELL:  And then also on lines 7 to 8, it said,

3    "from one state to another or between the United States and a

4    foreign country," so we should eliminate "or between the United

5    States and a foreign country."

6              MR. ROHRBACH:  No objection.

7              THE COURT:  Okay.  Page 27, lines 7 through 8 -- oh,

8    and also the sentence above has "or foreign" in the quote, so

9    we'll ellipses I guess the phrase "transport an individual in

10   interstate," cutting "or foreign," adding "... commerce."  And

11   then the next line, ending the sentence after "another," so it

12   would read "from one state to another," cutting "or between the

13   United States and a foreign country."

14             MR. EVERDELL:  Yes, your Honor.

15             THE COURT:  Hang on one second.

16             Oh.  My clerk makes a good point.  We should just cut

17   "or foreign" in that quote, not do ellipses, because I'm just

18   quoting myself.

19             MR. EVERDELL:  That's right.

20             THE COURT:  Okay.  So line 6 is just "transporting an

21   individual in interstate commerce."

22             Okay.  Next.

23             MR. EVERDELL:  And your Honor, I did just notice

24   something, because I always forget to focus on the titles

25   sometimes, but for Count Four, they all refer to transportation

LCI1MAX1

```
1    of a minor to engage in, so I think we need to change the

2    titles for Count Four, and I can get you the pages in a second,

3    but "transportation of an individual under 18 to engage in

4    illegal sexual activity."

5         MR. ROHRBACH:  That's fine, your Honor, but this

6    actually raises a related question, which is just whether the

7    Court sends the indictment back with the jury, since I think

8    the indictment has the same issue.  It describes some of the

9    offenses in their captions as "of a minor."

10        THE COURT:  Well, what are the parties' positions on

11   that?

12        MR. ROHRBACH:  The government is not seeking to send

13   the indictment back, your Honor.

14        MR. EVERDELL:  One moment, your Honor.

15        THE COURT:  Yes.

16        MR. EVERDELL:  Your Honor, the defense would not like

17   that to happen.  We think that the instructions advise the jury

18   about what they need to know about the law.

19        THE COURT:  You're saying you don't want to send the

20   indictment back.

21        MR. EVERDELL:  Right.

22        THE COURT:  You're in vigorous agreement.

23        MR. EVERDELL:  Oh, I thought we were disagreeing.

24   That's so rare.  Yes, we're in agreement with that.

25        THE COURT:  I don't send it back unless the parties
```

LCI1MAX1

1      agree.

2                MR. ROHRBACH:  That's fine, your Honor.  We're in

3      agreement.  How about that?  So then the edit to this title is

4      fine and there's no need to make it track the indictment.

5                THE COURT:  And this one --

6                MR. EVERDELL:  So, your Honor, this would apply to

7      pages 25, 26, 27 --

8                THE COURT:  Can you give me the instruction numbers,

9      because my clerk's pages are off now that we made edits.

10                MR. EVERDELL:  Yes, sure.  It's Instruction No. -- let

11     me get the first one.  18, 19, 20, 21, 22, and I think that's

12     it.

13                THE COURT:  Okay.  And the request here is?

14                MR. EVERDELL:  We would change the title to

15     "Transportation of an Individual Under 18 to Engage In --"

16                MR. ROHRBACH:  It would be 17.

17                MR. EVERDELL:  17, yes.

18                THE COURT:  Okay.  So for all of the Count Four

19     titles, we'll change "a Minor" to "an Individual Under the Age

20     of 17."

21                MR. ROHRBACH:  And I'm sure the Court will likely make

22     this change automatically, but just to note that that change

23     would need to be reflected in the Table of Contents as well.

24                THE COURT:  I believe that auto-populates it.  I

25     wouldn't know how to do that, but I believe that's what

LCI1MAX1

1    happens.  But we will double-check it.  Thank you.

2            Okay.  What's next, Mr. Everdell?

3            MR. EVERDELL:  Well, your Honor, just page 28, to

4    preserve our suggestion, we would request to substitute the

5    *Miller* charge.  We understand that's been overruled.  Lines 11

6    to 17.

7            THE COURT:  Okay.

8            MR. EVERDELL:  Then I think we can skip to page 32.

9            THE COURT:  That was your first one, right,

10   Mr. Rohrbach?

11           MR. ROHRBACH:  It was, although, your Honor, we have,

12   in the course of our conversations, resolved that, so the

13   government has no -- our next edit, our next request, is on

14   page 69, actually.

15           THE COURT:  Okay.  Page 32, Mr. Everdell.

16           MR. EVERDELL:  Yes, still on 32 for the defense.  We

17   request on line 10, "This count relates solely to Carolyn."

18           MR. ROHRBACH:  No objection.

19           THE COURT:  Okay.  Thank you.  We'll make that change.

20   Instruction No. 25, line 10, "This count relates," adding the

21   word "solely," "to Carolyn."

22           All right.  Mr. Everdell, next page.

23           MR. EVERDELL:  One moment, your Honor.

24           THE COURT:  My clerk notes that we have "Minor" in the

25   heading of all the Count Six --

LCI1MAX1

1          MR. EVERDELL:  So this one, because the statute is 18,

2    it would have to be sex trafficking of an individual under the

3    age of 18.

4          THE COURT:  I agree with that.

5          Mr. Rohrbach?

6          MR. ROHRBACH:  No objection, your Honor.

7          THE COURT:  Okay.  So go ahead.  You want to call them

8    off, the instruction numbers for that, Mr. Everdell?

9          MR. EVERDELL:  Sure, your Honor.  That is Instruction

10   Nos. -- just a minute -- 24, 25, 26, 27, 28, and 29.

11         THE COURT:  Okay.  So for all of those, we'll take out

12   "a Minor" and replace with "an Individual Under the Age of 18."

13         MR. EVERDELL:  Right.

14         THE COURT:  Next page.

15         MR. EVERDELL:  Okay.  So we just dealt with page 32,

16   which is the addition of the word "solely" on line 10?

17         THE COURT:  Yes.

18         MR. EVERDELL:  All right.  Then on page 35, small

19   edit.  At line 13, replace "the defendant" with "Ms. Maxwell."

20         THE COURT:  Okay.  Page 35, line 13, replacing "the

21   defendant" with "Ms. Maxwell."

22         MR. EVERDELL:  Yeah.

23         THE COURT:  Okay.

24         MR. EVERDELL:  Okay.  Yes.  And just for clarity's

25   sake, your Honor, we're not replacing every instance of the

LCI1MAX1

1    word "defendant" with "Ms. Maxwell."  We tried to pick the ones

2    which made sense, and I understand the Court did the same.

3          THE COURT:  I was trying to do that as well, as is

4    typical in my charges.

5          MR. EVERDELL:  Yes, understood.

6          So I think our next one is not until -- I'm just

7    checking with my colleagues -- is not until page 49, but give

8    me one minute.

9          THE COURT:  Okay.

10         MR. EVERDELL:  Okay.  Actually, your Honor, if we go

11   back to page 44.

12         THE COURT:  44?  Okay.

13         MR. EVERDELL:  So this is line 4.  We have the word

14   "minors" again, right?  This is a discussion of the elements of

15   the conspiracy, but, "Count One charges Ms. Maxwell with

16   participating in a conspiracy" etc., etc. "to entice minors to

17   travel and engage in sexual activity."  And there are other

18   instances of "minors" in line 15.  It's "to transport minors."

19         THE COURT:  So for all of these, this would be "an

20   individual under the age of 17."

21         MR. EVERDELL:  Well, yes.  So it's going to be line 4,

22   line 6, line 15, and line 19.

23         THE COURT:  Mr. Rohrbach?

24         MR. ROHRBACH:  That's fine, your Honor.  And I would

25   note in the next paragraph, there is a reference to "minor,"

LCI1MAX1

1    and there the change should be "under the age of 18" rather

2    than 17, but the conforming changes make sense.

3            THE COURT:  Okay.  Let me just articulate these.

4            MR. EVERDELL:  That's fine.

5            THE COURT:  So Instruction No. 34 on lines 4, 6, 15,

6    and 19, we're going to replace "minors" with "individuals under

7    the age of 17."

8            MR. EVERDELL:  And there's one on line 10 as well,

9    your Honor.

10           MR. ROHRBACH:  As well as line 13, your Honor.

11           THE COURT:  Come on.  The clerks are good, but, you

12   know, it's Saturday, after all.

13           We'll do a search and replace also, but I think it is

14   worth doing, since some of them are under 17 and some are under

15   18.

16           MR. EVERDELL:  That's right, your Honor.

17           THE COURT:  Okay.  So let me just repeat.

18           So Instruction 34, lines 4, 6, 10, 13, 15, and 19, we

19   will replace "minors" with "individuals under the age of 17."

20           MR. EVERDELL:  Correct, your Honor.

21           THE COURT:  And then moving to replacing the word

22   "minor" with "an individual under the age of 18," Mr. Everdell,

23   that's line 24.

24           MR. EVERDELL:  Yes, your Honor.

25           THE COURT:  And what else?

LCI1MAX1

1          MR. EVERDELL:  And then the next page, page 45,

2     line 1, there's the word "minor," which would be "an individual

3     under the age of 18."

4          MR. ROHRBACH:  Your Honor, in this paragraph, since

5     this is the conspiracy that applies to multiple minors, I think

6     it should be "individuals under the age of 18" rather than just

7     one.

8          MR. EVERDELL:  That's fine.

9          THE COURT:  For the second -- yeah.  Right.  So that

10     is important that we're doing these one at a time.  So line 24,

11     it's "an individual under the age of 18."  And then the next

12     page, page 45, line 1, it's --

13          MR. ROHRBACH:  I think they both should be --

14          THE COURT:  They both should be "an individual under

15     the age of --"

16          MR. ROHRBACH:  I think they both should be

17     "individuals under the age of 18."

18          THE COURT:  I'm sorry.  You're right.  They're both

19     the conspiracy.

20          MR. EVERDELL:  That's right, your Honor.

21          THE COURT:  Okay.  I apologize.  Let me start again.

22     So Instruction No. 34, line 24, "individuals under the age of

23     18," on line 24; and then the following page, line 1, same

24     change, "individuals under the age of 18"; and then same change

25     on line 3.

LCI1MAX1

MR. EVERDELL:  Slightly different.  That would be "an individual under the age of 18," because that's the substantive count.

THE COURT:  Yes.  Line 3, replacing "minors" with "an --" wait.  Let me just read that sentence again.

MR. ROHRBACH:  I think these are all references to the conspiracy.

MR. EVERDELL:  That's right.  I'm sorry, your Honor. This is still talking about the conspiracy.  So that one on line 3 would still be "sex trafficking of individuals under the age of 18."

THE COURT:  Yes.  I agree with that.

Okay.  So for all of Instruction 34, all of the instances -- well, in the second paragraph -- no, I'm sorry.  I won't repeat it.  We got it.  Page 45, line 3, "individuals under the age of 18."

Okey dokey.  Next.

MR. EVERDELL:  So, your Honor, now we have page 49, or instruction No. 36.  It's --

THE COURT:  I'm sorry.  What page?  49?

MR. EVERDELL:  Page 49, Instruction 36.

THE COURT:  Okay.  Actually, before you start, I'll just note, there's an extra word, "Two," T-W-O, in the title. So line 1, it's just Counts One, Three, and Five, deleting the word "Two."

LCI1MAX1

 1          MR. EVERDELL:  Oh, yeah.  Agreed, your Honor.

 2          MR. ROHRBACH:  Yes.

 3          THE COURT:  What do you have, Mr. Everdell?

 4          MR. EVERDELL:  So this is where it gets a little

 5     complicated, your Honor.  I mean, I know that in lines 11

 6     through 22, we're listing -- and in the next page as well,

 7     we're listing out the overt acts in the indictment.  We're

 8     listing them verbatim, but they're talking about ages, under

 9     the age of 18, under the age of 18, and we've already talked

10     about how the ages are sort of different depending on the

11     statutes.  That's one issue.  Right.  So we might want to

12     replace the -- instead of the ages -- and I know -- it's less

13     of an issue because I think we've agreed that the indictment is

14     not going back to the jurors, so they're not going to be

15     reading the language, but maybe instead of "under the age of

16     18," "when Jane was under the relevant age of consent in the

17     relevant jurisdiction," or something to that effect.

18          MR. ROHRBACH:  Your Honor, if I may.  I understand the

19     concern the defense is raising.  I think for Counts One and

20     Three, since the relevant age of consent I think everyone

21     agrees is 17, the government would be fine with saying "under

22     the age of 17," and we'd have to say "the indictment alleges"

23     or something like that, because it would no longer be following

24     the text of the indictment.

25          THE COURT:  Yes.  I mean, we could do "alleges" or

LCI1MAX1

1    brackets or something.

2            So are you okay with "alleges" there, Mr. Everdell?

3            MR. EVERDELL:  Well, let me see about that.

4            Are we talking just about the overt acts with respect

5    to Jane or are we talking about with Annie as well?  Because

6    the overt act with respect to Annie is, she's saying she's

7    under the age of 18, but the age of consent there is 16, so --

8    and Kate -- there are a few issues here, so I'll just lay them

9    out.

10           The instruction with Annie is, you know, there's the

11   age of consent issue with Annie.  But skipping to Kate, which

12   is No. 4, on line 18, I don't think that should be in there at

13   all because that invites them to base an overt act and convict

14   the defendant based on Kate's testimony, which the Court has

15   already instructed that the jury can't.  So, I mean, if they

16   found that this element was satisfied solely with Kate's

17   testimony, that would be an improper conviction.  So that

18   shouldn't be included.

19           MR. ROHRBACH:  Insofar as we're no longer following

20   the exact text of the indictment, the government would be fine

21   with deleting the overt act relevant to Kate for the reason

22   Mr. Everdell stated.

23           THE COURT:  Okay.  All right.

24           MR. EVERDELL:  All right.  So then I think we could

25   probably say with respect to 1 and 2, which we're talking about

LCI1MAX1

1  Jane, Jane was -- we would say the indictment alleges that Jane

2  was under the age of 17, in both 1 and 2.

3          THE COURT:  All right.  So let me just --

4          MR. EVERDELL:  Yeah.

5          THE COURT:  Hang on.  So this is Instruction 36,

6  line 11.

7          MR. EVERDELL:  Correct.

8          THE COURT:  Page 49.  I'm going to change "reads" to

9  "alleges," and then line 12, we're going to say "when Jane was

10  under the age of 17," correct?

11          MR. EVERDELL:  That's correct.

12          THE COURT:  So that's line 12, subbing 17 for 18.

13          And then the next instance of that is line 14.

14          MR. EVERDELL:  Correct, your Honor.

15          THE COURT:  "When Jane was under the age of 17."

16          MR. EVERDELL:  Mm-hmm.

17          THE COURT:  And then we get to line 16.

18          MR. EVERDELL:  For this one, I would propose that we

19  simply, you know, eliminate the age, if they want to keep this

20  as an overt act and if we think it's proper for the jury to

21  consider Annie's testimony as a potential overt act in

22  furtherance of the conspiracy, even though the goal of the

23  conspiracy is a violation of New York law.  So my first

24  objection is that I don't think you can actually consider

25  Annie's testimony as the overt act if what's described there is

LCI1MAX1

1    not the violation of New York law.  So that is our objection to

2    that.

3              MR. ROHRBACH:  Well, I think, understanding that

4    Mr. Everdell is I think preserving the earlier objection about

5    Annie's testimony, as far as the suggestion to resolve the

6    redacting issue is just to remove her age from this clause, I

7    think that would be fine and the jury can make its own

8    conclusions about, you know, Annie's age and how it relates to

9    the offense.

10             THE COURT:  I understand the broader suggestion, but

11   in light of my earlier conclusion, this third overt act would

12   read, "In or about 1996, Maxwell provided Annie with an

13   unsolicited massage in New Mexico."

14             MR. ROHRBACH:  That's my understanding of

15   Mr. Everdell's suggestion, and the government would be fine

16   with that.

17             MR. EVERDELL:  And I guess to clarify, Judge, I'm

18   understanding the Court's logic to be that the testimony of

19   Annie about the topless massage can be considered by the jury

20   as evidence of the conspiracy to violate New York law.

21             THE COURT:  That's right.

22             MR. EVERDELL:  Okay.  And understanding that's the

23   Court's logic and ruling, then we would -- but then we would

24   like the redaction.  We preserve our objection from before,

25   but -- yes.

LCI1MAX1

1      THE COURT:  And again, noting that that's why I gave

2  the limiting instruction for Annie's testimony, that's why the

3  limiting instruction did differ from the limiting instruction

4  for Kate, because that is the Court's legal conclusion.

5      MR. EVERDELL:  Understood, your Honor.

6      THE COURT:  So let me just make sure my clerks --

7  yeah.  Right.  My clerk has adopted the change on line 16,

8  cutting the comma, "when Annie was under the age of 18," comma.

9      Next.

10      MR. EVERDELL:  Your Honor, just to confirm, we are

11  also eliminating, with the government's consent, No. 4, which

12  refers to Kate, the overt act referring to Kate.

13      THE COURT:  Yes.  So eliminating entirely the overt

14  act on line 18 through 20.  And then we'll have to change the

15  fifth one to 4 --

16      MR. EVERDELL:  Correct, your Honor.

17      THE COURT:  -- on line 20.  And that one looks like it

18  can stay as is with the age.

19      MR. EVERDELL:  Yes, your Honor.

20      THE COURT:  Okay.

21      MR. ROHRBACH:  Your Honor, I think that that should

22  be -- on line 21, it should still be changed to 17, even

23  though --

24      THE COURT:  Because of the --

25      MR. ROHRBACH:  Because of the legal count.  It's the

LCI1MAX1

conspiracy to violate the offense with the age of consent of

17, even though elsewhere Carolyn is charged with an age of

consent of 18.

THE COURT:  I presume you have no objection?

MR. EVERDELL:  No objection, your Honor.

THE COURT:  Yes.  Let me just think about that.

I see.  Okay.  All right.  So Instruction 36, line 21,

changing "Carolyn was under the age of 18" to "the age of 17."

Yeah, that's right.

Okay.  Next.

MR. EVERDELL:  Next one, lines, on that page, 23 to

24, and on the following page, lines 1 through 10, it tracks

the same changes for the transportation charge.

MR. ROHRBACH:  That makes sense, I think, your Honor.

THE COURT:  Okay.  Let me see if I can do these.

Line 24, changing "age of 18" to "age of 17," and then line 2,

changing "age of 18" to 17.  Line 4, cutting the clause "when

Annie was under the age of 18," and then cutting overt act

regarding Kate at No. 4.  So that's lines 6 through 8.  And

then line 19, changing 18 to 17.

MR. EVERDELL:  Correct, your Honor.

MS. STERNHEIM:  Judge, you would also want to change

the bracketed No. 5 to No. 4.

THE COURT:  Thank you, Ms. Sternheim.  Changing the

fifth listed overt act to the fourth listed overt act.  Just

LCI1MAX1

1     one moment.

2           Oh, and we'll again change, on line 23, page 49, the

3     word "reads" to "alleges."

4           MR. EVERDELL:  Yes, your Honor.

5           THE COURT:  Okay.  Next.

6           MR. EVERDELL:  Same page, page 50, your Honor,

7     line 18, just going back, these are overt acts with respect to

8     Count Five.

9           THE COURT:  Mm-hmm.

10          MR. EVERDELL:  The third one, which begins on line 17,

11    between -- oh, yes.  "Between in or about 2001 and in or about

12    2004, Epstein's employees, including at times Maxwell, sent

13    Carolyn gifts, including lingerie, etc."  I don't think there's

14    any evidence in the record that Maxwell sent any gifts.  In

15    fact, I think the FedEx records show that it wasn't Maxwell

16    sending anything.  I don't think there's any testimony in the

17    record that Maxwell was sending the gifts, so I think that

18    should be excluded.

19          MR. ROHRBACH:  That's fine, your Honor.  This is what

20    the grand jury charged, but that is fine, given the state of

21    the record.

22          THE COURT:  Okay.

23          MR. ROHRBACH:  But to be clear, the government is fine

24    with including the clause -- cutting the clause "including at

25    times Maxwell."

LCI1MAX1

1          THE COURT:  So I think that's the request.  So line 18

2     on my page 50, which is the second page of Instruction No. 36,

3     we will cut comma, "including at times Maxwell," comma.

4          MR. ROHRBACH:  And in light of that change, your

5     Honor, on line 11 of that page, it should say, "The indictment

6     alleges as follows."

7          THE COURT:  Right.  On line 11, changing "reads" to

8     "alleges."

9          What's next, Mr. Everdell?

10          MR. EVERDELL:  Yes, your Honor.  It's on page 51,

11     line 15.  I think we've been using "Ms. Maxwell" in this

12     charge, so we'll change on line 15 "the defendant" to

13     "Ms. Maxwell."

14          MR. ROHRBACH:  That's fine, your Honor.

15          THE COURT:  Okay.  So we're on Instruction No. 36.

16     Close to the end of that, the second to last paragraph of that

17     instruction, line 15, changing "the defendant" to

18     "Ms. Maxwell."

19          So one question.  We've taken Kate out of the overt

20     acts.  Page 51, lines 13 through 16 are no longer seem to make

21     sense.

22          MR. EVERDELL:  51, your Honor?

23          THE COURT:  Yeah.  Right?

24          MR. EVERDELL:  Well, I understand what you're saying

25     with respect to reference to overt acts because she's not in

LCI1MAX1

1    the overt acts, but I do think it's important to instruct the

2    jury here that they can't convict solely on the basis of Kate's

3    testimony.  That I think is --

4              THE COURT:  Right, because it's not just about what's

5    in the indictment.

6              MR. EVERDELL:  Right.

7              MR. ROHRBACH:  That's right, your Honor.

8              THE COURT:  Okay.

9              MS. STERNHEIM:  Judge, may I just have one moment with

10   Mr. Everdell?

11             THE COURT:  Yes, please.  Actually, why don't we take

12   a 10-minute break.

13             MR. EVERDELL:  Thank you, your Honor.

14             MR. ROHRBACH:  Thank you, your Honor.

15             THE LAW CLERK:  All rise.

16             (Recess)

17             (Continued on next page)

18

19

20

21

22

23

24

25

LCIAMAX2ps

1           (Jury not present)

2           THE COURT:  All right.  Mr. Everdell.

3           MR. EVERDELL:  Thank you, your Honor.  The next page

4    we have is page 54, instruction 39, the conscious avoidance

5    instruction.  Your Honor, on that, the defense objects to this

6    being included, this instruction being included in the charge.

7           I think, as the Court is aware, to include an

8    instruction on conscious avoidance, you have to establish two

9    prongs.  First is that the defendant has to assert some lack of

10   specific aspect of knowledge required for conviction.  I don't

11   think we're disputing that.  But the second prong is that there

12   must be an appropriate factual predicate for the charge.  And

13   here, your Honor, the government's theory of the case and the

14   proof that's been elicited through the testimony is that she

15   was an active participant in all aspects of the charges.  There

16   has been testimony by all of the witnesses that she was not

17   only participating and facilitating the sexual encounters but

18   that she participated.  So we have testimony from Jane that she

19   was involved, that Ms. Maxwell was involved in the group

20   sexualized massages.  We had testimony from Annie that the

21   topless massage was done by Ms. Maxwell; she rubbed the top

22   part of her chest during the topless massage.  We had testimony

23   from Carolyn that Ms. Maxwell groped her breasts and commented

24   upon her hips.  These are all active-participant measures.

25   This is someone that's not consciously avoiding.

LCIAMAX2ps

1          The theory they are proceeding on is that she is an

2     active participant.  They can't have it both ways.  The proof

3     at trial that they have elicited is that she was actively

4     involved.  This seems to be here as some sort of backup option.

5     And that's not permissible, your Honor.

6          And I would add that, in a case like this in

7     particular, there is a real concern that the jurors are going

8     to look at this evidence and, given the subject matter of the

9     case, they're going to think, well, she must have known and

10    that's enough for me because this is conduct that really I

11    can't countenance because it involves children.  And then the

12    conscious avoidance instruction will give them license to

13    convict the defendant on an improper basis simply because of

14    the nature of the subject matter.

15         So that's an overlay, your Honor.  But at the basis,

16    it's that the proof and the theory of the charging in this case

17    and the proof that's gone with it is that she's an active

18    participant o, so we do not think that there is an appropriate

19    factual predicate for this charge.

20         MR. ROHRBACH:  A few responses to that, your Honor.

21    First of all, the witnesses testified that she was an active

22    participant.  The jury may reject their testimony that she

23    actively participated and can still convict based on her

24    facilitation of the various offenses, including through a

25    conscious avoidance theory.

LCIAMAX2ps

1          Second of all, there are particular factual knowledge

2     elements that the defense is contesting.  One is her knowledge

3     of the age of the victim.  Another is her mens rea with regard

4     to the purposes of travel.  And so for those things the jury

5     could reasonably conclude that she had sufficient -- that she

6     was engaging in conscious avoidance as to those particular

7     facts.

8          So, for example, to take the knowledge of age issue,

9     the defense has elicited testimony from several witnesses that

10    the defendant could not, was not aware that the various victims

11    were minors.  The jury could conclude that she in fact did have

12    that knowledge.  The jury could also conclude that she

13    consciously avoided having that knowledge.  Those are both

14    reasonable theories available for the jury for which there is

15    an adequate factual predicate in the record, your Honor.

16         MR. EVERDELL:  Your Honor, I think this is inviting

17    the jury, by considering the conscious avoidance charge, to

18    convict on an improper basis that she must have known.

19         THE COURT:  Could you just respond to the specific

20    argument, because I think you started by saying there's been no

21    contention as to a lack of knowledge with respect to any aspect

22    of the crimes charged.  So the specific contention and the

23    reason I had in my head to include it rather than not include

24    it -- which, for reasons you've indicated, is a case-by-case

25    analysis depending on what factual issues are in play.  But on

LCIAMAX2ps

1   the question of knowledge as to age, what's your response?  Why

2   isn't it applicable with respect to what the defense has put in

3   issue with regard to that?

4           MR. EVERDELL:  Yes, your Honor.  The witnesses

5   themselves -- sorry, your Honor.  One moment.

6           THE COURT:  Yes.

7           MR. PAGLIUCA:  If you don't mind, your Honor, it's

8   easier for me --

9           THE COURT:  Since it's Saturday, I will break my

10  one-lawyer-per-issue rule.

11          MR. PAGLIUCA:  I appreciate it.  My recollection is

12  the testimony from each of the four witnesses, I will call

13  them, is that they said that they told Ms. Maxwell their age.

14  Carolyn said that she told Ms. Maxwell her age.  Jane said she

15  told Ms. Maxwell her age.  Similarly, Kate said she told

16  Ms. Maxwell her age.

17          So there is no "I'm not trying to find out what her

18  age is" evidence in this case.  The evidence that was

19  elicited -- I think this is, you know, largely through

20  Mr. Alessi.  Mr. Alessi said that he only saw two people at the

21  house that he thought were under the age of 18, and that was

22  Ms. Roberts and Jane.  I'm trying to remember everybody's

23  names.

24          So that's that testimony.

25          I don't think there's any other testimony in the

LCIAMAX2ps

1    record that relates to that topic.  So I think that --

2           THE COURT:  So the defense has questioned multiple

3    witnesses on their perceptions of individual ages, of relevant

4    individuals' ages, so that puts into question the knowledge

5    element with respect to ages, and it's true there's testimony

6    from each of the alleged victims as to what they told

7    Ms. Maxwell, but of course I don't know whether the jury will

8    accept that testimony or not, or any of those individual pieces

9    of testimony.  So it seems like having -- the question here is

10   whether there are specific elements, knowledge elements that

11   are in issue, either because it's what some of the evidence

12   goes to or because the defense has made cross-points or will

13   make arguments regarding that.  I mean, I don't suppose it's

14   the case that the defense won't -- will it not argue during

15   closing anything with respect to whether Ms. Maxwell knew of

16   the relevant ages?

17          MS. STERNHEIM:  May we have a moment, Judge?

18          THE COURT:  Sure.

19          MR. PAGLIUCA:  Here's the -- I'm going to try to

20   address -- there's a larger concern.  I need to break this into

21   two pieces.

22          THE COURT:  OK.

23          MR. PAGLIUCA:  One that I view as an evidentiary issue

24   with the indictment and the evidence in the case is that there

25   was testimony about multiple females being at the Palm Beach

LCIAMAX2ps

residence.  And I think the testimony that was elicited by the

defense went to what the ages of these multiple females looked

like, because the inference is that there are, you know,

literally hundreds of under-age women at Epstein's house.

And so the testimony from Mr. Alessi was, he only saw

two people that he thought looked under age, as opposed to the

rest of these people.

There was no testimony elicited that, you know,

Ms. Maxwell did or didn't know what -- I mean, the contention

is that these folks were older.  Kate, for example, the

contention is she wasn't under age.

THE COURT:  Yesterday, I think Ms. Dubin was asked how

Jane appeared to her.

MR. PAGLIUCA:  Correct, at the office.  But I also

think that that's a tension here, is that Jane was older than

she is saying.  You know, the actual factual dispute is, Jane

says she was 14, 15.  We disagree.  We believe it's later in

time.

So this is not an avoidance issue.  This is a factual

dispute as to how old these people actually were.  With the

exception of Carolyn, who says, you know, I was this age, and

we say, we never, you know, had anything to do with Carolyn.

That's the factual dispute.

And so I think there is a legitimate argument that

doesn't relate to conscious avoidance, which is, simply, there

LCIAMAX2ps

1    were lots of women there and, you know, there are many -- no

2    one -- no one observed women that they thought were under age.

3          But it's not -- I don't believe there is going to be

4    an argument, Ms. Maxwell is not guilty because she couldn't

5    have known that these four people were whatever age they are.

6    I think the argument is going to be, they weren't that age.

7    That's what I think the defense's position is here, your Honor,

8    not, you know, gee, Mr. Epstein slipped in a couple of

9    teenagers on me here.

10          MR. ROHRBACH:  Your Honor, unless the defense is

11   stipulating that Ms. Maxwell knew the ages of these victims,

12   and it's an open issue.  The defense has elicited from Larry

13   Visoski, Kimberly Espinosa, the appearance of the victims.

14   They elicited from Carolyn that she was told not to tell -- or

15   told to tell people at the house that she was 17 or 18, when

16   she was younger than that.  So the evidence that's been

17   elicited certainly puts the defendant's knowledge of the

18   victims' age at issue.

19          THE COURT:  Yes.  There are two issues.  There's the

20   first question, what age were they.  And you contest that.  But

21   then there's the second question of, let's assume the jury

22   concludes that they were under the age of 17, then there is the

23   question of Ms. Maxwell's knowledge, and that seems to me to

24   have been put in issue through argument and -- through openings

25   and questions asked on cross.

LCIAMAX2ps

1          MR. PAGLIUCA:  I think I disagree with that, your

2     Honor.  And let's take Carolyn as the example.  Carolyn, the

3     government affirmatively elicited that she was told by Virginia

4     to say that she was, you know, whatever age she was told to

5     say.  That's, I think, the government's testimony.

6          MR. ROHRBACH:  I believe that came out on cross, your

7     Honor.  It's on page 1569.

8          MR. PAGLIUCA:  If it came out on cross, it was her

9     volunteering that information, I think.

10          But anyway, that doesn't have anything to do with

11     Ms. Maxwell.  I mean, that's simply "Virginia told me whatever

12     my name -- whatever the age I'm supposed to say."  It's not

13     Ms. Maxwell saying to Virginia, "Say this age."

14          So I just disagree as a factual matter that this has

15     anything to do with conscious avoidance.

16          MR. ROHRBACH:  The defense also elicited testimony

17     that the defendant was from -- through Mr. Alessi -- that the

18     defendant was going to legitimate hotels to identify massage

19     therapists.  I assume that that's in service of an argument

20     that she didn't know the ages of people coming to the house as

21     massage therapists, and so she could have confused some of them

22     who were under the age of consent with ones who were older than

23     the age of consent.  I'm not sure what other evidence that

24     would be in service of.

25          MR. PAGLIUCA:  Well, that's in service of Ms. Roberts

LCIAMAX2ps

1    being -- that's a factual dispute as well: when did we -- you

2    know, when did Ms. Roberts appear?  How old was Ms. Roberts

3    when she appeared and then allegedly recruited other people?

4    That's in service of that argument.  It's not in service of

5    some other argument.  And that's what that testimony went to,

6    was, you know, we went to Mar-a-Lago, we went to these other

7    spas, Mr. Alessi collected cards from people.  I mean, that's

8    what that testimony was.  It had nothing to do with Carolyn or

9    the others that relate to Carolyn.

10          MR. ROHRBACH:  If the issue is just, how old was

11   Virginia Roberts when she met the defendant, there would be no

12   need for testimony about whether the defendant also went to the

13   Breakers to recruit massage therapists.  It would just be, on

14   what date did the encounter happen with Virginia Roberts.

15          THE COURT:  All right.  I'm going to take a careful

16   look through the transcript to see how and when and to what

17   extent the defense, I think, reasonably -- I could reasonably

18   interpret to put in question Ms. Maxwell's knowledge as to the

19   age of the individuals.

20          Am I hearing you correctly that, in the absence of

21   this instruction, that the defense would make no argument at

22   closing regarding specifically Ms. Maxwell's knowledge of the

23   age of any individuals that the jury might conclude are alleged

24   victims?

25          MR. PAGLIUCA:  I would like to consult with the person

LCIAMAX2ps

1    who's going to be giving the closing argument.

2            THE COURT:  I think she's standing over your shoulder.

3            MS. STERNHEIM:  No.

4            MR. PAGLIUCA:  No.

5            MS. STERNHEIM:  Surprise.  It's not me.

6            MR. PAGLIUCA:  I can give the Court that answer before

7    we leave today, if that's all right with the Court.

8            MR. ROHRBACH:  If I may just say, your Honor, I'm not

9    even sure that these things can be pulled apart.  An argument

10   that these people were older is so intertwined with an argument

11   that she thought these people were older that, even if they

12   didn't say the words about that in their closing, I think the

13   jury would assume that, absent some more affirmative

14   stipulation, so the government would have to rebut it.  A

15   conscious avoidance theory is an appropriate way to do so.

16           THE COURT:  Yes.  It's a fair point.  And I'm going to

17   look carefully at relevant portions of the transcript, but I do

18   think it is sufficiently in issue that it's appropriate to give

19   the instruction.  I would consider, as part of my calculus in

20   coming to a final resolution, if the defense were to indicate

21   it wouldn't specifically make that argument.  But --

22           MS. STERNHEIM:  We'll get you that answer as soon as

23   we can.  It will be following the break, I think.

24           MR. ROHRBACH:  Your Honor, the other -- we've also

25   articulated a theory that there are flight records showing the

LCIAMAX2ps

1     defendant traveling with some of the minor victims.  I assume

2     the defendant is going to say that she didn't know the purposes

3     of the trips.  To the extent the purpose was sexual abuse, the

4     government would argue that at a minimum this she did know, if

5     she didn't she consciously avoided knowing, why Jeffrey Epstein

6     was traveling repeatedly with these minors.

7              THE COURT:  The other point is, from the openings, I

8     don't know if it will be a theme of the closing, but the

9     distancing of Ms. Maxwell from Mr. Epstein and what he did was

10    clearly a theme of the opening, and so that implicates

11    knowledge throughout the counts.

12             So my strong inclination is that it's appropriate

13    here.  That's my conclusion.  That's my conclusion.  I'm going

14    to look back through relevant portions of testimony on the age

15    issue, but I think even the age issue -- well, not the age

16    issue.  Knowledge of age.  Specific arguments as to knowledge

17    of age aside, knowledge of age is intertwined with arguments

18    regarding age.  And in any event, there are, as a result of the

19    opening, questions about Ms. Maxwell's knowledge of what

20    Mr. Epstein is alleged to have been doing that I think it's

21    sort of a standard instance of the applicability of a conscious

22    avoidance instruction.

23             So my conclusion is to include it.

24             Next.

25             MR. EVERDELL:  Next, your Honor -- let me make sure.

LCIAMAX2ps

1        I believe the next one is at page 61.

2        THE COURT:  Did you have something before that?

3        MR. ROHRBACH:  No, page 69.

4        THE COURT:  OK.  Page 61.

5        I have something before that.  There is a pronoun on

6  page 60, line 5, "he" should be replaced with "she."

7        MR. EVERDELL:  That's fine, your Honor.

8        MR. ROHRBACH:  Yes, your Honor.

9        THE COURT:  And what page was it, Mr. Everdell?

10        MR. EVERDELL:  The next page is 61, your Honor.

11  That's instruction 44, credibility of witnesses.

12        THE COURT:  OK.

13        MR. EVERDELL:  Your Honor, we would just propose that

14  there were a number of witnesses who, it came out, had felony

15  convictions, and there is a Sand instruction on this.  It's

16  instruction 7-12.  And we would ask that it be included, at

17  least in part, in the credibility of witnesses instruction.  I

18  can read that to you, your Honor, if you like.

19        THE COURT:  I gather this was not an original

20  proposal.

21        MR. EVERDELL:  No.  We didn't know if it would come

22  in.

23        THE COURT:  Oops.  All right.  I'll take your -- my

24  clerks will submit language, but go ahead.

25        MR. EVERDELL:  Sure.  I have Sand in front of me, and

LCIAMAX2ps

1    I can read the full instruction.

2              THE COURT:  And the proposal is to include it where?

3              MR. EVERDELL:  In instruction 44, in the credibility

4    of witnesses.

5              THE COURT:  Right.  Where?

6              MR. EVERDELL:  I think it could be either after the

7    second paragraph, before the third paragraph, or after the

8    third paragraph, which goes on to the next page before the

9    first full paragraph on that page.

10             THE COURT:  OK.

11             MR. EVERDELL:  I'm happy to read it if you like, or

12   you can just -- it's up to the Court.

13             THE COURT:  I don't have it yet.  So go ahead.

14             MR. EVERDELL:  OK.  So the way it reads in Sand is,

15   "You have heard the testimony of a witness who was previously

16   convicted of a crime punishable by more than one year in jail.

17   This prior conviction was put into evidence for you to consider

18   in evaluating the witness's credibility.  You may consider that

19   fact -- you may consider the fact that the witness who

20   testified is a convicted felon in deciding how much of his" --

21   I think maybe "his or her testimony to accept and what weight

22   if any it should be given."

23             MR. ROHRBACH:  Your Honor, we're not familiar with

24   this instruction being given in this district, and obviously

25   witnesses with felony convictions testify regularly.  The

LCIAMAX2ps

1    commentary as it stands suggests that the point of this

2    instruction is just to tell the jury why this was -- the felony

3    conviction was even put before them in the first place.  And I

4    don't think a jury is going to be confused or misled about why

5    that testimony was offered.  So I don't think there is a need

6    for this sort of instruction.

7              THE COURT:  Do you have any examples of it being used?

8              MR. EVERDELL:  Your Honor, I don't have at my

9    fingertips.  I can try to find some if there are.

10             THE COURT:  This is my standard credibility

11   instruction.  Certainly given in multiple trials in which

12   felony convictions came in.  I don't think I've ever given it

13   or been asked to give it.

14             MR. EVERDELL:  Your Honor, I would point out, I think

15   in a lot of trials, maybe in the ones you've done before, there

16   was probably an instruction about cooperating witnesses which

17   builds in this language, and obviously you don't have one here,

18   so it's often included in the charge in a separate instruction.

19             THE COURT:  Well, this is a new request.  I'll take a

20   look.  We'll look at it.  And when I send you the redline

21   you'll either see it or not.

22             MR. EVERDELL:  In the meantime, your Honor, I'll try

23   to find other examples if I can.

24             THE COURT:  OK.  Looks like I have given it as a

25   separate instruction, testimony of felons.  "You've heard the

LCIAMAX2ps

1    testimony of witnesses who were previously convicted of crimes

2    punishable by more than one year in jail.  This prior

3    conviction was put into evidence for you to consider in

4    evaluating the witness's credibility.  You may consider the

5    fact that the witness who testified was a convicted felon in

6    deciding how much of his testimony to accept and what weight if

7    any it should be given."  Looks like I gave that in my -- in

8    the *United States v. Berry.*

9              MR. EVERDELL:  I think we've been using that as a

10   model in this charge, your Honor, so we would request a similar

11   instruction here.

12             THE COURT:  I would add it, as I did in that last

13   case, as a standalone instruction.

14             Mr. Rohrbach.

15             MR. ROHRBACH:  Your Honor, this is the first we've

16   hoard of this proposal.  So if we could have a few hours after

17   the charge conference to give it some thought.  We can file a

18   letter saying either, we agree, or, if we have objections to

19   it, articulating those.

20             THE COURT:  I think that's fair, and I will look too

21   since it's a new suggestion.  I think my proposal would be to

22   just do it as a standalone instruction at, maybe what would be

23   45-A?

24             MR. EVERDELL:  That's fine, your Honor.

25             THE COURT:  Between 45 and '6.

LCIAMAX2ps

1          So that's the proposal.  And when would you like to

2    put in a letter?

3          MR. ROHRBACH:  Depends on what time we finish.

4          MR. EVERDELL:  First thing, your Honor.

5          MR. ROHRBACH:  If we finish by noon, by 2 or 3?

6          THE COURT:  OK.  Let's do 2 o'clock.

7          MR. ROHRBACH:  OK.

8          THE COURT:  Thank you.

9          Next.

10          MR. EVERDELL:  Next, your Honor, is page 68,

11    instruction no. 50, the uncalled witnesses charge.  The request

12    here is that this not be included, and I think the reason being

13    that, in this case, it isn't really accurately summarizing the

14    state of play, because, you know, for example, there were

15    witnesses who took their Fifth Amendment rights and refused to

16    testify as defense witnesses because they invoked their Fifth

17    Amendment rights.  The government does have the option of

18    giving those witnesses immunity to testify.  And so they

19    actually control, more than we do, whether or not a witness can

20    appear --

21          THE COURT:  To be clear, that didn't happen.  They

22    didn't call that witness.

23          MR. EVERDELL:  We had a witness who invoked their

24    Fifth Amendment rights or had written the Court that they

25    planned to invoke, and that we called and was under subpoena

LCIAMAX2ps

1      that we intended to call as a witness.

2              THE COURT:  There was a lawyer letter indicating that

3      they had received a subpoena and they intended to invoke.  I

4      asked many, many times if there was an application with respect

5      to it.  I never got one.  So I'm not sure how to think of that.

6      It's certainly true that, if someone invokes, the defense can't

7      offer immunity the way that the government can.  That's true in

8      every case.  This charge is quite standard, though standardly

9      objected to, but I don't know that I see anything in this case

10     that would distinguish its application based on what you've

11     just indicated.

12             MR. EVERDELL:  In addition to what I had just

13     indicated, just for purpose of completeness, there are a number

14     of witnesses who, based on the witness testimony in this case,

15     there would be people who the government -- who we normally may

16     have considered calling as a witness but who the government

17     clearly could have charged, criminally, based on the testimony

18     we heard.  And I won't name names if we don't want to do that.

19     But I think we probably know who we're talking about here.  And

20     that is, you know, had we tried to call that witness or those

21     witnesses, they undoubtedly would have invoked their Fifth

22     Amendment rights.  In fact, as some of them -- one of them was

23     not called by the government and would have had to have been

24     given statutory immunity or granted immunity to be able to

25     testify, by the government, if they had decided to call them.

LCIAMAX2ps

1    So there is more than just the one witness who indicated that

2    she was going to invoke had the defense called her.  There were

3    other co-conspirators who the government chose not to call, not

4    to immunize, and we couldn't possibly call in our defense

5    without -- because we can't give any immunity ourselves.

6          MR. ROHRBACH:  Your Honor, this is true in basically

7    every conspiracy case and every gang case that is prosecuted in

8    this district.  There are unindicted co-conspirators.  Yet this

9    instruction is given and is the run-of-the-mill instruction, as

10   the Court said, in cases in this district.

11         MR. EVERDELL:  Your Honor, if the Court is inclined to

12   give the instruction, I can propose an alternative.

13         THE COURT:  I will take an alternative.

14         MR. EVERDELL:  If we can just eliminate the language

15   in the title of the charge that says "equally available to both

16   sides" and just have "the uncalled witnesses."

17         I believe there's also language that says "equal

18   opportunity."

19         THE COURT:  Or lack of opportunity.

20         MR. EVERDELL:  Yes.

21         MR. ROHRBACH:  This is the uncalled witness

22   instruction, your Honor.  This is the instruction given,

23   suggested by Sand and given by this Court.  I have five

24   examples right here where the Court has given this instruction.

25         THE COURT:  As I say, it's always given, always

LCIAMAX2ps

1    objected to.

2           So here's just a slight change.  Line 4.  "Each party

3    had an opportunity to call any of these witnesses."

4           MR. EVERDELL:  We would accept that, your Honor.

5           THE COURT:  It's a similar meaning.  It's not quite

6    equal.  I'll adopt that.  "Each party had an opportunity to

7    call any of the witnesses."

8           MR. ROHRBACH:  If your Honor is thinking of that

9    change, we would ask to just include that in our letter later.

10          THE COURT:  That's fine.  So the proposal would be

11   that, line 1, cut "equally available to both sides" from the

12   heading, and then, line 4, cut "equal opportunity or lack of

13   opportunity" and change to "an opportunity."

14          MR. EVERDELL:  Yes, your Honor.

15          THE COURT:  I think it's clearly true, Mr. Rohrbach,

16   this is standard language, and I've given it a slightly,

17   slightly altered meaning, to take emphasis off of "equal

18   opportunity."  So I think it still captures the meaning of the

19   charge.

20          MR. ROHRBACH:  I just -- we will think about it and

21   include it in our letter.  But just to preview for the Court,

22   part of our concern is that the most obvious witness who was

23   available to both sides and who we expect the defense to

24   comment on is Virginia Roberts, who was described as a victim

25   but did not testify and she was fully available to the

LCIAMAX2ps

1    defendants.  They did not call her.  To the extent the main

2    issue here is Virginia Roberts' testimony, that she was equally

3    available to both sides.

4           MR. EVERDELL:  It's not Virginia Roberts that I'm

5    thinking of, your Honor.  I'm happy to say the name.  It's

6    Sarah Kellen.

7           THE COURT:  OK.  I mean, suppose -- look, as I said,

8    I've only slightly changed the meaning.  It's the same meaning

9    but it takes emphasis off of "equal."  I don't know what the

10   defense is going to focus on in its closings, how much of the

11   focus will be the absence of individuals.

12          MR. EVERDELL:  I expect we'll be talking about the

13   absence of individuals, your Honor.

14          THE COURT:  All right.  I'll hear from you in your

15   letter.  I'm keeping the charge.  And it will either be the

16   standard charge or the very slight modification I've proposed.

17          Next.

18          MR. EVERDELL:  Your Honor, page 69.

19          THE COURT:  OK.

20          MR. EVERDELL:  That's the particular investigative

21   techniques charge.  We were prohibited from the Court's rulings

22   and from eliciting evidence and from arguing this point about

23   particular investigative techniques, and so we --

24          THE COURT:  Well, to be clear, not on cross with

25   respect to witnesses called.  But I don't need to repeat my

LCIAMAX2ps

1    ruling.  But the ruling is what the ruling is.  What's the

2    request?

3              MR. EVERDELL:  The request is to eliminate the charge

4    on this point because we couldn't -- we weren't supposed to,

5    and nor did -- I think we tried to abide by the Court's ruling

6    to not talk about particular investigative techniques or elicit

7    evidence on that point.  And so if we're not going to be

8    permitted to elicit or argue that point to the jury, then it

9    doesn't seem like they need to be instructed on that point.

10             MR. ROHRBACH:  This is a legally correct instruction.

11   As the Court has ruled many times now in this case, particular

12   investigative techniques are not required.  The defense made

13   that point, as they could, on cross through the case, and I

14   assume it will be, as they can in the defense's summation.  And

15   this is a correct statement of the law on which the jury should

16   be instructed.

17             MR. EVERDELL:  Sand has filled three volumes of

18   correct statements on law, your Honor.  That doesn't mean that

19   they get into a jury charge.

20             THE COURT:  I think I've always included this charge,

21   so it's not just a rarely invoked Sand charge.  I mean, as you

22   talked about yesterday, there were questions you were going

23   to -- ask.

24             MR. EVERDELL:  Special Agent Young.

25             THE COURT:  -- Young, thank you -- that either -- some

LCIAMAX2ps

of which were asked of the relevant investigative agents or

arguments that could be made based on the absence of evidence

in the record and the like.  And my ruling was what it was,

which didn't foreclose entirely the opportunity with respect to

cross-examination and the like.  I suspect this will be part of

the defense's arguments in closing, so it's appropriate to

include the charge.

            MR. EVERDELL:  Understood.

            Just as long as we're allowed to argue, are permitted

to argue in closing about absence of evidence consistent with

the Court's ruling.

            THE COURT:  Absolutely, so long as the inference is

available in the record.

            And I'll just pause, because I made a note to say

this.  I have a decent memory, and my afternoon and tomorrow

will be spent reviewing much of the trial testimony.  I don't

want objections during closings, but that requires -- I gather

it's Ms. Menninger that's doing the closing and Ms. Moe, who

are absent today.  So for both sides, any inference argued had

better be from the transcript or the documents, and any

objections should be rare and not based on your interpretation

of the available evidence but the fact of the available

evidence.  We should get through closings without objections.

            MR. EVERDELL:  Understood, your Honor.

            MR. ROHRBACH:  Understood on our part, your Honor.

LCIAMAX2ps

1          THE COURT:  Thank you.

2          MR. ROHRBACH:  This is the instruction where the

3   government also has a request, unless Mr. Everdell has anything

4   else on 69.

5          MR. EVERDELL:  I do not.

6          MR. ROHRBACH:  Here the government would request that

7   the Court include the traditional "government is not on trial"

8   sentence.

9          THE COURT:  That I didn't permit.

10          MR. ROHRBACH:  I saw that, your Honor.  We just wanted

11   to raise it with your Honor again.  Our view is that it's

12   something the defense put in issue in their -- came very close

13   to the line of putting in issue in their opening and has been a

14   theme of the defense case so far, and we assume they will come

15   close to the line but hopefully not cross the line in their

16   defense summation.  And in light of that, it is an instruction

17   that the circuit has said is appropriate.  And so we think, in

18   anticipation of what we expect in the defense's summation, we

19   think it is an appropriate inclusion in this instruction.

20          MR. EVERDELL:  Your Honor, I don't think there's any

21   need to anticipate.  If there's an issue about what we say,

22   we're going to be very careful about the Court's ruling.  We're

23   going to do our level best to make sure we stay within the four

24   corners of the ruling.  But I think this instruction as written

25   is appropriate.  I suppose the government, if they want to

LCIAMAX2ps

1    raise something before the charge is given based on the

2    closing, they can.

3              THE COURT:  I think this is what I typically use, so

4    we'll stick with that.  And obviously closings will not cross

5    the line as to what I've forbidden, or that may become

6    necessary.

7              MR. EVERDELL:  Yes, your Honor.

8              MR. ROHRBACH:  Understood, your Honor.  I think that,

9    just to sort of complete the point, the government's particular

10   concern is the argument about the empty chair and the

11   government's motivations for this prosecution, which is

12   somewhat different than the particular investigative techniques

13   point that's elsewhere in this instruction, which is why we

14   thought the additional sentence is necessary.

15             THE COURT:  I didn't permit and there will be no

16   argument about the government's motivation.

17             MR. EVERDELL:  That's clear, your Honor.

18             MR. ROHRBACH:  Thank you, your Honor.

19             MR. EVERDELL:  All right.  Your Honor, we're all set.

20   Page 73.

21             THE COURT:  Anything before that?

22             MR. ROHRBACH:  No.  That was the last edit from the

23   government, actually.

24             THE COURT:  OK.  73.

25             MR. EVERDELL:  This is the preparation of witnesses

LCIAMAX2ps

1    instruction, instruction 55.  The government can correct me if

2    I'm wrong.  I don't think we had any testimony about preparing

3    witnesses, so I don't know if this instruction is necessary.

4              THE COURT:  No.  There was.  For sure.

5              MR. EVERDELL:  OK.  Maybe I'm mistaken about that.

6              THE COURT:  "How many times did you meet with the

7    government?"

8              MR. EVERDELL:  OK.

9              THE COURT:  For example.  Maybe every, every --

10             MR. EVERDELL:  OK.  I stand corrected.

11             THE COURT:  Other than that, you've got it.

12             MR. EVERDELL:  Other than that, OK.

13             All right.  I think that's all we have, apart from the

14   verdict sheet.

15             THE COURT:  OK.  Anything else, Mr. Rohrbach?

16             MR. ROHRBACH:  No.  Thank you, your Honor.

17             THE COURT:  OK.  The verdict sheet.

18             MR. EVERDELL:  The verdict sheet, your Honor, is just

19   tracking some of the changes.

20             THE COURT:  Wait, wait.  Sorry.  Yes.  Oh, I had two

21   more that we caught this morning.  Page 78, line 13, it says

22   "solely be," but it should be "solely by."

23             MR. EVERDELL:  Sorry, what line is that, your Honor?

24             THE COURT:  13.

25             MR. EVERDELL:  OK.

LCIAMAX2ps

1           THE COURT:  And then there was one more heading, that

2     had that errant "Two" in it.  Oh, page 52, instruction 37, that

3     heading also has the word "Two" in it for some reason.

4           MR. EVERDELL:  Yes, your.

5           THE COURT:  Verdict sheet.

6           MR. EVERDELL:  Your Honor, the edits here are just to

7     track changes we've adopted elsewhere.  So as to Count One,

8     "conspiracy to entice an individual under the age of 17 to

9     travel."

10          MR. ROHRBACH:  That's fine, your Honor.

11          THE COURT:  OK.  "An individual."  Right.  All right.

12    So Count One, we'll adopt that and add "under the age of 17."

13          MR. ROHRBACH:  This is actually in Count One also,

14    should be "individuals," plural, I think, in light of the

15    changes we've made?

16          THE COURT:  Right.  It's a conspiracy count.

17          MR. ROHRBACH:  Yes, your Honor.

18          THE COURT:  OK, Mr. Everdell.

19          MR. EVERDELL:  Count Two, the same thing.

20          THE COURT:  Sorry.  I just wanted your adoption,

21    "conspiracy to entice individuals under the age."

22          MR. EVERDELL:  Yes, your Honor.

23          THE COURT:  So we'll cut "an" and make it plural.

24          MR. EVERDELL:  Yes, your Honor.

25          THE COURT:  Go ahead.

LCIAMAX2ps

1          MR. EVERDELL:  Count Two, "enticement of an individual

2     under the age of 17."  And then we would propose "(Jane only),"

3     to add the word "only," your Honor.

4          THE COURT:  So adding, after "an individual," "under

5     the age of 17," adding in the parentheses, after the word

6     "Jane," "only."

7          MR. EVERDELL:  Correct.

8          THE COURT:  OK.

9          MR. EVERDELL:  Count Three, to transport and then take

10    out the word "a minor," this would be, I guess, "individuals

11    under the age of 17."

12         MR. ROHRBACH:  Agreed, your Honor.

13         THE COURT:  OK.  I will make that change to

14    "individuals under the age of 17," taking out "a minor."

15         MR. EVERDELL:  And then Count Four, "transportation of

16    an individual," adding "under the age of 17" and adding the

17    word "only" after "Jane."

18         THE COURT:  OK.

19         MR. ROHRBACH:  That's fine, your Honor.

20         THE COURT:  All right.  Make that change, adding

21    "under the age of 17" and then adding "only" after the word

22    "Jane."

23         MR. EVERDELL:  Let's just skip over Count Five for a

24    second.  Count Six.

25         THE COURT:  "Only."

LCIAMAX2ps

1          MR. EVERDELL:  Carolyn only, and it would say "sex
2     trafficking of."
3          THE COURT:  "An individual."
4          MR. EVERDELL:  "Under the age of 18."
5          MR. ROHRBACH:  That's fine, your Honor.
6          THE COURT:  Taking out "a minor," adding "an
7     individual under the age of 18," and then adding "only" after
8     "Carolyn."
9          MR. EVERDELL:  Correct, your Honor.
10          THE COURT:  OK.
11          MR. EVERDELL:  Moving back to Count Five, it's a
12     little cumbersome, I understand, the way the language is.  But
13     it would say "sex trafficking conspiracy of individuals under
14     the age of 18."
15          THE COURT:  OK.  Mr. Rohrbach.
16          MR. ROHRBACH:  We think it's a little unclear to say
17     "conspiracy to commit sex trafficking of individuals under the
18     age of 18"?
19          MR. EVERDELL:  That's fine.
20          THE COURT:  So we'll change Count Five to "conspiracy
21     to commit sex" -- how do you want to say it?
22          MR. EVERDELL:  "conspiracy to commit sex trafficking
23     of individuals under the age of 18."
24          THE COURT:  17.
25          MR. ROHRBACH:  18 for this.

LCIAMAX2ps

1            THE COURT:  Sorry.  18, Count Five.

2            All right.  So we'll make that change.

3            MR. ROHRBACH:  The government has just one edit, if

4    Mr. Everdell is finished on the other.

5            MR. EVERDELL:  Which one?

6            MR. ROHRBACH:  Which is on the top of the verdict

7    sheet.  After "please indicate your verdict with a checkmark,"

8    it's a "T" in parentheses.

9            THE COURT:  That's so odd.  Yes.  We'll convert that

10   to a checkmark.

11           OK.  That's it from the verdict sheet?

12           MR. ROHRBACH:  Nothing from the government.

13           MR. EVERDELL:  Nothing from the defense, your Honor.

14           MS. STERNHEIM:  Judge, I have something unrelated to

15   the charge in the verdict sheet.

16           THE COURT:  All right.  Give me one moment just to go

17   through my to do list.  So I have two open issues that I'll

18   hear from the government by letter by 2.  Once I have that,

19   I'll make my conclusions with respect to those.  We'll send the

20   parties a redline version of the changes made and a clean

21   version, which will be the final version, unless -- I'll set a

22   time when I send it to you, by a certain time.  You indicate

23   any errors that were implemented in the implementation of the

24   changes.  Otherwise that will be final.  Same for the verdict

25   sheet.

LCIAMAX2ps

1              Ms. Sternheim, go ahead.

2              MS. STERNHEIM:  Thank you, Judge.  I don't know if the

3    Court has found out if any of the jurors are having issues

4    about staying later on Monday.

5              THE COURT:  They were all fine.

6              MS. STERNHEIM:  OK, because I just wanted to say that

7    we are motivated, and I think the government would join me, in

8    having us complete all of the closing arguments and the charge

9    on Monday.

10              THE COURT:  Yes.  I think we can do that.

11              MS. COMEY:  Yes, your Honor.

12              THE COURT:  Which gets to my next to-do item, which

13    is -- I realize we don't have the relevant people, but I think

14    Ms. Moe had indicated two to three hours.

15              MS. COMEY:  That's right, your Honor.

16              THE COURT:  Two sounds about right to me.

17              MS. STERNHEIM:  That's even better to us.

18              THE COURT:  I mean, length of trial, the complexity of

19    the charges, this should be a two-hour closing.

20              MS. COMEY:  Your Honor, understood.  We did, I will

21    note, streamline our case significantly, and there were a

22    number of exhibits that were not published to the jury, and I

23    think we were explicitly told, that's for closing, when we

24    wanted to do it with witnesses.  So it's a little cumbersome,

25    because there is more work to be done connecting up a number of

LCIAMAX2ps

1   paper exhibits that we were not able to show to the jury.  So

2   that's what might push it back two hours.  So I would ask for

3   the Court's indulgence to two and a half hours, in light of the

4   fact that we really didn't get to show the jury all of the

5   exhibits, and it's going to take more time to walk them through

6   those exhibits that they haven't even seen.

7           THE COURT:  All right.  So two and a half, and two and

8   a half.

9           MS. STERNHEIM:  They should five minutes for rebuttal.

10  And it will be fine.

11          THE COURT:  Can you do 30 for the rebuttal?

12          MS. COMEY:  I would ask for the Court's indulgence for

13  a little more than 30 if I may, just to have a little bit of a

14  cushion.

15          THE COURT:  All right.  35.

16          MS. COMEY:  Thank you, your Honor.

17          THE COURT:  So we're going to start at 9.  We're going

18  to do a very short midmorning break.  We're going to do a short

19  lunch.  The jurors' lunch will be here, I think, 20 minutes.

20  Let's say 30 minutes for you all to have lunch too.  Given

21  that, we should get through closings and the charge tomorrow

22  and potentially they can start deliberating, depending on what

23  time it is.  But I agree --

24          MR. EVERDELL:  Your Honor, just on the issue of

25  timing, thinking it through, so we start at 9, we start right

LCIAMAX2ps

1    at 9 and the government has a two and a half hour closing, that

2    puts us at 11:30, roughly, give or take.  It would be the

3    defense's request we don't break the defense closing through

4    lunch.  So I don't know how that impacts the schedule.

5              THE COURT:  We do the best we can, is what I always

6    say.

7              MR. EVERDELL:  Understood.

8              THE COURT:  We'll see where we are.  We'll adjust and

9    try to not break anything.

10             I'll have lunch here early, so that that's a

11   possibility.

12             MR. EVERDELL:  Thank you, your Honor.

13             THE COURT:  But, yes, I agree.  And, you know, the

14   charge, I think it was about 80 pages.  My favorite part of the

15   job is reading the charge.

16             MS. STERNHEIM:  And ours to listen.

17             THE COURT:  Nothing better.  But I would guess an hour

18   or so, we should get there.

19             OK.  And the other thing I have on my to-do list, I

20   always have the parties agree on the exhibits that are going

21   back to the jury, and I get that on the record, so forgive me

22   that I'm not sure exactly where we are under COVID protocols.

23   There was a time under COVID protocols where only electronic

24   exhibits went back.  I think, and Ms. Williams isn't here to

25   tell me what's what, but I think now paper can go.  Why don't

LCIAMAX2ps

1    you all confer.  Go ahead, Ms. Sternheim.

2                MS. STERNHEIM:  I'm going to wait until you finish and

3    then I'll --

4                THE COURT:  What I'd like to do, when we meet, before

5    the jury comes in tomorrow -- not tomorrow -- Monday, as much

6    as I'd like to do it tomorrow.  We'll meet at 8:30 on Monday,

7    and I would like to get on the record the parties' agreement as

8    to exactly what's going back to the jury, and Ms. Williams will

9    give you our -- actually, we'll try to get that to you today or

10   tomorrow -- list of what we have as admitted exhibits, and you

11   can agree or tell us if we've got anything wrong.  And I'll get

12   your agreement on that list of admitted exhibits as well.

13               Go ahead.

14               MS. STERNHEIM:  Thank you, Judge.  My recommendation

15   for efficiency purposes would be for the parties to agree on

16   what portions of the transcript should be redacted in case the

17   jury wants it, so that we don't have to do readback and then

18   make copies of the transcript could go in.

19               MS. COMEY:  Agreed, your Honor.

20               THE COURT:  That is understood.  Absolutely.  So

21   you'll have that ready by Monday.

22               MS. STERNHEIM:  Yes.

23               THE COURT:  Great.  Thank you.

24               Yes.  And it is my practice to get that agreement and

25   then send the paper back.

LCIAMAX2ps

1          MS. STERNHEIM:  We'll work on that.  I know that the

2     court reporters have often been very helpful in helping us do

3     that as well.

4          THE COURT:  All right.  Anything else?

5          MR. ROHRBACH:  On that point, your Honor, the parties

6     are conferring on the redacted exhibits, and I anticipate we'll

7     get a letter probably later today if not hopefully later today

8     about exactly what the proposed redacted exhibits are, so

9     that's finished in advance of the closing.

10          MR. EVERDELL:  We're working on that.

11          THE COURT:  OK.  And have you worked out logistics on

12     closings for the sealed material?

13          MS. COMEY:  Yes, your Honor.  I believe the plan is to

14     do what we did with the video exhibits, which is to have the

15     presentation from the parties up on the jurors' screens but not

16     displayed on the public screens or in the overflow room.  And

17     we've also been working to get podium turned so that it's

18     facing the jurors.

19          And then I think there will be paper copies of the

20     presentations of the parties, for counsel who have screens that

21     are facing the gallery.

22          THE COURT:  Right.  So there will be no -- orally,

23     you're not going to refer to any real names of witnesses who

24     testified by pseudonym, etc.  That will at times be shown to

25     the jury during the presentation, but that won't be publicly

LCIAMAX2ps

1     hone.

2              MS. COMEY:  That's exactly right, your Honor.  And to

3     the extent there are images that were sealed, those would also

4     not be shown to the public but would be shown to the jury.

5              THE COURT:  OK.  Understood.  Any questions about

6     that?

7              MR. EVERDELL:  No, your Honor.

8              THE COURT:  Any demonstratives of any kind planned,

9     other than --

10             MS. COMEY:  The PowerPoint presentation, your Honor,

11    but --

12             THE COURT:  -- the PowerPoint, that does anything

13    other than show admitted evidence or testimony?

14             MS. COMEY:  There may be some portions of the charge,

15    once it's finalized.  It's possible that there would be text of

16    the final charge on the slides.  But I don't think there would

17    be anything beyond that, or excerpts of the transcript from the

18    trial.

19             THE COURT:  Right.

20             MR. EVERDELL:  Actually on that point I didn't know

21    what the Court's practice was on that, whether the Court allows

22    the final charge excerpts to be used in the closing or whether

23    we do something else.

24             THE COURT:  I do allow it.

25             MR. EVERDELL:  OK.

LCIAMAX2ps

1          THE COURT:  But I'll hear if anybody has an objection.

2          MS. COMEY:  No, your Honor.

3          MR. EVERDELL:  No, your Honor.

4          THE COURT:  OK.  Anything else on that?

5          MR. EVERDELL:  No.  I think we just have to work a few

6     redactions out.

7          THE COURT:  And I think we have one more minor edit.

8          It was just a minor thing, but we can't find it.

9          Let me just note, I want to thank the court staff who

10    worked on Saturday to make this possible, and my thanks to

11    counsel and the parties for doing it.  I appreciate everybody's

12    willingness to work on a Saturday.  Thank you.

13          Page 51, line 13, missing the word "at."  "The

14    government has to prove that at least one of the overt acts."

15    So inserting "at."

16          MR. EVERDELL:  No objection, your Honor.

17          MR. ROHRBACH:  Yes.

18          THE COURT:  All right.  We'll make that change.

19          With that, thank you, everyone.  I will see you Monday

20    at 8:30.

21          (Adjourned to 8:30 a.m., December 20, 2021)

22

23

24

25