LCRVMAXT

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x
     UNITED STATES OF AMERICA,
 3
                v.                          20 CR 330 (AJN)
 4
     GHISLAINE MAXWELL,
 5
                     Defendant.             Jury Trial
 6   ------------------------------x
                                            New York, N.Y.
 7                                          December 27, 2021
                                            10:30 a.m.
 8
     Before:
 9                       HON. ALISON J. NATHAN,

10                                             District Judge

11                            APPEARANCES

12   DAMIAN WILLIAMS
          United States Attorney for the
13        Southern District of New York
     BY:  MAURENE COMEY
14        ALISON MOE
          LARA POMERANTZ
15        ANDREW ROHRBACH
          Assistant United States Attorneys
16
     HADDON MORGAN AND FOREMAN
17        Attorneys for Defendant
     BY:  JEFFREY S. PAGLIUCA
18        LAURA A. MENNINGER
               -and-
19   BOBBI C. STERNHEIM
               -and-
20   COHEN & GRESSER
     BY:  CHRISTIAN R. EVERDELL
21
     Also Present:  Amanda Young, FBI
22                  Paul Byrne, NYPD
                    Sunny Drescher,
23                   Paralegal, U.S. Attorney's Office
                    Ann Lundberg,
24                   Paralegal, Haddon Morgan and Foreman

25
```

LCRVMAXT

```
1              (Trial resumed; jury not present)

2              THE COURT:  I did receive a note.

3         May we please have the following items:  Different

4    colored Post-Its; white paperboard; highlighters, different

5    colors; and then Matt's transcript; and then also may we have a

6    definition of "enticement."

7         So we're going to get started on the supplies.  We'll

8    get them colored Post-Its, white paperboard.  I'm not sure

9    exactly what they mean but we'll try and find a large pad, and

10   we'll also give them a whiteboard and dry erase markers and

11   then highlighters.

12        Ms. Moe, Matt's transcript you'll get printed

13   immediately?

14        MS. MOE:  Yes, your Honor.

15        THE COURT:  Okay.  And then I'll hear from the parties

16   as to how they would like to respond to the request for a

17   definition of "enticement."

18        MS. MOE:  Your Honor, with respect to the jury's

19   question regarding enticement, our view is that the Court's

20   instruction, which is on page 21, instruction number 15:  "The

21   terms persuaded, induced, enticed, and coerced have their

22   ordinary everyday meanings."  That remain true now, and so we

23   would propose referring them to that portion of the Court's

24   instruction.

25        MR. EVERDELL:  Your Honor?
```

LCRVMAXT

1    THE COURT:  Just a moment.

2         Trying to get my things up and running here.

3         Yes.

4         MR. EVERDELL:  Yes, your Honor.

5         So I think there are -- if I recall, there are cases

6    that do try to define those words in a little bit more detail.

7    I don't have those cases at my fingertips and I'm trying to get

8    them online, but I don't think we have WiFi in the courtroom.

9         THE COURT:  I have one.  *United States v. Almonte*, 16

10   CR 670; and *United States v. Dupigny*, 19 CR 528, gave a little

11   bit of elaboration on that series of words.

12        For "entice" -- I think this is true for both those

13   cases, I'll confirm -- they provided in the charge that

14   "entice" means to attract, induce, or lure using hope or

15   desire.  I think I recall, Mr. Rohrbach, you referenced that

16   definition at one point when we were discussing an issue, if

17   I'm not mistaken.

18        Is that what you had in mind, Mr. Everdell?

19        MR. EVERDELL:  The one I was thinking of, I think, is

20   the one -- I'm trying to find the name, is it -- should be in

21   my notes.  Just give me one minute, your Honor.  The one where

22   we were arguing the Rule 29, which I cited to the Court,

23   *Broxmeyer*, I think; am I correct about that?

24        THE COURT:  I don't know.  This was the causation --

25   you wanted me to define with respect to causation, is that

LCRVMAXT

1    the --

2              MR. EVERDELL:  One moment, your Honor.

3              THE COURT:  I think it was -- it was the one I was

4    talking about with the issue of causation, but I believe that

5    case also tried to define the words separate and apart from the

6    causation issue.

7              MS. MOE:  Your Honor, the government would have no

8    objection to the Court providing the instructions set forth in

9    *Almonte* and *Dupigny*.

10             THE COURT:  That's the model I have.  Those charges, I

11   believe, also provided the language that we did include, which

12   is what the parties agreed on, which is that these words have

13   their ordinary meaning.

14             So on the table derived from *Almonte* and *Dupigny* is:

15   "Entice" means to attract, induce, or lure using hope or

16   desire.  I think we would also reference them back to the line

17   that you indicated, Ms. Moe.

18             MS. MOE:  Yes, your Honor.

19             THE COURT:  Just a moment.

20             MR. EVERDELL:  Your Honor, I'm sorry.

21             THE COURT:  Take your time.

22             MR. EVERDELL:  Because I don't have internet access,

23   so I can't pull it up on my computer.

24             THE COURT:  *Broxmeyer*, which is 616 F.3d 120, defined

25   "entice" as "to draw on by exciting hope or desire; allure."

LCRVMAXT

1          MR. EVERDELL:  Your Honor, I think then we'll just go

2     with the *Dupigny* and *Almonte* one that you raised before.

3          THE COURT:  Okay.

4          MS. MOE:  Thank you, your Honor.

5          And we also now have the transcript of Matt's

6     testimony.  We're happy to hand that up.

7          THE COURT:  Okay.  One of my law clerks will grab that

8     please and take it to the CSO, while Ms. Williams is getting

9     the supplies; so that just goes to the CSO.

10         In response to the note, I will write:  Dear jury, we

11    are gathering the supplies you requested.  We've sent back

12    Matt's transcript.  As for your question regarding the

13    definition of enticement -- could you give me the page and line

14    again of the charge, Ms. Moe?

15         MS. MOE:  Yes, your Honor.  It's on pages 21 and 33;

16    those are instruction number 15 and also instruction number 26.

17         THE COURT:  Okay.  So for page 21, what's the line

18    number or lines?

19         MS. MOE:  It's on lines 5 and 6, your Honor.

20         THE COURT:  And for 33?

21         MS. MOE:  They are on the same lines, your Honor, on

22    lines 5 and 6, page 33.

23         THE COURT:  Okay.  I left my charge back there.

24         So I'll refer them to pages 21 and -- page 21, lines 5

25    and 6; and page 33, lines 5 and 6.  I will then say:  Further,

LCRVMAXT

1    "entice" means to attract, induce, or lure using hope or

2    desire.

3              Ms. Moe.

4              MS. MOE:  Yes, your Honor.  Thank you.

5              THE COURT:  Mr. Everdell.

6              MR. EVERDELL:  That's fine, your Honor.  Thank you.

7              THE COURT:  All right.  Thank you.

8              I will write that note and send it back.  We'll

9    mark -- I'm sorry, I forget what court exhibit we're on, but

10   we'll mark this note as the next court exhibit once

11   Ms. Williams reminds me where we are.

12             All right.  Thank you.

13             Yes.

14             MS. STERNHEIM:  Judge, I just have a quick statement,

15   and I'm asking the Court's assistance.

16             You mentioned on Friday that -- I guess it was

17   Wednesday that we're supposed to wear N95 masks in the

18   courtroom -- or in the courthouse, I should say.

19             THE COURT:  Yes.

20             MS. STERNHEIM:  And it's my understanding that one has

21   been provided for Ms. Maxwell, but she can only wear it in the

22   courtroom.  And I think that that is not a correct health

23   standard.

24             THE COURT:  The rule actually is in the courthouse.

25             MS. STERNHEIM:  In the courthouse.

LCRVMAXT

1      THE COURT:  Entry into the courthouse is required to
2   wear an N95 or KN95.
3      MS. STERNHEIM:  And I would ask that the Court direct
4   the marshals to permit her to wear it throughout the day.
5      THE COURT:  I will consult with the marshals through
6   the district executive's office.  But my understanding of the
7   new rule as of today is that entry into the courthouse requires
8   wearing at all times, except briefly when eating or drinking, a
9   KN95 or N95.  But I'll get confirmation of that.
10      MS. STERNHEIM:  Thank you very much.
11      THE COURT:  Anything else?
12      MS. MOE:  No your Honor.  Thank you.
13      MR. EVERDELL:  No, your Honor.  Thank you.
14      THE COURT:  Thank you.
15      (Recess pending verdict)
16      THE COURT:  We have another note, which will be Court
17   Exhibit 13:  May we also have Parkinson's transcript.
18      Ms. Moe, you'll provide that?
19      MS. MOE:  Yes, your Honor.  We'll take care of that
20   right away.
21      THE COURT:  Okay.
22      And let me just note we have now sent back everything
23   requested in the prior note in terms of supplies, Matt's
24   transcript, as well as the response from me that I outlined
25   last time.

1          Anything else, counsel?

2          MS. MOE:  No, your Honor.  Thank you.

3          MR. EVERDELL:  No, your Honor.

4          THE COURT:  Thank you.

5          (Recess pending verdict)

6          THE COURT:  I have a note.

7          May we please have the transcript of David Rodgers.

8          MS. MOE:  Yes, your Honor.  We'll take care of that

9    right away.

10          THE COURT:  Other issues to raise?

11          MS. MOE:  Not from the government, your Honor.

12          Thank you.

13          MR. EVERDELL:  Not from the defense.

14          THE COURT:  We don't know what time the jury wishes to

15    deliberate to this evening.  My inclination would be to -- it's

16    up to them when they wish to stop, so I assume we'll get a

17    note.  So I think we'll wait for that.  But I am inclined to

18    think about, if they are not done, extending deliberations

19    tomorrow for at least some amount of time.  But I'll hear from

20    you on that.  So you can think about it or respond to it now,

21    Ms. Sternheim.

22          MS. STERNHEIM:  I would just say that I think the jury

23    should basically set its own schedule.  You can suggest if they

24    want a longer day, but I don't think we should be pushing them.

25    They seem to be working very studiously and they seem to have a

LCRVMAXT

```
 1   mind of their own.  Because last week the Court invited them to
 2   sit the extra day and they declined that.  So an inquiry may be
 3   appropriate, but I don't think telling them what they should do
 4   is necessarily the right thing to do.
 5             THE COURT:  Well, I have told them previously that
 6   they are here till at least 5.  I think the question is
 7   whether, in light of the circumstances we find ourselves, we
 8   should encourage longer, if it's available to them.  But you
 9   think about it.  I'll hear from you.  I'm not intending to do
10   anything just yet.  I presume we will hear from them as to this
11   evening, but think about the indication of at least some
12   extension of hours tomorrow if they have not completed the
13   task.
14             All right?  Thank you.
15             (Recess pending verdict)
16             THE COURT:  I have a note.
17             Under Count Four, if the defendant aided in the
18   transportation of Jane's return flight, but not the flight to
19   New Mexico, where/if the intent was for Jane to engage in
20   sexual activity, can she be found guilty under the second
21   element?
22             I'm going to let you take a -- if you want to just
23   take a look at the note.  Counsel, you're welcome to take a
24   photo of it, if that helps.
25             MS. STERNHEIM:  Thank you.
```

LCRVMAXT

1          THE COURT:  Mark the note as Court Exhibit 14.

2          THE DEPUTY CLERK:  15.

3          THE COURT:  15.

4          Counsel, soon I'll look for your proposals.

5          Another note from the jury.  This one says:  We would

6    like to end deliberations at 5 p.m. today.

7          So we'll take up extending deliberations after we

8    resolve the response to this question.

9          (Counsel conferred)

10          THE COURT:  All right.  Let me get a proposal.

11          MR. EVERDELL:  Happy to talk, your Honor.

12          THE COURT:  Counsel, are you ready?

13          MS. MOE:  I apologize, your Honor.  Can we just have

14    one more moment to confer with our supervisor?

15          THE COURT:  Okay.

16          MS. MOE:  Thank you.

17          (Counsel conferred)

18          MS. MOE:  Thank you, your Honor.

19          Apologies for the delay.

20          THE COURT:  Defense counsel, are you ready?

21          MS. STERNHEIM:  Yes.

22          THE COURT:  Okay.  Go ahead, Ms. Moe.

23          MS. MOE:  Your Honor, our proposal would be to refer

24    the jurors to instruction number 21 on page 28 of the Court's

25    instructions, which pertains to comprehensive instruction with

LCRVMAXT

1    respect to the second element.  Beyond that, we're not able to

2    parse the question because we find it confusing; so we think

3    the safest course is to refer the jurors to the comprehensive

4    instruction with respect to the second element.

5            THE COURT:  Mr. Everdell.

6            MR. EVERDELL:  Your Honor, I think the answer to this

7    question is no, and I'll tell you the rationale for this.

8            As to the jurors' note, they've clearly separated out

9    in their minds the flight to New Mexico versus the flight back

10   from New Mexico.  And in their minds, there still is a

11   question, it would seem, that the flight -- whatever the

12   purpose of the flight to New Mexico was, whether it was for

13   illicit sexual activity or not, that is different from the

14   purpose of the flight back from New Mexico.  And they are

15   asking can she be found guilty solely on if there's some aiding

16   and abetting, some helping of that flight from New Mexico,

17   which presumably the flight home they're saying.

18           THE COURT:  So the flight from New Mexico to where?

19           MR. EVERDELL:  Well, there is no record of a flight

20   from New Mexico.  But what they are saying, I think, in this

21   note is they are separating out in their minds the flight to

22   New Mexico versus whatever flight she may have taken from New

23   Mexico.  And I would say based on the instructions in the

24   Court's instructions which the government pointed to, there has

25   to be -- the significant or motivating purpose of the travel

LCRVMAXT

1    across state lines has to be that Jane engaged in illicit

2    sexual activity.  There is no significant or motivating purpose

3    of a return trip where Mr. Epstein wasn't present; it's just a

4    return trip from New Mexico.  That would not be a significant

5    or motivating purpose.  She is just presumably going home, but

6    is not for the purpose of engaging in illicit sexual activity.

7         The testimony, if we are to believe it, is that she

8    went to New Mexico for some purpose to engage in sexual

9    activity, that's if you believe Jane's testimony.  But

10   returning from there is not that purpose.  Returning is

11   returning, or it's going somewhere else; it's going somewhere

12   away from where -- at least in the record, the evidence in the

13   record, if there is any -- Epstein was presumably in New

14   Mexico.  This is her leaving New Mexico.  So I don't think that

15   qualifies as a significant or motivating purpose.  That travel

16   across state lines is for some other purpose.

17        MS. MOE:  Your Honor, I don't believe this note is

18   that clear about what flight we're talking about.  The note

19   begins by talking about an unspecified return flight, and then

20   it turns to talking about a flight to New Mexico.  Then there's

21   a modifying clause about intent.  It is unclear which of the

22   two flights we are now modifying.

23        I think the safest course here is to refer the jury to

24   the elements of the crime.  I think guessing at what flight

25   they may be talking about is sort of beyond the reach of this

1    question because they haven't identified a flight here.

2          MR. EVERDELL:  Your Honor, I think they've been fairly

3    clear.  They say:  If the defendant aided in the transportation

4    of Jane's return flight, but not the flight to New Mexico.  The

5    only evidence we have of a flight to New Mexico with Jane is

6    the one in the flight logs, and it is a flight to New Mexico.

7    And so the return flight would be some other flight besides the

8    flight to New Mexico.

9          She is also alleged that -- and to be honest, I think

10   it was a little unclear what may have happened in New Mexico

11   based on her testimony; but if there was any illegal sexual

12   conduct, the flight to New Mexico, this is what they are

13   debating, because they say, but not the flight to New Mexico,

14   where/if the intent was for Jane to engage in sexual activity.

15         Okay.  So it seems that the jury is deliberating or at

16   least trying to decide whether the flight to New Mexico was for

17   the purpose of engaging in illegal sexual activity.  And they

18   are confused that the return flight that happens after that,

19   could that be the basis alone for a conviction on Count Four.

20   Answer is no, because that return flight is not for the purpose

21   of illegal sexual activity.

22         MS. MOE:  Your Honor, at the very least, the answer to

23   this can't be no, because a jury could infer intent to engage

24   in sexual conduct and the return of a flight in aiding and

25   abetting that.

LCRVMAXT

1          We can't tell which flight we're talking about, which

2     leg of a potentially multi-leg trip we're talking about.  And

3     so I think here, again, the Court gave a thorough instruction

4     about this particular element.  Because we can't tell which set

5     of facts they are asking about, I think the proper course here

6     is to refer the jury to the particulars with respect to this

7     element.

8          THE COURT:  It's difficult to know and to have in my

9     head, based on the articulation of the question, as well as the

10    testimony, exactly what they are referring to.  I don't know.

11         So I am inclined to follow the government's suggestion

12    here and to say, I can't provide an additional response to your

13    question other than to consider carefully the instructions as

14    to -- I mean, I could either point them to all of the count or

15    specifically to the second element, since that's what they're

16    asking about.

17         MR. EVERDELL:  If we're going to just refer them to

18    certain language, I think we refer them to the language in the

19    last paragraph.

20         THE COURT:  Page?

21         MR. EVERDELL:  Page 28, instruction number 21, lines

22    14 through 17.

23         MS. MOE:  Your Honor, those particular lines don't

24    appear to be what the jury is asking about.  I recognize that

25    the note refers to Count Four and the second element, but the

LCRVMAXT

1    entire note seems to be about transportation of some kind.  And

2    so we would propose just referring them to the instruction in

3    its entirety.

4              MR. EVERDELL:  Your Honor, I don't find this note

5    confusing.  And I think simply saying it's confusing --

6              THE COURT:  Well, I find it confusing.  For example, I

7    don't know if this is a question about aiding and abetting.  I

8    don't know.

9              MR. EVERDELL:  Your Honor, I think this is pretty -- I

10   think this is a question about whether you can hold her

11   accountable for a return flight, if you believe that she had

12   something to do with arranging that return flight from New

13   Mexico; whereas the first flight to New Mexico may have been --

14   at least there's some testimony to consider about whether that

15   was for the purpose of illegal sexual activity.  It was not

16   true of the return flight, the flight back, wherever she was

17   going, home, somewhere else, somewhere away from Mr. Epstein.

18             I think they are asking, Can we consider if Ms.

19   Maxwell had anything to do with that flight, arranging of that

20   flight, whether she can be convicted, because it's on the

21   return trip from an area where Jane claims she was involved in

22   sexual abuse.

23             THE COURT:  But it says where/if the intent was to

24   engage -- for Jane to engage in sexual activity.

25             MR. EVERDELL:  Right.  They are saying with a flight

LCRVMAXT

1    to New Mexico, where/if there was an intent for Jane to engage

2    in sexual activity.  So there is still an open question in

3    their minds about whether the flight to New Mexico, that

4    travel, was for the purpose of engaging in illegal sexual

5    activity.

6           But they are now considering whether the flight out of

7    New Mexico, if Ms. Maxwell had any -- did anything to do with

8    that flight, with arranging that flight, could we convict her

9    on that count alone.  Because there is no, I think, evidence

10   that she arranged the flight going to New Mexico; instead, they

11   are considering now whether there's any evidence that she may

12   have arranged the flight out of New Mexico.  And is that enough

13   to provide a conviction on Count Two?  And I think the answer

14   to that is pretty clearly no -- I'm sorry, Count Four I should

15   have said, not Count Two.  Because there's no evidence of that.

16          And there is also -- there is no -- in the

17   instructions themselves, that would not be a significant or

18   motivating purpose for that travel across state lines.  That

19   would simply be for her to return home.  That's not travel for

20   the purpose of engaging in illegal sexual activity.

21          MS. MOE:  Your Honor, I think this colloquy

22   illustrates how confusing the note is.  We are now guessing at

23   what hypothetical facts the jury is talking about; and then

24   guessing hypothetically what their legal question is on top of

25   that.  And I think we're compounding guesswork, what this

LCRVMAXT

```
 1    question is about.  And so the question is about the element;
 2    the charge is about that particular element.  I think more
 3    guesswork here makes this more confusing and not less
 4    confusing.  I think, as the Court pointed out, some aspects of
 5    this note are about aiding and abetting.  And so even referring
 6    the jury just to instruction number 21 leaves out that aspect
 7    of the jury's deliberations and their determination on this
 8    particular issue.  And so we think the safest course is to
 9    provide the jury with applicable law in this area, and they can
10    find the facts as they see fit and as they apply to these
11    particular instructions.
12            MR. EVERDELL:  Your Honor, I don't think this is a
13    question about aid and abetting, broadly speaking.  I think
14    they are talking about the flights to and from New Mexico.  I
15    think that much is pretty clear from the note.  And whether or
16    not Ms. Maxwell had anything to do with arranging that
17    travel --
18            THE COURT:  But your legal contention is she can't be
19    found guilty of this count unless the jury concludes that she
20    aided in the transportation to New Mexico.
21            That's not legally accurate, is it?
22            MR. EVERDELL:  Your Honor, the instruction itself says
23    it has to be a significant or motivating purpose for the travel
24    across state lines.
25            THE COURT:  Right.
```

1          MR. EVERDELL:  Right?

2          The travel back to a place where she is presumably not

3     engaging in illicit sexual activity, that is not a significant

4     or motivating purpose for that travel.

5          THE COURT:  You didn't answer my question.

6          MR. EVERDELL:  Maybe I'm confused by the question,

7     your Honor.

8          THE COURT:  To be found guilty on this count, must the

9     jury conclude that she aided in the transportation of Jane's

10    flight to New Mexico?

11         MS. MENNINGER:  Your Honor, may I interject myself

12    into this conversation?

13         THE COURT:  If you answer the question, I would value

14    it.

15         MS. MENNINGER:  I will.

16         It has to be a place for which the travel was a

17    significant or motivating purpose for illegal sexual activity.

18         In this hypothetical that they've given in this

19    question, they have a comma in two places.  The first place

20    they have a comma is after the return flight, comma, but not

21    the flight to New Mexico, where the intent was for Jane to

22    engage in sexual activity, comma.  So they have excluded out

23    where they're hypothetically claiming that the flight to New

24    Mexico was the place for which the intent was for Jane to

25    engage in sexual activity.

LCRVMAXT

1                  THE COURT:  Wow.

2                  MS. MENNINGER:  And they are asking, Can we find her

3       responsible for the return flight, but not that flight to New

4       Mexico, where the intent was to engage in sexual activity.

5       That's why I think they have written it with the commas as they

6       are.

7                  THE COURT:  Okay.

8                  MS. MENNINGER:  So they have to be directed --

9                  THE COURT:  Let me try again.  Can I get a yes or a no

10      to my question?  Is it your legal position that the jury must

11      conclude, in order to convict on this count, that the defendant

12      had to aid in the transportation of the flight to New Mexico?

13                 MS. MENNINGER:  I don't believe that -- no, no, it is

14      not my contention.

15                 THE COURT:  Thank you.

16                 MS. MENNINGER:  And the reason is the indictment does

17      not specify New Mexico.  It could be a flight to New York, for

18      example.  It could be a flight to New Mexico.  It could be any

19      place, the purpose for which was to engage in illegal sexual

20      activity.  So it doesn't have to be to New Mexico.

21                 THE COURT:  I agree with that.

22                 This is why it's difficult to parse the question

23      without assuming a variety of meanings, and I'm trying to track

24      your comma argument.

25                 MS. MENNINGER:  Had they placed the comma after New

LCRVMAXT

1  Mexico rather than the place where they did put the comma, then

2  that would have told us, can't she be responsible for aiding in

3  the transportation of the return flight, comma, but not the

4  flight to New Mexico, comma.  That would then put the where/if

5  the intent was --

6          THE COURT:  That would be an entirely different

7  meaning to the question.

8          MS. MENNINGER:  I think so.

9          THE COURT:  No, I agree.  What I don't know is I don't

10 know what they meant and I don't know how much weight to put on

11 that comma placement; because, as you've noted, that precise

12 sentence without that comma has an entirely different meaning.

13         MS. MOE:  Yes, your Honor.

14         And I think at the point at which we're parsing jury

15 notes like statutes this finely, I think it illustrates the

16 point that this note is confusing; that we're not sure what the

17 jury is asking about either factually or legally.

18         The question is about the second element; and so we

19 think the proper course is to refer the jury to those

20 particular instructions.  And the jury is free to send a

21 clarifying note, if they wish to do so.  But I think when we

22 are parsing commas this finely in a note that is unclear, it's

23 unclear which clauses are modifying which clauses, or which

24 flights we're even talking about, I think it's far too

25 confusing to give simple answers here.

LCRVMAXT

1          THE COURT:  I can't answer this ambiguous question no.

2     I don't know that the answer is no, even with the ambiguity;

3     because I don't know if what they have in mind is an aiding and

4     abetting question, which we haven't discussed yet.

5          MS. MENNINGER:  They never used the word "abet."

6          THE COURT:  That's true.  I won't assume that's the

7     question for purposes of the answer, but I also don't assume

8     the meaning that you've put on it for purposes of the answer.

9     So the only solution here is to say, I direct you to consider

10    the full instruction on Element 2 of Count Four on page 28.

11         MS. MENNINGER:  Our request would be to emphasize the

12    portion of that that talks about the purpose of the travel.

13    Because they have highlighted the purpose of the travel in

14    their question.  And the way I read it is certainly that that's

15    their question.  If they don't have evidence that the intent on

16    the return flight was for purposes of sexual activity, then I

17    do think the answer, as Mr. Everdell said is, no, they can't

18    convict.

19         MS. STERNHEIM:  May I have a moment?

20         (Counsel conferred)

21         MR. EVERDELL:  Your Honor, I'm sorry to raise another

22    issue, but I think we have to, given the note itself.

23         One moment.  Sorry.  The photograph on the phone keeps

24    disappearing.

25         We're talking about they are referring to Count Four,

LCRVMAXT

1    which is the substantive transportation count, which, as we

2    know, has to deal with the violation of New York law.  And they

3    are talking about flights to New Mexico; and can she be found

4    guilty on the second element of Count Four regarding these

5    flights to New Mexico.

6          So I think we may have to respond to the jury on that

7    score as well, which is the fact that they have to be

8    considering New York events for Count Four, rather than -- or

9    violations of New York law, which wouldn't occur in New Mexico

10   for there to be a conviction on Count Four.

11         MS. MOE:  Your Honor, I think that's exactly why we

12   proposed directing the jurors to the entirety of the

13   instruction, which says just that.  The second paragraph of

14   that same instruction reminds the jury, as the instruction does

15   throughout, that we're talking about New York Penal Law,

16   Section 130.55.  And so I think our proposal remains the same

17   that they be referred to the entirety of the instruction, which

18   includes that language, among other aspects of this particular

19   element.

20         THE COURT:  Yes.

21         MS. STERNHEIM:  Judge, may I be heard for a moment?

22         THE COURT:  Sure.

23         MS. STERNHEIM:  I think the fact that the jury has

24   mentioned New Mexico regarding a count that pertains to New

25   York is not just cleared up by referring them to the

LCRVMAXT

1    instruction.  Clearly they are making an error concerning which

2    state begins with "New."  And I suggest that if the Court

3    wishes to refer them to the charge, the Court also clears up

4    the fact that Count Four requires a violation of New York law,

5    not New Mexico law.

6          THE COURT:  That's certainly why we should refer them

7    to the whole charge.  That's what lines 7 through 10 make

8    clear.

9          MS. MOE:  Yes, your Honor.

10          The only illegal sexual activity identified in the

11    entirety of the jury charge is a statute in New York.  There

12    cannot be any risk of confusion on that score.  This particular

13    charge reminds the jury of that and includes that language as

14    well.  The jury has not been charged about any laws in New

15    Mexico; so there can't be any risk of confusion for exactly

16    that reason.

17          MR. EVERDELL:  I just don't understand the confidence

18    about how there can be no possible confusion --

19          THE COURT:  This conversation is stopping.

20          My decision is to refer them back to this charge,

21    because it is a proper instruction on the second element to

22    Count Four.  I do not know what this question means.  It's too

23    difficult to parse factually and legally what they're asking.

24    So the only option in those circumstances is to direct them

25    back to the count.

LCRVMAXT

1          So I'll take any requests beyond simply saying, I

2    received your note.  I refer you to instruction number 21 on

3    page 28.  Please consider carefully the full instruction.

4          MS. MOE:  Yes, your Honor.

5          THE COURT:  Mr. Everdell?

6          MR. EVERDELL:  That's fine, your Honor.

7          THE COURT:  Okay.  I'll do that.  And then -- well,

8    let me write it, and then we'll send it back, and then we'll

9    discuss -- because we have to bring them in to dismiss them.

10         So I received your note.  I refer you to instruction

11   number 21 on page 28.  Please consider the entirety of the

12   instruction.

13         MS. MOE:  Yes, your Honor.  Thank you.

14         THE COURT:  Okay.

15         MR. EVERDELL:  Without waiving our prior objection.

16         THE COURT:  Understood.

17         All right.  While Ms. Williams is handing that to the

18   CSO, for extending deliberation times going forward.

19         MS. MOE:  Yes, your Honor.

20         We've considered the matter.  And the government's

21   view is that is within the Court's discretion certainly to set

22   a schedule for jury deliberations.  Given the circumstances, we

23   agree that it's prudent to advise the jury that, barring any

24   scheduling complications, they should expect an extended day

25   tomorrow.

LCRVMAXT

1          MS. MENNINGER:  Your Honor, at this point, because it

2     has only been three days, we believe that any suggestion that

3     they should stay later is beginning to sound like urging them

4     to hurry up, when clearly they know that they can deliberate as

5     long as they want and they should be able to deliberate as long

6     as they want.  They haven't expressed any hesitation.  They've

7     been asking for transcripts, they've been asking for materials.

8          While we would not mind the Court giving an

9     instruction much like it did last week, telling the jurors that

10    should they choose to stay later on any given day, the Court

11    can make arrangements for them to do so, we would object to

12    trying to urge them to stay later if they are not asking to do

13    so and aren't expressing any difficulty in proceeding with the

14    deliberations that they are currently undertaking.

15         MS. MOE:  Your Honor, the Court has previously

16    extended certain days or contracted certain days, depending on

17    our schedule; and, in fact, I think the first day of

18    deliberations we had an extended day on the consent of both

19    parties.  We don't believe that sends any kind of signal, other

20    than that the Court is setting a schedule.  And we think that's

21    appropriate here given the circumstances.

22         THE COURT:  I think what we should do, I'll tell them

23    that if deliberations are not complete starting tomorrow, I

24    would like you to make yourselves available to deliberate until

25    at least 6 p.m. each day.  Of course, if you all agree to

1    deliberate later than that, you're most welcome to do so.

2    Please let me know by note when you wish to stop, but the

3    default going forward will be 6 p.m., unless anyone indicates

4    to Ms. Williams that that constitutes a hardship.  Okay?

5            MS. MENNINGER:  That would be our concern, your Honor,

6    obviously, that some of them do have hardships.

7            THE COURT:  As I did last time, I'm going to tell them

8    the default will be 6; but if it's a hardship, they should let

9    Ms. Williams know, in which case -- so, again, the language

10   will be, If deliberations are not complete starting tomorrow,

11   I'd like you to make yourselves available to deliberate until

12   at least 6 p.m.  Of course, if you all agree to deliberate

13   later than that, you're most welcome to do so.  Please just let

14   me know by note when you wish to stop.  But the default going

15   forward will be 6 p.m., unless anyone indicates to Ms. Williams

16   on their way out that that is a hardship.  Okay?

17           MS. MOE:  Yes, your Honor.  Thank you.

18           MS. MENNINGER:  Your Honor, we would object to adding

19   the "If deliberations are not complete."  I think that any kind

20   of suggestion that the deliberations should be resolving by a

21   certain time or not resolving could potentially --

22           THE COURT:  That is the precise language I used last

23   week in asking if they wanted to sit on Thursday.  It didn't

24   cause them to think that they had to complete their

25   deliberations.

LCRVMAXT

1          MS. MENNINGER:  But the rest of the language, your

2     Honor, last Thursday was "if you want to."  And this one seems

3     a little bit more like we're suggesting that you do it unless

4     you have a hardship.

5          THE COURT:  I clearly have discretion to set the

6     schedule, there's no doubt about that.  And I can do it over

7     your objection.  So I'm happy to give -- I think we should set

8     it as a default, unless there's a hardship.

9          MS. MENNINGER:  I understand that, your Honor.  I just

10     would request -- and it's our request that your Honor not

11     include the language "unless deliberations are complete."

12          THE COURT:  I will use the same language that I used

13     last week.  It's precisely the same language I used on multiple

14     occasions without objection.  And I don't want them to assume

15     that I think it should take longer than that.  That's the

16     concern.  So I don't want them to assume what I'm saying, that

17     I'm suggesting it should take longer.  I don't want them to

18     assume it should take shorter.  I'm happy to add, if you want,

19     Of course, I don't mean this in any way to pressure you; you

20     should take all the time you need.

21          MS. MENNINGER:  Yes, very much would appreciate that,

22     your Honor.

23          THE COURT:  Ms. Moe.

24          MS. MOE:  No objection, your Honor.  Thank you.

25          THE COURT:  All right.  Bring in the jury.

1              (Jury present)

2              THE COURT:  Thank you, everyone.  Hi, members of the

3    jury.  Please be seated.

4              I did receive your note asking to finish today at 5,

5    so I brought you in to dismiss you.

6              A few things.

7              Of course, bear all of my instructions in mind.

8    Please continue to take precautions in light of the increase in

9    the variant.  I need all of you here and healthy, of course.

10   So take your masks, be cautious.  I appreciate that.

11             You'll begin again tomorrow at 9 a.m.  Same

12   instructions:  Wait till everyone is there, then begin your

13   deliberations.

14             If deliberations are not complete starting tomorrow, I

15   would like you to make yourselves available to deliberate until

16   at least 6 p.m.  Of course, if you all agree to deliberate

17   later than that, you're most welcome to do so.  Please just let

18   me know by note when you wish to stop.  But I'd like you to

19   plan to deliberate until at least 6 p.m.

20             As with the last time, if that is a hardship that you

21   can't do, let Ms. Williams know that on your way out and we'll

22   adjust.  But otherwise, please plan for 6 p.m.  Of course, by

23   this I don't mean to pressure you in any way.  You should take

24   all the time that you need.

25             With that, I bid you a good night.

LCRVMAXT

1          Be safe.  And we'll see you tomorrow.  Thank you.

2          (Jury not present)

3          THE COURT:  Matters to take up?

4          MS. MOE:  Not from the government, your Honor.

5          Thank you.

6          MS. STERNHEIM:  Nothing.

7          THE COURT:  Okay.  I'll see you tomorrow.

8          Be safe, everyone.

9          (Adjourned to December 28, 2021 at 9:00 a.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25