UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,   20-CR-330 (PAE)

vs.

GHISLAINE MAXWELL.
_____/

**GHISLAINE MAXWELL'S RESPONSE IN OPPOSITION TO
GOVERNMENT'S MOTION TO UNSEAL GRAND JURY TRANSCRIPTS**

Although the government did not oppose allowing the defense to review the grand jury material to assess whether to object to its release, the Court denied that request. As a result, Ghislaine Maxwell has not seen the material and cannot take an informed position. Given that she is actively litigating her case and does not know what is in the grand jury record, she has no choice but to respectfully oppose the government's motion to unseal it.

I.   INTRODUCTION

Jeffrey Epstein is dead. Ghislaine Maxwell is not. Whatever interest the public may have in Epstein, that interest cannot justify a broad intrusion into grand jury secrecy in a case where the defendant is alive, her legal options are viable, and her due process rights remain.

When Epstein died, prosecutors from the Southern District of New York pivoted and made Maxwell the face of his crimes. She became the scapegoat and the only person the government could put on trial. She was convicted in a media firestorm of false reporting and mischaracterization of evidence. Now, with her case pending before the Supreme Court, the government seeks to unseal untested,

MARKUS/MOSS
1

hearsay-laden grand jury transcripts, which contain statements presented in secret and never challenged by the adversarial process. Maxwell has never been allowed to review those transcripts even though the government did not oppose her recent request to do so.

The government seeks to unseal the grand jury transcripts, citing "historical interest" without regard for how that release will affect Maxwell's privacy interests, her pending Petition, and any future litigation. The government's Memorandum (Dkt. 796) cloaks itself in *In re Craig*, but that case emphasized that disclosure requires the most careful judgment and that "the public's curiosity in a defendant's secret conduct at a grand jury hearing cannot eclipse the right the defendant has to secrecy and overwhelm his objection to public discourse." 131 F.3d 99, 105 (2d Cir. 1997).

Because this is ongoing litigation in a criminal case involving a living defendant with existing legal remedies, the government's motion should be denied.

## II. THE GOVERNMENT FAILS TO ESTABLISH "SPECIAL CIRCUMSTANCES" WARRANTING DISCLOSURE OF GRAND JURY MATERIALS IN AN ONGOING CASE

There is a tradition in the United States that is "older than the Nation itself," that grand jury proceedings shall remain secret. *In re Craig*, 131 F.3d at 101-02 (quoting *In re Biaggi,* 478 F.2d 489, 491 (2d Cir.1973)). This tradition of secrecy is codified in Federal Rule of Criminal Procedure 6(e). The rule of secrecy is not without exceptions, however, and Rule 6(e)(3) lists several exceptions. The Second Circuit has additionally recognized that there are certain "special circumstances" in which

release of grand jury records is appropriate even outside the boundaries of Rule 6(e)(3). *In re Craig*, 131 F.3d at 102. Importantly, "the discretion of a trial court in deciding whether to make public the ordinarily secret proceedings of a grand jury investigation is one of the broadest and most sensitive exercises of careful judgment that a trial judge can make." *Id*. at 104.

*In re Craig* involved a petition by a doctoral candidate to unseal the nearly 50-year-old grand jury testimony of a high-ranking government employee, Harry Dexter White, based on historical interest in White's suspected role as a communist spy. The court in *In re Craig* denied the petition to unseal. On appeal, the Second Circuit affirmed the trial court's denial of the petition, finding that the court did not abuse its discretion when it found that sufficiently exceptional circumstances did not exist to warrant disclosure. *Id*. at 100-01, 107.

In affirming the lower court's denial of the motion to unseal, the Second Circuit acknowledged historical interest as a potential basis for disclosure and offered a non-exhaustive list of factors that a trial court might consider when confronted with ruling on a motion to unseal. *Id*. at 105-06. Those factors include, but are not limited to:

> (i) the identity of the party seeking disclosure; (ii) whether the defendant to the grand jury proceeding or the government opposes the disclosure; (iii) why disclosure is being sought in the particular case; (iv) what specific information is being sought for disclosure; (v) how long ago the grand jury proceedings took place; (vi) the current status of the principals of the grand jury proceedings and that of their families; (vii) the extent to which the desired material—either permissibly or impermissibly—has been previously made public; (viii) whether witnesses to the grand jury proceedings who might

> be affected by disclosure are still alive; and (ix) the additional need for maintaining secrecy in the particular case in question.

*In re Craig*, 131 F.3d at 106. The Court noted that "all of these factors and their precise significance must be evaluated in the context of the specific case." *Id.* at 107.

The timing of a request to unseal is "one of the most crucial elements" to be considered by a district court. *In re* Craig, 131 F.3d at 107. Here, the grand jury convened just five years ago, not decades ago. This is not a case where the "passage of time erode[d] many of the justifications for continued secrecy." *Id.* Nor is it a case where time has brought about the "death of the principal parties involved in the investigations, as well as that of their immediate families." *Id.* at 107. Epstein may be dead, but Maxwell is alive and litigating her case.

Maxwell's Petition for a Writ of Certiorari is pending before the Supreme Court. She is preparing a habeas petition. Disclosure of grand jury materials at this stage risks irreparably tainting the legal process by injecting sealed testimony into the public debate while judicial review is ongoing. The reputational harm from releasing incomplete, potentially misleading grand jury testimony, untested by cross-examination, would be severe and irrevocable. Those allegations, if released in raw, untested form, would inevitably influence any future legal proceeding should Maxwell succeed in her post-conviction litigation. The government's proposal to "redact victim-identifying information" does not mitigate this harm. The substance of the allegations, not the names, creates the prejudice. Public curiosity is insufficient

when Maxwell's legal and reputational interests are at stake. These factors weigh heavily in favor of preserving the secrecy of the grand jury materials.

Although the government's memorandum sets forth that certain "aspects and subject matters of the transcript became public during Maxwell's trial," Maxwell has never had an opportunity to review the entirety of the grand jury materials in her case. Dkt 796 at 7. The government provided a list to the Court, under seal, of witnesses whose accounts were conveyed in the grand jury and a corresponding list noting which witnesses testified at trial. That list has not been disclosed to us. The government's memorandum, however, acknowledges that the law enforcement witnesses who testified before the grand jury are alive and remain active in the FBI and NYPD respectively. The government's memorandum also disclosed that "many" of the complaining witnesses, who formed the subject matter of the grand jury witnesses' testimony, are also alive. Dkt 796 at 8. This factor likewise counsels against disclosure of the grand jury transcripts given the need to protect both active law enforcement personnel and alleged victims.

### III. THERE IS NO PRECEDENT SUPPORTING RELEASE OF GRAND JURY TRANSCRIPTS IN A PENDING CASE LIKE THIS ONE

None of the cases cited by the government justify disclosure here. *In re Petition of National Security Archive* involved a decades-old grand jury proceeding against Julius and Ethel Rosenberg relating to charges of conspiracy to commit espionage by providing information about the atomic bomb to Soviet agents. 104 F. Supp. 3d 625, 626 (S.D.N.Y. 2015). In 1951, the Rosenbergs were tried, convicted, and sentenced to death. They were executed in 1953. *Id.* In 2015, upon a motion by a non-profit

institution and others, Judge Hellerstein granted a petition to unseal the grand jury testimony of David Greenglass, Ethel Rosenberg's brother. In granting the petition to unseal Greenglass' grand jury testimony, the court observed that in the 65 years that had passed since the Rosenberg trial, many believed that Ethel Rosenberg was innocent and had been framed by Greenglass. *Id.* at 628. As a result, and only after Greenglass had passed away, the court concluded that Grenglass' grand jury testimony should be released since it provided information in a case of historical interest to the public. *Id.* at 629 (holding that "the requested records are critical pieces of an important moment in our nation's history" and "the time for the public to guess what they contained should end."). It is noteworthy that Judge Hellerstein refused to unseal the transcript while Grenglass was alive, finding that Greenglass' interest in preserving the secrecy of his grand jury testimony "was sufficient to prevent its unsealing during his life, despite the public interest in the case." *Id.* at 628.

*In re Petition of American Historical Association* involved a similar request by historical associations in 1998 to unseal transcripts of two special grand juries convened from 1947 to 1950 pertaining to the espionage investigation of Alger Hiss. *In re Am. Hist. Ass'n*, 49 F. Supp. 2d 274 (S.D.N.Y. 1999). Hiss, a former high-ranking State Department official, was convicted of committing perjury in responding to allegations that he was a Soviet spy. Hiss maintained his innocence until his death and publicly suggested that his prosecution was a political hit job by Richard Nixon to mobilize public opposition to communism. *Id.* at 294. In granting the request to unseal the fifty-year old grand jury materials, the court noted the significant passage

of time along with the fact that most of the relevant witnesses, including Hiss, had died. *Id.* at 293. The court ultimately ruled that the great historical importance of the Hiss case outweighed the minimal interest in preserving secrecy. *Id.* at 293 (noting that alleged Soviet espionage against the United States was a controversial and historically significant issue in domestic politics during the 1940s and 1950s, and to the present day).

Disclosure is being sought in this case due to immense public interest in Jeffrey Epstein's and Ghislaine Maxwell's cases, along with public interest in the government's handling of those investigations and prosecutions. The public interest identified by the government—while understandable—is insufficient to warrant disclosure of grand jury materials at this time. The government frames this interest as "historical," yet it is nothing more than widespread and intense public curiosity about an ongoing criminal case. Neither *In re Petition of National Security Archive*, nor *In re Petition of American Historical Association*, support the conclusion that the Maxwell grand jury materials should be released. Each of those cases involved testimony dating back at least five decades, along with grand jury testimony relating to defendants and witnesses who were deceased.

*In re Biaggi* is equally unavailing. *In re Biaggi*, 478 F.2d 489 (2d Cir. 1973). That case involved the unsealing of grand jury testimony of a U.S. Congressman, Mario Biaggi, who had not been indicted, and who waived any protection to secrecy by "seeking complete disclosure in the form of a motion requesting disclosure of his own testimony for its own sake." *In re Biaggi*, 478 F.2d 489, 493 (2d Cir. 1973). The

government in *In re Biaggi* moved to unseal Biaggi's grand jury testimony only after Biaggi petitioned a three-judge panel in the Southern District of New York to examine his grand jury testimony and publicly report whether he had invoked any constitutional privileges relating to his personal finances or assets. *Id.* at 491. The Second Circuit affirmed the district court's order directing the public disclosure of Biaggi's testimony based solely on his waiver, finding that "no matter how much, or how legitimately, the public may want to know whether a candidate for high public office has invoked the privilege against self-incrimination before a grand jury, or has lied about having done so, that interest must generally yield to the larger one of preserving the salutary rule of law embodied in Rule 6(e) of Federal Rules of Criminal Procedure. But that is not *this* case." *Id.* at 493 (emphasis added). Maxwell, unlike Biaggi, has preserved her right to grand jury secrecy and vigorously opposes disclosure of the grand jury materials.

Lastly, the Florida case the government cites, *CA Florida Holdings v. Dave Aronberg,* has no precedential value in this jurisdiction and involved a civil suit under Florida public records law, not federal grand jury materials protected under Rule 6(e). *See* Order Granting Plaintiff's Motion for Reconsideration of the Trial Court's February 29, 2024 Order, *CA Florida Holdings, LLC v. Dave Aronberg and Joseph Abruzzo*, 50-2019 CA-014681 (15th Cir. July 1, 2024). It is wholly inapposite.

There is no precedent for unsealing grand jury transcripts in an ongoing matter like Maxwell's case. Accordingly, the government's motion should be denied.

## IV. CONCLUSION

The government's motion to unseal the grand jury materials in this matter should be denied.

Dated: August 5, 2025                                   Respectfully submitted,

                                                        **MARKUS/MOSS** PLLC
                                                        40 N.W. Third Street, PH1
                                                        Miami, Florida 33128
                                                        Tel: (305) 379-6667
                                                        markuslaw.com

                                                        By:    /s/ David Oscar Markus
                                                               David Oscar Markus
                                                               Florida Bar Number 119318
                                                               dmarkus@markuslaw.com

                                                               Melissa Madrigal (MM0200)
                                                               New York Bar Number 5242433
                                                               Florida Bar Number 93241
                                                               mmadrigal@markuslaw.com