UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-v-

GHISLAINE MAXWELL,

Defendant.

20 Cr. 330 (PAE)

ORDER

PAUL A. ENGELMAYER, District Judge:

This Order publicly dockets the five letters submitted yesterday on behalf of victims and other individuals regarding the Government's request to unseal the grand jury materials in this case. *See* Dkt. 789 (inviting letters from victims regarding Government's motion to unseal); Dkt. 801 (providing logistical instructions for such letters). These letters have been redacted to the extent requested, to respect privacy interests. This Order also attaches the Government's transmittal letter to the Court that contained these letters.

SO ORDERED.

Paul A. Engelmayer

PAUL A. ENGELMAYER
United States District Judge

Dated: August 6, 2025
New York, New York

# August 6, 2025 Government Letter



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

August 6, 2025

**BY HAND**

Honorable Paul A. Engelmayer
**Attention: A.J. Smallman**
United States District Court
Southern District of New York
Chambers 2201
40 Foley Square
New York, NY 10007

      Re:    ***United States v. Ghislaine Maxwell,***
             **20 Cr. 330 (PAE)**

Dear Judge Engelmayer:

      The Government respectfully submits this letter and its attachments pursuant the Court's order, dated August 5, 2025. (Dkt. 801). The Government has received five submissions, which are enclosed. The following is a list of those submissions and an indication of whether they may be publicly filed with or without redactions.

1. Response to Victim Notification Request, dated August 4, 2025, and signed by John Scarola, Esq.: The submission does not contain any identifying information for victims and therefore it may be filed without redactions.

2. Letter dated August 5, 2025, and signed by Sigrid McCawley, Esq.: Counsel informed the Government that they are not seeking any redactions to this submission and therefore it may be filed without redactions.

3. Letter dated August 5, 2025, and signed by Bradley Edwards, Esq.: Counsel informed the Government that they are not seeking any redactions to this submission and therefore it may be filed without redactions.

4. Letter dated August 5, 2025, which is unsigned but was submitted to the Government by Bradley Edwards, Esq.: The submission does not contain any identifying information for victims and therefore it may be filed without redactions.

5. Letter dated August 5, 2025, and signed by Neil S. Binder, Esq.: Counsel provided two versions of the letter—one for filing under seal and the other with redactions for public filing.

Hon. Paul A. Engelmayer, U.S.D.J.
August 6, 2025
Page 2 of 2

Respectfully submitted,

JAY CLAYTON
United States Attorney for the
Southern District of New York

by:    /s/ Jay Clayton
       Jay Clayton

# Tab 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

United States of America

v.                                        Case No. 1:20-cr-330 (AJN)

Ghislaine Maxwell,

   Defendant.

_____/

<u>RESPONSE TO VICTIM NOTIFICATION REQUEST</u>

The undersigned is counsel to multiple victims of the criminal conduct of Jeffrey Epstein addressed in Grand Jury proceedings sought by Motion of the U.S. Department of Justice to be unsealed. Pursuant to the Court's direction by order of July 22,2025, the position of our clients in response to the Motion is expressed as follows:

We are in full agreement with the public disclosure of the grand jury transcripts, and further state that all Epstein-related information and documents in the possession and control of law enforcement, prosecutorial and other government agents and entities should be fully disclosed. All disclosures should be subject only to the condition that the identity and privacy rights of all victims be scrupulously preserved. This request for disclosure includes but is not limited to the complete transcripts of all interviews and depositions that have been or may be conducted with Ghislaine Maxwell.

 Dated: August 4, 2025

                         Respectfully submitted,
                         /s/ John Scarola
                         John Scarola, Esq.
                         Florida Bar No. 169440
                         _scarolateam@searcylaw.com
                         Searcy Denney Scarola Barnhart & Shipley, P.A.
                         2139 Palm Beach Lakes Boulevard
                         West Palm Beach, FL 33409
                         561-686-6300 Telephone

# Tab 2



Sigrid McCawley
Telephone: (954) 377-4223
Email: smccawley@bsfllp.com

August 5, 2025

Hon. Richard M. Berman
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

Hon. Paul A. Engelmayer
U.S. District Court of the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

**Re: Unsealing of Grand Jury Transcripts in *U.S. v. Epstein*, 19-cr-490 (RMB) and *U.S. v. Maxwell*, 20-cr-330 (PAE)**

Dear Judges Berman and Engelmayer,

We write on behalf of Annie Farmer in response to the belated notice that we received from the Department of Justice on July 25, 2025, advising that the Court is seeking letters on behalf of victims setting out their positions on the proposed disclosures of Jeffrey Epstein's and Ghislaine Maxwell's grand jury transcripts.[1]

By the Government's admission, "over one thousand victims" suffered from Epstein's and Maxwell's actions. To date, however, the combined forces of our country's law enforcement agencies have only ever arrested these two individuals in connection with crimes committed against countless young women and girls, and the Government's recent suggestion that no further criminal investigations are forthcoming is a cowardly abdication of its duties to protect and serve.[2]

---

[1] Ms. Farmer is a survivor of Epstein's and Maxwell's crimes and testified at Maxwell's trial. While the undersigned counsel has, at various times, represented hundreds of victims of Epstein and Maxwell aside from Ms. Farmer, the Department of Justice's notice did not identify the specific victims whose names, likenesses, or information may be subject to disclosure.

[2] Of those two, Epstein escaped justice through his apparent suicide, and Maxwell is now, to the victims' horror, herself attempting to escape justice by negotiating for herself a potential pardon

BOIES SCHILLER FLEXNER LLP

401 East Las Olas Boulevard, Suite 1200, Fort Lauderdale, FL 33301 | (t) 954 356 0011 | (f) 954 356 0022 | www.bsfllp.com

**BSF**

It is obviously impossible for two people to conduct a decades-long sex-trafficking enterprise involving thousands of victims without other individuals who participated in and facilitated these unspeakable atrocities.

The recent controversy surrounding the Government's decision to withhold information concerning Epstein's and Maxwell's crimes has largely ignored the victims' perspective. Ms. Farmer is thankful for the Court's invitations to state the victims' positions, and supports the unsealing of the grand jury transcripts, as well as the accompanying grand jury exhibits, with redactions only as necessary to protect victims' names, likenesses, and identifying information. Transparency is critical to justice, and the public has a legitimate interest in understanding the full scope of Epstein's and Maxwell's crimes, particularly where those actions caused lasting harm to others. While it was *not* the victims' decision to seek disclosure of the grand jury transcripts alone (as opposed to the much larger volume of information available in the "more than 300 gigabytes of data and physical evidence" in the Government's possession that should be disclosed as well), the instant motion for unsealing will help expose the magnitude and abhorrence of Epstein's and Maxwell's crimes.

In this case that involved a decades-long, systematic criminal scheme that shocked the conscience of the public, caused lasting harm to survivors, and raised credible concerns about the failures of institutional accountability, there is an especially compelling interest in transparency. Unsealing the grand jury transcripts will illuminate the scope of Epstein's and Maxwell's abuse, provide additional insight into those who enabled his abuse, and bring light to how these crimes were investigated and prosecuted. While grand jury secrecy serves important purposes, it is not absolute and under these circumstances the balance tilts in favor of disclosure.

1. **Given the Magnitude and Abhorrence of Epstein's and Maxwell's Crimes, the Unsealing of the Grand Jury Transcripts Is Appropriate.**

The Second Circuit has recognized that there are special circumstances when the release of grand jury records is appropriate based on the courts' supervisory authority over the grand juries they empanel and that the trial court has "wide discretion … in evaluating whether disclosure is appropriate." *In re Petition of Craig*, 131 F.3d 99, 102, 104 (2d Cir. 1997). In *Craig*, the Second Circuit outlined a non-exclusive list of factors that a trial court may consider when deciding whether "special circumstances warrant the release of grand jury transcripts. *Id.* at 106. We join the Government's arguments for unsealing under the *Craig* factors, *Epstein* Dkt No. 66, at 3–7. Two factors warrant additional discussion in light of the victims' position in favor of unsealing.

---

or commutation of her sentence. The victims of her crimes unequivocally object to any potential leniency that the Government may be considering offering Maxwell, a convicted sex trafficker.

**BSF**

### A. Why Disclosure Is Being Sought in Particular Case

Grand jury secrecy may serve legitimate purposes in ordinary cases, but this is no ordinary case. In addition to the public interest that the Government identifies, *Epstein* Dkt. No. 66 at 4–5, disclosure of the grand jury transcripts in this case serves the interest of Epstein's and Maxwell's victims in bringing light to Epstein's and Maxwell's horrific crimes. This transparency and accountability is a form of justice. Epstein is the world's most notorious sex offender, and his crimes span decades, with thousands of victims. Epstein was a calculated predator who preyed on minors and young women using wealth, deceit, and manipulation. Maxwell, his righthand woman, played a central role in recruiting, grooming, and trafficking Epstein's victims, oftentimes participating in the abuse. Her participation, and the complicity and participation of others, enabled Epstein to conduct a decades-long sex-trafficking scheme.

Given the magnitude and abhorrence of Epstein and Maxwell's crimes, unsealing the grand jury transcripts is not just appropriate, it is necessary to understand the full scope of the abuse and those who enabled it. For years, victims of Epstein's and Maxwell's crimes have been silenced, fearful of the repercussions of exposing the many powerful individuals in Epstein's network, many of whom have not yet been named or investigated. Unsealing the grand jury transcripts would allow additional important information to emerge without requiring the victims to expose themselves to the same ridicule, retaliation, and humiliation they would face if they were the ones to expose such information. The Government itself acknowledged that there are "over one thousand victims," [3] yet only a small fraction—approximately one-fifth—have received compensation, underscoring the continuing lack of full accountability for Epstein, Maxwell, and their co-conspirators. The interests of the victims should therefore weigh in favor of disclosure. *See Matter of Aiani v. Donovan*, 98 A.D.3d 972, 974 (2d Dep't 2012) (ordering disclosure of banking records requested in connection with grand jury proceedings based on the interests of the victims).

### B. Whether Witnesses to the Grand Jury Transcripts Who Might Be Affected by Disclosure Are Still Alive

This factor considers whether individuals who may be affected by the disclosure of grand jury materials may be adversely impacted by unsealing. This case presents a rare and compelling circumstance where the victims seek transparency, not secrecy. In *In re National Security Archive*, for example, where the proceedings held substantial historical importance and the living witnesses did not express any objection to the release, the Court found that the release of grand jury testimony was appropriate. 2008 WL 8985358, at *1–2 (S.D.N.Y. Aug. 26, 2008). The victims represented by the undersigned counsel who are still alive do not just passively support unsealing, but

---

[3] *See* U.S. Dep't of Justice, Federal Bureau of Investigation, Memorandum (July 6, 2025), https://www.justice.gov/opa/media/1407001/dl?inline.

3

# BSF

affirmatively support unsealing, subject to appropriate redactions to protect their personal privacy. Their consent to disclosure should weigh in favor of unsealing under this factor. Further, because the Government intends to redact the names and identifying information of the victims, there is no risk that the privacy of the victims will be jeopardized. *In re Kutler*, 800 F. Supp. 2d 42, 50 (D.D.C. 2011) (procedures for reviewing transcripts to protect named individuals as needed "allay any remaining privacy concerns").

## 2. The Court Should Assess the Appropriateness of the Redactions.

The grand jury transcripts should be released subject to narrowly tailored redactions of the names, likenesses, and identifying information of the *victims*. The Court should *not*, however, rubber stamp redactions to withhold from the public "information related to third parties who neither have been charged or alleged to be involved in the crimes with which Epstein and Maxwell were charged," *Epstein* Dkt. No. 66 at 7. Any effort to redact third party names smacks of a cover up. The Government does not elaborate on what protocol it is using to redact other "third party" names or which types of individuals it seeks to protect in this way. To the extent the Government for some reason seeks to redact the names of other Epstein and Maxwell affiliates on the basis that these individuals "neither have been charged or alleged to be involved" in their crimes, the Court should exercise its independent authority to ensure that any redactions are tailored to serve compelling interests. *See generally Brown v. Maxwell*, 929 F.3d 41, 50 (2d Cir. 2019) (even if materials are not considered judicial documents to which a presumption of public access applies, "a court must still articulate specific and substantial reasons for sealing such material").

### A. Redactions of the Names and Identifying Information of the Victims Is Appropriate.

The privacy interests of Ms. Farmer and other victims (as victims of sex abuse and human trafficking) are strong. In *Giuffre v. Maxwell*, Judge Preska repeatedly recognized the "gravity of the privacy interests" of "victims of Jeffrey Epstein's sexual abuse." *Giuffre v. Maxwell*, 2020 U.S. Dist. LEXIS 221599, at *16 (S.D.N.Y. Nov. 25, 2020). The Court explained that "[t]hose interests are particularly acute given that the psychological and emotional wellbeing of survivors of alleged sexual assaults may be implicated by such a broad disclosure." *Giuffre v. Dershowitz*, 2020 WL 5439623, at *2 (S.D.N.Y. Sept. 9, 2020). And "[t]hose interests weigh no less heavily" where "it is law enforcement seeking modification of the protective order instead of a private litigant." *Giuffre v. Maxwell*, 2020 U.S. Dist. LEXIS 221599, at *16. In *Doe 1 v. JP Morgan Chase Bank, N.A.*, Judge Rakoff recently found that the privacy interest of a victim of Epstein justified sealing because "[p]rotecting the identity of sexual assault survivors and the details of their assaults is traditionally considered private and has been widely recognized as a compelling reason to limit public access to [even] judicial documents." 742 F. Supp. 3d 387, 397 (S.D.N.Y.

4

**BSF**

2024). Thus, Ms. Farmer's and other victims' privacy interests as victims of Epstein and Maxwell weigh heavily in favor of the redactions of the victims' names and identifying information.

### B. Redactions of Names and Information Relating to Epstein and Maxwell's Co-Conspirators Are Improper.

The Government's original motion refers to a July 6, 2025 Memorandum that concluded that no evidence could predicate an investigation into uncharged third parties associated with Epstein's and Maxwell's criminal scheme. *Epstein* Dkt. No. 61 at 1–2. The Government purports to seek the unsealing of the grand jury transcripts to provide transparency for the public into the conclusions reached by the Memorandum. *Id.* To be clear, we do not agree that there is insufficient evidence to support investigations into third parties who enabled Epstein's and Maxwell's crimes and participated in them. Numerous individuals have yet to be investigated and several civil cases have been filed addressing other individuals' central involvement with Epstein's and Maxwell's sex trafficking.

As the Court acknowledged, there are "over one thousand victims" of Epstein's and Maxwell's crimes. *Epstein* Dkt. 63 at 4. Less than one-fifth of these victims have been compensated for the crimes committed against them, either through the now-closed Epstein Victims Compensation Fund or otherwise. To rectify this, there have been numerous civil cases filed that address third parties' central involvement with Epstein and Maxwell's sex-trafficking crimes. *See Doe 1 v. JP Morgan Chase Bank, N.A.*, Case No. 22-cv-10019 (S.D.N.Y.), *Doe 1 v. Deutsche Bank Aktiengesellschaft*, Case No. 22-cv-10018 (S.D.N.Y.); *Doe 3 v. Indyke*, Case No. 24-cv-01204 (S.D.N.Y.). To the extent any of Epstein's and Maxwell's enablers and co-conspirators who have thus far evaded accountability are implicated by the grand jury transcripts, their identities should not be shielded from the public. Though "[t]he privacy interests of innocent third parties" like the victims should be redacted, *see Gardner v. Newsday, Inc.*, 895 F.2d 74, 79 (2d Cir. 1990), there should be no similar protection for those third parties accused of wrongdoing.

\*\*\*

Ms. Farmer strongly supports the release of Epstein's and Maxwell's grand jury transcripts, subject to appropriate redactions of the victims' names and identifying information. Unsealing the grand jury transcripts serves the interests of transparency, accountability, and restorative justice.

Respectfully submitted,

*/s/ Sigrid S. McCawley*
Sigrid S. McCawley

*Counsel for Annie Farmer*

5

# Tab 3

# EDWARDS HENDERSON

## THE — CRIME VICTIM — LAW FIRM

| Florida Office | Telephone (954)524-2820 | New York Office |
|---|---|---|
| | Fax (954)524-2822 | *By Appointment Only* |
| **425 North Andrews Avenue** | info@cvlf.com | |
| **Suite 2** | Brad@cvlf.com | |
| **Fort Lauderdale, FL 33301** | Brittany@cvlf.com | |

August 5, 2025

SDNY Victim and Witness Coordinator
United States Attorney's Office
26 Federal Plaza, 37th Floor
New York, New York
1-866-874-8900
Via Email: USANYS.EpsteinMaxwellVictims@usdoj.gov

> **RE: Crime Victims' Rights Act Implications Regarding Unsealing of Grand Jury Materials in Maxwell Proceedings**
>
> Case: *USA v Maxwell*
> Case No.: 1:20-cr-00330 (PAE)

Dear Judge Engelmayer:

We represent numerous survivors of Jeffrey Epstein and Ghislaine Maxwell, including individuals whose names and identifying information appear in the subject materials and one woman who testified at Ghislaine Maxwell's criminal trial. Many of these victims placed immense personal and emotional trust in the federal justice system, with the belief that the conviction of Ms. Maxwell finally represented a measure of accountability. Most view that conviction as the only justice they ever received from the criminal justice system.

In that vein, we write to address the Department of Justice's request to unseal grand jury materials and to respectfully urge the Court to administer any disclosure in a manner that fully honors the victims' rights under the Crime Victims' Rights Act ("CVRA"), 18 U.S.C. § 3771, the enduring interests protected by Federal Rule of Criminal Procedure 6(e), and Eleventh Circuit precedent.

I.    **Victims' CVRA Rights Are Directly Implicated and Must Be Considered in Context—Not in a Vacuum**

The CVRA guarantees victims:

- The right to be reasonably protected from the accused (§ 3771(a)(1));

Honorable Paul A. Engelmayer
Case No.: 1:20-cr-00330 (PAE)
Page 2

- The right to be heard at any public proceeding involving release, parole, or sentencing (§ 3771(a)(3));
- The right to confer with the attorney for the Government (§ 3771(a)(5)); and,
- The right to be treated with fairness and respect for dignity and privacy (§ 3771(a)(8)).

*See also Kenna v. U.S. Dist. Court*, 435 F.3d 1011, 1016–17 (9th Cir. 2006) (fairness and dignity are substantive, enforceable rights); *In re Dean*, 527 F.3d 391, 394–95 (5th Cir. 2008) (government must confer with victims before making consequential case decisions); *In re Wild*, 994 F.3d 1244 (11th Cir. 2021) (en banc) (confirming that CVRA protections are fully attached post-conviction).

Crucially, the victims' position regarding unsealing cannot be viewed in isolation as multiple developments are occurring simultaneously:

- **Maxwell's New Platform and Public Legitimization**: Despite being convicted on federal sex trafficking charges, Maxwell has been given a public platform to speak with highly influential individuals such as Deputy Attorney General Todd Blanche, as though she were a credible authority. That is particularly jarring given that she was charged with multiple sex-trafficking offenses and two counts of perjury arising from civil depositions on these very subjects. To be clear, we do not take issue with Mr. Blanche meeting with Ms. Maxwell, seemingly at Maxwell's request, to obtain gratuitous information she wants to provide. However, for survivors who bravely testified, the perception that Ms. Maxwell is being legitimized in public discourse has already resulted in re-traumatization.

- **Transfer to a Lower-Security Facility**: Maxwell's recent move to a lower-security prison has further eroded the victims' confidence that their safety and dignity are priorities. The transfer was made without prior notice to the victims, without opportunity to object, and without explanation—actions they see as extraordinarily insensitive and suggestive of ulterior purposes.

- **Lack of Consultation on Unsealing**: The government sought the unsealing of grand jury materials before this Court without first conferring with the victims or their counsel, a step required by the CVRA and reinforced by *Doe v. United States*, 08-80736 (S.D. Fla.). That case, litigated pro bono by undersigned counsel for more than a decade, arose precisely because the government previously violated the rights of many of these very same victims. It is especially troubling that, despite the outcome of that litigation, the government has once again proceeded in a manner that disregards the victims' rights—suggesting that the hard-learned lessons of the past have not taken hold. This omission reinforces the perception that the victims are, at best, an afterthought to the current administration.

- **Concrete Fear of Clemency**: Survivors are acutely concerned that unsealing, coupled with the transfer and Ms. Maxwell's public platform, may be a prelude to clemency. The risk of a pardon or commutation exacerbates safety concerns in derogation of § 3771(a)(1), and threatens severe psychological harm, including triggering trauma responses. For

Honorable Paul A. Engelmayer
Case No.: 1:20-cr-00330 (PAE)
Page 3

some, the Maxwell conviction is the only meaningful measure of criminal accountability; its erosion would be devastating.[1]

Of significant concern, the same government that failed to provide notice to the victims before moving this Court to unseal the grand jury materials is now the government representing to this Court that it has provided appropriate notice to the victims or their counsel and has conducted a proper review and redaction of the materials it seeks to release. Several clients have contacted us expressing deep anxiety over whether the redactions were in fact adequate. Consequently, we requested yesterday that the government identify which of our clients were referenced to the grand jury. The government responded promptly and provided clarification. However, we have strong reason to believe that additional individuals—whom we also represent—were likely referenced in those materials but were not identified to us by the government.

It remains unclear whether notice was instead provided to prior counsel, whether their omission was a government oversight, whether the government does not consider them to be victims, or whether these individuals were, in fact, not mentioned to the grand jury. Regardless of the explanation, this ambiguity raises a serious issue that must be resolved before any materials are publicly released.

Against this backdrop, any disclosure of grand jury material—especially material that could expose or help identify victims in any way—directly affects the CVRA's fairness, privacy, conferral, and protection guarantees. To ensure those rights are protected, it is essential that the protocol outlined in the relief requested below is adopted by this Court.

## II.    Rule 6(e) and Eleventh Circuit Authority Require Heightened Caution and Narrow Tailoring.

Grand jury secrecy is a "long-established policy" safeguarded by Rule 6(e). *Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S. 211, 219–23 (1979). Even where disclosure may be considered, the movant must establish a particularized need that outweighs the countervailing interests in secrecy, and any disclosure should be no broader than necessary. *Id.* at 222–23. The Eleventh Circuit has further held that district courts lack inherent authority to order grand jury disclosure outside the exceptions in Rule 6(e). *Pitch v. United States*, 953 F.3d 1226, 1237–38 (11th Cir. 2020) (en banc); *see also McKeever v. Barr*, 920 F.3d 842, 845–46 (D.C. Cir. 2019).

Here, even if the Court were to find a Rule 6(e) path to limited disclosure, victims' CVRA rights and the traditional interests protected by grand jury secrecy converge in favor of extraordinary care: rigorous judicial screening, robust redactions, minimization of any risk of re-identification, and meaningful victim participation before anything is made public. Related privacy provisions reinforce

---

[1] Several victims have already died by suicide, drug overdose, or under tragic circumstances tied directly to the trauma caused by Epstein and Maxwell. The psychological toll of this abuse is ongoing. A pardon, issued in silence or secrecy, would reignite deep trauma, destabilize the already-fragile healing process of many survivors, and could result in further irreparable harm—including loss of life. It would suggest to victims everywhere that powerful predators are once again above the law.

Honorable Paul A. Engelmayer
Case No.: 1:20-cr-00330 (PAE)
Page 4

this approach. *See, e.g.,* 18 U.S.C. § 3509(d)(2) (authorizing protective orders to shield child-victims' identities and "other information concerning a child"); Fed. R. Crim. P. 49.1 (privacy redactions). Many Epstein/Maxwell victims were minors at the time of the abuse; even for those now adults, § 3771(a)(8,) and the Court's protective authority warrant safeguards that functionally align with § 3509(d) principles.

### III.    Requested Relief

In light of the foregoing, the victims respectfully request that the Court:

1) Require Conferral and Notice (CVRA §§ 3771(a)(5), (c)(1)): Direct the Government to confer with victims' counsel and provide reasonable notice and an opportunity to be heard before any ruling on unsealing or public release of grand jury materials.

2) Judicial In Camera Review: Conduct a comprehensive in camera review of the grand jury materials to determine whether the proponent has shown a Rule 6(e)-compliant basis for any disclosure and, if so, the narrowest scope of disclosure consistent with *Douglas Oil.*

3) Victims' Counsel Pre-Release Review (Under Protective Order): Permit designated victims' counsel to review the government's proposed redactions and any index of materials under a strict protective order, to allow victims' counsel to identify and prevent: (a) direct identifiers, (b) combinations of data points that could reasonably lead to re-identification or harassment of victims, and (c) to propose all additional redactions necessary.

4) Dispute Resolution before Unsealing or Release: If the government does not agree with additional proposed redactions from victims' counsel, provide victims' counsel the opportunity to be heard on any dispute before ruling on unsealing or public release.

5) Defer or Deny Without Prejudice if Safeguards Cannot Be Assured: If adequate safeguards cannot be implemented consistent with Rule 6(e), *Pitch,* and the CVRA, deny disclosure without prejudice.

### IV.    Conclusion

The survivors support transparency when it can be achieved without sacrificing their safety, privacy, or dignity. But transparency cannot come at the expense of the very people whom the justice system is sworn to protect—particularly amid contemporaneous events that magnify risk and trauma: the public platforming of Ms. Maxwell as a purportedly credible commentator despite her sex-trafficking conviction and perjury charges, her transfer to lower-security custody, a government request to unseal filed without conferral, and the looming specter of clemency.

These survivors have already endured profound violations of their rights and dignity, both during the years of Epstein's abuse and in the years following. To now compound their trauma by sidelining

Honorable Paul A. Engelmayer
Case No.: 1:20-cr-00330 (PAE)
Page 5

them from critical decisions—especially in this climate of heightened concern—is inconsistent with both the letter and the spirit of the CVRA.

The CVRA, Rule 6(e), and Eleventh Circuit authority all point toward narrow tailoring, maximal privacy protections, and meaningful victim participation before any grand jury material sees daylight. We respectfully ask the Court to adopt the safeguards outlined above.

Respectfully submitted,

Bradley Edwards
Brittany Henderson
EDWARDS HENDERSON
425 North Andrews Avenue, Suite 2
Fort Lauderdale, Florida 33301
Telephone: (954) 524-2820
Email: brad@cvlf.com
        brittany@cvlf.com

Paul G. Cassell
Utah Appellate Project
S.J. Quinney College of Law at the University of Utah
383 S. University St.
Salt Lake City, UT 84112-0300
Tel: 801-580-6462
Email: pgcassell.law@gmail.com
(institutional address for identification purpose only, not to imply institutional endorsement)

# Tab 4

August 5, 2025

Hon. Paul A. Engelmayer, U.S.D.J.
United States Courthouse
40 Foley Square
New York, NY 10007

Hon. Richard M. Berman, U.S.D.J.
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007-1312

      **Re:**    *United States of America vs. Maxwell, 1:20-cr-00330-PAE*

                *United States of America vs. Epstein, 1:19-cr-00490-RMB*

Dear Hon. Judge Engelmayer and Hon. Judge Berman:

      I have been taken aback from all the monumental and more recently disheartening things that have taken place between the time Epstein was arrested, the trial that occurred verse Maxwell with Hon. Judge Alison Nathan and now with the letter I write to you today.

      This is all very exhausting. As a victim of Jeffrey Epstein and Ghislaine Maxwell and the co-conspirators who were never indicted, you can try to imagine the bewilderment I feel from the the latest happenings. Also, the news that came out today in regards to potentially releasing audio of the interview between Maxwell and Todd Blanche and the various subpoenas.

I think the more concerning thing to me are the subpoena's.  Why not subpoena the United States Virgin Island's officials that were working with Epstein to allow him to further his sex-trafficking of girls across inter-continental and international lines?  *"Jeffrey Epstein used the money Black paid him to partially fund his operations in the Virgin Islands."* [https://www.finance.senate.gov/ranking-members-news/following-new-epstein-revelations-wyden-renews-demand-for-trump-administration-to-produce-epstein-files]

Why not subpoena the long-time attorney and accountant Epstein had working by his side? Once again, I just feel like the direction this administration is going is all wrong. AND, what was it that his accountant took from his 71st Street NY mansion the day after he "killed himself"? *https://www.dailymail.co.uk/news/article-7498903/Executor-Epsteins-estate-removed-bag-pedophiles-mansion-day-killed-himself.html*

In terms of the audio file that will most likely be redacted once again scrubbing the names of the wealthy and such off the recordings is once again NOT transparency.  Unfortunately, the public will never be satisfied and the victims will continue to live this nightmare. I am so confused. Why rewind and go back to the convicted sex trafficker for questioning after all these almost 4

August 5, 2025

years since she was convicted? What was there to ask? What are you conspiring? What is your next step? What is the end game? I ask the United States Government, that so rightfully wants to release the "sealed" documents not all the victims have seen themselves. At least give us notice when you decide to make these decisions, like moving her into a minimum-security prison camp.

I think the victims have a right to hear the audio without redactions.  I think the victims should be able to see what the FBI took from his, NYC mansion, FL mansion and USVI private island resort. I think we should be able to see ALL the files. I think any photos or videos of the victims should be given back to them. NOT REVIEWED BY CONGRESS, GROSS!!!!

Will justice ever be served? I question what that would look like to the DOJ, the FBI, because so far we have got nothing, not even an apology, not even the answers we so long for. We all want closure and for this "distraction" to stop!  This is some type of psychological games, by keeping the public ignorant. The very fact that something is secret means there is something to hide.

I support the United States Senate Committee on Finance lead by Senator Wyden, "Follow-the-Money" Investigation of Epstein Finances. I thank him and his team for their work, but I request more transparency. I think the victims lawyers should have access to all these findings.  We have a right to take legal action against these institutions and/or individuals involved in Epstein's and co-conspirators crimes.

It has been super unfortunate the way the US Government has handle this ordeal. We as victims want answers, but not only us, I think the general public is exhausted also by all of this. The general public cares more about their own personal wellbeing, right? Unfortunately, for us victims, this story will NEVER go away. There will always be an interest in the case of Epstein and Maxwell. Ghislaine's trial was based off of the fact that Jeffrey could never be tried and died by "killing himself". Why oh why will we have to live with this conspiracy for the rest of our lives? Because they keep laboring the truth, scrubbing the data. It is so hurtful and a detriment to the victims to continue disregarding our feeling, our traumas. Please I ask you to consider our well-being first. Please I ask that the true redactions that come first are only for the victims.

Thank you for your time.

# Tab 5

BINDER &
SCHWARTZ

Neil S. Binder
Binder & Schwartz LLP
675 Third Avenue, 26th Floor
New York, NY 10017

(T) 212.510.7031
(F) 212.510.7299
nbinder@binderschwartz.com

## CONFIDENTIAL – SUBMITTED UNDER SEAL

August 5, 2025

Hon. Paul A. Engelmayer
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

      Re:    *United States v. Maxwell*, No. 20-cr-330 (S.D.N.Y.)

Dear Judge Engelmayer:

      We represent                                          
On the late afternoon of Friday, August 1,                     through different counsel, were informed by the U.S. Department of Justice ("DOJ" or "the government") that they are referenced in some capacity in the sealed grand jury materials that are the subject of DOJ's recent motion for unsealing. *See* U.S. Mot. to Unseal Grand Jury Trs., July 18, 2025, Dkt. No. 785.                     requested from the government information about the context in which                     are named in these materials in order to inform our arguments regarding the continued sealing of the grand jury materials. The government has declined to provide us with any information. Absent such information, we cannot respond with specificity to any reference in the record concerning                     Specificity in this context may not be required, however, as Supreme Court precedent and caselaw in this Circuit make clear what this Court recognized in its July 22, 2025 Order—*i.e.*, that there is "long-established policy [of] maintain[ing] the secrecy of the grand jury proceedings in the federal courts." *United States v. Procter & Gamble Co.*, 356 U.S. 677, 681 (1958); *see also In re Grand Jury Investigation of Cuisinarts, Inc.*, 665 F.2d 24, 28 (2d Cir. 1981) ("This time-honored policy of secrecy has been the most essential, indeed indispensable, characteristic of grand jury proceedings."). Indeed, this requirement of secrecy has been codified in Federal Rule of Criminal Procedure 6(e). While the Second Circuit has recognized that there are certain "special circumstances" outside of Rule 6(e)[1] that may justify the unsealing of grand jury records, the burden of demonstrating those special circumstances is even greater than the already heavy burden of demonstrating the applicability of one of the exceptions enumerated in Rule 6(e). *See In re Petition of Craig*, 131 F.3d 99, 106 n.10 (2d Cir. 1997).

---

[1] The government does not point to any of the statutory exceptions enumerated in Rule 6(e) to justify the need for disclosure here, instead relying solely on "special circumstances" outside the bounds of those exceptions as articulated in *In re Petition of Craig*, 131 F.3d 99 (2d Cir. 1997). U.S. Mot. to Unseal Grand Jury Trs. at 3, July 18, 2025, Dkt. No. 785.



The government has plainly not met its burden to justify an unsealing in this case.[2]   And even if this Court determines that unsealing is warranted despite the high burden required to do so, ██████████ respectfully request that any reference to them or to any information which may be used to identify them be redacted from any public filing. ████████████████ innocent third parties at the time of any allegations contained in the grand jury materials, and any references to them should remain sealed. While we are not aware of the context in which ███████████ are mentioned in the grand jury materials (despite counsel having asked DOJ), the events detailed in the indictment of Ghislaine Maxwell occurred between 1994 and 1997, ██████████████████

Any reference to ██████████████ similarly should remain sealed, as they are also innocent third parties and publication of their names in connection with these materials would have the potential to contribute to additional needless and irreparable harm beyond what they have already suffered as a result of this matter. Where, as here, the effect of unsealing grand jury materials would have the potential to harm still-living third parties, the historical interest of the public cannot outweigh the privacy interests in keeping the materials under seal. *See In re Application of Newsday, Inc.*, 895 F.2d 74, 79–80 (2d Cir. 1990) (emphasizing in the context of a request to unseal a search warrant application that "privacy interests of innocent third parties as well as those of defendants . . . should weigh heavily in a court's balancing equation" (quoting *In re N.Y. Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987))); *Craig*, 131 F.3d at 107 (directing courts assessing requests to unseal grand jury materials to pay particular attention to the request's timing, given that the passage of time may weigh in favor of disclosure of grand jury materials because it inevitably "brings about the death" of all parties involved).

## I.     The grand jury materials in this case should remain sealed

There is a long history of maintaining the secrecy of grand jury proceedings for a reason. The purposes of the secrecy include ensuring the freedom of grand juries in their deliberations and "to protect [the] innocent accused . . . ." *Procter & Gamble*, 356 U.S. at 681 n.6.  Beyond protecting innocent parties who are the subject of grand jury investigations, this secrecy also serves to protect witnesses and other innocent nonparties who may be mentioned in grand jury proceedings from any unwarranted association with the crimes alleged therein.  Because of the policy and due process rationale behind grand jury secrecy, the permissible bases upon which grand jury materials may be shared are limited to certain exceptions in Rule 6(e)(3).  The Second Circuit has recognized limited additional "special circumstances" in which release of grand jury records is appropriate, including historical interest by the public. *Craig*, 131 F.3d at 102.  But in

---

[2] The Southern District of Florida recently declined to unseal the grand jury materials pertaining to the government's investigation into Jeffrey Epstein, which we understand concerns the same or substantially similar facts. Due to a Circuit split, the Southern District of Florida evaluated only the exceptions to grand jury secrecy enumerated in Rule 6(e).  Order Den. Pet. to Unseal Grand Jury Trs., *In re Grand Jury 5-02 & 07-103*, 9:25-mc-80920 (S.D. Fla. July 23, 2025).



considering whether a special circumstance, such as historical interest by the public, justifies the unsealing of grand jury materials, courts must consider the "countervailing interests in privacy and secrecy." *In re Petition of Nat'l Sec. Archive*, 104 F. Supp. 3d 625, 628 (S.D.N.Y. 2015). The timing of the request in comparison to when the grand jury proceedings took place is "one of the most crucial elements" for courts to consider because it relates to the "continued existence and vulnerability of" parties involved in the proceedings, another factor that courts should consider when evaluating the request. *Craig*, 131 F.3d at 107.[3]

    **a. The privacy interests** ███████████████ **outweigh any historical interest justifying disclosure**

      The government cannot satisfy the high burden of showing that it has met the "special circumstances" required for unsealing of the grand jury materials in this case with respect ███ ████████ The grand jury proceedings at issue here took place only within the last few years. Many, if not most, of the relevant witnesses and parties mentioned in the proceedings are still living— ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████ remain vulnerable to the potential negative impact of having any alleged association with the matters at issue in this case made public. The degree of injury that ████████████ would face from disclosure is difficult to overstate. Given the media frenzy that has accompanied all activity in this case, there is no doubt that the press will scrutinize every unsealed filing. Publicizing any information in the grand jury materials related to ████████████ will inflict irreparable harm on them through the very fact of their association with this case, ████████████████████████████████

      There is no question that the interests in the privacy and secrecy of innocent third parties ███████████████████████████████ and who are still alive today, significantly outweigh any historical interest that the public has in reviewing these materials. ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████ For these reasons, the grand jury materials related to ██████████████ should remain sealed.

---

[3] In *Craig*, the Second Circuit lists nine "non-exhaustive" factors that a trial court should consider when deciding whether to unseal grand jury materials because of "special circumstances." *Id.* at 106.

███████████████████████████████████████████████████████████



**b. The privacy interests of** ███████████ **outweigh any historical interest justifying disclosure**

The same legal analysis applies to the privacy interests of ███████████ While the government has not provided any information about the context in which ███████ are mentioned in the grand jury materials, the potential harm to the privacy interests of these third parties from unsealing of the transcripts is significant.

This Court and the government are aware of the media appetite for all information related to this case, regardless of whether such information is true or false ████████████ ████████████████████████████████████████████ ████████████████████████ The unsealing of ██████ ████████ even if innocuous, will only serve to allow for ████████ ████████ at a time when the political attention on this case is perhaps at its most significant. *Cf. United States v. Amodeo* ("*Amodeo II*"), 71 F.3d 1044, 1051 (2d Cir. 1995) ("Courts have long declined to allow public access simply to cater to a morbid craving for that which is sensational and impure." (internal quotation marks omitted)). The Court should order that the transcripts remain under seal.

**II.    If the Court determines that unsealing is warranted despite the weight of precedent, redactions should be appropriately tailored to protect** ████████ **privacy interests**

In the event this Court exercises its discretionary power to unseal these grand jury materials, ███████ respectfully request that its order doing so include detailed guidance to the government on the appropriate redactions that should be applied prior to any unsealing and that ███████ be provided with copies of the materials in which they appear in advance so that they may provide input in order to protect their privacy interests. The government's statement that it will "make appropriate redactions of victim-related information and other personal identifying information prior to releasing the transcripts" does not provide clarity as to what precisely the government intends to redact. Any redactions should include not only ███████ names, but also any other personal identifying information and any surrounding context by which the public may be able to deduce the identities of the individuals being discussed.[5]

********

<hr>

████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

[5] Failure to redact the surrounding context could allow the substance of redacted testimony to be readily deduced. *See* Josh Levin, Aaron Mak & Jonathan L. Fischer, *We Cracked the Redactions in the Ghislaine Maxwell Deposition*, Slate (Oct. 22, 2020, 12:31 PM), https://slate.com/news-and-politics/2020/10/ghislaine-maxwell-deposition-redactions-epstein-how-to-crack.html.

4



In a case such as this one, where the press and public have been relentless in their coverage of every detail and lacking in their regard of factual accuracy, even the stray mention of a third-party's name has the potential to cause extreme reputational harm that could never be remedied. The government has not—and cannot—meet its high burden to show why unsealing grand jury materials that mention innocent third parties such as ███████ who were not the subject of any charges in relation to this case, is merited. And it certainly cannot meet such a burden with respect to any materials that ████████████████. Accordingly, the Court should order that the transcripts remain under seal, or, if the Court orders them unsealed, ensure they are released only with appropriate redactions that go beyond merely proper names but also include any surrounding context that may be used to identify the nonparties, as the privacy interests of a nonparty outweigh the public's historical interest in the disclosure.

Respectfully submitted,

Neil S. Binder

5