UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-v-

GHISLAINE MAXWELL,

Defendant.

20 Cr. 330 (PAE)

ORDER

PAUL A. ENGELMAYER, District Judge:

This order publicly dockets the three letters[1] submitted to the Court yesterday by the

Victim and Witness Coordinator of the United States Attorney's Office.  These set out the views

of victims and other individuals regarding the Government's pending motion to unseal the grand

jury and discovery materials in this case pursuant to the Epstein Files Transparency Act ("Act").

*See* Dkt. 811.  The letters, as filed, are in redacted form, to protect privacy interests.  The

Government has approved the redactions as adequate to protect those interests.  This order also

attaches the Government's transmittal letter to the Court containing the letters.

SO ORDERED.

_____
PAUL A. ENGELMAYER
United States District Judge

Dated: December 5, 2025
       New York, New York

---

[1] A fourth letter from a victim had earlier been filed directly on the docket.  Dkt. 816.



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

December 4, 2025

**BY EMAIL**

Honorable Paul A. Engelmayer
United States District Court
Southern District of New York
Chambers 2201
40 Foley Square
New York, NY 10007
EngelmayerNYSDChambers@nysd.uscourts.gov

Re:    *United States v. Ghislaine Maxwell,*
       **20 Cr. 330 (PAE)**

Dear Judge Engelmayer:

The Government respectfully submits this letter and its attachments pursuant to the Court's order, dated November 24, 2025. (Dkt. 811).  The Government has received four submissions. The following is a list of those submissions and an indication of whether they may be publicly filed with or without redactions.

1.  Letter dated November 25, 2025, and signed by Brittany Henderson, Esq.: The submission has already been filed on the public docket in *United States v. Epstein*, No. 19 Cr. 490 (RMB). (Dkt. 87 at 2-8).  A copy of the submission is attached to this letter.

2.  Letter dated December 2, 2025, and signed by Sigrid McCawley, Esq.: The submission has already been filed on the public docket.  (Dkt. 816).

3.  Letter dated December 3, 2025, and signed by Avrom Robin, Esq.: Counsel informed the Government that they seek specific redactions to this submission.  Attached are both an unredacted version of the letter for filing under seal and a redacted version of the letter for public filing.

4.  Letter dated December 3, 2025, and signed by Neil S. Binder, Esq.: Counsel provided two versions of the letter—one for filing under seal and the other with redactions for public filing.  Both versions are attached to this letter.

Hon. Paul A. Engelmayer, U.S.D.J.
December 4, 2025
Page 2 of 2

Respectfully submitted,

JAY CLAYTON
United States Attorney for the
Southern District of New York


by:    /s/ Jay Clayton
       Jay Clayton



EDWARDS HENDERSON
THE
CRIME VICTIM
LAW FIRM

**Florida Office**                    Telephone (954)524-2820                    **New York Office**

**425 North Andrews Avenue**                Fax (954)524-2822                    *By Appointment Only*
**Suite 2**
**Fort Lauderdale, FL  33301**                info@cvlf.com

November 25, 2025

**VIA E-MAIL**
SDNY Victim and Witness Coordinator
USANYS.EpsteinMaxwellVictims@usdoj.gov

To Be Delivered To:
EngelmayerNYSDChambers@nysd.uscourts.gov

      **Re:**    *United States of America v. Ghislaine Maxwell*, **1:20-cr-003330(PAE)**

Honorable Judge Engelmayer,

The victims of Jeffrey Epstein and Ghislaine Maxwell write with the utmost respect for the judicial system as the only governing body representative of the United States of America recognizing their fundamental rights to protection and privacy. As mindfully noted in this Court's November 24, 2025 Order, "[a]s with its earlier motion to unseal, the Government's motion is silent as to the rights of victims of Maxwell and/or Jeffrey Epstein to be heard, pursuant to the Crime Victims' Rights Act, 18 U.S.C. § 3771." Likewise, despite alleged best intentions, the House Oversight Committee has recently uploaded dozens of documents to the public domain, received from both the Department of Justice and the Estate of Jeffrey Epstein, that have exposed the identities of victims and consequently caused significant emotional distress for our clients. To be clear, undersigned counsel has personally dedicated a tremendous amount of time, pro bono, to assisting Congress in various facets as it relates to its objectives of obtaining records to gain insight into the crimes of Jeffrey Epstein and his organization; however, transparency **CANNOT** come at the expense of the privacy, safety, and protection of sexual abuse and sex trafficking victims, especially these survivors who have already suffered repeatedly, both at the hands of their abusers as well as by the actions of the media and inactions on the Government.

On November 12, 2025, the House Oversight Committee released 20,000 documents to into the public domain, causing wide-spread panic amongst survivors of Jeffrey Epstein all over the world.[1] Among nearly a dozen others, undersigned has received the following communications:

---

[1] Committee on Oversight and Government Reform, Oversight Committee Releases Additional Epstein Estate Documents - United States House Committee on Oversight and Government Reform (12 Nov. 2025).

- **Victim 1:** "Can you speak today. I see that my name was not redacted from anything in the first release. How do they know who the survivors are? Surely it should include all people under the umbrella of for instance what the mental health fund includes. Those who have moved through matters with the estate and with the banks. At a minimum. . . . Can I apply to the [de]partment of justice for anything? Can you help with redaction of my name? . . . While I believe all survivors have a human right to choose their path of recovery for themselves in a way that enables them to *survive*, I as strongly believe that despite that personal and individual path chosen, the protection they are granted should be the same across the board. . . This type of negligence by the government to a survivor is just unable to comprehend. It just is impossible. It can't be. . . And what about physical protection for those outside US. It's beyond. If we appear in a searchable pdf alongside anything to do with Israel it is very unfortunately and sadly the case that we are in physical danger. I don't understand how this is possible."

- **Victim 2:** "I am sorry to bother you but given the current situation that might expose more victims names to the public. I have been unable to mentally and emotionally function or sleep…I am trying to see if we have a power to override any decisions for our names not to be exposed. Would you be available for a brief chat sometime this week? I would greatly appreciate it."

- **Victim 3:** "I am beside myself with worry about the current news and the redactions situation as the first random file I happened to click on had a handwritten page of PB massage and it had [**Victim 4**]'s name and my name and so many others, the whole page was available for everyone to see with our unredacted names. I thought the government had promised to redact our names and identifying material. I don't understand how this is happening again. . . . Have you heard back from them at all? You kindly sent me the letters you had sent to them but I don't know what is happening any more and hope you can update me so I know what to expect and when as the situation is very scary for me."

In addition to the direct quotes above, we have fielded calls from at least six victims who have been contacted by the press after their names were released by the House Oversight Committee. Several have been approached personally by reporters on the street, and one was confronted in front of her nine-year old son by a reporter asking for her to comment about being an Epstein victim. The situation is already dire, we have diligently and repeatedly brought this issue to Congress, and the source of the problem, we are told, lies with the Department of Justice.

There remain dozens of women whose names were shared improperly in the latest House Oversight document upload who are not yet aware that their privacy has been violated and that they have been put at risk by the Department of Justice. For example, and proceeding with intentional caution given the public attention on this matter, there is one document in particular that was provided to the House Oversight Committee by the Department of Justice wherein the names of at least 28 victims were left unredacted, including individuals who were minor children at the time of the abuse and women who have been afforded protection in other courtrooms in this

*United States of America v. Ghislaine Maxwell*, 1:20-cr-003330 (PAE)
November 25, 2025
Page 3

jurisdiction as a result of grave public safety concerns.[2] While we will detail the various excuses that the Court will no doubt be provided, this is **absolutely unacceptable** and a problem that **must** be rectified prior to the public release of any additional documents.

As a result of these numerous flagrant violations, undersigned has been in near constant communication with the House Oversight Committee Majority, the House Oversight Committee Minority, the House Judiciary Committee, the Estate of Jeffrey Epstein, and various members of the United States House of Representatives and the United States Senate since Congress began issuing document subpoenas and continuing through the recent passage of the Epstein Files Transparency Act on November 19, 2025. Notwithstanding, and despite numerous pleas for assistance, there is one singular entity that the victims cannot seem to find a way to engage and which has been the primary violator of the victims' identity protection thus far—the Department of Justice.

By way of background for the Court, the process that led to these unmistakable violations of the victims' rights, and to the broken promises of protection made to the victims by Congress, begins with the Estate of Jeffrey Epstein and the Department of Justice and ends with the House Oversight Committee. Our understanding is that the Estate of Jeffrey Epstein provides a redacted version of all documents to the House Oversight Committee and that the Department of Justice does the same. The House Oversight Committee then relies on the redactions of the former to be accurate and posts those "redacted" documents to the public domain. The few errors in redactions in the Estate documents seem to have been genuine mistakes that were made by redaction software. Given that even mistakes can have grave consequences in the lives of the victims, we are engaging the Estate on this issue and hope to reach a victim centered solution. Of much greater concern is the redaction process, or complete lack thereof, being applied by the Department of Justice. With no direct understanding of the process, and only comparing unredacted documents in our possession with the redacted versions provided by the DOJ to Congress, it appears that the DOJ has a very short list of victims whose identities were redacted in certain documents in the *United States v. Maxwell* case, whose names were likewise redacted in its production, leaving all others completely unredacted. Given the number of times we have drawn Congress's attention to this issue, and the fact that victims' names continue to be produced by DOJ in unredacted form, many of the victims believe this is being done intentionally. Regardless of how we arrived here, prior to the release by DOJ of any grand jury materials, or any other Epstein-related files for that matter, this is an issue that must be addressed directly with the Department of Justice; and this Honorable Court has provided our only plausible vehicle for doing so.

At this juncture, as made clear by DOJ's improper releases to Oversight thus far, the problem is either: (1) The Department of Justice **DOES NOT** know the identities of all the victims of Jeffrey Epstein and thus cannot apply proper redactions to files; or (2) the Department of Justice is intentionally failing to protect victims from public exposure. Optimistically assuming the former, it is not possible for the Department of Justice to properly redact the names of victims without our assistance or the assistance of individuals who worked personally on the criminal or civil Epstein-related cases. Given our two decades of investigation into Jeffrey Epstein and Ghislaine Maxwell,

---

[2] The undersigned will provide a copy of this document to the Court in camera or under seal upon request.

*United States of America v. Ghislaine Maxwell*, 1:20-cr-003330 (PAE)
November 25, 2025
Page 4

DOJ simply does not, and cannot, have the same level of knowledge that we do with respect to the identity of the victims. The reasoning behind this is trifold: (1) the 2006 Southern District of Florida investigation into Jeffrey Epstein focused only on his minor child victims in Florida; (2) Jeffrey Epstein died during the course of the 2018 Southern District of New York investigation which focused only on his minor child victims in Florida and New York; and (3) the 2019 Southern District of New York investigation into Ghislaine Maxwell focused solely on the subset of victims which were relevant to her involvement in the abuse.

In each of those investigations, through legal counsel and even unbeknownst to undersigned for many years, Jeffrey Epstein was able to use lawyers that he paid for to silence certain victims who could have served as critical witnesses. This was done without their knowledge and despite their desire to be freed from his chains of control and abuse. For example, the Department of Justice included three young women as co-conspirators in Jeffrey Epstein's 2007 Non-Prosecution Agreement without their consent or knowledge, without ever once interviewing or speaking with them directly, and without ever learning during the course of that initial investigation that each of those three women had themselves been subjected to horrific sexual abuse by Jeffrey Epstien. In fact, these women cooperated with the Department of Justice during the New York investigations, and unlike Ghislaine Maxwell, these women were not prosecuted—because once their stories were heard, it was clear that they, too, were victims.

More pertinent to the breadth of the problem here, none of the investigations conducted by the Department of Justice ever focused on the young American adult women who were victimized through fraud, force, and coercion or the international trafficking operation that Jeffrey Epstein was running involving the exploitation and abuse of young, but not minor, women including those from nearly every Eastern European Country. To be clear, there are hundreds of women who were internationally trafficked by Jeffrey Epstein. We represent women from Ukraine, Russia, Lithuania, Slovakia, Bulgaria, Poland, Belarus, Sweden, England, and France; to name only a few. Most of these women have never spoken with the Department of Justice nor was the Department of Justice ever interested in speaking with them during any active investigation given that Epstein was never prosecuted or investigated for the international crimes that he committed, likely because he died in prison before the Government learned of that element of his trafficking scheme. Nonetheless, with respect to these women, Epstein engaged in extensive immigration fraud executed to illegally, internationally transport aspiring young models into this country where he would hold their visas in companies that he created and their passports in his possession so that they could not escape and so that he was able to control and essentially enslave them.

We appreciate the Department of Justice's July 2025 representation that it has, "confirmed that Epstein harmed over one thousand victims," and that, "[e]ach has suffered unique trauma."[3] On the basis of that representation, we ask the Court to confirm with the Department of Justice that prior to releasing any files to the House Oversight Committee, it undertook the onerous and necessary task of redacting all one thousand plus victim names that it had in its possession when that statement was released. On that pointed inquiry, the Court will learn that DOJ's redaction

---

[3] *See* U.S. Department of Justice Federal Bureau of Investigation July 2025 Memo, https://www.justice.gov/opa/media/1407001/dl?inline.

process and its process efforts are so irreconcilable with the number of victims it has publicly acknowledged that, when confronted with the discrepancy, its response will land somewhere between incoherent mumbling, non sequitur, and outright misrepresentation.

We ask the Court to order that the Department of Justice re-affirm its commitment to make sure all victim identifying information is redacted, subject to sanction for any failure, prior to allowing for the release of a single page of grand jury materials containing victim information and prior to releasing any additional documents containing victim information to the House Oversight Committee or any other entity that could lead to public disclosure. We ask the Court to order that the Department of Justice meet in confidence with the undersigned so that a list of victims in our possession, including over 300 women with whom we have or have had contact with, be transmitted in a precisely secure manner, to ensure that those women are protected from future harm to the extent that they are not already included within the thousand women identified by the Department of Justice. Our request is simply that the identity of all victims be protected, and our promise is to help facilitate that protection in whatever way is possible or necessary. These women are not political pawns. They are mothers, wives, and daughters. These are women who were abused by Jeffrey Epstein, and in some instances by others, and who have already had their rights violated in the past by the Government. They are human beings who have the right to be treated with dignity and respect, and to feel safe and protected by our country, which has failed them time and time again.

### Intention of the Epstein Files Transparency Act

It is quite frankly mindboggling to be back in front of the Court on the issue of the Grand Jury Materials as if these materials are in some way the lynch pin to the investigation or representative of what Congress expects the Department of Justice to produce pursuant to the Epstein Files Transparency Act. As explained by Judge Richard M. Berman, "[t]he information contained in the Epstein grand jury transcripts pales in comparison to the Epstein investigation information and materials in the hands of the Department of Justice." *See* Case No. 1:19-cr-00490 at DE 77. It is obvious to those knowledgeable of the legal system that DOJ is using this motion to attempt to trick the American people into believing that it intends to provide full transparency. The only thing thus far transparent about DOJ's actions is its intent to deceive the American people—a fact that has been called out by two separate courts. As this Court astutely observed, "[a] member of the public, appreciating that the Maxwell grand jury materials do not contribute anything to public knowledge, might conclude that the Government's motion for their unsealing was aimed not at "transparency" but at diversion—aimed not at full disclosure but at the illusion of such. *See* Case No. 1:20-cr-00330-PAE [DE 809] at 20.

The "Epstein Files" consist of the totality of the investigations completed by: (1) the Southern District of Florida from 2006-2008; (2) the Southern District of New York into Jeffrey Epstein from 2018-2019; and (3) into Ghislaine Maxwell from 2019-2021. Highlighting the magnitude of the problem and the utter lack of transparency to date, the Department of Justice has never released even the most basic of investigative materials pertaining to the very first investigation of Jeffrey Epestin, including the 53-page indictment or the 82-page prosecution memorandum that were prepared by Assistant United States Attorney Marie Villafana in 2007 in the Southern District of

Florida. Notwithstanding, within these files as a whole, stemming across three investigations in two jurisdictions, there are dozens of FBI 302's generated in each of the three investigations, hundreds of thousands of pages of documents seized from electronic devices located within Epstein's (and presumably Maxwell's) various homes, all other materials discovered during the various raids, information on nearly 100 different companies created by Jeffrey Epstein and his team of professionals, and a plethora of financial records. As confirmed in the DOJ's July 2025 Press Release, after conducting "an exhaustive review of investigative holdings relating to Jeffrey Epstein," including "digital searches of its databases, hard drives, and network drives as well as physical searches of squad areas, locked cabinets, desks, closets, and other areas where responsive materials may have been stored . . . [t]hese searches uncovered a significant amount of material, including more than 300 gigabytes of data and physical evidence." DOJ then indicated that none of the information would be released because included within the information was child pornography and sexual abuse materials. With the passage of the Epstein Files Transparency Act, we now expect most of this information to be redacted and released; with of course, the exception of all child pornography, sexual abuse material, pornographic material, and victim identifying materials, all of which are explicitly excluded from disclosure by the Act. *See* H.R. 4405(2)(c)(1)(A)-(B) and (D).

While the purpose of this response is simply to seek the Court's assistance in ensuring that the victims' names and identifying information are protected from public disclosure in accordance with the previous direction of this Honorable Court, the Honorable Judge Berman's Court, the Honorable Judge Marra's Court, the United States' Crime Victims' Rights Act, and the United States Congress through the Epstein Files Transparency Act, undersigned would be remiss not to remind the Court that this Country should expect far more from the Department of Justice than this incredibly small, and largely irrelevant, subset of grand jury materials that seem to serve as nothing more than DOJ's perpetual distraction from providing the American people with full transparency as it relates to Jeffrey Epstein, while protecting the victims.

## Codified Victim Protection

In the United States of America, all crime victims have rights pursuant to the Crime Victims' Rights Act, including but not limited to, "[t]he right to be treated with fairness and with respect for the victim's dignity and privacy." 18 USC § 3771(8). Furthermore, pursuant to H.R. 4405, the Epstein Files Transparency Act (2)(c) Permitted Withholdings, "(1) The Attorney general may withhold or redact the segregable portions of records that—(A) contain personally identifiable information of victims or victims' personal and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." Based on the language of the law, there is no justifiable reason for any document to ever be released by the Department of Justice without first redacting the name or personally identifiable information of all victims.

More than a handful of our courageous survivors stood on Capitol Hill alongside lawmakers in fervent support of this legislation, steadfast in their commitment to transparency. But what the world has not yet seen, and will hopefully never see, are the dozens upon dozens of survivors who chose to support them from the shadows, overwhelmed by constant fear of exposure, reprisal, and

*United States of America v. Ghislaine Maxwell*, 1:20-cr-003330 (PAE)
November 25, 2025
Page 7

re-victimization. That is what matters here—choice. These women were deprived of choice when their childhoods were stolen from them by heinous sexual abuse, when their early adulthood dreams of dancing or advancing their education or careers were shattered by rape, and for the women abroad, when their life-long desire to immigrate to safety in the United States as models became permanently tethered to sexual exploitation, the acceptance of which became their lifeline. These women now beg this Court and beg the United States Department of Justice to allow them to choose to remain protected. They ask that their names, and the names of all survivors, be redacted in any files that are provided to Congress or to the public by the Department of Justice. Those victims who wish to expose themselves can make that personal choice after the files have been released.

We hereby request that should this Court, or any other Court choose to unseal grand jury materials, the unsealing be done with redactions to protect all victims of Jeffrey Epstein, in consultation with undersigned counsel to ensure that the Department of Justice is in possession of the identities of all verified victims. Further, to the extent that this request is within the jurisdiction of this Court, undersigned requests that the Department of Justice be ordered to: (1) consult with undersigned to obtain a confidential list of over 300 victims of Jeffrey Epstein; (2) that the list containing the identities of victims be forever protected from public disclosure in compliance with the Crime Victims' Rights Act as codified by 18 USC § 3771; and (3) that this Court retain jurisdiction to impose sanctions on the Department of Justice if after this Court's Order, DOJ continues to disseminate the identities of victims unredacted.

Very truly yours,

EDWARDS HENDERSON, PLLC

Bradley Edwards
Brittany Henderson

LAW OFFICES OF

# LONDON & ROBIN

IRA D. LONDON (2005-2019)
AVROM ROBIN
———

99 PARK AVENUE
SUITE 2600
NEW YORK, NEW YORK 10016
TEL: 212-683-8000
FAX: 212-683-9422
EMAIL: a.robin@londonrobin.com

VIA EMAIL:

USANYS.EpsteinMaxwellVictims@usdoj.gov

December 3, 2025

Honorable Paul A. Engelmayer
United States District Judge
United States Courthouse
40 Foley Square
New York, NY 10007

Re:   United States v. Ghislaine Maxwell
      20 Cr. 330 (PAE)

Dear Judge Engelmayer:

I write on behalf of my client John Doe, in response to the Court's Order dated November 24, 2025, directing victims and presumably witnesses to submit letters setting out victims' perspectives on the Government's motion to release grand jury transcripts, exhibits and other documents pursuant to H.R. 4405, the Epstein Files Transparency Act ('the Act"), by December 3, 2025.

BACKGROUND

███████████ Mr. Doe was subpoenaed as a potential witness by the defense before the trial, interviewed by investigators for the defense, and also interviewed by U.S. law enforcement agents before the trial. He traveled to New York from his home in California when the government planned on calling him as a witness at the trial, in December of 2021.

Ultimately, neither the government nor the defense called him as a witness, and he returned home.

1

## THE GOVERNMENT'S MOTION

The United States' Motion for Expedited Ruling to Unseal Grand Jury Transcripts and Exhibits and Modify Protective Order ("Motion"), dated November 24, 2025, states that "The Department of Justice interprets the Act as requiring it to publish the grand jury and discovery materials in this case".

However, the words "grand jury" and "discovery" do not specifically appear anywhere in the Act. This is why the Government's motion must strain to "interpret" the Act as including these materials. The amount of legislative attention devoted to the Epstein Files Transparency Act and the simple fact that the Act does not specifically mention grand jury and discovery materials, although it does list specifically over 20 other types of materials and documents, raises an important question: if Congress intended grand jury and discovery materials to be disclosed pursuant to the Act, why didn't they include those terms in the language of the Act?

Under accepted rules of plain meaning and statutory interpretation, the Government's motion fails to make a convincing case for release of grand jury transcripts, exhibits, and discovery materials. [1]

## REQUEST TO REDACT JOHN DOE'S REAL NAME
## AND OTHER IDENTIFYING DATA
## FROM GOVERNMENT'S PROPOSED DISCLOSURES

As the attorney for a witness, I was given no documents of any kind relating to my client, by either the U.S. Attorney's Office or the defense. However, based on my experience in federal criminal cases, I assume there are records within the discovery and witness files and other files of law enforcement interviews with my client, and U.S. Attorney's Office records regarding my client, including but not limited to some or all of these types of documents: notes, phone calls, phone records, bank statements, credit reports, and other documents with identifying data. There may also be information and documents relating to my client in witness material the defense may have furnished to the government.

H.R. 4405, The Epstein Files Transparency Act ('the Act"), requires the Attorney General to make publicly available all records relating to Jeffrey Epstein and Ghislaine Maxwell. The Act also provides, in Section 2, the following Permitted Withholdings:

> (c) PERMITTED WITHHOLDINGS.—
> (1) The Attorney general may withhold or redact the segregable
> portions of records that—
> (A) contain personally identifiable information of victims
> or victims' personal and medical files and similar
> files the disclosure of which would constitute a clearly
> unwarranted invasion of personal privacy;

---

[1] Undersigned counsel will brief "plain meaning" and "statutory interpretation" more fully if the Court requests.

2

In the event the Court grants the Government's motion to unseal grand jury transcripts, exhibits, and discovery materials, and other files, I submit that all personally identifiable information regarding my client is within the ambit of the Act's permitted withholdings and that this information must be redacted pursuant to the Act, because that disclosure without redaction would constitute a clearly unwarranted invasion of my client's personal privacy. ██████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████

██

Respectfully submitted,

Avrom Robin, Esq.

Copy via email:  U.S. Attorney's Office, S.D.N.Y.

3



Neil S. Binder
Binder & Schwartz LLP                     (T) 212.510.7031
675 Third Avenue, 26th Floor              (F) 212.510.7299
New York, NY 10017                        nbinder@binderschwartz.com

**CONFIDENTIAL – SUBMITTED UNDER SEAL**

December 3, 2025

Hon. Paul A. Engelmayer
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

      Re:    *United States v. Maxwell*, No. 20-cr-330 (S.D.N.Y.)

Dear Judge Engelmayer:

      We represent ███████████████████████████████████████ ███████. We write in accordance with this Court's Order dated November 24, 2025, which directed that any responses to the Government's renewed motion for the unsealing of grand jury materials in the above-referenced case be submitted to the SDNY Victim and Witness Coordinator and to this Court. In addition, we write with respect to a letter from the Government to this Court dated November 26, 2025, in which the Government informed the Court that it was seeking a "modification of all applicable protective orders (*i.e.*, not just docket 36) in this case" so that the Government could make publicly available various categories of documents, including "[m]aterials from related civil litigations." *See* Dkt. 813. To the extent that this Court agrees to modify any protective order applicable to any material in *Giuffre vs. Maxwell*, No. 15-cv-7433, we respectfully ask that the Court order the Government to maintain the same redactions as were ordered by the Honorable Loretta A. Preska in that case. *See, e.g., Giuffre v. Maxwell*, No. 15-cv-7433, 2023 WL 8715697 (S.D.N.Y. Dec. 18, 2023); *Giuffre v. Maxwell*, 146 F.4th 165 (2d Cir. 2025) (affirming in part and finding "neither legal error nor abuse of discretion" in Judge Preska's decision to maintain certain portions of documents and deposition testimony under seal).

    I.    Grand Jury Materials

      As set out in our letter dated August 5, 2025, submitted in response to the Government's initial motion to unseal (the "August Letter"), and as the Court ruled in its Opinion & Order dated August 11, 2025, unsealing of the grand jury materials in *United States v. Maxwell* is not authorized by either Federal Rule of Criminal Procedure 6(e) or the special circumstances doctrine applicable in this Circuit. *See United States v. Maxwell,* No. 20 Cr. 330 (PAE), 2025 WL 2301281, at *8-9, 16 (S.D.N.Y. Aug. 11, 2025) (the "Opinion"). The Epstein Files Transparency Act, H.R. 4405 (the "Act"), directs the disclosure of materials in the possession of the U.S. Department of Justice ("DOJ"), including the Federal Bureau of Investigation ("FBI") and United States Attorneys' Offices, but it nowhere mentions grand jury materials. And though the Government quotes the Supreme Court's admonition that an exercise by Congress of the



"power to modify the rule of secrecy" will not be inferred unless Congress has "affirmatively express[ed] its intent to do so," *see* Dkt. 810 (quoting *Illinois v. Abbott & Assocs., Inc.*, 460 U.S. 557, 572-73 (1983)), it draws the wrong conclusion. Congress did not affirmatively express any intent to abrogate the rule governing grand jury secrecy, and thus no inference of such intent should be made here.

Further, the fact that there is heightened public interest in the grand jury materials in this case—as evidenced by the passage of the Act—does not change the Court's reasoning in the Opinion, which evaluated (and dismissed) the Government's argument that intense public interest constitutes a special circumstance. For the reasons stated in our August Letter, the Court should deny the Government's renewed request to unseal the grand jury materials.

If this Court determines that unsealing is warranted, despite the high burden required to overcome the secrecy of grand jury materials, ▉ respectfully request that any reference to ▉ , or to any information which may be used to identify them, remain under seal, as ▉ innocent third parties at the time of any allegations contained in the grand jury materials. *See* August Letter.

While we remain unaware of the context in which ▉ are mentioned in the grand jury materials (DOJ has declined to provide such context), the events detailed in the indictment of Ghislaine Maxwell occurred between 1994 and 1997, ▉ Where, as here, the unsealing of grand jury materials has the potential to harm still-living third parties— ▉ the historical interest of the public cannot outweigh the privacy interests in keeping the materials under seal. *See, e.g., In re Application of Newsday, Inc.*, 895 F.2d 74, 79–80 (2d Cir. 1990) (emphasizing in the context of a request to unseal a search warrant application that "privacy interests of innocent third parties as well as those of defendants that may be harmed by disclosure . . . should weigh heavily in a court's balancing equation" (quoting *In re N.Y. Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987)); ▉ *Cf. United States v. Amodeo*, 71 F.3d 1044, 1051 (2d Cir. 1995) ("Courts have long declined to allow public access simply to cater to a morbid craving for that which is sensational and impure." (citation and internal quotation marks omitted)).

The degree of injury that ▉ would face from disclosure is difficult to overstate. Given the media frenzy that has accompanied all activity in this case, there is no





doubt that the press will scrutinize, and potentially misinterpret, every unsealed filing. For that reason, if the Court decides to exercise its discretionary power to unseal the grand jury materials, we respectfully request that its order doing so include detailed guidance to the Government on the appropriate redactions that should be applied prior to any such unsealing, and we further request that ███████ be provided with copies of the materials ████████████████ ███ in advance so that they may provide input on the proposed redactions in order to ensure that the privacy interests ██████████████ are appropriately protected. Any redactions should include not only ████████████ names, but also any other personal identifying information and any surrounding context by which the public may be able to deduce the identities of the individuals being discussed.[2]

## II.    Materials from Related Civil Litigations

On November 26, 2025, the Government advised this Court that, in addition to renewing its motion to unseal the grand jury materials in *U.S. v. Maxwell*, it was also seeking a modification of "all applicable protective orders" in this case so that it could make publicly available a broad set of materials in its files, including any "[m]aterials from related civil litigations (*e.g.*, recordings from depositions, transcripts of depositions)." Although the Government did not specify what it considered to be "related civil litigations," we note that sealed materials in *Giuffre v. Maxwell*, a civil defamation case against Ms. Maxwell in this District, were the subject of lengthy proceedings before the Honorable Loretta A. Preska. After extensive briefing and multiple conferences, Judge Preska unsealed a large portion of the record in that case while also making detailed findings with respect to certain portions of the record that should remain sealed—*see, e.g., Maxwell*, 2023 WL 8715697—including certain documents or portions of documents related to our clients. In evaluating Judge Preska's sealing decisions, the Second Circuit ruled that with respect to documents deemed "judicial documents"—including materials containing information pertaining to our clients—Judge Preska acted "well within" her discretion in maintaining them under seal. *Maxwell*, 146 F.4th at 175.

Should this Court agree to modify any protective orders encompassing materials obtained by the Government from the court file in *Giuffre v. Maxwell*, we respectfully ask that the Court order the Government to honor Judge Preska's rulings and maintain under seal those portions of the record pertaining to ███████ that Judge Preska determined should remain under seal.

********

The Government has not—and cannot—meet its high burden to show why unsealing grand jury materials is merited, particularly grand jury materials that mention innocent third

---

[2] Failure to redact the surrounding context could allow the substance of redacted testimony to be readily deduced. *See* Josh Levin, Aaron Mak & Jonathan L. Fischer, *We Cracked the Redactions in the Ghislaine Maxwell Deposition*, Slate (Oct. 22, 2020, 12:31 PM), https://slate.com/news-and-politics/2020/10/ghislaine-maxwell-deposition-redactions-epstein-how-to-crack.html.



parties who are still living and who were not the subject of any charges in relation to this case. And it certainly cannot meet such a burden with respect to ███████████████████ ███████████████████████████. The passage of the Act does not change the careful analysis undertaken by this Court in its Opinion denying the Government's original request to unseal the same grand jury materials. Accordingly, the Court should order that the transcripts remain under seal, or, to the extent the Court orders them unsealed, the Court should ensure that any reference to ███████████, including any surrounding context that may be used to identify them, remain sealed. In addition, should the Court modify any protective orders applicable to "[m]aterials from related civil litgations," we respectfully ask that the Court order the Government to maintain sealed those portions of the materials that are subject to existing sealing orders in such "related civil litigations."

Respectfully submitted,

Neil S. Binder