allowed the Government to keep investigating Epstein and the co-conspirators exploiting civil litigation and discovery. The ongoing litigation allowed continued press collusion to push a false narrative through friendly journalists like Sharon Churcher and JKB.

The plaintiff's lawyers representing the complainants had approached the SDNY in 2016 in an effort to promote and instigate a criminal prosecution because the SDFL was not happy with the NPA and the plaintiff's lawyers wanted to assist the CVRA case for financial motives. US v Berrios 501 F2d 1207, 1211 (2d Cir 1974) establishes that first one has to prove that similarly situated individuals were not prosecuted. Alameh 341 F3d at 173. There were 4 employee co-conspirators that were not indicted but named in NPA EXHIBIT 81 and referenced in the Indictment of Jeffrey Epstein 19 CRIM 490. The Petitioner was not. New evidence reveals that there were 25 men with which the plaintiff lawyers reached secret settlements – that could equally be considered as co-conspirators ( ILP PART 3 at 12.02  EXHIBIT 19). None of these men have been prosecuted and none has been revealed to Petitioner; she would have called them as witnesses had she known.

D. Analysis

Such delay violated the Due Process Clause of the US Constitution set forth in the Fifth Amendment which provides that no person shall be deprived of life, liberty, or property without due process of law. Lovasco, 431 US at 795 n. 17, U.S. Const. amend. V, cl. 1. The Governments tactical delay to re-litigate a closed matter after the passage of approximately 12 years, constitutes bad faith. US v Marion, 404 US 307 (1971).

Conclusion on Point 8

The inconsistency with the dates and timelines of the witnesses combined with the sensationalist media and the Plaintiff's Lawyers' desire to always make the complainants younger at critical periods reveals the unreliability of the verdict. The Court repeatedly denied Petitioner's requests to call evidence and for access to the material which would have established an accurate timeline and the accurate ages of the complainants at the time of various events and the impossibility of events as they were described at trial. The Court observed that impeachment "is way more metaphysical then [it] could handle at that moment. (Transcript 2569 line 18-19)

Because the Government intentionally delayed indictment for political advantage, the conviction must be vacated or reduced to reflect the violation of the 5th Amendment of the Constitution. US Const amend. V, cl. 4.

POINT NINE

Errors in Sentencing, and fine

A.  Overview

Petitioner's sentence and fine exceeds the lawful maximum and rests on information and factual findings that are unreliable and inaccurate.

B.  Governing Law

A sentence based on materially false assumptions violates due process. Townsend v. Burke, 334 U.S. 736 (1948) Under §2255, "relief is warranted where the sentence was imposed in violation of the Constitution or the laws of the United States."

C.  Factual Background

The Pre-sentence Report made recommendations based on erroneous information, and attributed uncharged conduct "adopting the governments suggestion" to include additional victims not raised or brought before the Jury (Transcript Sentencing Hearing. at p.16, 10-19). EXHIBIT 52. The court adopted the Pre – sentence report recommendations.

D.  The Court made erroneous guideline calculations for sentencing, and for the fine based on erroneous information

1.  Probation recommended a substantial downward departure basing the calculation on the wrong Guideline namely, the 2004 guideline and not the 2003.(SH. 19:3-5) EXHIBIT 52. The judge adopted the probations calculation of 240 months, admitting she made an error that she had used the 2004 guidelines . (SH. 49:13-25, 50:1-10, 101:4-8) EXHIBIT 52.

The court stated the Petitioner partially owned Epstein's jet ( SH.44:1-9) EXHIBIT 52. There was no testimony that the Petitioner had any ownership interest in Epstein's jet.

2.  Epstein's pilots testified that she had an 'air card', a '1/4 share·' of a separate, unrelated rental plane. There was no evidence that Epstein's pilots flew the unrelated rental plane or that anyone other than the Petitioner flew used the air card to fly on the unrelated rental plane. (Tr 97:8-16). EXHIBIT 74

3.  Two Non-Testifying Witnesses were considered as separate counts of conviction. (SH. 47:8-15) EXHIBIT 52. The witnesses were not named in the indictment and Petitioner argued the record was not adequate to make them separate offense groups (SH.50:16-22) EXHIBIT 52.  The Court rejected Petitioner's submissions and sentenced on the two non-testifying witnesses.

4.  The court relied on Melissa's name appearing in Trial Exhibit.52, the address book (SH.51:6-8) EXHIBIT 52. Trial Exhibit 52 is an unreliable document. The government failed to reveal that a Confidential Witness was involved in its production and had access to Trial Exhibit 52 for approximately 3 months prior to alerting the government he had it whilst working at a law firm involved in creating "fake settlements"

to "shake down billionaires" in relation to the required victim's settlements per the NPA in Epstein's criminal case ( See POINT 5)

5. The court relied on government witness Alessi's testimony to include Non Testifying Witness ("NTW") "Virgina " (Virginia Giuffre) (SH.7:6-9) EXHIBIT 52 . New evidence reveals that "Virginia" visited Alessi prior to trial to get him to testify (see fn 12). Her coercion of Alessi's testimony fatally compromised his testimony making his assertions regarding "Virginia" unreliable. Virginia was an unreliable witness whose new depositions in 2022 reveal that she should not have been considered as a "victim" in Petitioner's sentencing and doing so was unethical. ( Letter of Greene and Aidala) EXHIBIT 132. Giuffre's counsel have sealed these depositions so Petitioner has not seen them.

6. Petitioner was sentenced for perjury counts stemming from Virginia Guiffre's defamation case that were severed from the indictment and never adjudicated. The perjury charges were added to the indictment through the government agents, Plaintiff's Lawyers, the government misleading 2 judges as to the involvement of the Civil Plaintiff's lawyers. (see fn 9)

7. The court determined the correct range for the fine under the 2003 Guidelines (SH.49:16-17) EXHIBIT 52

8. The court made assumptions as to the Petitioners wealth based on assets the Petitioner did not, does not have and never had – namely a bequest (SH.52:4-25, 53:1-23) EXHIBIT 52 which was never realized and is unlikely to be so.

9. The court calculated the fine under the 2004 Guidelines – (the maximum per count under 2003 $200,000. (SH.49:16-17, 97:10-14)EXHIBIT 52) the court rejected the contention the defendant could not pay the fine and made an error – that the maximum fine was under the Guidelines, $250,000 (the amount under 2004 Guidelines ) (SH.97:10-14) EXHIBIT 52

10. The court recognized her error and failed to correct it. (SH.101:1-12) EXHIBIT 52

11. Petitioner was sentenced as if she were Epstein. Acosta testified that the range that was considered for Epstein was 168 - 210 months (A.Tr:42:1-2) EXHIBIT 54

12. Petitioner argued that the court stretched "the elasticity of the record" well beyond 'fair inference' (SH.80:16-17) EXHIBIT 52

Analysis

Enhancements lacking factual support violate US v. Gigante, 94 F. 3d 53 (2 Cir. 1996) Sentence and fines based on non-trial victims exceeds the courts statutory authority. Hughey v. U.S, 495 U.S 411 (1990)

MDC Brooklyn

Petitioner's pre-trial confinement was barbaric[22] and contrary to Treaties to which the US is a signatory. The court found her confinement "'better than typical" (SH.95:2-3), EXHIBIT 52 and that she was "not singled out for harsh treatment" (SH.94:22-24) EXHIBIT 52. By contrast AG Barr testified the confinement was 'quite severe' (Barr.Tr.121:1) EXHIBIT 25. AG Barr testified he was responsible for the conditions of her confinement. EXHIBIT 25

1.   Petitioner was held in solitary confinement through the pendency of the trial proceedings (600 + days)[23].

a)   Petitioner never slept in her assigned bed, not 1 night

b)   Petitioner was searched 7 times a day. Her cell and belongings twice a day (eventhough filmed 24 hours per day).

c)   Petitioner was placed on suicide watch 600+- awaken every 15 minutes – every day and was never found to exhibit suicidal ideations though evaluated by psychological staff everyday. After 2 years found to suffer such severe Vitamin D deficiency that she required medical intervention. (BOP Central File not available to inmate).

d)   Petitioner was abused physically and sexually and filed multiple PREAS complaints (pursuant to the Prison Rape Elimination Acts) against the various offending guards .

e)   Petitioner was forced into psychological interviews daily – all filmed and recorded – at times with 3rd parties present who were not part of psychology and not introduced.

f)   Petitioner's legal calls were recorded; she was unable to meet with counsel because of COVID policy restrictions. Discovery was not given to defendant in a timely manner, was largely unreadable (approximately 35%) and the hardware provided by the Government failed repeatedly. Legal work provided by her attorneys was interfered with – removed, copied and sent to an unknown 3rd party. Notes of Petitioner's lawyers were seized upon departure from MDC Brooklyn.

---

[22] Petitioners counsel repeatedly tried to address concerns of her treatment in MDC Brooklyn to the Court to include trying to summon the Warden to respond to questions (Dkt. 92) EXHIBIT Issues with Legal materials being seized (Dkt 249, 255, 265 ) EXHIBIT 138 , difficulties in communications with her attorneys (Dkt 321) EXHIBIT her lack of sleep because of the 15 minute flash light surveillance (Dkt 257, 282) EXHIBIT 139 delays in receiving her legal material (Dkt 353) EXHIBIT 140

[23] Petitioner requested all records at MDC Brooklyn be retained to include but not limited to camera footage both static and hand held cameras, 15 minute suicide watch books that annotated Petitioner's every move and other relevant information to support Petitioner's statements regarding her detention some of which can also be found in her BOP Central File Records.

Counsel filed letters with the Court - and Petitioner filed Administrative Remedies and the serious infractions all recorded but never acted upon by the Government.

Petitioner has been singled out and harshly treated like no other inmate– her phone calls were leaked to a third party in Brooklyn, her emails leaked in Bryan.

No other similarly situated remand inmates with no criminal history facing similar charges were similarly treated. P Diddy for example was placed in General Population.

Petitioners' treatment was in direct response to Epstein's death at MCC - AG Barr testified he was responsible for setting the terms of Petitioner's detention (EXHIBIT 25)

AG Barr admitted that there was a need to find "someone" to charge- p 58 line 19 Transcript AG Barr 8/18/2025 House Oversight and Government Reform EXHIBIT 25 The Petitioner's treatment was so harsh ·-and it so deprived her of sleep that her ability to take the stand in her defense was compromised after nearly 2 years of such severe treatment.

Governing Law

The inmate must show that her pre-trial conditions 'amount to punishment" either by an express intention to punish or showing that the conditions are not "reasonably related to a legitimate goal" Bell v. Wolfish, 441 U.S 520, 535, 539, 99 S. Ct. 1861,60 L. Ed. 2d 447 (1979) Confinement at MDC has been found to be a relevant factor in re-sentencing, being confined during COVID and no physical access to counsel an aggravating factor (See U.S v. Rodriquez, 492 F. Supp 3d 306, 311 (SDNY 2020). Petitioner was awakened every 15 minutes, day and night, she was held in solitary confinement, she was sexually assaulted and physically assaulted. Guards would "forget" to feed her. The constant searching, when in the course of more than 2 years no contraband was found could only have been intended to torture and punish. The denial of sleep could only have been intended to torture and punish. The constant physical and sexual abuse could only have been intended to torture and punish. Petitioner in pre-trial confinement was still of good character with no conviction recorded against her.[24]

Analysis

---

[24] https://oig.justice.gov/sites/default/files/2019-12/2019-09-26.pdf;

https://abcnews.go.com/US/federal-probe-ordered-inhumane-conditions-york-lockup/story?id=60908269;
https://theappeal.org/brooklyn-metropolitan-detention-center-watch/#:~:text="Unconscionable"%20Conditions,and%20mold%20in%20the%20shower."
https://www.prisonlegalnews.org/news/2021/feb/1/justice-department-report-documents-brooklyn-metropolitan-detention-centers-poor-response-covid-19-crisis/#:~:text=The%20OIG%20report%20stated%20that,the%20infection%20during%20the%20crisis.&text=As%20a%20digital%20subscriber%20to,this%20and%20other%20premium%20content.solitary

Enhancements lacking factual support violate US v. Gigante, 94 F.3d 53 (2d Cir. 1996) Fines based on non-trial victims exceeds statutory authority. Hughey v. US, 495 U.S. 411 (1990

Conclusion on Point Nine

Petitioner's sentence should be corrected to exclude unsupported enhancements, her harsh and unconstitutional treatment in MDC taken into consideration and credited (including her confinement in solitary confinement for more than 2.5 years), her fine readjusted, and/or the case should be remanded for resentencing.

CONCLUSION

The newly discovered evidence referenced above is such that when taken as a whole it constitutes a miscarriage of justice in that, the Petitioner did not receive a fair trial by independent jurors coming to Court with an open mind. At least three had been prejudiced by their own history of sexual abuse and then injected into deliberations, information that would not have been inadmissible in Court which only served to poison the minds of those jurors who started from neutral.

Further the Plaintiff's Lawyers and the media conducted themselves in an outrageous manner that even the Sheppard v Maxwell[25] Court could not have imagined. If the jury had heard that the prosecution improperly concealed evidence behind the privacy act, client attorney privilege and the executive privilege it would have cast the proceedings in a new light. Petitioner was denied the right to confront the Government on it's investigation and denied the ability to raise the NPA or the Palm Beach investigation and denied subpoena's for the materials held by plaintiff's lawyers who acted as an unlawful arm of the prosecution and that would have revealed the prosecutorial misconduct.

If the jury had heard of the new evidence of the collusion between the plaintiff's lawyers and the Government to conceal evidence and the prosecutorial misconduct they would not have convicted. If the jury had heard that the investigation was not conducted by neutral objective investigators of the FBI but rather investigators for Plaintiff's Lawyers who had a pattern of ignoring and burying exculpatory evidence and witness tampering and had a vested interest in enriching themselves and their practices and clients with windfalls of millions of dollars, they would not have convicted.

For all of the reasons respectfully set forth above the Petitioner asks that this Court orders vacatur of her conviction, an evidentiary hearing, and/or any other such relief as this Court deems appropriate and justice requires.

Respectfully submitted
Ghislaine Maxwell

---

[25] Sheppard v. Maxwell, 384 U.S. 333 (1966)

CERTIFICATE OF SERVICE

I, Ghislaine Maxwell, hereby certify that on this 16 day of DECEMBER 2025, I caused a true and correct copy of the foregoing PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2255 and all attached exhibits to be served by first-class mail upon:

U.S. Attorney's Office for the Southern District of New York Attn: Criminal Division

One St. Andrew's Plaza New York, NY 10007

/s/ Ghislaine Maxwell Ghislaine Maxwell, Pro Se