Siri | Glimstad

sirillp.com

NEW YORK | LOS ANGELES | MIAMI | PHOENIX
DETROIT | AUSTIN | CHARLOTTE | WASHINGTON D.C.

January 20, 2026

**VIA ECF**

Hon. Paul A. Engelmayer
United States District Court
Southern District of New York
40 Centre Street
New York, NY 10007
EngelmayerNYSDChambers@nysd.uscourts.gov

  Re: *United States v. Maxwell*, No. 1:20-cr-00330-PAE

Dear Judge Engelmayer:

  We write on behalf of our clients Congressman Thomas Massie and Congressman Ro Khanna (the "**Congressmen**" or the "*Amici*") in further support of the Congressmen's request for leave from the Court to file an *amici curiae* brief as ordered by the Court in its January 13, 2026 Order. (Dkt. 833.) In their proposed *amici curiae* brief, the Congressmen respectfully suggest that the Court, consistent with its inherent authority, appoint a special master or an independent monitor to assist the Court in supervising the review and release of the materials required by the Epstein Files Transparency Act, 119 Pub. L. 38 (Nov. 19, 2025) (the "**Act**").

  The Government fundamentally mis-frames the Congressmen's request. First, the Government argues that the Court should ignore the Congressmen's request because they lack standing or a private right of action to enforce the Act, or that they supposedly have a personal interest in the outcome of the matter. However, these claims are merely strawmen intended to avoid the actual issues at play here. The Congressmen have no personal interest in the outcome of this matter beyond a desire to see the lawful functioning of the government. In this way, the Congressmen are acting in the purest sense of the phrase *amici curiae*, friends of the court, because they merely suggest that the Court should act, on its own, to ensure the proper functioning of the administration of justice. As sponsors of the Act, they are able to inform this Court as to the intent of the Act, the harm it is intended to remedy through the mandated disclosure, and the ongoing harm being caused by the Government's violation of the Act.

  The Government next claims that neither this Court, *nor any other court*, has the power or authority to mandate that it complies with a duly enacted law. That is simply incorrect. One of the most important roles that Article III judges have is in the supervision of the lawyers before them and the administration of justice as a whole. That inherent power is broad and necessary to ensure that the people have faith and trust in the workings of the criminal justice system. Further, this nation has long had a presumption in favor of public access to many documents because transparency breeds trust.

  In apparent conflict with its argument that no court can enforce the Act, the Government has publicly blamed the Court for its failure to comply with the Act. The Government is

proverbially speaking out both sides of its mouth and, in doing so, is attempting to use the Court in a manner that brings shame and disgrace to the vaunted criminal justice system in this country.

As this Court is aware, federal criminal proceedings are presumptively open to the public. The Act ensures that this transparency is even more broad here, requiring that "all unclassified records, documents, communications, and investigative materials…that relate to Jeffrey Epstein, including all investigations, prosecutions, or custodial matters [and] Ghislaine Maxwell" and more be made publicly available. The Act at 2(a)(1)-(2). Therefore, by its terms, the Act adds an obligation to the Government and, impliedly, to the courts to ensure that all records are disclosed. Like the Government, this Court is obligated to abide by the Act. And just like with any other substantive or procedural law or rule, this Court is obligated to enforce the Act; this obligation is no different than any other requirement applicable to criminal proceedings, none of which expressly state that "the court has an obligation to enforce" but all of which the Court must abide by and enforce. If not, the Act and any other law that touches upon a criminal proceeding, would be rendered moot. Moreover, it should not be that when the Article I branch mandates the Article II branch to take an express act, the Article III branch must sit on its hands if the Article II branch fails to comply. Instead, the Article III branch must restore balance precisely as the Constitution intended.

The Congressmen thus seek to raise to the Court's attention misbehavior by the Government that has been occurring before this Court and to suggest that the Court take urgent action to rectify the situation by appointing a neutral master who can ensure that the Government is in fact complying with the Act in a fair and unbiased manner and that the Government stops pointing the finger at any court for its own failures and violation of the Act. Ultimately, it is up to the Court to decide whether it will act, but we respectfully urge the Court to at least permit the Congressmen to file their *amici curiae* brief so that the Court can have the benefit of their experience and the proper questions can be considered and resolved to the Court's satisfaction.

 1. ***The Amici Properly Seek to Appear as Friends of the Court to Suggest a Pathway to Compliance with the Act***

The Congressmen's request to appear as Amici before this Court, including to suggest a course of action for the Court to take, is entirely proper and consistent with long-standing judicial practices.

Contrary to the Government's assertion, the Congressmen do not seek to intervene as parties, and as such do not require standing. Rather, they seek permission to participate as *amici curiae*. It has long been common practice in the courts that where a third-party lacks standing, but still wants to be heard by the Court, the court may treat the submission as an *amici curiae*. *See Ultra Intl. Music Publ'g, LLC v Sony Music Ent.*, No. 24 Civ. 9149 (RA) (GS), 2025 U.S. Dist. LEXIS 37927, at *8 (S.D.N.Y. Mar. 3, 2025) (collecting cases and treating as *amicus curiae* the submission of a party who lacked standing regarding the current motion); *see also In re Roman Catholic Church of Archdiocese of Santa Fe,* No. 18-13027-t11, 2021 Bankr. LEXIS 270, at *8 (Bankr. D.N.M. Feb. 4, 2021) (considering arguments by defendants even though they lacked standing to appeal order in question; "[p]arties who lack standing to appeal, but who wish to be heard, are treated like amici curiae"); *Aliano v. Quaker Oats Co.*, No. 16 C 3087, 2017 U.S. Dist.

2

LEXIS 1158, at *14 (N.D. Ill. Jan. 4, 2017) (considering objection to venue transfer by plaintiff in a related case; "regardless whether Phung has standing to raise the argument, the court is inclined to consider it, in the same way that the court could consider the argument from an amicus curiae who is not a party to a case"); *Southwest Ctr. for Biological Diversity v. U.S. Forest Serv.*, 82 F. Supp. 2d 1070, 1075 (D. Ariz. 2000) (treating pleadings of parties addressing plaintiff's standing "as amicus memoranda rather than as a motion brought by a party as of right" given prior order limiting parties' participation to the remedial phase of the litigation). Ultimately, it is up to the court's discretion to consider the view of any interested person, regardless of whether they have standing or not; the question is whether their view will assist the court in reaching a proper conclusion. *See Damri v. Liveperson, Inc.*, No. 23 Civ. 10517 (PAE), 2024 U.S. Dist. LEXIS 56090, at *4 n.1 (S.D.N.Y. Mar. 22, 2024) ("LivePerson's role on this motion is akin to that of an *amicus curiae*, whose arguments the Court may consider in its discretion").

The Government's overwrought statements that "[t]his is a criminal case, with two parties—the Government and defendant Ghislaine Maxwell—that is long since over" ring particularly hollow in this matter where multiple third parties have already provided what amount to *amicus curiae* submissions. For example, just last month in its December 9, 2025 order, this Court specifically referenced submissions from counsel representing survivors' family members and from "Neil S. Binder, counsel for several non-party individuals" who expressed concerns about the Government's redaction procedures. (Dkt. 820 at 11, 23.) More recently, a declaration from survivor Lisa Phillips was filed in support of the Congressmen's suggestion for a special master. (Dkt. 841.) Criminal cases are never just about the "two parties" listed in the caption. There are always outside voices with interests, which is why courts have the *amicus curiae* procedure— to ensure that the Court is not limited by the views of just the government and the defendant, but has the benefit of a broader view when making its decisions. *See Auto. Club of NY., Inc. v Port Auth.*, No. 11 Civ. 6746 (RJH), 2011 U.S. Dist. LEXIS 135391, at *6 (S.D.N.Y. Nov. 23, 2011) ("An amicus brief should normally be allowed … when the amicus has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide" (citation modified)).

"'The usual rationale for *amicus curiae* submissions is that they are of aid to the court and offer insights not available from the parties[.]'" *Ultra Intl. Music Publ'g, LLC v Sony Music Ent.*, No. 24 Civ. 9149 (RA) (GS), 2025 U.S. Dist. LEXIS 37927, at *8 (S.D.N.Y. Mar. 3, 2025) (quoting *Auto. Club of N.Y., Inc. v. Port Auth. of N.Y. & N.J.*, No. 11 Civ. 6746 (RJH), 2011 U.S. Dist. LEXIS 135391, at *1 (S.D.N.Y. Nov. 22, 2011)). Here, the Congressmen's unique knowledge as the sponsors of the Act will provide the Court with a perspective not currently represented by either party. *See True Return Sys. LLC v Makerdao*, No. 22-CV-8478 (VSB), 2023 U.S. Dist. LEXIS 107553, at *1 (S.D.N.Y. June 21, 2023) ("[t]he role of an amicus is to aid the court and offer insights not available from the parties." (citation modified).) As sponsors of the Act, the *Amici* bring bi-partisan expertise and unique knowledge regarding Congressional intent of their bill which passed the House of Representatives 427-1 and the Senate by unanimous consent before it was signed into law. That knowledge is directly relevant to the Court's supervisory role over both protective orders and its obligations to comply with the Act's requirements which were expressly intended to apply to the records in this proceeding. *See* the Act at 2(a)(2).

3

The Congressmen continue to have regular contact with Epstein survivors, as they did before passage of the Act. These survivors in large measure drove the Act's passage, rightly demanding closure and public accountability, absent which they suffer ongoing harm in various forms. For example, survivor Haley Robson, on behalf of herself and other survivors, has filed a letter before this Court joining the Congressmen's request. She movingly imparts the survivors' strong feelings about Government's failure to comply with the Act and the impact of that failure. (*See* Letter from H. Robson ("**Robson letter**") dated January 18, 2026 stating: "[T]his failure is not merely procedural—it is deeply personal. Continued noncompliance perpetuates the same secrecy that allowed these crimes to continue unchecked for years. It reinforces the painful and all too familiar message that while the law governs ordinary people, it does not govern the government and the wealthy, powerful individuals whose actions enabled widespread abuse."). Survivors support this Court appointing a Special Master and/or Independent Monitor or taking any other action to compel the Government to timely release documents in accordance with the Act. (Dkt. 841 and Robson letter.)

*Amici*'s suggestion that the Court appoint a special master does not require the Court to entertain new merits claims, adjudicate any disputes, or even compel the Government to produce documents. The Government is *already* obligated to produce documents pursuant to the Act.[1] Here, the Court needs no party invitation to deploy its inherent authority, and *Amici's* submission is directed solely towards elucidating the Court as to the problems and its power to effect those problems.

### 2. *The Requested Oversight Falls Within the Court's Supervisory Jurisdiction*

This Court need not address the Government's argument that the Act lacks any enforcement mechanism. This Court already has all the authority it requires to take action through its inherent powers. The Congressmen are not seeking a recovery for themselves and, as such, need no private right of action. Instead, they ask that the Court invoke its power pursuant to its inherent authority to supervise both the attorneys appearing before it and the criminal justice system generally.

The Government already placed the implementation of the Act before this Court when it invoked this Court's jurisdiction to release the files through its motions to modify the protective orders. (*See, e.g.,* Dkt. 810 at 6 n.4 ("The Department of Justice respectfully submits for the reasons set out herein that the Act requires the Court to unseal the grand jury transcripts and exhibits").) The government admitted that the Act directly applies to records concerning the proceedings before this Court. (*Id.* at 2-3.) The Government has repeatedly represented to this Court that it was producing and would produce the documents related to the *Maxwell* case in conformity with the Act and this Court's order modifying the protective orders (Dkt. 820). (*See* Dkts. 819, 823, 826, 839.) Likewise, the Government has argued that the Act itself was intended to alter certain aspects

---

[1] *Amici* note that while its suggestion concerning a special master does not require the Court to compel disclosure, *Amici* would fully support, in the alternative, that the Court order that the remaining documents be produced on a rolling basis starting immediately, and that the Government produce the report on redactions within 5 days. The Court could also create other mechanisms to ensure the documents the Government told the Court it would previously produce, and that are required to be produced by the Act, are disclosed forthwith.

of the Federal Rules of Criminal Procedure as they apply in this action. (Dkt. 810 at 5-8 (discussing how the Act altered the effect of Rule 6(e) and "manifests a Congressional intent to override some of the underlying bases for grand jury secrecy").)

"[T]here is a strong public interest in the manner in which criminal cases are conducted, including the handling of any allegations of prosecutorial misconduct[.]"*Gannett Media Corp. v United States*, No. 22-2160, 2022 U.S. App. LEXIS 35099, at \*9 (2d Cir Dec. 20, 2022). For this reason, the Second Circuit has told its courts: "It is our [courts'] task to supervise the administration of justice in the federal courts." *United States v Ming He*, No. 95-1331, 1996 U.S. App. LEXIS 28744, at \*26 (2d Cir. Sep. 3, 1996). As such, every Article III court possesses certain "supervisory powers" inherent to its role in overseeing the administration of justice. *Id.*; *United States v McSherry*, 226 F3d 153, 156 (2d Cir. 2000) (holding that federal courts have the "power to supervise the administration of criminal justice in order to ensure fundamental fairness" (citation modified)); *see also* Fed. Rules Crim. Proc. R. 57(b) ("A judge may regulate practice in any manner consistent with federal law, these rules, and the local rules of the district"). Such inherent powers grant courts the "authority to fashion appropriate remedies to redress governmental misconduct." *United States v Sinclair*, No. 10-CR-6211L, 2013 US Dist. LEXIS 167475, at \*19 (W.D.N.Y. May 10, 2013). "The supervisory power promotes three goals: (1) 'to implement a remedy for violation of recognized rights'; (2) 'to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before the jury'; and (3) 'to deter illegal conduct.'" *Id.* (quoting *United States v Hasting*, 461 U.S. 499, 505 (1983) (discussing the "purposes underlying use of the supervisory powers")). Furthermore, such powers are intentionally broad and intended to be adapted to a variety of situations. *See United States v Cannone*, 528 F2d 296, 298 (2d Cir 1975) ("It would be ill-advised to limit improvidently this inherent power for fear of misuse. The firing point of the legal system is with the trial judge who is best situated to administer the law and protect the rights of all.").

In addition, the Courts have the inherent power to supervise the attorneys appearing before them. Among other things, "[t]he Court expects all attorneys who appear before it to conduct themselves with the utmost candor, but that expectation is particularly keen when it comes to attorneys representing the United States of America because they are guardians of the public interest." (citation modified) *Gannett Media Corp. v United States*, No. 22-2160, 2022 U.S. App. LEXIS 35099, at \*9 (2d Cir Dec. 20, 2022). The Government has made multiple representations to the Court regarding its compliance with the Act. The Congressmen's and survivors' *amici curiae* submissions call into question the candor with which the Government has presented itself on these issues. If the Court finds that the allegations from the Congressmen are correct, under its inherent powers the Court would be more than justified in taking the actions suggested by the Congressmen. *See In re Keurig Green Mt. Single-Serve Coffee Antitrust Litig.*, No. 14-MD-2542 (VSB), 2023 U.S. Dist. LEXIS 102533, at \*25 (S.D.N.Y. June 13, 2023) ("courts possess an inherent equitable power to appoint special masters." (collecting cases).)

To date, the Government has, by its own admission, released around only one percent of the Epstein Files. *See* Dkt. 826 (noting that "[t]o date, the Department has now posted to the DOJ Epstein Library webpage approximately 12,285 documents (comprising approximately 125,575 pages) in response to the Act, and there are more than 2 million documents potentially responsive to the Act that are in various phases of review."). This is beyond concerning, especially given that

apparently the FBI tasked 934 agents and other personnel to review and redact the subject files between March and May,[2] and that the Government claims that hundreds of lawyers from the SDNY and other Government offices across the country are working on the document production.[3] But despite same, they have yet to produce any additional documents in over a month and much of what has been produced was already publicly available.

The bottom line is that the Government has told this Court that it would comply and is complying with the Act, but the Congressmen and survivors are understandably questioning that compliance and asserting that the Government is in fact violating the Act. As discussed in the next section, the Government has ironically invoked this Court's jurisdiction to further generate an excuse to delay in violation of the Act, and then to blame the Court for the delay. In this context, the Government's arguments that the Court cannot take action to require the lawyers before it to comply with the Act is not only wrong, but potentially dangerous.

   3.   *The Government Ironically Blames the Court for Its Noncompliance, Evidencing Amici's Point that the Court Must Also Comply with the Act, Including Overseeing and Ensuring Full Disclosure*

The Government has blamed this Court, and other federal courts, for its failure to comply with the Act.

This Court inherently has the authority and equitable powers to enforce its own orders and to enforce the representations made by the Government to this Court. As discussed below, the Government has stated publicly that this Court gave it the sufficient "legal predicate" to release the files. The Government would like to now cabin that to the Court simply lifting a prior protective order but that line in the sand is not what is required by the Act. Nowhere in the Act does it say that the documents in this proceeding shall be made public, but courts can pretend that obligation does not exist. To lift its protective order and do nothing further would be contrary to how laws related to criminal proceedings typically operate. The relevant law here, the Act, expressly includes all investigative materials, investigations, and prosecutions. A court does not just pretend a law specific to a criminal proceeding, like this one, is left to just the parties to comply; it is for the courts to enforce.

As this Court is aware, the Government has already conceded the Court's obligations to comply with the Act by requesting on two separate occasions for this Court to release the grand jury transcripts in *USA v. Maxwell*. On November 26, 2025, the Government wrote to this Court that it wanted "all applicable protective orders" to be amended by the Court so it could produce all documents that comply with the Act. (Dkt. 813 at 2.) In its November 26, 2025 filing, the Government listed 20 categories of documents that it represented to this Court would be produced

---

[2] *See* https://www.bloomberg.com/news/newsletters/2025-11-25/epstein-files-new-fbi-emails-detail-review-special-redaction-project.

[3] *See* Dkt. 826 at 2 (noting that "[c]urrently, and anticipated for the next few weeks ahead, in the range of over 400 lawyers across the Department will dedicate all or a substantial portion of their workday to the Department's efforts to comply with the Act.").

in compliance with the Act. Based on the representations made to it by the Government, this Court issued an Order on December 9, 2025, which amended the applicable protections to permit the Government to comply with the Act based on the representations made by the Government. (Dkt. 820.)

After the Government failed to comply with the Act and did not produce all documents in the categories it listed for this Court, the Government took to social media to blame this Court, and others, for its noncompliance. On December 21, 2025, the Government issued a press release on X that has since been viewed 1.9 million times. The press release is called "Fact Sheet: The Epstein Files Release."[4] The pertinent excerpts from this press release which imply the blame and delay lay with the courts are as follows:

- "Thanks to court seals being lifted as a result of President Trump enacting the Epstein Transparency Act, the Department of Justice is releasing thousands of pages of photos and other material related to Jeffrey Epstein."

- "Why is This Material Being Released Now? Prior to President Trump's enactment of the Epstein Transparency Act, various Judges had declined the Trump Department of Justice's requests to unseal the Epstein related material. The enactment of the new Law ***gave the judges a legal predicate they found sufficient*** for granting the Trump administration's standing requests before the Courts to unseal the files." (emphasis added).

- "These Court orders can slow the Department of Justice's ability to review and redact material but will not prevent the release of this material."

The Government should not be permitted to represent to the public that this Court has the "legal predicate" to compel the release of the of the Epstein Files under the Act and blame this Court for the Government's delay, yet at the same time assert now that the Court must permit the records to remain hidden from the public in violation of the Act because the Court does not have the authority to enforce the Act.

\* \* \* \* \*

The Act was intended to remedy the ongoing harm to the survivors who seek closure and justice for the harms inflicted upon them. Many of them desperately need these records to identify who hurt them, learn whether any additional threats exist, understand and reconstruct the traumatic experiences to obtain appropriate therapy and to find closure, and have their names vindicated and the truth released. Even though it is the Government's normal role to represent survivors, in this instance, the Act places an obligation on the Government that puts it in conflict with the survivors. This heightens the need for the Court to protect the interests of the survivors as the Government, in this instance, cannot be relied upon to act with disinterest and objectively to do what is best for the survivors. It has its own conflicting interests.

For the reasons set forth above, the Congressmen respectfully submit that the Court's adoption of their suggestion to appoint a special master to oversee the Government's progress lies

---

[4] A Copy of the "Fact Sheet" is attached hereto as **Exhibit A** and is available at https://x.com/TheJusticeDept/status/2002843217633632644.

well within the Court's inherent power to supervise the criminal justice system and the attorneys who appear before it. The Congressmen offer this neutral suggestion to assist the Court with balancing the survivors' compelling interest and bringing the Government's conduct in this proceeding into compliance with the Act.

Dated: January 20, 2026
      New York, NY

Respectfully Submitted,

**SIRI & GLIMSTAD LLP**

*/s/ Aaron Siri*
Aaron Siri
NY Bar ID 4321790
(*Admitted to SDNY on 9/12/2006*)
Mason Barney
NY Bar ID 4405809
(*Admitted to SDNY on 9/30/2008*)
Elizabeth A. Brehm
NY Bar ID 4660353
(*Admitted to SDNY on 2/26/2019*)
Sonal Jain
NY Bar ID 5855275
(*Admitted to SDNY on 12/13/2022*)
745 Fifth Avenue, Suite 500
New York, New York 10151
Telephone: (888) 747-4529
aaron@sirillp.com
mbarney@sirillp.com
ebrehm@sirillp.com
sjain@sirillp.com

*Counsel for Amici Curiae*

cc: All counsel via ECF.