UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-v-

GHISLAINE MAXWELL,

Defendant.

---

20 Cr. 330 (PAE)

ORDER

PAUL A. ENGELMAYER, District Judge:

On December 22, 2025, the Court set a briefing schedule governing defendant Ghislaine Maxwell's motion under 28 U.S.C. § 2255. Dkt. 825. The schedule, the Court stated, was subject to the following caveat: On December 19, 2025, the Department of Justice ("DOJ") had made publicly available various documents relating to Maxwell and Jeffrey Epstein, pursuant to the Epstein Files Transparency Act, Pub. L. No. 119-38, 139 Stat. 656 (2025) ("EFTA"), while stating that it would continue to review and release such materials. The Order thus directed that, if Maxwell sought to amend her § 2255 motion based on these materials, she must file, by February 17, 2026, "either an amended motion or a declaration setting a date, not to exceed March 31, 2026, by which she will do so." Dkt. 825 at 2. In that event, the Order stated, the Court would set a revised briefing schedule. Id.

On February 17, 2026, the *Pro Se* Office in this District received a letter from Maxwell, attached to this Order as Exhibit A ("Maxwell Letter").[1] It requested, *inter alia*, "further time to

---

[1] Because the public version of Maxwell's original § 2255 motion had improperly included sensitive victim information, the Court directed the Government to review Maxwell's February 17 letter for such information. Dkt. 825. The Government has informed the Court that the February 17 letter does not contain any such information, and may thus be publicly docketed without redactions.

file an amended" § 2255 motion, based on materials that DOJ has released under the Epstein Files Transparency Act. Maxwell Letter at 1.

As anticipated in its December 22 Order, the Court hereby revises the briefing schedule, as follows, to permit Maxwell to amend her § 2255 motion:

- **By March 31, 2026**, Maxwell shall file an amended motion (and any exhibits). Per the December 22 Order, to assure that victims' privacy and confidentiality interests are protected, Maxwell shall file such materials under seal. The Government shall then promptly review these materials; make any redactions necessary to protect victims' privacy and confidentiality interests; and file the redacted motion and exhibits on the public docket of this case.

- **By April 28, 2026**, the Government shall respond to the amended motion.

- **By May 19, 2026**, Maxwell shall file any reply. Per the Court's directives above with respect to Maxwell's amended motion, any reply shall be filed under seal, followed by the same redaction and public filing procedures by the Government.

Maxwell requests that she be furnished "the *unredacted* documents disclosed by the DOJ" pursuant to the EFTA and that the Government conduct a "further review . . . of the documents still withheld." Maxwell Letter at 6 (emphasis in original). The Court denies these requests.

SO ORDERED.

*Paul A. Engelmayer*
_____
PAUL A. ENGELMAYER
United States District Judge

Dated: February 20, 2026
    New York, New York

# Exhibit A

*District Judge*

Hon. Paul A. Engelmayer

Thurgood Marshall

United States Courthouse

40 Foley Square

New York, NY 10007

BY EMAIL: **PROSE@nysd.uscourts.gov**

**Courtroom:** 1305

17.2.2026                                                                                           PublicDocket

Re: **US v GHISLAINE MAXWELL/Case No. 1:20-cr-00330-PAE**

Dear Judge:

In the Court's Order dated 12/22/2025, the Court ordered that "by 17th February 2026, she *[Maxwell]* must file, on the docket of this case, either an amended motion or a declaration setting a date, not to exceed March 31, 2026 by which she will do so."

In compliance with that Order by this letter I do declare that I require further time to file an amended Petition for Habeas Corpus in light of the disclosure of 5.4 million documents by the US Government pursuant to the Epstein Transparency Act dated 2025 .

To date I have not had access to any of this "publicly" disclosed material as I am in a Federal Prison without internet and without a computer or access to the new material. The December 19, 2025 revelation that the government had millions and millions of documents, that I have never seen and were not disclosed to me when I had the benefit of skilled criminal counsel has significantly changed my position.

So that your Honor understands that the review of this disclosure and the additional time required to undertake that exercise is of tremendous value and worthy of the additional time I request, I highlight here just a few material pages of what I have discovered relying upon media reports.

For example: (a) The new material reveals that complainants represented to be minors were not minors and that the prosecution knew this at the time they misrepresented the ages of the complainants. (b) That images admitted for specific dates to prove abuse at a specific location did not accurately reflect time and place (and therefore age of the complainant at the relevant time) and that that the prosecution knew this when they put these materials before judge and jury. (c) That the NPA promises made by the United States Government precluded the SDNY from indicting me, and the text, facts and circumstances underlying the negotiations of the NPA demonstrate that the intent of the coconspirator clause was global.

Referring to specific documents identified that were exculpatory and should have been disclosed to us before trial:

1. The full underlying deposition of Alexander Acosta dated 2019 (the former US Attorney for the SDFL), for the Inspector General drafting the OPR, in which Acosta confirms that he drafted and revised the text of the clauses of the NPA. We now have evidence of the promises and conversations between counsel which resulted in the addition of the global language by Acosta.
2. Acosta confirms that the coconspirator clause could be read as lacking any temporal restriction, that it provided "blanket transactional immunity" and was a "get out of jail free card" for coconspirators known or unknown.
3. That Main Justice was significantly involved prior to the signing of the NPA.
4. Acosta further confirmed that the DOJ performed a *denovo* review that "encompassed the totality of the circumstances" to include "the agreement".
5. Further Acosta confirmed that the principal deputy Assistant Attorney General and chief of staff for the Assistant Attorney General were responsible for the final edits for the NPA from his office and post in Washington DC at Main Justice and that the CEOS Chief participated in meetings before the NPA was signed. "It was better to involve Main Justice earlier".
6. This was in express contradiction to representations made by the Prosecution before the District Court, the Court of Appeal and in the briefs filed with the US Supreme Court in which the Prosecution stated "there was no indication that anyone understood the different versions of the coconspirators clause to have different geographic scopes", and

that Main Justice was not involved in the NPA negotiations prior to its signing and no de novo comprehensive review of the NPA was performed.

7. The Deposition also reveals details of the negotiation history of the NPA to include "one on one" conversations between Epstein's legal counsel and Acosta that resulted in amendments to the NPA made by Acosta reflecting the promises in conversation that were added to the NPA. Acosta was the attorney who proposed and added the global language to the agreement.

8. The Deposition reveals that no documents of Acosta's relating to Epstein's case were preserved in the federal records depository. This was concealed in the OPR. The emails in the critical period were also "missing". Acosta stated "he could not recollect if he took any action" to "discard, destroy or dispense" with the critical documents.

9. Additional drafts of the NPA are included in this disclosure which were previously not disclosed to my defense team in which makes clear that the use of the term "United States" was intentionally a global term not limited to the Southern District of Florida..

10. A letter written by Ken Starr with supporting documentation reveals that AUSA Villafana in SDFL classified all of Epstein's assistants in SDNY as targets of their investigation and that expanded the Florida investigation into New York before the NPA was signed revealing that an indictment in New York was contemplated.

11. The Government has repeatedly asserted in legal arguments in the District Court, Court of Appeal and the Supreme Court briefs that the NPA's coconspirators clause was not global because there was no reason to foresee a potential prosecution of Epstein's coconspirators in NY and that Main Justice was not involved prior to the negotiation, drafting and signing of the NPA but as a result of the new evidence disclosed including emails from Villafana; Acosta's deposition and Ken Starr's letter to the Deputy Attorney General we now know that simply was not the case.

12. The Prosecution Memorandum dated 12/19/2019 EFTA_00022461 supports the Defense case and the impeachment of prosecution witnesses in that it reveals that the government knew that evidence of the 2 principle accusing witnesses was materially false in alleging that events occurred at dates and times at which time the buildings described did not exist therefore making the complainants ages past majority at the material times pushing time

lines such that accusers were in fact beyond the age of consent. Further the Prosecution memo concedes that at least one material occasion the Petitioner was not present.

13. The Prosecution Memorandum reveals that the Prosecution was "in the process of obtaining the Journal of Annie" Pg 11. In spite of that statement the government did not make its best efforts to obtain the journal by subpoena or confirm its authenticity. The journal was never reviewed by the Court and therefore defense was denied evidence that would have impeached the witnesses age and timetable at the relevant times. Rather the Government accepted an implausible explanation by financially interested plaintiff's lawyers who never presented the original and were not compelled to do so.

14. The Prosecution Memorandum also reveals that the Government deliberately misled the trial jury and the Grand Jury as to the evidence of the Petitioner's supervision of Epstein's Household. In the Memorandom the butler stated that it wasn't until approximately 2000 that the rules of the household changed and became restrictive – not in the timeframe of the indictment 1994-1997.

15. The prosecution lead that Petitioner took charge of the household in the 1990's. The Prosecution in its Sentencing Memorandum stated that it was in 1991 that Petitioner took charge and imposed restrictive staff rules. The relevance of this is the judge adopted the misleading dates and characterization of Petitioner's role at sentence when the Prosecutions own witness said 2000 and this is recounted in the Prosecution Memo. Petitioner left the household in approximately 2000/2001.

16. The newly disclosed Grand Jury materials reveal that the Government mislead the Grand Jury by asserting an aerial photo of the New Mexico property reflected the appearance of the property "in the 1990's". The photo was in fact taken some time after 2013 and did not reflect the property in the relevant indictment time period as the large house did not exist. The government knew that the house did not exist because the government had obtained Epstein's financial records.

17. A document was disclosed that stated that Les Wexner was considered a coconspirator by the federal government. Had this been disclosed before trial we would have been able to prove that on a date at which criminal conduct was alleged at the 71st house that house was not in the care custody or control of Jeffrey Epstein which would impeached the evidence of at least 2 witnesses at trial. Further Photographs of 71st st were admitted into

evidence to prove the condition and decor of the house in 1994 specifically a massage room which simply did not exist in 1994 when the property was not owned by Epstein. These photographs were highly prejudicial and not what Prosecution purported they were and further that the Prosecution knew and is evidenced in the Prosecution Memo.

18. A Privilege log newly disclosed reveals multiple conversations regarding Wexner's involvement which supports the hearsay, on camera confession of plantiffs lawyers regarding secret settlement with multiple wealthy men it appearing now that Wexner was one of these men.

19. An internal email revealed supports the cozy collaborative agency relationship between Prosecution and the FBI which was denied when Plaintiff's/complainants lawyers successfully moved to quash subpoenas issued by Defense. Plaintiff's lawyers volunteered the supply of thousands of pages of documents to the government waiving privilege.

20. The Chain of Custody of exhibits produced in evidence at trial was not accurate in that the new evidence reveals boxes of original evidence were found in the property owned by the principle investigating Detective in Florida and upon his death were turned over to the FBI by his widow, including a laptop computer from Epstein's home, from which at least one exhibit was admitted and relied upon in trial and at sentence. This was not disclosed to Petitioner.

It is now evident with disclosure of *even a few of* the redacted new material that the Prosecution failed to disclose to defense, among these millions of documents, the exculpatory and impeachment materials contained therein. Discovery in relation to the NPA was not conducted by the Prosecution, by their own admission, in spite of the judge's order that stated, "Of course, the Government's disclosure obligations would require it to disclose to Maxwell any exculpatory evidence or evidence material to preparing the defense, including any evidence supporting a defense under the NPA." The Government did not even disclose the OPR, a government document, to Defense rather they directed Defense to the website of the Washington Post for a copy. Had the Prosecution properly discharged their duties and obligations following Brady and the Court's Order regarding disclosure, the Prosecution would have been forced to disclose documents that we have at last seen as a result of the Epstein Transparency Act.

In setting a future timetable and briefing schedule I hope that your Honor will consider the value of this material and that, as of writing, I am unable to access any of the millions of documents disclosed to the public, I would respectfully implore this Court to order the government to immediately produce, in a form appropriate and accessible for a federal prison environment, the <u>unredacted</u> documents disclosed by the DOJ and also that a further review be conducted of the documents still withheld by the Government by their own admission to include disclosure to me of all Brady exculpatory and impeachment materials which were not previously provided to me. Certainly more than anybody on earth I desire a speedy resolution to this Petition and resist delay but in light of the clear violations of Brady and the legal obligations placed upon the Prosecution and the breach of the NPA promises I must be entitled to review these materials, unredacted.

Respectfully

*Ghislaine Maxwell*

Ghislaine Maxwell