UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,  Plaintiff,

v.

GHISLAINE MAXWELL,   Defendant
Case No. 20-CR-330 (PAE)

AMENDMENT TO PETITION FOR WRIT OF HABEAS
CORPUS PURSUANT TO 28 U.S.C. § 2255

TABLE OF CONTENTS

INTRODUCTION ................................................................. i

POINT ONE – Juror Misconduct ....................................... iii

POINT TWO – Suppression of Grand Jury Testimony ................. iv

POINT THREE – Private Counsel as De Facto Prosecutors ......... v

POINT FOUR – Breach of NPA .............................................. xii

POINT FIVE – Fabrication of Evidence ................................. xv

POINT SIX – Mischaracterization of Evidence ...................... xviii

POINT SEVEN – Amendment of Counts .............................. xix

POINT NINE – Leadership Enhancement Error .................... xxii

CONCLUSION ................................................................. xxiv

## TABLE OF AUTHORITIES

**Cases**

Brady v. Maryland, 373 U.S. 83 (1963) ................................. passim

House v. Bell, 547 U.S. 518 (2006) ......................................... x

Bousley v. United States, 523 U.S. 614 (1998) ......................... x

United States v. Berrios, 501 F.2d 1207 (2d Cir. 1974) .......... xxiii


**Statutes**

28 U.S.C. § 2255 ......................................................... i

U.S. Const. amend. V ................................................. xii

U.S. Const. amend. VI ................................................ iii

AMENDMENT TO PETITION FOR WRIT OF HABEAS CORPUS

PURSUANT TO 28 U.S.C. § 2255

---

INTRODUCTION

Petitioner Ghislaine Maxwell, proceeding pro se, respectfully moves this Court pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct her conviction and sentence. Petitioner Ghislaine Maxwell, proceeding pro se, submits this Amendment to the Petition for writ of Habeas Corpus pursuant to 28 U.S.C. § 2255 pursuant to the Court Order (Dkt.825) dated December 22 2025, and Dkt 853 Feb 20,2026.

Since the conclusion of her trial, substantial new evidence has emerged from related civil actions, Government disclosures, investigative reports, and now the EFTA documents demonstrating constitutional violations that undermined the fairness of her proceedings.

This newly available evidence—derived from The Epstein Transparency Act ("EFTA") litigation against the Federal Bureau of Investigation, various financial institutions, and the Estate of Jeffrey Epstein, as well as from sworn depositions, released records, and other verified sources— shows that exculpatory information was withheld, false testimony presented, and material facts misrepresented to the jury and the Trial Court., the 2nd Cir. Court of Appeal and the US Supreme Court.

The cumulative effect of these constitutional and legal violations constitutes a complete miscarriage of justice, rendering Petitioner's conviction invalid, unsafe and infirm.

Petitioner raised nine principal grounds for relief in her Petition for Writ of Habeas Corpus filed Dec 2025, each supported by newly discovered or previously suppressed evidence. In light of the Court's Order and the disclosure of millions of documents by the US government, the so-called EFTA documents, Petitioner now seeks to amend her original Petition.

It must be noted that once again the government has denied and continues to deny due process and fundamental fairness to Petitioner as Petitioner has not had access to the Epstein Library as Petitioner is without access to the internet. Further the Prosecution has not served or provided access to the EFTA materials by any other means such as hard drive, disc or laptop. This is the same Prosecution and government that concealed these materials, lied to federal judges at district level, appellate level and the US Supreme Court disregarding extensive case law including but not limited to Brady v. Maryland and its progeny. Petitioner refers only to EFTA documents that have been extensively quoted in the media and have been supplied to her albeit by people

i

without knowledge of the case or her defense. This has been an almost impossible task given the obstacles created by the same Government that has prosecuted Petitioner.

In the light of the new EFTA disclosures and the fuller evidentiary record, no reasonable juror would have convicted her had these documents been placed before the jury or had the material made available for cross examination and impeachment purposes. Accordingly, Petitioner seeks vacatur of her conviction, an evidentiary hearing, and such other relief as this Court deems appropriate and justice requires.

POINT ONE

**Juror Misconduct Violated Petitioner's Sixth Amendment Right to an Impartial Jury**

Point One there are no new EFTA Documents. However, Petitioner respectfully requests discovery dating from 30 Dec 2021 to April 30 2022 of the communication by the Jurors with the Court. The content of these communications was not disclosed and Petitioner reasonably believes that the content of these communications will support Petitioner's assertions.

remains as set forth in the Original Petition for Writ of Habeas Corpus dated 16th December 2025.

POINT TWO

**Suppression of Grand Jury Testimony of Testifying Witnesses Violated Due Process and the Brady Doctrine**

Point TWO there are no new EFTA Documents to amend this Section of the Petition..

POINT THREE

**The Government Violated Due Process by Permitting Private Victims' Counsel to Act as De Facto Prosecutors and agents of the government**

Many Documents disclosed pursuant to the Epstein Transparency Act ("EFTA") support Petitioner's contention that Petitioner's Due Process was violated as a result of the role played by Private Victim's Plaintiff's Counsel to Act as De Facto Prosecutors and agents of the government. 2008-1014 the Epstein investigation was led by Brad Edwards and Paul Cassell, and Scarola and a coterie of co-joined plaintiffs to include the special master appointed by the Government to assist the Victims collecting restitution under the Epstein Plea Agreement. This is revealed in emails and privilege logs. EFTA01105991, EXHIBIT A1. In 2014 Boies Schiller joined forces with the Florida Plaintiffs Lawyers confirmed in deposition of Paul Cassell. SDNY

2

GM_00119625-6, EXHIBIT A 2, GM _00378-9 AT PAGE 43-4 EXHIBIT A3. The deposition states Plaintiff's Lawyers are working together with the Government to overturn the NPA. GM_00119637 EXHIBIT A4. GM _00390 , Page 55. SDNY GM _ 0019642 lines 1-4 EXHIBIT A5. GM_00395 page 60. EFTA 00225483 EXHIBIT A6 Letter from Jeffrey R. Ragsdale at pages 3-4

> "I did what I could to assist Mr. Edwards, other
>
> attorneys, including Mr. Josefsberg, the attorney selected by the Special Master, and the Court, to
>
> locate victims, provide signed copies of the NPA, and answer questions. After all of the civil suits
>
> between Epstein and the victims were settled through the spectre of breaching the NPA, Mr.
>
> Edwards re-initiated the Jane Doe' United States litigation, asserting that his clients wanted to
>
> EFTA00225485 EXHIBIT A7 set aside the NPA and see Mr. Epstein federally charged due to violations of the Crime Victims'
>
> Rights Act."
>
> "Footnote 4 : 4 A few days after Jeffrey Epstein entered his guilty plea in state court, attorney Brad
>
> Edwards filed suit on behalf of one of the victims identified in the federal investigation (later
>
> expanded to include a second victim who had been identified in the state investigation), alleging
>
> violations of the Crim Victims' Rights Act. The suit, which is still pending, is captioned Jane
>
> United States, 08-80736-CV-KAM."

SDNY GM_00119628 EXHIBIT A8  and GM_00381 at page 46. This deposition further supports the facts that the Plaintiffs were working hand in hand with the Federal Prosecutors and used the relationship to gather identities of potential clients that would lead to settlements and a prosecution. SDNY GM_00119704-5, GM_00457-8 EXHIBIT A9.

Former Attorney General William Barr states at page 126 EXHIBIT A10 of his interview with House Oversight that the Epstein investigation was not conducted by the FBI. At its best the FBI investigates crime from a neutral position following the facts and leads of the case. Plaintiff's Counsel only owe an obligation to their clients to return the largest possible monetary judgment

3

for allegations set forth in their Complaint. Plaintiff's counsel are advocates and are free to misconstrue evidence and statements, mischaracterize evidence to the jury, judges and triers of fact. Plaintiff's counsel is not obligated to follow or disclose exculpatory evidence. The Plaintiff's counsel and the Press drove the investigation into Ghislaine Maxwell and repeatedly misrepresented and suppressed exculpatory evidence and repeatedly drove back the age of the plaintiffs to create a "shocking narrative". Kuvin letter EFTA00023920 EXHIBIT A11 ,EFTA00014661 EXHIBIT A 12.

The EFTA material reveals the dependence of the Prosecution on the Plaintiff's Papers in the absence of any real investigation of their own and the result was misrepresentations to judges and the jury resulting in an unsafe conviction. EFTA02766462-466. EXHIBIT A13

Throughout Villafana's letter to Ragsdale EFTA00225483 EXHIBIT A14 to chronicles her assistance to Plaintiff's lawyers in obtaining and identifying victims and settlements in the effort to overturn the NPA. In the handwritten notes of AUSA SDNY Kramer in 2016 it is stated that SDFL wanted "to pursue prosecution of Epstein."

The Ragsdale letter reveals that reporter Julie K Brown received the Ragsdale letter but was never disclosed to Petitioner. To write JKB expose which the Government asserts was responsible for reopening and indicting Epstein in SDNY at EFTA00225539 EXHIBIT A 15. "Watered down" at page 159 of JKB book. William Barr notes in his deposition that the SDNY was notorious for leaks at pg 97.

Use of Civil Suits to create a false narrative and prejudice

In an email EFTA00206295 EXHIBIT A17 the Government relates the degree to which Edwards was volunteering information to the government and driving the investigation, and the inconsistent evidence of ▮▮▮▮▮ who was not his client at the time. This did not correspond to the FBI 302 that was given by ▮▮▮ in ▮▮▮▮ therefore, no privilege should have attached to Edward's meetings and correspondence. Nonetheless this information was withheld from Petitioner and the judge quashed a subpoena for this information. In the , Berman Prosecution memorandum dated December 9, 2019 ▮▮▮▮ evidence in interview "was internally inconsistent" and ▮▮▮▮ is not a victim as her evidence was inconsistent. EFTA02731142 EXHIBIT A18.

In spite of the conclusions set forth in the Prosecution Memorandum dated December 19, 2019 which demonstrates that the Prosecution knew well the inconsistencies in their evidence . The Prosecution called evidence at trial they knew to be false and mischaracterized the evidence in closing.. EFTA02731082-1165 EXHIBIT A19

Failure to follow witnesses and the evidence

4

Les Wexner is just one witness who was never interviewed. ███████████ the best friend of ███████████ in a critical time period was never interviewed. Criminal Reports have been filed ███████████████████████ regarding the inconsistent evidence given by ████████ ████████ EXHIBIT A 20 Statement of ████████████

In EFTA00225643 EXHIBIT A 21 Villafana asks Plaintiff's lawyer Willett's to "update" her on ████████ civil case.

Relating to POINTS 3, 5, 7

Petitioner my demonstrate a showing of "factual innocence":

For a claim to be compelling Petitioner must demonstrate that "more likely than not, in light of the new evidence no reasonable juror would find her guilty beyond a reasonable doubt, or to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt" . stated, "in light of new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt". *House v. Bell*, 547 U.S. 518, 538 (2006); See Bousley v US 523 US 614, 623 .

The jury acquitted on Court2 that required believing Jane. The new evidence relating to the houses in New Mexico and 71st Street would have cause reasonable doubt so as not to convict on travel from New Mexico. The jury already had doubts about Jane's credibility as to Count 4. The new evidence would have been more likely than not to result in an acquittal .

These EFTA Documents that support Petitioner's arguments and the conclusion that there is a reasonable probability the result of the proceeding would have been different if the evidence was disclosed to the Defense prior to trial.


POINT FOUR

**Breach of the 2007 Non-Prosecution Agreement ("NPA") Violated the Fifth Amendment U.S. Const. amend. V.**

**Acosta get out of jail free**

**Transactional immunity**

In Docket No.207 Judge Nathan remarked at page 8 "Of course, the Government's disclosure obligations would require it to disclose to Maxwell any exculpatory evidence or evidence material to preparing the defense, including n evidence supporting a defense under the NPA"

EFTA00190632 EXJIBIT A22 is just one example of the prosecution failing in its obligations. At no point did the Prosecution inform Petitioner that there were ongoing negotiations while Epstein was incarcerated and after the signature of the NPA.

The Prosecution asserted that with regard to the NPA there were "no genuine factual disputes" Document 204 at page 22. The disclosure of the EFTA documents demonstrates that that was disingenuous at best.

In Document 204 at page 41 the trial judge ruled

> "Although the defendant makes the sweeping, self-serving, and unsupported allegation that "the government had every reason to foresee a potential prosecution of Epstein's co-conspirators in this District and, after multiple layers of review within the Department of Justice, intended to agree to preclude it," the USAO-SDFL's brief says otherwise. (Def. Mot. 1 at 22). Further still, the record developed in both civil litigation and OPR's investigation does not support this claim."

Because the Prosecution mislead the Court and did not discharge it discovery obligations of which they were reminded by the Court, the ruling is in err. The Letter in response to Ragsdale EFTA00190465 EXHIBIT A23 lists the links to New York and states that the prosecution was not purely local. Had the Prosecution complied with its Brady obligations the Petitioner and the Defense would have had an important argument and evidence supporting their contention that the "global" clause was indeed "global" beyond the limits of SDFL.

Link to DOJ Main

Repeatedly, the Prosecution was asked if there was evidence of DOJ Main reviewing the NPA. Repeatedly in the District Court, the Court of Appeal and in the Prosecution opposition to Petition for Certiorari to the US Supreme Court, the Prosecution stated there was none. We now know with the disclosure of the EFTA material that the Prosecution deliberately mislead those judges and those Courts. EFTA00225618, EXHIBIT A24 EFTA00225483-5 EXHIBIT A25 ;EFTA 0225489 EXHIBIT A26;EFTA0225490 EXHIBIT A27;EFTA0225493 exhibit a28 ;EFTA0225494-5 EXHIBIT A29;EFTA00225522EXHIBIT A30 (Memchel;EFTA 00225491 (LOURIE)EFTA00225532 EXHIBIT A31. EFTA00190477 EXHIBIT A32.

EFTA00009114 EXHIBIT A33 at 4-22 The Acosta Depo, Lourie made the final edits from the DOJ Main in Washington DC.

6

POINT FIVE

**<u>Fabrication and Misrepresentation of Physical Evidence (Massage Table and Related Materials) and Exhibit 52, the address book</u>**

Exhibit 52, the address book was never authenticated. This was addressed in the Dec 2025 Petition for Writ of Habeas Corpus. At trial the Prosecution alleged and closed on the basis that Exhibit 52 was Petitioners. The EFTA Documents at EFTA reveal an Affidavit of an FBI agent at ***EFTA 00608040 EXHIBIT A34*** which states that Exhibit 52 had been created by "persons working for his former employer" and Plaintiff's Counsel Cassell in Deposition stated that the book was created by Alfredo Rodrigues GM_00119479, line 6-10 page 232of the Deposition Transcript Edwards and Cassell vs Alan Dershowitz. SDNY GM_00119479 EXHIBIT A 35, GM_00232

This EFTA document would have impeached the evidence of Alessi. The evidence regarding Exhibit 52 was important to the jury. The jury ultimately disregarded the judge's instructions and drew unsubstantiated conclusions. What cannot be disputed is that this FBI Affidavit and the calling of the FBI agent was likely to have had a significant impact on the jury deliberations and would have likely led to another verdict. Judge Nathan observed that one of the other problems was that we were not able to re-cross Alessi to authenticate the Ex 52 and the Prosecution declined to call another witness to authenticate the Exhibit 52. EXB 52

The court recognized that the Petitioner was not able to cross Alessi Tr:1833-1834 and the Prosecution declined to call the witness who would have authenticated the address book Ex 52. This was prejudicial to the Petitioner.



EFTA and Cassell's deposition support that ▮ was a client of Brad Edwards and Cassell for 13 years and received a settlement identified by ▮ at page SDNY GM_00119507, GM_00260 at page 260. This was not disclosed prior to trial and Petitioner 's sentence was increased by the addition of ▮ as a victim. The failure to disclose the fact of the settlement or the identification of ▮ as a victim denied Petitioner the opportunity to call and or cross examine ▮ Villafana close to locating ▮ as stated in EFTA 00190427 EXHIBIT A36. On information and belief this was the ▮ for which Petitioner's sentence was increased. EFTA00225523 EXHIBIT A37.

Jane- New Mexico

Jane testified she was abused in an "impressive huge house" in 1994-1997

7

The Government showed the Grand Jury a photograph of an impressive huge house and testified it existed in the timeframe. It did not. Picture shown to GJ 00008896- 00008927:23-25-00008928:1-5

New York: Jane testified she was abused in Epstein's home 71st in 1994-1997.

4. The government showed a picture of Epstein's "New York" home confirming to the jury that it was Epstein's home in the time period. It was not. Wexner owned and lived in the home until he moved out some time in 1995. (EFTA 02731147 EXHIBIT A38 ,02731147 ) Epstein renovated, changed the decor and testimony by a government witness testified that Epstein moved in to the property sometime in 1996. Tr. 00008894

5.Photographs of the interior of the house were permitted and shown to the Jury as it corroborated Jane's description in 1994. Tr.1146:3-9 . They did not reflect the condition of the home in the purported time period.

Timeline Problems exposed by the EFTA

Witnesses were uncertain as to dates and timelines, and other testimony indicates that Epstein met Jane when Petitioner was older than alleged. Plaintiffs' counsel repeatedly sought to shift the timelines to make the alleged victims younger. As a consequence, Prosecution relied upon evidence that they knew or should have known was false. EFTA 00023223-4 EXHIBIT A39. This correspondence was not previously disclosed to Petitioner and supports her claims in this Petition.

Jane could not recall if she was abused in New Mexico in GJ. 00008947:21-25 -0000948:1-2

Jane testified she could not recall timeline Tr:522:2-23

At trial Jane stated that the FBI got everything wrong, made typos in her 302's, could not recall what she told FBI. (Tr.421;9-14, 515)

Defense attempted to question the FBI agent about Jane's statements regarding New Mexico - the court did not allow it. In the light of the release of the EFTA it is clear that the evidence adduced by the Prosecution was false and they should have known it was false as they had the Tax Returns and Financial Records of Epstein.

Memory of events was two steps removed. Tr 2172. Court did not adopt "broad statement that memory of events in the time frame was central". Tr.416:4-5. The court found that Timeline was collateral to events.

Jane testified Groff booked her flights in relevant time frame. Tr.531:22-25

8

Groff did not work for Epstein until 2001 as supported by the EFTA01246216-24 EXHIBIT 40 Groff's Proffer.

Jane testified she could recognize other people she was abused by but the government never asked who nor showed photographs by which others have added other witnesses to the timeline Tr.527:21-24

Jane stated she was "blackmailed". That she was "bullied for interviews or statements with press and by Virginia's lawyers" Tr:541:19-24

Plaintiffs Lawyers used Jane to promote and publicize their case, the press paid Virginia and ███████████████████████████████████

███████████████████ (Relentless Pursuit at 271-272)

Jane's lawyer pressured her to participate in the criminal trial because "it would help her case" - it helped make more money for all the parties as the lawyers made pro rata money. (Tr.544:20-25-555:1-4). Defense was denied a sidebar to argue for a waiver of privilege - as along with other emails to the government establishing when Jane actually went to New York to see a Broadway play were blocked.

---

b. New Mexico (1995 – "Huge House")

Jane testified that Petitioner was abused in New Mexico in 1995 in a "huge" house. *(Tr. 518:10–13; EXHIBIT 107)*

*Independent photographic evidence, including satellite imagery (NASA), demonstrates that the house did not exist in:*

- *1994*
- *1995*
- *1996*
- *1997*

Jane's story in short was tampered with - trial evidence suggests as previously argued that Epstein did not meet Jane until years later

New York

9

Jane was not abused in New York in 1994 or 1995 as she described as Epstein did not own the house and the decor was not the same as described by Jane at trial - Epstein did not move in as testified until sometime in 1996 Govt witness Tr:1948:20-25 indicating that Jane's story is factually impossible and calls into question her credibility. Jane's story reflects the Plaintiff's lawyer's efforts to drive the timeline back making the women younger for the shock value and appeal to the Media in search of click bait.

The Government knew:

- That Mr. Wexner owned the residence in 1994 and lived there, and
- That Epstein resided in a separate rental property during that period.

Wexner's counsel informed the Government that Wexner did not vacate the property until 1995. *(fn)*

Despite this, the Government introduced prejudicial photographs purportedly to corroborate Jane's memory of the property. Those photographs were taken in 2019 and presented as representative of the home as it existed in 1994, notwithstanding changes in décor and condition over time. *(Trial Transcript p.532))*

New Mexico

Jane could not have been abused in New Mexico as she alleged in the timeframe as she alleged at the age she alleged- she could not have visited until she was 19 or 20 after 2000 when the house, the "huge house" was completed.

Jane testified she was abused at age 15 or 16 in New Mexico. Defense asked for a limiting instruction as given for Farmer but was denied by the Court Tr.2777 - - defense was denied Tr.2777

The government misled the GJ and the court and the Jury - there was no impressive huge house and Jane was not in New Mexico at 15 or 16 - she went in 2000 at the earliest when the house was built at which point she was at least 20 years of age.

Palm Beach

Jane testified she was abused in Palm Beach in 1994, 1995. Government witness Alessi testified that the house was "shut for extensive renovation" in 1994 Tr.970:13-16 . Again the EFTA's demonstrate that the Prosecution had the Epstein Tax Returns and Financial information that was not disclosed to Petitioner but is on the Privilege Logs. This data would have established and

supported Petitioners position that the house was not habitable when Jane alleged she was assaulted. Still the Prosecution has concealed these EFTA's

Alessi also testified that he did not have good have a good memory on timeline (tr.977)

The government claimed that Petitioner took over the house and immediately set strict rules to include no eye contact. In sentencing the Court imposed a sentence that reflected the "rules" that Petitioner imposed in the 1990's. SH 21-23 and 42 Except the Government knew that no rules were imposed until the 2000's GJ 00008929:12-25 and EFTA 02731118 EXHIBIT A41 now establishes Petitioners assertions. Alessi 's relation with Epstein deteriorated in 2000 - not in 1990's.

Because the offenses depended upon the ages of the women, the timeline mattered and the dates and ages were material factors in the Petitioner's defense. The Prosecutions failure to disclose these documents. The failure by the Prosecution to call evidence they knew to be truthful and instead rely upon evidence they knew to be false. The deliberate misleading of the Courts as to the facts and particularly the history of the NPA caused prejudice and resulted not only in an unsafe conviction but a sentence that is not supported by the facts. This has been revealed by the EFTA's.

Sentence

The Court ruled that there was no reason to resolve Carolyns age. The judge prohibited cross examination and evidence relating to the age of all of the complainants but particularly Carolyn. By 2002, Petitioner had "largely exited" the Epstein household and Sarah Kellen had taken over and establishing Carolyn's age would have established that Carolyn did not meet Epstein until 2002.

Kate

Kate testified that Groff connected her to Epstein Tr:1198:12- Groff began working for Epstein in February 2001 EFTA 01246216 EXHIBIT A42 at which point Kate was approximately 23-24 years old.

Kate told the government that she discussed a movie titled St Trinians when she was allegedly in Palm Beach - the movie was released in 2007 - The defense was denied being able to cross on the timeline of the movie. Tr 1299:11-12. The movie would have established an accurate and firm timeline for the alleged events.

Kate was anonymized to the point of not existence outside of the Maxwell Trial orbit. Tr:1221:18-25; 1222:1-9. The consequence of that anonymization meant that a valuable witness

*41*

living outside of the United States did not come forward until 2025. See Declaration of ▮▮▮▮
▮▮▮ EXHIBIT A 19.

The enhancement in relation to Kellen should be quashed as we now know that ▮▮▮▮
▮▮▮▮▮▮▮▮ there is ▮▮▮▮▮▮▮▮▮▮ and
therefore Petitioner could not have supervised Kellen as an aggravating feature enhancing
sentence.

POINT NINE

The leadership enhancement applied by the Court is not upheld by the Berman Prosecution
memo newly disclosed that states that there were clearly defined periods and ▮▮▮▮
▮▮▮▮▮▮ - SH p29-35. EFTA02731082. The Prosecution adduced
evidence they knew to be false

Petitioner was sentenced for "culture of silence that began when Maxwell took over "SH p.8-9
and 21. The *EFTA02731119 EXHIBIT A43* Memorandum reveals that Alessi stated that "things
not change until 2000" – This was not previously disclosed to Petitioner.

EFTA – the media drove the prosecution  and the salacious narrative – The govt had volume of
evidence and quality of evidence against a different person EFTA00037556 but chose to
prosecute the high-value party. EXHIBIT A44

POINT SIX

Mischaracterization of Property, Asset, and Financial Evidence Violated Due Process the
Government protects their source of its asset tracing under attorney client privilege

Privilege Logs and Asset information came from Plaintiffs attorney see attached.

POINT SEVEN

Amendment of Counts Three and Four

b. New Mexico (1995 – "Huge House")

Jane testified that Petitioner was abused in New Mexico in 1995 in a "huge" house.
*(Tr. 518:10–13; EXHIBIT 107)*

*Independent photographic evidence, including satellite imagery (NASA), demonstrates that the house
did not exist in:*

/2

- *1994*
- *1995*
- *1996*
- *1997*

Jane's story in short was tampered with - trial evidence suggests as previously argued that Epstein did not meet Jane until years later

New York

Jane was not abused in New York in 1994 or 1995 as she described as Epstein did not own the house and the decor was not the same as described by Jane at trial - Epstein did not move in as testified until sometime in 1996 Govt witness Tr:1948:20-25 indicating that Jane's story is factually impossible and calls into question her credibility. Jane's story reflects the Plaintiff's lawyer's efforts to drive the timeline back making the women younger for the shock value and appeal to the Media in search of click bait.

New Mexico

Jane could not have been abused in New Mexico as she alleged in timeframe as she alleged - she could not have visited until she was 19 or 20 after 2000 when the house was "huge house" was completed.

Timeline Inconsistencies

Witnesses were uncertain as to dates and timelines, and other testimony indicates that Epstein met Jane when Petitioner was older than alleged. Plaintiffs' counsel repeatedly sought to shift the timelines to make the alleged victims younger. As a consequence, Prosecution relied upon evidence that they knew or should have known was false. EFTA 00023223-4. EXHIBIT A49 This correspondence was not previously disclosed to Petitioner and supports her Petition.

Jane

Jane alleged that Petitioner met her in or about 1994, and that Petitioner was abused by Jeffrey Epstein and Petitioner in Palm Beach, New York, and New Mexico, focusing on the timeframe 1994–1996.

a. New York (1994 – 71st Street Mansion)

Jane alleged Petitioner was abused in New York in 1994 at Epstein's 71st Street mansion.

The Government knew or should have known:

13

- That the residence in question was not constructed until approximately 1999–2000. *(Tr. 238:8–11; EXHIBIT 124)*

---

c. Misleading Grand Jury Presentation

The Government presented false and misleading evidence to the Grand Jury, including:

- A photograph of the "huge" New Mexico residence and elicited testimony confirming that it "accurately depicts that property." *(EFTA 00008927:20–25) EXHIBIT A50*
- A photograph of the 71st Street property implying Epstein's control, despite evidence to the contrary. *(EFTA 00008890) EXHIBIT A51*

---

d. Inconsistent Statements and Suppressed Impeachment Evidence

The Government was also aware that:

- Jane stated Petitioner could not recall whether abuse occurred in New Mexico. *(EFTA 00008948) EXHIBIT A 52*
- Jane indicated that FBI-recorded statements were inaccurate or improperly recorded. *(Transcript citations: 496:18; 506:19 )*

Defense counsel attempted to question an FBI witness at trial regarding statements presented to the Grand Jury, but the Court disallowed the inquiry.

---

e. *JANE : Jane reported Petitioner was blackmailed (TR 607) EXHIBIT 107* ███████

███████████████████████████████  *(See footnote 12) The delay*

*in charging Petitioner allowing witness interference and coercion and use of*

*threats. That allowed* ████ *to interfere with* ████ *evidence.*

14

3. Jane stated in evidence that the FBI wrote everything down wrong and that the timeline of events was wrong (Trial Tr 506:16-20) EXHIBIT 62. Petitioner could not recall the house Petitioner lived in (Trial Tr 380:16-25, 381:1-7) EXHIBIT 124. This would have revealed that Petitioner had moved before Petitioner met Epstein and that therefore Petitioner was in fact older and was living in a house in a gated community which reflected the degree to which her memory had deteriorated with the passage of time due to the Government's delay in prosecuting Petitioner and the interference in her evidence.

4. ███████ stated that victims attended therapy in a group ABC Interview with ███████ EXHIBIT 84 (see fn 21).

5. ███████████████ Testified Petitioner was approximately 17 years of age when Petitioner met Petitioner (TR 1172) EXHIBIT 98 and testified with specificity that Petitioner met Epstein at Petitioners Home in London. (TR 1235:11-13) EXHIBIT 98 The attached property record EXHIBIT 111 shows that Petitioner neither rented nor owned the property until 1996 and renovated it through 1997 when Petitioner moved in. ████ was 20 years of age in 1997. The Court ruled that even during COVID Petitioner would not permit time for the final witness Kevin Moran to travel from London which required a minimum of 72 hours. The Court expressed her belief that the testimony of Kevin Moran had minimal value EXHIBIT 51. His testimony would have establish Petitioners that ████ did not meet Petitioner or Epstein at Petitioner's home in London in 1994, 1995, 1996 but rather in 1997, at the earliest, when renovation was complete at which point Petitioner was 19 or 20 years of

*age. The judge's conclusion deprived the defense the ability to challenge the*

*credibility of the* ▮▮▮ *witnesses' memory and credibility because Petitioner was so*

*adamant as to the details of the circumstances and timings of events which were*

*not possible at the time and the age Petitioner stated.*

---

6. NTW – ▮▮▮

▮▮▮ was interviewed in September 2019.
*(Memorandum dated December 19, 2019)*

The Government was unable to corroborate her claims of being "lent out."
*(EFTA 02731136, fn. 52) EXHIBIT A 53*

The Government further confirmed:

- ▮▮▮ was paid for stories in the press, and
- That "big headlines" would increase sales of her memoir.
  *(EFTA 02731141–02731142)EXHIBIT A54*

The Government acknowledged that Petitioner provided "inaccurate characterizations of her experiences." *(id.)*

The evidence of ▮▮▮ was considered at sentence even though the government found her so unreliable that they did not call her as a witness. Geoffrey Berman in his prosecution memo deals with the unreliability of ▮▮▮ as a witness. Had the memo been disclosed before trial, Petitioner would have called her as a witness. Even if inadmissible then it was improper for the Prosecution to call evidence they knew to be false

---

15. Photographic Evidence Manipulation / Influence

- A journalist provided approximately 40 photographs to Virginia prior to her FBI 302 interview.
  - o *See Nobody's Girl* at 133
  - o Vaughn Index pp. 130–131, 133, 135

16

- o  *(EXHIBITS 45, 46)*
- The FBI advised ███████ that, on information and belief, the photograph of Prince Andrew was dated 1998.
- Plaintiffs' counsel sought to portray witnesses as younger for media "shock value."
- The version initially provided to the FBI differed from later public narratives.

Prosecutorial Misconduct

A defendant moving to dismiss for selective prosecution must establish 1) other similarly situated people have not generally been proceeded against, he has been singled out for prosecution and 2) the government discriminatory selection for prosecution has been in bad faith. US v Berrios 501 F 2d 1207, 1211 (2Cir. 1974).

Petitioner was not included in any of the 3 earlier indictments against Jeffrey Epstein. She was not mentioned in the Palm Beach Police Reports. In fact, she was not named in the 2019 Indictment against Jeffrey Epstein as even an unindicted co-conspirator. After Jeffrey Epstein's death Petitioner was indicted. Attorney General William Barr stated under oath that, "we talked about urgent requests of high-value co-conspirators." It was only after the death of Epstein and in spite of the evidentiary inconsistencies and the credibility issues we now know the Prosecution knew.EFTA00023223 EXHIBIT A 55.

CONCLUSION:

Petitioner requests that the Court consider permitting her to Amend her Petition one more time as she is aware of substantial additional information that if she is able to review it would further prove the Governments misconduct that resulted in prejudice at her trial. The Government on their own admission continues to hide relevant Brady material which we can see in the privilege logs. To date Petitioner has not even received an unredacted copy of the letter sent to the Court dated 23 February 2026 which amounts to the Government having communications with the judge directly and to which the Petitioner is not a Party. The Government has also failed to serve the redacted copy of the Original 2255 petition.