**From:** Ghislaine Maxwell
**To:** Pro Se Filing
**Subject:** UNDER SEAL PER ORDER OF COURT GHISLAINE Maxwell 02879-509 ADD EX 49
**Date:** Sunday, July 26, 2026 4:56:56 PM
**Attachments:** EX 50 EFTA 00225046 copy.pdf
EX 51 EFTA 00206285 copy.pdf
EX 52 EFTA 00206294 copy.pdf
EX 53 EFTA 00206296 copy.pdf
EX 54 EFTA00098486 copy.pdf
EX 55 EFTA00015003 copy.pdf
EX 56 EFTA 01650808 copy.pdf
EX 57 EFTA 00014540 copy.pdf
EX 58 EFTA 00014541 copy.pdf
EX 59 EFTA00190473 copy.pdf
EX 60 EFTA 00224983 copy.pdf
EX 61 EFTA 00225089 copy.pdf
EX 62 EFTA 01660396 copy.pdf
EX 63 EFTA 01660400 copy.pdf
EX 64 EFTA 00173974 copy.pdf
EX 65 EFTA 00173954 copy.pdf
EX 66 EFTA 00173955 copy.pdf
EX 67 H.O. 012162 copy.pdf

---

CAUTION - EXTERNAL:

Please file under SEAL per order of the court

CAUTION - EXTERNAL EMAIL: This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

that the state offered, including work release. Because of this, I had to withdraw the Notice of Breach and could only write a letter to the Sheriff's Office pointing out all of the false statements contained in Epstein's application for work release and letters to the victims informing them that Epstein was in work release status. The Sheriff's Office never responded to or acknowledged my letter.

On June 9, 2009, I prepared what I believe was the last Memorandum requesting authorization to issue a Notice of Breach and to indict Epstein. The Office authorized issuance of the Notice of Breach, and the Indictment Packages was re-reviewed, approved, and signed, with arrest warrants for Jeffrey Epstein, [redacted], and [redacted]. The Notice of Breach was served on June 12, 2009 at a hearing on Epstein's Motion to Dismiss one of the civil suits filed by one of the victims identified during the federal investigation. Once again, Epstein was allowed to "cure" his breach, and we were not allowed to file the indictment.

There were strong internal disagreements on a number of subjects, including: the handling of the meetings with Epstein's counsel; plea negotiations; the NPA generally; the failure to consult with the victims; continuing plea negotiations in the face of Epstein's clear bad faith; the refusal to defend me against personal attacks from Epstein's attorneys; the agreement to put off seeking Epstein's computer equipment; the consultations with Epstein's attorneys regarding victim notifications; the handling of the "appeals" to Washington; allowing delays during those "appeals," while Epstein's attorneys were harassing the victims and their family members; attempts by Epstein to renegotiate the term of imprisonment; attempts by Epstein to renegotiate the payment of damages to the victims and attorneys' fees to their attorney representative; allowing Epstein to participate in the work release program after specifically discussing it during plea negotiations; and repeatedly allowing Epstein to "cure" intentional breaches of the NPA. These were kept internal as I tried to deal professionally with opposing counsel.

In the midst of all of the post-NPA back-and-forth with Epstein, was the *Jane Doe v. United States* litigation.[4] Despite the Office's request to be recused from the case, the Justice Department decided that there was no conflict of interest and I was tasked with serving as co-counsel. The Office asserted attorney-client, executive, work product, and deliberative process privileges, so all of the internal disagreements, pros memos, and indictments were not disclosed while all of my communications with opposing counsel (often at the behest of supervisors) were disclosed. After an initial flurry of filings, Brad Edwards, as counsel for the named plaintiffs, stated on the record that he believed that setting aside the NPA would not benefit his clients, and he sued Epstein on behalf of a number of victims under the NPA. I did what I could to assist Mr. Edwards, other attorneys, including Mr. Josefsberg, the attorney selected by the Special Master, and the Court, to locate victims, provide signed copies of the NPA, and answer questions. After all of the civil suits between Epstein and the victims were settled through the spectre of breaching the NPA, Mr. Edwards re-initiated the *Jane Doe v. United States* litigation, asserting that his clients wanted to

[4] A few days after Jeffrey Epstein entered his guilty plea in state court, attorney Brad Edwards filed suit on behalf of one of the victims identified in the federal investigation (later expanded to include a second victim who had been identified in the state investigation), alleging violations of the Crime Victims' Rights Act. The suit, which is still pending, is captioned *Jane Doe 1 and Jane Doe 2 v. United States*, 08-80736-CV-KAM.

deposition by then-Palm Beach Chief of Police Michael Reiter, in which he stated that Epstein, a billionaire with many powerful friends, had received special treatment in both his plea deal and the terms of his incarceration. Although federal investigators at one point produced a draft 53-page indictment against Epstein, he was eventually allowed to plead guilty to only two relatively minor state charges and receive a short term of incarceration: 13 months in the county jail, during which he went to the office every day, and one year of community control, during which he traveled frequently to New York and his private island in the Virgin Islands.

The Daily Beast has now discovered another instance in which Epstein apparently received special consideration: As a convicted sex offender, he is required by law to undergo an impartial psychological evaluation prior to sentencing and to receive psychiatric treatment during and after incarceration. This is because child molesters tend to be repeat offenders with high rates of recidivism. According to a source in law enforcement, however, Epstein was allowed to submit a report by his private psychologist, Dr. Stephen Alexander of Palm Beach, Florida, whose phone has since been disconnected with no forwarding information.

The Daily Beast's second article provided details about Epstein's systematic abuse of underage girls at his Palm Beach mansion, where members of his staff allegedly recruited and paid a parade of teenagers, most of them 16 or younger, to perform daily massages that devolved into masturbation, groping, and sometimes full-blown sexual contact. It also revealed a monetary relationship between Epstein and Jean Luc Brunel, a frequent visitor to whom he gave $1 million around the same time that Brunel was starting his MC2 modeling agency. Some of the young girls MC2 recruited from overseas —often from Eastern Europe and South America—are known to have been passengers on Epstein's private jets.

The U.S. Attorney General's Office in Florida says that it is against policy to confirm or deny the existence of an investigation. Jeffrey Epstein's lawyer, Jack Goldberger, says he has no knowledge of an ongoing probe, and he told The Daily Beast, "Jeffrey Epstein has fully complied with all state and federal requirements that arise from the prior proceedings in Palm Beach. There are no pending civil lawsuits. There are not and should not be any pending criminal investigations, given Mr. Epstein's complete fulfillment of all the terms of his non-prosecution agreement with the federal government."

Read more: http://www.businessinsider.com/hedge-funder-joseph-epstein-investigated-for-child-trafficking-2010-7#ixzz1FxAJrdFa

---

**From:** [redacted]. (USAFLS) <[redacted]>
**Sent:** Monday, March 14, 2011 11:27 AM
**To:** [redacted]. (USAFLS); [redacted] (USAFLS); [redacted] (USAFLS); [redacted] (USAFLS); [redacted] (USAFLS)
**Subject:** FW: Cassell or Edwards commenting to press re Jane Doe suit
**Attachments:** Duke of York to face fresh questions as Epstein case takes new twist - Telegraph.pdf.zip

Thought you should see this. Don't know if we need to file anything with the court about disclosing matters before the court to the press? Or whether it appears that Edwards may be trying to use the new criminal investigation to assist him in his defense of Epstein's civil suit against him (or in Edwards' counterclaim for defamation)?

The agents fly to [redacted] today to interview the witness.

Nick Pryer
Assistant Features Editor
Mail on Sunday

This e-mail and any attached files are intended for the named addressee only. It contains information which may be confidential and legally privileged and also protected by copyright. Unless you are the named addressee (or authorised to receive for the addressee) you may not copy or use it, or disclose it to anyone else. If you received it in error please notify the sender immediately and then delete it from your system. Please be advised that the views and opinions expressed in this e-mail may not reflect the views and opinions of Associated Newspapers Limited or any of its subsidiary companies. We make every effort to keep our network free from viruses. However, you do need to check this e-mail and any attachments to it for viruses as we can take no responsibility for any computer virus which may be transferred by way of this e-mail. Use of this or any other e-mail facility signifies consent to any interception we might lawfully carry out to prevent abuse of these facilities.
Associated Newspapers Ltd. Registered Office: [redacted].

---

This e-mail and any attached files are intended for the named addressee only. It contains information, which may be confidential and legally privileged and also protected by copyright. Unless you are the named addressee (or authorised to receive for the addressee) you may not copy or use it, or disclose it to anyone else. If you received it in error please notify the sender immediately and then delete it from your system. Please be advised that the views and opinions expressed in this e-mail may not reflect the views and opinions of Associated Newspapers Limited or any of its subsidiary companies. We make every effort to keep our network free from viruses. However, you do need to check this e-mail and any attachments to it for viruses as we can take no responsibility for any computer virus which may be transferred by way of this e-mail. Use of this or any other e-mail facility signifies consent to any interception we might lawfully carry out to prevent abuse of these facilit!

ies.
Associated Newspapers Ltd. Registered Office: [redacted].

------------

**From:** [redacted]. (USAFLS) <[redacted]>
**Sent:** Wednesday, March 09, 2011 4:33 PM
**To:** [redacted] (USAFLS); [redacted]. (USAFLS); [redacted] (USAFLS); [redacted], [redacted] (USAFLS); [redacted] (USAFLS)
**Cc:** [redacted]. (FBI)
**Subject:** Highly Confidential -- Preliminary Investigation of Additional Crimes of Jeffrey Epstein and Others

**Importance:** High

As all of you know, there has been much in the press lately about revelations by [redacted] regarding her relationship with Jeffrey Epstein and his introduction of her to a number of highly placed world and business leaders. Ms. [redacted] was one of the victims identified in our initial investigation of Jeffrey Epstein, although at the time we were only able to speak to her briefly on the telephone, and the agency and the office were unwilling to spend the funds to fly a group to [redacted] to interview her without an assurance that she would provide complete information.

Through speaking with the press, Ms. [redacted] made contact with Brad Edwards and his investigator, [redacted] Fisten, who in turn, reached out to me, and I to Special Agent [redacted], regarding these new allegations. (They

he is willing to cooperate.

As mentioned, I will write up a formal memo with analysis and a proposed course of conduct.

[redacted]

Assistant U.S. Attorney

[redacted]

Fax [redacted]

------------
**From:** [redacted] (USAFLS) <[redacted]>
**Sent:** Monday, February 28, 2011 1:35 PM
**To:** [redacted]. (USAFLS)
**Subject:** RE: Jane Does 1 and 2 v. United States - CVRA Lawsuit (S.D.Fla.)

Sure – who is [redacted] [redacted] by the way?

**From:** [redacted]. (USAFLS)
**Sent:** Monday, February 28, 2011 1:29 PM
**To:** [redacted] (USAFLS); [redacted] (USAFLS)
**Subject:** RE: Jane Does 1 and 2 v. United States - CVRA Lawsuit (S.D.Fla.)

Maybe after we finish with DOJ, the four of us (you two and [redacted] and I) can stay on and discuss a bit further? After my discussion with the person at Appellate and some case law research, I have some ideas.

[redacted]

Assistant U.S. Attorney

[redacted]

Fax [redacted]

45. During my interview with the real FBI agents, I told them about my contact from the purported FBI agent. They did not tell me that it had been a legitimate call from the FBI.

46. The interview I did with these FBI agents was very stressful for me. My meeting lasted for several hours. It was not easy to talk about all these difficult things, but I went through it. I was crying at points in the interview. The interview also placed stress on my marriage, because my husband had to listen to all the terrible things that happened to me. It was difficult for me to have to discuss being passed around as a sex object among powerful people. It was very hard for both of us.

47. The agents had come from Florida to meet with me [redacted] and took my information which gave me reason to believe that Epstein could still be prosecuted for the crimes he committed against me. I was not told even at that point that he could not be prosecuted for the crimes he committed in Florida. I was not told about the CVRA case or that there was any other option for me to enforce my rights. In fact, by the agents meeting with me I believed I was doing exactly what I needed to do to enforce my rights and assist in the prosecution.

48. I have seen the Government's recent brief trying to keep me from joining this case. In that brief, the Government says about me "the Government is aware that petitioners' counsel have been representing her [that is, me] since at least as early as March 2011." This is completely untrue, and I think the Government knows it is untrue. I was not represented by legal counsel in March 2011. The Government has to know that I didn't have an attorney then, because I didn't have an attorney when I met the agents [redacted] I don't understand why the Government is giving false facts to the court.

49. In around 2011, I spoke to attorney Brad Edwards. He told me he hadbeen sued by Jeffrey Epstein and wanted to know what I knew about Epstein and his associates' involvement with sexually abusing underage girls. I told him about my abuse and trafficking by Epstein. I also told him at that time that I had been sexually abused by Prince Andrew, Ghislaine Maxwell, Jean Luc Brunel, Alan Dershowitz, and other powerful people.

50. In around April 2011, as a follow-up to my earlier call with Brad Edwards, I got a telephone call from him and another attorney, Jack Scarola. They just wanted general information about whether various people had information relevant to the lawsuit. They told me that they were taping the conversation, and I had no problem with that. I cooperated with them and gave them information about which people had information relevant about Epstein's crimes. Because it was over the phone and we did not know each other very well, they were very polite and did not ask me a lot of details about specifically who I had sex with and what sexual activities I was forced to participate in. It was a general, background interview.

51. As the months following the FBI meeting [redacted] passed, I was trying to be patient but I began wondering what was going on about prosecuting Epstein. I continued to be very confused about what was happening. I was hoping that some kind of prosecution would come out of it. But when nothing came of it, I got very upset. I wanted to do something to stop Epstein and the other people he associates with from sexually abusing girls. Law enforcement

**From:** "[redacted]>
**To:** "[redacted]>, "[redacted]>, "[redacted]>
**Cc:** "[redacted]>
**Subject:** RE: Epstein
**Date:** Sun, 24 Mar 2019 20:08:43 +0000
**Importance:** Normal

---

Thanks, and sounds good. And [redacted] and I chatted a bit about his conversation with Kaplan – [redacted], let me know if/when you get back to her, and happy to circle up to talk further thereafter.

**From:** [redacted]>
**Sent:** Sunday, March 24, 2019 3:53 PM
**To:** [redacted]>; [redacted]>; [redacted]>
**Cc:** [redacted]>
**Subject:** RE: Epstein

It was good, for the most part. Making progress. [redacted] and I interviewed two witnesses on Friday at the BSF office in Fort Lauderdale. The third witness we were supposed to interview decided not to come at the last minute, because she decided she didn't want to be involved in the case after all this time has passed. She was not someone we were focused on at this stage, so while we may circle back at another time to see if she comes in, right now it's fine.

We had a call with an attorney who represented FL victims a decade ago, and we're coordinating with him to schedule follow up interviews with two of the witnesses who were approached and said they weren't sure how the civil case their lawyer handled affected if they could talk to us.

[redacted] had a call with Robbie Kaplan right before the trip, and the upshot is we are making baby steps towards an interview with [redacted]. They are concerned about her exposure, so we are discussing ways of addressing that, and the next step will likely be an attorney proffer.

**From:** [redacted]>
**Sent:** Sunday, March 24, 2019 3:40 PM
**To:** [redacted]>; [redacted]>; [redacted]>
**Cc:** [redacted]>
**Subject:** Epstein

How did the rest of the trip go?

[redacted]
Deputy Chief, Public Corruption Unit
U.S. Attorney's Office for the
Southern District of New York
Tel. [redacted]

**From:** "Jackson, Angela (NY) (FBI)" [redacted]
**To:** "Allen, Amanda L. (DO) (FBI)" [redacted]
**Subject:** Re: Re: New Victim for treatment
**Date:** Fri, 08 May 2020 14:37:49 +0000
**Importance:** Normal

---

Thank you

-

On May 8, 2020 10:35 AM, "Allen, Amanda L. (DO) (FBI)" [redacted] wrote:
Good to go. I added it in SP.

---

**From:** Jackson, Angela (NY) (FBI) [redacted]
**Sent:** Friday, May 8, 2020 10:34 AM
**To:** Allen, Amanda L. (DO) (FBI) [redacted]
**Subject:** Fwd: Re: New Victim for treatment

Amanda see below.

-

---------- Forwarded message ----------
From: "Young, Amanda N. (NY) (FBI)" [redacted]
Date: Apr 24, 2020 1:51 PM
Subject: Re: New Victim for treatment
To: "Jackson, Angela (NY) (FBI)" [redacted]
Cc: "Allen, Amanda L. (DO) (FBI)" [redacted]
Yes, she is a known victim. We met with her last year in person with Brad present. She spoke with a VS in FL as well.

---

**From:** Jackson, Angela (NY) (FBI) [redacted]
**Sent:** Friday, April 24, 2020 1:49:27 PM
**To:** Young, Amanda N. (NY) (FBI) [redacted]
**Cc:** Allen, Amanda L. (DO) (FBI) [redacted]
**Subject:** Fwd: New Victim for treatment

Hi Mandy - please see below. Has she met with you?
Thanks
Angela

-

---------- Forwarded message ----------
From: Randee Kogan [redacted]
Date: Apr 24, 2020 1:27 PM
Subject: New Victim for treatment
To: "Jackson, Angela (NY) (FBI)" [redacted] "Allen, Amanda L. (DO) (FBI)" [redacted] "Collicelli, Lynn M. (DO) (FBI)" [redacted] Beth Carrus

**From:** "[redacted])" <[redacted]>
**To:** [redacted] <[redacted]>
**Cc:** "[redacted])" <[redacted]>, "[redacted])" <[redacted]>
**Subject:** RE: Briefing in Florida regarding whether the Florida NPA extends to New York
**Date:** Fri, 26 Jul 2019 02:25:20 +0000

---

Will do.

**From:** [redacted] <[redacted]>
**Sent:** Thursday, July 25, 2019 22:24
**To:** [redacted]) <[redacted]>
**Cc:** [redacted]) <[redacted]>; [redacted]) <[redacted]>
**Subject:** Re: Briefing in Florida regarding whether the Florida NPA extends to New York

Perfect - call my cell - [redacted]. [redacted]

[redacted] - sent from my iPhone - please excuse brevity and errors.

On Jul 25, 2019, at 8:21 PM, [redacted]) <[redacted]> wrote:

Thanks very much. Would 10:00 a.m. tomorrow your time (noon our time) work? If so, we can call you then at [redacted], or if not, we could also do 2:00 p.m. your time.

thanks,
[redacted].

**From:** [redacted] <[redacted]>
**Sent:** Thursday, July 25, 2019 22:13
**To:** [redacted]) <[redacted]>
**Cc:** [redacted]) <[redacted]>; [redacted]) <[redacted]>
**Subject:** Re: Briefing in Florida regarding whether the Florida NPA extends to New York

Happy to chat tomorrow. Name your time that's convenient for you.

[redacted] - sent from my iPhone - please excuse brevity and errors.

On Jul 25, 2019, at 8:07 PM, [redacted]) <[redacted]> wrote:

[redacted],

Thank you for sending us these materials, we appreciate being able to stay up to date, and we'll continue to keep an eye on the docket for submissions that may be relevant for our investigation.

Separately, might you be available for a quick call sometime tomorrow (Friday) or next week? No rush or emergency, but we wanted to talk with you about a question in connection with your expertise on the CVRA generally. At your convenience.

thanks,
[redacted].

**From:** [redacted] <[redacted]>
**Sent:** Thursday, July 25, 2019 13:01
**To:** [redacted]) <[redacted]>
**Cc:** [redacted]) <[redacted]>; [redacted]) <[redacted]>
**Subject:** RE: Briefing in Florida regarding whether the Florida NPA extends to New York

Hi [redacted],

I wanted to make you aware of a recent filing (on Tuesday) by Jane Doe 1 and 2 in the Florida CVRA case. See attached. You may find interesting our argument at pp. 3-6, in which we explain why Judge Marra must craft remedies in the case that relate solely to Florida crimes and Florida victims ... because the NPA only covers Florida.

We filed our reply brief on remedies on Tuesday – and that should have brought all briefing on remedies for the CVRA violation to a close. But yesterday Epstein's lawyer (Marty Weinberg) filed a motion for a sur-reply. See attached. In point (a) on page 2, he argues that he should have an opportunity to file a sur-reply discussing, among other things, the scope of the NPA. On Monday, we will be filing an opposition to Weinberg extending the briefing further. It appears that Judge Marra is poised to rule rapidly on the motion for a sur-reply, as he asked for us to respond quickly.

I wanted to make you aware of these developments. My clients were told back in 2013 that the NPA did not extend to New York or other jurisdictions – and that is the point we are making to Judge Marra.

[redacted] for Jane Doe 1 and 2

[redacted]
[redacted] (phone) [redacted] (fax)
[redacted]
You can access my publications on [redacted]

CONFIDENTIAL: This electronic message - along with any/all attachments - is confidential. This message is intended only for the use of the addressee. If you are not the intended recipient, you may not use, disseminate, distribute or copy this communication. If you have received this message in error, please immediately notify the sender by reply electronic mail and delete the original message. [redacted] is admitted to the Utah State Bar, but not the bars of other states. Any views he expresses in this email are his own.

[redacted] C. (USAFLS)

**From:** [redacted] C. (USAFLS) <AVillafana@usa.doj.gov>
**Sent:** Thursday, June 19, 2008 1:23 PM
**To:** [redacted], E N. (MM) (FBI); Richards, Jason R. (MM) (FBI)
**Subject:** FW: [redacted] Epstein

20

Hi Guys – This is [redacted] attorney. He seems like a very good guy – much better than the others, but I am concerned about allegations of misconduct. What do you think? Maybe we could meet with him and with [redacted].

A. [redacted]
Assistant U.S. Attorney
500 S. Australian Ave, Suite 400
West Palm Beach, FL 33401
Phone [redacted]
Fax [redacted]

---

**From:** Brad Edwards [mailto:be@bradedwardslaw.com]
**Sent:** Thursday, June 19, 2008 11:34 AM
**To:** [redacted] C. (USAFLS)
**Subject:** [redacted] Epstein

Hi [redacted],

I have information and concerns that I would like to share. While I understand that you are limited in what you can discuss, I would like to meet with you and discuss my plans. This would be beneficial to you and me. Let me know if you are interested in meeting and talking. My schedule is free next Monday, Tuesday, and Wednesday, July 23-25. If any of those days are open for you, then I will go to you and can meet you at any time convenient for you. I am scheduling to meet with my client again next week in your area anyway, so it would be no problem for me to meet you on the same day. I look forward to hearing back from you.

Sincerely,

Brad Edwards, Esquire
Law Office of Brad Edwards & Associates
2028 [redacted] Street
Suite 202
Hollywood, Florida 33020
Telephone: 954-414-8033 (Broward)
305-935-2011 (Miami-Dade)
Facsimile: 954-924-1530(Broward)
305/935-4227 (Miami-Dade)
e-mail: be@bradedwardslaw.com

**PRIVILEGED AND CONFIDENTIAL:** The information contained in this e-mail message is intended for the use of the individual or entity to which it is
addressed and may contain information that is proprietary, privileged, confidential, and exempt from disclosure under applicable laws. If the reader of this
message is not the intended recipient, or the employee or agent responsible for delivery to the intended recipient, you are hereby notified that any use, printing,

**EPSTEIN INVESTIGATION TIMELINE**

| Date | To | From | Re: | Exhibit # |
|---|---|---|---|---|
| 7/19/2008 | | | Emails with other AUSAs in other districts and documents regarding disclosing identifying information about victims | |
| 7/21/2008 | Goldberger | Villafaña | Letter with 11 additional victim notification letters | |
| 7/21/2008 | Villafaña | Goldberger | Letter with attached Motion for Return of Property | |
| 7/21/2008 | Villafaña | Kuyrkendall | Email with list of victims that Twiler still needs to make contact with | B-69 |
| 7/21/2008 | Villafaña | Tein | Letter in response to 7/17/08 letter from Villafaña | |
| 7/21/2008 | | | Victim Notification letters to Individuals #1, #2, #4, #13, #9, #14, #21, #23, #30, #32, and #38 | B-70 |
| 7/21/2008 | Villafaña; cc: Senior | Sloman | Email response to Villafaña's 7/21/08 email regarding Motion for Return of Property in State Court | |
| 7/22/2008 | Villafaña | Kuyrkendall | Email chain regarding victim addresses | |
| 7/22/2008 | | | Emails between A. M. Villafaña, A. Acosta, J. Sloman, R. Senior, K. Atkinson, E. Nesbitt Kuyrkendall, and J. Richards regarding 7/21/2008 letter from M. Tein announcing plan to stay the civil suits against J. Epstein and notification that B. Reinhart is counesl of record for [redacted] in civil suits | |
| 7/23/2008 | | | Emails between A. M. Villafaña and D. Lee regarding correspondence with counsel for J. Epstein and notice of breach | |
| 7/25/2008 | | | Emails between A. M. Villafaña and K. Atkinson regarding extension of grand jury to allow for continued representation of J. Epstein case | |
| 7/30/2008 | Villafaña | Atkinson | Email regarding contact with Roy Black | |
| 7/30/2008 | Villafaña | Roy Black | Email chain regarding call relating to the performance of the criminal Non-Prosecution Agreement | |
| 8/1/2008 | Lee, Acosta; cc: Villafaña, Jacobus, Senior | Sloman | Email chain regarding Jane Doe litigation | |
| 8/2/2008 | Lee, Villafaña | Acosta | Email re: Letter from Brad Edwards | |
| 8/5/2008 | A. Acosta, J. Sloman, R. Senior, and K. Atkinson | A. Marie Villafaña | Email regarding analysis of Jeffrey Epstein agreement, with attached 6/24/2008 email from A. M. Villafaña to R. Black and J. Goldberger and attached Epstein agreement | B-71 |

provided a draft of the proposed victim notification letter to counsel for Epstein (Exhibit B-56). I was concerned that Epstein and his counsel were again creating a potential problem. USA Acosta had taken the position that the final NPA consisted of three documents – the 9/24/2007 NPA, the 10/29/2007 Addendum, and the 12/19/07 letter from USA Acosta to Lilly Ann Sanchez. I prepared victim notifications (and, later, a Declaration in the *Jane Doe* litigation) based upon this understanding. When Epstein entered his guilty plea, Judge McSorley required him to file his federal Non-Prosecution Agreement with the Court since that formed part of the consideration for the state plea. I wanted to confirm that Epstein was taking a consistent position with the State Attorney's Office, Judge McSorley, and the USAO, so I asked for a copy of what was filed in the State Court. This led to multiple letters with counsel for Epstein before I could finalize the victim notification letters (Exhibits B-57 through B-65). On July 9, 2008, I finally sent the first two victim notification letters to two of Brad Edwards' clients, Individuals 35 and 43 (Exhibit B-66). Whenever I sent a victim notification letter, a redacted version of the letter also was sent to Jack Goldberger, counsel for Jeffrey Epstein. I was not authorized to send a victim notification letter to Individual # 28 or to include her on the list of persons provided to Epstein because she was not a person that the Office was prepared to name in an indictment.[42]

On July 10, 2008, I sent victim notification letters to a number of other represented victims, Individuals 3, 8, 17, 25, 26, 37, and 44 (Exhibit B-67). The FBI also asked for some assistance of language to use in its own victim notifications (Exhibit B-68), and I was waiting for contact information for the unrepresented victims (Exhibit B-69). On July 21, 2008, I sent victim notification letters to a group of unrepresented victims, Individuals 1, 2, 4, 9, 13, 14, 21, 23, 30, 32, and 38 (Exhibit B-70). There were some unrepresented victims who did not receive notification letters on July 21, 2008 because the FBI had not been able to confirm mailing addresses by that time – Individuals 10, 11, 16, 18, 20, 24, 31, 33, 36, 39, 40, and 42.

In August 2008, the issue of "which version of the NPA controls" finally came to a head. On August 5, 2008, in the context of a Notice of Breach, I pressed my Office to clarify the issue (Exhibit B-71). The decision was made to require Epstein to elect either the 12/19/07 letter or not, but to make it clear in writing (Exhibits B-73 through B-82). On August 15, 2008, I wrote to Roy Black and Jay Lefkowitz confirming their position that the final agreement consisted only of the NPA and Addendum (Exhibit B-83). By discarding USA Acosta's December 2007 modification, the original terms providing for the attorney representative for the victims came back into effect, and the victim notification letters for the unrepresented victims were even more important. Mr. Lefkowitz responded on August 18, 2008 with "objections" in advance to the language of the victim notifications (Exhibit B-84). On August 21, 2008, I responded to Mr. Lefkowitz with a draft victim notification letter corresponding to the language contained in the NPA and Addendum and noted the importance of promptly providing corrected information to the victims (Exhibit B-85). The following day, Mr. Lefkowitz sent a letter with indeterminate objections to the letter (Exhibit B-86). I responded by pointing out that the language in the victim notification letter was taken verbatim from the NPA and Addendum (Exhibit B-87).

On September 2, 2008, Mr. Lefkowitz finally confirmed that Mr. Goldberger would be the designated recipient for victim notifications and that Mr. Epstein would pay the attorney representative's fees (Exhibit B-88). I immediately started distributing victim notification letters.

---

[42] That decision was made by USA Acosta and/or FAUSA [redacted]. I do not know which.

**From** [redacted]
**To:** "[redacted]
**Subject:** [redacted]
**Date:** Mon, 01 Apr 2019 15:31:15 +0000
**Importance:** Normal

---

Hi [redacted]

Long time since the last time we spoke and I'm just in NYC at the moment and was thinking of calling you to catch you up on all the wonderful updates I've had recently against Epstein & Co. If it's not too much trouble and your able to talk sometime soon it would be much to my delight!! I hope you have been well and look forward to catching up with you!!

Best Wishes,

[redacted]

**From:** [redacted]
**To:** "[redacted]
**Subject:** [redacted] Jane doe 102
**Date:** Fri, 18 Jul 2014 19:15:50 +0000
**Importance:** Normal

---

Hi [redacted]

Still ploughing through the case and going to places w this I never dreamed but all is good.

I hate to bother you about the past but I remember you saying you we're familiar w the Ron Eppinger case and knew someone from the inside that personally was there at the time. I'm not going after Eppinger or anything like that just putting together pieces of a puzzle that's not so nice to remember.

I know Eppinger was arrested in 01' and not for any charges I brought against him but for illegally transporting women from Chez Republic and soliciting them for prostitution but what I'm trying to figure out is what year I was with him and when I was sent to Charlie's place (club owner of hot chocolates bar & restaurant in Ft.Lauderdale).

I'm not even sure you would even remember but I was hoping for a long shot. I appreciate any relevant info about this that you can remember or even get me in touch w the kind gentleman who took good care of me once I got to the police station in Ft. Lauderdale, tell him it would be a privilege to speak w someone who actually took the time to care empathetically about someone else they hardly knew me & let him know that I'm actually am advocate for speaking out about these ruthless crimes.

I'm so sorry again to plague you w my troubles!!

Kindest Regards,
[redacted]
[redacted] cell

Sent from my iPhone

OFC-TP-15-12392
SODOFC-15-12392
Date of Report: May 18, 2015

| Name, Address, Phone | Corp. Number/Filing Type | Status | Affiliation of Target to Corp./Business | Corp./Business Officers | Source |
|---|---|---|---|---|---|
| **Details:** FinCEN indicates EPSTEIN and [redacted] are signors for [redacted] LLC. ***Analyst's Note:*** *FinCEN indicates this company provides aircraft maintenance. Accurint indicates this business consists of one 2001 Bell 430 aircraft (S/N: 49078) which was registered on 09/06/2013.* | | | | | |
| SLK DESIGNS LLC [redacted] New York, NY 10065 [redacted] | Not Listed | Active | Association | Not Listed | FinCEN BSA ID 31000053179085 |
| **Details:** EPSTEIN and SLK DESIGNS LLC are listed as subjects together in a 2014 USAR. FinCEN indicates EPSTEIN sent SLK DESIGNS LLC $20,000 from an external bank account in 2014. | | | | | |

## *Linked Investigations*

| Agency/Location | Case Number | Date Opened | Case Status/Date | File Title/ Operation Name | Case Agent(s)/ Phone No. |
|---|---|---|---|---|---|
| DEA/ New York, NY | C1-11-0049 | 12/17/2010 | Pending Judicial | [redacted] | [redacted] |
| **Details:** The Requestor's case | | | | | |
| FBI/ Miami, FL | 31E-MM-108062 | 07/25/2006 | Active | EPSTEIN, JEFFREY [redacted] | [redacted] |
| **Details:** FBI reporting indicates Jeffrey EPSTEIN and Ghislaine MAXWELL are companions (FBI FD-302, 31E-MM-108062, 07/08/2013). | | | | | |
| ICE/ Paris, France | PA07QK13P A0002 | 06/07/2013 | Closed/ 10/03/2013 | OPERATION ANGEL WATCH/RCSO PRESENSE/ TRANSITING INFO SHARING | [redacted] |
| **Details:** ICE reporting indicates Jeffrey EPSTEIN was convicted in 2008 of procuring a person under age 18 for prostitution in Florida (ICE ROI, PA07QK13PA0002-003). | | | | | |
| ICE/ Las Vegas, NV | LV15HT09L V0009 | 02/02/2009 | Pending/ 01/27/2010 | [redacted] | [redacted] |
| **Details:** ICE reporting indicates Jeffrey EPSTEIN pled guilty on 06/30/2008 on charges relating to solicitation of prostitution and procurement of minors to engage in prostitution (ICE ROI, LV15HT09LV0009-003) | | | | | |

SENSITIVE BUT UNCLASSIFIED

OFC-TP-15-12392
SODOFC-15-12392
Date of Report: May 18, 2015

## Table of Contents


**ANALYTICAL FINDINGS** ........ **1**

*Background:* ........ *1*

- *Analytical Findings:* ........ *1*

**TARGET 1 –** [redacted] ........ **4**

BIOGRAPHICAL/IDENTIFYING DATA ........ 4
ADDRESSES ........ 5
COMMUNICATIONS ........ 5
*Telephone Numbers* ........ *5*
BORDER CROSSINGS ........ 5
*Border Crossings - Air* ........ *5*
LINKED INVESTIGATIONS ........ 6
CRIMINAL HISTORY/NCIC ........ 6
*Offline NCIC* ........ *6*
FINANCIAL INFORMATION ........ 7
*USAR – Unified Suspicious Activity Report(s)* ........ *7*
ASSETS ........ 7
*Financial Account(s)* ........ *7*

**TARGET 2 –** [redacted] ........ **8**

BIOGRAPHICAL/IDENTIFYING DATA ........ 8
ADDRESSES ........ 8
COMMUNICATIONS ........ 8
*Telephone Numbers* ........ *8*
BORDER CROSSINGS ........ 8
*Border Crossings - Air* ........ *8*
LINKED INVESTIGATIONS ........ 9
CRIMINAL HISTORY/NCIC ........ 9
*Offline NCIC* ........ *9*
FINANCIAL INFORMATION ........ 10
*USAR – Unified Suspicious Activity Report(s)* ........ *10*

**TARGET 3 –** [redacted] ........ **11**

BIOGRAPHICAL/IDENTIFYING DATA ........ 11
ADDRESSES ........ 11
COMMUNICATIONS ........ 11
*Telephone Numbers* ........ *11*
*Websites, Email Addresses, IP Addresses* ........ *11*
BORDER CROSSINGS ........ 12
*Border Crossings - Air* ........ *12*
LINKED INVESTIGATIONS ........ 12
CRIMINAL HISTORY/NCIC ........ 12
*Offline NCIC* ........ *12*

OFC-TP-15-12392
SODOFC-15-12392
Date of Report: May 18, 2015


FINANCIAL INFORMATION .......... 13
*USAR – Unified Suspicious Activity Report(s)* .......... *13*

**TARGET 4 – JEFFREY EPSTEIN .......... 14**

BIOGRAPHICAL/IDENTIFYING DATA .......... 14
ADDRESSES .......... 14
COMMUNICATIONS .......... 15
*Telephone Numbers* .......... *15*
*Websites, Email Addresses, IP Addresses* .......... *15*
BORDER CROSSINGS .......... 15
*Border Crossings - Air* .......... *15*
CORPORATE/BUSINESS AFFILIATIONS .......... 15
LINKED INVESTIGATIONS .......... 16
CRIMINAL HISTORY/NCIC .......... 17
*Offline NCIC* .......... *17*
FINANCIAL INFORMATION .......... 19
*USAR – Unified Suspicious Activity Report(s)* .......... *19*
*UCTR – Unified Currency Transaction Report(s)* .......... *19*
*CTR – Currency Transaction Report(s)* .......... *19*
ASSETS .......... 20
*Financial Account(s)* .......... *20*
FAMILY MEMBER/ASSOCIATE IDENTIFYING INFORMATION .......... 21
*Associates* .......... *21*

**TARGET 5 – [redacted] .......... 22**

BIOGRAPHICAL/IDENTIFYING DATA .......... 22
ADDRESSES .......... 22
COMMUNICATIONS .......... 22
*Telephone Numbers* .......... *22*
*Websites, Email Addresses, IP Addresses* .......... *23*
BORDER CROSSINGS .......... 23
*Border Crossings - Air* .......... *23*
LINKED INVESTIGATIONS .......... 23
CRIMINAL HISTORY/NCIC .......... 24
*Offline NCIC* .......... *24*
FINANCIAL INFORMATION .......... 25
*USAR – Unified Suspicious Activity Report(s)* .......... *25*
*UCTR – Unified Currency Transaction Report(s)* .......... *25*
ASSETS .......... 26
*Financial Account(s)* .......... *26*

**TARGET 6 – [redacted] .......... 27**

BIOGRAPHICAL/IDENTIFYING DATA .......... 27
ADDRESSES .......... 28
COMMUNICATIONS .......... 28
*Telephone Numbers* .......... *28*

12. In August 2007, in a clear attempt to coerce a state settlement, Ms. Villafana threatened to broaden the investigation to include a money laundering violation (18 U.S.C. § 1956), though all the funds expended were simply Mr. Epstein's, and a violation for operating an unlicensed money-transmitting business (18 U.S.C. § 1960), though Mr. Epstein never had such a business. See Tab 22, August 31, 2007 Letter from M. Villafana to Ross (reciting, in a target letter to one of Epstein's employees, that the investigation concerns "suspected violations of federal law, including but not limited to, possible violations of Title 18, United States Code, Sections . . . 1591, . . . 1956, 1960 . . . .") (emphasis added).

13. On the very same day that the grand jury issued subpoenas to the records-custodian and employees of Epstein's businesses for all financial transactions from 2003 forward, Ms. Villafana (who we were told was not authorized to act in this regard without supervisory approval) promised to close the money-laundering investigation "if the sex offense case is resolved." See Tab 23, August 16, 2007 Letter from M. Villafana to G. Lefcourt ("In other words, if the sex offense case is resolved, the Office would close its investigation into other areas as well. The matter has not been, and it does not appear that it will be, resolved so the money laundering investigation continues, and Request Number 6 [seeking records of every financial transaction conducted by Epstein and his six businesses from "January 1, 2003 to the present"] will not be withdrawn.").

14. Two weeks later, when Mr. Epstein continued to oppose federal prosecution during negotiations and Mr. Epstein's counsel sought a meeting with the United States Attorney, AUSA Villafana then classified all of Mr. Epstein's assistants as targets (sending a target letter to one of them and promising the attorney of the other two that additional target letters would be served on them as well), dispatched FBI agents to the homes of two of his secretaries, and personally telephoned Mr. Epstein's largest business client to advise him of the nature of the investigation. See Tab 22, August 31, 2007 Letter from M. Villafana to

FAUSA Sloman Forces Mr. Epstein's Lawyers to Convince the State Prosecutors To Impose a More Severe Sentence Than They Believe Is Appropriate

15. Throughout the plea negotiations with the USAO, Mr. Sloman and Ms. Villafana continually insisted that the only way they would agree not to bring a federal indictment was if Epstein's lawyers, not the state prosecutors as required under the Petite Policy, convinced the state prosecutors to impose a more severe punishment than the state believed was appropriate under the circumstances.

16. FAUSA Sloman's version of the history with respect to the sentence he required Mr. Epstein's lawyers to seek from the State contradicts his later assertion, which is patently false—that "the SDFL indicated a willingness to defer to the State the length of incarceration" and "considered a plea to federal charges that limited Epstein's sentencing exposure . .. " See Tab 1, May 19, 2008 Letter from J. Sloman. In fact, by a email dated August 3, 2007, Criminal Division Chief Matthew Menchel advised the defense that the federal government required a minimum term of two years of incarceration. See Tab 40, August 3, 2007 Email from M. Menchel. Subsequently, Ms.



Villafana emailed the defense stating that United States Attorney Acosta would accept no less than 18 months of incarceration, following by a one-year term of house arrest.

Federal Prosecutors Misrepresented the Number of Alleged "Victims."