**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

November 18, 2026

**BY ECF**

The Honorable Paul A. Engelmayer
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

**Re: *United States v. Ghislaine Maxwell*,**
**S2 20 Cr. 330 (PAE)**
**25 Civ. 10468 (PAE)**

Dear Judge Engelmayer:

The Government respectfully submits this letter in opposition to defendant Ghislaine Maxwell's motion pursuant to Federal Rule of Civil Procedure 59(e) (the "Motion for Reconsideration" or "Mot." (Dkt. 874-1)) to alter or amend the Court's August 25, 2026 Opinion and Order ("August 2026 Order" or "Op. & Order" (Dkt. 869)) denying her motion and amended motion under 28 U.S.C. § 2255 to vacate, set aside, or correct her sentence (the "Section 2255 Motions" (Dkt. 855, 861)). The Motion for Reconsideration is meritless and should be denied in its entirety as a naked attempt to seek to relitigate claims comprehensively considered and rejected by the Court. The defendant raises no cogent basis to warrant revisiting the Court's August 2026 Order; she bears the burden, but has not demonstrated an intervening change in controlling law, the availability of new evidence, or the need to correct an alleged clear error. Nor has she demonstrated that reconsideration is necessary to prevent alleged manifest injustice. And that is because there was none. The defendant has failed to carry her burden in her renewed attempt to sweep away the judgment of conviction representing the solemn verdict of a unanimous jury following a four-and-a-half week trial, the United States Court of Appeals for the Second Circuit's affirmation of that judgment, the United States Supreme Court's denial of certiorari, and this Court's denial of her Section 2255 Motions.

## I. Applicable Law[1]

Rule 59(e) of the Federal Rules of Civil Procedure "allows a litigant to file a motion to alter or amend a judgment" and "gives a district court the chance to rectify its own mistakes in the period immediately following its decision." *Banister v. Davis*, 590 U.S. 504, 507-08 (2020).[2] "In keeping with that corrective function, federal courts generally have used Rule 59(e) only to reconsider matters properly encompassed in a decision on the merits." *Id.* at 508.

"The standard for reconsideration is strict and the decision is within the sound discretion of the district court." *Atl. Recording Corp. v. BCD Music Grp., Inc.*, No. 08 Civ. 5201 (WHP), 2009 WL 2046036, at *1 (S.D.N.Y. July 15, 2009); *see also Shrader v. CSX Transp. Inc.*, 70 F.3d 255, 256-57 (2d Cir. 1995) (the standard for granting motions for reconsideration is "strict"). A motion for reconsideration "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader*, 70 F.3d at 257; *accord United States v. Gomez*, No. 21-2429, 2022 WL 7772745, at *2 (2d Cir. Oct. 14, 2022); *Van Buskirk v. United Grp. of Cos., Inc.*, 935 F.3d 49, 54 (2d Cir. 2019). "A motion for reconsideration should be granted only when the defendant identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013); *accord Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992). The "manifest injustice" standard is rarely met. *See Chitkara v. N.Y. Tel. Co.*, 45 F. App'x 53, 55 (2d Cir. 2002).

The standard for reconsideration is strict "because reconsideration of a previous order is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Tears v. Bos. Sci. Corp.*, No. 17 Civ. 9793 (AJN), 2019 WL 2866847, at *1 (S.D.N.Y. July 3, 2019); *see also United States v. Rodriguez*, No. 93 Cr. 549 (JFK), 2021 WL 2444564, at *1 (S.D.N.Y. June 15, 2021). "Accordingly, the moving party may not rely on information it could have but failed to present before, nor may it simply elaborate on arguments it already made." *United States v. Williams*, No. 21 Cr. 64 (KAM), 2025 WL 2783187, at *3 (E.D.N.Y. Sept. 30, 2025) (citing *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012)).

A motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple[.]'" *Analytical Surveys, Inc.*, 684 F.3d at 52 (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)); *see also Shrader*, 70 F.3d at 257 (a motion to reconsider "should not be

---

[1] The factual and procedural background of this case is discussed at length in the Government's memorandum of law in opposition to the defendant's Section 2255 Motions (Dkt. 863) and the Court's August 2026 Order denying her Section 2255 Motion (Dkt. 869).

[2] Unless otherwise noted, case quotations omit internal quotation marks, citations, alterations, and footnotes.

granted where the moving party seeks solely to relitigate an issue already decided."); *United States v. Lisi*, No. 15 Cr. 457 (KPF), 2020 WL 1331955, at *2 (S.D.N.Y. Mar. 23, 2020). "Such a motion likewise should not be made reflexively to reargue those issues already considered when a party does not like the way the original motion was resolved." *Lisi*, 2020 WL 1331955, at *2. "Reconsideration is not intended for the court to reexamine a decision or the party to reframe a failed motion." *Fan v. United States*, 710 F. App'x 23, 24 (2d Cir. 2018).

In a motion for reconsideration pursuant to Rule 59(e), "a party generally may not raise facts or arguments not previously presented to the court." *Fields v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 03 Civ. 8363 (SHS), 2004 WL 626180, at *2 (S.D.N.Y. Mar. 30, 2004). A motion for reconsideration is "an improper means to raise new grounds for habeas relief that could have been represented in the earlier habeas proceeding." *Negron v. United States*, 394 F. App'x 788, 793 (2d Cir. 2010); *Nat'l Union Fire Ins. Co. of Pittsburgh v. Stroh Cos., Inc.*, 265 F.3d 97, 115 (2d Cir. 2001) (a party moving for reconsideration may not "advance new facts, issues, or arguments not previously presented to the Court.").

## II. Discussion

The defendant's latest motion barely repackages claims that she has made time and again, and that Judge Nathan and/or the Second Circuit have rejected time and again. Her motion reiterates the baseless claims raised in her Section 2255 Motions that were rejected by the Court. In so doing, the defendant contends that the Court supposedly overlooked various facts and arguments in support of her myriad claims. The Court, however, systematically and in detail addressed the defendant's claims in its August 2026 Order. The defendant nevertheless asks this Court to reconsider its August 2026 Order. But that the defendant disagrees with the Court's holdings is not a ground for reconsideration. The defendant fails to present new evidence, identify any change in controlling law, demonstrate clear legal error, or otherwise point to a manifest injustice to be prevented. The defendant therefore fails to satisfy the demanding standard for reconsideration under Rule 59(e).

*First*, the defendant claims that the New Mexico Attorney General's complaint against the Department of Justice and Attorney General Todd Blanche—which was filed in August 2026—"supplies new evidence of SDNY's access to the New Mexico investigative file." (Mot. 2). She speculates that the "New Mexico file is *expected* to contain evidence relevant to [her] constructive-amendment and chronology claims" and argues that the Court "should permit targeted development of what New Mexico supplied, when SDNY received it, and what was disclosed to the defense." (*Id.* (emphasis added)). The defendant ignores that the Court rejected her constructive amendment claim as being "foreclosed by the mandate rule" and "identical to that which Judge Nathan and the Second Circuit rejected," and noted that the defendant did not "offer any basis on which to disturb those rulings." (Op. & Order 34). The defendant still has not offered any basis on which to disturb the rulings of Judge Nathan and the Second Circuit. She has not established—because she cannot—that there is newly available evidence that likely would have altered the Court's decision. *See Cho v. Blackberry Ltd.*, 991 F.3d 155, 170 (2d Cir. 2021); *Virgin Atl. Airways, Ltd.*, 956 F.2d at 1255. The defendant's argument constitutes cursory and rank

speculation about the contents of the supposed "New Mexico file." Such speculative claims cannot carry her burden.

*Second*, the defendant argues that "newly released EFTA [Epstein Files Transparency Act] documents" support her contention that "an expanding New York investigation drove the NPA [*i.e.*, the non-prosecution agreement entered into by the U.S. Attorney's Office for the Southern District of Florida ("USAO-SDFL") and Epstein] and that Main Justice was involved." (Mot. 3). In support of her argument, she cites EFTA documents that were released well before her Motions were filed. (*Id.* at 3-6). She cites a "later-produced House Oversight record" (*id.* at 3), but that document was produced pursuant to EFTA, *see* EFTA00224804. In short, the defendant attempts to relitigate claims that were "rejected by the Circuit (and by Judge Nathan, twice)" and that the Supreme Court "declined to review" (Op. & Order 22), by pointing to documents that were available to her before she filed her amended Section 2255 motion. She does not carry her burden of establishing that these materials are newly available evidence, let alone evidence that likely would have altered the Court's decision. Nor does she point to "an intervening change in controlling law" that supports her argument. She also does not establish that reconsideration is appropriate to correct a supposed "clear error" or to prevent supposed injustice. Instead, as the August 2026 Order makes clear, even if the Court "assum[ed] the truth of [the defendant's] factual assertions" relating to the participation of DOJ officials outside the USAO-SDFL in negotiating and approving the NPA, the defendant's "take on the legal implications is wrong." (Op. & Order 23). Just as the Court found in denying her Section 2255 Motions, "[t]he EFTA records cited by Maxwell do not in any respect suggest that the U.S. Attorney for SDNY or the Criminal Division's Assistant Attorney General in Washington approved—let alone provided 'express written approval' for—the NPA." (*Id.* at 23-24). And just as the Court found with respect to the defendant's claims related to a supposed New York investigation, nothing in the EFTA records the defendant cites "reflect any intent by the NPA's drafters or negotiating parties to bind USAO-SDNY or any U.S. Attorney's Office besides SDFL." (*Id.* at 24). The defendant's attempt to take a fourth bite at the apple must therefore be rejected.

*Third*, and relatedly, the defendant claims that the Court made a "material error of fact concerning Main Justice approval" of the NPA and "rested" its judgment on a "materially incorrect premise" that the defendant did not argue in her Motions that the Criminal Division approved the NPA and did not address the Ashcroft Memorandum. (Mot. 7). The Court did not make any such error, nor did it rest its judgment on such an alleged premise. The defendant points to certain EFTA documents relating to the participation of DOJ officials in Main Justice relating to the review of the NPA. (*See id.* (citing, *e.g.*, EFTA00009151 as showing that the Deputy Attorney General reviewed the NPA and its terms)). As an initial matter, the OPR Report—which the Court found "strongly supports the Circuit's holding that the 2007 Epstein NPA did not bind offices outside SDFL" (Op. & Order 25 n.13)—itself describes how Epstein's defense counsel "sought and obtained review by the Department's Criminal Division and then the Office of the Deputy Attorney General, primarily on the issue of federal jurisdiction" and how the Office of the Deputy Attorney General informed defense counsel that the Deputy Attorney General would not intervene in the matter. (Dkt. 204-3 at ii). The defendant has still "identifie[d] no evidence that the Department of Justice made any promises not contained in the NPA." *United States v. Maxwell*, 534 F. Supp. 3d 299, 310 (S.D.N.Y. 2021). As Judge Nathan explained in denying the defendant's

motion to dismiss the Indictment: "Nor would direct approval of the NPA by the Office of the Deputy Attorney General change the meaning of its terms. No evidence suggests anyone promised Epstein that the NPA would bar the prosecution of his co-conspirators in other districts. Absent such a promise, it does not matter who did or did not approve it." *Id.* In short, the defendant's attempt to relitigate this claim a fourth time without meeting any of the threshold requirements for reconsideration because she "does not like the way the original motion was resolved" should be rejected. *Lisi*, 2020 WL 1331955, at *2.

*Fourth*, the defendant attempts to relitigate her claims relating to Brad Edwards, claiming that the Court "did not resolve whether Brad Edwards was the confidential witness identified in Government records concerning Exhibit 52." (Mot. 8). She also repeats her claim that a 2024 interview Edwards gave conflicted with a Government affidavit and Alfredo Rodriguez's deposition. (*Id.* at 9). The defendant attempts to revive these claims by pointing to EFTA documents available to her before she filed her amended Section 2255 motion. (*Id.* at 8). In any event, as the Court found in denying the defendant's Section 2255 Motions, "[m]aterials the Government produced in discovery laid bare Edwards' involvement." (Op. & Order 57; *see also id.* (noting the defendant "cited multiple such documents" in her Section 2255 motion); *id.* (noting "her counsel's pretrial filings repeatedly reference the facts of which Maxwell now professes unawareness.")). As the Court also found, the defendant's argument is "procedurally defaulted" (*id.*) and she does not point to any basis for reconsideration.

*Fifth*, the defendant claims that the Court "did not address the material issue of a shared therapist and longstanding coordination among SDFL, SDNY, plaintiffs' attorneys, and witnesses." (Mot. 10). That assertion ignores the Court's thorough assessment of her arguments. (*See* Op. & Order 35-39). The defendant attempts to point to additional EFTA documents in support of her claim, but those documents are neither newly available as she had access to them prior to filing her amended Section 2255 motion, nor likely to have altered the Court's decision. Indeed, the documents do nothing to disturb the Court's finding that her claims were barred, nor do they come close to calling into question the fairness of her trial. The defendant argues that the Court should "address the distinct questions" she raised: "actual and constructive Government possession; joint investigative activity; records of private witness development; financial or litigation interests; undisclosed common intermediaries; and cumulative impeachment." (Mot. 12). The Government responded to and the Court ruled on the defendant's principal claims, but the Court need not have ruled on all of the myriad undeveloped suggestions or factual asides in her papers, which were plainly insufficient to carry the heavy burden on a defendant seeking to vacate a conviction under Section 2255. *See Miranda v. Bennett*, 322 F.3d 171, 177 (2d Cir. 2003) (where habeas petition is facially inadequate, district court may deny it "with the tersest of orders"); *Rivera v. United States*, No. 92 Civ. 7726, 1993 WL 464747, at *3 (S.D.N.Y. Nov. 12, 1993) (appropriate for district court not to discuss each of petitioner's frivolous claims). In any event, the Court addressed the exhibits the defendant cited in support of her argument, as well as the heart of the defendant's arguments related to victims and their counsel, and appropriately rejected them. (*See* Op. & Order 35-39).[3]

---

[3] The defendant relatedly argues that the Court "did not address the significance of longstanding coordination among plaintiffs' counsel, the Government, and the press beginning in 2008." (Mot.

*Sixth*, the defendant argues that the Court "did not address the absence of the Epstein matter from Acosta's Federal Records Vault," which she alleges "intersects with the judgment's NPA conclusions." (Mot. 13). As best as the Government understands, to the extent that the defendant is repeating claims from her initial Section 2255 motion that Acosta's emails were "lost" (Dkt. 855-1 at 53), the Government previously responded, in part, that the defendant's argument "ignore[d] the extensive OPR Report that discusse[d] Acosta's emails." (Dkt. 863 at 70 n.31). While the Court did not address the defendant's insufficiently developed allegation in her initial Section 2255 motion, it need not have. *See Rivera*, 1993 WL 464747, at *3. The Court addressed the defendant's "distort[ion]" of certain EFTA records in support of her claims regarding the co-conspirator clause of the NPA. (Op. & Order 22-23). And significantly, the Court explained that "even if the EFTA records could be read to imply that the co-conspirator immunity clause covered Maxwell, the Second Circuit's decision in *Annabi*—as the Circuit held on Maxwell's appeal—holds that such a grant of immunity would bar only *USAO-SDFL* from charging her, and not USAO-SDNY or offices in other districts." (*Id.* at 23 (emphasis in original)). The Court further correctly concluded that the EFTA documents cited by the defendant "drive home that point." (*Id.*). Moreover, as discussed in the Government's opposition to her Section 2255 Motions, the Government was not required to collect Acosta's emails, but implemented a plan for collecting and reviewing certain files from other agencies, including the inbox for the primary line Assistant U.S. Attorney responsible for USAO-SDFL's investigation. (*See* Dkt. 863 at 31-32). As this Court found in denying her Section 2255 Motions, the prosecution team "went above and beyond its disclosure obligations, and fully complied with *Brady*, by collecting information outside its possession, including from USAO-SDFL, and conducting reasonable searches of those materials." (Op. & Order 30). The defendant's arguments regarding the supposed absence of files are thus both frivolous and irrelevant, and provide no basis for reconsideration.[4]

*Seventh*, the defendant argues that the Court "did not address additional interrelated evidence bearing on disclosure, credibility, and chronology." (Mot. 14; *see also id.* at 30). This argument too is meritless. The defendant's specific claims are addressed in turn:

- The defendant argues that in light of an "unofficial recording/transcript" of the House of Representatives Committee on Oversight and Government Reform's interview of

---

20). In denying her Section 2255 Motions, the Court explained that the defendant had conceded she "previously, and unsuccessfully, argued" before trial about alleged collusion between plaintiffs' counsel and the Government, but her appellate counsel did not pursue that claim in her direct appeal which barred relief under Section 2255 unless she showed cause and prejudice. (Op. & Order 36). The Court addressed the defendant's failure to show cause and prejudice. (*See id.* at 37-39). The defendant's assertion that the Court "was required to address what information entered Government hands, what private-source biases were known, and whether allegedly independent accounts had in fact common origins or intermediaries" (Mot. 20) is without a basis in law or reality.

[4] For the same reasons, the defendant's claim that the Court did not address the "Recarey evidence and the integrity and completeness of the Palm Beach investigative record" (Mot. 28) is baseless.

Epstein's estate executor Darren Indyke which she claims indicates that "the Estate fully cooperated with the Government," various of the defendant's claims related to certain materials—such as the "Birthday Book, flight manifests, the Farmer/Ward letter, and Carolyn's MySpace material"—"require reevaluation." (Mot. 14). This claim is nonsensical. As an initial matter, that interview is not "newly available evidence." It was conducted and made publicly available in March 2026, before the defendant filed her amended Section 2255 motion. *See, e.g.*, Oversight Committee Releases Richard Kahn and Darren Indyke Deposition Videos, https://oversight.house.gov/release/oversight-committee-releases-richard-kahn-and-darren-indyke-deposition-videos/?highlight=indyke (Mar. 24, 2026). The defendant also has not—and cannot—demonstrate that the interview likely would have altered the Court's decision. Indeed, the Government's opposition addressed the defendant's arguments regarding these materials (Dkt. 863 at 49-52 (describing these "miscellaneous attacks on her conviction" as "barred and meritless" and having "marginal, if any, relevance"), *see also id.* at 72 n.32) and the Court "adopt[ed] by reference" these arguments as "comprehensively dispatch[ing]" of the defendant's arguments. (Op. & Order 65 n.25).

- The defendant repeats her speculative arguments relating to [redacted] (Mot. 15) that she made in her Section 2255 Motions without any newly available evidence, let alone evidence that would have altered the Court's decision, which adopted by reference the Government's arguments (Op. & Order 65 n.25).

- The defendant makes arguments related to "the undisclosed Farmer letter," claiming that the letter "identifies a witness who could have addressed the Farmer trip, the date of the New Mexico visit, and the Thailand chronology." (Mot. 15-16). The Government does not know to what letter the defendant refers, nor was it apparently addressed in her Section 2255 Motions. *See Negron*, 394 F. App'x at 793 (motion for reconsideration is "an improper means to raise new grounds for habeas relief that could have been represented in the earlier habeas proceeding."); *Fields*, 2004 WL 626180, at *2 ("a party generally may not raise facts or arguments not previously presented to the court."). The defendant does not point to any newly available evidence in support of her argument.

- The defendant's arguments related to Detective Gregory Parkinson's testimony and the massage table are nothing more than an attempt to relitigate an issue the Court already decided. Just because the defendant "does not like the way the original motion was resolved" does not give her license to attempt to relitigate the issue. *Lisi*, 2020 WL 1331955, at *2; *Shrader*, 70 F.3d at 257. The defendant points to EFTA documents (*see* Mot. 16 (citing EFTA00026743, EFTA00026746, EFTA00225073)), but those are not newly available, nor do they do anything to rebut or undermine the Court's conclusion that the defendant had failed to "allege facts supporting that the SDNY prosecution team had custody (or awareness) of the grand jury transcript." (Op. & Order 60). Nor do they undermine the Court's conclusion that the "prosecution team did not violate *Brady* or any other disclosure obligations by conveying to the defense

the information it was given [regarding the grand jury transcript of Parkinson's testimony]." (*Id.* at 62). The defendant also claims that the Court's August 2026 Order "addressed location but not the asserted false seizure statement." (Mot. 16). With respect to the supposed "false seizure statement," the defendant attempts to suggest that she "challenged Parkinson's trial claim that he *personally* seized and carried the massage table from the residence." (*Id.* (emphasis added); *see also id.* (arguing that the grand jury transcript "reportedly limits Parkinson's responsibility to search and photography, while the trial transcript records that he carried the table out")). In a Rule 59(e) motion, "a party generally may not raise facts or arguments not previously presented to the court." *Fields*, 2004 WL 626180, at *2. This argument was not presented in the defendant's Section 2255 Motions. (*See* Dkt. 855-1 at 17-19, 46-48). The defendant thus now seeks to raise a new claim in her Motion for Reconsideration that she did not raise in her original motions. This is precisely the kind of "second bite at the apple" the strict reconsideration standard forbids. *Analytical Surveys, Inc.*, 684 F.3d at 52. In any event, the Court addressed at length the defendant's more developed claims that Parkinson supposedly perjured himself. (*See* Op. & Order 63-64). Contrary to the defendant's claims, the Court's August 2026 Order "answer[ed her] contention[s]" regarding the massage table and Parkinson's testimony, including her claims that the massage table was "crucial" to proving interstate commerce (Mot. 17). (*See* Op. & Order 65 n.24).

- Throughout her Motion for Reconsideration, the defendant attempts to rehash her arguments related to "chronology" issues, including with respect to Epstein's New Mexico ranch (*see, e.g.*, Mot. 17-18). The Government's opposition to the defendant's Section 2255 Motions explained that these claims were barred and meritless. (*See* Dkt. 863 at 95-98). The Court should not entertain the defendant's renewed attempt to re-hash arguments made by her counsel at trial, rejected by the jury, and not brought on direct appeal. The EFTA documents to which she had access before filing her amended Section 2255 motion did not discharge her burden under Section 2255, nor do they discharge her burden under Rule 59(e).

- The defendant next concedes that "Juror 50's nondisclosure was litigated," but argues that certain material related to Juror 50 was "not part of the record available for direct appeal." (Mot. 19). But the Court addressed that material in its August 2026 Order, finding that her claim related to Juror 50 was "procedurally barred and substantively meritless." (*See* Op. & Order 17-19). The defendant does not point to any newly available evidence that would have altered the Court's decision or an intervening change in controlling law. Nor does she argue that reconsideration is appropriate to correct a clear error or prevent manifest injustice. And there was none; the defendant was overwhelmingly proven guilty.

*Eighth*, the defendant claims the Court "did not address the disclosure chronology indicating that the Government may not have complied with the Court's continuing-disclosure orders." (Mot. 20 (citing Dkt. 63 (Government pre-trial letter relating to its plan to obtain and review investigative files maintained by other offices), 68 (Court's Order pursuant to Federal Rule

of Criminal Procedure 5(f)), 207 at 34 (Judge Nathan April 16, 2021 opinion directing the Government to state "whether it considers any evidence related to negotiation of the [NPA] to constitute *Brady* or Rule 16 material and, if so, to confirm that it has or will disclose such evidence."), 239 (Government letter in response to April 16, 2021 order confirming it had not identified any materials within its possession that would constitute potential *Brady* material with respect to the NPA)). The defendant claims that the Court "should determine what was possessed, when it was reviewed, when it was produced, and whether an identified order was ignored or misconstrued." (Mot. 21). This argument was not developed, let alone raised, by the defendant in her Section 2255 Motions and, therefore, is barred. *See Fields*, 2004 WL 626180, at *2. In any event, where relevant, the Court addressed the defendant's myriad *Brady* claims, including those related to the NPA. (*See* Op. & Order 25-30, 38, 57, 60-62). The Court also denied the defendant's requests for an evidentiary hearing and discovery, finding that there was "no fact that Maxwell fairly puts in dispute that has any potential to disturb the outcome of her trial." (*Id.* at 66, 67 n.26). The defendant has failed to carry her heavy burden to disturb those findings.

*Ninth*, the defendant claims that the Court did not address evidentiary questions relating to particular materials. (Mot. 21-22). These claims are frivolous, cannot disturb the outcome of her trial, and ignore the Court's August 2026 Order adopting the Government's responsive arguments. The claims are addressed in turn:

- The defendant reiterates her request for communications involving the Honorable Robert W. Sweet, the United States District Judge who was then overseeing the *Giuffre v. Maxwell* civil litigation, and claims that the Government's supposed failure to produce certain communications "warranted an answer rather than silence from the Court." (Mot. 21). The Court did address the defendant's claim, both by adopting by reference the Government's arguments related to this very issue (Op. & Order 65 n.25) and by denying her requests for an evidentiary hearing and discovery, as described above (*id.* at 66, 67 n.26); *see also* Dkt. 863 at 51-52 (Government opposition explaining that defendant received the relevant materials in discovery).

- The defendant's claims related to the "HRH Photograph" (Mot. 21) are nonsensical and merit no relief. The Government responded to the claims in her Motion (*see* Dkt. 863 at 50), and the Court adopted the Government's arguments in its findings. (Op. & Order 65 n.25). In an attempt to revive her frivolous arguments, the defendant points to an EFTA document that was available to the defendant prior to filing her amended Section 2255 motion and that does nothing to alter the Government's response to her argument. (*See* Mot. 21 (citing EFTA01660401)). Reconsideration is not warranted.

- The Government's opposition addressed the defendant's arguments relating to Annie's diary (*see* Dkt. 863 at 50 (citing *Maxwell*, 534 F. Supp. 3d at 323-24)). The Court adopted the Government's argument in its findings. (Op. & Order 65 n.25). The defendant provides no basis for reconsideration.

- The defendant "disputes" the Government's "characteriz[ation]" of a confidentiality agreement between her and Epstein as "cumulative" and reiterates her request for its

production. (Mot. 22). The defendant's speculative arguments related to the confidentiality agreement were rejected by the Court (Op. & Order 65 n.25; *see also* Dkt. 863 at 51). Her requests for discovery were similarly rejected (Op. & Order 67 n.26). Again, the defendant has failed to put forth a colorable argument for reconsideration.

*Tenth*, the defendant argues the Court rejected her arguments regarding her confinement at the Metropolitan Detention Center ("MDC") without addressing former Attorney General William Barr's 2025 testimony in which he said the defendant's "initial confinement was quite severe because she was watched 24/7." (Mot. 22). The Court found that because the defendant's counsel did not raise arguments related to her confinement on direct appeal, her claim was procedurally defaulted and also without merit. (Op. & Order 53-54). The Court was not required to address Barr's 2025 testimony due to the defendant's procedural default but, in any event, discussed Judge Nathan's findings regarding the defendant's conditions of confinement. (*Id.*). And, as the Government explained in its opposition, Attorney General Barr's 2025 testimony was not remotely "new" in substance and Judge Nathan took the conditions of the defendant's confinement into account in imposing sentence. (Dkt. 863 at 83-84).

*Eleventh*, the defendant claims that the Court "did not address new evidence" that she "could not have raised earlier concerning prejudice" with respect to her delayed prosecution claims. (Mot. 23-24). That is false. In denying her pre-indictment delay claims in her Section 2255 Motions, the Court explained that the defendant's claim was procedurally barred because the defendant could have pursued it on direct appeal but did not do so, and was also meritless. (Op. & Order 43). The Court addressed and rejected the supposed "new evidence" the defendant attempted to use to avoid this bar. (*Id.* at 45-46). The Court was required to do no more in denying this claim. Now, in an attempt to revive her argument, the defendant mischaracterizes the Government's opposition to her Section 2255 Motions and complains about, among other things, alleged "missing 302s and witness statements," supposed lack of access to materials from Epstein's estate (an unsupported claim, as described above), and "grand-jury and investigative materials not supplied to the defense." (Mot. 23).[5] Her complaints are abstract, hypothetical, and unsupported. They are also not based on new evidence that was not available to her or that would have altered the Court's August 2026 Order. In sum, the defendant made arguments about pre-indictment delay before Judge Nathan "no fewer than three times" (Op. & Order 43), chose not to appeal Judge Nathan's rejection of her argument, and then again made meritless arguments in her

---

[5] In support of her claim, the defendant points to *Phang v. Blanche*, No. 26 Civ. 01417 (EGS), 2026 WL 2741137 (D.D.C. Sept. 16, 2026). That case is inapposite both with respect to the procedural background and the issue the defendant cites. In *Phang*, the court ordered the submission of FBI notes that underlay 302 interview reports on the basis that the notes "are not duplicates" of the 302 interview reports. *Id.* at *4. The defendant again repeats her rank speculation about supposed missing 302s for [redacted], who was not a witness or declarant at trial. As the Government noted in its opposition, the Government produced non-testifying witness material for [redacted] to the defendant in advance of trial. (Dkt. 863 at 52).

Section 2255 Motions. She is not permitted yet another bite at the apple based on those facts and in this posture.

*Twelfth*, the defendant makes various complaints related to EFTA, which are meritless and provide no basis for reconsideration of the Court's August 2026 Order. (Mot. 25-27). The claims are addressed in turn:

- The defendant "challenges" the Court's "descriptions" of her "EFTA presentation," arguing that the descriptions "cannot be separated from the procedural record" of the Court's supposed denial of her request for "practical access to public and unredacted EFTA material" and the "means necessary to search and organize an enormous production." (Mot. 25). This claim is false. The actual procedural record makes that clear. The defendant filed her initial Section 2255 motion on December 17, 2025. After the Department of Justice (the "DOJ") made publicly available various documents pursuant to EFTA starting on or about December 19, 2025, the Court permitted the defendant to amend her motion (Dkt. 825) and directed her to file any amended motion by March 31, 2026 (Dkt. 853). Nearly three weeks after the Court's deadline, the Government received, on April 20, 2026, the defendant's amended Section 2255 motion and supporting exhibits. (Dkt. 856). On June 9, 2026, the defendant submitted her reply and additional exhibits in support of her amended Section 2255 motion in accordance with a schedule set by the Court. (Dkt. 859). On July 26, 2026, the defendant submitted a supplemental memorandum and various exhibits in support of her Section 2255 Motions (the "July 26 Supplement"). (Dkt. 864). The Court accepted and represented that it would review the July 26 Supplement despite the fact that the filing was "unauthorized" and in violation of the Court's briefing schedule. (*Id.* at 1). In short, the defendant filed multiple briefs attaching EFTA documents seven months after the DOJ began making such documents available.[6]

- The defendant relatedly claims that she "has no Internet access, no computer, and no ability to search [the EFTA] database." (Mot. 26). The Government has confirmed with the Federal Bureau of Prisons that the defendant has access to an e-Discovery computer and the electronic law library, but that no defendant in federal custody is given internet access. The defendant has no right to be treated differently than any other similarly situated federal inmate. And the defendant plainly was provided with numerous EFTA documents, which she relied upon in bringing her Section 2255 Motions, and in submitting multiple rounds of briefs. The defendant is not entitled to more, much less at this stage.

---

[6] The defendant also "asks that the record include the letter accompanying her first petition in which she sought assistance with redactions, and the later request for appealability or certification in which she sought access to EFTA documents already in the public domain." (Mot. 26). The Government does not know to what the defendant refers, and this bare statement plainly is not a basis for reconsideration of the merits of the Court's decision.

- The defendant argues that the Government failed to comply with Judge Nathan's Order pursuant to Federal Rule of Criminal Procedure 5(f). (Mot. 25). The Court rejected the defendant's claims in her Section 2255 Motions related to the Government's disclosure obligations, finding that the "prosecution team went above and beyond its disclosure obligations, and fully complied with *Brady*, by collecting information outside its possession, including from USAO-SDFL, and conducting reasonable searches of those materials." (Op. & Order 30). The defendant provides no basis for reconsideration of this claim.

- The defendant requests that the Court "expressly" state whether it considered "material evidence presented" in the July 26 Supplement. (Mot. 26-27). The Court represented that it would review the July 26 Supplement (Dkt. 864 at 1), which it did, as reflected in its August 2026 Order which contains citations to and analysis relating to the July 26 Supplement. (*See* Op. & Order 10, 22, 24-25).

- The defendant argues that just because "an EFTA page is publicly redacted does not establish that the underlying information was unavailable to the Government before trial, immaterial, or properly withheld from the defense." (Mot. 27). She requests that "[w]here [she] identified a specific redacted [EFTA] document and explained its apparent relationship to a claim, the Court should order in-camera review, direct the Government to identify the corresponding trial-production Bates number, or permit protected disclosure to counsel." (*Id.*). Again, as this Court found, the "prosecution team went above and beyond its disclosure obligations and fully complied with *Brady*, by collecting information outside its possession, including from USAO-SDFL, and conducting reasonable searches of those materials." (Op. & Order 30). The Court already rejected the defendant's claim for a hearing and discovery (*id.* at 66, 67 n.26), and there is no basis for reconsideration.

*Thirteenth*, the defendant asks the Court to reconsider its denial of her selective prosecution claim in light of alleged "later-disclosed coconspirator and comparator evidence." (Mot. 28-29). In support of her argument, she points to EFTA files (*id.*), but those files neither are what the defendant represents them to be, nor do they support the conclusions she asks the Court to draw. The defendant concedes that the "existence of a name in a file does not establish that the person was similarly situated or that a charging decision was unconstitutional." (*Id.* at 29). She claims, however, that the "existence of a name in a file" "does, however, answer the narrower premise that [the defendant] identified no persons or records capable of comparison and supports targeted development of conduct, evidence, cooperation, plea, settlement, and changing circumstances." (*Id.*). The defendant's claim is baseless. As an initial matter, she appears to abandon the arguments she pressed in her original Section 2255 motion (Dkt. 855-1 at 32 (arguing that "[n]one of the 4 named co-conspirators or the 25 men with secret settlements were indicted")), and instead raises new arguments, which she cannot do. *See Fields*, 2004 WL 626180, at *2. Second, this claim is procedurally barred. (Op. & Order 39; Dkt. 863 at 52). Third, as this Court found, "on the merits, this claim is patently frivolous." (Op. & Order 39). The Court, in denying the defendant's selective prosecution claim, explained that the defendant had not shown a discriminatory effect or that she had been "singled out":

> Maxwell served for years as Epstein's indispensable recruiter and groomer in chief. She does not point to any other person who abetted Epstein in this manner or to this degree. That is fatal to Maxwell's claim of selective prosecution, because she has not identified, and cannot identify, any offense participant 'similarly situated' to her. . . . On the contrary, Maxwell has not implicated any other person in the child sex abuse scheme. . . . And for all the EFTA records that Maxwell invokes as purported support for her petition's claims, she does not cite any that reveals the existence of an uncharged confederate, let alone one as instrumental as she in facilitating Epstein's horrific crimes.

(*Id.* at 40). The defendant's Motion for Reconsideration suffers from this same fatal flaw. And her Motion for Reconsideration also fails to show, just as her Section 2255 Motions did, that "the Government's decision to prosecute her was based on any impermissible considerations. (*Id.*). The defendant points to no basis for reconsideration.

*Fourteenth*, the defendant argues that the Court "did not address the full chronology evidence concerning household rules, East 71st Street, New Mexico, and age." (Mot. 29). As explained above, the Court was not required to address each of the defendant's frivolous claims or undeveloped, factual asides and therefore the relief she now seeks is entirely unwarranted. In any event, the defendant makes vague claims untethered from any particular records or evidence. She seems to request that the Court reconsider the jury's verdict (*see, e.g.*, Mot. 29 (comparing Juan Alessi's trial testimony regarding household rules with a USAO-SDNY memorandum describing a 2019 interview of Alessi))[7], but that is not appropriate in connection with her Section 2255 Motions or her Motion for Reconsideration. The defendant's claim provides no basis for relief.

*Fifteenth*, the defendant argues that "[f]or each claim found defaulted, the Court should identify whether the merits were also reached, what evidence was actually available at trial and on direct appeal, what evidence arose later, and whether cause and prejudice were addressed." (Mot. 30). The defendant ignores approximately one-third of the Court's August 2026 Order in which the Court addressed each of the defendant's claims raised in her Section 2255 Motions that were procedurally barred because the defendant could have raised them on direct appeal but did not. (Op. & Order 34-57). The Court explained that the defendant had failed to show cause for her failure to do so, or prejudice from an asserted error (*i.e.*, "a possibility—much less a 'reasonable probability'—that these claims, had they been brought, would have yielded a different outcome."). (*Id.* at 35 (quoting *Strickler v. Greene*, 527 U.S. 263, 289 (1999)). The Court determined that the defendant's procedurally defaulted claims were "blatantly meritless." (*Id.*). The Court addressed the defendant's exhibits to her Section 2255 Motions that supposedly reflected "new" information that the defendant claimed avoided the procedural bar. (*See, e.g.*, *id.* at 37, 40, 45-46, 57). In

---

[7] The Government further notes that the defendant was provided with the relevant notes and reports regarding that interview in advance of trial.

short, the Court addressed the defendant's procedurally defaulted claims in the manner she requests in her Motion for Reconsideration (although that was not legally required, because they were barred). There is no basis to reconsider the substance, again, of her procedurally defaulted claims.

*Sixteenth*, the defendant claims that the Court's August 2026 Order did not resolve her "preserved contentions on the record actually presented" relating to her constructive amendment claims, her sentencing contentions, and Government Exhibit 52, the green massage table. (Mot. 31-33). The defendant's arguments are meritless and provide no basis to "relitigate old issues" yet again. *Analytical Surveys, Inc.*, 684 F.3d at 52. The defendant does not point to a change in controlling law or newly available evidence that likely would have altered the Court's decision, nor is reconsideration appropriate to correct an alleged clear error or prevent manifest injustice. In particular:

- The defendant states that she "does not accept" the Court's "characterization" that the constructive amendment claim raised in the defendant's Section 2255 Motions was the same claim rejected on direct appeal. (Mot. 31). She contends that the Court must address "whether the Government used a later residence to corroborate an earlier alleged event and withheld or overlooked favorable chronology evidence." (*Id.*). Yet, as the Court noted in denying her relief under Section 2255, the defendant did "not cite any new information in support of" her constructive amendment claim. (Op. & Order 30; *see also id.* at 34; Dkt. 863 at 41 (noting the defendant did not even attempt to argue that new evidence permitted her to effect an end-run around the relitigation bar)). The defendant cannot raise new arguments that were not previously presented to the Court. *See Fields*, 2004 WL 626180, at *2. The defendant's claims are untethered from any particular records or evidence and provide no basis for the Court to reconsider its August 2026 Order, or Judge Nathan's and the Second Circuit's rulings.

- The Court disposed of the defendant's original argument relating to the fine imposed at sentencing—namely, her claim that Judge Nathan erred by imposing a $250,000 fine on three counts because the Guidelines range was lower for each count. (Op. & Order 49 (finding defendant's claim to be "barred and wrong" and a fine of up to $250,000 was permitted per count)). Now, the defendant attempts to pivot in her Motion for Reconsideration and contends that the $750,000 fine imposed by Judge Nathan "required lawful notice, support, and explanation." (Mot. 32). This is not permitted. *See Fields*, 2004 WL 626180, at *2. In any event, her claim is meritless. The defendant was provided notice of the statutory maximum fine in her PSR (*see* PSR ¶ 199; *see also id.* at 41 n.51 (indicating defendant's counsel litigated this issue)) and in connection with sentencing (*see* Dkt. 670 at 52 (Government sentencing submission advocating for maximum fine of $750,000)). Judge Nathan also explained why she ordered the defendant to pay a fine of $750,000. (Dkt. 855, Ex. 52 at 97). Nothing more was required.

- The defendant also rehashes her prior complaints relating to Judge Nathan's consideration of the defendant's conduct related to the perjury counts, and Judge

Nathan's determination related to victim groups and the four-level leadership enhancement in calculating the Guidelines range. (Mot. 32). The defendant provides no basis for reconsideration.

- Finally, the defendant reiterates her complaints related to Government Exhibit 52 (Mot. 33), but provides no basis for reconsideration of the Court's August 2026 Order. She does not point to new evidence, a change in controlling law, a supposedly clear error, or alleged manifest injustice.

*Finally*, the defendant raises arguments regarding "cumulative materiality," stating that the "constitutional question is whether the combined favorable evidence undermines confidence in the result and whether unresolved factual disputes required development—not whether any single page independently compelled vacatur." (Mot. 33). The Court answered that question. The Court concluded that the "purported 'new' evidence to which Maxwell points, principally materials released under the EFTA, is largely irrelevant to the charges against Maxwell and does not support her claims of error. On the contrary, to the extent it is relevant, far from exculpating her, it incriminates her or reinforces the correctness of the legal rulings Maxwell challenges." (Op. & Order 2). The defendant's attempt to "reflexively [] reargue those issues already considered when [she] does not like the way the original motion was resolved" is not permitted under Rule 59(e). *Lisi*, 2020 WL 1331955, at *2.

The defendant's related requests for a hearing and discovery (Mot. 33-34) are also baseless. A motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple[.]'" *Analytical Surveys, Inc.*, 684 F.3d at 52. This is because allowing reconsideration to be used for such improper purposes would we be a "waste of judicial resources." *Stoner v. Young Concert Artists, Inc.*, No. 11 Civ. 7279 (LAP), 2013 WL 2425137, at *1 (S.D.N.Y. May 20, 2013). The defendant, who bears the burden, is not entitled to a hearing because she has not identified any information or argument that both would be expected to be uncovered at a hearing and would be expected to alter the Court's August 2026 Order.

The defendant's request for a certificate of appealability is likewise meritless. In deciding the Section 2255 Motions, the Court denied a certificate of appealability. (Op. & Order 67). There is no basis for this Court to reconsider its prior determination not to grant a certificate of appealability. Nor is there a basis for the Court to grant a certificate of appealability from any decision to deny relief under Rule 59(e) as the defendant has made no showing warranting the issuance of a certificate of appealability. *See Kellogg v. Strack*, 269 F.3d 100, 104 (2d Cir. 2001) (a certificate of appealability from denial of a Rule 60(b) motion addressed to a habeas corpus petition "should issue only if the petitioner shows that (1) jurists of reason would find it debatable whether the district court abused its discretion in denying the Rule 60(b) motion, and (2) jurists of reason would find it debatable whether the underlying habeas petition, in light of the grounds alleged to support the 60(b) motion, states a valid claim of the denial of a constitutional right.").

## III. Conclusion

For the foregoing reasons, the defendant's Motion for Reconsideration should be denied, without a hearing, and the Court should find that the defendant has not made a substantial showing of a denial of a federal right, and that, pursuant to 28 U.S.C. § 1915(a)(3), any appeal taken from the denial would therefore not be in good faith. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

Respectfully submitted,

JAMES M. MCDONALD
United States Attorney

By: s/____________________________
Lara Pomerantz
Assistant United States Attorney
(212) 637-2343

cc: Ghislaine Maxwell (by U.S. mail)